TUCKER ELLIS LLP
David J. Steele - SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll - SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen - SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:    213.430.3400
Facsimile:    213.430.3409

Attorneys for Plaintiff,
FACEBOOK, INC. and INSTAGRAM, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC<br><br>Plaintiff,<br><br>v.<br><br>ONLINENIC INC., DOMAIN ID SHIELD SERVICE CO., LIMITED, and DOES 1-20<br><br>Defendants. | Case No. 3:19-cv-7071<br><br>**COMPLAINT FOR CYBERSQUATTING; TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN; AND DILUTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Facebook, Inc. ("Facebook") and Instagram, LLC ("Instagram") (collectively "Plaintiffs") by and through their attorneys, Tucker Ellis LLP, file their complaint against Defendants OnlineNIC, Inc. ("OnlineNIC"), Domain ID Shield Service Co., Limited ("ID Shield") (collectively "Defendants"), and John Does 1-20 ("Doe Defendants") for injunctive relief and damages.

**INTRODUCTION**

1. Cybercrime is highly dependent on registered domain names, which are used to send spear phishing emails, operate malware, and engage in other types of online abuse. According to the Internet Corporation of Assigned Names and Numbers (ICANN), as of July 31, 2019, there were over 800,000 resolving domain names used for phishing, malware, spam, and botnets.

2. Cybercriminals often rely on privacy services to hide their ownership and control of malicious domains from the public. In exchange for a fee, privacy services conceal the domain name registrant's identity as listed on publicly available domain name registration records. These privacy services, like the services offered by Defendants, are increasingly used by cybercriminals as they cycle through domain names in order to conceal their identity and evade detection.

3. Defendant OnlineNIC is an ICANN-accredited domain name registrar and Defendant ID Shield is its privacy protection service. According to one internet security group, domain names registered by OnlineNIC were reported for abuse in approximately 40,000 instances. In 2019, one internet security group reported that OnlineNIC was one of the top 20 domain name registrars used for abuse.

4. Although accredited by ICANN, Defendants have repeatedly failed to take appropriate "steps to investigate and respond appropriately to any reports of abuse" as required by the ICANN Registrar Accreditation Agreement ("RAA") and have failed to provide abusive domain name registrants' names and contact information to victims of online abuse as required under the RAA.

5. For years, the Doe Defendants, OnlineNIC and its alter ego ID Shield, as registrants, registered domain names (such as hackingfacebook.net) that have been used for malicious activity, including phishing and hosting websites that purported to sell hacking tools. These domain names also have infringed on Plaintiffs' trademarks. Plaintiffs have sent multiple notices to OnlineNIC providing evidence of domain name abuse and infringement. Defendants did not address any of Plaintiffs' notices.

6. Plaintiffs seek relief from OnlineNIC and its alter ego, ID Shield, who have registered (as the registrant), used, and trafficked in domain names that include Plaintiffs' trademarks. Plaintiffs seek damages and injunctive relief against Defendants to stop their ongoing unlawful and harmful conduct, pursuant to the Lanham Act and the Anti-Cybersquatting Consumer Protection Act (15 U.S.C. § 1125).

## I. THE PARTIES

7. Plaintiff Facebook, Inc. is a Delaware corporation with its principal place of business in Menlo Park, California.

8. Plaintiff Instagram, LLC is a Delaware limited liability company with its principal place of business in Menlo Park, California.

9. Defendant OnlineNIC Inc. is a California corporation with its principal place of business in San Leandro, California. Defendant OnlineNIC is a domain name registrar that sells, registers and transfers domain names for third parties.

10. Defendant ID Shield, is a Hong Kong limited company. Defendant ID Shield is OnlineNIC's domain name privacy service, which registered domain names in the name of ID Shield on publicly available domain name registration records.

11. At all times material to this action, OnlineNIC and ID Shield are instrumentalities and alter egos of each other. OnlineNIC is also the direct participant in the actions of ID Shield as alleged in this Complaint.

