TUCKER ELLIS LLP
David J. Steele - SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll - SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen - SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:   213.430.3400
Facsimile:    213.430.3409

Attorneys for Plaintiffs,
FACEBOOK, INC. and INSTAGRAM, LLC

LEXANALYTICA, PC
Perry J. Narancic – SBN 206820
pjn@lexanalytica.com
2225 E. Bayshore Road
Suite 200
Palo Alto, CA 94303
Telephone:   650.655.2800

Attorneys for Defendants,
ONLINENIC, INC. and DOMAIN ID SHIELD
SERVICES CO., LIMITED

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC,<br><br>       Plaintiffs,<br><br>   v.<br><br>ONLINENIC INC., DOMAIN ID SHIELD SERVICE CO., LIMITED, and DOES 1-20,<br><br>       Defendants. | Case No. 5:19-cv-07071-SVK<br><br>**JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER**<br><br>Date:         January 28, 2020<br>Time:         9:30 a.m.<br>Courtroom:  6 – 4th Floor<br><br>Hon. Susan van Keulen |

The parties in this action jointly submit this Joint Case Management Statement and Proposed Order pursuant to the Standing Order for All Judges of the Northern District of California and Civil Local Rule 16-9.

1. <u>Jurisdiction and Service</u>: The parties agree that the Court has federal question jurisdiction over the federal causes of action alleged in the complaint pursuant to 28 U.S.C. § 1331. All parties have been served. There are no issues concerning venue; however, Defendant Domain ID Shield Services Co., Limited ("Domain ID Shield") maintains that this Court lacks personal jurisdiction over it and has pled that as an affirmative defense. Although Defendant OnlineNIC, Inc. ("OnlineNIC") also pled lack of personal jurisdiction as an affirmative defense, OnlineNIC acknowledges that this Court has personal jurisdiction over it. Plaintiffs contend that this Court has jurisdiction over all Defendants.

2. <u>Facts</u>:

**Plaintiffs' Statement**

Cybercrime is highly dependent on registered domain names, which are used to send spear phishing emails, operate malware, and engage in other types of online abuse. According to the Internet Corporation of Assigned Names and Numbers (ICANN), as of July 31, 2019, there were over 800,000 resolving domain names used for phishing, malware, spam, and botnets. Cybercriminals often rely on privacy services to hide their ownership and control of malicious domains from the public. Privacy services provided by domain name registrars and their related entities conceal the domain name registrant's identity listed on publicly available domain name registration records. These privacy services, like the services offered by Defendants, are increasingly used by cybercriminals in order to conceal their identity and evade detection.

OnlineNIC is an ICANN-accredited domain name registrar, and Defendant ID Shield provides OnlineNIC's privacy protection service. OnlineNIC is a direct participant in Domain ID Shield's activities, and they are *alter egos* of one another. According to one internet security group, domain names registered by OnlineNIC were reported for abuse in approximately 40,000 instances. In 2019, one internet security group reported that OnlineNIC was one of the top 20 domain name registrars used for abuse. Although accredited by ICANN, Defendants have repeatedly failed to take appropriate "steps to investigate and respond appropriately to any reports of abuse" as required by the ICANN Registrar

Accreditation Agreement ("RAA") and have failed to provide abusive domain name registrants' names and contact information to victims of online abuse as required under the RAA.

For years, the Doe Defendants and OnlineNIC, as registrants, registered domain names (such as hackingfacebook.net) that have been used for malicious activity, including phishing and hosting websites that purported to sell hacking tools. OnlineNIC and the Doe Defendants use Domain ID Shield to hide the fact that they are the registrants of these domain names. These domain names also have infringed on Plaintiffs' trademarks. Plaintiffs have sent multiple notices to OnlineNIC and Domain ID Shield providing evidence of domain name abuse and infringement, but Defendants did not address any of Plaintiffs' notices.  As a result of their failure to comply with their obligations to disclose the current contact information of the registrant of the domain names at issue within seven days of Plaintiffs having provided Defendants with reasonable evidence of actionable harm, Defendants have stepped into the shoes of the registrants of these domain names and are therefore liable for the activity conducted through those domain names.

Plaintiffs therefore seek relief from OnlineNIC and its alter ego, Domain ID Shield (in whose activities OnlineNIC is also a direct participant), who have registered (as the registrant), used, and trafficked in domain names that include Plaintiffs' trademarks. Plaintiffs seek damages and injunctive relief against Defendants to stop their ongoing unlawful and harmful conduct, pursuant to the Lanham Act and the Anti-Cybersquatting Consumer Protection Act (15 U.S.C. § 1125).

