TUCKER ELLIS LLP
David J. Steele SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll SBN 100981
howard.kroll@tuckerellis.com
Howard A. Kroll SBN 100981
howard.kroll@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone: 213.430.3400
Facsimile: 213.430.3409

Attorneys for Plaintiffs,
FACEBOOK, INC. and INSTAGRAM, LLC

LEXANALYTICA, PC
Perry J. Narancic – SBN 206820
pjn@lexanalytica.com
2225 E. Bayshore Road
Suite 200
Palo Alto, CA 94303
Telephone: 650.655.2800

Attorneys for Defendants,
ONLINENIC, INC. and DOMAIN ID SHIELD
SERVICES CO., LIMITED

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ONLINENIC, INC. and DOMAIN ID SHIELD SERVICES CO., LIMITED,<br><br>Defendants. | Case No. 5:19-cv-07071-SVK<br><br>**[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION**<br><br>Hon. Susan van Keulen |

1. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

2. COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

3. LIAISON

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

4. PRESERVATION

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a) Only relevant ESI created or received between October 28, 2012 and October 28, 2019 will be preserved;

b) The parties have exchanged or will exchange a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, *e.g.*, "HR head," "scientist," and "marketing manager." The parties shall add or remove custodians as reasonably necessary;

c) The parties have agreed/will agree on the number of custodians per party for whom ESI will be preserved;

d) These data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved but not searched,

reviewed, or produced: backup systems and/or tapes used for disaster recovery and systems no longer in use that cannot be accessed.

e) Among the sources of data the parties agree are not reasonably accessible, the parties agree not to preserve the following:

1. Deleted, slack, fragmented, or unallocated data only accessible by forensics;
2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;
3. Internet browsing data such as temporary internet files, history, cache, cookies, and the like.
4. Data in metadata fields that are frequently updated automatically, such as last-opened dates;
5. Voice messages;
6. Sound recordings, including, without limitation, .mp3 and .wav files;
7. Video recordings;
8. Information contained on mobile devices;
9. Mobile device activity logs;
10. Server or system logs;
11. Dynamic fields in databases or log files not stored or retained in the usual course of business;
12. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment by the party; and
13. Other forms of ESI whose preservation requires unreasonable, disproportionate, and/or non-routine, affirmative measures that are not utilized in the ordinary course of business.

f) In addition to the agreements above, the parties agree data from these sources (a) could contain relevant information but (b) under the proportionality factors, should not be preserved: none at this time.

3

5. SEARCH

(a) The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

(b) Nothing in this Order shall be construed or interpreted as precluding a producing party from performing a responsiveness review to determine if documents captured by search terms are in fact relevant to the requesting party's request. Further, nothing in this Order shall be construed or interpreted as requiring the production of all documents captured by any search term if that document is in good faith and reasonably deemed not relevant to the requesting party's request.

(c) Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

(d) De-Duplication. Each party is required to produce only a single copy of a responsive document and each party may de-duplicate responsive ESI (based on MD5 hash values at the document level) across Custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. To the extent that de-duplication through MD5 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication.

(e) Email Threading. Where multiple email messages are part of a single chain or "thread," a party is only required to produce the most inclusive message ("Last in Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last In Time Email. Only email messages for which the parent document and all attachments are contained in the Last in Time Email will be considered less inclusive email messages that need not be produced.

6.  PRODUCTION FORMATS

The parties agree to produce documents in ☒ PDF, ☒TIFF/JPEG, ☒native and/or ☐paper or a combination thereof (check all that apply) file formats. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. More specifically, the parties agree to produce documents in the formats described in Appendix 1 to this Order unless doing so would not be technologically feasible or unless the parties have specifically agreed to a different format for a particular production. The parties agree not to degrade the searchability of documents as part of the document production process.

7.  PHASING

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI, and the initial production will be from the following sources and custodians: for Plaintiffs, Facebook Legal and Plaintiffs' Brand Manager(s); for Defendants, Operations. Following the initial production, the parties will continue to prioritize the order of subsequent productions.

8.  DOCUMENTS PROTECTED FROM DISCOVERY

a.  Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding. A producing party may assert privilege or protection over produced documents at any time by notifying the receiving party in writing of the assertion of privilege or protection. Information that contains privileged matter or attorney work product shall be returned immediately or destroyed if such information appears on its face to have been inadvertently produced, or if requested. The receiving party must return, sequester, or destroy ESI that the producing party claims is privileged or work product protected as provided in Rule 26(b)(5)(B) and may use such ESI only to challenge the claim of privilege or protection.

    b.    Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

    c.    The parties agree to log only the Last in Time Emails in a thread and need not log earlier, less inclusive email messages or "thread members" that are fully contained within the Last in Time Email.

