TUCKER ELLIS LLP
David J. Steele - SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll - SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen - SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:  213.430.3400
Facsimile:  213.430.3409

Attorneys for Plaintiff,
FACEBOOK, INC. and INSTAGRAM, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC<br><br>Plaintiff,<br><br>v.<br><br>ONLINENIC INC., DOMAIN ID SHIELD SERVICE CO., LIMITED, and DOES 1-20<br><br>Defendants. | Case No. 5:19-CV-07071-SVK<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS UNDER PROTECTIVE ORDER (ECF 35) AND MOTION FOR PROTECTIVE ORDER**<br><br>DATE:  December 1, 2020<br>TIME:  10:00 a.m.<br>CTRM:  6 – 4th Floor<br><br>Hon. Susan van Keulen |

## I.  INTRODUCTION

Defendants have rushed into Court crying foul over a crisis of their own making. This manufactured dispute arises from Defendants flouting this Court's ESI and Protective Orders in an improper attempt to shift their discovery obligations to Plaintiffs. It is undisputed that Defendants violated the Protective Order's prohibition on mass, indiscriminate confidentiality designations. Defendants' entire motion essentially states "no harm, no foul" coupled with an attempt to paint Plaintiffs as bullies who are harassing them over procedural minutia. But the Court's orders governing discovery and the production of documents exist for important reasons, and those reasons loom large here.

Defendants' chief complaint is that Plaintiffs made it prohibitively expensive to review the large number of documents[1] resulting from Plaintiffs' allegedly unreasonable ESI search terms. But when Defendants searched these terms, they never met and conferred with Plaintiffs to advise that the terms resulted in an unreasonable number of documents to review, as required by the ESI Order. Had Defendants done so, the parties could have worked together to revise the terms to limit the number of responsive documents, as is common in e-discovery practice and as is specifically required in the ESI Order. Instead, Defendants failed to even raise the issue and performed a large data dump without even reviewing their documents for responsiveness, let alone confidentiality.

Defendants' decision to shirk their e-discovery obligations does not result in a mere inconvenience to Plaintiffs. Instead, Defendants now attempt impermissibly to shift their burden onto Plaintiffs to identify documents they wish to use to see if they are truly confidential. As a result, Plaintiffs must choose between tipping their hand and giving Defendants advance notice of which documents they may use in a motion or at deposition, or burden this Court with potentially unnecessary under seal filings. And Defendants blanket statement that "public documents" are of course not confidential provides no solution. Plaintiffs must scour the Internet and public records to determine whether a document truly is public or face the unfair choice of tipping their hand or burdening the Court. This is improper and defeats the entire purpose of the ESI and Protective Orders, and as such, this behavior should not be countenanced by the Court. The motion should therefore be denied in its entirety.

## II.   SUMMARY OF RELEVANT FACTS AND ARGUMENT

### A.   Background of Plaintiffs' Claims

Plaintiffs Facebook and Instagram own the exclusive rights to the famous *Facebook* and *Instagram* marks. In their complaint, Plaintiffs list twenty domain names that infringe their trademarks and that are being used by cybersquatters for malicious activities, including phishing, malware, spam and fraud.

---

[1] Of the 272,145 pages of documents produced by Defendants to date, 241,628 pages of them are designated as "Confidential," and Defendants made no attempt to determine if any actually contained confidential information ("Subject Documents"). These documents are identified by Bates Nos. ONLINENIC_018278 – ONLINENIC_225763, ONLINENIC_225791 – ONLINENIC_258330 and ONLINENIC_0268299 – ONLINENIC_268733.

Defendant OnlineNIC, an ICANN accredited domain name registrar, is the registrar for each of these domain names, and its *alter* ego Domain ID Shield provides proxy services for the domain names that OnlineNIC registers, including those at issue in this case. A proxy service like Domain ID Shield registers domain names as the registrant and then licenses the use of the domain names back to the customer. As a result, the contact information of the proxy service provider is listed in the public Registration Data Directory Services (including the WHOIS database), and not the contact information of the entity that is actually using the domain name. This allows the entity controlling the domain name to hide its identity. The proxy service provider is required to disclose the identity and contact information for the entity or individual that controls the use or operation of the infringing domain name upon being provided with reasonable evidence of actionable harm or accept liability for that harm.

