

515 South Flower Street, Forty Second Floor | Los Angeles, CA 90071-2223 | TEL 213.430.3400 | FAX 213.430.3409

February 10, 2021                    DIRECT DIAL 213.430.3360 | david.steele@tuckerellis.com

**VIA CM/ECF**

Magistrate Judge Susan van Keulen
U.S. District Court
Northern District of California
280 South 1st Street
San Jose, CA 95113

Re: *Facebook Inc. et al. v. OnlineNIC Inc., et al.*
   *No. 5-19-cv-07071-SKV*
   *Joint Discovery Letter Brief – Request for Special Discovery Master*

Magistrate Judge Susan van Keulen
February 10, 2021
Page 1

Dear Magistrate Judge van Keulen:

Pursuant to the Court's June 29, 2020 Civil Scheduling and Discovery Order, the parties to the above-entitled action submit this joint statement to seek the Court's assistance in resolving a discovery dispute.

**Days Remaining Before the Close of Fact Discovery and/or Trial**

The close of fact discovery is May 4, 2021, and trial is set to begin on November 15, 2021. (ECF No. 60). There are **83 days** before the close of fact discovery and **278 days** before trial is scheduled to commence.

**Brief Statement of the Unresolved Dispute.**

The parties are at an impasse regarding Defendants' production of its Support Ticket Database in response to Plaintiffs' first set of requests for production. Specifically, Plaintiffs contend that absent the appointment of a special discovery master, Defendants' conduct will prevent Plaintiffs' from obtaining accurate and complete evidence of their Defendant's conduct that is contained in native database records.

Defendants contend such an appointment is draconian and pre-mature.

**Facebook and Instagram's Statement of Proposed Compromise**

The present dispute dates back to Plaintiffs' First Request for Production of Documents that was served on March 20, 2020. After numerous extensions, the last of which expired on May 11, 2020, defendants served their written responses and made their initial production of documents on June 9, 2020. **TOTAL DELAY TO DATE: 51 Days.**

Defendants' written responses and document production were inadequate. To compel compliance, Plaintiffs engaged in a series of discovery conferences with Defendants' counsel that ultimately concluded on July 15, 2020. As a result of these meetings Defendants agreed to make a supplemental production of documents on or before July 21, 2020. Defendants, however, did not meet this deadline and instead provided their first supplemental production on July 25, 2020. **TOTAL DELAY TO DATE: 97 Days.**

Defendants' first supplemental production contained numerous errors, and it took Defendants until August 20, 2020 to provide a corrected third supplemental production. And while this production resolved the technical errors and contained the requested emails and support tickets, Defendants produced these documents in an unusable format. As previously discussed with this Court, Defendants did not produce these documents in their native format or as TIFFs with the required metadata. Rather, Defendants combined hundreds of separate support tickets and emails into single PDFs. Defendants had created and produced over 1,000 PDFs, each of which contained hundreds and in some cases thousands of unrelated documents. It was this conduct that led to the hearing on November 10th at which the Court ordered Defendants to de-duplicate their email and support ticket production. **TOTAL DELAY TO DATE: 205 Days.**

However, rather than reproducing the de-duplicated support tickets in the format required by the ESI Order, Defendants elected to produce native database records ("Support Ticket Database") on November 27, 2020. However, after spending several days reviewing the contents of Defendants' initial production of the Support Ticket Database, it was clear that Defendants had redacted many of the database fields and tables from the source files. In addition, it was also clear that Defendants had filtered relevant and responsive support tickets from their production. Although Plaintiffs immediately raised this issue with Defendants' counsel, Defendants did not agree to make a supplemental production that would include all of the tables and files associated with the Support Ticket Database until December 15, 2020. **TOTAL DELAY TO DATE: 240 Days.**

Defendants re-produced Support Ticket Database (its third attempt at production) was significantly larger and more complex than Defendants' prior productions. However, as has become all too common a theme in this case, during their review of Defendants' production Plaintiffs discovered that Defendants' production was still incomplete. Plaintiffs detailed these deficiencies in their Response to Defendants' Status Report and Supporting Declaration of Perry

