TUCKER ELLIS LLP
David J. Steele - SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll - SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen - SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:    213.430.3400
Facsimile:    213.430.3409

Attorneys for Plaintiffs,
FACEBOOK, INC. and INSTAGRAM LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVSION**

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM LLC,<br><br>  Plaintiffs,<br><br>  v.<br><br>ONLINENIC INC. and DOMAIN ID SHIELD SERVICE CO., LIMITED,<br><br>  Defendants. | Case No. 5:19-cv-07071-SVK<br><br>**PLAINTIFFS FACEBOOK, INC. AND INSTAGRAM LLC'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT AND TO MODIFY THE SCHEDULING ORDER TO ALLOW AMENDMENT OF THE COMPLAINT**<br><br>Date:    April 6, 2021<br>Time:   10:00 a.m.<br>Court:  Courtroom 6, 4th Floor<br>Judge:  Hon. Susan van Keulen |

**Table of Contents**

Page

NOTICE OF MOTION ........................................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................... 2

I.  INTRODUCTION ................................................................................................................. 2

II. SUMMARY OF THE RELEVANT FACTS ....................................................................... 3

    A.  Factual Background ................................................................................................. 3

    B.  Procedural Background ............................................................................................ 6

III. ARGUMENT ......................................................................................................................... 7

    A.  Good Cause Exists For Leave To Amend The Scheduling Order ........................... 7

    B.  Facebook Should Be Granted Leave to Amend Its Complaint ................................ 9

        1.  Facebook Does Not Bring Its Motion In Bad Faith ..................................... 9

        2.  Facebook Has Not Unduly Delayed Bringing Its Motion ........................... 10

        3.  Granting Facebook's Motion Does Not Substantially Prejudice Defendants ................................................................................................... 11

        4.  The Claims Against 35.CN In The FAC Are Not Futile ............................. 13

IV. CONCLUSION ................................................................................................................... 13

**Table of Authorities**

Page(s)

**Cases**

*Abels v. JBC Legal Grp., P.C.*,
  229 F.R.D. 152 (N.D. Cal. 2005)..................................................................................... 10, 13

*Bd. of Trs. of the Auto. Indus. Welfare Fund v. Groth Oldsmobile/Chevrolet, Inc.*,
  No. C 09-0465 PJH, 2010 WL 760452 (N.D. Cal. Mar. 4, 2010) ......................................... 13

*Booker v. Glotel, Inc.*,
  No. C 05-4795 CW, 2006 WL 823218 (N.D. Cal. Mar. 28, 2006) ....................................... 12

*C.F. v. Capistrano Unified Sch. Dist.*,
  656 F. Supp. 2d 1190 (C.D. Cal. 2009) ................................................................................ 7

*Ciampi v. City of Palo Alto*,
  No. 09-CV-02655-LHK, 2010 WL 5174013 (N.D. Cal. Dec. 15, 2010) ............................. 12

*City of Dana Point v. New Method Wellness, Inc.*,
  39 Cal.App.5th 985 (2019) .................................................................................................... 2

*DCD Programs, Ltd. v. Leighton*,
  833 F.2d 183 (9th Cir. 1987) ..................................................................................... 9, 10, 11

*Dep't of Fair Emp't & Hous. v. Law Sch. Admission Council, Inc.*,
  No. C-12-1830 EMC, 2013 WL 485830 (N.D. Cal. Feb. 6, 2013) ................................ 10, 12

*Dominguez v. Crown Equip. Corp.*,
  No. 2:14-CV-07935-SVW-E, 2015 WL 3477079 (C.D. Cal. June 1, 2015) ......................... 9

*Ecojet, Inc. v. Luraco, Inc.*,
  No. 16- cv-00487-AG-KES, 2017 WL 6939158 (C.D. Cal. Mar. 22, 2017) (Guilford, J.) ............... 7, 8

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ............................................................................................... 9

*Foman v. Davis*,
  371 U.S. 178 (1962)............................................................................................................... 9

*Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*,
   2006 WL 3733815 (E.D. Cal. Dec. 15, 2006) ................................................................. 8

*Griggs v. Pace Am. Grp., Inc.*,
   170 F.3d 877 (9th Cir. 1999) ......................................................................................... 9

*Hofstetter v. Chase Home Fin., LLC*,
   751 F. Supp. 2d 1116 (N.D. Cal. 2010) ........................................................................ 9

*Jackson v. Bank of Haw.*,
   902 F.2d 1385 (9th Cir. 1990) ..................................................................................... 10

*James v. UMG Recordings, Inc.*,
   Nos. C 11-1613 SI, C 11-2431 SI, C 11-5321 SI, 2012 WL 4859069 (N.D. Cal. Oct. 11, 2012) ......... 9

