TUCKER ELLIS LLP
David J. Steele - SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll - SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen - SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:        213.430.3400
Facsimile:        213.430.3409

Attorneys for Plaintiff,
FACEBOOK, INC. and INSTAGRAM, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC, | Case No. 5:19-cv-07071-SVK |
| Plaintiffs, | **FIRST AMENDED COMPLAINT FOR CYBERSQUATTING; TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN; AND DILUTION** |
| v. | |
| ONLINENIC INC., DOMAIN ID SHIELD SERVICE CO., LIMITED, and DOES 1-20XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD., | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

*Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis*

TUCKER ELLIS LLP

Plaintiffs Facebook, Inc. ("Facebook") and Instagram, LLC ("Instagram") (collectively "Plaintiffs") by and through their attorneys, Tucker Ellis LLP, file their complaint against Defendants OnlineNIC, Inc. ("OnlineNIC"), Domain ID Shield Service Co., Limited ("ID Shield") and Xiamen 35.com Internet Technology Co., Ltd. ("35.CN") (collectively "Defendants"), and John Does 1-20 ("Doe Defendants") for injunctive relief and damages.

**INTRODUCTION**

1.    Cybercrime is highly dependent on registered domain names, which are used to send spear phishing emails, operate malware, and engage in other types of online abuse. According to the Internet Corporation of Assigned Names and Numbers (ICANN), as of July 31, 2019, there were over 800,000 resolving domain names used for phishing, malware, spam, and botnets.

2.    Cybercriminals often rely on domain name privacy registration services, and specifically proxy services, to hide their ownership and control of malicious domains from the public. In exchange for a fee, privacy proxy services conceal the domain name registrant's identity as listed on publicly available domain name registration records. These privacy proxy services, like the services offered by Defendants, are increasingly used by cybercriminals as they cycle through domain names in order to conceal their identity and evade detection.

3.    Defendant OnlineNIC 35.CN is an ICANN-accredited domain name registrar. 35.CN's alter ego, OnlineNIC, also is an ICANN-accredited domain name registrar. 35.CN's and Defendant OnlineNIC's alter ego, ID Shield is its, provides a type of domain name privacy protection service, specifically a proxy service as defined in the ICANN Registrar Accreditation Agreement ("RAA"), to OnlineNIC customers. According to one internet security group, domain names registered by OnlineNIC were reported for abuse in approximately 40,000 instances. In 2019, one internet security group reported that OnlineNIC was one of the top 20 domain name registrars used for abuse.

4.    Although accredited by ICANN, Defendants have repeatedly failed to take appropriate "steps to investigate and respond appropriately to any reports of abuse" as required by the ICANN Registrar Accreditation Agreement ("RAA") RAA and have failed to provide abusive domain name registrants' names and contact information to victims of online abuse as required under the RAA.

5.    For years, the Doe Defendants, OnlineNIC and its alter ego ID Shield, as registrants, and

2

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

as alter egos of each other, have registered domain names (such as hackingfacebook.net) that have been used for malicious activity, including phishing and hosting websites that purported to sell hacking tools. These domain names also have infringed on Plaintiffs' trademarks. Plaintiffs have sent multiple notices to OnlineNICDefendants providing evidence of domain name abuse and infringement. Defendants did not addresstimely provide the information requested in any of Plaintiffs' notices.

6.     Plaintiffs seek relief from OnlineNIC and itsDefendants, as alter ego, ID Shieldegos of each other, who have registered (as the registrant), used, and trafficked in domain names that include Plaintiffs' trademarks. Plaintiffs seek damages and injunctive relief against Defendants to stop their ongoing unlawful and harmful conduct, pursuant to the Lanham Act and the Anti-Cybersquatting Consumer Protection Act (15 U.S.C. § § 1125).

## I.    THE PARTIES

7.     Plaintiff Facebook, Inc. is a Delaware corporation with its principal place of business in Menlo Park, California.

8.     Plaintiff Instagram, LLC is a Delaware limited liability company with its principal place of business in Menlo Park, California.

9.     Defendant OnlineNIC Inc. is a California corporation with its principal place of business in San Leandro, California. Defendant OnlineNIC is a domain name registrar that sells, registers and transfers domain names for third parties.

10.    Defendant ID Shield, is a Hong Kong limited company. Defendant ID Shield is OnlineNIC's provides a type of domain name privacy service, which registeredspecifically a proxy service, for OnlineNIC's customers. ID Shield registers domain names in, as the name of ID Shield on publicly availableregistrant, and licenses these domain name registration recordsnames to OnlineNIC's customers.

11.    Defendant 35.CN. is a corporation registered under the laws of Xiamen, Fujian Province. 35.CN is a domain name registrar that sells, registers and transfers domain names for third parties. 35.CN controls, manages and runs the operations of OnlineNIC and ID Shield.

11.    At all times material to this action, OnlineNIC and, ID Shield and 35.CN are and were instrumentalities and alter egos of each other. OnlineNIC is and was also the direct participant in the

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

1  actions of ID Shield as alleged in this First Amended Complaint.

2      12.  ~~Plaintiffs have not identified the Defendants referred to as the Doe Defendants. The Doe~~

3  ~~Defendants are individuals or entities who have registered, or caused to be registered, domain names that~~

4  ~~infringe on Plaintiffs' trademarks. Plaintiffs reserve~~ 35.CN is and was ~~the right to amend~~direct participant

5  in the actions of both OnlineNIC and ID Shield as alleged in this ~~complaint to allege such Defendants'~~

6  ~~true names and capacities when they are ascertained~~First Amended Complaint.

