TUCKER ELLIS LLP
David J. Steele - SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll - SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen - SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:      213.430.3400
Facsimile:      213.430.3409

Attorneys for Plaintiffs,
FACEBOOK, INC. and INSTAGRAM LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVSION

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>ONLINENIC INC. and DOMAIN ID SHIELD SERVICE CO., LIMITED,<br><br>    Defendants. | Case No. 5:19-cv-07071-SVK<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT AND TO MODIFY THE SCHEDULING ORDER TO ALLOW AMENDMENT OF THE COMPLAINT**<br><br>Date:   April 6, 2021<br>Time:  10:00 a.m.<br>Court:  Courtroom 6, 4th Floor<br>Judge:  Hon. Susan van Keulen |

## I.   INTRODUCTION

The pending motion of Plaintiffs Facebook, Inc. and Instagram, LLC (collectively, "Facebook") seeks leave to add Xiamen 35 Internet Technology Co., Ltd. ("35.CN") as a party defendant. After their contentious and evasive discovery responses, Defendants cry foul, resorting to predicable claims of undue delay and prejudice. Neither basis justifies overcoming the well-settled principle that amendment is to be liberally allowed.

As for Facebook's diligence, Defendants' discovery responses obfuscated the precise nature and role of 35.CN with respect to Defendants' wrongful acts. Defendants did not produce the relevant

outsourcing agreements until after the deadline to amend pleadings had lapsed, and it was not until additional discovery was obtained in January and February of this year that 35.CN's alter ego and direct participant liability were revealed. Defendants must not be rewarded for their own dilatory discovery practices. *See Compaq Computer Corp. v. Egnonome, Inc.*, 2000 WL 345903 *3 (S.D. Texas March 15, 2000) ("The law and this Court abhor a [discovery] 'gotcha.'").

Defendants next argue that they would be prejudiced by the amendment because the ultimate resolution of this matter may be delayed. Defendants claim the delay would be caused by an anticipated jurisdictional fight to be brought by 35.CN after delays in effecting foreign service of process. Yet, "a subsidiary's contacts may be imputed to the parent where the subsidiary is the parent's alter ego." *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1134 (9th Cir. 2003). Here, 35.CN has already informally participated in this case by verifying Defendants' discovery responses and participating in a court-ordered settlement conference. So it cannot come as a surprise that 35.CN might be brought into the case in light of the discovery that has taken place in the past few months. In effect, Defendants are inviting Plaintiffs to file a separate action against 35.CN and then impose duplicative litigation and its associated burden upon the Court and the parties. This not only makes no sense, it falls far short of demonstrating substantial prejudice as required. Common sense dictates that at this stage of the case, it would be better to have all the material parties before the Court in one proceeding.

Finally, Defendants contend that Facebook's proposed amendment is futile, arguing that the amended claims fail to pass muster under Rule 12(b)(6). But Defendants fails to address in their Opposition how these allegations would be unable to withstand a motion to dismiss with respect to the direct participant theory of liability (*Comm. For Idaho's High Desert, Inc. v. Yost,* 92 F.3d 814, 823 (9th Cir. 1996)) or the single enterprise theory of liability (*Las Palmas Assoc. v. Las Palmas Ctr. Assoc.,* 235 Cal.App.3d 1220, 1250 (Cal. Ct. App. 1991)) given that 35.CN operated and controlled the underlying cybersquatting activities.

In sum, Facebook has satisfied the good cause standard under Rule 16(b)(4) and, accordingly, asks that the Court grant leave to file the First Amended Complaint.

