**Tucker Ellis** LLP

515 South Flower Street, Forty Second Floor | Los Angeles, CA 90071-2223 | TEL 213.430.3400 | FAX 213.430.3409

April 28, 2021                    DIRECT DIAL 213.430.3360 | david.steele@tuckerellis.com

**VIA CM/ECF**

Magistrate Judge Susan van Keulen
U.S. District Court
Northern District of California
280 South 1st Street
San Jose, CA 95113

Re: *Facebook Inc. et al. v. OnlineNIC Inc., et al.*
    No. 5-19-cv-07071-SKV
    *Joint Discovery Letter Brief – Financial Documents*

Dear Magistrate Judge van Keulen:

Pursuant to Your Honor's Civil Scheduling and Discovery Order (dated June 2020), the parties to the above-entitled action submit this joint statement to seek the Court's assistance in resolving a discovery dispute.

**Days Remaining Before the Close of Fact Discovery and/or Trial**
The close of fact discovery is June 3, 2021, and trial is set to begin on November 15, 2021. (Dkt. 60). There are **thirty-six days** before the close of fact discovery and **201 days** before trial is scheduled to commence.

**Brief Statement of the Unresolved Dispute**
On March 16, 2021 the parties filed a joint discovery submission in which Plaintiffs sought to compel production of certain of Defendants' financial records. (Dkt. 79). On March 24, 2021 this Court found "that the financial records are relevant and responsive as they are related to Defendants' revenue and profit and are likely to shed further light on the relationship to and activities of 35.CN." (Dkt. 81 at p. 2). Accordingly, the Court granted Plaintiffs' motion to compel and ordered Defendants to produce responsive documents by April 7, 2021.

Plaintiffs contend that Defendants' response to this Court's order is wholly inadequate. *First*, ID Shield did not produce any information in response to the Court's order. *Second*, OnlineNIC produced less than two pages of information purporting to cover ten years of accounting records. OnlineNIC first produced a single page on Friday April 9, 2021, two days after the Court's deadline, that contained an undeveloped balance sheet and profit and loss statement for the years 2017-2019. OnlineNIC supplemented its production on Monday April 12, 2021, with a one page document, again containing an undeveloped balance sheet and profit and loss statement for the years 2009-2019. Each document provides no source documents, explanation or meaningful detail supporting these entries (i.e. "other deductions" or "technique exploitation and service charge"). Neither document contains an income statement or revenue and expense statement ordered by the Court. And some of the data in OnlineNIC's second production

CHICAGO  CLEVELAND  COLUMBUS  LOS ANGELES  SAN FRANCISCO  ST. LOUIS | tuckerellis.com

contradicted data that it produced three days prior. Defendants' failure to produce relevant documents and support for those documents puts them in contempt of the Court's order.

Defendants contend they have produced all documents which are responsive to Plaintiffs' disputed discovery requests and the Court order. The Court ordered the production of the specific documents requested in Plaintiffs' discovery requests i.e. financial statements, balance sheets, income statements, profit and loss statements, revenue and expense statements. Exhibits 5 and 6 to Dkt. No. 79 set out the specific document requests in dispute. To the extent that Plaintiffs seek an order going beyond those documents, Plaintiffs' present motion is out of order.

As to Defendants' tardiness in providing documents, that cannot be denied and Defendants' beg the Court's indulgence. But Defendants did not "intentionally" violate the Court order, and as further discussed below, Defendants have reasonably co-operated at every turn with Plaintiffs during discovery – despite very difficult circumstances.

**Plaintiffs' Statement of Proposed Compromise**

In ordering Defendants to produce their financial records, this Court held "that the financial records are relevant and responsive as they are related to Defendants' revenue and profit and *are likely to shed further light on the relationship to and activities of 35.CN*." (Dkt. 81 at p. 2, lns. 8-10; emphasis added). Under the Court's order, Defendants had to provide—at a minimum—financial records with sufficient detail to show the relationship between them and 35.CN. Indeed, 35.CN is not mentioned in any of the documents produced.

With full knowledge of the Court's order and intent, OnlineNIC produced less than one page of financial data on April 9, 2021, two days after the Court's April 7, 2021 deadline. OnlineNIC's production contained a rudimentary balance sheet and profit and loss statement for only the three of the required 12 accounting years. OnlineNIC's production did not include source documentation, any detail regarding the figures, or other financial statements, including income statements and revenue and expense statements. Nor did OnlineNIC's production shed further light on the relationship to and activities of 35.CN, including for example whether and if OnlineNIC pays 35.CN for the work performed by 35.CN's employees and whether that amount is consistent with the purported services agreement between the parties; or whether 35.CN pays for the liabilities of OnlineNIC or ID Shield. In the email transmitting this production, Defendants' counsel stated that OnlineNIC would complete its production on Monday April 12, 2021. Defendants counsel made no mention of the production of ID Shield's financial documents.

