# Exhibit B

TUCKER ELLIS LLP
David J. Steele SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:        213.430.3400
Facsimile:        213.430.3409

DAVIS POLK & WARDWELL LLP
Ashok Ramani SBN 200020
ashok.ramani@davispolk.com
Micah G. Block SBN 270712
micah.block@davispolk.com
Cristina M. Rincon *Pro Have Vice*
Cristina.rincon@davispolk.com
1600 El Camino Real
Menlo Park, CA 94025
Telephone:        650.752.2000
Facsimile:        650.752.2111

Attorneys for ~~Plaintiff~~Plaintiffs,
FACEBOOK, INC. and INSTAGRAM, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC,<br><br>                    Plaintiffs,<br><br>          v.<br><br>ONLINENIC INC., DOMAIN ID SHIELD SERVICE CO., LIMITED, and XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD.,<br><br>                    Defendants. | Case No. 5:19-cv-07071-SVK<br><br>**~~FIRST~~SECOND AMENDED COMPLAINT FOR CYBERSQUATTING; TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN; AND DILUTION**<br><br>**DEMAND FOR JURY TRIAL** |

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Plaintiffs Facebook, Inc. ("Facebook") and Instagram, LLC ("Instagram") (collectively "Plaintiffs") by and through their attorneys, Tucker Ellis LLP, file their complaint against Defendants OnlineNIC, Inc. ("OnlineNIC"), Domain ID Shield Service Co., Limited ("ID Shield") and Xiamen 35.com Internet Technology Co., Ltd. ("35.CN") (collectively "Defendants") for injunctive relief and damages.

**INTRODUCTION**

1.     Cybercrime is highly dependent on registered domain names, which are used to send spear phishing emails, operate malware, and engage in other types of online abuse. According to the Internet Corporation of Assigned Names and Numbers (ICANN), as of July 31, 2019, there were over 800,000 resolving domain names used for phishing, malware, spam, and botnets.

2.     Cybercriminals often rely on domain name privacy registration services, and specifically proxy services, to hide their ownership and control of malicious domains from the public. In exchange for a fee, proxy services conceal the domain name registrant's identity as listed on publicly available domain name registration records. These proxy services, like the services offered by Defendants, are increasingly used by cybercriminals as they cycle through domain names in order to conceal their identity and evade detection.

3.     35.CN is an ICANN-accredited domain name registrar. 35.CN's alter ego, OnlineNIC, also is an ICANN-accredited domain name registrar. 35.CN's and OnlineNIC's alter ego, ID Shield, provides a type of domain name privacy service, specifically a proxy service as defined in the ICANN Registrar Accreditation Agreement ("RAA"), to OnlineNIC customers. According to one internet security group, domain names registered by OnlineNIC were reported for abuse in approximately 40,000 instances. In 2019, one internet security group reported that OnlineNIC was one of the top 20 domain name registrars used for abuse.

4.     Defendants have repeatedly failed to take appropriate "steps to investigate and respond appropriately to any reports of abuse" as required by the RAA and have failed to provide abusive domain name registrants' names and contact information to victims of online abuse as required under the RAA.

5.     For years, Defendants, as registrants and as alter egos of each other, have registered domain names (such as hackingfacebook.net) that have been used for malicious activity, including phishing and

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

hosting websites that purported to sell hacking tools. These domain names also have infringed on Plaintiffs' trademarks. Plaintiffs have sent multiple notices to Defendants providing evidence of domain name abuse and infringement. Defendants did not timely provide the information requested in any of Plaintiffs' notices.

6.      Plaintiffs seek relief from Defendants, as alter egos of each other, who have registered (as the registrant), used, and trafficked in domain names that include Plaintiffs' trademarks. Plaintiffs seek damages and injunctive relief against Defendants to stop their ongoing unlawful and harmful conduct, pursuant to the Lanham Act and the Anti-Cybersquatting Consumer Protection Act (15 U.S.C. § 1125).

## I.    THE PARTIES

7.      Plaintiff Facebook, Inc. is a Delaware corporation with its principal place of business in Menlo Park, California.

8.      Plaintiff Instagram, LLC is a Delaware limited liability company with its principal place of business in Menlo Park, California.

9.      Defendant OnlineNIC Inc. is a California corporation with its principal place of business in San Leandro, California. Defendant OnlineNIC is a domain name registrar that sells, registers and transfers domain names for third parties.

10.     Defendant ID Shield, is a Hong Kong, China limited company. Defendant ID Shield provides a type of domain name privacy service, specifically a proxy service, for OnlineNIC's customers. ID Shield registers domain names, as the registrant, and licenses these domain names to OnlineNIC's customers.

