```
 1                  UNITED STATES DISTRICT COURT

 2               NORTHERN DISTRICT OF CALIFORNIA

 3                      SAN JOSE DIVISION

 4

 5    FACEBOOK, INC., AND INSTAGRAM,  )  C-19-07071 SVK
      LLC,                           )
 6                                   )  SAN JOSE, CALIFORNIA
                      PLAINTIFFS,    )
 7                                   )  MAY 11, 2021
               VS.                   )
 8                                   )  PAGES 1-24
      ONLINENIC INC.; DOMAIN ID      )
 9    SHIELD SERVICE CO., LIMITED;   )
      AND XIAMEN 35.COM INTERNET     )
10    TECHNOLOGY CO., LTD.,          )
                                     )
11                    DEFENDANTS.    )
      _____)

12

13

14              TRANSCRIPT OF ZOOM PROCEEDINGS
            BEFORE THE HONORABLE SUSAN VAN KEULEN
15              UNITED STATES MAGISTRATE JUDGE

16

17    A P P E A R A N C E S:

18    FOR THE PLAINTIFF:    TUCKER ELLIS
                            BY:  HOWARD A. KROLL
19                               DAVID J. STEELE
                            515 SOUTH FLOWER STREET, 42ND FLOOR
20                          LOS ANGELES, CALIFORNIA  90071

21              APPEARANCES CONTINUED ON THE NEXT PAGE

22

23    OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                  CERTIFICATE NUMBER 9595
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER
```

1

2      APPEARANCES (CONTINUED)

3

4      FOR THE PLAINTIFFS:       DAVIS POLK & WARDWELL
                                 BY:  ASHOK RAMANI
5                                1600 EL CAMINO REAL
                                 MENLO PARK, CALIFORNIA  94025
6

7      FOR THE DEFENDANTS:       LEXANALYTICA, PC
                                 BY:  PERRY J. NARANCIC
8                                2226 EAST BAYSHORE ROAD, SUITE 200
                                 PALO ALTO, CALIFORNIA  94303
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1     SAN JOSE, CALIFORNIA                    MAY 11, 2021

 2                      P R O C E E D I N G S

 3         (ZOOM PROCEEDINGS CONVENED AT 11:01 A.M.)

 4              THE CLERK:  PLEASE COME TO ORDER.

 5         THE HONORABLE SUSAN VAN KEULEN PRESIDING.

 6              THE COURT:  GOOD MORNING, EVERYONE.  GOOD MORNING.

 7     WELCOME TO OUR 11:00 O'CLOCK CALENDAR TODAY.  WE JUST HAVE THE

 8     ONE MATTER ON AND WE HAVE A FEW DIFFERENT ITEMS TO ADDRESS.

 9              SO, MS. FANTHORPE, IF YOU'LL CALL THE MATTER, WE'LL GET

10     UNDERWAY.  THANK YOU.

11              THE CLERK:  CERTAINLY.

12         CALLING CASE 19-CV-7071, FACEBOOK, INC., ET AL, VERSUS

13     ONLINENIC, INC., ET AL.

14         COUNSEL, PLEASE IDENTIFY YOURSELVES FOR THE RECORD,

15     BEGINNING WITH PLAINTIFF.

16              THE COURT:  MR. KROLL, YOU'RE MUTED, WHICH I'M SURE

17     YOU JUST GOT THE LITTLE MESSAGE.  THERE YOU GO.

18              MR. KROLL:  SORRY ABOUT THAT.  GOOD MORNING, YOUR

19     HONOR.

20         HOWARD KROLL AND DAVID STEELE WITH TUCKER ELLIS, AND

21     ASHOK RAMANI WITH DAVIS POLK & WARDWELL, ON BEHALF OF THE

22     PLAINTIFFS.

23              THE COURT:  THANK YOU, MR. KROLL.  GOOD MORNING.

24              MR. NARANCIC:  GOOD MORNING, YOUR HONOR.

25         PERRY NARANCIC FOR DEFENDANTS, ONLINENIC AND DOMAIN ID
```

1    SHIELD.

2            THE COURT:  MR. NARANCIC, WELCOME BACK.

3        AND I SEE ALSO OUR SPECIAL MASTER IS HERE TODAY AS WELL.

4    WELCOME, MR. HOWE.

5        ALL RIGHT.  BEFORE WE GET TO THE PENDING MOTIONS, THERE

6    ARE A COUPLE OF STATUS INQUIRIES I HAD NOTED FOR OUR STATUS

7    CONFERENCE WHICH I TOOK OFF CALENDAR GIVEN THE PENDING MOTIONS.

8        SO -- BUT LET'S JUST ADDRESS A COUPLE OF ISSUES.  I'D LIKE

9    TO KNOW WHAT THE STATUS IS WITH REGARDS TO SERVICE ON 35.CN.

10   AND TELL ME WHAT'S THE RIGHT WAY TO REFER TO THAT COMPANY.  I

11   SEE THE ACRONYM.  MAYBE THAT'S IT.

12           BUT, MR. KROLL, ENLIGHTEN ME, PLEASE.

13           MR. KROLL:  WE REFER TO IT AS 35.CN JUST TO MAKE IT

14   EASIER.  I THINK WE ALL UNDERSTAND THAT TO MEAN THE DEFENDANT

15   THAT WAS JUST ADDED TO THE COMPLAINT.

16       SO WHERE WE ARE ON SERVICE IS, UNDER THE HAGUE CONVENTION,

17   WE NEED TO TRANSLATE THE COMPLAINT AND THE EXHIBITS INTO

18   CHINESE, WHICH IS WHAT WE'RE IN THE PROCESS OF DOING.  WE

19   SHOULD EXPECT TO HAVE THAT FINISHED BY THE END OF THE MONTH,

20   AND THEN GIVE IT TO THE PROPER CHINESE AUTHORITIES BY THE END

21   OF MAY, WHO WILL THEN BEGIN THE PROCESS OF SERVING UNDER THE

22   HAGUE CONVENTION.

23           THE COURT:  OKAY.  I KNOW IT'S A LONG PROCESS.  DO

24   YOU HAVE ANY ETA IN TERMS OF HOW LONG IT WILL TAKE TO SERVE?

25           MR. KROLL:  IT IS UNKNOWN HOW LONG IT TAKES TO SERVE,

1    YOUR HONOR.  ESTIMATES CAN RANGE UP TO A YEAR, YEAR AND A HALF.

2        SO THAT'S WHERE WE ARE.  WE ARE CONSIDERING -- THERE IS A

3    RULE THAT WE WOULD CONSIDER THAT ONCE IT'S OUT FOR SERVICE FOR

4    SIX MONTHS, THAT WE CONCEDE THE DEFAULT IF, IN FACT, 35.CN HAS

5    NOT APPEARED.

6        AND FRANKLY, WE'RE A LITTLE SURPRISED THAT 35.CN WOULD NOT

7    APPEAR GIVEN THE FACT THAT A FORMER DIRECTOR OF THEIRS AND A

8    CURRENT EMPLOYEE OF 35.CN IS ACTUALLY THE OFFICER, DIRECTOR,

9    SHAREHOLDER, OF DOMAIN I.D. SHIELD AND DIRECTOR AND OFFICER OF

10    ONLINENIC AND SHE HAS BEEN INVOLVED IN THIS CASE FROM THE

11    BEGINNING.

12        AND, IN FACT, SHE APPEARED AT THE MEDIATION IN THIS CASE.

13        THE COURT:  OKAY.  ALL RIGHT.  WITH THE -- THAT'S

14    HELPFUL AND WE'LL SEE WHERE THAT GOES.  WE'LL KEEP TABS ON IT.

15        I KNOW YOU'VE GOT ISSUES IN AND AROUND ALTER EGO AS WELL

16    WHICH WE'LL BE ADDRESSING AS WE WORK THROUGH THESE OTHER ISSUES

17    BEFORE US TODAY.

18        THE OTHER QUESTION I WANTED THE PARTIES TO BE PREPARED TO

19    ADDRESS AT THE STATUS CONFERENCE IS, TELL ME WHERE YOU ARE WITH

20    REGARDS TO STATUS OF SETTLEMENT.  I DON'T WANT TO KNOW ANY

21    PARTICULARS ABOUT SETTLEMENT.  I JUST WANT TO KNOW IF YOU'RE

22    HAVING DISCUSSIONS OR IF THERE'S ANY FORMAL PROCEDURE IN PLACE.

23        AND JUST REMIND ME -- WE PROBABLY HAD THIS DISCUSSION

24    BEFORE, I JUST DON'T HAVE IT IN MY NOTES RIGHT IN FRONT OF ME.

25        MR. KROLL, YOU'RE THE PLAINTIFF, SO I'LL START WITH YOU.

1          BUT, MR. NARANCIC, I WILL GIVE YOU AN OPPORTUNITY TO BE

2     HEARD AS WELL.

3               MR. KROLL:  YOUR HONOR, WE HAVE HAD A MEDIATION IN

4     THIS CASE WITH JUDGE LAPORTE.  THAT WAS UNSUCCESSFUL.

5               THE COURT:  WHAT WAS THE TIMEFRAME OF THAT,

6     MR. KROLL?

7               MR. KROLL:  I THINK IT WAS IN JANUARY.

8          BUT, PERRY -- MR. NARANCIC IS SHAKING HIS HEAD, SO I'M

9     ASSUMING I WAS RIGHT, IT WAS IN JANUARY.

10         THAT BEING SAID, THE PARTIES ARE STILL TALKING RATHER

11    INFORMALLY ABOUT SETTLEMENT.  I'VE HAD DISCUSSIONS WITH

12    MR. NARANCIC ON THAT ISSUE.  I DON'T BELIEVE WE ARE CLOSER IN

13    GETTING THIS RESOLVED, BUT I'LL LET MR. NARANCIC SPEAK TO THAT.

14              THE COURT:  BEFORE YOU DO THAT, ANSWER THIS QUESTION,

15    WHICH IS, DO YOU HAVE ANY FURTHER TIME PLANNED WITH

16    JUDGE LAPORTE?

17              MR. KROLL:  WE DO NOT.

18              THE COURT:  OKAY.  THANK YOU.

19         MR. NARANCIC, WITH REGARDS TO STATUS OF SETTLEMENT, IS

20    THAT ACCURATE?

21              MR. NARANCIC:  YES.  I HAVE NOTHING TO ADD.  I AGREE

22    WITH MR. KROLL.

23              THE COURT:  OKAY.  ALL RIGHT.  THAT'S HELPFUL TO THE

24    COURT.  THANK YOU.

25         ALL RIGHT.  LET'S TURN TO THE PENDING MOTION, THE

1       DISCOVERY MOTION, WHICH I VIEW AS A -- I TAKE AS A MOTION TO

2       COMPEL.

3              I UNDERSTAND THAT -- AND WE'VE HAD THIS MOTION IN BITS AND

4       PIECES, SO WE HAD SOME REQUESTS FOR PRODUCTIONS DIRECTED TO

5       FINANCIAL DOCUMENTS; THERE WAS A FAILURE TO PRODUCE THOSE IN A

6       TIMELY FASHION THAT I THINK LED TO THE FIRST SALVO; AND THEN

7       DOCUMENTS WERE TURNED OVER, AND THEY WERE ALSO TURNED OVER TO

8       THE COURT, AND I HAVE HAD AN OPPORTUNITY TO REVIEW THOSE.

9              I UNDERSTAND THAT PLAINTIFFS' REQUEST IS THAT THE

10      DOCUMENTS THAT HAVE BEEN PRODUCED ARE NOT SUFFICIENT AND THAT

11      THEY'RE REQUESTING AN -- ACCESS TO INTERNAL FINANCIAL SYSTEMS

12      OF THE DEFENDANT.

13             LET ME TELL YOU MY PRELIMINARY VIEWS, AND I'LL HEAR FROM

14      EACH SIDE.

15             AS I SAY, I DID REVIEW THE DOCUMENTS THAT WERE PRODUCED,

16      AND I DID THAT WITH THE RFP'S IN HAND WITH REGARDS TO WHAT WAS

17      ASKED FOR.

18             I BELIEVE THAT THE PRODUCTIONS ARE RESPONSIVE TO THE

19      PENDING RFP'S.  THEY DO PROVIDE THE FINANCIAL STATEMENT

20      INFORMATION, THE BALANCE SHEETS, INCOME STATEMENTS.  MANY OF

21      THESE COME IN THE FORM OF SCHEDULES TO THE TAX RETURNS.

22             TO THE EXTENT THERE'S AN OPERATING ENTITY, THERE IS PROFIT

23      AND LOSS INFORMATION, AS WELL AS REVENUE AND EXPENSE

24      STATEMENTS.

25             THEY ARE NOT IN INTRICATE DETAIL, BUT THEY ARE THE AUDITED

1    RETURNS AND STATEMENTS.

2         SO I THINK AS FAR AS THAT PRODUCTION GOES, IT IS

3    RESPONSIVE TO THE RFP'S AND I'M NOT INCLINED AT THIS TIME TO

4    GRANT THE REQUEST FOR ACCESS TO THE INTERNAL SYSTEMS.

5         HOWEVER, I AM CONCERNED ABOUT THE EARLY REPRESENTATIONS

6    THAT THERE WERE NO SUCH RECORDS AND THEN THE PRODUCTION OF

7    THESE RECORDS, AND I APPRECIATE THAT THE RECORDS THAT WERE

8    PRODUCED DON'T -- ARE NOT AS DETAILED AND DON'T PROVIDE AS MUCH

9    INFORMATION OBVIOUSLY AS PLAINTIFF HAD HOPED, AND I ALSO, AS I

10   SAY, HAVE SOME CONCERNS ABOUT THE RELUCTANCE AND

11   MISREPRESENTATIONS AROUND GETTING THESE DOCUMENTS PRODUCED.

12        TO THAT END, WHAT I'M CONSIDERING IS ALLOWING PLAINTIFF

13   TO, IF IT CHOOSES, SERVE A SET OF SPECIAL INTERROGATORIES, UP

14   TO 20 INTERROGATORIES, FOCUSSED ON DETAIL ARISING OUT OF THE

15   FINANCIAL STATEMENTS, AND THOSE WILL HAVE TO BE ANSWERED AND

16   VERIFIED WITHIN 14 DAYS OF SERVICE.

17        I AM ALSO INCLINED TO ALLOW PLAINTIFF A 30(B)(6)

18   DEPOSITION ON TOPICS ARISING FROM THE FINANCIAL STATEMENTS, AS

19   WELL AS THE RELATIONSHIP BETWEEN THE DEFENDANTS -- OR BETWEEN

20   OR AMONG THE DEFENDANTS, INCLUDING 35.CN.

21        AND ALL OF THAT TO TAKE PLACE IN THE NEXT 45 DAYS.

22        SO THAT'S MY PRELIMINARY VIEW HAVING, AGAIN, REVIEWED THE

23   DOCUMENTS THAT WERE PRODUCED, THE RFP'S, BUT ALSO BEING

24   CONCERNED ABOUT THE ABSENCE OF CRITICAL INFORMATION BEING

25   FORTHCOMING FROM THE DEFENDANTS IN THIS REGARD.

1      SO, MR. KROLL, IT'S YOUR MOTION.  I'LL HEAR FROM YOU

2      FIRST.  I HAVE AN OPEN MIND, BUT YOU CAN SEE WHAT I'M -- WHAT

3      I'M THINKING.

4          AND THEN, MR. NARANCIC, I'LL TURN TO YOU.

5          MR. KROLL.

6              MR. KROLL:  THANK YOU, YOUR HONOR.

7          I UNDERSTAND THE COURT'S PRELIMINARY VIEW ON THIS, BUT YOU

8      NEED TO UNDERSTAND THE PLAINTIFFS' FRUSTRATION WITH THE WHOLE

9      DISCOVERY PROCESS, BECAUSE WE SERVED THESE DOCUMENT REQUESTS IN

10     NOVEMBER; THEY WERE OBJECTED TO IN DECEMBER BECAUSE THE TERMS

11     FINANCIAL STATEMENTS, BALANCE SHEETS, ET CETERA, WERE

12     CONSIDERED VAGUE AND AMBIGUOUS BY THE DEFENDANTS; MEET AND

13     CONFER IN FEBRUARY; THEY RESPONDED AGAIN, THIS TIME THEY

14     OBJECTED AS BEING IRRELEVANT; AND WE NEEDED TO BRING OUR

15     MOTION, WHICH WAS FILED ON MARCH 16TH, WHICH IS WHEN THE

16     DEFENDANTS MADE THE REPRESENTATION THAT THEY HAD NO FURTHER

17     DOCUMENTS WITH RESPECT TO THE DOMAIN ID SHIELD; AND THEN THE

18     COURT ISSUED THE ORDER ON MARCH 24TH WITH A HEARING -- WITH A

19     PRODUCTION OF APRIL 7TH AND THERE WAS NO PRODUCTION.

20         AND WHEN THERE FINALLY WAS A PRODUCTION, THERE WAS ONE

21     PAGE, AND IT WAS ONLY AFTER MORE MEET AND CONFERS AND SENDING

22     THE JOINT LETTER THAT WE ACTUALLY, IN -- WHEN WE GOT THE

23     RESPONSE FROM MR. NARANCIC, WE ALSO GOT THESE ADDITIONAL

24     DOCUMENTS THAT THE COURT HAS SINCE REVIEWED.

25         SO, YOU KNOW, IN A SENSE OUR HANDS ARE TIED BEHIND OUR

1    BACK IN THAT WE ARE UNABLE TO FOLLOW UP WITH DOCUMENT REQUESTS

2    IF IT -- IF THE COURT FINDS THAT IT'S RESPONSIVE, THAT THESE

3    DOCUMENTS ARE RESPONSIVE, AND I CAN UNDERSTAND THAT.

4         OUR HANDS ARE TIED BEHIND OUR BACK BECAUSE WE CAN'T FOLLOW

5    UP WITH DOCUMENT REQUESTS ASKING FOR MORE DETAIL, WHICH WE

6    COULD HAVE HAD WE RECEIVED THESE EARLIER.

7         WE APPRECIATE HAVING 20 QUESTIONS TO -- INTERROGATORIES.

8         THE COURT:  WHY CAN'T YOU FOLLOW UP -- AND I KNOW

9    THIS PROBABLY THEN MOVES INTO THE REQUEST FOR MORE TIME.

10        MR. KROLL:  YES.

11        THE COURT:  IF YOU HAVE MORE TIME, THAT WILL GIVE

12   YOU -- THAT WILL GIVE YOU MORE TO WORK WITH.

13        MR. KROLL:  IF WE HAVE MORE TIME, YOUR HONOR, THEN WE

14   COULD FOLLOW UP AND GET -- ASK FOR SPECIFIC DOCUMENTS THAT, YOU

15   KNOW, WE FIND ARE LACKING.

16        WE CAN -- THROUGH THE INTERROGATORIES, WE CAN ASK

17   QUESTIONS OF THE INCONSISTENCIES BETWEEN THE DIFFERENT

18   DOCUMENTS AND THE CERTAIN ASPECTS OF THE DOCUMENTS THAT DON'T

19   MAKE SENSE TO US AND ARE INCONSISTENT WITH THE PRIOR RESPONSES

20   OF DEFENDANTS.

21        BUT, YOU'RE RIGHT, THIS DOES ALL DOVETAIL WITH THE MOTION

22   TO CONTINUE.  SO IF -- IF THE COURT IS INCLINED TO BE GRANTING

23   MORE TIME TO ALLOW DISCOVERY, I THINK YOUR INITIAL PROPOSAL

24   MAKES SENSE.

25        THE COURT:  AND I -- I AM INCLINED TO ALLOW MORE

1    TIME, AND I THINK THAT AN ADDITIONAL 90 DAYS ON ALL DEADLINES

2    IS PROBABLY A REASONABLE PLACE TO START.

3        I DID HAVE AN OPPORTUNITY TO SPEAK WITH THE SPECIAL MASTER

4    EARLIER THIS MONTH, AT LEAST AT A RELATIVELY HIGH LEVEL, AND I

5    UNDERSTAND THAT HIS WORK IS ONGOING AND HE ANTICIPATES HAVING A

6    FINAL REPORT TO ME BY EARLY JUNE, IF NOT SOONER.  AND, OF

7    COURSE, YOU ALL WILL GET THE REPORT BEFORE THAT, AND I KNOW

8    THERE'S SOME BACK AND FORTH TIME.

9        SO THAT CONVERSATION REALLY, I THINK, IN MY MIND CALLED

10   THE QUESTION ON WHAT WE DO WITH THE CASE SCHEDULE, AND I AM

11   VERY MUCH AWARE OF THE LONG AND DIFFICULT PROCESS IN GETTING

12   DISCOVERY FROM THE DEFENDANTS, AND WE'RE -- YOU KNOW, WE'RE

13   WORKING THROUGH THAT PROCESS.

14       AND IF WE GO THE ROUTE OF THE SPECIAL INTERROGATORIES AND

15   THE 30(B)(6) DEPOSITION, MR. NARANCIC, YOU WILL APPRECIATE --

16   AND, AGAIN, YOU'LL HAVE AN OPPORTUNITY TO SPEAK TO THIS -- BUT

17   AS I SAY, THE INTERROGATORIES WILL BE ANSWERED WITH VERIFIED

18   RESPONSES, AND THE 30(B)(6) NOTICE I WOULD EXPECT TO BE VERY

19   CLEAR AND SPECIFIC WITH REGARDS TO THE ISSUES THAT YOU BELIEVE

20   NEED CLARIFICATION, MR. KROLL, AND THERE WILL BE SOMEBODY

21   PRODUCED WHO CAN SPEAK TO THOSE.  THAT WILL BE CRITICAL AND

22   THAT WILL ABSOLUTELY HAPPEN.

23       AND IF THERE'S AN ISSUE AROUND THOSE TOPICS, I'LL CALL IT.

24   BUT I'M GOING TO BE PRETTY GENEROUS GIVEN WHERE WE'VE BEEN.

25       MR. KROLL:  YOUR HONOR --

```
1              THE COURT:  BUT THEY NEED TO BE FAIRLY SPECIFIC SO

2     MR. NARANCIC CAN BE SURE TO GET THE RIGHT PERSON.

3              MR. KROLL:  YOUR HONOR, IF I MAY?

4              THE COURT:  THAT'S WHAT I'M THINKING.

5         YES?

6              MR. KROLL:  MAY I ADD ONE MORE THING?

7              THE COURT:  YES.

8              MR. KROLL:  IT APPEARS THAT THE CHAIN OF DOCUMENTS IS

9     THAT THE SPREADSHEETS THAT WERE PRODUCED BY ONLINENIC WERE

10    SPREADSHEETS CREATED FOR THE TAX PREPARER FOR ONLINENIC, AND

11    WE'VE SEEN THE TAX DOCUMENTS.

12             THE COURT:  UM-HUM.

13             MR. KROLL:  WOULD IT ALSO BE POSSIBLE FOR US TO TAKE

14    THE DEPOSITION OF THE TAX PREPARER WHO MIGHT HAVE UNDERLYING

15    DOCUMENTS THAT CAN CLARIFY, AGAIN, MANY OF THE ISSUES THAT

16    WE'VE SEEN WITH THE DIFFERENCES BETWEEN THE SPREADSHEETS AND

17    THE TAX DOCUMENTS?

18             THE COURT:  WELL, I'LL LET MR. NARANCIC SPEAK TO

19    THAT.

20         SO, MR. NARANCIC, LET'S TURN TO YOU WITH REGARDS TO -- WHY

21    DON'T WE FOCUS ON THE PROPOSAL BEFORE FOLLOW-UP, THE SPECIAL

22    INTERROGATORIES, THE DEPOSITION, THE TIME EXTENSION.  LET'S GO

23    FROM THERE.

24             MR. NARANCIC:  I THINK DEFENDANTS ARE FINE WITH THE

25    COURT'S PROPOSAL OF AN ADDITIONAL 20 INTERROGATORIES TO BE
```

1    ANSWERED WITHIN 14 DAYS.  HOPEFULLY THE INTERROGATORIES ARE NOT

2    SO COMPREHENSIVE AND DETAILED THAT 14 DAYS WILL BE DIFFICULT,

3    AND IF THAT'S THE CASE, I'LL WORK WITH MR. KROLL.

4        BUT I'M CONFIDENT THAT, BASED ON WHAT I KNOW NOW,

5    DEFENDANTS WILL BE ABLE TO TURN THEIR ATTENTION TO THIS IN A

6    PROMPT WAY AND MAKE IT WITHIN 14 DAYS.  IF THERE'S ANY ISSUE

7    WITH THAT, I WILL PROMPTLY GET WITH MR. KROLL.

8        THE COURT:  LET ME -- LET ME ADDRESS THAT, BECAUSE 14

9    DAYS IN THIS SITUATION WHERE I'M ORDERING, YOU KNOW, A

10   FOLLOW-UP FOLLOWING A PRODUCTION -- A SHAKY PRODUCTION, IF YOU

11   WILL, ULTIMATELY SATISFACTORY, BUT A SHAKY PRODUCTION -- I

12   USUALLY PUT THIS ON A VERY SHORT LEASH, MUCH SHORTER THAN 14

13   DAYS, AND I'M ALLOWING 14 DAYS FOR RESPONSE OUT OF

14   CONSIDERATION FOR -- I'M TAKING INTO CONSIDERATION THAT THERE

15   ARE CLIENT INTERESTS IN CHINA, OVERSEAS, AND THERE MAY BE

16   LANGUAGE ISSUES AND TIMING ISSUES IN GETTING TO THE RIGHT

17   PIECES.

18       NOW, MAYBE THAT'S NOT ENTIRELY THE CASE, WHICH IS ALSO

19   PART OF OUR ALTER EGO DISCUSSIONS.  BUT I'M -- I'M TAKING THAT

20   INTO ACCOUNT.  SO I CERTAINLY EXPECT FULL RESPONSES IN 14 DAYS.

21   I THINK THAT IS VERY GENEROUS UNDER THESE CIRCUMSTANCES.

22       MR. NARANCIC:  THANK YOU, YOUR HONOR.

23       YEAH, AND I'LL CERTAINLY DO EVERYTHING I CAN DO MAKE SURE

24   THAT THE RESPONSES ARE FULL AND COMPLETE WITHIN THAT TIME

25   PERIOD.

```
1            I AM RELUCTANT TO OFFER THE TAX PREPARER TO BE THE SUBJECT
2    OF DISCOVERY.  I THINK FOR NATURAL REASONS, I THINK ANY COMPANY
3    IN THESE CIRCUMSTANCES WOULD BE RELUCTANT TO OPEN UP ITS
4    FINANCIAL AFFAIRS, INCLUDING ESPECIALLY TAX INFORMATION, TAX
5    STRATEGIES AND SO FORTH.  I THINK IT'S BEYOND THE SCOPE, AND
6    I'M CONCERNED ABOUT HOW THAT INFORMATION WILL BE USED,
7    PARTICULARLY BECAUSE THE WAY I SEE THE CASE, IT'S BASICALLY A
8    QUESTION ABOUT WHETHER ONLINENIC REGISTERED THESE DOMAINS OR
9    NOT, AND SUDDENLY WE'RE INTO VERY SENSITIVE DISCUSSIONS ABOUT
10   TAX STRATEGIES.
11           SO I WOULD BE --
12             THE COURT:  WELL, SO LET'S -- LET'S ADDRESS THAT.
13           OF COURSE THERE'S THE LIABILITY ISSUE ABOUT REGISTERING
14   INFRINGING DOMAINS.
15           BUT THEN THERE IS, OF COURSE, THE DAMAGES ISSUE, AND I
16   ADDRESSED THIS IN MY PREVIOUS ORDER WHERE I SAID, YES, THESE
17   DOCUMENTS ARE RELEVANT.  INITIALLY THE DEFENDANTS TOOK THE
18   POSITION THAT THESE DOCUMENTS WERE NOT RELEVANT, AND I MADE
19   THAT DETERMINATION THAT THEY ARE, IN PART FOR DAMAGES AND IN
20   PART TO THE EXTENT THAT THE FINANCIAL ARRANGEMENTS BETWEEN THE
21   DEFENDANTS MAY SUPPORT THE ALTER EGO ISSUES THAT HAVE BEEN
22   ALLEGED AND ARGUED.
23           AND SO -- SO THE DOCUMENTS ARE RELEVANT.  I UNDERSTAND
24   THAT THE INTEREST IN THE TAX PREPARER ARISES FROM THE FACT THAT
25   THERE ARE THESE INITIAL SPREADSHEETS THAT WERE PREPARED FOR THE
```

1    TAX PREPARER, AND I'D LIKE YOU TO ADDRESS THAT.  IS THAT

2    CORRECT AS MR. COLE -- KROLL, EXCUSE ME -- ARGUED?

3        BUT THEN WHEN -- BUT THEN THE TAX RETURNS HAVE

4    INCONSISTENT INFORMATION FROM THOSE SPREADSHEETS, SO THAT

5    RAISES QUESTIONS ABOUT WHAT WAS GOING ON OR WHAT WAS DONE.

6        NOW, MAYBE THERE'S AN IMPORTANT INTERIM STEP TO START WITH

7    WITH REGARDS TO A REQUEST FOR DOCUMENTS, EITHER OTHER

8    UNDERLYING DOCUMENTS OR DOCUMENTS DIRECTED TO WHAT THE TAX

9    PREPARER HAD OR LOOKED AT, RATHER THAN STARTING WITH THE

10   DEPOSITION.  I DON'T KNOW.  I'M ASKING THE PARTIES THAT

11   QUESTION.

12       SO, MR. NARANCIC, YOU STILL HAVE THE -- YOU STILL HAVE THE

13   FLOOR.

14       BUT IN REGARDS TO THE TAX PREPARER, I HEAR YOU.  I HAVE

15   SOME CONCERNS AROUND THERE MAY BE SOME ISSUES OF PRIVILEGE IN

16   THERE, SO I'M TRYING TO THREAD THAT NEEDLE.

17       BUT THE REQUEST, I BELIEVE, ARISES OUT OF THIS

18   INCONSISTENCY BETWEEN THE SPREADSHEETS AND THE TAX DOCUMENTS.

19          MR. NARANCIC:  YEAH.  I'M A FIRM BELIEVER THAT -- IN

20   THE MEET AND CONFER PROCESS BEFORE RAISING ANY ISSUE OF THIS

21   SORT WITH THE COURT, AND MR. KROLL AND I HAVE NOT HAD AN

22   OPPORTUNITY AND WE HAVE NOT DISCUSSED THE APPARENT

23   DISCREPANCIES BETWEEN THE SPREADSHEETS AND THE TAX RETURNS, AND

24   I THINK THAT IS A SO-CALLED INTERIM STEP, OR FIRST STEP.

25          MY -- I CAN TELL THE COURT THIS FAIRLY BASED ON MY

1     FIRST-HAND EXPERIENCE, WHICH IS THAT THE INDIVIDUAL EXCEL

2     SPREADSHEETS WHICH WERE PRODUCED AND SHARED WITH THE COURT, I

3     RECEIVED THOSE DIRECTLY FROM THE TAX PREPARER.

4          THE COURT:  UM-HUM.

5          MR. NARANCIC:  IN OTHER WORDS, INITIALLY THERE WAS

6     THE EXCEL SPREADSHEETS, THE SHORT ONE-PAGERS THAT WERE PRODUCED

7     BY THE CLIENT BECAUSE I HAD ASKED THEM, WELL, OKAY, GIVE ME

8     YOUR FINANCIAL STATEMENTS.

9          THEY DIDN'T UNDERSTAND WHAT THAT MEANT IN THEIR COURSE OF

10    DEALINGS OVER THERE.

11        AND THEN I SAID, WELL, JUST GIVE ME THE INFORMATION YOU

12    GAVE THE TAX PREPARER, AND THEY GAVE ME THESE TAX RETURNS --

13    EXCEL SPREADSHEETS, SORRY, THESE ONE-PAGERS.

14        AND I LATER FOUND OUT THAT -- THIS WAS ALL DISCLOSED

15    BEFORE TODAY -- THAT, OH, WELL, THESE WERE SPECIALLY PREPARED

16    EXCEL SPREADSHEETS THAT WERE REPORTS TAKEN FROM QUICKBOOKS OR

17    WHATEVER SYSTEM THAT THEY HAD.  THEY WEREN'T PREEXISTING

18    DOCUMENTS.

19        BUT ACCORDING TO WHAT I WAS TOLD, THAT WAS THE

20    INFORMATION, THE UNDERLYING INFORMATION THAT WAS PROVIDED TO

21    THE TAX PREPARER.

22        SO TO CROSS-CHECK THAT, I CONTACTED THE TAX PREPARER AND

23    THE TAX PREPARER -- AND I SPECIFICALLY ASKED THE TAX PREPARER,

24    GIVE ME THE FINANCIAL DOCUMENTS, NOT JUST THE INFORMATION, BUT

25    THE DOCUMENTS THAT INCORPORATE THAT INFORMATION THAT WAS GIVEN

1    TO YOU DIRECTLY BY ONLINENIC THAT YOU USED TO PREPARE THE TAX

2    RETURNS.

3        THE ONLY REPRESENTATION I CAN GIVE THE COURT IS I RECEIVED

4    THAT INFORMATION AND PRODUCED IT.

5        AND THEN I ASKED THE TAX PREPARER, WHY THE DIFFERENCE

6    BETWEEN THE DOCUMENTS THAT YOU RECEIVED AND THE NUMBERS ON THE

7    TAX RETURN?

8        AND HE SEEMED TO GIVE ME, ON ITS FACE, WHAT APPEARED TO BE

9    A FAIR RESPONSE, WHICH IS VERY RARELY DOES THE TAX RETURN

10    REFLECT A CLIENT-PROVIDED FINANCIAL STATEMENT BECAUSE THEY'RE

11    NOT USED TO THE AMERICAN SYSTEM IN CHINA THE WAY THEY HAVE

12    FINANCIAL STATEMENTS AND THE WAY THEY CATEGORIZE THINGS IS

13    DIFFERENT FROM HERE.

14        SO HE -- ACCORDING TO THE TAX PREPARER, HE TOOK THE

15    DEFENDANT-SUPPLIED DOCUMENTS AND TRANSLATED IT, IF YOU WILL,

16    INTO THE CATEGORIES THAT WOULD BE APPROPRIATE FOR A U.S. TAX

17    RETURN.

18        THAT, AS FAR AS I KNOW, ACCOUNTS FOR THE DIFFERENCE.  I'M

19    HAPPY TO TALK WITH MR. KROLL FURTHER ON WHY THAT IS.

20        I HOPE THAT HELPS ANSWER THE COURT'S QUESTION.

21        THE COURT:  ALL RIGHT.  ALL RIGHT.

22        WELL, I THINK THAT TO THE EXTENT THAT THERE ARE

23    INCONSISTENCIES BETWEEN THE SPREADSHEETS PROVIDED AND THE

24    FINANCIAL TAX DOCUMENTS, THAT CAN BE A 30(B)(6) TOPIC AND

25    THAT'S WHERE WE'LL START.

1        I'M NOT GOING TO INCLUDE A DEPOSITION OF THE TAX PREPARER

2    PER SE AT THIS TIME.

3        AND I WOULD ENCOURAGE PLAINTIFFS ALSO TO, YOU KNOW, LET'S

4    STAY FOCUSSED ON THE ISSUES THAT REALLY MOVE THIS FORWARD.  YOU

5    DO HAVE THE RESPONSIVE DOCUMENTS NOW.  THERE IS INFORMATION

6    THERE, AND THERE'S OBVIOUSLY INFORMATION THAT I CAN -- I CAN

7    SEE WOULD PIQUE YOUR INTEREST AND CALL FOR FOLLOW UP, AND

8    THAT'S WHAT I'M TRYING TO ADDRESS TO KEEP THE -- TO KEEP

9    DISCOVERY MOVING, BUT IN A PROPORTIONAL -- IN A FAIR AND

10   PROPORTIONAL WAY.

11       THAT'S ALSO WHY I THINK THE THREE MONTH EXTENSION, 90

12   DAYS, IS REASONABLE GIVEN THE ACTIVITY THAT WE HAVE -- THAT WE

13   NEED TO COMPLETE IN THIS CASE AT THIS JUNCTURE.  AND I WOULD

14   NOT HAVE GRANTED SOMETHING ANY LARGER THAN THAT, SO YOU GOT IT

15   RIGHT ON THE MONEY, MR. KROLL, BECAUSE I DON'T -- I'M NOT

16   INVITING A FREE-FOR-ALL AND A LONG EXTENDED INTO EVERY CRACK

17   AND CREVICE.  INDEED, WE WILL CONTINUE TO BE GUIDED BY THE

18   NEEDS OF THE CASE, AS ALWAYS, BY RELEVANCE, AND BY

19   PROPORTIONALITY, AND I DO HAVE MY EYE ON THAT.

20       MR. NARANCIC, DID YOU WANT TO BE HEARD ON THE THREE MONTH

21   EXTENSION?

22            MR. NARANCIC:  YES, PLEASE, AND I'LL TRY TO BE BRIEF.

23       THERE ARE TWO CONCERNS ULTIMATELY WITH THE EXTENSION, YOUR

24   HONOR, AND ULTIMATELY I THINK A SHORT EXTENSION IS IN ORDER.

25       BUT HERE ARE THE CONCERNS, JUST SO THE COURT IS AWARE OF

1   THEM, AND I KNOW THAT THE COURT'S ALREADY SPOKEN TO SOME OF

2   THESE ISSUES.

3        THERE ARE TWO CONCERNS THAT MOTIVATE WHY DEFENDANTS ARE

4   HERE OPPOSING THE MOTION.  NUMBER ONE, AS YOU KNOW FROM MY

5   FILINGS, THERE IS A VERY LIMITED LEGAL BUDGET IN THIS CASE, AND

6   BY HAVING A SHORTER EXTENSION, I'M HOPING TO PRESERVE THOSE

7   ASSETS AS MUCH AS POSSIBLE FOR A POSSIBLE SUMMARY JUDGMENT.

8        IN OTHER WORDS, THE LONGER DISCOVERY GOES ON, THE MORE THE

9   LEGAL BUDGET WILL BE DEPLETED.  I'M VERY CONCERNED ABOUT THAT.

10  SO I WOULD PREFER A TWO MONTH EXTENSION, BUT I CAN LIVE WITH

11  THREE MONTHS IF THE COURT THINKS THAT'S IN THE BEST INTERESTS

12  OF THE CASE.

13       AND THE SECOND ISSUE WAS -- AGAIN, I ALLUDED TO IT -- WAS

14  THE SOONER FACT DISCOVERY, AND EXPERT DISCOVERY FOR THAT

15  MATTER, ENDS, THE SOONER THE DEFENDANTS WILL BE ABLE TO GET TO

16  A MOTION FOR SUMMARY JUDGMENT WHERE I THINK, WITHOUT BEING TOO

17  ARGUMENTATIVE, THERE ARE SOME INTERESTING AND MERITORIOUS

18  ARGUMENTS.  SO THE SOONER WE GET THERE, THE BETTER OFF IT IS

19  FOR DEFENDANTS.

20       AND FINALLY, YOUR HONOR, I'M ALWAYS ON THE DEFENSIVE IN

21  THESE FILINGS AND MEETINGS, AND IT'S VERY DIFFICULT WHEN I

22  DON'T HAVE THE MEANS TO ADEQUATELY RESPOND AND TO BRING MY OWN

23  DISCOVERY MOTIONS.

24       BUT I DO WANT TO EMPHASIZE TO THE COURT THAT, YOU KNOW, I

25  HAVE BEEN SUCCESSFUL WITH THE DEFENDANTS IN PUSHING THEM TO

1    PROVIDE INFORMATION THAT HAS NOT EVEN BEEN REQUESTED, SUCH AS

2    THE FULL TAX RETURNS.

3          AND SO THERE HAVE BEEN SOME MISSTEPS IN THIS CASE UNDER

4    CHALLENGING CONDITIONS WHICH THE SPECIAL MASTER CAN EVENTUALLY

5    SPEAK TO WHEN HE'S READY.

6          BUT, YOU KNOW, I -- I DON'T WANT THE COURT TO ALWAYS HEAR

7    KIND OF THE BAD THINGS BECAUSE I DON'T HAVE THE MEANS TO -- OR

8    THE BUDGET TO PROPERLY EXPRESS AND BRING ALL THE MOTIONS THAT I

9    WOULD LIKE TO BRING.

10          SO THAT JUST EMPHASIZES AGAIN THAT WE'LL DO OUR BEST, IN

11    ACCORDANCE WITH THE RULES AND IN ACCORDANCE WITH THE COURT'S

12    ORDERS, TO COMPLY WITH WHATEVER THE COURT THINKS IS

13    APPROPRIATE.

14            THE COURT:  I APPRECIATE THAT, MR. NARANCIC.  AND YOU

15     CAN COMMUNICATE TO YOUR CLIENT, OF COURSE -- AND I'M VERY AWARE

16     OF, YOU KNOW, THE NEED TO LITIGATE WITHIN A BUDGET.  I COME

17     FROM MANY, MANY YEARS OF LITIGATING FOR CLIENTS BOTH DOMESTIC

18     AND FOREIGN, AND THAT WAS, ESPECIALLY IN LATER YEARS, OF

19     PARAMOUNT CONCERN.  AND I -- THE COURT DOES -- THE COURT HEARS

20     THAT AND I APPRECIATE THAT.

21          THE BEST WAY TO KEEP THIS CASE IN BUDGET, OF COURSE, IS TO

22    RESPOND PROMPTLY AND APPROPRIATELY TO APPROPRIATE DISCOVERY.

23          NOW, THAT'S -- YOU KNOW, YOU CAN'T LET ANYONE RUN

24    ROUGHSHOD OVER YOU, AND YOU'VE DONE A GOOD JOB IN RESPONDING

25    AND TRYING TO KEEP DISCOVERY FOCUSSED ON ISSUES, AND I

1    APPRECIATE THAT.

2         BUT LONG, DRAWN OUT PROCEDURES WHEN REQUESTS ARE SERVED IN

3    NOVEMBER AND DOCUMENTS ARE NOT TURNED OVER UNTIL LATE APRIL,

4    THAT'S -- THAT IS -- THAT COSTS THE DEFENDANTS MONEY, THAT

5    DEPLETES THE BUDGET, AND THAT FEEDS THE NEED TO EXTEND THE

6    CALENDAR.  THE LONGER THE CASE GOES ON, THE MORE EXPENSIVE IT

7    IS.  THAT IS ABSOLUTELY CORRECT.

8         BUT IN THIS CASE, CERTAINLY IN THIS INSTANCE AROUND THIS

9    PRODUCTION, THE DEFENDANTS HAVE CAUSED THIS BY THEIR DELAY.

10         NOW THEY ARE GOING TO HAVE THE TIME AND EXPENSE, SOMEONE

11    WILL HAVE TO STEP AWAY FROM THEIR DESK AND WHATEVER THEIR OTHER

12    DUTIES ARE TO PROVIDE COMPLETE AND VERIFIED RESPONSES TO THE

13    INTERROGATORIES, AND THEY ARE GOING TO HAVE TO PROVIDE YOU WITH

14    AT LEAST ONE WITNESS, AND MAYBE IT'S MORE, WHO WILL BE AN

15    APPROPRIATE 30(B)(6) WITNESS ON THE FINANCES.

16         SO THAT'S -- THAT'S WHERE WE'RE HEADED.  AND I APPRECIATE

17    THAT TAKES MORE TIME AND MORE MONEY.  BUT IT IS APPROPRIATE AND

18    PROPORTIONAL IN THIS CASE AND IT WOULD BE IN THEIR BEST

19    INTERESTS TO PROVIDE THAT INFORMATION THAT'S APPROPRIATELY

20    REQUESTED.

21         MR. NARANCIC:  YES, YOUR HONOR.

22         THE COURT:  ALL RIGHT.  OKAY.  SO I THINK THAT'S

23    WHERE WE ARE.  I WILL ISSUE A SHORT ORDER WITH REGARDS TO THE

24    SPECIAL INTERROGATORIES.

25         AND, AGAIN, THOSE ARE AT PLAINTIFFS' OPTION.  YOU CAN

1     SERVE THEM, OR NOT, AS WELL AS A 30(B)(6) NOTICE, I'M GOING TO

2     SAY WITHIN 45 DAYS.  IF PLAINTIFFS FEEL LIKE THEY NEED A LITTLE

3     MORE TIME -- I'M DOING THAT SO THAT THERE'S SOME, SOME

4     TIMEFRAME WHERE ALL THIS HAS TO HAPPEN.  IF PLAINTIFFS GET

5     DOCUMENTS OR GET INFORMATION AND WANT A LITTLE MORE TIME

6     OUTSIDE OF THAT, THE PARTIES CAN STIPULATE TO THAT AND I WILL

7     ALLOW IT.

8          AND THEN I WILL EXTEND THE SCHEDULE.  I DID REVIEW THE

9     SCHEDULE PROPOSED BY PLAINTIFFS AND I HELD THAT UP AGAINST MY

10    TRIAL CALENDAR FOR EARLY 2022 AND THOSE DATES -- THOSE DATES DO

11    WORK, SO I WILL ADOPT THE SCHEDULE THAT WAS PROPOSED IN THE

12    MOTION.

13          MR. KROLL:  YOUR HONOR, I HAVE A COUPLE OF FOLLOW-UP

14    QUESTIONS FOR YOU.

15          FIRST IS WITH RESPECT TO THE 30(B)(6) DEPOSITION.  I'M

16    ASSUMING THAT THAT'S IN ADDITION TO ANOTHER 30(B)(6) DEPOSITION

17    THAT WE CAN ASK THE DEFENDANTS ON OTHER ISSUES.  IS THAT

18    CORRECT?

19          THE COURT:  YES, THAT IS CORRECT.  THIS IS A

20    SPECIALLY ORDERED 30(B)(6), JUST LIKE THESE ARE SPECIAL,

21    SPECIAL INTERROGATORIES THAT DON'T COUNT AGAINST THE NORMAL

22    FEDERAL LIMIT.

23          MR. KROLL:  AND THEN THE SECOND ISSUE, YOUR HONOR, IS

24    I KNOW THAT THE COURT, IN ITS ORDER, WITHHELD A DISCUSSION OF

25    SANCTIONS INVOLVED, AND I UNDERSTAND THAT.

1          HOWEVER, PLAINTIFFS WERE ALSO SEEKING THEIR ATTORNEYS'

2     FEES FOR BRINGING THE MOTION, AND I DON'T KNOW IF THE COURT IS

3     INCLINED TO ADDRESS THAT OR ALSO PUT THAT OFF TO ANOTHER TIME.

4          THE COURT:  I'M GOING TO DENY THE REQUEST FOR

5     SANCTIONS WITHOUT PREJUDICE AT THIS TIME, AND I THINK THAT I'D

6     LIKE US TO GET THROUGH -- I'M HOPING THAT WE ARE NEARING THE

7     END OF FACT DISCOVERY, NOTWITHSTANDING THE EXTENSION.  I

8     APPRECIATE WE'VE GOT SOME ISSUES HERE AROUND THE FINANCES AND

9     THE INVOLVEMENT OF 35.CN, BUT THERE IS AN END IN SIGHT.  IT'S A

10    LITTLE FURTHER OUT, BUT IT'S NOT THAT MUCH FURTHER OUT.  WE

11    WERE PRETTY MUCH RUNNING UP ON IT.

12         SO I WANT US TO GET THROUGH THE BULK OF FACT DISCOVERY, I

13    WANT YOU ALL TO HAVE THE SPECIAL MASTER REPORT IN HAND, AND I'M

14    CONFIDENT WE'LL BE HAVING A DISCUSSION AS TO WHAT, IF ANYTHING,

15    THAT LEADS TO FURTHER MOTION WORK HERE BEFORE THE COURT, AND

16    WE'LL GO FROM THERE.

17         SO YOU WILL HAVE YOUR OPPORTUNITY, MR. KROLL, TO RAISE THE

18    ISSUE OF SANCTIONS, BUT LET'S GET ALL OF THE -- ALL OF THE

19    RELEVANT INFORMATION IN FRONT OF US.

20         I'M ALSO MINDFUL, MR. NARANCIC, OF YOUR FOCUS ON SUMMARY

21    JUDGMENT, AND THIS MAY WELL BE A CASE WHERE GETTING THOSE

22    MOTIONS ON FILE WILL ALSO HELP THE PARTIES WITH REGARDS TO

23    THEIR SETTLEMENT DISCUSSIONS.

24         SO I SEE THAT DATE AS WELL AND I AM MINDFUL OF THAT AND

25    THE -- YOU KNOW, THAT THAT MAY ALSO BE ANOTHER TURNING POINT

1    FOR US.

2         SO I THINK WE'RE ON A GOOD TRACK HERE, I'M GOING TO KEEP

3    IT ALL ON A SHORT LEASH, A SHORT RELEVANT AND PROPORTIONAL

4    LEASH, AND WE'RE GOING TO PACK UP THESE ISSUES AND MOVE ON FROM

5    HERE.

6             MR. NARANCIC:  THANK YOU, YOUR HONOR.

7             THE COURT:  ANYTHING FURTHER FROM PLAINTIFF FOR

8    TODAY?  MR. KROLL?

9             MR. KROLL:  NO, YOUR HONOR.

10            THE COURT:  MR. NARANCIC FOR THE DEFENDANTS?

11            MR. NARANCIC:  NOTHING.  THANK YOU, YOUR HONOR.

12            THE COURT:  ALL RIGHT.  AGAIN, I'D LIKE TO THANK

13   MR. HOWE FOR HIS ATTENDANCE TODAY AND I WILL LOOK FORWARD TO

14   THAT REPORT, AND I'M SURE I WILL HEAR FURTHER FROM THE PARTIES.

15        THANK YOU.  THAT CONCLUDES THIS MATTER AND WE ARE

16   ADJOURNED.

17            MR. NARANCIC:  THANK YOU, YOUR HONOR.

18            MR. KROLL:  THANK YOU, YOUR HONOR.

19        (THE PROCEEDINGS WERE CONCLUDED AT 11:37 A.M.)

20

21

22

23

24

25

```
 1

 2

 3                        CERTIFICATE OF REPORTER

 4

 5

 6

 7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

 8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

 9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10     CERTIFY:

11          THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12     A CORRECT TRANSCRIPT FROM THE RECORD OF ZOOM PROCEEDINGS IN THE

13     ABOVE-ENTITLED MATTER.

14

15

16     _____
       LEE-ANNE SHORTRIDGE, CSR, CRR
17     CERTIFICATE NUMBER 9595

18          DATED:  JUNE 3, 2021

19

20

21

22

23

24

25
```