TUCKER ELLIS LLP
David J. Steele SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:	213.430.3400
Facsimile:	213.430.3409

DAVIS POLK & WARDWELL LLP
Ashok Ramani SBN 200020
ashok.ramani@davispolk.com
Micah G. Block SBN 270712
micah.block@davispolk.com
Cristina M. Rincon *Pro Have Vice*
Cristina.rincon@davispolk.com
1600 El Camino Real
Menlo Park, CA 94025
Telephone:	650.752.2000
Facsimile:	650.752.2111

Attorneys for Plaintiffs,
FACEBOOK, INC. and INSTAGRAM, LLC

LEXANALYTICA, PC
Perry J. Narancic – SBN 206820
pjn@lexanalytica.com
2225 E. Bayshore Road
Suite 200
Palo Alto, CA 94303
Telephone:	650.655.2800

Attorneys for Defendants,
ONLINENIC, INC. and DOMAIN ID SHIELD
SERVICES CO., LIMITED

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC,<br><br>    Plaintiffs,<br><br> v.<br><br>ONLINENIC INC.; DOMAIN ID SHIELD SERVICE CO., LIMITED; and DOES 1-20,<br><br>    Defendants. | Case No. 5:19-cv-07071-SVK<br><br>**SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT**<br><br>DATE:  July 20, 2021<br>TIME:  9:30 a.m.<br>CTRM:  6 – 4th Floor<br><br>Hon. Susan van Keulen |

Pursuant to Civil Local Rule 16-10, the Case Management Order previously entered in this case (ECF No. 31), and the Court's March 24, 2021 and May 25, 2021 Orders scheduling this case management conference (ECF Nos. 81, 106, 114), the parties submit this supplemental case management statement.

## I. CURRENT SCHEDULE

| Event | Date |
| --- | --- |
| Opening of Expert Disclosures | August 20, 2021 |
| Fact Discovery Cut-off | September 2, 2021 |
| Rebuttal Expert Disclosures | September 10, 2021 |
| Close of Expert Discovery | October 5, 2021 |
| Dispositive Motion Filing Deadline | October 19, 2021 |
| Last Day to Hear Dispositive Motions | December 14, 2021 |
| Final Pretrial Conference | February 3, 2022 |
|  | Filing Dates:    January 20, 2022 |
|  | January 27, 2022 |
| Trial | February 14, 2022 |

## II. SERVICE ON 35.CN AND POTENTIAL FOR REASSIGNMENT OF THIS CASE ABSENT 35.CN'S CONSENT TO PROCEED BEFORE A U.S. MAGISTRATE JUDGE

On March 24, 2021, the Court granted Plaintiffs' motion for leave to file their First Amended Complaint ("FAC") to add Xiamen 35.com Internet Technology Co., Ltd. a/k/a 35.CN ("35.CN") as a defendant. ECF No. 81. Plaintiffs filed the FAC on March 31, 2021. ECF No. 84. Counsel for Defendants OnlineNIC, Inc. ("OnlineNIC") and Domain ID Shield Service Co., Limited ("ID Shield") (collectively, "Defendants") has not been retained by 35.CN to represent it in this action and thus does not have authorization to accept service of process on behalf of 35.CN.[1] Further, 35.CN is located in the People's

---

[1] As Plaintiffs informed the Court during a May 11, 2021 hearing, Plaintiffs are surprised that 35.CN will not voluntarily accept service of process and appear in this action. A former 35.CN director and current employee, Carrie Yu aka Yu Hongxia, is also the sole officer, director, and shareholder of ID Shield and is a director and officer of OnlineNIC. Ms. Yu has been involved in this action since its inception, and she also appeared at the parties' mediation. Plaintiffs also understand that 35.CN employees have interacted

Republic of China ("China") and must therefore be served pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (the "Hague Convention"). *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988) (compliance with the Hague Convention is required "in all cases to which it applies").

Accordingly, Plaintiffs have retained a translation service to provide certified translations in Chinese of all documents that must be served upon 35.CN, as required by the Hague Convention. Due to the volume of documents at issue and the strict requirements of the Hague Convention concerning translations of documents, these certified translations have just recently been completed. Plaintiffs have also retained an international service of process expert to assist with effecting service on 35.CN in China via the Hague Convention.[2] This expert has initiated the service procedure, with all requisite documents having been delivered to the Chinese Central Authority. The service of process expert also informed Plaintiffs on June 25, 2021 that the Chinese Central Authority has issued the request for service to the applicable Chinese court and that at least another three to four months will pass before the Chinese court begins its service efforts on 35.CN.

With respect to whether 35.CN will consent to the jurisdiction of a U.S. Magistrate Judge, Plaintiffs have not to date had any communications with 35.CN. Counsel for OnlineNIC and ID Shield has not been retained by 35.CN. Until 35.CN has appeared in this action, the parties are not certain as to whether 35.CN will consent.

### III. STATUS OF SETTLEMENT NEGOTIATIONS

On January 8, 2020, the Parties participated in a mediation conducted through JAMS, which was

---

with the Special Master assigned to this case. Defendants state that Ms. Yu does not have express or apparent authority to bind 35.CN (which is a publicly traded company in China in which Ms. Yu is not a member of the executive team or a director) and that her involvement in this case so far has only been on behalf of Defendants.

[2] During the document vetting process, the international service of process expert informed Plaintiffs that the Chinese Central Authority would refuse to serve the FAC because it contained a reference to "Hong Kong" instead of "Hong Kong, China." The parties therefore stipulated to the filing of the Second Amended Complaint ("SAC") to rectify this issue. ECF Nos. 107-109. Plaintiffs' translation service has stated that the filing of the SAC did not delay translation and thus did not delay service.

led by Hon. Elizabeth Laporte (Ret.). At the time, Judge Laporte and the parties agreed that substantial progress was made during that session. During the mediation, Judge Laporte and the parties agreed that a settlement, if it were to be reached, would require certain further actions, and that these actions would also require additional time to complete. Judge Laporte and the parties also agreed that a temporarily suspension of work on the case in order to contain legal fees, and a continuance by the Court, would better facilitate settlement. Although the Court granted a stipulation to extend the case schedule to allow time for such negotiations (ECF No. 59), the parties were unable to reach an agreement and currently appear to be at an impasse with respect to settlement.

## IV. STATUS OF DISCOVERY AND REMAINING PRETRIAL SCHEDULE

The parties have engaged in a number of discovery disputes that have slowed the parties' progress in discovery. Apart from these disputes, which are discussed further below, Plaintiffs remain concerned with whether they will be able to complete fact discovery at all due to Defendants' spoliation of evidence (an allegation which Defendants deny). Plaintiffs also remain concerned as to whether they will be in the position to take Defendants' depositions before the close of fact discovery. Taking depositions with incomplete document discovery would likely, in the view of Plaintiffs, result in further motion practice with the Court to compel additional deposition time once additional documents are produced. Plaintiffs' concerns have been exacerbated by the number of outstanding discovery issues as well as the rate at which Defendants have responded to discovery and have supplemented their deficient responses and productions in the past.[3]

First, Plaintiffs contend they cannot conduct the requisite discovery in this action because Defendants have intentionally withheld and destroyed vast amounts of data they should have produced in response to Plaintiffs' March 2020 document requests. As the Court is aware, to address Plaintiffs' concerns with Defendants' production of their support ticket database records in response to Plaintiffs' first set of request for production (propounded on March 20, 2020), the Court on March 3, 2021 appointed

---

[3] Plaintiffs allege that Defendants have also routinely missed court deadlines—such as those to answer the FAC and to produce financial records—only to file or serve such documents after Plaintiffs informed Defendants of these missed deadlines. Plaintiffs allege that this pattern of conduct has resulted in increased attorneys' fees for Plaintiffs.

a Special Discovery Master to "supervise and complete, with all reasonable diligence, Defendants' collection, search, and production to Plaintiffs' counsel of Defendants' support ticket database." ECF No. 72.[4]

The Special Discovery Master has filed five status reports to date. ECF Nos. 83, 86, 89, 105, 112. The Special Master also filed with the Court on July 12, 2021 his *Data Destroyed or Withheld Report* (the "Report"). Plaintiffs assert that the Report's conclusion speaks volumes about discovery in this action:

> Briefly put, Defendants did not do what they should have done (preserve and produce responsive ESI) yet did do what they should not have done (delete and obfuscate). Based on the sum of the evidence, Special Master concludes Defendants' behavior was intentional. . . . Defendants' failure to preserve ESI and deletion activities were widespread. In total, Special Master identified 11,059,388 deleted records. Deletion activities were so pervasive that they included many database tables (tickets, ticket posts, ticket notes, ticket words, audit logs, etc.), and attachment files. Of these deleted records, Special Master estimates 30% of those records . . . or 3,317,816 were responsive . . . . Defendants began deleting data before the complaint was filed, continued deleting responsive records during the discovery process, and even after Special Master's appointment. . . . [T]hroughout the discovery process Defendants' conduct [also] included obfuscation and ESI withholding. [And] Defendants made material misrepresentations regarding their backups and other ESI items to the Special Master.

Report at 39-40. The Special Master also concluded "Defendants caused irreparable harm to Plaintiffs through permanently deleted responsive database records and attachment files, that they will never see or

---

[4] On November 10, 2020 and in response to one of the Parties' discovery disputes concerning Defendants' document production, the Court issued an order requiring Defendants to de-duplicate their existing document production and to de-designate certain confidentiality designations, with a report concerning Defendants' compliance with the order being due on December 15, 2020. ECF No. 54. On December 15, 2020, Defendants filed a report stating they had complied with the Court's order. ECF No. 55. Plaintiffs alleged that Defendants' report was deficient. Response re Status Report (ECF Nos. 58, 77). These events predicated Plaintiffs' filing of their motion to appoint the Special Discovery Master. ECF No. 62. Plaintiffs set forth Defendants' alleged delays extensively in that motion (*id.*), which the Court granted. ECF Nos. 66, 72.

know the contents" of as a result of Defendants' spoliation of evidence. *Id.* at 40. Plaintiffs intend to move for terminating sanctions based on this spoliation of evidence and its impact on Plaintiffs' ability to prepare this case for trial.[5]

Second, even if it were possible to completely set aside Defendants' deliberate and vast destruction of evidence and the irreparable harm caused to Plaintiffs (which is denied by Defendants), Plaintiffs still remain concerned about their ability to complete discovery before the current fact discovery cutoff. Because the Special Master is still completing his work concerning the past productions of Defendants' support ticket database as well as his report concerning the destruction of any data contained therein, the Special Master is only just commencing work on his remaining duties as ordered by the Court—namely, assisting the Parties with negotiating the discovery protocol for Defendants' new production, querying and culling the support ticket database to create a production to include the responsive database records and ticket attachment files, producing the production database to the parties, and performing other duties ordered by the Court and requested by the Parties. ECF No. 105.

The September 2, 2021 fact discovery cutoff is fast approaching, and given the delays Defendants caused the Special Master in being able to complete his duties (which is disputed by Defendants), Plaintiffs do not believe that the Special Discovery Master will complete the production of the support ticket database in time for the Plaintiffs to conduct sufficient follow-up discovery.[6] As a result, Plaintiffs contend that they will not have the opportunity to conduct further discovery based on information learned from this data, nor will they have this data in time to take depositions concerning this data before the close of fact discovery.

Third, on March 16, 2021 the parties filed a joint discovery motion in which Plaintiffs sought to compel production of certain of Defendants' financial records. ECF No. 79. On March 24, 2021 this Court

---

[5] Defendants have reported to Plaintiffs that, as of the filing of this supplemental joint case management statement, Defendants have not paid the Special Master's June 23, 2021 invoice. Defendants have represented to Plaintiffs and the Special Master that they intend to pay the invoice on July 12 or July 13. Plaintiffs are therefore concerned as to whether this lack of payment by Defendants will impede the Special Master's ongoing investigation and thus further prejudice Plaintiffs' ability to complete discovery and thus to prepare for trial.

[6] The Special Master informed the parties on June 10, 2021 that the database provided in conjunction with his Report should not be used for legal review and that a more suitable production database is forthcoming.

found "that the financial records are relevant and responsive as they are related to Defendants' revenue and profit and are likely to shed further light on the relationship to and activities of 35.CN." ECF No. 81 at p. 2. Accordingly, the Court granted Plaintiffs' motion to compel and ordered Defendants to produce responsive documents by April 7, 2021. *Id.* Plaintiffs subsequently filed another motion to compel and for sanctions, contending that Defendants' did not produce financial records sufficient to comply with the Court's order. ECF No. 96. Plaintiffs also filed a motion to continue the case schedule by approximately three months in light of the delays Defendants caused with respect to the Special Master (which Defendants deny) and discovery in general. ECF No. 98. Following a hearing on the motions, the Court set the current case schedule and ordered Defendants to respond to—within fourteen days of service—up to twenty special interrogatories "regarding the financials produced," and the Court further ordered that Plaintiffs may take a special Rule 30(b)(6) deposition concerning "topics arising out of the financials and the relationship between 35.CN and the other defendants." ECF No. 104. Plaintiffs served their special interrogatories on May 27, 2021, and Defendants timely served their responses on June 10, 2021. Plaintiffs contend that Defendants failed to respond fully as ordered by the Court, and Plaintiffs therefore intend to file a motion to compel further responses. The special Rule 30(b)(6) deposition began on July 12, 2021.[7] While Plaintiffs remain hopeful that they will obtain sufficient financial information from this special discovery, they remain concerned about the ability to take any necessary follow-up discovery before the current fact discovery cutoff.

Fourth, the Parties have met and conferred concerning Defendants' production of their registration database (as opposed to the support ticket database under the purview of the Special Master). Plaintiffs have asserted that the database lacks information sufficient to allow Plaintiffs to identify the various fields in the database or to reconcile the inconsistent information contained therein. This in turn makes it impossible for Plaintiffs to verify the accuracy and completeness of the data produced. Defendants contend that they have provided sufficient supplementary information to meaningfully analyze the database in

---

[7] The Court originally ordered the special Rule 30(b)(6) deposition to take place within forty-five days of the Court's May 11, 2021 Order; however, the Court also ordered that the parties may stipulate to an extension of this deadline if necessary. ECF No. 104. The parties therefore stipulated to have the deposition take place the week of July 12, 2021 given various scheduling challenges, including those caused by the deponents being located in a different time zone than Plaintiffs.

question.  At this juncture, Plaintiffs expect to file a motion to compel to address these deficiencies, and Plaintiffs may move the Court to amend the order appointing the Special Master to include the analysis and production of this database within the Special Master's duties. However, given the Special Master's preliminary findings concerning Defendants' vast destruction of evidence contained in the support ticket database, Plaintiffs strongly suspect the Special Master's investigation of the registration database would show additional spoliation of evidence crucial to this case.

Despite these issues, Plaintiffs anticipate taking Defendants' depositions once Defendants have completed their document production and have properly responded to all outstanding discovery. Defendants similarly expect to take Plaintiffs' depositions.

While Plaintiffs remain concerned about their ability to complete fact discovery within the remaining time allotted, they continue to diligently proceed with discovery and will inform the Court at the appropriate juncture if it does not appear that they can complete fact discovery within the current schedule due to Defendants' continued delays.

For their part, Defendants are concerned with a number of discovery problems emanating from Plaintiffs' conduct.  For instance, as recently as May 4, 2021, Plaintiffs provided production of documents in response to Defendants' document requests – and despite written requests from Defendants to do so, Plaintiffs have failed to state when their productions will be complete (as required by Fed. R. Civ. Proc. 34(b)(2)(B)) or what documents are responsive to what requests.  Defendants' numerous document requests go as far back as August 21, 2020 and it is not clear what Plaintiffs have actually responded to. Regretfully, Defendants have a very limited legal budget, and faced with a challenging allocation of scarce resources to date, Defendants have been unable to file discovery motions that should otherwise be brought. Unless these discovery issues can be resolved, a further extension of the case schedule (as suggested by Plaintiffs) may be warranted.

On July 12, 2021, the Special Master filed his final report (Dkt. No. 115).  Defendants take issue with the conclusions in that report, including the Special Master's conclusion that Defendants intentionally deleted data after the complaint in this lawsuit was filed. For instance, the Special Master himself concedes that: "Admittedly, for many of the deleted records, Special Master is unable to determine *when* they were deleted" (emphasis in original).

As of the filing of this status report on July 13, 2021, it is not clear that Defendants will have sufficient financial resources to continue to defend the case.

If Defendants continue to defend the case, Defendants intend to file a motion seeking to bring into the case one or more resellers on the grounds that such resellers are liable for the conduct complained of in the SAC.

DATED: July 13, 2021                                   Tucker Ellis LLP


By:   /s/David J. Steele
    David J. Steele
    Howard A. Kroll
    Steven E. Lauridsen

Davis Polk & Wardwell, LLP
    Ashok Ramani
    Micah G. Block
    Cristina M. Rincon

    Attorneys for Plaintiffs,
    FACEBOOK, INC. and INSTAGRAM, LLC

DATED: July 13, 2021                                   LexAnalytica, PC


By:   /s/Perry J. Narancic
    Perry J. Narancic

    Attorneys for Defendants,
    ONLINENIC, INC. and DOMAIN ID
    SHIELD SERVICES CO., LIMITED

## **ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that all other signatories listed and on whose behalf this filing is made concur in the filing of this document and have granted permission to use an electronic signature.

    /s/David J. Steele