UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC,<br><br>        Plaintiffs,<br><br>    v.<br><br>ONLINENIC INC.; DOMAIN ID SHIELD SERVICE CO., LIMITED; and XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD.,<br><br>        Defendants. | Case No. 5:19-cv-07071-SVK<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER FREEZING DEFENDANTS' ASSETS AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>Hon. Susan van Keulen |

The Court, having read and considered Plaintiffs' Emergency Ex Parte Application for a Temporary Restraining Order Freezing Defendants' Assets, and good cause appearing, **ORDERS** that the application is **GRANTED**.

It is further **ORDERED** that Defendants OnlineNIC, Inc. and Domain ID Shield Service Co., Limited ("Defendants") show cause before the Honorable Susan van Keulen of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, California 95113, Courtroom 6 – 4th Floor at ____ a.m./p.m. on _____, 2021, why a preliminary injunction should not issue pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court's inherent authority, and the All Writs Act that would, pending trial of this action, order as follows:

1. Defendants shall immediately provide to the Court an accounting of all of their assets, including, but not limited to, (a) all of Defendants' bank account numbers and those accounts' respective balances as of the date the temporary restraining order is entered; (b) Defendants' ownership interest in any other companies; and (c) any other assets including cash balances, real estate, physical property, accounts receivable, or income.

2. Except to pay costs directly necessary to maintain the day-to-day operations[1] of their business (e.g., renewing customer domain names, paying for servers, paying any employees), Defendants, as well as their officers, agents, servants, employees, or attorneys, or any other person who is in active concert or participation with them, ***shall not*** transfer, dissipate, abscond, hide, secret away, borrow against, or pledge any of Defendants' assets, including by:

   a) Transferring, releasing, deleting, or assigning any domain names owned or controlled by Defendants, including but not limited to the domain names listed in Exhibit 1 to this order (the "Defendants' Domain Names");

   b) Transferring or withdrawing any funds from any bank account;

   c) Transferring or using any funds from PayPal accounts and any other third-party payment processor, except that those funds may be deposited into one of Defendants' bank accounts identified by Defendants in response to (1) above;

---

[1] Any payment to Xiamen 35.com Internet Technology Co., Ltd. a/k/a 35.CN ("35.CN") for any purpose must first be approved by Plaintiffs' counsel.

    d)    Transferring or using any funds from Visa, MasterCard, American Express, or any other credit card company as well as any credit card processing company, except that those funds may be deposited into one of Defendants' bank accounts identified by Defendants in response to (1) above;

    e)    Transferring or using any funds held in any attorney-client trust account;

    f)    Selling, leasing, loaning, pledging, or otherwise encumbering any physical assets or infrastructure, including any computer server or equipment of value;

    g)    Assigning any employee compensation or benefit plan or requesting any return of such funds from the plan coordinator;

    h)    Selling, assigning, or otherwise transferring any equity Defendants own in any other companies identified by Defendants in response to (1) above; and

    i)    Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of these activities.

3. An independent domain name broker ("Broker") mutually agreed upon by counsel for Plaintiffs and Defendants shall liquidate Defendants' Domain Names within forty-five days and hold the proceeds in escrow. If counsel cannot agree on a Broker within five court days, the parties shall provide the Court with their respective proposed Broker, and the Court shall select the Broker. This liquidation shall otherwise proceed as follows:

    a)    The registry operator of record for each of Defendants' Domain Names shall change the registrar of record for each of Defendants' Domain Names to a registrar selected by the Broker;

    b)    The registrar of record selected by the Broker shall place Defendants' Domain Names into a user account controlled by the Broker;

    c)    The Broker shall serve a copy of the temporary restraining order on the appropriate registry operators and registrars as necessary to facilitate the transfer of Defendants' Domain Names;

    d)    The Broker shall use his or her best judgment[2] to maximize the proceeds obtained from the liquidation, including by bundling one or more of Defendants' Domain Names together for the sale, renewing or not renewing certain of Defendants' Domain Names from the proceeds of any sales, and monetizing certain of Defendants' Domain Names;

    e)    The Broker shall provide periodic status reports of the Broker's efforts;

    f)    At the conclusion of the liquidation, the Broker shall provide an accounting to the Court; and

    g)    The Broker's fees shall be paid from the proceeds of the liquidation, and the remaining proceeds shall be held in escrow by the Broker until instructed by the Court.

**AND IT APPEARING TO THE COURT** that Defendants are dissipating, and will continue to dissipate, their assets, it is further **ORDERED** that, pending hearing and determination of whether an injunction should issue, Defendants' assets are temporarily restrained as follows:

1. Defendants shall immediately provide to the Court an accounting of all of their assets, including, but not limited to, (a) all of Defendants' bank account numbers and those accounts' respective balances as of the date the temporary restraining order is entered; (b) Defendants' ownership interest in any other companies; and (c) any other assets including cash balances, real estate, physical property, accounts receivable, or income.

2. Except to pay costs directly necessary to maintain the day-to-day operations[3] of their business (e.g., renewing customer domain names, paying for servers, paying any employees), Defendants, as well as their officers, agents, servants, employees, or attorneys, or any other person who is in active concert or participation with them, ***shall not*** transfer, dissipate, abscond, hide, secret away, borrow against, or pledge any of Defendants' assets, including by:

    a)    Transferring, releasing, deleting, or assigning any domain names owned or

---

[2] The Broker is empowered to exercise his/her discretion to avoid the sale of any domain names included in the Defendant's Domain Names that pose a known cybersecurity or a cybersquatting risk.

[3] Any payment to 35.CN for any purpose must first be approved by Plaintiffs' counsel.

        controlled by Defendants, including but not limited to the domain names listed in Defendants' Domain Names (Exhibit 1);

    b) Transferring or withdrawing any funds from any bank account;

    c) Transferring or using any funds from PayPal accounts and any other third-party payment processor, except that those funds may be deposited into one of Defendants' bank accounts identified by Defendants in response to (1) above;

    d) Transferring or using any funds from Visa, MasterCard, American Express, or any other credit card company as well as any credit card processing company, except that those funds may be deposited into one of Defendants' bank accounts identified by Defendants in response to (1) above;

    e) Transferring or using any funds held in any attorney-client trust account;

    f) Selling, leasing, loaning, pledging, or otherwise encumbering any physical assets or infrastructure, including any computer server or equipment of value;

    g) Assigning any employee compensation or benefit plan or requesting any return of such funds from the plan coordinator;

    h) Selling, assigning, or otherwise transferring any equity Defendants own in any other companies identified by Defendants in response to (1) above; and

    i) Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of these activities.

3. An independent Broker mutually agreed upon by counsel for Plaintiffs and Defendants shall liquidate Defendants' Domain Names within forty-five days and hold the proceeds in escrow. If counsel cannot agree on a Broker within five court days, the parties shall provide the Court with their respective proposed Broker, and the Court shall select the Broker. This liquidation shall otherwise proceed as follows:

    a) The registry operator of record for each of Defendants' Domain Names shall change the registrar of record for each of Defendants' Domain Names to a registrar selected by the Broker;

b) The registrar of record selected by the Broker shall place Defendants' Domain Names into a user account controlled by the Broker;

c) The Broker shall serve a copy of the temporary restraining order on the appropriate registry operators and registrars as necessary to facilitate the transfer of Defendants' Domain Names;

d) The Broker shall use his or her best judgment[4] to maximize the proceeds obtained from the liquidation, including by bundling one or more of Defendants' Domain Names together for the sale, renewing or not renewing certain of Defendants' Domain Names from the proceeds of any sales, and monetizing certain of Defendants' Domain Names;

e) The Broker shall provide periodic status reports of the Broker's efforts;

f) At the conclusion of the liquidation, the Broker shall provide an accounting to the Court; and

g) The Broker's fees shall be paid from the proceeds of the liquidation, and the remaining proceeds shall be held in escrow by the Broker until instructed by the Court.

The above Temporary Restraining Order is effective immediately without requiring Plaintiffs to file an undertaking. Any response or opposition to this Order to Show Cause must be filed and served on Plaintiffs' counsel no more than ___ days before the date set for hearing, and any reply must be filed and served no later than ___ days before the hearing.

It is further **ORDERED** that, pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, either Defendant can apply to this Court for modification/dissolution of this Temporary Restraining Order on two-days' notice or shorter notice as this Court may allow, but no such application shall serve to suspend this Temporary Restraining Order or stay the terms herein unless otherwise ordered by this Court.

---

[4] The Broker is empowered to exercise his/her discretion to avoid the sale of any domain names included in the Defendant's Domain Names that pose a known cybersecurity or a cybersquatting risk.

**IT IS SO ORDERED.**

DATED: _____    _____
Susan van Keulen
U.S. Magistrate Judge