Perry J. Narancic, SBN 206820
LEXANALYTICA, PC
3000 El Camino Real
Bldg. 4, Suite 200
Palo Alto, CA  94306
www.lexanalytica.com
pjn@lexanalytica.com
Tel: 650-655-2800

Attorneys for Defendants
ONLINENIC, INC. and DOMAIN ID SHIELD SERVICE
CO., LIMITED

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC<br><br>Plaintiffs,<br><br>v.<br><br>ONLINENIC, INC. and DOMAIN ID SHIELD SERVICE CO., LIMITED.<br><br>Defendants. | Case No. 19-CV-07071-SVK<br><br>**DEFENDANTS' STATEMENT RE: PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AT DKT. NO. 129** |

Defendants OnlineNIC, Inc. and Domain ID Shield Service Co., Limited ("Defendants") intend to file an opposition to Plaintiffs' Ex Parte Application for a Temporary Restraining Order at Dkt. No. 129 ("TRO") by 11 pm PST on July 22, 2021.  Defendants' counsel has not had adequate time to confer with Defendants, where the local China time is 15 hours ahead of Pacific time.  In addition, Defendants' counsel is working on a brief in another mater that is due at 5 pm today, July 22, 2021.

In the meantime, Defendants have assured counsel that they will not move, transfer or otherwise dissipate any assets. As to Plaintiffs' allegations that Defendants are dissipating assets, Defendants have advised counsel that they transferred some domains to a registrar called "Ename" (www.ename.com) - which is the largest domain broker platform in China.  Defendants intended

- 1-

1  to auction the domains for the purpose of paying the Special Master in this case, which was the

2  subject of a case management conference on July 20, 2021.  See Dkt. No. 124.  As to these

3  domains, Defendants have cancelled or reversed any transfers.

4  Moreover, before the TRO was filed, Defendants agreed to stipulate to parts of the TRO, as

5  set forth in Exhibit A hereto – which was a letter sent by Defendants' counsel prior to the filing of

6  the TRO.  That letter reads in part:

7

8  Also, as discussed, Defendants will agree to deliver control over domain names that it
controls to a neutral third-party, so that they can be sold and the proceeds used to pay the Special
Master. If you have a proposal on such a neutral third-party, please let me know. For your

9  reference, I attach a spreadsheet with the domain names that are currently registered to
"Anthonny".

10

11  Plaintiffs' allegations that Defendants were trying to sell domains in order to avoid paying

12  the Special Master (TRO., 11:1-7; 6: 17-26) are inaccurate. Defendants have never stated that they

13  would not pay the Special Master; Defendants have stated to their counsel that they have every

14  intention of doing so by selling such assets as may be necessary to do so.  The intended sale of

15  some of the domains owned by OnlineNIC is part of payment plan being formulated by

16  Defendants, which the Court ordered Defendants to file by July 27, 2021. That is why Defendants

17  are happy to stipulate to the sale of those assets to pay the Special Master.

18  In another letter to Plaintiffs sent on July 21, 2021 (attached hereto as Exhibit B),

19  Defendants re-iterated their earlier proposal to Plaintiffs that Plaintiffs should allow OnlineNIC,

20  Inc. to be sold as a going concern, which would maximize return for all parties:

21

22  Further to today's case management conference, I write to you to revisit Defendants'
proposal about continuing business operations, which we previously discussed. As you recall,

23  Defendants sought Facebook's consent to continue business operations until its business could be
sold as a going concern.  This would solve a lot of problems, including getting the Special

24  Master paid and maximizing any recovery for Plaintiffs.  I have not yet re-connected with my
clients, but I believe that 6 months would be sufficient to find a buyer.

25

26  So far, Plaintiffs have not responded. Instead, they filed for an asset freeze that would

27  block the very type of transaction that could allow the Special Master and other creditors to be paid

28  (including, potentially, Plaintiffs).

- 2-

Facebook, Inc. v. OnlineNIC, Inc.                                                          Case No. 19-cv-7071-SVK
Defendants' Statement Re Plaintiffs' TRO Application at Dkt. No. 129

1   It is important to note that Defendants' commitment to paying the Special Master is not

2   "new found" religion.  In fact, on June 29, 2021 (before a large part of the invoice amount was

3   incurred), Defendants wrote to the Special Master asking him to *suspend his work until conferring*

4   *with the Court*:

5

6   Re: Facebook, Inc. et al v. OnLineNic Inc et al - Special 
    Discovery Master Invoice (Dated: 6/23/2021)  ⊃

7

8   → **Perry J. Narancic** <pjn@lexanalytica.com>        Jun 29, 2021, 10:37 AM  ☆  ↩ 
    to Tom, David, Howard, Steven, Bart ▾

9

10   Hi Tom - Defendants were not expecting this bill and they do not have the funds to pay it.  I guess
     that I am a little surprised that an invoice was sent so long after the initial deposit was used up.  I

11   think the better course would have been to keep us updated on costs, and not to have incurred
     fees beyond the deposit without notice.

12

13   OnlineNIC is cash flow positive on its business operations. It has every intention to pay your
     invoice in full, and it will be able to pay you if the case schedule is adjusted. We will need direction

14   from the Court on how to proceed, but I suspect  that you should consider suspending your
     services until we hear from the Court.

15

16   Very sorry about this.  I will help in any way I can.

17   P

18   The June 29 email specifically states that Defendants' intended to pay the Special Master's

19   invoice from cash flow from business operations.  But the proposed asset freeze would interfere

20   with that objective – because OnlineNIC would be frightened to fully operate the business for fear

21   of violating any court order.

22   Finally, any insinuation (intentional or otherwise) that Defendants' counsel has been part of

23   a plot to not honor obligations is improper.  As far as Defendants' counsel is aware, Defendants

24   had every intention to fight the litigation through trial – until July 13, 2021 following OnlineNIC's

25   30(b)(6) deposition. At that time, Defendants' counsel advised Defendants that he could not

26   continue in the case – and Defendants' counsel moved to withdraw shortly thereafter with the

27   clients' consent. (Dkt. No. 121).

28

Facebook, Inc. v. OnlineNIC, Inc.                                    Case No. 19-cv-7071-SVK
Defendants' Statement Re Plaintiffs' TRO Application at Dkt. No. 129

1   In short, the proposed asset freeze as proposed in not warranted because it would actually

2   hinder the objective of the Court's order to submit a reasonable payment plan. Further analysis and

3   supporting declarations will follow in Defendants' formal opposition.

4

5

6

7
                                        Respectfully Submitted,
8
DATED:  July 22, 2021                   LEXANALYTICA,  PC
9

10                                      By:   /s/ Perry J. Narancic

11
                                        Attorneys for Defendants
12                                      ONLINENIC, INC. and DOMAIN ID SHEILD
                                        SERVICE CO., LIMITED
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 4-

Facebook, Inc. v. OnlineNIC, Inc.                                Case No. 19-cv-7071-SVK
Defendants' Statement Re Plaintiffs' TRO Application at Dkt. No. 129