TUCKER ELLIS LLP
David J. Steele SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:    213.430.3400
Facsimile:    213.430.3409

DAVIS POLK & WARDWELL LLP
Ashok Ramani SBN 200020
ashok.ramani@davispolk.com
Micah G. Block SBN 270712
micah.block@davispolk.com
Cristina M. Rincon *Pro Hac Vice*
Cristina.rincon@davispolk.com
1600 El Camino Real
Menlo Park, CA 94025
Telephone:    650.752.2000
Facsimile:    650.752.2111

Attorneys for Plaintiffs,
FACEBOOK, INC. and INSTAGRAM, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ONLINENIC INC.; DOMAIN ID SHIELD SERVICE CO., LIMITED; and DOES 1-20,<br><br>Defendants. | Case No. 5:19-cv-07071-SVK<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION**<br><br>DATE:    August 5, 2021<br>TIME:    1:30 p.m.<br>CTRM:    6 – 4th Floor<br><br>Hon. Susan van Keulen |

## I. INTRODUCTION

Defendants have made numerous misrepresentations to the Court, to the Special Discovery Master, and to Plaintiffs throughout this litigation. Only when their lies are uncovered do Defendants acknowledge their wrongs, and even then, only through thinly veiled excuses. Defendants partially opposed entry of the temporary restraining order based on additional misrepresentations made to the Court. ECF No. 131 ("Opposition")–that they were not dissipating their assets when transferring their domain name portfolio ("Defendants' Domain Names"). Yet, this transfer was initiated without informing the Court or Plaintiffs, and was only stopped because Plaintiffs, as a result of their own investigation, uncovered Defendants' actions and confronted Defendants. Defendants now claim that the transfer of Defendants' Domain Names was done in order to sell the portfolio for $70,000 to purportedly fulfill their existing obligation to pay the Special Master. Given that the fair market value of the portfolio may well be higher than $70,000, Defendants' justifications belie the truth. Moreover, it appears that Defendants failed to disclose all of their domain name assets to the Court in their most recent filings.

On July 23, 2021, the Court entered its Order Granting In Part And Denying In Part Plaintiffs' Emergency Ex Parte Application For A Temporary Restraining Order Freezing Defendants' Assets. ECF No. 132. The Court found "that Plaintiffs have shown a likelihood of immediate and irreparable injury by dissipation of assets" if injunctive relief were not ordered. *Id.* at 1. And given Defendants' non-opposition to Plaintiffs' Motion for Default Judgment, (ECF No. 120), there is no dispute that Plaintiffs are likely to succeed on the merits of their claims. Furthermore, the harm from a denial of the preliminary injunction substantially outweighs any harm Defendants would suffer as a result of its entry, as it would only allow Defendants another opportunity to dissipate their assets. Finally, an injunction advances the public interest by preventing Defendants from escaping liability and continuing their venture as notorious cybersquatters. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (internal brackets omitted) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)) ("A party can obtain a preliminary injunction by showing that (1) it is 'likely to succeed on the merits,' (2) it is 'likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'the balance of equities tips in its favor,' and (4) 'an injunction is in the public interest'").

A preliminary injunction is necessary to prevent the Defendants from dissipating their assets

because the Defendants will try once again to dissipate their assets after the expiration of the temporary restraining order ("TRO") and avoid liability.

## II. A PRELIMINARY INJUNCTION IS APPROPRIATE TO PREVENT DEFENDANTS FROM DISSIPATING THEIR ASSETS.

### A. Defendants' have attempted to dissipate their assets to avoid their existing and prospective obligations.

Faced with the prospect of answering for their wrongs, and owing an obligation to the Special Master, Defendants attempted to dissipate their assets, just as they did in *Verizon*. *See Verizon Cal. Inc. v. OnlineNIC, Inc.*, 647 F. Supp. 2d 1110 (N.D. Cal. 2009). Through their own investigation and due diligence conducted on July 20, 2021, Plaintiffs discovered that Defendants initiated the transfer of hundreds of Defendants' Domain Names on July 19 and July 20, 2021, to a foreign domain name registrar to shield those domain names from potential seizure by the Court to satisfy the Special Master's invoices. Defendants now contend that the transfer of the Defendants' Domain Names was initiated with the intent to auction off the domain names in order to generate funds to pay the Special Master. ECF No. 131 at 1-2. Their justifications hold no weight and should not be entertained for at least the following reasons.

First, Defendants fail to explain why this transfer of domain names, if in fact intended to satisfy their debt owed to the Special Master, was conducted in secret, without apprising either Plaintiffs or the Court of this purported payment plan. In fact, when discussing how Defendants intended to pay the Special Master in Mr. Narancic's June 23, 2021 email to Special Master Howe, and again in comments made to the Court during the July 20, 2021 Case Management Conference, Defendants never mentioned Defendants' Domain Names as an asset, much less liquidating this valuable asset to settle their obligation. Had Defendants—just the day before the hearing—started liquidating their domain name portfolio to pay the Special Master (as they now claim), they would have so advised the Court during the hearing. Instead, Defendants explained their hope to continue as a going concern so as to generate cash to pay the Special Master over time. *See* Narancic Decl., Exhibit C, ECE No. 131-2; *see Transcript of Zoom Proceedings Before The Honorable Susan van Keulen*, ECE No. 127. Only when Plaintiffs exposed the transfers did Defendants halt the process, and only when faced with the temporary restraining order did they devise their explanation.

Second, Defendants do not adequately explain their decision to transfer their domain names to a Chinese registrar, rather than sell them directly at OnlineNIC. It is not necessary for a domain name holder to transfer a domain name to another registrar in order to sell it. Declaration of David J. Steele in support of Plaintiffs' Supplemental Brief in Support of Preliminary Injunction ("Steele Decl.") ¶ 2. Domain name brokers and auction sites routinely sell domain names registered with multiple registrars; the seller merely transfers the domain names to the buyer at the current registrar. Defendants could more easily sell their portfolio of domain names without transferring any domain names to another registrar. *Id.* Additionally, given that OnlineNIC claims to have no cash on-hand to pay the Special Master, and the cost to transfer each of the several hundred domain names to the sales platform Ename[1] is approximately $10.00, it defies logic that OnlineNIC spent thousands of dollars to unnecessarily transfer the domain names to another ICANN registrar. *Id.* ¶ 3.

Third, Defendants assert that they have now secured an offer to purchase Defendants' Domain Names for $70,000, an amount almost exactly sufficient to satisfy their balance owed to the Special Master. ECF No. 131 at 1-2, 4. However, this offer appears suspiciously low because Defendants' Domain Names may well be worth more than $70,000. For example, Plaintiffs' own investigation reveals that a selection of just 27 domain names (from Defendants' portfolio of 685) are collectively appraised at values ranging from $128,170[2] to $164,256.[3] Plaintiffs recognize the limitations of these online appraisals; yet, these appraisals reinforce Plaintiffs' concern that Defendants purported sale of Defendants' Domain Names is not an arms-length transaction. The justification offered by Defendants—that the proceeds from the sale of their domain names was intended to go to the Special Master—is an obvious attempt *post hoc* to explain away their attempted dissipation of a significant asset, rather than abiding by the Court's Order to pay the Special Master. If Plaintiffs had not discovered the planned transfer, Defendants' dissipation would have undoubtedly succeeded.

---

[1] Ename is both a Chinese language sales platform and an ICANN accredited domain name registrar based in China.

[2] This estimate was obtained from the online domain name valuation tool available at Estibot.com. Steele Decl. ¶¶ 4-5 & Ex. 1.

[3] This estimate was obtained from the online domain name valuation tool available at GoDaddy. *Id.* ¶¶ 4 & 6 & Ex. 2.

Additionally, Defendants' Domain Names are comprised of numerous domain names that are likely confusingly similar to well-known and famous trademarks. Several examples include: docmartin.org (resembling the DOC MARTINS mark), autobmwreview.com and bmwredesign.com (resembling the BMW mark), yamahaexciter.com (resembling the YAMAHA mark), and yekp.com (resembling the YELP mark), to list only a few. *See generally* ECE 129-2. The sale of these domain names, without appropriate procedures in place,[4] would merely perpetuate Defendants' cybersquatting. And Plaintiffs seriously doubt that the unknown prospective purchaser would undertake these appropriate protections.

### B.  Misrepresentations by Defendants continue to come to light.

Through continued investigation conducted on July 24, 2021, Plaintiffs discovered that Defendants misrepresented to the Court the number and identification of domain names currently held by OnlineNIC. Plaintiffs have identified numerous domain names owned by OnlineNIC that were not listed on Defendants' Second Amended Statement of Assets.[5] *Id.* ¶ 7. Some of these domain names were also transferred to Ename on or about July 19 or July 20, 2021. *Id.* ¶ 8.

For example, the domain name carrie.club was disclosed by Defendants in discovery as one of the domain names owned by Defendants. *Id.* ¶ 9. The data from the whois record for this domain name, captured on July 19, 2021, shows the domain name registered with OnlineNIC, and the listed owner was "Network Service" – a known alias used by Defendants. *Id.* ¶ 10 & Ex. 3. The whois record also shows the status "pendingTransfer" indicating that the domain name was, as of July 19, 2021, being transferred away from OnlineNIC. However the transfer was canceled, and the domain name remains at OnlineNIC. *Id.* ¶ 11. This domain name was not listed on Defendants' Second Amended Statement of Assets. *Id.* ¶ 12.

Another example includes the domain name dns-diy.net. This domain name was not disclosed by Defendants in discovery, however, the data from a historic whois record shows the domain name registered with OnlineNIC, listing one of OnlineNIC's business addresses (3027 Teagarden St., San Leandro, CA), and the associated email addresses sumxmut@gmail.com, an email address associated

---

[4] All of these cybersquatting domain names in the portfolio should be identified and offered to the respective trademark owners. If the trademark owner declines, then the domain names should be deleted.

[5] Defendants' Second Amended Statement of Assets recited the domain names listed at ECF 129-2.

with Defendants. *Id.* ¶ 13 & Ex. 4. The current whois record shows that the domain name was transferred away from OnlineNIC to Ename on or about July 20, 2021. *Id.* ¶ 14 & Ex. 5. This domain name was not listed on Defendants' Second Amended Statement of Assets. *Id.* ¶ 15.

Other examples include the domain names domain-reminder.com, domainwhois-verification.com, domainwhois-verification.com, and idc-internet.com. The data from historic whois records shows these domain names were registered with OnlineNIC, and the associated email addresses sumxmut@gmail.com, an email address associated with Defendants. *Id.* ¶ 16 & Exs. 6. The current whois records show that each of the domain names was transferred away from OnlineNIC to Ename on or about July 20, 2021. *Id.* ¶ 17 & Ex. 7. These domain names were not listed on Defendants' Second Amended Statement of Assets. *Id.* ¶ 18.

Additionally, at least thirty-nine other domain names disclosed by Defendants in discovery as owned by Defendants were transferred from OnlineNIC to Ename on or about July 20, 2021. *Id.* ¶ 19 & Ex. 8. These domain names were not listed on Defendants' Second Amended Statement of Assets. *Id.* ¶ 20.

### C. Defendants' remaining objections to the asset freeze are irrelevant and inadequate.

Defendants argue that the asset freeze prevents Defendants from selling OnlineNIC. ECF No. 131 at 3. The possibility of OnlineNIC being sold as a going concern is not restrained by the asset freeze. The continuation of Defendants' day-to-day operations is, in fact, contemplated and accounted for in the TRO. ECF No. 132 at 1.

Defendants' objection that the asset freeze prevents them from paying reasonable legal fees is equally unconvincing. *See* ECF No. 131 at 3. Defendants have filed a notice of non-opposition (ECF No. 120) to Plaintiffs' motion for terminating sanctions (ECF No. 117) and Defendants' counsel has filed a motion to withdraw as counsel. ECF No. 121. Furthermore, Defendants' Officer declared in support of that motion that "Defendants do not intend to file any oppositions to any pending filing." ECF No. 121.02. As a result, this litigation is effectively concluded as to the Defendants.

## III. CONCLUSION

Defendants have demonstrated an unabated intent to lie to the Court and to hide and dissipate their assets to avoid their liabilities. A preliminary injunction is necessary to prevent Defendants from

dissipating their assets in order to avoid their financial obligations to the Special Master and to Plaintiffs.

DATED: July 27, 2021                                  Tucker Ellis LLP


By: /s/David J. Steele
    David J. Steele
    Howard A. Kroll
    Steven E. Lauridsen

Davis Polk & Wardwell, LLP
    Ashok Ramani
    Micah G. Block
    Cristina M. Rincon

    Attorneys for Plaintiffs,
    FACEBOOK, INC. and INSTAGRAM, LLC