Pages 1 - 30

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Susan van Keulen, Magistrate Judge

| | |
|---|---|
| FACEBOOK, INC., et al, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| VS. ) | **NO. C 19-07071 SVK** |
| ) | |
| ONLINENIC INC., et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

San Francisco, California
Tuesday, August 10, 2021

**<u>TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING</u>**

**<u>OF REMOTE ZOOM VIDEO CONFERENCE PROCEEDINGS</u>**

**<u>RECORDING TIME:  2:00 P.M. - 2:48 P.M. = 48 MINUTES</u>**


**<u>APPEARANCES</u>**:

For Plaintiffs:
                    TUCKER ELLIS LLP
                    515 South Flower Street, 42nd Floor
                    Los Angeles, California 90071
               BY:  **DAVID J. STEELE, ATTORNEY AT LAW**
                    **HOWARD A. KROLL, ATTORNEY AT LAW**


For Defendants:
                    LEXANALYTICA, PC
                    2225 East Bayshore Road, Suite 200
                    Palo Alto, California 94303
               BY:  **PERRY J. NARANCIC, ATTORNEY AT LAW**


Transcribed By:  Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
                 CSR No. 7445, Official U.S. Reporter

| | |
|---|---|
| 1 | **Tuesday - August 10, 2021**                    **2:00 p.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | **---o0o---** |
| 4 | **THE CLERK:**  Please come to order.  The Honorable Susan |
| 5 | van Keulen presiding. |
| 6 | **THE COURT:**  Good afternoon, Counsel.  Welcome to the |
| 7 | afternoon calendar. |
| 8 | Ms. Fanthorpe, if you'll call the matter, we'll get under |
| 9 | way.  Thank you. |
| 10 | **THE CLERK:**  Yes.  Calling Case 19-cv-7071, Facebook, Inc., |
| 11 | et al. versus OnlineNIC Inc., et al. |
| 12 | Counsel, please identify yourselves for the record, |
| 13 | beginning with plaintiff. |
| 14 | **MR. STEELE:**  Hi.  Good afternoon.  This is David Steele, |
| 15 | and appearing with me is Howard Kroll, for plaintiffs. |
| 16 | **THE COURT:**  Mr. Steele, Mr. Kroll, good afternoon. |
| 17 | **MR. KROLL:**  Good afternoon. |
| 18 | **MR. NARANCIC:**  Good afternoon, Your Honor.  Perry Narancic |
| 19 | for defendants. |
| 20 | **THE COURT:**  Mr. Narancic, welcome back. |
| 21 | All right.  We're on today for a status conference.  We've |
| 22 | got a number of pending items.  We're going to work off of my |
| 23 | list.  And I'll tell you where we are -- where I think we are, |
| 24 | and I'll give everyone an opportunity to address the open |
| 25 | items. |

 1          Number one is the adoption of the special master findings

 2    by the Court, that is, the formal adoption, which I'm prepared

 3    to state on the record today, and I will issue a very short

 4    order.

 5          Number two is the status of the preliminary injunction,

 6    which is really just a report.

 7          And then with regards to Number 3 is the pending motion

 8    for default.  That raises some issues around service of the as

 9    yet non-appearing defendant.

10          And then Item 4, the motion -- Mr. Narancic's motion to

11    withdraw as counsel.

12          That's what I have on my list.  Any other open issues that

13    anyone is aware of?

14          **MR. STEELE:**  Your Honor, this --

15          **THE COURT:**  Mr. Steele?

16          **MR. STEELE:**  Yeah.  Thank you very much, Your Honor.

17          And if I may thank both the Court and Mr. Narancic for

18    being so flexible as to move the hearing to this afternoon.  I

19    truly appreciate that.

20          **THE COURT:**  Sure.  No problem.

21          **MR. STEELE:**  In addition to the preliminary injunction --

22    and it may well go hand in hand -- but the Court ordered, in

23    ECF 143, the schedule pertaining to the payment of the special

24    master --

25          **THE COURT:**  Uh-huh.

1    **MR. STEELE:**  -- the Court ordered as part of the parties'

2   stipulation that all of the defendants' domain names be

3   identified and transferred.

4        And the parties have gone -- we've (inaudible) telephone

5   calls about this.  But while defendants have identified most of

6   the domain names, they haven't transferred all of the ones that

7   we believe should be transferred pursuant to the court order.

8   And so that may well go hand in hand with the preliminary

9   injunction.

10       But if we can just have some -- have that on the agenda

11  somewhere, Your Honor.

12       **THE COURT:**  All right.  All right.  Let me just make a

13  note here.

14       All right.  Anything else, Mr. Narancic?  You don't have

15  to respond to that at this time.  I just want to know if you

16  have any other issues.

17       **MR. NARANCIC:**  No.  Thank you, Your Honor.

18       **THE COURT:**  Okay.  All right, then.  Let's start in at the

19  top of the list with regards to the special master's findings.

20  Those, of course, were filed on the public file at Docket 115,

21  and we held a status conference -- that was on July 12th.

22  I think that's right -- and we held a status conference on

23  July 20th.

24       And the parties, each side, represented to the Court that

25  they did not -- or would not be filing any objections to the

1    special master findings, and those are reflected in the

2    parties' filings at Docket 125 and 126.

3        So having no objections to the findings before the Court,

4    the Court finding no abuse of discretion by the special master,

5    pursuant to Rule 53(f), I am adopting the special master's

6    report at Docket 115.  I will issue a short order to that

7    effect so that the public file is clear.

8        All right.  That turns us, then, to the status on the

9    TRO/preliminary injunction at Docket 143.  That is the parties'

10   stipulation regarding same.

11       And as I understand -- as I read that document, the

12   parties have stipulated to a preliminary injunction,

13   essentially the terms of the TRO now becoming a preliminary

14   injunction with some modifications.  The parties agreed to

15   that, signed off on it, and I approved it.

16       So it sounds like -- excuse me -- there may be an issue on

17   closing out compliance with that.  I did see the list of names

18   that were transferred.  So why don't you bring me up to date on

19   that, Mr. Steele.

20       **MR. STEELE:**  Sure, Your Honor.

21       Mr. Narancic, in one of his court filings, included a list

22   of additional domain names that were held in OnlineNIC's, we'll

23   call it the corporate account.  And a number of those domain

24   names are not being used in connection with the day-to-day

25   operations of their business.

1      And we believe, pursuant to the Court's Order 143,

2  paragraph 2, the defendants will immediately investigate what

3  additional domain names they own.  And Mr. Narancic has done

4  that and provided an additional list to the Court.  And those

5  domain names should be transferred -- essentially, they should

6  be added to Exhibit 1 of the Court's order by the parties and

7  then transferred.

8      Plaintiffs recognize that in the preliminary injunction,

9  there's the expectation of the Court and the parties that

10  OnlineNIC will continue its day-to-day operations.  And so,

11  obviously, we wouldn't want to have one of the domain name

12  assets, onlinenic.com, for example, transferred, because that

13  would prohibit them from engaging in the day-to-day operations.

14      However, many of these domain names which Mr. Narancic has

15  identified back in -- I think it was July 30th, have nothing to

16  do with the day-to-day operations.  And pursuant to the order

17  and the parties' agreement, they should be transferred.

18      We spoke -- in fairness, we spoke again just before the

19  hearing with Mr. Narancic; and I think he's -- I think he's

20  indicated a willingness to go back to his client and make sure

21  that the domain names on that list are not part of the

22  day-to-day operations.

23      But, you know, we're certainly mindful that we're

24  ten-plus days in and this should have happened on Day 2.  And

25  given OnlineNIC's usual delay tactics, we think it's

1    appropriate for the Court to step in and ask the defendants to

2    honor the obligation and, frankly, the Court's order.

3         **THE COURT:**  Okay.  And what paragraph are you referring to

4    in Docket 143?  I just want to --

5         **MR. STEELE:**  Paragraph 2, Your Honor, on ECF page 2 of 4.

6         **THE COURT:**  Mm-hmm.

7         All right.  Mr. Narancic?

8         **MR. NARANCIC:**  I'll do my best, Your Honor, to address

9    that.

10        So I did speak to opposing counsel, and we certainly want

11   to resolve this in compliance with the Court order.

12        Let me preface this by saying that there is no doubt -- or

13   put it this way.  I've advised the defendants strongly and

14   warned them that they need to comply with the asset freeze,

15   including those domains in the so-called corporate account.

16   And this -- Your Honor, these were disclosed in ECF 145, on

17   page 3, a screenshot of all the domains in the corporate

18   account.

19        So as an initial matter, no doubt that these are captured

20   within the scope of the asset freeze and now the preliminary

21   injunction.  No doubt about that.  No doubt that they were

22   disclosed on July 30th, which is the date of ECF 145, and in

23   the statement of assets that was also filed.

24        The -- I think the question is -- and, again, I will

25   certainly go back to the client and confirm what they told me

in writing -- that the domains that were disclosed are part of their business or not.

    If the Court looks at paragraph 2 of 143, which is the provision that Mr. Steele referred to, paragraph 2 -- it's short, Your Honor.  I'll just read it so it's in the record.

    (Reading):

        "Defendants will immediately investigate whether they own any additional domain names.  They will disclose any such additional names to Plaintiffs within two business days, and the parties shall revise Exhibit 1 accordingly and lodge an updated version of that exhibit with the Court."

    So as Mr. Steele indicated, some imprecise drafting on our part because it was a late filing -- late-night filing.

    The question is what's within the scope of that.  Facebook agrees that onlinenic.com and domainidsheild.com, which are used in the day-to-day operations, was probably not within the contemplation of the parties to be transferred pursuant to paragraph 2.

    And so the only question is:  What else should be in there that is included in the screenshot that I -- that I inserted in paragraph -- that I inserted at ECF 145?

    So I can give an undertaking; then I'll go back and get a declaration from the client about what domains, if any, are being used in the day-to-day business.  And if they're not

1  being used in the course of the business, then they should be

2  duly transferred in accordance with paragraph 2.

3      Maybe some additional briefing is fair to flesh out the

4  apparent ambiguity in paragraph 2.  I'm happy to do that if

5  the Court thinks that would be helpful.

6      **THE COURT:**  So you referred to -- and I'm looking at the

7  screenshot in paragraph 145.  You referred to the onlinenic.com

8  and onlinenic.net at the bottom.  Is that right?

9      **MR. NARANCIC:**  I'm sorry, Your Honor.  I'm just opening it

10  up here.

11      **THE COURT:**  Oh, sorry.

12      **MR. NARANCIC:**  I need stronger glasses.

13      **THE COURT:**  Don't we all.

14      **MR. NARANCIC:**  And I'm sorry, Your Honor.  If they're --

15  if they appear at the bottom of the screenshot, those are the

16  ones I'm referring to.  They look like there are about maybe 15

17  or so, just eyeballing it.

18      **THE COURT:**  16, by my count.

19      **MR. NARANCIC:**  Okay.

20      **THE COURT:**  So it's your present position that there are

21  two of the 16 that are likely used for day-to-day operations.

22      **MR. NARANCIC:**  At a minimum.  At a minimum, onlinenic.com,

23  which is the second from the bottom.

24      **THE COURT:**  Right.

25      **MR. NARANCIC:**  Perhaps onlinenic.net.  I'll confirm that.

1    Domainidsheild.com, which is -- one, two, three, four, five,

2    fix, seven, eight --

3         **THE COURT:**  I see that.

4         **MR. NARANCIC:**  -- nine down.

5         Dns-diy.net, I believe, is used for day-to-day operations.

6         Some of the other domains here, I frankly don't know.  I

7    asked about intra, i-n-t-r-a, dot-com.  Some of these are

8    assets that the company either uses or plans to use, I'm told.

9         I think that's the most I can say without getting a

10   declaration from the client, Your Honor.

11        **THE COURT:**  Okay.  So what is your proposal, Mr. Narancic?

12        **MR. NARANCIC:**  Perhaps I could file a declaration from the

13   client identifying more clearly which of these domains are used

14   and how they're used.  That might be easier than doing some

15   full briefing.

16        **THE COURT:**  All right.  I'm making a couple notes here.

17        Okay.  And, Mr. Steele, that doesn't seem unreasonable.

18   We do need more information.  Appreciate the concern around

19   taking the defendants' word for it, but we have to start

20   somewhere.  And I do think it's appropriate to make an inquiry,

21   to direct Mr. Narancic to, again, advise his clients of the

22   consequences of not complying with the preliminary injunction,

23   and then see where we are from there.

24        **MR. STEELE:**  I agree, Your Honor, that Mr. Narancic's

25   proposal is reasonable.  I am a little concerned about the

1  plans-to-use scenario.  I think the parties' agreement and

2  the Court order was that when read (inaudible) their day-to-day

3  operations was part of the transfer.

4      And so when Mr. Narancic uses the phrase "plans to use,"

5  obviously, that's not a domain name that's part and parcel of

6  the day-to-day operations, and those names should be

7  transferred.

8      I am mindful, Your Honor, I mean, this is ten-plus days

9  in.  We've spoken -- Mr. Narancic and I have spoken a few times

10  on it.

11      We've run the report on these domain names and looked at

12  them.  Most of these names either don't resolve to any website

13  or simply have a "Coming Soon" page as well.  So my suspicion

14  is that most of these names are not part of the integral

15  day-to-day operations of the business and should be

16  transferred.

17      **THE COURT:**  Mm-hmm.

18      **MR. STEELE:**  And so perhaps we could agree that, absent a

19  strong showing from OnlineNIC that this is, in fact, part of

20  their day-to-day business, that pursuant to the court order,

21  paragraph 2, these names should be transferred.  The default

22  should be transfer.

23      And if OnlineNIC wants to move the ball up the hill and

24  show that these names are actually part of their day-to-day

25  operations, that would be fair.

1    But otherwise, we run the risk of renegotiating a

2  stipulation that was previously negotiated and agreed to.

3    **THE COURT:**  All right.  Well, I'm -- sounds like you are

4  prepared to respond to whatever declaration comes in, and

5  that's probably helpful information -- may be helpful

6  information for Mr. Narancic to be able to share with his

7  client that -- with the defendants that this can be -- can be

8  checked and the other side will bring evidence to the Court as

9  to what is used or not used.

10    So --

11    **MR. STEELE:**  Absolutely.  Although I must say, I'm not

12  sure that in this case, plaintiffs are ever prepared to respond

13  to what defendants put in.

14    But nonetheless, we'll look forward to his filing.

15    **THE COURT:**  I don't think that's necessary, Mr. Steele.

16    All right.  Let's do this.  Mr. Narancic, we are at

17  Tuesday, the 10th.  I'm going to give a pretty short leash for

18  you to work through this issue with your client, but what is

19  reasonable?  You've got to reach the right people.  I'm talking

20  a matter of days, not a matter of weeks.

21    **MR. NARANCIC:**  Of course.  Of course.  Could we do five

22  business days, Your Honor?

23    **THE COURT:**  We can do five business days.  So --

24    **MR. NARANCIC:**  Your Honor, that would be the 17th?

25    **THE COURT:**  Five business days.

1        **MR. NARANCIC:**  I'm mindful of the China difference in time

2   because I lose them on my Friday.

3        **THE COURT:**  Right.  So by August 17, court time, a

4   declaration --

5        **MR. NARANCIC:**  I'm sorry.

6        **THE COURT:**  -- declaration from defendant showing or

7   establishing which, if any, of the domain names at Docket 145

8   are used in day-to-day operations.  All right?

9        So the burden is on the defendant.  I want them to --

10  which ones did they claim are using and are, therefore, exempt

11  from the injunction, from Docket 143.

12       **MR. NARANCIC:**  May I make a submission?

13       So this is, unfortunately, a problem when things aren't

14  unambiguous.  I'll set forth briefly my understanding of the

15  situation, and then, obviously, the Court has to draw a

16  conclusion on what was meant or what should be meant by

17  paragraph 2.

18       There are certainly two domains, at least, that are --

19  three domains I think that I mentioned that are used in

20  so-called day-to-day operations; that is, the registration of

21  domain names.

22       In addition, there are other assets of the company that

23  are corporate assets that are potentially at play in a

24  proposed -- underline "proposed" -- acquisition of the company,

25  which goes to what the company was planning to do or what it is

1  planning to do in terms of other registration domain name

2  businesses.

3      It seems to me that there's an issue there about what

4  is day to day.  Perhaps instead of committing my client to a

5  position on this issue, perhaps we could start with the

6  declaration that the Court has proposed and sort of take it

7  from there in terms of what is meant -- what was meant by the

8  scope of paragraph 2.

9      **THE COURT:**  Well, that's -- we're getting that -- where is

10  the language with regards to the day-to-day operations?

11      **MR. NARANCIC:**  I'll leave it to Mr. Steele.  We have a

12  little disagreement on that, but I'll leave it to Mr. Steele

13  initially.

14      **MR. STEELE:**  Sure.  Yeah.  Thank you.

15      I think that's ECF 132, Your Honor.  And specifically,

16  paragraph 1 or Roman I, which starts on line 24 of page 1.

17      And I think this was envisioned when (inaudible)

18  stipulated that OnlineNIC should be entitled to continue its

19  day-to-day operations so it could generate --

20      **THE COURT:**  I'm sorry.  Give me the --

21      **MR. STEELE:**  Oh, I'm so sorry.

22      **THE COURT:**  That's all right.  Give me the paragraph

23  number again.

24      **MR. STEELE:**  So it's on the first page, Your Honor.  It's

25  Roman paragraph I.

1          **THE COURT:**  Mm-hmm.

2          **MR. STEELE:**  And it begins on line 24.

3          **THE COURT:**  Mm-hmm.  Okay.  All right.  So you're saying

4     this -- that's the asset freeze.

5          And then that was addressed in the parties' stipulation

6     in -- via paragraph 2?  Is that --

7          **MR. STEELE:**  In part, Your Honor, yeah.

8          I believe that it's appropriate to read the Document 143

9     in harmony with Document 132.  So we wouldn't have --

10    plaintiffs wouldn't have defendants transfer, for example,

11    onlinenic.com because we understand that there's a need for the

12    company to continue its day-to-day operations.

13         **THE COURT:**  Mm-hmm.  Just make a note here.

14         All right.

15    **MR. STEELE:**  I think I would -- if Your Honor may -- if I

16    may, I would add that we see -- other than those domain names

17    which are used for the day-to-day operations, we see no

18    difference between any of the domain assets which were

19    submitted by Mr. Narancic in his filing with any of the other

20    domain names that were submitted on Exhibit 1 to the order.

21         Those domain names that were submitted on Exhibit 1 was a

22    listing of domain names provided by defendants.  And our

23    concern was that that list might not have been accurate or

24    complete.  And so the language from paragraph 2 was

25    specifically envisioned to capture any additional domain names

```
 1    not on the list.
 2         And subsequent to that, they made a filing that said:  Oh,
 3    there's this other account of domain names.
 4         And our point is, that's exactly why paragraph 2 says "and
 5    all of your other domain names."
 6         THE COURT:  Okay.  All right.  Well, let's -- let's
 7    start --
 8         MR. STEELE:  Yes.
 9         THE COURT:  We have to start somewhere.
10         So -- and, Mr. Narancic, your proposal is a declaration
11    that identifies what exactly?
12         MR. NARANCIC:  That identifies in what manner these 16
13    domains are being used.  I think just a description of how
14    they're being used.  Sort of repeat that.
15         But, Your Honor, may I just make a submission in response?
16         THE COURT:  Just hang on, please.
17         All right.  Go ahead.
18         MR. NARANCIC:  Yeah.  No, I disagree with the -- that 132
19    modifies 143.
20         THE COURT:  I understand.  And we're going to get to that
21    issue -- go ahead; go ahead.  But we're not going to decide
22    that issue today.
23         MR. NARANCIC:  No, no, no.  But I'd be remiss if I didn't
24    say something.
25         THE COURT:  Go ahead.
```

1    **MR. NARANCIC:**  So very quickly, the -- there was an

2    arrangement, Your Honor, to -- the domains listed in Exhibit 1,

3    which were -- this is too much information -- which were

4    domains in an account called "Anthony," these domains were to

5    be sold to a third party for roughly $70,000.  Instead,

6    Facebook offered -- and we negotiated this -- to purchase the

7    same domain names in Exhibit 1 for 74,000 approximately.

8        So that was -- that was what was contemplated, I can tell

9    you, by the defendants; that this was an apples-to-apples

10   transaction.  Instead of selling the Anthony domains to X,

11   they'd be sold to Facebook.  So now we're expanding the scope

12   of Exhibit 1 with corporate assets.

13       And I'll just leave it there, Your Honor.  That is where

14   the -- where the dispute lies.

15       **THE COURT:**  All right.  All right.

16       **MR. STEELE:**  I would feel remiss, Your Honor, if I --

17       **THE COURT:**  Not necessary.  I'm not making any decisions.

18   Everybody (inaudible) their day.  Everyone has previewed issues

19   to come.

20       But let's start with -- let me just -- all right.

21       We need more information from the defendants, but it also

22   has to be helpful information.  So looking at the list in

23   Docket -- losing my document number here, but I've got it right

24   here.

25       So looking at the list in Docket 145, we need to hear from

defendants the use -- what use is being made or intended to be made of those names.

**MR. NARANCIC:**  Yes, Your Honor.

**THE COURT:**  And then we'll figure out where that falls with regards to the preliminary injunction.  So that's due on August 17th.

And with that information, Mr. Steele, if Facebook believes that the defendants are not in compliance with the injunction, then you can file something to that effect, in light of the information in the declaration or if you need more information or if you -- or if you're satisfied.

But if you want -- I'm looking at my calendar.  If you want to challenge that, then let's get that in front of me.  Is a week's time, is that fast enough for you, Mr. Steele?  We can set this on -- I have a week or ten days.

**MR. STEELE:**  We'd prefer the ten days, Your Honor.  I have a few things on my calendar on the 24th and '5th.

**THE COURT:**  All right.  All right.  Then by the 27th, Facebook can file -- if it believes that there is a violation of the injunction, as evidenced by the declaration, you can file that accordingly.

**MR. STEELE:**  Thank you.

**THE COURT:**  Not to exceed -- not to exceed eight pages. Not to exceed eight pages.  All right?

Mr. Narancic, if defendants wish to challenge that or

respond, then they can do so.  They have a week to do so.

        **MR. NARANCIC:**  Yes, Your Honor.

        **THE COURT:**  Friday, the 3rd.  We'll see where we are.
All right?

        Okay.  All right.  Well, so much for my prediction that
talking about the TRO to preliminary injunction was just a
report.  But good, that's why we have these -- this status
conference.

        And thank you both for your careful walk-through on that
and the reference to the docket numbers.  That makes it easy
for me to get up to speed quickly.

        Obviously, counsel has been talking and working through
this.  I would encourage you to continue to do that.  History
between the parties notwithstanding, given the current posture
of the case and where we're going in terms of next steps, it
would seem that the more that can be worked out through
negotiation, the better; the more fruitful for all concerned.

        All right.  Which brings us, then, to the pending motion
for default judgment, to which the appearing defendants have
filed a statement of non-opposition.  And it would appear, in
the normal course, that that would be then ready for -- there's
no reason not to grant or enter it.

        Does that comport with your understanding, Mr. Steele?

        **MR. STEELE:**  Yes, Your Honor.

        **THE COURT:**  And, Mr. Narancic?  Excuse me.

1    **MR. NARANCIC:** My sense is that -- I'm not sure what the

2    right word is. My sense is there shouldn't be an automatic

3    stamp on what the plaintiffs have submitted to the Court.

4    **THE COURT:** Oh, it's not automatic. The Court has to

5    review it to be sure it meets the standard.

6    **MR. NARANCIC:** Sure, sure. Okay. Well, then I agree,

7    Your Honor, it's ripe for adjudication.

8    **THE COURT:** All right. Better put. Thank you.

9    All right. Well, then that raises the issue -- brings

10   into very sharp focus the issue of the unserved defendant as to

11   35.CN, because the issue there is that the defendant is

12   unserved and, therefore, has not consented to the jurisdiction

13   of this Court, specifically to a magistrate judge as the

14   presiding judge over this matter.

15   So to enter -- for review and entry, the way this would

16   work is, I would review it and make a report and recommendation

17   to a district judge.

18   But the matter would then be referred to the district

19   judge and would leave this Court and be reassigned to a

20   district judge and take its rightful place on that docket.

21   So that's what's -- that's what will happen. Then you

22   won't be appearing before me anymore. Then this whole case

23   then goes to the -- goes to the district judge.

24   So if you want to keep -- Facebook, if it's your intention

25   to keep 35.CN in the case, then that will be how we will

1    proceed.

2        If you want to -- if you drop 35.CN, then the case stays

3    with me, and we, you know, continue as we are, and we get this

4    closed out as efficiently as possible but, obviously, with an

5    eye to the rights of all parties before the Court.

6        So Facebook, I don't know if you're prepared, if you have

7    a position, a definitive position today, or if you'd like a

8    few days to consult with your clients and then report back to

9    the Court.

10       **MR. STEELE:**  Thank you, Your Honor.

11       So I can say that Facebook and -- sorry -- Facebook and

12   Instagram, the other plaintiff, intend to continue its efforts

13   to serve 35.CN and to continue prosecuting the case against

14   35.CN.  And so we would expect that that's the case.

15       So that's the position as it stands today.  I don't expect

16   there'll be any change in that.

17       There is just one point as Your Honor discusses the

18   default judgment and permanent injunction.

19       Plaintiffs, in looking at the recent preliminary

20   injunction which the parties just agreed to, there were some

21   additional terms that were stipulated to by the parties in the

22   recent conversion to the preliminary injunction that were not

23   in plaintiffs' proposed order in its permanent injunction.

24       And so what we would like to do, Your Honor, is just

25   submit a revised proposed permanent injunction to incorporate

1   those additional terms.

2       I don't believe it'll be anything controversial, as these

3   are the terms that Mr. Narancic stipulated to in the

4   preliminary injunction that we'd be adding.  But I think for

5   completeness, it would make sense to do that, and we'd be happy

6   to submit a redline as well.

7       **THE COURT:**  Okay.  All right.  All right, then.

8       **MR. STEELE:**  If I may, Your Honor, procedurally, how would

9   you like that document to be filed?  Just as a supplemental

10  filing to the permanent injunction?

11      **THE COURT:**  Yeah.  It can be, you know, amended proposed

12  order or revised proposed order.  It should be titled as such

13  and just --

14      **MR. STEELE:**  Perfect.

15      **THE COURT:**  -- following the entry of Docket 143, which

16  followed, post-dated the motion for default.

17      We've adjusted the order.  But it should say that in it

18  and then be set forth.

19      **MR. STEELE:**  Thank you.

20      **THE COURT:**  Okay.  Then I will take on the -- pardon me;

21  my goodness -- take on the -- add the motion for default to my

22  list of pending -- pending motions and turn attention to that,

23  evaluate it properly, and then I will file an order requesting

24  reassignment and making a recommendation as to whether or not

25  it would be appropriate to enter default judgment at this time.

 1  I don't at this moment have an ETA on that.  I would certainly

 2  hope to get that out by the end of the month.

 3    **MR. STEELE:**  Your Honor, just one additional issue.

 4  Procedurally, the parties have an August 20th disclosure

 5  deadline for expert disclosures.  Would -- I suspect -- I

 6  haven't discussed this with Mr. Narancic, and I apologize.  But

 7  perhaps -- and it may not even be ripe to his clients.  But

 8  perhaps the Court could stay continued discovery in the case at

 9  this point.

10    **THE COURT:**  Yeah.  Any dates previously set are vacated,

11  other than the dates that relate to the current pending motions

12  before the Court.  And that includes the dates that we set here

13  today.

14    So, and I think also there's a hearing date next week or

15  the week after on the motion for default or motion to withdraw.

16  And those hearing dates are off for now.  And if we need -- as

17  we work through this, if we need hearing dates, we'll set them.

18  All right?

19    It may be that -- well, we'll see where -- we'll see where

20  we come out with regards to our recommendation on the motion

21  for default.

22    Okay.  And then last but not least, the pending motion to

23  withdraw as counsel.  I did receive all the papers,

24  Mr. Narancic's papers.  And I did receive an opposition to

25  that, which I have taken a look at.  Obviously, I'm -- and you

1   may well have an opportunity for a reply.  I can't remember

2   exactly where we are in the briefing, Mr. Narancic.

3       **MR. NARANCIC:**  It's due today, Your Honor.

4       **THE COURT:**  Okay.  All right.  Well, then we'll get off

5   the phone.

6       But here is my thinking on that, is that, obviously, the

7   standard; we've got issues of prejudice and delay, but we

8   also -- at some point in the foreseeable future, we'll have --

9   a default judgment will be entered in this case.

10      So what I'm going to do is continue that motion for now,

11  for another 30 days, pending if new counsel comes in.

12      I assume your request is still live, Mr. Narancic.

13      **MR. NARANCIC:**  Yes, Your Honor.

14      **THE COURT:**  All right.  But as we've discussed before, if

15  you were to leave the case, then we have corporate defendants

16  without legal representation, which creates additional issues.

17      So I don't know if this is a situation where the

18  defendants want to substitute in new counsel, but I'll give --

19  you know, we'll give them 30 days to do that.  We'll see where

20  they are.

21      My thinking or perhaps my recommendation, depending if

22  this motion stays with me or not, would be to allow only the

23  conditional withdrawal of counsel, in light of the

24  circumstances, in a way that would allow or require

25  Mr. Narancic, you to continue to accept service of whatever,

1   wherever we are in the proceedings if new counsel is not

2   identified.  But we're not there yet.

3       I'm going to continue the motion 30 days, but your reply

4   is still due today.  We'll get that fully briefed and on the

5   books.

6       **MR. NARANCIC:**  Your Honor, let's see.  I think I

7   understand.  I was going to suggest that I'd be fine staying on

8   in this case, given the circumstances, for an additional

9   30 days.

10      I think Your Honor's -- I think my motion is on for

11  August 31, and the Court's proposing continuing that hearing to

12  September 30th or so.  Is that right?

13      **THE COURT:**  Well, at least.  Again, really just kicking

14  the issue.  I'm kicking the issue down the road a little bit to

15  see if -- so that your client has an opportunity, if they want

16  to bring in new counsel, they can.  If they don't, then the

17  issue is fully briefed before me, and I think I can rule on it

18  without a hearing.

19      **MR. NARANCIC:**  Right.  I'm wondering if I can just

20  short-circuit it by proposing to the Court that I would

21  consent, for what it's worth, to stay in the case through

22  September 30th; waive a reply, with the condition that

23  the Court mentioned about forwarding service if new counsel

24  doesn't come in and giving the defendants, let's say, till

25  September 30th or so to find other counsel.

1    **THE COURT:**  What I'm --

2    **MR. NARANCIC:**  The reason I -- sorry, Your Honor.  One

3    more thing.

4    The reason I'm concerned about filing a reply is that in

5    these situations, an attorney is very circumscribed by what I

6    can say in a public filing.  What I've indicated to the Court,

7    as gently as I can, is that it's a request for withdrawal for

8    cause.  And for me to file a reply would get me a little bit

9    more into the facts.

10    **THE COURT:**  It's not required, Mr. Narancic.  You don't

11    have to file a reply.  I mean, you can -- you can not file it.

12    I have -- you know, I've heard from both sides.

13    But what I'm not willing to do, at least not at this

14    point, is I'm not going to set a date certain when you will be

15    out of the case because I remain concerned that for you to --

16    I'm not going to grant an unconditional withdrawal.  Not at

17    this point.  Not at this point.  That's (inaudible).

18    **MR. NARANCIC:**  I understand.  I understand.

19    So what I'll do, Your Honor, just I'll waive the reply,

20    just so the Court's aware of it.

21    **THE COURT:**  Okay.  The reply is waived.  That'll be

22    reflected in the minutes of today's proceedings.  So that's

23    fine.

24    And I will continue -- we will continue the hearing.

25    That's fine.  We can do it that way.  That way it's nice and

1    neat on our end.  We'll continue it to Tuesday, September 28th.

2    That would be on the 10:00 a.m. calendar.  Tuesday, the 28th,

3    at 10:00 a.m.

4        The matter is now considered fully briefed.  And if I

5    grant it outright, grant it with conditions, or deny it, we'll

6    take that up at that time.  All right?

7        **MR. NARANCIC:**  Thank you, Your Honor.

8        **MR. KROLL:**  Your Honor, if I may, I've been mulling this

9    over for a while since you raised the concept of transferring

10   this back to a district court, given the fact that 35.CN has

11   not yet been served.

12       And I question -- and I hate to do this because I don't

13   want to question your authority or the thought process that

14   went into this.  But I question whether it's necessary for you

15   to do that because the parties at issue in the case, for

16   purposes of determining the default judgment, are the parties

17   that have consented to you to rule on this matter.

18       **THE COURT:**  Unfortunately, the Ninth Circuit has the view

19   that in terms of entering a default judgment, that that is a

20   dispositive ruling, obviously; and any defendant in the case,

21   whether they have appeared yet or not, may be -- may be

22   prejudiced by that or impacted by it.  And so I cannot enter a

23   default judgment in any case unless I have full consent of all

24   the parties before me.

25       I appreciate that, Mr. Kroll.  And I would like if you'd

1  perhaps been in front of the Ninth Circuit in the *Williams*

2  case, now four years ago, three years ago, but you were not.

3      **MR. STEELE:**  Your Honor, if I can ask.  Would the issues

4  that are still remaining -- so, for example, we had discussed

5  Mr. Narancic's request to withdraw, the enforcement of

6  the Court's Order 143 that we talked about regarding the domain

7  names -- would those issues still stay before Your Honor?

8  Or --

9      **THE COURT:**  That depends.  That depends.  Everything that

10  is pending would go to the district judge.  The district judge

11  could have the option to refer certain matters back to me.

12  And, you know, so we'll -- TBD.  There's no -- there's nothing

13  automatic about it.

14      But, again, it will all move to a district judge's

15  calendar and schedule, so those things will be dealt with in

16  due course but on their timetable.

17      **MR. STEELE:**  Thank you.

18      **THE COURT:**  All right?

19      Facebook can -- if the case is well situated for it, it

20  may be a situation where you can sever a defendant and proceed

21  against them in a separate proceeding -- that is an option --

22  and then leave the case here with all consenting parties.  But

23  you have to look at that and see if you -- if you would be

24  satisfied with severance.  All right?

25      **MR. STEELE:**  Thank you.

1    **THE COURT:** So if that changes, I guess where I'm headed

2    is, I want you to let me know where you are with regards to the

3    status of 35.CN. And just for ease of calendaring, I'll give

4    you five business days to do that. So get back to me on the

5    17th.

6    **MR. STEELE:** Thank you, Your Honor.

7    **THE COURT:** Okay? And it's no problem. You're not

8    required to give consent. You don't get any demerits or

9    anything on the case or counsel or parties. Cases get

10   transferred and referred out from magistrate judges all the

11   time, particularly where there are multiple parties.

12   All right? Okay. We've got some issues percolating.

13   We've got a few things to address.

14   Mr. Narancic, you understand what to get to me.

15   And then I'll hear further from the parties thereafter

16   with regards to compliance with the injunction, and we'll go

17   from there. All right?

18   **MR. NARANCIC:** Thank you, Your Honor.

19   **THE COURT:** Anything further for today's proceedings?

20   Mr. Steele?

21   **MR. STEELE:** No, ma'am.

22   **THE COURT:** Mr. Narancic?

23   **MR. NARANCIC:** No. Thank you, Your Honor.

24   **THE COURT:** All right, then. That concludes this matter.

25   Thank you.

1    **MR. NARANCIC:**  Thank you.

2    **MR. STEELE:**  Thank you, Your Honor.

3    **THE CLERK:**  Thank you.

4              (Proceedings adjourned at 2:48 p.m.)

5                    ---o0o---

6

7              **<u>CERTIFICATE OF TRANSCRIBER</u>**

8

9        I, ANA DUB, CSR NO. 7445, RDR, RMR, CRR, CCRR, CRG, CCG,

10   certify that the foregoing is a true and correct transcript, to

11   the best of my ability, of the above pages of the official

12   electronic sound recording provided to me by the U.S. District

13   Court, Northern District of California, of the proceedings

14   taken on the date and time previously stated in the above

15   matter.

16       I further certify that I am neither counsel for, related

17   to, nor employed by any of the parties to the action in which

18   this hearing was taken; and, further, that I am not financially

19   nor otherwise interested in the outcome of the action.

20

21   DATE:  Wednesday, August 11, 2021

22

23

24   _____

25        Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG