Perry J. Narancic, SBN 206820
LEXANALYTICA, PC
3000 El Camino Real
Bldg. 4, Suite 200
Palo Alto, CA 94306
www.lexanalytica.com
pjn@lexanalytica.com
Tel: 650-655-2800

Attorneys for Defendants
ONLINENIC, INC. and DOMAIN ID SHIELD SERVICE CO., LIMITED

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC<br><br>            Plaintiffs,<br><br>     v.<br><br>ONLINENIC, INC. and DOMAIN ID SHIELD SERVICE CO., LIMITED.<br><br>            Defendants. | Case No. 19-CV-07071-SVK<br><br>**DEFENDANTS' STATEMENT RE DKT. NO. 153.** |

      Pursuant to the Court's direction at Dkt. No. 153, OnlineNIC, Inc. and Domain ID Shield Service Co., Limited ("Defendants"), provide this statement concerning certain domains owned or controlled by OnlineNIC, Inc.

      OnlineNIC owns or controls domains in two buckets: (a) a corporate account that contains 16 domains (the "Corporate Domains") and (b) other domains that are used primarily for parking revenue (the "Anthonny Domains"). Declaration of Carrie Yu in Support of Defendants' Statement Re Dkt. No. 153 ("Yu Decl."), ¶ 2. The Anthonny Domains were disclosed to Plaintiffs in discovery responses in 2020, and they appear at Dkt. No. 129-2. Yu Decl, ¶ 3.

      In order to pay the Special Master in this case, Defendants solicited, and received, an offer from a buyer in July 2021 to purchase the Anthonny Domains for $70,000. Instead of selling the

- 1-

Anthony Domains to this buyer, OnlineNIC decided to sell the Anthony Domains to Facebook, Inc. on the terms set forth in the Stipulation at Dkt. No. 141. Yu Decl., ¶ 4-5.

It was never OnlineNIC's intention, and OnlineNIC never agreed, to sell the Corporate Domains under the Stipulation. Rather, OnlineNIC was only doing an "apples-to-apples" sale, such that Facebook, Inc. was acquiring only the same assets that were to be purchased by the previous potential buyer i.e. the Anthony Domains. Yu Decl, ¶ 6.

On July 21, 2021, in the course of negotiating a sale of the Anthony Domains in order to pay the Special Master, Defendants' counsel sent a letter to stating that only the Anthony Domains would be sold:

> Also, as discussed, Defendants will agree to deliver control over domain names that it controls to a neutral third-party, so that they can be sold and the proceeds used to pay the Special Master. If you have a proposal on such a neutral third-party, please let me know. For your reference, I attach a spreadsheet with the domain names that are currently registered to "Anthonny".

See Declaration of Perry J. Narancic in Support of Defendants Statement Re Dkt. No. 153, ¶ 2. Later on July 21, Plaintiffs filed their application for an asset freeze, at Dkt. No. 129. Notably, the asset freeze application only refers to the impounding of the "Defendant's' Domains Names" which were listed at Dkt. No. 129-2 i.e. the Anthony Domains"

> business (e.g., renewing customer domain names, paying for servers, paying any employees). Defendants, as well as their officers, agents, servants, employees, or attorneys, or any other person who is in active concert or participation with them, *shall not* transfer, dissipate, abscond, hide, secret away, borrow against, or pledge any of Defendants' assets, including by:
>
> a)   Transferring, releasing, deleting, or assigning any domain names owned or controlled by Defendants, including but not limited to the domain names listed in Exhibit 1 to the Steele Declaration (the "Defendants' Domain Names");

- 2-

Facebook, Inc. v. OnlineNIC, Inc.                                                    Case No. 19-cv-7071-SVK
Declaration of Carrie Yu ISO Defendants' Statement Re Dkt. No. 153

The fact that Plaintiffs only wanted to impound the Anthony Domains is also supported by the fact that opposing counsel at the case management hearing on August 10, 2021 stated that the parties never intended that all domains be transferred to Plaintiffs under Section 2 of the Stipulation. Accordingly, OnlineNIC never intended to sell the Corporate Domains – it only intended to sell the Anthonny Domains that were the subject of Plaintiffs' own asset freeze application at Dkt. No. 129.

The Corporate Domains are either used in Defendants' day to-day operations, or they are corporate assets that are intended to be used for the purpose of expanding Defendants' business, or selling the business as a going concern (subject to the present asset freeze injunction). Yu Decl, ¶ 7. A list of the Corporate Domains and their use is provided below:

| | Domain | Use |
|---|---|---|
| 1 | modulesky.com | Not in current use. Planned use for viewing, and downloading API documentation. |
| 2 | domain-reminder.com | Currently being used to send out various email notification, such as expiration reminder, transfer-out, whois accuracy reminders. |
| 3 | onlinenicssl.com | Not currently in use. Planned for URL forwarding service for ssls.top. |
| 4 | ssls.top | No currently in use. Planned use for an SSL business website, mainly for end user market. |
| 5 | idc-internet.com | Currently in use for shared hosting web interface, the link is https://host106.idc-internet.com:2083/ by which the customers can login to manage their hosted sites. |
| 6 | domainwhois-verification.com | Currently in use for whois verification link when a domain name is registered successfully. For instance, after a domain name is registered, the system will send an confirmation email to its registrant email address, and the registrant needs to click the link 'http://www.domainwhois-verification.com/whois_verification.php?code=551106&mids=07f6a14b1a2ab33b04b883793e8219e4&t=1630471746' in that email to confirm the email address of domain name. |
| 7 | 4mail.science | Currently in use for mail spf extended record. An SPF record or SPF TXT record is a record that is part of a domain's DNS — similar to a DMARC record. It contains a list of all IP addresses that are permitted to send email on behalf of a domain. |
| 8 | sekas.net | Used (info@sekas.net) to receive SSL billing notification from SSL Certificate Authority. |
| 9 | domainidshield.com | Domain ID Shield's corporate website. |

- 3-

| 10 | dns-diy.net | Currently used for domain's DNS service for customers' domain names, for instance, to set up A/CNAME/TXT |
|---|---|---|
| 11 | onlinenic.us | Not currently in use, but planned for additional corporate website url. |
| 12 | intra.com | Not currently used, but planned for a consumer-focused domain name registrar to be operated by OnlineNIC.. |
| 13 | olnic.com | Not currently in use. Short-form of OnlineNIC's corporate domain. |
| 14 | olnic.net | Not currently in use. Short-form of OnlineNIC's corporate domain. |
| 15 | onlinenic.com | OnlineNIC corporate website. |
| 16 | onlinenic.net | Currently used for interrupting DNS of expired domains. When a domain name expires, the program changes the domain name's DNS pair to ns2/ns3.onlinenic.net so the domain will be down and the customer knows that the domain name is expired. |

Finally, pursuant to the Court's direction, Defendants state that Defendants do not have any formal knowledge of the status of unserved Defendants 35.com. However, based on Carrie Yu's inquiries, 35.CN has not yet been served. Yu Decl, ¶ 8.

DATED:  August 17, 2021

Respectfully Submitted,

LEXANALYTICA, PC

By:  /s/ Perry J. Narancic

Attorneys for Defendants
ONLINENIC, INC. and DOMAIN ID SHEILD SERVICE CO., LIMITED

- 4-

Facebook, Inc. v. OnlineNIC, Inc.                                    Case No. 19-cv-7071-SVK
Declaration of Carrie Yu ISO Defendants' Statement Re Dkt. No. 153