**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Liana W. Chen (Bar No. 296965)
Ruben Peña (Bar No. 328106)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com
liana@KRInternetLaw.com
ruben@KRInternetLaw.com

Specially Appearing as Attorneys for
Defendant Xiamen 35.com Technology Co., Ltd.
(erroneously sued as Xiamen 35.com Internet Technology Co., Ltd.)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **FACEBOOK, INC.**, et al., | Case No. 3:19-cv-07071-SI |
| Plaintiffs, | |
| v. | **DEFENDANT XIAMEN 35.COM TECHNOLOGY CO., LTD.'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6) AND 12(b)(2); MEMORANDUM OF POINTS AND AUTHORITIES** |
| **ONLINENIC INC.**, et al., | |
| Defendants. | |

Date:      November 5, 2021
Time:      10:00 a.m.
Ctrm:      1 — 17th Floor
Before:    Judge Susan Illston

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on November 5, 2021 at 10:00 a.m., in the above-titled Court, in Courtroom 1, 17th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Xiamen 35.com Technology Co., Ltd. ("35.CN" or "Defendant") will and hereby does move this Court to dismiss the Second Amended SAC ("SAC") of Facebook, Inc. and Instagram, LLC ("Plaintiffs") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim and 12(b)(2) for lack of personal jurisdiction.

Years after filing this case and aggressively litigating against the original Defendants OnlineNIC Inc. ("OnlineNIC") and Domain ID Shield Service Co. Limited ("ID Shield"), Plaintiffs now seek to hold 35.CN, a Chinese cloud services provider, liable for the same unsupported claims involving 35 allegedly infringing domain names ("Domain Names") that were registered by third-party customers of the other Defendants. To date, Plaintiffs have offered nothing more than the most conclusory allegations that OnlineNIC and ID Shield registered, trafficked in, or used the Domain Names or Plaintiffs' trademarks in commerce or in bad faith. Even further removed, Plaintiffs have not adequately pled (nor could they) that 35.CN is liable as an "alter ego" of OnlineNIC or ID Shield, including as Plaintiffs have failed to allege (and cannot show) any fraud or injustice resulting from recognizing these entities' separate corporate identities. Thus, Plaintiffs fail to state any viable claim against 35.CN. Moreover, there is no basis for personal jurisdiction as to 35.CN (which is a Chinese company with no connection to the Domain Names) under an alter ego theory or otherwise.

This motion is based on this notice of motion and motion, the supporting memorandum of points and authorities and declarations, the pleadings and other papers on file in this action, and any other evidence that may be offered at a hearing if necessary. Respectfully Submitted,

Dated: September 28, 2021

**KRONENBERGER ROSENFELD, LLP**

By: ___s/ Karl S. Kronenberger_____

Karl S. Kronenberger

Attorneys for Defendant Xiamen 35.com Technology Co., Ltd.

1

**DEFENDANT'S NTC OF MTN AND MTN TO DISMISS; MPA**

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

STATEMENT OF ISSUES ............................................................................................. 3

STATEMENT OF FACTS............................................................................................... 3

   A. Background of 35.CN. ......................................................................................... 3

      1. 35.CN's Business Operations ........................................................................ 3

      2. 35.CN's Lack of Connections with this Forum............................................. 4

      3. Separation Between 35.CN and Other Defendants ....................................... 5

   B. Procedural History............................................................................................... 5

ARGUMENT.................................................................................................................... 6

   A. Standards of Review. ........................................................................................... 6

      1. Rule 12(b)(6) for Failure to State a Claim. ................................................... 6

      2. Rule 12(b)(2) for Lack of Personal Jurisdiction. ......................................... 7

   B. Overview of Domain Name Registration and Other Defendants. ........................ 8

      1. Domain Name Registration Generally............................................................ 8

      2. The Actual Registrants of the Domain Names. .............................................. 9

      3. ID Shield is a Privacy Service Only, Thus Not Subject to RAA 3.7.7.3 ........ 10

   C. The SAC fails to state a viable claim against 35.CN ......................................... 11

      1. 35.CN is immune from liability as a registrar in this context. ....................... 12

      2. Plaintiffs fail to state a claim for cybersquatting ........................................... 13

         i. Plaintiffs fail to adequately allege that ID Shield or OnlineNIC "registers, traffics in, or uses" the Domain Names; and thus, 35.CN cannot be liable under an "alter ego" or similar theory ...................................................... 13

         ii. Plaintiffs fail to allege any "bad faith intent to profit"................................ 14

      3. Plaintiffs fail to state any other claim under the Lanham Act........................ 15

         i. Plaintiffs fail to allege Defendants used their marks for commerce.......... 15

         ii. Plaintiffs fail to allege a sufficient basis for secondary liability ................. 16

   D. The Court lacks personal jurisdiction over 35.CN............................................. 17

      1. There is no general jurisdiction over 35.CN, including because its place of incorporation and principal place of business are outside of California......... 18

      2. There is no specific jurisdiction over 35.CN because it did not purposefully direct any activities at California, the case is not related to forum contacts, and exercise of jurisdiction would be unreasonable. .......................................................... 18

         i. 35.CN did not purposefully direct its activities towards California, regardless of Plaintiffs' contacts or contracts, under either an analysis of 35.CN's direct contacts or an indirect "alter ego" theory..................... 19

a.  Plaintiffs fail to show any direct contacts ...................................... 19

b.  Plaintiffs fail to show indirect "contacts" where Plaintiffs have not and cannot adequately allege alter ego liability as connections do not rise to the level of a "unity of interest," and no "fraud or injustice" would result from this case.................................................................. 20

1.  There is no unity of interest involving 35.CN .......................... 20

2.  Plaintiffs have failed to establish fraud or injustice ................. 21

ii.  The claims do not arise out of 35.CN's activities in California ........... 22

iii.  Exercising personal jurisdiction over 35.CN would be unreasonable, including considering the high bar for an international party ............. 23

CONCLUSION ........................................................................................ 25

1

# TABLE OF AUTHORITIES

## Cases

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
 368 F.3d 1174 (9th Cir. 2004)................................................................ 17

*Adidas Am., Inc. v. Cougar Sport, Inc.*,
 169 F. Supp. 3d 1079 (D. Or. 2016) ...................................................... 19

*Amoco Egypt Oil Co. v Leonis Navigation Co.*,
 1 F.3d 848 (9th Cir. 1993) ............................................................... 23, 24

*Asahi Metal Indus. Co., Ltd. v. Superior Court*,
 480 U.S. 102 (1987) ............................................................................... 24

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................. 6, 7

*Ballard v. Savage*,
 65 F.3d 1495 (9th Cir. 1995) ................................................................ 23

*Balsam v. Tucows, Inc.*,
 627 F. 3d 1158 (9th Cir. 2010) ............................................................. 20

*Bank of America, N.A. v. Knight*,
 725 F3d 815 (7th Cir. 2013) ................................................................... 7

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ................................................................................ 6

*Bosley Med. Inst., Inc. v. Kremer*,
 403 F. 3d 672 (9th Cir. 2005) ............................................................... 15

*Credit Lyonnais Sec. (USA), Inc. v. Alcantara*,
 183 F.3d 151 (2d Cir. 1999) .................................................................... 8

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014) ................................................................. 18, 20, 24

*DaimlerChrysler v. The Net Inc.*,
 388 F.3d 201 (6th Cir. 2004) ................................................................ 13

*Dent v. Lotto Sport Italia SpA*,
 No. CV-17-00651-PHX-DMF, 2020 WL 1170840 (D. Ariz. March 11, 2020) .............. 15

*DeSoto v. Yellow Freight Sys., Inc.*,
 957 F.2d 655 (9th Cir. 1992) .................................................................. 7

*Gibson Brands, Inc. v. Viacom Int'l, Inc.*,
 640 Fed. Appx. 677 (9th Cir. 2016) ...................................................... 15

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
 284 F.3d 1114 (9th Cir. 2002).............................................................. 24

*Godecke v. Kinetic Concepts, Inc.*,
 937 F.3d 1201 (9th Cir. 2019)................................................................. 6

*GoPets Ltd. v. Hise*,
 657 F.3d 1024 (9th Cir. 2011)......................................................... 14, 15

*Holland America Line Inc. v. Wärtsilä North America, Inc.*,
 485 F.3d 450 (9th Cir. 2007) ................................................................ 18

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
 27 F. Supp. 3d 1002 (N.D. Cal. 2014) .................................................. 23

*In re NVIDIA Corp. Secur. Litig.*,
 768 F.3d 1046 (9th Cir. 2014)................................................................. 7

*Incipio, LLC v. Argento Sc By Sicura Inc.*,
   No. SACV1701974AGKESX, 2018 WL 4945002 (C.D. Cal. July 18, 2018) ............... 21
*Interstellar Starship Services, Ltd v. Epix, Inc.*,
   304 F.3d 936 (9th Cir. 2002) ................................................................................ 13
*Jiangsu Hongyuan Pharm. Co. v. DI Glob. Logistics Inc.*,
   159 F. Supp. 3d 1316 (S.D. Fla. 2016) ................................................................. 25
*Kremen v. Cohen*,
   337 F.3d 1024 (9th Cir. 2003) ................................................................................. 9
*Laub v. U.S. Dep't of Interior*,
   342 F.3d 1080 (9th Cir. 2003) (noting discovery may be granted ............................. 8
*Lockheed Martin Corp. v. Network Sols., Inc.*,
   141 F. Supp. 2d 648 (N.D. Tex. 2001) ............................................................. 12, 13
*Lockheed Martin Corp. v. Network Solutions, Inc.*,
   194 F. 3d 980 (9th Cir. 1999) ............................................................................... 16
*Lockheed Martin Corp. v. Network Solutions, Inc.*,
   985 F. Supp. 949 (C.D. Cal. 1997) ....................................................................... 16
*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
   647 F.3d 1218 (9th Cir. 2011).................................................................................. 8
*MH Pillars Ltd. v. Realini*,
   No. 15-CV-1383-PJH, 2017 WL 916414 (N.D. Cal. Mar. 8, 2017).............................. 20
*Morrill v. Scott Fin. Corp.*,
   873 F.3d 1136 (9th Cir. 2017)................................................................................ 19
*Mujica v. AirScan Inc.*,
   771 F.3d 580 (9th Cir. 2014) ................................................................................ 24
*NuCal Foods, Inc. v. Quality Egg LLC*,
   887 F. Supp. 2d 977 (E.D. Cal. 2012) ............................................................. 20, 22
*Off. Depot Inc. v. Zuccarini*,
   596 F.3d 696 (9th Cir. 2010) .................................................................................. 9
*Pac. Mar. Freight, Inc. v. Foster*,
   No. 10-CV-0578-BTM-BLM, 2010 WL 3339432 (S.D. Cal. Aug. 24, 2010) ............... 22
*Pacific Atlantic Trading Co. v. M/V Main Express*,
   758 F.2d 1325 (9th Cir. 1985)............................................................................... 23
*Panavision Int'l, L.P. v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998) ............................................................................... 19
*Papasan v. Allain*,
   478 U.S. 265 (1986) .............................................................................................. 6
*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   494 F. 3d 788 (9th Cir. 2007) .......................................................................... 16, 17
*Petroliam Nasional Berhad v. GoDaddy.com, Inc.*,
   737 F.3d 546 (9th Cir. 2013) .......................................................................... 12, 14
*Petroliam Nasional Berhad v. GoDaddy.com, Inc.*,
   897 F. Supp. 2d 856 (N.D. Cal. 2012) .................................................................. 8, 9
*Prime Healthcare Centinela, LLC v. Kimberly-Clark Corp.*,
   No. CV148390DMGPLAX, 2016 WL 7177532 (C.D. Cal. May 26, 2016).................... 17
*Rano v. Sipa Press, Inc.*,
   987 F.2d 580 (9th Cir. 1993) ................................................................................ 24
*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015).............................................................. 7, 17, 20, 21

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

*Rearden LLC v. Rearden Com., Inc.*,
  683 F.3d 1190 (9th Cir. 2012)...................................................................... 15
*Rigsby v. GoDaddy Inc.*,
  No. CV-19-05710-PHX-MTL, 2021 WL 2416829 (D. Ariz. June 14, 2021).................. 12
*Riley v. St. Luke's Episcopal Hosp.*,
  355 F.3d 370 (5th Cir. 2004) ..........................................................................7
*Sandoval v. Ali*,
  34 F. Supp. 3d 1031 (N.D. Cal. 2014) ........................................................... 21
*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ......................................................... 8, 17, 19
*Solid Host, NL v. Namecheap, Inc.*,
  652 F. Supp. 2d 1092 (C.D. Cal. 2009) ................................................... 13, 14
*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ...........................................................................7
*Stewart v. Screen Gems-EMI Music, Inc.*,
  81 F. Supp. 3d 938 (N.D. Cal. 2015) .............................................................. 22
*Surillo-Ruiz*,
  76 F. Supp. 3d 381 (D. P.R. 2015) ....................................................................7
*Thompson v. Ill. Dep't of Prof. Regulation*,
  300 F.3d 750 (7th Cir. 2002) ...........................................................................7
*United States ex rel. Silingo v. Wellpoint, Inc.*,
  904 F.3d 667 (9th Cir. 2018) ...........................................................................7
*United States ex rel. Swoben v. United Healthcare Ins. Co.*,
  848 F.3d 1161 (9th Cir. 2016).........................................................................7
*Walden v. Fiore*,
  571 U.S. 277 (2014) ...................................................................................... 19
*Williams v. Yamaha Motor Co.*,
  851 F.3d 1015 (9th Cir. 2017) .................................................................. 19, 20
*XR Commc'ns, LLC v. Ruckus Wireless, Inc.*,
  No. SACV1700596AGJCGX, 2018 WL 3156851 (C.D. Cal. Mar. 30, 2018) .............. 22
*Young v. Actions Semiconductor Co.*,
  386 F. App'x 623 (9th Cir. 2010)................................................................... 23

## Statutes

15 U.S.C. §1114, et seq..................................................................... 5, 12, 15
15 U.S.C. §1125, et seq...............................................................................*passim*

## Rules

Fed. R. Civ. Proc. 12(b)(2) ...................................................................*passim*
Fed. R. Civ. Proc. 12(b)(6) ...................................................................*passim*

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## INTRODUCTION

3    Pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(2), this case should

4    be dismissed as to Defendant Xiamen 35.com Technology Co., Ltd. (i.e., 35.CN), a

5    company in Xiamen, China, for failure to state a claim and lack of personal jurisdiction.

6    Defendant 35.CN is a public company in China, which for years has provided

7    internet and cloud computing services to Chinese customers under Chinese laws. As part

8    of its services, 35.CN has registered as an accredited domain name registrar to facilitate

9    third-party registrations of Chinese domain names from registries. 35.CN was not and is

10   not the registrar for any of the Domain Names at issue. (SAC Ex. 7.)

11   Plaintiffs assert claims against OnlineNIC (the Domain Names' registrar), ID Shield

12   (the "Privacy Service"), and 35.CN (the purported "alter ego") based on the third-party

13   registration of Domain Names that allegedly infringe Plaintiffs' trademarks. In doing so,

14   Plaintiffs attempt to overturn years of precedent providing immunity for domain registrars.

15   Furthermore, Plaintiffs' Second Amended Complaint ("SAC") is a house of cards built on

16   key legal misassumptions, which, when discounted after careful analysis of the SAC and

17   its voluminous Exhibits, leave the SAC without any cognizable legal claim.

18   Domain name registrars are not required to police their customers' use of third-party

19   domain names. Rather, rightsholders (like Plaintiffs) can obtain a court order against the

20   registrant or the domain itself; and once a registrar is presented with such an order, it must

21   comply with that decision under its Registrar Accreditation Agreement ("RAA," SAC, Ex. 4)

22   with ICANN. Instead of using this well-established process of suing the actual registrants

23   of the Domain Name ("Registrants")[1], Plaintiffs have sued Defendants on the baseless

24   theory that ID Shield and its purported alter egos "accepted" liability for the Registrants'

25   conduct under the RAA by failing to disclose Registrants' contact information within seven

26   ────────────────

27   [1]Plaintiffs misleadingly call these Domain Name Registrants the "Licensees"; however, these third-party Registrants own and control the Domain Names, and thus it is legally impossible for them to obtain a license to the domain name property that they in fact own and which the registrars and privacy service never owned or controlled.

28

1          **DEFENDANT'S NTC OF MTN AND MTN TO DISMISS; MPA**

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

days of receiving evidence of harm. However, the SAC fails because that provision of the RAA, Section 3.7.7.3 (SAC Ex. 4) only applies to "Proxy Services" (which own and license domain names to customers) and <u>not</u> to "Privacy Services" such as ID Shield (which do not own or license domain names but merely provide "Privacy Services"). Furthermore, the RAA explicitly states that no third-party beneficiary rights shall be created by the agreement, i.e., Plaintiffs (who were not parties to the RAA) cannot base liability on, or assert they have standing under, the RAA. In summary, Plaintiffs' allegations are contrary to established safeguards for domain name registrars and, if approved by the Court, threaten the existence of all domain name registrars.

35.CN moves to dismiss the SAC for two reasons. First, the Court should dismiss the SAC for failure to state a claim. Defendants have immunity in this case,[2] and there are insufficient allegations that any Defendant, and especially 35.CN, registered, used, or trafficked in the Domain Names or otherwise used Plaintiffs' trademarks with a bad faith intent to profit or in commerce. While Plaintiffs lump the alleged conduct of all Defendants and the third-party Registrants together, Plaintiffs cannot avoid the clear statements in their SAC Exhibits, which demonstrate that none of the named Defendants registered or used the Domain Names or Plaintiffs' marks. Nor did any Defendant agree to accept liability for claims arising from third-party registered domain names. For these reasons, Plaintiffs have failed to adequately allege a claim against any Defendant, including 35.CN.

Second, the Court should dismiss the SAC for lack of personal jurisdiction. Rather than outlining 35.CN's contacts with the forum, Plaintiffs argue the Court has jurisdiction over 35.CN because (1) 35.CN is supposedly an alter ego of the other Defendants, (2) "Defendants" purportedly targeted Plaintiffs in California, and (3) Defendants agreed to a California forum selection clause in "one or more" contracts. (SAC ¶¶14–15 & Ex. 1.) Plaintiffs' arguments fail because Plaintiffs have not adequately alleged that 35.CN is the

---

[2] Just as telephone service providers are not liable for illegal phone call scams, and internet service providers are not responsible for spam emails, domain name registrars and related providers such as ID Shield and OnlineNIC are immune from ordinary registration of domain names by their customers; and 35.CN was not even the registrar in this case.

**DEFENDANT'S NTC OF MTN AND MTN TO DISMISS; MPA**

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

alter ego of the other Defendants, jurisdictional contacts are not created based on Plaintiffs' location, and the RAA (or other contract) is not a basis for Plaintiffs to sue in this forum. Further, any request for jurisdictional discovery must be denied where after years of litigation involving significant party discovery about supposed "alter egos," Plaintiffs still cannot plausibly allege, and have not obtained evidence supporting, an alter ego claim.[3]

The time and money spent on this case is perplexing given the lack of liability and the lack of bad faith profits from the use of Plaintiffs' trademarks. If anything, this case is far more suitable for resolution under the streamlined Uniform Domain-Name Dispute-Resolution Policy ("UDRP") without further wasting Court and party resources. In either case, 35.CN is not a proper party to this case, and 35.CN requests that the Court rule on its motion without further discovery, given the history of Plaintiffs (a billion-dollar enterprise) leveraging their ability to outspend Defendants in litigation in order to gain a strategic advantage in litigation. Because there is no likelihood of being able to cure the SAC's defects, the SAC should be dismissed as to 35.CN with prejudice.

## STATEMENT OF ISSUES

Should the SAC be dismissed as to Defendant 35.CN under Rule 12(b)(6) for failure to state a claim and/or Rule 12(b)(2) for lack of personal jurisdiction?

## STATEMENT OF FACTS

### A.    Background of 35.CN

#### 1.    35.CN's Business Operations

Defendant 35.CN is a public company in Xiamen, Fujian Province in China that is registered in China and organized under the laws of China. (Declaration of Zhang Weiwei ("Weiwei Decl.") ¶2.) 35.CN was established in 2004 and provides cloud computing, application software, email hosting, and business homepage building services as well as domain name and customer relationship management system ("CRM") services. (Weiwei

---

[3] Plaintiffs have not alleged a basis for jurisdictional discovery in this case. Even though Plaintiffs have already conducted expansive discovery against OnlineNIC and ID Shield, further discovery is not appropriate as 35.CN did not register the Domain Names at issue or control the OnlineNIC or ID Shield registration database or email repository.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   Decl. ¶2.) As part of its services, 35.CN is an ICANN-accredited registrar and assists

2   customers with registering domain names; customers use 35.CN's system and services in

3   Chinese and make payment with Chinese currency. (Weiwei Decl. ¶3.)

4         35.CN observes corporate formalities, such as through ordinary business filings of

5   public companies in China, and it is adequately capitalized. (Weiwei Decl. ¶7; Declaration

6   of Perry J. Narancic ("Narancic Decl.") ¶¶5–6 & Exs. C–D.)

7         **2.**    **35.CN's Lack of Connections with this Forum**

8         35.CN lacks contacts in California and the United States. (Weiwei Decl. ¶4.)  35.CN

9   does not have any offices, employees, owners, directors, agents, accounts, assets,

10  servers, or business in California or even the United States. (Weiwei Decl. ¶4.)  After years

11  of expansive discovery of 35.CN's purported "alter egos" (OnlineNIC and ID Shield),

12  including voluminous written discovery and depositions, Plaintiffs still cannot allege any

13  direct contacts between 35.CN and this forum.  Importantly, 35.CN did not register the

14  Domain Names, nor did 35.CN serve as the registrar for the Domain Names (Weiwei Decl.

15  ¶6; *see* SAC Ex. 7), nor are OnlineNIC or ID Shield the registrants of the Domain Names;

16  rather, the Domain Names were registered and owned by third-party Registrants, i.e.,

17  customers of the other Defendants. (SAC ¶¶28, 56 & Ex. 7.)

18        Plaintiffs allege, vaguely, that "Defendants" entered one or more contracts whereby

19  the parties to the agreements submitted to the Court's jurisdiction. (SAC ¶15 & Ex. 1.) First,

20  Plaintiffs cite to Exhibit 1, which is a Domain Name Registration Agreement involving

21  OnlineNIC and users of OnlineNIC's domain name registration services; nothing in this

22  contract references or otherwise applies to 35.CN. Second, Plaintiffs attach Exhibit 4,

23  which is a template RAA with ICANN, which Plaintiffs claim was agreed to by registrars.

24  This agreement expressly states in section 7.5: "No Third-Party Beneficiaries. This

25  Agreement shall not be construed to create any obligation by either ICANN or Registrar to

26  any non-party to this Agreement, including any Registered Name Holder." While 35.CN is

27  a party to the RAA with ICANN, that agreement is just with ICANN and (1) facilitates

28  35.CN's business outside of the United States, and (2) is separate from OnlineNIC's RAA

         4        **DEFENDANT'S NTC OF MTN AND MTN TO DISMISS; MPA**

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   with ICANN. (Weiwei Decl. ¶4; Narancic Decl. ¶4 & Ex. B [PMQ Depo.] at 32:18–25.)

2       **3.   Separation Between 35.CN and Other Defendants**

3       35.CN's public company filings show that 35.CN and OnlineNIC are separate

4   companies and have been since 2007 when 35.CN sold its interest in OnlineNIC. (Weiwei

5   Decl. ¶5; Narancic Decl. ¶¶5–6 & Exs. C–D [public filings and translation]).

6       Currently (and at all relevant times), the business relationship between 35.CN and

7   OnlineNIC is that 35.CN merely provides facilities and services to OnlineNIC through an

8   outsourcing agreement. (Narancic Decl. ¶3 & Ex. A [OnlineNIC's First Amended

9   Responses to Plaintiff Facebook, Inc.'s First Set of Interrogatories, No. 9].). 35.CN does

10  not control, manage, or run the operations or decisions of OnlineNIC or ID Shield, and

11  35.CN did not participate in the actions of OnlineNIC or ID Shield as alleged in the SAC;

12  and neither OnlineNIC nor ID Shield control the decisions or agreements of 35.CN. (Weiwei

13  Decl. ¶5.) 35.CN and OnlineNIC do not share the same domain name registration database

14  (35.CN's registration database is located in China). (Weiwei Decl. ¶8.) Moreover, while

15  35.CN's office space is in the same building as OnlineNIC, they are on different floors along

16  with multiple companies. (Weiwei Decl. ¶9; Narancic Decl. ¶4& Ex. B [PMQ Depo].)

17  **B.   Procedural History**

18      The original Complaint was filed against OnlineNIC and ID Shield on October 28,

19  2019. [D.E. 1.] After years of litigation and discovery involving those two original

20  Defendants, the SAC was filed on June 1, 2021. [D.E. 109.] Plaintiffs (Facebook and

21  Instagram) allege cybersquatting under the Anticybersquatting Consumer Protection Act

22  ("ACPA") and infringement, false advertising, and dilution under the Lanham Act, 15 U.S.C.

23  §§1114, 1125, relating to various Domain Names (registered by the third-party Registrants)

24  that are purportedly similar to Plaintiffs' trademarks (such as "FACEBOOK" and

25  "INSTAGRAM"). (SAC ¶¶56, 76–137.) Defendant 35.CN and OnlineNIC are domain name

26  registrars in China and California, respectively, and ID Shield is a domain privacy service

27  that Plaintiffs allege is an alter ego of OnlineNIC. (SAC ¶43.) With its most recent

28  allegations, Plaintiffs also allege that 35.CN is an alter ego of OnlineNIC and thus subject

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   to jurisdiction in this Court based on OnlineNIC's connections to California. (SAC ¶55.)

2       Prior to Defendant 35.CN being named, there was substantial discovery, including

3   document productions and depositions. [*See e.g.*, D.E. 55 ¶8 (outlining a production of

4   over 28,000 documents by OnlineNIC), 118 ¶2 (noting depositions); Narancic Decl. ¶2.] In

5   particular, in a deposition of the person most qualified of OnlineNIC (Carrie Yu), on July

6   13, 2021, when questioned about 35.CN's assets in the U.S., Ms. Yu testified that "35.CN

7   only has RAA in the United States"; and Plaintiffs' exhibits included the Initial Public

8   Offering (Chinese and Translated Versions) of 35.CN, which outline that 35.CN sold its

9   interest in OnlineNIC in 2007. (Narancic Decl. ¶¶5–6 & Exs. C–D.) Despite meritorious

10  defenses, Plaintiffs' unrelenting litigation tactics and other issues forced Defendants

11  OnlineNIC and ID Shield to stop defending this case. [D.E. 118 ¶1; D.E. 131-1 ¶¶4–5.][4]

12                                  **ARGUMENT**

13  **A.    Standards of Review**

14      **1.    Rule 12(b)(6) for Failure to State a Claim**

15      A Rule 12(b)(6) dismissal can be based on the lack of a cognizable legal theory or

16  the absence of sufficient facts alleged under a cognizable legal theory. *Godecke v. Kinetic*

17  *Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019). A pleading must "contain either direct

18  or inferential allegations respecting all the material elements necessary to sustain recovery

19  under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007). "A

20  pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

21  cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

22  550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as

23  a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265,

24  286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further

25  factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather,

26  _____

27  [4] *Compare* the Federal Trade Commission's recent amended antitrust complaint against
    Facebook for its illegal "buy-or-bury" scheme in which it has been taking out alleged

28  competitors, *available at* https://www.ftc.gov/news-events/press-releases/2021/08/ftc-
    alleges-facebook-resorted-illegal-buy-or-bury-scheme-crush (Aug. 19, 2021).

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    a claim must be "plausible on its face," meaning that the claimant must plead sufficient

2    factual allegations to "allow the court to draw the reasonable inference that the defendant

3    is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

4         In particular, in pleading a claim against multiple defendants, a plaintiff must

5    adequately identify each individual defendant's culpable conduct; defendants cannot

6    simply be grouped together in a claim without some specification as to which defendant is

7    responsible for which wrong. *See e.g., United States ex rel. Silingo v. Wellpoint, Inc.,* 904

8    F.3d 667 (9th Cir. 2018) (finding that when defendants engage in different wrongful

9    conduct, plaintiffs must differentiate their allegations); *Bank of America, N.A. v. Knight*, 725

10   F3d 815, 818 (7th Cir. 2013). *Compare United States ex rel. Swoben v. United Healthcare*

11   *Ins. Co.*, 848 F.3d 1161 (9th Cir. 2016). Likewise, the complaint must "plausibly connect"

12   each defendant to the alleged claims for relief. *See Vázquez v. Surillo-Ruiz*, 76 F. Supp.

13   3d 381, 393 (D. P.R. 2015).

14        For purposes of a motion to dismiss, complaint exhibits are part of the "complaint."

15   *See In re NVIDIA Corp. Secur. Litig.,* 768 F.3d 1046, 1051 (9th Cir. 2014). Notably, the

16   court must disregard allegations in a complaint if they are contradicted by facts established

17   by reference to documents attached as exhibits to the complaint. *See Sprewell v. Golden*

18   *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Thompson v. Ill. Dep't of Prof.*

19   *Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) (noting the exhibit trumps the allegations);

20   *United States ex re. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004).

21   Where modification could not cure the deficiencies in a pleading, i.e., where amendment

22   would be futile, a Rule 12(b)(6) motion is properly granted without leave to amend. *See*

23   *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

24        **2.    Rule 12(b)(2) for Lack of Personal Jurisdiction**

25        "In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the

26   plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*,

27   793 F.3d 1059, 1068 (9th Cir. 2015). While uncontroverted allegations in a complaint are

28   taken as true, a plaintiff cannot simply rest on the bare allegations of a complaint, and

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  courts need not assume the truth of allegations in a pleading that are contradicted by

2  affidavit. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011);

3  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

4  Where, as here, the court is asked to rule on the theory of jurisdictional allegations

5  (which could include an alter ego theory), the court determines whether the facts alleged,

6  if true, are sufficient to establish jurisdiction; no evidentiary hearing, factual determination,

7  or discovery is necessary for that purpose. *See Credit Lyonnais Sec. (USA), Inc. v.*

8  *Alcantara*, 183 F.3d 151, 153 (2d Cir. 1999). *C.f. Laub v. U.S. Dep't of Interior*, 342 F.3d

9  1080, 1093 (9th Cir. 2003) (noting discovery may be granted where facts are controverted).

10  In this case, the SAC should be dismissed as to 35.CN due to the failure to state

11  any viable claim as to 35.CN under Rule 12(b)(6) and for lack of personal jurisdiction under

12  Rule 12(b)(2). Plaintiffs' tenuous allegations, which lump separate companies and third

13  parties (which could not plausibly be engaged in the exact same conduct) together, are

14  contrary to legal standards and common sense regarding the domain name registration

15  process and immunity for registrars under these circumstances. Thus, relief is proper.

16  **B.     Overview of Domain Name Registration and Other Defendants**

17  Plaintiffs' SAC Exhibits and a basic understanding of the domain name registration

18  process demonstrate how Plaintiffs fail to state a valid claim and fail to make a prima facie

19  showing of personal jurisdiction through direct contacts or an indirect "alter ego" theory.

20  **1.     Domain Name Registration Generally**

21  The rights to domain names are sold to the public (i.e., to "registrants") in a process

22  known as "domain name registration." *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*,

23  897 F. Supp. 2d 856, 859 (N.D. Cal. 2012), *aff'd*, 737 F.3d 546 (9th Cir. 2013).

24  Domain name "registries" are the entities responsible for maintaining the master list of

25  all domain names. *Id.* A person who registers a domain name does so through

26  a domain name "registrar" (such as Go Daddy, OnlineNIC, or 35.CN). *Id.* The registrar is

27  the designated intermediary between the domain name registrant and registry. *Id.*

28  Registrars are accredited by the Internet Corporation for Assigned Names and Numbers

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

("ICANN"), the international non-profit corporation that has been designated by the United States government to manage and coordinate domain names and IP Addresses. *Id*. The registrar's participation in this process is entirely automated. *Id*.  Put differently, registrars do not "own," "sell," or "register" domain names registered by their customers (the "registrants") but instead permit registrants to purchase domain names for a time.

Under ICANN rules, the "registrant" (also known as the "Registered Name Holder") is only the person or entity that holds the rights in and to a domain name[5], which is personal property under Ninth Circuit law. *See Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003); *Off. Depot Inc. v. Zuccarini*, 596 F.3d 696, 698–99 (9th Cir. 2010). In other words, the named "registrant" listed in public WHOIS records is not necessarily the legal "registrant" of a domain name. For example, in the registrar accreditation agreement between ICANN and registrars (the RAA), ICANN provides for two ways in which companies can offer privacy services to customers, thereby protecting the private contact details of registrants: i) registrars may offer a "Privacy Service" whereby the registrar's (or a third-party Privacy Service's) contact information appears in WHOIS database records while the registrant remains the true owner and "registrant" in control of the domain names (SAC Ex. 4); or ii) registrars may offer "Proxy Services," whereby the registrar registers and takes legal ownership of the customer's domain name but licenses the domain name back to the registrant such that the registrant can use domain name. (D.E. 109-4 at 59 & SAC Ex. 4 [RAA and Specifications].)

### 2. The Actual Registrants of the Domain Names

Plaintiffs allege that at least thirty-five Domain Names were "registered, used, or trafficked in" that were identical or confusingly similar to Plaintiffs' trademarks. (SAC ¶56.) As Plaintiffs are well-aware and indicate, the third-party Registrants (which Plaintiffs mistakenly call "Licensees") were the actual "registrants" of the Domain Names. (*See* SAC ¶¶27–28, 71 & Ex. 4 [RAA and Specifications].) Importantly, Plaintiffs admit that 35.CN did not register the Domain Names (SAC ¶¶28, 42, alleging that OnlineNIC and/or ID Shield

[5]https://www.icann.org/resources/pages/faqs-84-2012-02-25-en#4.

registered the Domain Names for third-party "Licensees"). Furthermore, Plaintiffs' Exhibits to the SAC clarify that no Defendant, including 35.CN, has ever owned or licensed the Domain Names on behalf of Registrants. (SAC Exs. 4–7, e.g., confirming "Privacy Services" do not own or license domain names to customers).

As shown by the SAC and prior filings by OnlineNIC, the third-party Registrants were responsible for registering the Domain Names but did not necessarily use those Domain Names for any unlawful purpose, if at all (e.g., domain names may have been registered in an automated manner simply due to an expiration of the domain name by another user); as one example, a UK company domain name registrant, Lockspin UK Ltd., admitted that one of its Domain Names, TrollfaceBook.com, pointed to a website that contained an "internet meme" that had "nothing to do with Facebook." [D.E. 146 ¶¶5–6 & 146-3; SAC 56 ¶31 & Ex. 8.] As other examples, in SAC Exhibit 8, certain Domain Names were "parked" (i.e., not used in commerce), used for websites that were completely unrelated to Plaintiffs (i.e., not infringing or unlawful), or used to describe services related to the Facebook platform (i.e., subject to a fair use defense); for other Domain Names, Plaintiffs simply show an "alert" page but no actual use in commerce. The SAC has no specific factual allegation to support the claim that the Domain Names were owned or controlled by any of the Defendants. Further, Plaintiffs were on actual notice of at least some of the true Domain Name Registrants prior to the filing of the SAC.

### 3.   ID Shield is a Privacy Service Only, Thus Not Subject to RAA 3.7.7.3

Contrary to Plaintiffs' allegations, ID Shield was never the "registrant" or "registered name holder" of any Domain Name, as it is only a "Privacy Service" that did not hold any property or other rights in the Domain Names.[6] In fact, Plaintiffs concede that ID Shield is a "domain name privacy service" for "OnlineNIC's customers." (SAC ¶10.) Pursuant to the RAA Specifications attached as Exhibit 4 to the SAC, a "Privacy Service" is not the "registrant" of a domain name but is merely used for alternative contact information (SAC Ex. 4, D.E. 109-4 at 59), and alternatively, a "Proxy Service" is indeed the "registrant" of a

---

[6] https://www.icann.org/resources/pages/faqs-84-2012-02-25-en#4.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

domain name, owns the domain name, and licenses the domain name to its customers. Privacy Services and Proxy Services are thus mutually exclusive alternatives for protecting the privacy of customers, as demonstrated by the exact provisions of the RAA:

> 1.2 "Privacy Service" is a service by which a <u>Registered Name is registered to its beneficial user</u> as the Registered Name Holder, but for which alternative, reliable contact information is provided by the P/P Provider for display of the Registered Name Holder's contact information in the Registration Data Service (Whois) or equivalent services. (emphasis added)

> 1.3 "Proxy Service" is a service through which a Registered Name Holder licenses use of a Registered Name to the P/P Customer in order to provide the P/P Customer use of the domain name, and the Registered Name Holder's contact information is displayed in the Registration Data Service (Whois) or equivalent services rather than the P/P Customer's contact information.

OnlineNIC's website (SAC Ex. 5) is consistent with the fact that it offers Privacy Services and not Proxy Services, as only a Privacy Service provides for the customer to maintain ownership of their domain name:

> OnlineNIC ID Shield makes your privacy possible while maintaining your ownership over your domain . . . Although the whois information shows our information, <u>you retain full ownership of the domain. You have complete control over the domain, you manage all facets of the domain</u>. (emphasis added)

Likewise, the ID Shield terms (SAC Ex. 6) reinforce how its services are Privacy Services: "You will retain the right to sell, transfer, or assign each IDS Domain."

Under Section 3.7.7.3 of the RAA, a registered name holder that "intends to <u>license use of a domain name</u> to a third party . . . <u>shall accept liability</u> for harm . . . unless it discloses the current contact information provided by the licensee and the identity of the licensee within seven (7) days." (SAC Ex. 4.) Conversely, a Privacy Service never owns the domain names of its customers and thus cannot provide any license to its customers, making Section 3.7.7.3 of the RAA and its seven-day rule inapplicable to Privacy Services.[7]

Plaintiffs allege that OnlineNIC, the registrar, was an "alter ego" of ID Shield.

//

---

[7] Further, the RAA explicitly states no third-party beneficiary rights shall be created, so Plaintiffs do not even have standing to allege rights under the RAA. (SAC Ex. 4.)

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

**C.      The SAC fails to state a viable claim against 35.CN.**

The SAC should be dismissed for failure to state a claim. As an initial matter, 35.CN cannot be liable for the claims at issue because the SAC fails to adequately allege sufficient claims against ID Shield or OnlineNIC. Further, 35.CN was not the registrant or even the registrar for the Domain Names at issue. Without explaining what party took what action, Plaintiffs lump together all their allegations against 35.CN (a Chinese public company with diverse interests), OnlineNIC (a domain name registrar), ID Shield (a domain name privacy service), and the third-party Registrants (who actually registered the Domain Names). This shotgun pleading is improper as it makes it impossible for Defendants to determine what factual allegations give rise to what claims against which particular parties. Regardless of the inappropriate pleading, Plaintiffs' claims against 35.CN fail where Plaintiffs have not alleged that any Defendant used Plaintiffs' marks in commerce.

**1.      35.CN is immune from liability as a registrar in this context.**

There is no trademark cause of action against a domain name registrar acting in its capacity as a registrar. *See* 15 U.S.C. §1114(2)(D)(iii) (outlining immunity absent bad faith intent to profit); *Lockheed Martin Corp. v. Network Sols., Inc.*, 141 F. Supp. 2d 648, 655 (N.D. Tex. 2001);  *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546, 551 (9th Cir. 2013) ("the limitations on secondary liability in Section 1114 are equally consistent with the existence or absence of a cause of action for contributory cybersquatting under Section 1125(d)"); *Rigsby v. GoDaddy Inc.*, No. CV-19-05710-PHX-MTL, 2021 WL 2416829, at **3–4 (D. Ariz. June 14, 2021) (citing cases confirming registrars did not "use" domain names under the Lanham Act). In other words, domain name registrars do not "register, traffic in, or use" domain names based on their customers' registrations. *See Petroliam Nasional Berhad*, 737 F.3d at 550–54 (noting there is no secondary or contributory liability of domain name registrars); *Facebook v. Namecheap, Inc.*, Case No. 2:20-cv-00470-GMS, D.E. 52, p. 9:11–21 (finding plaintiffs failed to sufficiently allege that Namecheap used, registered, or trafficked in the infringing domain names where the allegations "only refer to how licensees used the domain names"). Similarly, under the RAA

1  Specifications (SAC Ex. 4), a "Privacy Service" (contrasted with a "Proxy Service") does

2  not actually control or license use of domain names and thus does not accept any liability

3  for customers' domain names under the RAA.

4       Because there is safe-harbor protection for domain name registrars like 35.CN (as

5  well as OnlineNIC and privacy services such as ID Shield), there can be no direct liability

6  for trademark claims, and the SAC must be dismissed without leave to amend.

7       **2.**       **Plaintiffs fail to state a claim for cybersquatting.**

8       To state a valid claim of cybersquatting under the ACPA, the plaintiff must allege

9  (1) it has a valid trademark; (2) its mark is distinctive or famous; (3) the defendant's domain

10  name is identical or confusingly similar to, or in the case of famous marks, dilutive of, the

11  owner's mark; and (4) the defendant "registers, traffics in, or uses" the domain name (5)

12  and has a bad faith intent to profit from the mark. 15 U.S.C. §1125(d)(1)(A); *Interstellar*

13  *Starship Services, Ltd v. Epix, Inc.*, 304 F.3d 936, 946 (9th Cir. 2002); *DaimlerChrysler v.*

14  *The Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004).

15       Plaintiffs have not adequately pled the fourth and fifth elements (registration or use

16  and bad faith) as to 35.CN beyond unreasonable inferences and conclusory legal

17  allegations cast in the form of factual allegations, which this Court need not accept. Thus,

18  the first cause of action must be dismissed.

19       **i.**      **Plaintiffs fail to adequately allege that ID Shield or OnlineNIC**

20             **"registers, traffics in, or uses" the Domain Names; and thus, 35.CN**

21             **cannot be liable under an "alter ego" or similar theory.**

22       Plaintiffs fail to allege facts showing that ID Shield or OnlineNIC "registers, traffics

23  in, or uses" the Domain Names. First, the "word 'registers,' when considered in context,

24  obviously refers to a person who presents a domain name for registration, not to the

25  registrar." *Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092, 1104 (C.D. Cal. 2009)

26  (quoting *Lockheed Martin Corp. v. Network Solutions, Inc.*, 141 F. Supp. 2d 648, 650–51

27  (N.D. Tex. 2001). Second, the ACPA defines "trafficking in" to mean "transactions that

28  include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

currency, and any other transfer for consideration or receipt in exchange for consideration." 15 U.S.C. §1125(d)(1)(E). Third, the ACPA imposes liability on persons who "use" an infringing domain name "only if that person is the domain name registrant or that registrant's authorized licensee." 15 U.S.C. §1125(d)(1)(D).

Plaintiffs' ACPA claim fails because it does not sufficiently allege that 35.CN, ID Shield, or OnlineNIC registered, trafficked in, or used the Domain Names. Although Plaintiffs improperly lump together allegations against all Defendants and the third-party Registrants (which Plaintiffs call the "Licensees," despite no license referenced in any of the documents at issue), the SAC Exhibits confirm that the third-party Registrants (customers of other Defendants) "registered," owned, and retained control over the Domain Names (while using ID Shield contact information on WHOIS records), and that only the Registrants, if anyone, could have "trafficked in" or "used" the Domain Names. (SAC Exs. 4–7.) Thus, Plaintiffs' allegations are insufficient to state a claim against ID Shield and, by consequence, against its claimed alter egos OnlineNIC and 35.CN.

### ii.    Plaintiffs fail to allege any "bad faith intent to profit."

The bad faith required to support a cybersquatting claim is not general bad faith, but a bad faith intent to profit from the mark. 15 U.S.C. §1125(d)(1)(A)(i); *see also Solid Host, NL*, 652 F. Supp. 2d at 1110 (finding provision of a privacy service and refusing to reveal its customers' identity did not constitute a bad faith intent to profit from the goodwill of another's mark under the ACPA), *declined to follow on other grounds by Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546 (9th Cir. 2013); *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1030 (9th Cir. 2011). Courts may consider various factors in reviewing "bad faith," such as bona fide noncommercial or fair use, intent to divert customers from the mark owner's website, an offer to transfer or sell the domain name to the mark owner or a third party for financial gain, and the provision of material and misleading false contact information (i.e., more than use of a privacy service); bad faith intent is not found in any case where the person had reasonable grounds to believe the use of the domain name was fair use or otherwise lawful. 15 U.S.C. §1125(d)(1)(B)(i)–(ii).

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    Here, Plaintiffs fail to allege sufficient facts showing any intent by Defendants to

2    profit from their marks. Instead, it was the Registrants who registered (but did not

3    necessarily "use") the Domain Names, such as to create "meme" or "parking" websites

4    (without evidence of bad faith intent to profit, e.g., domains may have been picked up after

5    the expiration of the prior owner's registration). There are insufficient allegations of bad

6    faith against ID Shield (first, because it did not, and could not, accept liability for the Domain

7    Names under the RAA as it was merely a "Privacy Service," rather than a "Proxy Service";

8    and second, because purportedly failing to reveal its customers' identities within a seven-

9    day period does not rise to the level of "bad faith"). Even further removed, there are

10   insufficient allegations of bad faith intent by OnlineNIC or 35.CN to profit from the goodwill

11   of Plaintiffs' marks. In fact, Plaintiffs fail to allege any facts showing that 35.CN intended to

12   profit from Plaintiffs' marks at all (because no such facts exist). For these reasons, the SAC

13   fails to state a valid ACPA claim and should be dismissed.

14          **3.      Plaintiffs fail to state any other claim under the Lanham Act.**

15          To allege claims for trademark infringement, false designation of origin, and dilution,

16   Plaintiffs must sufficiently allege that 35.CN used Plaintiffs' trademarks in commerce in

17   connection with the sale or advertising of goods or services. 15 U.S.C. §§1114(1)(a),

18   1125(a)(1); *see also Gibson Brands, Inc. v. Viacom Int'l, Inc.*, 640 Fed. Appx. 677, 678 (9th

19   Cir. 2016); *Bosley Med. Inst., Inc. v. Kremer*, 403 F. 3d 672, 677 (9th Cir. 2005) (use of

20   mark must be "in connection with a sale of goods or services"). Because Plaintiffs fail to

21   make these allegations or outline any facts to justify secondary liability, and because no

22   such facts exist, the SAC should be dismissed.

23          **i.      Plaintiffs fail to allege Defendants used their marks in commerce.**

24          Under the Lanham Act, "a mark shall be deemed to be in use in commerce . . . when

25   it used or displayed in the sale or advertising of services and the services are rendered in

26   commerce." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1204 (9th Cir. 2012).

27   "Registration of a domain name without more [is not sufficient and] does not constitute

28   service mark or trademark infringement." *GoPets*, 657 F.3d at 1035; *see Dent v. Lotto*

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

*Sport Italia SpA*, No. CV-17-00651-PHX-DMF, 2020 WL 1170840, *12 (D. Ariz. March 11, 2020) (registrant who did not market or sell goods or services in connection with infringing domains did not use marks in commerce or violate Lanham Act); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 961 (C.D. Cal. 1997) ("Where domain names are used to infringe, the infringement does not result from [the registrar's] publication of the domain name list, but from the registrant's use of the name on a Web site or other Internet form of communication in connection with goods or services.").

The SAC lacks allegations of Defendants' "use" of Plaintiffs' marks in commerce. First, the third-party Registrants did not use marks in commerce simply by registering the Domain Names. Second, ID Shield and OnlineNIC did not use any marks in commerce by allowing their customers to register Domain Names. Third, the SAC is devoid of any allegations that 35.CN itself used the marks in commerce in connection with the sale or advertisement of any goods or services; and 35.CN cannot be liable under an "alter ego" theory because the allegations are insufficient to state a claim against ID Shield and OnlineNIC in the first instance. Therefore, because Plaintiffs fail to allege the requisite element of a "use in commerce" by any Defendant, and especially 35.CN, Plaintiffs' Lanham Act claims must be dismissed in their entirety and at least as to 35.CN.

### ii. Plaintiffs fail to allege a sufficient basis for secondary liability.

The Lanham Act authorizes two forms of secondary liability: contributory and vicarious liability. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F. 3d 788, 807 (9th Cir. 2007). Plaintiffs fail to allege either form, and the SAC should be dismissed.

First, contributory liability requires that the defendant "intentionally induced" third party's infringement or "direct[ly] control[led] and monitor[ed]" the instrumentality used. *Id.* at 807. Domain name registrars do not typically have the required level of "direct control and monitoring" over their customers to support a claim for contributory infringement. *See e.g.*, *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F. 3d 980, 985 (9th Cir. 1999) ("NSI cannot reasonably be expected to monitor the Internet") (quoting *Lockheed Martin I*, 985 F. Supp. at 962). Plaintiffs fail to show that OnlineNIC and ID Shield had the requisite

16

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   control of the third-party Registrants; and Plaintiffs do not, and cannot, allege that 35.CN

2   had the ability to control and monitor use of the Domain Names by their Registrants (who

3   were not 35.CN's customers). (Weiwei Decl. ¶¶5–6.) Thus, there is no claim under the

4   Lanham Act for contributory liability.

5       Second, vicarious trademark liability requires a defendant and infringer to have an

6   apparent or actual partnership, authority to bind one another, or joint ownership or control

7   over the infringing product. *Perfect 10*, 494 F. 3d at 807. Plaintiffs plead no such allegations

8   here. Thus, each of Plaintiffs' claims against 35.CN fail on the face of the SAC.

9   **D.    The Court lacks personal jurisdiction over 35.CN.**

10      The SAC should be dismissed as to 35.CN for lack of personal jurisdiction under

11  Rule 12(b)(2). Plaintiffs bear the burden of showing that personal jurisdiction is permitted

12  by the local long-arm statute, and that the exercise of that jurisdiction does not violate

13  federal due process. *See Schwarzenegger*, 374 F.3d at 800–01. Personal jurisdiction must

14  be established for each defendant and by each plaintiff. *Prime Healthcare Centinela, LLC*

15  *v. Kimberly-Clark Corp.*, No. CV148390DMGPLAX, 2016 WL 7177532, at *1 (C.D. Cal.

16  May 26, 2016); *see also Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174,

17  1180 (9th Cir. 2004) ("Personal jurisdiction must exist for each claim asserted against a

18  defendant."). Where a motion to dismiss for lack of personal jurisdiction is based on written

19  submissions, the plaintiff must make a prima facie showing of jurisdictional facts including,

20  if applicable, facts supporting an alter ego theory. *See Ranza*, 793 F.3d at 1068.

21      Plaintiffs cannot establish jurisdiction over 35.CN under either a conventional or

22  alter ego analysis, including because Plaintiffs cannot show any fraud or injustice that will

23  result from dismissal. Moreover, there is no specific personal jurisdiction based on 35.CN's

24  contacts, and Plaintiffs do not and cannot allege the requisite contacts with this forum. In

25  particular, Plaintiffs allege that 35.CN is responsible for the actions of OnlineNIC and ID

26  Shield under an alter ego theory. (SAC ¶¶11–12, 44–55.) Plaintiffs' argument fails. First,

27  because ID Shield cannot accept liability as a "Privacy Service," there can be no

28  attributable liability to OnlineNIC or subsequently to 35.CN under an alter ego theory.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

Further, there is no secondary liability against 35.CN under an alter ego theory because, contrary to Plaintiffs' claims, 35.CN does not control the decisions of OnlineNIC and ID Shield, and neither OnlineNIC nor ID Shield control the decisions or agreements of 35.CN. (Weiwei Decl. ¶5.) Notably, Plaintiffs fail to allege (and have no facts to support) that OnlineNIC and ID Shield did not observe corporate formalities or were inadequately capitalized so as to create a fraud or injustice required for alter ego liability. While Plaintiffs outline a number of claimed judgments against OnlineNIC, including a purported $33.15 million judgment not issued on the merits (SAC ¶61), Plaintiffs notably omit any financial allegations, such as about the lack of OnlineNIC's or ID Shield's finances, undercapitalization, or commingling of funds, to support any "alter ego" theory.

**1.     There is no general jurisdiction over 35.CN, including because its place of incorporation and principal place of business are outside California.**

To establish general personal jurisdiction, a plaintiff must allege facts demonstrating that a defendant has substantial, continuous, and systematic contacts with the forum so as to render it "essentially at home" in the forum. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).  With respect to a corporation, the place of incorporation and principal pla**c**e of business are paradigmatic bases for jurisdiction. *Daimler AG*, 571 U.S. at 137; *Holland America Line Inc. v. Wärtsilä North America, Inc.*, 485 F.3d 450, 459 (9th Cir. 2007).

Here, 35.CN is a Chinese company organized under Chinese laws; and Plaintiffs do not allege any place of incorporation, principal place of business, or any direct contacts of 35.CN in California. (*See* SAC ¶11; Weiwei Decl. ¶¶2–4.) Thus, 35.CN is not "at home" in California, and this Court lacks general personal jurisdiction over it.

**2.     There is no specific jurisdiction over 35.CN because it did not purposefully direct any activities at California, the case is not related to forum contacts, and exercise of jurisdiction would be unreasonable.**

Courts in the Ninth Circuit employ a three-prong test when determining whether a nonresident defendant may be subject to specific personal jurisdiction in a forum: (1) the defendant must have purposefully directed its activities or purposefully availed itself of the

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1 benefits afforded by the forum's laws; (2) the claim must arise out of or relate to the

2 defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with

3 fair play and substantial justice. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th

4 Cir. 2017); *Schwarzenegger*, 374 F.3d at 802. None of the requirements is met here.

5    **i. 35.CN did not purposefully direct its activities towards California,**

6      **regardless of Plaintiffs' contacts or contracts, under either an**

7      **analysis of 35.CN's direct contacts or an indirect "alter ego" theory.**

8      **a. Plaintiffs fail to show any direct contacts.**

9    The "purposeful direction" test applies where the claims arise from tortious conduct.

10 *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017); *see also Adidas Am., Inc.*

11 *v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1087 (D. Or. 2016) (purposeful direction

12 applies to trademark claims). To establish purposeful direction, a plaintiff must show that

13 the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, and

14 (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Morrill*,

15 873 F.3d at 1142. Simply registering someone else's trademark as a domain name and

16 posting a website is not sufficient to subject a party domiciled in one state to jurisdiction in

17 another. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998).

18    Plaintiffs allege no intentional conduct by 35.CN aimed at California. Regardless of

19 where Plaintiffs are located, this prong is not met. To clarify, the personal jurisdiction

20 analysis "looks to the defendant's contacts with the forum State itself, not the defendant's

21 contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "The

22 plaintiff cannot be the only link between the defendant and the forum." *Id.* at 277. Thus,

23 Plaintiffs' contacts do not authorize hailing a foreign company into litigation here.

24    Moreover, there are no contracts that authorize jurisdiction over 35.CN in this case.

25 Contrary to Plaintiffs' allegations, OnlineNIC's contract for domain name registration does

26 not reference or involve 35.CN (SAC Ex. 1). Similarly, the RAA between 35.CN and ICANN

27 expressly states: "No Third-Party Beneficiaries. This Agreement shall not be construed to

28 create any obligation by . . . Registrar to any non-party . . ." The Ninth Circuit has held that

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   the RAA does not create any right or duty owed to nonparties, such as Plaintiffs. *See*

2   *Balsam v. Tucows, Inc*., 627 F. 3d 1158, 1162–63 (9th Cir. 2010).

3               **b.  Plaintiffs fail to show indirect "contacts" where Plaintiffs**

4               **have not and cannot adequately allege alter ego liability as**

5               **connections do not rise to the level of a "unity of interest,"**

6               **and no "fraud or injustice" would result from this case.**

7      In certain limited circumstances, contacts of a subsidiary or parent may be attributed

8   to the other for jurisdictional purposes if the foreign entity is not really separate from its

9   domestic affiliate and the plaintiff makes a prima facie case to establish alter ego liability.

10   *See Daimler AG*, 571 U.S. at 134–36 (rejecting jurisdiction based on mere agency

11   liability); *Ranza*, 793 F.3d at 1071–73 (finding no "alter ego" jurisdiction); *MH Pillars Ltd. v.*

12   *Realini*, No. 15-CV-1383-PJH, 2017 WL 916414, at *12 (N.D. Cal. Mar. 8, 2017). Alter ego

13   liability requires (1) that there is such unity of interest and ownership that the separate

14   personalities or the two entities no longer exist, and (2) that failure to disregard their

15   separate identities would result in fraud or injustice. *Williams v. Yamaha Motor Co. Ltd.*,

16   851 F.3d 1015, 1021 (9th Cir. 2017). The stringent pleading requirement reflects the

17   principle that disregarding the corporate entity is an extreme remedy; and mere conclusory

18   allegations of alter ego status are not sufficient. *NuCal Foods, Inc. v. Quality Egg LLC*, 887

19   F. Supp. 2d 977, 993 (E.D. Cal. 2012) (noting it is axiomatic that there is a general

20   presumption in favor of respecting the corporate entity).

21      As an initial matter, and as explained above, there is no viable claim against any

22   Defendant. Thus, there is no basis for any "alter ego" liability because there is no

23   underlying liability of ID Shield or OnlineNIC. Further, Plaintiffs fail to adequately allege

24   alter ego liability considering the two prongs (unity of interest and fraud or injustice).

25               **1.  There is no unity of interest involving 35.CN.**

26      The "unity of interest" prong requires a showing that the parent controls the

27   subsidiary to such a degree as to render the latter the mere instrumentality of the former.

28   *Ranza*, 793 F.3d at 1073–75. The test envisions pervasive control over the subsidiary,

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

such as when a parent corporation dictates every facet of the subsidiary's business from broad policy decisions to routine matters of day-to-day operation; total ownership and shared management personnel are alone insufficient. *Id.* (finding overlapping director, employees, and management as well as substantial involvement did not undermine entities' formal separation as there was not functionally one single enterprise).

Courts may consider various factors in assessing a unity of interest: (1) the commingling of funds and other assets of the entities, (2) the holding out by one entity that it is liable for the debts of the other, (3) identical equitable ownership of the entities, (4) use of the same offices and employees, (5) use of one as a mere shell or conduit for the affairs of the other, (6) inadequate capitalization, (7) disregard of corporate formalities, (8) lack of segregation of corporate records, and (9) identical directors and officers. *See e.g., Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014); *see also Ranza*, 793 F.3d at 1074 (noting lack of evidence that company was undercapitalized, failed to keep records, or freely transferred assets, which would indicate signs of a "sham" corporate veil).

Here, 35.CN does not exercise the pervasive control over OnlineNIC or ID Shield as is necessary to establish a "unity of interest" and to pierce the veil of a supposed "sham" corporation. In particular, Plaintiffs have not alleged (and cannot show) any facts of undercapitalization, failure to keep adequate records, or freely transferred assets. 35.CN on the one hand, and OnlineNIC and ID Shield, on the other hand, have separate businesses, operations, registration databases, and offices (Weiwei Decl. ¶¶5–9); and common directors or employees, even with a shared office, is insufficient to establish alter ego liability. Thus, the first prong of the alter ego test is not satisfied.

### 2.  Plaintiffs have failed to establish fraud or injustice.

Even if the first prong is met, alter ego liability will not be found without showing that an injustice would result from the recognition of separate corporate identities. *Incipio, LLC v. Argento Sc By Sicura Inc.*, No. SACV1701974AGKESX, 2018 WL 4945002, at *3 (C.D. Cal. July 18, 2018). "To establish inequity in the absence of alter ego liability, a plaintiff must plead facts sufficient to demonstrate that conduct amounting to bad faith makes it

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

inequitable for the corporate owner to hide behind the corporate form." *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 963 (N.D. Cal. 2015). "Inequitable results flowing from the recognition of the corporate form include the frustration of a meritorious claim, perpetuation of a fraud, and the fraudulent avoidance of personal liability." *Pac. Mar. Freight, Inc. v. Foster*, No. 10-CV-0578-BTM-BLM, 2010 WL 3339432, at *7 (S.D. Cal. Aug. 24, 2010). However, difficulty in enforcing a judgment or collecting a debt does not satisfy this standard. *XR Commc'ns, LLC v. Ruckus Wireless, Inc.*, No. SACV1700596AGJCGX, 2018 WL 3156851, at *5 (C.D. Cal. Mar. 30, 2018). The corporate form is disregarded only in narrowly defined situations when the ends of justice so require and where the plaintiff shows that a defendant's conduct amounted to bad faith. *NuCal Foods, Inc.*, 887 F. Supp. 2d at 992–95 (finding court could not exercise jurisdiction under an alter ego theory where the plaintiff failed to show that those who controlled the companies treated them as a single enterprise to commit fraud with impunity).

Plaintiffs have not adequately alleged—and cannot show—fraud or manifest injustice would result if the Court recognized 35.CN, on the one hand, and OnlineNIC and ID Shield, on the other hand, as separate entities. In particular, Plaintiffs have litigated against OnlineNIC and ID Shield for years; both Defendants have produced expansive discovery responses and documents; and Plaintiffs have taken depositions. [*See e.g.,* D.E. 55 & 118 outlining discovery).] In the SAC, Plaintiffs outline a number of claimed judgments against OnlineNIC, including a claimed $33.15 million default judgment. However, Plaintiffs have not alleged a lack of finances or other fraud or injustice. Further, Plaintiffs self-reported $66 billion in cash and cash equivalents as of June 30, 2021,[8] and have touted expansive resources in China and abroad. Thus, if Plaintiffs had any viable claim against 35.CN (which is disputed), Plaintiffs could bring their claim in China.

Therefore, the first prong of specific jurisdiction is not satisfied.

//

---

[8] https://investor.fb.com/investor-news/press-release-details/2021/Facebook-Reports-Second-Quarter-2021-Results/.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

ii.    **The claims do not arise out of 35.CN's activities in California.**

The second "arising out of" requirement is met if, "but for" the contacts between the defendant and the forum state, a plaintiff's cause of action would not have arisen. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Here, Plaintiffs allege no activity by 35.CN that occurred in California. Further, 35.CN's sole contact with the United States is the RAA with ICANN. However, the RAA does not establish 35.CN's contacts in California, and Plaintiffs' claims do not arise from the RAA, including because a) the RAA only governs disputes between ICANN and 35.CN (for conduct outside the United States) and expressly excludes rights to third parties like Plaintiffs (SAC Ex. 4), and b) the Domain Names were registered under the OnlineNIC RAA, not the 35.CN RAA. Plaintiffs have not—and cannot—allege that 35.CN engaged in California contacts that gave rise to the claims.

iii.    **Exercising personal jurisdiction over 35.CN would be unreasonable, including considering the high bar for an international party.**

When determining whether the exercise of personal jurisdiction over a non-resident defendant is reasonable, courts evaluate the following factors: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *See Amoco Egypt Oil Co. v Leonis Navigation Co.*, 1 F.3d 848, 851–53 (9th Cir. 1993); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 27 F. Supp. 3d 1002, 1013 (N.D. Cal. 2014). "[I]n personal jurisdiction cases, the burden on the defendant is the primary concern." *Pacific Atlantic Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1330 (9th Cir. 1985); *see also Young v. Actions Semiconductor Co.,* 386 F. App'x 623, 628 (9th Cir. 2010) (noting a foreign party bears a "substantial burden" in defending claims in a foreign legal system).

As the Supreme Court recognized, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight" in assessing

23

reasonableness. *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 114 (1987) (noting great care and reserve should be exercised when extending personal jurisdiction into the international field). The Ninth Circuit has similarly explained that "[w]here, as here, the defendant is from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction." *Amoco Egypt Oil Co.*, 1 F.3d at 852. Moreover, before taking an expansive view of jurisdiction over a foreign citizen, courts should (and do) pay heed to the risks to international comity. *See Daimler AG*, 571 U.S. at 141; *c.f. Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993) (ruling lack of jurisdiction over a citizen of Turkey who had traveled to the U.S. three times over several years); *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir. 2002) (finding jurisdiction over Indian defendant unreasonable, and noting the defendant did not own property in the forum and had no employees or persons authorized to act on its behalf in the forum); *Mujica v. AirScan Inc.*, 771 F.3d 580, 598 (9th Cir. 2014) (outlining comity as a doctrine of prudential abstention that counsels voluntary forbearance when another sovereign has a legitimate claim to jurisdiction).

All factors show that jurisdiction over 35.CN would be unreasonable.

First, 35.CN has not purposefully interjected itself into the forum. 35.CN is a Chinese company (SAC ¶11) organized under Chinese laws. (Weiwei Decl. ¶¶2, 7.)

Second, 35.CN would suffer a substantial burden in defending in the U.S. Despite technological advances, 35.CN would spend considerable resources in traveling and defending a case here and would require ongoing translation services. (Weiwei Decl. ¶10.)

Third, 35.CN is a public company in China. (*See* Weiwei Decl. ¶2.) Thus, an action against 35.CN (a Chinese company with Chinese customers) in the U.S. under U.S. law would strain diplomatic relations between the U.S. and China, considering 35.CN's nearly exclusive focus is on Chinese customers.

Fourth, while the U.S. has an interest in adjudicating a dispute involving residents and businesses in the U.S., it can effectively do so with its claims against the original Defendants (OnlineNIC and ID Shield), which it has been doing for years; and Plaintiffs

24

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

can more adequately resolve this dispute through the UDRP process. There is minimal interest in also overseeing a foreign company, and its addition at this stage is suspect.

Fifth, the most efficient judicial resolution of the controversy against 35.CN would be for Chinese regulatory, legislative, and judicial bodies to oversee and adjudicate any claims against 35.CN, including as the relevant witnesses and evidence would be in China.

Sixth, there is minimal importance to Plaintiffs' interest in convenient and effective relief, as Plaintiffs can still proceed against the original Defendants (although 35.CN disputes that Plaintiffs could support default judgment) or in a UDRP case.

Seventh, there is an alternative forum in China and through the UDRP process to handle potential disputes. *See e.g. Jiangsu Hongyuan Pharm. Co. v. DI Glob. Logistics Inc.*, 159 F. Supp. 3d 1316, 1331–32 (S.D. Fla. 2016). Plaintiffs have vast resources and are international, and they could litigate in China or per the UDRP (if they had valid claims).

Because Plaintiffs have already conducted vast discovery and there is no basis for personal jurisdiction over 35.CN, the SAC should be dismissed.

## CONCLUSION

Plaintiffs have failed to state a valid claim against 35.CN and have failed to show alter ego liability or another basis for personal jurisdiction. For the reasons set forth above, the Court should dismiss the SAC in its entirety as to 35.CN.

Respectfully Submitted,

DATED: September 28, 2021

**KRONENBERGER ROSENFELD, LLP**

By:_____ s/ Karl S. Kronenberger _____
        Karl S. Kronenberger

Specially Appearing as Attorneys for Defendant Xiamen 35.com Technology Co., Ltd.