Perry J. Narancic, SBN 206820
LEXANALYTICA, PC
3000 El Camino Real
Bldg. 4, Suite 200
Palo Alto, CA 94306
www.lexanalytica.com
pjn@lexanalytica.com
Tel: 650-655-2800

Attorneys for Defendants
ONLINENIC, INC. and DOMAIN ID SHIELD SERVICE
CO., LIMITED

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC<br><br>Plaintiffs,<br>v.<br><br>ONLINENIC, INC. and DOMAIN ID SHIELD SERVICE CO., LIMITED and XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD.<br><br>Defendants. | Case No. 19-CV-07071-SVK<br><br>**DEFENDANTS ONLINENIC, INC. AND DOMAIN ID SHIELD SERVICE CO., LIMITED'S MOTION TO WITHDRAW STATEMENT OF NON-OPPOSITION at DKT. NO. 120**<br><br>DATE: December 3, 2021<br>TIME: 10:00 a.m.<br>CTRM: 1 – 17th Floor<br><br>Hon. Susan Illston |

- 1-

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 3, 2021 at 10:00 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Susan Illston of the United States District Court for the Northern District of California located at 450 Golden Gate Avenue, Courtroom 1 – 17th Floor, San Francisco, CA 94102. Defendants OnlineNIC, Inc. and Domain ID Shield Service Co., Limited move to withdraw their Statement of Non-Opposition filed at Dkt. No. 120, which Plaintiffs re-filed as Docket No. 177 and that the Court set a briefing schedule to allow Defendants to file an opposition.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, the Declaration of Perry J. Narancic, any oral argument heard by the Court, and any other such materials that the Court deems proper.

DATED: October 15, 2021

Respectfully Submitted

By: *[signature]*

Attorneys for Defendants
ONLINENIC, INC. and DOMAIN ID SHEILD SERVICE CO., LIMITED

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The present Motion arises in response to the plaintiffs' filing of their Motion to Strike Defendants' Answer and For Default Judgment ("Default Motion") at Dkt. No. 176. The Default Motion was originally filed on July 13, 2021 (Dkt. No. 117). On July 20, 2021, defendants OnlineNIC, Inc. and Defendant Domain ID Shield Service Co., Ltd. (the "OnlineNIC Defendants") advised the Court that they could no longer afford to defend the case and that they intended to cease business operations on July 25, 2021. Dkt. No. 121, p. 2:4-5. Also on July 20, 2021, defendants filed a Statement of Non-Opposition to the Default Motion that was filed a week earlier. Dkt. No. 120. As further discussed below, this case was transferred from the magistrate judge to this Court (Judge Illston presiding) on September 28, 2021. Plaintiffs then re-filed the Default Motion on October 1, 2021, and also filed defendants' Statement of Non-Opposition – without first obtaining consent of defendants' counsel. Dkt. No. 177. The Default Motion is now set for hearing on December 3, 2021. For the reasons set forth below, the OnlineNIC Defendants bring this Motion to withdraw their Statements of Non-Opposition at Dkt. Nos. 120 and 177, and respectfully seek the Court's permission to file an opposition to the Default Motion.

## II. CASE HISTORY

Plaintiffs filed this case on October 28, 2019. Dkt. No. 1. The original complaint alleged that defendants OnlineNIC, Inc. and Domain ID Shield Service Co., Ltd. ("ID Shield") registered, used or trafficked in a number of "Infringing Domain Names" belonging to plaintiffs. Complaint, ⁋ 37. OnlineNIC is a domain name registrar and is accredited by the Internet Corporation for Assigned Names and Numbers ("ICANN"). A domain name registrar processes domain name registration applications from "registrants" and submits the transaction information to a central registry. The registration information (such as the name and contact information for the registrant) is maintained by the registrar, and some of this information is made available publicly on a database called "WHOIS". Some registrants do not want their information publicly available, and so many registrars (including OnlineNIC) own privacy services that allow the name of the privacy company to be used as the "registrant" in the WHOIS database. ID Shield is OnlineNIC's privacy

service. Plaintiffs claim, among other things, that ID Shield was the "registrant" of the Infringing Domain Names because it was ID Shield's name that appeared as "registrant" and therefore ID Shield (and OnlineNIC as ID Shield's alleged *alter ego*) is liable for all acts related to such domains names, including cybersquatting. See e.g. Default Motion, p. 3.

During the course of discovery, OnlineNIC admitted it had problems in making some of its productions. *See e.g.*, Dkt. No. 61 (explaining the challenges in working with large databases, using legacy products and translation issues). To address these issues, the OnlineNIC Defendants voluntarily agreed to the appointment of a Special Master to examine the productions to date. *See* Dkt. No. 65. The Special Master issued a report that was adverse OnlineNIC Defendants on July 12, 2021 at Dkt. No. 115. Plaintiffs rely almost exclusively on the Special Master Report as a basis for their sanctions claims – but plaintiffs never did any significant analysis on *how* the allegedly spoliated evidence impacted their claims on the Infringing Domain Names.

During the course of discovery, OnlineNIC stated that it had an outsourcing agreement with a company called Xiamen 35.com Technology Co., Ltd ("35.CN"). On March 31, 2021, plaintiffs filed an amended complaint, alleging that 35.CN was the *alter ego* of OnlineNIC and ID Shield. Dkt. No. 84. OnlineNIC and ID Shield stated that they could no longer afford to defend the case. At this time (July 2021), 35.CN was not involved in the litigation because it would not be served until mid-August 2021. Dkt. No. 164. On September 22, 2021, 35.CN filed its declination to proceed before a magistrate (Dkt. No. 168), and the case was re-assigned to this Court. On September 28, 2021, 35.CN filed its motion to dismiss (Dkt. No. 174), and OnlineNIC and ID Shield have joined in that motion. Dkt. No. 184.

Because there have been dramatic changes in the case since their Statemen of Non-Opposition was filed on July 20, 2021, and since the OnlineNIC Defendants have meritorious defenses, the OnlineNIC Defendants wish to be heard on the Default Motion – which is in accord with the federal policy that disfavors defaults and favors cases being heard on the merits. *Pena v. Seguros La Comercial, SA*, 770 F. 2d 81, 814 (9th Cir. 1985) ("Whenever it is reasonably possible, cases should be decided upon their merits").

## III.  ARGUMENT

### A.  Legal Standard

There is scant legal authority that addresses when and how a party can withdraw a statement of non-opposition. One way to look at the matter is set forth in *Morrison v. Zangpo*, 2008 U.S. Dist. LEXIS 82999 (N. D. Cal. July 28, 2008), which considered the issue of whether to allow a party to withdraw his statement of non-opposition to binding arbitration. In that case, the Court treated the statement of non-opposition like a stipulation. Under Ninth Circuit law, a stipulation can be withdrawn to prevent a manifest injustice. *See Waggoner v. Dallaire,* 767 F.2d 589, 593 (9th Cir. 1985) (stating that the trial court could not permit the defendant to withdraw the stipulation unless the defendant presented evidence to the court showing that withdrawal of the stipulation was necessary to prevent manifest injustice).

> [A] district court may disregard a stipulation if to accept it would be "manifestly unjust or if the evidence contrary to the stipulation [is] substantial. In determining what constitutes manifest injustice, courts may consider (1) the effect of the stipulation on the party seeking to withdraw the stipulation; (2) the effect on the other parties to the litigation; (3) the occurrence of intervening events since the parties agreed to the stipulation; and (4) whether the evidence contrary to the [stipulation] is substantial."

*Morrison*, 2008 U.S. Dist. LEXIS 82999 at *9-10 (citing *State Farm Fire & Cas. v. McDevitt*, No. C-00-2240 EDL, 2001 U.S. Dist. LEXIS 7529, at *22 (N.D. Cal. May 21, 2001).

### B.  "Manifestly Unjust"

#### 1.  The effect of prohibiting the withdrawal of the Statement of Non-Opposition would be catastrophic for OnlineNIC Defendants

In this case, it would be manifestly unjust to not let OnlineNIC and ID Shield file an opposition to the Default Motion. The OnlineNIC Defendants have consistently maintained that they never registered, used or trafficked in any of the Infringing Domain Names. In fact, as discussed below, one of OnlineNIC's customers, Lockspin Ltd., admitted to infringing one of the domains at issue. *See* Dkt. No. 145, p. 4 (showing an email from Lockspin that it registered one of the infringing domains). *See* also Dkt. No. 146-2 and 146-3. It would be unjust for the OnlineNIC Defendants to be found liable for a judgment and subject to sanctions for conduct that it was not involved in. If a judgment or other sanctions are imposed on the OnlineNIC Defendants, they will

most certainly be put out of business since they do not have the means to pay any significant sanctions or any significant judgment. *See* Dkt. No. 121, p.2 (explaining defendants' difficult financial conditions). *See also* Dkt. No. 131(showing that OnlineNIC had to sell assets in order to pay the Special Master fees). Among other things, plaintiffs are seeking $3.5 million in statutory damages, and over $2 million in legal fees – and the OnlineNIC Defendants are obviously not in any position to pay these amounts. Accordingly, this factor favors allowing the OnlineNIC Defendants to file an opposition.

### 2. Plaintiffs will not be prejudiced if the OnlineNIC Defendants are allowed to file an opposition.

Plaintiffs will not be prejudiced by allowing the OnlineNIC Defendants to file an opposition to the Default Motion. Even if Plaintiffs' Motion for Default is granted, plaintiffs' litigation would continue against 35.CN (unless 35.CN's pending motion to dismiss is granted). Since the plaintiffs' claim that the OnlineNIC, Doman ID and 35.CN are *alter egos* of one another, the same discovery will have to occur. Thus, there is no prejudice to plaintiffs if the OnlineNIC stays in the case.

Furthermore, 35.CN's pending Motion to Dismiss argues that Plaintiffs have not (and cannot) sufficiently plead the causes of action based on undisputed facts and legal principles. In making its argument, 35.com often refers to OnlineNIC and ID Shield. For example, the motion states that "Plaintiffs fail to adequately allege that ID Shield or OnlineNIC 'registers, traffics in, or uses' the Domain Names; and thus, 35.CN cannot be liable under an 'alter ego' or similar theory." Dkt. No. 174 at 13. In short, Plaintiffs' arguments against 35.CN revolve around the activities of OnlineNIC and ID Shield. Thus, even if Plaintiffs' Motion for Default is entered, Plaintiffs will be required to do the same amount of work to prove its case against 35.com. Further, it is likely that OnlineNIC and ID Shield would be dragged into discovery issues and forced to continue their participation – in other words, the addition of 35.CN means that even if Plaintiffs are granted their requested relief, the case would not be over for OnlineNIC and ID Shield.

### 3. **Intervening Events Have Occurred Since The Default Motion Was Filed**

Since the Default Motion was filed, the circumstances around this case have substantially changed. Most importantly, 35.CN has now been served, and it has filed its Motion to Dismiss at Dkt. No. 174. This new defendant drastically changes this case both financially and strategically. As to the finances, 35.CN brings more resources, since it is a publicly traded company in China. Instead of fighting alone on a bare bones legal budget, OnlineNIC and ID Shield now have another party to help with the laboring oar. This is evident by 35.CN's Motion to Dismiss, which presents arguments why not only 35.CN should be dismissed, but also why OnlineNIC and ID Shield should be dismissed.

### 4. **Substantial evidence is contrary to the factual allegations in the Default Motion**

#### (a) **The evidence shows that OnlineNIC Defendants did not register, use or traffic in the Infringing Doman Names**

A careful review of the Default Motion shows that plaintiffs have presented little or no evidence to support their core allegation that OnlineNIC Defendants registered, used or trafficked in the Infringing Domain Names. Instead, plaintiffs ask the court to presume the allegations in their complaint: Default Motion, p. 17: 13-28 ("Upon default, the factual allegations of the complaint will be taken as true…). But the actual evidence in the record is contrary plaintiffs' (unsupported) factual allegations. On July 30, 2021, due to the fact that OnlineNIC Defendants had run out of money to defend the case, OnlineNIC Defendants filed a Statement of Non-Opposition to plaintiffs' motion for a preliminary injunction. Dkt. No. 145. However, OnlineNIC disputed the core facts in this case – even as it was being pummeled into submission. Thus, plaintiffs and the Court have always known that the OnlineNIC Defendants had a viable defense. A relevant part of Dkt. No. 145 is produced below (and the entire submission is presented as an attachment to the accompanying declaration of Perry J. Narancic as Exhibit A):

- 7-

Facebook, Inc. v. OnlineNIC, Inc.  
Motion to Withdraw Statement on Non-Opposition

Case No. 19-cv-7071-SVK

> Case 5:19-cv-07071-SVK   Document 145   Filed 07/30/21   Page 4 of 5
>
> **Plaintiffs' customers were responsible for registering the domains that Plaintiff's allege to be cybersquatting.**
>
> Underlying the TRO and permanent injunction is Plaintiffs' allegation that Defendants are liable for cybersquatting and that they "there is no dispute that plaintiffs are likely to succeed on the merits of their claims" Supp. Brief, 2:18-19. On this issue, Defendants have never been heard on the merits of cybersquatting in this case. And yet the evidence appears to support a viable defense.
>
> For instance, one of the domains that Plaintiffs allege was cybersquatting is *trolfacebook.com*. This domain was registered by an OnlineNIC customer called Lockspin. Defendants' counsel sent an indemnification demand to Lockspin (Narancic Decl., ¶ 5, Ex. B), and Lockpin responded with an email admitting that they it was responsible for registering trollfacebook.com. Narancic Decl., ¶ 6, Ex. C:
>
> From: Lockspin UK <info@lockspin.com>
> Sent: Wednesday, March 31, 2021 8:07:07 AM
> To: Perry J. Narancic <pjn@lexanalytica.com>
> Subject: Re: Indemnification Demand from OnlineNIC
>
> Dear Mr. Narancic,
> Thank you for finally contacting me about the matter of missing domain names. I only wish that Onlinenic had contacted me first, back in 2019, before Facebook sued your client for allowing criminals to use the Onlinenic services for registering phishing domains and domain names suggesting a promise to provide hacking services against Facebook. Had they responded to Facebook's emails or forwarded their original complaint, I could have explained the misunderstanding and if they still insisted on an allegation of "dilution" I could have worked with them. Instead of going into further details about how Trollface (from the domain TrollfaceBook.com) is an internet meme in the public domain and has nothing to do with Facebook other than the assumptions of their lawyers, or presenting examples like MiniKeys not being a trademark infringement on Nike, AppLexicon not being a trademark infringement on Apple, and so on. I will cut to the chase.

**(b)   The evidence does not support plaintiffs' interpretations of the Special Master Report.**

Plaintiffs rely on the Special Master Report to show that they have been prejudiced by alleged spoliation and are therefore entitled to terminating sanctions. For instance, plaintiffs repeatedly rely on the Special Master's conclusion that "Plaintiffs suffered irreparable harm", but except for a cursory 7-line analysis at page 10 of the Default Motion (at lines 9-16), plaintiffs never tie what was allegedly spoliated with the Infringing Domain Names. Before imposing a

harsh sanction for spoliation, the Court must be able gauge the relevance of the data that was destroyed and the prejudice to the other party. See e.g. *Garcia v. City of Santa Clara,* 2017 U.S. Dist. LEXIS 59873 at * 9-10 (N.D. Cal. April 19, 2017) ( "...the record is simply not clear as to whether any relevant, useful evidence was spoliated; or, at least not sufficiently clear that the Court can gauge relevance and prejudice in order to fairly levy a sanction as harsh as that being sought by plaintiff."). *See also Burris v. JPMorgan Chase & Co.*, 2021 U.S. Dist. LEXIS 194232 * 53 (D. Ariz.) (" *See also Fed. R. Civ. P. 37(e)* advisory committee's note to 2015 amendment ("[T]he severe measures authorized by [*Rule 37(e)(2)*] should not be used when the information lost was relatively unimportant or lesser measures such as those specified in *subdivision (e)(1)* would be sufficient to redress the loss.").

At the end of the day, the Special Master's conclusions that plaintiffs were prejudiced by OnlineNIC's alleged spoliation were not coupled to the facts and circumstances of the legal claims in this case.  Yes, data had been destroyed, but what was the relevance of that data to the Infringing Domain Names?  Moreover, the OnlineNIC Defendants had viable challenges to the methodology and conclusions of the Special Master, as set forth in a letter sent from defense counsel to the Special Master on July 8, 2021 (which is attached as Exhibit B to the accompanying declaration of Perry J. Narancic).  OnlineNIC Defendants respectfully request that the Court take this letter into consideration and treat those arguments as incorporated herein by reference.

### IV. CONCLUSION

For all the foregoing reasons, the OnlineNIC Defendants respectfully request that they be allowed to withdraw their statement of non-opposition at Dkt. No. 120, and that they be permitted to file an opposition to the Default Motion on a schedule set by the Court.

Respectfully Submitted,

DATED:  October 15, 2021        LEXANALYTICA, PC

By: /s/ Narancic

Attorneys for Defendants
ONLINENIC, INC. and DOMAIN ID SHEILD SERVICE CO., LIMITED