TUCKER ELLIS LLP
David J. Steele SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:     213.430.3400
Facsimile:     213.430.3409

DAVIS POLK & WARDWELL LLP
Ashok Ramani SBN 200020
ashok.ramani@davispolk.com
Micah G. Block SBN 270712
micah.block@davispolk.com
Cristina M. Rincon *Pro Hac Vice*
Cristina.rincon@davispolk.com
1600 El Camino Real
Menlo Park, CA 94025
Telephone:     650.752.2000
Facsimile:     650.752.2111

Attorneys for Plaintiffs,
FACEBOOK, INC. and INSTAGRAM, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC, | Case No. 3:19-cv-07071-SI |
| Plaintiffs, | **DECLARATION OF HOWARD A. KROLL IN SUPPORT OF PLAINTIFFS' OPPOSITION TO 35.CN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |
| v. | |
| ONLINENIC INC.; DOMAIN ID SHIELD SERVICE CO., LIMITED; and XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD., | DATE: December 3, 2021<br>TIME: 10:00 a.m.<br>CTRM: 1 – 17th Floor |
| Defendants. | Hon. Susan Illston |
| | **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

I, Howard A. Kroll, declare as follows:

1.    I am a partner at Tucker Ellis LLP, attorneys of record for Plaintiffs in this action. I make this declaration based on my personal knowledge and, if called as a witness, would testify competently to each of the following facts.

2.    On June 22, 2021, Plaintiffs served Online NIC with Plaintiffs' Special Court Ordered Notice of Deposition of OnlineNIC Pursuant to Fed. R. Civ. P. 30(b)(6). OnlineNIC designated Ms. Carrie Yu also known as Hongxia Yu, to testify on all of the Deposition Topics listed in the 30(b)(6) Deposition Notice, including Topic 10: "Loans made by DEFENDANTS since 2009, and repayment of and documents relating to such loans." A copy of Plaintiffs' Special Court Ordered Notice of Deposition of OnlineNIC Pursuant to Fed. R. Civ. P. 30(b)(6) is attached to this Declaration as Exhibit 1.

3.    On July 13 and 14, 2021, Ms. Carrie Yu aka Hongxia Yu ("Ms. Yu") was deposed as the 30(b)(6) witness for Defendant OnlineNIC, Inc. ("OnlineNIC") Relevant excerpts of her July 13, 2021 deposition transcript are attached to this Deposition as Exhibit 2. Relevant excerpts of her July 14, 2021 deposition transcript are attached to this Deposition as Exhibit 3. These deposition excerpts contains material designated "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" by OnlineNIC pursuant to the Stipulated Protective Order (ECF 35) ("Protective Order").

4.    Ms. Yu was also designated as the 30(b)(6) witness for Defendant Domain ID Shield Co. Limited ("ID Shield"). Ms Yu, however, failed to appear at the 30(b)(6) deposition of ID Shield on July 14, 2021. A copy of the Certificate re Nonappearance of Carrie Yu is attached to this Declaration as Exhibit 4.

5.    Ms. Yu, as an officer of each company, verified interrogatory responses for OnlineNIC and ID Shield. Copies of Ms. Yu's verifications are attached to this Declaration as Exhibit 5.

6.    Ms. Yu also participated in the mediation of this case on the behalf of OnlineNIC and ID Shield.

7.    ████████████████████████████████████████████████ A copy of 35.CN's 2012 Registrar Primary Contact Update Form, which has been designated "CONFIDENTIAL" by ICANN pursuant to the

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Protective Order, is attached to this Declaration as Exhibit 6.

8.  Relevant portions of the 2013 RAA, which have been designated "CONFIDENTIAL" by ICANN pursuant to the Protective Order, are attached to this Declaration as Exhibit 7.

9.     On May 27, 2021, pursuant to the Court's May 11, 2021 Order (ECF No. 104), Plaintiffs propounded their Special Court Ordered Interrogatories to OnlineNIC and ID Shield. Their Responses to the Special Court Ordered Interrogatories, verified by Ms. Yu, were served on June 10, 2021. A copy of these Responses, including the exhibits to the Responses which have been designated "CONFIDENTIAL" by OnlineNIC pursuant to the Protective Order, is attached to this Declaration as Exhibit 8.

10.

11.     In May 2021, OnlineNIC produced its bank statements with Citibank N.A. from May 1, 2014 to April 30, 2019 (although it did not include the July 2018 bank statement). Each of these bank statements are designated "CONFIDENTIAL" by OnlineNIC pursuant to the Protective Order (Bates Stamp Nos. ONLINENIC 285133-285382). Copies of the relevant portions of these CONFIDENTIAL bank statements are attached to this Declaration as Exhibit 9.

12.     Copies of the relevant portions of these CONFIDENTIAL bank statements are attached to this Declaration as Exhibit 10.

3

13.     OnlineNIC also produced its 2009-2019 Federal and California corporate tax returns. Each of these tax returns are designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" by OnlineNIC pursuant to the Protective Order (Bates Stamp Nos. ONLINENIC 238758-283386).  Copies of the first page and of these tax returns are attached to this Declaration as Exhibit 11.

14.     OnlineNIC's 2013 and 2014 California corporate tax returns state that Copies of the first pages of these tax returns and are attached to this Declaration as Exhibit 12.

15.     Copies of the first page of the 2015 California corporate tax return and are attached to this Declaration as Exhibit 13.

18.

DECLARATION OF HOWARD A. KROLL IN SUPPORT OF PLAINTIFFS' OPPOSITION
TO 35.CN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
CASE NO. 3:19-CV-07071-SI

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

19.

20.     Plaintiffs Request For Production of Documents No. 25 request for documents "relating to the corporate formation and maintenance" of OnlineNIC. In its First Supplemental Response to Plaintiffs' Requests For Production of Documents No. 25, OnlineNIC identified only four documents (Bates Stamp Nos. ONLINENIC 000071-74) and stated "OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein. A copy of OnlineNIC's First Supplemental Response to Requests for Production of Documents is attached to this Declaration as Exhibit 14.

21.     OnlineNIC's Articles of Incorporation, Amended Articles of Incorporation, and its 2017 and 2019 Statement of Information filed with the California Secretary of State are the documents produced by OnlineNIC in response to Request For Production No. 25 and Bates Stamped ONLINENIC 000071-74. OnlineNIC did not produce any bylaws, corporate resolutions, minutes of meetings of its directors or shareholders, or documents reflecting maintenance of stock or membership ledgers. Copies of these four documents are attached to this Declaration as Exhibit 15.

22.     35.CN has paid ICANN $232,633 since 2017. Relevant portions of ICANN's 2017-2021 revenue reports are attached to this Declaration as Exhibit 16.

23.     As a registrar, 35.CN would have entered into contracts with registries throughout the United States, like Verisign, Inc., and Public Interest Registry (each located in Virginia), GoDaddy Registry (located in Arizona), Afilias Limited (located in Pennsylvania), and XYZ.COM (located in Nevada).



DECLARATION OF HOWARD A. KROLL IN SUPPORT OF PLAINTIFFS' OPPOSITION TO 35.CN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
CASE NO. 3:19-CV-07071-SI

25.     35.CN owns a trademark, 35.COM, which was registered by the United States Patent and Trademark Office. In 2018, Mr. Gong, as President of 35.CN, signed an affidavit stating that the 35.COM mark was being used in commerce in the United States. A copy of the Section 71 Declaration of Continued Use for 35.COM is attached to this Declaration as Exhibit 18.

26.     Both the Facebook and Instagram apps are banned in China.

27.     A copy of ICANN's responses General Question #4, available at https://www.icann.org/resources/pages/faqs-84-2012-02-25-en#4 (last accessed Oct. 12, 2021), is attached to this Declaration as Exhibit 19.

28.     A copy of ICANN's Information for Privacy and Proxy Service Providers, Customers and Third-Party Requesters, available at: https://www.icann.org/resources/pages/pp-services-2017-08-31-en (last accessed Oct. 12, 2021), is attached to this Declaration as Exhibit 20.

29.     The webpage title and URL of the ID Shield Service Agreement, as shown on the header and footer of each page of Exhibit 6 to the SAC, states that it is the "OnlineNIC Privacy And Proxy Agreement." A copy of the ID Shield Service Agreement is attached to this Declaration as Exhibit 21.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on October 26, 2021 in Encino, California.

                                                     /s/ Howard A. Kroll

T‌UCKER E‌LLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

DECLARATION OF HOWARD A. KROLL IN SUPPORT OF PLAINTIFFS' OPPOSITION
TO 35.CN'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
CASE NO. 3:19-CV-07071-SI

# Exhibit 1

TUCKER ELLIS LLP
David J. Steele SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:      213.430.3400
Facsimile:      213.430.3409

DAVIS POLK & WARDWELL LLP
Ashok Ramani SBN 200020
ashok.ramani@davispolk.com
Micah G. Block SBN 270712
micah.block@davispolk.com
Cristina M. Rincon *Pro Hac Vice*
cristina.rincon@davispolk.com
1600 El Camino Real
Menlo Park, CA 94025
Telephone:      650.752.2000
Facsimile:      650.752.2111

Attorneys for Plaintiffs,
FACEBOOK, INC. and INSTAGRAM, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC,<br><br>             Plaintiffs,<br><br>       v.<br><br>ONLINENIC INC.; DOMAIN ID SHIELD SERVICE CO., LIMITED; and DOES 1-20,<br><br>             Defendants. | Case No. 5:19-cv-07071-SVK<br><br>**PLAINTIFFS' SPECIAL COURT ORDERED NOTICE OF DEPOSITION OF ONLINENIC INC. PURSUANT TO FED. R. CIV. P. 30(b)(6)**<br><br>Hon. Susan van Keulen |

*Vertical left margin:* TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Rules 30(b)(6) and 45 of the Federal Rules of Civil Procedure, and the Court's order (ECF No. 104), Plaintiffs Facebook, Inc. ("Facebook") and Instagram, LLC ("Instagram") will take the deposition upon oral examination of OnlineNIC Inc. ("OnlineNIC") on July 12, 2021 at 4:00 P.M. to 9:00 P.M., and continued on July 13, 2021 at 4:00 P.M. to 9:00 P.M.at Tucker Ellis LLP, 201 Mission Street, Suite 2310, San Francisco, CA 94105, or at another time and place mutually agreeable to the parties.

Pursuant to Rule 30(b)(6), the deponent is obligated to designate one or more of its officers, directors, managing agents, or other consenting person to testify in this action as to matter known or reasonably available to the deponent with respect to the subject matters listed in Attachment A. You are invited to attend and cross-examine. It is hereby requested that the deponent identify those persons whom it will designate to testify concerning the listed matters by no later than seven days prior to the date of deposition.

This deposition will be taken under oath before a certified court reporter or notary public duly authorized to administer oaths. The deposition will be recorded stenographically and/or by audiovisual means and may be conducted via Zoom or other videoconferencing software. The noticing party also reserves the right to use the instant visual display of the testimony during the deposition.

DATED: June 22, 2021                          Tucker Ellis LLP


                                              By: /s/David J. Steele
                                                  David J. Steele
                                                  Howard A. Kroll
                                                  Steven E. Lauridsen

                                              Davis Polk & Wardwell, LLP
                                                  Ashok Ramani
                                                  Micah G. Block
                                                  Cristina M. Rincon

                                              Attorneys for Plaintiffs,
                                              FACEBOOK, INC. and INSTAGRAM, LLC

PLAINTIFFS' SPECIAL COURT ORDERED NOTICE OF DEPOSITION OF ONLINENIC INC.
CASE NO. 5:19-CV-07071-SVK

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

PLAINTIFFS' SPECIAL COURT ORDERED NOTICE OF DEPOSITION OF ONLINENIC INC.
CASE NO. 5:19-CV-07071-SVK

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

## ATTACHMENT A

## DEFINITIONS

Unless specifically indicated, or otherwise required by the context in which the terms and names are used the following definitions shall apply:

A.    "FACEBOOK" shall mean Plaintiff Facebook, Inc.

B.    "INSTAGRAM" shall mean Plaintiff Instagram, LLC.

C.    "PLAINTIFFS" shall mean FACEBOOK and INSTAGRAM, collectively and individually.

D.    "DOCUMENT(S)" shall have the broadest possible meaning permissible by Rules 26 and 34(a)(1) of the Federal Rules of Civil Procedure, and shall include both documents or electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.

E.    "ONLINENIC" shall mean Defendant OnlineNIC Inc.

F.    "DOMAIN ID SHIELD" shall mean Defendant Domain ID Shield Service Co., Limited.

G.    "DEFENDANTS" shall mean ONLINENIC and DOMAIN ID SHIELD, collectively and individually.

H.    "35.CN" shall mean Xiamen 35 Internet Technology Co., Ltd. aka 35 Technology Co., Ltd a/k/a 35cn a/k/a 35.cn a/k/a 35.com.

I.    "DISCOVERY RESPONSES" shall mean DEFENDANTS' responses and the production of documents by DEFENDANTS in response to (1) PLAINTIFFS' Fifth Set of Request for Production of Documents to DOMAIN ID SHIELD, (2) PLAINTIFFS' Sixth Set of Request for Production of Documents to ONLINENIC, (3) FACEBOOK's First Set of Interrogatories to DEFENDANTS, and (4) FACEBOOK's Special Court Ordered Interrogatories to DEFENDANTS.

PLAINTIFFS' SPECIAL COURT ORDERED NOTICE OF DEPOSITION OF ONLINENIC INC.
CASE NO. 5:19-CV-07071-SVK

J.      "DEFENDANTS' FINANCIAL STATEMENTS" shall mean DEFENDANTS' financial books and records, balance sheets, expense schedule, tax returns, accounting records, income statements, profit and loss statements, spreadsheets, and revenue and expense statements, including all supporting documents. This category of documents includes but is not limited to those produced by DEFENDANTS as ONLINENIC 283375 to ONLINENIC 283906 and the single page of financial statements produced by ONLINENIC on April 12, 2021.

**DEPOSITION TOPICS**

1.      DEFENDANTS' DISCOVERY RESPONSES.

2.      Preparation of DEFENDANTS' DISCOVERY RESPONSES.

3.      DEFENDANTS' FINANCIAL STATEMENTS.

4.      Preparation of DEFENDANTS' FINANCIAL STATEMENTS.

5.      DEFENDANTS' business and financial relationship with 35.CN.

6.      Payments made by 35.CN to DEFENDANTS and documents relating to such payments.

7.      Payments made by 35.CN on behalf of DEFENDANTS and documents relating to such payments.

8.      Payments made by DEFENDANTS to 35.CN and documents relating to such payments.

9.      Payments made by DEFENDANTS on behalf of 35.CN and documents relating to such payments.

10.     Loans made by DEFENDANTS since 2009, and repayment of and documents relating to such loans.

11.     Loans made to DEFENDANTS since 2009, and repayment of and documents relating to such loans.

12.     Loans made on behalf of DEFENDANTS since 2009, and repayment of and documents relating to such loans.

13.     Financial support provided to DOMAIN ID SHIELD since 2009.

14.     Financial transactions between 35.CN and DEFENDANTS.

15.     Assets of DEFENDANTS located in the United States.

PLAINTIFFS' SPECIAL COURT ORDERED NOTICE OF DEPOSITION OF ONLINENIC INC.
CASE NO. 5:19-CV-07071-SVK

16.    Assets of 35.CN located in the United States.

17.    ONLINENIC's expenses, including Salaries, Wages and Benefits, Compensation of Officers, IDC, Finance Fees, Technique Exploitation and Service Charge, Consulting Fee, Employee Benefit Programs, Kaiser, Site Outsourcing, Other Administrative and Office, Lawsuit Fee and Lawer [sic] Fee.

18.    Capitalization of DEFENDANTS.

19.    The bank and deposit accounts held by or on behalf of each of the DEFENDANTS, including the balance in each account and the identity of individuals authorized to use or administer those accounts (for the duration of the length of time relevant for the lawsuit).

20.    DEFENDANTS' relationship with Hongxia Yu (aka Carrie Yu), including any ownership interest Ms. Yu has or had in either DEFENDANT, any involvement by Ms. Yu in the operations, finances or management of DEFENDANTS, any use by Ms. Yu of any of DEFENDANTS' assets, and any employment or other relationship Ms. Yu has or had with either DEFENDANT, whether either directly or indirectly.

21.    Hongxia Yu's (aka Carrie Yu) relationship with 35.CN.

22.    Officers of DEFENDANTS since 2009.

23.    Directors of DEFENDANTS since 2009.

24.    Shareholders of DEFENDANTS since 2009.

25.    Employees of DEFENDANTS since 2009.

26.    Shaohui Gong's relationship with DEFENDANTS and 35.CN.

27.    Junru Chen's relationship with DEFENDANTS and 35.CN.

28.    Rex Liu's relationship with DEFENDANTS and 35.CN.

29.    Zhippo Chen's relationship with DEFENDANTS and 35.CN.

30.    Transfer of ownership of DEFENDANTS.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

**CERTIFICATE OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I declare that I am a citizen of the United States and a resident of Los Angeles, California or employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is Tucker Ellis LLP, 515 South Flower Street, Forty-Second Floor, Los Angeles, California 90071-2223.

On **June 22, 2021,** I served the following: **PLAINTIFFS' NOTICE OF DEPOSITION OF ONLINENIC INC. PURSUANT TO FED. R. CIV. P. 30(b)(6)** on the interested parties in this action as follows:

LEXANALYTICA, PC
Perry J. Narancic
pjn@lexanalytica.com
2225 E. Bayshore Road
Suite 200
Palo Alto, CA 94303
Telephone:     650.655.2800

Attorneys for Defendants,
ONLINENIC, INC. and DOMAIN ID SHIELD
SERVICES CO., LIMITED

(X)     **BY EMAIL:** the above-entitled document to be served electronically by email by written agreement of the parties.

(  )     **BY MAIL:**  By placing a true copy thereof enclosed in a sealed envelope(s) addressed as above, and placing each for collection and mailing on the below indicated day following the ordinary business practices at Tucker Ellis LLP.  I certify I am familiar with the ordinary business practices of my place of employment with regard to collection for mailing with the United States Postal Service.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit or mailing affidavit.

(X)     **FEDERAL:**  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **June 22, 2021**, at Los Angeles, California.

 /s/Howard A. Kroll
Howard A. Kroll

PLAINTIFFS' SPECIAL COURT ORDERED NOTICE OF DEPOSITION OF ONLINENIC INC.
CASE NO. 5:19-CV-07071-SVK

# Exhibit 2

1                UNITED STATES DISTRICT COURT
2                NORTHERN DISTRICT OF CALIFORNIA
3
4     FACEBOOK, INC. AND INSTAGRAM, )
      LLC,                          )
5                                   )
                PLAINTIFFS,         )
6                                   )   CASE NO.
        V.                          )   5:19-CV-07071-SVK
7                                   )
      ONLINENIC, INC.; DOMAIN ID    )
8     SHIELD SERVICES CO., LIMITED; )
      AND DOES 1-20,                )
9                                   )
                DEFENDANTS.         )
10    _____)
11
12
13
                VIDEOTAPED DEPOSITION OF THE PERSON
14
                MOST QUALIFIED OF ONLINENIC, INC.,
15
                        CARRIE YU
16
17                TUESDAY, JULY 13, 2021
18                 CHINA STANDARD TIME
19
20                     VOLUME I
21
22
23
      JOB NO. CA 4690900
24    REPORTED BY  MARK McCLURE, CRR
      CAL CSR 12203
25    PAGES 1 - 83

                                              Page 1

1      Q.   And Mr. Shaohui Gong is the individual who

2  sold OnlineNIC to Zhipo Chen in 2009, correct?

3      A.   Yes.

4      Q.   How many times did you speak with Shaohui Gong

5  in preparation for this deposition?

6      A.   One time.

7      Q.   When was that?

8      A.   I'm not sure about the exact date, but it was

9  probably during the process I was preparing for my

10  deposition.

11      Q.   How long was your conversation with

12  Mr. Shaohui Gong?

13      A.   About ten minutes.

14      Q.   What did you discuss?

15      A.   One thing was to confirm that he did sell

16  OnlineNIC in 2009.  I would like to verify that for the

17  record again.

18           The second thing was that we discussed one of

19  the deposition topics, and I think it was Topic 16.

20      Q.   And that refers to the assets of 35.CN located

21  in the United States?

22      A.   Yes.

23      Q.   What did Mr. Shaohui Gong tell you about the

24  assets of 35.CN located in the United States?

25      A.   35.CN only has RAA in the United States.

Page 32

1       Q.   What is the address of his office in Xiamen?

2       A.   So, it was located in the same software park

3    as we are in.

4       Q.   Who is the "we" that you are referring to?

5       A.   The office address of OnlineNIC in China.

6       Q.   And it's -- the address of OnlineNIC is in the

7    same software park as what other company?

8       A.   I'm not sure what your question is because

9    there are many companies within the software park.

10      Q.   What is the address of OnlineNIC's company in

11   China?

12      A.   No. 8, Guanri Road, Software Park Phase 2,

13   Xiamen, China.

14           INTERPRETER:  The phonetic spelling is -- of

15   the road is Guanri Road, G-u-a-n-r-i Road.

16   BY MR. KROLL:

17      Q.   Are there other companies located at 8 Guanri

18   Road, Software Park Phase 2, Xiamen, China?

19      A.   Yes.

20      Q.   Is one of those companies 35 Technology

21   Company Limited?

22      A.   Yes.

23      Q.   Are there other companies located at 8 Guanri

24   Road, Software Park Phase 2, Xiamen, China?

25      A.   Yes.

Veritext Legal Solutions
866 299-5127

1          Q.    Where is OnlineNIC's office located, as

2     compared to 35 Technology Company Limited?

3          A.    The location of the address of OnlineNIC is on

4     the third floor of this building, whereas 35.CN is on

5     the fourth and fifth floors.

6          Q.    How many floors does this building have?

7          A.    Five.

8          Q.    Are there any other companies located on the

9     third floor?

10          A.    Yes.

11          Q.    What are the names of the other companies on

12     the third floor?

13          A.    Right now, I do not have those names.  If you

14     want those names, I can go and have a look at them and

15     write them down and provide them to you next time.  I do

16     not have those names right now because they are not

17     related to our company.

18          Q.    Where are you located now?

19          A.    Are you talking about where I am for this

20     deposition?

21          Q.    Yes.

22          A.    Yes.

23          Q.    I don't know if I understood your answer so

24     let me ask you again.

25                Right now, where are you located for this

Page 51

1   deposition?

2          A.    In the office -- in my office.

3          Q.    What floor is your office located?

4          A.    The third floor.

5          Q.    What companies are located on the first floor?

6          A.    The first floor?

7          Q.    Yes.

8          A.    According to what I know, there is no company

9   located on the first floor.  What's on the first floor

10  is a restaurant and a kindergarten.

11         Q.    What companies are located on the second

12  floor?

13         A.    I do not remember their names.  If you need

14  them, I can go have a look and write them down and give

15  them to you next time.

16         Q.    Yes, I would appreciate if you were to write

17  down the other companies located on the second floor and

18  third floor.

19                Where's Sily Chen's office located?

20         A.    She's in another location, not in this

21  building.

22         Q.    What location is she in?

23         A.    It's in one of the buildings, also in this

24  software park, because she's also responsible for other

25  work as well.

1    company or are all those different companies?

2              MR. NARANCIC:  Same objection.

3              THE WITNESS:  They are the same company.

4    BY MR. KROLL:

5         Q.   Who owns 35.CN?

6         A.   Are you asking about now or about the past?

7         Q.   Thank you for the clarification.

8              Now, who owns 35.CN?

9              MR. NARANCIC:  Objection.  Form of question.

10             THE WITNESS:  I need to answer, right?

11             MR. NARANCIC:  Yes.

12   BY MR. KROLL:

13        Q.   Yes.

14        A.   I can only answer in this way:  35.CN is a

15   publicly traded company.  It has many shareholders.

16   Shaohui Gong is the biggest shareholder.

17        Q.   In 2007, when you started working for 35.CN,

18   who owned the company at that time?

19        A.   Shaohui Gong.

20             May I ask how much longer we have for this

21   deposition?

22             If it's long, I need a ten-minute break now.

23             MR. KROLL:  It is going to be longer.  Let me

24   just finish one question and then we can take a break.

25             THE WITNESS:  Okay.

Veritext Legal Solutions
866 299-5127

1          A.    More or less, yes.

2          Q.    You earlier testified that you have a

3   four-year-old child.

4                Did you take any time off from work when you

5   had your child?

6          A.    Yes.

7          Q.    Approximately what months did you take off?

8          A.    From July to December.

9          Q.    In 2017?

10         A.    Yes.

11         Q.    For how many years were you a director in

12  charge of the daily operations of OnlineNIC?

13         A.    About four years.

14         Q.    What is your current job at 35.CN?

15         A.    Director.

16         Q.    As a director for 35.CN from 2017 to present

17  day?

18         A.    For that time frame you were just asking me

19  about, I was the director of a department under 35.CN.

20         Q.    Which department is that?

21         A.    Software outsourcing center.

22         Q.    As a director of the software outsourcing

23  center, did you work on companies other than OnlineNIC?

24         A.    No.

25         Q.    When did you start acting as a director for

Page 66

1    the software outsourcing center of 35.CN?

2        A.    Roughly, in 2017 or 2018.

3        Q.    As the director for software outsourcing

4    center, were you involved in the daily operations of

5    OnlineNIC?

6        A.    Yes.

7        Q.    Who did you report to as a director?

8        A.    With regards to the part related to OnlineNIC,

9    I reported to the CEO of OnlineNIC.

10       Q.    Was there a part not related to OnlineNIC?

11       A.    This center was a department under 35.CN, so

12   regarding all of the work of that department, I need to

13   report to the CEO of 35.CN.

14       Q.    And who is the CEO of 35.CN?

15       A.    There have been several.

16             Are you asking about the one right now?

17       Q.    I would like you to tell me all of the CEOs of

18   35.CN that you have reported to as a director.

19       A.    The first one was Shaohui Gong.

20             The second one was Mr. Ding Jianshen.

21             INTERPRETER:  D-i-n-g, family name;

22   J-i-a-n-s-h-e-n-g, first name.

23   BY MR. KROLL:

24       Q.    I'm sorry?

25             INTERPRETER:  Counsel, I need to correct the

Page 67

1    reported to the deputy general manager, who was in

2    charge at 35.CN.

3        Q.    I thought you earlier testified that you

4    reported to the CEO of 35.CN?

5        A.    That was because I had some misunderstanding

6    about what you were asking me earlier.  I thought you

7    were asking me who was the CEO of 35.CN.  These are two

8    different questions.  I thought you were asking me about

9    the CEO.

10        Q.    I was asking you about the CEO because I

11    thought you said that you reported to the CEO.

12        A.    I did not need to report directly to the CEO

13    from the work process flow.

14        Q.    You may not have needed to report to the CEO,

15    but did you report to the CEO?

16        A.    Based on what I remember, I did not.

17        Q.    What about currently?

18        A.    Currently, like what I said earlier, in order

19    to confirm the deposition topics, I confirmed with

20    Shaohui Gong, and regarding the current CEO, I do not

21    need to do that because it is not related to the

22    lawsuit.

23        Q.    As a director for 35.CN in charge of the daily

24    operations of OnlineNIC, what company paid you?

25        A.    35.CN.

                                                    Page 69

1      Q.   Currently, are you a director of 35.CN in

2  charge of the daily operations of OnlineNIC?

3           MR. NARANCIC:  Objection.  Vague as to form.

4  Vague and ambiguous.

5           THE WITNESS:  Yes.

6  BY MR. KROLL:

7      Q.   Currently, as a director of 35.CN, you also

8  are involved in the software outsourcing center for

9  35.CN, correct?

10          MR. NARANCIC:  Objection.  Form of question.

11  Vague and ambiguous.

12          You may answer.

13          THE WITNESS:  I'm not sure what counsel is

14  trying to ask exactly.

15  BY MR. KROLL:

16     Q.   It appears, by your answers, that you are

17  involved not only with the daily operations of OnlineNIC

18  but currently also in charge of the software outsourcing

19  center, is that correct?

20     A.   Yes.

21     Q.   And the software outsourcing center that

22  you're in charge of is the software outsourcing center

23  of 35.CN, correct?

24     A.   Yes.

25     Q.   Were you a director of 35.CN in 2013?

Veritext Legal Solutions
866 299-5127

1              Can you -- Carrie, do you feel okay doing

2      another 15 minutes?

3              THE WITNESS:  Okay.

4      BY MR. KROLL:

5          Q.   Exhibit 6 is the 2013 registrar accreditation

6      agreement that is 66 pages in length, and with the Bates

7      stamp numbers ICANN_FB-52 to 117.

8          Q.   Ms. Yu, have you seen this document before?

9          A.   I have.

10         Q.   If you can turn to page 39 of the document,

11     which is Bates-stamped ICANN_FB-000090.

12             MR. NARANCIC:  Howard, do you intend to ask

13     the witness questions on this document?

14             MR. KROLL:  Yes.

15             MR. NARANCIC:  Can you point me to where this

16     is in the topics?

17             MR. KROLL:  No. 21, Hongxia Yu, also known as

18     Carrie Yu, relationship with 35.CN.

19             MR. NARANCIC:  My question was, are you going

20     to ask substantive questions about this document?

21             MR. KROLL:  No.



Page  73



Page 74



Page  75



Page 76

# Exhibit 3

1                 UNITED STATES DISTRICT COURT

2                NORTHERN DISTRICT OF CALIFORNIA

3

4        FACEBOOK, INC. AND INSTAGRAM, )
         LLC,                          )
5                                      )
                  PLAINTIFFS,          )
6                                      )        CASE NO.
            v.                         )        5:19-CV-07071-SVK
7                                      )
         ONLINENIC, INC.; DOMAIN ID    )
8        SHIELD SERVICES CO., LIMITED; )
         AND DOES 1-20,                )
9                                      )
                  DEFENDANTS.          )
10       _____)

11

12

13              VIDEOTAPED DEPOSITION OF THE PERSON

14

15            MOST QUALIFIED OF ONLINENIC, INC.,

16                        CARRIE YU
                 WEDNESDAY, JULY 14, 2021
17                   CHINA STANDARD TIME

18

19                       VOLUME II

20

21

22

23

         JOB NO. CA 4690907
24       REPORTED BY: MARK McCLURE, CRR
                   CAL CSR 12203
25       PAGES 84 - 168


                                               Page 1

| | | |
|---|---|---|
| 1 | C-h-e-n-g. | 07:17 |
| 2 | BY MR. KROLL: | 07:17 |
| 3 | Q.   Are there any other companies located on the | 07:17 |
| 4 | second and third floor? | 07:17 |
| 5 | A.   Based on what I saw, no. | 07:18 |
| 6 | Q.   Who owns the building at 8, Guanri Road | 07:18 |
| 7 | Software Park, Phase 2? | 07:18 |
| 8 | A.   Should be 35.CN. | 07:18 |
| 9 | Q.   You also indicated you were going to locate | 07:18 |
| 10 | the address of the tea selling company of Zhipo Chen. | 07:18 |
| 11 | Have you done that? | 07:18 |
| 12 | A.   Yes. | 07:18 |
| 13 | Q.   What is that address? | 07:19 |
| 14 | A.   Software Park, Phase 2, Wanghai Road, No. 39, | 07:19 |
| 15 | Unit 201. | 07:19 |
| 16 | INTERPRETER:  W-a-n-g-h-a-i Road. | |
| 17 | BY MR. KROLL: | 07:20 |
| 18 | Q.   Who owns the building at 39 Wanghai Road? | 07:20 |
| 19 | A.   I'm sorry, it's not possible for me to know | 07:20 |
| 20 | that information. | 07:20 |
| 21 | Q.   Another thing we discussed was the fact that | 07:20 |
| 22 | you looked at a piece of paper in answering one of my | 07:20 |
| 23 | questions, and the document involved personnel. | 07:20 |
| 24 | MR. KROLL:  Perry, have you discussed that | 07:20 |
| 25 | with your client and then are you expecting to send that | 07:20 |

Veritext Legal Solutions
866 299-5127



Page 14

4       Q.   With respect to the sale of OnlineNIC from          07:34

5   Shaohui Gong to Zhipo Chen, there was no written             07:34

6   agreement, is that correct?                                   07:34

7       A.   That's correct.                                      07:34

8       Q.   Is it also correct that the only agreement          07:35

9   between Shaohui Gong and Zhipo Chen for the sale of           07:35

10  OnlineNIC was an oral agreement?                              07:35

11      A.   Based on the information I have learned so           07:35

12  far, yes.                                                     07:35

13      Q.   Did you talk with Zhipo Chen about these            07:35

14  issues in person or on the phone?                             07:35

15      A.   In person.                                           07:35

16      Q.   Where did you have that discussion?                 07:36

17      A.   In the floor below her office.                       07:36

18      Q.   And that's her office at 39 Guanri Road?            07:36

19      A.   Yes.                                                 07:36

20      Q.   Your discussion with Shaohui Gong, was that in     07:36

21  person or over the phone?                                     07:36

22      A.   In person.                                           07:36

23      Q.   Where did that conversation take place?            07:37

24      A.   In his office.                                       07:37

25      Q.   Which is on the fifth floor of 8 Guanri Road?      07:37

Page 15

| | | |
|---|---|---|
| 1 | A.   Yes. | 07:37 |
| 2 | Q.   Other than discussing with Mr. Shaohui Gong | 07:37 |
| 3 | the agreements to sell OnlineNIC and the loan agreement, | 07:37 |
| 4 | what else did you discuss with him yesterday? | 07:37 |
| 5 | A.   With Shaohui Gong, we only discussed and | 07:38 |
| 6 | confirmed the issue related to the agreement or | 07:38 |
| 7 | contracts.  With Zhipo Chen, we discussed the issue | 07:38 |
| 8 | related to the contracts and I also reported to her | 07:38 |
| 9 | regarding the situation on my deposition yesterday. | 07:38 |
| 10 | Q.   What did you report to her? | 07:38 |
| 11 | A.   Regarding the time and schedule of the | 07:39 |
| 12 | deposition.  It was the first day yesterday for the | 07:39 |
| 13 | deposition, and there were three more days to go, and | 07:39 |
| 14 | everything is going smoothly. | 07:39 |
| 15 | Q.   Okay.  Are you aware that ICANN requires | 07:39 |
| 16 | notice of a sale of a registrar to another company? | 07:39 |
| 17 | MR. NARANCIC:  Objection.  Foundation.  Form | 07:39 |
| 18 | of the question. | 07:40 |
| 19 | BY MR. KROLL: | |
| 20 | Q.   You may answer. | 07:40 |
| 21 | A.   First of all, according to my understanding | 07:40 |
| 22 | about the policy of ICANN, this is not selling to | 07:40 |
| 23 | another company.  They only require such a notice when | 07:40 |
| 24 | there is a change to the CEO or the legal representative | 07:40 |
| 25 | of the company. | 07:40 |

Page 16

```
 1              Secondly, as of now, we have not received any    07:40

 2    inquiries of that nature from ICANN.                       07:40

 3         Q.   Let me confirm from you that OnlineNIC did not   07:41

 4    provide any notice to ICANN about the sale of OnlineNIC    07:41

 5    from Shaohui Gong to Zhipo Chen.                           07:41

 6              Is that correct?                                 07:41

 7         A.   This change took place in either 2009 or 2010.   07:41

 8    At that time, I was not the person in charge.  I needed    07:42

 9    to -- I need to check if such a notice existed.            07:42

10         Q.   Today, are you aware of any such notice that     07:42

11    was provided to ICANN regarding the sale of OnlineNIC      07:42

12    from Shaohui Gong to Zhipo Chen?                           07:42

13         A.   As of now, I do not know.                        07:42

14         Q.   Who would know that information?                 07:43

15         A.   I believe it would be the person or the people   07:43

16    who were responsible for operating OnlineNIC at that       07:43

17    time.                                                      07:43

18         Q.   And who was that?                                07:43

19         A.   According to my memory, the person in charge     07:43

20    of the operation of OnlineNIC back then was Joe Li.        07:43

21         Q.   One other issue that we discussed yesterday at   07:44

22    your deposition was the lack of a verification by          07:44

23    OnlineNIC of its amended response, the first set of        07:44

24    requests for admissions.                                   07:44

25              MR. KROLL:  Perry, have you undertaken that as   07:44
```

Page 17



```
 1        A.   I do not think so.                          07:47

 ▮        ████████████████████████████    ██

 ▮   █████████████████████████████████    ██

 ▮   ██████████████████████████████       ██

 ▮   ████████████                         ██

 ▮        ████████████████████████████    ██

 7        MR. NARANCIC:  Howard, did you hear me?          07:49

 8        That was on mute.                                07:49

 9        MR. KROLL:  I'm sorry, what?                     07:49

10        MR. NARANCIC:  I said something but I was on     07:49

11   mute, and you responded.                              07:49

12        Do you read lips?                                07:49

13        MR. KROLL:  Sorry.  No.                          07:49

14   BY MR. KROLL:

 ▮        ▮    ████████████████████████    ██

 ▮             ██████████████████          ██

 ▮        ▮    ██████████████████████      ██

 ▮        ▮    ████████████████████████    ██

 ▮        ▮    ████████████████████████    ██

 ▮   █████████                             ██

 ▮             ███████████████████████████ ██

 ▮        ▮    ██████████████████████      ██

 ▮   ██████████                            ██

 ▮        ▮    ██████                       ██

 ▮             ██████████████████████████  ██
```

Page 19

Veritext Legal Solutions
866 299-5127



Page 20



Page 22

```
 1              INTERPRETER:  Howard, I did not get a chance      08:21

 2    to interpret Ms. Yu's response to the previous question.   08:21

 3              She said, "Yes."  She said, "Yes."               08:21

 4    BY MR. KROLL:                                              08:21

 5       Q.   Yesterday, we were talking about Rex Liu as an     08:21

 6    employee of OnlineNIC.                                     08:21

 7              What is Rex Liu's Chinese name?                  08:22

 8       A.   I'm sorry, I do not know his Chinese name, I       08:22

 9    only know his full English name.  If you want to know      08:22

10    his Chinese name, I can ask him after today's              08:22

11    deposition.                                                08:22

12       Q.   I think we'll be able to get there a different     08:22

13    way.                                                       08:22

14              How old is Mr. Liu?                              08:22

15       A.   About 60.                                          08:22

16       Q.   Yesterday, you testified that Mr. Liu was not      08:23

17    an officer of OnlineNIC, is that correct?                  08:23

18       A.   That's correct.  He was not an officer,            08:23

19    according to my understanding about his role involving     08:23

20    in the operation of OnlineNIC, and according to my         08:23

21    understanding about him.                                   08:23

22       Q.   And currently, he's not an officer of              08:24

23    OnlineNIC, is that correct?                                08:24

24       A.   That's correct.                                    08:24

25       Q.   We also discussed Sily Chen, who was or is in      08:24
```

Page 25

```
1    charge of the financial matters of OnlineNIC.              08:24

2            Do you recall that?                                08:24

3        A.   Yes.                                              08:24

4        Q.   Do you know Sily Chen's English name?            08:24

5        A.   This is her English name.                        08:24

6        Q.   What is her Chinese name?                        08:25

7        A.   Lili Chen.                                        08:25

8            INTERPRETER:  L-i-l-i C-h-e-n.                     08:25

9    BY MR. KROLL:                                              08:25

10       Q.   And how old is Ms. Chen?                          08:25

11       A.   In her 30s.                                       08:25

12       Q.   You also testified that even though she is in    08:25

13   charge of the financial matters of OnlineNIC, that she's  08:26

14   not the chief financial officer, is that correct?         08:26

15       A.   At least, she was not given such a title or a    08:26

16   position among the management team of OnlineNIC.          08:26

17       Q.   Who's the management team of OnlineNIC?          08:26

18       A.   I'm not sure what you're asking about for this   08:26

19   question.                                                 08:27

20           Are you asking about the number of people on      08:27

21   the team or the names of the people on the team?          08:27

22       Q.   The names of the people on the management team   08:27

23   of OnlineNIC.                                              08:27

24       A.   First of all, the CEO is Zhipo Chen.  The vice   08:27

25   president is me.  The support manager is Jack.  The last  08:27
```

Page 26

```
 1    BY MR. KROLL:

 2        Q.   What is the Chinese name of Leon Huang?        08:40

 3        A.   Huang Zhenxin.                                  08:40

 4             INTERPRETER:  H-u-a-n-g, family name;

 5    Z-h-e-n-x-i-n, first name.

 6    BY MR. KROLL:

 7        Q.   What is the first name of the technical         08:41

 8    manager, whose last name is Wang?                        08:41

 9        A.   Huidong Wang.                                   08:41

10             INTERPRETER:  H-u-i-d-o-n-g, first name;

11    W-a-n-g, last name.

12    BY MR. KROLL:

13        Q.   Does he have an English name?                   08:41

14        A.   Which one are you asking about?                 08:41

15        Q.   Huidong Wang.                                   08:41

16        A.   His English name is Evan.                       08:41

17             INTERPRETER:  E-v-a-n.                           08:41

18    BY MR. KROLL:

19        Q.   Let's see if I have this right.                 08:42

20             The CEO, the vice president, the support        08:42

21    manager, the marketing manager, the sales manager and   08:42

22    the technical manager are the management team of         08:42

23    OnlineNIC, is that correct?                              08:42

24        A.   Yes.                                            08:42

25        Q.   Do all of the managers report to you, as the   08:42
```

Page 30

```
1    vice president?                                        08:42

2         A.   Yes.                                         08:42

3         Q.   I believe you testified that the management  08:43

4    team does not refer to Sily Chen or give her the title 08:43

5    of chief financial officer, is that correct?           08:43

6         A.   That's right.                                08:43

7              MR. KROLL:  I'd like to mark as Exhibit 9 the 08:43

8    2017 statement of information to the Secretary of State. 08:43

9              (Exhibit 9 marked for identification.)       08:44

10   BY MR. KROLL:                                           08:44

11        Q.   Ms. Yu, do you see that document?            08:44

12        A.   Which one, Exhibit 9?                         08:44

13        Q.   9.                                            08:44

14        A.   Yes.                                          08:45

15        Q.   This is a document filed with the Secretary of 08:45

16   State for the State of California, filed by OnlineNIC on 08:45

17   July 24, 2017.  It is titled "Statement of Information." 08:45

18   It lists three officers of OnlineNIC.                   08:45

19             Do you see that?                              08:45

20        A.   Yes.                                          08:45

21        Q.   It lists Rex Liu as an officer of OnlineNIC.  08:45

22             Do you see that?                              08:46

23        A.   Yes.                                          08:46

24        Q.   Is that a correct statement to the Secretary  08:46

25   of State?                                               08:46
```

Page 31

```
 1        Q.   Are you a director of OnlineNIC?              08:54

 2             MR. NARANCIC:  Objection.  Vague and          08:54

 3   ambiguous.  Calls for legal conclusion.                 08:54

 4   BY MR. KROLL:

 5        Q.   You may answer.                               08:54

 6        A.   At that time, I was.                          08:54

 7        Q.   Are you still a director of OnlineNIC?        08:54

 8        A.   I am not.                                     08:54

 9        Q.   Who's a director of OnlineNIC?                08:54

10        A.   Right now, we do not have such a position.    08:54

11        Q.   When did you stop becoming a director of      08:55

12   OnlineNIC?                                              08:55

13             MR. NARANCIC:  Objection.  Vague and          08:55

14   ambiguous.  Calls for speculation.                      08:55

15   BY MR. KROLL:                                           08:55

16        Q.   You may answer.                               08:55

17        A.   There are a lot of questions you have asked    08:56

18   today, they are not related to the deposition notice so  08:56

19   it's hard for me to answer those questions.  Those       08:56

20   questions would call for information from a long time     08:56

21   ago.  It's hard for me to recall and remember.  If you    08:56

22   really want the information, I can look and see if such   08:56

23   relevant records exist, and then I can provide the        08:56

24   information to you, if they are available, either          08:56

25   tomorrow or at the next deposition.                       08:56
```

Page 35

| | | |
|---|---|---|
| 1 | A.   In her 30s, below 40, or around 40, it seems | 09:04 |
| 2 | like. | 09:05 |
| 3 | Q.   Does she speak English? | 09:05 |
| 4 | A.   No. | 09:05 |
| 5 | Q.   Does she read and understand English? | 09:05 |
| 6 | A.   No. | 09:05 |
| 7 | Q.   Was the 2013 RAA between ICANN and OnlineNIC | 09:05 |
| 8 | translated for her into Chinese? | 09:05 |
| 9 | A.   No. | 09:06 |

[REDACTED]

| | | |
|---|---|---|
| 19 | Q.   In 2009 or 2010, when she purchased OnlineNIC | 09:07 |
| 20 | from Shaohui Gong, did she become the sole shareholder | 09:07 |
| 21 | of OnlineNIC? | 09:07 |
| 22 | A.   In fact, she had already become a de facto | 09:07 |
| 23 | shareholder of OnlineNIC. | 09:08 |
| 24 | Q.   What does that mean? | 09:08 |
| 25 | A.   According to our informal process internally | 09:08 |

Page 39

| | | |
|---|---|---|
| 1 | in the company, I believe that there would be delays | 09:08 |
| 2 | when documents and information were filed with the | 09:09 |
| 3 | government and relevant agencies in terms of the | 09:09 |
| 4 | updating of the information, and we often do that. | 09:09 |
| 5 | Q.    What government and relevant agency are you | 09:09 |
| 6 | referring to? | 09:09 |
| 7 | A.    That would include all of the third-party | 09:09 |
| 8 | agencies that we work with. | 09:09 |
| 9 | Q.    And who are those companies? | 09:09 |
| 10 | A.    For example, ICANN and the Bureau of | 09:09 |
| 11 | Registration and the relevant government agencies and | 09:10 |
| 12 | authorities. | 09:10 |
| 13 | Q.    Is the Bureau of Registration in the United | 09:10 |
| 14 | States or in China? | 09:10 |
| 15 | A.    Based on what I remember, the majority of them | 09:10 |
| 16 | would be based in the United States and Europe. | 09:10 |
| 17 | Q.    When did Ms. Chen become the de facto | 09:11 |
| 18 | shareholder of OnlineNIC? | 09:11 |
| 19 | A.    Based on the information she told me, I | 09:11 |
| 20 | believe the timing was the end of 2009 or the beginning | 09:11 |
| 21 | of 2010. | 09:11 |

Page 40



Page 41



Page 42



Page  43

9      Q.    I have some more questions about Zhipo Chen.      09:25

10            What is the name of the tea company that she      09:25

11    owns?                                                    09:25

12      A.    In China, particularly in Xiamen, a lot of       09:25

13    people there -- I mean, in the Fujian province, a lot of 09:26

14    people there, they love to drink tea, so there are a lot 09:26

15    of places that are used as their personal studio or like 09:26

16    a tea salon, and those studios, or salons, do not have a  09:26

17    name.  To me, it is simply a place where people can get   09:26

18    together for meetings or for tea drinking, and there is   09:26

19    no name indicated on the work registration and permit of  09:26

20    that facility she owned, but it is, to me, obviously, a   09:27

21    place where it sells a lot of things related to tea.      09:27

22      Q.    In 2009, when she purchased OnlineNIC from        09:27

23    Mr. Shaohui Gong, did she have any experience as a        09:27

24    Registrar of domain names?                                09:27

25      A.    First of all, too much time has elapsed from      09:27

Page 44

```
 1    that time, and, secondly, I was not the person in charge     09:28

 2    of that.  So, regarding whether or not she had such          09:28

 3    persons in 2009, I do not know and I am not sure about        09:28

 4    it.                                                            09:28

 5         Q.   Other than OnlineNIC and the tea company, are       09:28

 6    there any other companies that Zhipo Chen runs?               09:28

 7         A.   Whether she does or does not, I don't feel          09:28

 8    that would be the information she would tell me.               09:28

 9         Q.   How did she meet Mr. Shaohui Gong?                   09:29

10         A.   I do not have this information.                     09:29

11         Q.   Does she have a personal relationship with         09:29

12    Mr. Shaohui Gong?                                              09:29

13         A.   What aspect are you asking about when you say       09:29

14    "a personal relationship"?                                     09:29

15         Q.   Do they have a social relationship?                 09:29

16         A.   Based on what I know, they are friends.             09:29

17         Q.   Were they friends before 2009?                      09:30

18         A.   Yes.                                                 09:30

19         Q.   Do they have an intimate relationship with         09:30

20    each other?                                                    09:30

21         A.   Based on what I know, no.                           09:30

22         Q.   Going back to the management team for               09:30

23    OnlineNIC, are all members of the management team             09:30

24    employees of 35.CN?                                            09:30

25         A.   Yes.                                                 09:30
```

Page 45

```
 1              MR. NARANCIC:  Howard, whenever you feel       09:31

 2     comfortable --                                          09:31

 3              MR. KROLL:  I have one more question and then  09:31

 4     we'll take a break.                                     09:31

 5              MR. NARANCIC:  No problem.                      09:31

 6     BY MR. KROLL:                                           09:31

 7         Q.   And are all members of the management team    09:31

 8     paid by 35.CN?                                          09:31

 9         A.   All the people are paid by 35.CN, for all     09:31

10     those people I just named, except for Zhipo Chen.      09:31

11         Q.   Does she receive any salary?                  09:32

12         A.   Not to my knowledge.                          09:32

13         Q.   Does she receive any money from OnlineNIC for 09:32

14     acting as the CEO?                                      09:32

15         A.   According to the financial information I have 09:32

16     come into contact with during the past few days for my 09:32

17     preparation for the deposition, the answer is no.      09:32

18         Q.   And just to make sure, is Zhipo Chen an       09:32

19     employee of 35.CN?                                      09:32

20              MR. NARANCIC:  Objection to form.             09:33

21              THE WITNESS:  She is not.                     09:33

22     BY MR. KROLL:                                          09:33

23         Q.   Has Zhipo Chen ever been an employee of 35.CN? 09:33

24              MR. NARANCIC:  Same objection.                09:33

25              THE WITNESS:  No.                             09:33
```

Page 46



Page 49



Page 55



Page 57



Page  58



Page 59



Page 60



Page 61



Page 62



Page 63



Page 64



Page 65

| | | |
|---|---|---|
| 1 | If you want to know the information, I can ask | 11:34 |
| 2 | Rex or ask Shaohui Gong. | 11:34 |
| 3 | Q.   You've repeatedly said that Rex Liu is a | 11:34 |
| 4 | long-standing employee of OnlineNIC. | 11:34 |
| 5 | When did he begin work at OnlineNIC? | 11:34 |
| 6 | A.   I do not know the exact date, but he must have | 11:35 |
| 7 | joined OnlineNIC and started to work for OnlineNIC | 11:35 |
| 8 | before me.  The reason I say that was because he was | 11:35 |
| 9 | already an employee of OnlineNIC when I was appointed to | 11:35 |
| 10 | attend to work related to OnlineNIC. | 11:35 |
| 11 | Q.   And you started to work for OnlineNIC in 2002, | 11:35 |
| 12 | is that correct? | 11:35 |
| 13 | A.   Yes. | 11:35 |
| 14 | Q.   From 2002 until 2009, when Mr. Shaohui Gong | 11:36 |
| 15 | sold OnlineNIC to Zhipo Chen, did Mr. Shaohui Gong ever | 11:36 |
| 16 | sell OnlineNIC to anyone else? | 11:36 |
| 17 | A.   Based on what I know, I'm not sure if he had | 11:36 |
| 18 | that idea, but it never happened. | 11:37 |
| 19 | Q.   What never happened? | 11:37 |
| 20 | A.   To sell OnlineNIC prior to 2009. | 11:37 |
| 21 | Q.   When did OnlineNIC go public?  Strike that. | 11:37 |
| 22 | When did 35.CN go public? | 11:37 |
| 23 | A.   If I remember it correctly, I think it was | 11:38 |
| 24 | around 2010. | 11:38 |
| 25 | Q.   Are you familiar with the initial public | 11:38 |

Page 73

```
 1   offering of 35.CN?                                    11:38

 2        A.   I'm not.                                    11:38

 3        Q.   According to the initial public offering of  11:38

 4   35.CN, 35.CN makes representation that Mr. Shaohui Gong  11:39

 5   sold OnlineNIC to Rex Liu in 2007.                    11:39

 6             Are you aware of that information?          11:39

 7             MR. NARANCIC:  Objection.  Foundation.      11:39

 8   Objection to form.                                    11:39

 9             THE WITNESS:  I certainly do not know that.  11:39

10             Did you say he intend to sell it in 2007 or he  11:40

11   already sold it in 2007?                              11:40

12   BY MR. KROLL:                                         11:40

13        Q.   He sold it in 2007.                         11:40

14             MR. KROLL:  I'd like to mark as Exhibit 15 a  11:40

15   PDF of the initial public offering of 35.CN that is in  11:40

16   Chinese.                                              11:40

17             (Exhibit 15 marked for identification.)     11:41

18             MR. KROLL:  And to mark as Exhibit 16 a Word  11:41

19   document, which is a Google Translate of the initial   11:41

20   public offering.                                      11:41

21             (Exhibit 16 marked for identification.)     11:41

22             MR. KROLL:  I think it will take a while for  11:41

23   this to load.                                         11:41

24             Exhibit 15 has loaded, and that's in Chinese.  11:42

25             MS. GUYE:  The English translation document   11:42
```

Page 74

```
 1   doesn't seem to be loading.                        11:42

 2          There, it just went through.                11:43

 3   BY MR. KROLL:                                       11:43

 4      Q.   Ms. Yu, have you seen Exhibit 15 before?    11:43

 5      A.   No, this is the first time I see a document 11:43

 6   like this.                                          11:44

 7      Q.   Do you understand it to be the initial public 11:44

 8   offering of 35.CN?                                  11:44

 9      A.   Yes.                                         11:44

10      Q.   I'm actually having a hard time trying to do 11:44

11   control-F, Find, on these documents.                11:44

12          MR. KROLL:  Off the record for a second.    11:45

13          VIDEOGRAPHER:  This marks the end of Media   11:45

14   No. 5.  The time is 11:45 a.m.  We are off the record. 11:45

15          (Discussion off the record.)                11:45

16          VIDEOGRAPHER:  This marks the beginning of   11:57

17   Media No. 6.  The time is 11:57 a.m.  We are on the 11:57

18   record.                                             11:57

19   BY MR. KROLL:                                       11:57

20      Q.   Ms. Yu, you understand you are still under  11:58

21   oath?                                               11:58

22      A.   Yes.                                         11:58

23      Q.   We've been discussing Exhibit 15 and Exhibit 11:58

24   16 off-line.                                        11:58

25          Have you followed that discussion?          11:58
```

Page 75

| | | |
|---|---|---|
| 1 | A.    Were you discussing the IPO documents of | 11:58 |
| 2 | 35.CN? | 11:58 |
| 3 | Q.    Yes. | 11:58 |
| 4 | On the Chinese version, which is Exhibit 15 -- | 11:58 |
| 5 | I don't have the page number. | 11:59 |
| 6 | MR. KROLL:  Amanda, do you have the page | 11:59 |
| 7 | number? | 11:59 |
| 8 | INTERPRETER:  No. | 11:59 |
| 9 | MR. KROLL:  David, do you have a page number? | 11:59 |
| 10 | MR. STEELE:  I'm checking. | 11:59 |
| 11 | From the English document? | 11:59 |
| 12 | MR. KROLL:  No, the Chinese. | 11:59 |
| 13 | MR. STEELE:  I believe it is page 122 of 247. | 11:59 |
| 14 | BY MR. KROLL: | 11:59 |
| 15 | Q.    Ms. Yu, if you could turn to page 122 of 247 | 11:59 |
| 16 | on Exhibit 15, which, I believe, for the record and for | 11:59 |
| 17 | those English speakers, is page 306 of 629 on Exhibit | 11:59 |
| 18 | 16. | 12:00 |
| 19 | Ms. Yu, have you reached page 122? | 12:00 |
| 20 | A.    Yes. | 12:00 |
| 21 | Q.    Do you see on page 122 the stock purchase | 12:00 |
| 22 | agreement on November 28, 2007, between Gong Shaohui and | 12:00 |
| 23 | Rex Liu? | 12:00 |
| 24 | A.    Yes. | 12:00 |
| 25 | Q.    Were you aware that on November 28, 2007, | 12:01 |

Page 76

```
1    Mr. Shaohui Gong sold OnlineNIC to Rex Liu for $10,000?        12:01

2         A.   I was not aware of that.                             12:01

3         Q.   Are you aware that Rex Liu ever owned                12:01

4    OnlineNIC?                                                     12:01

5         A.   I am not aware of that.                              12:01

6         Q.   Do you know when Mr. Shaohui Gong -- strike          12:02

7    that.                                                          12:02

8              Do you know if Mr. Shaohui Gong repurchased          12:02

9    OnlineNIC from Rex Liu at another time?                        12:02

10        A.   I do not know.                                       12:02

11             Like what I said yesterday, during that period       12:02

12   of time, I was simply a basic fundamental employee.  I         12:02

13   was just a customer service personnel, so I would not          12:03

14   have known these things.                                       12:03

15        Q.   Well, in 2000, you were a salesperson for            12:03

16   OnlineNIC working at 35.CN, correct?                           12:03

17        A.   You misspoke.                                        12:03

18             Did you say 2000?                                    12:03

19        Q.   No, 2007.                                            12:03

20        A.   I was working as customer support.                  12:03

21             MR. NARANCIC:  Howard, I don't want to cut you       12:04

22   off, but let's go ten more minutes and then call it a          12:04

23   night.                                                         12:04

24   BY MR. KROLL:                                                  12:04

25        Q.   All right.  I don't think I need to ask any          12:04
```

Page 77

Exhibit 4

Carrie Yu - July 14, 2021

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3
 4   FACEBOOK, INC., AND          )
     INSTAGRAM, LLC,              )
 5                                )
                                  )
 6              PLAINTIFFS,       )
                                  )
 7      VS.                       )   CASE NO. 5:19-CV-07071-SVK
                                  )
 8   ONLINENIC INC.; DOMAIN ID    )
     SHIELD SERVICE CO.,          )
 9   LIMITED; AND DOES 1-20,      )   CERTIFICATE RE
                                  )   NONAPPEARANCE OF
10              DEFENDANTS.       )   CARRIE YU
     _____)
11
12
13           I, MARK MCCLURE, C.S.R. NO. 12203, Certified
14   Shorthand Reporter in and for the County of Santa
15   Barbara, State of California, do hereby certify:
16           That on Wednesday, July 14, 2021, the
17   deposition of Carrie Yu, having been set by notice, was
18   scheduled to be taken by Zoom remote technology, at 4:00
19   p.m., PDT, before me;
20           That at said date and time, I was present at
21   the above-mentioned address;
22           That at 4:00 p.m. of said date, Counsel for
23   the Plaintiffs stated that he had received a message
24   from counsel for the defendants indicating that the
25   deponent would not appear for deposition at the time and
```

Page 1

Carrie Yu - July 14, 2021

```
 1   place so designated.
 2              At 4:00 p.m., with the deponent and
 3   plaintiff counsel having failed to appear, the
 4   following statement was made for the record:
 5              MR. KROLL:  I'd like to mark as
 6              Exhibit 17 to this deposition the
 7              Plaintiff's Special Court Ordered Notice
 8              of Deposition of Domain ID Shield Service
 9              Company Limited Pursuant to Federal Rule
10              of Civil Procedure 30(b)(6).
11              (Exhibit No. 17 marked for
12              identification.)
13              MR. KROLL:  This deposition was
14              scheduled pursuant to this notice and the
15              court's order to begin today, July 14, at
16              4:00 o'clock p.m., to last until 9:00
17              o'clock p.m., and continue tomorrow, July
18              15, from 4:00 o'clock p.m. to 9:00
19              o'clock p.m.
20              About a half an hour ago, I received
21              an email from Perry Narancic, who
22              represents Domain ID Shield.  I have his
23              permission to read the email into the
24              record.
25              He writes:  "Defendants are not in a
```

                                                Page 2

Carrie Yu - July 14, 2021

```
 1          position to continue to defend this
 2          litigation at this time due to inadequate
 3          financial resources and other matters.
 4          Defendants are evaluating their options
 5          at this time to determine if the
 6          situation can be remedied.
 7               "Accordingly, defendants will not be
 8          able to be present at today's scheduled
 9          deposition of Domain ID Shield and ask
10          that they be continued for one week to
11          allow defendants time to conclude their
12          assessment.
13               "Feel free to ring me, if you wish to
14          discuss."
15               I did speak with Mr. Narancic.  I've
16          also sent him an email and told him that
17          we expected his client to appear at the
18          deposition, given the notice and given
19          the court's order.  There is a status
20          conference scheduled for Tuesday, and I
21          told him that we will address this issue
22          before per then.
23               I have nothing further to add.
24               Thank you very much.
25     ///
```

Page  3

Carrie Yu - July 14, 2021

1          I CERTIFY THAT I AM NOT COUNSEL TO ANY OF THE

2     PARTIES HEREIN, NOR IN ANY MANNER INTERESTED IN THE

3     OUTCOME OF SUCH ACTION.

4

5          IN WITNESS WHEREOF, I HAVE HEREUNTO SUBSCRIBED

6     MY NAME THIS 14TH DAY OF JULY, 2021.

7

8

9

10          MARK MCCLURE, C.S.R. NO. 12203

11          CERTIFIED SHORTHAND REPORTER

12          COUNTY OF SANTA BARBARA, STATE OF CALIFORNIA

13

14

15

16

17

18

19

20

21

22

23

24

25

                                              Page  4

**[07071 - record]**

| 0 |
|---|
| **07071**  1:7 |

| 1 |
|---|
| **1-20**  1:9 |
| **12203**  1:13 4:10 |
| **14**  1:16 2:15 |
| **14th**  4:6 |
| **15**  2:18 |
| **17**  2:6,11 |
| **17688**  4:9 |

| 2 |
|---|
| **2021**  1:16 4:6 |

| 3 |
|---|
| **30**  2:10 |

| 5 |
|---|
| **5:19**  1:7 |

| 6 |
|---|
| **6**  2:10 |

| a |
|---|
| **able**  3:8 |
| **action**  4:3 |
| **add**  3:23 |
| **address**  1:21 3:21 |
| **ago**  2:20 |
| **allow**  3:11 |
| **appear**  1:25 2:3 3:17 |
| **assessment**  3:12 |

| b |
|---|
| **b**  2:10 |
| **barbara**  1:15 4:12 |

| c |
|---|
| **c.s.r.**  1:13 4:10 |
| **california**  1:2,15 4:12 |
| **carrie**  1:10,17 |

**case**  1:7
**certificate**  1:9
**certified**  1:13 4:11
**certify**  1:15 4:1
**civil**  2:10
**client**  3:17
**company**  2:9
**conclude**  3:11
**conference**  3:20
**continue**  2:17 3:1
**continued**  3:10
**counsel**  1:22,24 2:3 4:1
**county**  1:14 4:12
**court**  1:1 2:7
**court's**  2:15 3:19
**cv**  1:7

| d |
|---|
| **date**  1:20,22 |
| **day**  4:6 |
| **defend**  3:1 |
| **defendants**  1:10 1:24 2:25 3:4,7,11 |
| **deponent**  1:25 2:2 |
| **deposition**  1:17,25 2:6,8,13 3:9,18 |
| **designated**  2:1 |
| **determine**  3:5 |
| **discuss**  3:14 |
| **district**  1:1,2 |
| **domain**  1:8 2:8,22 3:9 |
| **due**  3:2 |

| e |
|---|
| **email**  2:21,23 3:16 |
| **evaluating**  3:4 |
| **exhibit**  2:6,11 |
| **expected**  3:17 |

| f |
|---|
| **facebook**  1:4 |
| **failed**  2:3 |
| **federal**  2:9 |
| **feel**  3:13 |
| **financial**  3:3 |
| **following**  2:4 |
| **free**  3:13 |
| **further**  3:23 |

| g |
|---|
| **given**  3:18,18 |

| h |
|---|
| **half**  2:20 |
| **hereunto**  4:5 |
| **hour**  2:20 |

| i |
|---|
| **identification**  2:12 |
| **inadequate**  3:2 |
| **indicating**  1:24 |
| **instagram**  1:4 |
| **interested**  4:2 |
| **issue**  3:21 |

| j |
|---|
| **july**  1:16 2:15,17 4:6 |

| k |
|---|
| **kroll**  2:5,13 |

| l |
|---|
| **limited**  1:9 2:9 |
| **litigation**  3:2 |
| **llc**  1:4 |

| m |
|---|
| **manner**  4:2 |
| **mark**  1:13 2:5 4:10 |
| **marked**  2:11 |
| **matters**  3:3 |

**mcclure**  1:13 4:10
**mentioned**  1:21
**message**  1:23

| n |
|---|
| **name**  4:6 |
| **narancic**  2:21 3:15 |
| **nonappearance**  1:9 |
| **northern**  1:2 |
| **notice**  1:17 2:7,14 3:18 |

| o |
|---|
| **o'clock**  2:16,17,18 2:19 |
| **onlinenic**  1:8 |
| **options**  3:4 |
| **order**  2:15 3:19 |
| **ordered**  2:7 |
| **outcome**  4:3 |

| p |
|---|
| **p.m.**  1:19,22 2:2 2:16,17,18,19 |
| **parties**  4:2 |
| **pdt**  1:19 |
| **permission**  2:23 |
| **perry**  2:21 |
| **place**  2:1 |
| **plaintiff**  2:3 |
| **plaintiff's**  2:7 |
| **plaintiffs**  1:6,23 |
| **position**  3:1 |
| **present**  1:20 3:8 |
| **procedure**  2:10 |
| **pursuant**  2:9,14 |

| r |
|---|
| **read**  2:23 |
| **received**  1:23 2:20 |
| **record**  2:4,24 |

Page 1

Carrie Yu - July 14, 2021

**[remedied - zoom]**

| | |
|---|---|
| **remedied**  3:6 | **tuesday**  3:20 |
| **remote**  1:18 | **u** |
| **reporter**  1:14 4:11 | **united**  1:1 |
| **represents**  2:22 | **v** |
| **resources**  3:3 | **vs**  1:7 |
| **ring**  3:13 | **w** |
| **rule**  2:9 | **wednesday**  1:16 |
| **s** | **week**  3:10 |
| **santa**  1:14 4:12 | **whereof**  4:5 |
| **scheduled**  1:18 | **wish**  3:13 |
|   2:14 3:8,20 | **witness**  4:5 |
| **sent**  3:16 | **writes**  2:25 |
| **service**  1:8 2:8 | **y** |
| **set**  1:17 | **yu**  1:10,17 |
| **shield**  1:8 2:8,22 | **z** |
|   3:9 | **zoom**  1:18 |
| **shorthand**  1:14 | |
|   4:11 | |
| **signature**  4:9 | |
| **situation**  3:6 | |
| **speak**  3:15 | |
| **special**  2:7 | |
| **state**  1:15 4:12 | |
| **stated**  1:23 | |
| **statement**  2:4 | |
| **states**  1:1 | |
| **status**  3:19 | |
| **subscribed**  4:5 | |
| **svk**  1:7 | |
| **t** | |
| **taken**  1:18 | |
| **technology**  1:18 | |
| **thank**  3:24 | |
| **time**  1:20,25 3:2,5 | |
|   3:11 | |
| **today**  2:15 | |
| **today's**  3:8 | |
| **told**  3:16,21 | |
| **tomorrow**  2:17 | |

Veritext Legal Solutions
866 299-5127

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

### VERITEXT LEGAL SOLUTIONS
### COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

TUCKER ELLIS LLP
David J. Steele SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone: 213.430.3400
Facsimile: 213.430.3409

DAVIS POLK & WARDWELL LLP
Ashok Ramani SBN 200020
ashok.ramani@davispolk.com
Micah G. Block SBN 270712
micah.block@davispolk.com
Cristina M. Rincon *Pro Hac Vice*
cristina.rincon@davispolk.com
1600 El Camino Real
Menlo Park, CA 94025
Telephone: 650.752.2000
Facsimile: 650.752.2111

Attorneys for Plaintiffs,
FACEBOOK, INC. and INSTAGRAM, LLC

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

FACEBOOK, INC. and INSTAGRAM, LLC,

Plaintiffs,

v.

ONLINENIC INC.; DOMAIN ID SHIELD SERVICE CO., LIMITED; and DOES 1-20,

Defendants.

Case No. 5:19-cv-07071-SVK

**PLAINTIFFS' SPECIAL COURT ORDERED NOTICE OF DEPOSITION OF DOMAIN ID SHIELD SERVICE CO., LIMITED PURSUANT TO FED. R. CIV. P. 30(b)(6)**

Hon. Susan van Keulen

Exhibit
0017
7/14/2021
Domain ID Shiel 30(b)(6) - V1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Rules 30(b)(6) and 45 of the Federal Rules of Civil Procedure, and the Court's order (ECF No. 104), Plaintiffs Facebook, Inc. ("Facebook") and Instagram, LLC ("Instagram") will take the deposition upon oral examination of Domain ID Shield Service Co., Limited ("Domain ID Shield") on July 14, 2021 at 4:00 P.M. to 9:00 P.M., and continued on July 15, 2021 at 4:00 P.M. to 9:00 P.M.at Tucker Ellis LLP, 201 Mission Street, Suite 2310, San Francisco, CA 94105, or at another time and place mutually agreeable to the parties.

Pursuant to Rule 30(b)(6), the deponent is obligated to designate one or more of its officers, directors, managing agents, or other consenting person to testify in this action as to matter known or reasonably available to the deponent with respect to the subject matters listed in Attachment A. You are invited to attend and cross-examine. It is hereby requested that the deponent identify those persons whom it will designate to testify concerning the listed matters by no later than seven days prior to the date of deposition.

This deposition will be taken under oath before a certified court reporter or notary public duly authorized to administer oaths. The deposition will be recorded stenographically and/or by audiovisual means and may be conducted via Zoom or other videoconferencing software. The noticing party also reserves the right to use the instant visual display of the testimony during the deposition.

DATED: June 22, 2021                          Tucker Ellis LLP


                                              By: /s/David J. Steele
                                                  David J. Steele
                                                  Howard A. Kroll
                                                  Steven E. Lauridsen

                                              Davis Polk & Wardwell, LLP
                                                  Ashok Ramani
                                                  Micah G. Block
                                                  Cristina M. Rincon

                                              Attorneys for Plaintiffs,
                                              FACEBOOK, INC. and INSTAGRAM, LLC

PLAINTIFFS' SPECIAL COURT ORDERED NOTICE OF DEPOSITION OF DOMAIN ID SHIELD
CASE NO. 5:19-CV-07071-SVK

**ATTACHMENT A**

**DEFINITIONS**

Unless specifically indicated, or otherwise required by the context in which the terms and names are used the following definitions shall apply:

A.      "FACEBOOK" shall mean Plaintiff Facebook, Inc.

B.      "INSTAGRAM" shall mean Plaintiff Instagram, LLC.

C.      "PLAINTIFFS" shall mean FACEBOOK and INSTAGRAM, collectively and individually.

D.      "DOCUMENT(S)" shall have the broadest possible meaning permissible by Rules 26 and 34(a)(1) of the Federal Rules of Civil Procedure, and shall include both documents or electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.

E.      "ONLINENIC" shall mean Defendant OnlineNIC Inc.

F.      "DOMAIN ID SHIELD" shall mean Defendant Domain ID Shield Service Co., Limited.

G.      "DEFENDANTS" shall mean ONLINENIC and DOMAIN ID SHIELD, collectively and individually.

H.      "35.CN" shall mean Xiamen 35 Internet Technology Co., Ltd. aka 35 Technology Co., Ltd a/k/a 35cn a/k/a 35.cn a/k/a 35.com.

I.      "DISCOVERY RESPONSES" shall mean DEFENDANTS' responses and the production of documents by DEFENDANTS in response to (1) PLAINTIFFS' Fifth Set of Request for Production of Documents to DOMAIN ID SHIELD, (2) PLAINTIFFS' Sixth Set of Request for Production of Documents to ONLINENIC, (3) FACEBOOK's First Set of Interrogatories to DEFENDANTS, and (4) FACEBOOK's Special Court Ordered Interrogatories to DEFENDANTS.

PLAINTIFFS' SPECIAL COURT ORDERED NOTICE OF DEPOSITION OF DOMAIN ID SHIELD
CASE NO. 5:19-CV-07071-SVK

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

J.    "DEFENDANTS' FINANCIAL STATEMENTS" shall mean DEFENDANTS' financial books and records, balance sheets, expense schedule, tax returns, accounting records, income statements, profit and loss statements, spreadsheets, and revenue and expense statements, including all supporting documents. This category of documents includes but is not limited to those produced by DEFENDANTS as ONLINENIC 283375 to ONLINENIC 283906 and the single page of financial statements produced by ONLINENIC on April 12, 2021.

## DEPOSITION TOPICS

1.    DEFENDANTS' DISCOVERY RESPONSES.

2.    Preparation of DEFENDANTS' DISCOVERY RESPONSES.

3.    DEFENDANTS' FINANCIAL STATEMENTS.

4.    Preparation of DEFENDANTS' FINANCIAL STATEMENTS.

5.    DEFENDANTS' business and financial relationship with 35.CN.

6.    Payments made by 35.CN to DEFENDANTS and documents relating to such payments.

7.    Payments made by 35.CN on behalf of DEFENDANTS and documents relating to such payments.

8.    Payments made by DEFENDANTS to 35.CN and documents relating to such payments.

9.    Payments made by DEFENDANTS on behalf of 35.CN and documents relating to such payments.

10.    Loans made by DEFENDANTS since 2009, and repayment of and documents relating to such loans.

11.    Loans made to DEFENDANTS since 2009, and repayment of and documents relating to such loans.

12.    Loans made on behalf of DEFENDANTS since 2009, and repayment of and documents relating to such loans.

13.    Financial support provided to DOMAIN ID SHIELD since 2009.

14.    Financial transactions between 35.CN and DEFENDANTS.

15.    Assets of DEFENDANTS located in the United States.

Tucker Ellis LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

16.     Assets of 35.CN located in the United States.

17.     Capitalization of DEFENDANTS.

18.     The bank and deposit accounts held by or on behalf of each of the DEFENDANTS, including the balance in each account and the identity of individuals authorized to use or administer those accounts (for the duration of the length of time relevant for the lawsuit).

19.     DEFENDANTS' relationship with Hongxia Yu (aka Carrie Yu), including any ownership interest Ms. Yu has or had in either DEFENDANT, any involvement by Ms. Yu in the operations, finances or management of DEFENDANTS, any use by Ms. Yu of any of DEFENDANTS' assets, and any employment or other relationship Ms. Yu has or had with either DEFENDANT, whether either directly or indirectly.

20.     Hongxia Yu's (aka Carrie Yu) relationship with 35.CN.

21.     Officers of DEFENDANTS since 2009.

22.     Directors of DEFENDANTS since 2009.

23.     Shareholders of DEFENDANTS since 2009.

24.     Employees of DEFENDANTS since 2009.

25.     Shaohui Gong's relationship with DEFENDANTS and 35.CN.

26.     Junru Chen's relationship with DEFENDANTS and 35.CN.

27.     Rex Liu's relationship with DEFENDANTS and 35.CN.

28.     Zhippo Chen's relationship with DEFENDANTS and 35.CN.

29.     Transfer of ownership of DEFENDANTS.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

## CERTIFICATE OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I declare that I am a citizen of the United States and a resident of Los Angeles, California or employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Tucker Ellis LLP, 515 South Flower Street, Forty-Second Floor, Los Angeles, California 90071-2223.

On **June 22, 2021,** I served the following: **PLAINTIFFS' NOTICE OF DEPOSITION OF DOMAIN ID SHIELD SERVICE CO., LIMITED PURSUANT TO FED. R. CIV. P. 30(b)(6)** on the interested parties in this action as follows:

LEXANALYTICA, PC
Perry J. Narancic
pjn@lexanalytica.com
2225 E. Bayshore Road
Suite 200
Palo Alto, CA 94303
Telephone:    650.655.2800

Attorneys for Defendants,
ONLINENIC, INC. and DOMAIN ID SHIELD
SERVICES CO., LIMITED

(X) **BY EMAIL:** the above-entitled document to be served electronically by email by written agreement of the parties.

(  ) **BY MAIL:** By placing a true copy thereof enclosed in a sealed envelope(s) addressed as above, and placing each for collection and mailing on the below indicated day following the ordinary business practices at Tucker Ellis LLP. I certify I am familiar with the ordinary business practices of my place of employment with regard to collection for mailing with the United States Postal Service. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit or mailing affidavit.

(X) **FEDERAL:** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **June 22, 2021**, at Los Angeles, California.

 /s/Howard A. Kroll
Howard A. Kroll

PLAINTIFFS' SPECIAL COURT ORDERED NOTICE OF DEPOSITION OF DOMAIN ID SHIELD
CASE NO. 5:19-CV-07071-SVK

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Exhibit 5

VERIFICATION

I, YU HONGXIA, am an officer of OnlineNIC, Inc. and am authorized to sign this verification. I believe, based on reasonable inquiry, that the foregoing Responses of OnlineNIC, Inc. to Instagram, LLC's' Interrogatories, Set 1 – are true and correct to the best of my knowledge, information and belief.

I verify under penalty of perjury under the laws of the United States that the foregoing is true and correct.


DATED:  May 6, 2021 at Xiamen, China                By:  *Yu Hongxia*
                                                    _____
                                                         Yu Hongxia

VERIFICATION

I, YU HONGXIA, am an officer of Domain ID Shield Services Co., Limited. and am authorized to sign this verification. I believe, based on reasonable inquiry, that the foregoing Responses of Domain ID Shield Services Co., Limited to Plaintiffs' Interrogatories, Set 1 – are true and correct to the best of my knowledge, information and belief.

I verify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED:  December 18, 2020 at    By:    *Yu Hongxia*
Xiamen, China
_____
Yu Hongxia

# Exhibit 6

[ENTIRE EXHIBIT
LODGED UNDER
SEAL]

# Exhibit 7

[ENTIRE EXHIBIT LODGED UNDER SEAL]

# Exhibit 8

[ENTIRE EXHIBIT LODGED UNDER SEAL]

Exhibit 9

[ENTIRE EXHIBIT LODGED UNDER SEAL]

Exhibit 10

[ENTIRE EXHIBIT LODGED UNDER SEAL]

# Exhibit 11

[ENTIRE EXHIBIT LODGED UNDER SEAL]

Exhibit 12

[ENTIRE EXHIBIT
LODGED UNDER
SEAL]

Exhibit 13

[ENTIRE EXHIBIT LODGED UNDER SEAL]

Exhibit 14

1
2
3
4

Perry J. Narancic, SBN 206820
LEXANALYTICA, PC
2225 E. Bayshore Road, Suite 200
Palo Alto, CA  94303
www.lexanalytica.com
pjn@lexanalytica.com
Tel: 650-655-2800

5
6

Attorneys for Defendants
ONLINENIC, INC. and DOMAIN ID SHIELD SERVICE
CO., LIMITED

7

8

## UNITED STATES DISTRICT COURT

9

## NORTHERN DISTRICT OF CALIFORNIA

10

11
12
13
14
15
16
17

FACEBOOK, INC. and INSTAGRAM, LLC

          Plaintiffs,

      v.

ONLINENIC, INC. and DOMAIN ID
SHIELD SERVICE CO., LIMITED.

       Defendants.

Case No. 19-CV-07071-SVK

**FIRST SUPPLEMENTAL
RESPONSE OF ONLINENIC, INC.
TO REQUESTS FOR PRODUCTION
OF DOCUMENTS PROPUNDED BY
FACEBOOK, INC. AND
INSTAGRAM, LLC.**

18
19

PROPOUNDING PARTY:      Facebook, Inc. and Instagram, LLC

20
21

RESPONDING PARTY:       OnlineNIC, Inc.

SET NO.:               One (1)

22
23
24
25

     Defendant OnlineNIC, Inc. ("OnlineNIC") hereby responds to the Request for Production
of Documents propounded by Facebook, Inc. and Instagram, LLC (together, the "Plaintiffs") as
follows:

26

PRELIMINARY STATEMENT

27
28

     A.     The specific responses as set forth below are for the purposes of discovery only and

OnlineNIC does not intend to waive, but expressly reserves, any and all objections and may have

- 1 -

Facebook, Inc. v. OnlineNIC, Inc.                                                                    Case No. 19-cv-7071-SVK
OnlineNIC, Inc.'s First Supplemental Responses to Plaintiffs' Requests for Production of Documents – Set 1

to the relevance, competence, materiality, admissibility or use at trial of any information, documents or writings produced, identified or referred to herein. All such objections may be made at any time up to and including the time of trial.

B.    The following responses are based on information reasonably available to OnlineNIC as of the date of these responses, and upon documents that are in the possession, custody or control of OnlineNIC. OnlineNIC has conducted a diligent search and believes that the document production is substantially complete, except where expressly noted herein. However, due to its limited resources and current pandemic conditions, OnlineNIC's investigation and search for documents and things responsive to these requests are ongoing. Pursuant to Federal Rule of Civil Procedure 26, OnlineNIC specifically reserves the right to revise, supplement and/or amend these responses and, if necessary, to assert additional objections arising from further investigation.

C.    By agreement of the parties, the parties do not seek privilege logs for materials covered by the attorney-client privilege or the attorney work product doctrine where such materials arose after the original complaint was filed in this action.

D.    OnlineNIC expressly reserves its right to rely, at any time during trial, upon subsequently discovered information or information omitted from the specific responses set forth below as a result of mistake, oversight, or inadvertence.

E.    OnlineNIC objects to each and every request to the extent that it seeks information that may be prohibited from disclosure under the General Data Protection Regulation, and OnlineNIC reserves the right to "claw-back" such information if it determines that such "claw-back" is required by applicable law.

F.    References to the "Database Records" refers to OnlineNIC's database records delivered on July 23, 2020, as may be supplemented. Since it is not practicable to legend such database records (as they have been provided in native format) OnlineNIC designates the Database Records as CONFIDENTIAL under the protective order at ECF 37, which applies to all information therein except publicly available WHOIS information. Database Records exclude: (a) account password, (b) login authenticator keys, and (c) API and allowed-IP, on the grounds that such information is not relevant and increase the risk of a security breach. To the extent that any

Database Records have been previously produced without a confidentiality designation, this response serves as notice under Section 5.3 of ECF 37 that such production was inadvertent and that the Database Records pursuant to these responses supplant and replace those database records that were previously provided.

G.    References to "Keyword Dataset" refers to the results of a search conducted by OnlineNIC using search terms provided by Plaintiffs, which search was conducted on OnlineNIC's and Domain ID Shield's emails and support tickets. The Keyword Dataset is provided at Bates numbers  ONLINENIC18278 – ONLINENIC222221.

H.    OnlineNIC has attempted to categorize documents in response to specific Requests based upon its reasonable interpretation of those requests. Any failure to specify a document in response to a particular Request should not be construed as an admission that no documents exists, or that such omitted documents (which are otherwise provided in the production) are not responsive.

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**

For each domain name listed on Exhibit 1, all DOCUMENTS that IDENTIFY the ONLINENIC account or accounts used to register the domain name.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case.  Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files.  The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records.  Subject to these objections, Defendant has produced Database Records. Defendant has also conducted a search in emails and support tickets which are produced at Bates numbers

- 3-

ONLINENIC222222 – ONLINENIC225763. Additional responsive documents may exist in the Keyword Dataset, which has been produced in searchable format. OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 2:**

For each account identified in Request for Production No. 1, all DOCUMENTS relating to the account.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case.  Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files.  The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records.  Subject to these objections, Defendant has conducted a search in the Database Records and responsive material has been produced. Defendant has also conducted a search in emails and support tickets which are produced at Bates numbers ONLINENIC222222 – ONLINENIC225763. Additional responsive documents may exist in the Keyword Dataset, which has been produced in searchable format. OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 3:**

For each account identified in Request for Production No. 2, all DOCUMENTS that IDENTIFY every domain name registered in or associated with the account.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case.  Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the

years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files.  The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records.  Subject to these objections, Defendant has conducted a diligent search in the Database Records and responsive material has been produced. Defendant has also conducted a diligent search in emails and support tickets which are produced at Bates numbers ONLINENIC222222 – ONLINENIC225763.   Additional responsive documents may exist in the Keyword Dataset, which has been produced in searchable format. OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 4:**

For each domain name listed on Exhibit 1, all DOCUMENTS related to the REGISTRATION of the domain name.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case.  Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files.  The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records.  Subject to these objections, Defendant has conducted a diligent search in the Database Records and responsive material has been produced. Defendant has also conducted a diligent search in emails and support tickets which are produced at Bates numbers ONLINENIC222222 – ONLINENIC225763 and ONLINENIC258437- ONLINENIC260023. Additional responsive documents may exist in the Keyword Dataset, which has been produced in

searchable format. OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 5:**

For each domain name listed on Exhibit 1, all DOCUMENTS that IDENTIFY the REGISTRANT of the domain name.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. Subject to these objections, Defendant has conducted a diligent search in the Database Records and responsive material has been produced. Defendant has also conducted a search in emails and support tickets which are produced at Bates numbers ONLINENIC222222 – ONLINENIC225763 and ONLINENIC258437- ONLINENIC260023. Additional responsive documents may exist in the Keyword Dataset, which has been produced in searchable format. OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 6:**

For each domain name listed on Exhibit 1, all DOCUMENTS related to the TRAFFICKING IN of the domain name.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million

- 6-

emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files.  The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records.  Subject to these objections, Defendant has conducted a search in the Database Records and responsive material has been produced. Additional responsive documents may exist in the Keyword Dataset, which has been produced in searchable format. OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 7:**

For each domain name listed on Exhibit 1, all DOCUMENTS that IDENTIFY any person or entity TRAFFICKING IN the domain name.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case.  Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files.  The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records.  Subject to these objections, Defendant has conducted a search in the Database Records and responsive material has been produced. Additional responsive documents may exist in the Keyword Dataset, as well as Bates numbers ONLINENIC222222 - ONLINENIC258330 and ONLINENIC018142 – ONLINENIC018277. OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 8:**

For each domain name listed on Exhibit 1, all DOCUMENTS related to the USE of the domain name.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. Subject to these objections, Defendant has conducted a search in the Database Records and responsive material has been produced. Additional responsive documents may exist in the Keyword Dataset, as well as Bates numbers ONLINENIC222222 - ONLINENIC258330 and ONLINENIC018142 – ONLINENIC018277. OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 9:**

For each domain name listed on Exhibit 1, all DOCUMENTS that IDENTIFY any person or entity that USES or USED the domain name.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. Subject to these objections, Defendant has conducted a search in the Database Records and responsive material has been produced. Additional responsive documents may exist in the Keyword Dataset, as well as Bates numbers ONLINENIC222222 - ONLINENIC258330 and ONLINENIC018142 – ONLINENIC018277. OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 10:**

For each domain name listed on Exhibit 1, all DOCUMENTS related to the MONETIZATION of the domain name.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case.  Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files.  The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records.  Subject to these objections, Defendant has conducted a search in the Database Records and responsive material has been produced. Additional responsive documents may exist in the Keyword Dataset, as well as Bates numbers ONLINENIC222222 - ONLINENIC258330 and ONLINENIC018142 – ONLINENIC018277. OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 11:**

For each domain name listed on Exhibit 1, all DOCUMENTS that IDENTIFY any person or entity involved in the MONETIZATION of the domain name.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case.  Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files.  The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records.  Subject to these objections, Defendant has conducted a diligent search in the

Database Records and responsive material has been produced. Additional responsive documents may exist in the Keyword Dataset, as well as Bates numbers ONLINENIC222222 - ONLINENIC258330 and ONLINENIC018142 – ONLINENIC018277.   OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 12:**

For each domain name listed on Exhibit 1, all DOCUMENTS related to DOMAIN ID SHIELD's privacy service for the domain name.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case.  Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files.  The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records.  Subject to these objections, Defendant has conducted a search in the Database Records and responsive material has been produced. Additional responsive material may exist at Bates numbers ONLINENIC266948 – ONLINENIC266955, the Keyword Dataset, as well as Bates numbers ONLINENIC225791 - ONLINENIC258330. OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 13:**

For each domain name listed on Exhibit 1, all DOCUMENTS that IDENTIFY any person or entity involved in the provision of DOMAIN ID SHIELD's privacy service for the domain name.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13**

- 10-

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case.  Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records, and tens of thousands of emails and support tickets.   The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records.  Subject to these objections, Defendant has conducted a search in the Database Records, and in emails and support tickets, and at Bates OnlineNIC252186-OnlineNIC258330,  OnlineNIC000001-70, OnlineNIC266918-266947, OnlineNIC268299 – 268773, OnlineNIC267164-OnlineNIC267167. Additional responsive documents exist in the Keyword Dataset, which has been produced in searchable format OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 14:**

All contracts, agreements, and/or any other written understanding between ONLINENIC and DOMAIN ID SHIELD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 15:**

All contracts, agreements, and/or any other written understanding between DOMAIN ID SHIELD and any United States entity.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15**

Responsive documents are located in the Database Records, and at OnlineNic266948 – 266955.

**REQUEST FOR PRODUCTION NO. 16:**

All DOCUMENTS relating to the relationship between DOMAIN ID SHIELD and any California entity.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16**

Responsive documents are located in the Database Records, and at ONLINENIC266948 –

ONLINENIC266955.

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS relating to any travel by a DOMAIN ID SHIELD officer, employee or agent to the United States.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. The request is also overbroad because it includes personal travel, and OnlineNIC objects to providing such documents, and has no right to do so. Subject to these objections, Defendant has provided a passport extract at Bates number 268788, which evidences the only business trip of a Doman ID Shield officer to the United States. OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 18:**

All DOCUMENTS relating to any prior actions or complaints concerning any intellectual property claims filed against or by DOMAIN ID SHIELD in a United States Federal or State Court or before any administrative tribunal.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other

- 12-

business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. Subject to these objections, OnlineNIC has searched reasonably ascertainable locations and has produced the Keyword Dataset and other responsive documents at Bates numbers OnlineNIC225791-OnlineNIC252185. OnlineNIC is not aware of any responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS relating to any prior actions or complaints concerning any DOMAIN NAME ABUSE claims filed against or by DOMAIN ID SHIELD in a United States Federal or State Court or before any administrative tribunal.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

See the Keyword Dataset and Bates numbers OnlineNIC225791-OnlineNIC252185.

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS relating to any prior actions or complaints concerning any intellectual property claims filed against or by ONLINENIC in a United States Federal or State Court or before any administrative tribunal.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20**

See Keyword Dataset. See also Bates numbers OnlineNIC258331- OnlineNIC258369 and OnlineNIC252186-OnlineNIC258330. Filings in Federal cases are equally available to Plaintiffs using PACER, and Defendants object to producing those filings on those grounds. Identification of those cases is located at Bates numbers OnlineNIC268774. See also Bates numbers OnlineNIC258331-OnlineNIC258369. OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 21:**

All DOCUMENTS relating to any prior actions or complaints concerning any DOMAIN NAME ABUSE claims filed against or by ONLINENIC in a United States Federal or State Court or before any administrative tribunal.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21**

See Keyword Dataset. See also Bates numbers OnlineNIC225764 – 225778, 225791 – OnlineNIC258369.  Filings in Federal cases are equally available to Plaintiffs using PACER, and Defendants object to producing those filings on those grounds.  Identification of those cases is located at Bates OnlineNIC268774 .  See also Bates numbers OnlineNIC258331-OnlineNIC258369. OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 22:**

All DOCUMENTS related to any communications between DOMAIN ID SHIELD and any person or entity in the United States concerning domain name registration. This includes, but is not limited to, emails, phone records, letters, any form of electronic communication, and any materials sent through those means.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22**

Responsive materials are located in the Keyword Dataset, and Bates numbers OnlineNIC225764 – OnlineNIC 225778, OnlineNIC225791 – OnlineNIC258330.

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS relating to the corporate relationship between DOMAIN ID SHIELD and ONLINENIC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case.  Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files.  The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records.  Subject to these objections, OnlineNIC has searched reasonably ascertainable locations and has produced records at ONLINENIC266918 – ONLINENIC266947, ONLINENIC266956-ONLINENIC266988,            ONLINENIC000001-ONLINENIC000070,

ONLINENIC000075). OnlineNIC is not aware of any responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS relating to the corporate formation and maintenance of DOMAIN ID SHIELD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24**

ONLINENIC objects to this request as vague, ambiguous, overbroad, irrelevant and unduly burdensome to the extent that it seeks "all" documents for an unrestricted period of time. Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records, particularly because OnlineNIC states that it controls Domain ID Shield and runs its operations and pays its expenses. Accordingly, OnlineNIC has not searched its financial records to determine what expenses were paid for Domain ID Shield's formation and maintenance going back indefinitely, as demanded by Plaintiffs. Subject to the foregoing, *see* ONLINENIC266956-ONLINENIC266988, ONLINENIC000001-ONLINENIC000070, ONLINENIC000075), ONLINENIC258370-ONLINENIC258436. OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 25:**

All DOCUMENTS relating to the corporate formation and maintenance of ONLINENIC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25**

OnlineNIC objects to this request as vague, ambiguous, overbroad, irrelevant and unduly burdensome to the extent that it: (a) seeks "all" documents for an unrestricted period of time and, (b) seeks information not relevant to Plaintiffs' intellectual property claims. Specifically,

- 15-

Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records, particularly because OnlineNIC states that it controls Domain ID Shield and runs its operations and pays its expenses. Accordingly, OnlineNIC has not searched its financial records to determine what formation and maintenance expenses were paid and when going back indefinitely, as demanded by Plaintiffs. Subject to the foregoing, *see* Bates number ONLINENIC000071-ONLINENIC000074. OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 26:**

All DOCUMENTS that IDENTIFY officers and/or directors of ONLINENIC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26**

OnlineNIC objects to this request as vague, ambiguous, overbroad, irrelevant and unduly burdensome to the extent that it: (a) seeks "all" documents for an unrestricted period of time and, (b) seeks information not relevant to Plaintiffs' intellectual property claims. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records, particularly because OnlineNIC states that it controls Domain ID Shield and runs its operations and pays its expenses. Accordingly, OnlineNIC has not searched its financial records to determine what formation and maintenance expenses were paid going back indefinitely, as demanded by Plaintiffs. Subject to the foregoing, *see* Bates numbers ONLINENIC268777-ONLINENIC268778 and ONLINENIC266989 – ONLINENIC267162.

OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 27:**

All DOCUMENTS that IDENTIFY officers and/or directors of DOMAIN ID SHIELD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27**

*See* ONLINENIC266956-ONLINENIC266988, ONLINENIC000001-ONLINENIC000070, ONLINENIC000075).

**REQUEST FOR PRODUCTION NO. 28:**

All DOCUMENTS that IDENITFY all locations for the transaction of DOMAIN ID SHIELD's business.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. Domain ID Shield was formed more than 10 years ago. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. Subject to these objections, produced records at Bates numbers OnlineNIC268779-OnlineNIC268781, OnlineNIC268782, and OnlineNIC268787. OnlineNIC is not aware of any responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 29:**

A representative sampling of DOCUMENTS sufficient to IDENTIFY all locations where ONLINENIC conducts or has conducted business.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29**

*See* Bates Number ONLINENIC225779-225790, ONLINENIC000076-ONLINENIC000164, and ONLINENIC000165.

- 17-

**REQUEST FOR PRODUCTION NO. 30:**

A representative sampling of DOCUMENTS sufficient to IDENTIFY ONLINENIC's principal place of business.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30**

*See* Bates Number ONLINENIC225779-225790, ONLINENIC000076-ONLINENIC000164, and ONLINENIC000165.

**REQUEST FOR PRODUCTION NO. 31:**

A representative sampling of DOCUMENTS sufficient to IDENTIFY DOMAIN ID SHIELD's principal place of business.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31**

*See* Bates numbers OnlineNIC268779-OnlineNIC268781, OnlineNIC268782, and OnlineNIC268787.

**REQUEST FOR PRODUCTION NO. 32:**

All DOCUMENTS that show federal, state, and local taxes paid by DOMAIN ID SHIELD in the last 5 years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32**

Defendant objects to this request, tax returns and related tax information are not relevant to the subject matter of the pending action. The Ninth Circuit recognizes a public policy against unnecessary public disclosure of tax returns. *Premium Serv. Corp. v. Sperry & Hutchinson Co., 511 F.2d 225, 229 (9th Cir. 1975).* The Court may only order their production if they are relevant and where the requesting party shows there is a compelling need for them because the information sought is not otherwise available. *Flores v. Albertsons, Inc., 2002 U.S. Dist. LEXIS 6171, 2002 WL 1163623 at \*3 (C.D.Cal. 2002).* Subject to and without waiving this objection, Domain ID Shield has not filed tax returns since 2015 and will produce a redacted form of that 2015 document on or before July 28, 2020.

**REQUEST FOR PRODUCTION NO. 33:**

All DOCUMENTS that show federal, state, and local taxes paid by ONLINENIC in the last 5 years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33**

Defendant objects to this request, as OnlineNIC's tax returns and tax information are not relevant to the subject matter of the pending action. The Ninth Circuit recognizes a public policy against unnecessary public disclosure of tax returns. *Premium Serv. Corp. v. Sperry & Hutchinson Co., 511 F.2d 225, 229 (9th Cir. 1975)*. The Court may only order their production if they are relevant and where the requesting party shows there is a compelling need for them because the information sought is not otherwise available. *Flores v. Albertsons, Inc., 2002 U.S. Dist. LEXIS 6171, 2002 WL 1163623 at *3 (C.D.Cal. 2002)*. Subject to and without waiving this objection, Defendant has produced redacted tax returns at Bates numbers OnlineNIC 266989 – 267162., since Plaintiffs have been unable to state a reason why they need the full tax return.

**REQUEST FOR PRODUCTION NO. 34:**

All contracts entered into by ONLINENIC that specify California as the governing jurisdiction.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. Subject to these objections, OnlineNIC has searched reasonably ascertainable contracts and has produced the OnlineNIC268789 – OnlineNIC268789, OnlineNIC268814 – OnlineNIC268826, OnlineNIC268841 – OnlineNIC268844. OnlineNIC is not aware of any responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 35:**

All contracts entered into by DOMAIN ID SHIELD that specify California as the

governing jurisdiction.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 36:**

All contracts entered into by ONLINENIC with a California domiciled citizen.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case.  Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files.  The burden and expense of having to review every record (such as counsel's engagement agreement and other service provider agreements) to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. Subject to these objections, OnlineNIC has searched reasonably ascertainable contracts and has produced hereunder the Bates numbers OnlineNIC268789 – OnlineNIC268844. OnlineNIC is not aware of any responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 37:**

All contracts entered into by DOMAIN ID SHIELD with a California domiciled citizen.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37**

*See* Bates numbers OnlineNIC266948 – OnlineNIC266955.

**REQUEST FOR PRODUCTION NO. 38:**

A representative sampling of DOCUMENTS sufficient to IDENTIFY the location of any post office box used by DOMAIN ID SHIELD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38**

OnlineNIC objects to this request as vague, ambiguous, overbroad, irrelevant and unduly burdensome to the extent that it: (a) seeks documents to identify "any post office box" (e.g. one

- 20-

operated by a governmental postal service?)  for an unrestricted period of time and, (b) seeks information not relevant to Plaintiffs' intellectual property claims.  Subject to the foregoing, *see* documents Bates Numbered ONLINENIC000075 ONlineNIC268779-268781 for possibly responsive documents. OnlineNIC is not aware of any responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 39:**

All agreements or contracts between ICANN and ONLINENIC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39**

*See* Bates Number ONLINENIC225779-225790, ONLINENIC000076-ONLINENIC000164, and ONLINENIC000165.

**REQUEST FOR PRODUCTION NO. 40:**

All agreements or contracts between ICANN and DOMAIN ID SHIELD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 41:**

All DOCUMENTS related to agreements or contracts between ICANN and ONLINENIC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case.  Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files.  The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records.  Subject to these objections, OnlineNIC has searched reasonably ascertainable contracts and documents in its emails and contract folders and produced documents Bates Numbered ONLINENIC012051-ONLINENIC018141, ONLINENIC267174-ONLINENIC267194, ONLINENIC260457-ONLINENIC266917. OnlineNIC is not aware of any responsive records

within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 42:**

All DOCUMENTS related to agreements or contracts between ICANN and DOMAIN ID SHIELD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 43:**

All annual or monthly reports prepared by ONLINEINC or DOMAIN ID SHIELD that contain formation related to the activities of either entity.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records.". OnlineNIC does prepare periodic reports that discuss profitability, but OnlineNIC will not produce such reports on the grounds that they constitute competitively sensitive information and such information (like tax records) are not relevant to the case at bar.

**REQUEST FOR PRODUCTION NO. 44:**

All DOCUMENTS relating to any marketing of services by DOMAIN ID SHIELD including any advertising or marketing materials on the Internet.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44**

*See* Bates numbers OnlineNIC268779-OnlineNIC268781, OnlineNIC268782, OnlineNIC268787, OnlineNIC268845-268847.

**REQUEST FOR PRODUCTION NO. 45:**

All DOCUMENTS relating to any website operated or USED by DOMAIN ID SHIELD,

including, but not limited to, all current and prior versions of any webpages ever accessible on or from that website and any agreements of any kind ever entered into with respect to the website or the domain name through which that website is or was accessible.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. Subject to these objections, OnlineNIC has searched reasonably ascertainable contracts and documents in its emails and has produced records at Bates numbers OnlineNIC268779-OnlineNIC268781, OnlineNIC268782, OnlineNIC268787, OnlineNIC268845-268847.. OnlineNIC is not aware of any responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 46:**

All DOCUMENTS identifying each domain name for which ONLINENIC was the REGISTRANT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. Subject to these objections, OnlineNIC has searched reasonably ascertainable

contracts and documents in its emails and has produced records at ONLINENIC267169-ONLINENIC267173. OnlineNIC is not aware of any responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 47:**

All DOCUMENTS identifying each domain name for which DOMAIN ID SHIELD was the REGISTRANT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 48:**

All DOCUMENTS that IDENTIFY the ONLINENIC account or accounts used to register the domainidshield.com domain name.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records, particularly because OnlineNIC states that it controls Domain ID Shield and runs its operations and pays its expenses. Subject to these objections, OnlineNIC has searched reasonably ascertainable database records and has produced documents Bates Numbered ONLINENIC268848-ONLINENIC269034. OnlineNIC is not aware of any responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 49:**

All DOCUMENTS relating to payments for the registration and maintenance of the domainidshield.com domain name.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records, particularly because OnlineNIC states that it controls Domain ID Shield and runs its operations and pays its expenses. Accordingly, OnlineNIC has not searched its financial records to determine what expenses were paid, as demanded by Plaintiffs.

**REQUEST FOR PRODUCTION NO. 50:**

All DOCUMENTS relating to the hosting of the website available at the domainidshield.com domain name.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records, particularly because OnlineNIC states that it controls Domain ID Shield and runs its operations and pays its expenses. Accordingly, OnlineNIC has not searched its voluminous financial and email records for the requested information. Subject to the foregoing, see Bates numbers ONLINENIC267207-ONLINENIC268298 .OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 51:**

All DOCUMENTS relating to payments for hosting the website available at the domainidshield.com domain name.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records, particularly because OnlineNIC states that it controls Domain ID Shield and runs its operations and pays its expenses. Accordingly, OnlineNIC has not searched its voluminous financial and email records for the requested information.

**REQUEST FOR PRODUCTION NO. 52:**

All DOCUMENTS that IDENTIFY every domain name registered in or associated with the ONLINENIC account or accounts used to register the domainidshield.com domain name.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records, particularly because OnlineNIC states that it controls Domain ID Shield and runs its operations and pays its expenses. Accordingly, OnlineNIC has not searched its voluminous financial and email records for "All Documents". Subject to the foregoing, *see* documents Bates

1
2

Numbered ONLINENIC267163. OnlineNIC is not aware of other responsive records within its

possession, custody or control being withheld on the basis of any objection herein.

3

**REQUEST FOR PRODUCTION NO. 53:**

4

All DOCUMENTS relating to any website operated or used by ONLINENIC.

5

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53**

6
7
8
9
10
11
12
13
14
15
16
17
18

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited

in time or scope, and thus it is not proportional to the needs of the case.  Specifically, Defendant

has been in business for over 20 years, and as such, has collected millions of records over the

years, including a database with millions of records and hundreds of tables, more than 1 million

emails and support tickets, and thousands of bank statements, financial records, invoices and other

business documents, including loose files.  The burden and expense of having to review every

record to ensure that "All Documents" have been produced outweighs any potential relevancy of

such records, particularly because OnlineNIC states that it controls Domain ID Shield and runs its

operations and pays its expenses. Accordingly, OnlineNIC has not searched its voluminous

financial and email records for the requested information. Subject to the foregoing, see Bates

numbers ONLINENIC269035-ONLINENIC272093 and ONLINENIC269035-

ONLINENIC272093.  OnlineNIC is not aware of other responsive records within its possession,

custody or control being withheld on the basis of any objection herein.

19

**REQUEST FOR PRODUCTION NO. 54:**

20
21

All DOCUMENTS that IDENTIFY the ONLINENIC account or accounts used to register

the onlinenic.com domain name.

22

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54**

23
24
25
26
27
28

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited

in time or scope, and thus it is not proportional to the needs of the case.  Specifically, Defendant

has been in business for over 20 years, and as such, has collected millions of records over the

years, including a database with millions of records and hundreds of tables, more than 1 million

emails and support tickets, and thousands of bank statements, financial records, invoices and other

business documents, including loose files.  The burden and expense of having to review every

record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records, particularly because OnlineNIC states that it controls Domain ID Shield and runs its operations and pays its expenses. Accordingly, OnlineNIC has not searched its voluminous financial and email records for the requested information. Subject to the foregoing, see documents Bates Numbered ONLINENIC267163 and ONLINENIC268848 -269034 is sufficient to "identify" the account. OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 55:**

All DOCUMENTS relating to payments for the registration and maintenance of the onlinenic.com domain name.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. Accordingly, OnlineNIC has not searched its voluminous financial and email records for the requested information.

**REQUEST FOR PRODUCTION NO. 56:**

All DOCUMENTS relating to the hosting of the website available at the onlinenic.com domain name.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million

emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records, particularly because OnlineNIC states that it controls Domain ID Shield and runs its operations and pays its expenses. Accordingly, OnlineNIC has not searched its voluminous financial and email records for "All Documents". Subject to the foregoing, see Bates numbers ONLINENIC269035-ONLINENIC272093 and ONLINENIC269035-ONLINENIC272093. OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 57:**

All DOCUMENTS relating to payments for hosting the website available at the onlinenic.com domain name.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. Accordingly, OnlineNIC has not searched its voluminous financial and email records for "All Documents".

**REQUEST FOR PRODUCTION NO. 58:**

All DOCUMENTS that IDENTIFY every domain name registered in or associated with the ONLINENIC account or accounts used to register the onlinenic.com domain name.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant

has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records, particularly because OnlineNIC states that it controls Domain ID Shield and runs its operations and pays its expenses. Accordingly, OnlineNIC has not searched its voluminous financial and email records for "All Documents". Subject to the foregoing, see documents Bates Numbered ONLINENIC267163. OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 59:**

All DOCUMENTS that IDENTIFY individuals involved with, or having knowledge of ONLINENIC'S relationship with DOMAIN ID SHIELD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records, particularly because OnlineNIC states that it controls Domain ID Shield and runs its operations and pays its expenses. Subject to the foregoing, see Bates numbers ONLINENIC000001-ONLINENIC000075, ONLINENIC266956-ONLINENIC267162, ONLINENIC268775-268776, ONLINENIC252186-258330, and ONLINENIC266918 – ONLINENIC266947. OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

- 30-

**REQUEST FOR PRODUCTION NO. 60:**

All DOCUMENTS that IDENTIFY individuals involved in or having knowledge of ONLINENIC'S business transactions with DOMAIN ID SHIELD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records, particularly because OnlineNIC states that it controls Domain ID Shield and runs its operations and pays its expenses. Subject to the foregoing, see Bates numbers ONLINENIC000001-ONLINENIC000075, ONLINENIC266956-ONLINENIC267162, ONLINENIC268775-268776, ONLINENIC252186-258330, ONLINENIC266918 – ONLINENIC266947. OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 61:**

All DOCUMENTS that identify all or part of the corporate structure of ONLINENIC, including, but not limited to, DOCUMENTS that IDENTIFY any principals, officers, directors, shareholders, partners, joint venturers, employees, executives, managing agents, parents, divisions, departments, corporate subunits, subsidiaries, or affiliates of ONLINENIC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 61**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other

business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records, particularly because OnlineNIC states that it controls Domain ID Shield and runs its operations and pays its expenses. Subject to the foregoing, see Bates numbers ONLINENIC000001-ONLINENIC000075, ONLINENIC266956-ONLINENIC267162, ONLINENIC268775-268776, ONLINENIC252186-258330, ONLINENIC266918 – ONLINENIC266947. OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 62:**

All DOCUMENTS that identify all or part of the corporate structure of DOMAIN ID SHIELD, including, but not limited to, DOCUMENTS that IDENTIFY any past or present principals, officers, directors, shareholders, partners, joint venturers, employees, executives, managing agents, parents, divisions, departments, corporate subunits, subsidiaries, or affiliates of DOMAIN ID SHIELD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 62**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records, particularly because OnlineNIC states that it controls Domain ID Shield and runs its operations and pays its expenses. OnlineNIC does not interpret this request as seeking all documents on all business operations, as proposed by Plaintiffs. Subject to the foregoing, see Bates numbers  ONLINENIC000001-ONLINENIC000075,  ONLINENIC266956-ONLINENIC267162, ONLINENIC268775-268776, ONLINENIC252186-258330, and ONLINENIC268777-ONLINENIC268778. OnlineNIC is not aware of other responsive records within its possession,

custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 63:**

All DOCUMENTS that identify the managers and executives of ONLINENIC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case.  Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files.  The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records, particularly because OnlineNIC states that it controls Domain ID Shield and runs its operations and pays its expenses.  Subject to the foregoing, see Bates numbers ONLINENIC000001-ONLINENIC000075, ONLINENIC266956-ONLINENIC267162, ONLINENIC268775-268776, ONLINENIC252186-258330, and ONLINENIC268777-ONLINENIC268778.  OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 64:**

All DOCUMENTS that identify the managers and executives of DOMAIN ID SHIELD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case.  Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files.  The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records, particularly because OnlineNIC states that it controls Domain ID Shield and runs its

operations and pays its expenses. Subject to the foregoing, see Bates numbers ONLINENIC000001-ONLINENIC000075, ONLINENIC266956-ONLINENIC267162, ONLINENIC268775-268776, ONLINENIC252186-258330, and ONLINENIC268777-ONLINENIC268778.  .OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 65:**

All DOCUMENTS that describe the business and/or purpose of ONLINENIC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 65**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case.  Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files.  The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. Subject to the foregoing, see Bates numbers ONLINENIC260024-ONLINENIC260456 and ONLINENIC269035-ONLINENIC272093.. OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 66:**

All DOCUMENTS that describe the business and/or purpose of DOMAIN ID SHIELD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 66**

See Bates numbers OnlineNIC268782, OnlineNIC268787, OnlineNIC268779-268781, and OnlineNIC266948-OnlineNIC266955.

**REQUEST FOR PRODUCTION NO. 67:**

All DOCUMENTS that IDENTIFY the employees of ONLINENIC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 67**

The parties agree that this request should be limited to documents "sufficient" to identify

the employees of OnlineNIC. *See* Bates numbers ONLINENIC266989-ONLINENIC267162, ONLINENIC000073- ONLINENIC000074. .

**REQUEST FOR PRODUCTION NO. 68:**

All DOCUMENTS that IDENTIFY the employees of DOMAIN ID SHIELD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 68**

The parties agree that this request should be limited to documents "sufficient to identify the employees of OnlineNIC. *See* Bates numbers ONLINENIC000017- ONLINENIC000038.

**REQUEST FOR PRODUCTION NO. 69:**

All DOCUMENTS that IDENTIFY the responsibilities of the employees, managers and executives of DOMAIN ID SHIELD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 69**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 70:**

All DOCUMENTS that IDENTIFY the responsibilities of the employees, managers, and executives of ONLINENIC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 70**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 71:**

All DOCUMENTS that IDENTIFY the source of funds used to pay employees of DOMAIN ID SHIELD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 72:**

All DOCUMENTS that IDENTIFY the source of funds used to pay employees of ONLINENIC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 72**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case.  Specifically, Defendant

has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. Subject to these objections, OnlineNIC has provided a redacted version of its most recent corporate bank account statement at Bates number OnlineNIC272094 – OnlineNIC272097. Except for all other bank statements from 1999 onward, OnlineNIC is not aware of any responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 73:**

All DOCUMENTS that IDENTIFY the source of funds used to form ONLINENIC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 73**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 74:**

All DOCUMENTS that IDENTIFY the amount of capitalization of ONLINENIC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 75:**

All DOCUMENTS that IDENTIFY the amount of capitalization of DOMAIN ID SHIELD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 75**

*See* Bates numbers OnlineNIC266968-OnlineNIC266974, OnlineNIC266987-OnlineNIC266988.

**REQUEST FOR PRODUCTION NO. 76:**

All DOCUMENTS that IDENTIFY the source of funds used to form DOMAIN ID SHIELD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 76**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case.  Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files.  The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records, particularly because OnlineNIC states that it controls Domain ID Shield and runs its operations and pays its expenses. Accordingly, OnlineNIC has not searched its voluminous financial and email records for the requested information.

**REQUEST FOR PRODUCTION NO. 77:**

All DOCUMENTS relating to ONLINENIC's annual shareholder meetings including lists of invitees and attendees, minutes of the meetings, and notes taken.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 77**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 78:**

All DOCUMENTS relating to meetings of ONLINENIC's board of directors, including lists of invitees and attendees, minutes of the meetings, and notes taken.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 78**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 79:**

All DOCUMENTS relating to meetings of ONLINENIC's executives, including lists of invitees and attendees, minutes of the meetings, and notes taken.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 79**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 80:**

All DOCUMENTS relating to DOMAIN ID SHIELD's annual shareholder meetings including lists of invitees and attendees, minutes of the meetings, and notes taken.

**RESPONSE TO REQUEST FOR REQUEST FOR PRODUCTION NO. 80**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 81:**

All DOCUMENTS relating to meetings of DOMAIN ID SHIELD's board of directors, including lists of invitees and attendees, minutes of the meetings, and notes taken.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 81**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 82:**

All DOCUMENTS relating to meetings of DOMAIN ID SHIELD's executives, including lists of invitees and attendees, minutes of the meetings, and notes taken.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 82**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 83:**

All DOCUMENTS relating to ONLINENIC's Articles of Incorporation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 83**

*See* Bates numbers OnlineNIC000071-OnlineNIC000074.

**REQUEST FOR PRODUCTION NO. 84:**

All DOCUMENTS relating to ONLINENIC's Bylaws.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 84**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 85:**

All DOCUMENTS relating to DOMAIN ID SHIELD's Articles of Incorporation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 85**

*See* Bates numbers OnlineNIC266956 - OnlineNIC266988.

**REQUEST FOR PRODUCTION NO. 86:**

All DOCUMENTS relating to DOMAIN ID SHIELD's Bylaws.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 86**

No responsive documents.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**REQUEST FOR PRODUCTION NO. 87:**

All DOCUMENTS that IDENTIFY all bank accounts owned or maintained by ONLINENIC and the individuals with access to such bank accounts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 87**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. Subject to these objections, OnlineNIC has provided a redacted version of its most recent corporate bank account statement for its two bank accounts at Bates number OnlineNIC272094 – OnlineNIC272097 . As to individuals with access to such accounts see Bates numbers OnlineNIC266989-OnlineNIC267162. With respect to identification of bank accounts, except for all other bank statements from 1999 onward, OnlineNIC is not aware of any responsive records within its possession, custody or control being withheld on the basis of any objection herein. With respect to individuals with access to bank accounts, OnlineNIC interprets the Request as seeking only documents sufficient to identify all such individuals, and accordingly, OnlineNIC is not aware of any responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 88:**

All DOCUMENTS that IDENTIFY all bank accounts owned or maintained by DOMAIN ID SHIELD and the individuals with access to such bank accounts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 88**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 89:**

All DOCUMENTS that IDENTIFY the PARTY or PARTIES responsible for

- 39-

ONLINENIC's financial liabilities, including any insurance carrier.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 89**

No responsive documents, except for insurance policies, which will be produced by July 28, 2020.

**REQUEST FOR PRODUCTION NO. 90:**

All DOCUMENTS that IDENTIFY the PARTY or PARTIES responsible for DOMAIN ID SHIELD's financial liabilities, including any insurance carrier.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 90**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 91:**

All DOCUMENTS that IDENTIFY real property owned or leased by ONLINENIC in California at any time.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 91**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 92:**

All DOCUMENTS that IDENTIFY real property owned or leased by DOMAIN ID SHIELD in California at any time.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 92**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 93:**

All DOCUMENTS reflecting or referring to utility bills directed to, or payments made by or on behalf of ONLINENIC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 93**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 94:**

All DOCUMENTS reflecting or referring to utility bills directed to, or payments made by or on behalf of DOMAIN ID SHIELD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 94**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 95:**

All DOCUMENTS reflecting funds transferred between ONLINENIC and DOMAIN ID SHIELD at any time.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 95**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records, particularly because OnlineNIC states that it controls Domain ID Shield and runs its operations and pays its expenses. Accordingly, OnlineNIC has not searched its voluminous financial and email records for the requested information.

**REQUEST FOR PRODUCTION NO. 96:**

All DOCUMENTS reflecting payments made by ONLINENIC for the benefit of DOMAIN ID SHIELD at any time.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 96**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records, particularly because OnlineNIC states that it controls Domain ID Shield and runs its

operations and pays its expenses. Accordingly, OnlineNIC has not searched its voluminous financial and email records for the requested information.

**REQUEST FOR PRODUCTION NO. 97:**

All DOCUMENTS reflecting payments made by DOMAIN ID SHIELD for the benefit of ONLINENIC at any time.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 97**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 98:**

All DOCUMENTS that IDENTIFY the PARTIES responsible for online security at DOMAIN ID SHIELD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 98**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 99:**

All DOCUMENTS that IDENTIFY the PARTIES responsible for online security at ONLINENIC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 99**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. Accordingly, OnlineNIC has produced a business email that sufficiently identifies the relevant individual, who is the CTO. *See* Bates number OnlineNIC272098.

**REQUEST FOR PRODUCTION NO. 100:**

All DOCUMENTS that IDENTIFY the person(s) at ONLINENIC responsible for responding to requests for contact information for any domain name REGISTRANT.

- 42-

**RESPONSE TO REQUEST FOR PRODUCTION NO. 100**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. Subject to these objections, documents sufficient to identify persons responsible for responding to contact information can be obtained from the Keyword Dataset, and at Bates Numbered ONLINENIC012051-ONLINENIC0181277, ONLINENIC267174-ONLINENIC267194, ONLINENIC260457-ONLINENIC266917. OnlineNIC is not aware of any responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 101:**

All DOCUMENTS that IDENTIFY the processes and procedures followed at ONLINENIC upon receipt of requests for contact information for any domain name REGISTRANT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 101**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. Subject to these objections, OnlineNIC has provided documents sufficient to provide the requested information in the Keyword Dataset and at Bates numbers OnlineNIC267164 – OnlineNIC267167. OnlineNIC is not aware of any responsive records within its possession, custody or control being withheld on the basis of any objection herein.

- 43-

**REQUEST FOR PRODUCTION NO. 102:**

All DOCUMENTS that IDENTIFY the person(s) at DOMAIN ID SHIELD responsible for responding to requests for contact information for any domain name REGISTRANT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 102**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 103:**

All DOCUMENTS that IDENTIFY the processes and procedures followed at DOMAIN ID SHIELD upon receipt of requests for contact information for any domain name REGISTRANT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 103**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 104:**

All DOCUMENTS that IDENTIFY any requests for contact information for any domain name REGISTRANT received by ONLINENIC in the past 5 years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 104**

The parties have agreed that the Keyword Dataset satisfies this request, which has been produced.

**REQUEST FOR PRODUCTION NO. 105:**

All DOCUMENTS that IDENTIFY any requests for contact information for any domain name REGISTRANT received by DOMAIN ID SHIELD in the past 5 years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 105**

The parties have agreed that the Keyword Dataset satisfies this request, which has been produced.

**REQUEST FOR PRODUCTION NO. 106:**

All DOCUMENTS that reflect or demonstrate ONLINENIC's receiving a request for contact information for any domain name REGISTRANT in the past 5 years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 106**

The parties have agreed that the Keyword Dataset satisfies this request, which has been produced.

1

**REQUEST FOR PRODUCTION NO. 107:**

2

3    All DOCUMENTS that reflect or demonstrate ONLINENIC's responding to a request for contact information for any domain name REGISTRANT received by ONLINENIC in the past 5

4    years.

5    **RESPONSE TO REQUEST FOR PRODUCTION NO. 107**

6    Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited

7    in scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been

8    in business for over 20 years, and as such, has collected millions of records over the years,

9    including a database with millions of records and hundreds of tables, more than 1 million emails

10   and support tickets, and thousands of bank statements, financial records, invoices and other

11   business documents, including loose files. The burden and expense of having to review every

12   record to ensure that "All Documents" have been produced outweighs any potential relevancy of

13   such records. Subject to these objections, OnlineNIC has provided documents sufficient to provide

14   the requested information in the Keyword Dataset, as well as documents at Bates numbers

15   OnlineNIC225764 – OnlineNIC225778, OnlineNIC225791 – OnlineNIC252185, and

16   OnlineNIC018142 – OnlineNIC018277. OnlineNIC is not aware of any responsive records within

     its possession, custody or control being withheld on the basis of any objection herein.

17   **REQUEST FOR PRODUCTION NO. 108:**

18

19   All DOCUMENTS that reflect or demonstrate DOMAIN ID SHIELD's receiving a request for contact information for any domain name REGISTRANT in the past 5 years.

20   **RESPONSE TO REQUEST FOR PRODUCTION NO. 108**

21

22   The parties have agreed that the Keyword Dataset satisfies this request, which has been produced.

23   **REQUEST FOR PRODUCTION NO. 109:**

24

25   All DOCUMENTS that reflect or demonstrate DOMAIN ID SHIELD's responding to a request for contact information for any domain name REGISTRANT received by DOMAIN ID

26   SHIELD in the past 5 years.

27   **RESPONSE TO REQUEST FOR PRODUCTION NO. 109**

28

     The parties have agreed that the Keyword Dataset satisfies this request, which has been

- 45-

produced.

**REQUEST FOR PRODUCTION NO. 110:**

All communications between DOMAIN ID SHIELD and persons or entities whose contact information was requested by a third party in the past 5 years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 110**

The parties have agreed that the Keyword Dataset satisfies this request, which has been produced.

**REQUEST FOR PRODUCTION NO. 111:**

All communications between ONLINENIC and persons or entities whose contact information was requested by a third-party in the past 5 years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 111**

The parties have agreed that the Keyword Dataset satisfies this request, which has been produced.

**REQUEST FOR PRODUCTION NO. 112:**

All communications between ONLINENIC and DOMAIN ID SHIELD concerning domain name REGISTRANTS whose contact information was requested by a third party in the past 5 years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 112**

The parties have agreed that the Keyword Dataset satisfies this request, which has been produced.

**REQUEST FOR PRODUCTION NO. 113:**

All registration agreements signed or agreed upon in the last 5 years between DOMAIN ID SHIELD and a California resident.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 113.**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 114:**

All registration agreements between ONLINENIC and a third party signed or agreed upon in the last 5 years that mention DOMAIN ID SHIELD.

- 46 -

**RESPONSE TO REQUEST FOR PRODUCTION NO. 114**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 115:**

All DOCUMENTS referencing or relating to measures, steps, policies, or procedures taken, enacted, followed, or engaged in by ONLINENIC to protect the identity of REGISTRANTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 115**

*See* Bates number OnlineNIC267195 – OnlineNIC267201.

**REQUEST FOR PRODUCTION NO. 116:**

All DOCUMENTS referencing or relating to privacy measures taken by DOMAIN ID SHIELD to protect the identity of REGISTRANTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 116**

*See* Keyword Dataset and Bates number OnlineNIC267168, and OnlineNIC266948 – OnlineNIC266955, OnlineNIC268779-268781, and OnlineNIC269035-OnlineNIC272093.

**REQUEST FOR PRODUCTION NO. 117:**

All DOCUMENTS relating to privacy policies enacted by DOMAIN ID SHIELD to protect the identity of REGISTRANTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 117**

*See* Keyword Dataset and Bates number OnlineNIC267168, and OnlineNIC266948 – OnlineNIC266955, OnlineNIC268779-268781, and OnlineNIC269035-OnlineNIC272093..

**REQUEST FOR PRODUCTION NO. 118:**

All DOCUMENTS used for training staff of ONLINENIC in relation to privacy policies at ONLINENIC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 118**

OnlineNIC will produce the responsive documents by July 28, 2020.

**REQUEST FOR PRODUCTION NO. 119:**

All DOCUMENTS used for training staff of ONLINENIC in relation to privacy policies at DOMAIN ID SHIELD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 119**

- 47-

OnlineNIC will produce the responsive documents by July 28, 2020.

**REQUEST FOR PRODUCTION NO. 120:**

All DOCUMENTS related to trademarks or service marks applied for or registered by ONLINENIC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 120**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 121:**

All DOCUMENTS related to trademarks or service marks applied for or registered by DOMAIN ID SHIELD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 121**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 122:**

All DOCUMENTS related to trademarks or service marks applied for or registered by ONLINENIC's principals, employees, managers, or executives.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 122**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 123:**

All DOCUMENTS related to domain names registered to ONLINENIC's principals, employees, managers, or executives.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 123**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 124:**

All DOCUMENTS related to trademarks or service marks applied for or registered by DOMAIN ID SHIELD's principals, employees, managers, or executives.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 124**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 125:**

All DOCUMENTS related to any domain name for which DOMAIN ID SHIELD is or was

entitled to the exclusive control and use of that domain name, for any length of time.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 125**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 126:**

All DOCUMENTS related to any domain name for which any DOMAIN ID SHIELD principal, employee, manager, or executive is or was the REGISTRANT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 126**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 127:**

All DOCUMENTS related to any domain name for which ONLINENIC is or was entitled to the exclusive control and use of that domain name, for any length of time.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 127**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. There are monetization records for some of the domains in question, but these are are not relevant to the case at bar. Subject to these objections, OnlineNIC has searched its databases and produced responsive records in the Database Records. OnlineNIC will produce further responsive documents by July 28, 2020.

**REQUEST FOR PRODUCTION NO. 128:**

All DOCUMENTS related to any domain name for which any ONLINENIC principal, employee, manager, or executive is or was the REGISTRANT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 128**

No responsive documents.

- 49-

**REQUEST FOR PRODUCTION NO. 129:**

All DOCUMENTS that IDENTIFY the business entities under which the principals, employees, managers, and/or executives of DOMAIN ID SHIELD operated in the last 5 years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 129**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. The definition of IDENTIFY is also over-broad because it potentially includes every detail concerning an entity, which is not the ordinary meaning of "identify". Accordingly, OnlineNIC interprets this request as seeking documents sufficient to identify the name and address of the entity in question. Since Domain ID Shield has only one "executive", who also performs services for OnlineNIC, Bates number 268775 – 268776 is sufficient to identify that entity.

**REQUEST FOR PRODUCTION NO. 130:**

All DOCUMENTS that IDENTIFY the business entities under which the principals, employees, managers, and/or executives of ONLINENIC operated in the last 5 years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 130**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. The definition of IDENTIFY is also over-broad because it potentially includes every detail concerning an entity, which is not the ordinary meaning of "identify". Accordingly,

OnlineNIC interprets this request as seeking documents sufficient to identify the name and address of the entity in question. In relevant part, OnlineNIC has only one "executive", who also performs services for  Xiamen 35.com Technology Co. Ltd, and the documents at Bates number 266918 – 266947 are sufficient to identify that entity.    Rex Liu is also involved in an auto parts business, which is unrelated to domain names – and accordingly identification of that business is not relevant.

**REQUEST FOR PRODUCTION NO. 131:**

All DOCUMENTS that IDENTIFY claims of trademark infringement asserted against ONLINENIC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 131**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case.  Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files.  The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records.  Subject to these objections, OnlineNIC has produced records the Keyword Dataset, and the documents at Bates numbers  OnlineNIC258331 – OnlineNIC258369. OnlineNIC is not aware of any responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 132:**

All DOCUMENTS that IDENTIFY claims against ONLINENIC that a registered domain name is or was identical or confusingly similar to a trademark or service mark and either that it was registered and/or used in bad faith or that ONLINENIC had a bad faith intent to profit from the trademark or service mark at issue.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 132**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited

in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. Subject to these objections, OnlineNIC has produced records the Keyword Dataset, and the documents at Bates numbers  OnlineNIC258331 – OnlineNIC258369. OnlineNIC is not aware of any responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 133:**

For all claims identified in the immediately preceding request, all DOCUMENTS related to such claims, including, but not limited to, settlement documents, judgments, and documents concerning any satisfaction of a judgment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 133**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 134:**

All DOCUMENTS that IDENTIFY claims of trademark infringement asserted against DOMAIN ID SHIELD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 134**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 135:**

All DOCUMENTS that IDENTIFY claims against DOMAIN ID SHIELD that a registered domain name is or was identical or confusingly similar to a trademark or service mark and either that it was registered and/or used in bad faith or that DOMAIN ID SHIELD had a bad faith intent to profit from the trademark or service mark at issue.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 135**

See Keyword Dataset.

**REQUEST FOR PRODUCTION NO. 136:**

For all claims identified in the immediately preceding request, all DOCUMENTS related to such claims, including, but not limited to, settlement documents, judgments, and documents concerning any satisfaction of a judgment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 136**

See Keyword Dataset.

**REQUEST FOR PRODUCTION NO. 137:**

All DOCUMENTS that IDENTIFY claims of trademark infringement asserted against any entity associated with ONLINENIC'S principals, employees, managers and/or executives.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 137**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 138:**

All DOCUMENTS that IDENTIFY claims asserted against any business entity associated with ONLINENIC's principals, employees, managers and/or executives that a registered domain name is or was identical or confusingly similar to a trademark or service mark and either that it was registered and/or used in bad faith or that the entity against whom the claim was asserted had a bad faith intent to profit from the trademark or service mark at issue.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 138**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 139:**

All DOCUMENTS that IDENTIFY claims of trademark infringement asserted against any business entity associated with DOMAIN ID SHIELD's principals, employees, managers and/or executives.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 139**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 140:**

All DOCUMENTS that IDENTIFY claims asserted against any business entity associated with DOMAIN ID SHIELD'S principals, employees, managers and/or executives that a registered

domain name is or was identical or confusingly similar to a trademark or service mark and either that it was registered and/or used in bad faith or that the entity against whom the claim was asserted had a bad faith intent to profit from the trademark or service mark at issue.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 140**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 141:**

All DOCUMENTS pertaining to enforcement of contracted terms against ONLINENIC by ICANN for failure to comply with any user agreement.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 141**

*See* Bates numbers OnlineNIC000076 – OnlineNIC000165, OnlineNIC267174 - OnlineNIC267194.

**REQUEST FOR PRODUCTION NO. 142:**

All DOCUMENTS pertaining to enforcement of contracted terms against DOMAIN ID SHIELD by ICANN for failure to comply with any user agreement.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 142**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 143:**

All DOCUMENTS pertaining to enforcement of contracted terms against any business entity associated with ONLINENIC's principals, employees, managers and/or executives by ICANN for failure to comply with any user agreement.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 143**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 144:**

All DOCUMENTS pertaining to enforcement of contracted terms against any business entity associated with DOMAIN ID SHIELD's principals, employees, managers and/or executives by ICANN for failure to comply with any user agreement.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 144**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 145:**

All DOCUMENTS pertaining to compliance matters directed to ONLINENIC by ICANN.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 145**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. Subject to these objections, OnlineNIC has searched reasonably ascertainable emails aliases such as icann@onlinenic.com, and has produced records at Bates numbers OnlineNIC012051 – OnlineNIC018141, and OnlineNIC267174 - OnlineNIC267194, and in the Keyword Dataset. OnlineNIC is not aware of any responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 146:**

All DOCUMENTS pertaining to compliance matters directed to DOMAIN ID SHIELD by ICANN.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 146**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 147:**

All DOCUMENTS pertaining to lawsuits or legal actions filed by third parties against ONLINENIC in any jurisdiction for the past 10 years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 147**

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case. Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records and hundreds of tables, more than 1 million

emails and support tickets, and thousands of bank statements, financial records, invoices and other business documents, including loose files. The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records. OnlineNIC has been a party to the legal actions set forth at Bates number OnlineNIC268774 – OnlineNIC268774. Filings in Federal cases are equally available to Plaintiffs using PACER, and Defendants object to producing those filings on those grounds. OnlineNIC was also a party to the case identified at Bates number OnlineNIC267202 – OnlineNIC267206. All communications related to that case are not being produced on the grounds of the attorney-client privilege, as set forth in the privilege log at Bates number OnlineNIC272099 – OnlineNIC272100. *See also* Bates numbers OnlineNIC258331-OnlineNIC258369. OnlineNIC is not aware of any responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 148:**

All DOCUMENTS pertaining to lawsuits or legal actions filed by third parties against DOMAIN ID SHIELD in any jurisdiction for the past 10 years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 148**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 149:**

All DOCUMENTS that IDENTIFY claims of DOMAIN NAME ABUSE submitted to ONLINENIC in last 5 years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 149**

The parties have agreed that the Keyword Dataset satisfies this Request, which has been produced.

**REQUEST FOR PRODUCTION NO. 150:**

All DOCUMENTS that IDENTIFY claims of DOMAIN NAME ABUSE submitted to DOMAIN ID SHIELD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 150**

The parties have agreed that the Keyword Dataset satisfies this Request, which has been

produced.

**REQUEST FOR PRODUCTION NO. 151:**

All DOCUMENTS that IDENTIFY internal or external policies, procedures, or best practices to deter cybersquatting by ONLINENIC since 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 151**

*See* Bates numbers OnlineNIC267195 – OnlineNIC267201, as well as the policies and procedures that are evidenced in the business operations set forth in the Keyword Dataset.

**REQUEST FOR PRODUCTION NO. 152:**

All DOCUMENTS that IDENTIFY internal or external policies, procedures, or best practices to deter cybersquatting by DOMAIN ID SHIELD since 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 152**

No responsive documents.

As to Objections.

                                        Respectfully Submitted,

DATED:  July 23, 2020                   LEXANALYTICA, PC

                                        By: _____

                                        Attorneys for Defendants
                                        ONLINENIC, INC. and DOMAIN ID SHEILD
                                        SERVICE CO., LIMITED

- 57 -

VERIFICATION

I, YU HONGXIA, am an officer of OnlineNIC, Inc.. and am authorized to sign this verification. I believe, based on reasonable inquiry, that the foregoing First Supplementary Responses of OnlineNIC, Inc. to Plaintiffs' Requests for Production of Documents, Set 1 – are true and correct to the best of my knowledge, information and belief.

I verify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED:  July 23, 2020 at Xiamen, China

By: _____
Yu Hongxia

# Exhibit 15

*1939078*

**CERTIFICATE OF AMENDMENT**
**OF**
**ARTICLES OF INCORPORATION**

FILED
In the office of the Secretary of State
of the State of California

**JAN 2 1 2000**

*Bill Jones*
BILL JONES, Secretary of State

The undersigned certifies that:

1.  He is the president and secretary, of <u>Online NIC Inc.</u>., a California corporation.

2.  Article <u>I</u> of the Articles of Incorporation of this corporation is amended to read as follows:

    <u>The name of this corporation is ONLINENIC INC.</u>

3.  The foregoing amendment of Articles of Incorporation has been duly approved by the board of directors.

4.  The corporation has issued no shares.

We further declare under penalty of perjury under the laws of the State of California that the matters set forth in this certificate are true and correct of our own knowledge.

DATE: _____1-19-00_____

_____
SHAO HUI GONG, President

ONLINENIC 000071

1939078

## ARTICLES OF INCORPORATION

**FILED**
In the office of the Secretary of State
of the State of California

**OCT 0 6 1999**

*BILL JONES, Secretary of State*

### I

The name of this corporation is: Online NIC Inc.

### II

The purpose of the corporation is to engage in any lawful act or activity for which a corporation may be organized under the GENERAL CORPORATION LAW Of California other than the banking business, the trust company business or the practice of a profession permitted to be incorporated by the California Corporation Code.

### III

The name and address in the State of California of this corporation's initial agent for the service of process is: Shaohui Gong, 3435 Wilshire Blvd., Los Angeles, CA 90010.

### V

This corporation is authorized to issue only one class of shares of stock; and the total number of shares which this corporation is authorized to issue is 60,000,000.

Date: October 6, 1999

_____
Shaohui Gong, Incorporator

**State of California**
**Secretary of State**

**S**

**Statement of Information**
(Domestic Stock and Agricultural Cooperative Corporations)
FEES (Filing and Disclosure): $25.00.
If this is an amendment, see instructions.
**IMPORTANT – READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

**FN97826**

**FILED**

In the office of the Secretary of State
of the State of California

**JUL-24 2017**

1. **CORPORATE NAME**
ONLINENIC INC.

2. **CALIFORNIA CORPORATE NUMBER**
   C1939078

This Space for Filing Use Only

**No Change Statement** (Not applicable if agent address of record is a P.O. Box address. See instructions.)

3. If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no statement of information has been previously filed, this form must be completed in its entirety.
☐ If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed **to Item 17.**

**Complete Addresses for the Following** (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

| | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE 3027 TEAGARDEN ST., SAN LEANDRO, CA 94577 | | | | |
| 5. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY 3027 TEAGARDEN ST., SAN LEANDRO, CA 94577 | | | | |
| 6. MAILING ADDRESS OF CORPORATION, IF DIFFERENT THAN ITEM 4 | | | | |

**Names and Complete Addresses of the Following Officers** (The corporation must list these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 7. CHIEF EXECUTIVE OFFICER/ ZHIPO CHEN | 3027 TEAGARDEN ST., SAN LEANDRO, CA 94577 | | | |
| 8. SECRETARY REX W LIU | 3027 TEAGARDEN ST, SAN LEANDRO, CA 94577 | | | |
| 9. CHIEF FINANCIAL OFFICER/ SILY CHEN | 3027 TEAGARDEN ST., SAN LEANDRO, CA 94577 | | | |

**Names and Complete Addresses of All Directors, Including Directors Who are Also Officers** (The corporation must have at least one director. Attach additional pages, if necessary.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 10. NAME CARRIE YU | 3027 TEAGARDEN ST, SAN LEANDRO, CA 94577 | | | |
| 11. NAME | | | | |
| 12. NAME | | | | |

13. NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY:

**Agent for Service of Process** If the agent is an individual, the agent must reside in California and Item 15 must be completed with a California street address, a P.O. Box address is not acceptable. If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 15 must be left blank.

14. NAME OF AGENT FOR SERVICE OF PROCESS
REX WEIXUN LIU

| 15. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, **IF AN INDIVIDUAL** | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 3027 TEAGARDEN ST, SAN LEANDRO, CA 94577 | | | |

**Type of Business**
16. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION
DOMAIN REGISTRATIONS

17. BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE CALIFORNIA SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| 07/24/2017 | REX W. LIU | SECRETARY | |
|---|---|---|---|
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |

| SI-200 (REV 01/2013) | Page 1 of 1 | APPROVED BY SECRETARY OF STATE |
|---|---|---|

ONLINENIC 000073

| | | |
|---|---|---|
| (State Seal) | **State of California**<br>**Secretary of State**<br><br>**Statement of Information**<br>(Domestic Stock and Agricultural Cooperative Corporations)<br>FEES (Filing and Disclosure): $25.00.<br>If this is an amendment, see instructions.<br>IMPORTANT – READ INSTRUCTIONS BEFORE COMPLETING THIS FORM | **S** |

**G480623**

# FILED

In the office of the Secretary of State
of the State of California

**MAR-11 2019**

This Space for Filing Use Only

---

1. **CORPORATE NAME**

ONLINENIC INC.

---

2. **CALIFORNIA CORPORATE NUMBER**

C1939078

---

**No Change Statement** (Not applicable if agent address of record is a P.O. Box address. See instructions.)

3. If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no statement of information has been previously filed, this form must be completed in its entirety.

[✓] If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed **to Item 17.**

---

**Complete Addresses for the Following** (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

| | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | | | |
| 5. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | | | |
| 6. MAILING ADDRESS OF CORPORATION, IF DIFFERENT THAN ITEM 4 | | | |

---

**Names and Complete Addresses of the Following Officers** (The corporation must list these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 7. CHIEF EXECUTIVE OFFICER/ | | | | |
| 8. SECRETARY | | | | |
| 9. CHIEF FINANCIAL OFFICER/ | | | | |

---

**Names and Complete Addresses of All Directors, Including Directors Who are Also Officers** (The corporation must have at least one director. Attach additional pages, if necessary.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 10. NAME | | | | |
| 11. NAME | | | | |
| 12. NAME | | | | |

13. NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY:

---

**Agent for Service of Process** If the agent is an individual, the agent must reside in California and Item 15 must be completed with a California street address, a P.O. Box address is not acceptable. If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 15 must be left blank.

14. NAME OF AGENT FOR SERVICE OF PROCESS

| | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 15. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, **IF AN INDIVIDUAL** | | | |

---

**Type of Business**

16. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION

---

17. BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE CALIFORNIA SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| 03/11/2019 | REX W. LIU | MANAGER | |
|---|---|---|---|
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |

| SI-200 (REV 01/2013) | APPROVED BY SECRETARY OF STATE |
|---|---|

ONLINENIC 000074

Exhibit 16

| Customer Name | Total | Country | Class |
|---|---|---|---|
| Werkhaus GmbH | $25,000 | Germany | RYN |
| West263 International Limited | $197,968 | China | RAR |
| WhatIsYourDomain LLC | $8,296 | United States | RAR |
| White Alligator Domains, LLC | $5,798 | United States | RAR |
| White Rhino Domains, LLC | $5,828 | United States | RAR |
| Whiteglove Domains, Incorporated | $5,793 | United States | RAR |
| Whois Networks Co., Ltd. | $30,312 | Korea (South) | RAR |
| Who's Who Registry | $25,000 | United States | RYN |
| WHT Co., Ltd | $5,163 | Korea (South) | RAR |
| Wide Left Domains LLC | $5,809 | United States | RAR |
| Wide Right Domains LLC | $5,817 | United States | RAR |
| Wild Bunch Domains, LLC | $5,823 | United States | RAR |
| Wild West Domains, LLC | $522,725 | United States | RAR |
| Wildzebradomains, LLC | $5,766 | United States | RAR |
| WillametteNames.com LLC | $5,896 | United States | RAR |
| William Hill Organization Limited | $25,000 | United Kingdom | RYN |
| William Morris Endeavor Entertainment, LLC | $25,000 | United States | RYN |
| Win Names LLC | $5,815 | United States | RAR |
| WingNames Co., Ltd. | $2,826 | Japan | RAR |
| Wingu Networks, S.A. de C.V. | $8,165 | Mexico | RAR |
| Wix.com Ltd. | $3,500 | Israel | RAR |
| WIXI Incorporated | $5,774 | Japan | RAR |
| Wolfe Domain, LLC dba Dot Brand Registrar Services | $4,056 | United States | RAR |
| Wolters Kluwer N.V. | $25,000 | United Kingdom | RYN |
| Woodside Petroleum Limited | $25,000 | Australia | RYN |
| World Biz Domains, LLC | $4,805 | United States | RAR |
| World Rugby Strategic Developments Limited | $30,838 | United States | RYN |
| World Trade Centers Association, Inc. | $25,000 | United States | RYN |
| World4You Internet Services GmbH | $13,930 | Austria | RAR |
| WorthyDomains LLC | $11,811 | United States | RAR |
| Xerox DNHC LLC | $50,000 | United States | RYN |
| Xiamen 35.Com Technology Co., Ltd. | $56,142 | China | RAR |
| Xiamen ChinaSource Internet Service Co., Ltd | $29,243 | China | RAR |
| Xiamen Dianmei Network Technology Co., Ltd. | $4,493 | China | RAR |
| Xiamen Digital Engine Network Technology Co., Ltd. | $3,387 | China | RAR |
| Xiamen Domains, Inc. | $7,074 | China | RAR |
| Xiamen Mimei Technology Co., Ltd. | $2,237 | China | RAR |
| Xiamen Nawang Technology Co., Ltd. | $16,696 | China | RAR |
| Xiamen Niucha Technology Co., Ltd. | $5,553 | China | RAR |
| Xiamen Xin click Network Polytron Technologies Inc | $5,039 | China | RAR |
| Xiamen Yuwang Technology Co., LTD | $3,755 | China | RAR |
| Xin Net Technology Corporation | $473,033 | China | RAR |
| XYZ.COM LLC | $634,791 | United States | RYN |
| Yahoo! Domain Services Inc. | $52,975 | United States | RYN |
| YANDEX, LLC | $25,000 | Russian Federation | RYN |
| Yellow Start, LLC | $5,500 | India | RAR |
| YODOBASHI CAMERA CO.,LTD. | $50,000 | Japan | RYN |
| YouDamain.com LLC | $5,888 | United States | RAR |
| Your Domain Casa, LLC | $5,814 | United States | RAR |
| Your Domain King, LLC | $5,501 | India | RAR |
| Your Domain LLC | $5,808 | United States | RAR |
| ZA Central Registry NPC | -$1,333 | South Africa | RAR |
| ZA Central Registry NPC trading as Registry.Africa | $25,137 | South Africa | RYN |
| ZA Central Registry NPC trading as ZA Central Registry | $75,000 | South Africa | RYN |
| Zadco Company | $25,000 | United States | RYN |
| Zhengzhou Business Technology Co., Ltd. | $4,493 | China | RAR |
| Zhengzhou Century Connect Electronic Technology Development Co., Ltd | $8,310 | China | RAR |
| Zhengzhou Yi Fang Electronics Co., Ltd. | $5,848 | China | RAR |
| Zhengzhou Zitian Network Technology Co., Ltd | $5,982 | China | RAR |
| Zhong Yu Network Technology Company Limited | $4,864 | Taiwan | RAR |
| Zhuimi Inc | $4,160 | United States | RAR |
| ZigZagNames.com LLC | $5,926 | United States | RAR |
| Zinc Domain Names LLC | $5,803 | United States | RAR |

**Funding by Source**
**Fiscal Year 2020 (Period: 1 July 2019 - 30 June 2020)**
**ICANN Operations (excludes New gTLD)**

This report summarizes the funding received from each legal entity as it pertains to ICANN's Fiscal Year 2020.
The most current fiscal year and all prior year reports are available in PDF format or Excel format on ICANN's Financial page.
See: https://www.icann.org/resources/pages/governance/current-en

| Class | Customer Name | Country or Territory | Total |
|---|---|---|---|
| New gTLD Registry | UBN INTERNET LTDA. | Brazil | $25,000 |
| New gTLD Registry | UBS AG | Switzerland | $25,000 |
| Registrar | Udamain.com LLC | United States of America | $5,909 |
| Registrar | UdomainName.com LLC | United States of America | $7,045 |
| country code Top Level Domain (ccTLD) | UHSA School of Medicine | Antigua and Barbuda | $500 |
| New gTLD Registry | UK Creative Ideas Limited | United Kingdom of Great Britain and Northern Ireland | $46,592 |
| Registrar | UK-2 Limited | United States of America | $5,246 |
| Registrar | Ultra Registrar, LLC | India | $5,584 |
| Registrar | Umbrellar Limited | New Zealand | $6,335 |
| Registrar | Unified Servers, LLC | India | $5,589 |
| Registrar | united-domains AG | Germany | $114,259 |
| Registrar | Unitedkingdomdomains, LLC | United States of America | $5,601 |
| Legacy TLD Registry | Universal Registration Services, Inc. dba NewDentity.com | Switzerland | $25,000 |
| Registrar | Universidad de Chile | Chile | $5,646 |
| country code Top Level Domain (ccTLD) | Universidad de Chile | Chile | $25,020 |
| country code Top Level Domain (ccTLD) | Universidad del Valle de Guatemala | Guatemala | $500 |
| country code Top Level Domain (ccTLD) | University of Curacao | Curaçao | $500 |
| country code Top Level Domain (ccTLD) | University of Guam | Guam | $500 |
| country code Top Level Domain (ccTLD) | University of Guyana | Guyana | $500 |
| country code Top Level Domain (ccTLD) | University of Latvia | Latvia | $10,000 |
| country code Top Level Domain (ccTLD) | University of The Bahamas | Bahamas | $500 |
| country code Top Level Domain (ccTLD) | University of the West Indies | Trinidad and Tobago | $500 |
| Registrar | Unpower, LLC | India | $5,588 |
| New gTLD Registry | UNR Corp. | Cayman Islands | $570,763 |
| Registrar | Upperlink Limited | Nigeria | $6,446 |
| New gTLD Registry | UPS Market Driver, Inc. | United States of America | $25,000 |
| Registrar | URL Solutions, Inc. | Cyprus | $33,961 |
| Registrar | V12 Domains, LLC | United States of America | $5,888 |
| New gTLD Registry | Valuetainment Corp. | Switzerland | $29,000 |
| Registrar | Vantage of Convergence (Chengdu) Technology Co., Ltd. | China | $3,500 |
| Registrar | Variomedia AG | Germany | $9,094 |
| Registrar | Vautron Rechenzentrum AG | Germany | $58,421 |
| country code Top Level Domain (ccTLD) | VCS Pty Ltd | Seychelles | $500 |
| Registrar | Vedacore.com, Inc. | United States of America | $2,000 |
| Registrar | VentralP Australia Pty Ltd | Australia | $4,525 |
| Registrar | Verelink, Inc. | United States of America | $4,525 |
| Sponsor | VeriSign Sarl | Switzerland | $45,000 |
| New gTLD Registry | VeriSign Sarl | United States of America | $275,000 |
| Legacy TLD Registry | VeriSign, Inc. | United States of America | $45,565,544 |
| New gTLD Registry | VeriSign, Inc. | United States of America | $50,000 |
| Registrar | Veritas Domains, LLC | United States of America | $5,925 |
| Registrar | Vertex Names.com, LLC | United States of America | $5,588 |
| Registrar | Vianames LLC | United States of America | $3,500 |
| Registrar | VIAWEB Inc. | Korea (the Republic of) | $4,061 |
| Registrar | Victorynames LLC | United States of America | $5,876 |
| New gTLD Registry | VIENNA INSURANCE GROUP AG Wiener Versicherung Gruppe | Austria | $25,000 |
| New gTLD Registry | Viking River Cruises (Bermuda) Ltd. | United States of America | $50,000 |
| Registrar | VIP Brand Management Limited | China | $3,500 |
| Registrar | VIP internet Industry Limited | China | $5,542 |
| New gTLD Registry | Virgin Enterprises Limited | United Kingdom of Great Britain and Northern Ireland | $29,000 |
| country code Top Level Domain (ccTLD) | Virgin Islands Public Telecommunication | Virgin Islands, U.S. | $300 |
| Registrar | VIRTUA DRUG Kutatási Szolgáltató Korlátolt Felelősségű Társaság | Hungary | $3,500 |
| Registrar | Virtualia LLC | United States of America | $3,500 |
| New gTLD Registry | Visa Worldwide Pte. Limited | United States of America | $25,000 |
| New gTLD Registry | Vistaprint Limited | Denmark | $19,505 |
| Registrar | Visual Monster, LLC | India | $5,587 |
| Registrar | VisualNames LLC | United States of America | $9,272 |
| Registrar | Vitalwerks Internet Solutions, LLC DBA No-IP | United States of America | $11,041 |
| Registrar | Vivid Domains, Inc. | United States of America | $4,525 |
| country code Top Level Domain (ccTLD) | VNNIC | Viet Nam | $1,500 |
| Registrar | Vodien Australia Pty Ltd | Australia | $2,389 |
| Registrar | Vodien Internet Solutions Pte. Ltd. | Singapore | $7,307 |
| New gTLD Registry | Volkswagen (China) Investment Co., Ltd. | Germany | $25,000 |
| New gTLD Registry | Volkswagen Group of America Inc. | Germany | $25,000 |
| New gTLD Registry | Volvo Holding Sverige Aktiebolag | Sweden | $25,000 |
| New gTLD Registry | Vox Populi Registry Ltd. | Canada | $35,296 |
| Registrar | Wal-Mart Stores, Inc. | United States of America | $125,000 |
| Registrar | WangJu Brands Management Co., Ltd. | China | $8,156 |
| Registrar | Washington Technology Limited | China | $3,833 |
| Registrar | Web Commerce Communications Limited dba WebNic.cc | Virgin Islands, British | $292,487 |
| Registrar | Web4Africa Inc. | South Africa | $6,402 |
| Registrar | Webagentur.at Internet Services GmbH d/b/a domainname.at | Austria | $5,743 |
| Registrar | Webair Internet Development, Inc. | United States of America | $6,129 |
| Registrar | Webnames Limited | Russian Federation | $6,175 |
| Registrar | Webnames.ca Inc. | Canada | $14,984 |
| Registrar | Webveloper Inc. | United States of America | $667 |
| Registrar | WEDOS Internet, a.s. | Czech Republic | $4,965 |
| New gTLD Registry | Weir Group IP Limited | United Kingdom of Great Britain and Northern Ireland | $40,247 |
| New gTLD Registry | Werkhaus GmbH | Germany | $25,000 |
| Registrar | West263 International Limited | China | $581,585 |
| Registrar | WhatIsYourDomain LLC | United States of America | $7,559 |
| Registrar | White Alligator Domains, LLC | United States of America | $5,886 |
| Registrar | White Rhino Domains, LLC | United States of America | $5,905 |
| Registrar | Whiteglove Domains, LLC | United States of America | $5,912 |
| New gTLD Registry | Who's Who Registry | United States of America | $29,000 |
| Registrar | Whois Corp. | Korea (the Republic of) | $28,905 |
| Registrar | Wide Left Domains LLC | United States of America | $5,898 |
| Registrar | Wide Right Domains LLC | United States of America | $5,885 |
| Registrar | Wild Bunch Domains, LLC | United States of America | $5,885 |
| Registrar | Wild West Domains, LLC | United States of America | $478,584 |
| Registrar | Wildzebradomains, LLC | United States of America | $5,894 |
| Registrar | WillametteNames.com LLC | United States of America | $5,941 |
| New gTLD Registry | William Hill Organization Limited | United Kingdom of Great Britain and Northern Ireland | $25,000 |
| New gTLD Registry | William Morris Endeavor Entertainment, LLC | United States of America | $25,000 |
| Registrar | Win Names LLC | United States of America | $5,890 |
| Registrar | WingNames Co., Ltd. | Japan | $4,574 |
| Registrar | Wingu Networks, S.A. de C.V. | Mexico | $7,714 |
| Registrar | Wix.com Ltd. | Israel | $242,473 |
| Registrar | WIXI Incorporated | Japan | $5,738 |
| Registrar | Wolfe Domain, LLC dba Dot Brand Registrar Services | United States of America | $4,530 |
| New gTLD Registry | Wolters Kluwer N.V. | United Kingdom of Great Britain and Northern Ireland | $25,000 |
| Registrar | Woodside Petroleum Limited | Australia | $25,000 |
| New gTLD Registry | World Biz Domains Limited | United States of America | $4,265 |
| New gTLD Registry | World Rugby Strategic Developments Limited | United States of America | $25,003 |
| New gTLD Registry | World Trade Centers Association, Inc. | United States of America | $25,000 |
| Registrar | World4You Internet Services GmbH | Austria | $14,494 |
| Registrar | WorthyDomains LLC | United States of America | $10,147 |
| New gTLD Registry | Xerox DNHC LLC | United States of America | $50,000 |
| Registrar | Xi'an Qianxi Network Technology Co. Ltd. | China | $4,864 |
| Registrar | Xiamen 35.Com Technology Co., Ltd. | China | $59,329 |
| Registrar | Xiamen Booksir Qiyoutong Technology Co., Ltd. | China | $5,620 |
| Registrar | Xiamen ChinaSource Internet Service Co., Ltd | China | $40,467 |
| Registrar | Xiamen Dianmei Network Technology Co., Ltd. | China | $4,547 |

| Customer Class | Customer Name | Country | Total |
|---|---|---|---|
| RAR | SNAPNAMES 66, LLC | United States | $ 5,541 |
| RAR | SNAPNAMES 66, INC. | United States | $ 333 |
| RAR | SNAPNAMES 42, LLC | United States | $ 5,784 |
| RAR | SNAPNAMES 42, INC. | United States | $ 333 |
| RAR | SNAPNAMES 46, LLC | United States | $ 5,767 |
| RAR | SNAPNAMES 46, INC. | United States | $ 333 |
| RAR | SNAPNAMES 67, LLC | United States | $ 5,538 |
| RAR | SNAPNAMES 67, INC. | United States | $ 333 |
| RAR | SNAPNAMES 47, LLC | United States | $ 6,684 |
| RAR | SNAPNAMES 47, INC. | United States | $ 333 |
| RAR | SNAPNAMES 50, LLC | United States | $ 5,784 |
| RAR | SNAPNAMES 50, INC. | United States | $ 333 |
| RAR | SNAPNAMES 43, LLC | United States | $ 5,748 |
| RAR | SNAPNAMES 43, INC. | United States | $ 333 |
| RAR | SNAPNAMES 44, LLC | United States | $ 5,783 |
| RAR | SNAPNAMES 44, INC. | United States | $ 333 |
| RAR | SNAPNAMES 70, LLC | United States | $ 5,524 |
| RAR | SNAPNAMES 70, INC. | United States | $ 333 |
| RAR | SNAPNAMES 59, LLC | United States | $ 5,781 |
| RAR | SNAPNAMES 59, INC. | United States | $ 333 |
| RAR | SNAPNAMES 69, LLC | United States | $ 5,530 |
| RAR | SNAPNAMES 69, INC. | United States | $ 333 |
| RAR | SNAPNAMES 64, LLC | United States | $ 5,528 |
| RAR | SNAPNAMES 64, INC. | United States | $ 333 |
| RAR | Xiamen 35.Com Technology Co., Ltd. | China | $ 72,162 |
| RAR | Kaunas University of Technology, Department of Information Technologies dba Domreg.lt | Lithuania | $ 4,703 |
| RAR | Webair Internet Development, Inc. | United States | $ 6,232 |
| RAR | Vitalwerks Internet Solutions, LLC DBA No-IP | United States | $ 10,959 |
| RAR | RegistryGate GmbH | Germany | $ 91,400 |
| RAR | Microsoft Corporation | United States | $ 4,524 |
| RAR | eName Technology Co., Ltd. | China | $ 187,824 |
| RAR | Experinom Inc. | Canada | $ 5,585 |
| RAR | Samjung Data Service Co., Ltd | Korea (South) | $ 4,868 |
| RAR | Net-Chinese Co., Ltd. | Taiwan | $ 10,956 |
| RAR | Web Werks India Pvt. Ltd d/b/a ZenRegistry.com | India | $ 10,704 |
| RAR | Arctic Names, Inc. | Canada | $ 4,964 |
| RAR | Hawthornedomains.com LLC | United States | $ 5,896 |
| RAR | Namevolcano.com LLC | United States | $ 6,866 |
| RAR | Namesalacarte.com LLC | United States | $ 5,953 |
| RAR | Namepanther.com LLC | United States | $ 5,909 |
| RAR | Key-Systems, LLC | United States | $ 69,534 |
| RAR | Sitefrenzy.com LLC | United States | $ 5,996 |
| RAR | Silverbackdomains.com LLC | United States | $ 5,914 |
| RAR | Savethename.com LLC | United States | $ 5,903 |
| RAR | Santiamdomains.com LLC | United States | $ 6,001 |
| RAR | Sammamishdomains.com LLC | United States | $ 5,895 |
| RAR | Rainydaydomains.com LLC | United States | $ 5,903 |
| RAR | GateKeeperDomains.net LLC | United States | $ 5,904 |
| RAR | Soyouwantadomain.com LLC | United States | $ 5,903 |
| RAR | Snoqualamiedomains.com LLC | United States | $ 5,897 |
| RAR | Snappyregistrar.com LLC | United States | $ 5,891 |
| RAR | Mvpdomainnames.com LLC | United States | $ 6,388 |
| RAR | Microbreweddomains.com LLC | United States | $ 5,972 |
| RAR | Masterofmydomains.net LLC | United States | $ 5,912 |
| RAR | Lakeodomains.com LLC | United States | $ 5,959 |
| RAR | Klaatudomains.com LLC | United States | $ 5,888 |
| RAR | Regtime Ltd. | Russian Federation | $ 12,232 |
| RAR | Kheweul.com SA | Senegal | $ 5,476 |
| RAR | Open System Ltda - Me | Brazil | $ 1,054 |
| RAR | Xiamen ChinaSource Internet Service Co., Ltd | China | $ 31,147 |
| RAR | Paknic (Private) Limited | United States | $ 5,290 |
| RAR | AB Name ISP | Sweden | $ 13,366 |
| RAR | Sedo.com LLC | United States | $ 4,524 |
| RAR | DotArai Co., Ltd. | Thailand | $ 5,806 |
| RAR | Register.ca Inc. | Canada | $ 9,825 |
| RAR | Instra Corporation Pty Ltd. | Australia | $ 28,790 |
| RAR | Hosteur SARL | France | $ 6,523 |
| RAR | Service Development Center of the State Commission Office for Public Sector Reform | China | $ 4,555 |
| RAR | Oi Internet S/A | Brazil | $ 1,544 |
| RAR | AFRIREGISTER S.A. | Burundi | $ 4,715 |

| Customer Name | Class | Country | Total |
|---|---|---|---|
| VIAWEB Inc. | Registrar | Korea, Republic of | $ 4,528 |
| Victorynames LLC | Registrar | United States of America | $ 5,884 |
| VIENNA INSURANCE GROUP AG Wiener Versicherung Gruppe | Registry New gTLD | Austria | $ 25,000 |
| Viking River Cruises (Bermuda) Ltd. | Registry New gTLD | United States of America | $ 50,000 |
| VIP Brand Management Limited | Registrar | China | $ 3,728 |
| VIP Internet Industry Limited | Registrar | China | $ 5,580 |
| Virgin Enterprises Limited | Registry New gTLD | United Kingdom of Great Britain and Northern Ireland | $ 25,000 |
| Virgin Islands Public Telecommunication | Country Code Operator (ccTLD) | Virgin Islands, U.S. | $ 300 |
| VIRTUA DRUG Kutatási Szolgáltató Korlátolt Felelősségű Társaság | Registrar | Hungary | $ 2,865 |
| Virtualia LLC | Registrar | United States of America | $ 4,501 |
| Visa Worldwide Pte. Limited | Registry New gTLD | United States of America | $ 25,000 |
| Visual Monster, LLC | Registrar | India | $ 5,591 |
| VisualNames LLC | Registrar | United States of America | $ 6,267 |
| Vitalwerks Internet Solutions, LLC DBA No-IP | Registrar | United States of America | $ 10,950 |
| Vivid Domains, Inc. | Registrar | United States of America | $ 4,527 |
| VNNIC | Country Code Operator (ccTLD) | Viet Nam | $ 1,500 |
| Vodien Internet Solutions Pte. Ltd. | Registrar | Singapore | $ 7,447 |
| Volkswagen (China) Investment Co., Ltd. | Registry New gTLD | China | $ 25,000 |
| Volkswagen Group of America Inc. | Registry New gTLD | Germany | $ 25,000 |
| Volvo Holding Sverige Aktiebolag | Registry New gTLD | Sweden | $ 25,000 |
| Vox Populi Registry Ltd. | Registry New gTLD | Canada | $ 36,495 |
| Wal-Mart Stores, Inc. | Registry New gTLD | United States of America | $ 125,000 |
| WangJu Brands Management Co., Ltd. | Registrar | China | $ 8,242 |
| Wanyuhulian Technology Limited | Registrar | China | $ 4,527 |
| WDomain.Com Limited | Registrar | China | $ 3,500 |
| WDomain.Com1 Limited | Registrar | China | $ 3,500 |
| WDomain.Com2 Limited | Registrar | China | $ 3,500 |
| WDomain.Com3 Limited | Registrar | China | $ 3,500 |
| WDomain.Com4 Limited | Registrar | China | $ 3,500 |
| WDomain.Com5 Limited | Registrar | China | $ 3,500 |
| Web Commerce Communications Limited dba WebNic.cc | Registrar | Virgin Islands, British | $ 88,113 |
| Web4Africa (Pty) Ltd | Registrar | South Africa | $ 6,566 |
| Webagentur.at Internet Services GmbH d/b/a domainname.at | Registrar | Austria | $ 5,926 |
| Webair Internet Development, Inc. | Registrar | United States of America | $ 5,604 |
| Webcentral Group Limited dba Melbourne IT | Registrar | Australia | $ 29,031 |
| Webempresa Europa, S.L. | Registrar | Spain | $ 3,833 |
| Webhero, Inc. | Registrar | United States of America | $ 6,284 |
| Webnames Limited | Registrar | Russian Federation | $ 6,536 |
| Webnames.ca Inc. | Registrar | Canada | $ 14,837 |
| WEDOS Internet, a.s. | Registrar | Czech Republic | $ 10,183 |
| Weir Group IP Limited | Registry New gTLD | United Kingdom of Great Britain and Northern Ireland | $ 25,000 |
| Werkhaus GmbH | Registry New gTLD | Germany | $ 25,000 |
| West263 International Limited | Registrar | China | $ 92,328 |
| WhatIsYourDomain LLC | Registrar | United States of America | $ 5,973 |
| WHC Online Solutions Inc. | Registrar | Canada | $ 8,795 |
| White Alligator Domains, LLC | Registrar | United States of America | $ 5,866 |
| White Rhino Domains, LLC | Registrar | United States of America | $ 5,876 |
| Whiteglove Domains, LLC | Registrar | United States of America | $ 5,851 |
| Who's Who Registry | Registry New gTLD | United States of America | $ 25,000 |
| Whogohost Limited | Registrar | Nigeria | $ 3,500 |
| Whois Corp. | Registrar | Korea, Republic of | $ 29,576 |
| Wide Left Domains LLC | Registrar | United States of America | $ 5,853 |
| Wide Right Domains LLC | Registrar | United States of America | $ 5,866 |
| Wild Bunch Domains, LLC | Registrar | United States of America | $ 5,861 |
| Wild West Domains, LLC | Registrar | United States of America | $ 546,435 |
| Wildzebradomains, LLC | Registrar | United States of America | $ 5,862 |
| WillametteNames.com LLC | Registrar | United States of America | $ 5,872 |
| William Hill Organization Limited | Registry New gTLD | United Kingdom of Great Britain and Northern Ireland | $ 25,000 |
| William Morris Endeavor Entertainment, LLC | Registry New gTLD | United States of America | $ 25,000 |
| Win Names LLC | Registrar | United States of America | $ 5,846 |
| WingNames Co., Ltd. | Registrar | Japan | $ 4,616 |
| Wingu Networks, S.A. de C.V. | Registrar | Mexico | $ 7,735 |
| Wix.com Ltd. | Registrar | Israel | $ 415,767 |
| WIXI Incorporated | Registrar | Japan | $ 5,698 |
| Wolfe Domain, LLC dba Dot Brand Registrar Services | Registrar | United States of America | $ 4,531 |
| Wolters Kluwer N.V. | Registry New gTLD | United Kingdom of Great Britain and Northern Ireland | $ 25,000 |
| Woodside Petroleum Limited | Registry New gTLD | Australia | $ 25,000 |
| World Biz Domains, LLC | Registrar | United States of America | $ 667 |
| World Rugby Strategic Developments Limited | Registry New gTLD | United States of America | $ 29,000 |
| World Trade Centers Association, Inc. | Registry New gTLD | United States of America | $ 25,000 |
| World4You Internet Services GmbH | Registrar | Austria | $ 14,952 |
| WorthyDomains LLC | Registrar | United States of America | $ 6,223 |
| Xerox DNHC LLC | Registry New gTLD | United States of America | $ 48,986 |
| Xi'an Qianxi Network Technology Co. Ltd. | Registrar | China | $ 4,557 |
| Xiamen 35.Com Technology Co., Ltd. | Registrar | China | $ 45,051 |
| Xiamen Booksir Qiyoutong Technology Co., Ltd. | Registrar | China | $ 4,556 |
| Xiamen ChinaSource Internet Service Co., Ltd | Registrar | China | $ 47,201 |
| Xiamen Dianmei Network Technology Co., Ltd. | Registrar | China | $ 4,540 |
| Xiamen Digital Engine Network Technology Co., Ltd. | Registrar | China | $ 333 |
| Xiamen Domains, Inc. | Registrar | China | $ 11,513 |
| Xiamen Nawang Technology Co., Ltd | Registrar | China | $ 15,303 |
| Xiamen Qu Wang Zai Xian Network Technology Co. Ltd | Registrar | China | $ 3,500 |
| Xiamen Yuwang Technology Co., LTD | Registrar | China | $ 4,527 |
| Xiamen Zhongtuo Internet Technology Co., Ltd. | Registrar | China | $ 4,527 |
| Xin Net Technology Corporation | Registrar | China | $ 330,300 |
| Xinyang 171cloud Co., Ltd. | Registrar | China | $ 4,167 |
| xTom GmbH | Registrar | Germany | $ 3,500 |
| XYZ.COM LLC | Registry New gTLD | United States of America | $ 1,315,966 |
| XYZ.COM LLC | Registry New gTLD | Hong Kong, China | $ 25,000 |
| XYZ.COM LLC | Registry New gTLD | Cayman Islands | $ 87,000 |
| Yandex Europe B.V. | Registry New gTLD | Netherlands | $ 25,000 |
| Yelles AB | Registrar | Sweden | $ 4,488 |
| Yellow Start, LLC | Registrar | India | $ 5,593 |

Exhibit 17

# [ENTIRE EXHIBIT LODGED UNDER SEAL]

Exhibit 18

## Registrar Data Escrow Agreement

This Registrar Data Escrow Agreement ("Agreement") among _____ ("Registrar"), a(n) _____, Iron Mountain Intellectual Property Management, Inc., a Delaware corporation ("Escrow Agent"), and the Internet Corporation for Assigned Names and Numbers, a California nonprofit public benefit corporation ("ICANN") is effective on this ___ day of _____, _____ (the "Effective Date").

1.    <u>Background</u>.

    1.1    ICANN is charged with oversight of the security and stability of the Internet's domain name system.  As a function of this responsibility, ICANN accredits domain name registrars who facilitate the registration of Internet domain names.  Registrar, within its Registrar Accreditation Agreement ("RAA") with ICANN, has agreed to deposit with ICANN, or a designated agent, certain enumerated registration records pursuant to a schedule, format, and terms specified by ICANN and incorporated in the RAA.  Upon expiration without renewal or termination of Registrar's RAA, the deposited registration records may be utilized by ICANN to provide transitional registrar services prior to transferring management of the domain name registrations to another registrar.

    1.2    As established in the RAA and described herein, Registrar will send to Escrow Agent domain name registration records for each registered domain name with a generic top-level domain ("gTLD") under Registrar's sponsorship, in accordance with the RDE Specifications, as may be amended by ICANN from time to time.

    1.3    Escrow Agent will receive, verify, and store Registrar's deposited data and release such data upon the conditions and under the circumstances set out in this Agreement, in accordance with the RDE Specifications, as they may be amended by ICANN from time to time.

    1.4    ICANN will be responsible for and pay Escrow Agent's fees for services under each RDE Agreement as set forth in the Master Registrar Data Escrow Service Agreement dated _____, 2007, as may be amended from time to time.

The parties hereto, intending to be legally bound hereby, agree as follows:

2.    <u>Definitions</u>.  Capitalized terms in this Agreement shall have the meanings ascribed to them in this Section 2 unless otherwise defined.

    2.1    "Section" refers to any numbered paragraph, section, or subsection of this Agreement unless otherwise specified.

    2.2    The "RDE Specifications" are the schedule, format, and terms specified by ICANN, applicable to Registrar's data escrow requirements under the RAA, as it may be amended or modified by ICANN from time to time, and incorporated in the RAA.  Registrar and Escrow Agent will be notified of any amendment or modification of the RDE Specifications by email to Registrar and Escrow Agent at the electronic mail address provided for in Section 11 and by posting the most current version of the RDE Specifications on ICANN's website.

Amendments and modifications of the RDE Specifications will be effective sixty (60) days following such notification.

2.3    A "Deposit" is all data transmitted from Registrar to Escrow Agent pursuant to this Agreement in any contiguous 24 hour period of time.

2.4    An "Electronic Deposit" is a Deposit transmitted to Escrow Agent by electronic means (e.g., SFTP, SCP, or HTTPS) as permitted by the RDE Specifications and as specified in the Escrow Agent's data escrow implementation instructions to Registrar.

2.5    A "Physical Deposit" is a Deposit transmitted on a physical medium (e.g., CD ROM, DVD, or hard drive) by courier or post, as permitted by the RDE Specifications and as specified in the Escrow Agent's data escrow implementation instructions to Registrar. Physical Deposits will not be considered delivered to Escrow Agent until they are physically delivered to Escrow Agent. Risk of loss of Deposit in transit is on Registrar.

2.6    "Online" refers to data that is stored on a live, operational server using redundant re-writable media (i.e., RAID).

2.7    "Offline" refers to data that is stored on DVD, CD ROM, tape, or another medium mutually approved by ICANN and Escrow Agent.

2.8    A "Release" is the retrieval and delivery of Deposits by Escrow Agent to ICANN or its designee pursuant to this Agreement.

2.9    A "Transaction" is a one-year gTLD registration increment consisting of a successful add, renewal, or transfer of a domain name by Registrar.  Where a domain name is deleted by Registrar within its "add" or "auto-renew" grace period (as defined in the functional specifications for each respective registry) or transferred to another registrar during the "auto-renew" grace period, the underlying "add" or "renewal" shall not be considered a Transaction.

3.    <u>Obligations of Registrar with Respect to Deposits</u>.

3.1    <u>Deposits in Accordance with RDE Specifications</u>. Registrar shall deposit with Escrow Agent the domain registration records enumerated in the RDE Specifications, on the schedule, in the format, and under the terms described in the RDE Specifications.  Registrar shall ensure that Deposits and their transmission conform to the implementation instructions provided by Escrow Agent, which may be more specific than the RDE Specifications, provided that such implementation instructions shall not contradict the RDE Specifications.

3.2    <u>Transmission of Deposits</u>.  Registrar shall transmit all Deposits to Escrow Agent as Electronic Deposits unless Registrar has obtained prior written consent from both ICANN and Escrow Agent to submit Deposits as Physical Deposits and such consent has not been withdrawn by either ICANN or Escrow Agent.  Consent to submit Deposits as Physical Deposits will only be granted in extraordinary circumstances.

3.3     <u>Transmission of Physical Deposits</u>.  In transmitting any Physical Deposit, Registrar shall include with such Deposit a completed copy of the Physical Deposit Transmittal Form provided in Appendix A.

3.4     <u>Registrant Notice of Data Escrow</u>.  Registrar's registration agreement(s) entered into with registrants shall include notice to the registrant of the obligations of Registrar to escrow data hereunder, as specified in the RAA.

4.     <u>Obligations of Escrow Agent with Respect to Deposits</u>.

4.1     <u>Acceptance and Storage of Deposits</u>:  Escrow Agent shall:

4.1.1.  receive Electronic Deposits or Physical Deposits from Registrar;

4.1.2.  receive and process Electronic Deposits in one of two geographically separated, underground, secure, locked and environmentally safe facilities, which are accessible only to authorized representatives;

4.1.3.  copy Physical Deposits into one of two, geographically separated, underground, secure, locked and environmentally safe facilities, which are accessible only to authorized representatives, for processing and storage;

4.1.4.  store two copies of all Deposits in electronic format, each copy in geographically separated, secure, locked and environmentally safe facilities which are accessible only to authorized representatives.  At least one of these storage locations shall be an underground location;

4.1.5.  in the event Registrar misses a scheduled Deposit or a Deposit fails a validation or verification test, contact Registrar within three days to remedy the failure;

4.1.6.  provide ICANN with monthly statistical summaries of reported issues in a mutually agreed upon format and as requested by ICANN;

4.1.7.  prepare Deposits for verification testing by decrypting Deposits using PGP encryption technology and uncompressing Deposits to original size;

4.1.8.  perform checksum validation of uncompressed Deposits and automated inspection of uncompressed Deposits using Perl verification scripts provided by ICANN;

4.1.9.  report all uncorrected, missed Deposits and failed validation and verification test results electronically to Registrar within five days of the scheduled, but missed Deposit or failed verification test;

4.1.10.  perform manual review of uncompressed Deposits as necessary when verification scripts indicate failed automated inspection or upon request by

ICANN for the purpose of verification that the Deposits are complete, consistent, and in proper format;

4.1.11. securely store all Deposits for no less than three hundred and sixty-five days unless otherwise agreed by the parties in writing or as required by the RDE Specifications;

    4.1.11.1    Escrow Agent shall store all Deposits Online for at least 30 days following receipt.

    4.1.11.2    Escrow Agent shall store Deposits Online for a period longer than 30 days if reasonably requested by ICANN.

    4.1.11.3    Escrow Agent shall store all Deposits Offline that are less than 366 days aged and are not stored Online.

4.1.12. use commercially reasonable efforts and industry standard safeguards to protect the integrity and confidentiality of Deposits, including the use of PGP encryption technology, customized Perl scripts to verify data validity and confirm authenticity of the sender, and enterprise class software to store data both online and offline;

4.1.13. destroy or permanently erase any and all Deposits 18 or more months old, although Escrow Agent may destroy or permanently erase any or all Deposits older than one full year (prior to the end of 18 months);

4.1.14. administer the receipt, verification, storage, and release (as applicable) of the Deposits using reasonable and appropriate administrative, physical and technical safeguards to protect the privacy and security of the Deposits; and

4.1.15. comply with privacy and data protection regulations applicable to the receipt, verification and storage of Deposits by a third party provider of escrow services under applicable law, in accordance with the terms of this Agreement.  Neither ICANN nor Escrow Agent makes any representation or warranty to any other party regarding compliance with applicable privacy and data protection laws and regulations in connection with the transmittal of data to Escrow Agent.

    4.2    <u>Confidential Information</u>.  Escrow Agent shall use commercially reasonable efforts and industry standard safeguards to protect the confidentiality of the Deposits.  Except as provided in this Agreement, Escrow Agent shall not review, disclose, transfer, make available or use the Deposits or any other Registrar data obtained in performance of the Agreement.  If Escrow Agent should receive a subpoena or any other order from a court or other judicial tribunal pertaining to the disclosure or release of the Deposits, Escrow Agent shall promptly provide ICANN and Registrar notice of such order, unless such notice is prohibited by law or regulation.  Unless impracticable, Escrow Agent shall provide such notice within two business days after receipt.  It shall be the responsibility of Registrar to challenge any such order if

desired; provided, however, that Escrow Agent does not waive its rights to present its position with respect to any such order.  Escrow Agent will cooperate with Registrar or ICANN, as applicable, to support efforts to quash or limit any subpoena, at Registrar's or ICANN's expense, as applicable.

5.      Covenants of Escrow Agent.  Throughout the term of this Agreement, Escrow Agent covenants as follows:

        5.1      Notice of Material Changes.  Escrow Agent shall inform ICANN and Registrar of any and all material changes that could reasonably be expected to have a negative effect on the security or stability of Escrow Agent's infrastructure, software, hardware, or premises, or material changes to practices, policies, or procedures related to security or separation of business practices and operations.

        5.2      Separation of Conflicting Businesses.  Escrow Agent shall adhere to strict separation of business practices with respect to its registrar data escrow and domain name businesses.  Services provided under this Agreement shall be performed through password-access only networks, protected by internal and external firewalls, which share no common hardware, software or users with those systems used by Escrow Agent's domain name businesses.  All Deposits by Registrar will initially be encrypted.  Escrow Agent shall ensure that all personnel with access to Deposits in an unencrypted form, if applicable, are provided with strict guidance on conflict of interest avoidance with respect to Escrow Agent's domain name businesses and the confidentiality obligations set forth in Section 4.2.  Escrow Agent shall ensure that no employees providing services to customers in its domain name businesses have access to Deposits (encrypted or unencrypted) or hardware, software or systems used in Escrow Agent's registrar data escrow business.  Escrow Agent shall ensure that no employees providing services to customers in its registrar data escrow business have access to hardware, software or systems used in Escrow Agent's domain name business.  In addition, the service delivery teams for Escrow Agent's registrar data escrow business and Escrow Agent's domain businesses shall not be located in the same facility.

        5.3      Staffing.  Escrow Agent shall at all times maintain sufficient and commercially reasonable staffing to perform its obligations hereunder.  A representative of ICANN will be identified as a resource for Escrow Agent to assist in Escrow Agent communications with Registrar.

        5.4      Business Continuity.  Escrow Agent shall use commercially reasonable efforts to maintain network and business continuity.

6.      Term and Termination.

        6.1      Term.  The initial term of this Agreement shall be for a period of one year from the Effective Date.  At the end of the initial term, this Agreement shall automatically renew for an additional one year period and upon each anniversary thereafter unless terminated according to the terms hereof.

        6.2      Termination of Agreement upon Termination of Registrar's RAA.  This Agreement shall be terminated upon termination of or expiration without renewal of Registrar's

RAA, in which case ICANN shall notify Escrow Agent of such termination or expiration, provided, however, that such termination of Registrar's RAA shall not modify or relieve Escrow Agent of its responsibilities and duties hereunder to the extent provided herein. Thereupon Deposits shall be released to ICANN as provided in Section 7.

6.3     <u>Termination by ICANN or Escrow Agent</u>.  This Agreement may be terminated by ICANN, with or without cause, by providing the other parties to this Agreement notice of termination at least 60 days in advance of the termination. This Agreement may be terminated by Escrow Agent only in the event of termination of that certain Master Registrar Data Escrow Services Agreement by and between ICANN and Escrow Agent ("Master Escrow Agreement"). If the Master Escrow Agreement is terminated, and accordingly the Escrow Agent terminates this Agreement, Escrow Agent shall so notify Registrar in writing.  In the event of such termination of (i) this Agreement by ICANN for any reason, or (ii) termination of this Agreement concurrent with termination of the Master Escrow Agreement as provided therein, Escrow Agent and Registrar shall fully cooperate to allow the transfer of the Deposits and all responsibilities of the Escrow Agent to a successor escrow agent hereunder if requested by ICANN.  This Section shall not negate, reduce, or otherwise modify the obligations of ICANN and Escrow Agent to each other under the Master Escrow Agreement.

6.4     <u>Termination by Registrar</u>.

6.4.1.   In the event Registrar is no longer obligated by its RAA to deposit registration data with ICANN or otherwise escrow its registration data, this Agreement shall be deemed terminated and ICANN will notify Escrow Agent, provided, however, that such termination shall not modify or relieve Escrow Agent of its responsibilities and duties hereunder to the extent provided herein or in the Master Escrow Agreement.

6.4.2.   In accordance with the RDE Specifications, Registrar may elect to use an alternate, approved Third Party Provider ("TPP") of escrow services in lieu of the services provided by Escrow Agent hereunder.  Where Registrar makes such an election, Registrar's Deposit obligations under this Agreement shall continue until Registrar successfully makes its initial Deposit with a TPP, at which time, this Agreement shall be deemed terminated and ICANN will notify Escrow Agent accordingly, provided, however, that such termination shall not modify or relieve Escrow Agent of its responsibilities and duties hereunder to the extent provided herein or in the Master Escrow Agreement.

6.4.2.1   Upon termination of this Agreement pursuant to Section 6.4.2, Escrow Agent shall continue to store and maintain Registrar's Deposits as described in Section 4, unless and until Registrar effects a transfer of all Deposits aged fewer than 366 days to the Registrar's approved TPP at Registrar's expense and effort, and ICANN confirms receipt and storage by TPP of same.

        6.4.2.2    Following termination of this Agreement pursuant to Section 6.4.2, Registrar shall fulfill its data escrow obligations under the RAA with an approved TPP for at least a term of 365 days or until Registrar is no longer obligated to escrow data under its RAA.

7.      <u>Release of Deposits</u>.

    7.1    <u>Notice for Release of Deposits</u>.  Escrow Agent shall effect a Release within five business days following receipt of any of the following:

        7.1.1.    Written notice executed jointly by ICANN and Registrar requesting Escrow Agent effect such Release; or

        7.1.2.    Written notice by ICANN that Registrar's RAA has expired without renewal or been terminated, with confirmation by ICANN that such Release is in accordance with the RAA; or

        7.1.3.    Written notice by ICANN that such Release is otherwise permitted by the RAA, as it may be amended from time to time, and that ICANN has complied with the RAA's requirements (if any) to provide notice of the Release to Registrar; or

        7.1.4.    Written notice by ICANN that a court or arbitral tribunal or legislative or government agency that ICANN finds to be of competent jurisdiction has issued an order, rule, statute, regulation, or other requirement (a copy of which ICANN has provided to Registrar) that mandates the Release.

    7.2    <u>Notice from Escrow Agent to Registrar upon Release of Deposits</u>. Upon any Release or within 24 hours of any Release, Escrow Agent shall provide Registrar with written notice of same.

8.      <u>Indemnification</u>.  Escrow Agent shall hold and save ICANN (to the extent and subject to the limitations set forth in the Master Escrow Agreement) and Registrar (subject to the limitation set forth in Section 10 below) and their respective officers, directors, agents and employees harmless from liability, claims, suits, causes of action, fees, charges, costs, damages and any other expenses whatsoever of any nature or kind, for or on account of any or all suits or damages whatsoever resulting from injuries or damages sustained, arising or resulting from the negligence or willful misconduct of Escrow Agent, its parent, subsidiaries, officers, directors or employees.

9.      <u>Arbitration</u>.

    9.1    <u>Disputes Between ICANN and Registrar</u>.  In the event of any dispute between ICANN and Registrar arising under Registrar's RAA, including without limitation the termination thereof and release of Deposits to ICANN hereunder, Section 5.6 of the RAA shall control the resolution of such dispute, or, as the case may be, any successor dispute resolution provision under the RAA as the same may be amended from time to time.

9.2     <u>Disputes Involving Escrow Agent</u>.  Upon the occurrence of a dispute between the parties arising from alleged performance or non-performance of any obligation under this Agreement or any obligation relating thereto that is not the subject of Section 9.1 above, the matter shall be finally settled by arbitration, held in Los Angeles County, California, such arbitration to be conducted through JAMS.  There shall be three arbitrators, including one nominee of Registrar, one nominee of ICANN, and one nominee of Escrow Agent.  A prevailing party or parties in the arbitration shall have the right to recover its costs and reasonable attorneys' fees, which the arbitrators shall include in their awards. Any party that seeks to confirm or vacate an arbitration award issued under this Section 9 may do so only pursuant to the applicable arbitration statutes. In any litigation involving ICANN concerning this Agreement, jurisdiction and exclusive venue for such litigation shall be in a court located in Los Angeles County, California, USA; however, the parties shall also have the right to enforce a judgment of such a court in any court of competent jurisdiction. For the purpose of aiding the arbitration and/or preserving the rights of the parties during the pendency of an arbitration, the parties shall have the right to seek a temporary stay or injunctive relief from the arbitration panel or a court, which shall not be a waiver of this agreement to arbitrate.

9.3     <u>Specific Performance</u>.  ICANN, Escrow Agent and Registrar agree that irreparable damage could occur if any of the provisions of this Agreement was not performed in accordance with its specific terms. Accordingly, the parties agree that they each shall be entitled to seek from the arbitrators specific performance of the terms of this Agreement (in addition to any other remedy to which each party is entitled).

9.4     <u>Time is of Essence</u>.  Prompt resolution of any dispute is important to all parties to this Agreement.  The parties agree that the arbitration of any dispute shall be conducted expeditiously.  The arbitrators shall be instructed and directed to assume case management initiative and control over the arbitration process (including scheduling of events, pre-hearing discovery and activities, and the conduct of the hearing), in order to complete the arbitration as expeditiously as is reasonably practical for obtaining a just resolution of the dispute.

10.     <u>Limitation of Liability and Consequential Damage Waiver</u>.

10.1    <u>Liability of ICANN</u>.  ICANN's aggregate monetary liability to Registrar for any claims, suits, causes of action, fees, charges, costs, damages and any other expenses whatsoever of any nature or kind arising under, related to, or in connection with this Agreement, shall be determined under Section 5.7 of the RAA, or, as the case may be, any successor provision relating to monetary liabilities under the RAA as the same may be amended from time to time.

10.2    <u>Liability of Escrow Agent</u>.

10.2.1. Notwithstanding anything else in this Agreement (but subject to paragraph 10.2.2 below), all liability, if any, whether arising in contract, tort (including negligence) or otherwise, of Escrow Agent to Registrar shall be limited to an amount equal to three times the then current annual fees paid or owed to Escrow Agent by ICANN under the Master Escrow Agreement with respect to this Agreement.  Upon request by Registrar, Escrow Agent

- 8 -

shall provide a statement as to the current liability limitation under this Section 10.2.1 to Registrar.

10.2.2. Notwithstanding the foregoing, in the event Escrow Agent through negligence causes Registrar's information held in escrow to be delivered or made available to a person or entity other than a "Designated Party" (which shall be defined as ICANN or its designee, Registrar, or any named third-party pursuant to Registrar's written instructions), Escrow Agent's liability for damages suffered by Registrar in such circumstances shall not exceed (i) USD $100,000.00 (if Registrar completed 100,000 or more domain name Transactions during the preceding ICANN fiscal quarter) or (ii) USD $50,000.00 (if Registrar completed fewer than 100,000 domain name Transactions in the preceding ICANN fiscal quarter), provided, however, that notwithstanding the foregoing, Escrow Agent's liability shall be unlimited in any circumstances where there is: (i) gross negligence or willful misconduct (including for delivering or making available Registrar's information held in escrow to anyone other than a Designated Party); (ii) any claim of infringement of any patent, copyright, or trademark; (iii) liability for death or bodily injury; or (iv) proven theft.

10.3    Consequential Damages Waiver.  In no event shall any party to this Agreement be liable to another party for any incidental, special, punitive or consequential damages, lost profits, any costs or expenses for the procurement of substitute services, or any other indirect damages, whether arising in contract, tort (including negligence) or otherwise even if the possibility thereof may be known in advance to one or more parties.

11.    Notices.  Notices shall be deemed received on the fifth day after being sent by first class U.S. mail, or on the following day if sent overnight by U.S. commercial express courier to an address within the United States, or on the third day after being sent by international express courier.  With the exception of notices regarding the amendment or modification of the RDE Specifications as provided under Section 2.2, all notices under this Agreement shall be in writing and addressed and sent to the person(s) listed in the space provided below:

ICANN

Company: Internet Corporation for Assigned Names and Numbers
Attention:  Registrar Data Escrow
Copy to: General Counsel
Address: 4676 Admiralty Way, Suite 330
City, State, Zip: Marina del Rey, CA 90292
Telephone: +1 310.823.9358
Fax: +1 310.823.8649

Escrow Agent

Company: Iron Mountain  Intellectual Property Management, Inc.
Attn: RDE Client Services
Address: 9210 Sky Park Court, Suite 220
City, State, Zip: San Diego, CA 92123
Telephone: +1 858.492.2400
Fax: +1 858.499.1607
Email: rde@ironmountain.com

with copy to:

Iron Mountain Intellectual Property Management, Inc.
Attn:  Operations Director
Address:   2100 Norcross Parkway, Suite 150
Norcross, GA  30071
Fax:  +1 770.239.9201

Registrar

_____
_____
_____
_____
Fax: _____
Email: _____
IANA \_ID:_____

    11.1    Any party may change its address for delivery of notices as set forth above by delivering notice of such change as provided herein.


12.    Miscellaneous.

    12.1    This Agreement and any and all Appendices hereto shall constitute the entire agreement by and among the parties hereto with regard to the subject matter hereof, provided, however, that with respect to matters determined under the RAA as set forth herein, the RAA (as the same may be modified, amended or superseded from time to time) shall control, and provided further, however that with respect to matters determined under the Master Escrow Agreement as set forth herein, the Master Escrow Agreement (as the same may be modified, amended or superseded from time to time) shall control.  No waiver, consent, modification or change of terms of this Agreement shall bind either party unless in writing signed by each party, and then such waiver, consent, modification or change shall be effective only in the specific instance and for the specific purpose given.

    12.2    Each party, in performance of the obligations set forth in this Agreement, shall comply with all laws and regulations applicable to such party's duties and responsibilities under this Agreement.

- 10 -

12.3    Nothing contained in this Agreement shall be deemed to imply or constitute any party as the agent or representative of another party for any purpose other than as expressly set forth herein.

12.4    Each reference to "days" herein shall mean calendar days, unless otherwise specified herein.

12.5    The waiver by any party of a breach or a default of any provision of this Agreement by the other party shall not be construed as a waiver of any succeeding breach of the same or any other provision, nor shall any delay or omission on the part of any party to exercise or avail itself of any right, power or privilege that it has, or may have hereunder, operate as a waiver of any right, power or privilege by such party.

12.6    This Agreement, and the rights and obligations hereunder, may not be assigned, in whole or in part by Escrow Agent without the prior written consent of Registrar and ICANN.  In the case of any permitted assignment or transfer of or under this Agreement, this Agreement or the relevant provisions shall be binding upon, and inure to the benefit of, the successors, executors, heirs, representatives, administrators and assigns of the parties hereto.

12.7    This Agreement shall not be construed to create any obligation to any non-party to this Agreement, including any registered name holder.  There shall not be any third-party intended beneficiaries under this Agreement.

12.8    The obligations of the parties intended to survive the termination of this Agreement are only those provisions of Sections 4.1.11, including subsections (storage of Deposits), 4.1.12 (protection of Deposits),  4.1.13 (destruction of aged Deposits), 4.1.15 (compliance with data privacy laws), 4.2 (confidentiality), 5 (covenants of Escrow Agent), 7 (Releases), 8 (indemnification), 9 (arbitration), 10 (limitation of liability and consequential damages waivers), 11 (notices), and 12 (miscellaneous), which shall survive the termination of this Agreement for any reason.

12.9    This Agreement shall be fairly interpreted in accordance with its terms and without any strict construction in favor of or against either of the parties.  Captions and headings contained in this Agreement have been included for ease of reference and convenience and shall not be considered in interpreting or construing this Agreement.

12.10   This Agreement shall be governed by the laws of the State of California without regard to conflicts of law principles.

12.11   This Agreement may be executed in any number of multiple counterparts, each of which is to be deemed an original, and all of such counterparts together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date.

**Registrar**

Signature: _____

Name: _____

Title: _____

Date: _____


**Internet Corporation for Assigned Names and Numbers**

Signature: _____

Name: _____

Title: _____

Date: _____


**Iron Mountain Intellectual Property Management, Inc.**

Signature: _____

Name: _____

Title: _____

Date: _____

Appendix A

**Physical Deposit Transmittal Form**

**Date Deposit Sent:**_____ _____

**Registrar Company Name:** _____

**Registrar Company IANA Number:**_____


**Deposit Media (Please Label All Media with Date Sent and IANA Number)**

| Media Type | Quantity | | Media Type | Quantity |
|---|---|---|---|---|
| ☐ CD-ROM / DVD | | | ☐ Hard Drive / CPU | |
| ☐ DLT Tape | | | | |
| ☐ DAT Tape | | | | |
| | | | | |


**Note:  Please label all media with Company Name, IANA # and Date Mailed.  Send all Deposit material with this form via commercial express carrier to the following address:**
Iron Mountain Digital
Attn: RDE Client Services
9210 Sky Park Court, Suite 220
San Diego, CA 92123
(858) 492-2400  (voice)
(858) 499-1607 (fax)

| FOR IRON MOUNTAIN USE ONLY:  (NOTED DISCREPANCIES ON VISUAL INSPECTION) | |
|---|---|
| | |
| | |

Exhibit 19

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1663 (Rev 11/2012)
OMB No. 0651-0055 (Exp 12/31/2018)

## Declaration of Continued Use/Excusable Nonuse of Mark in Commerce Under Section 71

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **REGISTRATION NUMBER** | 4123790 |
| **REGISTRATION DATE** | 04/10/2012 |
| **SERIAL NUMBER** | 79101087 |
| **MARK SECTION** | |
| **MARK** | 35.COM (stylized and/or with design, see https://tmng-al.uspto.gov/resting2/api/img/79101087/large) |
| **CORRESPONDENCE SECTION (current)** | |
| **NAME** | Zhang Honglu |
| **STREET** | 1461 A First Avenue, # 360 |
| **CITY** | New York |
| **STATE** | New York |
| **POSTAL CODE** | 10021-2209 |
| **COUNTRY** | United States |
| **EMAIL** | zhanghonglu@inipa.com |
| **AUTHORIZED TO COMMUNICATE VIA E-MAIL** | Yes |
| **CORRESPONDENCE SECTION (proposed)** | |
| **NAME** | Yolanda Lee |
| **STREET** | 77 Water Street, 7th & 8th Floors |
| **CITY** | New York |
| **STATE** | New York |
| **POSTAL CODE** | 10005 |
| **COUNTRY** | United States |
| **EMAIL** | yolandab@foxmail.com |
| **AUTHORIZED TO COMMUNICATE VIA E-MAIL** | Yes |
| **GOODS AND/OR SERVICES SECTION** | |
| **INTERNATIONAL CLASS** | 009 |
| **GOODS OR SERVICES** | Telephones; video telephones; portable telephones; fiber optic cables; satellite navigational apparatus, namely, global positioning system (GPS); radiotelephony sets; navigation apparatus for vehicles in the nature of on-board computers; radar apparatus, namely, radar; walkie-talkies |
| **SPECIMEN FILE NAME(S)** | \\TICRS\EXPORT17\IMAGEOUT 17\791\010\79101087\xml3\ S710002.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT 17\791\010\79101087\xml3\ S710003.JPG |

| | \\TICRS\EXPORT17\IMAGEOUT 17\791\010\79101087\xml3\ S710003.JPG |
|---|---|
| **SPECIMEN DESCRIPTION** | digitally photographed products with tags |
| **INTERNATIONAL CLASS** | 038 |
| **GOODS OR SERVICES** | Message sending; information about telecommunication; communications by computer terminals; rental of modems; rental of message sending apparatus; electronic bulletin board services; electronic mail; computer aided transmission of messages and images; providing user access to a global computer network |
| **SPECIMEN FILE NAME(S)** | |
| **ORIGINAL PDF FILE** | SPN1-221220230215-20180404061523806450_._using_specimen_1_in_class_38.pdf |
| **CONVERTED PDF FILE(S)** (2 pages) | \\TICRS\EXPORT17\IMAGEOUT17\791\010\79101087\xml3\S710004.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\791\010\79101087\xml3\S710005.JPG |
| **ORIGINAL PDF FILE** | SPN1-221220230215-20180404061523806450_._using_specimen_2_in_class_38.pdf |
| **CONVERTED PDF FILE(S)** (2 pages) | \\TICRS\EXPORT17\IMAGEOUT17\791\010\79101087\xml3\S710006.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\791\010\79101087\xml3\S710007.JPG |
| **SPECIMEN DESCRIPTION** | brochures, website printouts or advertisements that show the mark used in the actual advertising of the services |
| **OWNER/HOLDER SECTION (current)** | |
| **NAME** | Xiamen 35.com Technology CO., LTD |
| **INTERNAL ADDRESS** | 1st Floor, No. 8 Guanri Road |
| **STREET** | Software Park Phase II, Huoju High-Tech Industrial Development Zone |
| **CITY** | Xiamen Fujian |
| **COUNTRY** | China |
| **OWNER SECTION (proposed)** | |
| **NAME** | Xiamen 35.com Technology CO., LTD |
| **INTERNAL ADDRESS** | 1st Floor, No. 8 Guanri Road |
| **STREET** | Software Park Phase II, Huoju High-Tech Industrial Development Zone |
| **CITY** | Xiamen Fujian |
| **ZIP/POSTAL CODE** | 361003 |
| **COUNTRY** | China |
| **EMAIL** | XXXX |
| **AUTHORIZED TO COMMUNICATE VIA E-MAIL** | Yes |
| **LEGAL ENTITY SECTION (current)** | |
| **TYPE** | Corporation |
| **STATE/COUNTRY WHERE LEGALLY ORGANIZED** | China |
| **PAYMENT SECTION** | |
| **NUMBER OF CLASSES** | 2 |
| **NUMBER OF CLASSES PAID** | 2 |
| **FILING AN AFFIDAVIT UNDER 71 OF THE** | |

| | |
|---|---|
| **ACT, PER CLASS** | 250 |
| **TOTAL FEE PAID** | 250 |
| **SIGNATURE SECTION** | |
| **SIGNATURE** | /gongshaohui/ |
| **SIGNATORY'S NAME** | Gong Shaohui |
| **SIGNATORY'S POSITION** | President |
| **DATE SIGNED** | 04/04/2018 |
| **PAYMENT METHOD** | CC |
| **FILING INFORMATION** | |
| **SUBMIT DATE** | Wed Apr 04 06:24:31 EDT 2018 |
| **TEAS STAMP** | USPTO/SECT71-XXX.XXX.XXX.XXX-20180404062431610560-4123790-510ba9f525f15939a3f9be43203df46a7474863bf178dc6d8b5ce95fec82354cf-CC-7446-2018040406152380645 0 |

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1663 (Rev 11/2012)
OMB No. 0651-0055 (Exp 12/31/2018)

### Declaration of Continued Use/Excusable Nonuse of Mark in Commerce Under Section 71
**To the Commissioner for Trademarks:**

**REGISTRATION NUMBER:** 4123790
**REGISTRATION DATE:** 04/10/2012

**MARK:** (Stylized and/or with Design, 35.COM (see, mark))

The owner/holder, Xiamen 35.com Technology CO., LTD, Corporation legally organized under the laws of China, having an address of
   1st Floor, No. 8 Guanri Road
   Software Park Phase II, Huoju High-Tech Industrial Development Zone
   Xiamen Fujian, 361003
   China
   XXXX (authorized)
is filing a Declaration of Continued Use/Excusable Nonuse of Mark in Commerce Under Section 71.

For International Class 009, the mark is in use in commerce on or in connection with **all** goods/services, or to indicate membership in the collective membership organization, listed in the existing registered extension of protection for this specific class; or, the owner is making the listed excusable nonuse claim.

The owner is submitting one(or more) specimen(s) showing the mark as used in commerce on or in connection with any item in this class, consisting of a(n) digitally photographed products with tags.
Specimen File1
Specimen File2


For International Class 038, the mark is in use in commerce on or in connection with **all** goods/services, or to indicate membership in the collective membership organization, listed in the existing registered extension of protection for this specific class; or, the owner is making the listed excusable nonuse claim.

The owner is submitting one(or more) specimen(s) showing the mark as used in commerce on or in connection with any item in this class, consisting of a(n) brochures, website printouts or advertisements that show the mark used in the actual advertising of the services.

**Original PDF file:**
SPN1-221220230215-20180404061523806450_._using_specimen_1_in_class_38.pdf
**Converted PDF file(s)** (2 pages)
Specimen File1
Specimen File2
**Original PDF file:**
SPN1-221220230215-20180404061523806450_._using_specimen_2_in_class_38.pdf
**Converted PDF file(s)** (2 pages)
Specimen File1
Specimen File2
The registrant's current Correspondence Information: Zhang Honglu
   1461 A First Avenue, # 360
   New York, New York 10021-2209
   United States
The email address is zhanghonglu@inipa.com. (authorized)

The registrant's proposed Correspondence Information: Yolanda Lee
   77 Water Street, 7th & 8th Floors
   New York, New York 10005
   United States
The email address is yolandab@foxmail.com. (authorized)

A fee payment in the amount of $250 will be submitted with the form, representing payment for 2 class(es), plus any additional grace period fee,

if necessary.

**Declaration**

☑ Unless the owner/holder has specifically claimed excusable nonuse, the mark is in use in commerce on or in connection with the goods/services identified above, as evidenced by the attached specimen(s).

☑ Unless the owner/holder has specifically claimed excusable nonuse, the specimen(s) shows the mark as currently used in commerce on or in connection with the goods/services.

☑ To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

☑ The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of this submission and the registration, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

Signature: /gongshaohui/    Date: 04/04/2018
Signatory's Name: Gong Shaohui
Signatory's Position: President

Serial Number: 79101087
Internet Transmission Date: Wed Apr 04 06:24:31 EDT 2018
TEAS Stamp: USPTO/SECT71-XXX.XXX.XXX.XXX-20180404062
431610560-4123790-510ba9f525f15939a3f9be
43203df46a7474863bf178dc6d8b5ce95fec8235
4cf-CC-7446-20180404061523806450







## 35.com Enterprise Email

As one of its main products by 35.com, 35.com Enterprise Email has 20 years development and service experience by providing prompt, efficient, stable, secure Enterprise Email service, has won "The most cost-effective product among China Enterprise Email" in 2015 and "The most satisfied service" among China Enterprise Email. Our self-developed features include self-destruction, Recall, Evidence Email, Deletion-proof, and download permission, which meet the Enterprise demand.

| **Email Management, Security First** | **Perfect Enterprise Cloud OA** | **Anti-Spam and Anti-virus** | **Overseas nodes, no-hassle globally** | **Mobile OA, Email Anytime** |
|---|---|---|---|---|
| • 1024 bit High-intensity asymmetric encryption. <br> • Remote login Reminder. | • Cloud OA platform of Integration of 35 EQ, 35 Ewave. <br> • Intelligent interaction of universal credential and one-click login. | • Pass verification of Ministry of Public Security. <br> • Anti-spam rate up to 98% Error Rate nearly 0%. <br> • Real-time update, Virus-email detection rate above 99.8% | • Employ nodes in countries abroad to ensure your email deliver smoothly. | • MailChat APP keeps Email work all the time. <br> • Wechat plugin(Official account real time reminder). |

More details at **www.35.net**   Hot line for VNS Business: **400-981-0038**   Customer service: **10038**
35 Cloud OA  |  35 Enterprise Email  |  35 Website Builder  |  35 Domain  |  35 Hosting  |  EQ communicator  |  35 Wealth Card


Stock code: 300051
No 1 choice of Mobile Cloud OA Solution

腾"云"驾"务" 快乐商务

## 35.com Enterprise Email Features

| Mailchat | Mail APP have you manage your emails all the time, just like mobile text. |
| Wechat Bundle | Bundle your Email service in our Wechat official account, no need to download APP. Receive, send, read, write functions are all supported. |
| Delete/download permission | The administrator allocate authenticity to its users according to its role. |
| Read Status | to see if an email has been read. |
| Self-destruction | a way to protect information, set up the times an email could be read. |
| Recall | to recall an email when its sent out mistakenly. |
| Meeting invitation | to simulate a real meeting file, schedule, place, subject, reminder, etc. |
| Email forward | when a recipient address is wrong or invalid, the email to this address will be forwarded to a designated email address. |
| Cloud fax | receive fax via email. No more need of Fax machine, Oil and paper. |
| Cloud disk | permanent storage, large-size capacity, tiered share. |
| Cloud OA | Integrated OA platform. |
| Urgency tag | Every urgent email carries urgency tag. If no reply received within expected time, the email to be duplicated to recipient's leader. |
| Annex List | category all the annex for a quick and convenient search. |
| 3-end synchronization | Synchronizing emails across Web, client, mobile. |
| EQ | Enterprise-level commucator. |

## Certificates







Our clients
More details at 35.com

**35.COM** Xiamen 35.com technology Co.ltd  Headquarter address: 35.com building, No 8 , Guanri Road, Software Park, Xiamen City.
Tel: 0592-5391800
Beijing Branch:010-82091735     Beijing 35.com information technology Co.,ltd:010-58031335     Shanghai Branch:021-51309025
Guangzhou Branch:020-66221000     ShenZhen Branch:0755-33506366     Fuzhou Branch:0591-87500008
Quanzhou 35.com information technology Co.,ltd:0595-24670222   Qindao Branch:0532-80791588  Tianjin Branch:022-58280666
Hanzhou Branch:0571-28977735     Nanjing Branch:025-89625361     Dongguan Branch:0769-38931957
Jinan 35.com technology Co.,ltd:0531-58623535   Foshan Branch:0757-86129300   Wu:xi Branch:0510-68560202   Bao'an Branch:0755-33659333
Copyright © 1996 - 2017 Xiamen 35.com technology Co.ltd. All Rights Reserved.
**Business Hotline: 400-885-0035**



## 35 Virtual Network Operator
### Interconnection creates fortune

**35 Virtual Network Operator** —— Exclusive "35 mobile cloud OA" package

As one of the 2nd group of VNO (Virtual Network Operator) in nation, the 1st group of VNO in Fujian Province, Xiamen 35.com technology Co.ltd has always integrated "Basic communication ability + Cloud OA" to customize its exclusive package of "35 Mobile Cloud OA" based on network operator's basic communication ability and company's product features. The creative, cost-effective, differentiation of package builds its key power to satisfy enterprise's demand of information application framework of Mobile OA under 3G/4G network. Meanwhile, 35.com devote to integrate the third parties' advanced resource into platform, including but not limited mobile OA, mobile entertaining, mobile education, mobile new media, mobile payment, intelligent communications, intelligent city, internet of vehicles, etc. With every effort, 35.com provide a more healthy, open mobile network cooperation platform for Upstream and downstream of industry chain.

More details at **www.35.net**   Hot line for VNS Business: **400-981-0038**   Customer service: **10038**
35 Cloud OA  | 35 Enterprise Email  | 35 Website Builder  | 35 Domain  | 35 Hosting  | EQ communicator | 35 Wealth Card



**Stock code: 300051**
No 1 choice of Mobile Cloud OA Solution

腾"云"驾"务" 快乐商务

## Brand Intro

Adhering to core value of "Customer's request is always the first" and customer service philosophy of "Customer First, Creation Forever", following its product service philosophy of "effectiveness bring value, network creates wealth", Xiamen 35.com technology Co.ltd integrated its own characteristic Cloud OA and service with fundamental telecom operator's voice, text, wireless data and other basic communication ability, developed full of differentiation of service of mobile resale business brand — "35 Network" and under its business "35 Wealth Card". "35 Wealth Card" is made for all Enterprise clients with customized, professional, scenarized mobile cloud OA solution, which will reduce Enterprise's cost, improve its performance and core competence and so on and thus create wealth continually.

## Pilot Area

Xiamen 35.com technology Co.ltd is separately cooperating with China Telecom, China Mobile for its mobile resale business, already covered 4 municipal cities, Beijing Tianjin Shanghai, Chongqing, and other 31 cities, Shijiazhuang, Dalian, Changchun, Haerbin, Nanjing, Wuxi, Suzhou, Changzhou, Hanzhou, Ningpo, Jinhua, Hefei, Wuhu, Fuzhou, Xiamen, Quanzhou, Zhangzhou, Nanping, Jinan, Qindao, Zhengzhou, Wuhan, Guangzhou, Shenzhen, Foshang, Dongguan, Nanning, Liuzhou, Chengdu, Deyang, Xian.

Beijing
Tianjin
Haerbin
Changchun
Dalian
Shijiazhuang
Zhengzhou Jinan
Qindao
Xian
Nanjing Changzhou
Wuxi
Suzhou
Hefei Shanghai
Chengdu Deyang Wuhu Hanzhou Ningpo
Chongqing Jinhua Wuhan
Nanping Fuzhou
Quanzhou
Liuzhou Zhangzhou Xiamen
Dongguan Shenzhen
Guangzhou
Nanning Foshang

**35.COM Xiamen 35.com technology Co.ltd** Headquarter address: 35.com building, No 8, Guanri Road, Software Park, Xiamen City.
Tel: 0592-5391800

Beijing Branch:010-82091735    Beijing 35.com information technology Co, ltd:010-58031335    Shanghai Branch:021-51309025
Guangzhou Branch:020-66221000    ShenZhen Branch:0755-33506366    Fuzhou Branch:0591-87500008
Quanzhou 35.com information technology Co, ltd:0595-24670222   Qindao Branch:0532-80791588   Tianjin Branch:022-58280666
Hanzhou Branch:0571-28977735    Nanjing Branch:025-89625361    Dongguan Branch:0769-38931957
Jinan 35.com technology Co, ltd:0531-58623535   Foshan Branch:0757-86129300   Wu'xi Branch:0510-68560202   Bao'an Branch:0755-33659333

Copyright © 1996 - 2017 Xiamen 35.com technology Co.ltd, All Rights Reserved.
**Business Hotline: 400-885-0035**

# ROUTING SHEET TO POST REGISTRATION (PRU)

**Registration Number:**  4123790

**Serial Number:**  79101087

**RAM Sale Number:  4123790**

**RAM Accounting Date:  20180404**

**Total Fees:**  $250

Note:  Process in accordance with Post Registration Standard Operating Procedure (SOP)

Physical Location:    - UNKNOWN

Lost Case Flag: False

In TICRS (AM-FLG-IN-TICRS): True

**Transaction Date:**    20180404



Exhibit 20

delivering letters or packages. You must purchase, find, or implement services like web-hosting or email to make your Internet presence known and make your domain name functional and accessible to others.

Back to top ^

4. # I pay for the domain name registration fees, what do you mean it isn't mine?

The registrant, also known as the "Registered Name Holder" is the person or entity that holds the rights to a domain name. Check with your registrar to see who the Registrant (Registrant) of record is for your domain name. If you have outsourced a third-party, such as a developer, to help manage your domain name, they may have registered the domain name using their own contact details (even if you have paid them to register and manage the domain name). Therefore, they may be listed as the official Registrant (Registrant) of record for the domain name. You may need to provide proof of your payment to the third-party/developer to prove to your registrar that you are the rightful holder and should be the registrant of the domain name.

Remember, paying to register a domain name is not the same as "buying" it outright or permanently. You do now "own" a domain name. What you are doing is more like leasing the domain name from the registry operator that the domain name is associated with. Registration periods can vary depending on the registry operator. You cannot buy a domain name forever. However, you can continually renew its registration (before the registration period expires) to maintain control over it. While the term "buying a domain name" is also commonly used in relation to purchasing an existing domain name registered to someone else, the purchaser is not buying the domain name, but just acquiring the rights to register it to themselves and continue to manage and re-register it in the future.

Back to top ^

5. # I registered a domain name and someone is putting advertisements on it. What should I do?

Exhibit 21

Case 3:19-cv-07071-SI   Document 189-1   Filed 10/26/21   Page 205 of 216

# Information for Privacy and Proxy Service Providers, Customers and Third-Party Requesters

This page is available in:
English |
العربية (https://www.icann.org/resources/pages/pp-services-2017-10-20-ar) |
Español (https://www.icann.org/resources/pages/pp-services-2017-10-20-es)
|
Français (https://www.icann.org/resources/pages/pp-services-2017-10-20-fr)
|
日本語 (https://www.icann.org/resources/pages/pp-services-2017-10-20-ja) |
Português (https://www.icann.org/resources/pages/pp-services-2017-10-20-pt) |
Русский (https://www.icann.org/resources/pages/pp-services-2017-10-20-ru)
|
中文 (https://www.icann.org/resources/pages/pp-services-2017-10-20-zh)

Privacy and proxy service providers offer services that permit customers to register a domain name without publishing the customer's contact information in the Registration Data Directory Service (RDDS), also known as WHOIS (WHOIS (pronounced "who is"; not an acronym)).

A **Privacy Service** allows a customer to register a domain name as the registered domain name holder (meaning that the customer's name appears in the registrant name" field in WHOIS (WHOIS (pronounced "who is"; not an acronym))). Alternative, reliable contact information (such as a mail-forwarding email address) is published by the service provider in place of the customer's personal contact information.

A **Proxy Service** allows a customer to use a domain name without displaying any of the customer's information in WHOIS (WHOIS (pronounced "who is"; not an acronym)). The proxy service provider is the registrant of record (the registered domain name holder) and provides alternative, reliable contact information. This service is legally distinct from a privacy service because the proxy service provider is the registered domain name holder (which attaches certain legal rights and responsibilities for a domain). The proxy service provider licenses use of the domain name to the customer via its agreement with the customer.

# 2013 RAA (Registrar Accreditation Agreement)

The 2013 RAA (Registrar Accreditation Agreement) (/en/resources/registrars/raa/approved-with-specs-27jun13-en.htm#privacy-proxy) requires that privacy and proxy service providers that are affiliated with an ICANN (Internet Corporation for Assigned Names and Numbers)-accredited registrar to:

- Disclose service terms (including pricing), on the provider's website and/or registrar's website and abide by such terms;

- Publish an abuse/infringement point of contact;

- Disclose the business contact information on the provider's website and/or registrar's website; and

- Publish and abide by terms of service and description of procedures on its website and/or registrar's website, such as handling of abuse or trademark infringement reports, communication handling, conditions of ending service, WHOIS (WHOIS (pronounced "who is"; not an acronym)) data publication conditions, and access to support services.

If you have a complaint regarding any of these items, please submit a Privacy/Proxy Registration Complaint Form (https://forms.icann.org/en/resources/compliance/complaints/whois/privacy-proxy-registration-form).

# New ICANN (Internet Corporation for Assigned Names and Numbers) Privacy and Proxy Service Provider Accreditation Program

ICANN (Internet Corporation for Assigned Names and Numbers) is implementing a new accreditation program for privacy and proxy service providers pursuant to policy recommendations (https://gnso.icann.org/en/issues/raa/ppsai-final-07dec15-en.pdf) [PDF, 1.24 MB] developed through the ICANN (Internet Corporation for Assigned Names and Numbers) multi-stakeholder policy development process. Once this program is fully implemented, ICANN (Internet Corporation for Assigned Names and Numbers)-accredited registrars may not knowingly accept registrations involving a privacy and/or proxy service from an entity that is not accredited by the ICANN (Internet Corporation for Assigned Names and Numbers) organization.

Case 3:19-cv-07071-SI   Document 189-1   Filed 10/26/21   Page 207 of 216

If you would like to submit an inquiry about the Privacy and Proxy Service
Provider Accreditation Program, please contact the ICANN (Internet
Corporation for Assigned Names and Numbers) Global Support Center
(/resources/pages/customer-support-2015-06-22-en#global-support-centers).

## Quick Links

- List of ICANN (Internet Corporation for Assigned Names and Numbers)-
  Accredited Privacy and Proxy Service Providers

- Privacy and Proxy Service Provider Customer Educational Information

Exhibit 22

## ID SHIELD SERVICE AGREEMENT

PLEASE READ THIS ID SHIELD SERVICE AGREEMENT ("AGREEMENT") CAREFULLY. BY USING THE ID SHIELD SERVICES ("IDS SERVICES"), YOU AGREE TO ALL THE TERMS AND CONDITIONS IN THIS AGREEMENT. YOU AGREE THAT THE "SERVICE PROVIDERS" (DEFINED BELOW) MAY AMEND THIS AGREEMENT BY POSTING THE AMENDED AGREEMENT ON THE WEBSITE WHERE YOU OBTAINED THE IDS SERVICES. YOU AGREE THAT ANY NEW, DIFFERENT OR ADDITIONAL FEATURES THAT CHANGE THE IDS SERVICES WILL AUTOMATICALLY BE SUBJECT TO THIS AGREEMENT. IF YOU DO NOT AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT AND ANY SUBSEQUENT AMENDMENTS HERETO, DO NOT USE, ACCESS, OR CONTINUE TO USE THE IDS SERVICES. CONTINUED USE OF THE IDS SERVICES AFTER CHANGES TO THIS AGREEMENT HAVE BEEN POSTED CONSTITUTES YOUR ACCEPTANCE OF SUCH CHANGES.

This Agreement is by and between Domain ID Shield Service Co., Limited., a corporation registered in Hong Kong, China ("Backend Service Provider"), the party, if any, other than the Backend Service Provider who makes the IDS Services available to you ("Primary Service Provider;" Backend Service Provider and Primary Service Provider, if any, being together referred to herein as the "Service Providers"), your heirs, executors, administrators, agents, successors and assigns ("You," "Your," and other appropriate formatives). This Agreement sets forth the terms and conditions of your relationship with the Service Providers and Your use of the IDS Services. You acknowledge that You have read, understand and agree to be bound by all the terms and conditions of this Agreement for transactions entered into by: (i) You on Your behalf; (ii) anyone acting as Your agent; (iii) anyone who uses the account You establish to obtain the IDS Services, whether or not the transactions were on Your behalf and/or authorized by You. You agree that you will be bound by representations made by third parties you use to obtain the IDS Services. You further agree to abide by the terms and conditions promulgated by the Internet Corporation for Assigned Names and Numbers ("ICANN"), including the Uniform Domain Name Dispute Resolution Policy ("Dispute Resolution Policy," http://www.icann.org/dndr/udrp/policy.htm) any policy which ICANN may establish with respect to WHOIS information, and the terms and conditions of Your domain name registration with Your registrar (the ICANN-accredited person or entity through which You register a domain name). This Agreement is in addition to domain name registration agreement(s) entered into by you and a registrar when you register or renew domain name registration(s).

## THE IDS SERVICES

If you subscribe to the IDS Services, each domain name registration which you control and which You designate ("IDS Domains") will thereafter be registered in the name of the Backend Service Provider, as registrant. Your name, postal address, email address, phone and fax numbers shall be kept confidential, subject to Section 5 of this Agreement. The following information (and not your personal information) will be made publicly available in the "Whois" directory for each IDS Domain:

The Backend Service Provider's email address, postal address and phone and facsimile number for the registrant, administrative, technical, and billing contacts ("IDS Addresses");
The primary and secondary domain name servers you designate for the IDS Domain;
The IDS Domain's original date of registration and expiration date; The identity of your registrar, domain name service provider (if different from registrar) and the status of the IDS Domain with the registrar (such as, "active," "Registrar Lock," "client hold," etc.).

While you will not be listed as the registrant for the IDS Domain(s), and other than as described in this Agreement, the Backend Service Provider will not act to control the IDS Domain(s). You will retain the right to sell, transfer, or assign each IDS Domain; You will retain the right to control and set the DNS settings for the IDS Domain(s); You will retain the right to renew each IDS Domain name registration upon expiration (subject to your registrar's applicable rules and policies); and You will remain responsible to resolve any and all monetary or other legal claims that arise in connection with Your IDS Domain(s), subject to the remaining provisions of this Agreement.

IMPORTANT: THE IDS SERVICES ARE NOT A GENERAL MAIL FORWARDING SERVICE. You agree that you will not provide any third party with the IDS Addresses for the purpose of having such third party transmit communications to you through the Backend Service Provider. Third parties may obtain the IDS Addresses listed in the Whois directory by their own initiative, but you agree that you will not be the one to provide the IDS Addresses to such third parties.

## PROVISION OF PERSONAL INFORMATION

You agree that for each IDS Domain, You will provide to the Service Providers and maintain as current and accurate, the following information:
Your name, address, email address, postal address, phone and fax numbers;
The name, address, email address, postal address, phone and fax numbers for the IDS Domain's administrative, technical, and billing contacts; The primary and secondary domain name servers for the IDS Domain;

You agree to: (i) update this information immediately as it changes over time; (ii) respond within three (3) business days to any inquiries made by either Service Provider to determine the validity of personal information provided by You; (iii) promptly respond to messages regarding correspondence addressed to or involving Your IDS Domain(s), as more fully set forth in section 6 below. If You do not supply primary and secondary domain name servers, You agree that Backend Service Provider may point Your IDS Domain(s) to an IP address of Backend Service Provider' choosing until such time as You supply primary and secondary domain name servers.

## RENEWALS AND FEES

For domain name registrations which are serviced by a registrar other than a Service Provider: If available as an option and if such option selected by You, You agree that either Service Provider shall be authorized to contact your domain name registration service provider on Your behalf (and using the credit card provided by You) to renew the domain name registration of associated IDS Domains.

If Backend Service Provider elects to begin charging fee(s) to forward communications to you (see below), you agree that you may be required to pay such fees before the communications will be forwarded. Backend Service Provider may change its service and forwarding fees at any time. Backend Service Provider may also charge reasonable fees for administrative tasks outside the scope of regular services. These may include, but are not

limited to, customer service issues that require personal service and disputes that require legal services. You are responsible for paying all fees and taxes associated with using Backend Service Provider's services. Payment shall be made by credit card unless other options are indicated in Your Account. You agree that charges may appear on the credit card statement under a descriptive provider identifier, such as "Domain Name Registration Services." Fees are non-refundable. If for any reason there is a charge back for any fee previously charged to the credit card by Backend Service Provider, You agree that Backend Service Provider may, without notice, pursue all available remedies in order to obtain payment. Without limitation on other remedies which may be available under such circumstances, You agree that Backend Service Provider may assume complete ownership of the IDS Domain(s), that the IDS Domain(s) may be sold to third parties, or that the IDS Domain(s) may be to pointed to IP numbers of Backend Service Provider's choosing, and that Backend Service Provider may immediate cancel Your Account and all services provided to You.

IMPORTANT TERMS REGARDING RELATIONSHIP OF TERM OF IDS SERVICES AND REGISTRATION TERM OF AN ASSOCIATED IDS DOMAIN: You understand that your IDS Services term begins on the date Your attempt to procure the IDS Services is accepted by the Service Provider(s) and that it shall run for the unit of time which You order. You understand that the IDS Services term may be different than the registration term of the IDS Domain which is associated with the IDS Services. If an IDS Domain expires and is deleted before the end of the term of the associated IDS Services, then the IDS Services associated with the domain will end. While if the IDS Domain is renewed, and the IDS Services term will also be renewed.

**YOUR REPRESENTATIONS & WARRANTIES**

You represent and warrant that all information provided by You pursuant to this Agreement is truthful, complete, current and accurate and You represent and warrant that you will maintain all information in this status throughout the term of this Agreement. You also represent and warrant that You are using the IDS Services in good faith and that You have no knowledge or reason to believe that Your IDS Domain or the content found at any associated IP address infringes upon or conflicts with the legal rights of any third party or any third party's trademark or trade name. You also warrant that neither the IDS Services nor IDS Domain(s) will not be used in connection with any illegal or morally objectionable activity (as defined below in section 5), or, in connection with the transmission of unsolicited commercial email ("Spam").

SERVICE PROVIDER'S SUSPENSION OR TERMINATION OF SERVICE AND DISCLOSURE OF YOUR PERSONAL INFORMATION

In the event of any of the following: If the IDS Domain(s) is (are) alleged to violate or infringe a third party's trademark, trade name, copyright interests or other legal rights of third parties; If you breach any provision of this Agreement or an anti-Spam policy of either Service Provider; If you breach any provision of Your registrar's Registration Agreement; If necessary to protect the integrity and stability of the applicable domain name registry; If necessary to comply with any applicable laws, government rules or requirements, subpoenas, court orders or requests of law enforcement; If Backend Service provider is named as a defendant in, or investigated in anticipation of, any legal or administrative proceeding arising out of Your use of the IDS Services or an IDS Domain; If necessary to comply with ICANN's Dispute Resolution Policy or other policies promulgated by ICANN (including policies which may preclude use a service such as ID Shield); If necessary to avoid any financial loss or legal liability (civil or criminal) on the part of Backend Service Provider, its parent companies, subsidiaries, affiliates, shareholders, agents, officers, directors and employees; OR if it comes to Backend

Service Provider's attention that You are alleged to be using the IDS Services for purposes of engaging in, participating in, sponsoring or hiding Your involvement in illegal or morally objectionable activities, including but not limited to, activities which are designed, intended to or otherwise: (i) appeal primarily to prurient interests; (ii) defame, embarrass, harm, abuse, threaten, or harass; (iii) violate state or federal laws of the United States and/or foreign territories; (iv) involve hate crimes, terrorism or child pornography; (v) are tortious, vulgar, obscene, invasive of a third party's privacy, race, ethnicity, or are otherwise objectionable; (vi) impersonate the identity of a third party; (vii) harm minors in any way; or (viii) relate to or transmit viruses, Trojan Horses, access codes, backdoors, worms, timebombs or any other code, routine, mechanism, device or item that corrupts, damages, impairs, interferes with, intercepts or misappropriates any software, hardware, firmware, network, system, data or personally identifiable information, THEN You understand and agree that Backend Service Provider has the absolute right and power, in its sole discretion and without any liability to You whatsoever, to suspend the IDS Services, close Your Account, terminate provisionment of the IDS Services, list the information You provided in section 2 in the Whois output or provide the information You provided in section 2 to a claimant, resolve any and all third party claims, whether threatened or made, arising out of Your use of IDS Domain, or take any other action which Backend Service Provider deems necessary.

In the event Backend Service Provider takes any of the actions set forth above or in the event you elect to cancel the IDS Services for any reason, neither Service Provider will refund any fees paid by you for the IDS Services.

You also acknowledge and agree that Backend Service Provider may, in its sole discretion and without any liability to You whatsoever, cancel the IDS Services during the first thirty (30) days after You procured the IDS Services, and/or suspend Your rights under this Agreement and list the IDS Addresses during resolution of a dispute or investigation of allegations.

**Terms of service and description of procedures**

Besides you fax your report of abuse and/or infringement of trademarks or other rights of third parties of an IDS domain to its service provider whose identity and abuse contact has been published on http://www.onlinenic.com/idshield/, you may navigate to our ticket center http://support.onlinenic.com/ and submit your report regarding any abuse or infringement of trademarks or other rights of third parties. Your report will be evaluated and acted on where appropriate. Please understand that your report might not be replied unless we need to contact you with additional information for investigation. In the event that the reported domain name who is associating with ID Shield service is involved in abuse or infringement of trademarks or other rights of third parties upon valid evidence, we will detach the domain name from ID shield service and publish its Registration Data Service.

Onlinenic will be providing customer support to Onlinenic customer who is using IDS on behalf of IDS service provider. To reach Onlinenic customer support, please visit http://www.onlinenic.com/support/.

**FORWARDING COMMUNICATIONS**

You agree that Backend Service Provider will review communications sent to the IDS Addresses associated with Your IDS Domain. For communications received via certified or traceable courier mail (such as UPS, FedEx, or DHL), or postal mail which does not appear to be unsolicited commercial mail, Backend Service Provider may either i) forward such communication to You or ii) may attempt to communicate to you a scanned copy of a page of the communication to ascertain Your desires with respect to forwarding the communication to You. You specifically acknowledge that Backend Service Provider may elect to not forward to You (nor to otherwise communicate with You) regarding first class postal mail or email, fax, postal mail or telephone communications which appear to be unsolicited communications which offer or advertize the sale of goods or services or which solicit charitable contributions, or communications which appear to arise from Your having used the IDS Services as a general mail forwarding service (see section 1, above). You authorize Backend Service Provider to either discard all such communications or return all such communications to sender unopened. You agree to waive any and all claims arising from your failure to receive communications directed to your domain name but not forwarded to you by Backend Service Provider, including failures which arise from Backend Service Provider's mistake in judging whether a communication appears to be an unsolicited communication.

Email. The Whois directory generally requires an email address for every purchased domain name registration. When you purchase IDS Services, Backend Service Provider creates an email address for that domain, " @domainidshield.com". Thereafter, when messages are sent to the email address listed in the IDS Address, Backend Service Provider forwards such messages to the email address you listed in section 2. If such email address becomes non-functioning or if email to such address bounces, Backend Service Provider is not obligated to attempt to contact You through other means. You agree that Backend Service Provider may elect, in Backend Service Provider's sole discretion, to allow You to access Your Account and view email sent to the IDS Addresses, though such alternative means of servicing Your Account is an option and not a requirement.

Your Obligation to respond to communications from the Backend Service Provider: When Backend Service Provider receives a communication which may warrant forwarding to You, per the terms of this Agreement, Backend Service Provider will send an email to the email address You provided to Backend Service Provider pursuant to section 2. The email message will identify the sender of the correspondence and the date received. As an alternative, You agree that Backend Service Provider may allow you to access Your Account to view full or partial scanned copies of (non-email) communications sent to the IDS Addresses and that You may be required to interact with Your Account to have the physical originals of such communications forwarded to You and that if You do not interact with Your Account in the ways indicated upon accessing Your Account, that the communications may not be forwarded to You. In either event, you will have seventy-two (72) hours to decide whether to have the communication(s) forwarded. If you do not respond within this time period, the communication(s) will not be forwarded. Method of forward will be determined by Backend Service Provider. Communication(s) may not be immediately forwarded upon your election; there may be a delay and communication(s) may be aggregated to be forwarded together. The Backend Service Provider may begin charging fees for forwarding communications or may change the method by which communications are forwarded without written notice.

In the event You do not respond to communications from the Backend Service Provider regarding communications received at the IDS Address, Backend Service Provider may immediately reveal the information You provided pursuant to section 2 and/or cancel the IDS Services regarding either the IDS Domain in question or with respect to all of Your IDS Domains, depending on the circumstances. This means the Whois directory will revert to displaying your name, postal address, email address and phone number. This action would be taken because Backend Service Provider will not become involved in any legal or other matters between you and third parties.

## LIMITATION OF LIABILITY

UNDER NO CIRCUMSTANCES SHALL EITHER THE PRIMARY OR BACKEND SERVICE PROVIDERS BE LIABLE FOR ANY DIRECT, INDIRECT, INCIDENTAL, PUNITIVE, SPECIAL, OR CONSEQUENTIAL DAMAGES FOR ANY REASON WHATSOEVER RELATED TO THIS AGREEMENT, YOUR DOMAIN NAME REGISTRATION, THE IDS SERVICES, USE OR INABILITY TO USE THE PRIMARY OR BACKEND SERVICE PROVIDER(S) WEB SITE(S) OR THE MATERIALS AND CONTENT OF THE WEB SITE(S) OR ANY OTHER WEB SITES LINKED TO SUCH WEB SITE(S) OR YOUR PROVISION OF ANY PERSONALLY IDENTIFIABLE INFORMATION TO BACKEND SERVICE PROVIDER OR ANY THIRD PARTY. THIS LIMITATION APPLIES REGARDLESS OF WHETHER THE ALLEGED LIABILITY IS BASED ON CONTRACT, TORT, WARRANTY, NEGLIGENCE, STRICT LIABILITY OR ANY OTHER BASIS, EVEN IF EITHER THE PRIMARY OR BACKEND SERVICE PROVIDERS HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR SUCH DAMAGES WERE REASONABLY FORESEEABLE. BECAUSE CERTAIN JURISDICTIONS DO NOT PERMIT THE LIMITATION OR ELIMINATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, THE PRIMARY AND BACKEND SERVICE PROVIDERS' LIABILITY IN SUCH JURISDICTIONS SHALL BE LIMITED TO THE GREATEST EXTENT PERMITTED BY LAW. IF ANY PROVISION OF THIS LIMITATION OF LIABILITY IS FOUND TO BE UNENFORCEABLE, ONLY SUCH PROVISION SHALL BE REMOVED AND THE REMAINDER SHALL BE ENFORCED TO THE GREATEST EXTENT PERMITTED BY LAW.

You further understand and agree that the Primary and Backend Service Providers disclaim any loss or liability resulting from: (i) the inadvertent disclosure or theft of Your personal information; (ii) access delays or interruptions to our web site or the web sites of affiliated parties; (iii) data non-delivery or misdelivery between You and the Service Providers; (iv) the failure for whatever reason to renew the IDS Services; (v) the unauthorized use of Your Account or any of the Service Provider's services; (vi) errors, omissions or misstatements by either Service Provider; (vii) deletion of, failure to store, failure to process or act upon email messages sent to or forwarded to either You or the email address listed for Your IDS Domain; (viii) processing of updated information regarding Your Account; (ix) any act or omission caused by You or Your agents (whether authorized by You or not).

YOU AGREE THAT, IN ANY EVENT, THE PRIMARY AND BACKEND SERVICE PROVIDERS' RESPECTIVE MAXIMUM LIABILITY TO YOU SHALL BE CAPPED BY THE LESSER OF THE AMOUNT OF FEES PAID BY YOU TO EACH SERVICE PROVIDER IN THE PRECEDING YEAR WITH RESPECT TO THE SERVICES WHICH GAVE RISE TO THE LIABILITY OR $100.00 PER IDS DOMAIN.

## INDEMNITY

You agree to release, defend, indemnify and hold harmless the Primary and Backend Service Providers, and their parent companies, subsidiaries, affiliates, shareholders, agents, directors, officers and employees and Your registrar, from and against any and all claims, demands, liabilities, losses, damages or costs, including reasonable attorney's fees, arising out of or related in any way to this Agreement, the IDS Services, the web sites of the Service Providers, Your Account, and/or Your use of Your IDS Domain(s).

**BACKEND SERVICE PROVIDER WARRANTY DISCLAIMER**

THE BACKEND SERVICE PROVIDER, ITS PARENT COMPANIES, SUBSIDIARIES, AFFILIATES, SHAREHOLDERS, AGENTS, DIRECTORS, OFFICERS, AND EMPLOYEES EXPRESSLY DISCLAIM ALL REPRESENTATIONS AND WARRANTIES OF ANY KIND IN CONNECTION WITH THIS AGREEMENT, THE SERVICES PROVIDED HEREUNDER, THE WEB SITES OF THE BACKEND SERVICE PROVIDER OR ANY WEB SITES LINKED TO SUCH WEB SITES, WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF TITLE, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. ALL BACKEND SERVICE PROVIDER SERVICES, AS WELL AS THE BACKEND SERVICE PROVIDER WEB SITE, ARE PROVIDED "AS IS". YOUR SUBSCRIPTION TO AND USE OF BACKEND SERVICE PROVIDER'S SERVICES AND ITS WEB SITE ARE ENTIRELY AT YOUR RISK. SOME JURISDICTIONS DO NOT ALLOW THE DISCLAIMER OF IMPLIED WARRANTIES, IN WHICH EVENT THE FOREGOING DISCLAIMER MAY NOT APPLY TO YOU. IF ANY PROVISION OF THIS LIMITATION OF LIABILITY IS FOUND TO BE UNENFORCEABLE, ONLY SUCH PROVISION SHALL BE REMOVED AND THE REMAINDER SHALL BE ENFORCED TO THE GREATEST EXTENT PERMITTED BY LAW.

**COPYRIGHT & TRADEMARK**

You understand and agree that all content and materials contained in this Agreement, the Privacy Policy and the Backend Service Provider web site, are shielded by the various copyright, patent, trademark, service mark and trade secret laws of the United States, as well as any other applicable proprietary rights and laws, and that Backend Service Provider reserves its rights in and to all such content and materials. You further understand and agree that You are prohibited from using any of the afore-described content and materials without the written permission of Backend Service Provider. No license or right under any copyright, patent, trademark, service mark or other proprietary right or license is granted to You or conferred upon You by this Agreement or otherwise.

**MISCELLANEOUS PROVISIONS**

Severability; Construction; Entire Agreement.
You agree that if any part of this Agreement shall be held to be illegal, unenforceable or invalid, in whole or in part, such provision shall be modified to

Governing Law; Venue; Waiver Of Trial By Jury

This Agreement shall be construed, governed and interpreted in accordance with the laws of the People's Republic of China. All disputes arising out of or in connection with this Agreement as well as any related domain name registration disputes (collectively, the "Disputes") shall first be settled through good faith negotiations between the parties. If such negotiations fail, the Disputes shall be submitted to the People's Courts of proper jurisdiction at Xiamen, Fujian Province, People's Republic of China. Parties to this Agreement hereby

acknowledge and consent that People's Courts at Xiamen, Fujian Province, People's Republic of China have exclusive subject matter and personal jurisdiction over the parties to this Agreement and the Disputes.

Term of Agreement; Survival.

The term of this Agreement begins on the date Your attempt to procure the IDS Services is accepted by the Service Provider(s). The term shall run for the unit of time which You ordered when You procured the IDS Services, unless terminated or suspended sooner according to the terms of this Agreement. Sections 6 (Forwarding Communications), 7 (Limitation of Liability), 8 (Indemnity), 9 (Warranty Disclaimer) and 11 (Miscellaneous Provisions) shall survive any termination or expiration of this Agreement.