1    **KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
2    Jeffrey M. Rosenfeld (Bar No. 222187)
Liana W. Chen (Bar No. 296965)
3    Ruben Peña (Bar No. 328106)
150 Post Street, Suite 520
4    San Francisco, CA 94108
Telephone: (415) 955-1155
5    Facsimile: (415) 955-1158
karl@KRInternetLaw.com
6    jeff@KRInternetLaw.com
liana@KRInternetLaw.com
7    ruben@KRInternetLaw.com

8
Specially Appearing as Attorneys for
9    Defendant Xiamen 35.com Technology Co., Ltd.
(erroneously sued as Xiamen 35.com Internet Technology Co., Ltd.)
10

11

12              **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
13                   **SAN FRANCISCO DIVISION**

14
**FACEBOOK, INC.**, et al.,                    Case No. 3:19-cv-07071-SI
15
                    Plaintiffs,
16                                               **DEFENDANT XIAMEN 35.COM
         v.                                      TECHNOLOGY CO., LTD.'S REPLY
17                                               IN SUPPORT OF MOTION TO
                                                 DISMISS THE SECOND AMENDED
18   **ONLINENIC INC.**, et al.,                 COMPLAINT PURSUANT TO FRCP
                                                 12(b)(6) AND 12(b)(2)
19                  Defendants.

20                                               Date:     December 3, 2021
                                                 Time:     10:00 a.m.
21                                               Ctrm:     1 — 17th Floor
                                                 Before:   Judge Susan Illston
22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

REPLY ARGUMENT ....................................................................................................... 2

    A.  The Court lacks personal jurisdiction over 35.CN................................................ 2

        1.  Plaintiffs fail to show that 35.CN is the alter ego of other Defendants............ 3

            i.      There is no unity of interest under the alter ego test ........................... 3

            ii.     There is no fraud or injustice to satisfy the alter ego test .................... 5

        2.  35.CN is not subject to specific jurisdiction in California ................................. 9

        3.  Further discovery is not warranted in light of the extensive record ............... 10

    B.  Plaintiffs fail to state any viable claim ................................................................ 11

        1.  Plaintiffs' conclusory allegations are refuted by their own arguments and SAC exhibits ................................................................................................. 11

        2.  Plaintiffs confuse prior cases involving Proxy Services............................... 12

        3.  Plaintiffs attempt to overturn established immunity for registrars ................. 14

CONCLUSION ............................................................................................................... 15

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

i

**DEFENDANT'S REPLY ISO MTN TO DISMISS**

1    **TABLE OF AUTHORITIES**

2    **Cases**

3    *Associated Vendors, Inc. v. Oakland Meat Co.*,
4        210 Cal. App. 2d 825 (1962) ..................................................................... 4

5    *Ballard v. Savage*,
6        65 F.3d 1495 (9th Cir. 1995) .................................................................. 9

7    *Cadence Design Systems, Inc. v. Syntronic AB*,
8        2021 WL 4222040 (N.D. Cal. Sep. 16, 2021)...................................... 10

9    *Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
10       No. C-09-00511 RMW, 2011 WL 1375164 (N.D. Cal. Apr. 12, 2011) ................. 3

11   *Facebook Inc. v. Namecheap Inc.*,
12       No. CV-20-00470-PHX-GMS, 2020 WL 6585534 (D. Ariz. Nov. 10, 2020) .. 12–13

13   *Facebook Inc. v. Namecheap Inc.*,
14       No. CV-20-00470-PHX-GMS, 2021 WL 961771 (D. Ariz. Mar. 15, 2021) .......... 12

15   *Ford Motor Co. v. Greatdomains.Com, Inc.*,
16       177 F. Supp. 2d 635 (E.D. Mich. 2001) ............................................. 12

17   *Gerritsen v. Warner Bros. Entertainment Inc.*,
18       116 F. Supp. 3d 1104 (C.D. Cal. 2015) ..................................... 3, 5, 6

19   *Greenspan v. LADT, LLC*,
20       191 Cal. App. 4th 486 (2010) ............................................................ 5

21   *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*,
22       328 F.3d 1122 (9th Cir. 2003) ............................................................ 3

23   *In re NVIDIA Corp. Securities Litigation*,
24       768 F.3d 1046 (9th Cir. 2014) ......................................................... 11

25   *In re Packaged Seafood Products Antitrust Litigation*,
26       277 F. Supp. 3d 1167 (S.D. Cal. 2017) ............................................. 7

27   *NetApp, Inc. v. Nimble Storage, Inc.*,
28       No. 5:13-CV-05058-LHKHRL, 2015 WL 400251 (N.D. Cal. Jan. 29, 2015) ......... 3

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ........................................................................ 9

*Solid Host, NL v. Namecheap, Inc.*,
  652 F. Supp. 2d 1092 (C.D. Cal. 2009) .................................................... 14

*Sonora Diamond Corp. v. Superior Court*,
  83 Cal. App. 4th 523 (2000) .................................................................... 3, 5

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) .................................................................... 11

*Stewart v. Screen Gems–EMI Music, Inc.*,
  81 F. Supp. 3d 938 (N.D. Cal. 2015) ......................................................... 3

*Toho–Towa Co., Ltd. v. Morgan Creek Productions, Inc.*,
  217 Cal. App. 4th 1096 (2013) ................................................................... 6

*Verizon California Inc. v. Onlinenic, Inc.*,
  No. C 08-2832 JF (RS), 2009 WL 2706393 (N.D. Cal. Aug. 25, 2009) ........... 7–8

1    Defendant Xiamen 35.com Technology Co., Ltd. ("35.CN") submits this reply in

2  support of its Motion to Dismiss the Second Amended Complaint ("SAC").

3                                **INTRODUCTION**

4    Facebook/Instagram—which have been rebranded as "Meta" following a massive

5  backlash over misleading the public, regulators, and investors[1]—have spent over $2

6  million in their attorney's fees and years of litigation in hopes of a default judgment for

7  thirty-five domain names ("Domain Names"), which were not used by any Defendant and

8  at least some of which are protected under the Fair Use Doctrine. Plaintiffs' attempts to

9  police the internet are perplexing, and their claims are unfounded.

10    First, the claims should be dismissed as to 35.CN for lack of personal jurisdiction.

11  While Plaintiffs try to base jurisdiction on an alter ego argument, they fail to plausibly

12  allege a "unity of interest" or any fraud or injustice that will result from maintaining the

13  separate corporate forms. In particular, Plaintiffs argue that 35.CN should be liable for the

14  actions of OnlineNIC/ID Shield (which Plaintiffs assert are liable for conduct of third-party

15  Domain Name "Registrants") due to the potential inability of OnlineNIC/ID Shield to pay

16  a (default) judgment; however, that is not a basis for finding an injustice or fraud. Despite

17  Plaintiffs' imaginative arguments, there is no basis for disregarding the corporate forms

18  of OnlineNIC and ID Shield, on the one hand (a longstanding registrar and Privacy

19  Service), and 35.CN, on the other hand (a Chinese company established in 2004 that

20  provides internet and tech services, including registrar services in China that are

21  unrelated to OnlineNIC or ID Shield). Importantly, Plaintiffs improperly cherry-pick various

22  financial transactions over a period of years and present them to the Court without context

23  and in a highly misleading manner in an effort to argue that 35.CN is the alter ego of

24  OnlineNIC; however, Plaintiffs' arguments—which are vigorously disputed—fail

25  regardless of Plaintiffs' mischaracterization of these financial transactions and without the

26  need for 35.CN to provide any further factual declarations or discovery material. Second,

27  _____

28  [1] *See e.g.,* https://www.bbc.com/news/newsbeat-59089331;
   https://about.fb.com/news/2021/10/facebook-company-is-now-meta/.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    the case should be dismissed for failure to state any viable claim. While Plaintiffs attempt

2    to rely on their conclusory allegations, their own exhibits to the operative complaint

3    ("SAC") confirm that ID Shield is merely a "Privacy Service" and not a "Proxy Service,"

4    which means that there is no underlying liability for ID Shield (as there is no contractual

5    duty to identify the Registrants when offering a Privacy Service). Plaintiffs' primary

6    comparison is its own litigation against Namecheap, Inc., which is distinguishable as

7    Namecheap/WhoisGuard were found to have provided Proxy Services where they owned

8    domain names and licensed them to third parties. Here, although Plaintiffs baselessly call

9    the ID Shield's Domain Name Registrants the "Licensees" (similar to Plaintiffs' case

10    against Namecheap), ID Shield did not own or license the Domain Names. Considering

11    the bigger picture, allowing Plaintiffs' claims to proceed would unwind years of immunity

12    for registrars and Privacy Services where a Privacy Service simply and routinely uses its

13    name on public records to maintain user privacy.

14    Finally, Plaintiffs' request for further discovery is unpersuasive, especially given

15    the expansive record and their 284-page declaration with 21 exhibits, which include

16    discovery responses, excerpts of deposition transcripts, and corporate formation

17    documents for OnlineNIC/ID Shield. Allowing additional discovery on these same issues

18    would be a futile fishing expedition, and it is unwarranted. A victory for Plaintiffs will also

19    effectively expand a monopoly over international registrar services as Plaintiffs take down

20    other registrars and Privacy Services, despite historic immunity for those entities.[2]

21    For all the reasons outlined in the moving papers and this reply, 35.CN's motion to

22    dismiss should be granted in full, and the SAC should be dismissed.

## REPLY ARGUMENT

### A.    The Court lacks personal jurisdiction over 35.CN.

25    Plaintiffs assert personal jurisdiction based on alter ego liability and specific

26    jurisdiction due to claimed minimum contacts. However, Plaintiffs' legal authorities and

27    factual allegations are insufficient to overcome 35.CN's motion to dismiss.

28    ---
[2] *See* http://domainincite.com/26002-facebook-to-enter-the-retail-registrar-business.

Case No. 3:19-cv-07071-SI                    2            **DEFENDANT'S REPLY ISO MTN TO DISMISS**

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

**1.**     **Plaintiffs fail to show that 35.CN is the alter ego of other Defendants.**

**i.**     **There is no unity of interest under the alter ego test.**

As an initial matter, because there is no viable claim against OnlineNIC/ID Shield, as outlined in the motion and below, there is no basis for any "alter ego" liability.

Further, Plaintiffs have not plausibly alleged a "unity of interest" to satisfy the first prong of the alter ego test, which is their main basis for personal jurisdiction. Notably, in determining whether a complaint has adequately pleaded alter ego liability, courts start from the premise that alter ego "is a limited doctrine" and an "extreme remedy" that is "sparingly used." *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 960 (N.D. Cal. 2015); *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 539 (2000).

Moreover, common directors, employees, office space, and funding are insufficient for alter ego liability; and Plaintiffs' authorities do not refute this point. For instance, Plaintiffs repeatedly cite to *Harris Rutsky & Co. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003). (*See e.g.,* Opp. at 3:18–27). However, *Harris* found that the following were <u>not</u> sufficient to unequivocally meet the alter ego test under the circumstances: (a) 100% control thorough stock ownership, (b) companies run by the same senior officers and directors, (c) share of the same offices and some of the same staff, and (d) individual drafting a key agreement, which could show control over day-to-day activities. *Id.* at 1135. Other authorities are consistent with this finding. *See, e.g., Eclectic Properties E., LLC v. Marcus & Millichap Co.*, No. C-09-00511 RMW, 2011 WL 1375164, at *6 (N.D. Cal. Apr. 12, 2011) (noting it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary); *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1138–42 (C.D. Cal. 2015) (sharing directors, office locations, and phone numbers, having employees who provided services, and commingling of funds did not give rise to a plausible inference that one party dictated every facet of the other's, particularly given lack of sufficient allegations of manipulative control by the parent); *NetApp, Inc. v. Nimble Storage, Inc.,* No. 5:13-CV-05058-LHKHRL, 2015 WL 400251, at *5 (N.D. Cal. Jan. 29, 2015) (noting a company may be directly involved in financing and macro-management

3

**DEFENDANT'S REPLY ISO MTN TO DISMISS**

1    of subsidiaries without exposing each company to alter ego liability).

2         Plaintiffs also heavily rely on a 1962 case, *Associated Vendors, Inc. v. Oakland*

3    *Meat Co.*, 210 Cal. App. 2d 825 (1962). However, that case affirmed the trial court's

4    finding that one corporation was <u>not</u> the alter ego of another corporation. *Id.* at 841. In

5    fact, although the appellant tried to stress undercapitalization, the court found evidence

6    of capitalization where the company paid rent and most of its bills, referencing another

7    case where a business was adequately capitalized with under $1,500, and it recognized

8    that in some alter ego cases there "were no assets or capitalization at all." *Id.* at 841–42.

9    As outlined below, this is not the case here.

10        In addition, Plaintiffs try to highlight that technical support and customer support of

11   OnlineNIC and ID Shield are run by employees of 35.CN. (Opp. at 21:19–20.) However,

12   those services are provided pursuant to an outsourcing service agreement (which Plaintiffs

13   recognize as "service agreements"), and these types of services are routinely provided by

14   third-party service providers; under Plaintiffs' untenable rationale, countless IT support,

15   customer service support, and other service providers would be liable for the primary

16   party's conduct. As shown, OnlineNIC has its own operations, registration databases,

17   office space, and corporate filings. [*See* D.E. 174-1 (Weiwei Decl. ¶¶5–9; Opp. Ex. 4); D.E.

18   192 (Ntc of Lodging Transcripts), Yu Depo. at 33:25–34:2 (7/13/21) & 78:4–24 (7/14/21).]

19   Contrary to another footnote argument (Opp. fn. 3), provision of support services pursuant

20   to an outsourcing agreement and payment for those services are both wholly consistent

21   with 35.CN's declaration in support of this motion; and despite Plaintiffs' accusations about

22   voids in finances, they do not have and are not entitled to detailed financial records. To be

23   clear, 35.CN disputes the disparaging and unfounded allegations against it, including

24   related to its finances and business; however, Plaintiffs' misleading attempts to connect

25   arbitrary alleged "facts" only detracts from the true issues (which has been their strategy

26   all along in this case, including with their separate motion for sanctions). Further, Facebook

27   references deposition testimony supporting Defendants' compliance with Chinese laws

28   and does not counter with any specific Chinese law that has been violated. (Opp. at 7:19–

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  20.) It is also highly questionable whether Plaintiffs' own business practices—which are

2  and have been under mass scrutiny, including for an unlawful antitrust "buy-or-bury"

3  scheme and securities violations[3]—would satisfy Plaintiffs' flawed line of reasoning.

4        As such, Plaintiffs fail to adequately allege a unity of interest to justify alter ego

5  liability, which necessitates a finding of lack of personal jurisdiction based on this theory.

6        **ii.    There is no fraud or injustice to satisfy the alter ego test.**

7        Plaintiffs' allegations and arguments regarding fraud and injustice are unavailing.

8        First, Plaintiffs assert that treating "OnlineNIC and 35.CN as separate identities

9  would result in fraud or injustice by denying Plaintiffs the recovery to which they are

10  entitled." (Opp. at 10:11–13.) This argument has been routinely rejected. While Plaintiffs

11  cite to *Greenspan v. LADT, LLC*, 191 Cal. App. 4th 486 (2010), that case outlined that a

12  "civil suit is intended to determine liability and damages on specified causes of action, not

13  to resolve hypothetical problems the plaintiff might face in collecting on a judgment." *Id.* at

14  517 (noting the plaintiff had "no reason" to name the party in the original suit and that the

15  discovery concerning alter ego issues "occurred *after* the judgment was obtained"). In fact,

16  *Greenspan* elaborated that if plaintiffs sued affiliated companies and sought to engage in

17  pretrial discovery in an attempt to establish alter ego liability, that "would promote a fishing

18  expedition into alter ego evidence *before* the plaintiff obtained a favorable judgment, if at

19  all." *Id.*; *see also Gerritsen*, 116 F. Supp. 3d at 1144 (recognizing that California courts

20  "routinely" reject the view that the potential difficulty a plaintiff faces collecting a judgment

21  is an inequitable result that warrants application of the alter ego doctrine); *Sonora Diamond

22  Corp.,* 83 Cal. App. 4th at 539 ("The alter ego doctrine does not guard every unsatisfied

23  creditor of a corporation but instead affords protection where some conduct amounting to

24  bad faith makes it inequitable for the corporate owner to hide behind the corporate form.

25   
26   
27   
28   

---

[3] *See e.g.,* https://www.ftc.gov/news-events/press-releases/2021/08/ftc-alleges-facebook-resorted-illegal-buy-or-bury-scheme-crush (outlining antitrust claims); https://www.washingtonpost.com/business/2021/10/08/facebook-whistleblower-sec/ (discussion recent backlash); *see also* https://www.sec.gov/news/press-release/2019-140 (prior settlement); https://twitter/HillaryClinton/status/1453001281933561861 (Hillary Clinton on October 6, 2021: "Facebook has privileged lies, damaged our democracy, and worsened divisions in our society . . . knowingly, for a profit.").

1   Difficulty in enforcing a judgment or collecting a debt does not satisfy this standard.").

2   Second, Plaintiffs have failed to plausibly allege (and would have no facts to show)

3   that OnlineNIC/ID Shield were inadequately capitalized at the time the claims arose or

4   given the normal business operations and expected risks. *See Gerritsen,* 116 F. Supp.

5   3d at 1144 ("Gerritsen has not plausibly alleged that either Katja or New Line was

6   undercapitalized at the time she entered into the Contract and Guaranty, nor that they are

7   undercapitalized now."). While *Gerritsen* recognized that undercapitalization might be a

8   ground for denying the separate entity privilege if capital is "illusory" or "trifling" compared

9   with the normal business and the risks of loss, insolvency does not by itself constitute an

10  inequitable result. *Id.* at 1144–45 (also noting the court need not consider conclusory

11  allegations or assume the pleading of "ultimate facts," such as the claim that it would be

12  "unjust" for one party to receive benefits without paying for them, at the pleading stage).

13  In fact, *Gerritsen* found allegations that defendants' "funneling" funds into personal and

14  associated accounts were not necessarily indicative of an alter ego relationship because

15  it "could merely be the usual practice of corporations to pay dividends." *Id.* at 1140–42.

16  Likewise, here, there is no showing of inadequate capitalization or diversion of assets,

17  including at the time claims arose; in fact, OnlineNIC has defended this case through

18  counsel for two years, despite Plaintiffs' uncompromising litigation tactics (which Plaintiffs

19  acknowledge have cost them high fees). [*See* D. E. 176 at 2:1.]

20  On the point of capitalization, Plaintiffs quote from *Toho-Towa Co. v. Morgan Creek*

21  *Prods., Inc.*, 217 Cal. App. 4th 1096 (2013), but that case is distinguishable as it involved

22  a written agreement between the parties with assurances that there would be adequate

23  assets to pay monies due under the agreement, yet no invoice was paid. *Id.* at 1101–09.

24  By contrast, here, Defendants did not make any assurances to Plaintiffs or contract with

25  Plaintiffs; and OnlineNIC pays for regular business expenses, such as rent and corporate

26  formation documents. (*See, e.g.*, Yu Depo. at 78:10–16 (7/14/21) & Opp. fn. 17,

27  referencing California Secretary of State filings). In addition, Plaintiffs' claims for statutory

28  damages and attorney's fees (which are founded on the alleged conduct of third-party

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

6

DEFENDANT'S REPLY ISO MTN TO DISMISS

1   Registrants and even though attorney's fees are not recoverable as this is not an

2   "exceptional" case) are outside the normal course of business, especially where Plaintiffs

3   are seeking recovery based on a motion for default/terminating sanctions, not on the

4   merits, and the claims are subject to dismissal. Plaintiffs' other citations are likewise

5   inapposite. *See, e.g., In re Packaged Seafood Prod. Antitrust Litig.*, 277 F. Supp. 3d 1167,

6   1189 (S.D. Cal. 2017) (finding "neither EPPs nor CFPs complaints plausibly allege the

7   inequitable result required for a finding of alter ego liability" and granting motion to dismiss

8   in part and denying in part).

9          Third, while Plaintiffs argue that OnlineNIC/ID Shield should have produced

10   additional corporate records, they fail to show the relevance of additional documentation

11   or that OnlineNIC fails to observe corporate formalities. In fact, Plaintiffs deposed

12   OnlineNIC's representative and have produced multiple corporate records of OnlineNIC

13   (articles of incorporation, Secretary of State filings, and tax returns). (Opp. Exs. 4, 11, 15.)

14   Plaintiffs also concede that OnlineNIC is an ICANN-accredited registrar. (Opp. at fn. 4.)

15          Fourth, as *Harris* (relied on by Plaintiffs) stated: "Litigation against an alien

16   defendant creates a higher jurisdictional barrier than litigation against a citizen from a

17   sister state because important sovereignty concerns exist . . . this factor is important

18   [though not conclusive]." *Harris*, 328 F.3d at 1133. While the *Harris* court found

19   jurisdictional discovery appropriate, that case did not involve the years of previous

20   discovery as in this case, which involved written discovery, document production,

21   deposition testimony, and a special master.

22          Fifth, Plaintiffs cite to *Verizon Cal. Inc. v. OnlineNIC, Inc.*, No. C 08-2832 JR (RS),

23   2009 WL 2706393, at *5 (N.D. Cal. Aug. 25, 2009), including in multiple footnotes, which

24   involved a default judgment against OnlineNIC more than a decade ago. However, that

25   case involved distinguishable claims/practices of OnlineNIC registering and monetizing

26   hundreds of domain names (that were purportedly identical or confusingly similar to

27   Verizon's trademarks) and allegations that OnlineNIC hosted websites at many of the

28   domain names with "pay-per-click" advertisements or links to competitor goods and

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    services. *Id.* at \*3. Although Plaintiffs' Opposition starts by indicating the *Verizon* court

2    said, thirteen years ago, OnlineNIC "operates a massive cybersquatting operation," the

3    court used quotations for that phrase, apparently referring to Verizon's claims in the

4    default (not merit-based) proceedings. In this case, by comparison, the Domain Names

5    were registered and used (not necessarily unlawfully) by third parties. In addition, if prior

6    litigation could serve as a basis for a finding of injustice, Facebook would never stand a

7    chance given its record-breaking orders.[4]

8        Sixth, Plaintiffs try to frame Defendants as lawbreakers who "intentionally

9    destroyed and obfuscated key evidence" (Opp. at 1:7–10), when in reality—and as will

10   likely be addressed in OnlineNIC's future opposition to Plaintiffs' separate Motion for

11   Sanctions [*see* D.E. 185 at 3:3–4:27 (background)]—Defendants run longstanding

12   legitimate businesses and actively engaged in discovery in this case, often yielding to

13   Plaintiffs' overbearing demands; and Plaintiffs fail to show intentional destruction of

14   relevant documents (as opposed to the potential deletion of historic, duplicative records

15   through routine maintenance and procedures required to query antiquated databases for

16   documents responsive to Plaintiff's discovery requests). [D.E. 115 Ex. 44.]

17       Seventh, as outlined above, Plaintiffs reference OnlineNIC's deposition testimony

18   discussing Defendants' compliance with Chinese laws, and Plaintiffs fail to explain how

19   Defendants' conduct violated such laws (and in fact, Plaintiffs note that both the Facebook

20   and Instagram apps are banned in China, i.e., Plaintiffs were banned because they failed

21   to comply with Chinese laws). (Opp. at 7:19–20, 15:11 & fn. 12.) Weighing equitable

22   factors, it would be unjust to impose alter ego liability where a foreign company is lawfully

23   operating under foreign laws, as is the case here (put differently, Plaintiffs would likely

24   fight being sued in China under Chinese laws for their activities in the U.S.).

25       Finally, Plaintiffs misleadingly quote from a hearing to assert Defendants cannot "go

26

27   ─────────────────
     [4] *See e.g.,* https://www.ftc.gov/news-events/press-releases/2019/07/ftc-imposes-5-billion-penalty-sweeping-new-privacy-restrictions (noting "record-breaking $5 billion penalty" by
28   the Federal Trade Commission); https://www.sec.gov/news/press-release/2019-140 (outlining prior $100 million settlement with the Securities and Exchange Commission).

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   home," but that hearing discussed payment of special master fees (where Plaintiffs argued

2   Defendants should bear the entire amount). (Opp. at 11:2–4; D.E. 127 at 11:3–5.)

3        Thus, Plaintiffs have not plausibly alleged any fraud or injustice that will result from

4   recognizing the corporate forms. This is not an "extreme" case but a common scenario

5   where Plaintiffs want to secure money for a (default) judgment that has not yet been

6   entered. Weighing relevant factors, there is no alter ego liability and thus no basis for

7   personal jurisdiction over 35.CN. As such, the SAC should be dismissed as to 35.CN.

8        **2.     35.CN is not subject to specific jurisdiction in California.**

9        While Plaintiffs attempt to show specific jurisdiction, they fail to show purposeful

10  direction or availment or that the claims relate to 35.CN's forum-related activities; and as

11  outlined in the Motion, the exercise of jurisdiction is not reasonable.

12       First, while Plaintiffs argue there is "purposeful availment," that "analysis is most

13  often used in suits sounding contract," whereas a "purposeful direction analysis" test "is

14  most often used in suits sounding in tort," as in this case. *Schwarzenegger v. Fred Martin

15  Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  Plaintiffs also cite to *Ballard v. Savage*, 65

16  F.3d 1495 (9th Cir. 1995), but that case is distinguishable as it involved an alleged Ponzi

17  scheme where deposits were taken from, and loans made to, U.S. residents, as well as

18  regular correspondence with and solicitation to those U.S. consumers. *Id.* at 1501. By

19  contrast, in this case, Plaintiffs highlight 35.CN's purported contacts with OnlineNIC and

20  third parties (not with Plaintiffs) and with the United States generally (not with California);

21  yet OnlineNIC's contacts are irrelevant to this analysis where there is no alter ego liability,

22  and the other claimed "contacts" are not related to the claims at issue. Again, Plaintiffs

23  do not argue that 35.CN or its customers registered the Domain Names; instead, they

24  allege that 35.CN is liable for the actions of OnlineNIC and/or ID Shield's customers.

25       Plaintiffs also point to the Registrar Accreditation Agreement ("RAA") with ICANN;

26  however, as outlined in the moving papers, the RAA expressly excludes third-party

27  beneficiaries (otherwise, all worldwide registrars would be subject to third-party claims in

28  a jurisdiction despite lack of sufficient contacts and due process). (*See* SAC Ex. 4.)

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   Further, on the issue of reasonableness, which considers the availability of other

2   forums, Plaintiffs state that they could not raise certain claims or obtain damages with a

3   UDRP complaint. However, if Plaintiffs wanted to obtain the Domain Names, rather than

4   bully Defendants into a default judgment for statutory (not actual) damages and attorney's

5   fees, they would have initiated a streamlined UDRP (or in rem) case. Their failure to do

6   so, and their request for over $2 million in attorney's fees, is highly suspect.

7   Thus, the factors weigh against a finding of specific jurisdiction as to 35.CN.

8   **3.  Further discovery is not warranted in light of the extensive record.**

9   While Plaintiffs outline potential further discovery topics, that discovery has already

10  been obtained or would be irrelevant. In fact, Plaintiffs already deposed OnlineNIC and

11  asked questions on the identified issues, such as the ownership of OnlineNIC, the

12  connection between OnlineNIC and 35.CN, and issues of ownership and control. (Opp.

13  Ex. 4 & D.E. 192.) Moreover, Plaintiffs have commented on special interrogatories, which

14  were already propounded on OnlineNIC and ID Shield "to gain a better understanding of

15  the financial documents produced by them as well as the relationship between them and

16  35.CN." (Opp. fn. 8.) Despite attempts to delay and increase fees yet again through

17  discovery, Plaintiffs present no authority to support additional discovery in these

18  circumstances. For example, while Plaintiffs highlight *Cadence Design Sys., Inc. v.*

19  *Syntronic AB*, No. 21-CV-03610-SI, 2021 WL 4222040, at *7 (N.D. Cal. Sept. 16, 2021),

20  the motion to dismiss in that case was filed within two months of the complaint. By

21  contrast, in this action, there has been years of litigation with a special master and

22  extensive discovery, motions, and Plaintiffs' disproportionate litigation tactics; and

23  Plaintiffs' efforts to get discovery is just another effort to stifle opposing parties.

24  In fact, as indicated by the 284-page declaration filed with their Opposition (not to

25  mention the extensive record and discovery completed in this case), Plaintiffs already

26  have deposition transcripts, written discovery responses, and other detailed documents

27  and information about Defendants. There is no reason to prolong this case any further.

28  Because there is no alter ego liability or specific jurisdiction, the Court should

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   dismiss the case for lack of personal jurisdiction as to 35.CN; and there is no basis for

2   allowing Plaintiffs to conduct further discovery for records/information they already have.

3   **B.      Plaintiffs fail to state any viable claim.**

4           **1.      Plaintiffs' conclusory allegations are refuted by their own arguments**

5                    **and SAC exhibits.**

6           As an initial matter, Plaintiffs do not dispute case law confirming that, for purposes

7   of a motion to dismiss, complaint exhibits are part of the "complaint" and that the Court

8   must disregard allegations if they are contradicted by facts established by complaint

9   exhibits. *See In re NVIDIA Corp. Secur. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014);

10  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

11          Here, Plaintiffs point to their conclusory allegations that all Defendants (improperly

12  lumped together) "registered, trafficked, or used" the Domain Names with a "bad faith"

13  intent to profit. (SAC ¶27.) However, as the SAC exhibits confirm, the third-party

14  Registrants (customers of other Defendants) "registered," owned, and retained control

15  over the Domain Names (while using ID Shield contact information on WHOIS records),

16  and only the Registrants, if anyone, could have "trafficked in" or "used" the Domain

17  Names. (SAC Ex. 4–7.) With their Opposition, Plaintiffs assert that ID Shield "registered"

18  the Domain Names because it is "listed as the official Registrant of record" for each of the

19  Domain Names. (Opp. at 17:5–10, citing SAC Exs. 6–7.) However, this argument

20  overlooks common knowledge and legal authorities regarding Privacy Services. Plaintiffs

21  also concede that the term "registrant" means a "person who registers and owns a domain

22  name." (Opp. at 16:13–14.) As outlined below, this could not be Defendants.

23          Plaintiffs make further conclusory allegations that all Defendants (again,

24  insufficiently lumped together) acted in bad faith, but their arguments of bad faith relate

25  to use of the Domain Names (which "use" was not by, and could not be by, Defendants).

26  (Opp. at 19:3–20.) For instance, Plaintiffs claim the Domain Names did not consist of

27  Defendants' names, that Defendants did not use the Domain Names for a bona fide

28  offering, and that Defendants did not make a non-commercial or fair use of Plaintiffs'

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   marks on a website at any of the Domain Names. However, there is no dispute that

2   Defendants did not use or control the Domain Names; instead, the third-party Registrants,

3   who were not even customers of 35.CN, registered and used the Domain Names (and as

4   outlined in the motion, OnlineNIC presented evidence of use as a "meme," i.e., in a

5   context with no relation to Plaintiffs at all). Thus, far from showing bad faith, Plaintiffs'

6   arguments actually demonstrate that Defendants could not be liable under the Lanham

7   Act/ACPA because they did not register, control, or use the Domain Names.

8          Plaintiffs also argue that there was a "bad faith intent to profit by concealing their

9   identities and their unlawful activities"; however, there was no concealing of any identity,

10  and there were no unlawful activities, especially relating to providing registrar/privacy

11  services. Finally, Plaintiffs refer to *Ford Motor Co. v. Greatdomains.com, Inc.*, 177 F.

12  Supp. 2d 635 (E.D. Mich. 2001) for the proposition that testimony from the defendant is

13  needed to show bad faith and to dispute a legitimate use for a domain name; however,

14  further testimony from OnlineNIC (or testimony from 35.CN) would not reveal how third-

15  party Registrants used or intended to use the Domain Names. In other words, that case

16  supports the argument that Plaintiffs' true claim (if any) is against the third-party

17  Registrants, not Defendants, and especially not 35.CN. *See id.* at 643.

18         Thus, Plaintiffs' allegations and exhibits confirm that they fail to state a viable claim.

19         **2.      Plaintiffs confuse prior cases involving Proxy Services.**

20         In arguing that ID Shield is a "Proxy Service" rather than a "Privacy Service" (i.e.,

21  in trying to impose liability against ID Shield and its claimed "alter egos" under a provision

22  of the RAA that only applies to a Proxy Service), Plaintiffs misleadingly construe case law

23  involving another registrar, Namecheap Inc. *See, e.g., Facebook Inc. v. Namecheap Inc.*,

24  No. CV-20-00470-PHX-GMS, 2020 WL 6585534, at *3 (D. Ariz. Nov. 10, 2020)

25  ("*Namecheap*"), *motion to certify appeal granted,* No. CV-20-00470-PHX-GMS, 2021 WL

26  961771 (D. Ariz. Mar. 15, 2021). Notably, different from this case (which relates to ID

27  Shield's "Privacy Services"), *Namecheap* involved a previous WhoisGuard "WHOIS Proxy

28  Agreement" explicitly for Proxy Services (*See Namecheap*, D.E. 56 (FAC), Ex. 2.)

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   Specifically, the *Namecheap* case recognized that under the RAA Section 3.7.7.3,

2   "Any Registered Name Holder <u>that intends to license use of a domain name to a third</u>

3   <u>party</u> is nonetheless the Registered Name Holder of record . . . <u>A Registered Name Holder</u>

4   <u>licensing use of a Registered Name</u> according to this provision <u>shall accept liability</u> for

5   harm caused by wrongful use of the Registered Name, <u>unless it discloses the current</u>

6   <u>contact information</u> provided by the licensee and the identity of the licensee within seven

7   (7) days to a party providing the Registered Name Holder reasonable evidence of

8   actionable harm." 2020 WL 6585534, at *1 (emphasis added).

9   Importantly, pursuant to the RAA Specifications attached as Exhibit 4 to the SAC

10  and quoted below, only a "Proxy Service" licenses a domain name to its customers and

11  therefore accepts liability under the above limited circumstances:

12  1.2 "Privacy Service" is a service by which a <u>Registered Name is registered to</u>
13  <u>its beneficial user as the Registered Name Holder, but for which alternative,</u>
    <u>reliable contact information is provided</u> by the P/P Provider for display of the
14  Registered Name Holder's contact information in the Registration Data Service
    (Whois) or equivalent services.
15

16  1.3 "Proxy Service" is a service through which a <u>Registered Name Holder</u>
    <u>licenses use of a Registered Name</u> to the P/P Customer in order to provide the
17  P/P Customer use of the domain name . . . (emphasis added)

18  In *Namecheap*, the court found that in "its proxy service, WhoisGuard registers

19  Namecheap's customers' domain names in WhoisGuard's name and licenses the domain

20  names back to the customers," 2020 WL 6585534, at *1; and Facebook alleged the

21  following in its amended complaint against Namecheap (*Namecheap*, D.E. 56, ¶86):

22  Whoisguard agreed, when it registered the domain names pursuant to the
    domain name registration agreement, that "if [Whoisguard] license[s] the use
23  of the domain name registered to [Whoisguard] to a third party, [Whoisguard]
    nonetheless remain[s] the domain name holder of record, and remain[s]
24  responsible for all obligations under this Agreement, including but not limited to
    . . . ensuring non-infringement of any third party intellectual property rights or
25  other rights." See Exhibit 1, § 20. (emphasis added)

26  By contrast, the ID Shield Service Agreement (SAC Ex. 6 at 1–2) establishes that

27  the only owner of a Domain Name is the beneficial owner who hold the rights to the Domain

28  Name; and ID Shield disclaims all ownership rights in each Domain Name:

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

You [each Registrant] further agree to abide by the terms and conditions promulgated by [ICANN] . . . and the terms and conditions of <u>Your domain name registration</u> with Your registrar.

If you subscribe to the IDS Services, <u>each domain name registration which you control and which You designate</u> ("IDS Domains") will thereafter be registered in the name of the Backend Service Provider, as registrant [so that Your information will be] kept confidential."

While you will not be listed as the registrant for the IDS Domain(s) . . . <u>the Backend Service Provider [ID Shield] will not act to control the IDS Domain(s). You will retain the right to sell, transfer, or assign each IDS Domain. You will retain the right to control and set the DNS settings for the IDS Domain(s); You will retain the right to renew each IDS Domain name registrations . . . and You will remain responsible to resolve any and all monetary or other legal claims that arise in connection with Your IDS Domain(s)</u> . . ."

You also represent and warrant that . . . You have no knowledge or reason to believe that Your IDS Domain or the content found at any associated IP address infringes upon or conflicts with the legal rights of any third party or any third party's trademark or trade name." (emphasis added)

The SAC Exhibit 5 (onlinenic.com webpage) also confirms: "OnlineNIC ID Shield makes your privacy possible while maintaining <u>your ownership over your domain</u>." (emphasis added). In other words, Plaintiffs fail to show similar authorities or examples to support their argument that ID Shield is a "Proxy Service" that accepted liability to Plaintiffs for the conduct of its third-party customers, i.e., the Registrants. Relatedly, Plaintiffs have failed to adequately allege facts demonstrating that ID Shield is liable under the seven-day rule (whereby a Proxy Service must identity a licensee within seven days of notice of reasonable evidence of actionable harm), even if ID Shield were considered a Proxy Service (which it is not). In fact, Plaintiffs' Opposition merely repeats conclusory claims, instead of actual facts. (Opp. fn. 6.) As such, the SAC fails to state a claim against ID Shield/OnlineNIC, and likewise fails to state a claim against the alleged alter ego 35.CN.

**3.     Plaintiffs attempt to overturn established immunity for registrars.**

Plaintiffs fail to distinguish this case from authority cementing registrar immunity. Plaintiffs claim there is no immunity for a registrar where it is a domain name registrant and also used the domain name. *See Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp.

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1   2d 1092, 1105 (C.D. Cal. 2009). However, as outlined above, Defendants (including

2   35.CN) were not the "registrants" of the Domain Names, nor did they "use" those Domain

3   Names. In fact, this is the classic case in which a registrar (i.e., OnlineNIC and the Privacy

4   Service, ID Shield) is immune from liability under the safe harbor for registrar activities.

5   Although Plaintiffs claim that ID Shield accepted liability for Registrants' conduct under

6   the RAA, that argument is without merit because ID Shield is only a Privacy Service

7   (compared with a Proxy Service) and thus did not accept any liability. In addition, Proxy

8   Service liability is only imputed where the Proxy Service fails to provide identifying

9   information for a registrant within seven days of sufficient notice of a violation. Here, there

10  was a lack of any underlying violation or sufficient notice (e.g., ID Shield's responses to

11  Interrogatory 5 confirmed it never received the original alleged notice of violation "sent by

12  fax"). Therefore, 35.CN cannot be liable as the alter ego of the other Defendants, nor

13  could 35.CN be liable if the Registrants were its customers (which they were not).

14          Plaintiffs also now assert that 35.CN is liable under a direct participant theory.

15  However, this argument is perplexing given that no named Defendant (including 35.CN)

16  used the Domain Names or engaged in any infringement or cybersquatting through the

17  Domain Names. Rather, it is clear that Plaintiffs' claims rest upon the purported use by

18  third-party Registrants. There is simply no factual allegation (not including conclusory

19  legal claims) showing that 35.CN directly participated in any infringement or

20  cybersquatting. Thus, there is no basis for disregarding registrar immunity.

21                              **CONCLUSION**

22          Plaintiffs fail to show any extreme or unique issues warranting personal jurisdiction

23  over 35.CN, a Chinese company, based on alter ego liability; and Plaintiffs fail to state

24  any valid claim against Defendants (two registrars and a Privacy Service) for thirty-five

25  Domain Names registered (and not necessarily used) by third parties.

26          For all of the reasons set forth in the moving papers and this reply, and based on

27  the extensive record, the Court should dismiss the SAC in its entirety.

28  //

Case No. 3:19-cv-07071-SI                    15        **DEFENDANT'S REPLY ISO MTN TO DISMISS**

1   Respectfully Submitted,

2   Dated: November 9, 2021          **KRONENBERGER ROSENFELD, LLP**

3

4                                    By:   s/ Karl S. Kronenberger
                                              Karl S. Kronenberger
5
                                     Attorneys for Defendant Xiamen 35.com
6                                    Technology Co., Ltd.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:19-cv-07071-SI                 16          **DEFENDANT'S REPLY ISO MTN TO DISMISS**