Perry J. Narancic, SBN 206820
LEXANALYTICA, PC
3000 El  Camino Real
Bldg. 4, Suite 200
Palo Alto, CA  94306
www.lexanalytica.com
pjn@lexanalytica.com
Tel: 650-655-2800

Attorneys for Defendants
ONLINENIC, INC. and DOMAIN ID SHEILD SERVICE
CO., LIMITED

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC<br><br>        Plaintiffs,<br>    v.<br><br>ONLINENIC, INC. and DOMAIN ID SHIELD SERVICE CO., LIMITED and XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD.<br><br>        Defendants. | Case No. 19-CV-07071-SI<br><br>**DEFENDANTS' OPPOSITION PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' ANSWEER AND FOR DEFAULT JUDGMENT [ECF 176].** |

## I.    <u>INTRODUCTION</u>

Plaintiffs' Motion to Strike Defendants' Answer and For Default Judgment  at ECF 176 ("Default Motion") should be denied for one over-riding reason - OnlineNIC, Inc. ("OnlineNIC") and Domain ID Shield Service Co., Limited ("ID Shield") (together, the "Defendants") have produced volumes of discovery responses that make manifest that they did not "register, traffic in or use" the Infringing Domain Names as alleged in the Second Amended Complaint in this case. ECF 109.  As Plaintiffs themselves note, due process requires that there "exist a relationship between the sanctioned party's misconduct and the matters in controversy" and that Courts consider the federal policy of deciding cases on their merits. See Default Motion, p.12, quoting *Anheuser-Busch, Inc. v.*

- 1-

Facebook, Inc. v. OnlineNIC, Inc.                                    Case No. 19-cv-7071-SI
Defendants' Opposition to Plaintiffs' Motion at ECF 176 re Default

*Nat. Beverage Distributors*, 69 F. 3d 337, 348 (9th Cir. 1995). Since Defendants can prove based on a preponderance of the evidence that they are not cybersquatters, none of the discovery deficiencies identified by Plaintiffs justify the sanctions being sought. As conceded by Plaintiffs themselves (Default Motion, p. 12:12-23), there is a public policy favoring disposition of cases on their merits – and this case is one that should reach a jury.

The Default Motion relies heavily on the report of the Special Master in this case, at ECF 115 ("Report"). It is not disputed that the Special Master identified some troubling issues in Defendants' production of the Kayako Database (described further below). But it is also not disputed, even by Plaintiffs, that -while Special Master concluded that huge amounts of data had been deleted – Special Master included in this finding masses of data that were deleted *before* the litigation in this case even commenced. See Default Motion, p. 1:14-15, quoting the Report at p. 39: "Defendants began deleting data *before* the complaint was filed, continued deleting responsive records during the discovery process, and even after Special Master's appointment." (emphasis added). This begs the question – how can pre-litigation conduct constitute "spoliation"? It is also not disputed that, of the data that Special Master did identify as having been deleted, he formed no conclusion as to *when* that data was deleted: "Admittedly, for many of the deleted records, Special Master is unable to determine *when* they were deleted." (emphasis added). Report, p. 40:1-2.

In view of the foregoing, due process and the federal policy of adjudicating cases on their merits militates against imposing sanctions against Defendants. But in recognition of some of the issues that Special Master did identify in his report, Defendants are prepared to accept as a sanction a jury instruction that reverses the onus of proof – namely, that instead of Plaintiff's carrying the burden to show Defendants "registered, trafficked or used" the Infringing Domain Names, the onus may be placed on Defendants that they did not do so.

## II.    **CASE HISTORY**

Plaintiffs filed this case on October 28, 2019. ECF 1. The original complaint alleged that defendants OnlineNIC, Inc. and Domain ID Shield Service Co., Ltd. registered, used or trafficked in a number of "Infringing Domain Names" belonging to plaintiffs. Complaint, ¶ 37. OnlineNIC is a domain name registrar and is accredited by the Internet Corporation for Assigned Names and

- 2 -

Facebook, Inc. v. OnlineNIC, Inc.                                                    Case No. 19-cv-7071-SI
Defendants' Opposition to Plaintiffs' Motion at ECF 176 re Default

Numbers ("ICANN"). A domain name registrar processes domain name registration applications from "registrants" and submits the transaction information to a central registry. The registration information (such as the name and contact information for the registrant) is maintained by the registrar, and some of this information is made available publicly on a database called "WHOIS". Some registrants do not want their information publicly available, and so many registrars (including OnlineNIC) own privacy services that allow the name of the privacy company to be used as the "registrant" in the WHOIS database. ID Shield is OnlineNIC's privacy service. [1]Plaintiffs claim, among other things, that ID Shield was the "registrant" of the Infringing Domain Names because it was ID Shield's name that appeared as "registrant" and therefore ID Shield (and OnlineNIC as ID Shield's alleged *alter ego*) is liable for all acts related to such domains names, including cybersquatting. See e.g. Default Motion, p. 3.

During the course of discovery, OnlineNIC admitted it had problems in making some of its productions. See e.g. ECF 61 (explaining the challenges in working with large databases, using legacy products and translation issues). To address these issues, the Defendants voluntarily agreed to the appointment of a Special Master to examine the productions to date. See ECF 65. The Special Master issued a report that was adverse OnlineNIC Defendants on July 12, 2021 at ECF 115. Plaintiffs rely almost exclusively on the Special Master Report as a basis for their sanctions claims – but plaintiffs never did any significant analysis on *how* the allegedly spoliated evidence impacted their claims on the Infringing Domain Names.

During the course of discovery, OnlineNIC stated that it had an outsourcing agreement with a company called Xiamen 35.com Technology Co., Ltd ("35.CN"). On March 31, 2021, plaintiffs filed an amended complaint, alleging that 35.CN was the *alter ego* of OnlineNIC and ID Shield. ECF 84. In July 2021,OnlineNIC and ID Shield stated that they could no longer afford to defend the case, and they filed a Statement of Non-Opposition to the Default Motion. ECF 120.

---

[1]  35.CN, sued by plaintiffs as an alter ego of defendants, has filed a motion to dismiss (ECF 135, and Reply at ECF 199). Defendants have joined in that motion.  ECF 184. Defendants adopt herein the arguments of 35.CN in that Motion, including arguments that ID Shield is a "privacy service " and not a "proxy service".

Because Defendants could no longer afford to defend the case, they also filed a notice that they would "not file formal objections" to the Report. ECF 126.

On September 28, 2021, 35.CN filed its motion to dismiss (ECF 174). After 35.CN was served in this case, Defendants filed a motion to withdraw its Statement of Non-Opposition on October 15, 2021 (ECF 185). Also on October 15, 2021, OnlineNIC and ID Shield joined in 35.CN's Motion to Dismiss. ECF 184. Defendants' motion to withdraw its statement of non-opposition was granted by the court at ECF 198. To the extent that the Default Motion relies on the Report, Defendants take the position that the granting of Defendant's withdrawal motion at ECF 198 also permits Defendants to challenge the reasoning and conclusions of the Report. Accordingly, Defendants incorporate herein by reference the accompanying declaration of Leon Freeman which sets out Defendants' explanations for some of the findings in the Report.

**III.    ARGUMENT**

    **A.    Legal Standard**

Plaintiffs seek a default judgment based on the Report's conclusion that Defendants deleted evidence and did not comply with the Court's discovery orders. Plaintiffs base their arguments on Fed. R. Civ. P. 37, and the inherent jurisdiction of the Court to grant such relief.

Under Rule 37(e), where information has not been preserved, and cannot be restored or replaced through additional discovery, the court may: (a) order measures "no greater than necessary to cure prejudice" to the other party, or (b) where there is a finding that a "party acted with intent to deprive another party of the information", enter a default judgment. Under their inherent authority, Courts likewise have authority to sanction spoliation by entering default where there is a finding of willfulness, fault or bad faith. *Leon v. IDX Systems Corp*., 464 F. 3d 951,958 (9th Cir. 2006). Thus, under both the Federal Rules and under the Court's inherent jurisdiction, it is generally necessary that a moving party show that the non-movant has acted with some intent to deprive the movant of something.

**B.    Plaintiffs have not shown bad faith because there is no showing of when files were deleted.**

While Plaintiff's heavily rely on the Report, their Achilles Heel is the Special Master's admission that "… for many of the deleted records, Special Master is unable to determine ***when*** they were deleted." (emphasis added).  Report, p. 40:1-2.  Given this admission, the Default Motion simply does not articulate how the Special Master's conclusions support the submission that Defendants acted with intent to deprive plaintiffs of relevant data - particularly, if the Special Master's analysis was based on files which were deleted ***before*** this litigation commenced. See Default Motion, p. 1:14-15, quoting the Report at p. 39.

**C.    Plaintiffs have not shown bad faith because they have not shown that the allegedly deleted data was crucially relevant to their case.**

As noted above, due process requires that there "exist a relationship between the sanctioned party's misconduct and the matters in controversy". See Default Motion, p.12, quoting *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F. 3d 337, 348 (9th Cir. 1995).

Plaintiffs rely on the Special Master Report to show that they have been prejudiced by alleged spoliation and are therefore entitled to terminating sanctions. For instance, Plaintiffs repeatedly rely on the Special Master's conclusion that "Plaintiffs suffered irreparable harm", but except for a cursory 7-line analysis at page 10 of the Default Motion (at lines 9-16), plaintiffs never tie what was allegedly spoliated with the Infringing Domain Names. Before imposing a harsh sanction for spoliation, the Court must be able gauge the relevance of the data that was destroyed and the prejudice to the other party. See e.g. *Garcia v. City of Santa Clara,* 2017 U.S. Dist. LEXIS 59873 at * 9-10 (N.D. Cal. April 19, 2017) ( "...the record is simply not clear as to whether any relevant, useful evidence was spoliated; or, at least not sufficiently clear that the Court can gauge relevance and prejudice in order to fairly levy a sanction as harsh as that being sought by plaintiff."). (" *See also Fed. R. Civ. P. 37(e)* advisory  committee's note to 2015 amendment ("[T]he severe measures authorized by [*Rule 37(e)(2)*] should not be used when the information lost was relatively unimportant or lesser measures such as those specified in *subdivision (e)(1)* would be sufficient to redress the loss.").

In this case, Plaintiffs fail to articulate what they think was deleted or how that information was relevant to their case. For instance, at Default Motion, p. 9:19-20, Plaintiffs argue that the missing data could have related to "other legal complaints" – i.e. maters **not** related to the Infringing Domain Names.

> Defendants permanently deleted files that would have shown any notices or other legal complaints received by Defendants concerning cybersquatting, and would have allowed Plaintiffs to prove that Defendants failed to take action upon receipt of such notices.

**D.    Given Defendants' defenses and the discovery produced so far, entry of default judgment would violate the Federal policy of deciding cases on their merits**

As noted in *Pena v. Seguros La Comercial, SA*, 770 F. 2d 81, 814 (9th Cir. 1985), "[w]henever it is reasonably possible, cases should be decided upon their merits". In this case, for the reasons set out in 35.CN's motion to dismiss, which are adopted herein by Defendants, Defendants should not be subject to default because they did not "register, traffic in or use" any Infringing Doman Names.

In addition, Defendants have produced a mountain of evidence showing that they did not register, traffic in or use the Infringing Domain Names. By way of example, Defendants have produced exculpatory documents that show that third parties registered the domains in question. At ECF 146, 146-2, and 146-3, OnlineNIC sent an indemnification demand to an OnlineNIC customer called "Lockspin" because it had registered "trollfacebook.com", one of the allegedly Infringing Domain Names. Lockspin wrote back and admitted that it had registered the domain (at ECF 146-3):

[next page]

| | |
|---|---|
| **From:** | Lockspin UK <info@lockspin.com> |
| **Sent:** | Wednesday, March 31, 2021 8:07:07 AM |
| **To:** | Perry J. Narancic <pjn@lexanalytica.com> |
| **Subject:** | Re: Indemnification Demand from OnlineNIC |

Dear Mr. Narancic,
Thank you for finally contacting me about the matter of missing domain
names. I only wish that Onlinenic had contacted me first, back in 2019,
before Facebook sued your client for allowing criminals to use the
Onlinenic services for registering phishing domains and domain names
suggesting a promise to provide hacking services against Facebook. Had
they responded to Facebook's emails or forwarded their original
complaint, I could have explained the misunderstanding and if they still
insisted on an allegation of "dilution" I could have worked with them.
Instead of going into further details about how Trollface (from the
domain TrollfaceBook.com) is an internet meme in the public domain and
has nothing to do with Facebook other than the assumptions of their
lawyers, or presenting examples like MiniKeys not being a trademark
infringement on Nike, AppLexicon not being a trademark infringement on
Apple, and so on, I will cut to the chase.

As set forth in the accompanying declaration of Leon Freeman ("Freeman Decl."),

paragraphs 15 – 21, Defendants produced a large amount of exculpatory data to Plaintiffs during

discovery.  This included emails from OnlineNIC to Plaintiffs in response to Plaintiffs' request for

disclosure of true registrant information. However, Plaintiffs never replied to these emails - leading

Defendants to think that the emails were spam. Freeman Decl., Ex. A, para.15.   Here is one

example relating to the domain" buyinstagramfans.com":

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Hello,

This is Ben from OnlineNIC.

We try to contact your end for many times, is there anyone can response and discuss with me on this issue. So that we can help you further.

Best Regards,

**Ben Barnes**
**OnlineNIC Customer Support**
**E-mail:  ben@onlinenic.com**
**Website: www.onlinenic.com**

From: whoisrequest
Date: 2018-08-14 21:46
To: abuse
Subject: Nonpublic registrant data for BUYINSTAGRAMFANS.COM [CASE: zHtrhxe2gT]
To OnlineNIC, Inc.
I write on behalf of Facebook [and its affiliated companies] to request a single domain registration record as identified below.[1] We have become aware that the below-identified domain name misuses one or more of the following trademarks held by Facebook [and/or its affiliated companies]:

| Trademark | US Trademark Reg. # | EU Trademark Reg. # |
|---|---|---|
| OCULUS RIFT | 4863585 1A | 012983854 EUTM |
| OCULUS | 4891157 1A | 012983854 |
| OCULUS VR | 4424543 1A | 012983854 EUTM |
| INSTAGRAM | 4146057 1A | 012111746 EUTM |
| INSTAGRAM | 4170675 1A | 012111746 EUTM |
| FB | 4659777 1A | 8981383 EUTM |
| FACEBOOK | 4643774 1A | 005722392 EUTM |

The fame and recognition of the above marks entitle Facebook to broad legal protection globally.
In order to investigate and prevent intellectual property infringement and contact infringing parties and relevant service providers, we request information regarding the following domain name:

- buyinstagramfans.com

23    Defendants also produced to Plaintiffs in discovery the Registration Database information

24    showing the names and account information for the registrants of the Infringing Domain Names

25    and the associated resellers.  Freeman Decl., Ex. B.

26    Attached to the Freeman Declaration as <u>Exhibit C</u> is a true and correct copy of a spreadsheet

27    (taken from the Registration Database) containing the IP addresses from which accused domains

28

1  registrations were made. This data was produced by Defendants in discovery. None of these IP

2  addresses are associated with either Defendant. Freeman Decl., para. 18.

3       Attached to the Freeman Declaration as <u>Exhibit D</u> are true and correct copies of an excel

4  spreadsheet that contains payment information from the Registration Database for resellers

5  associated with the Infringing Domain Names. This payment data shows that the resellers in

6  question are not mere "aliases" of OnlineNIC, but bona fide third party resellers. This data was

7  produced by Defendants in discovery. Freeman Decl., para. 19.

8       During discovery OnlineNIC produced emails and communications (sometimes in the form

9  of "support tickets") between Defendants and the resellers or registrants at issue in this case.

10 Attached to the Freeman Declaration are small samples of such communications. Attached <u>Exhibit</u>

11 <u>E</u> is a true and correct copy of these sample communications with reseller number 437223.

12 <u>Attached F</u> is a true and correct copy of these sample communications with reseller number 511846.

13 <u>Attached G</u> is a true and correct copy of these sample communications with reseller number

14 550388. <u>Attached H</u> is a true and correct copy of these sample communications with reseller

15 number 551607. Attached <u>Exhibit  I</u> is a true and correct copy of these sample communications

16 with reseller number 563809. Attached <u>Exhibt J</u> is a true and correct copy of these sample

17 communications with reseller number 572271. Attached <u>Exhibit K</u> is a true and correct copy of

18 these sample communications with reseller number 575192. These communications show that the

19 resellers in question are not mere "aliases" of OnlineNIC, but bona fide third party resellers. All of

20 the foregoing exhibits were produced by Defendants to Plaintiffs in discovery. Freeman Decl., para.

21 19.

22

23 **IV.    <u>CONCLUSION</u>**

24      For all the foregoing reasons, Defendants respectfully request that the Default Motion be

25 denied. In the event that the Court deems it appropriate to issue a sanction, Defendants are

26 prepared to accept as a sanction a jury instruction that reverses the onus of proof – namely, that

27 instead of Plaintiffs carrying the burden to show Defendants "registered, trafficked or used" the

28 Infringing Domain Names, the onus may be placed on Defendants that they did not do so. If the

1   Court is inclined to issue monetary sanctions, Defendants respectfully request that such sanctions

2   be payable at the conclusion of any trial.

3
                                            Respectfully Submitted,
4
    DATED:  November 23, 2021               LEXANALYTICA, PC
5

6                                           By:

7
                                            _____
8                                           Attorneys for Defendants
                                            ONLINENIC, INC. and DOMAIN ID SHEILD
9                                           SERVICE CO., LIMITED

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Facebook, Inc. v. OnlineNIC, Inc.                                           Case No. 19-cv-7071-SI
Defendants' Opposition to Plaintiffs' Motion at ECF 176 re Default