Perry J. Narancic, SBN 206820
LEXANALYTICA, PC
3000 El Camino Real
Bldg. 4, Suite 200
Palo Alto, CA 94306
www.lexanalytica.com
pjn@lexanalytica.com
Tel: 650-655-2800

Attorneys for Defendants
ONLINENIC, INC. and DOMAIN ID SHIELD SERVICE
CO., LIMITED

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC<br><br>              Plaintiffs,<br><br>v.<br><br>ONLINENIC, INC. and DOMAIN ID SHIELD SERVICE CO., LIMITED.<br><br>          Defendants. | Case No. 19-CV-07071-SI<br><br>**DECLARATION OF LEON FREEMAN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE AND FOR DEFAULT JUDGMENT [ECF 176]** |

I, Leon Freeman, declare as follows:

1.      I am a manager at OnlineNIC, Inc. ("OnlineNIC) and Domain ID Shield Service Co., Limited ("ID Shield") (together, the "Defendants"), and I am authorized to make this declaration.  I have personal knowledge of the facts set forth in this declaration, and if called as a witness I would testify to the facts contained in this declaration.

2.      I was the primary person at OnlineNIC that interfaced with the Special Master in this case. I had numerous "screen-sharing" Skype calls with the Special Master while he was preparing his report ("Report", filed at ECF 115) during which time I opened various files and database directories at his direction.  I never refused to show any documents, files or any other material that

- 1-

Facebook, Inc. v. OnlineNIC, Inc.                                                    Case No. 19-cv-7071-SVK
Declaration of Leon Freeman ISO Defendants' Opposition to Plaintiffs' Motion at ECF 176 re Default

the Special Master wished to see. I followed OnlineNIC's counsel directions to provide full and unfettered access to anything that the Special Master wanted to see.

3.      I was also the point person for collecting materials that were requested by the Special Master. During this process, OnlineNIC never intentionally deleted any data with the intent of hiding inculpatory information. While I now recognize that OnlineNIC's information technology practices were not "best-practices", many instances of data deletion can be explained as further set forth below.

4.      I also oversaw all data collection efforts as part of the discovery in this case, including the culling of the database that maintains all registration data (the "Registration Database"). I also collected all unstructured data, such as support tickets in the support ticket database (the "Kayako Database") and emails. Throughout this process of responding to discovery and responding to the Special Master, some errors may have been made because of inattentiveness or sloppiness. I also attribute some errors to the fact that I did not fully understand all the directions that were being given to me, particularly because I am a native Chinese-language speaker and do not have full command of the English language. Notwithstanding the foregoing, OnlineNIC acknowledges that there were errors which should not have occurred.

5.      OnlineNIC does not dispute that certain database records were deleted from the production Kayako Database after the complaint in this case was filed on October 28, 2019 (the "Complaint Date"). The Kayako support ticket database is a legacy product that is no longer supported. Over the course of years of operation, the database became unwieldy and stuffed with spam and voluminous, old support data - resulting in a very slow database which was difficult to search and manage. To help address these issues, OnlineNIC regularly deleted huge amounts of spam that had been sent through the support system, which included torrents of junk sent to OnlineNIC's public facing support email. The spam included content with unreadable characters, which would further slow down the database. Thus, even before the Complaint Date, OnlineNIC had the practice of deleting huge amounts of spam and old content from the Kayako Database.

6.      Plaintiffs began propounding discovery in early 2020. In order to deliver responses to Plaintiffs' numerous discovery requests, Defendants conducted searches against the production

Kayako Database. OnlineNIC did not set up a parallel Kayako environment for conducting discovery due to the prohibitive cost, time and difficulty of doing so – particularly where the underlying Kayako software was no longer being supported.

7. In the course of preparing our discovery responses, OnlineNIC had to increase database performance in order to execute queries efficiently. Consequently, OnlineNIC created a temporary table for the purpose of replicating some records from the production database into a temporary location. This temporary table, called "temp_data" was created in March 2021, and is referenced at Exhibit 23 of the Report.

8. After the records were replicated, OnlineNIC went back to optimize the production database by deleting some records. The records that were deleted from the production database included unreadable characters, or records which otherwise caused inefficiency (the "Hang-up Records"). By replicating and deleting the Hang-up Records, Defendants were able to more efficiently conduct discovery searches in the production database.  The screenshot below, taken from "temp_data", illustrates the problems with the Hang-up Records, including unreadable characters:



9. Given the foregoing, it is not surprising that there are differences between the first production of the Kayako Database on July 15, 2020 and subsequent productions. Moreover, when records were directly deleted in the Kayako Database (as opposed to using the Kayako Application interface), some so-called "orphan" records were created.

10. When a ticket was deleted through the Kayako Application interface, all related records were automatically deleted as well.  For example, if Ticket #123456 was deleted from the

production database using the Kayako Application, all the posts associated with that ticket were automatically deleted as well. Thus, the huge numbers of files shown as having been deleted in the Report are somewhat misleading because a single deletion command could result in the automatic deletion of many more records.  The screenshot below shows the relevant scripts from the Kayako Application:



11.    The Report, at page 19, lns. 9-21, states that Defendants hid back up files. However, it appears from creation dates in the screenshots below that the referenced files were actually created specifically for the Special Master – and that they were not regularly-generated "back-ups":

12.    The Report concludes that Defendants used PHP and SQL deletion scripts to delete records (p. 28). However, OnlineNIC not able to verify that any of the 28 PHP scripts contained any deletion language. See command "findstr del *.*" result below:



13.    These scripts were all created specifically for the purpose of responding to discovery in this case, as shown in the below creation dates:

[see next page]

Facebook, Inc. v. OnlineNIC, Inc.                                          Case No. 19-cv-7071-SVK
Declaration of Leon Freeman ISO Defendants' Opposition to Plaintiffs' Motion at ECF 176 re Default

| 名称 | 创建日期 |
|---|---|
| zenghy_sql_statement.txt | 2021/3/25 18:04 |
| zenghy_evgeny.rekling_tickets.php | 2020/10/21 10:18 |
| zenghy_tuananh1080_tickets.php | 2020/5/13 16:09 |
| zenghy_tickets_20201009.php | 2020/10/9 10:12 |
| zenghy_yamakuqi_tickets.php | 2020/5/12 15:41 |
| zenghy_2017_until_now_tickets.php | 2020/5/12 15:21 |
| zenghy_attachment_copy_file.php | 2020/9/13 16:18 |
| zenghy_all_domain_tickets.php | 2020/7/3 16:58 |
| zenghy_all_domain_tickets - v1.php | 2020/7/3 16:58 |
| zenghy_xKVRYEH.hfndY_tickets.php | 2020/6/12 21:58 |
| zenghy_2017_until_now_keyword_tickets1.php | 2020/6/12 21:59 |
| zenghy_2017_until_now_keyword_tickets2.php | 2020/6/12 21:58 |
| zenghy_2017_until_now_keyword_tickets6.php | 2020/6/12 21:59 |
| zenghy_2017_until_now_keyword_tickets7.php | 2020/6/12 21:58 |
| zenghy_tenmiendaduocdangky_tickets.php | 2020/6/20 15:32 |
| zenghy_2017_until_now_keyword_tickets5.php | 2020/6/12 21:58 |
| zenghy_2017_until_now_keyword_tickets4.php | 2020/6/12 21:58 |
| zenghy_2017_until_now_keyword_tickets3.php | 2020/6/12 17:51 |
| zenghy_2017_until_now_complaints@onlinenic.com_tickets.php | 2020/6/12 15:32 |
| zenghy_2017_until_now_abuse@onlinenic.com_tickets.php | 2020/6/12 15:27 |
| zenghy_admin_tickets.php | 2020/5/13 16:10 |
| zenghy_zvedenyuk.eugene_tickets.php | 2020/5/13 16:11 |
| zenghy_domain_tickets.php | 2020/5/13 16:10 |
| zenghy_clippoo18.xxx_tickets.php | 2020/5/13 16:07 |
| zenghy_yamaguchi.takashi8_tickets.php | 2020/5/13 16:12 |
| zenghy_jenryhas_tickets.php | 2020/5/13 16:04 |
| get_domain.php | 2020/1/28 15:45 |
| get_post_info.php | 2020/1/28 15:45 |

14.    Likewise, the SQL deletion "script" referenced in the Report was merely a summary of steps taken by Defendants' database operator in executing commands (through a database client application) to respond to discovery- which employed the following steps:

a. Defendants' technician first imported an original ticket database into the database on server 173.255.221.136.

b.  Defendants used the search terms provided by Plaintiffs to search table swtickets, find the relevant ticketid, and then record the ticketid.

c.  Defendants used the ticketid to find its associating ticketmaskid, oldticketmaskid, ticketpostid.

15.     Attached to this Declaration as <u>Exhibit A</u> are true and correct copies of emails that were sent by OnlineNIC in response to communications received from Plaintiffs.  These communications from Plaintiffs sought disclosure of the identity of certain registrants, and it was Defendants' standard procedure to verify if such requests were authentic. When Defendants responded to these communications, Defendants never received a response to any of these emails, and thus, Defendants assumed that the original letters or emails were spam.   These emails were produced by Defendants in discovery.

16.     Attached to this Declaration as <u>Exhibit B</u> are true and correct copies of printouts from an Excel file containing the registration data from the OnlineNIC Registration Database for the 35 alleged Infringing Domain Names identified in the Second Amended Complaint in this case. This information shows who the "registrant" was, and who the corresponding OnlineNIC reseller was.   This data was produced by Defendants in discovery.

17.     For greater clarity, OnlineNIC's principal customers are "resellers" i.e. companies who market and sell domain name registration services, but who use the OnlineNIC platform to conduct such registrations because they themselves do not have ICANN accreditations.  These resellers can access the OnlineNIC platform in various ways, including through use of API's.

18.     When a third party registers a domain using the OnlineNIC platform, the Registration Database records the IP address from which the registration was carried out.  Attached to this Declaration as <u>Exhibit C</u> is a true and correct copy of a spreadsheet (taken from the Registration Database) containing the IP addresses from which accused domains registrations were made.  This data was produced by Defendants in discovery. None of these IP addresses are associated with either Defendant.

19.     Attached to this Declaration as <u>Exhibit D</u> are true and correct copies of an excel spreadsheet that contains payment information from the Registration Database for resellers associated with the Infringing Domain Names.  This payment data shows that the resellers in question are not mere "aliases" of OnlineNIC, but bona fide third party resellers. This data was produced by Defendants in discovery.

20.     During discovery OnlineNIC produced emails and communications (sometimes in the form of "support tickets") between Defendants and the resellers or registrants at issue in this case.  Attached hereto are small samples of such communications.  Attached Exhibit E is a true and correct copy of these sample communications with reseller number 437223.  Attached F is a true and correct copy of these sample communications with reseller number 511846.  Attached G is a true and correct copy of these sample communications with reseller number 550388.  Attached H is a true and correct copy of these sample communications with reseller number 551607.  Attached Exhibit  I is a true and correct copy of these sample communications with reseller number 563809. Attached Exhibt J is a true and correct copy of these sample communications with reseller number 572271. Attached Exhibit K is a true and correct copy of these sample communications with reseller number 575192.  These communications show that the resellers in question are not mere "aliases" of OnlineNIC, but bona fide third party resellers. All of the foregoing exhibits were produced by Defendants to Plaintiffs in discovery.

21.     As shown in Exhibits B-K, Defendants' resellers are not used by Defendants as aliases.  Moreover, Defendants did not register, use or traffic in any of the alleged Infringing Domain Names.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed at Xiamen, China on November 23, 2021.

 /s/ Leon Freeman

Facebook, Inc. v. OnlineNIC, Inc.                                                    Case No. 19-cv-7071-SVK
Declaration of Leon Freeman ISO Defendants' Opposition to Plaintiffs' Motion at ECF 176 re Default

1
2
3
4
5
6

**ATTESTATION**

7

      Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that all other signatories listed and on whose behalf this filing is made concur in the filing of this document and

8

have granted permission to use an electronic signature.

        /s/ Perry J. Narancic

9
10

Perry J. Narancic, SBN 206820
LEXANALYTICA, PC

11

3000 El Camino Real
 Bldg. 4, Suite 200

12

Palo Alto, CA  94306
www.lexanalytica.com

13

pjn@lexanalytica.com
Tel: 650-655-2800

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Facebook, Inc. v. OnlineNIC, Inc.                                                    Case No. 19-cv-7071-SVK
Declaration of Leon Freeman ISO Defendants' Opposition to Plaintiffs' Motion at ECF 176 re Default