UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FACEBOOK, INC., et al.,

                Plaintiffs,

      v.

ONLINENIC INC, et al.,

                Defendants.

Case No. 19-cv-07071-SI

**ORDER DENYING XIAMEN 35.COM TECHNOLOGY CO., LTD.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Re: Dkt. No. 174, 195, 190

Xiamen 35.com Technology Co., LTD ("35.CN") brings the instant motion to dismiss plaintiffs' second amended complaint ("SAC"). Dkt. No. 174. Defendants OnlineNIC Inc. ("OnlineNIC") and Domain ID Shield Service Co., Limited ("ID Shield") seek to join 35.CN's motion. Dkt. No. 184 (Notice of Joinder). In response, plaintiffs filed a motion to strike the joinder. Dkt. No. 195. The Court previously found this matter appropriate for resolution without oral argument and vacated the December 3, 2021 hearing. Having considered the papers and arguments made, the Court hereby (1) GRANTS the motion to strike and (2) DENIES the motion to dismiss in its entirety.

## BACKGROUND

The SAC alleges defendant OnlineNIC, a California corporation with its principal place of business in San Leandro, California, is a domain name registrar that sells, registers and transfers domain names for third parties. Dkt. No. 109 ¶ 9 (SAC).

The SAC alleges defendant ID Shield, is a Hong Kong, China, limited company that provides a type of domain name privacy service, specifically a proxy service, for OnlineNIC's customers. *Id.* ¶ at 10. ID Shield registers domain names, as the registrant, and licenses these domain names to OnlineNIC's customers. *Id.*

The SAC alleges defendant 35.CN. is a corporation registered under the laws of Xiamen, Fujian Province, that sells, registers and transfers domain names for third parties. *Id.* ¶ 11. The

1   SAC alleges 35.CN controls, manages, and runs the operations of OnlineNIC and ID Shield.  *Id.*

2        The SAC alleges plaintiffs, well known social networking sites Facebook and Instagram,

3   own various well-established trademarks.  *Id.* ¶ 18-25.  Plaintiffs allege

> defendants, as registrants and as alter egos of each other, have registered domain
> names (such as hackingfacebook.net) that have been used for malicious activity,
> including phishing and hosting websites that purported to sell hacking tools. These
> domain names also have infringed on Plaintiffs' trademarks. Plaintiffs have sent
> multiple notices to Defendants providing evidence of domain name abuse and
> infringement. Defendants did not timely provide the information requested in any of
> Plaintiffs' notices.
>
> Plaintiffs seek relief from Defendants, as alter egos of each other, who have
> registered (as the registrant), used, and trafficked in domain names that include
> Plaintiffs' trademarks.

*Id.* ¶ 5-6

     The SAC further alleges:

> 1. Cybercrime is highly dependent on registered domain names, which are used to
> send spear phishing emails, operate malware, and engage in other types of online
> abuse…
>
> 2. Cybercriminals often rely on domain name privacy registration services, and
> specifically proxy services, to hide their ownership and control of malicious domains
> from the public.  In exchange for a fee, proxy services conceal the domain name
> registrant's identity as listed on publicly available domain name registration records.
> These proxy services, like the services offered by Defendants, are increasingly used
> by cybercriminals as they cycle through domain names in order to conceal their
> identity and evade detection.
>
> 3. 35.CN is an ICANN[1]-accredited domain name registrar. 35.CN's alter ego,
> OnlineNIC, also is an ICANN-accredited domain name registrar. 35.CN's and
> OnlineNIC's alter ego, ID Shield, provides a type of domain name privacy service,
> … According to one internet security group, domain names registered by OnlineNIC
> were reported for abuse in approximately 40,000 instances.  In 2019, one internet
> security group reported that OnlineNIC was one of the top 20 domain name registrars
> used for abuse.
>
> 4. Defendants have repeatedly failed to take appropriate "steps to investigate and
> respond appropriately to any reports of abuse" as required by the RAA and have
> failed to provide abusive domain name registrants' names and contact information to
> victims of online abuse as required under the RAA.

---

[1] The Internet Corporation for Assigned Names and Numbers ("ICANN") is a California
nonprofit whose mission is to "ensure the stable and secure operation of the Internet's unique
identifier systems" by coordinating "the allocation and assignment of names in the … Domain Name
System[.]"  Bylaws for Internet Corporation for Assigned Names and Numbers, (as amended
November 28, 2019), https://www.icann.org/resources/pages/governance/bylaws-en/#article1

United States District Court
Northern District of California

Dkt. No. 109 ¶¶ 1-4 (SAC).

The SAC alleges OnlineNIC is responsible for the actions of ID Shield because ID Shield is an alter ego of OnlineNIC. *Id*. ¶¶ 26-43. Specifically, plaintiffs allege ID Shield (1) has no bank accounts or assets and is undercapitalized, (2) has no employees, and (3) does not conduct regular shareholder meetings and does not maintain corporate records. *Id*. ¶¶ 30-32. Further, OnlineNIC allegedly exercises near total control over ID Shield including the operations, policy decisions, which agreements ID Shield enters into, pays all of ID Shield's expenses, and collects all of ID Shield's revenue. *Id*. ¶¶ 33-38. Carrie Yu allegedly owns ID Shield for the benefit of OnlineNIC and is a director and officer of both companies. *Id*. ¶¶ 39-40.

The SAC alleges 35.CN is responsible for the actions of OnlineNIC and ID Shield because OnlineNIC and ID Shield are alter egos of 35.CN and 35.CN is a direct participant in their actions. *Id*. ¶¶ 44-55. In support thereof, plaintiffs allege, (1) Carrie Yu is the sole director of OnlineNIC and an employee of 35.CN, (2) 35.CN's employees carry out all of ID Shield and OnlineNIC's day to day operations including all technical and customer support, (3) 35.CN share the same domain name registration database used to operate the registrar business for both 35.CN and OnlineNIC, (4) the incorporator and founding president of OnlineNIC is the controlling shareholder of 35.CN. *Id*.

Based on these allegations, plaintiffs conclude (1) ID Shield is a de facto subsidiary of OnlineNIC and (2) ID Shield and OnlineNIC are de facto subsidiaries of 35.CN. *Id*. ¶¶ 43 and 55.

The SAC further alleges defendants registered, used, or trafficked in at least 35 domain names identical or confusingly similar to plaintiffs' trademarks, including: facebookphysician.com, login-1nstagram.com, and www-instagram.net. *Id*. ¶ 56. ID Shield is allegedly the registrant for each of the infringing domain names. *Id*. ¶ 57.

The SAC alleges OnlineNIC has a storied history of "cybersquatting on famous and distinctive trademarks" and lists a myriad of allegedly successful lawsuits against OnlineNIC for such brought by well-known companies such as Verizon, Yahoo, and Microsoft. *Id*. ¶¶ 60-63.

Plaintiffs' representatives sent at least five notices to ID Shield evidencing infringing domain names and requesting ID Shield disclose the identities of the registrants. *Id*. ¶ 74. ID Shield allegedly failed to do so. *Id*. ¶ 75.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**PROCEDURAL HISTORY**

Although this case is still at the pleading stage, it was originally filed in 2019 by plaintiffs against only ID Shield and Online NIC. Dkt. No. 1 (Original Complaint). ID Shield and OnlineNIC did not move to dismiss the action; instead they filed an answer on January 6, 2020. Over a year later, on February 25, 2021, after what appears to be extensive and contentious discovery, plaintiffs sought leave to file their first amended complaint (FAC) to add 35.CN as a defendant. Judge van Keulen granted plaintiffs' motion on March 24, 2021. Dkt. No. 81. Again, ID Shield and OnlineNIC filed an answer. Dkt. No. 88. On June 1, 2021, Judge van Keulen filed an order granting the parties' stipulation to plaintiffs filing the operative SAC and deeming ID Shield and Online NIC's answer to the FAC as their operative responsive pleading. Dkt. No. 108. The SAC was filed later that day on June 1, 2021. Dkt. No. 109 (SAC). The SAC alleges four causes of action against all defendants for:

(1) **Cybersquatting** on Plaintiffs' Trademarks Under 15 U.S.C. § 1125(d) (the Anticybersquatting Consumer Protection Act ("ACPA"));

(2) Trademark and Service Mark **Infringement** of Plaintiffs' Trademarks Under 15 U.S.C. § 1114;

(3) Trademark and Service Mark Infringement of Plaintiffs' Trademarks and **False Designation of Origin** Under 15 U.S.C. § 1125(a); and

(4) **Dilution** of the Facebook Trademarks and Instagram Trademarks Under 15 U.S.C. § 1125(c)

Dkt. No. 109 ¶¶ 76-137 (SAC) (emphasis added).

On September 22, 2021, 35.CN declined magistrate jurisdiction and the action was reassigned to the undersigned judge. Dkt. Nos. 168 and 173. On September 28, 201, 35.CN filed the instant motion to dismiss. Dkt. No. 174. On October 15, 2021, defendants ID Shield and OnlineNIC filed a notice of joinder in 35.CN's motion to dismiss the SAC. Dkt. No. 184. On October 29, 2021, plaintiffs filed a motion to strike the notice of joinder, arguing the deadline for ID Shield and OnlineNIC to file a Rule 12 motion had long expired. Dkt. No. 195 at 3[2] (Motion to

---

[2] For ease of reference, page number citations refer to the ECF branded number in the upper right corner of the page.

1   Strike).  No opposition was filed with respect to plaintiffs' motion to strike and the Court agrees

2   with the plaintiffs that ID Shield and OnlineNIC have long forfeited their right to bring a 12(b)(6)

3   motion.

4

5                                            **LEGAL STANDARD**

6   **I.       RULE 12(b)(2)**

7           A defendant may seek dismissal of the complaint for lack of personal jurisdiction under Fed.

8   R. Civ. P. 12(b)(2).  The plaintiff bears the burden of demonstrating the Court has jurisdiction over

9   the defendant.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  In determining

10  whether a plaintiff has met its burden, a district court may consider evidence contained in affidavits

11  and discovery materials.  *Data Disc, Inc. v. Sys. Tech.Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir.

12  1977).  However, when a district court rules on a motion to dismiss for lack of personal jurisdiction

13  without holding an evidentiary hearing, the plaintiff need only make "a prima facie showing of

14  jurisdictional facts to withstand the motion to dismiss."  *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th

15  Cir. 1995).  Where undisputed, a district court must take as true the plaintiff's version of the facts.

16  *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (citations

17  omitted).  Further, "conflicts between the facts contained in the parties' affidavits must be resolved

18  in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction

19  exists." *Id*.

20          Where there is no applicable federal statute that governs personal jurisdiction, a district court

21  may exercise personal jurisdiction over a defendant if it is permitted by the state's long-arm statute

22  and "'if the exercise of jurisdiction does not violate federal due process.'"  *Autodesk, Inc. v.*

23  *Kobayashi + Zedda Architects, Ltd.*, 191 F. Supp. 3d 1007, 1013 (N.D. Cal. 2016) (quoting

24  *PebbleBeach Co*., 453 F.3d at 1154).  California's long-arm statute allows the exercise of personal

25  jurisdiction to the fullest extent permissible under the U.S. Constitution.  *Daimler AG v. Bauman*,

26  571 U.S. 117, 125 (2014).  Therefore, a district court need only determine whether the exercise of

27  jurisdiction comports with federal due process requirements.  *Id*.

28          A court's personal jurisdiction over a particular defendant is proper either as "general" or

United States District Court
Northern District of California

5

"specific" personal jurisdiction.  *Id*. at 122.  General jurisdiction over out of state corporate defendants attaches only if their "affiliations with the State are so continuous and systemic as to render it essentially at home in the forum State."  *Id*. at 119 (internal quotations and alterations omitted); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011).

## II.    RULE 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a claim must be supported by facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In reviewing a Rule 12(b)(6) motion to dismiss, the court must assume the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor.  *Usher v. Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). But "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft*, 556 U.S. at 678.

## DISCUSSION

35.CN moves to dismiss the complaint, making three overarching arguments, namely: (1) the parties are not alter egos and therefore the Court does not have jurisdiction over 35.CN, (2) 35.CN is immune from liability as merely a registrar of domain names, and (3) plaintiffs have failed to adequately plead their causes of action against ID Shield and OnlineNIC, therefore the claims fail as to 35.CN.

*///*

United States District Court
Northern District of California

I.      **JURISDICTION**

35.CN argues the Court has neither general nor specific jurisdiction over it because (1) its place of incorporation and principal place of business are outside of California and (2) it has not purposefully directed any actives at California.  Dkt. No. 173 at 25.

Plaintiffs oppose, arguing general and specific jurisdiction are adequately plead because 35.CN's continuous relationship with OnlineNIC (a California company) amounts to purposeful availment.  Dkt. No. 190-5 at 17.  If the Court is unconvinced of either specific or general jurisdiction, plaintiffs seek leave to conduct further discovery to clarify jurisdictional issues.  Dkt. No. 190-5 at 30 (Opposition).

**General Jurisdiction**.  Plaintiffs argue general jurisdiction exists because 35.CN is an alter ego of OnlineNIC, a California company.  The alter ego inquiry is fact specific.  *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1248 (1991) at 1248.  To prove an alter ego relationship exists, a plaintiff must show: (1) such unity of interest and ownership that the two entities' separate personalities no longer exist and (2) failure to disregard their separate identities results in fraud or injustice.  *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (alterations omitted).[3]

The SAC includes extensive allegations regarding alter ego including: (1) Carrie Yu is the sole director of OnlineNIC and an employee of 35.CN, (2) 35.CN's employees carry out all of ID Shield and OnlineNIC's day to day operations including all technical and customer support, (3) 35.CN shares the same domain name registration database, used to operate the registrar business for both 35.CN and OnlineNIC, and (4) the incorporator and founding president of OnlineNIC is the controlling shareholder of 35.CN.  Dkt. No. 109 at 44-55.  While these facts are not determinative

---

[3]   In "assessing whether there is unity of interest for the purposes of alter ego liability," courts typically consider the following nine factors: [1] [T]he commingling of funds and other assets of the entities, [2] the holding out by one entity that it is liable for the debts of the other, [3] identical equitable ownership of the entities, [4] use of the same offices and employees, [5] use of one as a mere shell or conduit for the affairs of the other, [6] inadequate capitalization, [7] disregard of corporate formalities, [8] lack of segregation of corporate records, and [9] identical directors and officers.  *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 954 (N.D. Cal. 2015).  In determining whether a unity of interest exists, a court need not find that every factor is present.  *Johnson v. Serenity Transportation, Inc.*, 141 F. Supp. 3d 974, 985 (N.D. Cal. 2015); *Updateme Inc. v. Axel Springer SE*, No. 17-CV-05054-SI, 2018 WL 1184797, at *9–10 (N.D. Cal. Mar. 7, 2018).

1   of plaintiffs' alter ego theory, they raise serious questions about how the defendants are related for

2   purposes of surviving a motion to dismiss and the Court finds plaintiffs have made a prima facie

3   showing of alter ego and general jurisdiction.

4   **Specific Jurisdiction**.  The Ninth Circuit employs a three-prong test when determining

5   whether a nonresident defendant may be subject to specific personal jurisdiction in a forum: (1) the

6   defendant must have purposefully directed its activities or purposefully availed itself of the benefits

7   afforded by the forum's laws, (2) the claim must arise out of or relate to the defendant's forum-

8   related activities, and (3) the exercise of jurisdiction must comport with fair play and substantial

9   justice.  *Williams v. Yamaha Motor Co*., 851 F.3d 1015, 1023 (9th Cir. 2017).

10   Where claims arise from tortious conduct, the "purposeful direction" test applies. *Morrill v.*

11   *Scott Fin. Corp*., 873 F.3d 1136, 1142 (9th Cir. 2017); *see also Adidas Am., Inc. v. Cougar Sport,*

12   *Inc*., 169 F. Supp. 3d 1079, 1087 (D. Or. 2016) (purposeful direction applies to trademark claims).

13   To establish purposeful direction, plaintiffs must show 35.CN: (1) committed an intentional act, (2)

14   expressly aimed at the forum state, and (3) causing harm that the defendant knows is likely to be

15   suffered in the forum state.  *Morrill*, 873 F.3d at 1142.

16   35.CN argues "[s]imply registering someone else's trademark as a domain name and posting

17   a website is not sufficient to subject a party domiciled in one state to jurisdiction in another."  Dkt.

18   No. 174 at 26 (Motion to Dismiss).

19   Plaintiffs argue their claims against 35.CN arise out of its California activities, namely,

20   service contracts with OnlineNIC and provision of services under those contracts
form the basis of the unlawful conduct at issue …The registering, use, and trafficking

21   in the Infringing Domain Names—the acts that form the basis of this lawsuit—could
not have occurred but for 35.CN's employees operating and running OnlineNIC and

22   ID Shield and having ID Shield register those Infringing Domain Names as the
registrant.

23   Dkt. No. 190-5 at 18-19.  This argument seems to create a distinction without a difference from

24   plaintiffs' alter ego claims.  Further, if plaintiffs are arguing that, putting aside the alter ego claims,

25   merely working with OnlineNIC is enough to establish personal jurisdiction, the Court is skeptical.

26   The Court finds there are insufficient facts to determine whether it has specific jurisdiction

27   over defendant 35.CN – though, having found general jurisdiction exists, at least for the pleading

United States District Court
Northern District of California

1   stage, specific jurisdiction is not required.  *Panavision Int'l, Ltd. P'ship v. Toeppen*, 141 F.3d 1316,

2   1320 (9th Cir. 1998) ("Personal jurisdiction may be founded on either general jurisdiction or specific

3   jurisdiction.").

4       The parties shall proceed with discovery, including fact finding into issues regarding general

5   and specific jurisdiction.

6

7   **II.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

8       **A.    Claim 1: Cybersquatting**

9       To state a valid cybersquatting claim under the ACPA, the plaintiff must allege (1) it has a

10  valid trademark, (2) its mark is distinctive or famous, (3) the defendant's domain name is identical

11  or confusingly similar to, or in the case of famous marks, dilutive of, the owner's mark, and (4) the

12  defendant "registers, traffics in, or uses" the domain name and (5) has a bad faith intent to profit

13  from the mark.  15 U.S.C. §1125(d)(1)(A); *Interstellar Starship Services, Ltd v. Epix, Inc*., 304 F.3d

14  936, 946 (9th Cir. 2002); *DaimlerChrysler v. The Net Inc*., 388 F.3d 201, 204 (6th Cir. 2004).  35.CN

15  moves for dismissal arguing plaintiffs have failed to plead the fourth and fifth elements.

16      Regarding the fourth element, 35.CN argues plaintiffs have not alleged facts that ID Shield

17  or OnlineNIC "registers, traffics in, or uses" the domain names listed in the SAC.  The ACPA

18  defines "trafficking in" as "transactions that include, but are not limited to, sales, purchases, loans,

19  pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in

20  exchange for consideration." 15 U.S.C. §1125(d)(1)(E).

21      As discussed above, plaintiffs have plead a prima facie case of alter ego.  Further, OnlineNIC

22  and ID Shield admit that ID Shield is listed as the registrant for the allegedly infringing domain

23  names listed in the complaint.  Dkt. Nos. 109 ¶ 27 (SAC) and 88 ¶ 27 (Answer) ("it is admitted that

24  ID Shield 'is listed as the registrant in the WHOIS directory.'").  The SAC explicitly alleges ID

25  Shield licensed the allegedly infringing domain names to third parties. Dkt. No. 109 ¶ 59.  Plaintiffs

26  have adequately plead the fourth element.

27      With respect to the fifth element, 35.CN argues that plaintiffs do not allege "bad faith intent

28  to profit."  Dkt. No. 174 at 21 (Motion to Dismiss).  However, the SAC is replete with facts alleging

United States District Court
Northern District of California

9

bad faith, as detailed above, and specifically states defendants

> profit from the sale of the ID Shield proxy service, including providing the service to the end users of the Infringing Domain Names and to OnlineNIC.  OnlineNIC, ID Shield and 35.CN profit from the sale of the ID Shield proxy service by collecting fees from the sale of that service.

The SAC goes on to allege defendants may profit from licensing the allegedly infringing domain names.  The fifth element is adequately plead.

### B.     Claims 2-4: Trademark Infringement, False Designation of Origin, & Dilution

To plead claims for trademark infringement, false designation of origin, and dilution, plaintiffs must sufficiently allege 35.CN used plaintiffs' trademarks *in commerce in connection with the sale or advertising of goods or services*. 15 U.S.C. §§1114(1)(a), 1125(a)(1); *Bosley Med. Inst., Inc. v. Kremer*, 403 F. 3d 672, 677 (9th Cir. 2005) (use of mark must be "in connection with a sale of goods or services").

First, 35.CN argues plaintiffs fail to allege the infringing marks were used in commerce. Dkt. No. 174 at 22.  35.CN argues defendants – at most – registered the allegedly infringing domain names and that registration does not constitute use in commerce.  *Id.*  However, the SAC discusses the ways in which ID Shield and OnlineNIC are not merely registrars, but indeed license and control domain names.  Dkt. No. 109 ¶¶ 27 ("ID Shield is the registrant of the domain name, and is listed as the registrant in the WHOIS directory."), 56 (defendants "registered, used, or trafficked in at least the following 35 domain names that are identical or confusingly similar to" plaintiffs), and 59 ("ID Shield trafficked in the Infringing Domain Names by licensing these domain names to Licensees for their use.").  Further, ID Shield admits it "is listed as the registrant in the WHOIS directory."  88 ¶ 27 (Answer).

Second, 35.CN argues there is no basis for secondary liability under the trademark causes of action.  Dkt. No. 174 at 23 (Motion to Dismiss).  But the SAC alleges OnlineNIC is required by ICANN to include material terms in its registration agreements, including the following language:

> A Registered Name Holder licensing use of a Registered Name according to this provision shall accept liability for harm caused by wrongful use of the Registered Name, unless it discloses the current contact information provided by the licensee

and the identity of the licensee within seven (7) days to a party providing the Registered Name Holder reasonable evidence of actionable harm.

Dkt. No. 109 (SAC) Ex. 4 at 16–17 (RAA § 3.7.7.3) (emphasis added).).  Stated otherwise, anyone who registers a domain name with OnlineNIC, including ID Shield, agrees to accept liability if it fails to disclose licensees' contact information within seven days of receiving reasonable evidence of trademark infringement.

The trademark claims are adequately plead.


CONCLUSION[4]

35.CN's motion to dismiss is DENIED.

Plaintiff's motion to strike OnlineNIC and ID Shield's notice of joinder is GRANTED.



**IT IS SO ORDERED**.

Dated:  January 18, 2022

_____
SUSAN ILLSTON
United States District Judge

---

[4] The motion to seal portions of plaintiffs' opposition to the motion to dismiss is GRANTED. Dkt. No. 190.