**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Liana W. Chen (Bar No. 296965)
Ruben Peña (Bar No. 328106)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com
liana@KRInternetLaw.com
ruben@KRInternetLaw.com

Attorneys for Defendant Xiamen 35.com Technology Co., Ltd.
(erroneously sued as Xiamen 35.com Internet Technology Co., Ltd.)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **FACEBOOK, INC.**, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>**ONLINENIC INC.**, et al.,<br><br>　　　　Defendants. | Case No. 3:19-cv-07071-SI<br><br>**DEFENDANT XIAMEN 35.COM TECHNOLOGY CO., LTD.'S NOTICE OF MOTION AND MOTION FOR BIFURCATION AND STAY OF DISCOVERY**<br><br>Date:　　April 1, 2022<br>Time:　　10:00 a.m.<br>Ctrm.:　　1 — 17th Floor<br>Before:　Judge Susan Illston |

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 1, 2022 at 10:00 a.m., or as soon thereafter as this matter maybe be heard in the courtroom of the Honorable Susan Illston for the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, Courtroom 1 – 17th Floor, San Francisco, CA 94102, Defendant Xiamen 35.com Technology Co., Ltd. ("Defendant" or "35.CN") will and hereby does move for a bifurcation and stay of discovery to focus on one dispositive issue—whether Domain ID Shield Service Co. Limited ("ID Shield") is (a) a Proxy Service that registers domain names for its customers or merely a (b) Privacy Service that only allows its contact information to be used in public records to protect its customers/registrants' privacy)—which will likely resolve all other issues or at least obviate the need to litigate the alter ego allegations against Defendants, including 35.CN.

This motion requesting to bifurcate and stay discovery (to focus on the Proxy versus Privacy Service issue) is made pursuant to Federal Rule of Civil Procedure ("Rule") 42(b) and the broad discretion of the Court to bifurcate and stay proceedings, including for convenience or to economize a proceeding and especially in cases with alter ego claims. This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, the Declaration of Karl S. Kronenberger, any oral argument heard by the Court, such additional evidence as may be submitted to the Court at the hearing or otherwise, and such other matters as the Court deems proper.

Respectfully Submitted,

Dated: February 25, 2022          **KRONENBERGER ROSENFELD, LLP**

By: _____s/ Karl S. Kronenberger_____
        Karl S. Kronenberger

Attorneys for Defendant Xiamen 35.com Technology Co., Ltd.

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Pursuant to Rule 42(b), Defendant 35.CN seeks a bifurcation and stay of discovery to focus on one central legal issue of whether ID Shield is a Proxy Service that registers domain names for its customers or merely a Privacy Service that only allows its contact information to be used for privacy purposes as Defendants assert. Resolution of this underlying issue is expected to resolve the case in Defendants' favor and obviate the need for further expansive litigation on Plaintiffs' secondary "alter ego" allegations. For example, Plaintiffs Facebook, Inc. and Instagram, LLC (collectively, "Plaintiffs") recently served hundreds of written discovery requests on 35.CN, largely related to the alter ego claims (*e.g.*, seeking years of financial and business data), which at this point serves no purpose other than to over burden and harass 35.CN into a default judgment, similar to what Plaintiffs are attempting to do to OnlineNIC and ID Shield.

As background, Plaintiffs Facebook, Inc. and Instagram, LLC are seeking millions in damages and fees relating to alleged infringing use of thirty-five domain names ("Domain Names") by third-party "Registrants" (which Plaintiffs misleadingly call Licensees), who were customers of ID Shield. Plaintiffs have yet to identify actual damages; and instead of suing the Registrants or seeking expedited relief for transfer of the Domain Names, Plaintiffs have sued ID Shield and its purported "alter egos," OnlineNIC Inc. and 35.CN. However, Plaintiffs' claims against Defendants rest upon the false assertion that ID Shield is a Proxy Service that "registered" and controlled the Domain Names. In fact, although Privacy Services and Proxy Services are both aimed at protecting the privacy of customers that use domain names, they are mutually exclusive alternatives; a Privacy Service, such as ID Shield, allows its contact information to be displayed in public records but is not the actual registrant, owner, or licensor of the domain name, whereas a Proxy Service is indeed the registrant, owner, and licensor of the respective domain name. The anticipated determination of this issue in Defendants' favor would dispose of (or at least significantly narrow) this case and save all parties and the Court time and resources.

Relief under Rule 42(b) is warranted given (1) the history in this case where Plaintiffs have already obtained discovery on this issue, (2) the ability to easily separate the Privacy versus Proxy Service issue from other issues in the case, (3) consideration of convenience and judicial economy for all parties and the Court and to likewise minimize expenses where this one issue would likely resolve the entire case, and (4) the lack of prejudice to Plaintiffs, who have already conducted expansive discovery with ID Shield and OnlineNIC, including on this issue, and where the bifurcated issue would be resolved with a prompt dispositive motion, either with or without minimal further written discovery on this issue.

## STATEMENT OF ISSUES

Should the Court bifurcate and stay discovery so that the underlying legal question of whether ID Shield is Privacy Service versus Proxy Service be decided first?

## BACKGROUND

**A.    Domain Name Registration and Plaintiffs' Allegations**

Generally, "domain names" are sold to public customers, who are called "registrants." *See Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 897 F. Supp. 2d 856, 859 (N.D. Cal. 2012), *aff'd*, 737 F.3d 546 (9th Cir. 2013). A person who registers a domain name does so through a domain name "registrar" (such as Go Daddy, OnlineNIC, or 35.CN). *See id.* The registrar does not actually register domain names but acts as an intermediary between the registrant and the domain name registry. *See id.*

In the standard registrar accreditation agreement ("RAA") between Internet Corporation for Assigned Names and Numbers ("ICANN") and registrars, ICANN provides for two, mutually exclusive ways in which companies can offer privacy-related services to customers to protect the private contact details of registrants: (1) registrars may offer a "Privacy Service" whereby the registrar's (or a third-party's) contact information appears in "WHOIS" database records while the registrant remains the true "registrant" that owns and controls the domain names, or (2) registrars may offer "Proxy Services," whereby the registrar registers and takes legal ownership of the customer's domain name but licenses the domain name back to the registrant for use. (*See* D.E. 109-4 at 59 & SAC Ex. 4.)

Plaintiffs' claims against Defendants, including 35.CN, rest upon Plaintiffs' misapplied argument that ID Shield was a Proxy Service and thus liable for the Registrants' uses of the Domain Names (putting aside Defendants' other arguments that: the Registrants' uses of Domain Names were not unlawful; ID Shield did not violate the requirement to provide Plaintiffs with certain Registrant data, including in light of privacy law requirements (discussed below); Plaintiffs lack standing to enforce RAA provisions given that it expressly excludes third-party beneficiary rights; and OnlineNIC and 35.CN are not liable for ID Shield's conduct under an alter ego or other theory).

Although Plaintiffs allege conclusions that Defendants were also directly liable for the Domain Names, in actuality, all of the claims are founded upon ID Shield's supposed liability for its customers (the Registrants) and the Plaintiffs' alter ego theory. For example, Plaintiffs responded to 35.CN's motion to dismiss, citing to purported allegations showing a direct participant theory, all of which relate to underlying facts of third-party Registrants' use of the Domain Names. (*See* D.E. 189 at 2:10-12, citing SAC ¶¶6, 12, 26– 55.)

## B. Procedural History

Plaintiffs filed their original Complaint on October 28, 2019, alleging Lanham Act claims against Defendants OnlineNIC and ID Shield related to purportedly infringing Domain Names registered by third-party "Registrants." Plaintiffs later added 35.CN as the alleged "alter ego" of OnlineNIC and ID Shield. Despite meritorious defenses—and after engaging in extensive written discovery, document productions, and depositions—the high costs of Plaintiffs' lawsuit and other issues forced OnlineNIC and ID Shield to stop defending this case (*e.g.*, they did not initially oppose Plaintiffs' original Motion for Sanctions). (D.E. 118 ¶1; D.E. 131-1 ¶¶4–5.) As indicated by Plaintiffs' pending Motion for Sanctions, which is set for hearing on March 1, 2022, the parties have already incurred high fees and costs over years of litigation (*e.g.*, **Plaintiffs are seeking over $2 million in attorney's fees and nearly $90,000 in prior special master costs**).

On February 16, 2022, Plaintiffs served numerous written discovery requests on 35.CN (118 requests for admission, 18 interrogatories, and 147 requests for production of

1   documents), which largely seek information on the "alter ego" theory. (*See* Declaration of
2   Karl S. Kronenberger in Support of Motion for Bifurcation and Stay ("Kronenberger Decl.")
3   ¶2.) Plaintiffs and 35.CN are expected to have an initial Rule 26(f) conference on March 1,
4   2022.

5   On February 22, 2022, counsel for 35.CN discussed this Motion to Bifurcate and
6   Stay Discovery with Plaintiffs' counsel, who did not consent to the relief sought; by contrast,
7   OnlineNIC and ID Shield consent to this Motion. (Kronenberger Decl. ¶3.)

8   Notably, the prior discovery between Plaintiffs and Defendants OnlineNIC and ID
9   Shield included discovery related to this exact issue of whether ID Shield is a Privacy
10  Service or Proxy Service. (*See* Kronenberger Decl. ¶4.) As such, no further discovery (or
11  very limited discovery) is needed to resolve this foundational issue by dispositive motion.

## ARGUMENT

### A. General standard and application in alter ego cases.

Federal Rule of Civil Procedure 42(b) gives the Court broad discretion to bifurcate proceedings "[f]or convenience, to avoid prejudice, or to expedite and economize." The rule "confers broad discretion upon the district court to bifurcate a trial, thereby deferring costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues." *Zenith Ins. Co. v. Old Republic Ins. Co.,* No. 5:16-CV-07219-EJD, 2017 WL 2861130, at *1 (N.D. Cal. July 5, 2017) (citing *Zivkovic v. S. Cal. Edison Co.,* 302 F.3d 1080, 1088 (9th Cir. 2002)). It also implicitly confers on the district court the "power to limit discovery to the segregated issues." *Id.* (citing *Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970)).

Factors relevant to the issue of bifurcation include, but are not limited to: "complexity of issues, factual proof, risk of jury confusion, difference between the separated issues, the chance that separation will lead to economy in discovery, and the possibility that the first trial may be dispositive of the case." *Id.* (citing *MySpace, Inc. v. Graphon Corp.,* 732 F. Supp. 2d 915, 917 (N.D. Cal. 2010)). "Bifurcation should be ordered only when it will result in judicial economy and will not unduly prejudice any party." *Id.* The Court should

also consider whether bifurcation will best serve the convenience of the parties and the court, avoid prejudice, and minimize expense and delay. *Moreno v. NBCUniversal Media, LLC*, No. CV131038BROVBKX, 2013 WL 12123988, at *2 (C.D. Cal. Sept. 30, 2013) (citing cases and finding bifurcation of discovery and stay of discovery on certain issues would save significant time and money); *see also* Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 16-C, "C. Consolidation, Bifurcation and Severance" (noting a party seeking bifurcation should seek relief when the need becomes apparent). The Court also has inherent discretion to bifurcate discovery under Rule 42(b). *See also e.g.,* Standing Order for All Judges of this Court, No. 15 (requiring the parties to consider and present to the Court any "Narrowing of Issues: Issues that can be narrowed by agreement of by motion . . . and any request to bifurcate issues, claims, or defenses."); Fed. R. Civ. P. 26(c) (authorizing a protective order, including orders specifying the terms of or limiting the scope of discovery); Fed. R. Civ. Pro. 21 (authorizing a court to sever a claim against a party).

Specifically, bifurcation may be appropriate where litigation of one issue may obviate the need to try another issue. *See Min Prods. PTE. Ltd. v. FireForge, Inc.,* No. CV 14-941 DSF (SSX), 2017 WL 11635012, at **1-2 (C.D. Cal. Feb. 6, 2017) (quotation omitted); *MidAmerican Distribution, Inc. v. Clarification Tech., Inc.,* No. 09-96-DLB-JGW, 2011 WL 12885994, at *2 (E.D. Ky. Jan. 20, 2011), *aff'd,* No. CV 09-96-DLB-JGW, 2011 WL 13227719 (E.D. Ky. Mar. 9, 2011) (noting bifurcation may be appropriate if resolution of one issue would eliminate the need for litigation of other issues).

For this reason, bifurcating issues of alter ego liability—which does not create a separate cause of action but relies upon underlying liability—is particularly appropriate. *See e.g., Min Prods. PTE. Ltd.,* No. CV 14-941 DSF (SSX), 2017 WL 11635012, at **1-2 (bifurcating issue of alter ego liability and noting it would enhance judicial economy); *MidAmerican Distribution, Inc.,* No. 09-96-DLB-JGW, 2011 WL 12885994, at **1-2, *aff'd,* No. CV 09-96-DLB-JGW, 2011 WL 13227719 (affirming bifurcation order).

Considering the various factors, especially convenience and lack of prejudice, bifurcation and stay to limit discovery to the Privacy/Proxy issue is warranted here.

1  **B.    The Privacy versus Proxy Service argument is a distinct and relatively non-**
2  **complex issue that can be easily separated from remaining case issues.**

While the legal and factual issues in this case are not relatively complex as a whole, Plaintiffs have made this an extremely drawn out and expensive litigation. Nonetheless, Plaintiffs' four causes of action all rest upon this (false) central issue of whether ID Shield was a "Proxy Service" that would then be (1) the legal "registrant" and licensor of the Domain Names, and (2) subject to requirements to disclose domain name licensee contact information upon a proper request. (*See* SAC ¶¶56, 81, 111, 123, 135.) Plaintiffs provide no factual (as opposed to legal) claims of Defendants' "registration," "use," or "trafficking" of Plaintiffs' claimed trademarks other than through this Proxy Service argument.

In truth, a Privacy Service (such as ID Shield) cannot be a Proxy Service and vice versa; contrary to Plaintiffs' allegations, a "Proxy Service" is legally distinct from, and not merely one type of, a "Privacy Service." In particular, pursuant to the RAA Specifications attached as Exhibit 4 to the SAC, a "Privacy Service" is not the actual "registrant" of a domain name but is merely used for alternative contact information in WHOIS records (*See* SAC Ex. 4, D.E. 109-4 at 59). This contrasts with a "Proxy Service" that is the legal "registrant," owner, and licensor of domain names where its contact information is listed. Specifically, as demonstrated by the exact provisions of the RAA:

> 1.2 "Privacy Service" is a service by which a <u>Registered Name is registered to its beneficial user</u> as the Registered Name Holder, but for which alternative, reliable contact information is provided by the P/P Provider for display of the Registered Name Holder's contact information in the Registration Data Service (Whois) or equivalent services.
>
> 1.3 "Proxy Service" is a service through which a <u>Registered Name Holder licenses use</u> of a Registered Name to the P/P Customer in order to provide the P/P Customer use of the domain name, and the Registered Name Holder's contact information is displayed in the Registration Data Service (Whois) or equivalent services rather than the P/P Customer's contact information. (emphasis added)

Pursuant to Section 3.7.7.3 of the RAA, a registered name holder that "intends to <u>license use of a domain name</u> to a third party . . . <u>shall accept liability</u> for harm . . . unless

Case No. 3:19-cv-07071-SI                  6                   **DEF'S NTC OF MTN AND MTN FOR BIFURCATION AND STAY**

it discloses the current contact information provided by the licensee and the identity of the licensee within seven (7) days." (SAC Ex. 4 (emphasis added).) Conversely, a Privacy Service never owns the domain names of its customers and thus cannot provide any license to its customers, making Section 3.7.7.3 of the RAA and its seven-day rule inapplicable to Privacy Services (putting aside whether that rule was violated).

Under these parameters, a Privacy Service may insert its name and contact information (or a placeholder) in lieu of the actual registrant data in public WHOIS records without converting itself to a Proxy Service. In fact, Privacy Services are **required to do so** as publishing contact information of covered customers would violate the European Union's General Data Protection Regulation 2016/679 ("GDPR"), which has steep penalties. Specifically, under the GDPR, internet service providers such as Defendants are prohibited from disclosing the personal data of covered customers/registrants (including by publishing such information in WHOIS records) absent express consent. See GDPR, Art. 6(1) & Art. 7. Further, to comply with the GDPR, ICANN implemented temporary specifications confirming that the customer/registrant contact must not be identified:[1]

> 2.5. <u>In responses to domain name queries</u>, in the value of the "Email" field of every contact (e.g., Registrant, Admin, Tech):
>
> 2.5.1. Registrar MUST provide an email address or a web form to facilitate email communication with the relevant contact, but <u>MUST NOT identify the contact email address or the contact itself</u> . . .
>
> 2.5.1.3. It MUST NOT be feasible to extract or derive the email address of the contact from the email address and the URL to the web form provided to facilitate email communication with the relevant contact. . . .
>
> 2.6. . . . in the case of a domain name registration where a privacy/proxy service used (e.g. where data associated with a natural person is masked), <u>Registrar MUST return in response to any query full WHOIS data, including the . . . pseudonymized email.</u> (emphasis added)

---

[1] *See Temporary Specification for gTLD Registration Data,* ¶¶2.5-2.6 (accessed February 23, 2022), https://www.icann.org/resources/pages/gtld-registration-data-specs-en/#temp-spec; *see also Data Protection and Privacy Issues* (accessed February 23, 2022), https://www.icann.org/dataprotectionprivacy.

While Plaintiffs may dispute the legal application and are expected to oppose any motion for summary judgment, that does not diminish 35.CN's position that the issue (whether ID Shield is a Privacy Service versus a Proxy Service) is relatively simple and likely determinative of all (or most of) Defendants' potential liability in this case.[2] In fact, there is likely no additional discovery that Plaintiffs would need to dispute this argument, especially given Plaintiffs' prior discovery against OnlineNIC and ID Shield on this issue. In other words, there are no material facts in dispute, simply the legal question of whether ID Shield can be liable for its customers' (the Registrants') Domain Names.

In addition, this issue can be easily separated from the remaining issues in the case because it is a distinct legal question about whether a Privacy Service can also be a Proxy Service that would be subject to liability related to customer domain names (whether it inserts its own contact information for privacy purposes or fails to comply with the seven-day rule). Defendant anticipates that it can swiftly file a well-supported motion for summary judgment or adjudication on this issue with the prior discovery in this case (which is in Plaintiffs' possession), potential expert or other declarations, and to the extent necessary, limited discovery requests (which can be mutual and completed in a few months).

Therefore, given this distinct issue, as well as factors of convenience and lack of prejudice (outlined below), the Court should bifurcate and stay discovery.

**C.   Bifurcation and stay of discovery will further judicial economy.**

Importantly, the requested bifurcation and stay of discovery would further judicial economy and minimize expense and delay for all parties and the Court. Thus, the factor of convenience weighs heavily in favor of relief. This relief is particularly important against the backdrop of a case that (1) has already spent millions of dollars in attorney's fees and years in discovery and litigation, (2) still has extensive anticipated litigation, including as 35.CN only recently filed its Answer to Plaintiffs' Amended Complaint, and (3) has astronomically wealthy Plaintiffs that are not facing the same budgetary limitations as

---

[2] Even if Plaintiffs try to (unpersuasively) argue that they have direct liability theories, resolving the Proxy Service issue first will greatly narrow the other issues in the case and facilitate settlement or other resolution of this case.

Defendants and that are attempting to force OnlineNIC and ID Shield (and by association, 35.CN under alter ego allegations) into default/termination for a disputed discovery issue. In other words, Plaintiffs are attempting to avoid a resolution on the merits.

35.CN's anticipated motion for summary judgment/adjudication will show that ID Shield was only a Privacy Service that did not accept liability for purported failure to turn over customer contact information, regardless of whether ID Shield allowed its customers, the Registrants, to use ID Shield's name and contact information in public WHOIS records.

Thus, the convenience factor weighs heavily in favor of a bifurcation and stay.

### D. The requested relief will not prejudice Plaintiffs.

Here, Plaintiffs will benefit from the requested bifurcation and stay in determining this foundational issue first without expending further fees and costs. Moreover, given that Plaintiffs have already obtained significant discovery from OnlineNIC and ID Shield prior to the addition of 35.CN, and since Plaintiffs claim OnlineNIC/ID Shield and 35.CN are alter egos of each other with the same individuals in control, Plaintiffs have already had an adequate opportunity to seek initial discovery of this and other topics. Unless Plaintiffs' true motive is to use its expansive budget to force out potential competitors with high litigation fees and costs, Plaintiffs will consent to the requested relief. Put differently, there can be no other objective by Plaintiffs (multi-billion-dollar companies) than to over burden 35.CN so that Plaintiffs can continue using their endless litigation budget to obtain default judgments. Given that Plaintiffs have already obtained overlapping discovery from OnlineNIC and ID Shield prior to seeking terminating sanctions against them for a discovery dispute (and as Defendants will consent to limited mutual discovery if needed), there is no prejudice.

By contrast, absent relief, 35.CN will suffer undue prejudice, including in the time, attorney's fees, and expense to respond to hundreds of written discovery requests and obtaining any necessary translations on primarily alter ego allegations that are not at issue if there is no underlying liability of ID Shield.

If the parties require additional discovery on the underlying issue of whether ID

Shield is a Privacy Service or a Proxy Service (prior to discovery on the secondary issue of whether there is alter ego liability), 35.CN proposes a limitation of five requests for admission, five interrogatories, and five requests for production by each side on this issue.

## **CONCLUSION**

For all the foregoing reasons, Defendant respectfully requests that the Court grant 35.CN's Motion for Bifurcation and Stay and limit discovery to the issue of whether ID Shield is a Privacy Service versus a Proxy Service (which includes limiting Plaintiffs' recent written discovery requests to this issue).

Respectfully Submitted,

Dated: February 25, 2022            **KRONENBERGER ROSENFELD, LLP**

By:  s/ Karl S. Kronenberger
             Karl S. Kronenberger

Attorneys for Defendant Xiamen 35.com Technology Co., Ltd.