IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION


| | | |
|---|---|---|
| FACEBOOK, INC., | ) | CV-19-7071-SI |
| | ) | |
| PLAINTIFF, | ) | SAN JOSE, CALIFORNIA |
| | ) | |
| VS. | ) | MARCH 1, 2022 |
| | ) | |
| ONLINENIC INC ET AL, | ) | PAGES 1-50 |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |
| _____ | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE SUSAN VAN KEULEN
UNITED STATES MAGISTRATE JUDGE

A P P E A R A N C E S

FOR THE PLAINTIFF:        **BY:  HOWARD ALAN KROLL**
                              **DAVID STEELE**
                          TUCKER ELLIS LLP
                          515 SOUTH FLOWER STREET, 42ND FL
                          LOS ANGELES, CA 90071


FOR THE DEFENDANT:        **BY:  PERRY J. NARANCIC**
                          LEXANALYTICA, PC
                          2225 E. BAYSHORE ROAD, SUITE 200
                          PALO ALTO, CA 94303


APPEARANCES CONTINUED ON THE NEXT PAGE

OFFICIAL COURT REPORTER:        SUMMER FISHER, CSR, CRR
                                CERTIFICATE NUMBER 13185

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

```
 1          APPEARANCES CONTINUED:

 2          FOR THE PLAINTIFF:      BY:  ASHOK RAMANI
                                         MICAH BLOCK
 3                                  DAVIS POLK & WARDWELL LLP
                                    1600 EL CAMINO REAL
 4                                  MENLO PARK, CA 94025

 5          ALSO PRESENT FOR:       BY:  STACY CHEN & MARGIE MILAM
            META PLATFORMS
 6

 7          FOR THE DEFENDANT:      BY:  KARL KRONENBERGER
                                    KRONENBERGER ROSENFELD, LLP
 8                                  150 POST STREET, SUITE 520
                                    SAN FRANCISCO, CA 94108
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1          SAN JOSE, CALIFORNIA              MARCH 1, 2022

 2                     P R O C E E D I N G S

 3          (COURT CONVENED AT 10:00 A.M.)

 4               THE COURT:  ALL RIGHT.  WE WILL CALL THE MATTER IN A

 5      MOMENT.  THANK YOU ALL FOR BEING HERE.  OUR COURTHOUSE PROTOCOL

 6      STILL REQUIRE THE WEARING OF MASKS, AND WE DO THAT IN MY

 7      COURTROOM, SO THANK YOU.

 8          THAT DOES LEAVE FOR MUFFLED SPEAKING, SO PLEASE BE SURE TO

 9      SPEAK SLOWLY AND CLEARLY.  AND MS. FISHER WILL SEND UP A FLARE

10      IF THAT'S NOT WORKING.

11          WE DO USE A SHARED MICROPHONE AT THE PODIUM.  I HOPE THAT

12      IMPROVES.  SO YOU MAY COME TO THE PODIUM.  IF YOU ARE MORE

13      COMFORTABLE TO SPEAK FROM YOUR TABLES AND SEATING SO YOU ARE

14      NEAR THE MICROPHONE, THAT'S OKAY TOO.  I CAN MOVE TO SEE

15      PEOPLE.  BUT IF YOU WANT TO COME TO THE PODIUM, WE WILL JUST BE

16      SURE YOU KEEP YOUR MASK ON.

17          ALL RIGHT.  MS. FANTHORPE, IF YOU WILL CALL MATTER, WE

18      WILL GET UNDER WAY.

19               THE CLERK:  CALLING CASE 19-CV-7071.  FACEBOOK, INC.,

20      ET AL. VERSUS ONLINENIC, ET AL.

21          COUNSEL, PLEASE IDENTIFY YOURSELVES FOR THE RECORD, EITHER

22      AT THE PODIUM OR AT THE TABLE, BEGINNING WITH PLAINTIFF.

23               MR. KROLL:  GOOD MORNING, YOUR HONOR.  AND LET ME

24      JUST SAY IT'S GREAT TO BE BACK IN A COURTROOM SO THANK YOU FOR

25      THAT.
```

1          MY NAME IS HOWARD KROLL AND I'M WITH MY PARTNER

2     DAVID STEELE FROM TUCKER ELLIS.

3          WE HAVE, FROM DAVIS POLK AND WARDWELL, ASHOK RAMANI AND

4     MICAH BLOCK.  AND WE HAVE FROM META, STACY CHEN AND MARGIE

5     MILAM.

6               THE COURT:  WELCOME.  THANK YOU ALL FOR BEING HERE.

7               MR. NARANCIC:  GOOD MORNING, YOUR HONOR.

8          PERRY NARANCIC FOR DEFENDANTS ONLINENIC AND DOMAIN ID

9      SHIELD.

10              THE COURT:  MR. NARANCIC, GOOD MORNING.

11              MR. KRONENBERGER:  GOOD MORNING, YOUR HONOR.

12         KARL KRONENBERGER FOR DEFENDANT XIAMEN 35.CN TECHNOLOGY

13     CORP.

14              THE COURT:  THANK YOU.

15         ALL RIGHT.  OKAY.  WE ARE ON TODAY FOR PLAINTIFF'S MOTION

16     FOR TERMINATING SANCTIONS AND ENTRY OF A DEFAULT JUDGMENT.  I

17     DID ISSUE A TENTATIVE YESTERDAY WHICH I ASSUME EVERYBODY HAS

18     RECEIVED AND HAD AN OPPORTUNITY TO REVIEW.

19         I SPENT -- I HAVE SPENT A FAIR AMOUNT OF TIME WITH THE

20     PLEADINGS, OBVIOUSLY I'M VERY FAMILIAR WITH THE PROCEDURAL AND

21     SUBSTANTIVE HISTORY THAT BROUGHT US TO THIS POINT, AS MUCH OF

22     THE ACTIVITY THAT OCCURRED THAT IS THE SUBJECT OF THE MOTION

23     TOOK PLACE WHILE I WAS THE PRESIDING JUDGE, AND THEN OF COURSE

24     SINCE THEN, IT HAS BEEN REASSIGNED TO JUDGE ILLSTON, AND SHE

25     REFERRED THESE MOTIONS BACK TO ME.

 1          WHAT I WOULD LIKE TO DO IS OBVIOUSLY WE WILL START WITH

 2     THE MOTION FOR TERMINATING SANCTIONS.  AGAIN, I HAVE BEEN

 3     THROUGH THE PAPERS, I HAVE BEEN THROUGH ANY SUBMISSIONS OF THE

 4     PARTIES, OF COURSE I'VE SPENT A FAIR AMOUNT OF TIME WITH THE

 5     SPECIAL MASTER ORDER AGAIN, SO I THINK WHAT WOULD BE MOST

 6     BENEFICIAL IS TO START WITH DEFENDANTS AND HEAR FROM THEM ON

 7     THE TERMINATING SANCTIONS ISSUE, AND THEN OF COURSE PLAINTIFFS

 8     WILL HAVE AN OPPORTUNITY TO SPEAK AS WELL, AND THEN MOVE INTO

 9     THE PROPOSED JUDGMENT.  THAT HAS MANY SUBPARTS, AND I HAVE

10     QUESTIONS AROUND ALL OF THOSE.

11          SO WE WILL WORK OUR WAY THROUGH IT, AND THAT'S HOW WE WILL

12     PROCEED.

13          SO MR. NARANCIC, DO YOU HAVE THE MIC FOR DEFENDANT?

14          MR. NARANCIC:  YES, PLEASE.  YES.  I WILL BE AT THE

15     PODIUM.

16          THE COURT:  WHEREVER YOU ARE MOST COMFORTABLE.

17          AND JUST BECAUSE WE DO HAVE THE MASK, BE SURE YOU PULL THE

18     MICROPHONE OVER AND SPEAK SLOWLY.  THANK YOU.

19          MR. NARANCIC:  THANK YOU, YOUR HONOR.

20          GOOD MORNING ONCE AGAIN, IT'S NICE TO SEE YOU IN PERSON.

21          THE COURT:  LIKEWISE.

22          MR. NARANCIC:  I HAVE SOME PRETTY BRIEF SUBMISSIONS

23     HERE.

24          I THINK THAT IN TERMS OF AN OVERALL SET OF SUBMISSIONS, I

25     TRIED TO FOCUS IN THE OPPOSITION ON THE MERITS OF THE CASE AS

1      TO THE SUBSTANTIVE MATTERS, AS YOU KNOW FROM THE PAPERS, I

2      WON'T REPEAT THOSE VERY MUCH, AT LEAST.  AND I WILL TRY TO

3      FOCUS ON FOUR PIECES OF EXCULPATORY EVIDENCE WHICH I THINK IS

4      RELEVANT NOT ONLY TO THE MERITS OF THE PENDING MOTION BUT ALSO

5      TO DAMAGES IN THE EVENT THAT THE MOTION IS GRANTED.

6          THE FOUR ITEMS -- EXCUSE ME, YOUR HONOR -- THE FOUR ITEMS

7      THAT I WANTED TO EMPHASIZE FOR THE COURT, AS SET FORTH IN THE

8      OPPOSITION, ARE ONE, THE ADMISSION FROM THE RESELLER KNOWN AS

9      LOCK SPIN.

10         NUMBER TWO, THE OTHER SETS OF COMMUNICATIONS WITH WHAT I

11     CALL THE REGISTRANTS OR TRUE REGISTRANTS OF THE ALLEGED

12     INFRINGING DOMAINS.  NUMBER THREE, THE ISSUE OF THE IP

13     ADDRESSES.  AND NUMBER FOUR, THE PAYMENT DATA.

14         WITHOUT REPEATING MYSELF TOO MUCH, I THINK THE THRUST OF

15     MY SUBMISSIONS ARE REALLY FOCUSED ON THE FACT THAT I DIDN'T SEE

16     ANYTHING FROM PLAINTIFFS THAT CHALLENGED, AT LEAST THOSE FOUR

17     PIECES OF WHAT I THINK ARE EXCULPATORY DATA, AS FAR AS THEY GO.

18     ALL THAT INFORMATION, WHICH IS SET FORTH IN THE DECLARATION,

19     SUPPORTING DECLARATION OF MR. FREEMAN, WAS PRODUCED TO THE

20     PLAINTIFFS.

21         SO I THINK IT'S IMPORTANT TO BEAR IN MIND THESE FOUR ITEMS

22     OF EVIDENCE IN THE RECORD SUPPORT THE FACT THAT AT LEAST TO

23     SOME, OR PERHAPS ALL OF THE INFRINGING DOMAINS, THERE IS GOOD

24     REASON, IN MY VIEW, TO TRY TO GET THIS CASE TO THE MERITS.

25         AS TO LOCK SPIN, WE ARE QUICKLY -- THAT ORIGINATED, WHAT I

1    CALL AN ADMISSION FROM LOCK SPIN ORIGINATED WITH A LETTER

2    DRAFTED BY ME TO THE VARIOUS REGISTRANTS, RESELLERS, SEEKING

3    INDEMNIFICATION ARISING OUT OF THE FACT THAT THERE WERE THESE

4    CLAIMS WITH RESPECT TO THESE DOMAINS FROM FACEBOOK AT THE TIME

5    THAT WERE INFRINGING.  SO THAT'S THE WAY THOSE COMMUNICATIONS

6    STARTED WITH LOCK SPIN.

7         AND IN THE PAPERS, THE COURT CAN SEE, THE PRETTY CLEAR

8    ADMISSION THAT LOCK SPIN WAS THE REGISTRANT WHO INITIATED THAT

9    REGISTRATION.

10        AGAIN, THAT IS EVIDENCE THAT TENDS TO SHOW OR UNDERCUT THE

11   PLAINTIFF'S CASE ON THE MERITS, AT LEAST, THAT IT WAS REALLY

12   ONLINENIC THAT WAS THE REGISTRANT.

13        LIKEWISE, WITH THE OTHER COMMUNICATIONS, I WON'T REPEAT

14   WHAT THOSE ARE, BUT THEY ARE SET FORTH IN THE PAPERS, FOR THE

15   SAME REASON THOSE OTHER COMMUNICATIONS TEND TO SHOW THAT THE

16   REAL REGISTRANTS WERE, I THINK REAL PEOPLE OR REAL INDIVIDUALS.

17        ON THE THIRD AND FOURTH ISSUE, THE IP ADDRESSES AND THE

18   PAYMENT DATA, I THINK THIS TIES INTO ANOTHER IMPORTANT ISSUE,

19   WHICH IS THE SPECIAL MASTER'S REPORT ONLY ADDRESSED THE SUPPORT

20   TICKET DATABASE, WHICH IS ONE OF THE TWO DATABASES THAT I THINK

21   ARE AT ISSUE HERE.

22        AND THE RELATIONAL DATABASE, WHAT I CALL IN THE PAPERS THE

23   REGISTRATION DATABASE, WAS ALSO PRODUCED TO PLAINTIFFS.  THAT

24   CONTAINED ALL THE REGISTRATION OR TRANSACTIONAL DATA, SUCH AS

25   WHO THE REGISTRANT WAS, THE ADDRESS OF THE VARIOUS CONTACTS,

1    THE DATE OF DATE OF REGISTRATION, AND OTHER INFORMATION SUCH AS

2    THE IP ADDRESSES AND THE PAYMENT DATA.

3        WHEN ONE CROSS CORRELATES, THE REGISTRATION OR

4    TRANSACTIONAL DATA, SUCH AS THE IP ADDRESSES AND THE PAYMENT

5    DATA, I THINK ONE ARRIVES AT THE CONCLUSION REASONABLE THAT THE

6    IP ADDRESSES ARE ASSOCIATED WITH PLACES OR ADDRESSES THAT ARE

7    NOT ASSOCIATED WITH ONLINENIC.  THEY TEND TO SHOW THAT THE

8    REGISTRATIONS HAPPENED WITH THIRD PARTIES.

9        LIKEWISE, THE PAYMENT DATA, WHICH I THINK IS EVEN MORE

10   PROBATIVE OF THIS ISSUE, THE PAYMENT DATA SHOWS THE HISTORY OF

11   TRANSACTIONS, PAYMENT TRANSACTIONS FROM THE IMPUGNED RESELLERS.

12   AGAIN, TENDING TO SHOW THAT THESE WERE REGISTRATIONS OF THE

13   INFRINGING DOMAINS THAT WERE MADE BY BONA FIDE THIRD PARTIES.

14       YOUR HONOR, THOSE ARE MY SUBMISSIONS AS TO WHAT I AM

15   CALLING THE EXCULPATORY DATA, WHICH I WOULD ASK THE COURT TO

16   CONSIDER IN RULING ON THE PENDING MOTION FOR TERMINATING

17   SANCTIONS, AS WELL AS THE POTENTIAL FEE AWARD AND OTHER

18   DAMAGES.

19            THE COURT:  AND IF I'M UNDERSTANDING THE BOTTOM LINE

20   ABOUT WHAT YOU POINT TO AS EXCULPATORY EVIDENCE, IT'S THAT --

21   IT'S SUPPORT FOR THE ARGUMENT THAT THIS CASE SHOULD GO TO THE

22   MERITS, IT SHOULD BE DETERMINED ON THE MERITS BECAUSE YOU'VE

23   GOT SOMETHING TO SAY ABOUT WHO OWNS THE MARKS AND WHO WAS USING

24   THE MARKS; IS THAT FAIR?

25            MR. NARANCIC:  I THINK THAT'S FAIR.

1          IT TIES INTO TWO THINGS, BUT THAT'S ABSOLUTELY CORRECT.

2     IT TIES INTO THE FACT THAT I THINK THERE IS A MERITORIOUS

3     DEFENSE THAT SHOULD BE CONSIDERED ON THE MERITS, AND I THINK

4     THAT TIES IN WITH THE CASE LAW THAT I CITE THAT HOLDS THAT

5     THERE IS, GENERALLY SPEAKING, A PREFERENCE FOR DECIDING CASES

6     ON THEIR MERITS.

7          I UNDERSTAND THAT THAT IS A BALANCING ACT, BUT IN MY

8     RESPECTFUL VIEW, I THINK THAT THAT BALANCE TILTS IN FAVOR OF

9     LETTING THIS MATTER GO TO A JURY.  AND THAT LEADS ME TO MY

10    SECOND AND LAST SET OF SUBMISSIONS, MY SECOND OF THREE SETS OF

11    SUBMISSIONS, THE FIRST BEING THE SO CALLED EXCULPATORY

12    EVIDENCE.

13         THE SECOND SET OF SUBMISSIONS I HAVE, YOUR HONOR, RELATE

14    TO THE ARGUMENTS MADE BY PLAINTIFFS ABOUT THE APPROPRIATENESS

15    IN THIS CASE OF TERMINATING SANCTIONS, HAVING SPECIAL REGARD TO

16    THE SPECIAL MASTER'S REPORT.

17         YOU KNOW, AS I SET FORTH IN THE OPPOSITION PAPERS, I TRY

18    NOT TO, OR MY CLIENTS TRY NOT TO OBFUSCATE THE FACT THAT THERE

19    ARE PROBLEMS THERE, AND I THINK I TRIED TO MAKE THAT CLEAR IN

20    THE OPPOSITION PAPERS.  BUT MY SENSE IS THAT WHILE THERE WERE

21    PROBLEMS THERE, I'M NOT SURE IN THE BALANCING ACT, THEY TIP SO

22    HEAVILY AS TO MILITATE AGAINST GETTING THIS MATTER IN FRONT OF

23    A JURY.

24         FOR INSTANCE, THE SPECIAL MASTER, WHO I HAVE GREAT REGARD

25    FOR BY THE WAY, MR. HOWE, AND I'M VERY GRATEFUL TO HIM WORKING

1    WITH ME, CITED AS AN EXAMPLE, ONLINENIC'S FAILURE TO IMPLEMENT

2    BACKUP SOFTWARE, AND HE SUGGESTED THAT THIS WAS EVIDENCE OF A

3    FAILURE TO PRESERVE AND TO PRODUCE INFORMATION.

4        I THINK THAT'S AN IMPORTANT CONSIDERATION, BUT I DON'T

5    THINK, FOR INSTANCE, THAT THAT STANDING ALONE, IS INDICTABLE,

6    IF YOU WILL.  I KNOW A LOT OF COMPANIES THAT OPERATE ON

7    SHOESTRINGS THAT DON'T HAVE THE MOST ROBUST INFORMATION

8    TECHNOLOGY SYSTEMS.

9        SO I THINK IT WAS NOT A BEST PRACTICE TO NOT HAVE BACKUP

10    SYSTEMS, BUT I'M NOT SURE IF THAT RISES TO THE LEVEL OF SOME

11    KIND OF INTENTIONAL FAILURE TO SUPPLY EVIDENCE.

12        THE OTHER THING I CAN SAY ON THIS ISSUE IS THAT THERE IS

13    THIS, I THINK, OPEN QUESTION IN THE SPECIAL MASTER'S REPORT

14    ABOUT WHEN DATA WAS DELETED.  IT'S SOMETHING THAT I STRUGGLE

15    WITH, BECAUSE HE NOTES AT LEAST TWICE, THAT A LOT OF DATA WAS

16    DELETED PRIOR TO THE LITIGATION, THAT HE CANNOT DETERMINE WHEN

17    CERTAIN RESPONSIVE INFORMATION WAS DELETED.

18        MY CLIENT PROVIDED A RESPONSE TO THAT WHICH THE SPECIAL

19    MASTER, I DON'T THINK WAS VERY IMPRESSED WITH, AND THE RESPONSE

20    FROM THE CLIENT WAS THIS WAS SUCH A LARGE DATABASE OVER 20

21    YEARS, A LEGACY PIECE OF DATABASE, THAT WAS NOT EASILY

22    SUPPORTED, THAT ONE OF THE ONLY WAYS THEY COULD ADEQUATELY

23    MANAGE THIS, PARTICULARLY BEFORE THE LITIGATION, BEFORE THIS

24    CASE WAS FILED, WAS THAT THEY WOULD CLEAN OUT E-MAILS IN

25    PARTICULAR, IN ORDER TO SAVE SPACE ON THE SERVER AND THEREBY

1   MAKE PROCESSING TIMES FASTER.  I KNOW THE SPECIAL MASTER WAS

2   DUBIOUS OF THOSE POINTS --

3           THE COURT:  BUT MR. NARANCIC, AND YOU MAKE THAT POINT

4   IN YOUR PAPERS, YOU OBVIOUSLY RAISED THE TIMING POINT.  I WENT

5   BACK VERY CAREFULLY TO COMB THROUGH THE SPECIAL MASTER REPORT

6   AND SEE WHERE HE DID FIX IN TIME, BECAUSE HE DOES HAVE SOME

7   STATEMENTS OF TIME PERIODS THAT EXCEED FROM THE DATE OF FILING

8   OF THIS SUIT THAT ARE BROADER THAN THE TIME OF LITIGATION, AND

9   SOME PRETTY STAGGERING NUMBERS ON THE SAME DOCUMENTS.  BUT THEN

10  HE DOES DRILL DOWN FROM THAT AND HE DOES FIX WHAT APPEARS TO BE

11  THE DESTRUCTION OF DOCUMENTS, THE DELETION OF DOCUMENTS DURING

12  THE COURSE OF THE LITIGATION, AND EVEN DURING THE TIME WHERE HE

13  IS ISSUING ORDERS, AND STILL THINGS ARE BEING DELETED.

14      AND WHEN I CAME TO THE POINT ABOUT, WELL, IN THE PAPERS,

15  ABOUT, THIS IS LEGACY DATABASE AND ALL THEY CAN DO IS DELETE

16  MATERIAL TO KEEP IT SOMEWHAT OPERATIONAL, THOSE STATEMENTS ARE

17  MADE WITHOUT COMMENT OR REGARD FOR A LITIGATION HOLD, FOR

18  PRESERVATION RESPONSIBILITIES.

19      BY THE TIME THAT DELETION HAPPENS, THE LAWSUIT IS OVER A

20  YEAR, ALMOST TWO YEARS OLD.  AND THAT IS OF GRAVE CERTAIN TO

21  THE COURT THAT THERE DIDN'T APPEAR TO BE ANY REGARD WHATSOEVER

22  FOR LITIGATION HOLD RESPONSIBILITIES.

23          MR. NARANCIC:  I AGREE, YOUR HONOR.  I'M EQUALLY

24  CONCERNED.

25      I HOPE THE COURT MADE NOTICE OF SPECIAL MASTER'S NOTES ON

1    MY EFFORTS TO MAKE SURE HE HAD UNIMPEDED ACCESS TO THOSE

2    THINGS.

3         I AGREE THAT IS A CONCERN, BUT THE LITIGATION PRIVILEGE I

4    THINK PROPERLY APPLIES TO RELEVANT INFORMATION.  FOR INSTANCE,

5    YOU KNOW, BIRTHDAYS OF THE OWNERS, PERHAPS IS NOT INFORMATION

6    THAT SHOULD BE SUBJECT TO PRIVILEGE, AND IT'S NOT KNOWN EXACTLY

7    WHAT WAS DELETED BECAUSE OF THE FAILURE TO HAVE BACKUPS, AND

8    THAT IS CERTAINLY AN ISSUE.

9         BUT THAT TURNS, I THINK, THE ISSUE.  IN OTHER WORDS, I

10   AGREE WITH THE COURT.  BUT IT BRINGS INTO FOCUS THE WERIDE CASE

11   CITED IN THE PLAINTIFF'S PAPERS AT PAGE 1 AND OTHER PLACES,

12   WHERE THE TEST FOR WHETHER A TERMINATING SANCTION IS

13   APPROPRIATE, SPECIFICALLY AS TO WHETHER AN ADVERSE INFERENCE

14   INSTRUCTION IS SUFFICIENT, IN OTHER WORDS, IS THERE A LESSER

15   SANCTION THAT WOULD BE APPROPRIATE UNDER THE CIRCUMSTANCES.

16   AND THE PLAINTIFFS CITE WERIDE FOR THE PROPOSITION THAT AN

17   ADVERSE INFERENCE IS NOT SUFFICIENT IF THE PLAINTIFF IS

18   HELPLESS TO REBUT EVIDENCE THAT MAY OVERCOME THE INFERENCE.

19        WHEN I LOOK AT THAT LANGUAGE, IT SEEMS TO ME THAT THE

20   PLAINTIFFS IN THIS CASE ARE NOT HELPLESS, AS SET FORTH IN THE

21   WERIDE CASE.

22        I THINK THERE'S A TREMENDOUS AMOUNT OF INFORMATION THAT

23   HAS BEEN PRODUCED IN THE REGISTRATION DATABASE AND IN THE

24   SUPPORT TICKET DATABASE THAT WILL GO RIGHT TO THE HEART OF THE

25   CASE AS IT RELATES TO THESE 35 ALLEGED INFRINGING DOMAINS.

1          THERE ARE MILLIONS AND MILLIONS OF DOMAINS IN THE

2     REGISTRATION DATABASE, BUT WE ARE FOCUSED ON, AT LEAST AT THIS

3     PART OF THE ANALYSIS, ON THESE 35 INFRINGING DOMAINS.  AND WHEN

4     ONE FOCUSES THE COMBINATION OF THE SUPPORT TICKET DATABASE AND

5     THE REGISTRATION DATABASE, MY SENSE IS THAT THERE IS SUFFICIENT

6     INFORMATION FOR THE PLAINTIFFS TO GET THEIR CASE ACROSS,

7     PARTICULARLY IF THE INFERENCE IS AGAINST THE DEFENDANTS ON THAT

8     ISSUE.

9          THESE ARE MY SUBMISSIONS, BUT I UNDERSTAND THE COURT MAY

10    HAVE A DIFFERENT VIEW ON THAT.

11          THE COURT:  LET ME ASK YOU, YOU GENERALLY DESCRIBED

12    THE TRANSACTIONAL DATABASE AS HAVING THE PAYMENT DATA, THE IP

13    ADDRESSES AND PAYMENT DATA.  HOW DO YOU DESCRIBE THE TICKET

14    DATABASE, THE SUPPORT TICKET DATABASE?  THAT'S THE SUBJECT OF

15    THE SPECIAL MASTER REPORT.

16          MR. NARANCIC:  I'M SORRY, YOUR HONOR, HOW DO I

17    DESCRIBE IT?

18          THE COURT:  YEAH, WHAT'S THE GENERAL DESCRIPTION?

19    WHAT DO YOU USE AS A GENERAL DESCRIPTION FOR THAT DATABASE?

20    WHAT'S ITS FUNCTION?

21          MR. NARANCIC:  YES.

22          THE SUPPORT TICKET DATABASE IS A PLACE WHERE

23    COMMUNICATIONS FROM ONLINENIC'S CUSTOMERS ARE PROCESSED FOR THE

24    PURPOSE OF DELIVERING SUPPORT ON ANY REGISTRATION ISSUES.

25          SO FOR INSTANCE, IF A DOMAIN IS EXPERIENCING PROBLEMS IN

1    RESOLVING, THEN THE CUSTOMER WOULD CONTACT ONLINENIC THROUGH AN

2    ONLINE HELP REQUEST OR CONTACT INFORMATION OR A SUPPORT AT

3    ONLINENIC.COM E-MAIL ADDRESS.

4        ALL OF THOSE COMMUNICATIONS BETWEEN ONLINENIC AND THE

5    CUSTOMERS SEEKING SUPPORT WOULD HAVE BEEN CAPTURED IN THE

6    SUPPORT TICKET DATABASE.  THAT INFORMATION WOULD INCLUDE NOT

7    ONLY TEXT DATA, BUT ALSO POTENTIALLY ATTACHMENTS, SUCH AS

8    E-MAILS, FOR INSTANCE.  SO I THINK THAT FAIRLY DESCRIBES WHAT

9    WE ARE TALKING ABOUT.

10        THE COURT:  OKAY.

11        YOU SAID YOU HAD THE EXCULPATORY EVIDENCE WHICH WE'VE

12    LOOKED AT.  YOU HAD SOME CONCERNS ABOUT THE SPECIAL MASTER

13    REPORT, WHETHER OR NOT ABSENCE OF A BACKUP SYSTEM IS A

14    SUFFICIENT GROUND TO WARRANT THIS KIND OF REMEDY AS WELL AS THE

15    TIMING OF THE DELETIONS POINT.

16        MR. NARANCIC:  YEAH.

17        TO REPEAT AND SUMMARIZE, I AGREE THAT THERE ARE SOME

18    SERIOUS ISSUES THERE, AND I WORKED VERY HARD TO TRY TO

19    UNDERSTAND THOSE.  SOME THINGS CAN'T BE EXPLAINED.  AND I THINK

20    THE ISSUE NOW IS, ARE THERE SUFFICIENT QUESTIONS AT THIS STAGE

21    IN THE PROCEEDINGS TO STOP A FURTHER ANALYSIS.

22        IN THAT REGARD, I THINK -- I WOULD BE DISAPPOINTED IF THIS

23    CASE WERE NOT TO GO FORWARD BECAUSE THERE ARE A COUPLE OF VERY

24    INTERESTING LEGAL QUESTIONS.

25        FOR INSTANCE, THE ISSUE ABOUT WHETHER A BREACH OF THE

1    REGISTRATION AGREEMENT, THE ICAN REGISTRATION AGREEMENT,

2    SPECIFICALLY 3.373, WHETHER A BREACH OF THAT CONTRACTURAL

3    PROVISION, WHEREBY ONLINENIC OR DOMAIN ID SHIELD IS OBLIGED TO

4    PROVIDE CERTAIN INFORMATION, AND IF THEY FAILED TO DO SO WITHIN

5    SEVEN DAYS, THEY ARE "LIABLE," DOES THE BREACH OF THAT

6    PROVISION GIVE RISE TO LIABILITY UNDER THE CYBERSQUATTING

7    STATUTE OR TRADEMARK STATUTE.  THE RAA SPECIFICALLY SAYS THAT

8    THERE IS NO PRIVATE RIGHT OF ACTION, IT DOESN'T CREATE THIRD

9    PARTY RIGHTS.

10    I THINK THAT'S A VERY INTERESTING ISSUE THAT WOULD NOT BE

11    DECIDED, CERTAINLY IN THIS CASE, IF THE CASE DOESN'T GO

12    FORWARD.

13    THERE ARE OTHER ISSUES THAT -- INTERESTING LEGAL ISSUES,

14    WHICH WHY I GOT INVOLVED IN THE CASE ORIGINALLY, SUCH AS WHAT

15    IS A PROXY SERVICE VERSUS A PRIVACY SERVICE.  THAT IS A

16    DISTINCTION THAT IS IMPORTANT WHEN LOOKING AT THIS AREA OF LAW.

17    I THINK THAT MY SENSE IS THAT WHEN ONE LOOKS AT THE

18    REGISTRATION AGREEMENT ENTERED INTO BETWEEN, OR THE PRIVACY

19    AGREEMENT BETWEEN DOMAIN ID SHIELD AND A CUSTOMER, I THINK IT'S

20    CLEAR THAT DOMAIN ID SHIELD WAS A PRIVACY SERVICE, NOT A PROXY

21    SERVICE.  AND ACCORDINGLY, DOMAIN ID SHIELD WAS NOT A LICENSOR

22    OF THOSE DOMAINS.  THOSE ARE JUST TWO OF THE INTERESTING LEGAL

23    ISSUES THAT MAY NEVER BE ADDRESSED.

24    SO IN CLOSING, UNLESS THE COURT --

25    THE COURT:  WELL, MY OTHER QUESTION BEFORE YOU CLOSE

1    IS, WHAT WOULD BE YOUR PROPOSED ALTERNATIVE TO TERMINATION?

2         I THINK IN YOUR PAPERS YOU REFERENCE SOME SORT OF

3    INSTRUCTION.  THAT CAN BE VERY DIFFICULT TO GIVE SOME SORT OF

4    INSTRUCTION WHEN YOU DON'T KNOW WHAT'S BEEN LOST, IN TERMS OF

5    DESTRUCTION OF DOCUMENTS.  WHAT IS ONLINENIC'S PROPOSAL?

6         MR. NARANCIC:  WELL, I THINK THAT THE REVERSAL OF THE

7    BURDEN OF PROOF OR THE PRESUMPTION --

8         THE COURT:  YEAH, I READ THAT, WHICH IS OKAY, WE HAVE

9    TO PROVE WE DIDN'T DO THIS.  BUT AGAIN, MUCH OF THE EVIDENCE

10   THAT YOU DID, ACCORDING TO PLAINTIFFS, IS GONE.

11        SO I THINK THAT SHIFTING THE BURDEN, I'M NOT SURE HOW THAT

12   ADDRESSES THE CONCERN.  IT WOULD SEEM TO INDEED BENEFIT THE

13   DEFENDANTS.

14        MR. NARANCIC:  I THINK THAT THERE ARE WAYS TO CRAFT A

15   PROPOSED ADVERSE INSTRUCTION THAT TAKES THAT INTO ACCOUNT.

16        FOR INSTANCE, WE COULD RAISE THE STANDARD OF PROOF FROM

17   BALANCE OF PROBABILITIES TO A MORE SUBSTANTIAL STANDARD OF

18   PROOF IN ORDER TO TRY TO COMPENSATE FOR THAT ISSUE.

19        I ALSO WOULD SAY THAT SUCH AN ADVERSE INFERENCE

20   INSTRUCTION, I THINK WOULD BE A VERY DIFFICULT OBSTACLE TO

21   SURMOUNT UNDER THE CIRCUMSTANCES, ESPECIALLY GIVEN THE NEGATIVE

22   ASSESSMENT THAT A JURY MIGHT HAVE AFTER HAVING REVIEWED AND

23   HEARD EVIDENCE ON THE SPECIAL MASTER'S CASE.

24        SO I DON'T THINK SUCH AN ADVERSE INFERENCE INSTRUCTION IS

25   A GIFT BY ANY MEANS TO ONLINENIC, I THINK IT'S STILL A VERY

1      MUCH AN UPHILL BATTLE.

2            IN ADDITION, I THINK THAT TO THE EXTENT THERE ARE

3      ACKNOWLEDGED PROBLEMS WITH THE SPECIAL MASTER'S REPORT AND THE

4      ISSUE OF THE DESTRUCTION OF DATA, I THINK SOME SANCTIONS WOULD

5      BE APPROPRIATE AS WELL, MONETARY SANCTIONS.  AND I'M TRYING TO

6      BE CREATIVE AND APPRECIATE THE POSITION OF THE COURT AND ALSO

7      THE POSITION OF THE PLAINTIFFS, THAT THERE ARE SOME PROBLEMS

8      HERE.

9            AND SO I THINK THAT THOSE TWO PROPOSALS GO A LONG WAY IN

10     TRYING TO GET THIS TO A MERITS-BASED ANALYSIS THAT IS

11     CONSISTENT WITH THE FEDERAL POLICY.

12            THE COURT:  ALL RIGHT.

13     THANK YOU, MR. NARANCIC.

14            MR. NARANCIC:  IF I MIGHT JUST TAKE ONE SECOND TO

15     ADDRESS THE DAMAGES ISSUE, OR I CAN WAIT UNTIL THE

16     PLAINTIFFS --

17            THE COURT:  WE WILL ADDRESS DAMAGES, WE WILL GET TO

18     THAT WHEN WE ARE TALKING -- WORKING OUR WAY THROUGH QUESTIONS

19     AROUND THE PROPOSED JUDGMENT.

20            MR. NARANCIC:  THANK YOU, YOUR HONOR.

21            MR. KRONENBERGER:  YOUR HONOR, MAY I BE HEARD FOR A

22     FEW MINUTES?  MY COMMENTS WILL BE BRIEF.

23            THE COURT:  VERY BRIEFLY.  YOU DON'T HAVE -- THIS

24     ISN'T YOUR MOTION.

25            MR. KRONENBERGER:  I KNOW, YOUR HONOR.  I APPRECIATE

1    YOU GIVING ME THE TIME TO TALK.

2         I'M SMILING UNDER THIS MASK.  THIS IS THE FIRST TIME I'M

3    BACK IN THIS COURTHOUSE SINCE THE PANDEMIC, SO THANK YOU AGAIN

4    FOR LETTING ME SPEAK.

5         I REPRESENT XIAMEN 35.CN WHICH IS THE ALLEGED ALTER EGO IN

6    THIS CASE, AND I WOULD LIKE TO EMPHASIZE THE IMPORTANCE OF A

7    VERY UNIQUE LEGAL ISSUE THAT'S FRONT AND CENTER IN THIS CASE,

8    IN FACT, IT'S AN ISSUE OF FIRST IMPRESSION.  I DON'T THINK

9    THERE'S EVER BEEN A CASE IN THE FEDERAL COURT SYSTEM LIKE THIS

10   CASE, THAT IS WHERE LIABILITY IS IMPUTED A DOMAIN REGISTRAR DUE

11   TO THE ICAN AGREEMENT, WHICH PERMITS THE REGISTRAR TO RUN A

12   PRIVACY OR PROXY SERVICE.

13        NOW THIS IS SUCH -- AGAIN, FIRST TIME EVER.

14          THE COURT:  AND JUDGE ILLSTON IS PRIMED FOR THAT AND

15   I SAW YOUR MOTION ABOUT STAYING AND LET'S GET THIS TEED UP.

16   AND THAT'S -- YOU KNOW, THAT'S A VERY INTERESTING QUESTION.

17   BUT I DON'T THINK -- IT DOESN'T ADDRESS THE ISSUES WE HAVE

18   HERE, WHICH IS, IF A DEFENDANT WANTS TO FIGHT THESE INTERESTING

19   LEGAL QUESTIONS AND ARGUE THEM, THEY HAVE TO PLAY BY THE RULES.

20          MR. KRONENBERGER:  YES.

21        AND I'M NOT HERE TO ARGUE ABOUT THE SPECIAL MASTER'S

22   REPORT, I'M HERE TO ARGUE ABOUT JUST REASON FOR DELAY.  BECAUSE

23   WHAT'S GOING TO HAPPEN IF 35.CN WINS ITS ARGUMENT, THAT THIS

24   WAS A PRIVACY SERVICE AND THEREFORE THERE IS NO LIABILITY.

25   IT'S A BINARY SITUATION WITH TWO MUTUALLY EXCLUSIVE OPTIONS.

1    PRIVACY SERVICE, AND IF THERE'S A PRIVACY SERVICE, ONLINENIC

2    WINS, 35.CN WINS.

3         IF IT'S A PROXY SERVICE WHERE ONLINENIC AND ID SHIELD

4    ACTUALLY OWN THE DOMAINS AND LICENSE THEM OUT TO THIRD PARTIES,

5    THEN FACEBOOK STILL HAS AN ARGUMENT.

6         SO WHEN WE LOOK AT THE MOTION, THEY RELY EXCLUSIVELY ON

7    THIS ASSUMPTION THAT ONLINENIC AND IDENTITY SHIELD ARE A PROXY

8    SERVICE.  FOOTNOTE TWO, THERE ARE TWO ARGUMENTS, AT PAGE 3 OF

9    THE MOTION, TWO ARGUMENTS FOR LIABILITY.  BOTH THOSE ARGUMENTS

10   RELY UPON THIS IDEA THAT ONLINENIC IS A PROXY SERVICE.

11   HOWEVER, THERE'S NO EVIDENCE FOR IT, FOOTNOTE TWO JUST COMES

12   RIGHT OFF --

13        THE COURT:  ALL RIGHT.  I'M NOT GOING TO DECIDE THAT

14   ISSUE TODAY.  I UNDERSTAND THAT THE ISSUE IS THERE.

15        MR. KRONENBERGER:  SO THEN THE QUESTION IS, IS THERE

16   A JUST REASON TO DELAY UNTIL 35 CAN LITIGATE THIS ISSUE.

17        BECAUSE WHAT'S GOING TO HAPPEN IF 35 WINS ITS MOTION, WE

18   HAVE TO COME BACK AND MOVE TO VACATE A JUDGMENT.  BECAUSE WE

19   ARE NOT TALKING ABOUT EVIDENCE THAT WAS DESTROYED, THIS IS

20   LARGELY A LEGAL ISSUE, NONE OF THIS EVIDENCE WAS ARGUABLY

21   DESTROYED.

22        SO WHAT WE ASK YOU, YOUR HONOR, IS TO DELAY YOUR DECISION

23   UNTIL THE END OF THE CASE.  WE HAVE MOVED TO EXPEDITE A

24   DECISION ON THIS EXACT ISSUE BECAUSE WE BELIEVE IT IS A BINARY

25   SITUATION.  HERE, WE BELIEVE THERE'S A PRIVACY SERVICE,

1    THEREFORE 35.CN WINS.  ONLINENIC SHOULD WIN, AND IT WOULD BE A

2    SHAME AND IT WOULD BE -- IT WOULD PUT 35 AND ONLINENIC IN A

3    VERY DIFFICULT SITUATION IF WE HAVE TO VACATE THIS DECISION

4    DOWN THE LINE.

5         LASTLY ON THE ISSUE OF DAMAGES, WE ASK THAT THE COURT

6    FACTOR IN THIS UNIQUE ARGUMENT THAT FACEBOOK HAS WHERE IT'S NOT

7    ONLINENIC OR IDENTITY SHIELD ENGAGED IN THE ACTIVITY, BUT IT'S

8    THESE THIRD PARTIES, AND LIABILITY IS IMPUTED TO ONLINENIC AND

9    IDENTITY SHIELD.  WE ASK THE COURT TO FACTOR IN THESE LEGAL

10   ISSUES OF FIRST IMPRESSION WHEN DETERMINING UNDER THE BANANA

11   ADS ANALYSIS, THE AMOUNT OF DAMAGES.

12             THE COURT:  THANK YOU, COUNSEL.

13             MR. KRONENBERGER:  THANK YOU.

14             THE COURT:  MR. KROLL.

15        MR. KROLL, OBVIOUSLY YOU SAW MY TENTATIVE, YOU'VE HEARD

16   THE PRESENTATION OF COUNSEL AGAINST THE TERMINATING SANCTIONS,

17   AND I WOULD APPRECIATE IT IF YOU DIRECTED YOUR COMMENTS TO

18   SPECIFICALLY THOSE POINTS.

19             MR. KROLL:  THANK YOU, YOUR HONOR.

20        A LOT TO UNPACK FROM THOSE ARGUMENTS.  THE SPECIAL MASTER

21   FOUND THAT 11 MILLION DOCUMENTS WERE DELETED, OF WHICH 3

22   MILLION WERE RESPONSIVE.  THIS WAS DONE INTENTIONALLY BY THE

23   DEFENDANTS.  AND WHEN I SAY THE DEFENDANTS, I'M ONLY REFERRING

24   TO ONLINENIC AND ID SHIELD, SO PERMIT ME THAT.

25             SPECIAL MASTER FOUND THAT THE DEFENDANTS INTENTIONALLY

1      DELETED 76.7 PERCENT OF THE SUPPORT TICKET ATTACHMENTS WHICH

2      ARE THE MOST RELEVANT PARTS OF THE DOCUMENTS.  SPECIAL MASTER

3      FOUND THAT THE DEFENDANTS INTENTIONALLY WITHHELD TWO YEARS

4      WORTH OF ELECTRONICALLY STORED INFORMATION, SPECIAL MASTER

5      FOUND THAT THE DEFENDANTS HID EVIDENCE BY DATA DUMPING,

6      PRODUCING 27 MILLION NONRESPONSIVE RECORDS TO HIDE 5,000

7      RESPONSIVE RECORDS.  THESE ARE ALL THE FINDINGS THAT WERE NOT

8      OBJECTED TO BY DEFENDANTS, WHICH THE COURT HAS ADOPTED.

9          AND MR. NARANCIC JUST RECENTLY DISCUSSED EXCULPATORY

10     EVIDENCE.  THIS IS EVIDENCE THAT WAS SUBMITTED TO THE SPECIAL

11     MASTER PRIOR TO HIS FINAL REPORT, WHO EVALUATED THOSE COMMENTS

12     AND FOUND THEM WANTING, AS WE THINK THE COURT SHOULD IN THIS

13     CASE.

14          THE COURT:  SO HELP ME TO UNDERSTAND THE ROLE OF THE

15     SUPPORT TICKET DATABASE IN THE BIGGER PICTURE OF THE CLAIMS

16     AGAINST THESE DEFENDANTS AND 35.CN.

17          MR. KROLL:  SO THE SUPPORT TICKET DATABASE DEALS WITH

18     COMMUNICATIONS BETWEEN THE DEFENDANTS AND THEIR CUSTOMERS.

19     E-MAILS, DOCUMENTS, ET CETERA, AND WE BELIEVE THAT IS THE

20     IMPORTANT PART FOR OUR ABILITY TO SHOW THAT THE DEFENDANTS

21     REGISTERED AND TRAFFICKED IN THE INFRINGING DOMAIN NAMES WITH A

22     BAD FAITH INTENT TO PROFIT.

23          NOW HOW DOES THAT GO THERE?  SO TO THE EXTENT THAT THE

24     DEFENDANTS WERE AWARE THAT THERE WAS A PROBLEM WITH THESE

25     DOMAIN NAMES AND CONTINUED TO LICENSE THEM TO THE DEFENDANTS --

1    TO THEIR CUSTOMERS FOR CONTINUED USE, IS EVIDENCE OF BAD FAITH

2    INTENT TO PROFIT.

3              THE COURT:  WOULDN'T THOSE TRANSACTIONS BE IN THE

4    TRANSACTIONAL DATABASE?  THAT IS, IF THEY ARE LICENSING AND

5    WHATEVER THEY ARE DOING WITH THEIR CUSTOMERS IN TERMS OF

6    SETTING UP THE DOMAIN NAMES?

7              MR. KROLL:  SO THAT'S WHY I HAVE MR. STEELE TO BE

8    ABLE TO ANSWER THOSE SPECIFIC QUESTIONS.

9              THE COURT:  FAIR ENOUGH.  I'M GOING TO PITCH A CURVE

10   BALL, SO COME ON UP.

11             MR. STEELE:  GOOD MORNING, YOUR HONOR.

12      I'VE HAD MORE OPPORTUNITY TO REVIEW THE DIFFERENT DATA

13   SETS THAT HAVE BEEN PRODUCED BY DEFENDANTS IN THE CASE.

14             THE COURT:  JUST REMEMBER TO SPEAK SLOWLY MR. STEELE,

15   THANK YOU VERY MUCH.

16             MR. STEELE:  SO THE TROUBLE TICKET DATABASE IS USED

17   BY THE DEFENDANTS BASED ON THE INFORMATION THAT WE HAVE SEEN

18   PRODUCED IN A BROADER CAPACITY THAN WAS SUGGESTED BY

19   MR. NARANCIC.

20      SO FOR EXAMPLE, THE SPECIAL MASTER IN HIS REPORT,

21   INDICATED THAT SOME OF THE ATTACHMENTS, FOR EXAMPLE THAT WERE

22   FOUND, WERE CEASE AND DESIST LETTERS FROM OTHER TRADEMARK

23   OWNERS.  THE DATABASE WAS USED AS A METHOD OF COMMUNICATING

24   GENERALLY WITH ONLINENIC, BOTH WITH ITS CUSTOMERS AND WITH

25   OUTSIDE INDIVIDUALS.

1        SO FOR EXAMPLE, IF AN ATTORNEY WANTED TO REPORT A DOMAIN

2   NAME THAT WAS A PROBLEM, ONLINENIC SUGGESTED, I DON'T BELIEVE

3   THAT THEY REQUIRED, BUT IT SUGGESTED THAT THESE INDIVIDUALS

4   CREATE AN ACCOUNT IN THE DATABASE AND THEN SUBMIT THE

5   INFORMATION INTO THE DATABASE FOR PROCESSING.

6        SO SOME OF THE INFORMATION THAT WAS FOUND IN THE TROUBLE

7   TICKET DATABASE WERE NOTICES OF TRADEMARK INFRINGING DOMAIN

8   NAMES BY OTHER TRADEMARK OWNERS, FOR EXAMPLE MICROSOFT, JUST TO

9   PICK ONE AT RANDOM.  SO THE DATABASE WOULD HAVE, AS MR. KROLL

10  INDICATED, A LARGE AMOUNT OF INFORMATION THAT ONLINENIC HAD

11  ABOUT TRADEMARK INFRINGING AND CYBERSQUATTING DOMAIN NAMES.  SO

12  THE DATABASE HAD MUCH BROADER INFORMATION THAN MERELY CUSTOMER

13  INFORMATION OR CUSTOMER COMMUNICATION BETWEEN IT.

14       AND THEN AS TO YOUR HONOR'S SPECIFIC QUESTION ABOUT

15  WHETHER THE DATABASE HAD OR WHETHER THE TRANSACTIONAL DATABASE

16  HAD THAT INFORMATION, IT WOULD NOT.  THE TRANSACTIONAL DATABASE

17  ONLY HAD INFORMATION ABOUT THE PARTICULAR USER AND WHAT DOMAIN

18  NAMES WERE REGISTERED AND THE CORRELATION BETWEEN USER ACCOUNTS

19  AND THOSE PARTICULAR REGISTRATIONS, AND SOME FINANCIAL

20  INFORMATION AS WELL.

21       AND SO THE OTHER DATABASES WOULDN'T CONTAIN NECESSARILY

22  THIS TYPE OF COMMUNICATION INFORMATION.

23            THE COURT:  OKAY.  THANK YOU.

24            MR. STEELE:  I SUSPECT I WILL BE BACK.

25            THE COURT:  DON'T GO TOO FAR.

1           MR. KROLL:  THANK YOU, YOUR HONOR.

2       THE SPECIAL MASTER ALSO FOUND THAT THE PLAINTIFFS WERE

3   PREJUDICED BY DEFENDANT'S INTENTIONAL DESTRUCTION OF DATA.  AND

4   MR. NARANCIC HAS SUGGESTED THAT ITS OUR OBLIGATION TO SHOW

5   SPECIFICALLY HOW WE WERE PREJUDICED.  WE HAVE HIGHLIGHTED THOSE

6   GENERAL AREAS, BUT IT'S HARD TO DISCUSS THE SPECIFICS WHEN THE

7   DOCUMENTS HAVE BEEN DESTROYED.

8       THE ADVISORY COMMITTEE FOR -- THE 2015 ADVISORY COMMITTEE

9   FOR THE RULE 37(E) TALKS ABOUT THAT AN INFERENCE SHOULD BE MADE

10  THAT IF THE DESTRUCTION WAS INTENTIONAL, THERE SHOULD BE AN

11  INFERENCE OF PREJUDICE, WHICH WE BELIEVE THE COURT SHOULD ADOPT

12  HERE, WHICH MEANS THAT THE BURDEN WOULD BE ON THE DEFENDANTS TO

13  SHOW WHY IT WAS NOT PREJUDICIAL.  BUT AGAIN, WE SUPPORT THE

14  SPECIAL MASTER'S FINDING THAT THE DESTRUCTION WAS PREJUDICIAL

15  TO THE DEFENDANTS.

16      THE NEXT SET OF ARGUMENTS RAISED BY MR. NARANCIC INVOLVED

17  THE LEGAL QUESTIONS OF WHETHER OR NOT HIS CLIENTS WERE THE

18  REGISTRANT OF THE DOMAIN NAME.  AND IT'S SOMEWHAT TELLING THAT

19  IF YOU WERE TO LOOK AT DEFENDANT'S ANSWER TO THE SECOND AMENDED

20  COMPLAINT, DEFENDANTS ADMIT THAT ID SHIELD IS LISTED AS THE

21  REGISTRANT IN THE "WHO IS" DIRECTORY.

22      RECENTLY THE COURT IN ARIZONA, JUDGE SNOW, IN THE MEHTA

23  CASE, FOUND THAT IF A DEFENDANT IS -- I'M SORRY, THE DEFENDANT

24  IS A REGISTRANT FOR PURPOSES OF THE ACPA, IF IT IS LISTED AS

25  THE REGISTRANT IN THE "WHO IS" DIRECTORY, WHICH IS OUR ARGUMENT

1    AS WELL.

2         AND THEN DEALING WITH 3773, PRIVACY VERSUS PROXY SERVICE,

3    THE ARGUMENT HAS BEEN REJECTED, THE ARGUMENT RAISED BY

4    DEFENDANTS HAVE BEEN REJECTED BY THE COURTS.  THE ARGUMENT IS

5    3773 IS IN THE REGISTRAR ACCREDITATION AGREEMENT.  UNDER ICAN,

6    THERE IS NO PRIVATE RIGHT OF ACTION AND THEREFORE YOU CANNOT

7    BRING A LAWSUIT ON THAT BEHALF.

8         WHAT THEY MISS IS WE ARE NOT BRINGING THE LAWSUIT BASED ON

9    3773 IN THE REGISTRAR ACCREDITATION AGREEMENT, RATHER ICAN

10   REQUIRES 3773 TO BE INCORPORATED INTO THE REGISTRATION

11   AGREEMENTS OF THE REGISTRAR.

12        SO ONLINENIC HAS THAT INCORPORATED IN ITS REGISTRATION

13   AGREEMENT.  AND UNDER THAT REGISTRATION AGREEMENT, WHICH

14   DOESN'T HAVE A PRIVATE CAUSE OF ACTION LIMITATION, WE HAVE

15   SOUGHT TO SHOW THAT 3773 APPLIES, THAT DOMAIN ID SHIELD DID NOT

16   RESPOND WITHIN SEVEN DAYS TO OUR NOTICE OF ACTIONABLE HARM, AND

17   THEREFORE ARE LIABLE FOR THE HARM CAUSED BY THE INFRINGING

18   DOMAIN NAMES.

19        AND FINALLY, THE INTERESTING ISSUE OF PRIVACY VERSUS PROXY

20   SERVICE THAT MR. KRONENBERGER RAISED, THE DEFINITION OF A PROXY

21   SERVICE UNDER ICAN, IS IF THE PROXY SERVICE LISTS ITSELF AS THE

22   REGISTRANT IN THE REGISTRANT DATA.

23        AND WE HAVE THAT.  OUR SECOND AMENDED COMPLAINT HAS AS AN

24   EXHIBIT, ALL OF THE REGISTRATIONS FOR THE INFRINGING DOMAIN

25   NAMES, AND IT LISTS DOMAIN ID SHIELD AS THE REGISTRANT, THAT IS

1      PROOF ENOUGH THAT IT'S A PROXY SERVICE.

2           A PRIVACY SERVICE, BY CONTRAST, ACTUALLY LISTS THE ACTUAL

3      OWNER OF THE -- I'M SORRY -- THE BENEFICIAL USER OF THE DOMAIN

4      NAME.  AND BECAUSE IT'S LISTED ID SHIELD.

5           THERE ARE OTHER PIECES OF EVIDENCE WITH RESPECT TO THIS,

6      THERE IS THE ID SHIELD SERVICE AGREEMENT THAT SPECIFIES THAT

7      THE DOMAIN NAMES ARE REGISTERED IN THE NAME OF ID SHIELD, NOT

8      IN THE NAME OF THEIR LICENSE SEE.

9           THE COURT:  AGAIN, I'M NOT GOING TO DECIDE THIS

10     ISSUE, SO I UNDERSTAND IT'S AN INTERESTING ISSUE, BUT I'M

11     REALLY FOCUSED ON THE IMPACT OF MISSING DOCUMENTS FROM THE

12     TICKET SUPPORT DATABASE.

13          AND IN RESPONSE TO THAT, ONLINENIC HAS ARGUED, WELL, YOU

14     KNOW, THERE IS EXCULPATORY EVIDENCE, THE ARGUMENT OF, LET THIS

15     GO TO THE MERITS.  WHAT I'M REALLY INTERESTED IN IS, WELL,

16     WHAT'S THE IMPACT OF THAT DESTRUCTION?  AND TO A CERTAIN

17     EXTENT, YOU DON'T KNOW WHAT'S NOT THERE, BUT YOU DID GET NOT AN

18     UNSUBSTANTIAL PRODUCTION OUT OF THAT DATABASE.

19          AND I'M JUST LOOKING CAREFULLY TO SEE IF THERE'S SOME

20     APPROPRIATE REMEDY OTHER THAN TERMINATION.

21          MR. STEELE:  I UNDERSTAND.  THANK YOU, YOUR HONOR.

22          IN THE FACE OF A MASS DESTRUCTION OF EVIDENCE, COURTS HAVE

23     FOUND THAT TERMINATING SANCTIONS IS THE ONLY THING THAT'S

24     APPROPRIATE.  THE IDEA OF AN ADVERSE JURY INSTRUCTION IS

25     SOMEWHAT DIFFICULT, AS MR. NARANCIC PROPOSED, ONE BECAUSE HIS

1    FOCUS WAS ON WHETHER OR NOT THE DEFENDANTS ARE THE REGISTRANT

2    OF THE DOMAIN NAMES, WHICH ISN'T THE EVIDENCE THAT WAS

3    DESTROYED, THE EVIDENCE THAT WAS DESTROYED GOES MUCH MORE TO

4    BAD FAITH INTENT TO PROFIT.

5         BUT AGAIN, WE DON'T KNOW WHAT WAS LOST, AND BECAUSE OF

6    THAT, THAT HAS AN IMPACT ON OUR ABILITY TO FULLY REBUT ANY

7    EVIDENCE THAT DEFENDANTS SUBMIT THAT THEY DID NOT REGISTER THE

8    DOMAIN NAMES WITH A BAD FAITH INTENT TO PROFIT.

9         BUT OUR GENERAL FOCUS, YOUR HONOR, IS TERMINATING

10   SANCTIONS ARE APPROPRIATE BECAUSE OF THE MASS DESTRUCTION AND

11   THE PENALTY FOR HAVING THE TERMINATING SANCTIONS IS NOT ONLY

12   WITH RESPECT TO THIS CASE, AND CERTAINLY THIS ISN'T THE FIRST

13   TIME THAT DEFENDANTS HAVE BEEN THE SUBJECT OF COURT ORDERS AND

14   SANCTIONS.

15        WE HAVE SUBMITTED INFORMATION TO THE COURT IN OUR PAPERS

16   REGARDING JUDGE FOGEL'S RESPONSE TO ONLINENIC'S GAMESMANSHIP IN

17   THAT CASE.  ONLINENIC HAS CERTAINLY SHOWN GAMESMANSHIP IN THIS

18   CASE AS WELL, MAKING MISREPRESENTATIONS TO THE COURT,

19   MISREPRESENTATIONS TO THE SPECIAL MASTER.

20        BUT THE OTHER PURPOSE OF TERMINATING SANCTIONS AND THE

21   ULTIMATE SANCTION, IS THE FACT THAT IT NEEDS TO BE KNOWN THAT

22   PARTIES CANNOT PROFIT BY MASS DESTRUCTION OF EVIDENCE.  THE

23   DEFENDANT SHOULD NOT BENEFIT FROM IT.  IT SHOULD BE KNOWN THAT

24   IF IN FACT YOU ARE INVOLVED IN A CASE AND YOU DESTROY MASSIVE

25   AMOUNTS OF EVIDENCE, THAT THE ULTIMATE SANCTION IS THE PENALTY.

1    SO IT'S BOTH A GENERAL DETERRENCE AS WELL AS A SPECIAL

2    DETERRENCE APPROACH, YOUR HONOR.

3              THE COURT:  ALL RIGHT.

4         THANK YOU, MR. KROLL.

5         LET'S -- I WOULD LIKE TO TURN TO THE PROPOSED JUDGMENT,

6    WHICH IS QUITE LONG AND THOROUGH.

7              MR. NARANCIC:  YOUR HONOR, I'M SORRY.  MAY I HAVE

8     90 SECONDS IN REPLY?

9              THE COURT:  NO, I WANT TO MOVE ON.  WE HAVE LOOKED AT

10    IT THOROUGHLY.  I WILL GIVE YOU A CHANCE TO WRAP UP WHEN WE

11    WRAP UP FOR THE DAY, OF COURSE.

12        I WOULD LIKE TO TURN TO THE PROPOSED JUDGMENT -- PROPOSED

13   DEFAULT JUDGMENT, WHICH HAS A NUMBER OF PARTS AND RAISES A

14   NUMBER OF QUESTIONS.

15        THE FIRST IS IT PRESENTS LIKE A FINDINGS OF FACT, THERE'S

16   A LOT OF FINDINGS OF FACT AND CONCLUSIONS OF LAW.  I HAVE TO

17   SAY I HAVE LOOKED AND I HAVEN'T SEEN A DEFAULT JUDGMENT SET UP

18   THAT WAY, CERTAINLY NOT ONE I'VE ISSUED AND NOT ONE THAT I'M

19   AWARE OF ARISING OUT OF THIS KIND OF CASE HERE IN THE NORTHERN

20   DISTRICT.

21        SO THAT'S A FIRST QUESTION IS WHY WOULD THAT BE

22   APPROPRIATE, EITHER OF THOSE SANCTIONS BE APPROPRIATE?

23        AND THEN I MOVE VERY QUICKLY, AND I WOULD JUST LIKE TO

24   HEAR WHAT YOU HAVE TO SAY ON THAT, BUT THEN I THINK IT'S

25   HELPFUL TO MOVE TO THE DAMAGES SECTION.

1          AND I WOULD LIKE TO HEAR FROM BOTH SIDES AS TO THE USE OF

2     A FORMULA, WHAT THAT FORMULA WOULD LOOK LIKE, AND AS WE HAVE

3     FROM SOME OF OUR OTHER CASES HERE IN THE NORTHERN DISTRICT, AND

4     THEN TOUCH ON ATTORNEY'S FEES AND COSTS, AND THEN REALLY THE

5     SCOPE OF THE INJUNCTION IS SORT OF A SEPARATE ISSUE.

6          SO LOTS OF QUESTIONS THERE.  AND MR. KROLL, I WILL START

7     WITH YOU.  AND LET'S START WITH THE STATEMENT OF FACT,

8     CONCLUSIONS OF LAW, WHAT'S THE BASIS FOR THAT, BRIEFLY.

9               MR. KROLL:  THANK YOU, YOUR HONOR.

10         THERE ARE TWO BASIS FOR IT.

11         THE FIRST IS WITH RESPECT TO THE FACT THAT IT'S AN

12    INJUNCTION THAT WE ARE SEEKING, THE RULE 65(D), SUGGESTS THAT

13    THE REASONS TO SUPPORT THE INJUNCTION ARE NECESSARY.  AND SO

14    THESE ARE THE FACTUAL UNDERPINNINGS AND THE LEGAL UNDERPINNINGS

15    FOR THE INJUNCTION.

16         THE SECOND IS THAT WHEN THERE IS A DEFAULT, THE FACTS

17    ADMITTED IN THE COMPLAINT ARE -- THE FACTS IN THE COMPLAINT ARE

18    ADMITTED AS BEING TRUE.  IN THIS CASE, THE COMPLAINT DEALS WITH

19    NOT ONLY DOMAIN ID SHIELD AND ONLINENIC, BUT IT ALSO DEALS WITH

20    35.CN.  AND WHAT WE HAVE DONE IN OUR PROPOSED JUDGMENT IS TAKE

21    OUT ANYTHING RELATING TO 35.CN SO THAT THE FOCUS IS JUST ON

22    DOMAIN ID SHIELD AND ONLINENIC.

23         AND IN FACT, IF YOU WERE TO GO THROUGH THE STATEMENT OF

24    FACTS, WHICH I'M HAPPY TO DO WITH YOU, ALTHOUGH I THINK IT WILL

25    TAKE TOO LONG, THEY ARE TAKEN DIRECTLY FROM OUR SECOND AMENDED

1        COMPLAINT.  MANY OF THE FACTS HAVE BEEN ADMITTED IN THE ANSWERS

2        BY DOMAIN ID SHIELD AND ONLINENIC, BUT NOT ADMITTED IN 35.CN'S

3        ANSWER.  SO I WAS TRYING TO CALL THAT OUT.

4               THE COURT:  SO THE CASE LAW CAUTIONS US, YES, WHEN

5        YOU STRIKE AN ANSWER, THE FACTS IN THE COMPLAINT ARE DEEMED

6        ADMITTED.  THAT IS THE WELL PLED FACTS OR THE SUBSTANTIATED

7        FACTS.  AND FACTS THAT ARE JUST SET OUT AS CONCLUSIONS ARE NOT.

8               AND I THINK THAT'S WHERE I HAVE PARTICULARLY HAVE SOME

9        CONCERNS.  AGAIN, I'M NOT SURE THAT THIS ELABORATE STATEMENT OF

10       FACTS IS THE WAY TO GO, OR IS EVEN APPROPRIATE.  BUT THERE ARE

11       SOME STATEMENT OF FACTS -- THERE ARE SOME FACTS, LET ME JUST

12       GIVE YOU A COUPLE OF EXAMPLES, THAT I THINK REMAIN OPEN.

13              ONE IS THE SECOND AMENDED COMPLAINT, PARAGRAPH 30, THAT

14       DOMAIN ID SHIELD HAS NO BANK ACCOUNTS OR ASSETS AND IS

15       UNDERCAPITALIZED.  I THINK THAT'S FACT 15 IN YOUR PROPOSED

16       JUDGMENT.

17              MR. KROLL:  YES, YOUR HONOR.

18              THE COURT:  I DON'T SEE ANY FACTS SUPPORTING THAT, I

19       DON'T THINK THAT ONE IS ADMITTED.

20              MR. KROLL:  YOU ARE CORRECT, YOUR HONOR.

21              THE COURT:  THERE IS A -- YOUR FACT 28, DOMAIN ID

22       SHIELD IS A DE FACTO SUBSIDIARY OF ONLINENIC.

23              I LOOKED AT THAT, I THOUGHT, WELL, ARE YOU ASKING ME TO

24       MAKE A FACTUAL FINDING THAT THEY ARE A SUBSIDIARY?  I MEAN,

25       THAT'S WHAT A DE FACTO SUBSIDIARY IS.  SO IT WAS A LITTLE

1      BIT -- I WASN'T QUITE SURE WHAT YOU WERE ASKING THE COURT TO DO

2      THERE.

3            PARAGRAPH -- THERE'S THE STATEMENT IN YOUR FACT 37 THAT

4      THE LICENSEES USE INFRINGING DOMAIN NAMES IN CONNECTION WITH

5      E-MAIL SERVICES, AT LEAST THE FOLLOWING DOMAIN NAMES HAVE

6      DOMAIN NAME SERVERS CONFIGURED TO FACILITATE E-MAIL.

7            AGAIN, I'M NOT QUITE SURE WHAT THE BASIS FOR THAT

8      STATEMENT IS.

9            MR. KROLL:  WITH RESPECT TO THAT IN PARAGRAPH 37, AND

10     38, THEY ARE BASICALLY RELATED TO EACH OTHER.  AND THEY ALL --

11     THE COMPLAINT REFERS TO EXHIBIT A, WHICH HAS A NUMBER OF SCREEN

12     SHOTS THAT REFLECT THAT.

13           THE COURT:  RIGHT.

14     BUT IT'S JUST THAT, IT'S A SCREEN SHOT, IT'S NOT AS

15     COMPREHENSIVE AS WHAT'S ALLEGED.  BUT MAYBE I'M NOT FULLY

16     APPRECIATING THE SCOPE OF EXHIBIT 8.

17           MR. STEELE:  I THINK THAT'S CORRECT, YOUR HONOR.

18     SO I PREPARED THAT EXHIBIT, THE EXHIBIT SHOWS THAT THE

19     DOMAIN NAMES IN QUESTION HAD THE PARTICULAR E-MAIL EX CHANGE

20     RECORDS CONFIGURED FOR THEM SO THAT FACT WOULD SUPPORT THE

21     STATEMENTS IN 37 AND 38, ON ITS FACE.

22           THE COURT:  I SEE.

23           MR. STEELE:  I'M HAPPY TO WALK THE COURT THROUGH THE

24     TECHNICAL ASPECT OF THAT IF IT WANTS.

25           THE COURT:  I WILL TAKE A CLOSER LOOK AT EXHIBIT 8.

1        AND THEN MY LAST COMMENT WAS WITH REGARDS TO PARAGRAPHS 41

2    AND 42, OR FACTS 41 AND 42, IN YOUR PROPOSED JUDGMENT.  LET'S

3    SEE, WELL, NO, THE FIRST IS 41, IS YOUR OWN NOTICES, RIGHT?

4            MR. KROLL:  YES, YOUR HONOR.

5            THE COURT:  GOT IT.  OKAY.  AND THEN THE LACK OF

6    RESPONSE.  OKAY.  THAT MAKES SENSE.

7            MR. KROLL:  AND YOUR HONOR, THE COURT MAY RECALL THAT

8    THE DEFENDANTS HAD NO OPPOSITION TO OUR -- WHEN WE FILED THIS

9    ORIGINALLY DURING THE SUMMER, DEFENDANTS HAD NO OPPOSITION TO

10   IT, AND THEREFORE, IN A SENSE, STIPULATED TO THE FACT THAT

11   THESE FACTS ARE ACCURATE AND THIS JUDGMENT SHOULD BE ENTERED.

12           THE COURT:  WELL, I GAVE THEM AN OPPORTUNITY TO

13   WITHDRAW THAT AND FILE AN OPPOSITION TO THE MOTION.

14           MR. KROLL:  YES, YOUR HONOR.

15           THE COURT:  OKAY.  LET'S TURN TO THE DAMAGES

16   QUESTION, MR. KROLL.

17       THAT IS THE STATUTORY DAMAGES, THAT'S QUITE A BREADTH THAT

18   THE -- THAT CONGRESS GIVES THE COURTS.  AND I'M SURE YOU ARE

19   AWARE FROM YOUR OWN EXPERIENCE, THAT THOSE DAMAGES ARE ASSESSED

20   AND LAND IN A WIDE VARIETY OF PLACES, OR ALL ALONG THAT

21   CONTINUUM.

22       AND OBVIOUSLY I APPRECIATE THE REQUEST AT A HUNDRED

23   THOUSAND DOLLARS PER STATUTORY VIOLATION, BUT WE DO HAVE WHAT I

24   THINK IS SOME HELPFUL GUIDANCE IN THIS DISTRICT ON REALLY

25   TAKING A CLOSE LOOK AT THE NATURE OF THE INFRINGING OR THE

1      NAMES THAT ARE USED AND SORT OF ASSIGNING VALUES TO VARIOUS

2      LEVELS.

3          SO WHY SHOULDN'T THE COURT OR WHAT REASONABLE, IF ANY, DO

4      YOU HAVE AS TO WHY THE COURT SHOULDN'T WORK ITS WAY THROUGH A

5      FORMULA ALONG THE LINES OF IN THE FACEBOOK BANANA ADS CASE.

6              MR. KROLL:  SO WE BELIEVE THAT THE COURTS SHOULD

7      FOCUS ON THE UNIQUE CIRCUMSTANCES OF EACH CASE.  AND IN

8      DETERMINING THE STATUTORY DAMAGES UNDER THE ACPA, THE COURT

9      SHOULD LOOK AT THE NON EXHAUSTIVE FACTORS, THE BAD FAITH

10     FACTORS, AS WELL AS OTHER FACTORS WHICH THE COURT IN BANANA ADS

11     HAS DONE.

12         THE PROBLEM IS ASSIGNING A SPECIFIC DOLLAR AMOUNT TO A

13     FACTOR, WHICH SEEMS ARBITRARY FOR THE AMOUNT.

14         JUST FOR AN EXAMPLE, THE COURT IN BANANA ADS SAID IF YOU

15     REGISTERED 1 TO 9 DOMAIN NAMES, WE DON'T BELIEVE THAT'S A GOOD

16     STARTING POINT, ESPECIALLY GIVEN THE FACTS IN THIS CASE.

17         SO IN THIS CASE, DEFENDANTS ARE A SERIAL CYBERSQUATTER.

18     JUDGE FOGEL HAS FOUND THEM TO HAVE CYBERSQUATTED IN THE PAST,

19     AND IN THE FACE OF 663, IDENTICAL OR CONFUSINGLY SIMILAR DOMAIN

20     NAMES TO THE VERIZON TRADEMARK, ISSUED AN AWARD OF $50,000 PER

21     DOMAIN NAME.

22         SO JUST AS A STARTING POINT, ANY DAMAGES HAS TO BE BEYOND

23     THAT, BECAUSE THE PURPOSE OF STATUTORY DAMAGES IS DETERRENCE,

24     IT'S PUNISHMENT AND DETERRENCE.  THE DEFENDANTS WERE NOT

25     DETERRED, $50,000 PER DOMAIN NAME WAS NOT ENOUGH TO GET THEM TO

```
1     STOP CYBERSQUATTING.  SO WE BELIEVE THE COURT SHOULD TAKE THAT

2     INTO ACCOUNT.

3          THE BANANA ADS AND THE BITTORRENT CASE ALSO DID NOT

4     INVOLVE SPOLIATION OF EVIDENCE.  AND AGAIN, THERE'S A

5     PUNISHMENT ASPECT TO THAT.  IN THIS CASE, THERE HAS BEEN NOT

6     ONLY SPOLIATION, BUT GAMESMANSHIP AND DECEPTIVE BEHAVIOR THAT

7     SHOULD NOT BE REWARDED.

8          THIRD, UNLIKE BANANA ADS AND BITTORRENT, ONLINENIC IS A

9     REGISTRAR ACCREDITED BY ICAN AND THEREFORE IS IN A POSITION OF

10    TRUST.  THE DEFENDANTS IN BANANA ADS AND BITTORRENT WERE

11    COMPETITORS AND NOT A REGISTRAR.  AND AGAIN, BECAUSE THEY ARE A

12    REGISTRAR IN A POSITION OF TRUST, THE PENALTY SHOULD BE MUCH

13    HIGHER.

14         AND FINALLY, YOUR HONOR, THERE IS, AS WE'VE EXPLAINED IN

15    EXHIBIT A OF OUR COMPLAINT, THERE IS A HIGH DEGREE OF

16    MALICIOUSNESS AND WRONGDOING HERE WITH MALWARE AND FISHING AND

17    DOMAIN NAMES CONFIGURED TO FACILITATE E-MAILS, HACKING TOOLS,

18    ET CETERA.

19         PARAGRAPHS 5, 67 AND 68 OF OUR SECOND AMENDED COMPLAINT

20    DESCRIBES THAT.  SO WE BELIEVE --

21              THE COURT:  GIVE ME THE PARAGRAPH NUMBER AGAIN.

22              MR. KROLL:  5, 67 AND 68.

23         SO WE BELIEVE AS A RESULT OF ALL OF THAT, WE ARE DEALING

24    WITH EGREGIOUS BEHAVIOR, AND THAT THE ONLY PROPER STATUTORY

25    DAMAGES IS A HUNDRED THOUSAND DOLLARS PER DOMAIN NAME.
```

1          THE COURT:  ALL RIGHT.

2       LET'S JUST -- ATTORNEYS FEES.  IF I SUPPORT THE

3    TERMINATION SANCTIONS, I THINK THAT, IN MY VIEW, GETS ME TO

4    EXCEPTIONAL, BUT I WOULD BE INCLINED TO DEFER THAT AND AWARD TO

5    LATER IN THE CASE.  DO YOU HAVE A VIEW ON THAT?

6          MR. KROLL:  THAT'S ACCEPTABLE, YOUR HONOR.

7    ESPECIALLY, ON TOP OF THE FACT THAT WHEN WE FILED OUR MOTION IN

8    THE SUMMER, OUR ATTORNEY'S FEES WERE AT A DIFFERENT POINT THAN

9    THEY ARE NOW.  SO WE APPRECIATE THE OPPORTUNITY TO SUBMIT

10   ADDITIONAL INFORMATION ON THEM.

11         THE COURT:  AND A QUESTION IN MY MIND THAT I HAVEN'T

12   REACHED A CONCLUSION ON IS I DON'T FIND THIS SUBMISSION AT THIS

13   STAGE SUFFICIENT FOR THE AMOUNT THAT'S ASKED.

14      THERE'S A SUMMARY CHART OF ATTORNEYS WHO BILLED TIME AND

15   THE AMOUNT OF TIME -- OR NO, I THINK THE CHART IS OF THE TASKS,

16   I HAVE THE DECLARATION RIGHT HERE, THE TASKS AND THE AMOUNT OF

17   TIME FOR THE MOTION AND DISCOVERY, ET CETERA.

18         MR. KROLL:  RIGHT.

19         THE COURT:  AND THEN THERE'S OF COURSE THE BREAKDOWN

20   OF COUNSEL AND BILLING RATES AND HOURS.  BUT THE TASKS, WHAT

21   WAS DONE IS -- I DON'T THINK IS SUFFICIENTLY DETAILED TO

22   SUPPORT AN AWARD AT THIS TIME.

23      SO A THOUGHT, I'M JUST TRYING TO FIGURE OUT IF I WOULD ASK

24   FOR MORE BRIEFING ON AN AMOUNT, IF I WERE TO AWARD ATTORNEY'S

25   FEES, IF I WOULD ASK FOR MORE BRIEFING ON THE AMOUNT FROM BOTH

1    SIDES NOW OR JUST DEFER ALL OF THAT.  I HAVEN'T DECIDED.

2            MR. KROLL:  I UNDERSTAND, YOUR HONOR.

3        IF THE COURT DESIRES US TO BE MORE SPECIFIC ABOUT OUR

4    ATTORNEY'S FEES, WE WILL BE HAPPY TO DO THAT.  IT MAKES SENSE

5    TO WAIT UNTIL THE END OF THE CASE TO DO THAT, BUT IF THE COURT

6    PREFERS SOMETHING NOW, WE WOULD BE HAPPY TO PROVIDE SOMETHING.

7            THE COURT:  OKAY.

8        LET'S TURN TO THE DOMAIN NAME ISSUE.  THERE'S REALLY TWO

9    PARTS HERE.  THE TRANSFER OF DOMAIN NAMES AND THEN THE SCOPE OF

10   THE PERMANENT INJUNCTION, AND THEY KIND OF RUN INTO EACH OTHER.

11   AND LET ME TELL YOU WHAT I MEAN.

12       YOU SAW IN MY TENTATIVE, MY CONCERN ON THE TRANSFER OF

13   DOMAIN NAMES, TO THE EXTENT IT REACHES BEYOND THE NAMES THAT

14   ARE SPECIFICALLY AT ISSUE IN THIS CASE OR THE INFRINGING, WHAT

15   HAS BEEN REFERRED TO AS THE INFRINGING NAMES, AND REACHES MUCH

16   MORE BROADLY.  AND WHAT IS THE BASIS FOR THAT.

17           MR. KROLL:  WE AGREE, YOUR HONOR, IT SHOULD BE

18    LIMITED TO THE INFRINGING DOMAIN NAMES.

19           THE COURT:  OKAY.  THAT MAKES THAT PART EASY.

20       THANK YOU.

21       OKAY.  AND THEN WITH REGARDS TO THE SCOPE OF THE PERMANENT

22   INJUNCTION, AS I SAID, I ALWAYS -- I GO THROUGH THIS, I ALWAYS

23   HAVE CONCERNS ABOUT REQUESTS THAT ARE MADE IN INJUNCTIONS WHERE

24   IT'S I HAVE TO THINK ABOUT, WELL, HOW WOULD THAT BE

25   ENFORCEABLE, HOW WOULD THAT BE ENFORCED, WHICH CAN OFTEN BE AN

1    ISSUE.

2             MR. KROLL:  RIGHT.

3             THE COURT:  AND I THINK I GAVE YOU AN EXAMPLE OF

4    SUBSECTION F, BUT LET ME BE MORE HELPFUL.  PARAGRAPH 101,

5    SUBSECTION F, WHICH IS ON PAGE 13 OF THE PROPOSED JUDGMENT.

6    AGAIN, THERE'S NOT A -- YOU ARE NOT PUTTING DEFENDANTS OUT OF

7    BUSINESS.

8             MR. KROLL:  WE AGREE WITH YOUR HONOR.

9        WE LOOKED AT THAT AND WE BELIEVE WHAT THE LANGUAGE SHOULD

10   READ IS CONTINUING TO PROVIDE DOMAIN NAME REGISTRATION SERVICES

11   TO THE LICENSEES OF THE INFRINGING DOMAIN NAMES.  LIMITING IT

12   TO THE 35 DOMAIN NAMES THAT WE'VE IDENTIFIED IN OUR COMPLAINT.

13            THE COURT:  ALL RIGHT.  THAT ADDRESSES A NUMBER OF

14   THE COURT'S CONCERNS ON SCOPE, BOTH AS TO TRANSFER AND THE

15   SCOPE OF THE INJUNCTION.  SO I WILL KEEP THAT IN MIND.

16       THANK YOU.

17            MR. KROLL:  THANK YOU, YOUR HONOR.

18            THE COURT:  OKAY.  THANK YOU, MR. KROLL.

19       ALL RIGHT.  MR. NARANCIC, YOU'VE GIVEN ME A LOT TO THINK

20   ABOUT AND THAT'S WHY I LIKE TO HAVE ORAL ARGUMENT,

21   NOTWITHSTANDING MY TENTATIVES, IT'S BECAUSE I HAVE QUESTIONS

22   AND I WANT TO HEAR MORE FROM EACH SIDE.

23       NOW I'M ASKING YOU TO MOVE INTO AN AREA THAT YOU WOULD

24   PREFER UNDOUBTEDLY NOT TO, OR NOT TO HAVE TO, BUT

25   NOTWITHSTANDING YOUR PRESENTATION EARLIER, I WANT TO TAKE THIS

1    OPPORTUNITY TO TURN TO AND ADDRESS THE PROPOSED DEFAULT

2    JUDGMENT.

3         I DON'T KNOW IF YOU HAVE A VIEW OR A COMMENT ON INCLUDING

4    THE STATEMENT OF FACTS, SO IF YOU WOULD LIKE TO ADDRESS THAT,

5    WE WILL START THERE, AND THEN LET'S MOVE TO DAMAGES.

6         MR. NARANCIC:  YES.  THANK YOU, YOUR HONOR.

7         I THINK THAT THERE'S A PROPER DISTINCTION BETWEEN THE

8    REASONS FOR JUDGMENT AND THE JUDGMENT.  AND I THINK THAT TO THE

9    EXTENT THAT AN INJUNCTION IS APPROPRIATE, I THINK THOSE REASONS

10   SHOULD BE IN THE RULING, NOT IN THE JUDGMENT ITSELF.

11        I THINK THAT FOR INSTANCE, PARAGRAPH 41, WHICH THE COURT

12   MAY HAVE REFERRED TO --

13            THE COURT:  AND I'M SORRY, ARE YOU REFERRING TO --

14            MR. NARANCIC:  OF THE PROPOSED JUDGMENT, SORRY, I

15   WILL LET YOU GET THERE.

16            THE COURT:  I'M THERE.  GO AHEAD.

17            MR. STEELE:  EXCUSE ME, I'M SO SORRY TO INTERRUPT.

18        WOULD YOU MIND SPEAKING UP, I'M HAVING A HARD TIME

19   HEARING.  THANK YOU SO MUCH.

20        PARDON ME, YOUR HONOR.

21            MR. NARANCIC:  I SUPPOSE WHAT I OBJECT TO IS ATTEMPTS

22   HERE TO PUT IN FACTS THAT MAY TAKE ADVANTAGE OF THE RULE THAT

23   IN A DEFAULT, ALL ALLEGATIONS, OR AT LEAST ALL WELL PLED

24   ALLEGATIONS ARE DEEMED TO BE TRUE.

25        FOR INSTANCE IN 41, PARAGRAPH 41 OF THE PROPOSED

1    COMPLAINT, IT STATES, PLAINTIFF'S AUTHORIZED REPRESENTATIVE

2    SEND AT LEAST FIVE NOTICES TO ID SHIELD WITH EVIDENCE THAT THE

3    INFRINGING DOMAIN NAMES CAUSED PLAINTIFFS ACTIONABLE HARM AND

4    REQUESTING THAT ID SHIELD DISCLOSE THE IDENTITIES OF THE

5    REGISTRANTS.

6        AND WHAT I'M CONCERNED ABOUT IS ALLEGATIONS OR STATEMENTS

7    OF FACT OF THAT SORT ARE NOT SUPPORTED BY THE EVIDENCE THAT'S

8    IN THE RECORD.  THAT'S WHAT I'M CONCERNED ABOUT.

9        SO FOR INSTANCE ON PAGE 8 --

10        THE COURT:  WELL, WHAT IS IT ABOUT THAT FACT THAT YOU

11    SAY IS NOT SUPPORTED BY THE EVIDENCE?

12        MR. NARANCIC:  WELL, ON PAGE 8 OF MY OPPOSITION, I

13    PRODUCE AN E-MAIL THAT TENDS TO UNDERMINE PARAGRAPH 41 WHERE

14    THERE IS A REQUEST FROM FACEBOOK ASKING FOR THE INFORMATION,

15    THE REGISTRANT INFORMATION FOR A NUMBER OF DOMAINS.  THIS IS ON

16    PAGE 8 OF THE OPPOSITION.

17        AND YOU WILL SEE THE RESPONSE WHICH WAS PRODUCED TO

18    FACEBOOK, "HELLO, THIS IS BEN FROM ONLINENIC, WE TRIED TO

19    CONTACT YOUR END FOR MANY TIMES, IS THERE ANYONE CAN RESPONSE

20    AND DISCUSS WITH ME ON THIS ISSUE SO THAT WE CAN HELP YOU

21    FURTHER."

22        SO THERE IS EVIDENCE IN THE RECORD THAT SHOWS THAT AT

23    LEAST IN THESE INSTANCES, THAT SOME OF THE FACTUAL STATEMENTS

24    OR STATEMENTS OF FACT IN THE PROPOSED JUDGMENT ARE NOT

25    ACCURATE.  AND SO I WOULD ASK THE COURT TO NOT INCLUDE IN THE

```
1        PROPOSED JUDGMENT, OR INDEED ITS RULINGS, STATEMENTS WHICH ARE

2        CONTRADICTED AT LEAST BY THE FACTS IN THE RECORD.

3               THE COURT:  HOW DOES THAT E-MAIL QUOTED ON PAGE 8 OF

4        THE OPPOSITION UNDERMINE THE STATEMENT IN PARAGRAPH 41?

5               MR. NARANCIC:  WELL, I THINK THAT THERE'S NOT A

6        DIRECT CONTRADICTION, BUT THE PROBLEM IS THAT THIS LEADS A

7        READER, I THINK, TO CONCLUDE THAT THE DEFENDANT, ONLINENIC OR

8        DOMAIN ID SHIELD, COMPLETELY BLEW OFF THESE REQUESTS, WHICH IS

9        JUST NOT THE EVIDENCE IN THE RECORD.

10              THE COURT:  WELL, THAT'S A DIFFERENT FACT, RIGHT,

11       THAT THEY NEVER RESPONDED.  YOU PUT THEM ON NOTICE, THEY NEVER

12       RESPONDED, THIS E-MAIL WOULD REFUTE THAT FACT BECAUSE THEY'RE

13       RESPONDING.

14              MR. NARANCIC:  THAT'S CORRECT.

15              THE COURT:  OKAY.

16              MR. NARANCIC:  SO YOUR HONOR, I THINK THOSE ARE MY

17       SUBMISSIONS ON THE PROPOSED JUDGMENT.

18              THE COURT:  DID YOU HAVE ANY OTHER EXAMPLES?

19              MR. NARANCIC:  I DON'T HAVE ANY OTHER EXAMPLES RIGHT

20       NOW AT LEAST, YOUR HONOR.

21              THE COURT:  OKAY.  THANK YOU.

22              MR. NARANCIC:  I KNOW THIS IS MY CHANCE.

23          YOUR HONOR, JUST ON PAGE 13, THE QUESTION AS TO --

24              THE COURT:  PAGE 13 OF --

25              MR. NARANCIC:  OF THE PROPOSED JUDGMENT, YOUR HONOR.
```

1          AGAIN THIS GOES TO THE ISSUE OF ENFORCEMENT OR

2     PRACTICABILITY, PARAGRAPHS E AND F, FOR INSTANCE.

3          SO UPON NOTICE FROM PLAINTIFFS OR BASED ON AUTOMATIC SCAN

4     FOR PLAINTIFF'S MARKS AT THE TIME OF DOMAIN NAME REGISTRATION,

5     PLAINTIFF SHALL SUSPEND WITHIN 24 HOURS, ANY DOMAIN NAME

6     INFRINGING ON PLAINTIFF'S MARKS, ET CETERA, ET CETERA.

7          SO MY ONLY ISSUE THERE IS IT'S HARD TO CONDUCT AN

8     AUTOMATIC SCAN AND FIGURE OUT WHICH DOMAIN NAMES MAY BE CAUGHT

9     BY THIS.  SO I THINK IT SHOULD JUST BE NOTICE FROM PLAINTIFFS.

10          THE COURT:  I'M SORRY, I'VE LOST WHERE YOU ARE.

11     THERE ARE LOTS OF SUBSECTIONS.  ARE YOU IN PARAGRAPH 103 ON

12     PAGE 13?

13          MR. NARANCIC:  YOUR HONOR, THIS IS PAGE 13 OF THE

14     PROPOSED JUDGMENT.

15          THE COURT:  RIGHT.

16          MR. NARANCIC:  PARAGRAPH E, AS IN ELEPHANT, MIDDLE OF

17     THE PAGE.

18          THE COURT:  CEASE ENABLING?

19          MR. NARANCIC:  UPON NOTICE.

20          MR. STEELE:  14.

21          MR. NARANCIC:  SORRY, AM I LOOKING AT THE WRONG --

22     THIS IS ECF 117-4.

23          MR. KROLL:  WHERE ARE YOU?

24          MR. NARANCIC:  PAGE 13.

25          MR. STEELE:  WE HAVE A DIFFERENT ECF NUMBER.

1           THE COURT:  I'M IN 176-4.

2           MR. NARANCIC:  SORRY, YOUR HONOR.

3           THE COURT:  THAT'S ALL RIGHT.

4           MR. NARANCIC:  THANK YOU.

5       I'M SORRY, YOUR HONOR.  IT'S PAGE 15 OF ECF 176-4.

6           THE COURT:  OKAY.

7           MR. NARANCIC:  PARAGRAPH E.

8       UPON NOTICE FROM PLAINTIFFS OR BASED ON AUTOMATIC SCAN, I

9   PROPOSE THAT WE DROP THE LANGUAGE IN THE PAREN, AND JUST HAVE

10   THAT SUSPENSION BE UPON NOTICE FROM PLAINTIFFS, BECAUSE OF THE

11   PRACTICABILITY OR DIFFICULTY IN CONDUCTING AUTOMATIC SCANS FOR

12   POTENTIALLY INFRINGING NAMES.

13           MR. KROLL:  TO BE CLEAR, YOUR HONOR -- AND JUST TO

14   MAKE SURE, MR. NARANCIC, YOU ARE REFERRING TO PARAGRAPH 104?

15           THE COURT:  RIGHT.

16       AND MR. NARANCIC'S SUGGESTION IS TO SIMPLY ELIMINATE THE

17   PARENTHETICAL; IS THAT RIGHT?

18           MR. NARANCIC:  YES.

19           MR. STEELE:  WE WILL CONCEDE TO THAT.

20           THE COURT:  THANK YOU.

21           MR. NARANCIC:  THE PARAGRAPH RIGHT BELOW, TO ENSURE

22   COMPLIANCE WITH THIS INJUNCTION, TO PROVIDE UNRESTRICTED "WHO

23   IS" ACCESS, INCLUDING NONPUBLIC CONTACT INFORMATION TO

24   PLAINTIFFS OR THEIR ATTORNEYS, ET CETERA, ET CETERA.

25       I THINK THAT'S A PROBLEM BECAUSE THAT WOULD IMPACT THE

```
 1          PRIVACY RIGHTS OF OTHER CUSTOMERS.

 2               SO I THINK THAT COULD BE OVERREACHING, AND ACCORDINGLY, I

 3          PROPOSE THAT THAT SHOULD NOT BE PART OF THE PROPOSED JUDGEMENT

 4          UNLESS THE ORDINARY PROCESS IS FOLLOWED, WHICH IS TO GIVE

 5          NOTICE IN ACCORDANCE WITH THE STATUTE RATHER THAN SIMPLY TO

 6          PROVIDE AN INFORMATION UPON DOMAIN.

 7               THOSE ARE ALL MY COMMENTS, YOUR HONOR.

 8                    THE COURT:  ALL RIGHT.

 9               BEFORE WE MOVE ON TO DAMAGES, HOLD ON JUST A MOMENT.

10          OKAY.  ALL RIGHT.

11                    MR. STEELE:  YOUR HONOR, MAY I JUST ADD ONE COMMENT

12          TO THAT REQUEST?

13                    THE COURT:  YES.

14                    MR. STEELE:  SO AS WRITTEN, IT IS THE INFORMATION

15          SHOULD ONLY BE DISCLOSED UPON A LEGITIMATE INTEREST AND

16          SPECIFICALLY FOR ENFORCING AGAINST INSTANCES OF CYBERSQUATTING.

17               SO THAT'S CONSISTENT WITH WHAT I BELIEVE MR. NARANCIC IS

18          REFERRING TO IS EUROPEAN PRIVACY DIRECTIVE, THE GDPR, SO THIS

19          LANGUAGE IS CONSISTENT WITH THAT REQUIREMENT.

20                    THE COURT:  SO WHAT I WILL -- AGAIN, I WILL TAKE IT

21          UNDER CONSIDERATION, I MAY HAVE THE PARTIES EXCHANGE SOME

22          MODIFICATIONS TO THE LANGUAGE.

23                    MR. STEELE:  THANK YOU, YOUR HONOR.

24                    THE COURT:  AND SEE IF YOU CAN COME TO AN AGREEMENT.

25                    MR. STEELE:  OKAY.  THANK YOU, YOUR HONOR.
```

```
1              THE COURT:  IF WE GET THAT FAR.

2          OKAY.  DAMAGES, MR. NARANCIC.

3              MR. NARANCIC:  I THINK THE -- IT'S FAIR TO SAY THAT

4      THE TOUCHSTONE OF THE DAMAGES ANALYSIS IS DETERMINING THE BAD

5      FAITH INTENT TO PROFIT.

6          AND SOME OF THE FACTORS, THE CALCULATION FACTORS ARE SET

7      FORTH IN BANANA ADS.  I WILL PROFFER THIS, WHICH IS IT GOES TO

8      BOTH DAMAGES AND THE ISSUE OF GRANTING THE DETERMINING

9      SANCTIONS.  I WILL PROFFER THAT IF IT ASSISTS THE COURT, THAT

10     MY CLIENT WILL STIPULATE THAT IF THE OTHER ELEMENTS OF

11     CYBERSQUATTING ARE PROVEN, THAT MY CLIENT WILL STIPULATE TO THE

12     BAD FAITH ELEMENT.

13         TO BE CLEAR, UPON THE OTHER ELEMENTS OF CYBERSQUATTING

14     BEING PROVEN, PLAINTIFFS WILL NOT BE PUT TO PROVING OR

15     REBUTTING BAD FAITH INTENT TO PROFIT.

16         SO TO SUMMARIZE, THE PROPOSAL IS ONE, ADVERSE INFERENCE

17     WITH A HIGHER STANDARD OF PROOF, POTENTIAL SANCTIONS, AND IF

18     NECESSARY, AND DEEMED BY THE COURT, A STIPULATION ON BAD FAITH

19     AND --

20             THE COURT:  SO WE ARE BACK TO AN ALTERNATIVE TO

21     TERMINATING SANCTIONS.

22             MR. NARANCIC:  I ADDED ONE, YOUR HONOR, YES.

23             THE COURT:  AND AS PART OF THAT, YOU ARE ASKING ME TO

24     DEFER ON AN AWARD OF STATUTORY DAMAGES.

25             MR. NARANCIC:  YES.
```

1          THE COURT:  I SEE.

2          MR. NARANCIC:  AND MY LAST SUBMISSION, YOUR HONOR, ON

3     THIS ISSUE OF DAMAGES IS, AGAIN, BEARING IN MIND THAT THE

4     CRITICAL FACTOR HERE IS ASSESSING THE BAD FAITH INTENT TO

5     PROFIT, WE LOOK, FOR INSTANCE, TO THE EXHIBIT ON PAGE 8 OF MY

6     OPPOSITION, WHICH I'VE ALREADY REFERRED TO, THAT KIND OF WHAT I

7     CALL EXCULPATORY EVIDENCE SHOULD ALSO BE TAKEN INTO

8     CONSIDERATION BY THE COURT.

9          THE COURT:  WHAT IS THE EXCULPATORY EVIDENCE?

10         MR. NARANCIC:  ON PAGE 8, YOUR HONOR.

11         THE COURT:  YEAH.

12         MR. NARANCIC:  WELL, ONE OF THE PRINCIPAL ALLEGATIONS

13    IN THE PLAINTIFF'S CASE IS THAT THERE WAS A SYSTEMATIC FAILURE

14    BY DOMAIN ID SHIELD AND ONLINENIC TO RESPOND TO FACEBOOK'S

15    INQUIRIES.

16         AND IN THE DECLARATION, SWORN DECLARATION, AND IN THE

17    OPPOSITION, I SET IT ALL OUT THAT MY CLIENTS DID RESPOND BUT

18    NOBODY RESPONDED BACK.  SO THAT IS NOT BLOWING OFF, IF YOU

19    WILL, FACEBOOK'S REQUEST, THAT IS ACTUALLY ENGAGING FACEBOOK.

20         AND AS YOU CAN SEE HERE, NUMEROUS TIMES, SOMEONE SAYS FROM

21    ONLINENIC, WE'VE TRIED TO REACH YOU AND NO ONE HAS CONTACTED US

22    BACK.

23         NOW WHY IS THAT?  WHY DID ONLINENIC ASK FOR INFORMATION

24    BACK OR CONTACT?  BECAUSE ONLINENIC, LIKE I THINK ANY

25    REGISTRAR, NEEDS TO CONFIRM THE AUTHENTICITY OF THE REQUEST.

1    ONE CAN'T SIMPLY PROVIDE PRIVATE INFORMATION BASED ON AN

2    UNVERIFIED REQUEST.

3         SO I DO THINK THAT THIS ISSUE, AS I BRIEFED IT, NAMELY A

4    GOOD FAITH ATTEMPT TO RESPOND TO USE INQUIRIES, IS ALSO

5    RELEVANT TO THE ISSUE OF BAD FAITH INTENT TO PROFIT AND THE

6    DAMAGES ISSUE YOUR HONOR.

7              THE COURT:  OKAY.

8              MR. NARANCIC:  THOSE ARE MY SUBMISSIONS, UNLESS THE

9     COURT HAS ANYTHING FURTHER.

10             THE COURT:  DID YOU WANT TO ADDRESS MY TENTATIVE WITH

11    REGARDS TO THE CASE BEING EXCEPTIONAL?

12             MR. NARANCIC:  NO, YOUR HONOR.

13             THE COURT:  OKAY.

14        DID YOU WISH TO ADDRESS THE ISSUE OF THE SPECIAL MASTER

15    COSTS?

16             MR. NARANCIC:  I THINK THAT IF THE TENTATIVE HOLDS, I

17     THINK THAT'S AN APPROPRIATE PART OF THE JUDGMENT.

18             THE COURT:  OKAY.  AND I THINK WE'VE ALREADY

19     ADDRESSED THE SCOPE OF THE PERMANENT INJUNCTION BY YOUR

20     PRECEDING COMMENTS.

21             MR. NARANCIC:  YES.

22             THE COURT:  ALL RIGHT.  THANK YOU, MR. NARANCIC.

23        I DID HAVE A FOLLOWUP QUESTION THAT I HAD OVERLOOKED,

24    MR. KROLL, WITH REGARDS TO THE SPECIAL MASTER COSTS.

25             THERE WERE TWO AMOUNTS IN THE PAPERS, IN THE MOTION FOR

1    SANCTION, IT'S AN $88,000 AMOUNT.

2             MR. KROLL:  YES.

3             THE COURT:  AND IN THE PROPOSED DEFAULT JUDGMENT IT'S

4    $112,000.  ARE WE ADDING IN COSTS, OR --

5             MR. KROLL:  PARAGRAPH 91 OF OUR PROPOSED JUDGMENT?

6             THE COURT:  PARAGRAPH 91 HAS THE $112,000 FIGURE.

7    BUT THE ACTUAL MOTION PAPERS, I BELIEVE HAS A DIFFERENT NUMBER.

8             MR. KROLL:  YES, IT HAS $88,937.

9             THE COURT:  THAT'S RIGHT.  DO YOU HAVE A

10   RECONCILIATION OF THAT?

11            MR. KROLL:  I BELIEVE I KNOW WHAT THE RECONCILIATION

12   IS, BUT WHAT I BELIEVE IT IS, IS THE $88,000 REFERS TO THE HALF

13   OF THE SPECIAL MASTER'S FEES THAT WE PAID TO THE SPECIAL MASTER

14   AND WE WANT THAT REIMBURSED.

15       WE BELIEVE THAT THE ADDITIONAL AMOUNT MAY BE THE PORTION

16   OF DEFENDANT'S FEES TO THE SPECIAL MASTER THAT WE PAY THE

17   SPECIAL MASTER ON DEFENDANT'S BEHALF AND IN RETURN RECEIVE

18   DOMAIN NAMES SPECIFIC DOMAIN NAMES.

19       BUT HONESTLY, AT THIS MOMENT, I DON'T KNOW.

20            THE COURT:  OKAY.

21            MR. KROLL:  AND OUR MOTION IS BASED ON THE $88,937,

22   AND I WOULD SUBMIT TO THAT.

23            THE COURT:  ALL RIGHT.  THANK YOU.  THAT ANSWERS MY

24   QUESTION.

25       OKAY THEN, LET ME GET CLOSING COMMENTS, BRIEFLY, IF

1    THERE'S ANYTHING FURTHER FROM DEFENDANT, YES, FROM DEFENDANT.

2    I THINK YOU'VE COVERED EVERYTHING, BUT I TOLD YOU I WOULD GIVE

3    YOU A CHANCE FOR A FINAL SUM UP AND THEN IT IS PLAINTIFF'S

4    MOTION.

5             MR. NARANCIC:  SUBMITTED, YOUR HONOR.

6         THANK YOU.

7             THE COURT:  THANK YOU, MR. NARANCIC.

8         ANYTHING FURTHER, MR. KROLL?

9             MR. KROLL:  JUST -- YES, YOUR HONOR, TWO THINGS.

10        FIRST IS ANOTHER REASON TO IMPOSE THE ULTIMATE SANCTION OF

11   DEFAULT, IF THERE IS A FEAR THAT THE DEFENDANTS WILL CONTINUE

12   THEIR DECEPTIVE BEHAVIOR IN THE LITIGATION, THEN THE TRIAL

13   BECOMES A FARCE, YOU CAN'T HAVE A TRIAL BASED ON LIES OR OTHER

14   BAD BEHAVIOR.  SO PUT THAT ASIDE.

15        THE SECOND IS IF THE COURT IS INCLINED TO GRANT

16   TERMINATING SANCTIONS, THEN WE SUGGEST A FINAL JUDGMENT WITH

17   RESPECT TO ONLINENIC AND ID SHIELD.

18        THERE HAS BEEN A HISTORY IN THE PAST THAT WE WITNESSED

19   WITH JUDGE FOGEL IN THE VERIZON CASE OF ONLINENIC DISSIPATING

20   ASSETS.  AND TO THE EXTENT THAT THERE'S A FINAL JUDGMENT, THEN

21   WE CAN START ENFORCING THE FINAL JUDGMENT AS SOON AS POSSIBLE.

22             THE COURT:  WHAT ABOUT THE DEFERRAL OF AN AWARD OF

23    ATTORNEY'S FEES?  HOW WOULD WE RECONCILE THAT?

24             MR. KROLL:  IF THE COURT IS INCLINED TO THE GRANT

25    TERMINATING SANCTIONS, THEN THE COURT SHOULD REQUEST

```
1    INFORMATION -- IF THEY ARE TERMINATING SANCTIONS, OUR ACTION

2    AGAINST ONLINENIC AND ID SHIELD IS OVER, SO WE WILL NOT BE

3    INCURRING ANY MORE ATTORNEY'S FEES WITH RESPECT TO THAT.

4         WITH RESPECT TO 35.CN, THAT'S A DIFFERENT MATTER.

5              THE COURT:  OKAY.

6              MR. KROLL:  THANK YOU, YOUR HONOR.

7              THE COURT:  IS THAT MATTER SUBMITTED, MR. KROLL?

8              MR. KROLL:  YES, YOUR HONOR.

9              THE COURT:  OKAY.

10        ALL RIGHT.  I WANT TO THANK COUNSEL ON BOTH SIDES, ALL

11   COUNSEL FOR YOUR PREPARATION AND PRESENTATION TODAY.  IT IS, I

12   THINK AS EVERYONE ACKNOWLEDGED, SO NICE TO BE BACK IN COURT AND

13   HAVE LIVE PROCEEDINGS.  I AM DOING THAT ON MY CIVIL CALENDAR

14   FOR SUBSTANTIVE MOTIONS, OF WHICH THIS CERTAINLY QUALIFIES.

15        I APPRECIATE THE WORK THAT WENT INTO THE SUBMISSIONS AND

16   THE PREPARATION FOR TODAY'S PROCEEDINGS.  I HAVE FOUND THIS

17   VERY INFORMATIVE AND HELPFUL.  I WILL GIVE TODAY'S PROCEEDINGS

18   CAREFUL CONSIDERATION AND ISSUE AN ORDER.

19              MR. KROLL:  THANK YOU, YOUR HONOR.

20              THE COURT:  THANK YOU ALL VERY MUCH.

21        (THE PROCEEDINGS WERE CONCLUDED AT 11:29 A.M.)

22

23

24

25
```

1

2

3

4                     **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8           I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13           THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185        DATED: 3/3/22