TUCKER ELLIS LLP
David J. Steele SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:     213.430.3400
Facsimile:      213.430.3409

DAVIS POLK & WARDWELL LLP
Ashok Ramani SBN 200020
ashok.ramani@davispolk.com
Micah G. Block SBN 270712
micah.block@davispolk.com
Cristina M. Rincon (*Pro Hac Vice)*
cristina.rincon@davispolk.com
1600 El Camino Real
Menlo Park, CA 94025
Telephone:     650.752.2000
Facsimile:      650.752.2111

Attorneys for Plaintiffs,
FACEBOOK, INC.
and INSTAGRAM, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC, | Case No. 3:19-cv-07071-SI |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO XIAMEN 35.COM INTERNET TECHNOLOGY CO. LTD.'S MOTION FOR BIFURCATION AND STAY OF DISCOVERY** |
| v. | |
| ONLINENIC INC.; DOMAIN ID SHIELD SERVICE CO., LIMITED; and XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD., | DATE: April 1, 2022<br>TIME: 10:00 a.m.<br>CTRM: 1 – 17th Floor |
| Defendants. | Hon. Susan Illston |

**Table of Contents**

Page

I.  INTRODUCTION ............................................................................................... 1

II. ISSUES TO BE DECIDED ............................................................................... 3

    A.  Whether the Court should stay discovery on alter ego and direct participation given the Court's order that "the parties shall proceed with discovery, including fact finding into issues regarding general and specific jurisdiction." ................................................... 3

    B.  Whether the Court should bifurcate the privacy service vs. proxy service issue even though a resolution of that issue would not resolve all claims in this action and the issue is not ripe for summary judgment. ........................................................................................... 3

    C.  Whether 35.CN's motion for bifurcation is premature given the Sanctions Motion currently pending before the Court. ................................... 3

III. PROCEDURAL HISTORY .............................................................................. 3

IV. 35.CN HAS NOT CARRIED ITS HEAVY BURDEN TO SHOW THAT THIS CASE IS ONE OF THE FEW EXCEPTIONAL CASES WHERE BIFURCATION AND A DISCOVERY STAY WOULD BE APPROPRIATE. ................................................................................................... 4

    A.  Courts disfavor bifurcation and discovery stay orders. ................................. 4

    B.  Staying discovery on whether 35.CN is an alter ego of OnlineNIC and ID Shield would directly contravene this Court's order and would prejudice Plaintiffs. ............................................................................ 5

    C.  Bifurcating the issue of whether ID Shield is a proxy service would only cause further delay because the issue neither is case dispositive nor would it narrow the issues in this case. ................................... 6

        1.  Whether ID Shield is a proxy service would not resolve Plaintiffs' claims for liability shifting pursuant to Section 3.7.7.3 of the RAA. ............................................................................. 7

        2.  Whether ID Shield is a proxy service would not resolve Plaintiffs' claims for direct liability under the ACPA. ......................... 8

    D.  Whether ID Shield is a proxy service is not ripe for summary judgment, so bifurcation of the issue would just cause further

i

delay and thus prejudice Plaintiffs. ................................................................ 10

    1.    The existing evidence in the record shows issues of material fact exist. ............................................................................. 10

    2.    Defendants' destruction of evidence has prejudiced Plaintiffs' ability to defend against a motion for summary judgment. ....................................................................................... 12

**E.**    35.CN'S Motion to Bifurcate is premature given the pending motion for terminating sanctions against OnlineNIC and ID Shield. ........................................................................................................ 14

V.    CONCLUSION ................................................................................................. 14

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

# Table of Authorities

Page(s)

**Cases**

*Aoki v. Gilbert*, No. 2:11-CV-02797-TLN-CKD,
   2015 WL 5734626 (E.D. Cal. Sept. 29, 2015) ........................................................................... 6

*Datel Holdings LTD. v. Microsoft Corp.*, No. C-09-05535 EDL,
   2010 WL 3910344 (N.D. Cal. Oct. 4, 2010) .................................................................... 7, 8, 9

*eBay Inc. v. Bidder's Edge Inc.*, No. C-99-21200 RMW,
   2000 WL 1863564 (N.D. Cal. July 25, 2000) ........................................................................... 8

*Facebook Inc. v. Namecheap Inc.*, No. CV-20-00470-PHX-GMS,
   2020 WL 6585534 (D. Ariz. Nov. 10, 2020) .......................................................................... 11

*GEM Acquisitionco, LLC v. Sorenson Grp. Holdings, LLC*, No. C 09-01484 SI,
   2010 WL 1729400 (N.D. Cal. Apr. 27, 2010) ................................................................. 4, 6, 8

*Illumina, Inc. v. Natera, Inc.*, No. 18-CV-01662-SI,
   2018 WL 3632142 (N.D. Cal. July 31, 2018) ..................................................................... 6, 12

*J2 Glob. Commc'ns, Inc. v. Protus IP Sols.*, No. CV 06-00566DDPAJWX,
   2009 WL 910701 (C.D. Cal. Mar. 31, 2009) ........................................................................... 9

*Jones v. Nat'l R.R. Passenger Corp.*, No. 15-CV-02726-TSH,
   2018 WL 6606247 (N.D. Cal. Dec. 17, 2018) ...................................................................... 5, 9

*Lam Rsch. Corp. v. Schunk Semiconductor*, 65 F. Supp. 3d 863 (N.D. Cal. 2014) ................... 12

*MidAmerican Distribution, Inc. v. Clarification Tech., Inc.*, No. 09-96-DLB-JGW,
   2011 WL 12885994 (E.D. Ky. Jan. 20, 2011),
   *aff'd*, No. CV 09-96-DLB-JGW, 2011 WL 13227719 (E.D. Ky. Mar. 9, 2011) ................... 10

*Min Prods. PTE. Ltd. v. FireForge, Inc.* No. CV 14-941 DSF (SSX),
   2017 WL 11635012 (C.D. Cal. Feb. 6, 2017) ..................................................................... 9, 10

*MySpace, Inc. v. Graphon Corp.*, 732 F. Supp. 2d 915 (N.D. Cal. 2010) ..................................... 4

*Renfrow v. Redwood Fire & Cas. Ins. Co.,* 288 F.R.D. 514 (D. Nev. 2013) ................................. 9

*Roberts v. Cty. of Riverside*, No. EDCV 19-1877 JGB (SHKx),
   2020 WL 5046179 (C.D. Cal. May 6, 2020) ............................................................................ 2

*Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99 (N.D. Cal. 1992) ....... 4, 6, 7, 12

*White v. E-Loan, Inc.*, No. C 05-02080 SI,
   2006 WL 2850041 (N.D. Cal. Oct. 5, 2006) ......................................................................... 5, 9

**Statutes**

15 U.S.C. § 1125(d) ................................................................................................................... 2

15 U.S.C. § 1125(d)(1)(D) .................................................................................................... 2, 7

**Rules**

Fed. R. Civ. P. 26(c)(4) ............................................................................................................. 5

Fed. R. Civ. P. 42(b) ................................................................................................................. 4

Fed. R. Civ. P. 56(d) ............................................................................................................... 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs amended their complaint in March 2021 to add Xiamen 35.Com Internet Technology Co., Ltd ("35.CN") as a party defendant because 35.CN is an alter ego and direct participant of Defendants OnlineNIC Inc. ("OnlineNIC") and Domain ID Shield Service Co., Limited ("ID Shield"). (ECF No. 109 ("SAC") ¶ 11.) The Court denied 35.CN's motion to dismiss on January 18, 2022, and found many allegations raising "serious questions" regarding alter ego. (ECF No. 207 at 8.) The Court also ordered that "the parties shall proceed with discovery, including fact finding into issues regarding general and specific jurisdiction." (*Id.* at 9.) Plaintiffs complied with this order and propounded written discovery to 35.CN on February 16, 2022. After Plaintiffs agreed to an extension, 35.CN's responses are now due in April 2022. (Declaration of Steven E. Lauridsen ("Lauridsen Decl."), ¶ 2.)

35.CN's motion to bifurcate and stay discovery flies in the face of this Court's order. Instead of filing a motion for a protective order or a motion for reconsideration, 35.CN filed its motion in an effort to avoid responding to the court-ordered discovery. Such a stay of discovery, however, prejudices Plaintiffs because it prevents Plaintiffs from conducting discovery on the sole reason as to why 35.CN was added as a party—namely, to determine whether 35.CN is an alter ego or direct participant of OnlineNIC and ID Shield.

35.CN also claims that bifurcation is proper because, according to 35.CN, the question of whether ID Shield provides proxy services is case dispositive and ripe for a motion for summary judgment. (ECF No. 213 ("Motion") at 8.) 35.CN is mistaken. A resolution of whether ID Shield is a proxy service would not resolve all claims in this action because those claims do not hinge on whether ID Shield is a proxy service. Instead, they hinge on whether ID Shield is the registrant of the Infringing Domain Names[1]—a fact that ID Shield has admitted as true. (ECF No. 207 at 9) ("OnlineNIC and ID Shield admit that

---

[1] The Infringing Domain Names include "instagram01.com," "login-1nstargram.com," "facebook-login-signup.com," and "facebook-pw.com." (SAC at ¶ 56.) In some instances, the Infringing Domain Names have been used for malicious activity or domain name abuse, including hosting websites directing visitors to other commercial sites, phishing, and selling purported tools for hacking. (*Id.* at ¶ 67.) Some of the domain names are configured to send and receive email, strongly suggesting use for spear phishing email attacks. (*Id.* ¶ 68.)

1

ID Shield is listed as the registrant for the allegedly infringing domain names listed in the complaint.") ID Shield's status as a registrant imposes liability for two reasons. First, ID Shield directly violated the Anticybersquatting Consumer Protection Act ("ACPA") by registering the Infringing Domain Names and also by trafficking in them by licensing them either to OnlineNIC for its use or to OnlineNIC's customers for their use (SAC ¶ 28).[2] And second, ID Shield agreed to accept liability for the unlawful acts of its Licensees when it did not timely disclose their identities and contact information, as required by ICANN-mandated contractual language.[3] In addition, whether ID Shield is a proxy service is not ripe for summary judgment because the underlying facts are disputed (if not resolved against Defendants because of their spoliation) and subject to additional discovery Plaintiffs have not yet been able to take.

Furthermore, 35.CN's motion to stay discovery should be denied because OnlineNIC and ID Shield have been found to have spoliated vast amounts of evidence. (Special Discovery Master's Data Destroyed or Withheld Report ("Report"; ECF No. 115) at 39–40.) Courts have declined to stay discovery when evidence has been spoliated, which increases the risk for further spoliation and prejudice. *Roberts v. Cty. of Riverside*, No. EDCV 19-1877 JGB (SHKx), 2020 WL 5046179 (C.D. Cal. May 6, 2020).

Finally, 35.CN's motion is premature. Based on OnlineNIC and ID Shield's massive spoliation of evidence, Plaintiffs filed a motion to strike OnlineNIC and ID Shield's answer and enter default judgment (ECF No. 176 ("Sanctions Motion").) On March 1, 2022, Judge van Keulen conducted a hearing on the

---

[2] The ACPA imposes liability on anyone who registers, uses, or traffics in a domain name that is identical or confusingly similar to another's trademark with a bad faith intent to profit from that mark. 15 U.S.C. § 1125(d). It also states that a person shall be liable for using a domain name only if that person is the domain name registrant or that registrant's authorized licensee. 15 U.S.C. § 1125(d)(1)(D).

[3] As an ICANN-accredited domain name registrar, OnlineNIC entered into the 2013 Registrar Accreditation Agreement ("RAA") with ICANN, which sets the policies and requirements applicable to domain name registrations. Section 3.7.7.3 of the RAA, as incorporated into the OnlineNIC Registration Agreement, requires ID Shield to disclose the contact information for its customers within seven days of being provided "reasonable evidence of actionable harm" or to accept liability for that harm. (SAC ¶ 71 & Exs. 1 & 4.) For each Infringing Domain Name, Plaintiffs sent ID Shield reasonable evidence of actual harm, and ID Shield failed to timely provide the necessary customer contact information. (SAC ¶¶ 74-75.) Thus, ID Shield, as the registrant of the Infringing Domain Names, has agreed to accept liability for any harm caused by those domain names, including any cybersquatting, trademark infringement, false designation of origin, and dilution. (SAC ¶¶ 71–75, 97, 111, 123, 135.)

Sanctions Motion. (ECF No. 217.) Prior to the hearing, Judge van Keulen issued a tentative ruling that the Court would recommend granting the motion and finding OnlineNIC and ID Shield liable for all claims in the SAC. (ECF No. 214.) If this Court were to grant the Sanctions Motion, the only remaining issue in the case would be whether 35.CN is an alter ego and direct participant of OnlineNIC and ID Shield and thus equally liable for OnlineNIC and ID Shield's actions. Delaying discovery on alter ego and direct participation while the Sanctions Motion is pending would only serve to delay this action further, thus prejudicing Plaintiffs.

For these reasons, as more fully described below, the Court should deny 35.CN's motion and allow Plaintiffs to proceed with discovery concerning 35.CN's alter ego relationship with OnlineNIC and ID Shield and 35.CN's direct participation in the unlawful acts of OnlineNIC and ID Shield.

## II.   ISSUES TO BE DECIDED

A.   Whether the Court should stay discovery on alter ego and direct participation given the Court's order that "the parties shall proceed with discovery, including fact finding into issues regarding general and specific jurisdiction."

B.   Whether the Court should bifurcate the privacy service vs. proxy service issue even though a resolution of that issue would not resolve all claims in this action and the issue is not ripe for summary judgment.

C.   Whether 35.CN's motion for bifurcation is premature given the Sanctions Motion currently pending before the Court.

## III.   PROCEDURAL HISTORY

Throughout this litigation, OnlineNIC and ID Shield have intentionally destroyed and obfuscated key evidence, and failed to preserve and produce responsive electronically stored evidence. (Report at 39-40.) They also made material misrepresentations to the Special Master that the Court appointed to investigate Defendants' discovery abuses. (*Id.*) Employees of 35.CN perpetrated the spoliation of evidence because the "day-to-day operations" of both OnlineNIC and ID Shield, "including all technical support and customer support, are carried out by employees of 35.CN." (*See* SAC ¶¶ 45–46; Answer to SAC

("SAC Answer") ¶¶ 45–46 (admitting).)[4]

Based on OnlineNIC and ID Shield's intentional destruction of evidence, on July 13, 2021, Plaintiffs filed their Sanctions Motion requesting entry of their Proposed Default Judgment. (Amended Proposed Default Judgment ("Proposed Judgment") (ECF No. 176-4).) The Court referred the Sanctions Motion to the Hon. Susan van Keulen for a report and recommendation. On February 28, 2022, Judge van Keulen issued Tentative Rulings indicating Plaintiffs' Sanction Motion would be granted. (ECF No. 214 at 1.) The Court subsequently heard oral argument on the Sanction Motion on March 1, 2022 and took the matter under advisement. (ECF No. 217.)

## IV.  35.CN HAS NOT CARRIED ITS HEAVY BURDEN TO SHOW THAT THIS CASE IS ONE OF THE FEW EXCEPTIONAL CASES WHERE BIFURCATION AND A DISCOVERY STAY WOULD BE APPROPRIATE.

### A.  Courts disfavor bifurcation and discovery stay orders.

Rule 42(b) of the Federal Rules of Civil Procedure permits a court to order a separate trial of separate claims or issues "[f]or convenience, to avoid prejudice, or to expedite and economize." However, "[i]n the Ninth Circuit, '[b]ifurcation . . . is the exception rather than the rule of normal trial procedure.'" *GEM Acquisitionco, LLC v. Sorenson Grp. Holdings, LLC*, No. C 09-01484 SI, 2010 WL 1729400, at *3 (N.D. Cal. Apr. 27, 2010) (Illston, J.) (citation omitted). "Courts consider several factors in determining whether bifurcation is appropriate, including whether the issues are clearly separable, and whether bifurcation would increase convenience and judicial economy, reduce the risk of jury confusion, and avoid prejudice to the parties." *Id.* at *2. In considering these factors, courts recognize that "[b]ifurcation should be ordered only when the separation will result in judicial economy and will not unduly prejudice any party." *MySpace, Inc. v. Graphon Corp.*, 732 F. Supp. 2d 915, 917 (N.D. Cal. 2010).

The party requesting bifurcation bears the burden of proving it is warranted. *GEM Acquisitionco*, 2010 WL 1729400, at *2 (citing *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 102 (N.D. Cal. 1992)). "[A] moving party's mere contention that judicial economy would be promoted by

---

[4] Pursuant to stipulation, the Court ordered that OnlineNIC and ID Shield's Answer to the First Amended Complaint (ECF No. 88) is the operative responsive pleading to the SAC. (ECF No. 108 at 2:23–24.)

bifurcation, insofar as a second phase of a bifurcated trial would be rendered unnecessary if the moving party prevails at the first phase, is not sufficient to meet that party's burden of showing that bifurcation is appropriate." *Jones v. Nat'l R.R. Passenger Corp.*, No. 15-CV-02726-TSH, 2018 WL 6606247, at *5 (N.D. Cal. Dec. 17, 2018) (citation omitted).

Moreover, 35.CN fails to acknowledge that the legal standard for granting a motion to stay discovery is different than that for bifurcation, perhaps because motions to stay discovery are even more disfavored and movants face a "heavy burden." A motion to stay discovery "may be granted upon showing of good cause by the moving party or where 'justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden and expense.'" *White v. E-Loan, Inc.*, No. C 05-02080 SI, 2006 WL 2850041, at *2 (N.D. Cal. Oct. 5, 2006) (Illston, J.) (quoting Fed. R. Civ. P. 26(c)(4)). In considering a motion to stay discovery, this Court has explained:

> Generally, such motions are disfavored because discovery stays may interfere with judicial efficiency and cause unnecessary litigation in the future. Therefore, before a stay can be issued, the moving party must meet a 'heavy burden of making a 'strong showing' why discovery should be denied ... [by showing] a particular or specific need for the stay, as opposed to making stereotyped or conclusory statements. Hence, in its wide discretion in controlling discovery, the court should balance the harm of staying damages discovery against the benefits of allowing it to proceed.

*Id.* (citations omitted). 35.CN has not met this burden, and its motion should be denied.

**B.  Staying discovery on whether 35.CN is an alter ego of OnlineNIC and ID Shield would directly contravene this Court's order and would prejudice Plaintiffs.**

35.CN's motion to bifurcate and stay discovery contravenes this Court's order denying 35.CN's motion to dismiss. Specifically, the Court found "extensive allegations" raising "serious questions" regarding alter ego (ECF No. 207 at 7, 8) and thus ordered that "the parties shall proceed with discovery, including fact finding into issues regarding general and specific jurisdiction." (*Id.* at 9.) Based on the Court's Order, Plaintiffs served such discovery on 35.CN, which 35.CN now seeks to stay.[5] Yet, a stay on

---

[5] If 35.CN disagreed with the Court's order it could have filed a motion for reconsideration. Or, if 35.CN believed that the alter-ego discovery Plaintiffs propounded to 35.CN was improper, it could have filed a motion for protective order. 35.CN has done neither.

alter ego discovery prejudices Plaintiffs because it prevents Plaintiffs from conducting discovery on the sole reason as to why 35.CN was added as a party. As such, this motion is a waste of judicial resources.

As 35.CN highlights in its motion, this case has been pending since October 2019, and Plaintiffs have incurred significant fees and costs over years of litigation. (Motion at 3.) Accordingly, a stay of alter-ego discovery will only further compound the delays and expense Defendants have caused in this case—a fact that in itself amounts to prejudice. *See Spectra-Physics Lasers, Inc.,* 144 F.R.D. at 101 (N.D. Cal. 1992) ("[P]rejudice may simply amount to unfair delay to the final disposition of the matter.") (citation omitted); *see also Aoki v. Gilbert*, No. 2:11-CV-02797-TLN-CKD, 2015 WL 5734626, at *6 (E.D. Cal. Sept. 29, 2015) (denying bifurcation where separate trials would unnecessarily delay resolution of matter already pending for three years).

35.CN has not shown how staying alter ego discovery would promote judicial economy or convenience. 35.CN's sole argument as to judicial economy is that a stay of discovery would "minimize expense and delay for all parties and the Court." (Motion at 8.) The fact that a stay of discovery unless and until a defendant is found liable would result in cost savings is an argument that "could be made in almost any case, and does not present a strong basis for bifurcation." *GEM Acquisitionco*, 2010 WL 1729400, at *3; *see also Illumina, Inc. v. Natera, Inc.*, No. 18-CV-01662-SI, 2018 WL 3632142, at *2 (N.D. Cal. July 31, 2018) (Illston, J.) ("The chance that bifurcation will lead to economy in discovery is entirely speculative. Speculative outcomes are not sufficient to justify bifurcation.").

Accordingly, a stay on discovery concerning alter ego issues would not only prove less efficient and convenient, but it would also prejudice Plaintiffs.

**C. Bifurcating the issue of whether ID Shield is a proxy service would only cause further delay because the issue neither is case dispositive nor would it narrow the issues in this case.**

35.CN argues that resolution of a single issue—whether ID Shield is a privacy service or a proxy service—"will likely resolve all other issues," "resolve the case in Defendants' favor," or "likely resolve the entire case." (Motion at 1, 2.) 35.CN is wrong. ID Shield's—and thus 35.CN's—liability does not turn on resolving the question of whether ID Shield's provides proxy services. Since a decision on this issue

alone would not resolve the entire case, Defendants have not shown that bifurcation would promote judicial economy. *See Spectra-Physics Lasers,* 144 F.R.D. at 102; *see also Datel Holdings LTD. v. Microsoft Corp.,* No. C-09-05535 EDL, 2010 WL 3910344, at *4 (N.D. Cal. Oct. 4, 2010) (declining to bifurcate where resolution of the first claim would not moot the entire claim). Accordingly, the motion to bifurcate should be denied.

### 1. Whether ID Shield is a proxy service would not resolve Plaintiffs' claims for liability shifting pursuant to Section 3.7.7.3 of the RAA.

35.CN argues that resolution of the proxy question would dispose Plaintiffs' claims. It would not. For example, Plaintiffs assert that ID Shield has accepted liability for the actions of its Licensees pursuant to Section 3.7.7.3 of the RAA as incorporated into the OnlineNIC Registration Agreement. (SAC ¶¶ 71-75, 97, 111, 123, 135.) These claims do not turn on whether ID Shield is a proxy service but instead on *whether ID Shield is the registrant of the Infringing Domain Names*. Section 3.7.7.3 specifically requires:

> *A Registered Name Holder licensing use of a Registered Name* according to this provision *shall accept liability* for harm caused by wrongful use of the Registered Name, unless it discloses the current contact information provided by the licensee and the identity of the licensee within seven (7) days to a party providing the Registered Name Holder reasonable evidence of actionable harm.

(SAC Ex. 4 at 14–15 (RAA § 3.7.7.3) (emphasis added).) Nothing in this provision even mentions proxy or privacy services. Rather, the focus is on whether ID Shield is the "Registered Name Holder" or registrant of the domain name.[6]

In denying 35.CN's motion to dismiss, this Court has already ruled that Plaintiffs adequately pleaded Defendants' liability under the ACPA as the registrant of the Infringing Domain Names:

> 35.CN argues plaintiffs have not alleged facts that ID Shield or OnlineNIC "registers, traffics in, or uses" the domain names listed in the SAC. . . . OnlineNIC and ID Shield

---

[6] The ACPA uses the term "registrant," and ICANN use the terms "registrant" and "registered name holder" interchangeably to refer to a person or entity who registers a domain name. *See, e.g.*, 15 U.S.C. § 1125(d)(1)(D); ICANN, General Question #4, available at https://www.icann.org/resources/pages/faqs-84-2012-02-25-en#4 (last accessed Mar. 8, 2022) ("The registrant, also known as the 'Registered Name Holder' is the person or entity that holds the rights to a domain name. Check with your registrar to see who the Registrant of record is for your domain name.").

> admit that ID Shield is listed as the registrant for the allegedly infringing domain names listed in the complaint. Dkt. Nos. 109 ¶ 27 (SAC) and 88 ¶ 27 (Answer) ("it is admitted that ID Shield 'is listed as the registrant in the WHOIS directory.'"). The SAC explicitly alleges ID Shield licensed the allegedly infringing domain names to third parties. Dkt. No. 109 ¶ 59. Plaintiffs have adequately plead [this] element.

(ECF No. 207 at 9.) The question of whether ID Shield is a privacy or proxy service is not determinative of whether ID Shield "registered" or licensed the Infringing Domain Names within the meaning of the ACPA. Because resolution of the privacy vs. proxy issue would not obviate the need for additional proceedings as to liability, bifurcation is not warranted. *Datel Holdings,* 2010 WL 3910344, at *4.

### 2. Whether ID Shield is a proxy service would not resolve Plaintiffs' claims for direct liability under the ACPA.

35.CN also does not show how resolution of whether ID Shield is a proxy service would dispose of Plaintiffs' claim asserting Defendants' direct liability under the ACPA. 35.CN addresses Defendants' direct liability only in a single footnote: "Even if Plaintiffs try to (unpersuasively) argue that they have direct liability theories, resolving the Proxy Service issue first will greatly narrow the other issues in the case and facilitate settlement or other resolution of this case." (Motion at 9 n.2.) Contrary to 35.CN's contention, complete discovery will better facilitate settlement by "educat[ing] the parties regarding the strengths and weaknesses of their positions." *eBay Inc. v. Bidder's Edge Inc.*, No. C-99-21200 RMW, 2000 WL 1863564, at *4 (N.D. Cal. July 25, 2000); *see also GEM Acquisitionco,* 2010 WL 1729400, at *4 n.3 ("[B]ifurcation may actually discourage [defendant] from engaging in settlement discussions prior to the liability trial").

As significantly, Defendants' direct liability under the ACPA for their registration of and trafficking in the Infringing Domain Names is a ***separate and distinct*** legal theory from Defendants' liability pursuant to Section 3.7.7.3 of the RAA. Accordingly, resolution of whether ID Shield is a proxy service would not narrow the claims in this action, and the motion to bifurcate should be denied. *Datel Holdings,* 2010 WL 3910344, at *4.

Furthermore, bifurcation is not warranted because it "would require the parties to present much of the same evidence twice, have the same witnesses testify twice, make many of the same arguments twice, and pay the cost of litigation twice." *Renfrow v. Redwood Fire & Cas. Ins. Co.,* 288 F.R.D. 514, 523

8
PLAINTIFFS' OPPOSITION TO 35.CN'S MOTION FOR BIFURCATION AND STAY OF DISCOVERY
Case No. 3:19-cv-07071-SI

(D. Nev. 2013). Judicial economy is not served when "[t]he court would also be required to schedule time on its calendar to hear the duplicative arguments, presentation of evidence, and testimony." *Id.* at 523-524. Thus, while bifurcation may be appropriate when evidence for the issues to be tried separately "does not overlap in any meaningful way," where such "evidence may overlap, the proper course is to deny bifurcation." *Jones*, 2018 WL 6606247, at *5 (discussing overlap of liability and damages evidence as a bar to bifurcation and collecting cases for same); *see also, e.g.*, *Datel Holdings*, 2010 WL 3910344, at *5 ("[B]ecause there may be at least some overlap in factual and legal issues between the DMCA claim and the antitrust claim, bifurcation is not appropriate."); *J2 Glob. Commc'ns, Inc. v. Protus IP Sols.*, No. CV 06-00566DDPAJWX, 2009 WL 910701, at *3 (C.D. Cal. Mar. 31, 2009) (denying bifurcation where "at least some evidence [would] be relevant to both sets of claims").

Defendants' liability pursuant to Section 3.7.7.3 of the RAA, and Defendants' direct liability under the ACPA each require Plaintiffs to introduce evidence related to the registration, and trafficking in of the Infringing Domain Names. Plaintiffs would need to rely on the same documents and witnesses for both, including (a) domain name registration records (b) communications with customers and ICANN, (c) testimony concerning ICANN's position on what constitutes a proxy service and on domain name registration and licensing in general, and (d) testimony from witnesses, such as the 35.CN employee and director Carrie Yu (who is also the owner and officer of ID Shield), who would testify both as to ID Shield's provision of proxy services and the alter ego relationship between Defendants. Bifurcation could therefore result in duplicative discovery requests "resulting in the very waste of resources that bifurcation is intended to avoid." *White,* 2006 WL 2850041, at *2; *see also id.* at *3 ("[T]he proposed bifurcation and stay would likely result in time consuming disputes about which side of the violation/willfulness line a particular piece of evidence lies."). Because determining whether ID Shield provides a proxy service would not resolve all claims, 35.CN has failed to meet its burden to show bifurcation and a discovery stay are appropriate, and its motion should therefore be denied.

By comparison, although Plaintiffs are not seeking such a bifurcation, resolution of the narrow alter ego issue may well resolve all issues related to 35.CN and its potential liability. Indeed, the only in-circuit case cited by 35.CN favors this approach. In *Min Prods. PTE. Ltd. v. FireForge, Inc.*, the court

concluded a bifurcated *trial* (and not discovery) on the issue of alter ego was appropriate in light of the potential risk of jury confusion. No. CV 14-941 DSF (SSX), 2017 WL 11635012, at *2 (C.D. Cal. Feb. 6, 2017). Additionally, while the court bifurcated the issue of alter ego, it also held that judicial economy and convenience was better served by resolving the issue of alter ego *prior to* liability. *Id.* ("[B]ecause trying the issue of alter ego liability first could significantly simplify the case for the jury, the Court finds this [adjudicating alter ego first] to be more economical").[7]

### D. Whether ID Shield is a proxy service is not ripe for summary judgment, so bifurcation of the issue would just cause further delay and thus prejudice Plaintiffs.

#### 1. The existing evidence in the record shows issues of material fact exist.

35.CN's motion to bifurcate should also be denied because the issue of whether ID Shield is a proxy service is not ripe for summary judgment. 35.CN asserts it could "swiftly file a well-supported motion for summary judgment or adjudication" on whether ID Shield is a proxy service, a question it characterizes as "relatively simple." (Motion at 8.) 35.CN has not, however, shown how summary judgment is appropriate, a fact it tacitly concedes by filing the instant motion instead of one for summary judgment. And contrary to 35.CN's position, issues of material fact prevent partial summary judgment.

Ample record evidence supports that ID Shield is a proxy service, and at a minimum creates a genuine dispute regarding Defendants' argument that ID Shield is a privacy service. For example, ICANN defines a proxy service as "a service through which a Registered Name Holder licenses use of a Registered Name to the P/P Customer[8] in order to provide the P/P Customer use of the domain name, and *the*

---

[7] The remaining case cited by 35.CN to argue bifurcation of the alter ego issue would promote judicial economy is inapposite. While the court in *MidAmerican Distribution, Inc. v. Clarification Tech., Inc.*, stayed discovery on the alter ego issue, it found the stay warranted based in part on the fact that alter ego discovery had progressed unfettered for almost a year and it was "unclear what—if any—discovery regarding the alter ego claim" remained. No. 09-96-DLB-JGW, 2011 WL 12885994, at *3-4 (E.D. Ky. Jan. 20, 2011), *aff'd*, No. CV 09-96-DLB-JGW, 2011 WL 13227719 (E.D. Ky. Mar. 9, 2011). Such is not the case here.

[8] "'P/P Customer' means, regardless of the terminology used by the [privacy or proxy service provider], the licensee, customer, beneficial user, or other recipient of Privacy Services or Proxy Services." (SAC Ex. 4 at 59 (RAA, "Specification on Privacy And Proxy Registrations" § 1.1). Notably, this definition does not include the term "registrant." *See id.*

*Registered Name Holder's contact information is displayed in the Registration Data Service (Whois)* or equivalent services rather than the P/P Customer's contact information." (SAC Ex. 4 at 59 (RAA, "Specification on Privacy and Proxy Registrations" § 1.3) (emphasis added).) Indeed, ICANN confirms, in its Information for Privacy and Proxy Service Providers, Customers and Third-Party Requesters, available at: https://www.icann.org/resources/pages/pp-services-2017-08-31-en (last accessed Mar. 6, 2022), that "*[t]he proxy service provider is the registrant of record (the registered domain name holder)* and provides alternative, reliable contact information. . . . The proxy service provider licenses use of the domain name to the customer via its agreement with the customer." (emphasis added).

Moreover, OnlineNIC and ID Shield admit that ID Shield is listed as the registrant in the WHOIS directory for the Infringing Domain Names. (ECF No. 207 at 9; ECF Nos. 109 ¶ 27 (SAC) and 88 ¶ 27 (Answer); *see also* ECF No. 207 at 10–11 ("Stated otherwise, anyone who registers a domain name with OnlineNIC, including ID Shield, agrees to accept liability if it fails to disclose licensees' contact information within seven days of receiving reasonable evidence of trademark infringement."); *Facebook Inc. v. Namecheap Inc.*, No. CV-20-00470-PHX-GMS, 2020 WL 6585534, at *3 (D. Ariz. Nov. 10, 2020) (holding plaintiffs plausibly alleged proxy service provider was domain name registrant because it was listed as registrant in WHOIS directory for each domain name at issue). Indeed, the ID Shield Service Agreement states that "each domain name registration which you control and which you designate *will thereafter be registered in the name of [ID Shield] as registrant*." (SAC Ex.6 at 1) (emphasis added).[9]

Further, Carrie Yu (aka Carrie Arden), an officer of both OnlineNIC and ID Shield, as well as ICANN, *refers to ID Shield as a proxy service* in correspondence with ICANN. *See* ICANN, Notice of Breach of Registrar Accreditation Agreement, at 6 (July 24, 2014) (attached as Ex. 2 to Lauridsen Decl.)

---

[9] 35.CN makes vague reference to the restrictions on registrars and proxy services disclosing customer data under the European Union's General Data Protection Regulation 2016/679 ("GDPR"), but does not explain how these restrictions relate to the question of whether ID Shield is a privacy or proxy service. Regardless, nothing in GDPR requires listing a proxy company's information instead of an actual customer's information in the WHOIS directory, which is what a proxy service like ID Shield does. Indeed, in response to GDPR, ICANN only requires *redaction* of certain contact information that would otherwise be listed publicly in the WHOIS directory, with such contact information to be disclosed on request by third parties such as Plaintiffs with legitimate interests. *See* ICANN's Temporary Specification for gTLD Registration Data, Appx. A §§ 2.2, 4.1 attached as Ex. 1 to the Lauridsen Decl.

(stating "Email from Registrar (carrie@onlinenic.com) indicating that the Whois data had been updated to *reflect OnlineNIC's proxy service*, and that all the contact information is valid. No documentation provided.") (emphasis added). This evidence is sufficient to demonstrate that genuine issues of material fact exist concerning whether ID Shield is a proxy service, thus precluding judgment as a matter of law on the issue.

35.CN's presumption that it will prevail on a motion for summary judgment as to liability and thereby obviate further proceedings is purely speculative—especially since no such motion has been filed. As such, bifurcation is not warranted. *Illumina, Inc.*, 2018 WL 3632142, at *2 ("Speculative outcomes are not sufficient to justify bifurcation."); *Lam Rsch. Corp. v. Schunk Semiconductor*, 65 F. Supp. 3d 863, 866 (N.D. Cal. 2014) ("Xycarb's opinion of the strength of its own case notwithstanding, it has not moved for summary judgment on Lam's theory and, as a result, there is no way for the Court to determine the strength of Lam's argument. Accordingly, this factor does not favor bifurcation."). And this makes sense: if the Court grants the motion to bifurcate and 35.CN does not win its motion for summary judgment, this case, which has been pending since October 2019, will have been further delayed, amounting to further prejudice to Plaintiffs. *See Spectra-Physics Lasers*, 144 F.R.D. at 101 ("[P]rejudice may simply amount to unfair delay to the final disposition of the matter.") (citation omitted).

### 2. Defendants' destruction of evidence has prejudiced Plaintiffs' ability to defend against a motion for summary judgment.

In its Motion for Bifurcation, 35.CN argues "there is likely no additional discovery that Plaintiffs would need to dispute [the privacy versus proxy] argument, especially given Plaintiffs' prior discovery against OnlineNIC and ID Shield on this issue." (Motion at 8.) This grossly overstates the present status of discovery.[10] For example, Plaintiffs were not afforded the opportunity to depose key witnesses. Plaintiffs noticed a special Rule 30(b)(6) deposition of ID Shield pursuant to the Court's Order (ECF No. 104). Yet, ID Shield's 30(b)(6) witness (35.CN employee and director Carrie Yu) failed to appear for

---

[10] During a recent video conference, 35.CN's counsel stated that it did not have copies of the discovery produced in this case, making it unclear how 35.CN can contend the parties have taken sufficient discovery. Lauridsen Decl., ¶ 3.

deposition. Because ID Shield did not produce a Rule 30(b)(6) witness for its court-ordered deposition, Plaintiffs were unable to elicit testimony related to ID Shield's business purpose, services, policies, and operations. Such testimony would have no doubt revealed ID Shield's general practice of registering and licensing domain names for use by its customers, including whether ID Shield maintained certain rights in domain names—all of which would be relevant to whether ID Shield is a privacy or proxy service. *See* ICANN, Privacy and Proxy Services, available at https://whois.icann.org/en/privacy-and-proxy-services (last accessed Mar. 8, 2022) ("The proxy service provider maintains all rights as a registrant (such as to manage, renew, transfer and delete the domain name), and assumes all responsibility for the domain name and its manner of use."). Therefore, summary judgment on this issue is not yet ripe because discovery is not yet complete. *See* Fed. R. Civ. P. 56(d).

As significantly, OnlineNIC and ID Shield engaged in "outrageous" and widespread destruction of responsive data that resulted in "irreparable harm" to the Plaintiffs (Report at 39-40.) This intentional "conduct was consistent and continuous" (*id.*), and resulted in destruction of relevant and discoverable records in a manner that prejudiced Plaintiffs (*id.*; Sanctions Motion at 1). The nature and extent of the evidence that was destroyed is unknown, and it is therefore unclear whether such evidence would have supported or refuted 35.CN's argument that ID Shield is a privacy service.

Importantly, it was ***35.CN's own employees*** that engaged in the intentional destruction and spoliation of evidence—described in the Special Master's Report as the "outrageous" and "widespread" destruction of responsive data (Report at 39)—at the center of Plaintiffs' pending Sanctions Motion. This intentional "conduct was consistent and continuous" (*id.*), and resulted in destruction of relevant and discoverable records in a manner that has already prejudiced Plaintiffs. (*Id.* at 39–41; Sanctions Motion at 1). A stay of discovery should not be granted where, as here, there exists a risk of further spoliation. *Roberts v. Cty. of Riverside*, 2020 WL 5046179, at *3 (refusing to stay discovery where doing so would "substantially increase the risk of further spoliation of important evidence and potentially prevent Plaintiff from prosecuting his claims against allegedly responsible individuals"). The motion to bifurcate should be denied for this additional reason.

### E. 35.CN'S Motion to Bifurcate is premature given the pending motion for terminating sanctions against OnlineNIC and ID Shield.

Plaintiffs' Sanctions Motion is currently pending, rendering 35.CN's Motion to Bifurcate premature. It is unknown which issues will be resolved and which may proceed to trial after the Sanctions Motion against OnlineNIC and ID Shield is resolved. This is particularly true in light of Hon. Susan van Keulen's tentative report and recommendation that Plaintiffs' motion for terminating sanctions against OnlineNIC and ID Shield should be granted. (ECF No. 214.) If terminating sanctions are ordered, the only issue remaining in this case is whether 35.CN is the alter ego of OnlineNIC and ID Shield or the direct participant in the acts giving rise to liability. As such, 35.CN's Motion to Bifurcate need not be decided at this time.

## V. CONCLUSION

35.CN has not carried its heavy burden to show that not only is bifurcation appropriate but also that a stay of discovery would promote judicial economy. To the contrary, granting 35.CN's motion would only result in further delay of this long-pending action, and the motion to bifurcate should therefore be denied in its entirety.

Respectfully submitted

DATED: March 11, 2022

Tucker Ellis LLP

By: /s/David J. Steele
David J. Steele
Howard A. Kroll
Steven E. Lauridsen

Davis Polk & Wardwell, LLP
Ashok Ramani
Micah G. Block
Cristina M. Rincon

Attorneys for Plaintiffs,
FACEBOOK, INC. and INSTAGRAM, LLC