**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Liana W. Chen (Bar No. 296965)
Ruben Peña (Bar No. 328106)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com
liana@KRInternetLaw.com
ruben@KRInternetLaw.com

Attorneys for Defendant Xiamen 35.com Technology Co., Ltd.
(erroneously sued as Xiamen 35.com Internet Technology Co., Ltd.)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **FACEBOOK, INC.**, et al., <br><br> Plaintiffs, <br><br> v. <br><br> **ONLINENIC INC.**, et al., <br><br> Defendants. | Case No. 3:19-cv-07071-SI <br><br> **DEFENDANT XIAMEN 35.COM TECHNOLOGY CO., LTD.'S REPLY IN SUPPORT OF MOTION FOR BIFURCATION AND STAY OF DISCOVERY** <br><br> Date: April 1, 2022 <br> Time: 10:00 a.m. <br> Ctrm.: 1 — 17th Floor <br> Before: Judge Susan Illston |

# INTRODUCTION

This is a unique case where Plaintiffs'[1] unlimited litigation budget and Goliath tactics have forced the original Defendants OnlineNIC and ID Shield into a potential default judgment.[2] Plaintiffs are following the same pattern against 35.CN. How can 35.CN obtain a decision on the merits while opposite one of the most litigious billion-dollar companies in the world? With this motion, 35.CN proposes to limit the next phase of litigation to a dispositive legal issue, namely whether ID Shield is a Proxy Service (who would own and license the Domain Names to third-party Registrants, as alleged by Plaintiffs) or a Privacy Service (who, without owning the registered domain names, simply allowed its contact information to show on public WHOIS records for customer privacy, as argued by 35.CN). While Plaintiffs argue they have two theories of liability against ID Shield, both rest upon this foundational issue of whether ID Shield was a Proxy or Privacy Service; if ID Shield is merely a Privacy Service (that does not own or license the Domain Names), it is not required to accept liability under Section 3.7.7.3 of the RAA because that provision only applies to "licensors," nor could ID Shield be directly liable where its name is listed in the "registrant" field in public records, which serves to protect customer privacy as a Privacy Service is created to do. Further, issue of whether a domain name registrar can be held liable for the acts of its customer domain name owners due to Section 3.7.7.3 of the RAA is issue of first impression for this Court, on which 35.CN seeks a decision on the merits as soon as possible.

Plaintiffs assert that ID Shield, as well as claimed alter egos OnlineNIC and 35.CN, are liable for thirty-five Domain Names purportedly used in an infringing manner by third-party Registrants. However, despite years of litigation and millions of dollars in claimed

---

[1] Terms defined in the moving papers have the same meaning in this reply brief.

[2] This is not the first time Plaintiffs have tried to suppress domain name service providers. *See e.g., Facebook, Inc v. Banana Ads LLC*, No. CV 11-03619-YGR KAW, 2013 WL 1873289 (N.D. Cal. Apr. 30, 2013) (default judgment), cited by the Magistrate Judge in noting the amount of any statutory damages would be modified. [D.E. 214 at 1.] *C.f. Meta Platforms Inc. v. Namecheap Inc.*, Case No. 2:20-cv-00470-GMS [D.E. 187] (notice of settlement).

Case No. 3:19-cv-07071-SI  1  **DEF'S REPLY ISO MTN TO BIFURCATE**

attorney's fees, the underlying question still stands: Is ID Shield liable for damages arising from the Registrants' Domain Names, despite longstanding history of immunizing domain name registrars and privacy service providers under most circumstances? This is the question 35.CN seeks to resolve before wasting further Court and party resources on tangential case issues.

For these reasons, 35.CN requests that the Court bifurcate and stay discovery to limit the next phase of litigation to the Proxy versus Privacy Service argument to conserve resources of all involved and to attempt to obtain a decision on the merits.[3]

## BACKGROUND

### A. Clarification on Factual Background

Plaintiffs' Opposition ("Opp.") relies on inaccurate facts. First, Plaintiffs claim that ID Shield admitted it was the "registrant" of the Domain Names. (See Opp. 1:22-2:1.) However, ID Shield only stated in its Answer that it was "listed" as the registrant. [D.E. 207 at 9.] In other words, these and other references do not support that ID Shield was a Proxy Service but only that ID Shield's contact information was used to protect customer privacy, as a Privacy Service is designed to do.

Further, Plaintiffs' claims indicating that alter ego discovery will be straightforward overlooks 35.CN's prior-filed declaration [D.E. 174-1], which outlines that Defendants lack a unity of interest; and there is insufficient evidence of fraud or injustice to support alter ego liability on the merits. For example, 35.CN and OnlineNIC did not share a registration database or office floor, and 35.CN did not control, manage, run the operations of decisions of, or participate in the relevant actions of OnlineNIC or ID Shield. [D.E. 174-1 ¶¶4-5, 8-9.] Providing technical and customer support, which is often provided by a third-party service provider, through an outsourcing agreement is not a fraud or injustice for alter ego liability.[4]

---

[3] 35.CN is open to alternative suggestions to streamline this out-of-control litigation, including a joint briefing for a protective order for Plaintiffs' hundreds of discovery requests.
[4] Plaintiffs, now rebranded under the "Meta" umbrella, have attacked Defendants, and primarily OnlineNIC, for long past unrelated cases. However, Plaintiffs overlook the widespread, current litigation and regulatory inquiries involving their business practices.

### B. Clarification on Procedural History

35.CN is still catching up on the background of this case and has requested that Plaintiffs produce the prior party and third-party discovery and document productions. (*See* Declaration of Karl S. Kronenberger in Support of Reply for Motion to Bifurcate and Stay ("Kronenberger Decl.") ¶2 & Ex. A.)

Plaintiffs stress that they gave 35.CN an extension to respond to the pending written discovery requests. However, to clarify, 35.CN only has a two-week extension to respond to 147 requests for production and a thirty-day extension to respond to interrogatories and 118 requests for admission (despite 35.CN's request for more time). (*See* Prior Kronenberger Decl. [D.E. 213-2] ¶2 and Kronenberger Decl. ¶3.) This is not a significant amount of time to respond to broad requests, which ask for things like all financial records for the last fifteen to twenty years.

In fact, when Plaintiffs' <u>five</u> attorneys attended the parties' recent two-hour 26(f) conference and highlighted Plaintiffs' infinite litigation budget, it solidified 35.CN's need for Court relief to have any chance at obtaining a resolution on the merits. In addition, Plaintiffs requested to extend the typical deposition time frames and claimed that the only issue was alter ego liability (*i.e.*, Plaintiffs perceive they should have endless discovery from 35.CN but that Plaintiffs are immune from providing any information on underlying liability, damages, or lack of mitigation of damages).

As indicated by the Magistrate Judge's Tentative Order on Plaintiffs' Sanctions Motion [D.E. 214], the request for statutory damages, if granted, would be modified downward as to the amount. *See Facebook, Inc v. Banana Ads LLC*, No. CV 11-03619-YGR KAW, 2013 WL 1873289 (N.D. Cal. Apr. 30, 2013) (ruling that statutory damages would be awarded at different amounts, depending on the number of domains—$20,000 for thirty to thirty-nine domain names—with potential adjustments, such as if the domains incorporated the full trademark at issue); *see also Bittorrent, Inc. v. Bittorrent Mktg. GMBH*, No. 12-02525-BLF, 2014 WL 5773197, at *11 (N.D. Cal. Nov. 5, 2014) ("In a default setting, this Court is hesitant to apply the maximum statutory penalty to all of the infringing domain

names."). Here, there were thirty-five Domain Names identified, and there is evidence of use of the Domain Names under the fair use doctrine and/or for reasons completely unrelated to Plaintiffs, and there is still lack of evidence that the websites at the Domain Names were infringing.

## ARGUMENT

### A. This case warrants an exception to the normal rule of trial procedure.

Plaintiffs cite to this Court's 2010 decision outlining how bifurcation is the exception rather than the rule of normal trial procedure. *See GEM Acquisitionco, LLC v. Sorenson Grp. Holdings, LLC*, No. C 09-01484 SI, 2010 WL 1729400, at *3 (N.D. Cal. Apr. 27, 2010) (finding request to bifurcate liability and damages overstated the complexity of the damages determination). This case is the exception. 35.CN's request is not a standard request to bifurcate liability and ordinary damages but to separate expansive discovery on Plaintiffs' secondary liability theory against 35.CN (the claimed alter ego) from the underlying liability of ID Shield. Further, *Jones v. Nat'l R.R. Passenger Corp.*, No. 15-CV-02726-TSH, 2018 WL 6606247, at *5 (N.D. Cal. Dec. 17, 2018), is unavailing as that case found that bifurcation would not aid judicial economy but could well lead to additional costs.

Plaintiffs also state that a motion to stay discovery "may be granted upon showing of good cause by the moving party or where 'justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden and expense.'" *See White v. E-Loan, Inc.*, No. C 05-02080 SI, 2006 WL 2850041, at *2 (N.D. Cal. Oct. 5, 2006) (Illston, J.) (quoting Fed. R. Civ. P. 26(c)(4) and noting there should be a particular or specific need for the stay, as opposed to making stereotyped or conclusory statements). Here, even this standard is met, considering the balance of the harm of staying discovery against the benefit of allowing it to proceed. If Plaintiffs are allowed to continue on expansive discovery and secondary alter ego issues, they may well force 35.CN into default, similar to OnlineNIC and ID Shield, despite meritorious defenses; and the Court and all parties will spend further unnecessary resources on discovery of alter ego issues even though the underlying liability of ID Shield is disputed and unfounded.

Plaintiffs have flaunted an infinite budget and will stop at nothing to avoid a decision on the merits. Therefore, the requested relief is appropriate to streamline this case.

**B.   The requested bifurcation and stay would supplement the Court's prior order and result in judicial economy for the Court and all parties.**

This motion is brought with full respect for the Court's order that authorized discovery on general and specific jurisdiction. [D.E. 207.] To clarify, 35.CN did not file a motion for reconsideration, as Plaintiffs propose, because 35.CN is not requesting that the Court reconsider its prior order to commence with jurisdictional discovery. Rather, 35.CN requests that the Court consider limitation of the next phase of discovery, especially in light of Plaintiffs' recent written discovery and anticipated requests for further, extended depositions and other discovery requests. This is not a typical case of merely trying to save costs; without some limitation on this entire case, Plaintiffs will steamroll all competition.[5]

Plaintiffs' citations on this point are inapposite. Unlike in this case, in *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992), the moving party sought bifurcations of non-dispositive issues. Here, 35.CN seeks to bifurcate the issue regarding ID Shield's status as a Privacy versus a Proxy Service and whether ID Shield can be liable for its customers' Domain Names, which in turn will determine 35.CN's liability. In *Aoki v. Gilbert*, No. 2:11-CV-02797-TLN-CKD, 2015 WL 5734626, at *6 (E.D. Cal. Sept. 29, 2015), the moving party failed to provide any rationale as to why bifurcation would make the adjudication of the case more convenient or support judicial economy. Here, 35.CN has set forth several reasons why bifurcation will further judicial economy. Namely, (1) bifurcation of the Privacy versus Proxy Service and alter ego issues is expected to obviate the need for the parties to expend the time to conduct extensive discovery, (2) the Privacy/Proxy Service issue is simple and determinative of all (or most of) Defendants' potential liability in this case, and (3) will prevent 35.CN from suffering the

---

[5] This is part of a larger antitrust concern being probed by the Federal Trade Commission, among others. *See e.g., FTC v. Facebook, Inc.*, Case No. 1:20-cv-03590-JEB, D.E. 85 at 10 (D.D.C. Nov. 17, 2021) ("Facebook has maintained [its] power not by outcompeting its potential rivals, but by hobbling or eliminating them in anticompetitive ways.").

undue prejudice of attorney's fees and expense associated in responding to hundreds of written discovery requests. In addition, the court in *GEM Acquisitionco, LLC*, 2010 WL 1729400, at *3, denied the moving party's motion for bifurcation as it found that the moving party misconstrued the complexity of calculating damages and that the moving party's argument to stay expert discovery until liability was established was insufficient to warrant bifurcation. Here, 35.CN's motion seeks to focus discovery on ID Shield's status as a Privacy versus Proxy Service, which is determinative of all (or most of) Defendants' potential liability in this case. Finally, the court in *Illumina, Inc. v. Natera, Inc.*, No. 18-CV-01662-SI, 2018 WL 3632142, at *1 (N.D. Cal. July 31, 2018) denied the moving party's motion for bifurcation without prejudice pending a decision by PTAB, but in doing so stated, "[d]elay alone, without specific examples of prejudice resulting therefrom, is insufficient to establish *undue* prejudice." (emphasis in original). Thus, Plaintiffs' arguments are unpersuasive.

## C. The identified issue of whether ID Shield is a Proxy or Privacy Service is dispositive of the liability theories and can be resolved as a matter of law.

### 1. Plaintiffs' liability theories rely on ID Shield being a Proxy Service.

Plaintiffs claim there are two liability theories against ID Shield, but both arguments require that ID Shield is a Proxy Service that owned and licensed the Domain Names.

First, Plaintiffs assert that ID Shield accepted liability under Section 3.7.7.3 of the standard RAA (the seven-day notice provision). (*See* Opp. at 7:6-19.) However, ID Shield could only "accept" liability if it was a Proxy Service that was "licensing use" of the Domain Names. Specifically, Section 3.7.7.3, as cited by Plaintiffs, only applies to a "A Registered Name Holder licensing use of a Registered Name . . ." (emphasis added). While Plaintiffs rely on pleading allegations that ID Shield "licensed the allegedly infringing domain names to third parties" (Opp. at 8:1-4), that is not analogous to an actual finding on the merits or as a matter of law that ID Shield was "licensing" the Domain Names (which it did not). By contrast, a Privacy Service does not own or license domain names but only allows its contact information to be displayed to protect customer privacy, as is commonplace and

arguably required by certain privacy laws (such as the GDPR, as outlined previously). The key analysis is whether the service in question owns the domain names, because a non-owner would not have the ability to license domain names to third parties and thus could not be a Proxy Service. Plaintiffs, however, in exhibits to their complaint, admit that ID Shield did not own the registered domains but instead confirmed that their third-party customers owned the registered domain names. See Second Amended Complaint, Ex. 6 (displaying the ID Shield website, "[Y]ou retain full ownership of the domain. You have complete control over the domain, you manage all facets of the domain."). Thus, ID Shield could not have been, and is not, a Proxy Service, but is instead a Privacy Service that does not own domain names.

Second, Plaintiffs claim that ID Shield is directly liable for the Domain Names. (Opp. at 8:20-24.) However, this direct liability theory rests upon Plaintiffs' allegations that ID Shield is listed in the "registrant" field in public WHOIS records for the Domain Names. This argument likewise requires that ID Shield be a Proxy Service because if ID Shield is simply a Privacy Service (as Defendants contend), then its name is only listed in public records to protect the privacy of customers, who continue to own and control the Domain Names. In other words, there is no separate "direct liability" theory but only the question of whether ID Shield is the legal "registrant" that can own and license the Domain Names.

**2. Plaintiffs' secondary arguments regarding convenience lack merit.**

Plaintiffs also cite to cases for the proposition that more discovery will better facilitate settlement. However, here, the result of Plaintiffs' tactics is overburdening the opposition until they default, despite valid defenses. In other words, allowing expansive discovery and continuation of secondary alter ego issues will not further settlement, except if Plaintiffs are trying to deliver the message to Defendants that it is not worth fighting against an unlimited budget.

Further, Plaintiffs' arguments regarding duplicative discovery are without merit. For example, Plaintiffs identify evidence that, 35.CN believes, Plaintiffs already obtained prior to 35.CN being added to the case, such as domain name registration records and

1  communications with customers and ICANN. (Opp. at 9:13-22.) Because the Registrants
2  were not customers of 35.CN, 35.CN would not have this information. Moreover, discovery
3  regarding ICANN's position on what constitutes a Proxy Service and on domain name
4  registration and licensing in general, and a deposition, if needed, could be narrowed to this
5  one issue. In fact, Plaintiffs are essentially getting a second bite at the apple with discovery
6  to 35.CN by asking for records and information related to OnlineNIC and ID Shield.

7  In addition, Plaintiffs indicate that if the Sanctions Motion is granted and adopted,
8  the only issue will be the alter ego discovery, but that ignores the general rule that a party
9  is not bound by a default or other judgment if it did not have the opportunity to litigate the
10 issues. *See 21st Century Fin. Servs., LLC v. Manchester Fin. Bank*, 255 F. Supp. 3d 1012,
11 1033 (2017) (citing various cases); *Wolf Metals Inc. v. Rand Pacific Sales, Inc.*, 4 Cal. App.
12 5th 698, 703–04 (2016); *NEC Elecs., Inc. v. Hurt*, 208 Cal. App. 3d 772, 778–80 (1989);
13 *Motores De Mexicali, S.A. v. Superior Court*, 51 Cal. 2d 172, 176 (1958) (holding that an
14 alleged alter ego of a party against whom default judgment has been entered cannot be
15 bound by the judgment where it did not control or participate in the defense of the
16 underlying action as it would violate due process). Plaintiffs' authorities do not change this
17 analysis. In *Spectra-Physics Lasers*, 144 F.R.D. 99, the moving party had the opportunity
18 to fully defend the action against it, and it did not involve a default judgment against other
19 defendants or issues regarding alter ego. Similarly, *Datel Holdings LTD. v. Microsoft Corp.*,
20 No. C-09-05535 EDL, 2010 WL 3910344, at *4 (N.D. Cal. Oct. 4, 2010), did not involve a
21 default judgment or an alleged alter ego defendant.

22 **D.  The identified issue is ripe for summary judgment and will not cause undue**
23 **delay or prejudice; and absent relief, 35.CN will suffer substantial prejudice.**

24 Plaintiffs cite to several sources indicating, again, that a Proxy Service "licenses"
25 the use of domain names, which is not the case here. (Opp. at 10:16-11:8.) For example,
26 Plaintiffs refer to *Facebook Inc. v. Namecheap Inc.*, No. CV-20-00470-PHX-GMS, 2020
27 WL 6585534, at *3 (D. Ariz. Nov. 10, 2020), but that case was distinguishable in that
28 Namecheap was a Proxy Service. Moreover, Plaintiffs highlight an old ICANN

1 communication log casually referring to ID Shield as a "proxy service" in a colloquial
2 manner, which obviously is not a formal, or even informal, admission by ID Shield. (Opp.
3 at 11:19-12:5.) Regardless, it is clear that Plaintiffs previously obtained discovery on this
4 issue and that there will be sufficient information for a motion for summary judgment (and
5 35.CN requests that Plaintiffs produce prior discovery and documents produced to
6 Plaintiffs, including by ICANN and any other third parties). In other words, Plaintiffs'
7 references do not create an issue of material fact where the evidence, as here, still
8 supports a legal finding as a matter of law. In particular, judgment as a matter of law is not
9 precluded when a nonmoving party merely disagrees or sets forth bald assertions that a
10 genuine issue of material fact exists. *Shamiryan v. Allstate Northbrook Indem. Co.*, 550 F.
11 Supp. 3d 838 (2021). In this case, even with the disagreement, the evidence is sufficient
12 for a finding that ID Shield did not actually own or license the Domain Names and thus is
13 not liable as a Proxy Service.

14 Plaintiffs also cite to *Roberts v. Cty. of Riverside*, No. EDCV 19-1877 JGB (SHKx),
15 2020 WL 5046179 (C.D. Cal. May 6, 2020) for the proposition that courts have declined to
16 stay discovery when evidence has been spoliated; however, this case is distinguishable
17 as 35.CN was not a party to or involved in the prior discovery order (and Defendants
18 dispute that there was any spoliation of relevant evidence; instead, there was a
19 misunderstanding regarding outdated systems containing vast amounts of technical data).
20 Plaintiffs are acting as if the alter ego issue has already been determined in their favor, but
21 they have yet to show the requisite fraud or injustice required for alter ego liability.

22 Finally, Plaintiffs mistakenly argue that if their Sanctions Motion is granted that the
23 only issue will be alter ego liability. First, 35.CN, who was not a party to the first phase of
24 the case or the sanctions motion, will be able to refute the underlying liability of ID Shield.
25 This is in line with general authority that default or other judgments do not have preclusive
26 effect on third parties, absent specific statutory or other circumstances not present here.
27 *See 21st Century Financial Services, LLC*, 255 F. Supp. 3d at 1033 (citing various cases);
28 *Wolf Metals Inc.*, 4 Cal. App. 5th at 703–04; *NEC Electronics Inc.*, 208 Cal. App. 3d at 778–

80; *Motores De Mexicali*, 51 Cal. 2d at 176 (holding that an alleged alter ego of a party against whom default judgment has been entered cannot be bound by the judgment where it did not control or participate in the defense of the underlying action as it would violate due process). Second, even if a sanctions order limits the case as Plaintiffs suggest—which is improper and a reason that the default judgment should not be entered against OnlineNIC or ID Shield, *i.e.*, there is "just reason for delay"—35.CN will request a stay of all discovery until the outcome of such an order given its undue impact on the new Defendant 35.CN.

The requested relief will streamline this litigation by focusing on an underlying dispositive issue, which is a legal issue of first impression; and absent relief, Plaintiffs will be able to suppress yet another potential competitor. If Plaintiffs' true motive was protecting their intellectual property, they would have sought for expedited transfer of the Domain Names, rather than continue this case.

## CONCLUSION

For all of the reasons outlined in 35.CN's moving and reply papers, 35.CN respectfully requests that the Court bifurcate and stay discovery.

Respectfully Submitted,

Dated: March 18, 2022

**KRONENBERGER ROSENFELD, LLP**

By: _____s/Karl S. Kronenberger_____
         Karl S. Kronenberger

Attorneys for Defendant Xiamen 35.com Technology Co., Ltd.