UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC., et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ONLINENIC INC, et al.,<br><br>　　　　　Defendants. | Case No. 19-cv-07071-SI<br><br>**ORDER DENYING DEFENDANT 35.CN'S MOTION TO BIFURCATE**<br><br>Re: Dkt. No. 213 |

On February 25, 2022, defendant Xiamen 35.com Internet Technology Co., LTD ("35.CN") filed the instant motion to bifurcate. Having reviewed the parties' papers, the Court previously VACATED the April 1, 2022 hearing pursuant to Local Rule 7-1(b). For the reasons stated below, defendant 35.CN's motion is DENIED.

## BACKGROUND

The Second Amended Complaint ("SAC") alleges defendant OnlineNIC, a California corporation with its principal place of business in San Leandro, California, is a domain name registrar that sells, registers and transfers domain names for third parties. Dkt. No. 109 ¶ 9 (SAC).

The SAC alleges defendant ID Shield, is a Hong Kong, China, limited company that provides a type of domain name privacy service, specifically a proxy service, for OnlineNIC's customers. *Id*. ¶ 10. ID Shield registers domain names, as the registrant, and licenses these domain names to OnlineNIC's customers. *Id*.

The SAC alleges defendant 35.CN is a corporation registered under the laws of Xiamen,

Fujian Province, that sells, registers and transfers domain names for third parties. *Id*. ¶ 11. The SAC alleges 35.CN controls, manages, and runs the operations of OnlineNIC and ID Shield. *Id*.

The SAC alleges plaintiffs, well known social networking sites Facebook and Instagram, own various well-established trademarks. *Id*. ¶¶ 18-25. Plaintiffs allege

> defendants, as registrants and as alter egos of each other, have registered domain names (such as hackingfacebook.net) that have been used for malicious activity, including phishing and hosting websites that purported to sell hacking tools. These domain names also have infringed on Plaintiffs' trademarks….Plaintiffs seek relief from Defendants, as alter egos of each other, who have registered (as the registrant), used, and trafficked in domain names that include Plaintiffs' trademarks.

*Id*. ¶¶ 5-6.

The SAC further alleges:

> 1. Cybercrime is highly dependent on registered domain names, which are used to send spear phishing emails, operate malware, and engage in other types of online abuse…
>
> 2. Cybercriminals often rely on domain name privacy registration services, and specifically proxy services, to hide their ownership and control of malicious domains from the public. In exchange for a fee, proxy services conceal the domain name registrant's identity as listed on publicly available domain name registration records. These proxy services, like the services offered by Defendants, are increasingly used by cybercriminals as they cycle through domain names in order to conceal their identity and evade detection.
>
> 3. 35.CN is an ICANN[1]-accredited domain name registrar. 35.CN's alter ego, OnlineNIC, also is an ICANN-accredited domain name registrar. 35.CN's and OnlineNIC's alter ego, ID Shield, provides a type of domain name privacy service, … According to one internet security group, domain names registered by OnlineNIC were reported for abuse in approximately 40,000 instances. In 2019, one internet security group reported that OnlineNIC was one of the top 20 domain name registrars used for abuse.
>
> 4. Defendants have repeatedly failed to take appropriate "steps to investigate and respond appropriately to any reports of abuse" as required by the RAA and have failed to provide abusive domain name registrants' names and contact information to victims of online abuse as required under the RAA.

Dkt. No. 109 ¶¶ 1-4 (SAC).

The SAC further alleges defendants registered, used, or trafficked in at least 35 domain

---

[1] The Internet Corporation for Assigned Names and Numbers ("ICANN") is a California nonprofit whose mission is to "ensure the stable find secure operation of the Internet's unique identifier systems" by coordinating "the allocation and assignment of names in the … Domain Name System[.]" Bylaws for Internet Corporation for Assigned Names and Numbers, (as amended November 28, 2019), https://www.icann.org/resources/pages/governance/bylaws-en/#article1

names identical or confusingly similar to plaintiffs' trademarks, including: facebookphysician.com, login-1nstagram.com, and www-instagram.net. *Id.* ¶ 56. ID Shield is allegedly the registrant for each of the infringing domain names. *Id.* ¶ 57.

The SAC alleges OnlineNIC has a storied history of "cybersquatting on famous and distinctive trademarks" and lists a myriad of allegedly successful lawsuits against OnlineNIC for such brought by well-known companies such as Verizon, Yahoo, and Microsoft. *Id.* ¶¶ 60-63.

## PROCEDURAL HISTORY

Plaintiffs filed their original complaint in 2019 against only ID Shield and OnlineNIC. Dkt. No. 1 (Original Complaint). ID Shield and OnlineNIC did not move to dismiss the action; instead, they filed an answer on January 6, 2020. Dkt. No. 20. Over a year later, on February 25, 2021, after what appears to be extensive and contentious discovery, plaintiffs sought leave to file their first amended complaint (FAC) to add 35.CN as a defendant. Dkt. No. 68. Judge van Keulen granted plaintiffs' motion on March 24, 2021. Dkt. No. 81. Again, ID Shield and OnlineNIC filed an answer. Dkt. No. 88. On June 1, 2021, Judge van Keulen filed an order granting the parties' stipulation to plaintiffs' filing the operative SAC and deeming ID Shield and OnlineNIC's answers to the FAC as their operative responsive pleading. Dkt. No. 108. The SAC was filed later that day on June 1, 2021. Dkt. No. 109 (SAC). The SAC alleges four causes of action against all defendants for:

(1) Cybersquatting Plaintiffs' Trademarks; 15 U.S.C. § 1125(d) (the Anticybersquatting Consumer Protection Act ("ACPA"));

(2) Trademark and Service Mark Infringement; 15 U.S.C. §1114;

(3) Trademark and Service Mark Infringement and False Designation of Origin; 15 U.S.C. § 1125(a); and

(4) Dilution of Trademarks; 15 U.S.C. § 1125(c).

Dkt. No. 109 ¶¶ 76-137 (SAC).

On September 22, 2021, 35.CN declined magistrate jurisdiction and the action was reassigned to the undersigned judge. Dkt. Nos. 168 and 173. On September 28, 2021, 35.CN filed

3

a motion to dismiss making three overarching arguments: (1) the parties are not alter egos and therefore the Court does not have jurisdiction over 35.CN, (2) 35.CN is immune from liability as merely a registrar of domain names, and (3) plaintiffs have failed to adequately plead their causes of action against ID Shield and OnlineNIC, therefore the claims fail as to 35.CN. Dkt. No. 174.  On January 18, 2022, the Court denied 35.CN's motion to dismiss in its entirety finding, among other things, serious issues of fact as to alter ego precluded dismissal.  Dkt. No. 207 at 7-8.[2]

Defendant 35.CN now brings a motion to bifurcate and stay the action, arguing discovery should focus on the allegedly dispositive issue "of whether ID Shield is a Proxy Service that registers domain names for its customers *or* merely a Privacy Service that only allows its contact information to be used for privacy purposes as Defendants assert" (the "Proxy Service Issue").  Dkt. No. 213 at 3 (Motion to Bifurcate) (emphasis added).

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 42(b), the district court may order separate trials of one or more issues or claims "[f]or convenience, to avoid prejudice, or to expedite and economize."  The court has broad discretion in deciding whether to bifurcate.  *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002).  Courts consider several factors in determining whether bifurcation is appropriate, including whether the issues are clearly separable, and whether bifurcation would increase convenience and judicial economy, reduce the risk of jury confusion, and avoid prejudice to the parties.  *See* Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial § 16:160.4 (2010); *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982).  The party requesting bifurcation has the burden to prove bifurcation is warranted in that particular case.  *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 102 (N.D. Cal. 1992).  In the Ninth Circuit, "[b]ifurcation . . . is the exception rather than the rule of normal trial procedure."  *Clark v. I.R.S.*, No. 06-0544, 2009 U.S. Dist. LEXIS 125515, 2009 WL 5698139, at *4 (D. Haw. Nov. 10, 2009) (*citing Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004)).

---

[2] For ease of reference, page number citations refer to the ECF branded number in the upper right corner of the page.

**DISCUSSION**

Defendant 35.CN argues bifurcation and a stay of discovery is proper to determine the allegedly dispositive "legal issue of whether ID Shield is a Proxy Service that registers domain names for its customers or merely a Privacy Service that only allows its contact information to be used for privacy purposes as Defendants assert." Dkt. No. 213 at 3. The Court, exercising its broad discretion, disagrees.

First, the Court disagrees the Proxy Service Issue is dispositive. Indeed, the parties have hotly disputed this issue for months, including in the (extensive) briefing on 35.CN's motion to dismiss. *See* Dkt. No. 174 at 17-20[3] (35.CN's Motion to Dismiss); Dkt. No. Dkt. No. 189 at 22-23[4] (Plaintiff's Opposition to 35.CN's Motion to Dismiss). Plaintiffs persuasively argue the Proxy Service Issue will not resolve all claims because at least some of the claims *do not hinge* on whether ID Shield is a proxy service. Dkt. No. 220 at 6 (Opposition to Motion to Bifurcate). Plaintiffs allege ID Shield *directly* violated the ACPA by (1) registering infringing domain names and (2) trafficking in them by licensing them either to OnlineNIC for its own use or to OnlineNIC's customers for their use. Dkt. No. 109 ¶ 28 (SAC).[5] Thus, the claims hinge on whether ID Shield is the *registrant* of the infringing domain names— not whether ID Shield is a proxy service. In the order denying 35.CN's motion to dismiss, the Court noted "OnlineNIC and ID Shield admit that ID Shield is listed

---

[3] In its motion to dismiss, 35.CN argued, among other things, that the SAC should be dismissed because (1) "ID Shield is a Privacy Service Only" not a proxy service; and (2) "35.CN is immune from liability as a registrar" in the context of 35.CN being a privacy service not a proxy service.

[4] In opposition to 35.CN's motion to dismiss, plaintiffs argued "ID Shield provides a proxy service for OnlineNIC's customers. This is significant because, as a proxy service, ID Shield is liable under the ACPA for registering the Infringing Domain Names as the registrant … In order to avoid liability under the ACPA, 35.CN maintains, however, that ID Shield is a privacy service and not a proxy service. Again, 35.CN is mistaken because a privacy service lists in the WHOIS directory the beneficial user (i.e. customer) as the Registered Name Holder and not the privacy service. …Since ID Shield, and not its customers, is listed in the WHOIS directory as the Registered Name Holder for the Infringing Domain Names, ID Shield is a proxy service and is liable under the ACPA for trafficking in the Infringing Domain Names."

[5] The ACPA imposes liability on anyone who registers, uses, or traffics in a domain name that is identical or confusingly similar to another's trademark with a bad faith intent to profit from that mark. 15 U.S.C. § 1125(d). It also states that a person shall be liable for using a domain name only if that person is the domain name registrant or that registrant's authorized licensee. 15 U.S.C. § 1125(d)(1)(D).

as the registrant for the allegedly infringing domain names listed in the complaint." Dkt. No. 207 at 9 (Order Denying 35.CN's Motion to Dismiss); Dkt. No. 88 ¶ 27 (Answer) ("it is admitted that ID Shield is listed as the registrant in the WHOIS directory.").

35.CN acknowledges plaintiffs' theory of direct liability based on ID Shield as the registrant of the infringing domain names. Dkt. No. 221 at 8 (Reply ISO Motion to Bifurcate). However, 35.CN concludes, without a single citation to caselaw or any other support, that the

> argument … requires that ID Shield be a Proxy Service because if ID Shield is simply a Privacy Service (as Defendants contend), then its name is only listed in public records to protect the privacy of customers, who continue to own and control the Domain Names. In other words, there is no separate "direct liability" theory but only the question of whether ID Shield is the legal "registrant" that can own and license the Domain Names.

*Id.* While defendants may prevail on these issues at summary judgment, the Court is unpersuaded by defendant's arguments at this time and finds defendant has not met its heavy burden for bifurcation.

Second, as the Court found in its order on 35.CN's motion to dismiss, there are serious questions of fact as to alter ego that the parties need to explore. The alter ego issue pertains not only to the parties' liability but also jurisdictional issues raised in 35.CN's motion to dismiss. *See* Dkt. No. 174 (35.CN's Motion to Dismiss) (arguing the Court does not have jurisdiction over 35.CN as a Chinese company). Further, there are serious allegations of spoliation of evidence against defendants ID Shield and OnlineNIC. Dkt. No. 176 (Plaintiffs' Motion to Strike Defendant OnlineNIC and IDShield's Answers and For Default Judgment). To understand whether these allegations extend to 35.CN and how, if at all, they impact 35.CN, additional non-bifurcated discovery is required including with respect to the issue of alter ego.

In light of the foregoing, bifurcation would not promote judicial economy or otherwise streamline issues. As such, 35.CN's motion is DENIED.

///

///

## CONCLUSION

Defendant 35.CN's motion to bifurcate is DENIED in its entirety. As such its motion to stay is rendered moot and also DENIED.

**IT IS SO ORDERED**.

Dated: April 5, 2022

SUSAN ILLSTON
United States District Judge