Perry J. Narancic, SBN 206820
LEXANALYTICA, PC
3000 El Camino Real
Bldg. 4, Suite 200
Palo Alto, CA 94306
www.lexanalytica.com
pjn@lexanalytica.com
Tel: 650-655-2800

Attorneys for Defendants
ONLINENIC, INC. and DOMAIN ID SHIELD SERVICE
CO., LIMITED

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC<br><br>　　　　Plaintiffs,<br>　　v.<br><br>ONLINENIC, INC. and DOMAIN ID SHIELD SERVICE CO., LIMITED and XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD.<br><br>　　　　Defendants. | Case No. 19-CV-07071-SI<br><br>**NOTICE OF MOTION AND MOTION BY DEFENDANTS ONLINENIC, INC AND DOMAIN ID SHIELD SERVICE CO., LIMITED FOR DE NOVO DETERMINATION OF A DIPOSITIVE MOTION RE PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' ANSWER AND FOR DEFAULT JUDGEMENT AGAINST ONLINENIC, INC. AND DOMAIN ID SHIELD SERVICE CO., LIMITED (DKT NO 225); and MOTION FOR LESSER SANCTIONS UNDER FED. R. CIV. PROC. 37(c)(1)(C)**<br><br>Date: June 17, 2022<br>Time: 10:00 am<br>Courtroom: #1, 17th Fl.<br><br>Hon. Susan Illston |

- 1-

Facebook, Inc. v. OnlineNIC, Inc.　　　　　　　　　　　　　　　　　　　　Case No. 19-cv-7071-SI
Defendants' Notice of Motion and Motion for De Novo Determination re Dkt. No. 225

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 17, 2022 at 10:00 a.m., or as soon thereafter as this matter maybe be heard in the courtroom of the Honorable Susan Illston of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, Courtroom 1 – 17th Floor, San Francisco, CA 94102, Defendants OnlineNIC, Inc. and Domain ID Shield Service Co., Limited ("OnlineNIC Defendants") will and hereby do, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Civil Local Rules 7-2 and 72-3, make a Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge as to the March 28, 2022 Report and Recommendation on Plaintiffs' Motion to Strike Defendants' Answer and for Default Judgment Against Defendants OnlineNIC and Domain ID Shield (Dkt. No. 225) (the "Recommendation"). The grounds of this Motion, as further set forth in the accompanying memorandum, are that the Recommendation erred with respect to at least three findings. This Motion also moves the Court, if it is deemed necessary, for an order for lesser sanctions under Fed. R. Civ. Proc. 37(c)(1)(C).

This motion is made under the aforementioned rules and is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, any oral argument heard by the Court, such additional evidence as may be submitted to the Court at the hearing or otherwise, and such other matters as the Court deems proper.

Respectfully Submitted,

DATED: April 11, 2022    LEXANALYTICA, PC

By: /s/ *[signature]*

Attorneys for Defendants
ONLINENIC, INC. and DOMAIN ID SHEILD SERVICE CO., LIMITED

- 2-

Facebook, Inc. v. OnlineNIC, Inc.                                Case No. 19-cv-7071-SI
Defendants' Notice of Motion and Motion for De Novo Determination re Dkt. No. 225

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 72(b)(2) and Civil Local Rules 7-2 and 72-3, Defendants OnlineNIC, Inc. and Domain ID Shield Service Co., Ltd. ("OnlineNIC Defendants") respectfully move this Court for De Novo Determination of Dispositive Matter Referred to Magistrate Judge as to the March 28, 2022 Report and Recommendation on Plaintiffs' Motion to Strike Defendants' Answer and for Default Judgment Against Defendants OnlineNIC and Domain ID Shield ("Recommendation") (D.E. 225). The Recommendation imposed sanctions on Defendants because Defendants allegedly destroyed evidence during discovery.

This Motion contends that the Recommendation erred in ordering the striking on Defendants Answer and entry of default against Defendants (the "Terminating Sanctions") because the Recommendation did not adequately consider all the factors required under Fed. R. Civ. Proc. 37(e), 37(b) and 37(c).

## II. PROCEDURAL BACKGROUND

Plaintiffs filed this case on October 28, 2019. Dkt. No. 1. The original complaint alleged that defendants OnlineNIC, Inc. and Domain ID Shield Service Co., Ltd. registered, used or trafficked in a number of "Infringing Domain Names" belonging to Plaintiffs. Complaint, ¶ 37. OnlineNIC is a domain name registrar and is accredited by the Internet Corporation for Assigned Names and Numbers ("ICANN"). A domain name registrar processes domain name registration applications from "registrants" and submits the transaction information to a central registry. The registration information (such as the name and contact information for the registrant) is maintained by the registrar, and some of this information is made available publicly on a database called "WHOIS". Some registrants do not want their information publicly available, and so many registrars (including OnlineNIC) own privacy services that allow the name of the privacy company to be used as the "registrant" in the WHOIS database. ID Shield is OnlineNIC's privacy service. Plaintiffs claim, among other things, that ID Shield was the "registrant" of the Infringing Domain Names because it was ID Shield's name that appeared as "registrant" and therefore ID Shield (and

OnlineNIC as ID Shield's alleged *alter ego*) is liable for all acts related to such domains names, including cybersquatting.

During the course of discovery, OnlineNIC Defendants admitted that they had problems in making some of their productions. See e.g. Dkt. No. 61 (explaining the challenges in working with large databases, using legacy products and translation issues).  To address these issues, the OnlineNIC Defendants voluntarily agreed to the appointment of a Special Master to assist in the productions. Dkt. No. 65.  The Special Master issued a report that was adverse to the OnlineNIC Defendants on July 12, 2021 at Dkt. No. 115 ("Special Master Report", or "SMR").  On July 13, 2021 Plaintiffs filed a Motion to Strike Defendants' Answer and For Default Judgment Against OnlineNIC, Inc. and Domain ID Shield Service Co., Ltd. Pursuant to Fed. R. Civ. P. 37 and the Inherent Power of the Court ("Default Motion") (Dkt. No. 117). Plaintiffs re-filed their Default Motion on October 1, 2021 (Dkt. No. 176), and this Court referred the Default Motion to the Magistrate Judge on October 28, 2021 (Dkt. No. 193).  Defendants filed an opposition on November 23, 2021 ("Default Opposition" at Dkt. No. 201), which was supported by the declaration of Leon Freeman ("Freeman Declaration" at Dkt. No. 202). Defendants respectfully incorporate by reference into this Motion the arguments from their Default Opposition.

The Magistrate Judge issued her Recommendation on March 28, 2022 (Dkt. No. 225).

## III. ARGUMENT

### A. Some findings in the Recommendation were not supported by the evidence.

#### 1. Finding #1 – The allegedly deleted ESI was not "crucial" to Plaintiffs's case.

As a foundational matter, it is important to note why the ESI that was allegedly deleted was relevant to Plaintiffs' case. Among other things, Plaintiffs make claims for violations of the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d). One of the necessary elements of a claim for cybersquatting requires a plaintiff to prove that the defendant had a "bad faith intent to profit" from a mark where the defendant registers, traffics in or uses a domain that is "identical or confusingly similar" to that mark.

- 4-

The Recommendation found that the allegedly lost ESI was "*crucial*" to Plaintiffs' case "because such records might have evidence that Defendants intended to profit from the infringing domain names and that defendants knew that the infringing domain names were being used for malicious activities."  Recommendation, p. 14: 5-8, citing Default Motion at 6-7.  See also Recommendation, p. 13, 6-9, where the Recommendation cites Plaintiffs' argument that deleted attachment files  "all speak to the number, timing, and nature of any notices or other legal complaints received by Defendants concerning cybersquatting and  "potentially would have shown a pattern of bad faith intent to profit by Defendants and their customers."

However, Defendants have proposed: (a) a burden-shifting jury instruction, and (b) a stipulation that remedy any prejudice to Plaintiffs.  First,  OnlineNIC Defendants have agreed to shift the burden of proof such that they are *presumed* to have "registered, trafficked in or used" the Infringing Domain Names. See Recommendation, p. 14:18-26.  Second, upon such a showing, OnlineNIC Defendants agree to *stipulate* that they had a "bad faith" intent to profit (a required element under Plaintiff's theory of liability). See discussion at Recommendation, p. 19: 23—25. Given this offer to stipulate to the very element that the Recommendation found to be "crucial" to Plaintiff's case, the Terminating Sanctions were overly broad and failed to adequately consider the federal policy preference of deciding cases on their merits. As noted in *Pena v. Seguros La Comercial, SA*, 770 F. 2d 81, 814 (9th Cir. 1985), "[w]henever it is reasonably possible, cases should be decided upon their merits".  Accordingly, OnlineNIC Defendants' willingness reverse the burden of proof and to stipulate to the very issue that was "crucial" to Plaintiffs, obviates the need for Terminating Sanctions.

> **2.** **Finding #2 – The Recommendation failed to adequately consider the Special Master's own conclusion that some of the documents were deleted before the litigation commenced, and the Special Master could not determine when many files were deleted.**

The Recommendation focuses on large numbers of files that were allegedly deleted, but crucially minimizes the fact that the Special Master himself could not identify *when* many of these files were deleted.  While Plaintiffs heavily rely on the SMR, their Achilles Heel is the Special Master's admission that "… for many of the deleted records, Special Master is unable to determine

- 5-

1   *when* they were deleted." (emphasis added). SMR, p. 40:1-2. Given this admission, the Default
2   Motion simply does not articulate how the Special Master's conclusions support the submission
3   that OnlineNIC Defendants acted with intent to deprive plaintiffs of relevant data - particularly, if
4   the Special Master's analysis was based on files which were deleted *before* this litigation
5   commenced. See Default Motion, p. 1:14-15, quoting the SMR at p. 39:

> 23  type of ESI Defendants deleted and withheld. Most egregious was Defendants' deletion and
> 24  withholding of ticket attachments. As discussed, attachments arguably contained the most
> 25  responsive ESI, yet Defendants deleted 76.7% of all attachments. Defendants' conduct was
> 26  consistent and continuous. Defendants began deleting data before the complaint was filed,
> 27  continued deleting responsive records during the discovery process, and even after Special
> 28  Master's appointment.
>
> -39-
> **SPECIAL DISCOVERY MASTER'S DATA DESTROYED OR WITHHELD REPORT**
> Case No.: 5:19-cv-07071-SVK

15  The Recommendation does not appear to properly take into consideration the Special
16  Master's own findings. For instance, the Recommendation at p. 13: 2-13 notes that 76.7% of the
17  attachments were deleted and that the sheer quantity and nature of such deletions supported
18  Plaintiff's claim of prejudice. However, it goes without saying that OnlineNIC Defendants cannot
19  be liable for spoliation if the files that were deleted even before the complaint in this action was
20  filed.
21  This, in turn, points to another issue in the Recommendation. In an effort to explain
22  OnlineNIC Defendants' failure to preserve ESI, the Recommendation simply points to the Freeman
23  Declaration as an admission that OnlineNIC willfully deleted evidence during the discovery period.
24  Recommendation, p. 12: 9-15. Indeed, the Freeman Declaration does state that OnlineNIC deleted
25  records before and after discovery, but the Recommendation fails to cite the rest of the Freeman
26  Declaration as to why the deletions occurred i.e. that many files in the database were either
27  corrupted or had unreadable characters, which slowed down database performance. Therefore, to

improve performance, OnlineNIC had a long-standing practice (going back before this lawsuit was instituted) of deleting such files from the database:

> 5. OnlineNIC does not dispute that certain database records were deleted from the production Kayako Database after the complaint in this case was filed on October 28, 2019 (the "Complaint Date"). The Kayako support ticket database is a legacy product that is no longer supported. Over the course of years of operation, the database became unwieldy and stuffed with spam and voluminous, old support data - resulting in a very slow database which was difficult to search and manage. To help address these issues, OnlineNIC regularly deleted huge amounts of spam that had been sent through the support system, which included torrents of junk sent to OnlineNIC's public facing support email. The spam included content with unreadable characters, which would further slow down the database. Thus, even before the Complaint Date, OnlineNIC had the practice of deleting huge amounts of spam and old content from the Kayako Database.

The Freeman Declaration further describes how OnlineNIC deleted so-called "Hangup Records", like files with unreadable characters, after the initial database production in July 2020. See Freeman Declaration, ¶7-9.

### B. Finding #3 -The Recommendation did not fairly analyze the exculpatory evidence provided by OnlineNIC Defendants.

The Recommendation found that there was some exculpatory evidenced that was put forward in the Freeman Declaration and that this factor favored resolution of this case on the merits. However, the Recommendation held that this factor was not sufficient to outweigh the remaining factors. Recommendation. P. 17:27-28.

In fact, OnlineNIC Defendants produced a mountain of evidence showing that they did not register, traffic in or use the Infringing Domain Names. By way of example, Defendants have produced exculpatory documents that show that third parties registered the domains in question. At Dkt. No. 146, 146-2, and 146-3, OnlineNIC provided evidence that it sent an indemnification demand to an OnlineNIC customer called "Lockspin" because it had registered "trollfacebook.com", one of the allegedly Infringing Domain Names. Lockspin wrote back and *admitted* that it had registered the domain (at Dkt. No 146-3):

- 7-

Facebook, Inc. v. OnlineNIC, Inc.                                                                                  Case No. 19-cv-7071-SI
Defendants' Notice of Motion and Motion for De Novo Determination re Dkt. No. 225

```
From:     Lockspin UK <info@lockspin.com>
Sent:     Wednesday, March 31, 2021 8:07:07 AM
To:       Perry J. Narancic <pjn@lexanalytica.com>
Subject:  Re: Indemnification Demand from OnlineNIC
```

Dear Mr. Narancic,
Thank you for finally contacting me about the matter of missing domain names. I only wish that Onlinenic had contacted me first, back in 2019, before Facebook sued your client for allowing criminals to use the Onlinenic services for registering phishing domains and domain names suggesting a promise to provide hacking services against Facebook. Had they responded to Facebook's emails or forwarded their original complaint, I could have explained the misunderstanding and if they still insisted on an allegation of "dilution" I could have worked with them. Instead of going into further details about how Trollface (from the domain TrollfaceBook.com) is an internet meme in the public domain and has nothing to do with Facebook other than the assumptions of their lawyers, or presenting examples like MiniKeys not being a trademark infringement on Nike, AppLexicon not being a trademark infingement on Apple, and so on, I will cut to the chase.

In addition, the Freeman Declaration, paragraphs 15 – 21, shows that OnlineNIC Defendants produced a large amount of exculpatory data to Plaintiffs during discovery. This included emails from OnlineNIC to Plaintiffs in response to Plaintiffs' pre-lawsuit requests for disclosure of true registrant information. However, Plaintiffs never replied to these emails - leading OnlineNIC Defendants to think that the emails were spam. Freeman Decl., Ex. A, para.15.  Here is one example relating to the domain" buyinstagramfans.com":

[next page]

- 8-

> Hello,
>
> This is Ben from OnlineNIC.
>
> We try to contact your end for many times, is there anyone can response and discuss with me on this issue. So that we can help you further.
>
> Best Regards,
>
> Ben Barnes
> OnlineNIC Customer Support
> E-mail: ben@onlinenic.com
> Website: www.onlinenic.com
>
> ---
>
> From: whoisrequest
> Date: 2018-08-14 21:46
> To: abuse
> Subject: Nonpublic registrant data for BUYINSTAGRAMFANS.COM [CASE: zHtrhxe2gT]
> To OnlineNIC, Inc.
> I write on behalf of Facebook [and its affiliated companies] to request a single domain registration record as identified below.[1] We have become aware that the below-identified domain name misuses one or more of the following trademarks held by Facebook [and/or its affiliated companies]:
>
> | Trademark | US Trademark Reg. # | EU Trademark Reg. # |
> |---|---|---|
> | OCULUS RIFT | 4863585 1A | 012983854 EUTM |
> | OCULUS | 4891157 1A | 012983854 |
> | OCULUS VR | 4424543 1A | 012983854 EUTM |
> | INSTAGRAM | 4146057 1A | 012111746 EUTM |
> | INSTAGRAM | 4170675 1A | 012111746 EUTM |
> | FB | 4659777 1A | 8981383 EUTM |
> | FACEBOOK | 4643774 1A | 005722392 EUTM |
>
> The fame and recognition of the above marks entitle Facebook to broad legal protection globally.
> In order to investigate and prevent intellectual property infringement and contact infringing parties and relevant service providers, we request information regarding the following domain name:
>
> - buyinstagramfans.com

OnlineNIC Defendants also produced to Plaintiffs in discovery the Registration Database information showing the names and account information for the registrants of the Infringing Domain Names and the associated resellers. Freeman Decl., Ex. B.

Attached to the Freeman Declaration as <u>Exhibit C</u> is a true and correct copy of a spreadsheet (taken from the Registration Database) containing the IP addresses from which accused domains

- 9 -

Facebook, Inc. v. OnlineNIC, Inc.                                                                Case No. 19-cv-7071-SI
Defendants' Notice of Motion and Motion for De Novo Determination re Dkt. No. 225

registrations were made. This data was produced by OnlineNIC Defendants in discovery. None of these IP addresses were associated with either OnlineNIC Defendant. Freeman Decl., para. 18.

Attached to the Freeman Declaration as <u>Exhibit D</u> are true and correct copies of an excel spreadsheet that contains payment information from the Registration Database for resellers associated with the Infringing Domain Names. This payment data shows that the resellers in question are not mere "aliases" of OnlineNIC, but bona fide third party resellers. This data was produced by Defendants in discovery. Freeman Decl., para. 19.

During discovery OnlineNIC produced emails and communications (sometimes in the form of "support tickets") between OnlineNIC Defendants and the resellers or registrants at issue in this case. Attached to the Freeman Declaration are small samples of such communications. Attached <u>Exhibit E</u> is a true and correct copy of these sample communications with reseller number 437223. <u>Attached F</u> is a true and correct copy of these sample communications with reseller number 511846. <u>Attached G</u> is a true and correct copy of these sample communications with reseller number 550388. <u>Attached H</u> is a true and correct copy of these sample communications with reseller number 551607. Attached <u>Exhibit I</u> is a true and correct copy of these sample communications with reseller number 563809. Attached <u>Exhibt J</u> is a true and correct copy of these sample communications with reseller number 572271. Attached <u>Exhibit K</u> is a true and correct copy of these sample communications with reseller number 575192. These communications show that the resellers in question are not mere "aliases" of OnlineNIC, but bona fide third party resellers. All of the foregoing exhibits were produced by Defendants to Plaintiffs in discovery. Freeman Decl., para. 19.

**C.     If OnlineNIC Defendants' Arguments on Findings #1-3 are availing, the Recommendation's' conclusions under Fed. R. Civ. Proc. 37(e), 37(b) and 37(c) are flawed.**

**1.     Analysis Under Fed. R. Civ. Proc. 37(e)**

The Recommendation set out its analysis of Rule 37(e) by analyzing three principal facts: (a) the deletion of data as "admitted" in the Freeman Declaration (Recommendation, p. 12:21-22, (b) the deletion of 76.6% of attachments, at Recommendation, p. 13: 2-7 (notwithstanding that an unknown number of these were deleted before the litigation commenced) and (c) the allegedly

- 10-

deleted evidence was "crucial" to Plaintiffs' case (Recommendation, p. 14:8-17). If OnlineNIC Defendants' arguments as to Finding #1 (Evidence was Not Crucial), Finding #2 (the timing of the deletions) and Finding #3 (exculpatory evidence) have merit, the Recommendation should not be followed as to the Rule 37(e) recommendation.

### 2. Analysis Under Fed. R. Civ. Proc. 37(b)(2)(A)(vi)

The Recommendation (p. 15:-21) sets out its analysis of Rule 37(b)(2)(A)(vi) by analyzing the five factors under *Leon v. IDX Sys., Corp*, 464 F. 3d 951 (9th Cir. 2006): "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."

Based on the discussion above on Findings #1-#3, the public policy favoring resolution of disputes on their merits should outweigh the other factors in this case. Given OnlineNIC Defendants' willingness to stipulate to a finding that it acted with a "bad faith intent to profit", there is no prejudice to Plaintiffs because the lost ESI went precisely to that issue. So, this is an automatic win for Plaintiffs. Arguably, Plaintiffs are in a superior position because they would have otherwise been put to the task of proving this element.

The exculpatory evidence provided by OnlineNIC Defendants, as summarized in the Freeman Declaration, was not contradicted by Plaintiffs- which speaks volumes. Given this fact, OnlineNIC Defendants agree with the legal rule cited in the Recommendation – which is that ***truth*** is the most critical factor in this analysis. The Recommendation, at p. 15:15-19, citing *Conn. Gen Life Inns. Co. v. New Images of Beverley Hills*, 482 F. 3d 1091, 1097 (9th Cir. 2007), notes: " The most critical factor is not merely delay or docket management concerns, but truth", and the court's chief concern therefore should be "whether the discovery violations threatened to interfere with the rightful decision of the case". OnlineNIC Defendants respectfully submit that, with their offered stipulation on "bad faith" intent to profit and reversal of the burden of proof in favor of Plaintiffs, this case should be tried on the merits.

Facebook, Inc. v. OnlineNIC, Inc.                                                                                      Case No. 19-cv-7071-SI
Defendants' Notice of Motion and Motion for De Novo Determination re Dkt. No. 225

### 3. Analysis Under Fed. R. Civ. Proc. 37(c)(1)(C)

The Recommendation (p. 21-23) sets out its analysis under Rule 37(c)(1)(C) based on the two-factor test set out in *R&R Sails, Inc. v. Ins. Co. of Penn*., 673 F.3d 1240 (9th Cir. 2012) and *Merchant v. Corizon Health, Inc*, 993 F.3d 733 (9th Cir. 2021). Relying on *Merchant*, the Recommendation found that OnlineNIC Defendants' failure to file a separate motion for lesser sanctions meant that the Magistrate Judge *did not have* to consider lesser sanctions. However, Rule 37(c)(1)(C) is a only discretionary rule and the failure of a non-complaint party to separately move for lesser sanctions does not mean that the sanctions requested by the Rule 37(c)moving party must be automatically granted. *Merchant*, 993 F.3d at 741 ("Likewise, if the non-compliant party fails to move for lesser sanctions, the district court is ***not required to consider*** one and does not abuse its discretion in excluding evidence where such action ***is otherwise justified***.(emphasis added).

In this case, for the same reasons articulated above concerning Findings #1-#3, terminating sanctions are not appropriate under Rule 37(c)(1)(C). To the extent that this Court deems it necessary that OnlineNIC Defendants file a separate motion for a lesser sanction, OnlineNIC Defendants respectfully request that this Court treat this Motion as a Motion for a lesser sanctions, as set forth in the proposed order accompanying this Motion.

## IV. CONCLUSION

For all the foregoing reasons, OnlineNIC Defendants respectfully request that this Court deny Plaintiff's Default Motion. To the extent that Terminating Sanctions are not granted, the remaining findings of the Recommendations must fail because they are all based on the Terminating Sanctions. As set forth in the proposed order accompanying this Motion, the fair, lesser sanction in this case is: (a) a jury instruction that shifts the burden of proof onto OnlineNIC Defendants that they did not register, traffic in or use the Infringing Domains, and (b) a stipulation that, where OnlineNIC fails to discharge the foregoing burden, OnlineNIC Defendants acted with "bad faith" intent to profit.

Facebook, Inc. v. OnlineNIC, Inc.  Case No. 19-cv-7071-SI
Defendants' Notice of Motion and Motion for De Novo Determination re Dkt. No. 225

| | |
|---|---|
| DATED: April 11, 2022 | Respectfully Submitted,<br><br>LEXANALYTICA, PC<br><br>By: _/s/ Karl Kronenberger_ <br><br>Attorneys for Defendants<br>ONLINENIC, INC. and DOMAIN ID SHEILD SERVICE CO., LIMITED |

- 13-

Facebook, Inc. v. OnlineNIC, Inc.                                                                           Case No. 19-cv-7071-SI
Defendants' Notice of Motion and Motion for De Novo Determination re Dkt. No. 225