TUCKER ELLIS LLP
David J. Steele SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:      213.430.3400
Facsimile:      213.430.3409

DAVIS POLK & WARDWELL LLP
Ashok Ramani SBN 200020
ashok.ramani@davispolk.com
Micah G. Block SBN 270712
micah.block@davispolk.com
Cristina M. Rincon (*Pro Hac Vice*)
Cristina.rincon@davispolk.com
1600 El Camino Real
Menlo Park, CA 94025
Telephone:    650.752.2000
Facsimile:    650.752.2111

Attorneys for Plaintiffs,
FACEBOOK, INC. and INSTAGRAM, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ONLINENIC INC.; DOMAIN ID SHIELD SERVICE CO., LIMITED; and XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD.,<br><br>Defendants. | Case No. 3:19-cv-07071-SI<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO ONLINENIC AND DOMAIN ID SHIELD'S MOTION, AND 35.CN'S SEPARATE MOTION, FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER AND TO OBJECT TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' ANSWER AND FOR DEFAULT JUDGMENT AGAINST DEFENDANTS ONLINENIC AND DOMAIN ID SHIELD**<br><br>DATE: June 17, 2022<br>TIME: 10:00 a.m.<br>CTRM: 1 – 17th Floor<br><br>Hon. Susan Illston |

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

I.  INTRODUCTION.......................................................................................................1

II.  STATEMENT OF ISSUES TO BE DECIDED....................................................3

III.  FACTUAL AND PROCEDURAL BACKGROUND ...........................................4

      A.    The Nature of Plaintiffs' Claims ..............................................4

      B.    The Special Master's Findings ................................................5

      C.    Magistrate Judge van Keulen's Report and Recommendation ................6

IV.  STANDARD OF REVIEW ......................................................................................7

V.  ARGUMENT ...........................................................................................................8

      A.    The OnlineNIC Defendants acted with intent when they destroyed evidence and withheld discovery.....................................................9

      B.    Magistrate Judge van Keulen evaluated lesser sanctions and correctly determined the OnlineNIC Defendants' extensive discovery misconduct warranted terminating sanctions. ..........................12

      C.    Defendants' arguments that the case should be decided on their merit-based arguments ignore the extent of prejudice created by the OnlineNIC Defendants' misconduct.....................................17

      D.    There is no just reason to delay entering default judgment.....................20

VI.  CONCLUSION .......................................................................................................25

Tucker Ellis LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

1

**TABLE OF AUTHORITIES**

2
**Page(s)**

3
**Cases**

4
*Alcantara v. McEwen,*
   No. 12-CV-401-IEG DHB, 2013 WL 4517861 (S.D. Cal. Aug. 15, 2013) ...............................2, 8, 20

5
*Apple, Inc. v. Samsung Elecs. Co. Ltd.,*
6
   888 F. Supp. 2d 976 (N.D. Cal. 2012)...........................................................................................17

7
*Brook v. McCormley,*
   837 F. App'x 433 (9th Cir. 2020) ................................................................................................7, 8

8
*Cadence Design Sys., Inc. v. Pounce Consulting, Inc.,*
9
   No. 17-CV-04732-PJH, 2019 WL 3576900 (N.D. Cal. Aug. 6, 2019) .............................................22

10
*Cadence Design Sys., Inc. v. Viera,*
   836 F. App'x 493 (9th Cir. 2020) ..................................................................................................22

11
*Coyne v. Los Alamos Nat'l Sec., LLC,*
   2017 WL 3225466 (D.N.M. May 1, 2017) ....................................................................................15

12
*CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n,*
13
   No. 14CV1191 JLS (KSC), 2017 WL 2298473 (S.D. Cal. May 26, 2017) .........................................19

14
*Decker v. Berryhill,*
   856 F.3d 659 (9th Cir. 2017) ...........................................................................................................7

15
*Dow Jones Co. v. Avenel,*
16
   151 Cal. App. 3d 144, Cal. Rptr. 457 (Ct. App. 1984) ..................................................................23

17
*Facebook, Inc. v. Banana Ads LLC,*
   No. 11-CV-03619-YGR, 2013 WL 12308492 (N.D. Cal. Oct. 24, 2013) .........................................7

18
*Fractional Villas v. Katz,*
   No. 08CV1317 DMS (POR), 2008 WL 11337364 (S.D. Cal. Nov. 10, 2008) ..........................20, 24

19
*Frow v. De La Vega,*
20
   82 U.S. 552 (1872) ........................................................................................................................24

21
*Greenhow v. Sec'y of Health & Hum. Servs.,*
   863 F.2d 633 (9th Cir. 1988) ...........................................................................................................8

22
*Harrell v. DCS Equip. Leasing Corp.,*
23
   951 F.2d 1453 (5th Cir. 1992) .......................................................................................................20

24
*In re First T.D. & Inv., Inc.,*
   253 F.3d 520 (9th Cir. 2001) .........................................................................................................20

25
*Int'l Petroleum Prod. & Additives Co., Inc. v. Black Gold S.A.R.L.,*
   No. 19-CV-3004-YGR, 2021 WL 7448603 (N.D. Cal. Dec. 6, 2021)...............................................7

26
*Katzir's Floor & Home Design, Inc. v. M-MLS.com,*
27
   394 F.3d 1143 (9th Cir. 2004) .......................................................................................................22

28

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

*Leon v. IDX Systems Corp.*,
2004 WL 5571412 (W.D. Wash. Sept. 30, 2004), *aff'd* 464 F.3d 951 (9th Cir. 2006)...................16, 19

*Leon v. IDX Systems Corp.*,
464 F.3d 951 (9th Cir. 2006) ...................................................................................................13, 17

*Mad Dogg Athletics, Inc. v. NYC Holding*,
565 F. Supp. 2d 1127 (C.D. Cal. 2008) ...........................................................................................23

*Malone v. U.S. Postal Serv.*,
833 F.2d 128 (9th Cir. 1987) ...........................................................................................................16

*Malone v. United States Postal Service*,
833 F.2d 128 n. 2 (9th Cir. 1987) ....................................................................................................19

*Metals Inc. v. Rand Pac. Sales, Inc.*,
4 Cal. App. 5th 698 (2016) ..............................................................................................................22

*Microsoft Corp. v. OnlineNIC Inc.*,
No. 08-4648 (N.D. Cal.) ...................................................................................................................15

*Ness v. Comm'r*,
954 F.2d 1495 (9th Cir. 1992) ...........................................................................................................7

*Oceans II, Inc. v. Skinnervision, Inc.*,
No. 2:12-cv-06867-CAS (Ex), 2015 WL 4484208 (C.D. Cal. July 20, 2015) ................................23

*OmniGen Rsch. v. Yongqiang Wang*,
321 F.R.D. 367 (D. Or. 2017) ..........................................................................................................15

*Perry v. Schwarzenegger*,
268 F.R.D. 344 (N.D. Cal. 2010) .......................................................................................................7

*Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co.*,
978 F.2d 430 (8th Cir. 1992) ...........................................................................................................20

*Phoenix Renovation Corp. v. Gulf Coast Software, Inc.*,
197 F.R.D. 580 (E.D. Va. 2000) ..................................................................................................20, 21

*Porter v. City & Cty. of San Francisco*,
2018 WL 4215602 (N.D. Cal. Sept. 5, 2018) ..................................................................................12

*Quinn v. Robinson*,
783 F.2d 776 (9th Cir. 1986) .............................................................................................................7

*Shanghai Automation Instrument Co. v. Kuei*,
194 F. Supp. 2d 995 (N.D. Cal. 2001) .............................................................................................24

*Smith v. Frank*,
923 F.2d 139 (9th Cir. 1991) .........................................................................................................1, 2

*Sullivan v. Schriro*,
No. CV-04-1517-PHX-DGC, 2006 WL 1516005 (D. Ariz. May 30, 2006) ......................................8

*U.S. Fidelity and Guar. Co. v. Lee Investments LLC*,
641 F.3d 1126 (9th Cir. 2011) .........................................................................................................23

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

*U.S. for Use of Wiltec Guam, Inc. v. Kahaluu Const. Co., Inc.*,
   857 F.2d 600 (9th Cir. 1988) .................................................................................................17

*United States v. Hardesty*,
   977 F.2d 1347 (9th Cir. 1992) ................................................................................................8

*Verizon Cal. Inc. v. Onlinenic, Inc.,*
   No. 08-2832, 2009 WL 2706393 (N.D. Cal. Aug. 25, 2009) ................................................15

*Windsor v. Boushie*,
   677 F. App'x 311 (9th Cir. 2017) .........................................................................................22

*Yahoo! Inc. v. Onlinenic Inc.,*
   No. 08-5698 (N.D. Cal.) .......................................................................................................15

**Statutes**

15 U.S.C. § 1125(d)(a)(D) ............................................................................................................4

15 U.S.C. § 1125(d)(1)(A) ............................................................................................................4

15 U.S.C. § 1125(d)(1)(D) ............................................................................................................4

15 U.S.C. § 1125(d)(1)(E) ............................................................................................................4

17 U.S.C. § 1125(d)(1)(B)(i) ......................................................................................................13

28 U.S.C. § 636(b)(1)(C) ..............................................................................................................2

**Other Authorities**

WRIGHT & MILLER, FED. PRAC. & PROC. § 3070.1 .........................................................2, 7, 8

**Rules**

Fed. R. Civ. P. 12(b)(2) ..............................................................................................................22

Fed. R. Civ. P. 12(b)(6) ..............................................................................................................22

Fed. R. Civ. P. 37(b) ..............................................................................................................8, 12

Fed. R. Civ. P. 37(c) .....................................................................................................................8

Fed. R. Civ. P. 37(c)(1)(C) ...........................................................................................................8

Fed. R. Civ. P. 37(e) .....................................................................................................................8

Fed. R. Civ. P. 37(e)(2) ..............................................................................................................12

Fed. R. Civ. P. 54(b) .......................................................................................................3, 23, 24

Fed. R. Civ. P. 72(b) .....................................................................................................................7

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Magistrate Judge van Keulen's Report and Recommendation for terminating sanctions against Defendants OnlineNIC, Inc. ("OnlineNIC") and Domain ID Shield Service Co., Limited ("ID Shield"; collectively, the "OnlineNIC Defendants") contains an expansive and detailed analysis of the OnlineNIC Defendants' pervasive litigation misconduct in this case. (*See generally* Report and Recommendation ("R&R"; Dkt. 225).) Soundly based on the Special Discovery Master's Data Destroyed Or Withheld Report ("SMR"; Dkt. 115), the R&R found that the OnlineNIC Defendants caused irreparable harm to Plaintiffs by intentionally destroying and obfuscating key evidence, failing to preserve and produce responsive ESI, and disobeying the Court's order appointing the Special Master (SMR 39:11–41:5; R&R 4:21–9:8, 13:25–14:4).

The OnlineNIC Defendants did not object to the SMR (Dkt. 126), and Magistrate Judge van Keulen adopted its findings under Fed. R. Civ. P. 53(f) (Dkt. 151). Indeed, the OnlineNIC Defendants have never withdrawn or sought to withdraw their non-opposition to the SMR (Dkt. 225 at 4 n.4) and have thus waived their right to challenge these findings. *Smith v. Frank*, 923 F.2d 139, 141 & n.1 (9th Cir. 1991) ("Failure to object to special master's findings and conclusions is treated identically to failure to object to magistrate's findings and conclusions."). As such, the OnlineNIC Defendants cannot dispute Magistrate Judge van Keulen's findings that they engaged in willful, mass-scale spoliation of evidence— including over 3 million likely responsive records from the highly relevant trouble ticket database (R&R 14:11–13, 16:15–28 (citing SMR 23, 39))—as well as other discovery misconduct.

Yet, the OnlineNIC Defendants and their alter ego, Defendant Xiamen 35.com Internet Technology Company Limited ("35.CN"; together with the OnlineNIC Defendants, "Defendants"),[1] in separate sets of objections to the R&R (Dkt. 228, 229), improperly challenge the Special Master's

---

[1] Based on the OnlineNIC Defendants' admissions to the Second Amended Complaint ("SAC"; Dkt. 109), employees of 35.CN perpetrated the spoliation of evidence because the "day-to-day operations" of the OnlineNIC Defendants, "including all technical support and customer support, are carried out by employees of 35.CN." (*See* SAC ¶¶ 45–46; Answer to SAC (Dkt. 88) ¶¶ 45–46 (admitting).) Pursuant to stipulation, the Court ordered that OnlineNIC Defendants' Answer to the First Amended Complaint is the operative responsive pleading to the SAC. (Dkt. 108 at 2:23–24.)

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

findings. Indeed, Defendants repeatedly attempt to mislead the Court by falsely suggesting they disputed the Special Master's findings or that the Special Master's findings can be challenged. (*See* 35.CN's Objs. 1:18–20, 3:10, 4:27, 6:23–24; OnlineNIC Defs' Objs. 3:9). Defendants' belated and improper challenges to the SMR must be rejected by the Court. *Smith*, 923 F.2d at 141 & n.1.

Furthermore, 35.CN's attempt to seek de novo review of "the entire [R&R]" (35.CN's Objs. 4:19–20; 5:1–2) is equally improper and need not be considered by the Court. *See* 28 U.S.C. § 636(b)(1)(C) ("court shall make a de novo determination of *those portions of the report or specified proposed findings or recommendations to which objection is made*" (emphasis added)); *Alcantara v. McEwen*, No. 12-CV-401-IEG DHB, 2013 WL 4517861, at *1 (S.D. Cal. Aug. 15, 2013) ("Numerous courts have held that a general objection to the entirety of a Magistrate Judge's R & R has the same effect as a failure to object.").

Additionally, Defendants **did not** raise any objection to Magistrate Judge van Keulen's recommendations that (1) Plaintiffs are entitled to $3,135,000 in statutory damages under the Anti-cybersquatting Consumer Protection Act ("ACPA") (R&R 24:1–28:23); (2) the OnlineNIC Defendants must transfer the 35 offending domain names to Plaintiffs (R&R 28:24–29:3); (3) Plaintiffs are entitled to injunctive relief (R&R 29:4–31:4); (4) this is an exceptional case warranting an attorneys' fees award to Plaintiffs in an amount to be determined (R&R 31:5–32:21); and (5) the OnlineNIC Defendants should reimburse Plaintiffs $88,937 for Special Master costs (R&R 32:22–33:8). Therefore, Defendants are not entitled to de novo review of these portions of the Relief section of the R&R (R&R 23:17–33:8.) *See* WRIGHT & MILLER, FED. PRAC. & PROC. § 3070.1 & nn.5–7, 10 (3d ed. 2021) (district judge excused from conducting de novo review if specific objections not made.)

Defendants have raised only three specific objections to the R&R related to whether terminating sanctions are proper: (1) whether Defendants intentionally destroyed and hid crucial documents (OnlineNIC Defs.' Objs. 4:19–7:15); (2) whether Magistrate Judge van Keulen adequately considered lesser sanctions (35.CN's Objs. 1:27–2:1, 8:15, 8:22–10:7, 11:18–13:9; OnlineNIC Defendants' Objs. 4:20–5:21, 11:5–26); and (3) whether there should be a trial on the merits given purported "exculpatory evidence" (35.CN's Objs. 7:3–8:9, 11:26–12:12; OnlineNIC Defendants' Objs. 7:16–10:21). In addition, 35.CN individually argues there is "just reason" for delay and seeks de novo review of "the entire [R&R]." (35.CN's Objs. 5:1–7:2.) The Court should reject these objections because they contradict the findings of

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

2

the SMR, which have been adopted by the Court without objection by Defendants. Defendants' objections are also contrary to legal authority. Terminating sanctions are necessary to remedy mass destruction of critical evidence and other discovery abuses that have caused irreparable harm to Plaintiffs, making it impossible to conduct a fair trial on the merits. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007). Because nothing short of terminating sanctions can adequately cure the prejudice caused by Defendants' discovery abuses, this Court should adopt the R&R and order terminating sanctions against the OnlineNIC Defendants.

## II.    STATEMENT OF ISSUES TO BE DECIDED

The following issues are to be decided:

1.    Whether the OnlineNIC Defendants acted with intent to deprive Plaintiffs of information based on the Special Master's undisputed findings that the OnlineNIC Defendants deleted over three million relevant and responsive database records, including after the complaint was filed, during the course of discovery, and after the Special Master was appointed.

2.    Whether lesser sanctions could adequately remedy the prejudice to Plaintiffs caused by the OnlineNIC Defendants' intentional destruction of evidence potentially related to the Defendants' registration, trafficking in and use of infringing domain names with a bad faith intent to profit, as well as evidence potentially related to Defendants' alter ego relationship and direct participation in the unlawful acts.

3.    Whether a fair trial on the merits is possible in light of the OnlineNIC Defendants' destruction of 76.7% of the ticket attachments, which comprise the type of evidence most likely to be highly probative of Plaintiffs' claims.

4.    Whether the Court should delay ruling on Plaintiffs' Motion to Strike Defendants' Answer and for Default Judgment Against the OnlineNIC Defendants ("Sanctions Motion") (Dkt 176) pursuant to Fed. R. Civ. P. 54(b) even though 35.CN faces no prejudice or violation of its due process rights because it has exercised an opportunity to present its defenses to the Court as a party defendant.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

### III.    FACTUAL AND PROCEDURAL BACKGROUND

#### A.    The Nature of Plaintiffs' Claims

Plaintiffs sued Defendants for cybersquatting under the ACPA, trademark infringement, false designation of origin and dilution, and further alleged that Defendants were alter egos of each other and direct participants in the infringing acts. Defendants' ACPA cybersquatting liability arises under two independent bases. First, ID Shield registered (as the registrant) at least 35 domain names identified in the SAC that are identical or confusingly similar to Plaintiffs' Marks with a bad faith intent to profit from Plaintiffs' Marks (the "Infringing Domain Names"). (SAC ¶¶ 56 & 60–70.)[2] 15 U.S.C. § 1125(d)(1)(A). ID Shield is listed as the registrant of the Infringing Domain Names in the WHOIS directory. *Id.* ¶ 57 & Ex. 7; *see* Order Denying 35.CN's Motion to Dismiss (Dkt. 207 at 9:21–23) (". . . OnlineNIC and ID Shield admit that ID Shield is listed as the registrant for the allegedly infringing domain names listed in the complaint.") Indeed, the ID Shield Service Agreement states that "each domain name registration which you control and which You designate . . . ***will thereafter be registered in the name of [ID Shield], as registrant***." (SAC Ex. 6 at 1) (emphasis added). ID Shield also trafficked in the Infringing Domain Names because, after registering the Infringing Domain Names as the registrant, it licensed the Infringing Domain Names to its customers (aka licensees), for the customers' use. *Id.* ¶ 59; *see* 15 U.S.C. § 1125(d)(1)(E).

Second, ID Shield is liable under OnlineNIC's domain name registration agreement for the actual harm caused by the Infringing Domain Names. Specifically, ID Shield was required to disclose the contact information for its customers within seven days of being provided "reasonable evidence of actual harm" or accept liability. (SAC ¶ 71 & Ex. 4.) Plaintiffs sent ID Shield reasonable evidence of actual harm regarding the Infringing Domain Names; however, ID Shield failed to timely provide the necessary

---

[2] The Infringing Domain Names include names like "buyinstagramfans.com" and "www.facebook-pages.com." (R&R 28:5–7; SAC ¶ 56.) In some instances, the Infringing Domain Names have been used for malicious activity or domain name abuse, including hosting websites directing visitors to other commercial sites, phishing, and selling purported tools for hacking. *Id.* ¶ 67. Some of the domain names are configured to send and receive email, strongly suggesting use for spear phishing email attacks. *Id.* ¶ 68.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

customer contact information. *Id.* ¶¶ 74–75.[3] ID Shield therefore is liable for the actual harm caused by the Infringing Domain Names.[4] OnlineNIC and 35.CN are equally liable for ID Shield's cybersquatting, as well as the actual harm caused by the Infringing Domain Names, because ID Shield is OnlineNIC's and 35.CN's alter ego, and OnlineNIC and 35.CN are direct participants in ID Shield's cybersquatting. *Id.* ¶¶ 12, 30–55.

## B.    The Special Master's Findings

Due to pervasive and repeated problems with the OnlineNIC Defendants' document productions,[5] the Court appointed a Special Discovery Master "to determine both the adequacy of [the OnlineNIC Defendants'] past productions and whether they destroyed or withheld data from their ticket database." (R&R 4:5–7.) The SMR concluded that Defendants intentionally withheld evidence, obfuscated the discovery process, and—most alarmingly—destroyed evidence vital to Plaintiffs' claims, which is now irrecoverable. (SMR 39:12–41:5.) The SMR found "there is ample evidence that Defendants failed to preserve responsive ESI, deleted ESI, and withheld ESI." *Id.* at 2:23–24. In particular, the OnlineNIC Defendants deleted 76.7% of ticket attachments, which the Special Master found to be "the most critical evidence type" in the case. *Id.* at 3:11–20, 26:27–27:7, 39:24–25, 40:18–19. The Special Master made at least seven key findings concerning Defendants' conduct in discovery—findings that the OnlineNIC Defendants did not oppose and that Magistrate Judge van Keulen adopted (Dkt. 126, 151) and relied on in the R&R (R&R 4:21–9:8):

- Defendants possessed the requisite IT skills and software developer knowledge to preserve ESI yet failed to do so (SMR 17:20–18:14);

- Defendants' data destruction was extensive and intentional, *id* at 19:26–20:8, 26:12–27:11;

---

[3] The OnlineNIC Defendants produced an excerpt of a purported email sent to Plaintiffs that confirms that ***no customer contact information was provided by them***. (OnlineNIC Defs.' Objs. 8:1–9:20.) Nor do the OnlineNIC Defendants assert that they timely provided such contact information.

[4] Under the ACPA, a person is liable for using a domain name only if that person is the domain name registrant or that registrant's authorized licensee. 15 U.S.C. § 1125(d)(1)(D),

[5] The OnlineNIC Defendants engaged in a pattern of discovery abuses by producing incomplete, unresponsive, untimely, and unusable documents, and selectively deleting responsive records. (Dkt. 176 at 4:4–21).

- Defendants intentionally withheld significant ESI they did not destroy, *id.* at 30:11–34:25;

- Defendants engaged in "data dumping" to obscure responsive data, *id.* at 34:26–35:16;

- Defendants deleted and withheld records from the Special Master, *id.* at 35:17–36:2; and

- Defendants made "material misrepresentations" to the Special Master, *id.* at 40:6–14.

The Special Master concluded that "Defendants did not do what they should have done (preserve and produce responsive ESI) yet did do what they should not have done (delete and obfuscate)." *Id.* at 39:12–13. Furthermore, "Defendants . . . continued deleting responsive records during the discovery process, and even after Special Master's appointment." *Id.* at 39:26–28. Finally, the Special Master found that Plaintiffs suffered "irreparable harm" because Defendants "permanently deleted responsive database record and attachment files, that [Plaintiffs] will never see or know the contents." *Id.* at 40:21–23.

**C.    Magistrate Judge van Keulen's Report and Recommendation**

**1.    Terminating Sanctions Under Rule 37(e)**

Magistrate Judge van Keulen found that terminating sanctions are warranted under Rule 37(e) because (1) potentially relevant ESI should have been preserved by the OnlineNIC Defendants, (2) the OnlineNIC Defendants failed to take reasonable steps to preserve the ESI; (3) the ESI could not be restored or replaced, (4) the OnlineNIC Defendants acted intentionally, and (5) lesser sanctions are inappropriate. (R&R 11:5–15:2.) These findings are supported by the SMR and the law. (*See* Dkt. 176 at 7:11–11:23.)

**2.    Terminating Sanctions Under Rule 37(b)**

Magistrate Judge van Keulen also found terminating sanctions are warranted under Rule 37(b) because (1) the OnlineNIC Defendants acted willfully and in bad faith, (2) the OnlineNIC Defendants' misconduct delayed resolution of this case, (3) the OnlineNIC Defendants' spoliation impaired Plaintiffs' ability to go to trial or interfered with the rightful decision of the case, and (4) lesser sanctions are not feasible. (R&R 15:3–21:11.) The SMR and the law support these findings. (*See* Dkt. 176 at 11:24–16:16.)

**3.    Terminating Sanctions Under Rule 37(c)**

Finally, Magistrate Judge van Keulen found terminating sanctions are warranted under Rule 37(c) because the OnlineNIC Defendants failed to supplement their discovery responses. (R&R 21:12–23:16.) The OnlineNIC Defendants' "spoliation frustrated Plaintiffs' efforts to prove their case because the productions they received were incomplete and could not be fully supplemented as a result of the mass

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

spoliation." (R&R 22:11–13.) Indeed, the OnlineNIC Defendants failed to address any arguments under Rule 37(c) and therefore failed to carry their burden that their failure to disclose was "substantially justified" or "harmless." (R&R 23:9–11.) Because Defendants failed to address these arguments before Magistrate Judge van Keulen, this Court need not consider any of Defendants' new arguments raised in their objections. *Brook v. McCormley*, 837 F. App'x 433, 436 (9th Cir. 2020), *cert. denied* 141 S. Ct. 2704 (2021) (explaining district court not required to provide objecting party "a second bite at the apple").

## IV.    STANDARD OF REVIEW

To challenge the R&R, Defendants must "file specific written objections." Fed. R. Civ. P. 72(b). Civil Local Rule 72-3(a) requires such an objection to be made as a motion for de novo determination specifically identifying the portions of the Magistrate Judge's findings, recommendations, or report to which objection is made and the reasons and authority therefore. *Int'l Petroleum Prod. & Additives Co., Inc. v. Black Gold S.A.R.L.*, No. 19-CV-3004-YGR, 2021 WL 7448603, at *1 (N.D. Cal. Dec. 6, 2021). When a party files "specific written objections" to a magistrate judge's report and recommendations on a dispositive matter, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been *properly objected to*." Fed. R. Civ. P. 72(b) (emphasis added; *see Facebook, Inc. v. Banana Ads LLC*, No. 11-CV-03619-YGR, 2013 WL 12308492, at *2 (N.D. Cal. Oct. 24, 2013). De novo review requires the district judge to consider the matter anew, as if no decision previously had been rendered, and come to its own conclusion about those portions of the Magistrate Judge's recommendation to which objection is made. *Ness v. Comm'r*, 954 F.2d 1495, 1497 (9th Cir. 1992).

By contrast, the Court need not review those portions of the R&R for which a specific objection was not raised. "[F]ailure to make appropriately specific objections excuses the district judge from doing a de novo review." WRIGHT & MILLER, FED. PRAC. & PROC. § 3070.1 & nn.5–7, 10 (3d ed. 2021); *see Decker v. Berryhill*, 856 F.3d 659, 663 (9th Cir. 2017) (explaining district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made"). Here, Defendants did not specifically object to the Relief section of the R&R. (*See* R&R 23:17–33:8 (addressing statutory damages, attorneys' fees, injunctive relief, etc.).) For those portions of the report to which no objection is made, factual findings are reviewed for clear error and legal conclusions are reviewed to determine if they are contrary to law. *Quinn v. Robinson*, 783 F.2d 776, 791

TUCKER ELLIS LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

(9th Cir. 1986). The district court should only set aside those factual determinations if it is left with a "definite and firm conviction that a mistake has been committed." *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010).

Furthermore, a general objection to the entire R&R **does not** trigger a comprehensive de novo review. *See Alcantara*, 2013 WL 4517861, at *1; *Sullivan v. Schriro*, No. CV-04-1517-PHX-DGC, 2006 WL 1516005, at *1–2 (D. Ariz. May 30, 2006) (holding general objection to R&R is improper and does not trigger de novo review; collecting cases) In the instant case, 35.CN made a general objection to the entire R&R, arguing Magistrate Judge van Keulen "did not consider the just reason for delay" caused by alter ego claims against 35.CN. (35.CN's Objs. 4:19–22, 5:1–7:2). This general objection is improper and does not trigger a de novo review of the entire R&R.

Finally, district judges should ordinarily "refuse to entertain objections based on legal arguments that were not presented to the Magistrate Judge" because the "goal of referral to a Magistrate Judge is to expedite decision and remove burdens from the district judge," which "could be subverted—and Magistrate Judges undermined—if parties could hold back arguments from the Magistrate Judge and present them later to the district judge." WRIGHT & MILLER, FED. PRAC. & PROC. § 3070.2 (3d ed. 2021). In the instant case, the OnlineNIC Defendants did not object to or raise any argument before Magistrate Judge van Keulen as to whether terminating sanctions under Fed. R. Civ. P. 37(c)(1)(C) should be ordered. For that reason alone, the Court should adopt the R&R's findings under Rule 37(c) that terminating sanctions are proper. *Greenhow v. Sec'y of Health & Hum. Servs.*, 863 F.2d 633, 638 (9th Cir. 1988), *overruled on other grounds*, *United States v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992) ("[T]he Magistrates Act was [not] intended to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court."). The "district court *has discretion*, *but is not required*, to consider evidence presented for the first time in a party's objection to a Magistrate Judge's recommendation." *Brook*, 837 F. App'x at 436.

## V.    ARGUMENT

As Magistrate Judge van Keulen found, the OnlineNIC Defendants' destruction of ESI and other discovery misconduct warrant terminating sanctions under Fed. R. Civ. P. 37(b), (c), and (e). Defendants specifically objected to three portions of the R&R. First, the OnlineNIC Defendants argue they did not act

8

with intent to deprive Plaintiffs of relevant data because they deleted some evidence before this litigation commenced. (OnlineNIC Defs.' Objs. 4:19–7:15.) Second, Defendants each argue terminating sanctions are not warranted because lesser sanctions are available. (OnlineNIC Defs.' Objs. 5:9–21; 35.CN's Objs. 8:10–13:9. Third, Defendants argue that terminating sanctions are not warranted because purportedly "exculpatory" evidence favors resolution on the merits. (35.CN's Objs. 5:1–13:9; OnlineNIC Defs.' Objs. 7:16–10:21.) In addition, 35.CN individually argues there is "just reason" for delay and seeks de novo review of "the entire [R&R]." (35.CN's Objs. 5:1–7:2.) As explained below, the Court should reject each of these arguments, adopt the R&R, enter an order striking the OnlineNIC Defendants' Answer, and enter default judgment against the OnlineNIC Defendants.

## A.    The OnlineNIC Defendants acted with intent when they destroyed evidence and withheld discovery.

Defendants intentionally destroyed evidence. The Special Master found scripts written by Defendants "to programmatically delete data directly from the database." (SMR 39:20–22.) The OnlineNIC Defendants' "egregious" destruction of responsive data, perpetrated even after the appointment of the Special Master, *id.* at 39:22–28, demonstrates this misconduct must have been intentional, *id.* at 25:26–26:4. The deletion of these data and attachment files required a user to "have special permissions, and more importantly, expertise, to delete database records or attachment files whether directly from the database or the file system." *Id.* The Special Master concluded that "[t]he deleted attachment files and records ***cannot have happened by accident***." *Id.* (emphasis added). Indeed, Defendants attempted (in vain) to hide their deletion activity. *Id.* at 21:21–24. The "consistent and continuous" deletion of records and information throughout the discovery process evidences the OnlineNIC Defendants' intent to deprive Plaintiffs of the information's use in the litigation. *Id.* at 39:20–28. The OnlineNIC Defendants also created at least 28 PHP scripts and 1 SQL script specifically designed to delete database records and attachment files, and then attempted to hide their activity from the Special Master by deleting the scripts as well. (R&R 7:28–8:4 (citing SMR 28–29).) As significantly, the Special Master concluded that "based on Defendants' widespread activities involving ESI deletion, information withholding, and data dumping there is no other conclusion than Defendants acted intentionally to avoid producing responsive ESI to Plaintiffs." (SMR 41:3–5.)

9

TUCKER ELLIS LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

The OnlineNIC Defendants argue that, as to whether they acted with intent to deprive Plaintiffs of information, the R&R failed to adequately consider the timing of when the OnlineNIC Defendants destroyed documents. (OnlineNIC Defs.' Objs. 5:22–7:15.) Specifically, the OnlineNIC Defendants argue that the SMR—which they did not object to and which was entered as a finding of this Court (Dkt. 126, 151)—minimized when files were deleted. In particular, Defendants cast as an "Achilles Heel" the fact that the Special Master was unable to determine when "many of the deleted records" were deleted and that, therefore, there is no support for the SMR's conclusions that the OnlineNIC Defendants acted with intent to deprive Plaintiffs of relevant data. (OnlineNIC Defs.' Objs. 5:26–6:20 (citing SMR 40:1–2).)

Putting aside for a moment the fact that the OnlineNIC Defendants have waived their right to challenge the SMR by failing to object to it, *Frank*, 923 F.2d at 141 & n.1, this argument ignores the specific conclusions reached by the Special Master—that the OnlineNIC Defendants continued to delete responsive data ***after*** the complaint was filed and even ***after*** the Special Master was appointed, including while he was conducting his investigation. "Defendants began deleting data before the complaint was filed, continued deleting responsive records during the discovery process, and even after Special Master's appointment." (SMR 39:25–28). The Special Master also found that the OnlineNIC Defendants "failed to preserve potentially relevant ESI for this matter pre-litigation, post complaint filing, during discovery, and even after the appointment of Special Master." (SMR 17:13–14.)[6]

During the course of the OnlineNIC Defendants' multiple productions to both the Special Master and Plaintiffs, some records contained in earlier productions were missing from later productions, and in at least three instances the Special Master received versions of the ticket database containing fewer records than the productions Plaintiffs had received earlier in the litigation. (SMR 22:12–23, 26:13–21.) When the Special Master requested that Defendants produce 251 matching HTML files from the trouble ticket database that were omitted from prior productions, he discovered that the code used to produce the HTML files was not located on the servers, evidencing that "Defendants deleted records from the Ticket Database during discovery." *Id.* at 27:12–28:10. And based on the prefixes used for the HTML files, the Special

---

[6] Counsel for the OnlineNIC Defendants essentially conceded these points before Magistrate Judge van Keulen at the hearing on March 1, 2022. (Transcript of March 1, 2022 Hearing (Dkt. 219) at 11:3–24.)

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

Master concluded that "there were most likely other files with prefix names for other search terms that were deleted or removed after they were created on March 12, 2021, and were not available for subsequent productions." *Id.* at 28:3–10. By comparing a text file from March 17, 2021, to directory lists from April 26, 2021, the Special Master discovered Defendants deleted 472 attachment files after March 17, 2021. *Id.* at 29:15–30:10.[7]

And contrary to the OnlineNIC Defendants' argument that the Special Master could not tell when they had deleted data, the evidence and conclusions actually demonstrate that the OnlineNIC Defendants began deleting data *more aggressively* after the litigation began. As Magistrate Judge van Keulen summarized: "Indeed, the evidence demonstrates that *Defendants redoubled their efforts to delete data after this suit was filed*: whereas Defendants deleted 2,919,130 database records between May 16, 2013 and December 16, 2020, they deleted 4,102,283 database records between December 16, 2020 and March 23, 2021." (R&R 12:15–18 (citing SMR 23).) Thus, the Special Master determined that the OnlineNIC Defendants deleted over a million *more* documents in a three-month period *after* this suit was filed than they deleted in a seven-and-a-half-year period largely *before* service of the Complaint. Defendants' attempt to minimize their deletion activities as mere routine database management (OnlineNIC Defs.' Objs. 6:26–7:15) is contradicted by their proportionately voluminous deletion activity after this suit commenced.

Magistrate Judge van Keulen found "without merit" the OnlineNIC Defendants' argument that it was "impossible for the Special Master to conclude that the spoliation occurred after the filing of the Complaint." (R&R 12:19–21.) The OnlineNIC Defendants "readily admitted" that they "deleted data after the Complaint was filed," and the Special Master "found conclusive evidence" that the OnlineNIC Defendants deleted more than 1,000 tickets from the trouble ticket database after those records were initially produced to him from the backup ticket database. (R&R 12:21–13:1 (citing SMR 22, 27).)

---

[7] Moreover, despite selling backup services to clients and demonstrating advanced software skills, the OnlineNIC Defendants failed to implement "even basic backup management software by the time the Special Master was appointed more than a year after the Complaint was filed." (R&R 6:6–10 (citing SMR 18), 11:27–12:1 (finding that at the time the Special Master was appointed over a year into this litigation, Defendants had either failed to implement a basic backup management system or had concealed their backup databases (citing SMR 18–19).)

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

The Special Master provided extensive evidence of the OnlineNIC Defendants' mass-scale, intentional deletion of relevant data after this case was filed and even after the Special Master was appointed. Beyond this, the Special Master detailed the OnlineNIC Defendants' other extensive efforts to frustrate discovery, withhold relevant data from Plaintiffs, and obfuscate the Special Master's efforts to evaluate and correct the OnlineNIC Defendants' discovery. (SMR 39:11–41:5.) For example, the documents the OnlineNIC Defendants did produce constituted a data dump, containing only 5,096 responsive records in a set of 27,823,240 records produced. *Id.* at 34:26–35:16. The Special Master also found that the OnlineNIC Defendants improperly withheld over two years' worth of ESI, *id.* at 30:15–23, as well as other ESI from productions, *id.* at 30:24–33:25. And, the OnlineNIC Defendants lied to the Special Master about their backup management system, at one point claiming backups did not exist. *Id.* at 19:1–25. As such, Magistrate Judge van Keulen correctly concluded that the OnlineNIC Defendants intentionally spoliated evidence after this litigation commenced, and the Court should adopt this finding from the R&R.

**B.     Magistrate Judge van Keulen evaluated lesser sanctions and correctly determined the OnlineNIC Defendants' extensive discovery misconduct warranted terminating sanctions.**

A finding of intent supports "an inference that the opposing party was prejudiced by the loss of information that would have favored its position." 2015 Advisory Committee Note to Fed. R. Civ. P. 37(e)(2).[8] The SMR fully supports the inference that Defendants' destruction of data prejudiced Plaintiffs. "Defendants caused irreparable harm to Plaintiffs through permanently deleted and responsive database records and attachment files, that they will never see or know the contents." (SMR 40:21–23.) Defendants intentionally destroyed 331,390 attachment files, which "crucially . . . may be the

---

[8] Rule 37(e)(2) "does not include a requirement that the court find prejudice to the party deprived of the information." 2015 Advisory Committee Note to Fed. R. Civ. P. 37(e)(2); *Porter v. City & Cty. of San Francisco*, No. 16-cv-3771-CW(DMR), 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018). In contrast, when considering terminating sanctions under Fed. R. Civ. P. 37(b), or by the Court's inherent authority, the Court should find that the destroyed data related to the matters in controversy such that the destruction interfered with the rightful decision of the case. *Anheuser-Busch, Inc. v. Natural Beverage Dist.*, 69 F.3d 337, 348 (9th Cir. 1995).

most important part of a ticket, much like an email attachment may be more important than the email message itself." *Id.* at 26:18–28. These deleted records would have contained key evidence, including email conversations, legal notices, customer communications and customer information, regarding notices or other legal complaints that Defendants received regarding cybersquatting by their customers. (*See* R&R 5:1–7 (citing SMR 26).) The records could have shown that Defendants' knew the Infringing Domain Names in this case were used for phishing or other types of fraud and that, despite that knowledge and with a bad faith intent to profit, Defendants continued to let their customers misuse Defendants' services. *See* 17 U.S.C. § 1125(d)(1)(B)(i) (itemizing nine non-exclusive factors to determine bad faith intent to profit under the ACPA). Such deleted records might also have shown that Defendants registered, trafficked in, and used the Infringing Domain Names, that Defendants are alter egos of each other, or that OnlineNIC and 35.CN directly participated in the cybersquatting actions of ID Shield. They could also reference the ID Shield services as "proxy services," rather than "privacy services," thereby severely undermining one of Defendants' alleged defenses. Magistrate Judge van Keulen correctly found that the information deleted or withheld "likely could have been probative of [Plaintiffs'] claims" and "likely would have featured prominently in Plaintiffs' prosecution of their case." (R&R 14:5–17, 19:2–12.)

While true Plaintiffs cannot establish exactly what was deleted (OnlineNIC Defs.' Objs. 4:20–5:21), that is **because of** the OnlineNIC Defendants' deliberate spoliation. (R&R 18:17–19 (citing SMR 40) (explaining Plaintiffs and the Court obviously "do not know the details of what was spoliated" because "a record that cannot be seen, cannot be searched"))); *Leon v. IDX Sys. Corp.,* 464 F.3d 951, 960 (9th Cir. 2006) ("Leon's spoliation 'threatened to distort the resolution' of the case . . . because any number of the 2,200 files could have been relevant to [Defendant's] claims or defenses, although it is impossible to identify which files and how they might have been used."); *John v. County of Lake*, No. 18-6935, 2020 WL 3630391, at *7 (N.D. Cal. July 3, 2020) ("Any moving party is at a disadvantage to show prejudice because a moving party who seeks evidence cannot prove that relevant evidence existed but was destroyed.").

Defendants argue Magistrate Judge van Keulen did not adequately consider whether lesser sanctions were appropriate in the face of the OnlineNIC Defendants' intentional, massive, and prejudicial deletion of evidence. (35.CN's Objs. 1:27–2:1, 8:15, 8:22–10:7, 11:18–13:9; OnlineNIC Defs.' Objs.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

4:20–5:21; 11:5–26.) Defendants are wrong. Magistrate Judge van Keulen expressly considered whether lesser sanctions were appropriate and correctly concluded that lesser sanctions could not cure the extensive prejudice to Plaintiffs caused by the OnlineNIC Defendants' discovery misconduct. (R&R 14:5–15:2, 19:21–20:20, 22:14–23:16.) Her Honor's conclusions are consistent with cases finding that lesser sanctions are inappropriate in the face of mass spoliation. *Leon*, 464 F.3d at 960; *WeRide Corp. v. Kun Huang*, No. 5:18-CV-07233-EJD, 2020 WL 1967209, at *11 (N.D. Cal. Apr. 24, 2020). Here, any lesser sanction would be inadequate to address the damage resulting from Defendants' misconduct since Defendants have spoliated relevant evidence necessary to show Defendants' registration, trafficking in, or use of the Infringing Domain Names with a bad faith intent to profit. *See WeRide,* 2020 WL 1967209, at *11 (jury instruction or evidence exclusion could not cure defendant's intentional mass spoliation).

The R&R expressly considered the OnlineNIC Defendants' proposed jury instruction to shift the burden of proving whether the OnlineNIC Defendants registered, trafficked in, or used the Infringing Domain Names. (R&R 14:18–15:2.) The R&R explains that this proposal "in no way cures the harm to Plaintiffs" because the OnlineNIC Defendants withheld or deleted evidence that they "*did* register, traffic in, or use the Infringing Domain Names." *Id.* at 14:20–22. For that reason, merely shifting the burden of proof does not cure the prejudice to Plaintiffs because they would be "equally helpless to rebut" the evidence Defendants chose not to delete as they are now. (R&R 14:20–24 (citing *Leon*, 464 F.3d at 960; *WeRide Corp.,* 2020 WL 1967209 at *11).)

Magistrate Judge van Keulen also considered the OnlineNIC Defendants' proposal to stipulate that they had acted with bad faith intent to profit *if* Plaintiffs proved the other elements of their ACPA cybersquatting claim, including that the OnlineNIC Defendants registered, trafficked in, or used the Infringing Domain Names. (R&R 20:3–8; OnlineNIC Defendants' Objs. 11:12–16). Again Magistrate Judge van Keulen found their proposal wanting. Given that the OnlineNIC Defendants spoliated vast amounts evidence "that might have proved that they *did* engage in cybersquatting with respect to the Infringing Domain Names," Plaintiffs are left with no way of rebutting the exculpatory evidence Defendants claim to have. (R&R 20:3–8.) Thus, even under the OnlineNIC Defendants' proposal, Plaintiffs are still disadvantaged with respect to whether Defendants registered, trafficked in or used the Infringing Domain Names because the OnlineNIC Defendants likely deleted relevant evidence on these

14

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

issues.

For these reasons, Magistrate Judge van Keulen found "no jury instruction, monetary sanction, or exclusion of evidence" would cure the OnlineNIC Defendants' "extensive spoliation." (R&R 14:24–26); *see WeRide*, 2020 WL 1967209, at *11 (an adverse inference jury instruction is not sufficient if the plaintiff is helpless to rebut evidence that may overcome the inference); *Leon,* 464 F.3d at 960; *OmniGen Rsch. v. Yongqiang Wang*, 321 F.R.D. 367, 371 (D. Or. 2017) (citing *Leon*); *see also Coyne v. Los Alamos Nat'l Sec.*, LLC, No. 15-cv-54 SCY/KBM, 2017 WL 3225466, at *10 (D.N.M. May 1, 2017) (terminating sanctions appropriate under Rule 37(e)(2) where party both spoliated evidence and changed her testimony).

Furthermore, "[i]t is appropriate to reject lesser sanctions where the court anticipates continued deceptive misconduct." *Anheuser-Busch*, 69 F.3d at 352. The Special Master found the OnlineNIC Defendants have "a history of untruthfulness" (SMR 19:19–25) and that their misconduct was "consistent and continuous," *id.* at 39:25–28. Indeed, Defendants' behavior throughout this litigation suggests that Defendants will continue to engage in gamesmanship and dishonesty. For example, the OnlineNIC Defendants claimed to be going out of business on July 26, 2021 (Dkt. 121.02 at ¶ 3), and failed to pay the Special Master's fees. (Transcript of July 20, 2021 Hearing (Dkt. 127) at 7:21–25 ("There are not words to capture the Court's grave concern and dismay at this situation and at the position of . . . OnlineNIC . . . with regards to unpaid invoices.").) Yet, the OnlineNIC Defendants continue in business to this day. On July 20, 2021, the OnlineNIC Defendants' attorney also filed a motion to withdraw as counsel due to ethical concerns (Dkt. 121);[9] yet, despite those ethical concerns, he has now withdrawn his motion to withdraw (Dkt. 209) and continues to represent the OnlineNIC Defendants and file documents on their behalf.

In addition, OnlineNIC has appeared before this Court three times since 2008, each time

---

[9] In support of this motion to withdraw, the OnlineNIC Defendants' attorney declared: "During the deposition on OnlineNIC, Inc., on July 13, 2021, there was at least one response to a deposition question put to defendant OnlineNIC, Inc. that appeared to be at variance with Defendants' verified interrogatory responses—which was sufficiently concerning so as to bring into question the relationship between client and attorney for purposes of Rule of Professional Conduct 3-700." (Dkt. 121-1 at ¶ 3.)

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

1    represented by the same attorney who represents it in this action. (R&R 12:1–8 (citing *Verizon Cal. Inc.*

2    *v. Onlinenic, Inc.,* No. 08-2832, 2009 WL 2706393 (N.D. Cal. Aug. 25, 2009); *Yahoo! Inc. v. Onlinenic*

3    *Inc.,* No. 08-5698 (N.D. Cal.); *Microsoft Corp. v. OnlineNIC Inc.*, No. 08-4648 (N.D. Cal.)).) Despite

4    facing prior discovery sanctions in *Verizon*, 2009 WL 2706393, at *1, *6, the OnlineNIC Defendants were

5    not deterred from their spoliation and discovery misconduct in this case.

6         35.CN also argues Magistrate Judge van Keulen did not warn the OnlineNIC Defendants that

7    terminating sanctions were possible under Rule 37(b). (35.CN's Objs. 11:4–14.) Magistrate Judge van

8    Keulen stated, however, that she had issued multiple orders concerning Defendants' discovery

9    misconduct. (R&R 20:28–21:4 (citing Dkt. 54 (ordering de-designation and de-duplication); Dkt. 60

10   (granting stipulated extension given substantial outstanding discovery disputes); Dkt. 66 (ordering parties

11   to prepare proposed order appointing special master)).) While the Court did not expressly warn the

12   OnlineNIC Defendants that terminating sanctions were on the table, by the time the Special Master was

13   appointed "Defendants were on notice that their discovery abuses were of grave concern." (R&R 21:4–

14   7.) As Magistrate Judge van Keulen explained, express warnings are not necessary, and "a party 'can

15   hardly be surprised by a harsh sanction in response to a willful violation of a pretrial order.'" *Id.* at 21:7–

16   9 (quoting *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 133 (9th Cir. 1987)).[10]

17        Finally, both 35.CN and the OnlineNIC Defendants challenge the R&R based on a crimped reading

18   of Magistrate Judge van Keulen's Rule 37(c) analysis. Defendants suggest Magistrate Judge van Keulen

19   decided terminating sanctions were required solely because the OnlineNIC Defendants failed to file a

20   motion seeking lesser sanctions. (35.CN's Objs. 12:21–27; OnlineNIC Defs' Objs. 12:2–11.) Again,

21   Defendants are wrong. They ignore Magistrate Judge van Keulen's findings that the OnlineNIC

22   Defendants failed to address Plaintiffs' arguments under Rule 37(c) and that terminating sanctions were

23   appropriate because "Defendants have not carried their burden of proving that their failure to disclose was

24   'substantially justified' or 'harmless.'" (R&R 23:9–11). Defendants also ignore Magistrate Judge van

25

26   [10] *Malone* also explained that no such "warning" is required before dismissal. 833 F.2d at 132–33 (noting

27   that providing a warning "can suffice to meet the 'consideration of alternatives' requirement," but explaining that explicit warning is unnecessary because a party "can hardly be surprised by a harsh

28   sanction in response to willful violation of a pretrial order").

1    Keulen's conclusion that terminating sanctions were also warranted under the five-factor test in *Leon*, 464

2    F.3d at 960. (R&R 23:12–14.)

3        Magistrate Judge van Keulen thoroughly and properly considered Defendants' arguments

4    regarding lesser sanctions and weighed them against Defendants' mass destruction of evidence, the

5    prejudice to Plaintiffs, Defendants' past conduct, and the applicable Rule 37 standards. In recommending

6    terminating sanctions, Magistrate Judge van Keulen correctly determined that lesser sanctions would not

7    suffice in light of the willful, mass-scale spoliation committed by the OnlineNIC Defendants.

8    **C.    Defendants' arguments that the case should be decided on their merit-based**

9    **arguments ignore the extent of prejudice created by the OnlineNIC Defendants'**

10   **misconduct.**

11       The most important factor for case dispositive sanctions under Rule 37(b) is the risk of prejudice

12   to the innocent party because it "'looks to whether the [spoliating party's] actions impaired [the non-

13   spoliating party's] ability to go to trial or threatened to interfere with the rightful decision of the case.'"

14   *Leon*, 464 F.3d at 959 (quoting *U.S. for Use of Wiltec Guam, Inc. v. Kahaluu Const. Co., Inc.*, 857 F.2d

15   600, 604 (9th Cir. 1988)); (R&R 18:2–5; *see Apple, Inc. v. Samsung Elecs. Co. Ltd.*, 888 F. Supp. 2d 976,

16   993 (N.D. Cal. 2012) ("[T]hough neither Apple nor the Court may ever know the contents of any destroyed

17   Samsung emails, the fact that the emails of key Samsung witnesses were among those destroyed permits

18   the reasonable inference that Apple was prejudiced by Samsung's spoliation."). Courts in the Ninth Circuit

19   have found prejudice where failure to produce documents forced the non-spoliating party to "rely on

20   incomplete and spotty evidence," *Anheuser-Busch*, 69 F.3d at 354, where the plaintiff engaged in a mass

21   deletion of 2,200 files from his work computer during litigation, *Leon*, 464 F.3d at 959–60, and where a

22   defendant engaged in mass destruction of emails and email accounts, *WeRide*, 2020 WL 1967209, at *10–

23   11. Indeed, dispositive sanctions are more than justified here, where the volume of destruction by the

24   OnlineNIC Defendants is far greater than the destruction found in those cases.

25       "There is no point to a lawsuit, if it merely applies law to lies." *Valley Engineers. Inc. v. Electric*

26   *Engineering Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998). If Plaintiffs are forced to rely on incomplete data

27   at trial, this case will not be resolved on the merits, but on the limited evidence extracted from the

28   OnlineNIC Defendants' tainted records. *See Anheuser-Busch*, 69 F.3d at 354. As a result of the OnlineNIC

17

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Defendants' misconduct, the true merits of this case can never be known. "Where a party so damages the integrity of the discovery process that there can never be an assurance of proceeding on the true facts, a case dispositive sanction may be appropriate." *Conn. Gen. Life Ins.*, 482 F.3d at 1097.

Here, the OnlineNIC Defendants deleted 76.7% of ticket attachments, which the Special Master found to be "the most critical evidence type" in the case. (SMR 3:11–20, 26:27–27:7, 39:24–25, 40:18–19.) Given the OnlineNIC Defendants' extensive efforts to prevent Plaintiffs from accessing their records, "one may reasonably infer that [their] case is lacking in merit." *Anheuser-Busch*, 69 F.3d at 355. Yet despite the OnlineNIC Defendants' widespread, intentional destruction of evidence, and the resultant prejudice to Plaintiffs, Defendants nonetheless insist that the case should be decided on the merits. (35.CN's Objs. 7:3–8:9, 11:26–12:12; OnlineNIC Defs' Objs. 7:16–10:21.)

First, the OnlineNIC Defendants claim that records deleted during discovery were perfectly innocent deletions of spam and junk that were slowing down an old database system. (OnlineNIC Defs.' Objs. 6:21–7:15 (citing Declaration of Leon Freeman (Dkt. 202)).) Of course, the statements in the Freeman Declaration, are almost an identical word-for-word copy of a letter submitted by the OnlineNIC Defendants to the Special Master and **which were previously rejected by the Special Master**. (*Compare* Freeman Decl. (Dkt. 202) ¶¶ 5–14, *with* Exhibit 44 to SMR (Dkt. 115 at 160–67).) The SMR confirms that the Special Master specifically reviewed and rejected Defendants' explanation and justification for the deletion of records. "***Special Master carefully reviewed Defendants' comments. In many ways, Defendants' responses support the most important concerns Special Master raised in the Report. In fact, Defendants do not dispute deleting records, they instead try to justify why Defendants deleted data post case filing, during discovery, after productions, and after Special Master's appointment.***" (SMR 37:16–20) (emphasis added).)

For example, the OnlineNIC Defendants claim the "ticket database is a legacy product that is no longer supported. Over the course of years of operation, the database became unwieldy and stuffed with spam and voluminous, old support data—resulting in a very slow database which was difficult to search and manage." (Freeman Decl. ¶ 5.) The Special Master found these statements were false, noting that "Defendants continue to use the Ticketing Database" and that the Special Master "did not notice performance issues with the larger Consolidated Database." (SMR 38:3–7.) Furthermore, the Special

18

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Master noted that "Defendants do not explain why they would delete records directly from the database (causing orphaned records) instead of via the Application" or "why they data-dumped 27,818,144 non-responsive records on Plaintiffs." (SMR 38:12–13, 38:17–18.) Nor did Defendants "address why so many attachment files and database records were deleted, why surviving attachment files were not searched, or why they were provided to Plaintiffs with viruses." (SMR 38:14–16.) The Court should reject the OnlineNIC Defendants' unavailing explanations for their intentional destruction of relevant data, just as the Special Master and Magistrate Judge van Keulen did.

Second, the OnlineNIC Defendants claim they produced "a mountain of [exculpatory] evidence." (OnlineNIC Defs.' Objs. 7:21–23.) Even assuming the evidence the OnlineNIC Defendants point to is exculpatory (Plaintiffs dispute that it is), the claimed "mountain" is actually a "mole hill" that was obscured by their data dump, in which they produced 27,823,240 non-responsive records to bury 5,096 responsive records. (SMR 34:26–35:16.) Additionally, Plaintiffs and the Court are left to wonder whether the purported "mole hill" of exculpatory evidence is dwarfed by greater "mountains of damning evidence Defendants deleted." (R&R 19:13–15.) "Destroying the best evidence relating to the core issue in the case inflicts the ultimate prejudice upon the opposing party." *Computer Assocs. Int'l, Inc. v. Am. Fundware, Inc.*, 133 F.R.D. 166, 170 (D. Colo. 1990).

Public policy also supports terminating sanctions here in order to ensure that Defendants do not profit through their misdeeds. Terminating sanction will also deter others from emulating Defendants' spoliative behavior. *Leon v. IDX Systems Corp.*, 2004 WL 5571412 at *5 (W.D. Wash. Sept. 30, 2004), *aff'd* 464 F.3d 951 (9th Cir. 2006). "Where a spoliator's behavior is egregious, dismissal or default is appropriate." *Id.*[11]

Only one conclusion emerges as to why Defendants intentionally destroyed relevant ESI after the

---

[11] Under Rule 37(b), the fourth factor from *Anheuser-Busch* is the public policy favoring disposition of cases on their merits. This factor, however, standing alone, "is not sufficient to outweigh the other four factors." *Malone,* 833 F.2d at 133 n.2. Moreover, this factor "slightly weighs in favor of terminating sanctions" where the spoliating party has also made misrepresentations in discovery. *See CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, No. 14CV1191 JLS (KSC), 2017 WL 2298473, at *5 (S.D. Cal. May 26, 2017). There is no dispute that the OnlineNIC Defendants made "material misrepresentations" to the Special Master here. (SMR at 40:6–8.)

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

filing of the complaint, withheld multiple years' worth of ESI, and dumped volumes of irrelevant data on Plaintiffs: Defendants sought to hide relevant and unfavorable evidence from Plaintiffs and create unnecessary discovery burdens in order to stall litigation on the merits. As such, and as Magistrate Judge van Keulen found, terminating sanctions are necessary.

### D.    There is no just reason to delay entering default judgment.

35.CN objected to the R&R based on the misplaced argument that a default judgment as a terminating sanction cannot be entered under Fed. R. Civ. P 54(b) ("when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all . . . parties only if the court expressly determines that there is no just reason for delay"). 35.CN argues "the entire" R&R must be reviewed de novo because Magistrate Judge van Keulen "did not consider the just reason for delay" caused by alter ego claims against 35.CN. (35.CN's Objs. 4:19–22, 5:1–7:2.) As discussed above, such a general objection does not trigger de novo review of the entire R&R. *See Alcantara*, 2013 WL 4517861, at *1. 35.CN's attempt to delay entry of default judgment and even a decision on the Sanctions Motion based on Rule 54(b) must be rejected for three reasons.

*First*, the cases 35.CN cites all involve default based on failure to answer, resulting in a factually meritless default. *See Fractional Villas v. Katz*, No. 08CV1317 DMS (POR), 2008 WL 11337364, *1 (S.D. Cal. Nov. 10, 2008) (explaining that the court may direct entry of final judgment against fewer than all parties upon default judgment, but noting the risk of "logically inconsistent judgments in the same action and factually meritless default judgments provide 'just reason'" to delay entry of final judgment under Rule 54(b)); *Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1459 (5th Cir. 1992) (default judgments overturned as to nonanswering defendants when answering defendant prevailed on substantive claims because court was disturbed by injustice of awarding damages that "flowed from untried claims"); *Phoenix Renovation Corp. v. Gulf Coast Software, Inc.*, 197 F.R.D. 580, 582 (E.D. Va. 2000) (district court postponed entry of default judgment despite finding it highly unlikely answering defendant would be prejudiced by non-answering defendant's default and admission of facts alleged in complaint); *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532–33 (9th Cir. 2001) (holding bankruptcy court abused discretion in certifying default judgment against nonanswering defendants after court already decided legal issue applicable to those defendants in manner that precluded liability); *Pfanenstiel Architects, Inc. v. Chouteau*

*Petroleum Co.*, 978 F.2d 430, 433 (8th Cir. 1992) (holding plaintiff could not through joint and several liability apply higher damages award obtained through default judgment against nonanswering corporation when answering defendants established lower damage amount at trial).

This case does not involve a factually meritless default judgment based on a procedural failure to appear and answer. Rather, the OnlineNIC Defendants engaged in "outrageous" and widespread destruction of responsive data. (SMR 39:22–23.) This intentional "conduct was consistent and continuous," *id.*, and resulted in destruction of relevant and discoverable records in a manner that prejudiced Plaintiffs, *id.* at 39:11–41:5. Because nothing short of terminating sanctions can adequately cure the prejudice created by these discovery abuses, the resulting terminating sanctions and default judgment cannot later be set aside as a mere "factually meritless" default judgment. *Cf. Fractional Villas*, 2008 WL 11337364 at *1; *Phoenix Renovation*, 197 F.R.D. at 582. Rather, judgment against the OnlineNIC Defendants will be conclusive as a sanction for their wanton and intentional destruction of evidence—which makes it impossible to fairly litigate the conduct of which they are accused. The Special Master concluded that "Plaintiffs suffered irreparable harm" and "will continue to suffer harm" as a result of OnlineNIC and ID Shield's spoliation of evidence. (SMR 40:24–41:2.) Given this "irreparable harm," no proof could be adduced at trial that would require setting aside the default judgment, as the Court must preclusively decide those issues against the OnlineNIC Defendants as a sanction for discovery misconduct.

*Second*, 35.CN faces no prejudice because 35.CN is the OnlineNIC Defendants' alter ego and a direct participant in the wrongful destruction of evidence that warrants sanctions. Plaintiffs allege that 35.CN is liable for the OnlineNIC Defendants' conduct because 35.CN exercises complete control over those entities and their actions.[12] If 35.CN can successfully defend these allegations, it will not be liable under the default judgment. On the other hand, when Plaintiffs prove the alter ego or direct participant allegations, and also show that 35.CN's employees were responsible for spoliating evidence, Plaintiffs

---

[12] "The SAC includes extensive allegations regarding alter ego. . . . While these facts are not determinative of plaintiffs' alter ego theory, they raise serious questions about how the defendants are related." (Dkt. 207 at 7:21–8:3.)

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

will necessarily establish 35.CN's culpability for the conduct warranting terminating sanctions. There will be nothing left to prove as to 35.CN. Additionally, 35.CN would not get an opportunity to rebut the default judgments because they would be based on 35.CN's own wrongful conduct in destroying evidence in such an extensive manner as to severely prejudice Plaintiffs, making it impossible to fairly litigate this case.

Moreover, and contrary to 35.CN's claim (35.CN's Objs. 6:5–11), due process concerns are not raised if this Court were to issue terminating sanctions against the OnlineNIC Defendants because 35.CN is a named party and thus had (and has exercised) an opportunity to present its defenses to the Court. *See Cadence Design Sys., Inc. v. Pounce Consulting, Inc.*, No. 17-CV-04732-PJH, 2019 WL 3576900, at *4 (N.D. Cal. Aug. 6, 2019), *aff'd sub nom. Cadence Design Sys., Inc. v. Viera,* 836 F. App'x 493 (9th Cir. 2020) (no due process concern if alter ego had the opportunity to present defenses and conducted the litigation with a diligence corresponding to the risk of personal liability); *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) ("Due process guarantees that any person against whom a claim is asserted in a judicial proceeding shall have the opportunity to be heard and to present his defenses."). As a named party prior to Plaintiffs' Sanctions Motion,[13] 35.CN had the opportunity to litigate its own individual defenses when it moved under Fed. R. Civ. P. 12(b)(2) to dismiss the case on personal jurisdiction grounds and under Fed. R. Civ. P. 12(b)(6) to dismiss the case for failure to state a cause of action. (Dkt. 174.) Indeed, 35.CN's Motion to Dismiss, which was filed on September 28, 2021, was filed three days before Plaintiffs renoticed their Sanctions Motion.

Additionally, before and after losing on its Motion to Dismiss (Dkt. 207), 35.CN manifested its "opportunity to be heard" by participating in this proceeding through: (1) filing an Answer (Dkt. 210), (2) Opposing Plaintiffs' Sanctions Motion (Dkt. 183), (3) presenting oral arguments to Magistrate Judge van Keulen at the hearing on the Sanctions Motion (Transcript of March 1, 2022 Hearing (Dkt. 219) at 17:21–20:13), (4) filing a Motion for Bifurcation and Stay of Discovery (Dkt. 213), (5) participating in a Rule 26(f) conference of counsel, (6) producing documents in response to discovery (however limited), (7) objecting to nearly all of Plaintiffs' discovery requests, (8) propounding discovery to Plaintiffs and

---

[13] The alleged alter egos in *Cadence Designs*, *Katzir's*, and *Wolf Metals Inc. v. Rand Pac. Sales, Inc.*, 4 Cal. App. 5th 698 (2016), by contrast, were not added as party until ***after*** default was entered.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

third parties, and (9) moving for de novo determination of the R&R (Dkt. 228). *See Woodhouse v. United States Gov't*, No. 2:21-CV-06372-SB, 2021 WL 6333468, at *3 (C.D. Cal. Nov. 24, 2021), *appeal filed* No. 22-55045 (Jan. 6, 2022) ("A court may satisfy this due process requirement by allowing a party to be heard either through a 'written submission' or at 'an oral or evidentiary hearing.'" (quoting *Windsor v. Boushie*, 677 F. App'x 311, 312 (9th Cir. 2017))). Further, as a named defendant, it will be difficult for 35.CN to argue it did not have an "opportunity to be heard." *See Oceans II, Inc. v. Skinnervision, Inc.*, No. 2:12-cv-06867-CAS (Ex), 2015 WL 4484208, at *5 (C.D. Cal. July 20, 2015) (no due process concern where alter ego was named defendant and had full opportunity and incentives to defend the action); *Dow Jones Co. v. Avenel*, 151 Cal. App. 3d 144, 151, 198 Cal. Rptr. 457, 462 (Ct. App. 1984) (no due process concerns where judgment was entered after the alleged alter egos "had formally become parties, controlled the litigation for themselves, and fully participated in the proceeding which resulted in the alter ego determination and their being added as judgment debtors); *Mad Dogg Athletics, Inc. v. NYC Holding*, 565 F. Supp. 2d 1127, 1130 (C.D. Cal. 2008) (no due process concern where alter ego was properly served and received "a full and fair opportunity to defend himself" before default).

Simply put, if 35.CN is not the OnlineNIC Defendants' alter ego or a direct participant in their actions, 35.CN has no interest in whether the Court enters a default judgment against them (as they would be deemed separate entities), and the judgments would not bind 35.CN. On the other hand, if 35.CN is an alter ego or direct participant, 35.CN is responsible for the conduct resulting in terminating sanctions and cannot equitably challenge the default judgment. Therefore, 35.CN itself—through its own employees acting on behalf of OnlineNIC and ID Shield—committed the acts warranting default judgment. As such, 35.CN faces no prejudice or risk of inconsistent judgments from entry of a final default judgment against the other defendants in this case. *See U.S. Fidelity and Guar. Co. v. Lee Investments LLC*, 641 F.3d 1126, 1140 (9th Cir. 2011) (holding no error in certifying judgment under Fed. R. Civ. P. 54(b) while plaintiff's claims against alter egos remained pending).

*Third*, even if this Court does not believe that entry of ***final*** default judgment is appropriate as to the OnlineNIC Defendants at this time, it would not, as 35.CN suggests, require the Court to delay ruling on the Sanctions Motion. Instead, this Court should still rule on the Sanctions Motion, enter default against OnlineNIC and ID Shield, and then delay entering final judgment until the Court determines it appropriate.

TUCKER ELLIS LLP
Chicago ● Cleveland ● Columbus ● Los Angeles ● San Francisco ● St. Louis

*See* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). The text of Rule 54(b) does not prohibit or even counsel against entering a default against parties in the OnlineNIC Defendants' situation; rather, it counsels entering a default and then ***in the Court's discretion*** only making that judgment final if the Court determines the Rule 54(b) standard is met.

The cases upon which 35.CN relies confirm this. The Supreme Court explained in the leading case on the topic:

> The true mode of proceeding where a bill makes a joint charge against several defendants, and one of them makes default, is simply ***to enter a default and a formal decree*** pro confesso ***against him***, and proceed with the cause upon the answers of the other defendants. ***The defaulting defendant has merely lost his standing in court. He will not be entitled to service of notices in the cause, nor to appear in it in any way. He can adduce no evidence, he cannot be heard at the final hearing.***

*Frow v. De La Vega*, 82 U.S. 552, 554 (1872) (emphasis added).[14] Thus, regardless of whether entry of default should be in the form of a final default judgment, default against OnlineNIC and ID Shield is proper now, barring them from future standing in this matter to contest the allegations against them.

The default judgment that Plaintiffs seek is not based on a factually meritless procedural default, but as a sanction for litigation misconduct: the record is clear and there are no matters for dispute on the underlying egregiousness of the conduct. The sanction would apply equally to 35.CN if Plaintiffs establish 35.CN engaged in this misconduct as an alter ego or a direct participant. 35.CN cannot enrich or redeem

---

[14] Courts interpreting *Frow* after the adoption of Rule 54(b) have recognized that it is limited to practical considerations of whether the defendants would be subject to joint liability or have closely related defenses such that a judgment against one of them would in effect require a judgment against all. *See Fractional Villas*, 2008 WL 11337364 at *1 (citing *First T.D. & Investment*, 253 F.3d at 532; *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1008 (N.D. Cal. 2001) ("*Frow*'s applicability turns not on labels such as 'joint liability' or 'joint and several liability,' but rather on the key question of whether under the theory of the complaint, liability of all the defendants must be uniform.")). These practical considerations are not present here because the default against the OnlineNIC Defendants is based on specific findings of egregious misconduct, and 35.CN's liability is premised upon its direct participation in that misconduct and status as an alter ego of the OnlineNIC Defendants.

24

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

the record for their alter egos' sanctionable abuses. Therefore, there is no just reason for delay in entering final judgment; however, even if this Court is inclined to delay entry of final judgment, it would still be appropriate to enter default against the OnlineNIC Defendants at this time.

## VI.    CONCLUSION

For the reasons stated above, this Court should adopt the R&R of Magistrate Judge Van Keulen, strike the OnlineNIC Defendants' Answer, and enter final judgment against them. The OnlineNIC Defendants spoliated evidence critical to Plaintiffs' case after the duty to preserve arose, withheld responsive and relevant data from Plaintiffs and the Special Master, made material misrepresentations to the Special Master and this Court, engaged in data dumping, and continued their pattern of intentional discovery misconduct after the Special Master was appointed. A fair trial on the merits is not possible given the scope and degree of discovery misconduct, and only terminating sanctions against the OnlineNIC Defendants can put an end to their abusive discovery tactics and cure the prejudice to Plaintiffs. There is no just reason for delay, and accordingly, this Court should order the relief recommended by Magistrate Judge van Keulen:

1. Strike the Answer of OnlineNIC and ID Shield (Dkt. 88).

2. Enter default judgment against OnlineNIC and ID Shield.

3. Order OnlineNIC and ID Shield to pay Plaintiffs $3,135,000 in statutory damages.

4. Order OnlineNIC and ID Shield to reimburse Plaintiffs in the amount of $88,937 for costs related to the Special Master.

5. Order that within 21 days of the Court's Order, Plaintiffs supplement their request for attorneys' fees, as provided for in the R&R, with documentation supporting the amount of fees requested. Provide OnlineNIC and ID Shield 14 days from the filing of Plaintiffs' supplemental documentation to file a response.

6. Order Plaintiffs and the OnlineNIC Defendants to meet and confer regarding revisions to Plaintiffs' proposed permanent injunction and to file a joint revision within 21 days of the Court's Order, consistent with the Court's Order.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

DATED: April 25, 2022                     Tucker Ellis LLP

                                          By:  /s/David J. Steele
                                               David J. Steele
                                               Howard A. Kroll
                                               Steven E. Lauridsen

                                          Davis Polk & Wardwell, LLP
                                               Ashok Ramani
                                               Micah G. Block
                                               Cristina M. Rincon

                                               Attorneys for Plaintiffs,
                                               FACEBOOK, INC. and INSTAGRAM, LLC

26

PLAINTIFFS' OPPOSITION TO OBJECTIONS TO REPORT & RECOMMENDATION ON SANCTIONS MOTION
Case No. 3:19-cv-07071-SI