**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Liana W. Chen (Bar No. 296965)
Ruben Peña (Bar No. 328106)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com
liana@KRInternetLaw.com
ruben@KRInternetLaw.com

Attorneys for Defendant Xiamen 35.com Technology Co., Ltd.
(erroneously sued as Xiamen 35.com Internet Technology Co., Ltd.)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **FACEBOOK, INC.**, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>**ONLINENIC INC.**, et al.,<br><br>Defendants. | Case No. 3:19-cv-07071-SI<br><br>**DEFENDANT XIAMEN 35.COM TECHNOLOGY CO., LTD.'S ADMINISTRATIVE MOTION UNDER LOCAL RULE 7-11 FOR EVIDENTIARY HEARING AND TO AUGMENT THE RECORD FOR THE REPORT AND RECOMMENDATION FOR TERMINATING SANCTIONS AGAINST DEFENDANTS [D.E. 225]**<br><br>**Related D.E. 229 Motion Hearing:**<br>*Date: June 17, 2022*<br>*Time: 10:00 am*<br>*Courtroom: #1, 17th Fl.*<br><br>Hon. Susan Illston |

**INTRODUCTION**

Pursuant to Civil Local Rules 7-11 and 72-3(b), Defendant Xiamen 35.com Technology Co., Ltd. ("Defendant" or "35.CN") respectfully submits this administrative motion for an evidentiary hearing and to allow for the augmentation of the record pertaining to the Report and Recommendation on Plaintiffs' Motion to Strike Answer and for Default Judgment [D.E. 225] (the "Report"), which proposed terminating and other sanctions.

This administrative motion concerns the Report's reliance (including for statutory damages and otherwise) on false or inaccurate claims that Plaintiffs provided the required "notices" of domain name infringement to Defendant ID Shield for each of the thirty-five domain names at issue, *i.e.*, false or inaccurate claims that Plaintiffs notified Defendants under the Registrar Accreditation Agreement ("RAA") that the domain names were infringing on Plaintiffs' trademarks. Documents provided by Plaintiffs to 35.CN after the Report was entered indicate that many of these notices either did not exist or were wholly deficient, multiple notices were emailed to third parties in error. Due to these recently discovered factual inaccuracies, and because the Report relied upon the false or inaccurate claims of sufficient notices, the Court should hold an evidentiary hearing.

**ISSUE PRESENTED**

Should the Court hold an evidentiary hearing to determine whether there is a factual basis for Plaintiffs' key allegation that they sent Defendants sufficient notice under the RAA for each of the thirty-five domain names, prior to approving terminating sanctions?

**BACKGROUND**

**A.   Plaintiffs' Claims Rest Upon Adequate Notices of Infringement**

Plaintiffs allege that Defendant ID Shield provides a "Proxy Service," which is a type of domain name privacy service where the service registers and then licenses a domain name back to its customer; under the RAA, ID Shield (assuming, *arguendo*, that it is a Proxy Service, which is disputed as ID Shield is only a "Privacy Service" as per its terms of service) arguably would have agreed to accept liability for harm caused by wrongful use of a domain name if it did not disclose the contact information for the licensee/registrant

within seven days to a party providing reasonable evidence of actionable harm. [*See* D.E. 109, SAC ¶¶3, 71, 97 ("Since Defendants did not timely and accurately disclose the current contact information provided by the Licensees and the identity of the Licensees in response to Plaintiffs' Notices prior to the filing of the original Complaint, Defendants are liable for the harm to Plaintiffs caused by those Licensees' registration, use, and/or trafficking in the Infringing Domain Names in violation of the Lanham Act.") & Ex. 4, RAA 3.7.7.1 (seven-day notice provision).] In other words, a prerequisite for statutory damages of up to $100,000 per infringing domain name is Plaintiffs' sending of, and Defendant's receipt of, lawfully compliant notices of infringement under the RAA regarding each domain name. *See* 15 U.S.C. §1117; [D.E. 109 Ex. 4, RAA 3.7.7.1.][1]

With this background, Plaintiffs claimed they sent sufficient "notices" of infringement through their agent, Focus IP, Inc. dba AppDetex ("AppDetex"), which sends "robofaxes" and mass emails. [*See* D.E. 109, ¶74; Plaintiffs' Responses to Prior Defendants' Interrogatories, Rog 3.] In fact, AppDetex has apparently sent thousands of similar "notices" to various registrars, which has been met with privacy and other objections, as noted in ICANN communication to AppDetex. (Declaration of Karl S. Kronenberger in Support of Administrative Motion ("Kronenberger Decl.") ¶7 & Ex. D.)

## B. The Report Replies on Plaintiffs' Allegations of Notices of Infringement

The Report relied on Plaintiffs' allegations of providing adequate "notice" of infringement to Defendant ID Shield for each of the thirty-five domain names, stating:

> "Plaintiffs claim that their authorized representatives sent five or more notices to ID Shield with evidence that the Infringing Domain Names had harmed Plaintiffs. SAC ¶ 74. Under OnlineNIC's Registration Agreement, Plaintiffs contend ID Shield is required to disclose contact information for its customers within seven days of receipt of "reasonable evidence of actual harm" or else it must accept liability. SAC ¶ 71; Ex. 4 to SAC. Plaintiffs further claim that ID Shield failed to timely disclose its

---

[1] While Plaintiffs may claim ID Shield was the legal "registrant" because it was listed in the registrant field for WHOIS records, ID Shield was only listed in lieu of its customers (the real registrants) for privacy purposes (or at most, if Plaintiffs prevail on this issue, because ID Shield was a "proxy" for its customers); thus, ID Shield was not, and could not, have been the actual "registrant" of the domain names due to the nature of its services.

customers' contact information following receipt of Plaintiffs' notices regarding the Infringing Domain Names. SAC ¶ 75. This action resulted." (3:8-14)

Furthermore, the Report conducted a domain-by-domain analysis for damages, awarding a base of $70,000 for each of the thirty-five domain names plus additional amounts for certain domain names based on various factors (26:22-28:23, citing the *Banana Ads* case), all under this mistaken assumption that Plaintiffs sent adequate notices of infringement for each of the thirty-five domain names.

**C.    Many Notices of Infringement Were Legally Deficient or May Not Exist At All**

There are three categories of problems with the purported notices of infringement. First, some of the notices appear to have been mistakenly sent to third parties and not to Defendants; second, for notices that were sent, Defendants tried to comply with the requests by seeking confirmation of the identity of the sender due to requirements under various privacy laws,[2] and those requests were apparently ignored; and third, records indicate that Plaintiffs never sent any notices at all for a significant portion of the domain names (or that Plaintiff has no record of doing so).

On the first issue, 35.CN recently discovered that Plaintiffs' document productions included "notices" of infringement mistakenly sent **to third parties** instead of to Defendants ID Shield or OnlineNIC. (Kronenberger Decl. ¶3, citing FB0019250 and FB0019242). [*Compare* D.E. 109, SAC ¶56 nos. 12 & 24.] For context, Plaintiffs recently reproduced documents to 35.CN that were previously produced to other Defendants before 35.CN was named as a Defendant; Plaintiffs represented that these documents included the relevant notices for the domain names at issue.[3] (*See* Kronenberger Decl. ¶2.) To clarify, Plaintiffs

---

[2] For example, if OnlineNIC or ID Shield would disclose the private contact information about registrants without vetting the request, any third parties, including bad actors and bots, could make requests for private information and get it (in fact, Plaintiffs' own terms state they will verify requests for personal information). For this reason, OnlineNIC and ID Shield had no choice but to make attempts to vet the incoming notices from Plaintiffs.

[3] Specifically, Plaintiffs represented that they were producing prior document productions, including related to their written responses that "Facebook has produced non-privileged documents comprising communications between Focus IP [aka AppDetex] and ONLINENIC, DOMAIN ID, and/or third parties concerning ONLINENIC" and "Facebook has produced non-privileged documents comprising communications between Focus IP

1  produced these records to 35.CN on April 12, 2022, which was after the March 28, 2022
2  Report and after 35.CN's April 11, 2022 motion objecting to the Report and seeking a de
3  novo determination [D.E. 228], thereby preventing 35.CN from requesting an evidentiary
4  hearing at the time of its objections to the Report. (*See* Kronenberger Decl. ¶2.)

5  On the second issue, documents reveal that, where notices were sent, Defendants
6  did indeed respond to multiple notices, asking that AppDetex verify its identity prior to the
7  release of personal information of registrants; yet AppDetex apparently did not respond,
8  thus calling into question whether any of Plaintiffs' notices were legally sufficient. 35.CN
9  requested responsive communications to these requests for verifying information but has
10 not received any substantive response or documentation from Plaintiffs. (*See*
11 Kronenberger Decl. ¶4 & Ex. B.) In fact, 35.CN issued a subpoena to AppDetex for
12 documents concerning the notices, which was met by objections by AppDetex and a
13 motion to quash by Plaintiffs (through counsel in Idaho). (Kronenberger Decl. ¶5.)

14 On the third issue, 35.CN promptly notified Plaintiffs that it could not locate notices
15 requesting identifying information under the RAA for ten of the thirty-five domain names in
16 Plaintiffs' document productions. (Kronenberger Decl. ¶6 & Ex. C.) In particular, 35.CN
17 requested that Plaintiffs confirm whether the alleged notices were provided to OnlineNIC
18 or ID Shield for each of the thirty-five domain names; despite 35.CN's requests for this
19 information via email and on a May 25, 2022 Zoom call, Plaintiffs have yet to produce the
20 requested documentation. (*See* Kronenberger Decl. ¶6 & Ex. C.)

## ARGUMENT

22 Under Civil Local Rule 72-3(b), a party may accompany a motion objecting to a
23 report and recommendation with a separately filed motion for "Administrative Motion to
24 Augment the Record" or an "Administrative Motion for an Evidentiary Hearing."

---

[aka AppDetex] and ONLINENIC, DOMAIN ID, and/or third parties concerning the COMPLAINT DOMAINS [twenty domains in the original Complaint]" and "concerning the ADDITIONAL DOMAINS [additional domains, including the domains listed in the amended complaint]." *See e.g.,* Facebook's Responses to Defendants' Third Set of RFPS, Responses to RFPs 61-65, dated March 10, 2021.

Case No. 3:19-cv-07071-SI                4                DEF'S ADMIN MTN FOR EVIDENTIARY
                                                          HEARING & AUGMENTATION OF RECORD

Here, there is sufficient reason to believe that Plaintiffs did not have any basis for alleging that they (or their agent) sent any lawful "notice" to Defendants for all of the thirty-five domain names at issue. The question of whether there was adequate, or any, notice regarding all of the domain names is central to Plaintiffs' allegations as well as the Report proposing terminating sanctions and statutory damages (among other things) on a domain-by-domain name basis, relying on Plaintiffs' allegations of notice to Defendants.

To clarify, 35.CN was not able file this administrative motion at the time of filing its objections to the Report because Plaintiffs did not produce records to 35.CN outlining these issues until after 35.CN's deadline to file its objection to the Report. (*See* Kronenberger Decl. ¶2.) Moreover, 35.CN has only recently discovered these issues as it spent time reviewing Plaintiffs' thousands of pages of produced documents.

35.CN will continue to try to resolve these issues with Plaintiffs, but, as the Court reviews 35.CN's motion objecting to the Report, 35.CN requests an evidentiary hearing during which supplemental evidence may be presented. Specifically, the purpose of the hearing should be, prior to any order awarding sanctions or other relief against any Defendant, to determine whether there is a factual basis for Plaintiffs' allegations of sending legally sufficient notices to Defendants for each of the thirty-five domain names.

Plaintiffs may be able to explain the above-referenced discrepancies in an evidentiary hearing (*e.g.*, why notices for at least two of the domain names were mistakenly sent to third parties instead of to OnlineNIC or ID Shield). Furthermore, while Plaintiffs repeatedly try to paint Defendants as the "bad" actors, domain name registration and privacy protection services are legitimate businesses; and Plaintiffs' mudslinging flies in the face of Plaintiffs' own history of misconduct that has been brought to light not only by civil and government actions against it, and public outcry that has prompted Plaintiffs' recently complete rebranding to "Meta" as a form of reputation repair.

## CONCLUSION

For all these reasons, Defendant respectfully seeks the administrative relief herein requested and all other relief deemed appropriate and just by the Court.

Respectfully Submitted,

Dated: May 26, 2022         **KRONENBERGER ROSENFELD, LLP**


By:      s/Karl S. Kronenberger
              Karl S. Kronenberger

Attorneys for Defendant Xiamen 35.com Technology Co., Ltd.