1

**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)

2
Jeffrey M. Rosenfeld (Bar No. 222187)
Liana W. Chen (Bar No. 296965)

3
Ruben Peña (Bar No. 328106)
150 Post Street, Suite 520

4
San Francisco, CA 94108
Telephone: (415) 955-1155

5
Facsimile: (415) 955-1158
karl@KRInternetLaw.com

6
jeff@KRInternetLaw.com

7
liana@KRInternetLaw.com
ruben@KRInternetLaw.com

8

9
Attorneys for Defendant Xiamen 35.com Technology Co., Ltd.
(erroneously sued as Xiamen 35.com Internet Technology Co., Ltd.)

10

11
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

12
**SAN FRANCISCO DIVISION**

13
**FACEBOOK, INC.**, et al.,                    Case No. 3:19-cv-07071-SI

14
                    Plaintiffs,

15
                                               **DECLARATION OF KARL S.**
          v.                                   **KRONENBERGER IN SUPPORT OF**

16
                                               **DEFENDANT XIAMEN 35.COM**
                                               **TECHNOLOGY CO., LTD.'S**

17
**ONLINENIC INC.**, et al.,                    **OPPOSITION TO PLAINTIFFS'**
                                               **INDIVIDUAL STATEMENT SEEKING**

18
                    Defendants.                **LEAVE TO FILE A REGULARLY**
                                               **NOTICED MOTION TO COMPEL ON**

19
                                               **DISCOVERY ISSUES [D.E. 237]**

20

21                                             *No hearing set*

22

23

24

25

26

27

28

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

I, Karl S. Kronenberger, do hereby declare:

1.     I am an attorney admitted to practice law in the State of California and before this Court. I am a partner at the law firm of Kronenberger Rosenfeld, LLP, counsel of record for Defendant Xiamen 35.com Technology Co., Ltd. ("35.CN"). Unless otherwise stated, I have personal knowledge of the facts set forth in this Declaration.

2.     35.CN has been actively working with Plaintiffs on multiple fronts, including responding to hundreds of discovery requests seeking Chinese language documents.

3.     In particular, given issues with new Chinese data security and privacy laws (above the requirements under the Hague Convention), on March 20, 2022 my office sent Plaintiffs' counsel a detailed letter outlining 35.CN's Chinese legal obligations and stating a further case management conference would be helpful following the parties' March 10, 2022 Rule 26(f) conference. The letter further explained that 35.CN had sought guidance from local Chinese counsel and was waiting a response. A true and correct copy of the foregoing letter is attached as **Exhibit A**.

4.     On April 18, 2022, I again asked whether Plaintiffs would agree to a further case management conference. In related emails, I also outlined 35.CN's intent to file a motion for a protective order concerning hundreds of Plaintiffs' discovery requests. On Saturday, May 21, 2022, Plaintiffs' counsel emailed me about the draft stipulation seeking leave to file a fully noticed motion to compel, despite 35.CN's statements that it may need to file its own motion for a protective order in the future. I responded the same day (Saturday) that we were reviewing the draft stipulation as well as additional documents to try to narrow the dispute. A true and correct copy of this correspondence is attached as **Exhibit B**.

5.     Throughout this time, 35.CN has been working with Chinese counsel, started translating and reviewing documents, served three document productions (including records in Chinese) as part of its rolling document productions, and requested a written opinion from the legal regulatory agency in China (the Cyberspace Administration of China aka Office of the Central Cyberspace Affairs Commission). 35.CN

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1    has further stated that it was still reviewing additional Chinese-language documents,

2    would continue to make further document productions, and would send amended written

3    discovery responses after the final production.

4         6.     Notably, while Plaintiffs have granted in part and denied in part 35.CN's

5    requests for discovery extensions, 35.CN has granted multiple discovery extensions

6    requested by Plaintiffs in full, with the deadline for Plaintiffs' responses to discovery now

7    due on June 7, 2022.

8         I declare under penalty of perjury under the laws of the United States of America

9    that the foregoing is true and correct and that this Declaration was executed on May 26,

10   2022, in San Francisco, California.

11

12                                          s/Karl S. Kronenberger
                                            Karl S. Kronenberger

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit A



March 30, 2022


TUCKER ELLIS LLP
Howard A. Kroll, Howard.Kroll@tuckerellis.com
David J. Steele, David.Steele@tuckerellis.com
Steven E. Lauridsen, Steven.Lauridsen@tuckerellis.com
Jeffrey Sindelar, Jeffrey.Sindelar@tuckerellis.com
Helena Guye, Helena.Guye@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071

**VIA EMAIL**

**RE:    *Meta Platforms Inc., et al., v. OnlineNIC, et al.*, Case No. 3:19-cv-07071-SI;
          Meet and Confer Regarding Chinese Government Approval for Discovery**

Dear Counsel:

As you know, our firm is legal counsel to Xiamen 35.com Technology Co., Ltd. ("35.CN") in the above-referenced action. In anticipation of 35.CN's deadline to respond to written requests for production of documents and our call scheduled for March 30, 2022, this letter follows up on our Rule 26(f) conference and outlines new information impacting 35.CN's discovery timeline.

Specifically, we are working with our client on producing documents, which are located in their office in the People's Republic of China ("PRC" or "China"). As you may know, Chinese law (1) requires that the parties follow the international Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention"),[1] and (2) prohibits the cross-border transfer of data from China to countries such as the United States for litigation purposes without the prior authority of the Chinese government. To that end, our client and our firm are working with independent Chinese counsel to clarify the requisite steps and obtain the necessary approvals from the relevant Chinese agency.

As outlined below, we would like to discuss these issues with you. It may be helpful to stipulate to a further Case Management Conference pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16-10(c) on these issues and to obtain expert affidavits if necessary.

Importantly, nothing in this letter should be construed as an absolute refusal to produce documents in this litigation. Instead, this letter outlines procedures to use to get required approvals prior to producing documents located in China in this litigation.


*//*

---

[1] Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, *available at* https://assets.hcch.net/docs/dfed98c0-6749-42d2-a9be-3d41597734f1.pdf.

Page 2
TUCKER ELLIS LLP
*Facebook v. OnlineNIC*

## A.    Background

### 1.   The Parties

As background, 35.CN is a public company in Xiamen, Fujian Province in China that is registered in China and organized under the laws of China. Specifically, 35.CN was established in 2004 and provides cloud computing, application software, email hosting, and business homepage building services as well as domain name and customer relationship management system services. As just one part of its business, 35.CN is an ICANN-accredited registrar and assists customers with registering domain names; customers use 35.CN's system and services in Chinese and make payment with Chinese currency.

Plaintiffs are billion-dollar social media platforms under the "Meta" brand that are, by Meta's admission, banned in China. [D.E. 189-1, ¶ 26 ("Both the Facebook and Instagram apps are banned in China").] In fact, Chinese authorities have blocked Facebook and others since riots arose in 2009 in the Western region of Xinjaing, China,[2] despite Facebook's attempts to set up a subsidiary in Hangzhou and Mark Zuckerberg's repeated visits to China.[3]

In our case, while the Court denied 35.CN's motion to dismiss on personal jurisdiction grounds, it did not foreclose a later determination that there is no personal jurisdiction over 35.CN. 35.CN's motion also outlined how there is no alter ego liability for conduct by OnlineNIC or ID Shield, including because there is no fraud or injustice to support the Court disregarding the separate corporate forms.

### 2.   Chinese Government Interest in Plaintiffs' Allegations

We have recently learned that the Chinese government has made multiple verbal inquiries to 35.CN regarding this case, indicating its interest in this case generally and carefully reminding 35.CN to comply with every law and policy in China.

As background, the Cyberspace Administration of China (also referred to as the Office of the Central Cyberspace Affairs Commission) ("CAC") oversees and regulates cyberspace security and internet content in China.[4] For example, in a widely publicized scenario, the CAC informed the ride-hailing giant Didi Global Inc. that it fell short of preventing security and data disclosures, indicating the CAC's intent to strictly regulate against cross-border data transfers.[5]

The CAC has discussed this litigation with 35.CN and provided oral feedback that as a public company, 35.CN has already published all of the information that they are requested to make public.[6] In other words, the CAC reminded 35.CN that all other information and documents

---

[2] Facebook/Instagram/Meta have come under whistleblower and other scrutiny regarding harmful real-world consequences, such as the January 6th Capitol riots, Myanmar genocide, and other violence, stemming from the platforms.
[3] Zucchi, Kristina, *Why Facebook is Banned in China & How to Access it* (Dec. 31, 2021), *available at* https://www.investopedia.com/articles/investing/042915/why-facebook-banned-china.asp (citing sources).
[4] Guo, Bingna & Li, Bob, *China Issued New Measures for Cybersecurity Review in 2022* (Feb. 8, 2022), *available at* https://www.whitecase.com/publications/alert/china-issued-new-measures-cybersecurity-review-2022.
[5] *Didi Plunges 44% After Halting Planned Hong Kong Stock Listing* (Mar. 10, 2022), *available at* https://www.bloomberg.com/news/articles/2022-03-11/didi-said-to-halt-hong-kong-listing-plan-on-cybersecurity-probe.
[6] Plaintiffs should have equal access to this publicly accessible information.

Page 3
TUCKER ELLIS LLP
*Facebook v. OnlineNIC*

not required by law to be made public as a public company should not be published or disclosed in a foreign U.S. civil litigation proceeding. Further, there was indication that, under laws in China, it is perplexing how a U.S. court could attempt to exercise its jurisdiction over 35.CN in this case. Our client is determining whether CAC would agree to issue something in writing on this matter.

35.CN is not solely relying on in-house counsel or employee recommendations but has been in discussion with an established and relatively large law firm in China as well as Chinese counsel that assists with translation and other legal advice.  While we are providing notice of these issues in this letter, our client reserves the right to update this analysis with Chinese counsel.

### 3.  Discovery Requests

On February 16, 2022, Plaintiffs served numerous written discovery requests on 35.CN (118 requests for admission, 18 interrogatories, and 147 requests for production of documents), which largely seek information on their "alter ego" theory. These requests seek information regarding 35.CN's company background and ownership (RFP 1-16), Chinese individuals' interests related to Defendants (RFP 24-32), 35.CN's contracts, assets, and intellectual property (RFP 17-23, 33-39), 35.CN's relationships, including with other Defendants (RFP 40-68), 35.CN's communications, ICANN agreements, and lawsuits (RFP 69-81), records of fund transfers, loans, and investments (RFP 87-144), and records related to communications about Plaintiffs or the lawsuit (RFP 82-86), payments to OnlineNIC's counsel (RFP 145), and documents supporting responses to the interrogatories and requests for admission (RFP 146-147). The undertone, and even express language of the discovery requests, is argumentative and accusatory against 35.CN.

Notably, Plaintiffs' prior discovery requests to the other Defendants, requesting a "representative sample" of documents to demonstrate all business activities engaged in between those Defendants and 35.CN, were found to be "overbroad and vague" by the Court. [D.E. 81.] Now, however, Plaintiffs seek essentially the same discovery over hundreds of requests to 35.CN.

Plaintiffs also seek information and materials that Plaintiffs could equally obtain through public records; as a public company, 35.CN provides extensive information through public filings, such as annual financial reports (which typically contain background on corporate structure, financials, and more information than equivalent securities filings in the U.S.). However, although Plaintiffs could obtain public information with no government consequence, 35.CN's provision of the same information could subject it to penalties for cross-border transfer, as outlined below.

### B.  Discovery to 35.CN Should Proceed Under the Hague Convention

There are different methods to obtain discovery across international borders.[7] Pursuant to the process under the Hague Convention, Plaintiffs must obtain permission from competent authorities in China prior to conducting discovery from 35.CN in China for use in a U.S. civil proceeding. *See Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.,* No. 17-CV-02191-SK, 2019 WL 6134958, at *1–*2, *6 (N.D. Cal. Nov. 19, 2019) (finding the plaintiff must proceed through the Hague Convention procedures to obtain documents in China); *Sun Grp. U.S.A.*

---

[7] Canty, Aimee, *Getting Discovery Across Borders* (Mar. 23, 2020), *available at* https://www.americanbar.org/groups/litigation/committees/pretrial-practice-discovery/practice/2020/getting-discovery-across-borders/.

*Harmony City, Inc. v. CRRC Corp. Ltd.,* No. 17-CV-02191-SK, D.E. 132-13, ¶8 (N.D. Cal. Aug. 23, 2019) (affidavit of legal expert); *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 104 F. Supp. 3d 1150, 1166 (D. Or. 2015) ("Courts are reluctant to require '[g]eneralized searches for information' whose disclosure may be prohibited under foreign law.") (quoting *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992)); *Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial,* Ch. 11(III)-H (International Discovery) ("Refusing to order disclosure of materials outside the U.S. seems consistent with the Supreme Court's note that 'comity and parity concerns may be important as touchstones for a district court's exercise of discretion in particular cases.'") (citing *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 255, 261 (2004)); *Tiffany (NJ) LLC v. Qi Andrew*, 278 F.R.D. 143, 160–61 (S.D.N.Y. July 25, 2011) (ordering discovery through the Hague Convention); *Salt River Project v. Trench France SAS*, 303 F. Supp. 1004, 1010 (D. Az. March 19, 2018). Proceeding under the Hague Convention ensures that certain standards are met, such as translation and sending a request to the Chinese Ministry of Justice and obtaining review by the People's Republic of China Supreme Court, which may reject the request if it violates state sovereignty, domestic laws, state security, or state public interest.[8]

Likewise, Chinese law requires that parties obtain government approval prior to conducting discovery in China, and confirms that the Hague Convention must be followed. For example, pursuant to Article 283 (previous Article 277) of the Chinese Civil Procedure Law, 35.CN is required to follow the Hague Convention prior to producing materials in response to Plaintiffs' discovery requests because investigation and discovery into China's territories must only be in accordance with international treaties (or in the absence, diplomatic channels). Moreover, Article 4, paragraph 3 of the Criminal Assistance Law states that any foreign organization shall not conduct discovery in China, and that organizations and individuals within the territory of China may not provide evidence to foreign countries, "without the consent of the competent authorities of the People's Republic of China." Chinese laws impose heavy sanctions, including both civil and criminal penalties, for over disclosure of information. *See* Sher, Julie, *supra* at 77 ("Chinese litigants have Chinese statutory law that prevents production of documents containing a variety of different information, from state secrets to banking information, resulting in civil and criminal penalties."). For instance, where discovery was issued on local U.S. branches of a Chinese financial institution, the court weighed consideration of prior Chinese litigants suffering heavy sanctions for being compelled to produce certain documents. *See id.* (citation omitted).

Here, Plaintiffs' discovery requests seek broad and detailed financial and business information from a Chinese company, despite clear Chinese prohibitions on such disclosure of information. There are also numerous requests that seek documents and information related to Defendants OnlineNIC and ID Shield, which could be sought from those Defendants instead of requesting that 35.CN violate international law by producing the same materials located in China.

Under various considerations, application of the Hague Convention is warranted in this case. Specifically, the requested materials are not, as a whole, crucial to Plaintiffs' litigation where they have already obtained substantial discovery from the initial Defendants, OnlineNIC and ID Shield, and they can obtain publicly available information; the requests are not specific to allow procedures around the Hague Convention; the information did not originate in the U.S. (and if there is information that originated to U.S., it is public information equally accessible to

---

[8] *See* Sher, Julie, *Cross-Border E-Discovery: Production of ESI from Chinese Entities*, Emory Law Scholarly Commons 77, 82-83 (2021), *available at* https://scholarlycommons.law.emory.edu/cgi/viewcontent.cgi?article=1031&context=eilr-recent-developments.

Page 5
TUCKER ELLIS LLP
*Facebook v. OnlineNIC*

Plaintiffs); there is an alternative means of securing the information at issue, namely the existing discovery and public records; and, importantly, failing to proceed under the Hague Convention would undermine important interests of China, where the information is located, especially considering specific civil procedure and data transfer laws enacted in China. *See e.g., Sun Grp. U.S.A. Harmony City, Inc.,* 2019 WL 6134958, at *2–*3 (considering various factors to guide the analysis of whether application of the Hague Convention is warranted).

Clearly, Plaintiffs are attempting to have a second chance at obtaining confidential and sensitive financial and business records after the Court denied part of Plaintiffs' prior motion to compel. Thus, Plaintiffs should have proceeded through the Hague Convention channels prior to seeking the requested evidence located in China. This notwithstanding, and despite specific prohibitions on cross-border transfers of data, 35.CN has already started the process for obtaining approval for responding to Plaintiffs' discovery requests, as outlined below.

## C.    Recent Chinese Law Restricts Cross-Border Transfers of Data

In addition to general restrictions on international discovery, recent Chinese data security and privacy laws prohibit 35.CN from producing materials in response to Plaintiffs' requests, especially given the sovereign interests at stake related to being a public Chinese company (as well as in light of the Chinese government oral inquiries to 35.CN).

For context, international restrictions on cross-border transfers have heightened in the last couple of years, especially with transfers of various kinds of information to the U.S. In particular, the Chinese Data Security Law ("DSL"), Cybersecurity Law, and Personal Information Protection Law ("PIPL") create a framework for when data can be transferred from China to other countries.[9] These laws and their strict requirements and potential penalties are consistent with other recent international laws restricting cross-border transfers of data[10] as well as Chinese laws relating to data security and privacy policies for Chinese companies,[11] legislation prohibiting transfers of sensitive information, and even prior Chinese court hesitancy to recognize U.S. court orders.

Specifically, the DSL, effective since September 2021, restricts transfers of different categories of data, namely state data, important data, and general data.[12] We understand that information is broadly covered under these vague definitions, including corporate information, contract and financial data, data concerning security and public interests, and even public information stored within the territory of China. For example, Article 36 of the DSL stipulates that entities and individuals shall not provide data stored within the territory of China to foreign legal and judicial bodies without Chinese agencies' prior approval. This Article 36 is written in an absolute manner such that even the owner of the information, which could be public or private, is

---

[9] Sheng, Jenny (Jia) et al., *China Adopts New Data Security Law* (Accessed on Mar. 28, 2022), *available at* https://www.pillsburylaw.com/en/news-and-insights/china-adopts-new-data-security-law.html.

[10] Braun, Martin et al., *The French Data Protection Authority Joins the Austrian Protection Authority in Ruling that the Use of Google Analytics Violates the GDPR* (Feb. 16, 2022), *available at* https://www.jdsupra.com/legalnews/the-french-data-protection-authority-2677478/.

[11] Zhu, Julie et al., *China to Ban Online Brokers From Offering Offshore Trading to Mainland Clients* (Dec. 17, 2021), *available at* https://www.nasdaq.com/articles/exclusive-china-to-ban-online-brokers-from-offering-offshore-trading-to-mainland-clients-0; Horwitz et al., *Explainer: What is Driving China's Clampdown on Didi and Data Security* (July 7, 2021), *available at* https://www.reuters.com/technology/what-is-driving-chinas-clampdown-didi-data-security-2021-07-07/.

[12] DigiChina, *Data Security Law of the People's Republic of China* (June 29, 2021), *available at* https://digichina.stanford.edu/work/translation-data-security-law-of-the-peoples-republic-of-china/.

Page 6
TUCKER ELLIS LLP
*Facebook v. OnlineNIC*

prohibited from providing such information. Covered data under the DSL is also broad and includes digital and other records. This lends support for the Chinese government exercising control and sovereignty. Thus, the question is not whether Plaintiffs in the U.S. think the law is reasonable but whether the Chinese government has enacted a legal requirement covering 35.CN, a Chinese corporation. Violators of the DSL may be subject to fines of up to over $1.5 million, suspension or revocation of business licenses, and even criminal liability.

In addition, the PIPL, effective November 2021, protects the rights and interests of personal information and regulates personal information processing activities. The law includes provisions requiring any cross-border data transfers to be submitted first to the CAC, the relevant regulatory body, and provides for fines ranging up to $7.7 million or up to 5% of a company's previous year's business revenue.[13]

Further, established Chinese law imposes very strict limitations on disclosure of information related to Chinese "state secrets," which is thought of broadly and is vaguely defined, including any matters relating to national interests in the areas of economy and diplomacy. *See* Moncure, David, *The Conflict Between United States Discovery Rules and the Laws of China: The Risks Have Become Realities*, The Sedona Conference Journal, Vol. 16 (2015) (referring to State Secrets Protection Law, effective Oct. 1, 2010).[14] Under Chinese law, provision of covered information to an overseas organization or individual, even if the level of secrecy is not clearly outlined, is a crime. *See also id.* (citing Article 111 of the Criminal Law).

This makes clear that Chinese data security and privacy laws prohibit 35.CN from producing discovery in response to Plaintiffs' requests without government approval; and responding, without prior approval, to the bulk of Plaintiffs' discovery requests would subject 35.CN to high monetary, civil, and even criminal penalties in China. Given the sensitive and overbroad information that Plaintiffs seek, and the fact that Plaintiffs are demanding that a public Chinese company provide this information to two of the world's largest companies (under one brand), which are banned in China, underscores how 35.CN must obtain government approval in this case.

## D.     35.CN's Steps to Ensure Compliance with Legal Obligations; and Next Steps

As outlined above, upon recently confirming its legal obligations under these Chinese laws, 35.CN has been working diligently to seek approval from the appropriate Chinese authorities to respond to the discovery in this case, including by:

- Providing this letter, which contains background and legal basis for the conflict in turning over broadly-requested documents and information without appropriate approval. We also propose discussing these issues with you on our call scheduled for March 30, 2022. Further, 35.CN still intends to produce documents not subject to prior government approval in the first production and then additional documents upon government approval.

---

[13] Bryant, Jennifer, *China's PIPL Takes Effect, Compliance 'A Challenge'* (Nov. 1, 2021), *available at* https://iapp.org/news/a/chinas-pipl-takes-effect-compliance-a-challenge/.

[14] Moncure, David, *The Conflict Between United States Discovery Rules and the Laws of China: The Risks Have Become Realities,* 16 Sedona Conf. Journal 283 (2015), *available at* https://thesedonaconference.org/sites/default/files/publications/The%20Conflict%20Between%20US%20Discovery%20Rules%20and%20the%20Laws%20of%20China.16TSCJ283.pdf.

Page 7
TUCKER ELLIS LLP
*Facebook v. OnlineNIC*

- Obtaining advice from counsel. While the content of this advice is privileged, we note that 35.CN has not only reviewed these issues with our firm and Chinese translation counsel but also with in-house and outside local counsel in China familiar with these issues.
- Working with local regulators on a possible solution, including by having discussions with the CAC and determining whether the CAC will issue a statement in writing.

If Plaintiffs consent to proceeding under the Hague Convention and obtaining the requisite Chinese government approval, we propose filing a joint case management statement with the Court, which would request a further case management conference if helpful. However, if Plaintiffs decline to consent to such procedures, 35.CN suggests filing a joint letter to the Court on these issues and seeking leave for additional briefing, including to attach legal experts to explain the foreign legal requirements and potential drastic penalties for noncompliance with Chinese laws.

This letter does not constitute a complete or exhaustive statement of all of our clients' rights or defenses in this matter, all of which are expressly reserved.

If you have any questions, you may reach me at 415-955-1155, ext. 114, or at karl@krinternetlaw.com.

Sincerely,

KRONENBERGER ROSENFELD, LLP

Karl S. Kronenberger

cc: Other Counsel of Record

Exhibit B

| | |
|---|---|
| **From:** | Karl Kronenberger |
| **To:** | Steele, David J.; Leah Vulic; Kroll, Howard A.; Sindelar, Jeffrey C.; Guye, Helena M.; ashok.ramani@davispolk.com; micah.block@davispolk.com; cristina.rincon@davispolk.com; Perry J. Narancic; Lauridsen, Steven E.; Ruben Peña; paralegals; Jeff Rosenfeld; Liana Chen |
| **Subject:** | RE: Facebook, Inc., et al. v. OnlineNIC Inc., et al. - Defendant 35.CN"s Objections and Responses to Plaintiffs" First Sets of Requests for Admission and Interrogatories |
| **Date:** | Saturday, May 21, 2022 4:38:43 PM |
| **Attachments:** | image001.png image002.png image003.png |

Hi David,

We are moving forward with edits to the stipulation. However, as you know, we have started a rolling production. We area also reviewing additional documents now, which will be produced.

We are trying to narrow the dispute down as much as possible, by potential eliminating some legal grounds mentioned in our prior letter to you. I will try to turn to further edits to your draft stip tomorrow. To reiterate, we have agreed on submitting a stipulation on this discovery dispute, and we will get you our edits ASAP.

Very best,

Karl

---

**From:** Steele, David J. <David.Steele@tuckerellis.com>
**Sent:** Saturday, May 21, 2022 8:31 AM
**To:** Karl Kronenberger <karl@krinternetlaw.com>; Leah Vulic <leah@krinternetlaw.com>; Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Sindelar, Jeffrey C. <Jeffrey.Sindelar@tuckerellis.com>; Guye, Helena M. <Helena.Guye@tuckerellis.com>; ashok.ramani@davispolk.com; micah.block@davispolk.com; cristina.rincon@davispolk.com; Perry J. Narancic <pjn@lexanalytica.com>; Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>; Ruben Peña <ruben@krinternetlaw.com>; paralegals <paralegals@krinternetlaw.com>; Jeff Rosenfeld <jeff@krinternetlaw.com>; Liana Chen <liana@krinternetlaw.com>
**Subject:** RE: Facebook, Inc., et al. v. OnlineNIC Inc., et al. - Defendant 35.CN's Objections and Responses to Plaintiffs' First Sets of Requests for Admission and Interrogatories

Karl,

We have been extremely patient and accommodating with you on this. However, we must insist that you provide your edits to the stipulation. If we do not receive them promptly, we will simply move the court (noting the efforts we've taken to date and the delay).

Also, given your comments below regarding your edits to the stipulation, I am mindful (as I'm sure you are as well) that the stipulation should not contain the substantive arguments you intend to advance in opposition to our motion, but rather the reasoning for why full briefing is required.

David

**From:** Karl Kronenberger <[karl@krinternetlaw.com](mailto:karl@krinternetlaw.com)>
**Sent:** Tuesday, May 17, 2022 4:02 PM
**To:** Steele, David J. <[David.Steele@tuckerellis.com](mailto:David.Steele@tuckerellis.com)>; Leah Vulic <[leah@krinternetlaw.com](mailto:leah@krinternetlaw.com)>; Kroll, Howard A. <[Howard.Kroll@tuckerellis.com](mailto:Howard.Kroll@tuckerellis.com)>; Sindelar, Jeffrey C. <[Jeffrey.Sindelar@tuckerellis.com](mailto:Jeffrey.Sindelar@tuckerellis.com)>; Guye, Helena M. <[Helena.Guye@tuckerellis.com](mailto:Helena.Guye@tuckerellis.com)>; [ashok.ramani@davispolk.com](mailto:ashok.ramani@davispolk.com); [micah.block@davispolk.com](mailto:micah.block@davispolk.com); [cristina.rincon@davispolk.com](mailto:cristina.rincon@davispolk.com); Perry J. Narancic <[pjn@lexanalytica.com](mailto:pjn@lexanalytica.com)>; Lauridsen, Steven E. <[Steven.Lauridsen@tuckerellis.com](mailto:Steven.Lauridsen@tuckerellis.com)>; Ruben Peña <[ruben@krinternetlaw.com](mailto:ruben@krinternetlaw.com)>; paralegals <[paralegals@krinternetlaw.com](mailto:paralegals@krinternetlaw.com)>; Jeff Rosenfeld <[jeff@krinternetlaw.com](mailto:jeff@krinternetlaw.com)>; Liana Chen <[liana@krinternetlaw.com](mailto:liana@krinternetlaw.com)>
**Subject:** RE: Facebook, Inc., et al. v. OnlineNIC Inc., et al. - Defendant 35.CN's Objections and Responses to Plaintiffs' First Sets of Requests for Admission and Interrogatories

**<<< EXTERNAL EMAIL >>>**

Hi David,

We do not know at this point whether we will be withdrawing these objections, as we just received documents early this morning (in Chinese). However, we have started making edits to your document regarding our motion for a protective order, and your proposed motion to compel. We don't want to waste any time here, in the event we do not withdraw our objections.

We will be in touch about our edits.

Just so you know, a significant part of our arguments involve the two new Chinese laws passed in late 2021 (Data Disclosure Law and Personal Information Law), and not just the Hague Convention. But, we are explaining this in the proposed stipulation.

Very best,

Karl

**From:** Steele, David J. <[David.Steele@tuckerellis.com](mailto:David.Steele@tuckerellis.com)>
**Sent:** Tuesday, May 17, 2022 11:29 AM
**To:** Karl Kronenberger <[karl@krinternetlaw.com](mailto:karl@krinternetlaw.com)>; Leah Vulic <[leah@krinternetlaw.com](mailto:leah@krinternetlaw.com)>; Kroll, Howard A. <[Howard.Kroll@tuckerellis.com](mailto:Howard.Kroll@tuckerellis.com)>; Sindelar, Jeffrey C. <[Jeffrey.Sindelar@tuckerellis.com](mailto:Jeffrey.Sindelar@tuckerellis.com)>; Guye, Helena M. <[Helena.Guye@tuckerellis.com](mailto:Helena.Guye@tuckerellis.com)>; [ashok.ramani@davispolk.com](mailto:ashok.ramani@davispolk.com); [micah.block@davispolk.com](mailto:micah.block@davispolk.com); [cristina.rincon@davispolk.com](mailto:cristina.rincon@davispolk.com); 'Perry J. Narancic' <[pjn@lexanalytica.com](mailto:pjn@lexanalytica.com)>; Lauridsen, Steven E. <[Steven.Lauridsen@tuckerellis.com](mailto:Steven.Lauridsen@tuckerellis.com)>; Ruben Peña

<ruben@krinternetlaw.com>; paralegals <paralegals@krinternetlaw.com>; Jeff Rosenfeld
<jeff@krinternetlaw.com>; Liana Chen <liana@krinternetlaw.com>
**Subject:** RE: Facebook, Inc., et al. v. OnlineNIC Inc., et al. - Defendant 35.CN's Objections and
Responses to Plaintiffs' First Sets of Requests for Admission and Interrogatories

Karl,

Please confirm whether 35.CN is withdrawing all objections based on Chinese law, and please also
confirm whether 35.CN is withdrawing all objections based on service not via the Hague Convention.

If 35.CN is not withdrawing these objections, then we need to move forward with our motion to
compel as we discussed during our meet and confer conference (three weeks ago). We have
attached a draft stipulation (also as discussed during our conference) for leave to file a regularly
noticed motion to compel. Please advise whether the stipulation is ok, or whether we need to file a
motion.

David

**From:** Karl Kronenberger <karl@krinternetlaw.com>
**Sent:** Monday, May 16, 2022 3:15 PM
**To:** Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>; Steele, David J.
<David.Steele@tuckerellis.com>; Leah Vulic <leah@krinternetlaw.com>; Kroll, Howard A.
<Howard.Kroll@tuckerellis.com>; Sindelar, Jeffrey C. <Jeffrey.Sindelar@tuckerellis.com>; Guye,
Helena M. <Helena.Guye@tuckerellis.com>; ashok.ramani@davispolk.com;
micah.block@davispolk.com; cristina.rincon@davispolk.com; 'Perry J. Narancic'
<pjn@lexanalytica.com>
**Cc:** Liana Chen <liana@krinternetlaw.com>; Jeff Rosenfeld <jeff@krinternetlaw.com>; Ruben Peña
<ruben@krinternetlaw.com>; paralegals <paralegals@krinternetlaw.com>
**Subject:** RE: Facebook, Inc., et al. v. OnlineNIC Inc., et al. - Defendant 35.CN's Objections and
Responses to Plaintiffs' First Sets of Requests for Admission and Interrogatories

**<<< EXTERNAL EMAIL >>>**

Hello Steven,

Now that we are past the Chinese holiday, and now that I am back from my conference, I just got
word early this morning that the Chinese government has approved a tranche of documents for
35.CN to provide to our firm, for review and production. We will keep you informed on the timetable
of production, as well as any amendments to written discovery responses as a result of reviewing
these documents.

We respectfully disagree with your characterizations below.

Very best regards,

Karl

---

**From:** Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>
**Sent:** Friday, May 13, 2022 5:55 PM
**To:** Karl Kronenberger <karl@krinternetlaw.com>; Steele, David J. <David.Steele@tuckerellis.com>; Leah Vulic <leah@krinternetlaw.com>; Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Sindelar, Jeffrey C. <Jeffrey.Sindelar@tuckerellis.com>; Guye, Helena M. <Helena.Guye@tuckerellis.com>; ashok.ramani@davispolk.com; micah.block@davispolk.com; cristina.rincon@davispolk.com; 'Perry J. Narancic' <pjn@lexanalytica.com>
**Cc:** Liana Chen <liana@krinternetlaw.com>; Jeff Rosenfeld <jeff@krinternetlaw.com>; Ruben Peña <ruben@krinternetlaw.com>; paralegals <paralegals@krinternetlaw.com>
**Subject:** RE: Facebook, Inc., et al. v. OnlineNIC Inc., et al. - Defendant 35.CN's Objections and Responses to Plaintiffs' First Sets of Requests for Admission and Interrogatories

Hi Karl,

You indicated in your email below that by May 13 you would obtain final confirmation as to whether your client would be able to produce all documents and respond fully to discovery. We are following up as to the status of that confirmation, for it is past the close of business without us having received an update. Also, unless 35.CN is in a position to make a full production today, we believe the parties should prepare a joint stipulation to file with the Court—as you proposed in your March 30, 2022, letter—next week seeking leave for Plaintiffs to file a regularly noticed motion to compel so that the parties may address the issue of how Chinese law impacts 35.CN's discovery obligations. We will provide you a draft stipulation shortly.

We would also like to address the points you raised in your email so Plaintiffs' positions are clear. While you have repeatedly stated that it is your intent to produce documents and that you and your client are not refusing to produce documents, we cannot help but be concerned by your client's delays and meritless objections given the lengthy history of discovery abuses in this case by Defendants, who—as you know—are alter egos of one another. While we are trying to be reasonable, we are also gravely concerned your client is engaging in delay tactics and that a motion to compel is inevitable. As explained during our Zoom meeting, we do not want to delay too long only then to have to explain why we delayed several months before informing the Court of these issues given Defendants' extensive discovery misconduct in this case to date. Moreover, the Court ordered the parties to conduct discovery in mid-January, and we therefore do not think it appropriate to continue to delay without informing the Court of these issues. The bullet points from your email are addressed below in red.

- <span style="color:red">35.CN has not stated that it will not produce documents. In fact, as their counsel, I have advocated for a full production; You keep repeating this; however, your client has also consistently failed to make meaningful document productions. This case has been pending for over thirty months. Your client has been a party for over eight months. We served discovery requests in February, and after we agreed to an extension, you served us with meritless objections and a very limited set of documents on April 1, 2022. To date, a month later, your client still only has produced a handful of unrelated public documents, none of which address the alter ego issues that the Court has now twice stated require further discovery.</span>

- However, as you know, Chinese regulators have explicitly forbade 35.CN from disclosing documents to Facebook, which is a banned company in China; We do not know this. You told us that you think Chinese law is a "distraction" in this case and that Chinese regulators made verbal, "snide" comments to someone at 35.CN saying not to give Facebook any documents because it is a "banned" company. You have not produced any writing from the Chinese government substantiating these claims and have admitted this "probably won't happen." In our letter to you dated April 20, 2022, we directed you to authorities (including authorities you relied on in your letter dated March 30, 2022) explaining that Chinese companies often make misrepresentations about such restrictions to avoid their U.S. litigation obligations and that U.S. Courts hold Chinese parties accountable for failing to meet their discovery obligations. *See, e.g.*, *Wultz v. Bank of China Ltd.,* 942 F. Supp. 2d 452, 468 (S.D.N.Y. 2013) (noting Bank of China's selective disclosure of information to suit its interests while otherwise asserting unsubstantiated claims regarding restrictions imposed by Chinese law). Moreover, it has now been over two weeks since you informed us that you received a significant opinion from 35.CN's Chinese counsel. You indicated that you expected a translation of that opinion soon. Have you received the translation of the opinion yet, and if so, are you planning to share the translation or how it affects the position 35.CN is taking with regard to its discovery obligations?

- Despite the instructions from the Chinese regulator and the fairly recent Chinese law that prohibits disclosure of information like the information Facebook is seeking in its discovery requests, I am personally hopeful that we will be able to develop a workaround to this problem; You have not established that there is any Chinese law prohibiting your client from meeting its discovery obligations. You admit there is no official communication from the Chinese government substantiating your claims and that none is forthcoming. The laws you cite contain only vague definitions as to what type of information is covered. As we have stated, this litigation is proceeding before a United States District Court, and United States law applies. Discovery is governed by the Federal Rules of Civil Procedure, and the Court has now twice ordered the parties to move forward with discovery (after denying 35.CN's motion to dismiss and motion to bifurcate). It was only after the Court denied 35.CN's two motions—both times ordering us to move forward with discovery—that your client suddenly decided to raise these new objections based on purported Chinese legal obligations. While we appreciate that you are personally hopeful you will be able to develop a "workaround" for the legal obligations you simultaneously claim prevent your client from meeting its discovery obligations, until we actually receive all responsive documents, you and your client have not met your discovery obligations in this lawsuit, and we intend to hold you to them. Your client's employees already engaged in mass spoliation of evidence for which the OnlineNIC Defendants now are facing terminating sanctions. Now your client is raising vague, unsubstantiated arguments as to why it cannot fulfil its own discovery obligations. Given the significant delays in this case caused by your client's flouting the authority of U.S. Courts, we cannot help but suspect your client is engaging in further gamesmanship here.

- While we are working through this problem, I have instructed my client to continue with the process of searching and collecting documents that are responsive to Facebook's discovery requests, and, as I stated on the phone, 35.CN has completed most of this searching and collection; We know this is what you have claimed; however, until you actually produce these documents, Plaintiffs are in no better position, and you are not in compliance with the Federal Rules and this Court's express orders.

- I propose that 35.CN begin a rolling production of all of its public documents on May 20 (due to their holiday), with an expected completion date of on or before June 3 (this will supplement the prior productions) This proposal will result in production over three months after your client was served with requests for production, and

based on experience in this lawsuit to date, we are concerned waiting this long will leave us in no better position with discovery than we are now.; and

- I also propose that you give 35.CN until May 13 to obtain final confirmations about whether it can produce all documents and respond fully to discovery, and if it cannot, that we agree to a schedule to brief this matter fully for the Court in a joint discovery letter for a protective order and Facebook's claims to compel. We have given 35.CN until May 13 to obtain final confirmations as to whether it can respond fully to discovery. Unless 35.CN is able to make a full production today, we believe the parties should prepare a joint statement to file with the Court on these issues, seeking leave for further briefing and exhibits, as you proposed in your March 30, 2022, letter. If your client fully meets its discovery obligations (including production of both public and private documents) by June 3, 2022, or before the Court rules on the joint statement or any subsequent briefing, the parties can notify the Court that the issue has been resolved. We appreciate your representations that you hope and intend to comply with your discovery obligations; however, you have not provided us any material support for your position that your client will comply with Court-ordered discovery absent further Court intervention.

We will begin preparing our portion of the joint statement and ask that you do the same, with a goal of filing with the Court by next Friday, May 20. Please let me know if you would like to discuss these matters further.

Best,
Steven

---

**From:** Karl Kronenberger <karl@krinternetlaw.com>
**Sent:** Thursday, April 28, 2022 5:15 PM
**To:** Steele, David J. <David.Steele@tuckerellis.com>; Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>; Leah Vulic <leah@krinternetlaw.com>; Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Sindelar, Jeffrey C. <Jeffrey.Sindelar@tuckerellis.com>; Guye, Helena M. <Helena.Guye@tuckerellis.com>; ashok.ramani@davispolk.com; micah.block@davispolk.com; cristina.rincon@davispolk.com; 'Perry J. Narancic' <pjn@lexanalytica.com>
**Cc:** Liana Chen <liana@krinternetlaw.com>; Jeff Rosenfeld <jeff@krinternetlaw.com>; Ruben Peña <ruben@krinternetlaw.com>; paralegals <paralegals@krinternetlaw.com>
**Subject:** RE: Facebook, Inc., et al. v. OnlineNIC Inc., et al. - Defendant 35.CN's Objections and Responses to Plaintiffs' First Sets of Requests for Admission and Interrogatories

**<<< EXTERNAL EMAIL >>>**

---

Hi Steven and Others,

Just today, I received a significant opinion from 35.CN's Chinese counsel. The opinion was in Chinese, and I immediately sought a translation of the document. Unfortunately, I do not have the translation, but I expect to get it soon. I believe this opinion will be very influential to the position our firm will take in court on our case.

Even though I do not have that English translation yet, I can make the following clarifications:

- 35.CN has not stated that it will not produce documents. In fact, as their counsel, I have advocated for a full production;
- However, as you know, Chinese regulators have explicitly forbade 35.CN from disclosing documents to Facebook, which is a banned company in China;
- Despite the instructions from the Chinese regulator and the fairly recent Chinese law that prohibits disclosure of information like the information Facebook is seeking in its discovery requests, I am personally hopeful that we will be able to develop a workaround to this problem;
- While we are working through this problem, I have instructed my client to continue with the process of searching and collecting documents that are responsive to Facebook's discovery requests, and, as I stated on the phone, 35.CN has completed most of this searching and collection;
- I propose that 35.CN begin a rolling production of all of its public documents on May 20 (due to their holiday), with an expected completion date of on or before June 3 (this will supplement the prior productions); and
- I also propose that you give 35.CN until May 13 to obtain final confirmations about whether it can produce all documents and respond fully to discovery, and if it cannot, that we agree to a schedule to brief this matter fully for the Court in a joint discovery letter for a protective order and Facebook's claims to compel.

I look forward to hearing back from you on our proposal. Also, if my proposal changes due to the legal opinion we recently received, I will let you know right away.

Very best,

Karl

---

**From:** Karl Kronenberger
**Sent:** Friday, April 22, 2022 2:36 PM
**To:** Steele, David J. <David.Steele@tuckerellis.com>; Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>; Leah Vulic <leah@krinternetlaw.com>; Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Sindelar, Jeffrey C. <Jeffrey.Sindelar@tuckerellis.com>; Guye, Helena M. <Helena.Guye@tuckerellis.com>; ashok.ramani@davispolk.com; micah.block@davispolk.com; cristina.rincon@davispolk.com; 'Perry J. Narancic' <pjn@lexanalytica.com>
**Cc:** Liana Chen <liana@krinternetlaw.com>; Jeff Rosenfeld <jeff@krinternetlaw.com>; Ruben Peña <ruben@krinternetlaw.com>; paralegals <paralegals@krinternetlaw.com>
**Subject:** RE: Facebook, Inc., et al. v. OnlineNIC Inc., et al. - Defendant 35.CN's Objections and Responses to Plaintiffs' First Sets of Requests for Admission and Interrogatories

Hi David,

What is your availability on Wednesday, any time after 1:30? I am tied up with depo prep and a deposition Monday and Tuesday. More importantly, we are waiting to hear back from our client regarding a way to produce/respond in a quicker manner, considering Chinese law.

Importantly, we have never stated that our clients would not produce documents or otherwise respond to discovery. The problem is that the new Chinese laws (from late 2021) are causing delays.

Sincerely,

Karl

---

**From:** Steele, David J. <David.Steele@tuckerellis.com>
**Sent:** Friday, April 22, 2022 2:20 PM
**To:** Karl Kronenberger <karl@krinternetlaw.com>; Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>; Leah Vulic <leah@krinternetlaw.com>; Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Sindelar, Jeffrey C. <Jeffrey.Sindelar@tuckerellis.com>; Guye, Helena M. <Helena.Guye@tuckerellis.com>; ashok.ramani@davispolk.com; micah.block@davispolk.com; cristina.rincon@davispolk.com; 'Perry J. Narancic' <pjn@lexanalytica.com>
**Cc:** Liana Chen <liana@krinternetlaw.com>; Jeff Rosenfeld <jeff@krinternetlaw.com>; Ruben Peña <ruben@krinternetlaw.com>; paralegals <paralegals@krinternetlaw.com>
**Subject:** RE: Facebook, Inc., et al. v. OnlineNIC Inc., et al. - Defendant 35.CN's Objections and Responses to Plaintiffs' First Sets of Requests for Admission and Interrogatories

Karl,

We didn't hear back from you yesterday. Please let us know when you can meet with us regarding Plaintiffs' discovery.

**David Steele | Partner | Tucker Ellis LLP**
515 South Flower Street | Forty-Second Floor| Los Angeles, CA 90071
Direct: 213-430-3360
david.steele@tuckerellis.com

This e-mail is sent by the law firm of Tucker Ellis LLP and may contain information that is privileged or confidential. If you are not the intended recipient, please delete the e-mail and notify us immediately by return email.

---

**From:** Karl Kronenberger <karl@krinternetlaw.com>
**Sent:** Wednesday, April 20, 2022 3:41 PM
**To:** Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>; Leah Vulic <leah@krinternetlaw.com>; Steele, David J. <David.Steele@tuckerellis.com>; Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Sindelar, Jeffrey C. <Jeffrey.Sindelar@tuckerellis.com>; Guye,

Helena M. <Helena.Guye@tuckerellis.com>; ashok.ramani@davispolk.com;
micah.block@davispolk.com; cristina.rincon@davispolk.com; 'Perry J. Narancic'
<pjn@lexanalytica.com>
**Cc:** Liana Chen <liana@krinternetlaw.com>; Jeff Rosenfeld <jeff@krinternetlaw.com>; Ruben Peña
<ruben@krinternetlaw.com>; paralegals <paralegals@krinternetlaw.com>
**Subject:** RE: Facebook, Inc., et al. v. OnlineNIC Inc., et al. - Defendant 35.CN's Objections and
Responses to Plaintiffs' First Sets of Requests for Admission and Interrogatories

**<<< EXTERNAL EMAIL >>>**

Hello David,

We expect to get some feedback tomorrow from Chinese counsel, so we will respond to you
tomorrow about scheduling a call.

Very best,

Karl

**From:** Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>
**Sent:** Wednesday, April 20, 2022 2:29 PM
**To:** Karl Kronenberger <karl@krinternetlaw.com>; Leah Vulic <leah@krinternetlaw.com>; Steele,
David J. <David.Steele@tuckerellis.com>; Kroll, Howard A. <Howard.Kroll@tuckerellis.com>;
Sindelar, Jeffrey C. <Jeffrey.Sindelar@tuckerellis.com>; Guye, Helena M.
<Helena.Guye@tuckerellis.com>; ashok.ramani@davispolk.com; micah.block@davispolk.com;
cristina.rincon@davispolk.com; 'Perry J. Narancic' pjn@lexanalytica.com>
**Cc:** Liana Chen <liana@krinternetlaw.com>; Jeff Rosenfeld <jeff@krinternetlaw.com>; Ruben Peña
<ruben@krinternetlaw.com>; paralegals <paralegals@krinternetlaw.com>
**Subject:** RE: Facebook, Inc., et al. v. OnlineNIC Inc., et al. - Defendant 35.CN's Objections and
Responses to Plaintiffs' First Sets of Requests for Admission and Interrogatories

Counsel:

Please see the attached letter sent on behalf of David Steele. As you will see in the letter, we believe
this is a discovery dispute subject to the federal and local rules.

Best regards,

**Steven E. Lauridsen | Attorney | Tucker Ellis LLP**
515 South Flower Street, Forty-Second Floor| Los Angeles, CA 90071
Direct: 213-430-3308 | Fax: 213-430-3409
steven.lauridsen@tuckerellis.com
tuckerellis.com

**From:** Karl Kronenberger <karl@krinternetlaw.com>
**Sent:** Monday, April 18, 2022 4:50 PM
**To:** Leah Vulic <leah@krinternetlaw.com>; Steele, David J. <David.Steele@tuckerellis.com>; Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>; Sindelar, Jeffrey C. <Jeffrey.Sindelar@tuckerellis.com>; Guye, Helena M. <Helena.Guye@tuckerellis.com>; ashok.ramani@davispolk.com; micah.block@davispolk.com; cristina.rincon@davispolk.com; 'Perry J. Narancic' <pjn@lexanalytica.com>
**Cc:** Liana Chen <liana@krinternetlaw.com>; Jeff Rosenfeld <jeff@krinternetlaw.com>; Ruben Peña <ruben@krinternetlaw.com>; paralegals <paralegals@krinternetlaw.com>
**Subject:** RE: Facebook, Inc., et al. v. OnlineNIC Inc., et al. - Defendant 35.CN's Objections and Responses to Plaintiffs' First Sets of Requests for Admission and Interrogatories

**<<< EXTERNAL EMAIL >>>**

Hello Counsel,

We want to follow up on our request to schedule a further CMC, regarding Chinese law and the discovery requests Plaintiffs have propounded. Please let us know. We also think it makes sense to prepare a joint report with a discovery plan under Rule 26(f)(2), including to outline the issues that were raised at, and since, the Rule 26(f) conference.

Will Plaintiffs stipulate to a CMC, and separately will Plaintiffs like to prepare the first draft of the joint report? If you will not stipulate to the CMC, can you let us know your availability for a call to discuss?

Very best,

Karl

**From:** Leah Vulic <leah@krinternetlaw.com>
**Sent:** Monday, April 18, 2022 3:46 PM
**To:** david.steele@tuckerellis.com; howard.kroll@tuckerellis.com; steven.lauridsen@tuckerellis.com; jeffrey.sindelar@tuckerellis.com; helena.guye@tuckerellis.com; ashok.ramani@davispolk.com; micah.block@davispolk.com; cristina.rincon@davispolk.com; 'Perry J. Narancic' <pjn@lexanalytica.com>
**Cc:** Karl Kronenberger <karl@krinternetlaw.com>; Liana Chen <liana@krinternetlaw.com>; Jeff Rosenfeld <jeff@krinternetlaw.com>; Ruben Peña <ruben@krinternetlaw.com>; paralegals <paralegals@krinternetlaw.com>
**Subject:** Facebook, Inc., et al. v. OnlineNIC Inc., et al. - Defendant 35.CN's Objections and Responses to Plaintiffs' First Sets of Requests for Admission and Interrogatories

Dear Counsel,

Attached please find:

1. **DEFENDANT XIAMEN 35.COM TECHNOLOGY CO., LTD.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES;**
2. **DEFENDANT XIAMEN 35.COM TECHNOLOGY CO., LTD.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION; and**
3. **CERTIFICATE OF SERVICE.**

If you have any difficulty accessing the attachments, please do not hesitate to contact me.

Best regards,
Leah

_____

## Leah Vulić

**LAW CLERK**

**KRONENBERGER ROSENFELD, LLP**

150 Post Street, Ste 520 San Francisco, CA 94108
**Phone:** (415) 955-1155 Ext. 121

**leah@krinternetlaw.com**
**www.krinternetlaw.com**



Follow us



NOTICE: This email may contain material that is privileged, confidential, and/or attorney-client work product for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express written permission is strictly prohibited.  If you are not the intended recipient, please contact the sender at the above number and delete all copies.  Inadvertent waiver shall waive no privileges.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein (the foregoing paragraph has been affixed pursuant to U.S. Treasury Regulations governing tax practice).