TUCKER ELLIS LLP
David J. Steele SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:	213.430.3400
Facsimile:	213.430.3409

DAVIS POLK & WARDWELL LLP
Ashok Ramani SBN 200020
ashok.ramani@davispolk.com
Micah G. Block SBN 270712
micah.block@davispolk.com
Cristina M. Rincon (*Pro Hac Vice*)
cristina.rincon@davispolk.com
1600 El Camino Real
Menlo Park, CA 94025
Telephone:	650.752.2000
Facsimile:	650.752.2111

Attorneys for Plaintiffs,
META PLATFORMS, INC. (fka FACEBOOK, INC.) and
INSTAGRAM, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC., et al.,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>ONLINENIC INC., et al.,<br><br>　　　　　　Defendants. | Case No. 3:19-cv-07071-SI<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT XIAMEN 35.COM TECHNOLOGY CO., LTD.'S ADMINISTRATIVE MOTION UNDER LOCAL RULE 7-11 FOR EVIDENTIARY HEARING AND TO AUGMENT THE RECORD FOR THE REPORT AND RECOMMENDATION FOR TERMINATING SANCTIONS AGAINST DEFENDANTS [D.E. 225]**<br><br>**Related Dkt. 229 Motion Hearing:**<br><br>Date: June 17, 2022<br>Time: 10:00 am<br>Courtroom: #1, 17th Fl.<br><br>Hon. Susan Illston |

## I.   INTRODUCTION

The massive, prejudicial, and intentional destruction of relevant evidence by OnlineNIC Inc. ("OnlineNIC") and Domain ID Shield Service Co., Limited ("ID Shield"; collectively, "the OnlineNIC Defendants") forms the basis for the pending Report and Recommendation for terminating sanctions against the OnlineNIC Defendants ("R&R"; Dkt. 225). And there is no dispute that employees of Xiamen 35.com Internet Technology Co., Ltd. ("35.CN") committed the acts of spoliation at issue in the R&R.[1] Having already moved for *de novo* determination of the R&R, 35.CN now raises extraneous and untimely[2] arguments regarding the R&R based on purportedly newly-discovered factual disputes. (Motion For Evidentiary Hearing ("Motion"; Dkt. 238).) But these arguments serve only to distract. They are not relevant to the resolution of the R&R and, in any event, are incorrect. 35.CN's Motion should be **denied**.

## II.  ARGUMENT

35.CN's Motion is yet another improper attempt to inject misleading[3] and irrelevant arguments into 35.CN's objections to the R&R in order to distract the Court from 35.CN's employees' destruction of evidence, while simultaneously obstructing and delaying 35.CN's own discovery based on meritless objections under Chinese law. (*See* Dkt. 236.) The Motion is based entirely on the argument—supported largely through 35.CN's counsel's self-serving declaration—that Plaintiffs have not produced sufficient evidence that ID Shield received adequate notice of harm to trigger liability under Registrar Accreditation Agreement Section 3.7.7.3. (*See* Mot. 1:22–2:10 (mistakenly referring to Section 3.7.7.1).) This argument is an irrelevant distraction for two separate reasons.

---

[1] Based on the OnlineNIC Defendants' admissions to the Second Amended Complaint ("SAC"; Dkt. 109), 35.CN's employees perpetrated the spoliation because neither OnlineNIC Defendant has any employees and all of their "day-to-day operations[,] . . . including all technical support" are performed by 35.CN employees. (SAC ¶¶ 31, 44–46, 50; Answer to SAC (Dkt. 88) ¶¶ 31, 44–46, 50 (admitting); Dkt. 108 at 2:23–24 (ordering Dkt. 88 as the OnlineNIC Defendants' operative responsive pleading to the SAC).)

[2] 35.CN's Motion is procedurally improper and untimely because it was not filed "[a]t the time" 35.CN filed its motion for de novo determination. *See* Civil L.R. 72-3(b). As discussed below, none of 35.CN's arguments are based on new information that justifies ignoring Civil L.R. 72-3.

[3] For example, 35.CN informs the Court that it issued a subpoena to Plaintiffs' authorized representative, Appdetex, for certain documents, to which Appdetex objected and Plaintiffs filed a motion to quash. (Mot. 4:11–13; Kronenberger Decl. (Dkt. 238-1) ¶ 5.) 35.CN neglects to mention that ***it withdrew that subpoena*** contemporaneously with filing its Motion. (Decl. of Steven E. Lauridsen in Support of Opp. to 35.CN's Motion for Evidentiary Hr'g ("Lauridsen Decl.") ¶ 3.)

1

***First***, whether ID Shield received notice is not at issue in the R&R. 35.CN incorrectly asserts the R&R relied on Plaintiffs providing notice to ID Shield for each Infringing Domain Name, including to determine damages. (Mot. 2:18–3:7.)[4] But, in determining the amount of statutory damages, the R&R did not consider whether notice was provided to ID Shield in any of the factors analyzed. (*See* R&R 24:1–28:23.) Defendants understandably wish to avoid repercussions for their discovery misconduct, but terminating sanctions were recommended and are proper based on Defendants' intentional destruction of relevant evidence and lengthy history of cybersquatting and litigation misconduct. (*See* Mar. 1, 2022, Hr'g Tr. 18:14–19 (Dkt. 219) (during terminating sanctions hearing, the Court rejected one of 35.CN's irrelevant arguments because it did not "address the issues we have here, which is, if a defendant wants to fight these interesting legal questions and argue them, they have to play by the rules"); R&R 12:1–8 (noting "OnlineNIC is no stranger to litigation" and "has appeared before this Court three times since 2008")); *Verizon California Inc. v. Onlinenic, Inc.*, No. C 08-2832 JF (RS), 2009 WL 2706393, at *6 (N.D. Cal. Aug. 25, 2009) (noting OnlineNIC was guilty of numerous instances of sanctionable conduct).

***Second***, whether ID Shield received notice relates to only one of Plaintiffs' two independent theories why ID Shield is liable. Regardless of whether ID Shield received notice—and is thus liable under 3.7.7.3—ID Shield is also independently liable under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), for registering the Infringing Domain Names because ID Shield is listed in the WHOIS record as the registrant. In denying 35.CN's Motion to Dismiss, the Court found that Plaintiffs adequately pleaded that ID Shield is the registrant of the Infringing Domain Names; indeed, ID Shield admits it is listed as the registrant for the Infringing Domain Names. (Order Denying 35.CN's Mot. to Dismiss SAC (Dkt. 207) at 9:9–26; *see also* Order Denying 35.CN's Mot. to Bifurcate (Dkt. 226) at 5:10–6:13 & n.5 ("35.CN acknowledges plaintiffs' theory of direct liability based on ID Shield as the registrant of the infringing domain names.").)[5] Ultimately, whether ID Shield received notice of harm or

---

[4] In addition to referencing Plaintiffs' allegations regarding Section 3.7.7.3, the R&R also cites Plaintiffs' allegation that ID Shield is listed as the registrant in the WHOIS directory for each Infringing Domain Name. (R&R 3:4–5.)

[5] 35.CN claims, yet again, without any legal authority, and contrary to the findings of the Court and the R&R, that ID Shield did not register the Infringing Domain Names as the registrant even though it is listed in the public WHOIS records as the registrant. (Mot. 2 n.1; *see* Order Denying Mot. to Bifurcate 6:5–13.)

2

PLAINTIFFS' OPPOSITION TO DEFENDANT XIAMEN 35.COM TECHNOLOGY CO., LTD.'S ADMINISTRATIVE MOTION UNDER LOCAL RULE 7-11 FOR EVIDENTIARY HEARING AND TO AUGMENT THE RECORD
CASE NO. 3:19-cv-07071-SI

registered the Infringing Domain Names is not at issue in the R&R, and as such, 35.CN's Motion raises issues irrelevant to the R&R's disposition. For either of these reasons, this Court should **deny** the Motion.[6]

Beyond the fact that the Motion does not address the determinative issues in the R&R, the three issues raised in the Motion do not warrant an evidentiary hearing. 35.CN raises purported factual disputes regarding Plaintiffs' distinct theory that ID Shield also is liable under Section 3.7.7.3 because ID Shield failed to timely disclose to Plaintiffs the current contact information and identities of its customers after being provided reasonable evidence of actionable harm. (*See* SAC ¶¶ 71–75 & Ex. 4.) Specifically, 35.CN seeks an evidentiary hearing because: (1) 35.CN recently discovered that Appdetex "mistakenly" sent notices to third parties instead of to ID Shield (Mot. 1:14, 3:16–4:4); (2) OnlineNIC (as opposed to ID Shield, to whom notice was provided) contacted Appdetex seeking confirmation that Appdetex was authorized to act on behalf of Plaintiffs, but Appdetex never responded (Mot. 4:5–13); and (3) Plaintiffs never provided ID Shield reasonable evidence of harm regarding ten of the Infringing Domain Names added to the case after the original Complaint was filed (Mot. 4:14–20). 35.CN is wrong on each point.

**First, Plaintiffs do not rely on notice provided to *third parties* as a basis for ID Shield's liability under Section 3.7.7.3.** Rather, liability attaches to ID Shield because Plaintiffs provided ID Shield reasonable evidence of harm for the Infringing Domain Names, and ID Shield failed to timely disclose the current contact information and identities of its customers, as explained below. While 35.CN is correct that Appdetex provided notice to third parties, this was not by mistake. Notice was provided to third parties *in addition* to ID Shield for certain Infringing Domain Names.[7]

**Second, *ID Shield* cannot escape its agreement to accept liability for harm under Section 3.7.7.3 based on *OnlineNIC's* purported responses seeking proof of authorization from Appdetex.** 35.CN complains it was unable to obtain documents to determine whether Appdetex ever responded to OnlineNIC's verification requests. (*See* Mot. 4:7–13.) But whether *OnlineNIC*—the registrar—sought

---

[6] Moreover, prior resolution of the case on the merits is not a prerequisite to the Court entering terminating sanctions for discovery misconduct under Fed. R. Civ. P. 37.

[7] The notice to third parties was produced in response to the OnlineNIC Defendants' request for all documents to or from Appdetex related to any of the Infringing Domain Names added to the case after the original Complaint. (Lauridsen Decl. ¶ 4.)

3
PLAINTIFFS' OPPOSITION TO DEFENDANT XIAMEN 35.COM TECHNOLOGY CO., LTD.'S ADMINISTRATIVE MOTION UNDER LOCAL RULE 7-11 FOR EVIDENTIARY HEARING AND TO AUGMENT THE RECORD
CASE NO. 3:19-cv-07071-SI

confirmation that Appdetex was authorized to act on behalf of Plaintiffs is irrelevant to *ID Shield's* liability. Plaintiffs' Section 3.7.7.3 liability theory is based on the failure of ID Shield—the registrant—to disclose the identities and contact information of its customers within seven days of Plaintiffs providing notice of actionable harm. Furthermore, this issue regarding OnlineNIC's purported responses is not a newly-discovered factual dispute excusing 35.CN's untimely request for an evidentiary hearing. 35.CN has been aware of this issue for over six months, and Defendants have raised this exact issue repeatedly, including in 35.CN's Motion for De Novo Review and Reply.[8] Finally, 35.CN's argument that OnlineNIC never received verification that Appdetex was authorized to act on behalf of Plaintiffs is false. OnlineNIC previously received written confirmation that Appdetex was authorized to act on Plaintiffs' behalf.[9] (Lauridsen Decl. ¶ 5.) 35.CN cannot claim it does not have access to these authorizations, as its employees perform all of the OnlineNIC Defendants' day to day operations, including all technical support. *See supra* note 1. And 35.CN's acknowledgement that Appdetex sent thousands of similar notices to numerous registrars (Mot. 2:14–17; Kronenberger Decl. ¶ 7 & Ex. D[10]) undermines 35.CN's argument that Appdetex

---

[8] (*See* OnlineNIC Defendants' Opp. to Mot. to Strike Answer and for Default J. (Dkt. 202) at 7:16–8:22 (Nov. 23, 2021); Freeman Decl. Ex. A (Dkt. 202-1) (Nov. 23, 2021) (OnlineNIC's purported response emails); 35.CN's Mot. for De Novo Determination (Dkt. 228) at 2 n.2 (arguing "records indicate that Facebook did not respond to replies to certain notices") (Apr. 11, 2022); Kronenberger Decl. in Support of Mot. for De Novo Determination & Ex. A. (Dkt. 228-1) (arguing "OnlineNIC responded multiple times to try to verify this unknown third party purportedly acting on behalf of Facebook, with no known response to confirm the legitimacy of the same" and attaching OnlineNIC's purported response emails) (Apr. 11, 2022).) While 35.CN argues it only received reproductions of documents on April 12, 2022—a day *after* it filed its Motion for De Novo Review (Mot. 3:16–4:4, 5:7–11)—this was well *before* it filed its Reply in Support of Motion for De Novo Review on May 2, 2022. (Dkt. 232.) In fact, 35.CN specifically raised OnlineNIC's purported response emails in its Reply (Dkt. 232-1 ¶ 2 & Ex. A (attaching purported response emails)) and suggested these documents were new to 35.CN, despite attaching the same documents a month earlier in its Motion for De Novo Review (Dkt. 228-1 ¶ 3 & Ex. A).

[9] Had 35.CN properly met and conferred on this issue, it would have learned that on July 25, 2018—well before OnlineNIC's purported requests for proof of authorization—Appdetex sent OnlineNIC a Letter of Authority confirming Appdetex's authorization to represent Facebook's interests in protecting and enforcing Facebook's intellectual property assets through January 9, 2023. This letter and the email transmitting it to OnlineNIC were produced by the OnlineNIC Defendants in July 2020 as documents bearing Bates Nos. ONLINENIC 193608 to ONLINENIC 193610. (Lauridsen Decl. ¶ 5.)

[10] Kronenberger Decl. Exhibit D includes a letter from ICANN's President and CEO to Appdetex's General Counsel acknowledging that (1) Appdetex had indicated registrars had only adequately responded to 3% of WHOIS requests, (2) Appdetex had requested that ICANN develop a uniform process for registrars to respond to such requests, and (3) ICANN was in support of Appdetex's efforts to work with

4

PLAINTIFFS' OPPOSITION TO DEFENDANT XIAMEN 35.COM TECHNOLOGY CO., LTD.'S ADMINISTRATIVE MOTION UNDER LOCAL RULE 7-11 FOR EVIDENTIARY HEARING AND TO AUGMENT THE RECORD
CASE NO. 3:19-cv-07071-SI

was not commonly known to registrars like OnlineNIC as Plaintiffs' authorized representative (*see, e.g.*, Kronenberger Decl. Ex. D (Dkt. 238-1) at 27–28 (Ltr. from Blacknight Solutions acknowledging Appdetex has legitimate interest in requesting WHOIS data on behalf of Facebook)).

**Third, 35.CN's argument that Plaintiffs did not adequately provide notice for all Infringing Domain Names is incorrect, premature, and irrelevant to resolving the R&R.** 35.CN's Motion argues no notice was provided for ten Infringing Domain Names. 35.CN is mistaken. (Lauridsen Decl. ¶ 6.) Plaintiffs did provide notice for these ten Infringing Domain Names, in most cases through ID Shield's counsel (rather than having Appdetex send notice to ID Shield) because the parties were involved in litigation and ID Shield was represented by counsel. (Lauridsen Decl. ¶ 6.) Had 35.CN conducted a meet and confer on this issue, waited for Plaintiffs' forthcoming June 7 document production, or simply asked ID Shield's counsel, it would have learned that Plaintiffs provided notice to ID Shield's counsel and that Defendants' prior discovery requests never sought this information.[11] Instead, 35.CN prematurely filed its Motion, wasting the time and resources of Plaintiffs and this Court.

### III.   CONCLUSION

35.CN's Motion should be denied. Whether Plaintiffs properly provided notice to ID Shield under Section 3.7.7.3 is irrelevant to the pending R&R for terminating sanctions, and Plaintiffs are not required to prove their case on the merits before the Court may issue terminating sanctions for spoliation of evidence. 35.CN's arguments regarding notice under Section 3.7.7.3 are also unrelated to ID Shield's direct liability under the ACPA. Furthermore, even if any of 35.CN's premises were accurate, notice *was* properly sent to ID Shield or its counsel for each of the Infringing Domain Names, and ID Shield failed to timely respond with customers' identity and contact information. 35.CN's Motion should be **denied**.

---

registrars "to develop a common approach to the submission and handling of requests for non-public registration data." (Dkt. 238-1 at 25–26.)

[11] Instead, Defendants' prior discovery requests focused on notice provided *by Appdetex* for these additional domain names. Because notice was provided by Plaintiffs' counsel, and not Appdetex, this information was not previously produced to Defendants through formal discovery, but will be produced on June 7 in response to 35.CN's pending discovery requests. (Lauridsen Decl. ¶ 7.)

| | | |
|---|---|---|
| DATED: May 31, 2022 | | Tucker Ellis LLP |
| | | By: /s/David J. Steele |
| | | David J. Steele |
| | | Howard A. Kroll |
| | | Steven E. Lauridsen |
| | | |
| | | Davis Polk & Wardwell, LLP |
| | | Ashok Ramani |
| | | Micah G. Block |
| | | Cristina M. Rincon |
| | | |
| | | Attorneys for Plaintiffs, |
| | | META PLATFORMS, INC. (fka |
| | | FACEBOOK, INC.) and INSTAGRAM, LLC |

6

PLAINTIFFS' OPPOSITION TO DEFENDANT XIAMEN 35.COM TECHNOLOGY CO., LTD.'S ADMINISTRATIVE MOTION UNDER LOCAL RULE 7-11 FOR EVIDENTIARY HEARING AND TO AUGMENT THE RECORD
CASE NO. 3:19-cv-07071-SI