**Tucker Ellis** LLP

515 South Flower Street, Forty Second Floor | Los Angeles, CA 90071-2223 | TEL 213.430.3400 | FAX 213.430.3409

June 29, 2022

**VIA CM/ECF**

Magistrate Judge Alex G. Tse, U.S. District Court, Northern District of California

Re: *Facebook Inc. et al. v. OnlineNIC Inc., et al.*, No. 3:19-cv-07071-SI (AGT)

Dear Magistrate Judge Tse:

  Pursuant to the Court's June 1, 2022 discovery referral order (ECF No. 243), Plaintiffs and Defendant Xiamen 35.com Internet Technology Co., Ltd. ("35.CN") submit this joint letter briefing their dispute concerning whether Chinese law prohibits 35.CN from responding to Plaintiffs' discovery requests and *e.g.*, instead requires discovery to take place pursuant to the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, *opened for signature* Mar. 18, 1970, 23 U.S.T. 2555, 847 U.N.T.S. 231 ("Hague Evidence Convention"). The parties met and conferred via videoconference on April 27 and June 2, 2022. Copies of the requests and responses at issue are attached as Exhibits 1-9. Plaintiffs (Exhibit 10) and 35.CN (Exhibit 11) each also submit a written opinion from a Chinese lawyer on the relevant Chinese laws.

  **Plaintiffs' Position and Final Proposed Compromise**

  Plaintiffs propose that 35.CN respond fully to discovery and produce all documents. 35.CN was added as a party because 35.CN supplies the resources and personnel to operate Defendants OnlineNIC Inc. and Domain ID Shield Service Co. Limited (the "OnlineNIC Defendants"), thus subjecting 35.CN to alter ego and direct participant liability for the OnlineNIC Defendants' conduct. The Court already found that Plaintiffs had raised "serious questions" regarding this alter ego relationship and ordered the parties to conduct discovery on both alter ego and personal jurisdiction. ECF No. 207 at 8-9. Plaintiffs propounded discovery on these issues on February 16, 2022. Over four months later, 35.CN still refuses to respond fully, incorrectly asserting Chinese law prohibits it from doing so. 35.CN has failed to respond substantively to any written requests, has produced only eighteen mostly publicly-available documents, and proposes further delays without committing to meaningful document productions. 35.CN is continuing the pattern of discovery abuses its alter egos began. (ECF No. 225.)

  "When a conflict exists between the discovery authorized under the Federal Rules of Civil Procedure and sovereign interests implicated by such discovery, a court may direct parties to conduct discovery under the Hague [Evidence] Convention . . . ." *Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL 1928184, at *1 (N.D. Cal. Mar. 27, 2015); *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987). "[T]he determination of whether to require the application of the Hague Convention procedures involves a two-step inquiry." *Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*, No. 17-cv-02191-SK, 2019 WL 6134958, at *1 (N.D. Cal. Nov. 19, 2019). "First, Defendant [35.CN] must prove that Chinese law bars it from producing the discovery that Plaintiff seeks." *Id.* "Second, Defendant must demonstrate that the particular facts of this case, including the sovereign interests at stake, warrant . . . requiring the application of the Hague Convention." *Id.*

  35.CN argues that several Chinese laws bar it from producing documents and responding to interrogatories and requests for admission, including Article 283 (formerly Article 277) of the Chinese Civil Procedure Law, the Chinese Data Security Law ("DSL"), the Cybersecurity Law, and the Personal Information Protection Law ("PIPL"). As an initial matter, 35.CN's counsel has stated that, despite their

best efforts, they have been unable to procure a writing from any Chinese authority stating that these laws prohibit 35.CN from engaging in discovery in this action and responding to Plaintiffs' requests. This is telling, for litigants in 35.CN's position typically meet their burden on this first step of the analysis by providing a writing from the relevant Chinese authorities. *See, e.g.*, *Inventus Power v. Shenzhen Ace Battery*, 339 F.R.D. 487, 499 (N.D. Ill. 2021); *Sun Grp.*, 2019 WL 6134958, at *6.

Apart from 35.CN's inability to procure written guidance from the Chinese government, 35.CN cannot otherwise carry its burden to show that any of the Chinese laws at issue prohibit it from responding to discovery in this action. None of the cited laws provides a wholesale prohibition against responding to discovery. For instance, one court recently found no evidence that Article 283 "has ever been enforced against discovery activities relating to U.S. litigation." *Inventus*, 339 F.R.D. at 504. The DLS and PIPL, which took effect in late 2021, have no clear implementing regulations or any judicial interpretation as to what data fall within the laws' purview, which specific Chinese authorities would approve a data transfer request, or what procedure governs such approval. Even taken in conjunction with the Cybersecurity Law 35.CN cites, 35.CN has made no showing that the requested discovery seeks "important" or "core" data (as defined by those laws) that jeopardizes national security or the public interest such that government approval is even required. Given this uncertainty, and as explained by Plaintiffs' legal expert on Chinese law, 35.CN cannot carry its burden to show that responding to discovery would—as opposed to may—violate Chinese law.

Even if Chinese law did bar 35.CN from responding to discovery in this action, "the Court must [then] turn to the second step of the analysis to balance the interests of the United States and those of the foreign state." *Id.* at 502. For this second step of the analysis, the Supreme Court has set forth the following balancing test to determine whether a party has carried its burden to show the Hague Evidence Convention should apply: "[1] the importance to the investigation or litigation of the documents or other information requested; [2] the degree of specificity of the request; [3] whether the information originated in the United States; [4] the availability of alternative means of securing the information; and [5] the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992). In the Ninth Circuit, courts also consider any hardship to the responding party. *Id.*

**Factors 1-2:** "Where the evidence is directly relevant, . . . this factor [] weigh[s] in favor of disclosure." *Id.* Plaintiffs' discovery requests target issues the Court has already found relevant and for which the Court has already ordered discovery to commence. ECF No. 207 at 8–9; ECF No. 226 at 6. Only these issues—alter ego/direct participant and personal jurisdiction—currently face 35.CN in this litigation, and they are the only subjects on which Plaintiffs have sought discovery from 35.CN. *See Inventus*, 339 F.R.D. at 501 (factors weighed in favor of disclosure when "discovery is limited to the facts pertinent to . . . the threshold issue which determines whether this case will continue").

**Factor 3:** 35.CN's counsel has admitted that at least some of the evidence is located in the U.S. (including those provided to counsel), is in the possession of California-based OnlineNIC (including on its U.S. computer servers), or may be publicly available. China has no interest in such documents.

**Factor 4:** "[I]f Plaintiff is not actually able to obtain documents necessary to litigate its claims [through the Hague Evidence Convention], then this factor would shift towards favor of disclosure through the Federal Rules of Civil Procedure." *Sun Grp.*, 2019 WL 6134958, at *3. In fact, "if the information cannot be easily obtained through alternative means, this factor is said to counterbalance the

previous factor – the location of the documents and information – and weighs in favor of disclosure." *Milliken & Co. v. Bank of China*, 758 F. Supp. 2d 238, 246 (S.D.N.Y. 2010). "With respect to China specifically, many courts have found that the Hague Convention would not be a viable alternative in light of China's prior tendency to deny the full scope of requested discovery and the undue delay that would result from resorting to the Hague procedures." *Inventus*, 339 F.R.D. at 503 (collecting cases).

**Factor 5:** Courts consider the fifth factor, the balancing of national interests, the most important. *Richmark*, 959 F.2d at 1476. Courts "must assess the interests of each nation in requiring or prohibiting disclosure, and determine whether disclosure would 'affect important substantive policies or interests' of either the United States or the PRC." *Id.* The U.S. has a "substantial" interest in "vindicating the rights of American plaintiffs," *id.* at 1477, and an "overriding interest in the just, speedy, and inexpensive determination of litigation in [its] courts." *Aerospatiale*, 482 U.S. at 542-43. Further, "it has been repeatedly recognized that the United States has an obvious interest in having its own procedural rules applied to discovery." *Tansey v. Cochlear Ltd.*, No. 13-CV-4628F, 2014 WL 4676588, at *4 (E.D.N.Y. Sept. 18, 2014). This is especially true where "the evidence at issue is vital to the litigation." *Id.* To date, 35.CN has failed to identify any specific information it allegedly cannot disclose per Chinese law, nor any particular sovereign interests apart from vague citations to various Chinese laws. This lies in stark contrast to the "significant" national interests advanced by this litigation—namely, protecting Plaintiffs' trademark rights, including in furtherance of online security and safety. *See, e.g.*, *Inventus*, 339 F.R.D. at 504; *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 339 (S.D.N.Y. 2018), *aff'd*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018); *Motorola Solutions, Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 913, 930 (N.D. Ill. 2019).

Finally, other courts have examined at least two of the Chinese laws at issue here—namely, Article 283 and the DSL—and have found that the U.S. has a strong interest in not limiting discovery based on those laws. *See, e.g.*, *Philips Medical Sys. (Cleveland), Inc. v. Baun*, No. 19-cv-2648, 2022 WL 602485, at *6 (N.D. Ill. Mar. 1, 2022); *Inventus*, 339 F.R.D. at 504; *Sun Grp.*, 2019 WL 6134958, at *4.

**Factor 6:** "Finally, the Court considers the hardship to Defendant if required to provide responses to Plaintiff[s'] discovery requests." *Sun Grp.*, 2019 WL 6134958, at *4. It is not enough under this factor for a party to "argue[] that it has no discretion to violate Chinese law . . . but . . . not state what consequences it would suffer." *Id.* Thus, this factor at best can only weigh slightly in favor of utilizing Hague Evidence Convention procedures "[i]n light of the absence of any threat of criminal sanctions and the lack of evidence of any history of civil penalties . . . ." *Id.* 35.CN has provided no concrete evidence—or even a written threat—of civil or criminal penalties it allegedly will incur if it responds to discovery.

Simply put, 35.CN has failed to carry its burden for either step of the analysis, has not proposed a timely, meaningful solution, and should be ordered to respond fully to Plaintiffs' discovery requests.

### 35.CN's Position and Final Proposed Compromise

35.CN proposes that an order on Plaintiffs' motion to compel be denied or postponed pending ongoing productions/responses. Alternatively, 35.CN proposes a protective order to prohibit or narrow requests. Having questionable causes of action against 35.CN, Plaintiffs are trying to win on aggressive discovery tactics prior to narrowing their overbroad discovery to 35.CN, a foreign company. Plaintiffs—banned in China [D.E. 189-1, ¶26] and subject to a record-breaking $5 billion FTC penalty for privacy violations—are insensitive to Chinese culture and seek to circumvent data security and privacy laws.

**Relevant facts:** After extensive discovery with the OnlineNIC Defendants in the US (some of which was found overbroad, *see* D.E. 81 at 2:3), Plaintiffs added 35.CN, a public company in China, as a claimed alter ego. Plaintiffs served on 35.CN hundreds of discovery requests (118 RFAs, 18 ROGs,

and 147 RFPs). Many of these requests are overbroad and/or seek information about, and that has been or could be obtained from, the OnlineNIC Defendants. Examples of Plaintiffs' requests include:
- DOCUMENTS relating to trademarks or service marks applied for or registered by 35.CN.
- DOCUMENTS relating to agreements or contracts between ICANN and 35.CN.
- Communications between ICANN and 35.CN since 2002.
- DOCUMENTS relating to any prior actions or complaints concerning cybersquatting filed against or by ONLINENIC [ . . . ] since 2007.
- All contracts entered into by 35.CN with a corporation of any state in the United States.
- Communications between CARRIE YU and any PERSON regarding ONLINENIC.

As outlined by 35.CN's Chinese counsel, 35.CN has provided potentially responsive documents to Chinese government regulators and is legally prohibited from producing non-public records in China to Plaintiffs without government approval. Nonetheless, 35.CN served objections and responses to all discovery requests and made 4 document productions totaling hundreds of pages, including records in Chinese. Additionally, there are about 1,743 additional public Chinese records that likely contain responsive material and are being reviewed with Chinese counsel for production. Also, on June 7, 2022, Plaintiffs produced thousands of records, including documents that were previously produced by the OnlineNIC Defendants, which are being reviewed and may also be responsive to Plaintiffs' requests. 35.CN further served supplemental written discovery responses in June 2022. 35.CN has not participated in any case management conference and asked if Plaintiffs would stipulate to participating in one.

**Plaintiffs' motion to compel is premature.** 35.CN has not completed its document productions and is supplementing discovery responses; and based on the responses and productions already provided, many requests are not at issue as there are no responsive records; and the OnlineNIC Defendants have already responded to Plaintiffs on similar requests. *Compare Inventus*, 339 F.R.D. at 495-96. Further, 35.CN needs time to (1) work with Chinese regulators on approval for any responsive non-public records, (2) review and produce remaining public records, and (3) confer with Plaintiffs about any outstanding issues. 35.CN proposes further document productions by July 15, 2022 and providing a privilege-log-type chart outlining documents being withheld by August 30, 2022 (with the description, parties/recipients, date, basis for withholding including Chinese laws, and any other US source). Notably, Plaintiffs' letter (Ex. 9, p.6) outlines required steps to comply with the law, all of which 35.CN has done.

**Further, under Plaintiffs' two-step analysis, an order to compel discovery is not warranted.** First, similar to *Inventus* (relied on by Plaintiffs), Chinese law bars Plaintiffs' motion to compel, including under Article 283 (formerly Article 277) of the Chinese Civil Procedure Law, the DSL, Cybersecurity Law, and the PIPL. The Cyberspace Administration of China ("CAC") has reminded 35.CN to comply with Chinese laws (i.e., to not disclose records that are not public); and Exhibit 7 outlines the requirements and severe penalties (i.e., criminal sanctions, jail, and high monetary fines).

Second, even under Plaintiffs' proposed test, 35.CN has demonstrated that the particular facts, including the sovereign interests at stake, warrant application of the Hague Convention and Chinese data security and privacy requirements, which are consistent with other countries' cross-border transfer laws.

**Factor 1:** Here, much of the discovery is neither relevant nor "vital" to the litigation, including to the initial phase of jurisdictional discovery. *Compare Inventus*, 339 F.R.D. at 501 (three topics). Based on the productions and supplemental responses, none of the outstanding requests are "vital."

**Factor 2:** The lack of specificity weighs in favor of 35.CN. Plaintiffs do not even address this as

a standalone factor, and there is minimal specificity with hundreds of requests. The requests are also highly intrusive to a Chinese company and Chinese individuals. *Compare id.* at 502; *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, No. MDL 2875 (RBK), 2021 WL 6010575, at *15 (D.N.J. Dec. 20, 2021) (aided by the magistrate judge, the parties "negotiated extensively the RFPs both in terms of their language and specificity" two years prior such that there were only 20 documents at issue).

**Factor 3:** The location of records at issue are in China, which weighs in favor of 35.CN. *See Inventus*, 339 F.R.D. at 502. Contrary to Plaintiffs' claims, documents in the U.S. and public records are being produced (with hundreds of pages produced and over 1,700 public records being reviewed). This is in addition to massive documents produced by the OnlineNIC Defendants to Plaintiffs, which Plaintiffs have only very recently provided to 35.CN for review (many of these likely overlap with these issues).

**Factor 4:** As outlined by *Inventus, id.*, "if the information sought can easily be obtained elsewhere, there is little or no reason to require a party to violate foreign law." As stated, many of the requests can be satisfied by making requests to the OnlineNIC Defendants, or to third parties, in the US (to the extent Plaintiffs are not already in the possession of responsive material from prior discovery).

**Factor 5:** Courts consider the balancing of national interests the most important as it directly addresses the relations between sovereign nations. *Id.* at 504 (noting China has a significant national interest in ensuring that its citizens abide by its laws). Here, Plaintiffs would have the Court completely overlook Chinese legislation, data privacy and security concerns (above the issues considered in *Inventus*), and international comity, which is especially important given the circumstances with Plaintiffs (banned in China and history of privacy/security violations). Stepping back, Plaintiffs are suing for 35 domain names registered by third parties years ago (with the OnlineNIC Defendants acting as the registrar and privacy service, and with 35.CN as a tangential alleged alter ego in China). Unlike the reasons in *e.g., Inventus* for seeking data abroad, Plaintiffs can get most of the records at issue from US parties; and there is indication that Plaintiffs' request for Chinese data (and private WHOIS data) is simply another attempt to undercut privacy legislation prohibiting Meta/Facebook from obtaining that information.

**Factor 6:** Finally, the hardship to Defendant, including potential consequences under Chinese laws, is severe and weighs in favor of 35.CN. This factor also relates to a seventh factor considered by some courts, which is the good faith of the party resisting discovery. *See In re Valsartan*, 2021 WL 6010575, at *12. Here, 35.CN is diligently following Chinese counsel advice on Chinese laws.

**Plaintiffs' requests are unwarranted even under the Federal Rules.** Under Rule 26, requests may obtain non-privileged material subject to proportionality; and a protective order may be issued for good cause and to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Here, some requests seek privileged information; and many requests are unduly burdensome, oppressive, and not proportional. Thus, Plaintiffs' motion to compel should be denied under the Federal Rules; and alternatively a protective order (e.g., to <u>limit the requests at issue</u>) is warranted, given Plaintiffs' extremely expansive discovery and 35.CN's responses to virtually all discovery requests, document productions, and efforts to comply with legal obligations. There is lack of prejudice to Plaintiffs as they have already obtained expansive discovery with the OnlineNIC Defendants (<u>multiple sets and *hundreds* of RFPs, RFAs, and ROGs</u>) and only this month responded to written discovery from 35.CN. Plaintiffs have made this an extremely expensive litigation to try to avoid a decision on the merits, but their aggressive discovery tactics are premature and unwarranted under Chinese and U.S. laws.

**For these reasons, 35.CN requests denial of Plaintiffs' requests or at least postponement** so 35.CN can continue to review and produce documents and the parties can narrow the relevant discovery.

TUCKER ELLIS LLP
By: /s/David J. Steele

David J. Steele
Attorneys for Plaintiffs,
META PLATFORMS, INC. (fka FACEBOOK, INC.) and INSTAGRAM, LLC

KRONENBERGER ROSENFELD, LLP
By: /s/Karl S. Kronenberger

Karl S. Kronenberger
Attorneys for Defendant
XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD.