```
                                    PAGES 1 - 17

              UNITED STATES DISTRICT COURT

             NORTHERN DISTRICT OF CALIFORNIA

          BEFORE THE HONORABLE SUSAN ILLSTON

FACEBOOK INC., ET AL.,         )
                               )
            PLAINTIFFS,        )
                               )
  VS.                          ) CASE NO. 19-CV-7071 SI
                               )
ONLINENIC, ET AL.,             )
                               ) SAN FRANCISCO, CALIFORNIA
            DEFENDANTS.        ) VIA ZOOM VIDEOCONFERENCE
                               ) FRIDAY, JUNE 17, 2022
_____)
```

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

| | |
|---|---|
| **FOR PLAINTIFF** | TUCKER ELLIS LLP<br>515 SOUTH FLOWER STREET, 42ND FLOOR<br>LOS ANGELES, CALIFORNIA 90071<br>**BY: HOWARD A. KROLL, ESQUIRE**<br>**DAVID J. STEELE, ESQUIRE** |
| **FOR DEFENDANT XIAMEN** | KRONENBERGER ROSENFELD, LLP<br>150 POST STREET, SUITE 520<br>SAN FRANCISCO, CALIFORNIA 94108<br>**BY: KARL KRONENBERGER, ESQUIRE** |
| **FOR DEFENDANT ONLINENIC DOMAIN ID SHIELD** | LEXANALYTICA, PC<br>2225 E. BAYSHORE ROAD, SUITE 200<br>PALO ALTO, CALIFORNIA 94303<br>**BY: PERRY J. NARANCIC, ESQUIRE** |

*REPORTED BY: JOAN MARIE COLUMBINI, CSR #5435, RPR*
*PRO TEM OFFICIAL COURT REPORTER, USDC*

```
 1   FRIDAY, JUNE 17, 2022                              10:38 A.M.
 2
 3           THE CLERK:  NOW CALLING CASE NO. 19-CV-7071,
 4   FACEBOOK, INCORPORATED, ET AL. VERSUS ONLINENIC, INCORPORATED,
 5   ET AL.  COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE RECORD.
 6           MR. KROLL:  GOOD MORNING, YOUR HONOR.  HOWARD KROLL
 7   AND DAVID STEELE WITH TUCKER ELLIS ON BEHALF OF THE PLAINTIFFS.
 8           THE COURT:  GOOD MORNING.
 9           MR. NARANCIC:  GOOD MORNING, YOUR HONOR.  PERRY
10   NARANCIC FOR DEFENDANTS ONLINENIC AND DOMAIN ID SHIELD.
11           MR. KRONENBERGER:  GOOD MORNING.  KARL KRONENBERGER
12   FOR DEFENDANT XIAMEN 35.CN.
13           THE COURT:  OKAY.  WAIT A -- MR. KRONENBERGER OR
14   MR. NARANCIC -- WHERE ARE YOU?  YOU REPRESENT WHO NOW?
15           MR. NARANCIC:  ONLINENIC AND DOMAIN ID SHIELD.
16           THE COURT:  OKAY.  WHO'S HERE FOR 35 -- XIAMEN 35?
17           MR. KRONENBERGER:  I AM, YOUR HONOR.  AND THE FULL
18   NAME IS XIAMEN 35.CN INTERNET TECHNOLOGY.  WE JUST CALL IT
19   35.CN FOR SHORT.
20           THE COURT:  35.CN.  OKAY.  AND SO THAT'S
21   MR. KRONENBERGER.  OKAY.
22           WE HAVE ON DEFENDANTS', PLURAL, MOTION, FOR DE NOVO
23   DETERMINATION OF JUDGE VAN KEULEN'S R & R.  WE HAVE 35 -- WHAT
24   DID WE CALL IT?  35 WHAT?
25           MR. KRONENBERGER:  35.CN.
```

1        **THE COURT:** 35.CN'S MOTION FOR AN EVIDENTIARY

2   HEARING, AND 35.CN'S NOTICE OF PENDENCY OF OTHER ACTION.

3        WITH RESPECT TO THAT FINAL THING, DID THE OTHER

4   ACTION GET DISMISSED?

5        **MR. KRONENBERGER:** YOUR HONOR, IF YOU'RE TALKING

6   ABOUT THE ACTION IN IDAHO, THAT HAS BEEN DISMISSED.

7        **THE COURT:** SO THAT MOTION IS MOOT?

8        **MR. KRONENBERGER:** YES, YOUR HONOR.  I'M NOT SURE IF

9   IT WAS A MOTION.  I BELIEVE IT WAS A NOTICE.

10       **THE COURT:** NOTICE OF PENDENCY, BUT I DON'T HAVE TO

11  DEAL WITH THAT, RIGHT?

12       **MR. KRONENBERGER:** YOU DO NOT, YOUR HONOR.

13       **THE COURT:** ALL RIGHT.  WELL, WITH RESPECT TO THE

14  FIRST MOTION, WHICH IS ON BEHALF OF ALL DEFENDANTS, FOR DE NOVO

15  DETERMINATION OF THE MAGISTRATE R & R, I WOULD FIRST NOTE THAT

16  THE FIRST TWO DEFENDANTS, ONLINENIC AND ID SHIELD, FILED A

17  SPECIFIC STATEMENT OF NON-OPPOSITION TO THE SPECIAL MASTER'S

18  REPORT AND FINDINGS, AND, IN MY VIEW, THEY HAVE WAIVED THEIR

19  RIGHT TO CHALLENGE THE SPECIAL MASTER'S REPORT AND FINDINGS.

20  SO THAT'S POINT ONE.

21       WITH RESPECT TO THE -- I GUESS IT WOULD BE 35.CN'S

22  MOTION TO REVIEW IT, I -- I HAVE REVIEWED JUDGE VAN KEULEN'S

23  REPORT AND RECOMMENDATION BASED UPON THE SPECIAL MASTER'S

24  REPORT, AND I'M OVERRULING THE OBJECTIONS TO IT.  I FIND THAT

25  IT'S WELL-FOUNDED AND THOUGHTFUL AND PROPERLY RESOLVED.

1            I SEE NO NEED FOR AN EVIDENTIARY HEARING.

2            THE ONE THING I DID WANT TO DISCUSS WITH ALL OF YOU

3    AND IN PARTICULAR WITH, I GUESS, MR. KROLL IS THE QUESTION OF,

4    IF I AGREE WITH JUDGE VAN KEULEN, WITH HER SUGGESTION THAT THE

5    ANSWERS BE STRICKEN AND DEFAULT BE ENTERED, DO I NEED TO ENTER

6    A DEFAULT JUDGMENT AS WELL, OR CAN THAT BE POSTPONED UNTIL WE

7    COMPLETE PROCEEDINGS WITH RESPECT TO THE THIRD DEFENDANT?

8            **MR. KROLL:**  THANK YOU, YOUR HONOR.  I'LL ADDRESS THAT

9    POINT.

10           THIS CASE HAS BEEN GOING ON SINCE OCTOBER OF 2019.

11   THE SPECIAL MASTER HAS ISSUED HIS REPORT IN JULY OF 2021.

12   JUDGE VAN KEULEN ADOPTED THE SPECIAL MASTER'S REPORT IN AUGUST

13   OF 2021.  WE'RE NOW ALMOST A YEAR LATER.

14           THE REASON THAT PLAINTIFFS REQUEST A FINAL JUDGMENT

15   ENTERED AT THIS TIME IS FOR TWO REASONS.  ONE, THIS CASE HAS

16   BEEN GOING ON FOR A LONG TIME.  AND, SECOND, THERE IS A HISTORY

17   WITH ONLINENIC DISSIPATING ASSETS.

18           IN OUR PAPERS WE REFER TO THE *VERIZON VERSUS

19   ONLINENIC* CASE IN WHICH JUDGE FOGEL FOUND THAT THERE WAS A --

20   AND SANCTIONED ONLINENIC FOR VIOLATING A COURT ORDER REGARDING

21   DISSIPATION OF ASSETS.

22           **THE COURT:**  JUDGE FOGEL, WAS THAT A LONG, LONG TIME

23   AGO?

24           **MR. KROLL:**  THAT WAS, YOUR HONOR.

25           **THE COURT:**  YEAH.

1              **MR. KROLL:**  BUT THE REASON I RAISE THAT IS THE
2    DISSIPATION OF ASSETS INVOLVED ONLINENIC TRANSFERRING DOMAIN
3    NAMES FROM ONLINENIC TO 35.CN.
4              NOW, THEY WERE SANCTIONED FOR THAT.  THEY CLAWED BACK
5    THE TRANSFERS, BUT THERE IS A FEAR OF PREJUDICE TO THE
6    PLAINTIFFS THAT THERE'S GOING TO BE DISSIPATION.  THERE'S A
7    HISTORY WITH ONLINENIC OF NOT FOLLOWING COURT ORDERS, AS THE
8    COURT HAS EXAMINED BY JUDGE VAN KEULEN'S REPORT AND
9    RECOMMENDATION.
10             THE OTHER PART OF THAT IS -- THIS GOES TO 35.CN'S
11   REQUEST TO MAKE A DETERMINATION AS TO WHETHER THERE'S JUST
12   REASON FOR DELAY.  THERE'S NO PREJUDICE TO 35.CN HAVING A FINAL
13   JUDGMENT AT THIS TIME, WHILE THERE IS PREJUDICE TO THE
14   PLAINTIFFS.
15             THERE'S NO PREJUDICE TO 35.CN BECAUSE THE ONLY ISSUE
16   THAT WOULD REMAIN WITH RESPECT TO 35.CN IS WHETHER OR NOT 35.CN
17   IS THE ALTEREGO OR DIRECT PARTICIPANT IN THE UNLAWFUL ACTIONS
18   OF ONLINENIC AND DOMAIN ID SHIELD.  THAT'S THE ONLY ISSUE.  IF,
19   IN FACT, THEY ARE THE ALTEREGO OR DIRECT PARTICIPANT, OR THEIR
20   EMPLOYEES WERE THE INDIVIDUALS WHO DESTROYED THE MASSIVE
21   AMOUNTS OF EVIDENCE THAT'S BEFORE THE COURT, THEN 35.CN WILL BE
22   HELD LIABLE.
23             THAT WILL BE --  WELL, 35.CN WILL HAVE THEIR DAY IN
24   COURT TO MAKE THAT DETERMINATION, AND THE POINT HERE BEFORE THE
25   COURT IS GETTING A FINAL JUDGMENT AGAINST DOMAIN ID SHIELD AND

```
 1   ONLINENIC.
 2            THE COURT:  IF THEY'RE NOT -- IF THEY'RE NOT AN
 3   ALTEREGO OR PARTICIPANT, AS YOU'VE SAID, IF THEY'RE NOT --
 4            MR. KROLL:  THERE IS NO LIABILITY.
 5            THE COURT:  COULD THEY BE PREJUDICED?
 6            MR. KROLL:  THERE'S NO LIABILITY.
 7            THE COURT:  NOT FOR THE JUDGMENT, THAT'S RIGHT.
 8            MR. KROLL:  YES.  TO BE CLEAR, YOUR HONOR, THE
 9   PLAINTIFFS HAVE NOT MADE ANY CLAIMS AGAINST 35.CN WITH RESPECT
10   TO THE REGISTRATION TRAFFICKING IN AND USE OF THE 35 INFRINGING
11   DOMAIN NAMES WITH A BAD FAITH INTENT TO PROFIT, OTHER THAN AS
12   THE ALTEREGO --
13            THE COURT:  ALTEREGO.
14            MR. KROLL:  -- OF ONLINENIC AND ID SHIELD.  IF THEY
15   ARE NOT THE ALTEREGO OF ONLINENIC OR ID SHIELD, OR IF THEIR
16   EMPLOYEES DID NOT DESTROY THE RELEVANT EVIDENCE, THEY'RE NOT
17   LIABLE.  THAT'S THE BINARY ISSUE THAT WOULD BE BEFORE THE
18   COURT.
19            THE COURT:  ALL RIGHT.  THANK YOU.
20            SO MR. KRONENBERGER?
21            MR. KRONENBERGER:  YES, YOUR HONOR.
22            THE COURT:  WHAT DO YOU SAY ABOUT THAT?
23            MR. KRONENBERGER:  35.CN DESPERATELY WANTS A DECISION
24   ON THE MERITS.
25            THE COURT:  WHAT DOES THAT MEAN?  THE MERITS?  IT'S
```

1  THE ALTEREGO QUESTION, RIGHT?
2           **MR. KRONENBERGER:**  IT'S THE ISSUE OF WHETHER -- AND
3  THIS IS AN ISSUE OF FIRST IMPRESSION -- WHETHER FACEBOOK CAN
4  USE THIS RAA AGREEMENT AND THESE NOTICES THAT GO OUT, AND, WHEN
5  THERE'S NO RESPONSE AFTER SEVEN DAYS, LIABILITY AUTOMATICALLY
6  ATTACHES TO THE REGISTRAR.  SO --
7           **THE COURT:**  IS THAT -- IS THAT ONLINENIC AND ID
8  SHIELD?
9           **MR. KRONENBERGER:**  YES, YOUR HONOR.  AND --
10          **THE COURT:**  THAT'S NOT -- THAT'S NOT 35.CN?
11          **MR. KRONENBERGER:**  CORRECT, THAT IS NOT.
12          HOWEVER, WHAT FACEBOOK WANTS TO DO IS GET A JUDGMENT
13 THAT'S NOT ON THE MERITS AGAINST ONLINENIC AND THEN APPLY THAT
14 THROUGH AN ALTEREGO THEORY AGAINST 35.CN AND DEPRIVE 35.CN FROM
15 POINTING OUT THE MAJOR PROBLEMS THAT FACEBOOK HAS ON THE
16 MERITS.
17          **THE COURT:**  IF IT'S THE ALTEREGO, THAT'S EXACTLY WHAT
18 SHOULD HAPPEN, ON ACCOUNT OF THE BEHAVIOR OF THE OTHER TWO
19 DEFENDANTS.
20          **MR. KRONENBERGER:**  WELL, I THINK THAT THERE'S A
21 GENERAL PRINCIPLE, YOUR HONOR, THAT FOR ANY JUDGMENT, EVEN IF
22 IT'S NOT ON THE MERITS, THERE NEEDS TO BE SOME BASIC FACTUAL
23 SUPPORT THAT UNDERLIES THAT JUDGMENT.
24          HERE, IT'S JUST COMPLETELY FLAWED, AND FACEBOOK IS
25 DESPERATE TO GET TO THE POINT OF A JUDGMENT THAT'S NOT ON THE

1   MERITS BECAUSE THEY HAVE HORRIBLE PROBLEMS ON THE MERITS.  IT'S
2   A CASE OF FIRST IMPRESSION.
3           AND WE'VE POINTED OUT IN A REQUEST FOR HEARING THAT
4   THERE'S THESE TEN NOTICES THAT WERE MISSING.  WE HAVE REALLY
5   PROBLEMS WITH ALL THE NOTICES, AND SO --
6           **THE COURT:**  WELL, "WE" IS YOU; IT'S NOT THE OTHER TWO
7   DEFENDANTS, BECAUSE THEY SIGNED OFF ON ALL OF THAT.  THEY SAID,
8   YEP --
9           **MR. KRONENBERGER:**  NO, YOUR HONOR.  THEY SIGNED OFF
10  ON THE SPECIAL MASTER'S REPORT, WHICH HAS NOTHING TO DO IN ANY
11  WAY WITH THESE ARGUMENTS ABOUT PRIVACY SERVICE VERSUS PROXY
12  SERVICE.  SO THIS IS A BIG ARGUMENT OF OURS.
13          WHEN IT COMES TO WHAT WAS PERHAPS SPOILED, THAT
14  POTENTIAL EVIDENCE HAS ABSOLUTELY NOTHING TO DO WITH THE
15  ARGUMENTS THAT WE'RE MAKING NOW ABOUT LACK OF NOTICES, PRIVACY
16  SERVICE VERSUS PROXY SERVICE, HAS NOTHING TO DO WITH IT, AND
17  IT'S SOMETHING THAT WAS FRUSTRATING WITH MAGISTRATE VAN KEULEN
18  BECAUSE WE WANTED HER TO ADDRESS THIS ISSUE WHERE IS WE CAN GET
19  TO THE MERITS WITHOUT DEALING WITH ANY OF THE ALLEGEDLY SPOILED
20  EVIDENCE.
21          AND SO IT'S SORT OF UNCLEAR, LIKE, WHAT IS THE
22  SPOILED EVIDENCE?  ESSENTIALLY, SPAM EMAIL FOR TEN YEARS AND A
23  BUNCH OF ATTORNEY DEMAND LETTERS:  I REPRESENT ABC, PLEASE PASS
24  THIS ON TO THE DOMAIN OWNER, AND DOES IT MATTER IF FACEBOOK HAS
25  50 LETTERS VERSUS 500 IF THEY WERE SPOILED, PROBABLY DOESN'T

1   MATTER.  IT'S COMPLETELY CUMULATIVE.

2            THIS IS ANALYTICALLY SEPARATE FROM THE CONCEPT OF

3   THIS ISSUE OF FIRST IMPRESSION, OF WHETHER OR NOT FACEBOOK CAN

4   USE THIS PROVISION IN THE RAA AGREEMENT TO GET CYBERSQUATING

5   LIABILITY AGAINST A REGISTRAR.  IT'S A CASE OF FIRST

6   IMPRESSION, AND I THINK IT WOULD BE A SHAME TO HAVE A JUDGMENT

7   THAT'S NOT ON THE MERITS, ESPECIALLY IF FACEBOOK IS GOING TO

8   SEEK TO FIND 35.CN LIABLE, BECAUSE 35.CN WANTS TO ADDRESS THESE

9   MERITS ISSUES.

10           **THE COURT:**  THE ISSUE YOU ARE NOW ARTICULATING, WAS

11  THAT RAISED BY NIC AND -- ONLINENIC AND DOMAIN NAME -- DOMAIN

12  ID SHIELD IN THE UNDERLYING LITIGATION -- IN THE FIRST PART OF

13  THE CASE?

14           **MR. KRONENBERGER:**  YOU KNOW, I CAME INTO THE CASE

15  LATE, YOUR HONOR; HOWEVER, THE FOCUS OF THE CASE FROM THE

16  BEGINNING WAS THESE NOTICES THAT WENT OUT.  WE HAVE BEEN

17  DESPERATE TO FIND NOTICES THAT ONLINENIC MAY HAVE RECEIVED --

18  ONLINENIC ASKED FOR THESE, HAS ASKED FOR THESE MANY TIMES.

19  WE'VE ASKED FOR THEM MANY TIMES.

20           WE FOUND THAT ACTUALLY IN THE PROPOSED JUDGMENT,

21  WHICH IS 176.4 FOR THIS -- THIS MATTER HERE IN FRONT OF US,

22  FACEBOOK INSERTED SOMETHING WAS NOT CORRECT, THAT EACH OF THE

23  NOTICES WERE MADE TO -- REGARDING EACH SEPARATE DOMAIN.

24           YOUR NAME IS ON THAT, YOUR HONOR.  THIS IS SOMETHING

25  ONLINENIC HAS FOCUSED ON FROM THE BEGINNING.  WHEN WE CAME IN

1  TO REPRESENT 35, IT WAS A NATURAL BECAUSE IT'S A GLARING HOLE
2  IN FACEBOOK'S CASE.  AND I -- IT IS SOMEWHAT FRUSTRATING
3  BECAUSE WE HAVE AN UNDERFUNDED DEFENDANT WITH ONLINENIC, AND WE
4  HAVE FACEBOOK WHICH HAS PUT A MASSIVE EFFORT IN THIS.
5          YOU KNOW, EVERY SINGLE THING IN THIS CASE IS
6  CONTESTED.  WE SAY IT'S BLACK; THEY SAY IT'S WHITE.  IF WE GET
7  ON THE ZOOM WITH TWO ATTORNEYS, THEY HAVE EIGHT ATTORNEYS.
8  IT'S FRUSTRATING THAT ONLINENIC IS IN THIS SITUATION BECAUSE
9  THEY MADE SOME VERY BAD DECISIONS, BUT AT THE SAME TIME,
10 FACEBOOK DESPERATELY WANTS TO AVOID A DECISION ON THE MERITS,
11 AND THIS IS HOW THEY GET IT, IS THEY -- MY PERSONAL OPINION,
12 THEY USE THESE, YOU KNOW, TRUMPED-UP ALLEGATIONS FROM THE
13 SPECIAL MASTER'S REPORT AND THEN TRY TO GET 35 -- FIND 35
14 LIABLE UNDER AN ALTEREGO THEORY.
15          **THE COURT:**  MR. KROLL.
16          **MR. KROLL:**  THANK YOU, YOUR HONOR.
17          A LOT TO UNPACK HERE.  FIRST ONLINENIC AND DOMAIN
18 ID SHIELD DID HAVE 2-1/2 YEARS OF OPPOSING THE PLAINTIFF'S
19 CLAIMS OF LIABILITY UNDER THE ANTI-CYBERSQUATING CONSUMER
20 PROTECTION ACT, AS WELL AS THE CLAIMS UNDER SECTION 3.7.7.3 OF
21 THE REGISTRAR ACCREDITATION AGREEMENT THAT WAS INCORPORATED
22 INTO THE ONLINENIC REGISTRATION AGREEMENT.
23          SO, IF THE COURT RECALLS, THE PLAINTIFFS HAVE TWO
24 SEPARATE ARGUMENTS OF LIABILITY AGAINST ONLINENIC AND ID
25 SHIELD.  THE FIRST ONE, WHETHER OR NOT ONLINENIC AND ID SHIELD

```
 1  REGISTERED, TRAFFICKED IN, AND USED THE INFRINGING DOMAIN NAMES
 2  WITH A BAD FAITH INTENT TO PROFIT HAS ABSOLUTELY NOTHING TO DO
 3  WITH ALL OF THE ARGUMENTS THAT MR. KRONENBERGER JUST MADE
 4  REGARDING NOW.  THIS IS A CLEAR DIRECT LIABILITY QUESTION UNDER
 5  THE ACPA; HAS NOTHING TO DO WITH THE NOTICE.
 6          SECOND PART, ONLINENIC HAD THE OPPORTUNITY AND DID
 7  CHALLENGE THE TWO DIFFERENT SETS OF CLAIMS THAT THE PLAINTIFFS
 8  HAVE RAISED AGAINST DEFENDANTS.
 9          AND THEN THIRD, MR. KRONENBERGER --
10     THE COURT:  THEY DID RAISE THAT?
11     MR. KROLL:  YES, THEY HAVE RAISED THE ISSUES AS TO
12  NOTICE.  THEY HAVE RAISED THE ISSUE AS TO WHETHER OR NOT THEY
13  REGISTERED THE INFRINGING DOMAIN NAME.  THIS HAS ALL BEEN
14  RAISED.
15          THE SANCTION, THE TERMINATING SANCTION, THAT THE
16  PLAINTIFFS' SEEKING, AND WHICH THE REPORT AND RECOMMENDATION
17  SUGGESTS, IS A SANCTION FOR LITIGATION MISCONDUCT, AND IT'S --
18  AS PART OF THAT, IT MEANS THAT YOU CANNOT HAVE A PROPER TRIAL
19  ON THE MERITS BECAUSE OF THE DESTRUCTION, THE MASSIVE
20  DESTRUCTION, OF RELEVANT EVIDENCE.
21          SO THE SPECIAL MASTER FOUND, AND IT'S UNDISPUTED,
22  THAT THE ONLINENIC DEFENDANTS DESTROYED OVER 11 MILLION
23  DATABASE RECORDS OF WHICH THE SPECIAL MASTER ESTIMATED OVER
24  3 MILLION WERE RELEVANT TO AND RESPONSIVE TO THE DISCOVERY
25  PROTOCOL.
```

1          THE SPECIAL MASTER FOUND THAT THE MOST IMPORTANT PART
2     OF THIS DATABASE WERE THE TICKET ATTACHMENTS AND THAT THE
3     ONLINENIC DEFENDANTS DELETED 76.7 PERCENT OF THOSE TICKET
4     ATTACHMENTS, THE MOST RELEVANT PART THAT GOES TO
5     COMMUNICATIONS, EMAIL COMMUNICATIONS, AND THIRD-PARTY NOTICES,
6     AND INFORMATION OF THAT ILK, WHICH POSSIBLY -- AGAIN, NO ONE
7     KNOWS WHAT WAS IN THAT, BUT IT COULD HAVE SHOWN INFORMATION
8     WITH RESPECT TO THE REGISTRATION, TRAFFICKING IN, AND USE OF
9     THE INFRINGING DOMAIN NAME, COULD HAVE SHOWN MORE INFORMATION
10    WITH RESPECT TO NOTICE, COULD HAVE SHOWN MORE INFORMATION WITH
11    RESPECT TO ALTEREGO, COULD HAVE SHOWN INFORMATION REGARDING
12    WHETHER OR NOT ID SHIELD IS A PROXY SERVICE.  THAT'S ALL BEEN
13    DESTROYED.
14          AND IT'S JUST NOT THE DESTRUCTION OF EVIDENCE HERE.
15    WE HAVE THE INTENTIONAL ACTS BY ONLINENIC AND ID SHIELD OF
16    WITHHOLDING TWO YEARS OF RESPONSIVE DATA, OF DATA DUMPING BY
17    PRODUCING OVER 27 MILLION NON-RESPONSIVE DOCUMENTS TO HIDE A
18    LITTLE MORE THAN 5,000 RESPONSIVE DOCUMENTS.  THIS HAS BEEN
19    INTENTIONAL.  IT'S BEEN FOUND TO BE INTENTIONAL BY THE SPECIAL
20    MASTER, AS WELL AS JUDGE VAN KEULEN.  AND THERE IS AN INFERENCE
21    THAT WHEN THERE'S AN INTENTIONAL ACT OF DESTROYING DOCUMENTS,
22    THAT -- THAT THERE'S AN INFERENCE THAT THAT WOULD BE
23    PREJUDICIAL TO, IN THIS CASE, THE PLAINTIFFS.
24          SO MR. KRONENBERG [SIC] WOULD LIKE TO HAVE A TRIAL ON
25    THE MERITS ON A CASE WHERE MILLIONS OF DOCUMENTS HAVE BEEN

1   DESTROYED, AND WE CAN'T HAVE A TRIAL ON THE MERITS GIVEN THAT
2   DESTRUCTION.  SO --
3           **THE COURT:**  AND YOUR ISSUE WITH MR. KRONENBERGER'S
4   CLIENT IS SIMPLY THE ALTEREGO QUESTION, NOT THE MERITS
5   QUESTIONS OF WHAT THE STATUTES DO OR DON'T MEAN; IS THAT RIGHT?
6           **MR. KROLL:**  EXACTLY.  WE BELIEVE THAT
7   MR. KRONENBERG'S ARGUMENTS ARE A DISTRACTION FROM THE TRUE
8   ISSUE, AND THE TRUE ISSUE WITH RESPECT TO MR. KRONENBERGER'S
9   CLIENT, 35.CN, IS, IS 35.CN THE ALTEREGO OF DOMAIN ID SHIELD
10  AND ONLINENIC; ARE THEY THE DIRECT PARTICIPANT IN THE UNLAWFUL
11  ACTIONS OF ONLINENIC AND ID SHIELD; DID ONLINENIC -- I'M
12  SORRY -- DID 35.CN'S EMPLOYEES DESTROY THE EVIDENCE THAT WE'VE
13  BEEN DISCUSSING?
14          AND IF THE COURT RECALLS, ALL OF THE TECHNICAL AND
15  CUSTOMER SUPPORT FOR ONLINENIC WAS DONE BY 35.CN EMPLOYEES.
16  THAT'S -- THAT'S AN ISSUE FOR ANOTHER DAY.
17          FOR TODAY, YOUR HONOR, PLAINTIFFS BELIEVE THE COURT
18  SHOULD ENTER A FINAL JUDGMENT AGAINST ONLINENIC AND ID SHIELD,
19  ENTER DEFAULT JUDGMENT AND, YOU KNOW, GRANT OUR MOTION FOR
20  TERMINATING SANCTIONS.
21          **THE COURT:**  ALL RIGHT.  MR. NARANCIC, DID YOU WANT TO
22  SAY ANYTHING?
23          **MR. NARANCIC:**  YOUR HONOR, JUST 30 SECONDS.  THANK
24  YOU.
25          **THE COURT:**  OKAY.

1          **MR. NARANCIC:** I DIDN'T UNDERSTAND THE SPECIAL
2  MASTER'S REPORT TO DRAW ANY LEGAL CONCLUSIONS FROM THE FACTUAL
3  CONCLUSIONS, AND THE ONLINENIC DEFENDANT'S SUBMISSIONS
4  BASICALLY ASSUME THAT THE SPECIAL MASTER'S FACTUAL FINDINGS ARE
5  ACCEPTED, AND OUR SUBMISSIONS FOCUSED ON WHAT LEGAL CONCLUSIONS
6  FLOW FROM THOSE FACTUAL CONCLUSIONS.
7          I HAVE NO FURTHER SUBMISSIONS, YOUR HONOR.
8          **THE COURT:** OKAY.  THANK YOU.
9          ANY FINAL WORD, MR. KRONENBERGER?
10         **MR. KRONENBERGER:** YES, YOUR HONOR.
11         ON THE ISSUE OF DEFAULT VERSUS DEFAULT JUDGMENT, IF
12 YOU'RE INCLINED TO ENTER DEFAULT, WE WOULD REQUEST THAT YOU NOT
13 ENTER DEFAULT JUDGMENT NOW, BUT ONLY -- ONLY ENTER DEFAULT,
14 BECAUSE THIS WILL ALLOW 35, WITHOUT ONLINENIC LITIGATING
15 ANYTHING; THEY'RE JUST SITTING BACK AND WAITING -- WILL ALLOW
16 35 TO BRING OUT THESE ISSUES OF FIRST IMPRESSION REGARDING
17 PRIVACY SERVICE VERSUS PROXY SERVICE AND ISSUES DEALING WITH
18 NOTICES GENERALLY, BECAUSE IT WOULD BE -- IF THERE'S A FINAL
19 JUDGMENT AGAINST ONLINENIC WITHOUT A REAL FACTUAL AND LEGAL
20 BASIS, OTHER THAN A SPOLIATION FINDING, BECAUSE I SUBMIT THERE
21 ARE REAL ISSUES HERE.
22         **THE COURT:** MR. KROLL HAS JUST SAID THAT, WITH
23 RESPECT TO YOUR ISSUE, THE SPOLIATION ACTIVITIES WOULD PREVENT
24 A FAIR TRIAL OF THAT.
25         **MR. KRONENBERGER:** I DON'T UNDERSTAND THAT.  AGAIN,

1  IT'S JUST TALKING IN GENERALITIES.  ARE WE TALKING ABOUT A
2  CUSTOMER SERVICE DATABASE WHERE, FOR YEARS, THERE WAS TENS OF
3  MILLIONS OF SPAM EMAILS GOING TO IT, AS WELL AS ATTORNEYS AND
4  TRADEMARK HOLDERS SENDING CORRESPONDENCE TO ONLINENIC, AND A
5  LOT OF THAT STUFF GOT DELETED.  THAT HAS NOTHING TO DO WITH
6  THIS ISSUE OF PRIVACY SERVICE VERSUS PROXY SERVICE.
7          IF ONLINENIC AND ID SHIELD WERE A PRIVACY SERVICE,
8  THEY WIN, IT'S DONE.  WE THINK THAT THOSE ARE THE FACTS.  EVEN
9  IF THEY ARE A PROXY SERVICE, THE NOTICES THAT FACEBOOK SENT ARE
10 NOT VALID.
11         SO MY POINT IS, YOUR HONOR, IT WOULD BE A SHAME TO
12 HAVE A JUDGMENT AGAINST ONLINENIC WHEN THE SPOLIATION HAS
13 NOTHING TO DO WITH THE EVIDENCE THAT WOULD BE USED IN THESE
14 DISCRETE ISSUES OF PRIVACY SERVICE VERSUS PROXY SERVICE AND
15 NOTICES UNDER THE RAA.
16         **THE COURT:**  I DON'T SEE HOW WE KNOW THAT SINCE THE
17 EVIDENCE IS GONE.
18         **MR. KRONENBERGER:**  WELL, HOW WOULD WE -- IF YOU LOOK
19 AT THE SPECIAL MASTER'S REPORT, IT'S VAGUE.  WE'RE TALKING
20 ABOUT A CUSTOMER SERVICE DATABASE.  SO HOW WOULD A CUSTOMER
21 SERVICE DATABASE HAVE ANY INFORMATION RELATED TO PRIVACY
22 SERVICE VERSUS PROXY SERVICE OR REGARDING THE NOTICES THAT
23 FACEBOOK ITSELF SUPPOSEDLY SENT ONLINENIC?
24         THIS IS INFORMATION THAT'S COMPLETELY IN THE
25 POSSESSION OF FACEBOOK.  THEY FAILED TO GIVE NOTICE CORRECTLY.

1  MOST OF THEM IT JUST GENERALLY FAILED BECAUSE -- ONLINENIC
2  RESPONDED, AND FACEBOOK'S AGENT WOULD NOT RESPOND AND CONFIRM.
3  WE ALLEGE THAT THAT'S SUFFICIENT NOTICE.
4         BUT THEN THERE'S TEN OF THESE DOMAINS WHERE THERE'S
5  NO NOTICE AT ALL, AND SO THE QUESTION IS IF, LIKE -- THIS IS
6  INFORMATION COMPLETELY IN THE POSSESSION OF FACEBOOK, AND IF 35
7  CAN PREVAIL ON THIS AND IF THEY DO, THEN A FINAL JUDGMENT
8  AGAINST ONLINENIC, I SUBMIT, SHOULD BE CALLED INTO QUESTION.
9         **THE COURT:** OKAY. THANK YOU. ANY FINAL WORDS,
10 MR. KROLL?
11        **MR. KROLL:** JUST BRIEFLY, YOUR HONOR.
12        AGAIN, MR. KRONENBERGER IS FOCUSING ON THE ISSUE WITH
13 RESPECT TO 3.7.7.3 AND WHETHER NOTICE WAS PROPERLY GIVEN -- AND
14 I'LL ADDRESS THAT IN A SECOND -- AND COMPLETELY IGNORES THE
15 ACPA CLAIM THAT THE ONLINENIC DEFENDANTS REGISTERED, TRAFFICKED
16 IN, OR USED THE INFRINGING DOMAIN NAMES WITH BAD FAITH INTENT
17 TO PROFIT.
18        BUT THE SECOND PART IS, ONE, EVIDENCE THAT MAY HAVE
19 BEEN LOST -- AND YOU'RE RIGHT, WE DON'T KNOW WHAT WE DON'T
20 KNOW.  WE DON'T KNOW THE EVIDENCE THAT WAS LOST.  BUT
21 COMMUNICATION BETWEEN ONLINENIC, ID SHIELD, AND THEIR CUSTOMER
22 COULD HAVE CONTAINED INFORMATION REGARDING WHETHER ID SHIELD
23 REFERS TO ITSELF AS A PROXY SERVICE, WHICH IS WHAT ID SHIELD
24 REFERRED TO IN ITS COMMUNICATION WITH ICAM AS A PROXY SERVICE.
25        WE DON'T KNOW WHAT WE DON'T KNOW.

1   AND THEN MR. KRONENBERGER IS SOMEWHAT DISINGENUOUS
2  HERE WITH RESPECT TO THE FACT THAT NOTICE WAS PROVIDED TO
3  ONLINENIC, AND ONLINENIC ASKED FOR VERIFICATION AND FAILS TO
4  INFORM THE COURT THAT VERIFICATION WAS PROVIDED TO ONLINENIC.
5  AND, IN FACT, THAT VERIFICATION, WHICH OCCURRED IN 2018, WAS
6  NOT ONLY PRODUCED TO ONLINENIC, BUT MR. NARANCIC PRODUCED THAT
7  LETTER BACK TO US IN DISCOVERY, AND THAT INFORMATION WAS
8  PROVIDED TO MR. KRONENBERGER.
9   THERE IS A LOT MORE HERE, AND IF THE COURT IS
10 INTERESTED, WE COULD GO DOWN THAT ROAD OF WHY MR. KRONENBERGER
11 IS WRONG, BUT THIS IS A TOTAL DISTRACTION FROM WHAT THE TRUE
12 ISSUES BEFORE THE COURT IS.
13   **THE COURT:**  OKAY.  WELL, I THINK WHAT WE'LL DO IS
14 SUBMIT IT AT THAT POINT, AND I WILL GET BACK TO ALL OF YOU,
15 ALTHOUGH I DO NOT INTEND TO ADDRESS THE NOTICE OF PENDENCY OF
16 THE OTHER ACTION, BUT I WILL RESOLVE THE OTHER MOTIONS THAT ARE
17 PENDING.
18   THANK YOU ALL VERY MUCH.
19   (PROCEEDINGS ADJOURNED AT 11:05 A.M.)

```
1   STATE OF CALIFORNIA    )
2                          )    SS
3   COUNTY OF CONTRA COSTA )
4
5           I HEREBY CERTIFY THAT THE FOREGOING IN THE
6   WITHIN-ENTITLED CAUSE WAS TAKEN AT THE TIME AND PLACE HEREIN
7   NAMED; THAT THE TRANSCRIPT IS A TRUE RECORD OF THE PROCEEDINGS
8   AS REPORTED BY ME, A DULY CERTIFIED SHORTHAND REPORTER AND A
9   DISINTERESTED PERSON, AND WAS THEREAFTER TRANSCRIBED INTO
10  TYPEWRITING BY COMPUTER.
11          I FURTHER CERTIFY THAT I AM NOT INTERESTED IN THE
12  OUTCOME OF THE SAID ACTION, NOR CONNECTED WITH, NOR RELATED TO
13  ANY OF THE PARTIES IN SAID ACTION, NOR TO THEIR RESPECTIVE
14  COUNSEL.
15          IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS
16  20TH DAY OF JUNE, 2022.
17
18
19          /s/ jncolumbini
20          JOAN MARIE COLUMBINI, CSR NO. 5435
21          STATE OF CALIFORNIA
```