

515 South Flower Street, Forty Second Floor | Los Angeles, CA 90071-2223 | TEL 213.430.3400 | FAX 213.430.3409

**VIA CM/ECF**  September 9, 2022

Magistrate Judge Alex G. Tse, U.S. District Court, Northern District of California

Re:  *Facebook Inc. et al. v. OnlineNIC Inc., et al.*, No. 3:19-cv-07071-SI (AGT)

Dear Magistrate Judge Tse:

Pursuant to the Court's August 16, 2022 Discovery Order (ECF No. 261), Plaintiffs and Defendant Xiamen 35.com Internet Technology Co., Ltd. ("35.CN") submit this joint statement[1] identifying the discovery disputes that remain between Plaintiffs and 35.CN. On August 25, 2022 Plaintiffs sent 35.CN a letter (attached hereto as Exhibit 1) detailing thirteen categories of deficiencies, including 35.CN's objections based on Chinese law, that Plaintiffs believe exist regarding 35.CN's discovery responses. Plaintiffs asked 35.CN to meet and confer for at least four hours regarding these disputes. 35.CN agreed to meet and confer for one hour, which the parties did on August 31, 2022. 35.CN's most recent discovery responses were previously filed with the Court in connection with the parties' August 5, 2022 Joint Statement:

- 35.CN's Third Amended and Supplemental Objections and Responses to Plaintiffs' First Set of Interrogatories were filed as ECF No. 259-4.

- 35.CN's Third Amended and Supplemental Objections and Responses to Plaintiffs' First Set of Requests for Production were filed as ECF No. 259-6.

- 35.CN's Second Amended and Supplemental Objections and Responses to Plaintiffs' First Set of Requests for Admission were filed as ECF No. 258-8.

### Plaintiffs' Opening Statement

35.CN is engaging in an abusive discovery shell game that has allowed it to avoid providing meaningful discovery for over six months. After raising Chinese law objections in March 2022, 35.CN suggested in May that it could complete document review and productions within thirty days. After moving its target completion date several times, 35.CN now asserts it is not "currently" withholding any documents based on Chinese law. During the parties' August 31, 2022 meet and confer

---

[1] Plaintiffs sent 35.CN a draft of Plaintiffs' portion of the Joint Statement the evening of Thursday, September 8, before Plaintiffs received 35.CN's amended discovery. 35.CN responded, indicating its belief that the Joint Statement should be limited to five pages, based on Judge Tse's standing order. Plaintiffs explained to 35.CN that they disagreed. The Court's August 16, 2022 Discovery Order did not contain a page limit, unlike the Court's July 21, 2022, Discovery Order, which included a 3-page limit. In addition, while Judge Tse's standing order limits joint statements to a single issue and requires multiple issues to be submitted through multiple, discrete single-issue letters, the August 16 Discovery Order required the parties to address any discovery disputes that remained outstanding. Due to the parties' difference of opinion on this issue, 35.CN's portion of the Joint Statement is attached to the end of Plaintiffs' portion of the Joint Statement, which Plaintiffs drafted with the intent that 35.CN would insert its portions in the places so indicated.



conference, 35.CN's counsel informed Plaintiffs' counsel that 35.CN is now withholding the same documents based on relevance, proportionality, and undue burden. And if the Court overrules these objections, 35.CN advises that it will then revert to withholding these documents—which 35.CN is not even permitting its U.S. counsel of record to view—based on Chinese law. As a result, the parties are at an impasse.

Since March 2022, Plaintiffs have exchanged numerous discovery letters and emails, and engaged in multiple hours-long discovery conferences with 35.CN. Every time 35.CN has represented resolution is near and possible, 35.CN proceeds to change its justifications for avoiding discovery. Every time 35.CN has proposed a "workaround" to provide discovery by a self-proposed deadline, 35.CN fails to meet its own deadline.

Plaintiffs propounded written discovery on February 16, 2022. On March 30, 35.CN first raised its Chinese law objections. In April, the parties met and conferred, agreeing to seek leave to file a regularly noticed motion regarding the Chinese law objections. After 35.CN failed to timely return a draft stipulation despite repeated requests, Plaintiffs filed a two-page individual statement seeking leave. ECF No. 237. On May 26, 35.CN filed a response, stating Plaintiffs' action was "premature" because "35.CN has been actively working with Plaintiffs on multiple fronts, including responding to hundreds of discovery requests seeking Chinese language documents." ECF No. 239 at 2:4, 8–10.[2] 35.CN also requested that the Court provide it "at least" thirty more days to "finish its document review (including due to the need to translate documents for counsel of record) and production." *Id.* at 4:10–12. 35.CN did not finish its document review and production within the time it requested.

Then, in the parties' June 29, 2022 Joint Statement, 35.CN proposed "further document productions by July 15, 2022 and providing a privilege-log-type chart outlining documents being withheld by August 30, 2022 (with the description, parties/recipients, date, basis for withholding including Chinese laws, and any other US source)." ECF No. 247 at 4. On July 20, the Court held a discovery hearing, at which 35.CN's counsel again represented 35.CN would provide further productions and a log of "the problem documents" by August 30. July 20, 2022 Hr'g Tr. (hereinafter "Tr.") at 18:20–19:2. Despite these representations to the Court, 35.CN has still not provided meaningful document productions or the proposed log of "the problem documents."[3]

On August 16, 2022, the Court ordered the parties to continue meeting and conferring to discuss, at a minimum, the sufficiency of 35.CN's third amended discovery responses and 35.CN's forthcoming "batch of corporate/financial documents that it will be producing shortly." ECF No. 261 at 1. In advance of the meet and confer conference, Plaintiffs prepared and sent to 35.CN a seven-page letter detailing thirteen categories of deficiencies Plaintiffs identified with 35.CN's discovery responses. Plaintiffs then diligently prepared for the meet and confer conference, and met and conferred with 35.CN in good faith during the single hour during which 35.CN agreed to meet. Despite Plaintiffs detailing 35.CN's deficiencies in writing in advance of the conference, 35.CN's counsel were not prepared for the meeting and had not considered many of the issues Plaintiffs raised in their

---

[2] For consistency, Plaintiffs' ECF pin cites reference the Clerk's blue ECF header page number.

[3] Plaintiffs anticipate 35.CN will argue the log is no longer necessary because documents are not *currently* being withheld *because of* Chinese law. Such an argument only serves to further delay and obstruct resolution of the parties' dispute regarding Chinese law.

Tucker Ellis LLP

Magistrate Judge Alex G. Tse
September 9, 2022
Page 3

letter. The parties were unable to resolve the deficiencies, and as a result have reached an impasse on each of the thirteen deficiencies. Beyond the new deficiencies created by 35.CN's latest amended discovery responses, 35.CN has failed to produce a meaningful "batch of corporate/financial documents" or the log of "the problem documents" as promised.

To date, the vast majority of 35.CN's productions consist of Chinese-language documents that are publicly-available on Chinese government or other websites. *See* Declaration of 麦铭辉 (Mai Ming Hui), attached hereto as Exhibit 2. These documents consist largely of documents 35.CN is required to disclose as a publicly-traded company, including 35.CN's articles of association, annual reports, and internal rules and procedures. *See id.* ¶¶ 4, 6–27. Of the 9,368 pages produced by 35.CN thus far, 8,248 of those pages are publicly-available. The remaining documents 35.CN produced consist entirely of documents already in Plaintiffs' possession, such as the complaint in this lawsuit, emails between OnlineNIC and one of Plaintiffs' vendors (which OnlineNIC had previously produced), and documents produced by third-party, ICANN. Because of the fact-driven and non-public nature of alter ego relationships, Plaintiffs are seeking—as 35.CN is well aware—internal documents reflecting the inner workings of the relationship between 35.CN and OnlineNIC. *See* Tr. 11:5–11. Documents sought include those containing evidence of payments, loan documents, and internal emails reflecting the nature of the 35.CN–OnlineNIC relationship. 35.CN's refusal to produce non-public documents detailing the relationship between 35.CN and OnlineNIC is an ongoing material discovery deficiency.

Below, Plaintiffs raise thirteen specific categories of outstanding deficiencies in 35.CN's discovery. As Plaintiffs detail in this Joint Statement, 35.CN's discovery conduct has been calculated to avoid its discovery obligations, create ongoing delays, and waste resources. To date, 35.CN's efforts have succeeded. Plaintiffs respectfully request that this Court enter an order (1) that 35.CN cure the identified deficiencies within two weeks; (2) that 35.CN file a status report detailing the steps it has taken to comply with this order within three weeks; and (3) that Plaintiffs may file a separate statement regarding 35.CN's compliance with this order after the date on which 35.CN's status report is due.

**35.CN's Opening Statement**

### Discovery Dispute No. 1: 35.CN's Chinese Law Objections

**1.      Plaintiffs' Position**

35.CN has obscured to the Court that it is still withholding documents based on Chinese law. During the parties' August 31, 2022 conference, 35.CN revealed that its August 5, 2022 Joint Statement assertion that no documents were "currently" being withheld based on Chinese law (ECF No. 257) was based on the fact that 35.CN believed it could also withhold all of the same documents based on relevance, proportionality, and undue burden. 35.CN therefore maintained that the documents were not "***currently*** being withheld ***due to*** Chinese law," ECF No. 257 at 3 (emphasis added), because the documents could *also* be withheld based on other objections. But 35.CN admitted that if the Court overruled 35.CN's other objections, 35.CN would continue to withhold the documents, falling back on Chinese law. This game of subterfuge caused the Court to believe the Chinese law issue had been mooted, prevented a ruling on Plaintiffs' challenge to the Chinese law objections, and created additional months of delay on discovery specifically ordered by the District

Tucker Ellis LLP

Magistrate Judge Alex G. Tse
September 9, 2022
Page 4

Court in January.

This latest tactic is consistent with 35.CN's conduct throughout discovery. 35.CN has intentionally framed responses and objections ambiguously to obscure whether documents are being withheld or the precise basis for withholding. *See* Tr. 25:18–22 (35.CN's counsel admitting they "have some cryptic responses in our discovery responses where it says upon approval of the Chinese government, we will produce, and then second we have a statement that says we're not aware of any documents").

35.CN's most recent discovery responses continue this pattern.[4] For example, 35.CN's Third Amended and Supplemental Objections and Responses to Plaintiffs' First Set of Requests for Production maintain a general objection based on Chinese law, but state, "***At this time***, Defendant is not withholding documents based on this objection unless specifically provided below." General Objection No. 1 (emphasis added). In response to Plaintiffs' Requests for Admission, 35.CN incorporates by reference into each specific response a General Objection based on Chinese law. *See* General Objection Nos. 1 & 7. And in response to Interrogatories 4–6, 35.CN raises specific objections based on Chinese law.

35.CN further obscured the extent of its Chinese law objections in the August 5, 2022 Joint Statement by stating that "because Plaintiffs' requests are broad enough to cover restricted documents, 35.CN has maintained its objection for limited requests" and that "35.CN will not know whether it will invoke Chinese law regarding any of these documents until 35.CN finishes its search and production." ECF No. 257 at 3. 35.CN has not clarified what documents are "restricted documents" or how many "restricted documents" exist.

The intentional ambiguity in 35.CN's discovery responses coupled with the fact that 35.CN has produced almost no non-public documents also raises serious concerns regarding the adequacy of 35.CN's document searches. This is especially troubling because 35.CN is not permitting its U.S. counsel of record before this Court to view documents 35.CN claims are shielded from U.S. discovery by Chinese law. *See* Tr. 43:18–20 (Mr. Kronenberger: "But as an attorney, I have not seen my client's documents because they do not permit me to look at them because of the Chinese law."). The

---

[4] Plaintiffs anticipated 35.CN would serve additional documents and discovery responses shortly before this Joint Statement was due in order to once again create a moving target for resolving Plaintiffs' discovery disputes. At 7:21 p.m. on Thursday, September 8, 35.CN provided further amended Request for Production Responses, Request for Admission Responses, and an Appendix A to 35.CN's Further Amended and Supplemental Written Discovery Requests. 35.CN also indicated they were making a ninth production of documents, but the production was not included in 35.CN's email. At 9:07 a.m. on Friday, September 9, 35.CN provided a link to download its ninth production. Once again 35.CN intentionally put Plaintiffs in the position of not being able to consider late-served discovery in drafting their portion of a joint statement—once again attempting to frustrate Plaintiffs' efforts to bring these discovery disputes to resolution. Based on a quick review of 35.CN's ninth production, the bulk of the production is a reproduction of documents OnlineNIC and ICANN previously produced to Plaintiffs.



restrictions 35.CN is imposing on its counsel—and that its counsel have accepted—raise serious doubts about counsel's ability to answer even basic questions concerning the adequacy of 35.CN's discovery efforts.[5]

Further, 35.CN's new argument, advanced for the first time during the August 31 meet and confer conference, that it can now continue to withhold documents based on relevance, proportionality, and undue burden is highly questionable. Any relevance objection to Plaintiffs' alter ego and personal jurisdiction discovery is patently frivolous. In January 2022, the Judge Illston found that Plaintiffs had raised "serious questions" regarding the alter ego relationship between 35.CN and the OnlineNIC Defendants and ordered the parties to conduct discovery on both alter ego and personal jurisdiction. ECF No. 207 at 8–9. Judge Illston reiterated this ruling in April 2022, stating "there are serious questions of fact as to alter ego that the parties need to explore." ECF No. 226 at 6:13–15.[6] During the July 20, 2022 Discovery Hearing, the Court acknowledged these holdings in finding Plaintiffs' written discovery sought relevant information. *See, e.g.*, Tr. 4:2–8 (finding there was no dispute that Plaintiffs' discovery was related to alter ego and personal jurisdiction, which the Court previously held were relevant issues), 47:24–48:23 (relevance of discovery sought was not in dispute).

35.CN also has failed to articulate a basis for withholding documents based on proportionality or undue burden. *See* Tr. 47:24–48:23. Instead, 35.CN has suggested that because it is a Chinese company subject to Chinese law, it should be held to a lesser discovery standard that it may satisfy simply by pointing to public documents and arguing Plaintiffs could seek documents from third parties. The Court has already acknowledged that Plaintiffs are entitled to documents in 35.CN's possession that address alter ego and personal jurisdiction and that it is unlikely information addressing alter ego (such as the inner workings of the financial relationship between 35.CN and OnlineNIC) would ever be located in public documents. Tr. 11:2–18, 21:8–22:10. The Court's statement on this issue is correct. For example, Plaintiffs seek bank statements and other financial records that reflect payments between 35.CN and OnlineNIC. *See* Request for Production Nos. 97 & 99. These requests seek non-public information that 35.CN continues to refuse to produce based on Chinese law. 35.CN cannot rely on OnlineNIC's document productions to satisfy these discovery requests because OnlineNIC's productions regarding such payments were inconsistent with each other and because OnlineNIC's discovery was materially incomplete due to mass-scale discovery misconduct.

35.CN's latest position on its Chinese law objections further misleads, obstructs, and delays. Rather than permitting the Court to rule on the Chinese law objections, 35.CN engaged in a shell game to temporarily moot the issue while still asserting documents are not subject to discovery based on Chinese law. Plaintiffs request that the Court issue an order (1) that 35.CN produce within two weeks all non-privileged documents for which 35.CN asserts an objection based on Chinese law; and (2) that 35.CN produce within two weeks a log of all documents 35.CN continues to withhold on any basis.

---

[5] It is also worth noting that 35.CN still has not provided any documentation to substantiate its correspondence with the Chinese government regarding discovery in this case.

[6] Judge Illston additionally noted that the alter ego issue pertained both to liability and personal jurisdiction over 35.CN, and that in order to determine whether the spoliation of evidence by the OnlineNIC Defendants extended to 35.CN, additional discovery was required, including on alter ego. ECF No. 226 at 6:14–22.

Tucker Ellis LLP

Magistrate Judge Alex G. Tse
September 9, 2022
Page 6

### 2. 35.CN's Position

### Dispute No. 2: 35.CN's Log of "Problem Documents"

### 1. Plaintiffs' Position

In the June 29, 2022 Joint Statement and at the July 20, 2022 Hearing, 35.CN indicated it would produce a log of "the problem documents" affected by Chinese law by August 30. ECF No. 247 at 4; Tr. 16:21–19:2. 35.CN has failed to provide this log by its self-imposed deadline—or produce the documents being withheld. This is yet another instance of 35.CN's endless delay tactics. In May 2022, 35.CN suggested it needed 30 days to finish document reviews and productions. ECF No. 239 at 4:10–12. It is now September, and Plaintiffs are still awaiting meaningful productions.

Plaintiffs request that the Court: (1) order 35.CN to produce within two weeks all non-privileged documents for which 35.CN asserts an objection based on Chinese law; and (2) order 35.CN to produce within two weeks a log of all documents 35.CN continues to withhold on any basis.

### 2. 35.CN's Position

### Dispute No. 3: 35.CN has not clearly indicated each instance in which it is withholding documents based upon a stated objection.

### 1. Plaintiffs' Position

A party objecting to a request for production must state whether any documents are being withheld based on the objection. Fed. R. Civ. P. 34(b)(2)(C). 35.CN's Third Amended and Supplemental Objections and Responses to Plaintiffs' First Set of Requests for Production leave ambiguous whether responsive documents exist or will be produced for a number of requests. For example, in response to RFP No. 93, 35.CN objects that responsive documents were previously produced by OnlineNIC. But 35.CN does not indicate whether responsive documents exist, are currently being withheld by 35.CN, or otherwise will be produced. 35.CN is required for each response to identify whether responsive documents exist, whether responsive documents are being withheld, and, if they are not being withheld, when they will be produced. *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, No. 2:21-CV-00194-FLA-MAAx, 2021 WL 4805315, at *8 (C.D. Cal. Aug. 10, 2021) ("Defendants either are or are not withholding documents; they know whether they are, and if so, should know the basis for any objections authorizing such withholding.").

35.CN's failure to clearly articulate in its written discovery each instance in which it is withholding documents based upon a stated objection is further complicated by 35.CN's assertion that it has now changed its bases for withholding documents. And because 35.CN's counsel of record does not have access to documents subject to Plaintiffs' Requests For Production, it is not clear whether 35.CN is in a position to meet its obligations under Fed. R. Civ. P. 34(b)(2)(C). As 35.CN's counsel admitted, 35.CN does not allow U.S. counsel to view non-public Chinese documents. *See* Tr. 43:18–20 (Mr. Kronenberger: "But as an attorney, I have not seen my client's documents because they do not permit me to look at them because of the Chinese law."); *see also* Tr. 14:5–12, 18:4–15, 42:7–12.

35.CN has failed to clearly articulate whether and on what basis it is withholding documents.



This dispute applies to Request for Production Nos. 24–25, 78–79, 93, 97, and 99. Plaintiffs ask that the Court order 35.CN within two weeks to (1) identify clearly each instance in which it is withholding documents requested, (2) state the objections that form 35.CN's bases for withholding the documents, and (3) provide a clear statement that there are no other grounds 35.CN will later assert as a basis for withholding the documents.

**2.      35.CN's Position**

**Dispute No. 4: 35.CN has asserted new objections in its amended discovery responses that were not previously raised in 35.CN's earlier responses.**

**1.      Plaintiffs' Position**

35.CN's latest set of discovery responses raise new objections not raised in 35.CN's original responses. "It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992). By not raising all objections in its initial responses, 35.CN has waived any late-raised objections, and 35.CN's untimely objections should be overruled on that basis alone. This is not a mere formality. 35.CN's late objections are part of 35.CN's pattern of delay tactics. By changing the bases for its objections, 35.CN is delaying a ruling by this Court on the parties' discovery disputes and forcing Plaintiffs to engage in additional rounds of meet and confer efforts and briefing to this Court to attempt to identify with particularity 35.CN's bases for not producing documents or responding to discovery. As an example, in 35.CN's Second Amended Objections and Response to Plaintiffs' Request For Admission No.1, 35.CN objects that the request is vague and ambiguous because it includes the phrases "uses employees" and "conduct work for." This objection does not appear in 35.CN's Amended Objections and Response to Plaintiffs' Request for Admission No. 1. *Compare* ECF No. 258-7 at 5:16–19, *with* ECF No. 247-9 at 2–14.

This dispute applies to Interrogatory Nos. 1, 4–5, and 7–14; Requests for Admission Nos. 1–16, 28–29, 31–36, 38–40, 42–43, 45–51, 64–65, 68–78, 80, 82–89, and 94–101; and Request for Production Nos. 1, 16–17, 19, 21–32, 43, 45–46, 58–59, 64, 69–71, 75–81, 87–89, and 93–144. Plaintiffs ask that the Court order that all objections that 35.CN did not raise in its initial discovery responses are waived.

**2.      35.CN's Position**

**Dispute No. 5: 35.CN refuses to verify interrogatory responses.**

**1.      Plaintiffs' Position**

35.CN refuses to provide verified interrogatory responses. "A propounding party is entitled to verified answers that can be used at trial as admissions under the Federal Rules of Evidence." *PSI Sys., Inc. v. Stamps.com, Inc.*, No. CV-0805233-ODW (JEMX), 2011 WL 13213881, at *1 (C.D. Cal. Oct. 7, 2011) (citing Fed. R. Civ. P. 33(c)). In addition, 35.CN maintains it has no obligation to verify earlier versions of interrogatory responses. By this practice, 35.CN is free to provide unsworn,



inaccurate interrogatory responses and then correct them significantly after the response deadline. This deficiency is also inextricably intertwined with 35.CN's Chinese law objections, as 35.CN's counsel has maintained that Plaintiffs are required to submit interrogatories in Chinese through the Hague Evidence Convention and that 35.CN cannot answer interrogatory responses with information that is subject to Chinese legal restrictions. General Objections 1 & 2.

Plaintiffs request that the Court order that within two weeks 35.CN provide verifications for all interrogatory responses it has served to date.

### 2. 35.CN's Position

**Dispute No. 6: 35.CN has failed to adequately supplement discovery responses and document productions.**

### 1. Plaintiffs' Position

35.CN's discovery responses and document productions remain materially deficient. For several interrogatories, 35.CN indicates it is "continuing its investigation" and will supplement incomplete responses. *See* Interrogatory Response Nos. 6–8. As another example, 35.CN indicates that "Responsive information is or will be outlined in Appendix A, which is currently a draft but will be supplemented for additional years." Interrogatory Response Nos. 1, 4–5. But 35.CN's latest Interrogatory Responses do not even include an Appendix A. In response to Interrogatory No. 8, which asks 35.CN to identify the 35.CN employees who were involved in the production of discovery or the destruction of evidence in this case as described by the Special Master's Data Destroyed or Withheld Report, 35.CN refuses to identify employees involved in the destruction of evidence because 35.CN maintains that it "did not direct any employees during any purported 'destruction of evidence.'" This refusal to respond is not permissible. If 35.CN is unable to provide substantive responses to any interrogatories, it "may not simply refuse to answer, but must state under oath that [it] is unable to provide the information and set forth the efforts [it] used to obtain the information." *Sevey v. Soliz*, No. C 10-3677 LHK PR, 2011 WL 2633826, at *4 (N.D. Cal. July 5, 2011).

35.CN also indicated in the August 5, 2022 Joint Statement and its Third Amended and Supplemental Objections and Responses to Plaintiffs' First Set of Requests for Production of Documents that it would be producing additional documents. To date, the vast majority of 35.CN's document productions consist of publicly available, Chinese-language documents. The only non-public documents 35.CN has produced are documents already in Plaintiffs' possession, which were previously produced by OnlineNIC and third-party, ICANN.

In addition, 35.CN indicated during the parties' August 3, 2022 discovery conference and in the August 5, 2022 Joint Statement that it would be amending its responses to Plaintiffs' Requests for Admission, but 35.CN has yet to provide amended Request for Admission responses.

Plaintiffs ask that the Court order 35.CN within two weeks to (1) complete supplementing its discovery responses; and (2) produce *all* responsive, non-privileged documents.

### 2. 35.CN's Position

**Dispute No. 7: 35.CN has asserted baseless objections to jurisdictional discovery under Fed. R. Civ. P. 4(k)(2).**

### 1.   Plaintiffs' Position

Plaintiffs seek documents from 35.CN related to 35.CN's contacts with the United States. This dispute applies to Request for Production Nos. 18, 20–23, and 36–37. In response to these RFPs, 35.CN has objected that discovery should be limited solely to 35.CN's contacts with the State of California. 35.CN asserts that because Plaintiffs' alleged jurisdiction exists in California, Plaintiffs cannot amend their complaint to assert Fed. R. Civ. P. 4(k) jurisdiction based on the holding in *Dorian v. Harich Tahoe Dev.*, No. C-94-3387 DLJ, 1997 WL 626109 (N.D. Cal. Oct. 11, 1997). But *Dorian* does not suggest a plaintiff cannot seek discovery on a defendant's U.S. contacts in order to assert jurisdiction under Rule 4(k). On the contrary, *Dorian* illustrates exactly such a scenario: the plaintiffs were granted leave to conduct such discovery contemplating later amendment of the complaint. *Id.* at *6. In that case, the plaintiffs were denied leave to amend because such discovery did not ultimately reveal "evidence that would demonstrate a prima facie case of general jurisdiction, specific jurisdiction, or jurisdiction under Rule 4(k)(2)" over the foreign defendant. *Id.* at *7. Accordingly, 35.CN's refusal to engage in discovery related to 35.CN's U.S.-based contacts is improper.

Plaintiffs ask that the Court: (1) overrule 35.CN's objections based on Fed. R. Civ. P. 4(k); and (2) order 35.CN within two weeks to supplement its discovery responses currently limited by objections under Fed. R. Civ. P. 4(k) with substantive responses.

### 2.   35.CN's Position

**Dispute No. 8: 35.CN's responses related to information concerning people or entities under 35.CN's control remain deficient.**

### 1.   Plaintiffs' Position

In order to establish the alter ego relationship between 35.CN and OnlineNIC, Plaintiffs seek information regarding several individuals and entities under 35.CN's control, which Plaintiffs believe will provide further evidence of the alter ego relationship. This dispute applies to Interrogatory Nos. 10 and 12; Request for Admission Nos. 17–26, 29–36, 77–78, and 114; and Request for Production Nos. 24–37, 41, 43–44, 49–54, 56–61, 63–71, 76–77, 82–89, 91–92, 94–96, 98, 100, and 102–45.

One such individual is Shaohui Gong, the current or former majority shareholder of 35.CN. 35.CN's responses to interrogatories claiming it "is unaware" of business and/or personal relationships involving Shaohui Gong are deficient. *See In re ATM Fee Antitrust Litigation*, 233 F.R.D. 542, 545 (N.D. Cal. 2005) ("Rule 33 requires that a corporation furnish such information as is available from the corporation itself or from other sources under its control."). 35.CN therefore is obligated to obtain relevant information from its officers—including former officers—when responding to interrogatories. *See Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 590 n.3 (9th Cir. 1983).

Similarly, with respect to 35.CN's responses to requests for admission, 35.CN has a duty to make a reasonable inquiry of information available to it or under its control. *See A. Farber & Partners, Inc. v. Garber*, 237 F.R.D. 250, 254 (C.D. Cal. 2006). "Such reasonable inquiry includes an



investigation and inquiry of employees, agents, and others, who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response." *Id.* (citing *Henry v. Champlain Enter., Inc.*, 212 F.R.D. 73, 78 (N.D.N.Y. 2003)).

Accordingly, because Shaohui Gong and Carrie Yu are or were officers, directors, or employees of 35.CN, 35.CN must seek out information held by them (or any other 35.CN employee with knowledge) to satisfy its burden to make a reasonable inquiry. *Id.*; *see also Wyle*, 709 F.2d at 590 n.3.

Finally, to the extent 35.CN responds to requests for production by stating it has no documents in its possession, custody, or control, 35.CN is under an affirmative duty to seek out and produce documents reasonably available to it from its employees, agents, or others subject to its control. *A. Farber and Partners, Inc.,* 234 F.R.D. at 189. And, pursuant to the Service Outsourcing Contract between 35.CN and OnlineNIC, OnlineNIC agreed to provide access to 35.CN of all "documents and files necessary to the performance of [35.CN's] duties under this Contract."

Plaintiffs ask that the Court order 35.CN within two weeks to respond substantively and fully to the discovery requests identified above, making reasonable inquiries of current or former officers, directors, and employees and OnlineNIC when necessary under the Rules.

### 2.     35.CN's Position

### Dispute No. 9: 35.CN's response to Interrogatory No. 1 relies on non-English language public records in violation of Fed. R. Civ. P. 33(d)(1).

### 1.     Plaintiffs' Position

35.CN's response to Interrogatory No. 1 relies on non-English language public records, including a Bates No. range of 4,323 pages, that 35.CN references "for example." This response is inadequate for two reasons. First, when an interrogatory response refers the interrogating party to documents, the responding party must identify records "in sufficient detail to permit the interrogating party to locate and identify them as readily as the responding party could[.]" Fed. R. Civ. P. 33(d)(1). Referencing over 4,000 pages of documents does not meet this standard. Second, if 35.CN intends to rely on non-English documents to respond to interrogatories, those documents must also be translated into English. *See Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, No. SACV-15-246-DOC (DFMX), 2016 WL 6246383, at *2 (C.D. Cal. Jan. 14, 2016) (collecting cases).

Plaintiffs ask that the Court order 35.CN within two weeks to fully respond to Interrogatory No. 1 in writing or identify specific English-language documents in sufficient detail to permit Plaintiffs to readily locate and identify 35.CN's answer within those English-language documents.

### 2.     35.CN's Position

**Dispute No. 10: Some of 35.CN's interrogatory responses refer to the OnlineNIC Defendants' prior discovery responses and document productions.**

1. <u>Plaintiffs' Position</u>

Many of 35.CN's discovery responses continue to refer to the OnlineNIC Defendants' prior discovery responses and document productions. This includes responses to Interrogatory Nos. 2, 4, 6, and 13–16; Request for Admission Nos. 5–8, 17–26, 29–30, and 77–78; and Request for Production Nos. 24–25, 72–75, 78–79, 87–89, 92–93, 97, and 99. Such responses are deficient. As to interrogatories:

> An answer to an interrogatory must be responsive to the question. It should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories, at least where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers.

*Logtale, Ltd. v. IKOR, Inc.*, No. 11–cv–05452 CW (DMR), 2013 WL 3967750, *3 (N.D. Cal. July 31, 2013) (quoting *Scaife v. Boenne*, 191 F.R.D. 590, 594 (N.D. Ind. 2000)). Moreover, the responses and document productions of the OnlineNIC Defendants are not reliable. The Special Master found that the OnlineNIC Defendants engaged in "consistent and continuous" spoliation in addition to "obfuscation and ESI withholding." ECF No. 115 at 39–40. 35.CN must separately and on its own behalf provide complete responses to Plaintiffs' interrogatories.

Similarly, 35.CN's objections to Plaintiffs' Requests For Admission based on the OnlineNIC Defendants having "already responded" to similar discovery requests are improper. If 35.CN lacks sufficient information to admit or deny Plaintiffs' requests, it may state as much only if it has first made "reasonable inquiry" yet still lacks information sufficient to admit or deny the request. *Alfredo v. Ditech Fin. LLC*, No. CV 17-04294-GW (JEMX), 2018 WL 5928133, at *1 (C.D. Cal. Oct. 5, 2018) (citing *Asea. Inc. v. Southern Pacific Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981)); *see also* Fed. R. Civ. P. 36(a)(4) (requiring reasonable inquiry). If the information that would allow 35.CN to fully respond to each request is contained in one or more documents 35.CN references in its responses, 35.CN must consult these documents and provide a complete answer to those requests.

Finally, in response to numerous requests for production, 35.CN refers to documents previously produced by the OnlineNIC Defendants or non-parties, such as ICANN. It is not enough for 35.CN merely to refer to documents produced by other parties; 35.CN has an affirmative duty to produce documents in its possession, custody, or control. *In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 544 (N.D. Cal. 2005) ("Rule 34 provides that in response to a request for production of documents a party produce any relevant documents in its possession, custody or control."). For example, in response to Request for Production Nos. 97 and 99 (seeking documents reflecting all payments between 35.CN and OnlineNIC since 2007), 35.CN objects that Plaintiffs have obtained similar discovery from OnlineNIC. But 35.CN has not produced any of its own bank or other financial account statements reflecting transactions between 35.CN and OnlineNIC. Moreover, relying on OnlineNIC's document productions is particularly troublesome because the OnlineNIC's productions on these topics were internally inconsistent with each other and materially incomplete due to mass-scale discovery misconduct. *See generally* ECF No. 115 at 39–40; ECF No. 4:16–20, 5:13–9:8.

Plaintiffs ask that the Court order 35.CN within two weeks to fully respond to the discovery



requests identified above, without relying on or referencing prior productions or responses from other parties.

### 2. 35.CN's Position

**Dispute No. 11: 35.CN's partial admissions and denials to Requests for Admission remain deficient.**

### 1. Plaintiffs' Position

In response to many Requests for Admission, 35.CN has responded with vague partial admissions or denials. This applies to RFA Nos. 1–18, 30, 42–43, 46, 70–75, 81, and 113. These responses are deficient. For example, in response to Request for Admission No. 1, which asks 35.CN to admit that OnlineNIC uses employees of 35.CN to conduct work for OnlineNIC, 35.CN objected "that this Request is premised on a misunderstanding and calls for information from OnlineNIC, namely whether employees are in fact used for work," and that the request is "vague and ambiguous, including as to 'uses employees' and 'conduct work for.'" "Subject to and without waiving the foregoing objections," 35.CN responded that "Defendant admits that 35.CN and OnlineNIC performed under a staffing agreement; Defendant denies the rest of the Request."

Because the discovery rules are intended to achieve "full and efficient discovery," parties "should admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted." *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 938 (9th Cir. 1994). 35.CN is obligated to either provide a clean admission or denial or to provide answers with an explanation as to why a request may not be clearly admitted. *Id.*; *see also Hash v. Cate*, 2012 WL 6043966, at *4 (party responding to requests for admission "must fairly respond to the substance of the request and may not avoid responding based on technicalities"). Alternatively, where a response is maintained in bad faith and is directly contrary to 35.CN's other statements in these proceedings, the response can be deemed admitted. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 3566419, at *5 (N.D. Cal. Aug. 12, 2011).

Plaintiffs ask that the Court order 35.CN within two weeks to provide amended responses to Plaintiffs' Requests for Admission that admit to the fullest extent possible, explain in detail why other portions of requests may not be admitted, or otherwise cleanly admit or deny each Request for Admission.

### 2. 35.CN's Position

**Dispute No. 12: 35.CN has designated certain responses as "confidential" because disclosure "may violate Chinese law."**

### 1. Plaintiffs' Position

35.CN maintains that certain discovery responses are appropriately designated "confidential" because the disclosure of those responses "may violate Chinese law." *See* ECF No. 260 at 5:7–9. This applies to responses to Interrogatory Nos. 2, 6, 8, 13–18; Request for Admission Nos. 37, 44, 84–85, 112–13, 115–18; and Request for Production Nos. 19–23, 40, 42, 46–48, 50, 62, 72–75, 78–79, 93,



97, 99. These confidentiality assertions raise a number of questions. First, it is unclear to what extent 35.CN's objection based on Chinese law is limiting its ability to provide complete responses. Second, if 35.CN's designating responses as confidential permits 35.CN to disclose information without violating Chinese law, it is unclear why designating documents as confidential does not cure all of 35.CN's Chinese law objections. 35.CN's counsel was unable to answer either of these questions during the parties August 31 meet and confer conference.

Plaintiffs ask that the Court order 35.CN within two weeks to fully explain the bases for its confidentiality designations or withdraw such designations.

### 2.     35.CN's Position

**Dispute No. 13: 35.CN's bulk PDF productions violate the ESI Order in this case.**

### 1.     Plaintiffs' Position

35.CN's document productions to date do not comply with the Federal Rules of Civil Procedure and the Court's Stipulated Order Re: Discovery of Electronically Stored Information for Standard Litigation (ECF No. 36) ("ESI Order"). The most basic requirement for producing ESI is that "a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E)(ii). Parties are entitled to "rationally organized productions so that they may readily identify documents, including ESI, that are responsive to their production requests." *City of Colton v. Am. Promotional Events, Inc.*, 277 F.R.D. 578, 585 (C.D. Cal. 2011). In accordance with this requirement, the ESI Order requires documents to be produced with certain metadata fields populated as set forth in Paragraph 4 of Appendix 1.

Ignoring these requirements, 35.CN's productions have thus far not been in a reasonably usable form and have not included the required associated metadata. For example, each of 35.CN's third through eighth productions are single PDFs, each comprising multiple Chinese-language documents totaling over eight thousand pages, with no metadata and with no apparent organization. This method of production impermissibly shifts 35.CN's Rule 26, 33, and 34 production burdens and expenses to Plaintiffs. *See, e.g.*, *Venture Corp. v. Barrett*, No. 5:13-cv-03384-PSG, 2014 WL 5305575, at *3 (N.D. Cal. Oct. 16, 2014) ("[T]here is no serious question that a grab-bag of PDF and native files is neither how the Ventures ordinarily maintained the documents and ESI nor is 'in a reasonably usable form.'"); *Delux Pub. Charter, LLC v. Cnty. of Orange*, No. 8:20-cv-02344-JLS-KESx, 2021 WL 4460333, at *5 (C.D. Cal. Aug. 2, 2021) (noting that the production of "large PDF files that clump multiple, unrelated documents together and do not identify the beginning and end of each document" is not generally a reasonably usable form).

Compounding matters, 35.CN's fourth production contains multiple copies (covering thousands of pages) of identical documents. Specifically, 35.CN produced ***thirteen identical copies*** of 35.CN's 2009 Annual Report along with ***twelve identical copies*** of 35.CN's 2012 Annual Report. This violates Section 5(d) of the ESI Order, which states, "Each party is required to produce only a single copy of a responsive document."

Plaintiffs ask that the Court: (1) order 35.CN within two weeks to de-duplicate and reproduce its previous productions with all of the metadata required under the ESI Order set forth in Paragraph 4 of Appendix 1 (ECF No. 36 at 9–11), including beginning and ending Bates numbers for each distinct

document; and (2) order that 35.CN bear the costs of reproduction, *see Themis Bar Rev., LLC v. Kaplan, Inc.*, No. 14CV208-L BLM, 2015 WL 3397877, at *6 (S.D. Cal. May 26, 2015).

    **2.**     <u>**35.CN's Position**</u>

    TUCKER ELLIS LLP
    By: /s/David J. Steele

David J. Steele
Attorneys for Plaintiffs,
META PLATFORMS, INC. (fka FACEBOOK, INC.) and INSTAGRAM, LLC

KRONENBERGER ROSENFELD, LLP
    By: /s/Karl S. Kronenberger

Karl S. Kronenberger
Attorneys for Defendant
XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD.

**35.CN's Position**

This discovery matter should be closed. Plaintiffs' ("Meta's") 13-page argument (in violation of the 5-page limit), served on 35.CN yesterday evening, is both confounding and <u>nearly all moot, given 35.CN's discovery response amendments and further production</u> as of September 8th and 9th, which 35.CN's counsel explicitly informed Meta's counsel it would do both in writing and on an hour-long Zoom session. 35.CN's document production of both private and public documents is nearly complete, and <u>35.CN is not withholding documents or information due to Chinese law</u>; upon continued document review, 35.CN may withhold documents for two categories due to burden, oppression, lack of relevance, and Meta's improper motive: (1) contracts in US states other than California, and (2) certain 12-20+ year old financial and corporate governance documents.

**Background**

As reflected in produced public and private documents, co-Defendant OnlineNIC was founded by Shaohui Gong ("Gong") in 1999. Thereafter, in 2004, Gong founded 35.CN. In 2007, Gong sold OnlineNIC to an unrelated individual named Rex Lieu. Subsequently, in around 2010, 35.CN became a public company, and now Gong is a non-controlling, minority shareholder in 35.CN and not a director or officer of the company. Thus, any argument that 35.CN and OnlineNIC were corporate affiliates due to the same owner (Gong) <u>ended 15 years ago before Meta's claims arose</u>.

Despite this, Meta has requested a massive amount of corporate and financial information from 35.CN dating back 20 years, as well as all US contracts, without any explanation about the relevance to this case. In fact, Meta's 13-page screed is not only largely moot, but reflects how Meta is simply livid about how there are just no documents supporting Meta's strained theory of its case. For example, Meta wants evidence of 35.CN's ownership and control of OnlineNIC, but this evidence does not exist; there is no such unity of interest, let alone any injustice or fraud.

At this time, 35.CN is not withholding any documents, except for the two identified issues. Importantly, <u>there is no withholding based on Chinese law</u>. In addition, 35.CN has served amended RFA and RFP responses, which largely remove objections that Plaintiffs targeted—despite these being valid objections—and amended ROGs have been prepared for final verification in China. For the discovery requests at issue, 35.CN has been working hard on the amended responses and further production, and Plaintiffs now have information and documentation showing:

- Officers, owners, directors, largest shareholders, etc. since 2009
- Corporate and financial reports since 2009; and bank accounts and corporate locations
- Employees who have worked under the staffing agreement with OnlineNIC
- Payments between 35.CN and OnlineNIC; and payments to Carrie Yu
- California contracts (note how the few third-party contracts that exist are in Chinese)

**Arguments**

**Meta's present arguments lack merit.** Meta's arguments have been discussed at length and largely briefed before. Although Meta asks for an order that 35.CN "cure" perceived "deficiencies," there are no outstanding issues. 35.CN addresses each numbered dispute below:

<u>First</u>, Meta argues that 35.CN is obscuring objections. However, Meta's argument is based on prior, now superseded, versions of 35.CN's discovery responses. 35.CN position is clear that it is not currently withholding any specific, or a category of, documents, based on Chinese law. In

1

particular, RFPs 1-13 seek corporate materials from 2002 and 2007. 35.CN has provided the requested information since it went public a dozen years ago, i.e., well before Meta's claims arose. Meta fails to identify any basis for seeking earlier records, and a protective order is warranted.

Second, Meta argues that 35.CN provided no log for "problem documents under Chinese law." However, there was not any need for such a log, as nothing is withheld due to Chinese law.

Third, Meta falsely argues that 35.CN has not indicated what documents are being withheld. Meta's argument is based on prior, now superseded, versions of 35.CN's discovery responses.

Fourth, Meta alleges that 35.CN has unfairly made new objections. However, Meta pushed 35.CN to respond to hundreds of discovery requests before it was ready, complained about 35.CN over-objecting, and now tries to assert a waiver of objections where, for example, objectionable issues were not clear until the parties discussed Meta's intent and interpretations.

Fifth, Meta alleges that 35.CN has not verified its interrogatory responses. However, as conveyed to Meta, the verification is in process through a complicated process in China.

Sixth, Meta alleges 35.CN has failed to adequately amend responses. Not so. 35.CN has amended it responses, withholding documents only the two categories explained (#1 and #7 herein).

Seventh, Meta argues 35.CN must produce contracts in states other than California. Meta is wrong. Meta's SAC and the Court's order relating to jurisdictional discovery (D.E. 207) are limited to alleged (a) general jurisdiction based on an alter ego claim with OnlineNIC (a California company), and (b) specific jurisdiction due to the staffing agreement with OnlineNIC. This case is distinguishable from cases with wide-ranging contacts with the US as a whole, as 35.CN is a Chinese company offering services in China in Chinese. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.,* 485 F.3d 450, 461 (9th Cir. 2007) (due process "presents a major stumbling block" under FRCP 4(k); and distinguishing cases, such as where defendants engaged in numerous conspiracies to bomb the World Trade Center). Notably, the SAC was explicit in its personal jurisdiction claims tied to California (see SAC ¶¶14-15); and Meta cannot now concoct new allegations.

Eighth, Facebook has alleged 35.CN has not provided materials in its possession, custody, or control. Not so. Meta's allegation is wild speculation, with no factual basis whatsoever.

Ninth, Meta alleges 35.CN has failed to translate documents under FRCP 33(d)(1). However, 35.CN amended responses do not need translations as 35.CN is not relying upon FRCP 33(d)(1).

Tenth, Meta objects to 35.CN referring in responses to documents produced by OnlineNIC. However, in amended responses 35.CN removed references to other discovery where possible.

Eleventh, Meta objects to so-called partial answers to RFAs. However, Meta's argument is based on prior, now superseded, versions of 35.CN's discovery responses. Furthermore, 35.CN's responses to RFAs are compliant, even if Meta disagrees with the answers.

Twelfth, Meta alleges 35.CN has over-designated documents as confidential under Chinese law.

However, 35.CN faces steep penalties for mis-designation of confidential materials and has taken care to accurately designate limited materials (contrary to Meta's questionable designation of previously-produced documents as confidential, such as its unfavorable "robo" emails supposedly providing notice about domain names in this case that were sent to third parties, not Defendants).

Thirteenth, Meta is exaggerating a claim that 35.CN violated a stipulated ESI order, which was entered prior to 35.CN defending this case. 35.CN has produced additional documents pursuant to the ESI order, and counsel discussed one accidental issue of duplicate records produced in Chinese.

**Meta's position lacks proportionality and reflects its suspect motives.[1]** Meta seeks millions of dollars against a domain name registrar (OnlineNIC), privacy service (ID Shield), and an alleged Chinese alter ego (35.CN), for 35 domain names registered by third parties and allegedly containing Meta's marks. In the realm of domain name litigation, this is a small case where Meta could have easily sought transfer of the domains through low-cost UDRP proceedings. Meta's requests for enterprise-wide discovery against an alleged alter ego Chinese company are not in proportion to any harm that could have been caused Defendants, especially considering Defendants themselves did not even register the domain names. The Court should consider this manifest lack of proportionality, and the highly suspect motives of Meta, and close this discovery dispute.

KRONENBERGER ROSENFELD, LLP
By: /s/Karl S. Kronenberger

Karl S. Kronenberger
Attorneys for Defendant
XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD.

---

[1] What is Meta's true motive with this motion? Meta desperately wants a ruling against Defendants that is not on the merits, as its case is built on faulty facts and a legal issue of first impression (i.e. vicarious liability due to the RAA agreement). Meta's strategy—used against OnlineNIC and in other cases, including in this Court and in a similar case against Namecheap—is to use its "infinite" budget to force settlements or obtain terminating sanctions to avoid litigating on the merits. Thus Meta has invested an inordinate amount of time seeking discovery sanctions in this case, all the while stonewalling in responding to 35.CN's discovery on merits issues.