# Exhibit A
# Part 1



515 South Flower Street, Forty Second Floor | Los Angeles, CA 90071-2223 | TEL 213.430.3400 | FAX 213.430.3409

**VIA CM/ECF**                                                                                                           September 25, 2022

Magistrate Judge Alex G. Tse, U.S. District Court, Northern District of California

Re:   *Facebook Inc. et al. v. OnlineNIC Inc., et al.*, No. 3:19-cv-07071-SI (AGT)

Dear Magistrate Judge Tse:

On September 9, 2022, the parties filed a joint letter with the Court reporting the status of all outstanding discovery issues. (*See* ECF No. 263.) The evening before and the same day the parties filed their joint report, defendant 35.CN produced additional discovery that was not fully reflected in the joint letter. Contrary to 35.CN's assertion that these supplements rendered Plaintiffs' portion of the Joint Statement ("Sept. 9 J.S.") "nearly all moot" (ECF No. 263 at 15),[1] 35.CN's discovery remains significantly deficient. Plaintiffs now file this Supplemental Individual Statement regarding the discovery 35.CN served on the evening of September 8, on September 9, and on September 23, 2022.[2]

## Procedural History

In the Sept. 9 J.S., 35.CN argued it had mooted its discovery deficiencies by amending responses and producing documents just before the Sept. 9 J.S. was due. Because 35.CN provided its supplemental discovery just before filing the Sept. 9 J.S., 35.CN deprived Plaintiffs of adequate time to analyze discovery responses and productions for inclusion in that filing.[3]

## Significant Discrepancies Exist Regarding 35.CN's and OnlineNIC's Discovery

To date, 35.CN has produced public Chinese documents, documents produced by others in this litigation, a handful of documents it obtained from U.S. sources, and a few documents it appears to have created in an attempt to avoid having to produce non-public Chinese documents. In relying heavily on documents and discovery from OnlineNIC and Domain ID Shield (collectively, the "OnlineNIC Defendants"), 35.CN appears to have adopted their materially incomplete, misleading, and inconsistent discovery responses.

For example, Request For Production ("RFP") Nos. 93, 95, 97, and 99 seek documents reflecting various payments and transfers between 35.CN and OnlineNIC. (35.CN's Fourth Am. Resps. To Plaintiffs' First Set of RFPs ("35.CN's 4th RFP Resp.," attached as Exhibit 1 to Sindelar

---

[1] For consistency, Plaintiffs' pin cites reference the Clerk's ECF header page number when available.
[2] At 7:21 p.m. on September 8, 35.CN served Fourth Amended Request for Production Responses, Third Amended Request for Admission Responses, and an amended appendix to 35.CN's written discovery responses. (Declaration of Jeffrey C. Sindelar Jr. Regarding 35.CN's Supplemental Discovery ("Sindelar Decl.," attached hereto as Exhibit A) at ¶ 2.) At 9:07 a.m. on September 9, 35.CN served a ninth document production (35CN009369–17282), and at 5:11 p.m., 35.CN served a tenth document production (35CN017283–91). (Sindelar Decl. ¶ 3.) On September 23, 2022, 35.CN served Fourth Amended Interrogatory Responses. (Sindelar Decl. ¶ 4.)
[3] 35.CN similarly falsely claimed to moot its discovery deficiencies in the August 5, 2022, Joint Statement ("Aug. 5 J.S.") by amending its discovery responses and supplementing productions the afternoon of August 5. (ECF No. 258.04 at 2.)

Tucker Ellis LLP

Magistrate Judge Alex G. Tse
September 25, 2022
Page 2

Decl.).) In its Third Amended RFP Responses, 35.CN ███████████████████████████
████████████████████████████████ (35.CN's Third Amended Responses to Plaintiffs' First Set of
Requests For Production (ECF No. 259-06).) In 35.CN's Fourth Amended RFP responses, it amended
its responses to RFP Nos. 93, 97, and 99 to indicate ████████████████████████████
███████████ (35.CN's 4th RFP Resp. Nos. 93, 95, 97, 99.) To date, 35.CN's productions responsive
to these RFPs appear to consist solely of ████████████████████████████████████
████████████████████████████████ (Sindelar Decl. ¶ 9 & Exs. 5–6 (35CN009422–23).) These
█████████████████████████████████████████████████████████████████████ Special
Court Ordered Interrogatory Response ("Special Interrog. Resp.") Nos. 1–2 & Exs. 1–2, attached as
Exhibit 8 to Declaration of Howard A. Kroll In Support of Plaintiffs' Opp. to 35.CN's Motion to
Dismiss SAC ("Kroll Decl."), ECF No. 190-06 at 102, 109–10. Indeed, the ███████████████


It appears that rather than searching and producing documents in its possession responsive to
RFP Nos. 93, 95, 97, 99, 35.CN instead ████████████████████████████████████
████████████████ 35.CN has not produced any contemporaneous documents related to and
supporting these transactions, such as bank statements,[5] corporate ledgers, cancelled checks, or wire
transfer confirmations of the sort one would expect a public company to maintain. (*See* Sindelar Decl.
¶ 9.)

---

[4] Carrie Yu ("Ms. Yu"), the Vice President of OnlineNIC, and also known as Hongxia Yu, is an
employee and director of 35.CN and is paid solely by 35.CN to oversee the management of OnlineNIC.
(July 13, 2021 30(b)(6) Dep. of Carrie Yu ("Yu Dep. I," attached as Exhibit 1 to Kroll Decl.,
ECF No. 190-06) at 66:14–67:6, 69:23–70:5, 70:16–24.)
[5] 35.CN states it has now provided Plaintiffs with documentation of its bank accounts, apparently
referring to a ███████████████████████████████████████████████████████
███████████ (Sindelar Decl. ¶ 11 & Ex. 7.) This ███████████████████████████████
█████████████████████████████████ *Id.* █████████████████████████████████
█████████████████████████ (Sindelar Decl. ¶ 11.) Thus, rather than producing its actual bank
statements, 35.CN appears to have ████████████████████████████████████████.
Similarly, in response to RFP Nos. 62–63, requesting communications and documents related to
payments 35.CN made to Carrie Yu, 35.CN asserts it has no communications in its possession,
custody, or control, and ████████████████████████████████████████████████
(Sindelar Decl. ¶¶ 12–14.) ████████████████████████████████████████████████
████████████████████████ (Sindelar Decl. ¶ 14.) Again 35.CN has ███████████████
█████████████████ and failed to produce contemporaneous documents related to and
supporting these payments, such as pay statements, expense reports, transaction register journal
entries, cancelled checks, or tax reporting documents.

35.CN's failure to produce any such underlying documents and ▮▮▮ raises further questions regarding transactions between 35.CN and OnlineNIC. For instance, OnlineNIC represented that it ▮▮▮ (Special Interrog. Resp. 1 & Ex. 1 (ECF No. 190-06 at 109).) ▮▮▮ (Special Interrog. Resp. 2 and Ex. 2 (ECF No. 190-06 at 110).)

Accordingly, 35.CN also has now joined OnlineNIC in *falsely* representing that ▮▮▮ (Special Interrog. Resp. 2 & Ex. 2; Sindelar Decl. ¶ 15 (citing ▮▮▮); 35.CN's 4th Am. RFP Resp. Nos. 93, 95, 97 & 99; 35.CN's 3d Am. Resp. to Interrog. No. 2 (ECF No. 259-04 at 6; referencing and adopting OnlineNIC's Special Interrog. Resp. 2), No. 16 (ECF No. 259-04 at 13, referencing and adopting OnlineNIC's Special Interrog. Resp. No. 2 & Ex. 2).)

▮▮▮ (Kroll Decl. ¶ 11 & Ex. 9.) As examples of ▮▮▮ *Id.* ▮▮▮ While 35.CN may claim that this ▮▮▮ was partial payment for outsourcing services, the bank statements OnlineNIC provided ▮▮▮

In addition to these inconsistencies, 35.CN omits significant information regarding Shaohui Gong's ("Gong") ownership of OnlineNIC. 35.CN suggests Gong—the founder of OnlineNIC and 35.CN—long ago ceased any involvement in OnlineNIC, stating that in "2007, Gong sold OnlineNIC to an unrelated individual named Rex Lieu." ECF No. 263 at 15. The 2007 sale to Rex Lieu is consistent with 35.CN's Initial Public Offering documents (July 14, 2021 30(b)(6) Dep. of Carrie Yu ("Yu Dep. II," Exhibit 2 to Kroll Decl., ECF No. 190-06) at 73:14–74:9, 75:4–9, 76:15–77:10) and a newly-produced ▮▮▮ (Exhibit 4 to Sindelar Decl.).

But 35.CN neglects to mention that ▮▮▮ (Kroll Decl. ¶ 14 & Ex. 12; Yu Dep. II at 40:22–42:5, 43:7–44:8 & Ex. 10 at OnlineNIC284230, Ex. 11 at OnlineNIC284270.) And both the purported 2007 sale to Rex Liu and ▮▮▮ in 2009 Mr. Gong sold his interest in OnlineNIC to Zippo Chen ("Ms. Z. Chen") for ▮▮▮ pursuant to an oral contract. (Yu Dep. I at 32:1–3; Yu Dep. II at 15:4–12, 39:10–15, 42:6–19 (▮▮▮), 43:7–44:8 (▮▮▮).) In addition, as a registrar, OnlineNIC is required to inform ICANN of any ownership transfers. (*See* RAA §§ 3.17, 7.3.2 & Registrar Information Specification ¶ 15 (SAC Ex. 4 (ECF No. 109-04) at 23, 37, 66).) But OnlineNIC

never informed ICANN that Mr. Gong sold OnlineNIC to Rex Liu in 2007 (Kroll Decl. ¶ 19) or to Ms. Z. Chen in 2009 (Yu Dep. II at 16:15–17:13). Neither 35.CN nor OnlineNIC have explained these inconsistencies.[6]

Contrary to 35.CN's assertion that 35.CN and OnlineNIC's common ownership and control ended fifteen years ago, the evidence to date suggests Gong's presence persists in both companies. 35.CN's discovery indicates Gong is still the largest shareholder of 35.CN and was one of three officers and one of two directors as late as 2018. (Appendix A to 35.CN's Further Amended and Supplemental Written Discovery Requests (Sindelar Decl. Ex. 3 at 13–18).)

Despite all of this, 35.CN argues Plaintiffs are seeking irrelevant corporate documents dating back twenty years and that Plaintiffs' "screed . . . reflects how Meta is simply livid about how there are just no documents supporting Meta's strained theory of the case." ECF No. 263 at 15. 35.CN ignores that Plaintiffs have pointed the Court to evidence that raises serious questions regarding the alter ego relationship between 35.CN and OnlineNIC. Opp. to 35.CN's Mot. to Dismiss SAC (ECF No. 109-05) at 4:15–11:15 (ECF pp. 9–16); Order Denying 35.CN's Motion to Dismiss (ECF No. 207) at 7–9 (finding Plaintiffs raised "serious questions" about the relationship between 35.CN and OnlineNIC, holding Plaintiffs made a prima facie showing of alter ego, and ordering the parties to proceed with discovery); Order Denying 35.CN's Motion to Bifurcate (ECF No. 226) at 6:13–22 (holding "there are serious questions of fact as to alter ego that the parties need to explore" and that in order to "understand whether [allegations of spoliation of evidence] extend to 35.CN . . . additional non-bifurcated discovery is required including with respect to the issue of alter ego"); July 20, 2022 Hearing Tr. (hereinafter "Tr.") 4:2–8 (finding no dispute Plaintiffs' discovery related to alter ego and personal jurisdiction, which Court previously held were relevant issues), 47:24–48:23 (relevance of discovery sought was not in dispute).

## Arguments

**35.CN continues to obscure its objecting and withholding documents based on Chinese law (35.CN's *first*, *second*, and *third* numbered arguments).** 35.CN's September 8, 9, and 23 supplemental discovery does not cure the issues raised in Plaintiffs' portion of the Sept. 9 J.S.: (1) 35.CN has not withdrawn its objections based on Chinese law; (2) 35.CN's counsel has not indicated 35.CN is now permitting its U.S.-based counsel of record before this Court to review non-public Chinese documents; (3) 35.CN's discovery responses are still materially limited by its Chinese law objections; (4) 35.CN has not produced any non-public Chinese documents, such as internal emails, bank statements, or transaction records; and (5) 35.CN continues to rely on OnlineNIC's deficient and inconsistent discovery responses and document productions. 35.CN has previously indicated that it had submitted documents to Chinese authorities. To date, 35.CN has not produced any documents verifying its correspondence with Chinese authorities or reported the status of

---

[6] This history of misleading and inconsistent statements regarding the relationship of 35.CN and OnlineNIC is not new. In 2009, this Court found in another case that, "OnlineNIC has made multiple false or misleadingly incomplete representations to Verizon and the Court over the course of this litigation . . . [including] ***evidence of OnlineNIC's repeated misrepresentations concerning the nature of its relationship with [35.CN]***." *Verizon Cal. Inc. v. OnlineNIC, Inc.*, No. C 08-2832 JF (RS), 2009 WL 2706393, at *6 (N.D. Cal. Aug. 25, 2009) (emphasis added).

Case 3:19-cv-07071-SI    Document 268-2    Filed 09/25/22    Page 6 of 10

Tucker
Ellis LLP

Magistrate Judge Alex G. Tse
September 25, 2022
Page 5

documents purportedly being reviewed by Chinese authorities.

35.CN continues to obscure when it is objecting and withholding responsive documents based on Chinese law. 35.CN asserts it is "not currently withholding any specific, or a category of, documents, based on Chinese law." ECF No. 263 at 15. But, as 35.CN's counsel explained during the August 31 meet and confer conference, those same documents are now being withheld for other reasons. 35.CN also has stated that it is still reviewing documents, but has not explained whether it considers documents currently submitted to Chinese authorities as being withheld or whether it considers these documents as still being reviewed.

35.CN also states it is withholding documents from 1999–2007—during which time 35.CN admits Gong owned and founded both OnlineNIC and 35.CN—yet, 35.CN unilaterally suggests these documents simply are not relevant. This assertion is undermined by the inconsistent ownership representations documented above.

Further, despite representing that a log of "problem documents" being withheld due to Chinese law would be produced by August 30 (ECF No. 247 at 4; Tr. 16:21–19:2), 35.CN now states no log is necessary because it is no longer withholding documents based on Chinese law. ECF No. 263 at 16. But 35.CN does not offer an adequate explanation for this sudden change of position. 35.CN also fails to explain (1) the status of documents it allegedly submitted to Chinese authorities, (2) how many documents are pending before Chinese authorities, or (3) how many documents are being withheld for any reason. The Court should order 35.CN to produce a log detailing (1) every document currently being withheld, including the basis for withholding; (2) every document previously withheld based on Chinese law that has now been produced; and (3) every document currently pending before Chinese authorities that has not been produced to Plaintiffs.

*Fourth,* 35.CN states it is justified in raising new objections past its initial discovery deadline because Plaintiffs pushed 35.CN to respond to discovery requests before 35.CN was ready (*i.e.*, by the deadline for responding to discovery established by the Federal Rules of Civil Procedure plus the extensions Plaintiffs granted 35.CN to respond). The dispute regarding 35.CN's reliance on newly-raised objections to avoid providing discovery has not been resolved.

*Fifth,* despite being served with Plaintiffs' First Set of Interrogatories in February 2022, 35.CN has refused to verify its initial and first three amended sets of interrogatory responses. While 35.CN has now provided a verification for its recently-served Fourth Set of Amended Interrogatory Responses, it has yet to provide verification for its original and first three amended sets of interrogatory responses. This issue has not been resolved.

*Sixth*, with the exception of some interrogatory responses, all of 35.CN's discovery responses remain deficient for the reasons explained in the Sept. 9 J.S.[7] 35.CN's portion of the Joint Statement does not address the issues Plaintiffs identified. Significantly, 35.CN still refuses to answer Interrogatory No. 8, asking 35.CN to "IDENTIFY all employees of 35.CN who were involved in, or participated in, the production of discovery or the destruction of evidence in this case as described by

---

[7] Plaintiffs are continuing to analyze 35.CN's Fourth Amended Interrogatory Responses and reserve the right to address the new and outstanding deficiencies present in this latest set of amendments—including newly-raised objections.

Tucker Ellis LLP

Magistrate Judge Alex G. Tse
September 25, 2022
Page 6

the Special Discovery Master's Data Destroyed or Withheld Report." Instead, 35.CN objects that Interrogatory No. 8 is "argumentative" and "premised on a disputed fact, including as to the characterization 'destruction of evidence,'" despite the findings of the Special Discovery Master and the Court on this issue. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ In addition, 35.CN's document productions remain deficient, as described above and below. 35.CN's Third Amended Request for Admission ("RFA") Responses remain deficient for the reasons identified in the Sept. 9 J.S. and below in Argument Eleven.

**Seventh,** 35.CN is wrong that Plaintiffs cannot obtain discovery into personal jurisdiction based on Fed. R. Civ. P. 4(k)(2). As Plaintiffs explain in the Sept. 9 J.S., district courts permit discovery on Rule 4(k)(2) jurisdiction and will allow a party to amend its complaint to state jurisdiction exists under Rule 4(k) if discovery supports such jurisdiction. No case 35.CN cites stands for the proposition that a plaintiff should be denied discovery that would support Rule 4(k)(2) jurisdiction. With its Ninth Document Production, 35.CN has now ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. (Sindelar Decl. ¶ 16.) Moreover, the Ninth Circuit recently reiterated that when a foreign defendant resists jurisdiction in the forum state and refuses to identify another state where personal jurisdiction exists, the personal jurisdiction analysis should proceed under Fed. R. Civ. P. 4(k)(2). *Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1040 (9th Cir. 2022).

**Eighth,** given the inconsistencies described above and the fact that 35.CN has not produced any non-public documents located in China that have not already been produced by another entity, 35.CN has not demonstrated that it has taken reasonable steps to seek information in its possession, custody, and control, including by seeking information from people or entities under its control. 35.CN has not produced any internal emails, bank statements, transaction logs, pay statements, or internal operating procedures related to work its employees performed for OnlineNIC. 35.CN argues Plaintiffs' contention that such documents must exist is "wild speculation."[8] But OnlineNIC has already produced ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

---

[8] 35.CN does not explain how it is "wild speculation" for Plaintiffs to believe 35.CN has financial records, including bank statements, mirroring the incomplete U.S. bank transfer records produced by OnlineNIC. These records show that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (Kroll Decl. ¶ 11 & Ex. 9.)

Tucker Ellis LLP

Magistrate Judge Alex G. Tse
September 25, 2022
Page 7

███████████████████████████████████████ (Sindelar Decl. ¶ 17 & Exs. 9–11.) Despite these documents' existence, ███████████████████ 35.CN has failed to produce any such documents in its own possession. This scenario is all the more troubling because 35.CN is not permitting its U.S. counsel of record before this Court to review documents located in China, severely calling into doubt counsels' ability to perform a diligent search or attest to what documents do and do not exist.

**Ninth,** 35.CN argued its amended discovery responses no longer rely on Fed. R. Civ. P. 33(d)(1), but this discovery dispute was specific to 35.CN's Third Amended Response to Interrogatory No. 1, which 35.CN had not amended when the Sept. 9 J.S. was filed. While 35.CN's Fourth Amended Response to Interrogatory No. 1 no longer references business records it has produced, ███████████████████████████████████████████████████████████████████████ Fed. R. Civ. P. 33(d)(1); (*see* ███████████████████████████████████████████

**Tenth,** in response to Plaintiffs' dispute with 35.CN's reliance on the OnlineNIC Defendants' discovery responses and productions, 35.CN claims it has "removed references to other discovery *where possible*." ECF No. 263 at 16 (emphasis added). ███████████████████████████████████████████████████████████████████████

35.CN's Third Amended RFA Responses contain General Objection No. 5, which objects based on proportionality, undue burden, and oppression because, among other reasons, "OnlineNIC and ID Shield have already responded to hundreds of written discovery requests." 35.CN incorporates this and every general objection "by reference into each specific response to each of the Requests below as if fully set forth herein." Moreover, 35.CN specifically objects to RFA Nos. 5–8, 17–26, 29–30, and 77–78 on the basis that the OnlineNIC Defendants previously responded to similar RFAs.

Similarly, 35.CN's Fourth Amended RFP Responses contain General Objection No. 6, which objects based on the OnlineNIC Defendants responding to similar discovery and is incorporated into each specific RFA response. While 35.CN has withdrawn its objections based on discovery directed to other parties for some RFPs, its amended responses raise other issues. For example, in response to RFA Nos. 72–75, requesting categories of documents related to ICANN, 35.CN has merely reproduced ICANN's entire production in this case, rather than searching and producing documents from 35.CN's files.[9] This reproduction is also deficient and violates the ESI Order, as explained below in Argument Thirteen. As another example, in response to RFP Nos. 78–79, 87–89, 92–93, 97, and 99, 35.CN has withdrawn its objections based on discovery directed to the OnlineNIC Defendants, but now appears to have simply produced information it copied from the OnlineNIC Defendants'

---

[9] 35.CN's practice of reproducing documents previously produced by the OnlineNIC Defendants and ICANN appears designed by 35.CN's counsel to circumvent 35.CN's obligation to perform a diligent search of its own files, while still claiming that it has produced responsive documents and avoiding informing the Court that it is not producing Chinese documents in its possession due to Chinese law.

Tucker Ellis LLP

Magistrate Judge Alex G. Tse
September 25, 2022
Page 8

discovery, such as ███████████████████████, with all of their attendant problems.

***Eleventh,*** contrary to 35.CN's claim that it mooted deficient RFA responses containing vague, partial admissions or denials, 35.CN's Third Amended RFA Responses remain rife with such deficiencies. The same deficiencies identified in the Sept. 9 J.S. remain, in particular in 35.CN's responses to RFA Nos. 1–18, 30, 42–43, 46, 70–75, 81, and 113.

***Twelfth,*** 35.CN inappropriately designated certain discovery ***responses*** as "confidential," claiming disclosure of those responses "may violate Chinese law." *See* ECF No. 260 at 5:7–9. 35.CN does not address this deficiency, instead responding that "Meta alleges 35.CN has over-designated ***documents*** as confidential under Chinese law." ECF No. 263 at 16 (emphasis added). In refusing to address these deficiencies, 35.CN still maintains unexplained confidentiality designations for the following discovery ***responses***: Fourth Am. Resps. to Interrog. Nos. 8 and 15–18; Third Am. RFA Resp. Nos. 37, 43–44, 112–13, and 115–18; and Fourth Am. RFP Resp. No. 62.

***Thirteenth***, 35.CN has not cured its violations of the Federal Rules of Civil Procedure and the Court's ESI Order. In fact, 35.CN has engaged in further blatant ESI violations. Contrary to 35.CN's suggestion, this is not a single, isolated incident. Rather, 35.CN's third through eighth productions each consist of a single PDF file made up of numerous separate Chinese-language documents. In total, the six PDF files comprising these six productions total over eight thousand pages, without required metadata and no apparent organization. For example, 35.CN's fourth production spans over fourteen hundred pages and contains multiple copies of identical documents, including thirteen identical copies of 35.CN's 2009 Annual Report and twelve identical copies of 35.CN's 2012 Annual Report. 35.CN has not cured these violations.

Further, despite specifically stating on September 9 that its ninth production complied with the ESI Order (Sindelar Decl. ¶ 18), this production is also rife with ESI violations. Documents are missing metadata. One nine-page document was produced as nine separate single-page PDF files. (Sindelar Decl. ¶ 19.) Most troubling, 35.CN appears to have attempted to reproduce ICANN's entire document production as a single 7,843-page PDF. (Sindelar Decl. ¶ 20.) Beyond the issues raised by 35.CN reproducing another party's production instead of performing a diligent search and producing documents from its own files, 35.CN's reproduction contains numerous ESI Order violations. 35.CN once again produced a single PDF containing numerous documents, instead of producing each separate document as a separate PDF. (Sindelar Decl. ¶ 21.) And despite including slip sheets indicating certain files were produced in native format, 35.CN did not produce these files in native format. (Sindelar Decl. ¶ 22.) Instead, 35.CN generated PDF pages from these files, which span thousands of largely blank or indecipherable pages, which is why 35.CN's reproduction of ICANN's production spans 7,873 PDF pages, and ICANN's original production spans only 1,196 PDF pages. (Sindelar Decl. ¶ 22.) In total, this mishandling of native file productions accounts for 6,647 pages of the 7,903 pages in 35.CN's Ninth Document Production.[10] (Sindelar Decl. ¶ 22.) For context, this accounts for over 38% of the 17,291 pages 35.CN has produced to date through its Tenth Document Production. (Sindelar Decl. ¶ 22.) These violations remain in dispute and are ongoing.

---

[10] One file that should have been produced in native format accounts for 6,100 pages. (Sindelar Decl. ¶ 23.) For another file, 35.CN produced a native file production slip sheet without producing the respective native file or any PDF pages. (Sindelar Decl. ¶ 24.)

**Conclusion**

For these reasons, 35.CN's discovery remains materially deficient, and a Court order to cure these deficiencies is necessary to compel compliance and move discovery forward in this case.

TUCKER ELLIS LLP
By: /s/David J. Steele

David J. Steele
Attorneys for Plaintiffs,
META PLATFORMS, INC. (fka FACEBOOK, INC.) and INSTAGRAM, LLC