```
 1                 UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
 2                      SAN JOSE DIVISION

 3
        FACEBOOK INC., ET AL.,
 4
                 PLAINTIFFS,          CASE NO.  CV-19-07071-SI
 5
          VS.                         SAN JOSE, CALIFORNIA
 6
        ONLINENIC INC., ET AL.,       NOVEMBER 10, 2020
 7
                 DEFENDANTS.          PAGES 1 - 31
 8

 9
                    TRANSCRIPT OF PROCEEDINGS
10           BEFORE THE HONORABLE SUSAN VAN KEULEN
                 UNITED STATES DISTRICT JUDGE
11

12      A-P-P-E-A-R-A-N-C-E-S

13
        FOR THE PLAINTIFFS:   TUCKER ELLIS LLP
14                            BY:  DAVID J. STEELE
                                   HOWARD A. KROLL
15                            515 SOUTH FLOWER STREET, 42ND FLOOR
                              LOS ANGELES, CALIFORNIA 90071
16

17      FOR THE DEFENDANTS:   LEXANALYTICA, PC
                              BY:  PERRY J. NARANCIC
18                            2225 E. BAYSHORE ROAD, SUITE 200
                              PALO ALTO, CALIFORNIA 94303
19

20      OFFICIAL COURT REPORTER:    IRENE L. RODRIGUEZ, CSR, RMR, CRR
                                    CERTIFICATE NUMBER 8074
21

22         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
        TRANSCRIPT PRODUCED WITH COMPUTER.
23

24

25
```

```
1    SAN JOSE, CALIFORNIA                    SEPTEMBER 28, 2022

2                   P R O C E E D I N G S

3        (COURT CONVENED 10:05 A.M.)

4            THE CLERK:  THE LAST MATTER ON THE 9:30 CALENDAR IS

5    FACEBOOK VERSUS ONLINENIC, INC.  PLEASE RAISE YOUR HAND IF YOU

6    NEED TO BE PROMOTED INTO THIS HEARING.

7            THE COURT:  ALL RIGHT.  LET'S GO AHEAD AND CALL THE

8    MATTER IF WE'VE GOT EVERYONE PRESENT, PLEASE, MS. FANTHORPE.

9            THE CLERK:  CERTAINLY.

10       I ALSO HAD A MR. LAURIDSEN.  I'M NOT SURE IF HE'S

11   APPEARING BY VIDEO OR JUST AS AN ATTENDEE.

12           MR. STEELE:  I BELIEVE HE'S JUST GOING TO APPEAR AS

13   AN ATTENDEE.

14           THE COURT:  OKAY.  PERFECT.  THANK YOU.

15       CALLING CASE NUMBER 19-CV-7071, FACEBOOK INC., ET AL.,

16   VERSUS ONLINENIC INC., ET AL.

17       COUNSEL, PLEASE IDENTIFY YOURSELVES FOR THE RECORD

18   BEGINNING WITH THE PLAINTIFF.

19           MR. STEELE:  GOOD MORNING, YOUR HONOR.

20       DAVID STEELE FOR PLAINTIFFS.

21           THE COURT:  MR. STEELE, YOUR VOLUME IS QUITE LOW SO

22   IF YOU CAN --

23           MR. STEELE:  I'LL ATTEMPT TO ADJUST THAT,

24   YOUR HONOR.

25           THE COURT:  AH, THAT IS MUCH BETTER.  MUCH BETTER.
```

1        GOOD MORNING AND THANK YOU.

2                    MR. KROLL:  GOOD MORNING, YOUR HONOR.  GOOD MORNING,

3        YOUR HONOR.

4                HOWARD KROLL ALSO ON BEHALF OF THE PLAINTIFFS.

5                    THE COURT:  MR. KROLL, GOOD MORNING.

6                MR. NARANCIC, YOU'RE ON MUTE.  THERE YOU GO.

7                    MR. NARANCIC:  GOOD MORNING, YOUR HONOR.

8                PERRY NARANCIC FOR THE DEFENDANTS.

9                    THE COURT:  MR. NARANCIC, GOOD MORNING.

10               ALL RIGHT.  WE'RE ON TODAY FOR A FURTHER CASE MANAGEMENT

11       CONFERENCE AND THE PARTIES ALSO HAVE THEIR IMPENDING, I GUESS,

12       CONFIDENTIALITY DISPUTE, AND I'D LIKE TO DEAL WITH ALL OF THOSE

13       ISSUES TODAY IF I'VE GOT THE RIGHT COUNSEL.

14               SO, MR. KROLL, MR. STEELE, ARE EITHER ONE OF YOU PREPARED

15       TO ADDRESS THE CONFIDENTIALITY, CONFIDENTIALITY DISPUTE?

16                   MR. STEELE:  YES, YOUR HONOR, WE CAN BOTH HELP WITH

17       THAT.

18                   THE COURT:  THANK YOU.  AND MR. NARANCIC?

19                   MR. NARANCIC:  LIKEWISE, YOUR HONOR.

20                   THE COURT:  OKAY.  EXCELLENT.

21               WELL, LET'S START WITH ANY GENERAL STATUS CONFERENCE

22       ISSUES.  I APPRECIATE THE PARTIES GETTING ME THE SUPPLEMENTAL

23       STATEMENT, AND I UNDERSTAND EVERYBODY BACK AND FORTH A LITTLE

24       BIT RESERVING ALL OF MY RIGHTS TO BRING MOTIONS TO COMPEL OR

25       OPPOSE THOSE AS NECESSARY ON BOTH SIDES.  THAT'S FINE.  NONE OF

1       THAT IS BEFORE ME AT THIS TIME.  I DID GIVE YOU A RECENT

2       EXTENSION OF A COUPLE OF MONTHS.  I AM VERY CAREFUL WITH

3       EXTENSIONS.  I KNOW THINGS HAVE BEEN A LITTLE BIT SLOWER, A

4       LITTLE BIT HARDER TO LITIGATE, BUT WE'RE WORKING HARD TO KEEP

5       OUR CASES ON TRACK AND ON CALENDAR, AND I EXPECT COUNSEL TO BE

6       DOING THE SAME.  IT LOOKS LIKE THAT CERTAINLY HAS BEEN

7       HAPPENING IN THIS CASE.

8           THERE IS A REFERENCE BY PLAINTIFFS TO A POSSIBLE NEW

9       PARTY, BUT THEY MAY WANT TO MOVE TO AMEND.  I DID NOTE THAT THE

10      DEADLINE TO AMEND TO ADD PARTIES HAS EXPIRED IN THIS CASE, BUT

11      YOU CAN ALWAYS, ALWAYS MAKE A CASE TO THE COURT SHOULD THE NEED

12      ARISE, AND, OF COURSE, ANY NEW PARTY COMING INTO THE CASE WOULD

13      HAVE TO CONSENT TO THIS COURT'S JURISDICTION.

14          BEFORE I TURN SPECIFICALLY TO THE CONFIDENTIALITY ISSUES,

15      ARE THERE ANY OTHER ISSUES OR COMMENTS?

16          AGAIN, I WENT BACK TO THE FILE AND I READ THE STATEMENT,

17      BUT IS THERE ANYTHING ELSE THAT YOU WANT TO BRING TO THE

18      COURT'S ATTENTION?  I'M NOT GOING TO ENTERTAIN DISCOVERY

19      DISPUTES THAT ARE NOT YET RIPE, THAT IS, THEY'RE NOT BEFORE ME

20      IN MY FIVE PAGE LETTER FORMAT.

21          I SEE THAT.  I SEE IT IN YOUR STATEMENT.  I SEE BOTH SIDES

22      USE THE CONFIDENTIALITY MOTION, DO WANT, FOR WANT OF A BETTER

23      WORD, ABOUT DISCOVERY FROM EACH SIDE.  THOSE ISSUES AREN'T

24      BEFORE ME YET.  BUT ARE THERE OTHER GENERAL CASE MANAGEMENT

25      ISSUES THAT WOULD BE HELPFUL FOR US TO DISCUSS TODAY OTHER THAN

1    THE IMPENDING MOTION?

2         MR. STEELE, MR. KROLL, WHO HAS THE MIKE FOR PLAINTIFF?

3              MR. STEELE:  I THINK LIKE THE LAST TIME, YOUR HONOR,

4    PROBABLY BOTH OF US.

5         THE ONE ISSUE THAT I WOULD BRING TO THE COURT'S ATTENTION

6    WITH RESPECT TO THE POSSIBLE ADDITIONAL DEFENDANT 35 TECH, THAT

7    ENTITY, WE'VE LEARNED MORE ABOUT THEIR INVOLVEMENT WITH THE

8    OTHER DEFENDANTS, AND SO WE HAVE SERVED SOME DISCOVERY ON

9    DEFENDANTS.

10        WE ACTUALLY INTEND TO SERVE SOME ADDITIONAL DISCOVERY THIS

11   WEEK TO LEARN A LITTLE BIT MORE ABOUT THEIR INVOLVEMENT.

12        THE ISSUE PRESENTS THAT THEY ARE A CHINESE COMPANY.  ONE

13   OF THE EXISTING DEFENDANTS, DOMAIN ID SHIELD, IS A CHINESE

14   COMPANY AS WELL AND THE OTHER DEFENDANT IS A CALIFORNIA

15   CORPORATION -- EXCUSE ME.  AND SO IN THE EVENT THAT WE DECIDE

16   TO ASK THE COURT PERMISSION TO ADD 35 TECH TO THE CASE, THE

17   ISSUE THAT AT LEAST IDENTIFIES ITSELF AS ONE OF SERVICE, MR.

18   NARANCIC WAS GENEROUS ENOUGH TO ACCEPT SERVICE ON BEHALF OF

19   DOMAIN ID SHIELD, IF HE'S NOT AUTHORIZED TO DO THAT ON BEHALF

20   OF 35 TECH, THEN WE MAY HAVE SOME SERVICE RELATED ISSUES THAT

21   WOULD EXTEND THE CASE SCHEDULE A BIT, AND WE WANTED TO BRING

22   THAT TO YOUR ATTENTION.

23              THE COURT:  ALL RIGHT.

24        ALL RIGHT.  IS THERE -- AND I DON'T KNOW IF YOU CAN ANSWER

25   THIS QUESTION -- IS THERE A RELATIONSHIP OTHER THAN A

```
1      COMMERCIAL RELATIONSHIP, IS THERE A RELATIONSHIP BETWEEN

2      35 TECH OR ANY OF THE EXISTING DEFENDANTS OR IS THAT WHAT

3      YOU'RE ENDEAVORING TO DISCOVER?

4              MR. STEELE:  YES, AND YES.

5          THERE CERTAINLY IS A RELATIONSHIP THAT GOES BEYOND PURE

6      ARMS LENGTH TRANSACTIONAL RELATIONSHIP.

7          IT APPEARS THAT 35 TECHNOLOGY PROVIDES ALL OF THE

8      EMPLOYEES TO ACTUALLY OPERATE THE BUSINESS OR THE BUSINESSES OF

9      THE OTHER TWO DEFENDANTS, AND SO CLEARLY WE'RE DRILLING INTO

10     THAT A LITTLE FURTHER.

11         YEAH.  SO CERTAINLY THERE'S A RELATIONSHIP THERE THAT

12     NEEDS TO GET FLUSHED OUT A LITTLE BIT AND TRYING TO DO THAT

13     THROUGH DISCOVERY.

14             THE COURT:  ALL RIGHT.  THANK YOU.

15         MR. NARANCIC, OTHER GENERAL CASE MANAGEMENT ISSUES AND ANY

16     FURTHER ENLIGHTENMENT THAT YOU WANT TO SHARE WITH THE COURT

17     AROUND THE 35 TECH ISSUE?

18             MR. NARANCIC:  NO OTHER ISSUES FROM THE DEFENDANTS'

19     SIDE, YOUR HONOR.  AS TO 35, WE HAVEN'T HAD AN IN-DEPTH

20     CONVERSATION ABOUT THAT, AND I'M HAPPY TO HAVE THAT

21     CONVERSATION AND FACILITATE SOMETHING THAT MAKES SENSE WITH

22     FACEBOOK'S COUNSEL.

23         BUT I DON'T HAVE A LOT OF INFORMATION, OTHER THAN

24     CONFIRMING THAT 35 DOES HAVE A SERVICE ARRANGEMENT WHERE IT

25     PROVIDES EMPLOYEES AND SERVICES TO THE DEFENDANTS.
```

1          THE COURT:  OKAY.  ALL RIGHT.  WELL, I'M SURE I'LL

2     BE HEARING MORE ABOUT THAT IN THE COMING WEEKS IF NOT MONTHS.

3          ALL RIGHT.  LET'S TURN TO THE IMPENDING CONFIDENTIALITY

4     MOTION.  I APPRECIATE THAT THE BRIEFING IS NOT YET COMPLETE,

5     BUT I DO HAVE THE MOVING PAPERS AND THE OPPOSITION, AND I WENT

6     THROUGH THAT.

7          THE COURT IS VERY FAMILIAR WITH THE PROTECTIVE ORDER AND

8     THE OBLIGATIONS UNDER THAT.  SO I THOUGHT IT MADE SENSE FOR US

9     TO ADDRESS IT AT THIS TIME.

10         WHAT I SEE IS, YOU KNOW, LARGE DOCUMENT REQUESTS.  I'M NOT

11    MAKING ANY JUDGMENT AS TO WHETHER OR NOT THAT WAS -- YOU KNOW,

12    IT'S OVERBROAD OR TOO LARGE IN SCOPE, BUT, YOU KNOW,

13    COMPREHENSIVE DOCUMENT REQUESTS, A RESPONSE BY DEFENDANT, WHICH

14    APPEARS TO BE, OKAY, WELL, WE'LL JUST TURN EVERYTHING OVER

15    AGAIN.  AGAIN, THAT MAY BE THE APPROPRIATE RESPONSE.  I'M NOT

16    JUDGING THAT.

17         AND WE'RE GOING TO MARK OUR PRODUCTION CONFIDENTIAL, WHICH

18    I CERTAINLY SEE FREQUENTLY.  AND IN ALL OF MY YEARS LITIGATING

19    THESE KINDS OF CASES WITH PRODUCTIONS OF THAT SIZE, I CERTAINLY

20    SAW THAT DONE IN CASES, OKAY, WE'RE GOING TO TURN EVERYTHING

21    OVER, WE'RE GOING TO MARK IT ALL CONFIDENTIAL, OFTEN

22    ACCOMPANIED BY AN AGREEMENT BETWEEN THE PARTIES THAT EACH

23    SIDE'S PRODUCTION WILL BE TREATED AS CONFIDENTIAL AND ANY

24    SPECIFIC ISSUES WILL BE FERRETED OUT IN THE FUTURE.

25         BUT HERE THE PROTECTIVE ORDER, AS EVERYONE ON THIS -- IN

1    THIS HEARING IS WELL AWARE, PROHIBITS, ADMONISHES AGAINST,

2    PROHIBITS MASSIVE INDISCRIMINATE DESIGNATIONS, AND I CAN'T

3    QUITE YET TELL IF THAT'S WHAT IS GOING ON IN THIS CASE OR NOT.

4    THERE CERTAINLY ARE SOME PUBLIC DOCUMENTS THAT WERE INCLUDED

5    AND MARKED "CONFIDENTIAL."

6        SO I HAVE A THOUGHT.  I HAVE SOME THOUGHTS ON HOW TO GO

7    FORWARD IN A REASONABLE MANNER THAT I THINK HELPS TO ADDRESS

8    THE ISSUE WITHOUT OVERBURDENING EITHER SIDE.  I DO KEEP THE

9    RUBRIC OF PROPORTIONALITY IN MIND, BUT IT'S ALSO IMPORTANT THAT

10   EVERYONE FOLLOW THE GUIDELINES IN THE MODEL PROTECTIVE ORDER

11   OTHERWISE THE MODEL ORDER GOES AWAY.

12       BUT LET ME GET A LITTLE BIT MORE INFORMATION.

13       MR. NARANCIC, TELL ME A LITTLE BIT MORE ABOUT THE

14   PRODUCTION.  I UNDERSTAND THERE'S A SET OF DOCUMENTS, MAYBE IT

15   WAS 24,000 DOCUMENTS, IF I WAS READING THROUGH THE NUMBERS

16   CORRECTLY, AND THEN -- THAT ARE MARKED CONFIDENTIAL, AND THEN

17   THERE'S THE REGISTRATION DATABASE.

18       SO PUT THE DATABASE ASIDE FOR THE MOMENT, AND I'LL TURN TO

19   THAT.  JUST TELL ME ABOUT THE DOCUMENT PRODUCTION.

20       WHAT IS THAT COMPRISED OF?  IS IT ALL EMAILS OR IS IT

21   SUBSTANTIALLY EMAILS?  WHAT ARE THE COMPONENTS OF THAT

22   PRODUCTION?

23       MR. NARANCIC:  I THINK THAT THERE ARE THREE BUCKETS

24   OF DOCUMENTS SEPARATE FROM THE REGISTRATION DATABASE WHICH I'LL

25   GET TO WHEN YOUR HONOR IS READY.

1      SO THE FIRST BUCKET WOULD BE EMAILS, INTERNAL COMPANY

2    EMAILS.  THOSE INTERNAL COMPANY EMAILS INCLUDE EMAILS ON

3    BUSINESS OPERATIONS, AND THEY ALSO INCLUDE SUPPORT EMAILS FOR

4    CUSTOMERS SEEKING SUPPORT.

5      AS AN EXAMPLE, AN EMAIL MAY COME IN FROM CUSTOMER 1 OR A

6    COMPLAINANT, A TRADEMARK OWNER WHO COMPLAINS, AND THERE MAY BE

7    SOME BACK IN FORTH IN THAT EMAIL, AND IN THAT EMAIL IT WILL

8    TYPICALLY COME FROM A DESKTOP COMPUTER, SO AN EMPLOYEE'S OR

9    CONSULTANT'S INDIVIDUAL LAPTOP COMPUTER WHICH IS LOADED WITH AN

10   EMAIL APPLICATION SUCH AS OUTLOOK, FOR INSTANCE.

11     IN ADDITION TO THOSE INTERNAL EMAILS, THE SECOND BUCKET

12   ARE A DATABASE, IF YOU WILL, OF SUPPORT TICKETS.

13     SO YOUR HONOR MAY BE FAMILIAR WITH PROPRIETARY DATABASES

14   THAT ARE SUPPORT TICKET SYSTEMS, AND THOSE ARE TICKETS THAT

15   COME IN, SUPPORT REQUESTS THAT COME IN FROM CUSTOMERS AND

16   SUPPORT COMES IN -- THE REQUEST COMES IN, AND THE REQUEST IS

17   GIVEN A NUMBER, AND IT CAN BE TRACKED THROUGH THE SUPPORT

18   SYSTEM.  SO THOSE ARE THE SECOND CATEGORY OF DOCUMENTS THAT

19   WERE PRODUCED.

20     AND THEN THE THIRD CATEGORY OF DOCUMENTS, I THINK, ARE

21   LOOSE, WHAT I'LL CALL LOOSE FILES, WHICH ARE FILES THAT WERE

22   MAINTAINED IN VARIOUS PLACES IN THE COMPANY EITHER IN PAPER OR

23   ELECTRONIC FORMAT.  AN EXAMPLE OF THAT WOULD BE, FOR INSTANCE,

24   CORPORATE RECORDS, TAX RETURNS, STANDARD OPERATING PROCEDURE

25   DOCUMENTS, THINGS OF THAT SORT THAT AREN'T STORED IN A SINGLE

1    REPOSITORY BUT ARE KIND OF DISTRIBUTED THROUGHOUT THE COMPANY.

2    SO I THINK THAT FAIRLY DESCRIBES THE THREE CATEGORIES OF

3    DOCUMENTS IN THAT DATA SET OF UNSTRUCTURED DATA.

4          THE COURT:  OKAY.  AND DO YOU HAVE ANY -- DO YOU

5    HAVE A BREAKDOWN OF THE RELATIVE SIZES OF THOSE BUCKETS?  THAT

6    IS, IF I'M RIGHT ABOUT IT BEING 24,000 DOCUMENTS, AND CORRECT

7    ME IF I'M STARTING IN THE WRONG PLACE, BUT SORT OF HOW DOES

8    THAT BREAK OUT BETWEEN THOSE THREE?

9          MR. NARANCIC:  WELL, I CAN GIVE THE COURT MY

10   ESTIMATE BASED ON WHAT I KNOW.  I CAN'T GIVE PRECISE NUMBERS.

11         THE COURT:  THAT'S ALL I CAN ASK FOR.

12         MR. NARANCIC:  I WOULD SAY THAT OF THE 28,000

13   DOCUMENTS THAT WERE PRODUCED, THE VAST MAJORITY ARE THE EMAILS

14   AND SPECIFICALLY WHAT I'LL CALL THE INTERNAL EMAILS.

15     AND THE SUPPORT TICKETS, I'M GOING TO ACTUALLY HAVE A

16   CONFERENCE WITH MY COLLEAGUES, MR. STEELE AND MR. KROLL, LATER

17   TODAY ON THIS ISSUE.  WE WILL BE ABLE TO PRODUCE THE NATIVE

18   FILES OF THE SUPPORT TICKETS.  SO THERE'S A LARGE AMOUNT OF

19   SUPPORT TICKET DATA, AND PREVIOUSLY WE'VE PROVIDED THOSE KIND

20   OF COLLECTED FILES, AND WE WILL PRODUCE THOSE INDIVIDUAL FILES,

21   BUT TO ANSWER YOUR QUESTION DIRECTLY, OF THE 28,000, THE VAST

22   MAJORITY ARE INTERNAL EMAILS.

23         MAYBE I CAN USE THIS OPPORTUNITY VERY QUICKLY TO --

24         THE COURT:  WELL, WAIT.  TELL ME, DO YOU HAVE ANY

25   REASONABLE ESTIMATE ON THE LOOSE FILES OR THE MISCELLANEOUS

1    FILES?

2              MR. NARANCIC:  I WOULD SAY 24,000.

3              THE COURT:  I'M SORRY?  24?

4              MR. NARANCIC:  OH.  I'M SORRY, OF THE 20 -- AND

5    MAYBE I'M MISUNDERSTANDING YOUR QUESTION.  THERE ARE 28,000

6    DOCUMENTS.

7              THE COURT:  UH-HUH.

8              MR. NARANCIC:  DOCUMENTS WITH CONTROL NUMBERS.

9              THE COURT:  RIGHT.

10             MR. NARANCIC:  DOCUMENT 1, DOCUMENT 2, ET CETERA.

11        OF THOSE 28,000, I'M ESTIMATING THAT AROUND 24,000, MY

12    ESTIMATE, ABOUT 24,000 DOCUMENTS ARE EMAILS.

13             THE COURT:  OKAY.  AND ABOUT HOW MANY ARE THE LOOSE

14    FILES?

15             MR. NARANCIC:  I WOULD SAY THAT THE REMAINDER OF

16    THAT WOULD BE ABOUT THE 4,000 OR SO.

17             THE COURT:  OKAY.

18             MR. NARANCIC:  THIS IS MY BEST ESTIMATE, YOUR HONOR,

19    BUT I BELIEVE THAT'S ACCURATE.

20             THE COURT:  I UNDERSTAND.  I UNDERSTAND.

21             MR. NARANCIC:  I'M TRYING TO BE BRIEF.

22        MAY I JUST PROVIDE -- I'M VERY SENSITIVE TO THE, TO THE

23    IMPORTANCE OF TRYING TO MAKE THESE DESIGNATIONS IN GOOD FAITH,

24    AND I DO WANT TO EMPHASIZE THAT I DID -- IN MANY CASES I DID A

25    LINE-BY-LINE, PAGE-BY-PAGE REVIEW FOR RELEVANCE AND

1    CONFIDENTIALITY.  AND AS A RESULT OF THE -- THERE ARE ABOUT

2    4,000 DOCUMENTS THAT WERE NOT, NOT DESIGNATED AS CONFIDENTIAL.

3         THE COURT:  RIGHT, 4,000 OF THE 28.

4         MR. NARANCIC:  THAT'S CORRECT.

5    AND I JUST WANT TO BE CLEAR THAT THIS WAS NOT I'M GIVING

6    YOU EVERYTHING AND I'M MARKING EVERYTHING CONFIDENTIAL.  THAT'S

7    NOT THE CASE.  I SPENT A LOT OF HOURS GOING THROUGH THIS.

8    BUT IT IS TRUE THAT, AND I STATE THIS IN THE PAPERS, THAT

9    FOR PUBLIC FACING EMAILS LIKE ALL EMAILS COMING FROM

10   ABUSE@ONLINENIC.COM, WHICH IS A PUBLIC FACING EMAIL ALIAS, I

11   DID A REVIEW OF THOSE AND I DETERMINED, LOOK, THERE IS JUST TOO

12   MUCH HERE.  I DON'T KNOW WHOIS A MEMBER OF THE EU AND WHOIS A

13   RESIDENT OF THE EU AND THEREFORE --

14        THE COURT:  LET ME JUST STOP YOU THERE,

15   MR. NARANCIC, BECAUSE I DON'T NEED FURTHER ARGUMENT ON THAT.  I

16   DID READ THE PAPERS AND THE DECLARATIONS, AT LEAST NOT AT THIS

17   TIME.

18        OKAY.  SO NOW TELL ME ABOUT THE REGISTRATION DATABASE.

19        MR. NARANCIC:  THE REGISTRATION DATABASE IS THE

20   OPERATIONAL DATABASE THAT THE COMPANY USES TO CONDUCT ITS

21   REGISTRATION OPERATIONS.

22        THE COURT:  UH-HUH.

23        MR. NARANCIC:  THE ONLINENIC PRINCIPALLY HAS

24   CUSTOMERS WHO ARE SO-CALLED RESELLERS, RESELLERS.

25        IN OTHER WORDS, THE VAST MAJORITY OF ONLINE CUSTOMERS ARE

1    NOT INDIVIDUALS LIKE ME WHO WOULD GO ONLINE AND SAY, YOU KNOW,

2    I WOULD LOVE TO REGISTER ABC.COM, FOR INSTANCE, AS AN

3    INDIVIDUAL, OR AS A COMPANY FOR THAT MATTER, RATHER ONLINENIC

4    IS BASICALLY A WHOLESALER AND SELLS ACCESS TO ITS REGISTRATION

5    PLATFORM TO RESELLERS.

6         AS AN EXAMPLE, RESELLER ONE, YOU KNOW, MARKETS ITSELF AS A

7    DOMAIN NAME OR REGISTRAR OR THE AVAILABILITY TO PROVIDE THOSE

8    SERVICES, AND THEN RESELLER ONE HAS A RELATIONSHIP WITH

9    ONLINENIC WHEREBY THE RESELLER IS GRANTED ACCESS DIRECTLY OR

10   INDIRECTLY TO ACTUALLY MAKE THOSE REGISTRATIONS.

11        SO THE VAST MAJORITY, OVER 90 PERCENT I'M TOLD, OF

12   ONLINENIC CUSTOMERS, ARE THESE TYPES OF CORPORATE RESELLERS.

13            THE COURT:  UH-HUH.  OKAY.  SO WHAT IS IN THE

14   REGISTRATION DATABASE?

15            MR. NARANCIC:  YES, I'M SORRY.

16        SO THE REGISTRATION DATABASE WILL INCLUDE INFORMATION

17   ABOUT THEIR CUSTOMERS, FOR INSTANCE, SUCH AS RESELLER NUMBER

18   ONE.

19        SO AS AN EXAMPLE, RESELLER NUMBER ONE'S NAME, ADDRESS,

20   TELEPHONE NUMBER, OTHER CONTACT INFORMATION, AND THEN,

21   IMPORTANTLY, PAYMENT INFORMATION.

22        SO PAYMENT INFORMATION WILL INCLUDE ACH WIRE INFORMATION,

23   SPECIFIC BANK ACCOUNT INFORMATION, PAYPAL INFORMATION, THE

24   DATES AND TIMES AND THE AMOUNTS OF PAYMENTS MADE.

25            OBVIOUSLY ALL DOMAINS THAT ARE ASSOCIATED WITH A

1      PARTICULAR RESELLER WILL ALSO BE INCLUDED IN THE DATABASE.

2              THE COURT:  I'M SORRY, WHAT WAS THAT?  WHAT WOULD BE

3      INCLUDED?

4              MR. NARANCIC:  YES.  SO RESELLER ONE, FOR EXAMPLE,

5      IN MY EXAMPLE --

6              THE COURT:  JUST SAY WHAT YOU JUST SAID.  JUST

7      REPEAT WHAT YOU JUST SAID.

8              MR. NARANCIC:  ALL OF THE DOMAIN NAMES THAT ARE

9      ASSOCIATED WITH A PARTICULAR RESELLER WILL ALSO BE MAINTAINED

10     IN THE REGISTRATION DATABASE.

11             THE COURT:  OKAY.  ARE THERE ANY OTHER DOCUMENTS

12     OTHER THAN THIS, WHAT I THINK OF AS SORT OF TYPICAL CUSTOMER

13     REGISTRATION INFORMATION, YOU KNOW, CONTACT INFORMATION,

14     BILLING INFORMATION, THEIR BAG OF GOODS, HERE ARE THE DOMAIN

15     NAMES?  IS THERE ANYTHING ELSE?

16             MR. NARANCIC:  WELL, OF COURSE THERE IS ALSO THE

17     PUBLICLY AVAILABLE WHOIS INFORMATION, WHICH IS THE PUBLICLY

18     AVAILABLE INFORMATION ABOUT WHO THE REGISTRANT IS.  OBVIOUSLY

19     WE'RE NOT CLAIMING ANY CONFIDENTIALITY ON THOSE ISSUES.

20             THE COURT:  WELL, THAT I DON'T UNDERSTAND, SO TELL

21     ME HOW THAT APPEARS IN THE REGISTRATION DATABASE.  I DON'T KNOW

22     WHAT WHOIS IS.

23             MR. NARANCIC:  YES.  UNDER THE CURRENT WAY OF DOING

24     THINGS, A REGISTRANT, FOR INSTANCE, ME, I COULD GO ON TO ANY

25     ICANN REGISTERED REGISTRAR AND REGISTER A DOMAIN SUCH AS

1      ABC.COM WHERE I WOULD IN THE ORDINARY COURSE PUT MY NAME DOWN

2      AS THE REGISTRANT, AS THE OWNER, THE PERSON PURPORTING TO OWN

3      ABC.COM OR TRYING TO OWN ABC.COM, AND I WOULD PUT MY CONTACT

4      INFORMATION THERE, SUCH AS MY EMAIL ADDRESS.

5              THE COURT:  RIGHT.

6              MR. NARANCIC:  AND THIS INFORMATION, THIS

7      REGISTRATION INFORMATION IS AVAILABLE PUBLICLY THROUGH WHOIS

8      DATABASE, W-H-O-I-S, WHOIS DATABASE, WHICH IS PUBLICLY

9      AVAILABLE, AND UNDER THE ICANN RULES, WHICH IS THE GOVERNMENTAL

10     BODY THAT RUNS DOMAINS GLOBALLY, THERE IS A DUTY ON BEHALF OF

11     EACH REGISTRAR SUCH AS ONLINENIC, FOR INSTANCE, OR GODADDY OR

12     ANY OF THE OTHER MANY REGISTRARS, TO MAKE THIS INFORMATION

13     PUBLICLY AVAILABLE.

14         SO THAT IS THE WHOIS INFORMATION WHICH IS PUBLICLY

15     AVAILABLE.

16             THE COURT:  BUT FOR YOUR DATABASE ARE THE

17     REGISTRANTS, ARE THOSE THE RESELLERS?  IS THAT WHAT SHOWS?  OR

18     IS IT THE ACTUAL USER?

19             MR. STEELE:  WELL, THE -- BOTH SOMETIMES, AND THAT'S

20     KIND OF WHY WE'RE HERE.

21         IN THE ORDINARY COURSE WHAT TYPICALLY HAPPENS IS THE

22     INDIVIDUAL REGISTRANT LIKE ME, FOR INSTANCE, IF I'M CLAIMING OR

23     TRYING TO REGISTER ABC.COM, THEN MY NAME, PERRY NARANCIC, WOULD

24     APPEAR AS THE REGISTRANT, REGISTRANT FOR ABC.COM.

25             IN SOME CASES THERE ARE PRIVACY SERVICES SUCH AS

1    DOMAIN ID SHIELD, AND MANY OTHERS, WHICH IS USED BY REGISTRANTS

2    TO NOT PUBLICLY DISCLOSE THEIR NAMES ON WHOIS.

3              THE COURT:  RIGHT.

4              MR. NARANCIC:  AND MANY PEOPLE HAVE PERFECTLY

5    LEGITIMATE REASONS FOR DOING THAT.  SOME PEOPLE HAVE --

6              THE COURT:  NO, I UNDERSTAND.  I'M JUST TRYING TO

7    FIGURE OUT WHAT -- SO ON WHOIS, WHO SHOWS AS THE REGISTRANT

8    WHEN YOU'RE USING THAT SERVICE, THE SERVICE?

9              MR. NARANCIC:  THAT'S EXACTLY CORRECT.

10        SO IN THIS CASE IT WOULD BE DOMAIN ID SHIELD WHOSE NAME

11    WOULD APPEAR AS REGISTRANT RATHER THAN WHAT I CALL THE TRUE

12    REGISTRANT OR THE TRUE OWNER.

13        TO ANSWER YOUR HONOR'S QUESTION DIRECTLY, THE INTERNAL

14    REGISTRATION DATABASE WILL MAKE THE NON-PUBLIC INFORMATION

15    AVAILABLE TO FACEBOOK, WHICH IS FINE.

16              THE COURT:  I'M SORRY, SAY THAT AGAIN.

17              MR. NARANCIC:  RIGHT.  SO --

18              THE COURT:  JUST REPEAT WHAT YOU SAID.  JUST REPEAT.

19              MR. NARANCIC:  SO THE REGISTRATION DATABASE WILL

20    CONTAIN THE SO-CALLED "TRUE DATA" ABOUT WHO AND WHEN AND HOW A

21    PARTICULAR DOMAIN WAS REGISTERED EVEN THOUGH IF A PRIVACY

22    SERVICE HAS BEEN USED, THAT INFORMATION IS NOT PUBLICLY

23    AVAILABLE.

24              THE COURT:  OKAY.  SO YOU'VE MADE THE REGISTRATION

25    DATABASE AVAILABLE TO PLAINTIFFS?

1          MR. NARANCIC:  WELL, YES.  THE RESPONSIVE PARTS OF

2     THE DATABASE HAVE BEEN PRODUCED IN, AS I UNDERSTAND IT, IN

3     NATIVE FORMAT IN A DATABASE ENVIRONMENT WHICH WE SET UP FOR

4     FACEBOOK.

5          I'M TOLD THAT IT CONTAINS MILLIONS AND MILLIONS OF

6     RECORDS, INCLUDING, AS I SAID, ALL OF THE PAYMENT INFORMATION,

7     IP ADDRESS INFORMATION SUCH AS, FOR INSTANCE, BEING ABLE TO

8     TRACK THE --

9          THE COURT:  RIGHT.  SO WHAT IS THE DIFFERENT -- SO

10    IT HAS THE WHOIS.  IT HAS PUBLIC INFORMATION AND PRIVATE

11    INFORMATION.

12          MR. NARANCIC:  CORRECT.

13          THE COURT:  AND IS THERE ANY WAY TO DISTINGUISH?  I

14    MEAN, IS IT -- IS THE WHOIS INFORMATION, YOU KNOW, IS IT -- IF

15    YOU'RE LOOKING AT REGISTRATION INFORMATION FOR A PARTICULAR

16    DOMAIN, FOR ABC.COM, AND YOU'RE IN THE DATABASE, CAN YOU TELL

17    WHAT OF THAT INFORMATION IS WHOIS INFORMATION AND WHAT IS NOT?

18          MR. NARANCIC:  YES.  THE DATABASE IS COMPRISED OF

19    TABLES WITH ROWS OF INFORMATION THAT HAVE COLUMNS AND ROWS THAT

20    ARE IDENTIFIED WITH WHOIS PUBLIC INFORMATION, YES.

21          THE COURT:  OKAY.  THAT'S VERY HELPFUL.  THANK YOU,

22    MR. NARANCIC.

23          TELL ME -- AND I'M GOING TO TURN TO MR. KROLL AND

24    MR. STEELE IN JUST A MOMENT.  BUT I KNOW THE GENESIS OF THIS

25    DISPUTE, IF YOU WILL, THE PLAINTIFF SENT YOU A HANDFUL OF

1      DOCUMENTS SAYING HERE ARE PUBLIC OR EXEMPLARS OF PUBLIC

2      DOCUMENTS THAT WE'RE FINDING IN THE DATABASE.

3            GENERALLY WHAT WERE THERE?  LIKE, SIX DOCUMENTS, RIGHT?

4      WHAT WERE THOSE?  AND DO YOU KNOW WHERE THEY CAME FROM?

5                  MR. NARANCIC:  YES.  SO I CITE AT PAGE 2 OF THE

6      OPENING PAPERS.

7                  THE COURT:  UH-HUH.

8                  MR. NARANCIC:  SO ONE, FOR INSTANCE, IS A SCAN EMAIL

9      ABOUT SENT TO COMPLAINTS AT ONLINENIC.COM RELATING TO RICH

10     IVORIAN ROYALS, FOR INSTANCE.

11                 THE COURT:  RIGHT.  BUT IT CAME IN -- IT'S JUST IN

12     YOUR EMAIL STACK; IS THAT RIGHT?

13                 MR. NARANCIC:  THAT'S CORRECT.  SO IN JUST A MOMENT

14     THIS IS HOW THAT DOCUMENT GOT DELIVERED AND PRODUCED TO

15     FACEBOOK.

16                 THE COURT:  RIGHT.

17                 MR. NARANCIC:  THIS PARTICULAR EMAIL ABOUT RICH

18     IVORIAN ROYALS WAS AN EMAIL, A SCAM EMAIL, A SPAM EMAIL THAT

19     WAS SENT TO THE ALIAS COMPLAINTS AT ONLINENIC.COM WHICH IS ONE

20     OF THE ALIAS THAT WAS USED BY THE COMPANY TO INVITE MEMBERS OF

21     THE PUBLIC AND CUSTOMERS TO COMMUNICATE WITH THE COMPANY ABOUT

22     A SUPPORT ISSUE.

23                 THE COURT:  I UNDERSTAND.

24            SO TELL ME WHAT ELSE -- I DON'T WANT TO GET INTO EACH

25     INDIVIDUAL.  I'M JUST TRYING TO GET A SENSE OF THE LANDSCAPE.

1          SO THERE'S A DOCUMENT THAT COMES IN THAT'S AN EMAIL AND IT

2     GETS -- AND IT'S IN YOUR EMAIL BUCKET, BUT, IN FACT, IT IS NOT

3     A CONFIDENTIAL COMMUNICATION OF ANY KIND.  IT'S A SCAM EMAIL

4     THAT WE HAVE ALL SEEN MANY TIMES.

5          OKAY.  AND WHAT ELSE?

6               MR. NARANCIC:  OF THE SIX THAT WERE REFERRED TO ME?

7               THE COURT:  YEAH.

8               MR. NARANCIC:  YEAH.  SO AGAIN, ONE EMAIL WAS A SPAM

9     EMAIL ABOUT IVORIAN ROYALS AND ANOTHER ONE WAS AN ADVERTISEMENT

10    FOR PAIN RELIEF.  ANOTHER ONE WAS --

11              THE COURT:  SO IS THAT EMAILED TO THE COMPANY?

12              MR. NARANCIC:  YES.

13              THE COURT:  OKAY.

14              MR. NARANCIC:  IN THE CASE OF THE PAIN RELIEF SPAM,

15    IT WAS SENT TO ABUSE@ONLINENIC.COM WHICH WAS ONE OF THE KEY

16    WORDS PRODUCED BY FACEBOOK.

17         ANOTHER ONE IS ABOUT MEN'S WEAR, AND THEN ONE WAS ABOUT A

18    DOMAIN NAME TRANSFER, AND THEN THE LAST ONE WAS ABOUT A SUPPORT

19    TICKET CONTAINING CUSTOMER CONTACT INFORMATION.  THAT'S WHAT I

20    HAVE IN MY NOTES.

21              THE COURT:  OKAY.  BUT AN EMAIL ABOUT A CUSTOMER

22    SUPPORT INFORMATION -- TICKET WITH CUSTOMER INFORMATION SOUNDS

23    LIKE IT WOULD FALL IN YOUR -- WHAT YOU'VE DESIGNATED AS

24    CONFIDENTIAL.

25              MR. NARANCIC:  THAT'S MY POSITION.  AND I DON'T WANT

1    TO REPEAT MYSELF, BUT MY POSITION IS THAT UNLESS THERE'S A GOOD

2    REASON FOR DISCLOSING A MEMBER OF THE PUBLIC'S INFORMATION

3    PUBLICLY, THAT ANY TIME A MEMBER OF THE PUBLIC CONTACTS

4    ONLINENIC WITH A DISPUTE LIKE SOMEONE IS INFRINGING ABC.COM,

5    THAT THAT AUTOMATICALLY SHOULDN'T BE AVAILABLE THROUGH PACER.

6            THE COURT:  UH-HUH.  ALL RIGHT.

7        OKAY.  THANK YOU, MR. NARANCIC.  THAT'S VERY HELPFUL.

8        MR. STEELE, MR. KROLL, I KNOW -- YOU KNOW, I CAN

9    APPRECIATE THE FRUSTRATION OF, WELL, WE HAVE 28,000 DOCUMENTS

10   OR 24 THAT ARE MARKED "CONFIDENTIAL" AND WE SCROLLED THROUGH

11   THE FILES AND THERE'S A LOT OF STUFF HERE THAT IS NOT.

12       IT'S NOT UNUSUAL TO ALLOW ALL COMPANY EMAILS TO BE

13   DESIGNATED CONFIDENTIAL SUBJECT TO CHALLENGE IF AND WHEN IT'S

14   AN EMAIL THAT YOU WANT TO USE THE DATABASE SUPPORT TICKETS

15   WOULD SEEM GENERALLY TO BE CONFIDENTIAL BECAUSE THEY CONTAIN

16   CUSTOMER INFORMATION AS WOULD THE REGISTRATION DATABASE

17   INFORMATION WITH THE EXCEPTION OF THE PUBLICLY AVAILABLE, THAT

18   IS, THE WHOIS INFORMATION WHICH SEEMS NOT TOO DIFFICULT TO

19   DISCERN, ALTHOUGH I'M NOT LOOKING AT THE DATABASE.

20       AND IT SEEMS LIKE MAYBE THERE'S AN ISSUE AROUND THE,

21   AROUND THE LOOSE FILES.  I'M STILL NOT ENTIRELY CLEAR WHAT IS

22   IN THERE, BUT THAT MAY BE SOMETHING THAT WE CAN ADDRESS WITH

23   SOME REFINED SEARCHES TO BE SURE THAT THERE HASN'T JUST BEEN AN

24   INDISCRIMINATE DESIGNATION.

25       SO THAT'S KIND OF WHAT I'M THINKING IS TO HAVE DEFENDANT

1    HERE GO BACK AND DO A LITTLE BIT MORE WORK AROUND THE EDGES AS

2    TO IDENTIFYING -- BE SURE THAT THERE AREN'T LARGE SWATHS OF

3    PUBLIC INFORMATION INCLUDED, PERHAPS SOME TARGETED SEARCH FOR

4    SPAM EMAILS, BUT I CAN'T BELIEVE THAT THAT'S ACTUALLY VERY

5    PRODUCTIVE TO YOU OR YOUR CASE TO THE EXTENT THAT YOU GO

6    THROUGH AND YOU'RE USING THE DATABASE, THE PRODUCTION DATABASE

7    TO SEARCH FOR DOCUMENTS THAT YOU ARE HOPEFUL ARE RELEVANT AND

8    HELPFUL TO YOUR CASE.

9         SO I'M NOT GOING TO ORDER MAKE WORK PROJECTS.  I WANT TO

10   ENSURE THAT THE TERMS OF THE PROTECTIVE ORDER ARE BEING

11   ENFORCED.

12        TELL ME WHERE YOU ARE ON THESE ISSUES AND WHAT ARE YOUR

13   CONCERNS AND WHAT IS A CONSTRUCTIVE NEXT STEP.  AND I'M A

14   LITTLE TIGHT ON TIME, AND I HAVE A LONG LINE OF PEOPLE BACKED

15   UP ON MY 10:00 O'CLOCK CALENDAR, SO I WANT TO HEAR WHAT YOU

16   HAVE TO SAY.

17             MR. STEELE:  YES, YOUR HONOR.

18        ONE THING THAT I THINK I WOULD POINT OUT ABOUT WHAT

19   MR. NARANCIC JUST NOTED IS THAT SOME OF THE DOCUMENTS,

20   CERTAINLY THE LAST TWO OR THREE EXEMPLARS THAT WE WERE

21   DISCUSSING WERE ACTUALLY PUBLIC DOCUMENTS.

22        ONE OF THEM WAS A COURT ORDER REGARDING TRANSFERRING

23   CERTAIN DOMAIN NAMES THAT INFRINGED AND THE LIKE, AND SO THIS

24   WAS AN ACTUAL ECF DOCUMENT FROM THE EASTERN DISTRICT OF

25   VIRGINIA THAT WAS RELEVANT TO CYBER SQUADDING THAT GOES RIGHT

1        TO THE HEART OF OUR CASE.

2            SO IN THOSE INSTANCES OUR POSITION IS THAT THE MASS

3        DESIGNATION OF THOSE TYPES OF DOCUMENTS IS CONFIDENTIAL, WHEN

4        PLAINLY THEY'RE NOT IS THE PROBLEM.

5            THE ISSUE IS THAT THERE WAS ESSENTIALLY NO REVIEW OR

6        LITTLE, IF ANY, REVIEW DONE BECAUSE A DOCUMENT LIKE THAT

7        CLEARLY SHOULD HAVE BEEN FLAGGED BY WHOEVER WAS DOING THE

8        REVIEW AND MARKED AS NOT CONFIDENTIAL.

9            AND AGAIN, THOSE WERE JUST FIVE EMAILS I PULLED AT RANDOM

10       A FEW MINUTES BEFORE, ABOUT AN HOUR BEFORE OUR PHONE CALL.

11           SO I THINK THE PROBLEM THAT WE RUN INTO IS THAT THE

12       INITIAL DISCOVERY SEARCH WAS DONE IMPROPERLY, AND THEN WHEN IT

13       RESULTED IN TOO MANY DOCUMENTS TO REVIEW MANUALLY, THE DEFAULT

14       WAS, WELL, I'LL JUST MARK EVERYTHING CONFIDENTIAL.  AND

15       MR. NARANCIC'S POSITION WAS IF YOU GO THROUGH THE DOCUMENT

16       PRODUCTION AND FIND SOMETHING THAT IS NOT CONFIDENTIAL, THEN

17       YOU TELL ME.

18           THE PROBLEM THAT THAT PUTS -- REALLY IT SHIFTS THE BURDEN

19       ON TO US AND IT SPINS THE PROTECTIVE ORDER ON ITS HEAD.

20       ESSENTIALLY WE WOULD HAVE TO GO TO HIM ANY TIME WE'RE

21       CONSIDERING USING A DOCUMENT AND TELL HIM, HEY, WE'RE THINKING

22       OF USING THIS DOCUMENT IN THIS MOTION.  THAT'S JUST NOT FAIR TO

23       US.

24           SO REALLY -- THE PROBLEM IS THAT MR. NARANCIC DIDN'T

25       PROPERLY DO THE REVIEW OR WHEN HE FOUND A PROBLEM WITH THE

1    SEARCH TERMS BEING TOO BROAD, RATHER THAN COMING TO US --

2              THE COURT:  I UNDERSTAND.  THAT IS WATER UNDER THE

3    BRIDGE.  THE PRODUCTION IS WHAT IT IS.  I UNDERSTAND THE

4    BUCKETS.  I THINK THAT THERE CAN BE SOME REFINED SEARCHING

5    CERTAINLY FOR COURT ORDERS, I AGREE.

6         IT'S NOT UNUSUAL FOR -- I MEAN, YOU DON'T HAVE TO REVEAL

7    ANYTHING TO THE OTHER SIDE.  YOU KNOW, YOU DON'T NECESSARILY

8    WANT TO TIP YOUR HAND BEFORE YOU FILE A MOTION, AND I

9    APPRECIATE THAT, AND THE BURDEN IS NOT ON YOU IN THAT REGARD.

10        HOWEVER, IT IS ALSO NOT UNUSUAL TO SAY, LOOK, HERE ARE TEN

11   DOCUMENTS AND, YOU KNOW, WE DON'T THINK THEY'RE CONFIDENTIAL.

12   MAYBE THEY'RE VERY MUCH LIKE THE EXEMPLARS THAT YOU'VE SENT.

13   TELL US AND GIVE THEM A REASONABLE AMOUNT OF TIME, TWO DAYS,

14   AND TELL US IF YOU'RE GOING TO CONTEST ANY OF THESE.

15        IF YOU CAN'T ENGAGE AT THAT LEVEL, YOU FILE THEM WITH YOUR

16   MOTION UNDER SEAL AND YOU SAY, LOOK, WE'RE DOING THIS BECAUSE

17   THEY MARKED THEM AS CONFIDENTIAL, EVEN THOUGH THEY DON'T APPEAR

18   TO BE, AND THEY HAVE TO COME IN.  IT'S THEIR BURDEN TO THEN

19   COME IN AND MEET THE HIGHER STANDARD OF GETTING THEM FILED

20   UNDER SEAL.

21        NOW, YOU MADE THE POINT, AND I DON'T DISAGREE, THAT, YOU

22   KNOW, WHY BRING THE COURT, WHY PUSH US ALL DOWN THE ROAD TO

23   SEALING MOTIONS WHEN THE PROTECTIVE ORDER SETS OUT STEPS.  AND

24   IT DOES SET OUT STEPS, BUT IT ALSO RUNS INTO THE PRACTICALITY

25   OF LARGE PRODUCTIONS WHICH ARE PREDOMINANTLY EMAIL, WHICH ARE

1    OFTEN BY AND LARGE, THEY DO CONTAIN CUSTOMER INFORMATION AND

2    INFORMATION THAT IS CONFIDENTIAL AT LEAST IN THE FIRST EFFORT.

3        CLEARLY PUBLICLY AVAILABLE DOCUMENTS LIKE COURT ORDERS, I

4    AGREE, THOSE NEED TO BE SEARCHED FOR, IDENTIFIED, AND

5    DE-DESIGNATED.

6        I DON'T KNOW ABOUT THESE OTHER SORT OF COMMERCIAL OR SPAM.

7    IF THEY ARE -- IF YOU DID A SEARCH ON TO/FROM, THEY ARE BEING

8    ADDRESSED TO LEGITIMATE DEPARTMENTS AT THE DEFENDANT, WHICH IS

9    HOW THEY'RE GETTING IN, BUT THAT WOULD SEEM TO HAVE, YOU KNOW,

10   TO A CERTAIN EXTENT WE ALL HAVE TO WORK THROUGH THESE ISSUES AS

11   A PRACTICAL MATTER GOING FORWARD.

12       SO MY THOUGHT IS TO, AS I SAY, TO DIRECT THE DEFENDANT TO

13   DO SOME ADDITIONAL SEARCHING AND DE-DESIGNATION AS APPROPRIATE,

14   FOR COURT ORDERS WOULD BE ONE.

15       DO YOU HAVE OTHER SUGGESTIONS, OTHER THINGS THAT YOU SAW

16   IN THE EXEMPLAR THAT YOU THINK ARE AMENABLE TO A SEARCH TERM

17   SEARCH THAT WOULD HAVE FERRETED THEM OUT IF SOMEONE HAD TAKEN

18   THE TIME TO LOOK?

19           MR. STEELE:  I THINK TWO THINGS I WOULD SUGGEST.

20   ONE WOULD BE DE-DUPLICATION OF THE DATA, WHICH IS CREATING

21   QUITE A LARGE NUMBER OF I THINK FALSE HITS, AND SO ONE OF HIS

22   COMPLAINTS IS THAT THERE IS TOO MANY DOCUMENTS.

23       WELL, ONE OF THE EXAMPLES THAT HE PRODUCED TO US FIVE

24   TIMES.  SO IF HE WERE TO DE-DUPLICATE THE DOCUMENTS, I THINK

25   THAT WOULD GO A LONG WAY TO STARTING THE PROCESS OFF.

1          AND THEN THE SECOND THING I WOULD ASK --

2               THE COURT:  AND DID THE PARTIES THERE -- LET ME JUST

3     STOP YOU THERE ON DE-DUPING.  DID THE PARTIES ADDRESS THAT IN

4     THEIR ESI ORDER?  DID YOU REFER -- WAS THERE AN OBLIGATION?

5               MR. STEELE:  THERE IS, YES, YOUR HONOR.  YEAH, AND

6     WE RAISE THAT IN OUR OPPOSITION.  OKAY.

7               THE COURT:  I THOUGHT I SAW THAT.  OKAY.

8               MR. STEELE:  AND THEN THE SECOND THING I WOULD

9     SUGGEST IS ONLINENIC WOULD HAVE ACCESS TO ALL OF ITS CUSTOMERS

10    BECAUSE IT'S ALL DATABASE DRIVEN, AND SO THIS IS A RELATIVELY I

11    THINK REALLY EASY NEGATIVE SEARCH, WHICH IS TO SAY THAT

12    MR. NARANCIC'S POSITION IS THAT ANY OF HIS CUSTOMER INFORMATION

13    WOULD BE CONFIDENTIAL SO IT WOULD BE RELATIVELY EASY TO DO THE

14    REVERSE SEARCH, WHICH IS DOES THIS DOCUMENT MATCH THE CUSTOMER?

15    DOES IT HAVE THE CUSTOMER'S EMAIL?  DOES IT HAVE THE CUSTOMER'S

16    NAME?  THEY HAVE THE LIST OF THEIR CUSTOMER DATABASE.  IT'S

17    REALLY JUST AN INVERSE SEARCH TO REMOVE ESSENTIALLY WHAT YOU

18    FLAG ESSENTIALLY THOSE DOCUMENTS WHICH WOULD BE CONFIDENTIAL,

19    AND THAT WOULD LIMIT THE SEARCH THAT HE WOULD HAVE TO DO

20    MANUALLY DOWN TO A VERY SMALL MANAGEABLE NUMBER.

21              THE COURT:  YEAH.  I'M NOT CONVINCED THAT SEARCHING

22    FOR CUSTOMER IDENTIFICATION WOULD NECESSARILY CAPTURE ALL

23    CONFIDENTIAL INFORMATION.

24        IT WILL CERTAINLY ALSO CAPTURE SOME PUBLIC INFORMATION.  I

25    UNDERSTAND WHAT YOU'RE SAYING, BUT I'M NOT SURE THAT'S

1    WARRANTED IN THIS CASE.

2         MR. NARANCIC, DE-DUPE YOUR PRODUCTION.  I KNOW THAT'S,

3    THAT'S A WORK AND AN INVESTMENT, BUT IT'S A LOT LESS THAN YOU

4    GOING THROUGH THE WHOLE THING, THAT 100 TO 200 HOURS THAT YOU

5    ARGUED ABOUT IN THE PAPERS.

6         MR. NARANCIC:  I'LL DO MY BEST TO DO THAT.  I WANT

7    TO BE VERY CLEAR, HOWEVER, THAT THE REASON THAT THERE'S

8    DE-DUPLICATION IS BECAUSE I ACTUALLY FOLLOWED THE RULES, AND I

9    IDENTIFY BY BATES NUMBERS THOSE DOCUMENTS THAT WERE RESPONSIVE

10   TO EACH CATEGORY.

11        SO THE PROBLEM IS THE REASON THERE'S DE-DUPLICATION -- I'M

12   SORRY.  VERY QUICKLY.

13        THE COURT:  YOU KEEP SAYING THE REASON THAT THERE'S

14   DE-DUPLICATION --

15        MR. NARANCIC:  OH.  THE REASON THERE'S DUPLICATION

16   RATHER IS BECAUSE FACEBOOK ASKED FOR THE SAME DOCUMENTS OVER

17   AND OVER AGAIN IN SLIGHTLY MODIFIED DOCUMENT REQUEST.

18        SO AS AN EXAMPLE, THERE WOULD BE A REQUEST ALL DOCUMENTS

19   RELATING TO ABUSE OF DOMAIN NAMES, AND THEN THE NEXT ONE WOULD

20   BE ALL DOCUMENTS -- ALL COURT ORDERS RELATING TO ABUSE.

21        WELL, I WOULD PRODUCE THE SAME DOCUMENT IN RESPONSE TO THE

22   FIRST DOCUMENT REQUEST THAT I WOULD PRODUCE IN THE SECOND

23   DOCUMENT REQUEST, WHICH IS EXACTLY WHY YOU'RE GETTING THE SAME

24   DOCUMENT PRODUCED MULTIPLE TIMES BECAUSE I'M ACTUALLY FOLLOWING

25   THE RULES AND SAYING HERE ARE THE RESPONSIVE DOCUMENTS IN

1       RESPONSE TO EACH CATEGORY OF INFORMATION AND --

2               THE COURT:  I UNDERSTAND THAT.  BUT I ACTUALLY DON'T

3       THINK THAT'S WHAT THE RULES CALL FOR.

4           I THINK WHAT IT CALLS FOR -- YOU'RE RIGHT ABOUT

5       IDENTIFYING, BUT IF YOU'RE PRODUCING 20 DOCUMENTS AND DOCUMENTS

6       1 THROUGH 20 ARE RESPONSIVE TO REQUEST NUMBER 1, AND DOCUMENTS

7       1 THROUGH 5 ARE ALSO RESPONSIVE TO REQUEST NUMBER 2, YOU DON'T

8       PRODUCE REQUESTS -- YOU DON'T PRODUCE DOCUMENTS 1 THROUGH 5

9       TWICE, YOU IDENTIFY THEM AS RESPONSIVE TO BOTH DEMANDS, BUT YOU

10      ONLY PRODUCE THE DOCUMENTS ONCE.

11          HOWEVER -- OKAY.  THEN HERE'S HOW I THINK WE SHOULD

12      PROCEED, WHICH IS I DO THINK THAT IN COMPLYING WITH THE

13      PROTECTIVE ORDER THE DEFENDANT SHOULD DO A LITTLE MORE WORK ON

14      THIS DATABASE AND PRODUCTION, AND THAT'S GOING TO MAKE THE CASE

15      MORE EFFICIENT GOING FORWARD FOR EVERYBODY, INCLUDING THE

16      DEFENDANTS AND THE COURT AS WELL AS PLAINTIFF.

17          ONE, I DO THINK THAT YOU NEED TO SEARCH FOR COURT ORDERS,

18      ANY PUBLIC DOCUMENTS, THE COURT ORDERS THE EXAMPLE, SO IT

19      DOESN'T SOUND LIKE THERE WERE OTHER PUBLIC RECORD DOCUMENTS,

20      BUT COURT ORDERS ARE NOT DIFFICULT TO SEARCH FOR.  THOSE ARE

21      AMENABLE TO SEARCH TERMS, WHATEVER DATABASE THAT YOU'RE USING,

22      BUT THOSE SHOULD BE IDENTIFIED AND DE-DESIGNATED.

23          AND THEN THE PRODUCTION THAT'S BEEN MADE SO FAR, THERE

24      NEEDS TO BE A GOOD FAITH EFFORT FOR DE-DUPLICATION.

25              SOMETIMES WHEN YOU'RE PRODUCING EMAILS AND EMAIL CHAINS,

1    IT'S INEVITABLE THAT THERE'S SOME DUPLICATION, BUT JUST FOR

2    STRAIGHT OUT "I PRODUCED THIS TWICE BECAUSE IT'S RESPONSIVE TO

3    TWO REQUESTS," THAT LEVEL OF DE-DUPLICATION SHOULD BE -- YOU

4    SHOULD BE ABLE TO EFFECT.

5        I KNOW IT WILL TAKE SOME TIME AND IT WILL TAKE SOME

6    FURTHER RESOURCES, BUT THAT WILL, I THINK, HELP TO GET THIS

7    PRODUCTION IN LINE WITH DEFENDANTS' OBLIGATIONS AND FOR THE

8    PLAINTIFFS AFTER THAT AS YOU WORK THROUGH IT, THERE WILL

9    UNDOUBTEDLY BE OTHER DOCUMENTS, AND IT'S UP TO YOU WHETHER YOU

10    CAN RAISE IT WITH THE DEFENDANT AHEAD OF TIME OR FILE IT TO

11    SEAL AND THEN PUT THE BURDEN ON THEM TO MAINTAIN THE REQUEST.

12        OKAY.  MR. NARANCIC, I'M GOING TO GIVE YOU 30 DAYS FOR

13    THAT EFFORT, AND THEN I WANT YOU TO FILE A STATUS REPORT WITH

14    THE COURT.  LET'S MAKE THAT BY DECEMBER 15TH, A STATUS REPORT

15    WITH YOUR DECLARATION AS TO WHAT STEPS YOU TOOK, WHAT EFFORTS

16    WERE MADE, AND AS A RESULT OF THAT DOCUMENT HOW MANY DOCUMENTS

17    HAVE BEEN DE-DESIGNATED.

18        MR. NARANCIC:  THANK YOU, YOUR HONOR.

19        THE COURT:  AND MEANWHILE YOU ALL GO ON DOING WHAT

20    YOU'RE DOING IN THIS CASE, AND IF I THINK I NEED MORE

21    INFORMATION OR THE ISSUE NEEDS VETTING FURTHER, I WILL LET THE

22    PARTIES KNOW, AND I WON'T NEED ANY FURTHER BRIEFING ON IT.  I

23    THINK PLAINTIFFS STILL HAD A BRIEF DUE THIS WEEK.

24        MR. STEELE.

25        MR. STEELE:  THANK YOU, YOUR HONOR.

1          I WAS JUST GOING TO ASK IF YOUR HONOR WOULDN'T MIND

2     PERHAPS DISCUSSING HER COMMENTS THAT SHE MADE JUST A MINUTE AGO

3     ABOUT PUBLIC DOCUMENTS.

4          THAT WAS ONE OF THE ISSUES THAT WE HAD RAISED IN OUR

5     OPPOSITION, WHICH IS THE UNCERTAIN, THE UNCERTAINTY THAT WE

6     FACE WHEN MR. NARANCIC MAKES A STATEMENT THAT HE, OF COURSE,

7     DOES NOT CLAIM ANY CONFIDENTIALITY AS TO PUBLIC DOCUMENTS, BUT

8     HE ALSO TAKES NO POSITION AS TO WHETHER A DOCUMENT IS OR IS NOT

9     PUBLIC.

10         SO REALLY WHAT THE DEFENDANTS ARE DOING IN THIS

11    CIRCUMSTANCE IS THAT THEY'RE REQUIRING US TO GO THROUGH THE

12    DOCUMENTS, YOU KNOW, THAT WE'RE LOOKING AT, AND THEN WE HAVE TO

13    GO DO THE RESEARCH TO FIGURE OUT WHETHER THE DOCUMENTS ARE OR

14    ARE NOT IN THE PUBLIC DOMAIN WHEN, FRANKLY, THEY'RE DOCUMENTS

15    THAT ARE THE DEFENDANTS' DOCUMENTS.

16         SO THEY'RE IN A MUCH BETTER POSITION TO KNOW WHETHER A

17    DOCUMENT IS A PUBLIC DOCUMENT OR NOT BECAUSE THEY'RE

18    DEFENDANTS' DOCUMENTS.

19              THE COURT:  YEAH.  AND, YOU KNOW, WITHOUT SOMETHING

20    SPECIFIC, WITHOUT --

21              MR. STEELE:  RIGHT.

22              THE COURT:  -- WITHOUT TALKING ABOUT SOMETHING

23    SPECIFIC, IT'S VERY HARD TO DEAL WITH THAT IN A VACUUM,

24    MR. STEELE, AND THAT'S, THAT'S THE ISSUE WHERE I GET ON THAT,

25    AND I DID SEE THAT ARGUMENT.  BUT HOW DO YOU SEARCH FOR THAT

```
1    WITHOUT SIMPLY GOING THROUGH ALL OF THE DOCUMENTS THAT ARE

2    BEING PRODUCED?

3         I AGREE THAT A BLANKET STATEMENT FROM DEFENDANTS SAYING

4    THAT WE DON'T MEAN -- HERE'S OUR PRODUCTION, IT'S ALL

5    CONFIDENTIAL, EXCEPT ANYTHING THAT IS PUBLIC IS NOT HELPFUL TO

6    YOU.  I UNDERSTAND THAT.

7         AND THAT'S GENERALLY NOT ACCEPTABLE, BUT I THINK WE HAVE

8    MOVED PAST THAT HERE, AND WE'RE TRYING TO EXTRACT SOME, AS I

9    SAY, THE COURT RECORDS.  WE WILL GET THE PRODUCTION.  PERHAPS

10   IT SHRINKS WITH THE DE-DUPLICATION EFFORT, AND THEN WE'RE GOING

11   TO PROCEED AND KEEP GOING.

12        I UNDERSTAND WHAT YOU'RE SAYING, AND AGAIN, YOU WILL COME

13   ACROSS OTHER DOCUMENTS AND IT WILL BE, WELL, THIS WOULD

14   CERTAINLY APPEAR TO BE PUBLIC, BUT YOU DON'T -- I MEAN, IF

15   THEY'VE MARKED IT CONFIDENTIAL, YOU DON'T HAVE TO GO SEARCH TO

16   SEE IF IT IS A PUBLIC DOCUMENT.

17        BUT I UNDERSTAND.  I UNDERSTAND.

18             MR. STEELE:  FAIR ENOUGH.  THANK YOU, YOUR HONOR.

19             THE COURT:  ALL RIGHT.  THE PAPERS WERE HELPFUL.

20   THANK YOU.  AS I SAID, I HAD GONE THROUGH THOSE, AND I SAW WE

21   WERE ON TODAY, AND SO I SIMPLY WANTED TO DEAL WITH IT AT THIS

22   TIME.

23        SO I WILL ISSUE A SHORT ORDER SETTING THESE DEADLINES FOR

24   DEFENDANT, BUT IT WILL REFER TO FOR THE REASONS IDENTIFIED ON

25   THE RECORD HERE TODAY.
```

1          OKAY.  ALL RIGHT.

2                   MR. STEELE:  THANK YOU, YOUR HONOR.

3                   MR. NARANCIC:  THANK YOU, YOUR HONOR.

4                   THE COURT:  THANK YOU VERY MUCH.  THAT CONCLUDES

5     THIS MATTER.

6               (COURT CONCLUDED AT 10:51 A.M.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                              CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

                                  _____
16                                IRENE RODRIGUEZ, CSR, RMR, CRR
                                  CERTIFICATE NUMBER 8074
17

18
                                  DATED:  SEPTEMBER 29, 2022
19

20

21

22

23

24

25