Pages 1 - 19

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Susan Van Keulen, Magistrate Judge

FACEBOOK, INC. *et al.*,             )
                                     )
          Plaintiffs,                )
                                     )
     vs.                             )   **NO. 3:19-CV-07071-IS**
                                     )
ONLINENIC, INC., *et al.*,           )
                                     )
          Defendants.                )
_____)

San Jose, California
Tuesday, January 28, 2020

**TRANSCRIPT OF PROCEEDINGS**
**CASE MANAGEMENT CONFERENCE**

(APPEARANCES ON FOLLOWING PAGE)

TRANSCRIPTION SERVICE BY:   Dipti Patel, CET-997
                            Liberty Transcripts
                            7306 Danwood Drive
                            Austin, Texas 78759
                            (847) 848-4907

**APPEARANCES:**

For the Plaintiffs:

        TUCKER ELLIS LLP
        515 South Flower Street, 42nd Floor
        Los Angeles, California 90071
**BY: DAVID JEFFERSON STEELE, ATTORNEY AT LAW**
**    HOWARD KROLL, ATTORNEY AT LAW**

For the Defendants:

        LEX ANALYTICA, P.C.
        2225 East Bayshore Road, Suite 200
        Palo Alto, California 94303
**BY: PERRY J. NARANCIC, ATTORNEY AT LAW**

|   |   |
|---|---|
| **Tuesday - January 28, 2020** | **9:31 a.m.** |

**P R O C E E D I N G S**

---oOo---

**THE CLERK:** Calling 19-7071, Facebook, Inc., *et al.* vs. OnLineNic Inc., *et al.*

Counsel, please come to the podium and state your appearance for the record.

**MR. STEELE:** Good morning, Your Honor. David Steele, and with me is Howard Kroll from Tucker Ellis. Also in the court Nikia Williams from Facebook.

**THE COURT:** Good. Ms. Williams, welcome. Thank you for being here.

**MS. WILLIAMS:** Good morning, Your Honor.

**MR. NARANCIC:** Good morning, Your Honor. Perry Narancic for the defendant.

**THE COURT:** Mr. Narancic, welcome.

All right. You can stay at the podium. I tried to keep my calendar light today because I'm on jury duty this week. I thought, well, I don't want to have to call through and cancel a lot of people, but I also figure the odds of getting called once I'm called actually sticking are pretty light.

So I'm glad we were able to get to you today. So we'll see where my other adventure goes.

I read through the parties' joint statement. Thank you for the effort to make the joint statement. I appreciate it. The

1   rules require it.  It is not always complied with, not always in
2   a helpful fashion.  But this was, so I thank you for that effort.
3        I took a look at this.  I always go back and take a look at
4   the complaint.  And in a moment, we'll get to the case schedule
5   which I have set up and I'll explain to you my reasoning behind
6   it.  And I think it's fair to say it takes a middle road down the
7   parties' disparate approaches as to the speed of getting through
8   discovery and getting this matter on my trial calendar.
9        I will set the dates today all the way to trial, and you
10  should figure that those will hold.  There are some -- maybe some
11  discovery contingencies in this matter and, if so, you can come
12  in.  But any request for an adjustment in the schedule will have
13  to be specific, will have to show diligence but I'll need
14  specifics.  If it's we need more discovery from third parties in
15  foreign countries and it has to be identify who they are, who
16  you've -- you know, the steps you've already taken.
17       A general request for, gosh, this case is a lot of work and
18  we need more time by itself won't do it.
19       Okay.  So with that said, but before we actually get to the
20  schedule, is there -- I have a few general questions around
21  procedure points.  But before we get to that, is there anything
22  about the case or anything that's gone on or status that's not
23  evident from the papers that would be helpful for me to know
24  today?
25       And I'll start with the plaintiffs.

1    **MR. STEELE:**  I don't believe so, Your Honor.

2    **THE COURT:**  Okay.  Mr. Narancic?

3    **MR. NARANCIC:**  I think Your Honor should know we've worked
4    together before --

5    **THE COURT:**  Okay.

6    **MR. NARANCIC:**  -- on another case involving at least my
7    client.

8    **THE COURT:**  Okay.

9    **MR. NARANCIC:**  We get along, so --

10   **MR. STEELE:**  Amicable.  I appreciate that.

11   **MR. NARANCIC:**  Yeah.

12   **THE COURT:**  Okay.  That's usually what that means, but
13   you've pointed it out.

14   **MR. NARANCIC:**  Otherwise, I wouldn't have mentioned it, Your
15   Honor.

16   (Laughter)

17   **THE COURT:**  Okay.  Well, good.  I'm glad to hear that.  It
18   already shows, and I think it makes -- you know, obviously, the
19   case is just better for both sides, tends to allow it to be run
20   more efficiently and effectively.  So I hope that that remains in
21   place.

22   Tell me where you are on initial disclosures.  Did those
23   happen and are they complete?

24   **MR. STEELE:**  Yes, Your Honor.  We swapped, as indicated in

1   our report, I think it was last week.

2   **THE COURT:** Okay.

3   **MR. NARANCIC:** Yes, sir.

4   **THE COURT:** Okay.  Good.

5   I saw about Domain ID Shield was making noises about
6   challenging personal jurisdiction but then in any discussion or
7   motions, it never -- it wasn't articulated.  So tell me where we
8   are on that.

9   **MR. NARANCIC:** Yeah.  OnLineNic does not dispute
10  jurisdiction, personal jurisdiction.  It's based here in the
11  United States.

12  **THE COURT:** Uh-huh.

13  **MR. NARANCIC:** Domain ID Shield is a Hong Kong company.

14  **THE COURT:** Let me have you step up to the microphone.  Just
15  I should have said at the beginning if you haven't been in my
16  courtroom before, we record everything digitally and then the
17  recordings are uploaded.  And you all as counsel of record have
18  access to them on ECF.

19  It's not an official transcript, but it is a nice place to
20  go just if you want to hear or hear again what went on in court.
21  So with that being said, I interrupted you.

22  **MR. NARANCIC:** I'll speak up.  Thank you.

23  **THE COURT:** Thank you.

24  **MR. NARANCIC:** Domain ID Shield is a Hong Kong company, and
25  I just haven't gotten a chance to get into the case as much as

1  necessary to make a determination as to whether we're actually
2  going to stick with that personal jurisdiction defense at this
3  time.  And I think I'll be able to do that in short order after I
4  dig into the case a little bit more.
5      There is -- I think it is relevant to know that the clients
6  are principally in China, which makes communications somewhat
7  difficult, but I do believe that I'll be able to address the
8  personal jurisdiction issue quickly.
9      **THE COURT:** Okay.  Good.
10     Well, I won't set a deadline for that.  But, you know, it's
11 on you to watch the timing and issues of waiver, et cetera.
12     **MR. NARANCIC:** Yes.
13     **THE COURT:** Okay.
14     All right.  And what about protective order and an ESI
15 order?  Have you started to talk about that, you anticipate
16 you're going to need that?  From the plaintiff first?
17     **MR. STEELE:** Yes.  We did discuss that quite at length
18 during our meeting with counsel.  I think we have an
19 understanding that we're going to use the Court's standard order.
20 There may need to be a slight adoption for a second tier and some
21 additional protections on ESI.  But we also discussed
22 preservation of electronic data, as well.
23     So I think we're pretty far down the road on that.
24     **THE COURT:** Okay.
25     **MR. STEELE:** I would expect within the next week the Court

1  could expect a proposed order from the parties.

2      **THE COURT:**  Okay.  I will set a deadline for that.  Let's
3  set that as February 14.  That gives you a couple of weeks, and
4  you're always welcome to beat the deadline.  But I want an ESI
5  order and a protective order from the parties.

6      If the protective order differs from the Court's model
7  order, you submit that to me in redline so I can easily identify
8  that.  Same for the ESI order unless you do a complete overhaul
9  which sometimes parties do.  But I encourage you to use the
10 Court's order.  Sometimes that's not as generic or as generically
11 applied.

12     So get that to me by the 14th of February.  And if the
13 parties have an issue or a dispute, it sounds like you've already
14 talked about it so you're not anticipating that.  But if that
15 should arise, you need to let me know before the 14th.

16     All right.  I understand the parties had different views on
17 timing for discovery.  And then that kind of ties into the what
18 are you anticipating, and you may not have a joint view on this,
19 in terms of ADR.  And you probably differ as to when that would
20 be effective, but what are you thinking as to form of ADR?

21     Let me hear from the plaintiffs first as to your proposed
22 schedule, timing, and how that then would tie into ADR issues.
23 And, Mr. Narancic, I'll hear from you.

24     **MR. STEELE:**  So as we laid out and the Court I think
25 correctly infers, the discovery in this case initially is going

1    to be on the named defendants, OnLineNic and ID Shield.  We
2    anticipate and Mr. Narancic's already informally shared some
3    information with us that a number of the Doe defendants are
4    foreign entities or international entities.
5         And so we expect that we'll be amending the complaint to
6    name those individuals or companies once we get that information
7    from the defendants.  Because of that and because a number of
8    those entities or individuals are foreign defendants, we
9    anticipate that there's going to be a delay in effecting service
10   on them.  And so we've tried to build in a little bit more buffer
11   into the deadlines, particularly the fact discovery cutoff.
12        And so I think that's where we start to deviate in our
13   approach is that we think we're going to need more time because
14   we're going to need to get the discovery from the defendants and
15   then turn around and amend and try to serve it.  And so we tried
16   to build in a little bit more time to get that done.
17        And then with respect to ADR, in the past, as Mr. Narancic
18   has noted, we have used private mediation and it's been highly
19   effective --
20        **THE COURT:**  Good.
21        **MR. STEELE:**  -- in cyberspotting cases with the defendant.
22   So we recommended that we think that's the better approach.  And
23   I believe I'll let Mr. Narancic speak for his client's position,
24   but --
25        **THE COURT:**  Sure.

1  **MR. STEELE:**  -- they've indicated that they'd like to use
2  the court mediation -- court-appointed mediator.
3  **THE COURT:**  Okay.
4  **MR. KROLL:**  There's one other issue, Your Honor.
5  **THE COURT:**  Sure.
6  **MR. STEELE:**  And the timing.
7  **THE COURT:**  Please.
8  **MR. KROLL:**  It's not necessarily with respect to timing.
9  But the last go-around different plaintiff, same defendants, we
10 did use private mediator.  And given the defendant's desire not
11 to come to the United States, we actually mediated the case in
12 Hong Kong.
13      So the plaintiffs with that in mind had proposed going to
14 Singapore for mediation.
15 **THE COURT:**  In this case?
16 **MR. KROLL:**  In this case, primarily because in April,
17 there's the International Trademark Association annual meeting
18 that's taking place in Singapore.  Mr. Steele and I as well as
19 counsel for Facebook are going to be in Singapore for that.  And
20 we thought it would all fit in.
21      Unfortunately, that wasn't agreed to, but that's sort of
22 what we were thinking about.  And the idea of having a mediation
23 here in this courtroom seems somewhat difficult in our mind
24 because the true powers that be for the defendants are located in
25 China and have expressed an unwillingness to come to the United

1 States.

2 **THE COURT:** Okay. Aside from the yet to be identified and
3 named Doe defendants -- well, let me come back to that.

4 Let me address a different issue with regards to the unnamed
5 Doe defendants. I had two thoughts but one I do need to raise
6 now which is obviously when parties are added, they will receive
7 a notice from the Court. Once they appear, they'll get a notice
8 from the Court to either consent or decline to my jurisdiction.

9 As a reminder, the jurisdiction before me is by consent.
10 That is to the extent the case is for all purposes. So that will
11 be another issue that will need to be addressed sometime
12 depending on the relationship of the added parties.

13 The existing parties sort of manage that process with them
14 and help to facilitate either consent or declination but to move
15 that along because if we receive a declination, then we'll get
16 you reassigned. But then you're going to another judge and
17 you're somewhere back in the queue. So I just raise that as that
18 will be an issue that needs to be dealt with as parties are
19 added.

20 Okay. I understand I think the plaintiffs' views on timing
21 and ADR. So, Mr. Narancic, let me hear from you.

22 **MR. NARANCIC:** Thank you.

23 So I think a step-wise approach makes sense here. To give
24 the Court a sense of the issues, the allegations as I understand
25 it from the plaintiff are that a number of these domains were

1    registered which are allegedly infringing and that the defendants
2    in this case are not just the registrar which is licensed by ICAN
3    but also the registrant either using aliases or otherwise trying
4    to hide the true identity of the registrants.
5        So the starting place for discovery I think is looking at
6    the registration data, the database of the transactions that
7    shows who, what, when, where, and how a particular infringing
8    domain was registered.
9        So I think that's the starting place of discovery, and
10   hopefully it's dispositive.  And, for instance, you would take a
11   registrant Joe Smith, for instance, which would contain
12   information such as email contact registration information, such
13   as payment, form of payment, et cetera.
14       And so one way to authenticate whether this individual is
15   either legitimate or otherwise just an agent of OnLineNic is to
16   try to cross-correlate that registration date with other
17   available data such as, you know, who owns this credit card.
18       So I think that is to the first step towards trying to
19   resolve this case, and that's why I proposed a fast-track
20   discovery calendar and tried to get the case done this year
21   because if in fact that information is dispositive, there's no
22   reason for the case to drag on because it does have a deleterious
23   effect on the business reputation of the client.
24       **THE COURT:**  When you say dispositive, dispositive how?
25       **MR. NARANCIC:**  Oh.

1      **THE COURT:**  Can you just explain that to me?

2      **MR. NARANCIC:**  Right.  I mean --

3      **THE COURT:**  You turn over that -- because you have that --
4  or your client has that information?

5      **MR. NARANCIC:**  Correct.

6      **THE COURT:**  Correct, okay.

7      **MR. NARANCIC:**  Correct.  And we'll obviously produce that,
8  you know, in a very timely way.  I think it's going to be clear
9  one way or another whether the plaintiffs' allegations have
10 merit.

11     There are currently only 20 domains that are listed in the
12 complaint which is a relatively small number of domains at issue.
13 There could be more, but at least for now based on my initial
14 review, there's a very small number of registrants who are listed
15 in the database, you know, less than ten.

16     And I think it will be clear initially whether some or all
17 of these are legitimate or not.  And so I think that when I say
18 dispositive, I don't mean, you know, through court action.  I
19 mean in negotiation between the parties.

20     **THE COURT:**  Okay.  Well, that's interesting and helpful.  Of
21 course, nothing -- once we're done with today's proceedings and
22 the case is obviously launched and discovery is underway, there's
23 nothing to prevent defendants from providing that information in
24 the very near term.

25     **MR. NARANCIC:**  Yes.

1    **THE COURT:** And then, you know, addressing is in whatever
2    way is beneficial to moving the case along. If it has the impact
3    that you think it will have, it would certainly seem to be in
4    defendants' interest to get it produced. But I'm hesitant to set
5    a schedule that anticipates that that will have the impact that
6    you are hopeful that it will have.
7         If it does have that impact, nothing I do -- my schedule
8    won't stop or hinder that. What I want to do is get a schedule
9    that lends some predictability to the parties but gets the case
10   moving and also coincides with this Court's schedule.
11        So let me go ahead -- (cough) -- excuse me, and do that now
12   and give you dates.
13        (Coughs)
14   **THE COURT:** Excuse me. I apologize.
15        And then we'll -- if anyone has concerns on this, then we
16   can address those.
17        All right. I'm going to start with the earliest date and
18   work my way out, but where I'm headed is a trial date in March of
19   2021. That will be March 15, 2021. And this will be on ECF.
20   You know, there will be a minute order reflecting the dates
21   today. So if you don't write as fast as I talk, not to worry.
22        All right. Last day to amend will be May 27th, 2020. And
23   the close of fact discovery will be September 4th, 2020. I think
24   it makes sense the last day for the parties to engage in
25   settlement or in ADR proceedings will be September 30th, 2020.

1       And I'm going to have you come back and see me in June, a
2  return CMC on June 16, 2020.  And at that time, you'll submit a
3  statement the week before, and at that time, I want to hear
4  further from the parties as to whether they have agreed to
5  private mediation or continue to have a dispute.  But at that
6  time, I will refer you to one form or the other.
7       It seems to me that this case is probable well suited for
8  private mediation, but I will wait, let you get a little further
9  through the process and continue your discussions.  It would be
10 my hopes that the parties would agree.  Any settlement proceeding
11 is more constructive if the parties jointly think that that is a
12 good method for getting the case resolved.
13      So we were at the close of fact discovery September 4.  Last
14 day for ADR, September 30th.  Your expert disclosures, opening
15 disclosures under Rule 26 will be September 21, 2020 with
16 rebuttal disclosures October 12, 2020.  And expert discovery will
17 close on November 6th.
18      Last day to file a dispositive motion will be November 20th,
19 2020.  And the last day for a hearing on dispositive motions will
20 be January 12th, 2021.  I intentionally set that to get the
21 briefs in ahead of the holiday schedule.  So those dates again
22 will hold.
23      Your pretrial conference will be March 4th.  And under my
24 Civil Standing Order, that means your pretrial filings are due on
25 February 18 and February 25th, respectively.  And that will set

1   us up, we should be good for trial by March 15, 2021.
2       As I said, I will see you back here for a further CMC on
3   June 16th. Your CMC statement, I want you to address the ADR
4   issue more specifically. And you've got your February 14
5   deadline to get your ESI and protective orders in to me.
6       All right. Any comments, questions?
7       **MR. KROLL:** Questions, Your Honor.
8       **THE COURT:** Yes.
9       **MR. KROLL:** At the return CMC, and you want us to file
10  papers the week I believe before, is it solely to talk about
11  mediation or is it about other issues --
12      **THE COURT:** Well, it's a status conference so --
13      **MR. KROLL:** Anything we want to bring to the Court's
14  attention.
15      **THE COURT:** Anything you want to bring up. And often I get
16  the papers the week before on a return status conference and it's
17  like we're working away and everything's good and if I don't need
18  to see you, I won't make you come in. But I want to see the
19  statement. And maybe I'll get you on the phone and we'll talk
20  abut ADR if that's the only open issue. We'll just see what you
21  have to tell me.
22      **MR. KROLL:** And you had mentioned earlier in this
23  conference, Your Honor, that to the extent there are issues with
24  respect to discovery and you want specific information about
25  that, it would be appropriate to raise it at that time?

1       **THE COURT:** You can. But discovery disputes, I have a
2  standing order on getting discovery disputes to me, and there's a
3  specific process for that.
4       **MR. KROLL:** I wasn't referring to discovery disputes.
5       **THE COURT:** Okay.
6       **MR. KROLL:** It's the concept that there are third parties
7  that may be international --
8       **THE COURT:** Oh,
9       **MR. KROLL:** -- and all of the issues involving service and
10 all of that.
11      **THE COURT:** Yes. Yes. Your point, if you're concerned
12 about the timing, you know, you'll be in here in June saying that
13 a cutoff in September, it's a few months away, but there's still
14 a lot of runway there. But that you're not going to be able to
15 make that or you have some concerns about it.
16      Yes, that would be the time --
17      **MR. KROLL:** Okay.
18      **THE COURT:** -- to tell me. But, again, I need a showing of
19 diligence supported by specifics.
20      **MR. KROLL:** All right. Thank you, Your Honor.
21      **THE COURT:** And that goes for anybody.
22      Other questions?
23      **MR. STEELE:** I'll just add by way of information, Mr.
24 Narancic during our phone call had indicated that several of the
25 defendants or Doe defendants were in China.

1      **THE COURT:** Uh-huh.

2      **MR. STEELE:** We're currently actually serving in another
3 case some defendants in China, and that process tends to take
4 about 18 months.

5      **THE COURT:** Right.

6      **MR. STEELE:** And the Chinese government is being less than
7 expedient in their service process.

8      So obviously, once we get that information from Mr.
9 Narancic, we'll start that process quickly. We may report back
10 to the Court notwithstanding that we don't have anything to
11 report from the Chinese government, merely to let the Court know
12 that we've started that process. That may be a trigger for the
13 discovery issues, but we'll raise that if necessary.

14     **THE COURT:** Understood. Understood.

15     We'll see where this -- I appreciate that there are some
16 unknowns out there, not all of which is within your control.
17 Again, I want to be sure that everyone's doing all that they can
18 to move it forward.

19     And that kind of brings us back to Mr. Narancic's point of
20 he's got some early discovery that sounds like will be turned
21 over in due course or promptly perhaps. And then that may
22 address a number of the issues.

23     So keep me posted. If you think it's helpful to come in and
24 see me whether or not it's a formal discovery dispute or
25 something else that's going on with a number of these unknowns,

```
                                                                    19
 1   reach out to my courtroom deputy and we'll get you on the
 2   calendar.  All right?
 3        MR. STEELE:  Thank you very much, Your Honor.
 4        MR. NARANCIC:  Thank you.
 5        THE COURT:  All right.
 6        MR. KROLL:  Thank you, Your Honor.
 7        THE COURT:  Thank you all very much.  Thank you for being
 8   here.
 9        THE CLERK:  Court's adjourned.
10        (Proceedings adjourned at 9:56 a.m.)
11                            ---oOo---
12
13                       C E R T I F I C A T E
14        I, DIPTI PATEL, court-approved transcriber, certify that the
15   foregoing is a correct transcript from the official electronic
16   sound recording of the proceedings in the above-entitled matter.
17
18   [signature: Dipti Patel]
19   _____
20   DIPTI PATEL, CET-997
21   LIBERTY TRANSCRIPTS                         Date: October 6, 2022
22
23
24
25
```