UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC., et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>ONLINENIC INC, et al.,<br><br>  Defendants. | Case No. 19-cv-07071-SI<br><br>**ORDER ON MOTIONS FOR DE NOVO REVIEW OF MAGISTRATE JUDGE R&R ON PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS**<br><br>Re: Dkt. Nos. 225, 228, 229, 238 |

Defendant Xiamen 35.com Technology Co., Ltd. ("35.CN") filed a motion objecting to, and requesting de novo review of, Judge van Keulen's report and recommendation ("R&R," Dkt. No. 225 (R&R)) on plaintiffs' motion for terminating sanctions. Dkt. No. 228 (35.CN's Mtn.). Defendants OnlineNIC Inc. ("OnlineNIC") and Domain ID Shield Service Co. ("ID Shield) jointly filed their own separate motion seeking the same relief. Dkt. No. 229 (OnlineNIC and ID Shield's Mtn). On June 17, 2022, the Court heard oral argument on the motions. Dkt. No. 245. Having reviewed Judge van Keulen's R&R de novo, for the reasons stated below, the Court hereby OVERRULES defendants' objections and ADOPTS the R&R.

## BACKGROUND

### I. Procedural History

Plaintiffs filed their original complaint in 2019 against only ID Shield and OnlineNIC. Dkt. No. 1 (Original Complaint). ID Shield and OnlineNIC did not move to dismiss the action; instead, they filed a joint answer on January 6, 2020. Dkt. No. 20. Over a year later, on February 25, 2021,

1    after extensive and contentious discovery, plaintiffs sought leave to file their first amended
2    complaint (FAC) to add 35.CN as a defendant. Dkt. No. 68. On March 24, 2021, Judge van Keulen
3    granted plaintiffs' motion to amend the complaint. Dkt. No. 81. Again, ID Shield and OnlineNIC
4    filed a joint answer. Dkt. No. 88. On June 1, 2021, Judge van Keulen filed an order granting the
5    parties' stipulation that plaintiffs could file the currently operative Second Amended Complaint
6    ("SAC") and deeming ID Shield and OnlineNIC's answers to the FAC as their operative responsive
7    pleading. Dkt. No. 108. The SAC was filed later that day on June 1, 2021. Dkt. No. 109 (SAC).
8    The SAC alleges four causes of action against all three defendants for:

   (1) Cybersquatting Plaintiffs' Trademarks; 15 U.S.C. § 1125(d) (the Anticybersquatting Consumer Protection Act ("ACPA"));

   (2) Trademark and Service Mark Infringement; 15 U.S.C. §1114;

   (3) Trademark and Service Mark Infringement and False Designation of Origin; 15 U.S.C. § 1125(a); and

   (4) Dilution of Trademarks; 15 U.S.C. § 1125(c).

Dkt. No. 109 ¶¶ 76-137 (SAC).

On September 22, 2021, 35.CN declined magistrate judge jurisdiction and on September 28, 2021, the action was reassigned to the undersigned district judge. Dkt. Nos. 168 and 173. On September 28, 2021, 35.CN filed a motion to dismiss making three overarching arguments: (1) the parties are not alter egos and therefore the Court does not have jurisdiction over 35.CN, (2) 35.CN is immune from liability as merely a registrar of domain names, and (3) plaintiffs have failed to adequately plead their causes of action against ID Shield and OnlineNIC, therefore the claims fail as to 35.CN. Dkt. No. 174 (35.CN's Motion to Dismiss). On January 18, 2022, the Court denied 35.CN's motion to dismiss in its entirety finding, among other things, serious issues of fact as to alter ego precluded dismissal. Dkt. No. 207 at 7-8[1] (Order Denying 35.CN's Motion to Dismiss).

On February 26, 2022, 35.CN brought a motion to bifurcate and stay the action arguing discovery should focus on the allegedly dispositive issue "of whether ID Shield is a **Proxy Service**

---

[1] For ease of reference, page number citations refer the ECF branded number in the upper right corner of the page.

that registers domain names for its customers **or merely a Privacy Service** that only allows its contact information to be used for privacy purposes as Defendants assert" (the "Proxy Service Issue"). Dkt. No. 213 at 3 (Motion to Bifurcate) (emphasis added). On April 5, 2022, this Court denied the motion to bifurcate for three primary reasons: (1) the Proxy Service Issue is not dispositive; (2) there are questions of fact as to alter ego; and (3) serious allegations of spoliation of evidence as to ID Shield and OnlineNIC could potentially extend to 35.CN depending on how the issues around alter ego are decided. Dkt. No. 226 (Order Denying Mtn. to Bifurcate).

## II.  Discovery History & Special Master's Report

After filing suit on October 28, 2019, plaintiffs served initial document requests on March 20, 2020. Dkt. Nos. 1 and 176 at 4 (Plaintiffs' Motion for Sanctions). OnlineNIC and ID Shield failed to timely respond and first produced documents on June 9, 2020. Dkt. No. 58 at 2-3 (January 2021 Status Report re Discovery). After various discovery disputes, plaintiffs requested appointment of a special master arguing OnlineNIC and ID Shield's conduct would otherwise prevent plaintiffs from properly collecting evidence. Dkt. No. 62 at 2-3 (Joint Discovery Letter Brief re Appointment of Special Master). On March 3, 2021, Judge van Keulen appointed Thomas Howe Special Discovery Master ("Special Master") to determine: (1) whether defendants OnlineNIC and ID Shield's past productions were adequate and (2) and whether they destroyed or withheld data. Dkt. No. 72 (Order Appointing Special Master).

On July 12, 2021, the Special Master filed his report. Dkt. 115 ("Special Master's Report" or "SMR"). **On July 20, 2021, plaintiffs and defendants OnlineNIC and ID Shield filed statements of non-opposition to the SMR**. Dkt. 125 (Plaintiff's Statement of Non-Opposition); Dkt. 126 (OnlineNIC and ID Shield's Statement of Non-Opposition).[2] On March 28, 2022, Judge van Keulen set out, and adopted as her own, the key findings of the SMR in her R&R. Dk No. 225 at 4-9. The Court highlights the most important of these findings below.

---

[2] OnlineNIC and ID Shield never withdrew or sought to withdraw their statements of *Non-opposition to Special Master's Report* (Dkt. 126).

### A. Overview of Special Master's Scope and Methodology

The Kayako Ticket Database ("Ticket Database") included communications between OnlineNIC and ID Shield and their customers. Dkt. No. 219 at 13:22–24, 21:17–19, 22:23–25 (March 1, 2022 Hearing Before Judge van Keulen on Plaintiffs' Motion for Terminating Sanctions). It also contained records of attachments to those communications, though the attachments themselves were "stored in the file system on the server, outside the database." Dkt. No. 115 at 26 (SMR). The Special Master stated:

> Critically**, attachments may be the most important part of a ticket**, much like an email attachment may be more important than the email message itself. In this case, attachments included copyright notifications; email conversations; legal demands; account summaries; complaints; letters; legal information; financial information; and more.

*Id*. (emphasis added). Plaintiffs allege the attachments should have included cybersquatting notices from trademark owners—including, presumably, notices sent by plaintiffs regarding their own marks. Dkt. No. 176 at 5 (Mtn for Sanctions).

To compile his report, the Special Master reviewed OnlineNIC and ID Shield's previous productions and collected data from them directly. SMR at 5. The Special Master collected 184 GB of Electronically Stored Information ("ESI") data including 545,013 files and 442,680,623 database records. Dkt. No. 115 at 2 (SMR).

After months of extensive review and collection, including five status reports (Dkt. Nos. 83, 86, 89, 105, and 112), the Special Master concluded there is "ample evidence that Defendants failed to preserve responsive ESI, deleted ESI, and withheld ESI." Dkt. No. 115 at 2 (SMR).

### B. The Special Master Found OnlineNIC and ID Shield Failed to Preserve ESI on a Massive Scale

The Special Master found defendants deleted over one half (52.35%) of the ticket-related database records and that 30% of those records—approximately 3,317,816 records—were responsive to the original discovery protocol. *Id*. at 2–3. Under the second, more expansive, discovery protocol, the Special Master estimates the number of responsive records deleted and forever lost to plaintiffs would be higher. *Id*.

The Special Master found OnlineNIC and ID Shield "failed to preserve potentially relevant

ESI for this matter pre-litigation, **post complaint filing, during discovery, and even after the appointment of Special Master**." *Id*. at 17 (emphasis added). The Special Master concluded either: (1) the Ticket Database's backup management system was inadequate and, therefore, OnlineNIC and ID Shield were remiss or (2) the backup management system was adequate but data backups were concealed from the Special Master by OnlineNIC and ID Shield. Dkt. No. 115 at 18-19 (SMR). Further, OnlineNIC and ID Shield claimed backups did not exist, but the Special Master discovered evidence of backups on two servers in multiple locations. *Id*.

The SMR states OnlineNIC and ID Shield deleted 2,919,130 records from the Ticket Database between May 16, 2013, and December 16, 2020, **meaning defendants still were actively deleting evidence more than a year after this action was filed on October 28, 2019**. Dkt. No. 115 at 23 (SMR). Between December 16, 2020, and March 23, 2021, the Special Master found an additional 4,102,283 Ticket Database records were "deleted and missing." *Id*. By May 23, 2021, the time of the Special Master's final collection, he also found "Defendants had deleted 331,390 attachment files – *76.70% of the total*." *Id*. at 26 (emphasis in original).

"Further indicators of data deletion directly from the Ticket Database existed in a comparison between Defendants' productions and to the live Ticket Database…During multiple productions from Defendants, some records were contained in one production but were missing from subsequent productions and from the live Ticket Database itself." *Id*. at 22. The Special Master identified multiple instances where the Ticket Database he received contained fewer records than the productions plaintiffs received earlier in the suit. *Id*. at 22–23. He also found "Defendants deleted SQL files and databases they previously provided Plaintiffs." *Id*. at 28. OnlineNIC and ID Shield do not dispute they deleted records. *Id*. at 37.

Defendants also created at least 28 PHP scripts and 1 SQL script specifically designed to delete database records and attachment files. SMR at 28–29. Scripts are essentially tools that can be used to produce and delete database records. *Id*. at 28. This evidence forced the Special Master's conclusion that Defendants programmatically deleted files using these scripts and then attempted to hide their activities by deleting the scripts as well. *Id*. at 29.

The Special Master stated:

> he carefully reviewed Defendants' [response to accusations of spoliation]. In many ways, Defendants' responses support the most important concerns Special Master raised in the Report. **In fact, Defendants do not dispute deleting records**, they instead try to justify why. Defendants deleted data post case filing, during discovery, after productions, and after Special Master's appointment.

Dkt. No. 115 at 37 (SMR) (emphasis added). Further the Special Master concluded:

> Briefly put, Defendants did not do what they should have done (preserve and produce responsive ESI) yet did do what they should not have done (delete and obfuscate). **Based on the sum of the evidence, Special Master concludes Defendants' behavior was intentional**.

*Id*. at 39 (emphasis added).

### C.  Besides Deleting ESI, the Special Master Found Defendants Withheld ESI and Used Underhanded Tactics to Avoid Producing Responsive Documents

OnlineNIC and ID Shield consistently withheld records from Plaintiffs. For example, the Parties' agreed to a date filter of July 1, 2015 to July 14, 2020. Dkt. No. 115 at 30 (SMR); see also Exhibit 2 to SMR. "However, for each production made to Plaintiffs, Defendants used different date ranges…not consistent with the agreed past production protocol and resulted in withholding responsive data from Plaintiffs," *amounting to two years' worth of ESI*. Dkt. No. 115 at 30 (SMR).

Also, "Defendants executed search terms inconsistently." *Id*. at 31. Perhaps even more brazenly, defendants failed to apply the search terms to the full text of ticket attachment files—the files highly likely to contain infringement notices—to determine responsiveness: "All these attachments subsequently were not produced, and some were in fact deleted. . . ." *Id*.

Finally, the Special Master found defendants engaged in data dumping by producing to 27,823,240 records when only 5,096 of those records were responsive. *Id*. at 35.

OnlineNIC and ID Shield also repeatedly misled the Special Master or failed to respond to his various requests. The Special Master made repeated requests for files and information before defendants finally complied, and on some occasions, defendants failed to respond altogether. For example, "Defendants claimed that no programming files were on the servers, [but] the files were present in their third production to the Special Master on April 26, 2021." *Id*. at 19. In another instance, defendants failed to disclose the existence of an entire database. *Id*. Defendants also

6

1   *deleted* an entire Ticket Database backup.[3]  *Id*. at 33.

2   Although the Special Master was able to recover some of the deleted records, and unveiled many of the tactics used to avoid producing relevant documents, he concluded defendants' conduct caused plaintiffs "irreparable harm" and further that Plaintiffs would "continue to suffer harm" because of Defendants' mass spoliation of evidence. Dkt. No. 115 at 40 (SMR).

### D.     Procedural History After Issuance of SMR

On July 13, 2021, after receiving the SMR, plaintiffs filed a motion to strike defendants' answer and for default judgment against defendants OnlineNIC and ID Shield. Dkt. No. 117.

On September 22, 2021, 35.CN declined magistrate judge jurisdiction and the case was reassigned to the undersigned. Dkt. 168; Dkt. 173.

After reassignment to the undersigned, plaintiffs re-noticed their motion for default judgment. Dkt. No. 176 (Re-Noticed Motion for Sanctions/Default Judgment). Defendant 35.CN filed an opposition to Plaintiffs' Motion for Sanctions, and defendants OnlineNIC and ID Shield moved to withdraw an earlier statement of non-opposition to the motion for sanctions. Dkt. Nos. 183, 185. On October 28, 2021, Judge Illston referred the Motion for Sanctions to Judge van Keulen. Dkt. No. 193.

Judge van Keulen issued her R&R on March 28, 2022, recommending, among other things, the undersigned GRANT the motion for terminating sanctions with respect to OnlineNIC and ID Shield. Dkt. No. 225 at 33 (R&R). All three defendants then filed objections to the R&R and requested de novo review of plaintiffs' motion for sanctions/default judgment. Dkt. Nos. 228 and 229 (Motions Objecting to and Requesting De Novo Review of R&R).

---

[3] The Special Master requested the backup file on May 9, 2021. Dkt. No. 115 at 33 (SMR). Defendants responded on May 10, 2021 informing the Special Master that the backup file did not exist. *Id*. However, "the file did exist as shown in the directing listing provided by Defendants on April 6, 2021. When questioned further, Defendants claimed they deleted this file to free up space on their server on April 11, 2021…" *Id*.

7

**LEGAL STANDARD**

A district court judge may refer a matter to a magistrate judge to issue findings of fact and recommendations for the disposition of the matter. 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b)(1); Civ. L.R. 72-3. Within fourteen days of service of the proposed findings and recommendations, "any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." 28 U.S.C. § 636(b)(1); see Fed. R. Civ. P. 72(b). Civil Local Rule 72-3(a) requires an objection to a magistrate judge's recommendation on a dispositive matter must be made as a motion for de novo determination specifically identifying the portions of the magistrate judge's findings, recommendations, or report to which objection is made and the reasons and authority therefore. Civ. L.R. 72-3(a).

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The district court must "make a de novo determination of those portions of the report . . . to which objection is made." *Id*. De novo review means the Court must consider the matter anew, as if no decision previously had been rendered, and come to its own conclusion about those portions of the magistrate judge's recommendation to which objection is made. *Ness v. Comm'r*, 954 F.2d 1495, 1497 (9th Cir. 1992). For those portions of the report to which no objection is made, factual findings are reviewed for clear error and legal conclusions are reviewed to determine if they are contrary to law. *Quinn v. Robinson*, 783 F.2d 776, 791 (9th Cir. 1986). The district court may only set aside those factual determinations if it is left with a "definite and firm conviction that a mistake has been committed." *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010); *see also Wolpin v. Philip Morris Inc.*, 189 F.R.D. 418, 422 (C.D. Cal. 1999); *Burdick v. Comm'r*, 979 F.2d 1369, 1370 (9th Cir. 1992).

**DISCUSSION**

Two motions are before the Court asking for de novo review of Judge van Keulen's R&R: (1) OnlineNIC and ID Shield's motion and (2) 35.CN's motion. The Court will discuss the arguments made by the parties in turn.

### I. Defendants OnlineNIC and ID Shield's Arguments/Objections to Judge van Keulen's R&R

Defendants OnlineNIC and ID Shield raise three overarching arguments challenging the R&R, namely: (1) the allegedly deleted ESI was not crucial to plaintiff's case and therefore terminating sanctions are improper; (2) the Special Master could not determine when all of the documents were destroyed, thus, terminating sanctions are improper; and (3) the R&R failed to adequately consider the allegedly exculpatory evidence offered by OnlineNIC and ID Shield. Dkt. No. 229 at 4-10. All of these arguments fail.[4]

#### A. Defendants OnlineNIC and ID Shield Argue the Allegedly Deleted ESI Was Not "Crucial" to Plaintiffs' Case.

Defendants OnlineNIC and ID Shield argue the allegedly deleted ESI was not crucial to plaintiffs' case. Dkt. No. 229 at 4-5. However, the SMR – to which these defendants did not object – explicitly found the deleted ESI *was* crucial to plaintiffs' case. The SMR states:

> Plaintiffs suffered irreparable harm. Only some of the withheld and deleted records were recoverable. While a subset of deleted records is recoverable from Defendants' earlier productions, other responsive ESI will be unavailable because the data was destroyed and no longer exists. **In fact, of the most critical evidence type, attachments, 76.7% were deleted**. Furthermore, Special Master cannot indicate whether or how much of the non-recoverable ESI was responsive or not; a record that cannot be seen, cannot be searched. **Therefore, Defendants caused irreparable harm to Plaintiffs through permanently deleted responsive database records and attachment files, that they will never see or know the contents**.

Dkt. No. 115 at 40 (SMR) (emphasis added). Further, defendants OnlineNIC and ID Shield do not explain why the allegedly deleted ESI is not crucial.[5]

---

[4] The Court would like to note a critical fact. On July 12, 2021, the Special Master issued his report that underlies the findings and conclusions of the R&R. Dkt. No. 115 (SMR). On July 20, 2021, defendants OnlineNIC and ID Shield filed an explicit statement of non-opposition to the SMR. Dkt. No. 126 (Statement of Non-Opposition). OnlineNIC and ID Shield never withdrew or otherwise sought to withdraw their statement of non-opposition. As such, OnlineNIC and ID Shield have waived their right to challenge the SMR's findings which form the basis for Judge van Keulen's reasoning in the R&R. Notwithstanding this significant concession by defendants OnlineNIC and ID Shield, the Court has reviewed the defendants' objections to the R&R de novo and finds the objections are without merit.

[5] Rather, defendants offer (1) a burden shifting jury instruction and (2) a stipulation to mitigate prejudice, arguing that this will "obviate[] the need for Terminating Sanctions." Dkt. No. 229 at 5 (OnlineNIC and ID Shield's Motion for De Novo Review of R&R).

1    While defendants surely would prefer anything short of terminating sanctions, their behavior

2  during discovery, as detailed in the SMR, renders terminating sanctions reasonable and justified.

3  The SMR concludes, without question, that critical evidence was lost.

**B.  Defendants OnlineNIC and ID Shield argue the R&R failed to adequately consider that some documents were deleted prior to litigation and for others the Special Master could not determine when the documents were deleted.**

Defendants OnlineNIC and ID Shield argue the R&R improperly focuses "on large numbers of files that were allegedly deleted, but crucially minimizes the fact that the Special Master himself could not identify *when* many of these files were deleted." Dkt. No. 229 at 5 (OnlineNIC and ID Shield's Mtn. to Review De Novo) (emphasis in original). Defendants' argument runs in direct contradiction to the SMR – to which, again, defendants did not object – which states:

> **Defendants failed to preserve potentially relevant ESI** for this matter pre-litigation, **post complaint filing, during discovery, and even after the appointment of Special Master**. Defendants have sophisticated IT skills, requisite infrastructure, and have had ample time to implement backup management software and procedures. Despite these circumstances, they failed to preserve and produce relevant ESI. **The exact extent of Defendants' backups is unknown as Defendants obfuscated their backup management systems for servers, files, and databases**.

Dkt. No. 115 at 17 (SMR) (emphasis added). The SMR further concluded:

> Admittedly, for many of the deleted records, Special Master is unable to determine when they were deleted. **This is because Defendants deleted audit logs and failed to provide regular backups of Ticket Databases and attachment file directories. However, what is clear, is that Defendants deleted data during discovery after previous productions to both Plaintiffs and Special Master**.

Dkt. No. 115 at 40 (SMR) (emphasis added). Thus, the reason for uncertainty around when various files were deleted is because defendants not only improperly deleted files but also deleted electronic paper trails.

Further, as discussed above, the SMR also concluded OnlineNIC and ID Shield (1) used different date ranges when culling data for productions, consequently withholding two years' worth of ESI; (2) failed to apply search terms to the full text of various files which resulted in the deletion of many likely responsive documents; and (3) engaged in extensive data dumping – producing 27,823,240 records when only 5,096 of those documents were responsive. Dkt. No. 115 at 30, 31

10

1    and 35 (SMR). Thus, the issue of some documents being destroyed prior to the litigation, or the
2    Special Master being uncertain of when certain documents were destroyed, does nothing to mitigate
3    the documents destroyed post complaint filing, during discovery, and after appointment of the
4    Special Master.

### C. The R&R did not fairly analyze the allegedly exculpatory evidence provided by OnlineNIC and ID Shield.

The R&R concluded: "OnlineNIC and ID Shield claim they have mountains of exculpatory evidence, yet for all Plaintiffs or the Court may ever know, those 'mountains' may be dwarfed by the mountains of damning evidence Defendants deleted. The Court finds that Plaintiffs have been prejudiced." Dkt. No. 225 at 19 (R&R). The Court agrees with Judge van Keulen.

OnlineNIC and ID Shield argue, by way of example, that they put forth evidence showing third parties registered the offending domain names. Dkt. No. 229 at 7 (Mtn for De Novo Review of R&R). However, as detailed above, the SMR found documents pertaining to this issue were improperly destroyed. The R&R cites to these findings concluding that while some exculpatory evidence may exist, defendants cannot engage in improper discovery tactics, destroy documents on a mass scale, and then cherry pick convenient exculpatory evidence. The R&R states:

> [T]he Special Master's Report details the types of records and attachments deleted and further estimates the percentage of records that would have been responsive … It is impossible to know how many documents would have been responsive. However, the ticket attachments, which comprised, inter alia, email conversations, legal demands, and account summaries, likely would have featured prominently in Plaintiffs' prosecution of their case … Plaintiffs allege that OnlineNIC and ID Shield registered the Infringing Domain Names to divert consumers from the authentic websites for commercial gain. **Email conversations between Defendants and their clients regarding the Infringing Domain Names could have revealed the clients' purpose in registering the Infringing Domain Names or Defendants' knowledge of the purpose to which the Infringing Domain Names were being put**.

Dkt. No. 225 at 19 (R&R). Again, evidence that potentially exculpates defendants is inapposite here, where plaintiffs and the Court have no way of knowing what evidence was destroyed that would support plaintiffs' case.

**II.  Defendant 35.CN's Arguments/Objections to Judge van Keulen's R&R**

**A.  35.CN argues the Court must review the entire R&R because Judge van Keulen failed to consider the R&R's impact on 35.CN, as an alleged alter ego.**

35.CN cites Federal Rule of Civil Procedure 54(b) which requires an express determination that there is "no just reason for delay" if a final judgment is sought for fewer than all parties.[6] Dkt. No. 228 at 10.  35.CN argues it would "clearly … incur significant harm and prejudice if the Court were to enter default judgment against the other Defendants and in favor of Plaintiffs." Dkt. No. 228 at 11 (35.CN's Motion for De Novo Review of R&R).  35.CN argues:

> [W]hile Plaintiffs are not currently seeking default judgment against [35.CN], entry of default judgment against the other Defendants at this stage will substantially prejudice [35.CN] for two reasons.  First, Plaintiffs are seeking default judgment not on the merits but as a discovery sanction against OnlineNIC and ID Shield, which Plaintiffs would seek to enforce against [35.CN] using their alter ego argument, despite lack of legal basis for Plaintiffs' underlying claims …. Second, OnlineNIC and ID Shield have justifiable defenses to the underlying sanctions determination, as they raised in prior filings.  In addition, because [35.CN] was added late to the case, it did not have a meaningful opportunity to defend against the arguments leading to sanctions, implicating due process concerns.

*Id.*

On March 24, 2021, Judge van Keulen granted plaintiffs' motion to amend their complaint and add 35.CN as a defendant.  Plaintiffs originally filed their motion for sanctions on July 13, 2021 (Dkt. No. 117), the motion was re-noticed on October 1, 2021 (Dkt. No. 176) and extensively (exhaustingly) briefed by all parties.  Thus, 35.CN was named as a defendant *prior* to plaintiffs filing their motion for terminating sanctions.  35.CN submitted briefing and argued before Judge van Keulen at the hearing on plaintiffs' motion for sanctions.  In such an instance, due process concerns are not implicated.  *See Cadence Design Sys., Inc. v. Pounce Consulting, Inc.*, No. 17-CV-04732-PJH, 2019 WL 3576900, at *4 (N.D. Cal. Aug. 6, 2019), aff'd sub nom. *Cadence Design Sys., Inc. v. Viera*, 836 F. App'x 493 (9th Cir. 2020) (no due process concern if alter ego had the

---

[6] 35.CN argues where a plaintiff's claims are based on alter ego liability, courts impose a higher standard, favoring delaying entry of judgment as to one or some, but not all, of the defendants to avoid factually meritless judgments or inconsistent judgments.  Dkt. No. 228 at 10.  35.CN cites a string of cases in support, but, significantly, none of the cases 35.CN cites involve discovery sanctions like those in the instant action.  *Id*.  Rather, the cases 35.CN cites are cases (1) with multiple defendants where at least one defendant appeared and another did not (and default was entered, but judgment deferred, with respect to the latter); or (2) are otherwise inapposite.

opportunity to present defenses and conducted the litigation with a diligence corresponding to the risk of personal liability); *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) ("Due process guarantees that any person against whom a claim is asserted in a judicial proceeding shall have the opportunity to be heard and to present his defenses.").

Further, as a named defendant prior to plaintiffs' Sanctions Motion, 35.CN had the opportunity to litigate its own individual defenses when it moved under Fed. R. Civ. P. 12(b)(2) to dismiss the case on personal jurisdiction grounds and under Fed. R. Civ. P. 12(b)(6) to dismiss the case for failure to state a cause of action. Dkt. 174. Indeed, 35.CN's Motion to Dismiss, which was filed on September 28, 2021, was filed three days before plaintiffs re-noticed their Sanctions Motion. Dkt. No. 174 (35.CN Motion to Dismiss). If plaintiffs cannot establish 35.CN is an alter ego of OnlineNIC and ID Shield, then 35.CN will not be impacted by this Order. However, if 35.CN is the alter ego of the other defendants then it is also responsible for evidence spoliation, is not prejudiced, and justice requires 35.CN be held accountable for flouting discovery rules.

### B. 35.CN argues review of the entire R&R is warranted because it fails to consider the allegedly dispositive issue of whether ID Shield is a privacy service versus a proxy service.

This merits argument completely misses the point that ID Shield and OnlineNIC actively destroyed and concealed mass amounts of evidence after the litigation commenced and, in some instances, after the Special Master was appointed. Further, 35.CN has briefed this issue extensively – both in its motion to dismiss and its motion to bifurcate. Each time 35.CN has raised the issue the Court has rejected it because, as discussed in the Court's Order on the Motion to Dismiss and the Order on the Motion to Bifurcate, the Proxy Service Issue is not dispositive[7]. Dkt. Nos 207 (Order

---

[7] As stated in the Order denying 35.CN's motion to bifurcate: "[T]he Court disagrees the Proxy Service Issue is dispositive. Indeed, the parties have hotly disputed this issue for months, including in the (extensive) briefing on 35.CN's motion to dismiss... Plaintiffs persuasively argue the Proxy Service Issue will not resolve all claims because at least some of the claims do not hinge on whether ID Shield is a proxy service. Plaintiffs allege ID Shield directly violated the ACPA by (1) registering infringing domain names and (2) trafficking in them by licensing them either to OnlineNIC for its own use or to OnlineNIC's customers for their use. Thus, the claims hinge on whether ID Shield is the registrant of the infringing domain names— not whether ID Shield is a proxy service." Dkt. No. 226 (internal citations omitted).

13

Denying 35.CN's Motion to Dismiss) and 226 (Order Denying 35.CN's Motion to Bifurcate).

### C. 35.CN Argues the Sanctions Judge van Keulen Proposes are Unjustified.

35.CN argues there are various alternatives Judge van Keulen should have imposed, namely jury instructions, rather than award monetary sanctions. Due to the extent of evidence spoliation, however, a limiting instruction is simply not enough.

For example, OnlineNIC and ID Shield offered to stipulate they acted with bad faith intent to profit. Dkt. No. 229 at 5 (OnlineNIC and ID Shield's Motion for De Novo Review of R&R). Defendants' proposal fails given the vast amounts of spoliated evidence. Documents may have been destroyed proving defendants *engaged* in cybersquatting – registering, trafficking, or using the infringing domain names, which plaintiffs would have to prove regardless of the proposed stipulation. Plaintiffs are left with no way of rebutting the exculpatory evidence defendants claim to have. Thus, under this proposal, plaintiffs are still disadvantaged with respect to whether defendants registered, trafficked in, or used the infringing domain names because the record strongly suggests defendants deleted (mass amounts of) relevant evidence on these issues.

## III. Entering Default vs. Entering Default Judgment

Based on the findings above, the Court hereby STRIKES OnlineNIC and ID Shield's answer (Dkt. No. 88) and enters default against them pursuant to Federal Rule of Civil Procedure 55(a). FRCP 55(a) ("Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.")

Judge van Keulen, however, also recommended entry of default *judgment* against OnlineNIC and ID Shield and for them to pay statutory damages and reimburse payment for costs related to the Special Master, pursuant to Federal Rule of Civil Procedure 55(b)(2). Federal Rule of Civil Procedure 54(b) states:

> [W]hen multiple parties are involved, the court may direct entry of a final judgment as to one or more, **but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay**. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the

14

claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

The Court hereby requests the parties each submit an additional 5 pages of briefing with respect to whether the Court should: (1) defer entry of default judgment in its entirety; (2) enter default judgment but defer imposition of sanctions; or (3) impose entry of default judgment and impose sanctions immediately. The parties' briefs are due on or before **October 28, 2022**.

Were the Court to enter default judgment and impose sanctions, the Court would order as follows (but, again, does not do so now):

(1) Enter default judgment against defendants OnlineNIC and ID Shield.

(3) Order OnlineNIC and ID Shield to pay plaintiffs $3,135,000 in statutory damages.

(4) Order OnlineNIC and ID Shield to reimburse plaintiffs in the amount of $88,937 for costs related to the Special Master.

(5) Within 45 days of an order entering default judgment, plaintiffs would be ordered to supplement their request for attorneys' fees, as provided for in the R&R, with documentation supporting the amount of fees requested. OnlineNIC and ID Shield would have the opportunity to review plaintiffs' request and file any response within 14 days of plaintiffs' filing of the supplemental documentation.

(6) The parties would be ordered to meet and confer regarding revisions to plaintiffs' proposed permanent injunction and to file a joint revision within 30 days of the order entering default judgment, consistent with the R&R.

## CONCLUSION[8]

Having reviewed the R&R de novo, the Court finds defendants' objections are without merit and hereby OVERRULES the objections and ADOPTS the R&R. As such, the Court also orders:

(1) OnlineNIC and ID Shield's answer to the complaint (Dkt. No. 88) is hereby STRICKEN.

(2) The parties shall submit additional briefing (no more than 5 pages each) on the issue of entry of default judgment on or before October 28, 2022.

---

[8] Defendants' motion to augment the record (Dkt. No. 238) is denied.

15

**IT IS SO ORDERED**.

Dated: October 17, 2022

SUSAN ILLSTON
United States District Judge