

515 South Flower Street, Forty Second Floor | Los Angeles, CA 90071-2223 | TEL 213.430.3400 | FAX 213.430.3409

**VIA CM/ECF**

October 28, 2022

Magistrate Judge Alex G. Tse, U.S. District Court, Northern District of California
    Re:    *Facebook Inc. et al. v. OnlineNIC Inc., et al.*, No. 3:19-cv-07071-SI (AGT)

Dear Magistrate Judge Tse:

    Pursuant to the Court's October 7, 2022 Discovery Order (ECF No. 275), Plaintiffs and Defendant Xiamen 35.com Internet Technology Co., Ltd. ("35.CN") submit this joint statement regarding the parties' current discovery disputes. The parties have met and conferred for over eight hours since the Court's October 7 Order and have resolved some, but not all disputes. For several outstanding discovery disputes, 35.CN produced additional documents on October 24 and indicated that it will be producing more documents in the next couple of weeks in order to resolve certain disputes. The parties will inform the Court through another joint statement if 35.CN's supplemental productions do not resolve those outstanding disputes and an impasse remains. Currently, the parties remain at an impasse regarding the disputes described below related to 35.CN's most recent discovery responses, which were previously filed with the Court:

- 35.CN's Fourth Amended and Supplemental Objections and Responses to Plaintiffs' First Set of Requests for Production were filed as ECF No. 269-4 at 10–63.

- 35.CN's Third Amended and Supplemental Objections and Responses to Plaintiffs' First Set of Requests for Admission were filed as ECF No. 269-4 at 66–106.

- 35.CN's Fourth Amended and Supplemental Objections and Responses to Plaintiffs' First Set of Interrogatories were filed as ECF No. 269-4 at 109–28.

**Plaintiffs' Statement**

    Many of 35.CN's discovery responses remain materially deficient. While 35.CN insists it is not currently withholding documents based on Chinese law, it maintains that it may later assert Chinese law as its basis for withholding the same documents it is currently withholding based on relevance, proportionality, and undue burden if those objections are overruled by the Court. 35.CN's failure to rely on its Chinese law objections now constitutes a waiver as to raising those objections to resist producing these same documents or information in the future.[1] *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) (holding Chinese entity waived objections based on Chinese secrecy law by failing to timely raise as objection or in response to motion to compel); *Dep't of Toxic Substances Control v. Rossi*, No. 20-CV-01049-VC (RMI), 2022 WL 19355, at *2–3 (N.D. Cal. Jan. 3, 2022) (holding objections initially raised but not relied upon in response to motion to compel were abandoned and rejecting attempt to hold certain objections in abeyance such that pocketed objections could be asserted at a later time to continue resisting discovery, thereby potentially necessitating another round of motions to compel regarding the same discovery requests). Beyond this, and aside from 35.CN's promised additional production of documents, the parties are at an impasse regarding the following:

---

[1] In addition, 35.CN continues to refuse to produce the log of "problem documents" it had previously promised (ECF No. 247 at 4; July 20, 2022 Hearing Tr. 16:21–19:2) or to provide any information regarding the status of documents submitted to Chinese authorities.

**Interrogatory No. 2.** In response to Plaintiffs' requests to describe any monetary payment 35.CN receives for services provided to OnlineNIC, 35.CN stated, "Payment is made pursuant to the Outsourcing Agreement for the services." Plaintiffs raised the inadequacy of this response and told 35.CN an adequate response must describe the date, amount, and purpose of each payment. 35.CN contends its current response is adequate. "Interrogatories and requests for production should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request, and to do so is subject to appropriate sanctions under [Rule 37(a)]." Advisory Comm. Notes to Fed. R. Civ. P. 37, 1993 amend., subdivision (a). 35.CN should be compelled to respond with the amount, date, and purpose of each payment.

**Interrogatory No. 6.** In response to Plaintiffs' request to identify all of 35.CN's employees who performed work for OnlineNIC and describe the work performed by **each** employee, 35.CN merely provided a list of its employees who performed work for OnlineNIC and a list of general categories of work performed without identifying which employee performed which category of work. 35.CN has refused to describe the work each 35.CN employee performed. 35.CN also responded that "OnlineNIC would have information regarding the description of work that each person performed." 35.CN's response is deficient. 35.CN has a duty to respond to interrogatories, and if it is truly unaware of the work *its own* employees performed for OnlineNIC (even though the work was performed in 35.CN's own building and supervised by a 35.CN employee), 35.CN has a duty to ask its employees what work they performed in order to adequately respond. *See Sevey v. Soliz*, No. C 10-3677 LHK PR, 2011 WL 2633826, at *4 (N.D. Cal. July 5, 2011) (responding party "may not simply refuse to answer, but must state under oath that [it] is unable to provide the information and set forth the efforts [it] used to obtain the information."). Moreover, 35.CN's suggestion that Plaintiffs could easily obtain this information from OnlineNIC ignores that the Court has ordered terminating sanctions against OnlineNIC for discovery misconduct. 35.CN's refusal to respond is not permissible, and it should be compelled to respond adequately.

**Interrogatory No. 8.** Interrogatory No. 8 asks 35.CN to identify all 35.CN employees involved in the destruction of evidence. 35.CN has objected to this interrogatory as "argumentative and premised on a disputed fact, including as to the characterization 'destruction of evidence.'" Although 35.CN refers Plaintiffs to a list it produced of *all 35.CN employees* who performed work *of any kind* for OnlineNIC, this list is deficient in response to Rog. 8 because it does not specifically identify the employees involved in the spoliation of evidence. 35.CN should be compelled to identify those employees.

**Interrogatory Nos. 13 and 14.** These interrogatories seek information regarding why certain individuals loaned money to OnlineNIC, why individuals were repaid on loans made by others, and any business or personal relationships such individuals may have with 35.CN or Shaohui Gong. In particular, Exhibits 5.1 and 5.2 to the OnlineNIC Defendants' Responses to Plaintiffs' Special Court Ordered Interrogatories (the "OnlineNIC Responses") ▮▮▮▮ Exhibit 6 to the OnlineNIC Responses ▮▮▮▮ (Declaration of Howard A. Kroll ¶¶ 2–4 & Ex. 1.) Many of the individuals loaning money to OnlineNIC ▮▮▮▮

---

[2] Mr. Freeman, a current employee of 35.CN (35CN009424) submitted a declaration in this case in opposition to Plaintiffs' motion for terminating sanctions. (Doc. 202.)

█████████████████████████████████████████████████████████ (*Id.* ¶ 5.) █
████████████████████████████████████████████████████████████████████████
█ (*Id.* ¶ 6.) Despite these connections, 35.CN states in response to these interrogatories that it "is unaware of the reasons and intent of third parties." This response is deficient. 35.CN has a duty to investigate and identify the efforts it made to obtain relevant information, especially from its own employees and shareholders. *Sevey*, 2011 WL 2633826, at *4. 35.CN should easily be able to identify the business or personal relationship these individuals had with 35.CN or Shaohui Gong, if any, and explain why it cannot explain the reasons these loans were made.

**Interrogatory Nos. 15 and 16.** These interrogatories ask 35.CN to explain in detail payments between 35.CN and OnlineNIC since 2007, including the date, amount, and reason for payment. This information is important because there are inconsistencies between 35.CN's responses to these interrogatories and ████████████████████████████ Kroll Decl. ¶¶ 7–8 & Exs. 2–4.) Plaintiffs have demonstrated to 35.CN that its responses are incomplete because ████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████████ (*Id.* ¶ 7 & Exs. 2–3.)
████████████████████████████████████████████████████████████████
██████████████████████████ (*Id.* ¶ 8 & Exs. 2 & 4.) Thus, 35.CN's responses are demonstrably inaccurate and incomplete. 35.CN has also failed to identify specific dates that payments were made, as requested. 35.CN should be compelled to supplement.

**RFP Nos. 9–13.** These RFPs request 35.CN's financial statements since 2007. 35.CN refuses to produce any internal or private financial documents, including drafts. As the Court recognized, such internal financial documents are relevant and responsive. (Jul. 20, 2022 Hr. Tr. 21:8–24:1.) 35.CN also withholds responsive documents from 2007–2009 based on an undeveloped relevance objection. This refusal is improper. Documents from 2007–2009 are relevant to the alter ego relationship between OnlineNIC and 35.CN because they could explain the conflict between 35.CN and OnlineNIC as to when (or if) Shaohui Gong sold OnlineNIC. 35.CN claims Shaohui Gong sold OnlineNIC to Rex Liu in 2007; OnlineNIC claims it was sold by Shaohui Gong to Zhipo Chen in 2009. And █████████
████████████████████████████████████████████████████████████████
█ (Kroll Decl. ¶ 9 & Ex. 5.)

**RFP Nos. 17, 19.** 35.CN has not produced domain name registration contracts with people located in California, including information sufficient to determine the number of such contracts into which 35.CN has entered. These requests are relevant to establish personal jurisdiction over 35.CN in California is reasonable. Additionally, contrary to 35.CN's representation, Plaintiffs never agreed that simply identifying Bates numbers for documents already produced would resolve the issue. This dispute is outstanding because 35.CN still has failed to produce the actual contracts with people located in California. Instead, 35.CN has merely produced a template of its registration agreement. 35.CN should be compelled to produce the agreements with people located in California.

**RFP Nos. 18, 20–23, and 36–37.** 35.CN has impermissibly construed requests for contracts between 35.CN and U.S.-based parties as being limited to California contracts and is withholding documents on this basis. This objection is based on 35.CN's misinterpretation of *Dorian v. Harich Tahoe Dev.*, No. C-94-3387 DLJ, 1997 WL 626109, (N.D. Cal. Oct. 11, 1997). In *Dorian*, the plaintiffs were granted leave to conduct discovery that would support Rule 4(k)(2) jurisdiction but were ultimately unsuccessful in establishing such jurisdiction. 35.CN should be compelled to comply with these requests and provide discovery that would support Rule 4(k)(2) jurisdiction. In addition, as with RFP Nos. 17

and 19, 35.CN should be compelled to produce domain name registration contracts with people located in the United States, including information sufficient to determine the number of such contracts into which 35.CN has entered.

**RFP No. 46.** In response to Plaintiffs' request for documents related to services offered or made available by 35.CN to OnlineNIC or ID Shield, 35.CN maintains that its production of the Service Outsourcing Agreement between 35.CN and OnlineNIC fully satisfies this response. 35.CN has refused to produce any further documents, despite Plaintiffs pointing 35.CN to internal 35.CN documents produced by OnlineNIC relating to these services. (*See* Sept. 25, 2022 Declaration of Jeffrey C. Sindelar Jr. (Doc. 269-04) ¶ 17 & Exs. 9–11.) These documents suggest other responsive documents exist. As such, 35.CN should be compelled to produce responsive documents.

**RFP Nos. 58–59.** 35.CN has failed to produce documents sufficient to identify the 35.CN employees who were involved in or participated in the destruction of evidence in this case, as described in the Special Master's Report. 35.CN's response improperly avoids disclosure of information covered by these document requests. Advisory Comm. Notes to Fed. R. Civ. P. 37, 1993 amend., subdivision (a). As such, 35.CN should be compelled to produce such documents.

**RFP No. 67.** 35.CN responds that it has no responsive communications between 35.CN and OnlineNIC concerning the work performed for OnlineNIC by employees of 35.CN. 35.CN represented no such documents existed because 35.CN and OnlineNIC only conducted such communications in person. Plaintiffs demonstrated this representation was false, pointing 35.CN to certain documents produced by OnlineNIC. (Kroll Decl. ¶ 10 & Ex. 6; *see also* Sept. 25, 2022 Sindelar Decl. ¶ 17 & Exs. 9–11 (regarding ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ 35.CN's production is deficient, and 35.CN should be compelled to produce responsive documents.

**RFP Nos. 72–75.** 35.CN refuses to search for and produce documents from its own files related to 35.CN and ICANN. Instead, 35.CN has simply reproduced ICANN's entire production in this case. 35.CN has a duty to perform a reasonable search of documents in its possession, custody, or control and produce responsive documents. 35.CN should be compelled to produce responsive documents.

**RFP Nos. 93, 95, 97, 99, 101, 103.** Plaintiffs seek documents reflecting funds transferred or payments made between 35.CN and OnlineNIC, including documents reflecting payments either entity made on behalf of or for the benefit of the other. 35.CN says it has produced responsive documents; however, the only documents 35.CN points to are two spreadsheets identifying eighteen payments between 2009 and 2020. (Kroll Decl. ¶ 11 & Exs. 1–2.) As discussed above, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* In a hypertechnical or restrictive reading of this request, 35.CN maintains that the spreadsheets it has produced are sufficient to respond to this request and is refusing to produce any contemporaneous documents reflecting these transactions, such as bank statements, corporate ledgers, cancelled checks, or wire transfer confirmations. 35.CN should be compelled to produce responsive documents.

**RFP Nos. 124–127.** Exhibits 5.1 and 6 to the OnlineNIC Responses show that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.* ¶ 12 & Ex. 1.) Despite these facts, 35.CN claims it does not have any documents reflecting the payments made and received by Shaohui Gong, 35.CN's former majority and controlling shareholder and still largest shareholder. 35.CN should be compelled to produce



responsive documents.

**RFA Nos. 1–16.** In response to these RFAs, regarding 35.CN employees performing work for OnlineNIC, 35.CN refused to answer the RFAs as written, and instead admitted "that 35.CN and OnlineNIC performed under a staffing agreement," denying the remainder of each RFA. 35.CN informed Plaintiffs it did not like what the RFAs implied, which is why it responded in this manner. Because the discovery rules are intended to achieve "full and efficient discovery," parties "should admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted." *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 938 (9th Cir. 1994). 35.CN is obligated to either provide a clean admission or denial or to provide answers with an explanation as to why a request may not be clearly admitted. *Id.*; *see also Hash v. Cate*, No. C 08-03729 MMC (DMR), 2012 WL 6043966, at *4 (N.D. Cal. Dec. 5, 2012) (party responding to requests for admission "must fairly respond to the substance of the request and may not avoid responding based on technicalities"). 35.CN should be compelled to cleanly answer these RFAs.

**RFA Nos. 17–26.** 35.CN refuses to admit or deny these RFAs, regarding Shaohui Gong's simultaneous ownership interests in 35.CN and OnlineNIC, including refusing to conduct a reasonable inquiry to answer these RFAs. 35.CN should be compelled to admit or deny these RFAs or explain why the requests cannot be admitted.

**RFA No. 29.** 35.CN refuses to conduct a reasonable inquiry so it can admit or deny whether Shaohui Gong sold OnlineNIC to Zhipo Chen in 2009. 35.CN should be compelled to do so.

**RFA No. 30.** 35.CN refuses to conduct a reasonable inquiry so that it can admit or deny whether Shaohui Gong sold OnlineNIC to Rex Liu in 2007, despite 35.CN producing two documents indicating this sale took place. 35.CN should be compelled to conduct a reasonable inquiry to obtain sufficient information to cleanly answer this RFA.

**RFA Nos. 42–43.** 35.CN refuses to admit or deny these RFAs regarding representations Carrie Yu made to ICANN when signing the RAA on behalf of 35.CN in 2014. 35.CN's responses to these RFAs even contradict themselves, as 35.CN refuses to admit Carrie Yu was a director when signing the RAA, but also refuses to admit that she was not a director when she signed the RAA. 35.CN should be compelled to admit or deny these RFAs, or explain why the requests cannot be admitted.

**RFA No. 46.** 35.CN refuses to admit whether Carrie Yu is an officer of OnlineNIC, instead admitting she is listed as an officer in certain documents but otherwise denying the request. 35.CN should be required to cleanly admit or deny this RFA.

**RFA No. 81.** 35.CN impermissibly limits the time period for its response to this request to admit it entered into contracts with Iron Mountain Intellectual Property Management based on a contention that contracting with a California corporation is not related to personal jurisdiction. 35.CN should be required to respond to this RFA without limitation.

**35.CN's Position:** 35.CN has been working hard to respond to, and prioritize issues relating to, Plaintiffs' hundreds of discovery requests.[3] Plaintiffs have refused to compromise and instead ask the

---

[3] 35.CN's intent is not to submit eleventh-hour documents but to diligently complete rolling productions and supplemental responses to accommodate Plaintiffs' overwhelming demands. Notably, both parties served discovery, discovery responses, rolling productions, and verifications around similar times; Plaintiffs produced more documents this week and do not have an expected end date.

Court to review numerous requests and compel responses largely where Plaintiffs expected 35.CN to respond in a different way. Plaintiffs filed this discovery dispute as to the discrete Chinese law issues, which are no longer at issue. Plaintiffs are clearly trying to exhaust 35.CN and nitpick every little issue because responses don't fit their (incorrect) theory of the case. Important to consider, Plaintiffs will never be satisfied with discovery responses and production primarily because they want evidence that simply does not exist.

**35.CN's Proposed Final Compromise:** Pursuant to the Standing Order VII.B.2.c., 35.CN proposes the following compromises (despite the limited scope of Plaintiffs' initial motion to compel):
- Plaintiffs to accept 35.CN's amended responses even if responses are inconsistent with Plaintiff's (incorrect) theory of the case;
- 35.CN to produce contracts with California individuals and corporations only;
- 35.CN to provide a "problem log" for withheld Chinese records or, *alternatively*, produce the relevant records, which it has already done (through workarounds of the Chinese law issues);
- 35.CN to produce financial and corporate records since 2009, which it has done (as a public company, the materially unique versions were publicized and thus produced to Plaintiffs);
- 35.CN to identify largest shareholders/owners since 2004, which has already done since 2009;
- 35.CN to produce additional historical records, which it has done (namely, lengthy public offering documents with detailed information about the relationship with OnlineNIC);
- 35.CN to produce a representative sample of communications with OnlineNIC after a reasonable search, which it is doing, in response to Plaintiffs' interpretation of RFP 40;
- 35.CN to re-produce documents where Plaintiffs complained about specific document formatting and page numbers, and to supplement written responses, which it has done;
- 35.CN to provide a verification of the most recent ROG responses, which it has done; and
- 35.CN to confirm there is nothing further to provide or produce, and to identify specific Bates numbers, in response to meet-and-confer discussions about certain requests, all of which it has done (subject to a few discrete issues where the parties are still working together).

**Background:** Plaintiffs are fishing for "connections" between 35.CN and OnlineNIC stemming back decades, despite the claims arising in around 2019. For context, co-Defendant OnlineNIC was founded by Shaohui Gong ("Gong") back in 1999. Thereafter, in 2004, Gong founded 35.CN. Importantly, and as thoroughly discussed in 35.CN's public offering documents and OnlineNIC's written contract, Gong sold OnlineNIC to an unrelated individual named Rex Lieu in 2007; and Gong does not retain any interest in or control over OnlineNIC, which is instead managed by individuals unrelated to 35.CN. In around 2010, 35.CN became a public company, and now *Gong is a non-controlling, minority shareholder in 35.CN* and not a director or officer of 35.CN. 35.CN has repeated this to Plaintiffs, yet they continue to misrepresent in their discovery statement, without any support, that Gong is the majority shareholder of 35.CN. In fact, any argument that 35.CN and OnlineNIC were corporate affiliates due to the same owner (Gong) ended 15 years ago, long before the present issues. Despite this, Plaintiffs requested a massive amount of corporate and financial information from 35.CN dating back 20 years, as well as all US contracts without any time limitation, and have failed to explain the relevance (aside from conclusory "alter ego" claims, despite cases demonstrating that such dated documentation is not relevant to an alter ego analysis in 2019; *see In re Star Mountain Res., Inc.*, No. 2:18-BK-01594-DPC, 2022 WL 2294175, at *11 (Bankr. D. Ariz. June 22, 2022) (noting the "pertinent time to analyze the alleged alter ego relationship is at the time the transaction occurred and/or the liability arose"). In truth, Plaintiffs are livid about how there are just no documents supporting Plaintiffs' strained theory of its case, e.g.,

Plaintiffs want evidence of 35.CN's ownership and control of OnlineNIC, but this evidence does not exist.

**Resolved Chinese Law Issues:** In response to hundreds of discovery requests, 35.CN was initially faced with a difficult decision because its business and records are in China, thereby implicating new Chinese data security and privacy laws with steep penalties; in fact, the relevant Chinese enforcement agency made an inquiry to 35.CN about this litigation. [*See* D.E. 247 at 3-5.] Thus, 35.CN raised this "Chinese law" issue with Plaintiffs, and Plaintiffs brought this subsequent discovery dispute before the Court on the Chinese law and Hague Convention issues. However, as 35.CN has repeatedly impressed on Plaintiffs, it is now not withholding documents or information due to Chinese laws. Specifically, through further investigation, 35.CN has been able to find a workaround given that responsive records (such as financial statements, board minutes, owner details, and even documentation for the sale of OnlineNIC to an unrelated third party in 2007) were public, thus allowing counsel to produce these records (reserving the argument that Chinese laws have limitations on even public records). In addition, re-reviewing Plaintiffs' discovery requests clarified that Plaintiffs often requested records documenting certain things (such as employee names and payment data), which could be produced without using data originating in China (or providing documentation that had already been produced in this litigation, thus changing the equation under these Chinese laws).

35.CN provided Plaintiffs with a detailed chart ("Appendix A") with data about the corporate structure, subsidiaries, owners, officers, directors, and largest shareholders since at least 2009 (and it can supplement certain pre-2009 data from produced records); and it also has produced records since 2009:
- Articles of association, annual/audit reports, resolutions, and meeting minutes;
- Financial statements and reports, including profit and loss and balance sheet data;
- Public offering documents with extensive ownership and relationship information prior to 2010, including as related to OnlineNIC, Gong, and even Plaintiffs' current counsel;
- Records to identify bank accounts and corporate locations;



- California contracts (note how the few third-party contracts that exist are in Chinese).

**Plaintiffs' Arguments Lack Merit:** Plaintiffs complain 35.CN's discovery responses are materially deficient, but the meet-and-confer discussions confirmed that (1) Plaintiffs are simply dissatisfied primarily where the expected a different response, (2) Plaintiffs thought their discovery requested something other than the plain reading of the requests, and (3) in some instances Plaintiffs have expanded their requests orally despite their specific written requests. *See Webster v. Haskins*, No. 118CV01640BAMPC, 2021 WL 4147143, at *1–2 (E.D. Cal. Sept. 13, 2021) (noting the Court cannot compel a party to produce documents that do not exist, thus plaintiff is required to accept defendant's response). Plaintiffs also argue that 35.CN waives certain objections; however, there is no waiver as 35.CN has been raising these issues. Additionally, while this is not the place to go through each request and document, Plaintiffs' arguments about the specific requests below are likewise misplaced.

**ROG 2:** Plaintiffs now demand that 35.CN outline "the amount, date, and purpose of each payment" that 35.CN received from OnlineNIC. However, ROG 2 did not request this specific information, but instead asked 35.CN to "*Describe the business, corporate, working or other relationship between 35.CN and ONLINENIC*, including the services which 35.CN performs for or on behalf of

ONLINENIC, and any monetary payment which 35.CN receives for those services" (emphasis added). By contrast, Plaintiffs requested in Special ROG 1 to OnlineNIC to "Explain in detail all payments made by ONLINENIC and DOMAIN ID SHIELD to 35.CN between 2009 and the present day, including the date, amount and reason for the payment." Thus, ROG 2 to 35.CN is compound and clearly did not request specific breakdowns of the payments; and 35.CN's response is sufficient.

**ROG 6:** Plaintiffs want 35.CN to provide a further description of work that individuals performed for OnlineNIC. However, Plaintiffs' demand (1) misinterprets the ROG language and the nature of the outsourcing agreement, whereby OnlineNIC had discretion to use individuals for the different stated purposes at various times, i.e., 35.CN would be speculating with more specifics given that OnlineNIC changed individuals and their work over time since 2009 (about a decade before Plaintiffs' claims arose), (2) misstates key facts conveyed to Plaintiffs, namely that OnlineNIC was managed by independent individuals who had no connection to 35.CN, and (3) minimizes 35.CN's adequate response, including a list of individual names and the general categories of work.

**ROG 8:** Plaintiffs want 35.CN to identify the individuals purportedly involved in OnlineNIC's "destruction of evidence," despite already having this information and the fact that the ROG appears to ask for 35.CN employees, but the conduct was by OnlineNIC employees (and there is no alter ego, proven or otherwise). In addition, 35.CN confirmed Bates number(s) for the employee list and agreed to investigate if it had any other information (despite objections to the ROG).

**ROGs 13 and 14:** Plaintiffs want 35.CN to provide more information for these ROGs, which ask for reasons why certain individuals were identified by OnlineNIC in OnlineNIC's discovery exhibits. 35.CN is not the alter ego of OnlineNIC, nor has it been adjudged as the alter ego at any time; and it has responded with available data. Moreover, Plaintiffs again misstate that Gong is the majority shareholder of 35.CN, despite repeated confirmations that this assertion is false. Plaintiffs are fishing for information decades before their claims arose to connect the Defendants.[4] However, a company "connection" a decade before the claims arose may have no relevance to an alter ego determination for purposes of recently accrued causes of action; and a finding of alter ego at the time the claims arose does not necessarily equate to alter ego liability for conduct through the course of litigation, including as ownership, finances, and other alter ego factors change over time (as they did in this case). This is especially true where Plaintiffs failed to provide an explanation of the relevance of years' old documents in response to 35.CN's repeated requests; and Plaintiffs instead robotically repeated that the requested data must relate to alter ego, despite case law limiting the analysis to the time period of the transactions giving rise to alleged liability.

**ROGs 15 and 16:** These ROGs ask 35.CN about payments between 35.CN and OnlineNIC since 2007 (over a decade before the claims arose). There is nothing to compel as 35.CN has responded, but Plaintiffs are simply unhappy because they do not think the responses line up with certain other records; but a claimed discrepancy—which is disputed—is not a reason to compel different responses.

**RFPs 9–13:** These RFPs request 35.CN's financial statements since 2007 (over a decade before Plaintiffs' claims arose), without using the word "ALL," as Plaintiffs did in some other requests. Fortunately, 35.CN is a public company with detailed reporting requirements in China, and it has been able to produce extensive records (with no materially different other versions, in compliance with the

---

[4] *See e.g., Bryant v. Armstrong*, 285 F.R.D. 596, 607 (S.D. Cal. 2012) (party cannot be compelled to produced documents from prior relationship where no right to obtain them); *c.f. BlackBerry Ltd. v. Facebook, Inc.*, No. CV 18-1844-GW (KSX), 2019 WL 4544425, at *5 (C.D. Cal. Aug. 19, 2019) (agreeing with Facebook that ESI from Mark Zuckerberg and search of emails was unnecessary).

hearing discussion [Jul. 20, 2022 Hr. Tr. 22-24]). While Plaintiffs failed to identify the relevance for pre-2009 years, especially 2007-2008, 35.CN produced records since 2009 and provided certain data going back earlier where available. For example, robust public offering records outline the relationship and past history between 35.CN and OnlineNIC, including Gong's sale of OnlineNIC in 2007 (and prior lawsuits by Plaintiffs' counsel against OnlineNIC). Plaintiffs point to one record they insist should have been produced, but as explained to Plaintiffs, it is an old unsigned document prior to these claims arising, and which was not in 35.CN's possession or control.

**RFPs 17, 19:** Plaintiffs want production of domain name registration contracts with people in California (without any timeframe or showing of relevance); however, 35.CN has indeed produced the registration agreement, as well as other California-related contracts; and during the meet-and-confer session the parties agreed that 35.CN should simply identify the Bates numbers for the produced contracts, which it has done.

**RFPs 18, 20–23, and 36–37:** Plaintiffs argue 35.CN must produce contracts in states other than California. Plaintiffs are wrong. Plaintiffs' SAC and the Court's order relating to jurisdictional discovery [D.E. 207] are limited to alleged (a) general jurisdiction based on an alter ego claim with OnlineNIC (a California company), and (b) specific jurisdiction due to the staffing agreement with OnlineNIC. This case is distinguishable from cases with wide-ranging contacts with the US as a whole, as 35.CN is a Chinese company offering services in China in Chinese. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007) (due process "presents a major stumbling block" under FRCP 4(k); and distinguishing cases, such as where defendants engaged in numerous conspiracies to bomb the World Trade Center). Notably, the SAC was explicit in its personal jurisdiction claims tied to California (*see* SAC ¶¶14-15); and Plaintiffs cannot now concoct new allegations. Moreover, 35.CN has produced the California contracts (which are limited and do not establish personal jurisdiction) and limited non-California contracts if unclear whether California was involved (as outlined to Plaintiffs in meet-and-confer discussions). There is no basis to compel.

**RFP 46:** Plaintiffs want documents about services made available by 35.CN to OnlineNIC or ID Shield, despite 35.CN producing documents responsive to the RFP and the parties' meet-and-confer resolution for the related RFP 40, for which 35.CN agreed to search for and produce a sample of communications between OnlineNIC and 35.CN, despite 35.CN's valid objections. As above, Plaintiffs also fundamentally misconstrue the relationship between OnlineNIC and 35.CN.

**RFPs 58–59:** Plaintiffs demand documents to identify the individuals involved in OnlineNIC's purported "destruction of evidence"; yet, 35.CN identified the Special Master's report during Zoom calls for this purpose. These RFPs further misconstrue the relationship between OnlineNIC and 35.CN, which are not alter egos; and Plaintiffs' insistence here is simply a tactic to obtain an admission by 35.CN that OnlineNIC staff destroyed evidence, despite 35.CN's disagreement about the facts.

**RFP 67:** Plaintiffs complain 35.CN has not produced responsive communications, despite 35.CN stating it did not have responsive records, yet would do another search (similar to RFP 40), and despite the explanation for why 35.CN did not have an old unsigned document that was apparently created years before this litigation arose. Plaintiffs' insistence here lacks merit.

**RFPs 72–75:** Plaintiffs are complaining that 35.CN's production of ICANN-related records is similar to ICANN's production; however, Plaintiffs did not raise any doubts about ICANN's production when the parties discussed this issue on Zoom; and 35.CN confirmed it has produced responsive records. Plaintiffs are again seeking irrelevant information outside of the RFP language.

**RFPs 93, 95, 97, 99, 101, 103:** Plaintiffs ask for documents reflecting funds transferred or payments made between 35.CN and OnlineNIC. However, 35.CN has produced responsive documents, especially considering the specific RFP language. Plaintiffs have indicated in meet-and-confers that they want more

specific records, such as bank statements, but those were not requested in these RFPs.

**RFPs 124–127:** Plaintiffs seek to compel records from a decade before the claims arose relating to purported payments involving Gong (who is, again, not a majority shareholder of 35.CN), and another third party about whom 35.CN confirmed no knowledge. 35.CN's responses and productions have complied with the discovery rules, and Plaintiffs' requests should be denied.

**RFAs 1–16:** Plaintiffs complain that 35.CN is limiting RFA responses; but RFAs only require admission of the part deemed admitted, with denial of the remainder, as Plaintiffs agree. 35.CN has complied with that requirement, despite the argumentative, compound, and vague RFAs.

**RFAs 17–26:** Plaintiffs assert 35.CN has not sufficiently responded with information from (1) Gong (not a majority shareholder, despite Plaintiffs' claims), and (2) OnlineNIC (a separate company, not the alter ego of 35.CN at any time). 35.CN has complied with its obligations; and, as Plaintiffs have raised before, the duty to supplement responses with ongoing investigation is ongoing. 35.CN stands on its responses but will amend if further discovery provides more information for a different response.

**RFA 29:** Plaintiffs think 35.CN should have responded another way (i.e., admit or deny a 2009 sale). 35.CN has complied with its obligations; however, pursuant to further discovery (including 35.CN's production of the 2007 contract and public offering documents outlining in detail the sale of OnlineNIC from Gong to Rex Liu in 2007), 35.CN will review whether to deny this RFA.

**RFA 30:** Plaintiffs think 35.CN should have responded another way (i.e., admit or deny a 2007 sale). For the reasons above, and as indicated to Plaintiffs, 35.CN will review whether to admit this RFA.

**RFAs 42–43:** Plaintiffs think 35.CN should have responded another way (i.e., admit or deny that Carrie Yu was a "director"). As conveyed to Plaintiffs, there are different interpretations of the term, including as used by Plaintiffs; and Carrie Yu's deposition was taken years ago, prior to further investigation. Importantly, 35.CN agreed to revisit this issue; and there is no issue for Court resolution.

**RFA 46:** Plaintiffs think 35.CN should have responded another way (i.e., admit or deny that Carrie Yu was an "officer"). The issues are the same as the above RFAs, and there is no need for intervention.

**RFA 81:** The RFA asks for an admission about a contract with Iron Mountain for an unlimited time period, despite Plaintiffs having documents confirming that Iron Mountain had no such contract during the relevant time period. Plaintiffs want 35.CN to remove an objection based on the irrelevant time period; however, Plaintiffs have not outlined any relevance, nor did Plaintiffs adequately raise this issue during the lengthy multiple Zoom video conferences. Finally, like numerous of the other issues Plaintiffs raise in their discovery statement, this issue does not require Court attention.

**Proportionality and Jurisdictional Discovery:** Plaintiffs' requests for enterprise-wide discovery against an alleged alter ego Chinese company are not in proportion to any potential harm, especially considering the Court has not ruled finally on whether it has personal jurisdiction over 35.CN. The Court should consider this manifest lack of proportionality, and the principle of restricted discovery during jurisdictional disputes, to close this dispute.

**Conclusion:** 35.CN requests the Court deny Plaintiffs' motion (or issue a protective order).

TUCKER ELLIS LLP
  By: /s/David J. Steele

David J. Steele
Attorneys for Plaintiffs,
META PLATFORMS, INC. (fka FACEBOOK, INC.) and INSTAGRAM, LLC

KRONENBERGER ROSENFELD, LLP
  By: /s/Karl S. Kronenberger

Karl S. Kronenberger
Attorneys for Defendant
XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD.