UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC., et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>ONLINENIC INC, et al.,<br><br>        Defendants. | Case No. 19-cv-07071-SI (AGT)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 280 |

    Facebook and Instagram (collectively, "Facebook") seek to compel Xiamen 35.com Internet Technology Co. ("35.CN") to respond further to certain interrogatories, requests for production, and requests for admission. The Court takes the requests in turn and rules as follows.

Interrogatories

    **ROGs 2, 15, 16**: 35.CN must amend its responses to identify the date, amount, and reason for all payments, since 2007, that 35.CN has received from OnlineNIC or made to OnlineNIC or to another person on OnlineNIC's behalf. Payments dating back to 2007 are relevant to whether 35.CN and OnlineNIC are alter egos. Both companies were founded by Shaohui Gong, and there's conflicting evidence about when, or if, Gong sold OnlineNIC. *See* Dkt. 281-5, Kroll Decl. ¶ 9 & Ex. 5. Payment records from 2007 will indicate how money flowed between 35.CN and OnlineNIC when Gong indisputably owned both companies, which may provide helpful context for understanding whether OnlineNIC and 35.CN's relationship is any different now. 35.CN hasn't shown that this discovery will be unduly burdensome or disproportionate to the needs of the case.

    **ROG 6**: 35.CN must identify, to the extent it knows, "which [35.CN] employee performed which category of work" for OnlineNIC. Dkt. 280 at 2.

    **ROG 8**: 35.CN must supplement its response to identify all 35.CN employees who have

participated in producing discovery in this case. The Special Master found that OnlineNIC and ID Shield deleted relevant ESI, *see* Dkt. 276 at 4–6, and Facebook reasonably seeks to determine whether 35.CN's employees played a role in that deletion.

**ROGs 13, 14**: These ROGs asked 35.CN to explain why certain individuals loaned money to OnlineNIC, and why some of those individuals were repaid on loans made by others. As to any listed individual who is or was a 35.CN employee, 35.CN must provide a complete answer.

Requests for Production

**RFPs 9–13**: 35.CN must produce responsive financial statements from 2007 to 2009. Financial statements from those years are relevant to the alleged alter ego relationship. The parties must meet and confer further about whether 35.CN can produce "internal or private financial documents, including drafts," dkt. 280 at 3, without violating Chinese law. If 35.CN can produce those documents without violating Chinese law, 35.CN must do so.

**RFPs 17, 19**: 35.CN must produce its domain name registration contracts with persons in California, including "information sufficient to determine the number of such contracts into which 35.CN has entered." Dkt. 280 at 3. These contracts are relevant to personal jurisdiction.

**RPFs 18, 20–23**: 35.CN must produce contracts it has entered into with U.S.-based parties, including domain name registration contracts. 35.CN's U.S.-based contracts are relevant to personal jurisdiction under Fed. R. Civ. P. 4(k)(2), which "under certain circumstances authorizes jurisdiction based on a defendant's national contacts." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir. 2002).

35.CN says Rule 4(k)(2) isn't implicated because Facebook didn't identify Rule 4(k)(2) in its complaint. The Federal Circuit has held that "Rule 4(k)(2) can be considered even when the plaintiff has affirmatively pled a different basis for personal jurisdiction." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1296 (Fed. Cir. 2012). The undersigned isn't aware of any conflicting Ninth Circuit precedent and will allow Facebook to obtain discovery relevant to Rule 4(k)(2) jurisdiction.

**RFPs 36 and 37**: These RFPs asked 35.CN to produce documents sufficient to identify any assets 35.CN has in California or in the United States. *See* Dkt. 269-4 at 27. 35.CN says it

doesn't have any responsive documents. If that's true, 35.CN need not respond further. The Court cannot order 35.CN to produce documents it doesn't have.

**RFP 46**: 35.CN must produce documents relating to services 35.CN has offered to OnlineNIC and ID Shield, since January 1, 2014, the date on which 35.CN and OnlineNIC executed their outsourcing agreement. 35.CN produced the outsourcing agreement itself, but hasn't produced other responsive documents. *See* Dkt. 280 at 4 ("35.CN has refused to produce any further documents, despite Plaintiffs pointing 35.CN to internal 35.CN documents produced by OnlineNIC relating to these services."). 35.CN must produce all responsive documents.

**RFPs 58, 59**: 35.CN needn't respond to RFPs 58 and 59, which asked 35.CN to produce documents sufficient to identify the 35.CN employees who were involved in, or participated in, "the destruction of evidence in this case." Dkt. 269-4 at 34–35. 35.CN maintains that its employees didn't participate in destroying evidence. Facebook may seek to prove otherwise, but 35.CN need not embrace Facebook's litigation position by responding to these RFPs.

**RFP 67**: RFP 67 seeks communications between 35.CN and OnlineNIC concerning work 35.CN performed for OnlineNIC. If 35.CN has any responsive documents from January 1, 2014, to the present, 35.CN must produce them.

**RFPs 72–75**: 35.CN must produce contracts it entered into with the Internet Corporation of Assigned Names and Numbers ("ICANN"), non-privileged documents related to those contracts, 35.CN's communications with ICANN since 2007 (Facebook hasn't persuaded the Court that communications dating back to 2002 are relevant), and documents relating to any action by ICANN to enforce the ICANN Registrar Accreditation Agreement ("RAA") against 35.CN. 35.CN must do more than simply "reproduce[] ICANN's entire production in this case." Dkt. 280 at 4. 35.CN must produce all responsive documents in its possession, custody, or control.

**RFPs 93, 95, 97, 99, 101, 103**: 35.CN responded to these RFPs by producing two spreadsheets identifying eighteen payments made between 35.CN and OnlineNIC. 35.CN must amend its responses to produce "any contemporaneous documents reflecting these transactions, such as bank statements, corporate ledgers, cancelled checks, or wire transfer confirmations." Dkt. 280 at

4. Any such documents reasonably fall within the scope of these RFPs.

**RFPs 124–127**: These RFPs seek documents reflecting payments and loans made between OnlineNIC and ID Shield, on the one hand, and Shaohui Gong, on the other. Facebook will likely need to obtain these documents from OnlineNIC, ID Shield, or Gong. 35.CN says it doesn't have these documents, and the Court can't order 35.CN to produce documents it doesn't have.

Requests for Admission

**RFAs 1–16**: 35.CN adequately answered RFAs 1–16. As an example, RFA 1 asked 35.CN to admit that OnlineNIC "uses employees of 35.CN to conduct work." Dkt. 269-4 at 69. 35.CN objected that the request "call[ed] for information from OnlineNIC, namely whether employees are in fact used for work." *Id.* Subject to that objection, 35.CN admitted that "35.CN and OnlineNIC performed under a staffing agreement," but denied the remainder of the request. *Id.*

35.CN's objection is sustained; RFAs 1–16 do call for information from other parties. As for 35.CN's responses, admitting in part and denying in part these requests, those responses are reasonable and comply with Fed. R. Civ. P. 36(a)(4). 35.CN need not supplement its responses.

**RFAs 17–26, 29–30**: These RFAs asked 35.CN to admit or deny certain facts about other parties or non-parties (e.g., admit that Shaohui Gong owned OnlineNIC from 2002 through 2009, admit that Gong sold OnlineNIC to Rex Liu in 2007). 35.CN responded that it lacked the information needed to fully admit or deny these RFAs, a response that wasn't clearly deficient given that the RFAs call for information from other parties and non-parties. 35.CN need not amend its responses.

**RFAs 42–43, 46**: 35.CN need not amend its responses to these RFAs. These RFAs asked 35.CN to admit or deny the truth of certain assertions made about Carrie Yu. 35.CN denied the truth of one assertion and admitted in part and denied in part the other two. 35.CN's responses complied with Rule 36. *See* Fed. R. Civ. P. 36(a) (explaining that a party may "specifically deny" an RFA or "specify the part admitted and qualify or deny the rest").

**RFA 81**: RFA 81 asked 35.CN to admit or deny that 35.CN entered into contracts with Iron Mountain Intellectual Property Management, a California Corporation. 35.CN's relevance

objection is overruled; the request is relevant to personal jurisdiction. 35.CN's objection to the lack of an identified time period is sustained. If Facebook seeks an admission, it must amend RFA 81 to limit the RFA to a relevant time period.

\* \* \*

Unless 35.CN obtains leave, 35.CN must comply with this order—supplementing its production and amending its discovery responses, as required above—by December 22, 2022.

**IT IS SO ORDERED.**

Dated: December 6, 2022

Alex G. Tse
United States Magistrate Judge