Pages 1 - 21

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Susan Illston, Senior District Court Judge

FACEBOOK, INC. *et al.*,          )
                                  )
          Plaintiffs,             )
                                  )
     vs.                          )     **NO. 3:19-CV-07071-IS**
                                  )
ONLINENIC, INC., *et al.*,        )
                                  )
          Defendants.             )
                                  )
_____ )

                                  San Francisco, California
                                  Friday, March 3, 2023

**<u>TRANSCRIPT OF REMOTE ZOOM VIDEOCONFERENCE PROCEEDINGS</u>**

(APPEARANCES ON FOLLOWING PAGE)

TRANSCRIPTION SERVICE BY:     Dipti Patel, CET-997
                              Liberty Transcripts
                              7306 Danwood Drive
                              Austin, Texas 78759
                              (847) 848-4907

**APPEARANCES VIA ZOOM VIDEOCONFERENCE:**

For Plaintiffs Meta Platform and Instagram:

                                 TUCKER ELLIS LLP
                                 515 South Flower Street, 42nd Floor
                                 Los Angeles, California 90071
                         **BY: HOWARD KROLL, ATTORNEY AT LAW**
                             **DAVID J. STEELE, ATTORNEY AT LAW**

For Defendant Xiamen 35 Internet Technology Co.:

                                 KRONENBERGER ROSENFELD, LLP
                                 150 Post Street, Suite 520
                                 San Francisco, California 94108
                         **BY: KARL KRONENBERGER, ATTORNEY AT LAW**
                             **LEAH VULIC, ATTORNEY AT LAW**
                             **LIANA CHEN, ATTORNEY AT LAW**

1   **Friday - March 3, 2023**

2                    **P R O C E E D I N G S**

3                        ---oOo---

4       **THE CLERK:**  Now calling Civil Matter 19-CV-7071, Facebook,

5   Inc., *et al.* vs. OnLineNic Inc., *et al.*

6       Counsel, please state your appearances for the record

7   starting with plaintiff.

8       **MR. KROLL:**  Good morning, Your Honor.

9       Howard Kroll and David Steele with Tucker Ellis on behalf of

10  the plaintiffs, Meta Platforms and Instagram.

11      **THE COURT:**  Good morning.

12      **MR. KROLL:**  Good morning.

13      **MR. STEELE:**  Good morning.

14      **MR. KRONENBERGER:**  Good morning.

15      Karl Kronenberger, Kronenberger Rosenfeld, on behalf of

16  Xiamen 35.com, and we'll call it 35.CN because it's such a

17  mouthful.

18      **THE COURT:**  Thank you.  Good morning.

19      **MS. CHEN:**  Good morning, Your Honor.

20  Liana Chen on behalf of defendant 35.CN.

21      **MS. VULIC:**  Good morning, Your Honor.

22      **THE COURT:**  You were like quasi frozen there.  It looks like

23  you're up and running now.

24      **MS. CHEN:**  Oh, I apologize.  Good morning, Your Honor.  Can

4

1    you hear me now?

2        **THE COURT:**  Yeah.  I can hear you, yeah.  It's the image

3    that's out of sync, but that's okay.

4        **MS. CHEN:**  Liana Chen on behalf of defendant 35.CN.

5        **THE COURT:**  Good morning.

6        **MS. VULIC:**  Good morning, Your Honor.  Leah Vulic on behalf

7    of defendant 35.CN.

8        **THE COURT:**  Good morning.

9        I read your statements and, in addition I was notified that

10   a motion was filed last night to strike defendants' answer.  I

11   haven't read that motion yet.  It's set somewhere in the future,

12   but I'm not prepared to talk about it today.

13       I read your statement.  And I'm trying to determine among

14   the disputes you actually have what we can do today to resolve

15   some of them.

16       And it looks like there are issues about the number of

17   depositions and that sort of thing.  And I'll tell you that the

18   general Rule 26 guidance binds us all until you get out from

19   under.  So if there's a specific request that those be altered,

20   you can make it and you can tell me now and I can resolve that.

21       So with respect to that, who wants what?

22       **MR. KROLL:**  Your Honor, Howard Kroll on behalf of the

23   plaintiffs.

24       We are happy to follow guidelines Rule 26.  The only issue

25   that we would want to change with respect to discovery is we

5

1    anticipate that a number of the depositions will involve

2    individuals where English is not their native language, and we

3    will need an interpreter or translator.  We have taken

4    depositions before where we've had a translator or interpreter,

5    and as the Court is aware, it takes a lot longer for a

6    deposition.

7    **THE COURT:**  Right.

8    **MR. KROLL:**  And so the limitation of seven hours for a

9    deposition, we would want to expand that beyond 7 hours to 14

10   hours.  Our experience is it takes about twice the amount of time

11   to take a seven-hour deposition when we have a translator.

12   **THE COURT:**  That's what you want.

13   And defendant?

14   **MR. KRONENBERGER:**  We do not want that.  The primary

15   deponent here has already been deposed once in English.  And --

16   **THE COURT:**  Who do you view as the primary deponent?

17   **MR. KRONENBERGER:**  The primary deponent is a woman by the

18   name of Carrie Yu (phonetic).  And she is an employee of our

19   client, 35.CN, and she by contract, the services contract, is the

20   manager of OnlineNIC.

21   Because she was a manager for another defendant, OnlineNIC,

22   she was deposed.  And I think it was a full-day deposition.  And

23   she was deposed in English, and she is likely going to be the

24   same deponent.  As I said, she was deposed in English.

25   I also want to bring up portionality issues because --

1      **THE COURT:**  I'm not persuaded by that, by the way.  You

2  mentioned it in your statement, and it seems to me in this case,

3  the normal rules would be adequate but not excessive.  What I

4  worry about, and I don't know where you all come out on this, is

5  are any of the defendants' witnesses physically in China?

6      **MR. KRONENBERGER:**  All of them are in China, which is the

7  second issue I was going to bring up.  And so --

8      **THE COURT:**  Yeah, because that's going to be a challenge.

9      **MR. KRONENBERGER:**  I don't know what the rules are at this

10  point, but previously over the past few years, there were

11  restrictions on leaving China and sometimes when those would be

12  relaxed, there would be quarantine periods before they could go

13  back to China.  So it's a bit of a mess, this process, because

14  the depositions, like they can't take place in China.

15      What we had proposed is that we limit the depositions of

16  people in China to three depositions, and then we figure out how

17  we make that happen.  That's what I have proposed, and I've laid

18  that out in the joint statement, as well.

19      **THE COURT:**  So you propose to bring a limited number of

20  folks here is what you're saying?

21      **MR. KRONENBERGER:**  No.  I proposed -- and I'm not sure how

22  we would do this, but we would have to perhaps find a country

23  where they could go to.  And I haven't gone through this in great

24  detail with my client, but we're envisioning a Zoom deposition,

25  at least one, where the deponent would have to travel to a

1    different country, Singapore, for example.

2        I don't think that they could do it in Hong Kong.  They used

3    to be able to do it in Hong Kong.  I don't know if that's

4    possible now.

5        **THE COURT:**  Well, yes, these are interesting issues.  Have

6    you -- Judge Tse is doing discovery in this case.  Is that right?

7        **MR. KROLL:**  Yes, Your Honor.

8        **MR. KRONENBERGER:**  Yes, Your Honor.

9        **THE COURT:**  Have you folks talked to him about these

10   questions?

11       **MR. KROLL:**  No, Your Honor.  We have not.

12       **THE COURT:**  All right.  Well, I think in the first instance,

13   you should probably do that because he's got a better grip on the

14   needs of it.  I'll just say for guidance purposes, I don't view

15   the normal rules that would apply as being extravagant for a case

16   of this seriousness.

17       But I do recognize that there's going to have to be some

18   cooperation in order to get Chinese depos taken.  So why don't

19   you work that out with Judge Tse, and then if there are further

20   issues, you can let me know.

21       **MR. KROLL:**  Your Honor, if I may, just to correct the record

22   a little bit.

23       So Carrie Yu was deposed.  She was not deposed in English.

24   I mean I was the one asking the questions which were in English.

25   We had an interpreter who translated it into Chinese.  She

8

1  responded in Chinese, and then there was responded back in

2  English.  And the one-day deposition was actually two days

3  because we needed two days in order to finish the deposition.

4      And one more aspect is she is not only an employee of 35.CN,

5  she's also a director of 35.CN.  And at the same time, she is a

6  vice-president of OnlineNIC.  There's a connection there.  We've

7  laid that out in our motion for terminating sanctions that was

8  filed last night so we don't have to discuss it here.

9      But we anticipate that there will be many other witnesses

10  other than Ms. Yu that we would want to take a deposition of.  We

11  can raise that with Judge Tse when --

12      **THE COURT:**  Okay, all right.  And I will also say this for

13  guidance purposes, I recognize that there is generally the need

14  for more time for an interpreted deposition.  That's just the

15  fact.

16      Oh, I wanted to ask defendants, what is Meta Platforms vs.

17  Xiamen 35.com Internet Technology Co?

18      **MR. KRONENBERGER:**  Could you repeat that, Your Honor?  I'm

19  sorry.

20      **THE COURT:**  Yeah.  You said in the status, "Meta asserts

21  there are currently no related cases, but 35.CN asserts that the

22  following case is a related case, Meta Platforms Inc. vs. Xiamen

23  35.com."

24      **MR. KRONENBERGER:**  Yes, Your Honor.

25      I remember that now.  I know what you're talking about.

1      We, we as in 35.CN, we served a subpoena on a company called

2  App T Tech (phonetic), which is the company that sent all the

3  notices to the other defendants about the harm in this case,

4  which sort of triggered all the liability in this case.

5      And they moved to quash using Facebook's law firm the

6  subpoena, and that case was dismissed when the subpoena was

7  withdrawn.  So that -- we just think it's an important point

8  because we are still seeking that same information.  Now we're

9  attempting to get it through Facebook.  And if we cannot get it

10  through Facebook, we'll have to unfortunately go back to get it

11  from App T Techs.

12      **THE COURT:**  All right.  So it's related in that respect,

13  okay.

14      **MR. KRONENBERGER:**  Yes.

15      **THE COURT:**  And where was that?  Was that here?

16      **MR. KRONENBERGER:**  That was in the District of --

17      **MR. STEELE:**  It was in Idaho.

18      **MS. VULIC:**  Idaho.

19      **THE COURT:**  Idaho.

20      Okay.  And the parties agree that private mediation would

21  have the highest chance as private settlement negotiations so far

22  haven't worked.

23      **MR. KROLL:**  Yes, Your Honor.

24      **THE COURT:**  We can --

25      **MR. KROLL:**  Your Honor?

1    **THE COURT:**  We can all attest to that.

2    **MR. KROLL:**  This may be related to discovery, and I don't

3  know if the Court is going to address this in the future but let

4  me raise it now and if you anticipate discussing this later, we

5  can do that.

6      With respect to discovery, there is a dispute between the

7  parties as to what are the remaining issues to be tried in this

8  case.

9    **THE COURT:**  I see that.  And I wasn't going to bring that up

10  right now because I'm not sure what this case is or is going to

11  look like.  There's this motion to strike the answer.  I have no

12  idea what that's about, but if it were successful, then the case

13  would be about nothing.

14      In my view, my main concern is jurisdiction.  And my

15  simplistic evaluation is that jurisdiction and alter ego are

16  interwoven here.  If, and it seems to me that if there were a

17  demonstration of alter ego and jurisdiction, that we would not

18  need to litigate the underlying merits because they would have

19  been determined by the prior proceedings.  That's off the top of

20  my head in just having read your papers here.

21      But I don't think those issues are ripe for final

22  determination right now because the case is in flux.  So I don't

23  know what you wanted, Mr. Kroll.

24    **MR. KROLL:**  Well, that's some guidance, Your Honor, which is

25  helpful.  The issue is that plaintiffs would like to pursue and

1   continue pursuing discovery with respect to the alter ego

2   analysis as well as whether or not 35.CN directly participated in

3   the underlying acts as well as 35.CN's involvement in the

4   destruction of evidence that gave rise to the default entered

5   against OnlineNIC and IDShield.

6     **THE COURT:** Well, I guess the question I have is if you talk

7   about direct involvement, does that mean, independent of an alter

8   ego theory, there could be liability on 35.CN?

9     **MR. KROLL:** There would be independent liability under

10   direct liability based on the fact that if we can show that 35.CN

11   directly participated in the registration or trafficking in of

12   the domain names that -- the 35 infringing domain names that are

13   at issue, then there would be a violation, a direct violation of

14   the ACPA.

15     **THE COURT:** Well, doesn't that open discovery then into

16   that?

17     **MR. KROLL:** Well, the problem, Your Honor, with that and

18   that's why I guess this is in flux, the problem is that as a

19   result of the special master's finding and the report and

20   recommendation and Your Honor's ruling with respect to the motion

21   for terminating sanctions, we don't know what was destroyed.

22     And plaintiffs have been irreparably harmed and prejudiced

23   by the destruction of evidence. And so how can the parties

24   litigate liability with such a tainted record?

25     **THE COURT:** Well, and the two other defendants, you don't

1    have to because they've been sanctioned.  This defendant, if it's

2    an alter ego, is liable to wind up in the same place.  But if

3    it's not, and you claim they have direct liability, wouldn't you

4    have to prove that?

5         **MR. KROLL:**  That the direct liability is that they

6    participated in a registration of the 35 infringing domain names.

7    So all we have to show then would be whether or not they

8    participated in that, not the underlying liability of whether

9    they -- whether the registration and trafficking in of the

10   infringing domain names, the domain names that are identical or

11   (indiscernible) similar to plaintiffs' marks, we're registered

12   with a bad-faith intent to profit under the ACPA.

13        So that's the underlying fact pattern that we have a tainted

14   record based on the destruction of evidence.  So I guess I'm

15   looking at it in two different ways, not the underlying liability

16   of OnlineNIC and IDShield, which has already been determined, but

17   just the little point as to what was 35.CN's involvement in that

18   registration.

19        **THE COURT:**  Mr. Kronenberger?

20        **MR. KRONENBERGER:**  In their papers, they have been very

21   clear from the beginning the direct participation theory is

22   distinct from plaintiffs' alter-ego theory, and I'm quoting right

23   from their briefing, Docket 189.

24        I think the bigger issue here is that our client, 35.CN,

25   wants a decision on the merits.  A big part of the alter-ego

13

1   analysis is whether or not there's this potential for different

2   verdicts.  And there is a very distinct possibility of that, and

3   the reason is that there's a major issue in the case and we

4   brought this up in our briefing or our statement in the case

5   management statement.  A very important issue regarding the

6   contract that supposedly creates liability here for Facebook.

7        Now we couldn't attack this on a motion to dismiss.  So we

8   have suggested a partial -- a motion for summary judgment that we

9   would bring very quickly in the next two or three weeks, perhaps.

10  And the reason we are suggesting this is because I think it's

11  like an "Emperor Has No Clothes" moment here where we have this

12  Ninth Circuit case law, <u>Balson v. Two Cows</u> (phonetic) case law

13  that says people can't use this ICAN agreement as third-party

14  beneficiaries.  They can't enforce it.

15       The argument of Facebook is that they're not talking about

16  that agreement, that this agreement from ICAN was placed within

17  some other agreement which allows Facebook to be a third-party

18  beneficiary.  That's been their argument the entire time.  Now

19  we're into the facts, we realize that that agreement does not

20  exist.  It's not there.  This is the "Emperor Has No Clothes"

21  moment.

22       So their whole theory of liability is falling apart.  We

23  gave them notice, what, ten days ago or so of we were going to

24  bring this.  And they very quickly brought this motion for

25  terminating sanctions which is essentially a summary judgment

 1  motion that we have 13 days to respond to, because they know that

 2  we're going to bring this pretty powerful motion.

 3       So I think the point is, Your Honor, we want to focus on

 4  this issue on the merits because in the big picture for the

 5  Court, this should matter because Facebook should not be able to

 6  get these sanctions, judgments in the form of like sanctions when

 7  there is no merit to the case.

 8       Now they're going to disagree.  They're going to say there's

 9  merit to the case.  We want our shot.

10       **THE COURT:**  Well, they're also going to say, well, the other

11  two defendants should have behaved better if they wanted to get

12  to the merits.

13       **MR. KRONENBERGER:**  They should have, and I can't apologize

14  for them.  It's a different counsel, underfunded defense.  They

15  couldn't fight very well.  And they were overwhelmed.

16       And now we're somewhat stuck.  But we have what we think is

17  a narrow issue, and that is the agreement, this agreement from

18  ICAN that supposedly put into some agreement that can't be

19  produced that I say doesn't exist.  We can potentially end this

20  case early.

21       So this is an issue for case management in that we want to

22  bring -- we want leave from you, Your Honor, to bring this narrow

23  motion for partial summary judgment, and we want to bring it very

24  soon.  And we want to marry up, we want to take the scheduling

25  for the motion for terminating sanctions, we want to work out a

1    briefing schedule with the Court or privately with plaintiffs and

2    then bring it to the Court for approval so the Court can look at

3    both of these, the motion for terminating sanctions as well as

4    this very important but narrow motion for partial summary

5    judgment.

6         So that's really I think the most important thing that I'd

7    want to say in this hearing.

8         **THE COURT:**  Well, the motion -- your narrow summary judgment

9    motion goes to the underlying merits of the case.  Is that

10   correct?

11        **MR. KRONENBERGER:**  You are correct.  It goes to the

12   contracts, correct.

13        **MR. KROLL:** Your Honor, if I --

14        **THE COURT:**  Would that be relevant, Mr. Kroll, if you were

15   going to talk about direct involvement?

16        **MR. KROLL:**  No, Your Honor, for two reasons.

17        One is in the motion for terminating sanctions that we filed

18   last night, the focus was on alter ego and solely on alter ego

19   and not on the direct participant theory.

20        And, second, this is an issue that Mr. Kronenberger and

21   35.CN raised in their motion to dismiss the complain which was

22   rejected by the Court.  And even though Mr. Kronenberger

23   indicates that the Ninth Circuit has ruled on this, that's not

24   what is at issue here.

25        We have two separate claims.  One is that the defendants

16

1    registered the 35 infringing domain names with a bad-faith intent

2    to profit in violation of the ACPA.  That has nothing to do with

3    Mr. Kronenberger's claim.

4         The second part is that under Section 3773 of the Registrar

5    Accreditation Agreement, it requires -- and I'm sorry, the

6    Registrar Accreditation Agreement requires registrars to put this

7    language in their registration agreement.  And 3773 requires that

8    a company upon receiving reasonable evidence of actionable harm

9    has seven days to identify the name of the licensees of the

10   domain names.

11        Mr. Kronenberger is focusing on the registrar accreditation

12   agreement that has a no-third-party beneficiary, and that's the

13   Two Cows case that he cites.  And we're not focusing on that.

14   We're focusing on the registration agreement that OnlineNIC has.

15   So we've actually briefed this in our opposition to the motion to

16   dismiss.  The Court has ruled on this with respect to the motion

17   to dismiss.

18        So, frankly, we don't see the viability of it, nor is it

19   relevant for purposes of our motion for terminating sanctions.

20        **THE COURT:**  Your motion for terminating sanctions is related

21   to --

22        **MR. KROLL:**  Alter ego.

23        **THE COURT:**  -- alter-ego issues?

24        **MR. KROLL:**  Yes.

25        **THE COURT:**  Okay.  Well, I think we should proceed one thing

1   at a time.  So if that motion's on file, I think it should be

2   determined.  And I'm going to go back and look at your prior

3   motions and find out whether this issue was in fact dealt with

4   previously.  I want to make sure of that.

5       And in the event we get past the motion to strike the

6   answer, we'll again take up the question of whether -- I mean at

7   the end of the case, you can always file a summary judgment

8   motion, but whether that can be an earlier one, we can talk about

9   that thereafter.

10      When did you set the -- well, did you tell me, Mr.

11  Kronenberger, that you folks are working on a schedule for the

12  motion that was just filed?

13      **MR. KRONENBERGER:**  No.  We were surprised by it.  I guess

14  right before midnight last night, it was filed, so we woke up

15  today and we have 13 days to respond to a massive motion.

16      We haven't even talked to plaintiffs' counsel --

17      **THE COURT:**  Okay.  Well, what you should do is talk to them

18  and let me know if you can work something out.  If you can't and

19  if you need some relief, come to me.

20      **MR. KRONENBERGER:**  Your Honor, there is one point I'd like

21  just factual point I'd like to bring up because there is this

22  issue of leave, potential leave to file our partial summary

23  judgment motion.

24      We agree with Mr. Kroll, what he said in that it's not about

25  this agreement with ICAN, it's about the Registrar Agreement.  In

18

1    the complaint, Facebook doesn't say that this contract exists.

2    They say it must exist.  They don't see it, they don't have it,

3    but it must exist.  So we agree with him.  We are focusing on

4    this issue, does this agreement exist.

5         And the issue is a simple as does it exist or does it not

6    exist.  So what we would like to seek leave, Your Honor, to file

7    this narrow motion because it would just kill me if this case

8    would go -- if there would be a decision on terminating sanctions

9    without the judge having any opportunity to make a decision on

10   this important merits issue, which I think is a simple decision,

11   it's a streamline motion.

12        So we would like to seek leave to file this motion.  We

13   could do it fairly quickly.

14        **THE COURT:**  You could file a request to seek leave?

15        **MR. KRONENBERGER:**  Yes.  Or if you grant us leave now, we

16   wouldn't need it.

17        **THE COURT:**  Well, I'm not.  Right now I'm saying it should

18   be filed after his motion.  So if you want a different decision,

19   then you need to explain why in writing for me, okay?  And I

20   don't want to kill you, Mr. Kronenberger.  I don't want to do

21   that.

22        **MR. KRONENBERGER:**  That was harsh language, I admit.  But

23   it's a bit frustrating to us because our clients wants a decision

24   on the merits.

25        **THE COURT:**  You know, that's really interesting and maybe

1    your client will get one.  But the posture of this case is that

2    getting to the merits was already made impossible by these other

3    two folks.  And if in fact your client is these other two folks,

4    then there's going to be consequences to that, and I just don't

5    know the answer yet.

6        But there would be consequences, one of which might be that

7    they don't get to go to the merits like they'd like to.  And I

8    know they wouldn't want you to die either.  So we just have to be

9    careful.  Drink some hot tea and --

10       **MR. KRONENBERGER:**  Will indeed.

11       **THE COURT:**  -- put honey in it, so.

12       All right.  Well, then why don't we do this.  I would like

13   you folks to talk to each other and see if you can agree upon a

14   schedule for this motion that was just filed.  And whenever it

15   comes on, then we can have it and we can have a further status on

16   all of these matters.

17       I also want to go back to the mediation question.  You said

18   private mediation would be better.  Should we structure that now

19   or should we wait and structure that later?

20       **MR. KROLL:**  Your Honor, we anticipate within the next few

21   days sending our settlement proposal to Mr. Kronenberger.  That

22   may well jumpstart things or may not.  But with respect to that,

23   it may be helpful to delay the issue as to mediation because

24   we'll allow the parties to privately discuss --

25       **THE COURT:**  Okay.

1    **MR. KROLL:** -- among ourselves to see if we can resolve it.

2    **THE COURT:** All right. Well, but let's circle back to it at

3    the next status, then, and figure out if it would be useful to

4    you.

5    **MR. KROLL:** Currently, Your Honor, the motion for

6    terminating sanctions is scheduled to be heard on April 7th.

7    **THE COURT:** All right. And if it stays there, then that's

8    fine. And if it moves any, that's fine, too. You should be

9    aware that the Court -- hang on one second.

10    The Court will not be available on May 10th or May 17th or

11    May 24th. Those three Fridays in May I won't be here. So if

12    you're going to move it out, don't move it past May 3rd unless

13    you're willing to move it to basically the beginning of June,

14    okay.

15    Esther has those dates if you need to check with her. But

16    whatever date it turns out to be, let's have a status at that

17    time, as well, okay.

18    Anything else you want to do right now?

19    **MR. KRONENBERGER:** Your Honor, we would love for you to set

20    a schedule. We have proposed a schedule which is quite different

21    than the plaintiffs' schedule on Page 15 of our joint statement.

22    **THE COURT:** Well, let's talk about this at the next status,

23    as well. I just want to know what's in the case because it will

24    depend. As you say, there's stark differences in what you're

25    suggesting. So we'll do that at the next status. Okay.

21

1        **MR. KROLL:**  Thank you.

2        **THE COURT:**  Well, thank you all.

3        **MR. KRONENBERGER:**  Thank you, Your Honor.

4        (Proceedings adjourned at 3:37 p.m.)

5                          ---oOo---

6

7                  **C E R T I F I C A T E**

8        I, DIPTI PATEL, court-approved transcriber, certify that the

9    foregoing is a correct transcript from the official electronic

10   sound recording of the proceedings in the above-entitled matter.

11

12   *Dipti Patel*

13   _____

14   DIPTI PATEL, CET-997

15   LIBERTY TRANSCRIPTS            Date: March 11, 2023

16

17

18

19

20

21

22

23

24

25