12. Plaintiffs have not identified the Defendants referred to as the Doe Defendants. The Doe Defendants are individuals or entities who have registered, or caused to be registered, domain names that infringe on Plaintiffs' trademarks. Plaintiffs reserve the right to amend this complaint to allege such Defendants' true names and capacities when they are ascertained.

## II. JURISDICTION AND VENUE

13. The Court has federal question jurisdiction over the federal causes of action alleged in this complaint pursuant to 28 U.S.C. § 1331.

14. The Court has personal jurisdiction over Defendant OnlineNIC, and its alter ego ID Shield, because OnlineNIC maintained and operated business in California.

15. Each of the Doe Defendants has entered into one or more contracts for domain name

registration services used in connection with Defendants' unlawful scheme; a material term of these contracts was Defendants' agreement to submit to the Court's jurisdiction. A copy of the domain name registration agreement is attached to this Complaint as Exhibit 1. Accordingly, the Court has personal jurisdiction over each of the Doe Defendants.

16.     The Court has personal jurisdiction over the Defendants and the Doe Defendants because each of them knowingly directed and targeted parts of their unlawful scheme at Plaintiffs, which have their principal places of business in California. Defendants and the Doe Defendants also transacted business and engaged in commerce in California.

17.     Venue is proper with respect to each of the Defendants pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events and omissions giving rise to the claims alleged occurred in this district.

18.     Pursuant to Civil L.R. 3-2(c), this case is exempt from the Court's division-specific venue rule because it involves intellectual property rights.

### III.    FACTUAL ALLEGATIONS

#### A.    Background on Plaintiffs and their Trademarks

19.     Facebook offers a social networking website and mobile application that enables its users to create their own personal profiles and connect with each other on their personal computers and mobile devices.

20.     Facebook owns the exclusive rights to several trademarks and service marks to provide its online services, including the distinctive FACEBOOK word mark and stylized mark, and has used the marks in connection with its services since 2004.

21.     In addition to its extensive common law rights, Facebook owns numerous United States registrations for its FACEBOOK marks, including:

　　a.    United States Registration Number 3,122,052; and

　　b.    United States Registration Number 3,881,770.

Copies of these registration certificates are attached to this Complaint as Exhibit 2. Facebook's common law and registered trademarks are collectively referred to as the "Facebook Trademarks."

22.     Facebook's use of the Facebook Trademarks in interstate commerce has been extensive,

continuous, and substantially exclusive. Facebook has made, and continues to make, a substantial investment of time, effort, and expense in the promotion of Facebook and the Facebook Trademarks. As a result of Facebook's efforts and use, the Facebook Trademarks are famous (and have been famous since at least as early as 2011) as they are recognized within the US and around the world as signifying high-quality, authentic goods and services provided by Facebook.

23. Instagram offers a photo and video sharing and editing service, mobile application, and social network. Instagram users can choose to share their photos and videos with their followers online.

24. Instagram owns the exclusive rights to the distinctive INSTAGRAM word mark and stylized mark, having used the marks in connection with its goods and services as early as 2010.

25. In addition to its extensive common law rights, Instagram owns numerous United States registrations for the INSTAGRAM marks, including:

    c. United States Registration Number 4,795,634;
    d. United States Registration Number 4,146,057;
    e. United States Registration Number 4,756,754;
    f. United States Registration Number 5,566,030;
    g. United States Registration Number 4,170,675;
    h. United States Registration Number 4,856,047;
    i. United States Registration Number 4,822,600;
    j. United States Registration Number 4,827,509;
    k. United States Registration Number 4,863,595; and
    l. United States Registration Number 5,019,151.

Copies of these registration certificates are attached to this Complaint as Exhibit 3. Instagram's common law and registered trademark rights are collectively referred to as the "Instagram Trademarks."

26. Instagram's use of the Instagram Trademarks in interstate commerce has been extensive, continuous, and substantially exclusive. Instagram has made, and continues to make, a substantial investment of time, effort, and expense in the promotion of Instagram and the Instagram Trademarks. As a result of Instagram's efforts and use, the Instagram Trademarks are famous (and have been famous

since at least as early as 2014) as they are recognized within the US and around the world as signifying high-quality, authentic goods and services provided by Instagram.

### B. OnlineNIC is Responsible for the Actions of ID Shield

27. Defendant OnlineNIC is accredited by ICANN and subject to ICANN's RAA. A copy of the RAA is attached to this Complaint as Exhibit 4

28. Defendant ID Shield provides a domain name registration privacy service on behalf of Defendant OnlineNIC. ID Shield is the registrant of the domain name, and is listed as the registrant in the WHOIS directory.

29. OnlineNIC controls certain business operations of ID Shield. ID Shield registers domain names as the registrant, and licenses these domain names either to OnlineNIC for its use or to OnlineNIC's customers for their use. OnlineNIC's website refers to ID Shield's services as "OnlineNIC ID Shield." A screen capture of OnlineNIC's "Domain Privacy" page from its website is attached to this Complaint as Exhibit 5.

30. The ID Shield Service Agreement, found on the OnlineNIC website, is attached to this Complaint as Exhibit 6. According to the ID Shield Service Agreement, "[i]f you subscribe to the IDS Services, each domain name registration which you control and which [uses the ID Shield service] will thereafter be registered in the name of [ID Shield], as registrant."

31. According to ID Shield's "About Us" webpage "OnlineNIC, Inc. [sic] is an internet services company that provides . . . internet services, including domain name service and other related services." A copy of ID Shield's "About Us" webpage is attached to this Complaint as Exhibit 7.

32. ID Shield and OnlineNIC are managed by the same President and VP of Business Development. A copy of OnlineNIC's "About Us" webpage is attached to this Complaint as Exhibit 8; *compare* Exhibit 7 with Exhibit 8.

33. OnlineNIC's customers purchase and pay for the ID Shield services directly from their OnlineNIC user account. ID Shield's "Payment Info" webpage indicates that payments to ID Shield should be processed through the customer's OnlineNIC user account. Customers wishing to close their account should email sales@onlinenic.com ("Please contact our sales at sales@onlinenic.com if you wish to close your account.") *See* Exhibit 9.

34. ID Shield and OnlineNIC share the same technical support staff, and technical support services are provided by the same person(s). A copy of ID Shield's help webpage (listing OnlineNIC and its phone numbers and email addresses) is attached to this Complaint as Exhibit 10.

35. The domain names domainidshield.com and onlinenic.com are hosted on the same IP address. Defendants' websites contain links to each other.

36. OnlineNIC and ID Shield are instrumentalities and alter egos of each other. OnlineNIC is also the direct participant in the actions of ID Shield as alleged in this Complaint.

C. **Defendants Registered, Used, or Trafficked In the Infringing Domain Names**

37. OnlineNIC and ID Shield registered, used, or trafficked in, at least the following 20 domain names that are identical or confusingly similar to the Facebook Trademarks and the Instagram Trademarks (the "Infringing Domain Names"):

| | | | | |
|---|---|---|---|---|
| i. | facebook-fans-buy.com | | xi. | trollfacebook.com |
| ii. | facebook-mails.com | | xii. | www-facebook-login.com |
| iii. | facebook-pass.com | | xiii. | www-facebook-pages.com |
| iv. | facebook-pw.com | | xiv. | buyinstagramfans.com |
| v. | facebookphysician.com | | xv. | instaface.org |
| vi. | facebookvideodownload.net | | xvi. | instagram01.com |
| vii. | findfacebookid.com | | xvii. | iiinstagram.com |
| viii. | hackingfacebook.net | | xviii. | login-lnstargram.com |
| ix. | hacksomeonesfacebook.com | | xix. | m-facebook-login.com |
| x. | Iamsocialfacebook.net | | xx. | singin-lnstargram.com |

38. ID Shield is the registrant for each of the Infringing Domain Names. A copy of WHOIS entries for each of the Infringing Domain Names is attached to this Complaint as Exhibit 11.

39. Upon information and belief, each of the Infringing Domain Names was registered on behalf of the Doe Defendants or OnlineNIC using Defendants' registration services and privacy services.

40. ID Shield trafficked in the Infringing Domain Names by licensing these domain names either to OnlineNIC for its use or to OnlineNIC's customers for their use.

**D.     Defendants' Bad Faith Intent to Profit**

41.     OnlineNIC has a history of cybersquatting on famous and distinctive trademarks.

42.     On or about December 19, 2008, OnlineNIC was found liable for registering over 600 domain names that were confusingly similar to the VERIZON mark. In the *Verizon* case, the Court awarded $33.15 million in damages and denied OnlineNIC's motion to set aside or reduce the judgment.

43.     On or about December 19, 2008, Yahoo! Inc. alleged in a separate action that OnlineNIC registered at least 554 domain names that were identical or confusingly similar to its trademarks.

44.     On or about October 7, 2008, Microsoft Corporation alleged in a separate action that OnlineNIC registered at least 97 domain names that were identical or confusingly similar to its trademarks.

45.     OnlineNIC has been named in administrative complaints filed under the Uniform Domain-Name Dispute-Resolution Policy ("UDRP"). In many of these UDRP cases, OnlineNIC has verified to the dispute providers that OnlineNIC itself was the registrant of the domain name at issue in the complaint.

46.     OnlineNIC has operated under one or more aliases, including "Junlong Zhen," "lenawoo," and "China-Channel," to hide its involvement in registering as a registrant, using, and trafficking in infringing domain names.

47.     OnlineNIC and ID Shield profit from the sale of the ID Shield service, including providing the service to the Doe Defendants and to OnlineNIC. OnlineNIC and ID Shield profit from the sale of the ID Shield service by collecting fees from the sale of that service.

48.     The users of the Infringing Domain Names, which, upon information and belief, included Defendants and the Doe Defendants, intended to divert consumers to websites using domain names that were confusingly similar to the Facebook Trademarks and the Instagram Trademarks. In some instances, the Infringing Domain Names have been used for malicious activity, including to host websites directing visitors to other commercial sites, phishing, selling purported tools for hacking. Screenshots of several of these websites hosted at the Infringing Domain Names are attached to this Complaint as Exhibit 12.

49.     Defendants also used some of the Infringing Domain Names in connection with email services, which is usually an indication that the domain name was used for phishing or other scams.

1 Specifically, at least the following domain names had domain name servers configured to facilitate email: facebook-mails.com, facebook-pass.com, facebook-pw.com, facebookvideodownload.net, findfacebookid.com, hackingfacebook.net, hacksomeonesfacebook.com, login-lnstargram.com, m-facebook-login.com, singin-lnstargram.com, and trollfacebook.com.

50. Defendants have registered multiple domain names that they know are identical or confusingly similar to marks of others that were distinctive at the time of registration of the domain names, or dilutive of famous marks of others that were famous at the time of registration of the domain names. A table showing examples of some of Defendants' registered domains is attached as Exhibit 13.

51. Plaintiffs' Facebook Trademarks and Instagram Trademarks were distinctive and famous, when Defendants registered, used or trafficked in the Infringing Domain Names.

**E.  OnlineNIC's and ID Shield's Failure to Disclose Contact Information**

52. Under the RAA, OnlineNIC agreed that ID Shield "shall accept liability for harm caused by wrongful use of the Registered Name, unless it discloses the current contact information provided by the licensee and the identity of the licensee within seven (7) days to a party providing [ID Shield] reasonable evidence of actionable harm." *See* Exhibit 4.

53. OnlineNIC and ID Shield's service agreements anticipate that they will be sued for misuse of domain names, including for trademark infringement and cybersquatting, and require parties to their respective agreements to indemnify against such claims. *See* Exhibits 1 and 6.

54. ID Shield service agreement states (twice) that it will cancel its proxy service if a domain name is alleged to infringe on a third party's trademark or if it receives valid evidence of trademark infringement. *See* Exhibit 6.

55. Between April 23, 2019 and August 12, 2019, Plaintiffs' authorized representatives sent at least 5 notices to ID Shield with evidence that each of the Infringing Domain Names caused Plaintiffs actionable harm and requesting that ID Shield disclose the identities of the registrant(s) ("Plaintiffs' Notices"). For example:

    a. On April 23, 2019 Plaintiffs' authorized representatives sent notice regarding www-facebook-login.com.

    b. On May 2, 2019, Plaintiffs' authorized representatives sent notice regarding: facebook-

fans-buy.com, facebook-pass.com, facebookphysician.com, facebook-pw.com, iamsocialfacebook.net, and iiinstagram.com.

    c. On May 14, 2019, Plaintiffs' authorized representatives sent notice regarding: facebook-mails.com, facebookvideodownload.net, findfacebookid.com, instagram01.com, m-facebook-login.com, and www-facebook-pages.com.

    d. On June 3, 2019, Plaintiffs' authorized representatives sent notice regarding: buyinstagramfans.com, hackingfacebook.net, hacksomeonesfacebook.com, login-lnstagram.com, singin-lnstargram.com, and trollfacebook.com.

    e. On August 12, 2019, Plaintiffs' authorized representatives sent notice regarding instaface.org.

56. ID Shield failed to disclose the identity or any contact information of the licensee when presented with reasonable evidence of actionable harm by Plaintiffs or their authorized representatives that one or more domain names infringed or cybersquatted on the Facebook Trademarks and Instagram Trademarks.

57. ID Shield failed to even respond to Plaintiffs' Notices.

**FIRST CAUSE OF ACTION**

**[Cybersquatting on Plaintiffs' Trademarks Under 15 U.S.C. § 1125(d)]**

58. Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

59. The Facebook Trademarks and Instagram Trademarks (collectively, "Plaintiffs' Trademarks") were distinctive or famous and federally registered at the United States Patent and Trademark Office at the time Defendants registered, used, and trafficked in the Infringing Domain Names.

60. One or more of the Infringing Domain Names are confusingly similar to Plaintiffs' Trademarks.

61. One or more of the Infringing Domain Names are dilutive of the Facebook Trademarks or Instagram Trademarks.

62. Defendants registered (as the registrant), used, or trafficked in one or more of the Infringing Domain Names with a bad faith intent to profit from Plaintiffs' Trademarks.

63. Defendants do not have any trademark or other intellectual property rights in the Infringing Domain Names.

64. The Infringing Domain Names do not consist of the legal name of either of the Defendants, nor do they consist of a name that is otherwise commonly used to identify them.

65. Defendants have not made any prior use of any of the Infringing Domain Names in connection with the *bona fide* offering of any goods or services.

66. Defendants have not made any *bona fide* noncommercial or fair use of Plaintiffs' Trademarks on a website accessible at any of the Infringing Domain Names.

67. Defendants registered (as the registrant), used, and trafficked in one or more of the Infringing Domain Names to divert consumers from Plaintiffs' legitimate websites to a website accessible under the Infringing Domain Names for Defendants' commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of their websites.

68. Defendants' registration, use, and/or trafficking in the Infringing Domain Names constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), entitling Plaintiffs to relief.

69. Plaintiffs' remedy at law is not adequate to compensate it for the injuries Defendants inflicted on Plaintiffs. Accordingly, Plaintiffs are entitled to permanent injunctive relief pursuant to 15 U.S.C. § 1116.

70. Plaintiffs are entitled to recover Defendants' profits, Plaintiffs' actual damages, and the costs of this action. Instead of actual damages and profits, Plaintiffs may alternatively elect to an award of statutory damages under 15 U.S.C. § 1117(d) in an amount of $100,000 per domain name.

71. This is an exceptional case, entitling Plaintiffs to an award of reasonable attorneys' fees under 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

**[Trademark and Service Mark Infringement of**

**Plaintiffs' Trademarks Under 15 U.S.C. § 1114]**

72. Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

73. Defendants have used Plaintiffs' Trademarks in interstate commerce. Defendants' use of Plaintiffs' Trademarks is likely to cause confusion, mistake, or deception as to the origin, sponsorship,

or approval by Plaintiffs of Defendants' websites.

74. The above-described acts of Defendants constitute trademark and service mark infringement in violation of 15 U.S.C. § 1114(1) and entitle Plaintiffs' to relief.

75. Defendants have unfairly profited from the alleged trademark and service mark infringement.

76. By reason of Defendants' acts of trademark and service mark infringement, Plaintiffs have suffered damage to the goodwill associated with Plaintiffs' Trademarks.

77. Defendants have irreparably harmed Plaintiffs and, if not enjoined, will continue to irreparably harm Plaintiffs and their federally registered trademarks and service marks.

78. Defendants have irreparably harmed the general public and, if not enjoined, will continue to irreparably harm the general public, which has an interest in being free from confusion, mistake, and deception.

79. Plaintiffs' remedy at law is not adequate to compensate them for the injuries inflicted by Defendants. Accordingly, Plaintiffs are entitled to permanent injunctive relief pursuant to 15 U.S.C. § 1116.

80. Plaintiffs are entitled to recover Defendants' profits, Plaintiffs', actual damages, and the costs of this action. Plaintiffs' are also entitled to have their damages trebled under 15 U.S.C. § 1117(a).

81. This is an exceptional case, making Plaintiffs eligible for an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## THIRD CAUSE OF ACTION

**[Trademark and Service Mark Infringement of Plaintiffs' Trademarks and False Designation of Origin Under 15 U.S.C. § 1125(a)]**

82. Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

83. Plaintiffs' Trademarks are distinctive marks that are associated with Plaintiffs and exclusively identify their respective businesses, products, and services.

84. Defendants' use in commerce of Plaintiffs' Trademarks, and variations thereof, is likely to cause confusion, or to cause mistake, or to deceive the relevant public that Defendants' goods and services are authorized, sponsored, or approved by, or are affiliated with, Plaintiffs.

85. Defendants' acts constitute trademark and service mark infringement of Plaintiffs' Trademarks, as well as false designation of origin, in violation of 15 U.S.C. § 1125(a), entitling Plaintiffs to relief.

86. Defendants have unfairly profited from their conduct.

87. By reason of the above-described acts of Defendants, Plaintiffs have suffered damage to the goodwill associated with Plaintiffs' Trademarks.

88. Defendants have irreparably harmed Plaintiffs and, if not enjoined, will continue to irreparably harm Plaintiff and Plaintiffs' Trademarks.

89. Defendants have irreparably harmed the general public and, if not enjoined, will continue to irreparably harm the general public, which has an interest in being free from confusion, mistake, and deception.

90. Plaintiffs' remedy at law is not adequate to compensate it for the injuries inflicted by Defendants. Accordingly, Plaintiffs are entitled to permanent injunctive relief pursuant to 15 U.S.C. § 1117.

91. Plaintiffs are entitled to recover Defendants' profits, Plaintiffs', actual damages, and the costs of this action. Plaintiffs' are also entitled to have their damages trebled under 15 U.S.C. § 1117(a).

92. This is an exceptional case, making Facebook eligible for an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## FOURTH CAUSE OF ACTION

**[Dilution of the Facebook Trademarks and Instagram Trademarks Under 15 U.S.C. § 1125(c)]**

93. Facebook and Instagram reallege and incorporate by reference all of the preceding paragraphs.

94. The Facebook Trademarks and Instagram Trademarks are famous, as that term is used in 15 U.S.C. § 1125(c), and they were famous before Defendants' use of them and variations of the trademarks in commerce. This fame is based on, among other things, the inherent distinctiveness and federal registration of each of the Facebook Trademarks and Instagram Trademarks as well as the extensive and exclusive worldwide use, advertising, promotion, and recognition of them.

95. Defendants' use of the Facebook Trademarks and Instagram Trademarks, and variations

thereof, in commerce is likely to cause dilution by blurring or dilution by tarnishment of these trademarks.

96. Defendants' acts constitute dilution by blurring and dilution by tarnishment in violation of 15 U.S.C. § 1125(c), entitling Facebook and Instagram to relief.

97. Defendants have unfairly profited from their conduct.

98. Defendants damaged the goodwill associated with the Facebook Trademarks and the Instagram Trademarks and they will continue to cause irreparable harm.

99. Facebook's and Instagram's remedy at law is not adequate to compensate them for the injuries inflicted by Defendants. Accordingly, Facebook and Instagram are entitled to permanent injunctive relief pursuant to 15 U.S.C. § 1116.

100. Because Defendants' acted willfully, Facebook and Instagram are entitled to damages, and those damages should be trebled pursuant to 15 U.S.C. § 1117.

101. This is an exceptional case, making Plaintiffs eligible for an award of attorneys' fees pursuant to 15 U.S.C. § 1117.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request judgment against Defendants as follows:

1. That the Court enter a judgment against Defendants that Defendants have:

    a. Infringed the rights of Plaintiffs in the federally registered Facebook Trademarks, and Instagram Trademarks, in violation of 15 U.S.C. § 1125(d).

    b. Infringed the rights of Plaintiffs in the federally registered Facebook Trademarks and Instagram Trademarks, in violation of 15 U.S.C. § 1114(1);

    c. Infringed the rights of Plaintiffs in the federally registered Facebook Trademarks and Instagram Trademarks, in violation of 15 U.S.C. § 1125(a);

    d. Infringed the rights of Plaintiffs in the federally registered Facebook Trademarks and Instagram Trademarks, in violation of 15 U.S.C. § 1125(c).

2. That each of the above acts was willful.

3. That the Court issue a permanent injunction enjoining and restraining Defendants and their agents, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, from:

   a. Registering, using, or trafficking in any domain name that is identical or confusingly similar to the Facebook Trademarks or the Instagram Trademarks;

   b. Engaging in any use, including advertising, promoting, marketing, franchising, selling, and offering for sale any goods or services, on or in connection with the Facebook Trademarks or the Instagram Trademarks, or any similar mark or designation, that is likely to cause confusion, or to cause mistake as to the affiliation of that use with Plaintiffs; and

   c. Engaging in any activity which lessens the distinctiveness or tarnishes the Facebook Trademarks or the Instagram Trademarks.

4. That Plaintiffs be awarded damages for Defendants' trademark infringement and false designation of origin and that these damages be trebled due to Defendants' willfulness, in accordance with the provisions of 15 U.S.C. § 1117.

5. That Defendants be ordered to account for and disgorge to Plaintiffs all amounts by which Defendants have been unjustly enriched by reason of the unlawful acts complained of.

6. That Plaintiffs be awarded $100,000 in statutory damages per infringing domain name by reason of Defendants' cybersquatting in accordance with the provisions of 15 U.S.C. § 1117.

7. That Plaintiffs be awarded an amount sufficient to reimburse Plaintiffs for the costs of corrective advertising.

8. That Plaintiffs be awarded prejudgment interest on all infringement damages.

9. That the Court award Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and any other applicable provision of law.

10. That the Court award Plaintiffs their costs of suit incurred herein.

11. That the Court award such other or further relief as the Court may deem just and proper.

COMPLAINT

DATED: October 28, 2019					Tucker Ellis LLP


							By:  /s/David J. Steele
								David J. Steele
								Howard A. Kroll
								Steven E. Lauridsen

								Attorneys for Plaintiffs,
								FACEBOOK, INC. and INSTAGRAM, LLC

								Platform Enforcement and Litigation
								Facebook, Inc.
									Jessica Romero
									Nikkya Williams
									Olivia Gonzalez

COMPLAINT

**DEMAND FOR TRIAL BY JURY**

Plaintiffs Facebook, Inc. and Instagram, LLC, hereby demand a trial by jury to decide all issues so triable in this case.

DATED: October 28, 2019                    Tucker Ellis LLP


By: /s/David J. Steele
    David J. Steele
    Howard A. Kroll
    Steven E. Lauridsen

    Attorneys for Plaintiffs,
    FACEBOOK, INC. and INSTAGRAM, LLC,

    Platform Enforcement and Litigation
    Facebook, Inc.
      Jessica Romero
      Nikkya Williams
      Olivia Gonzalez