**Defendants' Statement**

Defendants deny that they responsible for any of the unlawful acts complained of by Plaintiffs.

3. <u>Legal Issues</u>: Plaintiffs assert that at least the following legal issues are disputed based off of the positions Defendants have taken:

   a. Whether the Defendants are instrumentalities or *alter egos* of one another and whether OnlineNIC is a direct participant in the conduct of Domain ID Shield. *See, e.g.*, *Sonora Diamond Corp. v Super. Ct.*, 83 Cal. App. 4th 523 (2000); *S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003); *Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 640 (9th Cir. 1982); *Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1136, 1138, 1142 (C.D. Cal. 2015); *Waste Mgmt. Inc. v. Super. Ct.*, 119 Cal.App.4th 105, 110-13 (2004).

b. Whether, as a result of being an alter ego of OnlineNIC, Domain ID Shield is subject to the jurisdiction of this Court. *Certified Bldg. Prods., Inc. v. NLRB*, 528 F.2d 968, 969 (9th Cir. 1976).

c. Whether Domain ID Shield purposefully availed itself of the privileges of doing business in this forum or whether Domain ID Shield purposefully directed its activities at this forum such that the Court has personal jurisdiction over Domain ID Shield. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *Calder v. Jones*, 465 U.S. 783 (1984); Cal. Civ. Proc. § 410.10 (California long-arm statute).

d. Whether Defendants have engaged in acts of trademark and service mark infringement as well as false designation of origin. 15 U.S.C. §§ 1114(1) and 1125(a); *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

e. Whether Defendants have committed acts of willful trademark and service mark dilution. 15 U.S.C. § 1125(c); *see also generally Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158, 1165-71 (9th Cir. 2011).

f. Whether Defendants have engaged in cybersquatting. 15 U.S.C. § 1125(d); *DSPT Intern., Inc. v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010); *Solid Host, NL v. Namecheap, Inc.* 652 F. Supp. 2d 10092 (C.D Cal. 2009).

Defendants assert the additional disputed legal issue:

g. Whether Plaintiffs have conducted inadequate pre-litigation investigation, such that this case would be deemed an "exceptional case" under 15 U.S.C. § 1117.

4. <u>Motions</u>: Depending on the information learned in discovery, each of the parties intends to file a motion for summary judgment as to liability. Plaintiffs may also move to amend their complaint to add additional defendants in lieu of the Doe Defendants, depending on the information learned in discovery.

5. <u>Amendment of Pleadings</u>: The parties anticipate that they may learn through party and subsequent third-party discovery the identities of the various Doe Defendants. In light of the time needed to conduct such discovery, some of which will necessitate taking discovery from foreign entities, the parties propose a deadline to amend pleadings that is 120 days from the Case Management

Conference.

6.  Evidence Preservation: The parties have reviewed the Court's Guidelines Relating to the Discovery of Electronically Stored Information, and they have met and conferred pursuant to Rule 26(f) of the Federal Rules of Civil Procedure concerning reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. The parties are working together to develop a stipulation concerning discovery of Electronically Stored Information ("ESI").

7.  Disclosures: The parties are exchanging initial disclosures on January 21, 2020 in compliance with Rule 26(a)(1) of the Federal Rules of Civil Procedure.

8.  Discovery: The parties have not yet taken discovery to date. The parties anticipate propounding written discovery and taking depositions. The parties anticipate taking third-party discovery, potentially including third-party discovery involving international entities. The parties have met and conferred and have developed the following discovery plan pursuant to Rule 26(f):

(A) The parties do not believe there should be any changes to the timing, form, or requirements for initial disclosures, and the parties currently intend to exchange initial disclosures on January 21, 2020.

(B) The parties anticipate taking discovery concerning at least the following topics:

- Plaintiffs' trademark rights;
- Defendants' alleged use, registration, and trafficking in domain names, including those containing terms confusingly similar to Plaintiffs' trademarks;
- Whether Defendants had a bad faith intent to profit, including Defendants' history of cybersquatting;
- Whether Defendant Domain ID Shield is an alter ego of Defendant OnlineNIC and whether OnlineNIC is a direct participant in the actions of Domain ID Shield;
- Plaintiffs' notices of domain name abuse and infringement sent to Defendants;
- Defendant compliance or lack thereof with Plaintiffs' requests to identify the registrants of the domain names at issue, including Defendants' responses, or lack thereof, to Plaintiffs' notices of reasonable evidence of actionable harm;
- Defendant Domain ID Shield's activities in the United States and in California, including

any activities that would form the basis for this Court's personal jurisdiction over Domain ID Shield;

- The identities of any Doe Defendants;
- Plaintiffs' damages, including its actual damages and Defendants' profits;
- Plaintiffs' efforts to police their alleged marks in the past; and
- The nature, extent, and scope of Plaintiffs' pre-litigation investigation.

(C) As discussed in Section 6, above, the parties have met and conferred concerning the preservation and production of ESI, and the parties are in the process of negotiating an e-discovery order.

(D) The parties are currently negotiating an e-discovery order and a Federal Rule of Evidence 502 claw back order.

(E) The parties do not currently propose any modifications or limitations to the discovery rules except that expert depositions will not count against the total number of depositions a party may take in this action.

(F) The parties are negotiating a proposed two-tiered protective order pursuant to Rule 26(c). The parties do not propose bifurcation at this time. The parties do not currently anticipate requesting any additional orders pursuant to Rule 16(b) and (c).

The parties have not yet identified any particular discovery disputes.

9. <u>Class Actions</u>: This action is not a class action.

10. <u>Related Cases</u>: There are currently no related cases.

11. <u>Relief</u>: For Defendants' alleged acts of cybersquatting, Plaintiffs seek statutory damages in the amount of $100,000 per domain name pursuant to 15 U.S.C. § 1117(d). Plaintiffs also intend to seek, in an amount according to proof, either their actual damages or Defendants' profits, as well as the costs of this action, for Defendants' alleged trademark and service mark infringement, false designation of origin, and willful dilution pursuant to 15 U.S.C. §§ 1114(1), 1125(a), and 1125(c). Plaintiffs will seek to have these damages trebled pursuant to 15 U.S.C. § 1117(a). Plaintiffs will further seek permanent injunctive relief pursuant to 15 U.S.C. § 1116. Finally, Plaintiffs will seek their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a). Defendants seek a judgment dismissing all claims with

prejudice in favor of Defendants, and an award of attorneys' fees under 15 U.S.C. § 1117(a).

12. <u>Settlement and ADR</u>: The parties have met and conferred concerning an ADR process pursuant to ADR Local Rule 3-5. Plaintiffs believe the ADR session will have the highest chance for success if the parties have disclosed information or taken discovery concerning Plaintiffs' notices of domain name abuse and infringement, Defendants' responses to those notices, Plaintiffs' alter ego and direct participant theories, and this Court's personal jurisdiction over Domain ID Shield. Plaintiffs believe the ninety-day deadline to conduct the ADR session set by ADR Local Rule 3-7 does not need to be changed. Plaintiffs assert that private mediation would have the highest chance of a successful resolution of this action, in part because of Plaintiffs' counsel's past experience with Defendants and the ADR process in prior actions.

In order to determine the identities of the person(s) responsible for the acts alleged by Plaintiffs, Defendants assert that it will be necessary to study Defendants' registration records, and cross-correlate those records with credit card and other corroborating information. Defendants further assert that it will be also necessary to study materials in the possession of Plaintiffs concerning the use of the domains at issue. Since the exchange of discovery is critical to resolving this case, Defendants believe that conducting ADR after the close of fact discovery would most meaningfully contribute to a possible resolution of this case. For this reason, Defendants propose a fast-track for discovery and propose that the parties participate in an early settlement conference with a Magistrate Judge after the close of fact discovery.

The parties do not currently anticipate that any motions need to be resolved prior to the ADR session.

The parties have otherwise complied with the certification requirements of ADR Local Rule 3-5(b).

13. <u>Consent to Magistrate Judge for All Purposes</u>: The parties consent to have a magistrate judge conduct all further proceeding including trial and entry of judgment.

14. <u>Other References</u>: The parties do not believe this case is currently suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15. <u>Narrowing of Issues</u>: Other than a motion to determine personal jurisdiction over Domain

ID Shield, the parties do not currently anticipate any preliminary motions that may narrow the issues in this action. The parties will continue to meet and confer to seek ways to expedite the presentation of evidence at trial based on what claims survive summary judgment and what evidence is to be presented. The parties do not currently request bifurcation of any issues, claims, or defenses.

16. <u>Expedited Trial Procedure</u>: The parties have reviewed the Expedited Trial Procedure of General Order No. 64 Attachment A. The parties do not believe this is the type of case that can be handled pursuant to those expedited procedures.

17. <u>Scheduling</u>: The parties propose the following schedule:

| **Event** | **Plaintiffs' Proposal** | **Defendants' Proposal** |
|---|---|---|
| Deadline to Complete ADR Process | April 27, 2020 | 30 days after close of fact discovery |
| Last Day To Add Parties and Amend Pleadings | May 27, 2020 | May 27, 2020 |
| Fact Discovery Cut-off | December 4, 2020 | June 15, 2020 |
| Last Day to Serve Initial Expert Reports | December 18, 2020 | June 30, 2020 |
| Last Day to Serve Rebuttal Expert Reports | January 20, 2021 | July 15, 2020 |
| Expert Discovery Cutoff | February 17, 2021 | August 14, 2020 |
| Last Day to Hear Dispositive Motions | April 20, 2021 | September 15, 2020 |
| Final Pretrial Conference | May 27, 2021 | TBD |
| Trial | June 14, 2021 | December, 2020 |

As discussed above, the parties expect that they will ascertain the identity of some of the Doe Defendants through discovery, which will necessitate amending the pleadings to add those Doe Defendants. Defendants' counsel has advised Plaintiffs' counsel that some of the Doe Defendants are international entities. Accordingly, these entities will require time-consuming international service. Moreover, while the Complaint only details 20 infringing domain names, Plaintiffs' counsel has advised Defendants' counsel that expect to learn of many additional infringing domain names through discovery, and these additional domain names will necessitate further third-party discovery on additional international entities. As a result of the above information, Plaintiffs do not believe that Defendants'

proposed dates set forth a realistic timeline to add parties or conclude fact discovery.

Defendants assert that there is a relatively small set of relevant documents, mostly comprising of database records that capture simple registration information. Based on an initial review of the evidence, Defendants do not believe that this will be a document-intensive case – particularly because the Complaint only puts 20 domains in dispute. Accordingly, Defendants' relatively fast-tracked proposed schedule is justified. If the case is permitted to drag on, it will have a deleterious effect on Defendants' business reputation and revenues.

18. <u>Trial</u>: Defendants anticipate a jury trial of three days. Plaintiffs anticipate a jury trial of approximately five days.

19. <u>Disclosure of Non-party Interested Entities or Persons</u>: The parties have filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. In their certifications, the parties state that, other than the named parties and their shareholders, the parties had no interest to report. Plaintiffs further explained in their Rule 7.1 Disclosures that Facebook, Inc. is the parent of Instagram, LLC and that Facebook has no parent corporation and, to its knowledge, no publicly traded company owns 10% or more of its stock. Defendants disclose under Federal Rule of Civil Procedure 7.1 that OnlineNIC, Inc. is the parent of Domain ID Shield Service Co., Limited, and that no publicly traded company owns 10% or more of Defendants' stock.

20. <u>Professional Conduct</u>: All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

21. <u>Other Matters</u>: At this time, the parties do not currently anticipate the need to discuss other matters that may facilitate the just, speedy, and inexpensive disposition of this matter.

DATED: January 21, 2020                Tucker Ellis LLP


By:  /s/David J. Steele
     David J. Steele
     Howard A. Kroll
     Steven E. Lauridsen

     Attorneys for Plaintiffs,
     FACEBOOK, INC. and INSTAGRAM, LLC

9

**JOINT CASE MANAGEMENT STATEMENT**
Case No. 5:19-cv-07071-SVK

DATED: January 21, 2020          LexAnalytica, PC

By: /s/Perry J. Narancic
Perry J. Narancic

Attorneys for Defendants,
ONLINENIC, INC. and DOMAIN ID
SHIELD SERVICES CO., LIMITED

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that all other signatories listed and on whose behalf this filing is made concur in the filing of this document and have granted permission to use an electronic signature.

/s/David J. Steele

**CASE MANAGEMENT ORDER**

The above Joint Case Management Statement and Proposed Order is approved as the Case Management Order for this case, and all parties shall comply with its provisions.

**IT IS SO ORDERED.**

DATED: _____
Susan van Keulen
U.S. Magistrate Judge