    d.    Communications involving inside or outside counsel for the parties related to this case that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

    e.    The parties agree to furnish logs that comply with Fed. R. Civ. P. 26(b)(5) and any other legal requirements for all documents withheld or redacted on the basis of privilege, attorney work product, or similar doctrines. Privilege logs may be produced on a rolling basis or after all productions are complete, but prior to the close of discovery.

    f.    Nothing in this Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

9.   MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

DATED: February 13, 2020                    Tucker Ellis LLP


                                            By: /s/David J. Steele
                                                David J. Steele
                                                Howard A. Kroll
                                                Steven E. Lauridsen

                                                Attorneys for Plaintiffs,
                                                FACEBOOK, INC. and INSTAGRAM, LLC

DATED: February 13, 2020                    LexAnalytica, PC


                                            By: /s/Perry J. Narancic
                                                Perry J. Narancic

                                                Attorneys for Defendants,
                                                ONLINENIC, INC. and DOMAIN ID
                                                SHIELD SERVICES CO., LIMITED

## **ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that all other signatories listed and on whose behalf this filing is made concur in the filing of this document and have granted permission to use an electronic signature.


                                                       /s/David J. Steele


**IT IS ORDERED** that the forgoing Agreement is approved.


DATED: _____          _____
                                                Susan van Keulen
                                                United States Magistrate Judge

**APPENDIX 1: PRODUCTION FORMAT**

1. **Production Components.** Except as otherwise provided below, ESI shall be produced in accordance with the following specifications:

    (a) an ASCII delimited data file (.DAT) using standard delimiters;

    (b) an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance);

    (c) TIFF images;

    (d) and document level .TXT files for all documents containing extracted full text or OCR text.

    If a particular document warrants a different production format, the parties will cooperate in good faith to arrange for a mutually acceptable production format.

2. **Production Media and Access Controls.** Documents shall be encrypted and produced through electronic means, such as secure file sharing methods (*e.g.*, FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (*e.g.*, "VOL001"). Each piece of Production Media shall also identify: (a) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media.

    Nothing in this Order will preclude or impair any and all protections provided the parties by any Protective Order(s) agreed and entered into by the parties. Any data produced by the producing party must be protected in transit, in use, and at rest by all in receipt of such data. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. Any copies made of produced data must be kept on media or hardware employing whole-disk or folder level encryption or otherwise secured on information systems and networks in a manner consistent with the best practices for data protection. If questions arise, Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

3. **Data Load Files/Image Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files shall not vary in format or structure within a production, or from one production to another.

4. **Metadata Fields.** Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) CUSTODIAN, (f) DEDUPED_CUSTODIAN, (g) CONFIDENTIALITY, (h) REDACTIONS, (i) NATIVEFILEPATH, (j) TEXTFILEPATH, and (k) HASHVALUE, which should be populated by the party or the party's vendor. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
| --- | --- |
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |

| Field Name | Field Description |
| --- | --- |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Individual from whom the documents originated |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| HASHVALUE | MD5 hash value of document |
| AUTHOR | Any value populated in the Author field of the document properties (Edoc or attachment only) |
| DOCDATE | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment only) |
| DATEMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) (Edoc or attachment only) |
| FROM | The name and email address of the sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| SUBJECT | All information listed in the "Subject" line of the email |
| DATRECEIVED | Date email was received (format: MM/DD/YYYY) |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |

| Field Name | Field Description |
|---|---|
| INTMESSAGEHEADER | The full header data for the email |
| FILESIZE | The original file size of the produced document |

5. **TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Documents that exist as ESI shall be converted and produced as TIFFs, except as provided below. The parties shall take reasonable efforts to process presentations (*e.g.*, MS PowerPoint) with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF image. Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the producing party shall provide a higher quality TIFF image or the native or original file.

6. **Color.** The parties may request color copies of a limited number of documents where color is necessary to accurately interpret the document. When a document is produced in color, images may be produced as single page, JPEG images.

7. **Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents and for documents with redactions.

8. **Native files.** Database files will be produced in native format whenever possible. Spreadsheets (*e.g.*, MS Excel) will also be produced in native format unless redacted, in which instance, spreadsheets shall be produced in TIFF with OCR text files. To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format. Native files shall be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 4 above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file. If good cause exists to request production of files, other than those specifically set forth above, in native format, the requesting party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. The parties agree to work out a protocol for use of native files at depositions, hearings, or trial.

9. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the protective order entered in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

10. **Databases and Other Structured Data.** The parties shall meet and confer regarding the production format and scope of data contained in databases in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden on the producing party, by, for example, requiring development of reports and/or software code to extract the information. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. As discussed in Section 8, whenever possible, database files should be produced in native format. To the extent a party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the parties

shall meet and confer to reach an agreement on alternative methods to enable the requesting party to view the ESI.