Defendants, who have continuously engaged in a scheme to protect and promote these and other cybersquatters, have chosen not to reveal contact information despite receiving notices containing reasonable evidence of actionable harm. Between April 2019 and August 2019, Plaintiffs sent each of the defendants a notice containing reasonable evidence that the owners and operators of these internet sites were causing Plaintiffs actionable harm. These notices also requested information regarding the identity of these individuals and entities, including their contact information. In furtherance of their scheme to attract cybersquatters to use their services for domain names engaged in malicious activities, Defendants did not provide Plaintiffs with this information.

**B.    Defendants Failed to Meet and Confer With Plaintiffs in Good Faith.**

Plaintiffs served requests for production of documents on each defendant on March 20, 2020. Declaration of David J. Steele ("Steele Decl.") ¶ 2. Over the months it took Defendants to produce documents responsive to those requests, Defendants produced, and re-produced its entire production. In total, Defendants produced 271,145 pages of documents; 241,628 pages of these documents as "Confidential." *Id.*

On October 1, 2020, Plaintiffs' counsel David Steele wrote to Defendants' counsel Perry Narancic, detailing the disputes concerning Defendants' mass, indiscriminate and routinized confidentiality designations and seeking to schedule a time to meet and confer to resolve these disputes. Steele Decl., *Id.* ¶ 3. Mr. Steele and Mr. Narancic discussed Defendants' Confidential designations during a Zoom call

on October 12, 2020. *Id.* at ¶ 4. Mr. Narancic acknowledged that every email (and attachment), and support ticket produced by Defendants was marked as confidential. *Id.* at ¶ 5. And while Mr. Narancic also admitted that Defendants ***did not*** perform either a relevance or confidentiality review on these documents before they were marked *Confidential* and produced, he denied that Defendants' designations were "mass and indiscriminate." *Id*. Mr. Narancic also raised, for the first time, his view that Plaintiffs' ESI search terms were too broad and resulted in too many results to review. *Id. a*t ¶ 7.

Importantly, Defendant's position was that Plaintiffs could only satisfy their meet and confer obligations by identifying every single page of the production that was improperly designated along with the specific reason(s) for the improper designation. *Id. a*t ¶ 8.

Mr. Narancic further agreed to go back and review a limited subset of the documents produced to date—specifically, all emails sent to abuse@onlinenic.com and de-designate as confidential any email that was sent by a trademark owner and that did not contain sensitive customer information. *Id*. at ¶ 9. Mr. Narancic refused to review other documents for proper designations. *Id*. at ¶ 8. Plaintiffs' counsel contacted Mr. Narancic the following week asking for an update on when he would complete his promised review of the abuse@onlinenic.com emails. *Id*. ¶ 10. Mr. Narancic never responded, but instead filed the pending motion. *Id. a*t ¶ 11.

### III.   DEFENDANTS' MOTION SHOULD BE DENIED AND DEFENDANTS SHOULD BE ORDERED TO PROPERLY REVIEW AND DESIGNATE THEIR PRODUCTION.

**A.   Defendants' Mass *Confidential* Designations Violate the Stipulated Protective Order.**

The Protective Order in this action, which was stipulated to by all parties, is based upon the Northern District's *Model Stipulated Protective Order for Standard Litigation*, and specifically prohibits "mass, indiscriminate or routinized" confidentiality designations. *Order*, § 5.1. The prohibition of mass confidentiality designations is consistent with this Court's policy "of providing to the public full access to documents filed with the Court." *Krawitt v. Infosys Technologies Limited Incorporated*, No. 16-cv-0411, 2019 WL 102504 at *2 (N.D. Cal. Jan. 4, 2019). *See also, Shenwick v. Twitter, Inc.*, No. 16-cv-05314, 2019 WL 1552293 (N.D. Cal. April 9, 2019) (holding that wholesale confidentiality designations are not justified and if allowed would render language in a protective order requiring restraint and care in designating information as *Confidential* meaningless). Defendants do not deny that they designated almost

4

the entirety of their production without considering whether individual documents actually qualified for confidential treatment. Accordingly, it is clear that Defendants violated the Protective Order when they designated the Subject Documents as confidential.

Defendants attempt to justify their conduct by describing the confidentiality designations as "place holders." *Motion*, p. 6, ln 27 – p. 7, ln. 1. But there is no provision in the Protective Order for place holder designations, and Defendants' characterization of their *confidential* designations as "place holders" is self-serving and a thinly veiled improper attempt to shift the burden of reviewing and marking its documents as confidential to Plaintiffs. *See Del Camp v American Corrective Counseling Services Inc.*, No. C-01-21151, 2007 WL 43306496 (N.D. Cal. Nov 6, 2007) (holding that mass confidentially designations impose an unfair burden of improperly shifting the cost of review of confidentiality to the non-producing party and which justify sanctions.)

The only authority that Defendants cited as support for their conduct is a 2011 district court order from the Southern District of New York. *Bank of Montreal v. Optionable, Inc.*, No. 09 Civ. 7557, 2011 WL 6259668 (S.D.N.Y. Dec. 15, 2011). This decision, however, is not controlling, and even if it were, it is distinguishable because the Protective Order in that case did not contain a prohibition of mass and indiscriminate confidentiality designations.

**B.  Defendants' Failure to Meet And Confer Regarding ESI Search Terms Has Caused A Problem Of Defendants' Own Making.**

Defendants also argue in their motion that the keywords Plaintiffs provided "were spectacularly broad . . . amounting to over 270,000 pages [of documents]" and that, as a result, the "the Court should intervene to protect Defendants from Plaintiffs' . . . expansive keywords, and oppressive demands for page-by-page review of millions of records." *Motion* at p. 1 and p. 8. This argument is specious. The stipulated ESI order in this action specifically contemplates this common e-discovery issue and states that the parties "will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery ***and filter out ESI that is not subject to discovery.***" ECF No. 36 ("ESI Order"), § 4. (emphasis added).

After receiving Plaintiffs' initial set of search terms and executing its searches, Defendants at no point requested that the parties meet and confer further to narrow the allegedly "expansive" list to allow

5

for the review of a narrower subset of potentially responsive documents. Instead, Defendants ignored the Court's ESI Order and Protective Order, choosing instead to perform a massive data dump with no review for either responsiveness or confidentiality. Defendants cannot now complain about the circumstances they created, and they certainly cannot use the situation to justify shifting onto Plaintiffs the burden to determine which documents are confidential.

Frankly, the issues raised by Defendants could have all likely been avoided had Defendants properly meet and conferred about their alleged concerns with the ESI search terms. Doing so would have enabled Defendants to perform a proper review, for both relevance and confidentiality, in the first instance.

### C. Defendants' Are Improperly Shifting the Burden of Their Indiscriminate Confidentiality Designations onto Plaintiffs.

Defendants proposed solution regarding its improper mass designation is that Plaintiffs should send them notice of any improperly designated documents that they intend to use in the case, and Defendants will "review any confidentiality designations for that subset." *Motion* p. 2, lns. 14-16. If accepted, Defendants' proposal would force Plaintiffs to choose between burden the Court—and to bear the costs associated with—sealed filings or giving Defendants advanced notice of their intended filings and witness examinations.

Here, the burden shifting caused by Defendants' lax, indiscriminate confidentiality designations and not reviewing its document production is already manifesting. For example, Defendants stated during the meet and confer conference, and again in their motion, that "Defendants do not claim confidentiality over any publicly available information." *Motion* p. 2, ln. 9. However, when asked during the conference of counsel, Mr. Narancic said that Defendants would not affirmatively review their production and remove the confidential designations, but that Plaintiffs could challenge any designations it believed improper. Steele Decl. ¶ 8. This approach forces Plaintiffs to scour the public domain to learn whether a document was publically available, and then, if unable to locate a publically available document, to wonder if their search was truly exhaustive, again forcing them to challenge the designation with Defendants or file the document under seal.

The problems created by Defendants' proposed approach are further compounded by Defendants' failure to de-duplicate the documents in their production in accordance with the ESI Order. *See* ESI Order,

ECF No. 36, § 5(d) ("Each party is required to produce only a single copy of a responsive document . . . .").[2] In addition, the manner in which Defendants produced these documents has made any confidentiality review by Plaintiffs, extremely difficult, if not impossible. Specifically, Defendants produced 160,671 pages of "Confidential" Support Tickets in 103 PDF files. Most of these files, which are hundreds and sometimes thousands of pages in length, contain hundreds of separate documents. Defendants produced these PDF files without the metadata required by the ESI Order and organized the documents in each file without page breaks such that one document ends on the same page that the following document begins. Defendants also produced duplicate copies of many of the Support Tickets. Steele Decl. ¶ 12.

Not only has these issues unnecessarily increased the size the number of records in Defendants' production, but it has created ambiguities regarding the accuracy of their confidentiality designations. Just one example is found at Bates Nos. ONLINENIC_247621 – ONLINENIC_247622. This two page document is a copy of a November 4, 2015 email exchange between an employee of OnlineNIC and one of its customers that was shown to have registered and used an infringing domain name. This email falls into the range of documents that Defendants no longer claim are confidential. *See*, *Motion*, p. 2, lns. 8-12. Unfortunately, Defendants produced this same email five times, and four copies are marked as Confidential.[3] Steele Decl. ¶ 13.

Defendants also lean heavily on the fact that Plaintiffs only provided six examples of improperly designated documents during the parties' conference of counsel. *Motion* at p. 2. This is a distraction. Plaintiffs sent their meet and confer letter on October 1, 2020, and the parties' counsel scheduled their conference for October 12th. Despite having ample time to raise the issue, Mr. Narancic waited until one

---

[2] Defendants' comments about the cost of review are not well taken for this reason as well. By compounding the size and complexity of their own production, Defendants invited these costs themselves. Defendants further contend it would cost between $40,000-$80,000 to review their production. This assumes a senior attorney would spend 100-200 hours conducting the review at $400 an hour. *Motion*, p. 8. lns 4-8. Defendants ignore the fact that they could use contract attorneys, whose rates are far lower.

[3] This email can also be found at ONLINENIC_212691 – ONLINENIC_212692, ONLINENIC_223566 – ONLINENIC_223567, ONLINENIC_259527 – ONLINENIC_259528 and ONLINENIC_268724 – ONLINENIC_268725. Steele Decl. ¶ 13. In the interest of judicial economy, Plaintiffs have decided not burden the Court with a sealed filing just so that it can review four identical copies of the same document.

hour and forty-five minutes before the conference to request "specific examples of the kinds of designations that are being challenged." Steele Decl. ¶ 4. As requested, Plaintiffs provided six exemplars of the types of indiscriminately designated documents that plague Defendants' production and thus provided Mr. Narancic sufficient information to understand why Defendants mass designation was improper. *Id*. Now Defendants complain that Plaintiffs have 'only provided six examples.' During the meet and confer Mr. Narancic agreed that all of the examples were non-confidential, and he advised that he was de-designating each document.[4] *Id*.

## IV.   CONCLUSION

Plaintiffs regret that this issue has to be raised to the Court and in this posture, but they request that the Court deny Defendants' motion and require Defendants to generate a production compliant with the Protective Order, including with appropriate confidentiality designations, and substitute that production for the documents already produced.[5]

///

///

///

---

[4] Like the vast majority of the documents contained in the production, none of these six representative documents contained financial records, confidential customer information, or information that would raise privacy concerns under the GDPR, as evidenced by Defendants agreeing to remove the confidential designation.

[5] In their motion Defendants have already conceded that they improperly designated the 26,395 pages of UDRP decisions found at ONLINENIC_225793 – ONLINENIC_252185 as confidential, and that those designations can be stricken. *Motion*, p. 2, lns. 10-11.

DATED: November 5, 2020               Tucker Ellis LLP


                                      By: /s/David J. Steele
                                          David J. Steele
                                          Howard A. Kroll
                                          Steven E. Lauridsen

                                          Attorneys for Plaintiffs,
                                          FACEBOOK, INC. and INSTAGRAM, LLC

                                          Platform Enforcement and Litigation
                                          Facebook, Inc.
                                             Jessica Romero
                                             Stacy Chen
                                             Olivia Gonzalez