Magistrate Judge Susan van Keulen
February 10, 2021
Page 2

J. Narancic, which was filed with this Court on January 5, 2021 as Docket No. 56. **TOTAL DELAY TO DATE: 261 Days.**

All of which brings us to Defendants' latest ruse. On January 28, 2021 Defendants' counsel sent what purported to be a meet and confer letter regarding "ECF 56." Defendants' letter, however, did not address any of issues discussed in that filing. Rather, the letter contained Defendants' latest excuse for why the Support Ticket Database production was incomplete along with a claim that all of these errors had been corrected and that a fourth production of the Support Ticket Database was available for Plaintiffs to download.[1] **TOTAL DELAY TO DATE: 285 Days.**

In addition, counsel's letter contains the unbelievable claim that Defendants have been unable to locate the 171 unproduced support tickets referenced in ECF 56. Rather, what Defendants are doing, and what they have been doing for the past nine months, is producing only those documents Plaintiffs have already been identified that have not been produced and thereafter claiming that its previous failures were nothing more than honest mistakes. However, at some point (and to be clear Plaintiffs believe that point is now) Defendants claims should be disregarded. This is especially true for defendant OnlineNIC as it has been previously sanctioned for this same behavior. *See Verizon California Inc. et al. v. OnlineNIC, Inc.* United State District Court for the Northern District of California, Case No. C 08-2832 JF(RS), *Order Granting In Part And Denying In Part Motions For Contempt Sanctions And For Relief From Judgment* (Dkt. No. 136) (holding OnlineNIC in civil contempt finding by clear and convincing evidence that, after being ordered to produce certain documents, OnlineNIC produced "a selective subset of data.").

Under FED. R. CIV. P. 53(a)(l)(C) ("Rule 53"), a district court may appoint a special master to "address pre-trial and post-trial matters that cannot be addressed effectively or timely by an available district judge or a magistrate judge of the district." At the discretion of the Court, a special master can be appointed "to aid [the] judge in the performance of specific judicial duties, as they may arise in the progress of a cause." *Civil Aeronautics Bd. v. Carefree Travel, Inc.*, 513 F.2d 375, 382 (2d Cir. 1975) (quoting *Ex Parte Peterson,* 253 U.S. 300, 312 (1920) and citing *LaBuy v. Howes Leather Co.*, 352 U.S. at 256)); *see also Barnard-Curtiss Co. v. Maehl*, 117 F.2d 7, 11 (9th Cir. 1941) ("Whether a reference in such an action shall be made is largely within the discretion of the trial court"). In addition to their express authority under Rule 53, district courts also have inherent power to appoint special masters. *See Peterson*, 253 U.S. at 312; *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1566 (Fed. Cir. 1988); *Ruiz v. Estelle*, 679 F.2d 1115, 1161 (5th Cir. 1982) ("Federal courts have the inherent power to appoint persons unconnected with the court to aid judges in the performance of specific duties.").

Defendants' repeated selective and deliberately limited disclosure of their database files in this case, along with their being sanctioned for similar discovery misconduct in the past justifies the appointment of a special master to ensure full and complete production of its databases at Defendants' expense. In *National Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 560-64 (N.D. Cal. 1987), the Court appointed a special master at the expense of the party that was abusing the discovery process. Specifically, the party sanctioned failed to comply with their discovery obligations which included failing to "divulge information and produce documents." The Court explained that the use of special masters in certain pretrial and discovery proceedings

---

[1] As with prior productions, Defendants have not provided Plaintiffs with the working credentials necessary to download the requested documents. Rather than simply making these files accessible to Plaintiffs via a commercial large-file transfer service, Defendants require Plaintiffs access servers controlled directly by Defendant's and to extract the data from these servers. Not only is the process significantly more complicated and slower, often times the access credentials are frequently invalid requiring additional back and forth between Defendants' counsel. All of which is consistent with Defendants strategy of "Delay and Obfuscate and Delay and Obfuscate".

Magistrate Judge Susan van Keulen
February 10, 2021
Page 3

has been upheld. *In re Armco, Inc.*, 770 F.2d 103 (8th Cir.1985). In *Armco* the special master was given "broad authority to supervise and conduct pretrial matters, including discovery activity, the production and arrangement of exhibits and stipulations of fact, the power to hear motions for summary judgment or dismissal and to make recommendations with respect thereto." *Id.* at 105. Numerous other cases have approved the appointment of special masters where parties have failed to comply with court orders, displayed intransigence in the litigation, or required close supervision. *See Ruiz v. Estelle*, 679 F.2d 1115, 1159-63 (5th Cir.), *modified on other grounds*, 688 F.2d 266 (5th Cir. 1982), *cert. denied*, 460 U.S. 1042 (1983); *Gary W. v. Louisiana*, 601 F.2d 240, 244-45 (5th Cir. 1979). The Court explained that discovery is an area where special masters are frequently appointed either because the problems are complicated or the parties are recalcitrant. *See United States v. American Tel. & Tel. Co.*, 461 F. Supp. 1314, 1348-49 (D.D.C. 1978); *Fisher v. Harris, Upham & Co.*, 61 F.R.D. 447, 449 (S.D.N.Y. 1973), *appeal dismissed mem.*, 516 F.2d 896 (2d Cir. 1975).

Not only have Defendants' discovery tactics caused delay, they have obfuscated Plaintiffs' ability to discover facts relevant to this case, including about Defendants' communications with their customers, Defendants' knowledge of their customers' identities, Defendants' financial information, and the knowledge and participation of Defendants' ultimate parent company, 35 Technology Co. Ltd ("35 Tech."). As Plaintiffs previewed for the Court, *see* Dkt. 51, Plaintiffs have propounded discovery and have been seeking facts regarding 35 Tech.'s participation in Defendants' conduct, and Defendants have repeatedly sought to stonewall that discovery, too. For example, Plaintiffs only recently learned that OnlineNIC's database system is hosted by 35 Tech. and is operated exclusively by 35 Tech. employees. Plaintiffs have been prejudiced by Defendants' failure to abide by its discovery obligations and without recourse from the Court will continue to be further prejudiced.

**OnlineNIC and Domain ID Shield's Statement of Proposed Compromise**

Nothing in Facebook's submissions justifies the draconian intervention that it seeks. Based on Facebook's proposed order, a third party will have unfettered access to every corner of Defendants' business - including sensitive financial information, competitive data, and customer information. From the submissions below, it is clear that Facebook's litigation objective is to harass and exhaust defendants to the point where they are forced out of business - which is exactly the intent demonstrated in Facebook's ill-considered, defamatory and unprivileged press releases which refer to Defendants as committing "domain name fraud" and "malicious activity". https://techcrunch.com/2019/10/31/facebook-sues-onlinenic-for-domain-name-fraud-associated-with-malicious-activity/. Whoever said a little pre-trial publicity *by a party* to poison a jury pool is a bad idea? Since Facebook wishes to impose a draconian measure and penalize it by paying more fees, it is important that Facebook come to the Court with accurate facts and with clean hands. It has not.

As one example of this bad faith, this is now Facebook's second attempt to obtain a special master. The first attempt was in a procedurally improper "Response to Status Report" (Dkt. No. 58) – whatever that is – which was filed on Jan. 5, 2021. Facebook's counsel admits that the question of a special master was never discussed, and that the first defense counsel heard about it was through ECF:

> Perry,
>
> You've been aware of this issue since Jan. 5, 2021 (since we filed our Response to your declaration). We also discussed the need for and the appointment of a Special Master with you several times since our Jan. 5, 2021 filing (including when you expressed your view that a

While there have been some problems in getting some documents, this mostly resulted from serious language barriers. In addition, Defendants are tiny companies with less than 20 personnel and they have been overwhelmed by Facebook's relentless onslaught – which has

Magistrate Judge Susan van Keulen
February 10, 2021
Page 4

included about 400 document requests, and nearly 300 RFAs. However, far from showing contempt, Facebook's own submissions show that Defendants have been willing to meet with Facebook at every turn.

Now, some facts – which Facebook conveniently ignores. First of all, it is notoriously difficult to work with databases in electronic discovery. For instance, it is not possible to Bates number database records. That is the reason that OnlineNIC provided PDF copies of the support tickets from their database - so that they could be Bates numbered and easily referred to for the purpose of trial and depositions. Secondly, the databases at issue here are massive. Facebook's own court filings show that Defendants have produced approximately 10GB of native database files (Dkt. No. 58-1, para. 8). Thirdly, databases are difficult to work with because it is not a straightforward task to cull only that information which is responsive. Of the many customers that Defendants have, only a handful are at issue in this litigation. Producing responsive information takes a fair amount of rather sophisticated work, which Defendants have done.

Facebook also has some serious problems with its factual allegations. Contrary to what it says, OnlineNIC provided electronic, and fully searchable html versions of the support ticket database only days after producing the PDFs (specifically, in August 2020). Facebook's allegations that Defendants are hiding data in the Support Ticket Database just doesn't add up. Here are some examples. On November 3, 2020, Facebook's counsel wrote to complain that it was impossible to search the support tickets because they were difficult to search pdf's:

> Steele, David J. <David.Steele@tuckerellis.com>   Tue, Nov 3, 2020, 3:49 PM
> to me, Steven, Howard
>
> Perry,
>
> I am writing to you in the hope of resolving an issue with defendants' document production in the folder labeled KEYWORD SUPPORT TICKETS FROM 2015, Bates Nos. ONLINENIC_018278 through ONLINENIC_222221. As you may know, defendants produced 160,671 pages of support tickets in 104 PDF files. Each PDF contains multiple support tickets and averages 851 MB in size and 4,726 pages long. In addition, sequential support tickets end and begin on the same page, and many of the support ticket have been duplicated in multiple files produced. By way of example, Support Ticket PGW-859580 is 337 pages in length and has been produced in eight (8) separate files (018278,020698, 054950, 074386, 108833, 124930, 127215 and 163508). Accordingly, the size, format and lack of required metadata has made reviewing these documents unnecessarily burdensome.
>
> As a result, I am requesting that defendants re-produce the KEYWORD SUPPORT TICKETS in one of two ways. Our preference would be that the support tickets be produced in one or more native database tables, much like defendants have produced selections from its Registration Database. If for some reason that is not possible, we need you to re-produce the support tickets as TIFF files, with one ticket per file, and with the required metadata, including hash values. Since this will result in more than the 160,671 pages than were originally produced, we suggest that you begin this production with Bates Number ONLINENIC_500001.

However, Facebook's allegation is simply not true. A search of the database in Relativity discloses a number of searchable html hits (not just pdf's) for the Support Ticket referenced by Facebook - PGW-859580

Magistrate Judge Susan van Keulen
February 10, 2021
Page 5



In response to Facebook's email of Nov. 3, 2020 (above on page 4) in which Facebook sought a native Support Ticket database (not TIFF's), Defendants complied without complaint:

The last native version of the Support Ticket Database was served on Feb. 5, 2021 – Facebook has not even advised if it has looked at it. Moreover, there are examples after examples where Defendants have co-operated to produce relevant information, beyond what is called for in the Federal rules. For instance, when Facebook sought descriptions of database tables, Defendants responded within 3 days:



To cut to the chase, Defendants respectfully ask that the Court delay issuing any order hereunder until Facebook reports to the Court that the last version of the Support Ticket Database that was delivered on February 5, 2021 is allegedly deficient. A short delay is also appropriate because Defendants will likely file at least one motion to compel joint letter (which has already been served upon Facebook) on Monday February 15, 2021 – unless Facebook responds to Defendants' discovery. The proposed joint letter will, as far as Defendants are concerned, show serious discovery problems on the part of Facebook. The results of that motion may be relevant to assessing the present motion.

If the Court is inclined to grant Facebook's motion, Defendants respectfully request that: (a) any special master appointment be limited to a review of the Support Ticket Database only (not the entirety of Defendant's business), and (b) Facebook pay for such review.

Magistrate Judge Susan van Keulen
February 10, 2021
Page 6

| TUCKER ELLIS LLP | LEXANALYTICA, PC |
|---|---|
| By: /s/David J. Steele<br>David J. Steele<br>Attorneys for Plaintiffs<br>FACEBOOK, INC. and INSTAGRAM, LLC | By: /s/Perry J. Narancic<br>Perry J. Narancic<br>Attorneys for Defendants<br>ONLINENIC, INC. and DOMAIN ID SHIELD SERVICES CO., LIMITEDAttnysFor |