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) ........................................................................................ 7

*Krainski v. Nevada ex rel. Bd. of Regents*,
   616 F.3d 963 (9th Cir. 2010) ....................................................................................... 13

*Las Palmas Assoc. v. Las Palmas Ctr. Assoc.*,
   235 Cal.App.3d 1220 (1991) ....................................................................................... 12

*Loehr v. Ventura County Community College District*,
   743 F.2d 1310 (9th Cir. 1984) ...................................................................................... 9

*Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*,
   218 F.R.D. 667 (C.D. Cal. 2003) .................................................................................. 8

*Miller v. Rykoff-Sexton, Inc.*,
   845 F.2d 209 (9th Cir. 1988) ....................................................................................... 13

*Mixt Greens v. Sprout Cafe*,
   No. C-08-5175 EMC, 2010 WL 2794388 (N.D. Cal. July 15, 2010) .......................... 12

*Morongo Band of Mission Indians v. Rose*,
   893 F.2d 1074 (9th Cir. 1990) ..................................................................................... 10

*Neighborhood Assistance Corp. of Am. v. First One Lending Corp.*,
   No. SA CV 12-0463-DOC, 2013 WL 44567 (C.D. Cal. Jan. 3, 2013) (Carter, J.) ........... 3, 8

*Pan Pacific Sash & Door Co. v. Greendale Park, Inc.*,
   166 Cal.App.2d 652 (1958) ........................................................................................................ 12

*Solar Sun Rings, Inc. v. Secard Pools*,
   No. 14-CV-2417-PSG-KKX, 2016 WL 6833425 (C.D. Cal. Jan. 13, 2016) ......................................... 7

*Talwar v. Creative Labs, Inc.*,
   No. CV 05-3375 FMC (AJWX), 2007 WL 1723609 (C.D. Cal. June 14, 2007) ................................. 9

*Tourgeman v. Collins Fin. Servs., Inc.*,
   No. 08-CV-1392 JLS NLS, 2010 WL 4817990 (S.D. Cal. Nov. 22, 2010) ....................................... 10

*Tyco Thermal Controls LLC v. Redwood Indus.*,
   No. C 06-07164 JF (RS), 2009 WL 4907512 (N.D. Cal. Dec. 14, 2009) ..................................... 11, 12

*Zoe Mktg., Inc. v. Impressons, LLC*,
   2015 WL 12216341 (S.D. Cal. June 1, 2015) ............................................................................... 8

**Rules**

Fed. R. Civ. P. 15 ............................................................................................................. 1, 7, 9, 11, 12

Fed. R. Civ. P. 16 ............................................................................................................................ 1, 7, 9

Fed. R. Civ. P. 34 .................................................................................................................................. 4

Local Rule 3-15(a)(1)(i) ........................................................................................................................ 5

**Treatises**

William Schwarzer et al.,
   *California Practice Guide Federal Procedure Before Trial* ¶8:423 (rev. ed. 2005) ............................ 13

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 6, 2021 at 10:00 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Susan van Keulen of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, California 95113, 4th Floor, Plaintiffs Facebook, Inc. and Instagram LLC ("Facebook") will and hereby does move for an order pursuant to Federal Rule of Civil Procedure 15(a) and 16(b) modifying the deadline for Plaintiffs to file an amended pleading and granting Plaintiffs leave to file a First Amended Complaint.

This motion is made pursuant to Federal Rules of Civil Procedure 15(a) and 16(b), and is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, the proposed First Amended Complaint attached as Exhibit 1, the redlined copy of the proposed First Amended Complaint attached as Exhibit 2, the Declaration of David J. Steele filed concurrently with this motion, the [Proposed] Order, any oral argument heard by the Court, such additional evidence as may be submitted to the Court, matters as to which the Court takes judicial notice, and such other matters as the Court deems proper.

DATED: February 25, 2021                    TUCKER ELLIS LLP


By:   /s/David J. Steele
      David J. Steele
      Howard A. Kroll
      Steven E. Lauridsen

      Attorneys for Plaintiffs,
      FACEBOOK, INC. and INSTAGRAM LLC

            Jessica Romero
            Stacy Chen
            Olivia Gonzalez
            Platform Enforcement and Litigation
            Facebook, Inc.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Facebook, Inc. and Instagram LLC (collectively "Facebook") seek a limited modification of the Court's May 27, 2020 scheduling order (Dkt. 39) to allow Facebook to file a First Amended Complaint ("FAC") adding Xiamen 35 Internet Technology Co., Ltd. ("35.CN") as an additional party to this case, and to plead relevant facts regarding 35.CN. Facebook has uncovered sufficient facts to allege that 35.CN is liable for Defendants' cybersquatting activities, despite a history of incomplete and obfuscatory discovery responses from defendants OnlineNIC Inc. ("OnlineNIC") and Domain ID Shield Service Co., Limited ("ID Shield")(collectively "Defendants").[1]

Discovery has revealed that 35.CN and Defendants are "so organized and controlled" and their "affairs are so conducted" as to make Defendants "merely an instrumentality, agency, conduit, or adjunct of" 35.CN. *City of Dana Point v. New Method Wellness, Inc.*, 39 Cal.App.5th 985, 991 (2019). For example, the individual who manages and operates OnlineNIC, is an employee of 35.CN. And ID Shield, which has no employees and no assets, is run by 35.CN through its employees who also runs OnlineNIC. 35.CN's controlling shareholder incorporated and founded OnlineNIC. One of the officers of OnlineNIC is an employee of 35.CN. OnlineNIC's sole director is an employee of 35.CN. OnlineNIC and ID Shield operate out of 35CN's offices in China.

These facts, which were not known to Facebook when it filed its complaint in this matter, establish not only that 35.CN is Defendants' alter ego, but also that it is liable for Defendants' activities that are at issue in this case.

As explained below, there is good cause for amending the scheduling order and allowing Facebook to amend its complaint and add 35.CN as an additional party. Facebook was diligent in conducting discovery and in bringing this motion. It was unaware of the scope of 35.CN's involvement in Defendants' conduct at the time it filed its original Complaint. Before Defendants served their amended discovery responses on January 29, 2021, Facebook did not have the facts necessary to plead that Defendants are the alter ego of 35.CN or that Defendants and 35.CN operate as a single business enterprise. Where, as

---

[1] A copy of Facebook's proposed First Amended Complaint ("FAC") is attached to this Motion as Exhibit 1. A redline comparing it to Facebook's Complaint is attached to this Motion as Exhibit 2.

here, the proposed amendment is "based on facts uncovered during discovery," courts routinely find "good cause to seek leave to amend." *Neighborhood Assistance Corp. of Am. v. First One Lending Corp.*, No. SA CV 12-0463-DOC, 2013 WL 44567, at *1 (C.D. Cal. Jan. 3, 2013) (Carter, J.). In addition, Defendants will not suffer any undue prejudice from the proposed amendment, because it does not expand the relief sought against them. Indeed, Facebook's proposed amendment seeks to add a party that will be joint and severally liable for any damage award, thereby reducing Defendants' potential exposure.

Accordingly, Facebook's motion for a limited modification of the deadline allowing it to file an amended pleading and leave to file the Proposed FAC should be granted.

## II.     SUMMARY OF THE RELEVANT FACTS

### A.     Factual Background

35.CN is a company headquartered in China purporting to offer domain registration services. When Facebook filed this action in October 2019, it was unaware that 35.CN was involved in Defendants' cybersquatting enterprise or the precise relationship between 35.CN and Defendants. Declaration of David J. Steele ("Steele Decl.") ¶ 2. Since then, Facebook has learned that 35.CN's personnel run and manage day-to-day operations for ID Shield and OnlineNIC; that 35.CN employs OnlineNIC's sole director; and 35.CN office space in China hosts OnlineNIC and ID Shield's operations. Based on these and other facts uncovered during the course of discovery, 35.CN is joint and severally liable to Facebook for Defendants' conduct.

Defendants, however, have actively resisted Facebook's efforts to learn the relationship between 35.CN and Defendants, in particular the nature and extent of its involvement in the activity at issue in this case. On March 20, 2020 Facebook served a first set of requests for production of documents and things on each defendant that requested documents about OnlineNIC's officers, directors, shareholders, parents and subsidiaries.  Due to a variety of factors, including the outbreak of the COVID-19 pandemic, Facebook gave counsel for Defendants and his clients numerous extensions to provide written responses to these requests and produce responsive documents. Defendants eventually served their written responses and completed their initial production on June 9, 2020, which was twenty-nine days after all extensions had expired. Steele Decl. ¶ 3.

However, both Defendants' written responses and document production were inadequate. To

compel compliance, Facebook engaged in a series of discovery conferences with Defendants' counsel that ultimately concluded on July 15, 2020. The net result of these discussions was that Defendants agreed to make a supplemental production of documents on or before July 21, 2020. Steele Decl. ¶ 4.

Rather than producing responsive documents as required by Rule 34, Defendants used extension requests, late responses, specious objections and the discovery dispute meet and confer process to delay production of responsive documents. Steele Decl. ¶ 5; *Plaintiffs' Opp. To Motion To Defs' Motion To Retain Confidentiality Designations Under Protective Order*, Doc. 52, pg. 3 Lns 21-22 ("Over the months it took Defendants to produce documents responsive to those requests"); *Response re Status Report*, Doc. 58, (highlighting problems with Defendants' production of documents and Defendants' lack of compliance with the Court's Nov. 10, 2020 Order.).

Defendants breached their promise to produce responsive documents on July 21, 2020. It took Defendants until August 20, 2020, six months after the initial document requests, to complete their first supplemental production in a somewhat usable format. Steele Decl. ¶ 6.

Defendants' supplemental production contained 271,145 images and 4.1 Gigabytes of database files. Among the documents that were produced was a series of purported outsourcing agreements between OnlineNIC and 35.CN providing for monthly transfers of OnlineNIC's assets to 35.CN. This was when Facebook first became aware that 35.CN was involved in Defendants' cybersquatting enterprise and learned about the relationship between 35.CN and Defendants. Steele Decl. ¶ 7.

In an attempt to develop additional facts regarding 35.CN, Facebook served a first set of requests for admission on both Defendants on September 10, 2020. There were twelve requests in each set that were directed at the relationship between 35.CN and the Defendants. Steele Decl. ¶ 8. Defendants, after being given an extension of time, responded to these requests on October 16, 2020 with spurious objections and refused to respond to many of these requests. *Id.* For example, Defendants objected to the use of terms such as "day-to-day," "owns," "holder," "proxy service," and "maintains," claiming that these words were ambiguous. *Id.* As a result of a discovery meet and confer with Defendants, Defendants agreed to withdraw their objections and provide amended responses. Steele Decl. ¶ 9. Defendants, however, did not serve their amended responses until January 29, 2021. And it was in these responses that each of the Defendants admitted, for the first time, that their businesses were operated by 35.CN. Steele Decl. ¶ 10.

On November 13, 2020 Facebook served a first set of interrogatories on both Defendants. Like the requests for admission discussed above, several of the interrogatories were directed at the relationship between 35.CN and the Defendants. Steele Decl. ¶11. On December 18, 2020, Defendants responded to Facebook's interrogatories with equally frivolous objections. *Id.* For example, rather than provide substantive responses to Facebook's interrogatories regarding the relationship between 35.CN and Defendants, Defendants banked on several additional specious objections, claiming that the term "alter ego" was ambiguous, as were terms central to their domain name registration business ("proxy service," "Registrant," and "Registration"). *Id.*

It was only after series of discovery letters, conferences and threats of motions to compel, that Defendants finally served substantive responses to these interrogatories on February 1, 2021. Steele Decl. ¶¶ 12-13. These amended interrogatory responses were verified by Carrie Yu, an employee of 35.CN. Steele Decl. ¶14.

Defendants' amended interrogatory responses contained critical disclosures regarding Plaintiffs' alter ego claim against 35.CN including that: (i) Shaohui Gong, the majority and controlling shareholder of 35.CN, is the incorporator, founding president and shareholder of OnlineNIC; (ii) Carrie Yu, the lone director of OnlineNIC, is an employee of 35.CN; (iii) all of the individuals who run the operations of ID Shield are employees of 35.CN; (iv) all but one of the individuals who run the operations of OnlineNIC are employees of 35.CN; and (v) 35.CN, OnlineNIC and ID Shield share office space. Defendants' amended interrogatory responses also disclose that Carrie Yu is the current shareholder of ID Shield, and that she holds these shares beneficially for OnlineNIC. Steele Decl. ¶15.

Defendants also hid their relationship with 35.CN, despite Local Rule 3-15(a)(1)(i)'s requirement that they disclose the names of any person or entity that has "a financial interest of any kind in the subject matter in controversy or in a party to the proceeding". Rather than do so, Defendants claimed in their Certification of Interested Entities or Persons (Dkt. 24), that "there is no such interest to report." At a minimum, Defendants should have disclosed the names of their actual and beneficial shareholders, which they did not do. More importantly, OnlineNIC should have also disclosed 35.CN's financial interest in the outcome of this case since 35.CN would suffer a financial loss if Facebook prevailed in its claims against Defendants. Defendants did not disclose this information.

After nine months of diligently pursuing discovery regarding the relationship between 35.CN and Defendants, Facebook finally has been able to learn the following information from Defendants' production:

1. 35.CN employees manage and operate ID Shield on a daily basis;
2. 35.CN employees manage and operate OnlineNIC on a daily basis;
3. A 35.CN employee is OnlineNIC's sole director;
4. A 35.CN employee is one of OnlineNIC's officers;
5. The majority and controlling shareholder of 35.CN was the initial shareholder, incorporator and founding president of OnlineNIC;
6. 35.CN provides office space to both ID Shield and OnlineNIC;
7. 35.CN and OnlineNIC share the same domain name registration database, which is used to operate the registrar businesses for both 35.CN and OnlineNIC; and
8. 35.CN shares office space with both ID Shield and OnlineNIC.

Steele Decl. ¶¶15-16.

It was not until January 29, 20201 and February 1, 2021—after Facebook sent Defendants multiple Joint Discovery Motions under the Court's rules, after having spent hours meeting and conferring at length with Defendants, with Defendants refusing to amend their discovery responses or promising responses that were never served—that Defendants finally amended their discovery responses disclosing information regarding 35.CN that should have been disclosed months prior. Steele Decl. ¶¶ 10, 13. And as soon as Facebook had this information, it asked Defendants to stipulate that Facebook could amend its complaint by adding 35.CN as an additional defendant. Not surprisingly, Defendants refused. Steele Decl. ¶ 18. Accordingly, Facebook brings this motion.

**B.   Procedural Background**

In its January 28, 2020 Case Management Order (Dkt. 31), this Court gave the parties until May 27, 2020 to amend their pleadings or request joinder of any additional parties. As the result of Defendants' delays in responding to Plaintiffs' discovery requests, the parties sought leave to continue this deadline by stipulation (Dkt. 38). This Court granted the parties' request and continued that deadline

to July 1, 2020 (Dkt. 39).[2] Since this initial continuance, the parties have made two separate requests that all pretrial deadline be continued by three months. (Dkt. 46 & Dkt. 59). Accordingly, the current trial and pre-trial schedule is as follows:

| | |
|---|---|
| Fact discovery cutoff: | May 4, 2021 |
| Expert disclosure: | May 21, 2021 |
| Expert rebuttal: | June 11, 2021 |
| Expert discovery cutoff: | July 6, 2021 |
| Dispositive motion filing cutoff: | July 20, 2021 |
| Dispositive motion hearing cutoff: | September 14, 2021 |
| Pretrial Conference: | November 4, 2021 |
| Jury Trial: | November 15, 2021 |

## III. ARGUMENT

"[O]nce a court has entered a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16, the standards of Rule 16, rather than Rule 15, govern amendment of the pleadings." *Solar Sun Rings, Inc. v. Secard Pools*, No. 14-CV-2417-PSG-KKX, 2016 WL 6833425, at *1 (C.D. Cal. Jan. 13, 2016) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992)); *see also C.F. v. Capistrano Unified Sch. Dist.*, 656 F. Supp. 2d 1190, 1192 (C.D. Cal. 2009) ("In the Ninth Circuit, a request for leave to amend made after the entry of a Rule 16 Scheduling Order is governed primarily by Rule 16(b)."). If good cause is found, courts then determine whether the proposed amendment meets the liberal standard of Federal Rule of Civil Procedure 15. *Ecojet, Inc. v. Luraco, Inc.*, No. 16- cv-00487-AG-KES, 2017 WL 6939158, at *1 (C.D. Cal. Mar. 22, 2017) (Guilford, J.). Facebook's motion satisfies the requirements of both Rules.

### A. Good Cause Exists For Leave To Amend The Scheduling Order

A "party seeking to amend [a] pleading after [the] date specified in scheduling order must first show 'good cause' for amendment under Rule 16(b)." *Id.* (citing *Johnson*, 975 F.2d at 608). In evaluating whether good cause exists, courts "primarily consider[] the diligence of the party seeking the amendment."

---

[2] This deadline was sixty-five days before the close of discovery and 257 days before trial was scheduled to begin.

*Id.* at 609. A party demonstrates "good cause" for modifying the scheduling order "by showing that, even with the exercise of due diligence, he or she was unable to meet the timetable set forth in the order." *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 671 (C.D. Cal. 2003) (citation omitted). As discussed above, there is good cause for this Court to allow Facebook leave to amend the operative complaint to add 35.CN as a defendant. Facebook learned of the basis for its claim against 35.CN through its diligent efforts in discovery. Steele Decl. ¶¶ 3-14. These efforts began on March 20, 2020, before the cut-off for amending pleadings in the relevant scheduling order (Dkt. 39). Steele Decl. ¶ 3. Only after forcing Defendants' hand in discovery over months of meeting and conferring multiple times weekly, Defendants have finally disclosed the facts supporting Facebook's amendment. Steele Decl. ¶ 14.

As is the case here, finding good cause and allowing parties to amend based on information obtained through discovery is common and well-established. *Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*, 2006 WL 3733815, at *15-16 (E.D. Cal. Dec. 15, 2006) (collecting cases where courts granted leave to amend because "new information revealed through discovery"). Given that Facebook was unaware 35.CN was involved in Defendants' cybersquatting enterprise or the precise relationship between 35.CN and Defendants until after the deadline for amending its complaint, Facebook "could not have sought leave to amend by the deadline." *Zoe Mktg., Inc. v. Impressons, LLC*, 2015 WL 12216341, at *2 (S.D. Cal. June 1, 2015) (granting leave to amend to add new parties and claims, but not altering any other deadlines). Under such circumstances, good cause exists for a limited modification of the Scheduling Order with respect to Facebook's date for filing an amended pleading. *See, e.g., id*. (finding good cause existed because the deposition "giv[ing] rise to the grounds for amendment occurred" after the amendment deadline); *Neighborhood Assistance Corp.*, 2013 WL 44567, at *1 (granting leave to amend for new alter ego claim since "[p]laintiff only became aware of facts suggesting alter ego liability" after defendant's document production).

Facebook's has also been diligent in filing the instant motion. Upon receipt of Defendants' admissions and interrogatory responses, Facebook promptly asked Defendants' counsel to stipulate to the filing of an amended complaint joining 35.CN as a defendant. Steele Decl. ¶ 18. When counsel for Defendants would not agree to the stipulation, Facebook filed this Motion to Amend to be heard at the

Court's first available opportunity. The period between Facebook's receipt of the ripened factual basis for the Proposed FAC and its filing the instant motion has been approximately three weeks, which is well within the good cause standard of Rule 16. *See, e.g., Dominguez v. Crown Equip. Corp.*, No. 2:14-CV-07935-SVW-E, 2015 WL 3477079, at *3 (C.D. Cal. June 1, 2015) (finding that "a four month delay between the earliest alleged date on which Plaintiff's should have known of the claim and the date of filing for leave to amend is not particularly long or unreasonable."); *Talwar v. Creative Labs, Inc.*, No. CV 05-3375 FMC (AJWX), 2007 WL 1723609, at *6 (C.D. Cal. June 14, 2007) ("Although Plaintiffs did not move for leave to amend at the very first opportunity, the delay from December 2005 to May 2006, is not necessarily unreasonable under the circumstances.").

### B. Facebook Should Be Granted Leave to Amend Its Complaint

Federal Rule of Civil Procedure 15(a) states that leave to amend a pleading "shall be freely given when justice so requires." The United States Supreme Court has repeatedly instructed lower courts that leave to amend should be granted with "extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); *see, e.g., Foman v. Davis*, 371 U.S. 178 (1962) (leave to amend should be freely given). A motion to amend should only be denied due to "bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *DCD Programs*, 833 F.2d at 186; *Loehr v. Ventura County Community College District*, 743 F.2d 1310, 1319 (9th Cir. 1984). "When weighing these factors . . . all inferences should be made in favor of granting the motion to amend." *Hofstetter v. Chase Home Fin., LLC*, 751 F. Supp. 2d 1116, 1122 (N.D. Cal. 2010) (citing *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999)). However, not all of these factors merit equal weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Among the factors, "the consideration of prejudice to the opposing party carries the greatest weight." *James v. UMG Recordings, Inc.*, Nos. C 11-1613 SI, C 11-2431 SI, C 11-5321 SI, 2012 WL 4859069, at *1 (N.D. Cal. Oct. 11, 2012).

#### 1. Facebook Does Not Bring Its Motion In Bad Faith

As demonstrated in the Summary of Relevant Facts, above, Facebook did not file this Motion in bad faith. At the time it filed the original complaint in this action, Facebook made the allegations it had sufficient knowledge to make. Facebook acted diligently in seeking discovery relating to Defendants' relationships with 35.CN, and promptly sought to assert its amended complaint upon discovery of

sufficient factual basis to support its claims against 35.CN. Steele Decl. ¶ 17-18. The proposed amendments are not being introduced solely for delay, or to unduly burden Defendants. Delaying a motion to amend for the time it takes to establish sufficient evidentiary support is hardly reflective of bad faith on the movant's part. *See, e.g., DCD Programs*, 833 F.2d at 187 (rejecting any inference of "bad faith" given movants' "satisfactory explanation for their delay" pending accumulation of sufficient evidence of conduct on which claims could be based).

### 2. Facebook Has Not Unduly Delayed Bringing Its Motion

Facebook filed this Motion with more than two months before the close of fact discovery in the case, before any deposition testimony has been taken, and before any summary judgment motions have been prepared or filed. While "[d]elay, by itself, is insufficient to justify denial of leave to amend," (*DCD Programs*, 833 F.2d at 186), the requested amendment is sought at a reasonable stage of the case,[3] and the reason the motion was not brought even earlier was not lack of diligence on Facebook's part but instead Defendants' "obstreperousness in discovery that prevented [Facebook] from learning the facts that give rise to [its] proposed amendments." *Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-CV-1392 JLS NLS, 2010 WL 4817990, at *5 (S.D. Cal. Nov. 22, 2010) (exercising its discretion to allow amendment even at a late hour of the case where the party opposing amendment had delayed discovery into the relevant facts); *see also Dep't of Fair Emp't & Hous. v. Law Sch. Admission Council, Inc.*, No. C-12-1830 EMC, 2013 WL 485830, at *4 (N.D. Cal. Feb. 6, 2013) ("'Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading'") (quoting *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir. 1990)). Here, obtaining discovery from Defendants has proven surprisingly difficult, requiring Facebook to prepare numerous discovery motions just to get Defendants to comply with their undisputed discovery obligations. Steele Decl. *passim*; *Plaintiffs' Opp. To Motion To Defs' Motion To Retain Confidentiality Designations Under Protective Order*, Doc. 52, pg. 3 Lns 21-22 ("Over the months it took Defendants to produce documents responsive to

---

[3] Although a good deal of time has passed since Facebook filed its original Complaint (October 28, 2019), courts do not measure undue delay by the mere passage of time. *See, e.g., Abels v. JBC Legal Grp., P.C.*, 229 F.R.D. 152, 157 (N.D. Cal. 2005) (noting that 9th Circuit concluded a two-year delay is "not alone enough to support denial" of a motion for leave to amend) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

10

MOTION FOR LEAVE TO AMEND COMPLAINT
Case No. 5:19-cv-07071-SVK

those requests"); *Response re Status Report*, Doc. 58, (highlighting problems with Defendants' production of documents and Defendants' lack of compliance with the Court's Nov. 10, 2020 Order.). Even now Defendants have still not completed their document production, and Facebook did not have the factual support for the proposed amendment until Defendants served their amended responses to discovery on January 29 and February 1, 2021. Steele Decl. ¶ 14. Additionally, Defendants hid their relationship with 35.CN, when filing the Certification of Interested Entities or Persons (Dkt. 24), stating that "there is no such interest to report." Any delay was caused by Defendants' discovery tactics and their hiding of 35.CN.

### 3. Granting Facebook's Motion Does Not Substantially Prejudice Defendants

"To overcome Rule 15(a)'s liberal policy with respect to the amendment of pleadings," Defendants' "showing of prejudice must be substantial." *Tyco Thermal Controls LLC v. Redwood Indus.*, No. C 06-07164 JF (RS), 2009 WL 4907512, at *3 (N.D. Cal. Dec. 14, 2009). Defendants, as "[t]he party opposing amendment[,] bear the burden of showing prejudice." *DCD Programs*, 833 F.2d at 187. Here, however, Defendants will not suffer any undue prejudice by Facebook pursuing its cybersquatting claims against 35.CN. The new claims are no surprise to Defendants; 35.CN, as the parent of OnlineNIC, has likely been intimately involved in this case since its inception, even though that was not disclosed to Facebook until recently. As Facebook has come to appreciate since Defendants' discovery responses regarding 35.CN, a majority of the discovery produced by OnlineNIC, and verification of the discovery responses, have come from 35.CN employees and from 35.CN operated systems,[4] and OnlineNIC's current officers are either employees or shareholders of 35.CN.[5] Steele Decl. ¶¶ 15-16.

Facebook does not presently anticipate any significant broadening of the current scope of the discovery as to Defendants is necessary. In particular the factors a court will consider when evaluating whether two separate entities should be treated as one for liability purposes include: (1) common employees, (2) common offices, (3) centralized accounting, (4) payment of wages by one corporation to another corporation's employees, (5) common business name, (6) services rendered by the employees of

---

[4] In examining OnlineNIC's domain name registration database files (these files were extracted from the system used to operate OnlineNIC's registrar business), it appears that the same database is also used by 35.CN to operate its registrar business. Steele Decl. ¶ 16. Further discovery on this issue will be required.

[5] Defendants were aware that Facebook sought information about 35.CN, yet hid this information as long as possible to protect their parent company.

11

one corporation on behalf of another corporation, (7) undocumented transfers of funds between corporations, and (8) unclear allocation of profits and losses between corporations. *See, e.g., Pan Pacific Sash & Door Co. v. Greendale Park, Inc.*, 166 Cal.App.2d 652 (1958); *Las Palmas Assoc. v. Las Palmas Ctr. Assoc.*, 235 Cal.App.3d 1220 (1991). None of these inquiries will expand discovery in any significant manner, and much of these facts are already the subject of discovery requests served on Defendants (some of which remain outstanding). It is hard to see how Defendants could claim undue prejudice under these circumstances. *See, e.g., Booker v. Glotel, Inc.*, No. C 05-4795 CW, 2006 WL 823218, at *3 (N.D. Cal. Mar. 28, 2006) ("Prejudice typically arises where the opposing party is surprised with new allegations which require more discovery or will otherwise delay resolution of the case"); *Dep't of Fair Emp't & Hous.*, 2013 WL 485830, at *5 ("[t]he burden of having to defend a new claim alone is not undue prejudice under Rule 15"); *Tyco Thermal*, 2009 WL 4907512, at *3 ("[n]either delay resulting from the proposed amendment nor the prospect of additional discovery needed by the non-moving party in itself constitutes a sufficient showing of prejudice").

Indeed, where the impact on scheduling and discovery is minimal, courts have granted leave to amend even when the motion was much closer to the close of fact discovery than Facebook's Motion. *See, e.g., Mixt Greens v. Sprout Cafe*, No. C-08-5175 EMC, 2010 WL 2794388, at *2 (N.D. Cal. July 15, 2010) (granting leave to amend *near close of fact discovery* where amendment would not require "substantial new discovery" and a "brief extension of discovery deadlines could cure any prejudice were the amendment allowed"); *Ciampi v. City of Palo Alto*, No. 09-CV-02655-LHK, 2010 WL 5174013, at *3 (N.D. Cal. Dec. 15, 2010) (granting leave to amend *near dispositive motion deadline* where based "on the limited amendments to Plaintiff's Complaint, the Court expects that the additional discovery required by the parties, if any, will be extremely limited").

Facebook has filed this motion sixty-eight days before Fact Discovery Cut-Off and 263 days before trial is scheduled to begin. Both of these periods are greater than the time periods to which Defendants had previously stipulated. In their May 26, 2020 stipulation (Dkt. 38) Defendants had agreed to allow an amendment that would have been sixty-five days before the discovery cut-off and 257 days before trial was scheduled to begin. Not only are the time periods inherent in Facebook's request longer, but there are more than two months remaining in the fact discovery period. In addition, no depositions have been taken

and no summary judgment motions have been filed. Steele Decl. ¶ 19. For these reasons, even if the amendments turn out to affect the scope of discovery to some extent, there would be no substantial prejudice to Defendants.

Moreover, any "[p]rejudice to the opposing party if the court grants leave to amend must be balanced against prejudice to the moving party if the court denies leave to amend." *Bd. of Trs. of the Auto. Indus. Welfare Fund v. Groth Oldsmobile/Chevrolet, Inc.*, No. C 09-0465 PJH, 2010 WL 760452, at *4 (N.D. Cal. Mar. 4, 2010). Here, Facebook would suffer substantial prejudice if the Court were to deny leave to amend--including the burden and expense of filing and litigating a separate action against 35.CN.

### 4. The Claims Against 35.CN In The FAC Are Not Futile

In this district "court[s] normally will not rule on the futility of an amendment at the motion to amend stage of the litigation unless the proposed amendment is clearly and unambiguously futile. In general, the futility of an amendment is better tested in a motion to dismiss for failure to state a claim or a summary judgment motion." *Id.*, 2010 WL 760452, at *3; *see also Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) ("a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense"); *Krainski v. Nevada ex rel. Bd. of Regents*, 616 F.3d 963, 972 (9th Cir. 2010) (proposed amendment only "futile" if it is "clear . . . that the complaint could not be saved by any amendment"). Accordingly, denial of a motion for leave to amend on futility grounds is "rare" *Abels*, 229 F.R.D. at 157 (quoting William Schwarzer et al., *California Practice Guide Federal Procedure Before Trial* ¶8:423 (rev. ed. 2005)), and, in any event, there is a substantial legal and factual basis for Facebook's proposed amendments: the additional claims here are by no means "futile."

Facebook's claims against 35.CN are well-stated and not vulnerable to a motion to dismiss. The discovery produced has substantiated Facebook's claims against 35.CN, and therefore the claim is not "futile."

## IV. CONCLUSION

For the foregoing reasons, Facebook's Motion should be granted, and the attached First Amended Complaint should be adopted as the operative pleading in this matter.

DATED: February 25, 2021

TUCKER ELLIS LLP

By: /s/sDavid J. Steele
David J. Steele
Howard A. Kroll
Steven E. Lauridsen

Attorneys for Plaintiffs,
FACEBOOK, INC. and INSTAGRAM LLC

Jessica Romero
Stacy Chen
Olivia Gonzalez
Platform Enforcement and Litigation
Facebook, Inc.