7  **II.    JURISDICTION AND VENUE**

8      13.  The Court has federal question jurisdiction over the federal causes of action alleged in this

9  complaint pursuant to 28 U.S.C. § 1331.

10     14.  The Court has personal jurisdiction over Defendant OnlineNIC, and its alter egos ID Shield

11 and 35.CN, because OnlineNIC maintain~~eds~~ and ~~operated~~operates its business in California.

12     15.  ~~Each of the Doe Defendants has entered into one or more contracts for domain name~~

13 ~~registration services used in connection with Defendants' unlawful scheme; a material term of these~~

14 ~~contracts was Defendants' agreement to submit to the Court's jurisdiction. A copy of the domain name~~

15 ~~registration agreement is attached to this Complaint as Exhibit 1. Accordingly, the Court has personal~~

16 ~~jurisdiction over each of the Doe Defendants.~~

17 ~~16.~~15.  The Court has personal jurisdiction over the ~~Defendants and the Doe~~ Defendants because

18 each of them knowingly directed and targeted parts of their unlawful scheme at Plaintiffs, which have

19 their principal places of business in California. ~~Defendants and the Doe~~ Defendants also transacted and

20 conducted business and engaged in commerce in California by entering into one or more contracts that

21 included an agreement to submit to the Court's jurisdiction. A copy of one such agreement is attached to

22 this Complaint as Exhibit 1.

23 ~~17.~~16.  Venue is proper with respect to each of the Defendants pursuant to 28 U.S.C. §1391(b)(2)

24 because a substantial part of the events and omissions giving rise to the claims alleged occurred in this

25 district.

26 ~~18.~~17.  Pursuant to Civil L.R. 3-2(c), this case is exempt from the Court's division-specific venue

27 rule because it involves intellectual property rights.

28

4

III.     FACTUAL ALLEGATIONS

A.     Background on Plaintiffs and their Trademarks

19.18.  Facebook offers a social networking website and mobile application that enables its users to create their own personal profiles and connect with each other on their personal computers and mobile devices.

20.19.  Facebook owns the exclusive rights to several trademarks and service marks to provide its online services, including the distinctive FACEBOOK word mark and stylized mark, and has used the marks in connection with its services since 2004.

21.20.  In addition to its extensive common law rights, Facebook owns numerous United States registrations for its FACEBOOK marks, including:

      a.   United States Registration Number 3,122,052; and

      b.   United States Registration Number 3,881,770.

Copies of these registration certificates are attached to this First Amended Complaint as Exhibit 2. Facebook's common law and registered trademarks are collectively referred to as the "Facebook Trademarks."

22.21.  Facebook's use of the Facebook Trademarks in interstate commerce has been extensive, continuous, and substantially exclusive. Facebook has made, and continues to make, a substantial investment of time, effort, and expense in the promotion of Facebook and the Facebook Trademarks. As a result of Facebook's efforts and use, the Facebook Trademarks are famous (and have been famous since at least as early as 2011) as they are recognized within the US and around the world as signifying high-quality, authentic goods and services provided by Facebook.

23.22.  Instagram offers a photo and video sharing and editing service, mobile application, and social network. Instagram users can choose to share their photos and videos with their followers online.

24.23.  Instagram owns the exclusive rights to the distinctive INSTAGRAM word mark and stylized mark, having used the marks in connection with its goods and services as early as 2010.

25.24.  In addition to its extensive common law rights, Instagram owns numerous United States registrations for the INSTAGRAM marks, including:

      c.   United States Registration Number 4,795,634;

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

5

d.   United States Registration Number 4,146,057;

e.   United States Registration Number 4,756,754;

f.   United States Registration Number 5,566,030;

g.   United States Registration Number 4,170,675;

h.   United States Registration Number 4,856,047;

i.   United States Registration Number 4,822,600;

j.   United States Registration Number 4,827,509;

k.   United States Registration Number 4,863,595; and

l.   United States Registration Number 5,019,151.

Copies of these registration certificates are attached to this First Amended Complaint as Exhibit 3. Instagram's common law and registered trademark rights are collectively referred to as the "Instagram Trademarks."

26.25.  Instagram's use of the Instagram Trademarks in interstate commerce has been extensive, continuous, and substantially exclusive. Instagram has made, and continues to make, a substantial investment of time, effort, and expense in the promotion of Instagram and the Instagram Trademarks. As a result of Instagram's efforts and use, the Instagram Trademarks are famous (and have been famous since at least as early as 2014) as they are recognized within the US and around the world as signifying high-quality, authentic goods and services provided by Instagram.

**B.    OnlineNIC is Rresponsible for the Aactions of ID Shield**

**B.    Defendant because ID Shield is an alter ego of OnlineNIC isand OnlineNIC is a direct participant in those actions**

27.26.  Defendants OnlineNIC and 35.CN are accredited by ICANN and subject to ICANN's RAA. A copy of the RAA is attached to this First Amended Complaint as Exhibit 4.

28.27.  Defendant ID Shield provides a type of domain name registration privacy service, specifically a proxy service, on behalf of Defendant OnlineNIC. ID Shield is the registrant of the domain name, and is listed as the registrant in the WHOIS directory.

29.28.  OnlineNIC controls certain business operations of ID Shield. ID Shield registers domain names as the registrant, and licenses these domain names either to OnlineNIC for its use or to OnlineNIC's

6

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

1    customers for their use, (the "Licensees"). OnlineNIC's website refers to ID Shield's services as

2    "OnlineNIC ID Shield." A screen capture of OnlineNIC's "Domain Privacy" page from its website is

3    attached to this First Amended Complaint as Exhibit 5.

4        30.29.  The ID Shield Service Agreement, found on the OnlineNIC website, is attached to this First

5    Amended Complaint as Exhibit 6. According to the ID Shield Service Agreement, "[i]f you subscribe to

6    the IDS Services, each domain name registration which you control and which [uses the ID Shield service]

7    will thereafter be registered in the name of [ID Shield], as registrant."

8        31.    According to ID Shield's "About Us" webpage "OnlineNIC, Inc. [sic] is an internet

9    services company that provides . . . internet services, including domain name service and other related

10   services." A copy of ID Shield's "About Us" webpage is attached to this Complaint as Exhibit 7.

11       32.    ID Shield and OnlineNIC are managed by the same President and VP of Business

12   Development. A copy of OnlineNIC's "About Us" webpage is attached to this Complaint as Exhibit 8;

13   compare Exhibit 7 with Exhibit 8.

14       33.    OnlineNIC's customers purchase and pay for the ID Shield services directly from their

15   OnlineNIC user account. ID Shield's "Payment Info" webpage indicates that payments to ID Shield

16   should be processed through the customer's OnlineNIC user account. Customers wishing to close their

17   account should email sales@onlinenic.com ("Please contact our sales at sales@onlinenic.com if you wish

18   to close your account.") See Exhibit 9.

19       34.    ID Shield and OnlineNIC share the same technical support staff, and technical support

20   services are provided by the same person(s). A copy of ID Shield's help webpage (listing OnlineNIC and

21   its phone numbers and email addresses) is attached to this Complaint as Exhibit 10.

22       30.    ID Shield has no bank accounts or assets and is undercapitalized.

23       31.    ID Shield has no employees.

24       32.    ID Shield does not conduct regular shareholder meetings and does not maintain corporate

25   records.

26       33.    OnlineNIC controls the operations of ID Shield.

27       34.    OnlineNIC controls the policy decisions made by ID Shield.

28       35.    OnlineNIC controls which agreements into which ID Shield enters.

7

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

36.    OnlineNIC pays all of the expenses of ID Shield.

37.    OnlineNIC collects all revenue from ID Shiel's domain name registration proxy service.

38.    OnlineNIC and ID Shield do not engage in arms-length transactions when they conduct transactions with each other.

39.    Carrie Yu aka Carrie Arden aka Yu Hongxia ("Carrie Yu") owns ID Shield for the benefit of OnlineNIC.

40.    Carrie Yu is a director and officer for both ID Shield and OnlineNIC.

35.41.  The domain names domainidshield.com and onlinenic.com are hosted on the same IP address. Defendants'. and their websites contain links to each other.

42.    OnlineNIC The Licensees purchase and pay for the ID Shield are instrumentalities services directly from their OnlineNIC user account.

43.    ID Shield is a *de facto* subsidiary of OnlineNIC.

**C.    35.CN is responsible for the actions of OnlineNIC** and **ID Shield because OnlineNIC and ID Shield are** alter egos of ~~each other. OnlineNIC~~35.CN and 35.CN **is** ~~also the~~**a direct participant in th**os**e actions**

44.    Carrie Yu, the sole director of OnlineNIC, is an employee of 35.CN.

45.    The day-to-day operations of OnlineNIC, including all technical support and customer support, are carried out by employees of 35.CN.

46.    The day-to-day operations of ID Shield as alleged, including all technical support and customer support, are carried out by employees of 35.CN.

47.    35.CN and OnlineNIC share the same domain name registration database, which is used to operate the registrar businesses for both 35.CN and OnlineNIC.

48.    35.CN shares office space in this Complaint its office building for OnlineNIC and ID Shield.

49.    35.CN provides technical support staff and technical support services to OnlineNIC and ID Shield..

50.    Plaintiffs are informed and believe, and on that basis allege, that OnlineNIC has no employees who carry out the day-to-day registrar operations of OnlineNIC.

8

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Houston ◆ Los Angeles ◆ San Francisco ◆ St. Louis

51.    Plaintiffs are informed and believe, and upon that basis allege, the incorporator and founding president of OnlineNIC is the controlling shareholder of 35.CN.

52.    Plaintiffs are informed and believe, and upon that basis allege, 35.CN controls the operations of OnlineNIC and ID Shield.

53.    Plaintiffs are informed and believe, and upon that basis allege, 35.CN controls the policy decisions made by OnlineNIC and ID Shield.

54.    Plaintiffs are informed and believe, and upon that basis allege, 35.CN controls which agreements into which OnlineNIC and ID Shield enters.

~~36.~~55.  OnlineNIC and ID Shield are *de facto* subsidiaries of 35.CN.

**~~C.~~D.    Defendants Registered, Used, or Trafficked In the Infringing Domain Names**

~~37.~~56.  OnlineNIC ~~and,~~ ID Shield and 35.CN registered, used, or trafficked in, at least the following ~~20~~48 domain names that are identical or confusingly similar to the Facebook Trademarks and the Instagram Trademarks (the "Infringing Domain Names"):

| 1.   buyinstagramfans.com | ~~6.~~16.    facebookvideodownload.net |
|---|---|
| 2.   face2bouk.com | 17. facebux2.com |
| 3.   facebook-alkalmazasok.net | 18. facekhook.com |
| 4.   facebook-chat-emoticons.com | 19. facessbook.com |
| ~~1.~~5. facebook-fans-buy.com | 20. faecb00k-page.com |
| 6.   facebook-hirdetesek.com | 21. faecbook-page.com |
| 7.   facebook-login-signup.com | ~~7.~~22.    findfacebookid.com |
| ~~2.~~8. facebook-mails.com | 23. hackfacebook-now.com |
| ~~3.~~9. facebook-pass.com | ~~8.~~24.    hackingfacebook.net |
| ~~4.~~10.    facebook-pw.com | ~~9.~~25.    hacksomeonesfacebook.com |
| 11. facebook-rodo.com | 26. iiinstagram.com |
| 12. facebookdrummers.com | 27. instaface.org |
| 13. facebookperottici.com | 28. instagram-login.xyz |
| ~~5.~~14.    facebookphysician.com | 29. instagram01.com |
| 15. facebooktopten.com | 30. instagramdrummer.com |

9

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

31. instagramdrummers.com                    44. trollfacebook.com

32. instakram.com                             45. watch-facebook.com

10.33.    lamsocialfacebook.net              12.1.    trollfacebook.com

34. learntohackfacebook.com                   13.46.    www-facebook-login.com

35. login-lnstagram.com                       14.47.    www-facebook-pages.com

36. m-facebook-login.com                      15.1.    buyinstagramfans.com

37. mail-instgram.com                         16.1.    instaface.org

38. manage-instagram.xyz                      17.1.    instagram01.com

39. modelfacebook.com                         18.1.    iiinstagram.com

40. myfacebooktop10.com                       19.1.    login-lnstagram.com

41. ofacebooklogin.com                        20.1.    m-facebook-login.com

42. sickfacebook.com                          48. www-instagram.net

11.43.    singin-lnstagram.com

38.57.    singin-lnstagram.comID Shield is the registrant for each of the Infringing Domain Names.

A copy of WHOIS entries for each ofmany the Infringing Domain Names is attached to this First Amended

Complaint as Exhibit 11 7.

39.    Upon informationPlaintiffs are informed and belief, each of the Infringing Domain Names

was registered on behalf of the Doebelieve, and upon that basis allege, Defendants or OnlineNIC

registered each of the Infringing Domain Names using Defendants'OnlineNIC's registration services and

privacy services.

58.    ID Shield's proxy service.

40.59.    ID Shield trafficked in the Infringing Domain Names by licensing these domain names

either to OnlineNIC for its use or to OnlineNIC's customersto the Licensees for their use.

**D.E.    Defendants' Bad Faith Intent to Profit**

41.60.    OnlineNIC has a history of cybersquatting on famous and distinctive trademarks.

42.61.    On or about December 19, 2008, OnlineNIC was found liable for registering over 600

domain names that were confusingly similar to the VERIZON mark. In the *Verizon* case, the Court

awarded $33.15 million in damages and denied OnlineNIC's motion to set aside or reduce the judgment.

10

43.62.  On or about December 19, 2008, Yahoo! Inc. alleged in a separate action that OnlineNIC registered at least 554 domain names that were identical or confusingly similar to its trademarks.

44.63.  On or about October 7, 2008, Microsoft Corporation alleged in a separate action that OnlineNIC registered at least 97 domain names that were identical or confusingly similar to its trademarks.

45.64.  OnlineNIC has been named in administrative complaints filed under the Uniform Domain-Name Dispute-Resolution Policy ("UDRP"). In many of these UDRP cases, OnlineNIC has verified to the dispute providers that OnlineNIC itself was the registrant of the domain name at issue in the complaint.

46.65.  OnlineNIC has operated under one or more aliases, including "Junlong Zhen," "lenawoo," and "China-Channel," to hide its involvement in registering as a registrant, using, and trafficking in infringing domain names.

47.66.  OnlineNIC and, ID Shield and 35.CN profit from the sale of the ID Shield proxy service, including providing the service to the Doe Defendants end users of the Infringing Domain Names and to OnlineNIC. OnlineNIC and, ID Shield and 35.CN profit from the sale of the ID Shield proxy service by collecting fees from the sale of that service.

48.67.  The users Licensees of the Infringing Domain Names, which, upon information and belief, included Defendants and the Doe Defendants, intended to divert consumers to websites using domain names that were confusingly similar to the Facebook Trademarks and the Instagram Trademarks. In some instances, the Infringing Domain Names have been used for malicious activity, including to host hosting websites directing visitors to other commercial sites, phishing, and selling purported tools for hacking. Screenshots of several of these websites hosted at the Infringing Domain Names are attached to this Complainant as Exhibit 12 8.

49.68.  Defendants The Licensees also used some of the Infringing Domain Names in connection with email services, which is usually an indication that the domain name was used for phishing or other scams. Specifically, at least the following domain names had domain name servers configured to facilitate email: facebook-mails.com, facebook-pass.com, facebook-pw.com, facebookvideodownload.net, findfacebookid.com, hackingfacebook.net, hacksomeonesfacebook.com, login-lnstagram.com, m-facebook-login.com, singin-lnstargram.com, and trollfacebook.com.

50.69.  Defendants have registered multiple domain names that they know are identical or

11

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

confusingly similar to marks of others that were distinctive at the time of registration of the domain names, or dilutive of famous marks of others that were famous at the time of registration of the domain names. A table showing examples of some of Defendants' registered domains is attached as Exhibit ~~13~~8.

51.70.   Plaintiffs' Facebook Trademarks and Instagram Trademarks were distinctive and famous, when Defendants registered, used or trafficked in the Infringing Domain Names.

**E.F.    ~~OnlineNIC's and ID Shield's~~Defendants' Failure to Disclose Contact Information**

52.71.   Under the RAA, OnlineNIC agreed that ID Shield "shall accept liability for harm caused by wrongful use of the Registered Name, unless it discloses the current contact information provided by the licensee and the identity of the licensee within seven (7) days to a party providing [ID Shield] reasonable evidence of actionable harm." *See* Exhibit 4.

53.72.   OnlineNIC and ID Shield's service agreements anticipate that they will be sued for misuse of domain names, including for trademark infringement and cybersquatting, and require parties to their respective agreements to indemnify against such claims. *See* Exhibit~~s~~ 1 ~~and~~& 6.

54.73.   ID Shield service agreement states (twice) that it will cancel its proxy service if a domain name is alleged to infringe on a third party's trademark or if it receives valid evidence of trademark infringement. *See* Exhibit 6.

55.74.   ~~Between April 23, 2019 and August 12, 2019,~~ Plaintiffs' authorized representatives sent at least ~~5~~five notices to ID Shield with evidence that ~~each of~~ the Infringing Domain Names caused Plaintiffs actionable harm and requesting that ID Shield disclose the identities of the registrant(s) ("Plaintiffs' Notices"). For example:

  a.   On April 23, 2019 Plaintiffs' authorized representatives sent notice regarding www-facebook-login.com.

  b.   On May 2, 2019, Plaintiffs' authorized representatives sent notice regarding: facebook-fans-buy.com, facebook-pass.com, facebookphysician.com, facebook-pw.com, iamsocialfacebook.net, and iiinstagram.com.

  c.   On May 14, 2019, Plaintiffs' authorized representatives sent notice regarding: facebook-mails.com, facebookvideodownload.net, findfacebookid.com, instagram01.com, m-facebook-login.com, and www-facebook-pages.com.

12

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

d.  On June 3, 2019, Plaintiffs' authorized representatives sent notice regarding: buyinstagramfans.com, hackingfacebook.net, hacksomeonesfacebook.com, login-instagram.com, singin-lnstargram.com, and trollfacebook.com.

e.  On August 12, 2019, Plaintiffs' authorized representatives sent notice regarding instaface.org.

56.75.  ID Shield failed to timely disclose the identity or any contact information of the licensee when presented with reasonable evidence of actionable harm by Plaintiffs or their authorized representatives that one or more domain names infringed or cybersquatted on the Facebook Trademarks and Instagram Trademarks.

57.    ID Shield failed to even respond to Plaintiffs' Notices.

**FIRST CAUSE OF ACTION**

**[Cybersquatting on Plaintiffs' Trademarks Under 15 U.S.C. § 1125(d)]**

58.76.  Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

59.77.  The Facebook Trademarks and Instagram Trademarks (collectively, "Plaintiffs' Trademarks") were distinctive or famous and federally registered at the United States Patent and Trademark Office at the time Defendants registered, used, and trafficked in or used the Infringing Domain Names.

78.    The Facebook Trademarks and Instagram Trademarks (collectively, "Plaintiffs' Trademarks") were distinctive or famous and federally registered at the United States Patent and Trademark Office at the time the Licensees registered, trafficked in or used the Infringing Domain Names.

60.79.  One or more of the Infringing Domain Names are confusingly similar to Plaintiffs' Trademarks.

61.80.  One or more of the Infringing Domain Names are dilutive of the Facebook Trademarks or Instagram Trademarks.

62.81.  Defendants registered (as the registrant), used, or trafficked in one or more of the Infringing Domain Names with a bad faith intent to profit from Plaintiffs' Trademarks.

63.82.  Defendants do not have any trademark or other intellectual property rights in the Infringing Domain Names.

13

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

1   64.83.  The Infringing Domain Names do not consist of the legal name of either~~any of the
2   Defendants, nor do they consist of a name that is otherwise commonly used to identify them.

3   65.84.  Defendants have not made any prior use of any of the Infringing Domain Names in
4   connection with the *bona fide* offering of any goods or services.

5   66.85.  Defendants have not made any *bona fide* noncommercial or fair use of Plaintiffs'
6   Trademarks on a website accessible at any of the Infringing Domain Names.

7   67.86.  Defendants registered (as the registrant), used, and trafficked in one or more of the
8   Infringing Domain Names to divert consumers from Plaintiffs' legitimate websites to a website accessible
9   under the Infringing Domain Names for Defendants' commercial gain by creating a likelihood of
10  confusion as to the source, sponsorship, affiliation, or endorsement of their websites.

11  68.87.  Defendants' registration, use, and/or trafficking in the Infringing Domain Names
12  constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), entitling Plaintiffs to relief.

13  88.  The Licensees registered, trafficked in or used one or more of the Infringing Domain
14  Names with a bad faith intent to profit from Plaintiffs' Trademarks.

15  89.  None of the Infringing Domain Names consist of the legal name of the Licensees nor do
16  the Infringing Domain Names consist of a name that is otherwise commonly used to identify the Licensees.

17  90.  The Licensees do not have any trademark or other intellectual property rights in the
18  Infringing Domain Names.

19  91.  The Licensees have not made any prior use of any of the Infringing Domain Names in
20  connection with the *bona fide* offering of any goods or services.

21  92.  The Licensees have not made any *bona fide* noncommercial or fair use of Plaintiffs'
22  Trademarks on a website accessible at any of the Infringing Domain Names.

23  93.  Licensees registered, trafficked in, or used one or more of the Infringing Domain Names
24  to divert consumers from Plaintiffs' legitimate websites to websites accessible under the Infringing
25  Domain Names for Licensees' commercial gain by creating a likelihood of confusion as to the source,
26  sponsorship, affiliation, or endorsement of their websites.

27  94.  The Licensees registered multiple domain names which the Licensees knew were identical
28  or confusingly similar to marks of others that were distinctive at the time of registration of such domain

14

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

1    names.

2        95.    The Licensees have provided material and misleading false contact information for the

3    Infringing Domain Names.

4        96.    Licensees' registration, trafficking in or use of the Infringing Domain Names constitutes

5    cybersquatting in violation of 15 U.S.C. § 1125(d), and has harmed Plaintiffs.

6        97.    Since Defendants did not timely and accurately disclose the current contact information

7    provided by the Licensees and the identity of the Licensees in response to Plaintiffs' Notices prior to the

8    filing of the original Complaint, Defendants are liable for the harm to Plaintiffs caused by those Licensees'

9    registration, use, and/or trafficking in the Infringing Domain Names in violation of the Lanham Act.

10       98.    Defendants and those persons who are in active concert or participation with Defendants,

11   including Licensees, have irreparably harmed Plaintiffs and, if not enjoined, will continue to irreparably

12   harm Plaintiffs and their federally registered trademarks and service marks.

13       99.    Defendants and those persons who are in active concert or participation with Defendants,

14   including Licensees, have irreparably harmed the general public, which has an interest in being free from

15   confusion, mistake, and deception.

16       ~~69.~~100.    Plaintiffs' remedy at law is not adequate to compensate it for the injuries

17   Defendants and Licensees inflicted on Plaintiffs. Accordingly, Plaintiffs are entitled to permanent

18   injunctive relief pursuant to 15 U.S.C. § 1116.

19       ~~70.~~101.    Plaintiffs are entitled to recover Defendants' profits, Plaintiffs' actual damages, and

20   the costs of this action. Instead of actual damages and profits, Plaintiffs may alternatively elect to an award

21   of statutory damages under 15 U.S.C. § 1117(d) in an amount of $100,000 per domain name.

22       ~~71.~~102.    This is an exceptional case, entitling Plaintiffs to an award of reasonable attorneys'

23   fees under 15 U.S.C. § 1117.

24                      **SECOND CAUSE OF ACTION**

25               **[Trademark and Service Mark Infringement of**

26               **Plaintiffs' Trademarks Under 15 U.S.C. § 1114]**

27       ~~72.~~103.    Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

28       ~~73.~~104.    ~~Defendants~~The Licensees have used Plaintiffs' Trademarks in interstate commerce.

15

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

1    ~~Defendants'~~The Licensees' use of Plaintiffs' Trademarks is likely to cause confusion, mistake, or

2    deception as to the origin, sponsorship, or approval by Plaintiffs of ~~Defendants'~~the Licensees' websites.

3        ~~74.~~105.        The above-described acts of ~~Defendants~~the Licensees constitute trademark and

4    service mark infringement in violation of 15 U.S.C. § 1114(1) and entitle Plaintiffs' to relief.

5        ~~75.~~106.        ~~Defendants~~The Licensees have unfairly profited from the alleged trademark and

6    service mark infringement.

7        ~~76.~~107.        By reason of ~~Defendants'~~the Licensees' acts of trademark and service mark

8    infringement, Plaintiffs have suffered damage to the goodwill associated with Plaintiffs' Trademarks.

9        ~~77.~~108.        ~~Defendants~~Defendants and those persons who are in active concert or participation

10   with Defendants, including Licensees, have irreparably harmed Plaintiffs and, if not enjoined, will

11   continue to irreparably harm Plaintiffs and their federally registered trademarks and service marks.

12       ~~78.~~109.        Defendants and those persons who are in active concert or participation with

13   Defendants, including Licensees, have irreparably harmed the general public ~~and, if not enjoined, will~~

14   ~~continue to irreparably harm the general public~~, which has an interest in being free from confusion,

15   mistake, and deception.

16       ~~79.~~110.        Plaintiffs' remedy at law is not adequate to compensate them for the injuries

17   inflicted by Defendants and Licensees.  Accordingly, Plaintiffs are entitled to permanent injunctive relief

18   pursuant to 15 U.S.C. ~~§~~ § 1116.

19       111.    Since Defendants did not timely and accurately disclose the current contact information

20   provided by the Licensees and the identity of the Licensees in response to Plaintiffs' Notices prior to the

21   filing of the original Complaint, Defendants are liable for the harm to Plaintiffs caused by those Licensees'

22   use of the Infringing Domain Names in violation of the Lanham Act.

23       ~~80.~~112.        Plaintiffs are entitled to recover ~~Defendants'~~the Licensees' profits, Plaintiffs',

24   actual damages, and the costs of this action. Plaintiffs' are also entitled to have their damages trebled

25   under 15 U.S.C. § 1117(a).

26       ~~81.~~113.        This is an exceptional case, making Plaintiffs eligible for an award of reasonable

27   attorneys' fees pursuant to 15 U.S.C. § 1117(a).

28

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

**THIRD CAUSE OF ACTION**

**[Trademark and Service Mark Infringement of Plaintiffs' Trademarks**

**and False Designation of Origin Under 15 U.S.C. § 1125(a)]**

82.114.    Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

83.115.    Plaintiffs' Trademarks are distinctive marks that are associated with Plaintiffs and exclusively identify their respective businesses, products, and services.

84.116.    Defendants'The Licensees' use in commerce of Plaintiffs' Trademarks, and variations thereof, is likely to cause confusion, or to cause mistake, or to deceive the relevant public that Defendants'the Licensees' goods and services are authorized, sponsored, or approved by, or are affiliated with, Plaintiffs.

85.117.    Defendants'The Licensees' acts constitute trademark and service mark infringement of Plaintiffs' Trademarks, as well as false designation of origin, in violation of 15 U.S.C. § 1125(a), entitling Plaintiffs to relief.

86.118.    DefendantsThe Licensees have unfairly profited from their conduct.

87.119.    By reason of the above-described acts of Defendantsthe Licensees, Plaintiffs have suffered damage to the goodwill associated with Plaintiffs' Trademarks.

88.120.    Defendants and those persons who are in active concert or participation with Defendants, including Licensees, have irreparably harmed Plaintiffs and, if not enjoined, will continue to irreparably harm Plaintiff and Plaintiffs' TrademarksPlaintiffs and their federally registered trademarks and service marks.

89.121.    DefendantsDefendants and those persons who are in active concert or participation with Defendants, including Licensees, have irreparably harmed the general public and, if not enjoined, will continue to irreparably harm the general public, which has an interest in being free from confusion, mistake, and deception.

90.122.    Plaintiffs' remedy at law is not adequate to compensate itthem for the injuries inflicted by Defendants. and Licensees.  Accordingly, Plaintiffs are entitled to permanent injunctive relief pursuant to 15 U.S.C. § 11176.

123.    Since Defendants did not timely and accurately disclose the current contact information

17

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

1   provided by the Licensees and the identity of the Licensees in response to Plaintiffs' Notices prior to the

2   filing of the original Complaint, Defendants are liable for the harm to Plaintiffs caused by those Licensees'

3   use of the Infringing Domain Names in violation of the Lanham Act.

4       91.124.    Plaintiffs are entitled to recover Defendants' profits, Plaintiffs', actual damages,

5 and the costs of this action. Plaintiffs' are also entitled to have their damages trebled under

6 15 U.S.C. § 1117(a).

7       92.125.    This is an exceptional case, making Facebook eligible for an award of reasonable

8 attorneys' fees pursuant to 15 U.S.C. § 1117.

9 **FOURTH CAUSE OF ACTION**

10 **[Dilution of the Facebook Trademarks and Instagram Trademarks Under 15 U.S.C. § 1125(c)]**

11       93.126.    Facebook and Instagram reallege and incorporate by reference all of the preceding

12 paragraphs.

13       94.127.    The Facebook Trademarks and Instagram Trademarks are famous, as that term is

14 used in 15 U.S.C. § 1125(c), and they were famous before Defendants'the Licensees' use of them and

15 variations of the trademarks in commerce. This fame is based on, among other things, the inherent

16 distinctiveness and federal registration of each of the Facebook Trademarks and Instagram Trademarks as

17 well as the extensive and exclusive worldwide use, advertising, promotion, and recognition of them.

18       95.128.    Defendants'The Licensees' use of the Facebook Trademarks and Instagram

19 Trademarks, and variations thereof, in commerce is likely to cause dilution by blurring or dilution by

20 tarnishment of these trademarks.

21       96.129.    Defendants'The Licensees' acts constitute dilution by blurring and dilution by

22 tarnishment in violation of 15 U.S.C. § 1125(c), entitling Facebook and Instagram to relief.

23       97.130.    DefendantsThe Licensees have unfairly profited from their conduct.

24       98.131.    DefendantsThe Licensees damaged the goodwill associated with the Facebook

25 Trademarks and the Instagram Trademarks and they will continue to cause irreparable harm.

26       132.  Facebook'sDefendants and Instagram'sthose persons who are in active concert or

27 participation with Defendants, including Licensees, have irreparably harmed Plaintiffs and, if not

28 enjoined, will continue to irreparably harm Plaintiffs and their federally registered trademarks and service

18

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

marks.

133.    Defendants and those persons who are in active concert or participation with Defendants, including Licensees, have irreparably harmed the general public, which has an interest in being free from confusion, mistake, and deception.

99.134.    Plaintiffs' remedy at law is not adequate to compensate them for the injuries inflicted by Defendants and Licensees.  Accordingly, Facebook and InstagramPlaintiffs are entitled to permanent injunctive relief pursuant to 15 U.S.C. § § 1116.

135.    Since Defendants did not timely and accurately disclose the current contact information provided by the Licensees and the identity of the Licensees in response to Plaintiffs' Notices prior to the filing of the original Complaint, Defendants are liable for the harm to Plaintiffs caused by those Licensees' use of the Infringing Domain Names in violation of the Lanham Act.

100.136.    Because Defendants'Licensees acted willfully, Facebook and Instagram are entitled to damages against Defendants, and those damages should be trebled pursuant to 15 U.S.C. § 1117.

101.137.    This is an exceptional case, making Plaintiffs eligible for an award of attorneys' fees pursuant to 15 U.S.C. § 1117.

### REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs request judgment against Defendants as follows:

1.    That the Court find that Defendants registered, trafficked in or used one or more of the Infringing Domain Names with a bad faith intent to profit from Plaintiffs' Trademarks in violation of 15 U.S.C. § 1125(d).

1.    That the Court enter a judgment against Defendants that Defendants have:

2.    I infringed the rights of Plaintiffs in the federally registered Facebook Trademarks, and InstagramPlaintiffs' Trademarks, in violation of 15 U.S.C. § 1125(d).

3.    InfringedThat the Court order each of the Infringing Domain Names be transferred to Plaintiffs.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

4.      That Plaintiffs be awarded Defendants' profits and Plaintiffs' actual damages, or, in the alternative, $100,000 in statutory damages per infringing domain name by reason of Defendants' cybersquatting, in accordance with the provisions of 15 U.S.C. § 1117(d).

5.      That the Court find that:

a.      Licensees have registered, trafficked in, or used one or more the Infringing Domain Names with a bad faith intent to profit from Plaintiffs' Marks in violation of 15 U.S.C. § 1125(d);

a.b.      Licensees infringed the rights of Plaintiffs in the federally registered Facebook Trademarks and Instagram Trademarks, in violation of 15 U.S.C. § 1114(1);

c.      InfringedLicensees infringed the rights of Plaintiffs in Plaintiffs' Marks in violation of 15 U.S.C. § 1125(a);

b.d.      Licensees have diluted the federally registered Facebook Trademarks and Instagram Trademarks, in violation of 15 U.S.C. § § 1125(ac);

e.      InfringedDefendants did not timely and accurately disclose the rights ofcurrent contact information provided by the Licensee and the identity of the Licensee in response to Plaintiffs' Notices prior to the filing of the original Complaint; and

f.      Defendants are liable for the harm to Plaintiffs incaused by those Licensees' wrongful use of the Infringing Domain Names.

6.      That the Court enter a judgment against Defendants that Defendants are liable for the harm caused to Plaintiffs by the Licensees' cybersquatting, trademark infringement and dilution of Plaintiffs' Trademarks.

7.      That Plaintiffs be awarded the Licensees' profits and Plaintiffs' actual damages, or, in the alternative, $100,000 in statutory damages per infringing domain name by reason of the Licensees' cybersquatting, in accordance with the provisions of 15 U.S.C. § 1117(d).

8.      That Plaintiffs be awarded Licensees' profits and Plaintiffs' actual damages, and costs of the action, by reason of Licensees' trademark infringement and false designation of origin and that these damages be trebled in accordance with the provisions of 15 U.S.C. § 1117.

3.9.      That Plaintiffs be awarded Licensees' profits and Plaintiffs' actual damages, and costs of the action, by reason of Licensees' dilution of the federally registered Facebook Trademarks and

20

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Instagram Trademarks, and that these damages be trebled in violationaccordance with the provisions of 15 U.S.C. § 1125(c).1117.

10.    That the Court find that ID Shield is an alter ego of OnlineNIC and that OnlineNIC is liable for ID Shield's unlawful acts.

11.    That the Court find that ID Shield and OnlineNIC are alter egos of 35.CN and that 35.CN is liable of ID Shield's and OnlineNIC's unlawful acts.

12.    That the Court find that OnlineNIC is the direct participant in the unlawful acts of ID Shield, and thus is liable for the harm caused.

13.    That the Court find that 35.CN is the direct participant in the unlawful acts of ID Shield and OnlineNIC, and thus is liable for the harm caused.

4.14.    That each of the above acts was willful.

15.    That Defendants be ordered to account for and disgorge to Plaintiffs all amounts by which Defendants have been unjustly enriched by reason of the unlawful acts complained of.

16.    That Plaintiffs be awarded an amount sufficient to reimburse Plaintiffs for the costs of corrective advertising.

17.    That Plaintiffs be awarded prejudgment interest on all infringement damages.

5.18.    That the Court issue a permanent injunction enjoining and restrainingThat Defendants and their agents, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, from:be permanently enjoinined and restrained from:

a.    Registering, using, or trafficking in any domain name that is identical or confusingly similar to the Facebook Trademarks or the Instagram Trademarks;

b.    Engaging in any use, including advertising, promoting, marketing, franchising, selling, and offering for sale any goods or services, on or in connection with the Facebook Trademarks or the Instagram Trademarks, or any similar mark or designation, that is likely to cause confusion, or to cause mistake as to the affiliation of that use with Plaintiffs; and

c.    Engaging in any activity which lessens the distinctiveness or tarnishes the Facebook Trademarks or the Instagram Trademarks.

6.    That Plaintiffs be awarded damages for Defendants' trademark infringement and false designation of origin and that these damages be trebled due to Defendants' willfulness, in accordance with the provisions of 15 U.S.C. § 1117.

7.1.    That Defendants be ordered to account for and disgorge to Plaintiffs all amounts by which Defendants have been unjustly enriched by reason of the unlawful acts complained of.

8.    That Plaintiffs be awarded $100,000 in statutory damages per infringing domain name by reason of Defendants' cybersquatting in accordance with the provisions of 15 U.S.C. § 1117.

9.1.    That Plaintiffs be awarded an amount sufficient to reimburse Plaintiffs for the costs of corrective advertising.

10.1.    That Plaintiffs be awarded prejudgment interest on all infringement damages.

11.19.   That the Court award Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and any other applicable provision of law.

12.20.   That the Court award Plaintiffs their costs of suit incurred herein.

13.21.   That the Court award such other or further relief as the Court may deem just and proper.

DATED: October 28, 2019February 25, 2021        TUCKER ELLIS LLP

By: /s/David J. Steele
    David J. Steele
    Howard A. Kroll
    Steven E. Lauridsen

    Attorneys for Plaintiffs,
    FACEBOOK, INC. and INSTAGRAM, LLC

    Platform Enforcement and Litigation
    Facebook, Inc.
      Jessica Romero
      Nikkya WilliamsStacy Chen
      Olivia Gonzalez

FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-07071-SVK

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

1
2

## DEMAND FOR TRIAL BY JURY

3        Plaintiffs Facebook, Inc. and Instagram, LLC, hereby demand a trial by jury to decide all issues

4   so triable in this case.

5

6   DATED: ~~October 28, 2019~~February 25, 2021          TUCKER ELLIS LLP

7

8

9                                              By:  /s/David J. Steele
                                                    David J. Steele
10                                                  Howard A. Kroll
                                                    Steven E. Lauridsen
11
                                                    Attorneys for Plaintiffs,
12                                                  FACEBOOK, INC. and INSTAGRAM, LLC,

13                                                  Platform Enforcement and Litigation
                                                    Facebook, Inc.
14                                                  Jessica Romero
                                                    ~~Nikkya Williams~~Stacy Chen
15                                                  Olivia Gonzalez
16
17
18
19
20
21
22
23
24
25
26
27
28

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Houston ◆ Los Angeles ◆ San Francisco ◆ St. Louis