## II. ARGUMENT

### A. Facebook has been diligent, and there has been no undue delay.

Facebook has been diligent in conducting discovery. Facebook served its initial document requests to Defendants on March 20, 2020. Defendants should have produced responsive documents, including the Outsourcing Agreements, to Facebook on or before April 20, 2020. Due to Defendants' multiple requests for extensions, Defendants' initial production of documents, which did not include the Outsourcing Agreements, was not made until June 9, 2020. This initial production of documents, however, was incomplete, unresponsive, untimely and unusable because the documents contained no Bates stamp numbers, no load file, and no overlays for metadata and confidentiality designations. After five days of meet and confer conferences concluded on July 15, 2020, Defendants agreed to supplement their written responses and correct the deficiencies in their document production. On July 23, 2020, more than three weeks after the July 1, 2020 deadline for adding additional parties had passed, Defendants produced over 271,000 images, including the Outsourcing Agreements, again without proper metadata. Facebook did not have searchable files with metadata until the end of August 2020, almost two months after the deadline to amend the Complaint. Since Facebook was unaware of the interrelationship between 35.CN and Defendants on or before July 1, 2020, and since that deadline had passed, Facebook did not request that the date to amend pleadings be continued when it requested a continuance of other pre-trial dates on July 16, 2020.

Defendants assert that Facebook should have been aware in July 2020 "that 35.CN provides *all* services to Defendants pursuant to an 'Outsourcing Agreement'—when Defendants produced that agreement in discovery." (Opp. at 2) (emphasis added.) Defendants produced 29 pages of Outsourcing Agreements, out of over 271,000 images and 4.1 Gigabytes of database files, more than 3 weeks after the deadline to amend had passed. Even if the documents were searchable at the time—and they were not—it would have taken some time to digest all of these documents.

As significantly, Defendants misstate the nature of the Outsourcing Agreements. They do not show, as Defendants suggest, that 35.CN provided "all services" to Defendants. Rather, 35.CN's proposed services in the Outsourcing Agreements are limited, and tellingly do not include providing registrar or proxy services on behalf of Defendants OnlineNIC, Inc. ("OnlineNIC") and Domain ID Shield Service

Co., Limited ("ID Shield").[1] Nor do these agreements show that 35.CN controlled the operations of Defendants, that 35.CN's employees managed all of the day-to-day functions of Defendants and that 35.CN and OnlineNIC shared the same domain name registration database—all facts Facebook learned in January and February 2021 to show that 35.CN was the alter ego of Defendants and directly participated in the accused cybersquatting activities. Defendants point to no provision in the Outsourcing Agreements that, by itself, proves any of the necessary elements of a direct participant or an alter ego claim.

Indeed, the Outsourcing Agreements' significance to support a claim of alter ego arose only when Facebook learned on December 18, 2020 that Carrie Yu was an employee of 35.CN[2] at the time she signed the agreement on behalf of OnlineNIC. Carrie Yu's blended role on behalf of the Defendants and 35.CN shows that the Outsourcing Agreements could not have been an arms-length transaction between OnlineNIC and 35.CN.

Moreover, the notion that Defendants have been forthcoming with their discovery with respect to 35.CN and its relationship with OnlineNic and ID Shield is belied by their course of conduct in discovery. For example, when seeking discovery on this very issue by asking OnlineNIC to "[a]dmit that the day-to-day functions of OnlineNIC are carried out by 35.CN employees," OnlineNIC claimed that "Responding party cannot admit or deny, on the grounds that the meaning of the term *'day-to-day'* functions is ambiguous." Request For Admission 23, issued Sept. 10, 2020. Defendants' refusal to respond to this Request for Admission necessitated a meet and confer between counsel, which resulted in Facebook sending its portion of a Joint Discovery Letter Brief to Defendants' counsel on this and other issues. Only at that point—on January 29, 2021—did Defendants admit this Request For Admission.

---

[1] Pursuant to the Outsourcing Agreements, 35.CN would render the following services for OnlineNIC: "website design; new product research and development; system maintenance; technical support and technical consultation; marketing, sales, support service; other services which the two parties agree." Exhibit D to Declaration of Perry J. Narancic ("Narancic Decl."), at pp. 1-2.

[2] Facebook learned on October 16, 2020, when Defendants responded to the First Requests For Admission, that Carrie Yu was also known as Yu Hongxia, the person who signed the discovery verifications as an officer of Defendants. Facebook propounded Interrogatories to Defendants on November 12, 2020 to determine, among other things, whether officers, directors and shareholders of Defendants had any ties to 35.CN. Defendants responded to those Interrogatories on December 18, 2020 (and supplemented those responses on February 1, 2021), stating that Carrie Yu was an employee of 35.CN and that she held the shares of ID Shield "beneficially" for OnlineNIC.

There are other examples demonstrating how—despite Facebook's diligence—Defendants have vigorously resisted discovery regarding 35.CN's role in the conduct at issue in this case. For example, Facebook has had discovery outstanding since November 18, 2020 regarding Defendants' finances and business activities with 35.CN. Almost four months later, Defendants still have not yet produced a single document regarding these activities. On March 16, 2021, Facebook filed two separate Joint Discovery Letter Briefs to compel these documents. (Dkt. 78, 79.) These document requests are probative of facts regarding Facebook's direct participant and alter ego claims.[3] Defendants' bare claim that their lone production of a single document regarding 35.CN *after* the motion to amend deadline somehow means that they have been forthcoming with providing information regarding 35.CN cannot pass muster.[4]

Defendants also assert that Facebook should have known, by reviewing OnlineNIC's Articles of Incorporation and conducting an Internet search, that "[t]he majority and controlling shareholder of 35.CN was the initial shareholder, incorporator and founding president of OnlineNIC." (Opp. at 4.) Although OnlineNIC's Articles of Incorporation (attached to the Narancic Decl. as Exhibit A) identify Shaohui Gong as the incorporator of OnlineNIC, they do not identify Mr. Gong as the president or shareholder of OnlineNIC, or that Mr. Gong was the majority and controlling shareholder of 35.CN. It is unclear what an Internet search before July 1, 2020 would have revealed; however, even the search conducted by Defendants' counsel in March 2021, and attached to the Narancic Decl. as Exhibit B, does not identify Mr. Gong as the majority and controlling shareholder of 35.CN, or the president or shareholder of OnlineNIC.

By themselves, the Articles of Incorporation and the Outsourcing Agreement do not evidence alter ego or direct participation; rather they raise questions requiring further investigation and discovery, which is what Facebook did. It was only through the discovery responses received ***in January and February 2021*** that Facebook finally learned that (1) 35.CN employees manage and operate both ID Shield and OnlineNIC on a daily basis, (2) all but one of the individuals who run the operations of

---

[3] Indeed, centralized accounting, undocumented transfers of funds, and unclear allocation of profits and losses are all factors relevant to determining the existence of an alter ego relationship. *Pan Pacific Sash & Door Co. v. Greendale Park, Inc.*, 166 Cal. App. 2d 652, 658-59 (Cal. Ct. App. 1958).

[4] Additionally, Defendants do not address in their Opposition why they did not comply with Local Rule 3-15(a)(1)(i) and identify 35.CN in their Certification of Interested Entities or Person (Dkt. 24.)

OnlineNIC are employees of 35.CN, and (3) 35.CN and OnlineNIC share the same domain name registration database, which is used to operate the registrar businesses for both 35.CN and OnlineNIC. Facebook learned in December 2020 (after the deadline to amend pleadings) that (4) Carrie Yu, an officer and director of OnlineNIC and the sole shareholder of ID Shield, was an employee of 35.CN and (5) 35.CN provides office space to both ID Shield and OnlineNIC. These are all critical facts which, in combination with Mr. Gong's role in both OnlineNIC and 35.CN, and the Outsourcing Agreements, support Facebook's alter ego and direct participation allegations against 35.CN.

Defendants' responses to discovery regarding their relationship with 35.CN have been anything but forthcoming. They have delayed, objected and produced unreviewable documents. Accordingly, even with the exercise of the upmost due diligence, it was impossible for Facebook "to meet the timetable set forth in the order" because it could not have known of the potential claim until after the deadline had passed. *See, e.g., Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 671 (C.D. Cal. 2003); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) ("delay, by itself, is insufficient to justify denial of leave to amend.")

### B. The proposed amendment does not substantially prejudice defendants.

Defendants' lone argument of prejudice is that the proposed amendment will "likely significantly delay this litigation." (Opp. at 7.) As "[t]he party opposing amendment, [Defendants] bear the burden of showing prejudice" (*DCD Programs*, 833 F.2d at 187), and they have failed to meet that burden. Contrary to the facts in this case where discovery is scheduled to continue until May 4, 2021, and Facebook has been diligent in propounding discovery, Defendants rely on cases to show prejudice where motions to amend were delayed until after discovery closed,[5] after summary judgment was granted,[6] or after trial.[7] (Opp. at 6-7.)

---

[5] *Kaplan v. Rose,* 49 F.3d 1363, 1370 (9th Cir. 1994) ("Trial was only two months away, and discovery was completed."); *Roberts v. Arizona Bd. Of Regents,* 661 F.2d 796, 798 (9th Cir. 1981) ("issue . . . raised at the eleventh hour, after discovery was virtually complete and the Board's motion for summary judgment was pending before the court.")

[6] *Texaco, Inc. v. Ponsoldt,* 939 F.2d 794, 799 (9th Cir. 1991) ("Texaco did not move to amend until March 1990, eight months after the district court granted summary judgment against it.")

[7] *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 324 (1971) (motion to amend filed after trial); *Consol. Data Terminals v. Applied Digital Data Sys. Inc.,* 708 F.2d 385, 396 (9th Cir. 1983) ("pleading amendment was allowed after the purportedly relevant evidence had already been admitted"

In addition, Defendants suggest they would be prejudiced because 35.CN would contest jurisdiction. (Opp. at 7.) Defendants ignore, however, that "the alter ego test may be used to extend personal jurisdiction to a foreign parent or subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate." *Ranza v. Nike,* 793 F.3d 1059, 1073 (9th Cir. 2015). Any delay in briefing this issue should not cause any prejudice to Defendants.

Furthermore, Defendants imply they will be prejudiced because Facebook's service on 35.CN will take more than one year. (Opp. at 7.) In fact, the only delay that Defendants identified is the delay that the individuals running Defendants' business can control. 35.CN has the choice to accept service, or expedite service in order to move this case without much delay. If Defendants' alter ego seeks to delay this case, it would be improper for Defendants to "benefit" from that delay by claiming prejudice.

Finally, Defendants claim without any support, that Facebook will "seek vast and unreasonable discovery from Defendants." (Opp. at 7.) Defendants failed to identify, however, any broadening of the current scope of the discovery that would be sought from them. And with regard to 35.CN, Defendants have acknowledged that Facebook will likely request from 35.CN the same documents that it requested from Defendants. (Opp. at 8.)

Defendants cannot point to any other prejudice to Defendants or even to 35.CN. There is no evidence that 35.CN would be surprised by the proposed alter ego and direct participant claims. 35.CN has been intimately involved in this case since its inception, especially since OnlineNIC's discovery responses have come from 35.CN employees and from 35.CN operated systems. In addition, an employee of 35.CN signed Defendants' discovery verifications and attended the Court-ordered settlement conference.

Here, it would be unfair to deprive Facebook of its ability to amend its complaint and to add 35.CN, which would unfairly reward Defendants for withholding critical information in discovery until after the amendment deadline had passed.

---

at trial).

### C. Defendants fail to establish that the claims against 35.CN are futile.

The proposed First Amended Complaint alleges facts showing that 35.CN is the direct participant in the cybersquatting activities alleged.[8] In their opposition, Defendants do not argue that the direct participant allegations against 35.CN are futile. As such, Defendants concede by their silence that Facebook has properly alleged its direct participant claim. *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) ("a proposed amendment is futile only if no set of facts can be proved under the amendment of the pleadings that would constitute a valid and sufficient claim or defense").

Defendants instead argue that the alter ego allegations against 35.CN are futile, but ignore the alter ego allegations which Facebook has actually pled. Facebook's claim against 35.CN is based in part on the single business enterprise theory, which is a method of piercing the corporate veil of affiliated companies. It allows a creditor to reach the assets of one company to satisfy the debts of another company when two companies have so integrated their business to achieve a common business purpose. "Though there are two or more [companies], there is but one enterprise and that this enterprise has been so handled that it should respond, as a whole, for the debts of certain component elements of it." *Las Palmas Assoc.*, 235 Cal.App.3d at 1249-1250.

In support of its claim that 35.CN and Defendants are a single business enterprise, Facebook has pled (1) common employees, (2) common offices, (3) common database, (4) payment of wages by one corporation to another corporation's employees and (5) services rendered by the employees of one corporation on behalf of another corporation. In addition, Facebook has pending motions to compel the productions of documents that may establish (1) undocumented transfers of funds between corporations, and (2) unclear allocation of profits and losses between corporations. *See, e.g., F.T.C. v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1136 n.6 (9th Cir. 2010); *Pan*, 166 Cal. App. 2d at 658-59; *Las Palmas Assoc.*,

---

[8] The direct participant theory is distinct from Facebook's alter ego theory. *Gajo v. Chicago Brand,* 2017 WL 2473142 at *4 (N.D. Cal. June 8, 2017) ("Trademark infringement has been evaluated differently from patent infringement–i.e., personal liability can stem from either alter ego liability or direct participation in the tort."); *Comm. For Idaho's High Desert,* 92 F.3d at 823 ("[a] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf."). Furthermore, a parent-subsidiary relationship between 35.CN and Defendants is not necessary to find 35.CN liable for its own acts. *See U.S. v. Bestfoods,* 524 U.S. 51, 65 (1998) ("the existence of the parent-subsidiary relationship under state corporate law is simply irrelevant to the issue of direct liability.").

235 Cal.App.3d at 1250. Defendants ignore these allegations in their opposition and merely conclude that "Facebook's pleadings do not address either of these conditions. Instead, Facebook points to the fact that the parties share some employees and resources." (Opp. at 9.) As such, Defendants have not met their burden that the alter ego allegations in the First Amended Complaint are futile.

Far from being futile, Facebook would be substantially prejudiced if 35.CN were not added to the case. Defendants have resisted discovery regarding their finances. As described above, Facebook has sought and Defendants have vigorously opposed discovery on Defendants' finances, even though they bear directly on Defendants' bad faith intent to profit. In addition, as related to the alter ego claims, Facebook must understand whether Defendants can satisfy a judgment in this case. It would disserve justice to permit 35.CN to have undercapitalized Defendants, only to evade paying a judgment in this case. Facebook has no way of knowing this because Defendants have refused to produce their financial information. Accordingly, Facebook would be prejudiced if 35.CN were not added to this case.

In sum, Facebook's claims against 35.CN are well-stated and not vulnerable to a motion to dismiss. The discovery produced has substantiated Facebook's claims against 35.CN, and therefore the claim is not "futile."

### III. CONCLUSION

For the reasons set forth above, Facebook's Motion should be granted and the proposed First Amended Complaint should be adopted as the operative pleading in this matter.

[Signature on following page]

DATED: March 18, 2021

TUCKER ELLIS LLP

By: /s/sDavid J. Steele
David J. Steele
Howard A. Kroll
Steven E. Lauridsen

Attorneys for Plaintiffs,
FACEBOOK, INC. and INSTAGRAM LLC

Jessica Romero
Stacy Chen
Olivia Gonzalez
Platform Enforcement and Litigation
Facebook, Inc.

10
REPLY IN SUPPORT OF MOT. FOR LEAVE TO AMEND COMPLAINT
Case No. 5:19-cv-07071-SVK