On Monday April 12, 2021, OnlineNIC completed its production when it produced a revised version of the same document it had produced three days prior. In addition to the data for the 2017-2019 accounting years that was previously produced, the revised production, which was limited to one page, contained the same rudimentary balance sheet and profit and loss statement for the 2009-2016 accounting years. Again, OnlineNIC's production did not include source documentation, any detail regarding the figures or other financial statements, including income statements and revenue and expense statements. Nor did OnlineNIC's production include any financial information relating to 2020. Defendant's counsel acknowledged that the document was produced for this litigation and claimed that the financial information contained in it was "pulled from OnlineNIC's internal systems." And, again, ID Shield did not produce any financial information of any kind.

OnlineNIC's one page document production is inadequate. *First*, as discussed above, Defendants were ordered to produce financial statements, including balance sheets, income statements, profit and loss statements, and revenue and expense statements with sufficient detail to "shed further light on the



relationship to and activities of 35.CN." OnlineNIC's production did not include income statements or revenue and expense statements. Nor did it include financial statements for 2020. Furthermore, OnlineNIC's production of a simplified and pooled balance sheet and profit and loss statement contains no underlying source materials or descriptions and is entirely silent with respect to its co-defendants and the financial arrangements among them. OnlineNIC's production is largely inapposite for the purposes of evaluating the alter ego factors at issue in this case—allegations which are central to this case, and to which Defendants have consistently frustrated discovery, here, blatantly flouting the Court's order. *Second*, there are serious questions about the accuracy of the financial information in the one-page document that OnlineNIC did produce. The net income figures for the 2017-2019 accounting years in the revised production are different from the net income figures for those same accounting years in the document that it had just produced three days earlier. These discrepancies are hard to reconcile if OnlineNIC's claim that these document were created from responsive information "pulled from OnlineNIC's internal systems" is to be believed. [1]

***Accordingly, Plaintiffs request that the Court order OnlineNIC to produce all financial records, contained in its "internal systems" within three days of the Court's order. Plaintiffs also request that the Court order OnlineNIC to show cause for why it should not be sanctioned for its discovery abuse entitling Plaintiffs to their fees and costs associated with bringing this motion.***

As egregiously, ID Shield has not produced *any* financial records pursuant to the Court's order, including those relevant documents to shed light on the financial arrangements among its co-defendants. In prior discovery responses, ID Shield admitted that it filed tax returns in 2015 and before; yet, ID Shield has not produced any such documents or supporting financial information for those years. In addition, ID Shield has previously produced a redacted set of financial statements for the year ending March 31, 2015 such that all financial information was obscured.

***Accordingly, given ID Shield's willful violation of this Court's order, Plaintiffs request that the Court enter an issue sanction finding that ID Shield and OnlineNIC are alter egos, and operate as a single business enterprise, that OnlineNIC is a direct participant in the actions of ID Shield, and that each defendant is liable for the acts and conduct of the other as alleged in the First Amended Complaint..***

**Defendants' Statement of Proposed Compromise**

As an initial matter, Plaintiffs badly misconstrue the Court's order as requiring Defendants to produce "source documentation" and other "detail" beyond the documents that were at issue in Plaintiffs' motion at Dkt. No 79. See Exhibits 5, 6 to Dkt. No. 79 which list the disputed documents as "financial statements", "balance sheets", "income statements", "profit and loss statements", "revenue and expense statements". Plaintiffs seek, under the guise of a sanctions filing, to propound new discovery requests for every invoice, excel spreadsheet, napkin, text message, and scratch pad which underlie Defendants' financial statements. Plaintiffs' present request for "all financial records in [Defendants'] internal

---

[1] In addition to the substantive deficiencies of its production, OnlineNIC violated this Court's ESI Order (Dkt. 36) by producing the financial information in a pdf document. During the meet and confer process, counsel for OnlineNIC admitted that he created the pdfs that were produced from Excel spreadsheets that OnlineNIC had provided to him. *See* ESI Order, Appx. 1, ¶ 8.

systems" is even more broad than Plaintiffs' previous, overbroad attempts to obtain documents that "demonstrate all business activities" – which the Court rejected. See Dkt. No. 81.

Plaintiffs further misconstrue the meaning of "financial statements", which, according to Plaintiffs, should include "source documentation" and other "detail". That is not accurate. The ordinary understanding of "financials statements" is described by the Securities and Exchange Commission: "There are four main financial statements. They are: (1) balance sheets; (2) income statements; (3) cash flow statements; and (4) statements of shareholders' equity". Beginners Guide to Financial Statement, Securities and Exchange Commission, at https://www.sec.gov/reportspubs/investor-publications/investorpubsbegfinstmtguidehtm.html. Moreover, as examination of Facebook's own financial statements show, "financial statements" do not include "source documentation" or detailed, line-by-line entries of individual revenue or expense items. See Facebook, Inc's 10-K Report FYE 2020, Item 15.

For the foregoing reasons, Plaintiffs' effort to sanction Defendants for failing to provide "source documents" and other "details" is frivolous, at best.

As Defendants' counsel explained to Plaintiffs' counsel before Plaintiffs served this motion, Defendants' failure to provide documents by April 7, 2021 was the result of Defendants' counsel's inadvertence. This should not be attributed to Defendants as "intentional" violation of a court order. When made aware of the issue, Defendants hurriedly collected records in the form of the spreadsheets referenced by Plaintiffs. Thereafter, Defendants' counsel cross-checked the records by contacting the U.S. tax preparer that prepared OnlineNIC's tax returns, and obtained the financial statements that were sent to him by OnlineNIC going back to 2009. Those spreadsheets have been produced to Plaintiffs. Those financial statements are not in a traditional format that is commonly used in the United States – but contain information sufficient to complete a US corporate tax return. The financial statements that OnlineNIC sent to its US tax preparer are the only financials statements maintained by OnlineNIC.[2] As to Plaintiffs' complaint that no 2020 financials were produced, it was explained to them that those records have not been finalized and the 2020 tax returns have not yet been filed.

Plaintiffs' complaint that the two spreadsheets produced on April 9 and April 12 are "different" is somewhat misleading. Those documents match, except for 1 line item – "Income Tax Paid" – and the difference is less than $600. As explained to Plaintiffs, those spreadsheets were not static documents, but were specially created from an Excel program based on different data inputs as to that line item. The $600 difference reflects a mere clerical error.

As to ID Shield's financial statements, as part of previous document production, Defendant's produced the financial statements of ID Shield FYE 2015, albeit redacted. In the crunch to produce documents after April 7, the other ID Shield financials were inadvertently missed by Defendants. When Defendants were made aware of the omission, Defendants immediately stated that the documents would be produced – and they have been.

---

[2] Plaintiffs' complaint that Defendants violated the ESI order in this case is meritless. As explained to Plaintiffs' counsel, the Excel spreadsheets produced by Defendants were not maintained in the ordinary course of business. They were specially produced for the purpose of complying with the Court order, and accordingly, those spreadsheets were not maintained in any native format. In any event, the financial statements which were sent to OnlineNIC's US tax preparer have been produced in their native, Excel format.

Nothing in Plaintiffs' submissions supports the contention that Defendants have intentionally violated any court order. On the contrary, Defendants have reasonably co-operated at every turn and have even volunteered information that is not required. For example:

1.   Early in discovery, in July 2020, Defendants stated in their discovery responses that: "OnlineNIC states that it controls Domain ID Shield and runs its operations and pays his expenses". OnlineNIC's First Supplemental Response to Request for Production of Documents, No. 24, dated July 23, 2020. Plaintiffs' current contention that Defendants are somehow trying to hide this fact by failing to produce ID Shield's financial statements simply does not stand up to scrutiny.

2.   Defendants volunteered to have a Special Master appointed to examine discovery issues on the support ticket database. See Dkt. No. 61. This is not conduct characteristic of a party that intentionally violates court orders.[3]

3.   Defendants voluntarily produced its United States income tax returns from 2009 through 2019. Again, this is a voluntary production - Plaintiffs have never sought to compel production of such income tax records.

In summary, Defendants have not intentionally violated any court orders. There have been some production issues which are attributable to a combination of factors - including serious language barriers as to both ordinary and technical language, different business operations standards and ways of doing business in China, and the simple fact that record-keeping for Defendants (which are comprised of less than 20 personnel) is simply not as comprehensive and well-organized as it would be for a larger entity, like Facebook. There is no need to fill the Court's docket with issues that could and should be informally resolved in meet-and-confers between counsel – and indeed, Defendants' counsel advised Plaintiffs, before Plaintiffs served their portion of this motion, that Defendants would produce the ID Shield financials and OnlineNIC's tax returns. Despite these measures, Plaintiffs proceeded with filing this motion in order to achieve a critical Facebook litigation objective– which is to grind Defendants into bankruptcy, instead of fighting the case on the dubious merits of Plaintiffs' cybersquatting claims.

With the new attorney appearances which were recently filed, Plaintiffs have at least 6 attorneys of record in this case, at least one other senior partner who is working on discovery issues, and armies of staff from Facebook's internal legal department, including 3 internal Facebook attorneys who have signed the Complaint in this case (but who did not enter appearances for some reason). Plaintiffs have propounded hundreds of discovery requests – many of which are vastly overbroad, unduly burdensome and not proportionate. By contrast, Defendants are represented by a solo practitioner on less than a shoe-string legal budget. Under these circumstances, it is reasonable to expect that there will be mis-steps and that is what happened here. While conformance to proper standards is expected, the Court should be reluctant to impose sanctions in such a one-sided battle where there have been obvious and serious efforts by Defendants to comply with discovery, as noted above.

For all the forego reasons, Plaintiff's motion should be denied.

---

[3] None of the Special Master's status reports have indicated that Defendants have not been cooperative. See e.g. Dkt. No. 89.

TUCKER ELLIS LLP
By: /s/David J. Steele

David J. Steele
Attorneys for Plaintiffs
FACEBOOK, INC. and INSTAGRAM, LLC

LEXANALYTICA, PC
By: /s/Perry J. Narancic

Perry J. Narancic
Attorneys for Defendants
ONLINENIC, INC. and DOMAIN ID SHIELD
SERVICES CO., LIMITED