11.     Defendant 35.CN. is a corporation registered under the laws of Xiamen, Fujian Province. 35.CN is a domain name registrar that sells, registers and transfers domain names for third parties. 35.CN controls, manages and runs the operations of OnlineNIC and ID Shield.

12.     At all times material to this action, OnlineNIC, ID Shield and 35.CN are and were instrumentalities and alter egos of each other. OnlineNIC is and was also the direct participant in the actions of ID Shield as alleged in this FirstSecond Amended Complaint. 35.CN is and was the direct participant in the actions of both OnlineNIC and ID Shield as alleged in this FirstSecond Amended Complaint.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

## II.     JURISDICTION AND VENUE

13.     The Court has federal question jurisdiction over the federal causes of action alleged in this complaint pursuant to 28 U.S.C. § 1331.

14.     The Court has personal jurisdiction over Defendant OnlineNIC, and its alter egos ID Shield and 35.CN, because OnlineNIC maintains and operates its business in California.

15.     The Court has personal jurisdiction over the Defendants because each of them knowingly directed and targeted parts of their unlawful scheme at Plaintiffs, which have their principal places of business in California. Defendants also transacted and conducted business and engaged in commerce in California by entering into one or more contracts that included an agreement to submit to the Court's jurisdiction. A copy of one such agreement is attached to this Complaint as Exhibit 1.

16.     Venue is proper with respect to each of the Defendants pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events and omissions giving rise to the claims alleged occurred in this district.

17.     Pursuant to Civil L.R. 3-2(c), this case is exempt from the Court's division-specific venue rule because it involves intellectual property rights.

## III.     FACTUAL ALLEGATIONS

### A.     Background on Plaintiffs and their Trademarks

18.     Facebook offers a social networking website and mobile application that enables its users to create their own personal profiles and connect with each other on their personal computers and mobile devices.

19.     Facebook owns the exclusive rights to several trademarks and service marks to provide its online services, including the distinctive FACEBOOK word mark and stylized mark, and has used the marks in connection with its services since 2004.

20.     In addition to its extensive common law rights, Facebook owns numerous United States registrations for its FACEBOOK marks, including:

      a.   United States Registration Number 3,122,052; and

      b.   United States Registration Number 3,881,770.

Copies of these registration certificates are attached to this ~~First~~Second Amended Complaint as Exhibit 2.

4

Facebook's common law and registered trademarks are collectively referred to as the "Facebook Trademarks."

21.     Facebook's use of the Facebook Trademarks in interstate commerce has been extensive, continuous, and substantially exclusive. Facebook has made, and continues to make, a substantial investment of time, effort, and expense in the promotion of Facebook and the Facebook Trademarks. As a result of Facebook's efforts and use, the Facebook Trademarks are famous (and have been famous since at least as early as 2011) as they are recognized within the US and around the world as signifying high-quality, authentic goods and services provided by Facebook.

22.     Instagram offers a photo and video sharing and editing service, mobile application, and social network. Instagram users can choose to share their photos and videos with their followers online.

23.     Instagram owns the exclusive rights to the distinctive INSTAGRAM word mark and stylized mark, having used the marks in connection with its goods and services as early as 2010.

24.     In addition to its extensive common law rights, Instagram owns numerous United States registrations for the INSTAGRAM marks, including:

> c.   United States Registration Number 4,795,634;
>
> d.   United States Registration Number 4,146,057;
>
> e.   United States Registration Number 4,756,754;
>
> f.   United States Registration Number 5,566,030;
>
> g.   United States Registration Number 4,170,675;
>
> h.   United States Registration Number 4,856,047;
>
> i.   United States Registration Number 4,822,600;
>
> j.   United States Registration Number 4,827,509;
>
> k.   United States Registration Number 4,863,595; and
>
> l.   United States Registration Number 5,019,151.

Copies of these registration certificates are attached to this ~~First~~Second Amended Complaint as Exhibit 3. Instagram's common law and registered trademark rights are collectively referred to as the "Instagram Trademarks."

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

25.     Instagram's use of the Instagram Trademarks in interstate commerce has been extensive, continuous, and substantially exclusive. Instagram has made, and continues to make, a substantial investment of time, effort, and expense in the promotion of Instagram and the Instagram Trademarks. As a result of Instagram's efforts and use, the Instagram Trademarks are famous (and have been famous since at least as early as 2014) as they are recognized within the US and around the world as signifying high-quality, authentic goods and services provided by Instagram.

**B.     OnlineNIC is responsible for the actions of ID Shield because ID Shield is an alter ego of OnlineNIC and OnlineNIC is a direct participant in those actions**

26.     Defendants OnlineNIC and 35.CN are accredited by ICANN and subject to ICANN's RAA. A copy of the RAA is attached to this ~~First~~Second Amended Complaint as Exhibit 4.

27.     Defendant ID Shield provides a type of domain name privacy service, specifically a proxy service, on behalf of Defendant OnlineNIC. ID Shield is the registrant of the domain name, and is listed as the registrant in the WHOIS directory.

28.     ID Shield registers domain names as the registrant, and licenses these domain names either to OnlineNIC for its use or to OnlineNIC's customers for their use (the "Licensees"). OnlineNIC's website refers to ID Shield's services as "OnlineNIC ID Shield." A screen capture of OnlineNIC's "Domain Privacy" page from its website is attached to this ~~First~~Second Amended Complaint as Exhibit 5.

29.     The ID Shield Service Agreement, found on the OnlineNIC website, is attached to this ~~First~~Second Amended Complaint as Exhibit 6. According to the ID Shield Service Agreement, "[i]f you subscribe to the IDS Services, each domain name registration which you control and which [uses the ID Shield service] will thereafter be registered in the name of [ID Shield], as registrant."

30.     ID Shield has no bank accounts or assets and is undercapitalized.

31.     ID Shield has no employees.

32.     ID Shield does not conduct regular shareholder meetings and does not maintain corporate records.

33.     OnlineNIC controls the operations of ID Shield.

34.     OnlineNIC controls the policy decisions made by ID Shield.

35.     OnlineNIC controls which agreements into which ID Shield enters.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

36.    OnlineNIC pays all of the expenses of ID Shield.

37.    OnlineNIC collects all revenue from ID Shiel's domain name registration proxy service.

38.    OnlineNIC and ID Shield do not engage in arms-length transactions when they conduct transactions with each other.

39.    Carrie Yu aka Carrie Arden aka Yu Hongxia ("Carrie Yu") owns ID Shield for the benefit of OnlineNIC.

40.    Carrie Yu is a director and officer for both ID Shield and OnlineNIC.

41.    The domain names domainidshield.com and onlinenic.com are hosted on the same IP address, and their websites contain links to each other.

42.    The Licensees purchase and pay for the ID Shield services directly from their OnlineNIC user account.

43.    ID Shield is a *de facto* subsidiary of OnlineNIC.

**C.    35.CN is responsible for the actions of OnlineNIC and ID Shield because OnlineNIC and ID Shield are alter egos of 35.CN and 35.CN is a direct participant in those actions**

44.    Carrie Yu, the sole director of OnlineNIC, is an employee of 35.CN.

45.    The day-to-day operations of OnlineNIC, including all technical support and customer support, are carried out by employees of 35.CN.

46.    The day-to-day operations of ID Shield, including all technical support and customer support, are carried out by employees of 35.CN.

47.    35.CN and OnlineNIC share the same domain name registration database, which is used to operate the registrar businesses for both 35.CN and OnlineNIC.

48.    35.CN shares office space in its office building for OnlineNIC and ID Shield.

49.    35.CN provides technical support staff and technical support services to OnlineNIC and ID Shield..

50.    Plaintiffs are informed and believe, and on that basis allege, that OnlineNIC has no employees who carry out the day-to-day registrar operations of OnlineNIC.

51.    Plaintiffs are informed and believe, and upon that basis allege, the incorporator and founding president of OnlineNIC is the controlling shareholder of 35.CN.

~~FIRST~~SECOND AMENDED COMPLAINT
CASE NO. 5:19-CV-07071-SVK

52.     Plaintiffs are informed and believe, and upon that basis allege, 35.CN controls the operations of OnlineNIC and ID Shield.

53.     Plaintiffs are informed and believe, and upon that basis allege, 35.CN controls the policy decisions made by OnlineNIC and ID Shield.

54.     Plaintiffs are informed and believe, and upon that basis allege, 35.CN controls which agreements into which OnlineNIC and ID Shield enters.

55.     OnlineNIC and ID Shield are *de facto* subsidiaries of 35.CN.

**D.     Defendants Registered, Used, or Trafficked In the Infringing Domain Names**

56.     OnlineNIC, ID Shield and 35.CN registered, used, or trafficked in, at least the following 3435 domain names that are identical or confusingly similar to the Facebook Trademarks and the Instagram Trademarks (the "Infringing Domain Names"):

1.  buyinstagramfans.com
2.  face2bouk.com
3.  facebook-alkalmazasok.net
4.  facebook-chat-emoticons.com
5.  facebook-fans-buy.com
6.  facebook-login-signup.com
7.  facebook-mails.com
8.  facebook-pass.com
9.  facebookphysician.com
10. facebook-pw.com
11. facebookvideodownload.net
12. facebux2.com
13. facekhook.com
14. facessbook.com
15. faecb00k-page.com
16. faecbook-page.com
17. findfacebookid.com

18. hackfacebook-now.com
19. hackingfacebook.net
20. hacksomeonesfacebook.com
21. iiinstagram.com
22. instaface.org
23. instagram01.com
24. instakram.com
25. lamsocialfacebook.net
26. learntohackfacebook.com
27. login-lnstargram.com
28. m-facebook-login.com
29. ofacebooklogin.com
30. singin-lnstargram.com
31. trollfacebook.com
32. watch-facebook.com
33. www-facebook-login.com
34. www-facebook-pages.com

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

35. www-instagram.net

57.    ID Shield is the registrant for each of the Infringing Domain Names. A copy of WHOIS entries for many the Infringing Domain Names is attached to this ~~First~~Second Amended Complaint as Exhibit 7.

58.    Plaintiffs are informed and believe, and upon that basis allege, Defendants registered each of the Infringing Domain Names using OnlineNIC's registration services and ID Shield's proxy service.

59.    ID Shield trafficked in the Infringing Domain Names by licensing these domain names to the Licensees for their use.

**E.    Defendants' Bad Faith Intent to Profit**

60.    OnlineNIC has a history of cybersquatting on famous and distinctive trademarks.

61.    On or about December 19, 2008, OnlineNIC was found liable for registering over 600 domain names that were confusingly similar to the VERIZON mark. In the *Verizon* case, the Court awarded $33.15 million in damages and denied OnlineNIC's motion to set aside or reduce the judgment.

62.    On or about December 19, 2008, Yahoo! Inc. alleged in a separate action that OnlineNIC registered at least 554 domain names that were identical or confusingly similar to its trademarks.

63.    On or about October 7, 2008, Microsoft Corporation alleged in a separate action that OnlineNIC registered at least 97 domain names that were identical or confusingly similar to its trademarks.

64.    OnlineNIC has been named in administrative complaints filed under the Uniform Domain-Name Dispute-Resolution Policy ("UDRP"). In many of these UDRP cases, OnlineNIC has verified to the dispute providers that OnlineNIC itself was the registrant of the domain name at issue in the complaint.

65.    OnlineNIC has operated under one or more aliases, including "Junlong Zhen," "lenawoo," and "China-Channel," to hide its involvement in registering as a registrant, using, and trafficking in infringing domain names.

66.    OnlineNIC, ID Shield and 35.CN profit from the sale of the ID Shield proxy service, including providing the service to the end users of the Infringing Domain Names and to OnlineNIC. OnlineNIC, ID Shield and 35.CN profit from the sale of the ID Shield proxy service by collecting fees from the sale of that service.

67.    The Licensees of the Infringing Domain Names intended to divert consumers to websites

9

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

using domain names that were confusingly similar to the Facebook Trademarks and the Instagram Trademarks. In some instances, the Infringing Domain Names have been used for malicious activity, including hosting websites directing visitors to other commercial sites, phishing, and selling purported tools for hacking. Screenshots of several of these websites hosted at the Infringing Domain Names are attached to this Complaint as Exhibit 8.

68.    The Licensees also used some of the Infringing Domain Names in connection with email services, which is usually an indication that the domain name was used for phishing or other scams. Specifically, at least the following domain names had domain name servers configured to facilitate email: facebook-mails.com, facebook-pass.com, facebook-pw.com, facebookvideodownload.net, findfacebookid.com, hackingfacebook.net, hacksomeonesfacebook.com, login-lnstargram.com, m-facebook-login.com, and singin-lnstargram.com, trollfacebook.com.

69.    Defendants have registered multiple domain names that they know are identical or confusingly similar to marks of others that were distinctive at the time of registration of the domain names, or dilutive of famous marks of others that were famous at the time of registration of the domain names. A table showing examples of some of Defendants' registered domains is attached as Exhibit 8.

70.    Plaintiffs' Facebook Trademarks and Instagram Trademarks were distinctive and famous, when Defendants registered, used or trafficked in the Infringing Domain Names.

**F.    Defendants' Failure to Disclose Contact Information**

71.    Under the RAA, OnlineNIC agreed that ID Shield "shall accept liability for harm caused by wrongful use of the Registered Name, unless it discloses the current contact information provided by the licensee and the identity of the licensee within seven (7) days to a party providing [ID Shield] reasonable evidence of actionable harm." *See* Exhibit 4.

72.    OnlineNIC and ID Shield's service agreements anticipate that they will be sued for misuse of domain names, including for trademark infringement and cybersquatting, and require parties to their respective agreements to indemnify against such claims. *See* Exhibit 1 & 6.

73.    ID Shield service agreement states (twice) that it will cancel its proxy service if a domain name is alleged to infringe on a third party's trademark or if it receives valid evidence of trademark infringement. *See* Exhibit 6.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

~~FIRST~~SECOND AMENDED COMPLAINT
CASE NO. 5:19-CV-07071-SVK

74.    Plaintiffs' authorized representatives sent at least five notices to ID Shield with evidence that the Infringing Domain Names caused Plaintiffs actionable harm and requesting that ID Shield disclose the identities of the registrant(s) ("Plaintiffs' Notices"). For example:

    a.    On April 23, 2019 Plaintiffs' authorized representatives sent notice regarding www-facebook-login.com.

    b.    On May 2, 2019, Plaintiffs' authorized representatives sent notice regarding: facebook-fans-buy.com, facebook-pass.com, facebookphysician.com, facebook-pw.com, iamsocialfacebook.net, and iiinstagram.com.

    c.    On May 14, 2019, Plaintiffs' authorized representatives sent notice regarding: facebook-mails.com, facebookvideodownload.net, findfacebookid.com, instagram01.com, m-facebook-login.com, and www-facebook-pages.com.

    d.    On June 3, 2019, Plaintiffs' authorized representatives sent notice regarding: buyinstagramfans.com, hackingfacebook.net, hacksomeonesfacebook.com, login-lnstagram.com, singin-lnstargram.com, and trollfacebook.com.

    e.    On August 12, 2019, Plaintiffs' authorized representatives sent notice regarding instaface.org.

75.    ID Shield failed to timely disclose the identity or any contact information of the licensee when presented with reasonable evidence of actionable harm by Plaintiffs or their authorized representatives that one or more domain names infringed or cybersquatted on the Facebook Trademarks and Instagram Trademarks.

**FIRST CAUSE OF ACTION**

**[Cybersquatting on Plaintiffs' Trademarks Under 15 U.S.C. § 1125(d)]**

76.    Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

77.    The Facebook Trademarks and Instagram Trademarks (collectively, "Plaintiffs' Trademarks") were distinctive or famous and federally registered at the United States Patent and Trademark Office at the time Defendants registered, trafficked in or used the Infringing Domain Names.

78.    The Facebook Trademarks and Instagram Trademarks (collectively, "Plaintiffs' Trademarks") were distinctive or famous and federally registered at the United States Patent and

11

Trademark Office at the time the Licensees registered, trafficked in or used the Infringing Domain Names

79.     One or more of the Infringing Domain Names are confusingly similar to Plaintiffs' Trademarks.

80.     One or more of the Infringing Domain Names are dilutive of the Facebook Trademarks or Instagram Trademarks.

81.     Defendants registered (as the registrant), used, or trafficked in one or more of the Infringing Domain Names with a bad faith intent to profit from Plaintiffs' Trademarks.

82.     Defendants do not have any trademark or other intellectual property rights in the Infringing Domain Names.

83.     The Infringing Domain Names do not consist of the legal name of any of the Defendants, nor do they consist of a name that is otherwise commonly used to identify them.

84.     Defendants have not made any prior use of any of the Infringing Domain Names in connection with the *bona fide* offering of any goods or services.

85.     Defendants have not made any *bona fide* noncommercial or fair use of Plaintiffs' Trademarks on a website accessible at any of the Infringing Domain Names.

86.     Defendants registered (as the registrant), used, and trafficked in one or more of the Infringing Domain Names to divert consumers from Plaintiffs' legitimate websites to a website accessible under the Infringing Domain Names for Defendants' commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of their websites.

87.     Defendants' registration, use, and/or trafficking in the Infringing Domain Names constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), entitling Plaintiffs to relief.

88.     The Licensees registered, trafficked in or used one or more of the Infringing Domain Names with a bad faith intent to profit from Plaintiffs' Trademarks.

89.     None of the Infringing Domain Names consist of the legal name of the Licensees nor do the Infringing Domain Names consist of a name that is otherwise commonly used to identify the Licensees.

90.     The Licensees do not have any trademark or other intellectual property rights in the Infringing Domain Names.

91.     The Licensees have not made any prior use of any of the Infringing Domain Names in

FIRSTSECOND AMENDED COMPLAINT
CASE NO. 5:19-CV-07071-SVK

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

connection with the *bona fide* offering of any goods or services.

92.    The Licensees have not made any *bona fide* noncommercial or fair use of Plaintiffs' Trademarks on a website accessible at any of the Infringing Domain Names.

93.    Licensees registered, trafficked in, or used one or more of the Infringing Domain Names to divert consumers from Plaintiffs' legitimate websites to websites accessible under the Infringing Domain Names for Licensees' commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of their websites.

94.    The Licensees registered multiple domain names which the Licensees knew were identical or confusingly similar to marks of others that were distinctive at the time of registration of such domain names.

95.    The Licensees have provided material and misleading false contact information for the Infringing Domain Names.

96.    Licensees' registration, trafficking in or use of the Infringing Domain Names constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), and has harmed Plaintiffs.

97.    Since Defendants did not timely and accurately disclose the current contact information provided by the Licensees and the identity of the Licensees in response to Plaintiffs' Notices prior to the filing of the original Complaint, Defendants are liable for the harm to Plaintiffs caused by those Licensees' registration, use, and/or trafficking in the Infringing Domain Names in violation of the Lanham Act.

98.    Defendants and those persons who are in active concert or participation with Defendants, including Licensees, have irreparably harmed Plaintiffs and, if not enjoined, will continue to irreparably harm Plaintiffs and their federally registered trademarks and service marks.

99.    Defendants and those persons who are in active concert or participation with Defendants, including Licensees, have irreparably harmed the general public, which has an interest in being free from confusion, mistake, and deception.

100.    Plaintiffs' remedy at law is not adequate to compensate it for the injuries Defendants and Licensees inflicted on Plaintiffs. Accordingly, Plaintiffs are entitled to permanent injunctive relief pursuant to 15 U.S.C. § 1116.

101.    Plaintiffs are entitled to recover Defendants' profits, Plaintiffs' actual damages, and the

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

13

costs of this action. Instead of actual damages and profits, Plaintiffs may alternatively elect to an award of statutory damages under 15 U.S.C. § 1117(d) in an amount of $100,000 per domain name.

102.    This is an exceptional case, entitling Plaintiffs to an award of reasonable attorneys' fees under 15 U.S.C. § 1117.

**SECOND CAUSE OF ACTION**

**[Trademark and Service Mark Infringement of**

**Plaintiffs' Trademarks Under 15 U.S.C. § 1114]**

103.    Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

104.    The Licensees have used Plaintiffs' Trademarks in interstate commerce. The Licensees' use of Plaintiffs' Trademarks is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval by Plaintiffs of the Licensees' websites.

105.    The above-described acts of the Licensees constitute trademark and service mark infringement in violation of 15 U.S.C. § 1114(1) and entitle Plaintiffs to relief.

106.    The Licensees have unfairly profited from the alleged trademark and service mark infringement.

107.    By reason of the Licensees' acts of trademark and service mark infringement, Plaintiffs have suffered damage to the goodwill associated with Plaintiffs' Trademarks.

108.    Defendants and those persons who are in active concert or participation with Defendants, including Licensees, have irreparably harmed Plaintiffs and, if not enjoined, will continue to irreparably harm Plaintiffs and their federally registered trademarks and service marks.

109.    Defendants and those persons who are in active concert or participation with Defendants, including Licensees, have irreparably harmed the general public, which has an interest in being free from confusion, mistake, and deception.

110.    Plaintiffs' remedy at law is not adequate to compensate them for the injuries inflicted by Defendants and Licensees.  Accordingly, Plaintiffs are entitled to permanent injunctive relief pursuant to 15 U.S.C. § 1116.

111.    Since Defendants did not timely and accurately disclose the current contact information provided by the Licensees and the identity of the Licensees in response to Plaintiffs' Notices prior to the

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

1    filing of the original Complaint, Defendants are liable for the harm to Plaintiffs caused by those Licensees'

2    use of the Infringing Domain Names in violation of the Lanham Act.

3    112.    Plaintiffs are entitled to recover the Licensees' profits, Plaintiffs' actual damages, and the

4    costs of this action. Plaintiffs' are also entitled to have their damages trebled under 15 U.S.C. § 1117(a).

5    113.    This is an exceptional case, making Plaintiffs eligible for an award of reasonable attorneys'

6    fees pursuant to 15 U.S.C. § 1117(a).

7    ### THIRD CAUSE OF ACTION

8    **[Trademark and Service Mark Infringement of Plaintiffs' Trademarks**

9    **and False Designation of Origin Under 15 U.S.C. § 1125(a)]**

10    114.    Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

11    115.    Plaintiffs' Trademarks are distinctive marks that are associated with Plaintiffs and

12    exclusively identify their respective businesses, products, and services.

13    116.    The Licensees' use in commerce of Plaintiffs' Trademarks, and variations thereof, is likely

14    to cause confusion, or to cause mistake, or to deceive the relevant public that the Licensees' goods and

15    services are authorized, sponsored, or approved by, or are affiliated with, Plaintiffs.

16    117.    The Licensees' acts constitute trademark and service mark infringement of Plaintiffs'

17    Trademarks, as well as false designation of origin, in violation of 15 U.S.C. § 1125(a), entitling Plaintiffs

18    to relief.

19    118.    The Licensees have unfairly profited from their conduct.

20    119.    By reason of the above-described acts of the Licensees, Plaintiffs have suffered damage to

21    the goodwill associated with Plaintiffs' Trademarks.

22    120.    Defendants and those persons who are in active concert or participation with Defendants,

23    including Licensees, have irreparably harmed Plaintiffs and, if not enjoined, will continue to irreparably

24    harm Plaintiffs and their federally registered trademarks and service marks.

25    121.    Defendants and those persons who are in active concert or participation with Defendants,

26    including Licensees, have irreparably harmed the general public, which has an interest in being free from

27    confusion, mistake, and deception.

28    122.    Plaintiffs' remedy at law is not adequate to compensate them for the injuries inflicted by

15

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Defendants and Licensees. Accordingly, Plaintiffs are entitled to permanent injunctive relief pursuant to 15 U.S.C. § 1116.

123. Since Defendants did not timely and accurately disclose the current contact information provided by the Licensees and the identity of the Licensees in response to Plaintiffs' Notices prior to the filing of the original Complaint, Defendants are liable for the harm to Plaintiffs caused by those Licensees' use of the Infringing Domain Names in violation of the Lanham Act.

124. Plaintiffs are entitled to recover Defendants' profits, Plaintiffs' actual damages, and the costs of this action. Plaintiffs' are also entitled to have their damages trebled under 15 U.S.C. § 1117(a).

125. This is an exceptional case, making Facebook eligible for an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## FOURTH CAUSE OF ACTION

### [Dilution of the Facebook Trademarks and Instagram Trademarks Under 15 U.S.C. § 1125(c)]

126. Facebook and Instagram reallege and incorporate by reference all of the preceding paragraphs.

127. The Facebook Trademarks and Instagram Trademarks are famous, as that term is used in 15 U.S.C. § 1125(c), and they were famous before the Licensees' use of them and variations of the trademarks in commerce. This fame is based on, among other things, the inherent distinctiveness and federal registration of each of the Facebook Trademarks and Instagram Trademarks as well as the extensive and exclusive worldwide use, advertising, promotion, and recognition of them.

128. The Licensees' use of the Facebook Trademarks and Instagram Trademarks, and variations thereof, in commerce is likely to cause dilution by blurring or dilution by tarnishment of these trademarks.

129. The Licensees' acts constitute dilution by blurring and dilution by tarnishment in violation of 15 U.S.C. § 1125(c), entitling Facebook and Instagram to relief.

130. The Licensees have unfairly profited from their conduct.

131. The Licensees damaged the goodwill associated with the Facebook Trademarks and the Instagram Trademarks and they will continue to cause irreparable harm.

132. Defendants and those persons who are in active concert or participation with Defendants, including Licensees, have irreparably harmed Plaintiffs and, if not enjoined, will continue to irreparably

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

harm Plaintiffs and their federally registered trademarks and service marks.

133.    Defendants and those persons who are in active concert or participation with Defendants, including Licensees, have irreparably harmed the general public, which has an interest in being free from confusion, mistake, and deception.

134.    Plaintiffs' remedy at law is not adequate to compensate them for the injuries inflicted by Defendants and Licensees.  Accordingly, Plaintiffs are entitled to permanent injunctive relief pursuant to 15 U.S.C. § 1116.

135.    Since Defendants did not timely and accurately disclose the current contact information provided by the Licensees and the identity of the Licensees in response to Plaintiffs' Notices prior to the filing of the original Complaint, Defendants are liable for the harm to Plaintiffs caused by those Licensees' use of the Infringing Domain Names in violation of the Lanham Act.

136.    Because Licensees acted willfully, Facebook and Instagram are entitled to damages against Defendants, and those damages should be trebled pursuant to 15 U.S.C. § 1117.

137.    This is an exceptional case, making Plaintiffs eligible for an award of attorneys' fees pursuant to 15 U.S.C. § 1117.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs request:

1.    That the Court find that Defendants registered, trafficked in or used one or more of the Infringing Domain Names with a bad faith intent to profit from Plaintiffs' Trademarks in violation of 15 U.S.C. § 1125(d).

2.    That the Court enter a judgment against Defendants that Defendants have infringed the rights of Plaintiffs in Plaintiffs' Trademarks in violation of 15 U.S.C. § 1125(d).

3.    That the Court order each of the Infringing Domain Names be transferred to Plaintiffs.

4.    That Plaintiffs be awarded Defendants' profits and Plaintiffs' actual damages, or, in the alternative, $100,000 in statutory damages per infringing domain name by reason of Defendants' cybersquatting, in accordance with the provisions of 15 U.S.C. § 1117(d).

5.    That the Court find that:

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

~~FIRST~~SECOND AMENDED COMPLAINT
CASE NO. 5:19-CV-07071-SVK

a.    Licensees have registered, trafficked in, or used one or more the Infringing Domain Names with a bad faith intent to profit from Plaintiffs' Marks in violation of 15 U.S.C. § 1125(d);

b.    Licensees infringed the rights of Plaintiffs in the federally registered Facebook Trademarks and Instagram Trademarks, in violation of 15 U.S.C. § 1114(1);

c.    Licensees infringed the rights of Plaintiffs in Plaintiffs' Marks in violation of 15 U.S.C. § 1125(a);

d.    Licensees have diluted the federally registered Facebook Trademarks and Instagram Trademarks in violation of 15 U.S.C. § 1125(c);

e.    Defendants did not timely and accurately disclose the current contact information provided by the Licensee and the identity of the Licensee in response to Plaintiffs' Notices prior to the filing of the original Complaint; and

f.    Defendants are liable for the harm to Plaintiffs caused by those Licensees' wrongful use of the Infringing Domain Names.

6.    That the Court enter a judgment against Defendants that Defendants are liable for the harm caused to Plaintiffs by the Licensees' cybersquatting, trademark infringement and dilution of Plaintiffs' Trademarks.

7.    That Plaintiffs be awarded the Licensees' profits and Plaintiffs' actual damages, or, in the alternative, $100,000 in statutory damages per infringing domain name by reason of the Licensees' cybersquatting, in accordance with the provisions of 15 U.S.C. § 1117(d).

8.    That Plaintiffs be awarded Licensees' profits and Plaintiffs' actual damages, and costs of the action, by reason of Licensees' trademark infringement and false designation of origin and that these damages be trebled in accordance with the provisions of 15 U.S.C. § 1117.

9.    That Plaintiffs be awarded Licensees' profits and Plaintiffs' actual damages, and costs of the action, by reason of Licensees' dilution of the federally registered Facebook Trademarks and Instagram Trademarks and that these damages be trebled in accordance with the provisions of 15 U.S.C. § 1117.

10.    That the Court find that ID Shield is an alter ego of OnlineNIC and that OnlineNIC is liable for ID Shield's unlawful acts.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

11.    That the Court find that ID Shield and OnlineNIC are alter egos of 35.CN and that 35.CN is liable of ID Shield's and OnlineNIC's unlawful acts.

12.    That the Court find that OnlineNIC is the direct participant in the unlawful acts of ID Shield, and thus is liable for the harm caused.

13.    That the Court find that 35.CN is the direct participant in the unlawful acts of ID Shield and OnlineNIC, and thus is liable for the harm caused.

14.    That each of the above acts was willful.

15.    That Defendants be ordered to account for and disgorge to Plaintiffs all amounts by which Defendants have been unjustly enriched by reason of the unlawful acts complained of.

16.    That Plaintiffs be awarded an amount sufficient to reimburse Plaintiffs for the costs of corrective advertising.

17.    That Plaintiffs be awarded prejudgment interest on all infringement damages.

18.    That Defendants and their agents, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, be permanently enjoinined and restrained from:

    a.    Registering, using, or trafficking in any domain name that is identical or confusingly similar to the Facebook Trademarks or the Instagram Trademarks;

    b.    Engaging in any use, including advertising, promoting, marketing, franchising, selling, and offering for sale any goods or services, on or in connection with the Facebook Trademarks or the Instagram Trademarks, or any similar mark or designation, that is likely to cause confusion, or to cause mistake as to the affiliation of that use with Plaintiffs; and

    c.    Engaging in any activity which lessens the distinctiveness or tarnishes the Facebook Trademarks or the Instagram Trademarks.

19.    That the Court award Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and any other applicable provision of law.

20.    That the Court award Plaintiffs their costs of suit incurred herein.

21.    That the Court award such other or further relief as the Court may deem just and proper.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

DATED: ~~March 31~~May 28, 2021

TUCKER ELLIS LLP

By: /s/David J. Steele
    David J. Steele
    Howard A. Kroll
    Steven E. Lauridsen

    Davis Polk & Wardwell, LLP
    Ashok Ramani
    Micah G. Block
    Cristina M. Rincon

    Attorneys for Plaintiffs,
    FACEBOOK, INC. and INSTAGRAM, LLC

    Platform Enforcement and Litigation
    Facebook, Inc.
      Jessica Romero
      Stacy Chen
      Olivia Gonzalez

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs Facebook, Inc. and Instagram, LLC, hereby demand a trial by jury to decide all issues so triable in this case.

DATED: ~~March 31~~May 28, 2021                     TUCKER ELLIS LLP

By:  /s/David J. Steele
     David J. Steele
     Howard A. Kroll
     Steven E. Lauridsen

     Davis Polk & Wardwell, LLP
     Ashok Ramani
     Micah G. Block
     Cristina M. Rincon

     Attorneys for Plaintiffs,
     FACEBOOK, INC. and INSTAGRAM, LLC,

      Platform Enforcement and Litigation
      Facebook, Inc.
        Jessica Romero
        Stacy Chen
        Olivia Gonzalez

~~FIRST~~SECOND AMENDED COMPLAINT
CASE NO. 5:19-CV-07071-SVK

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis