**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Liana W. Chen (Bar No. 296965)
Leah Rosa Vulić (Bar No. 343520)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@kr.law
jeff@kr.law
liana@kr.law
leah@kr.law

Defendant Xiamen 35.com Technology Co., Ltd.
(erroneously sued as Xiamen 35.com Internet Technology Co., Ltd.)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **FACEBOOK, INC.**, et al., | Case No. 3:19-cv-07071-SI |
| Plaintiffs, | |
| v. | **DEFENDANT XIAMEN 35.COM TECHNOLOGY CO., LTD.'S [REDACTED] OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE DEFENDANT'S ANSWER AND FOR ENTRY OF DEFAULT AGAINST DEFENDANT XIAMEN 35.COM TECHNOLOGY CO., LTD. PURSUANT TO FED. R. CIV. P. 37 [D.E. 299]** |
| **ONLINENIC INC.**, et al., | |
| Defendants. | |
| | Date:      June 16, 2023 |
| | Time:      10:00 a.m. |
| | Ctrm:      1, 17th Floor |
| | Judge:     Hon. Susan Illston |

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................. 1

STATEMENT OF FACTS..................................................................................... 2

A.    Meta's Attempts to Amass Private Data Through Example Classes ..................... 2

B.    Separate Defendants ................................................................................... 4

    1.    Background of OnlineNIC and ID Shield and Corporate Formalities .......... 4

    2.    Background of 35.CN and Corporate Formalities ......................................... 5

    3.    Arm's Length Business Transactions Between 35.CN and OnlineNIC ........ 5

    4.    35.CN's Separation From and Lack of Control Over OnlineNIC ................. 7

        a.    Separate Businesses Generally................................................. 7

        b.    Independent Discovery Decisions in this Case ............................... 8

C.    Procedural History ...................................................................................... 9

D.    Discovery Issues Between Meta and 35.CN ....................................................... 10

ARGUMENT......................................................................................................... 11

A.    Legal Standard .......................................................................................... 12

B.    Meta's Rule 37 arguments lack merit as there are no discovery violations .......... 14

    1.    35.CN did not violate Rule 37 as referenced by Meta. ............................... 14

        a.    There was no violation of Rule 37(b)(2)(A)(vi). ........................... 14

        b.    There was no violation of Rule 37(c)(1)(C). ................................. 15

        c.    There was no violation of Rule 37(e). ......................................... 15

    2.    Meta requests drastic remedies where lesser, if any, relief suffices. ........ 16

C.    Meta's alter ego claims lack merit and, if anything, present an issue of fact. ...... 17

    1.    Meta has no shown sufficient unity of interest between Defendants. ........ 18

        a.    There was no unity of interest or control for underlying claims. ..... 18

        b.    There was no control over the alleged discovery misconduct. ....... 22

    2.    Alter ego liability is not required to prevent a fraud or injustice. ................ 22

        a.    There is no fraud or injustice relating to the underlying claims. ...... 22

        b.    There is no fraud or injustice for the discovery sanctions. ............ 23

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1

3.    If anything, there is a triable issue of fact on alter ego liability. ................. 22

CONCLUSION ............................................................................................................ 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

Page(s)

<u>Cases</u>

*21st Century Fin. Servs., LLC v. Manchester Fin. Bank*,
   255 F. Supp. 3d 1012 (S.D. Cal. 2017) ........................................................................ 20

*Cadence Design Sys., Inc. v. Viera*,
   836 F. App'x 493 (9th Cir. 2020) .................................................................................. 25

*Cambridge Elecs. Corp. v. MGA Elecs., Inc.*,
   227 F.R.D. 313 (C.D. Cal. 2004) .................................................................................. 25

*Clark v. Dana Woody & Assocs., Inc.*,
   No. 09CV2931-CAB DHB, 2013 WL 544030 (S.D. Cal. Feb. 12, 2013) ................... 28

*Curtis v. Illumination Arts, Inc.*,
   957 F. Supp. 2d 1252 (W.D. Wash. 2013) .................................................................... 19

*Fed. Rsrv. Bank of San Francisco v. HK Sys.*,
   No. C-95-1190 MHP, 1997 WL 227955 (N.D. Cal. Apr. 24, 1997) ............................ 24

*G.P.P., Inc. v. Guardian Prot. Prod., Inc.*,
   No. 1:15-CV-00321-SKO, 2018 WL 385372 (E.D. Cal. Jan. 9, 2018) ....................... 16

*Gerritsen v. Warner Bros. Ent. Inc.*,
   116 F. Supp. 3d 1104 (C.D. Cal. 2015) ........................................................................ 23

*Goes Int'l, AB v. Dodur Ltd.*,
   No. 3:14-CV-05666-LB, 2017 WL 2473029 (N.D. Cal. June 8, 2017) ....................... 20

*Guifu Li v. A Perfect Day Franchise, Inc*,
   281 F.R.D. 373 (N.D. Cal. 2012) .................................................................................. 19

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   897 F. Supp. 2d 939 (N.D. Cal. 2012) .......................................................................... 15

*Johnson v. Goldsmith*,
   42 F. App'x  (9th Cir. 2013) .......................................................................................... 20

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*,

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

235 Cal. App. 3d 1220 (1991).................................................................................24

*Maddock v. KB Homes, Inc.,*

631 F. Supp. 2d 1226 (C.D. Cal. 2007) ..................................................................28

*Min Prods. PTE. Ltd. v. FireForge, Inc.,*

No. CV 14-941 DSF (SSX), 2017 WL 11635012 (C.D. Cal. Feb. 6, 2017) ...............16

*NuCal Foods, Inc. v. Quality Egg, LLC,*

887 F. Supp. 2d 977 (E.D. Cal. 2012).....................................................................25

*Payne v. Exxon Corp.,*

121 F.3d 503 (9th Cir. 1997)....................................................................................20

*Rago v. Select Comfort Retail Corp.,*

No. 519CV02291FMOSPX, 2021 WL 3621890 (C.D. Cal. June 11, 2021) ..............18

*Ranza v. Nike, Inc.,*

793 F.3d 1059 (9th Cir. 2015)..................................................................................21

*Sandoval v. Ali,*

34 F. Supp. 3d 1031 (N.D. Cal. 2014) .....................................................................21

*Smith v. Hoffman,*

No. 14-CV-01741-LB, 2017 WL 5957740 (N.D. Cal. Nov. 30, 2017).........................19

*Steelman Partners v. Sanya Gaosheng Inv. Co. Ltd,*

No. 209CV01016GMNGWF, 2016 WL 3450802 (D. Nev. June 20, 2016) ...............17

*Steelman Partners v. Sanya Gaosheng Inv. Co., Ltd.,*

No. 209CV01016GMNGWF, 2016 WL 8711691 (D. Nev. Oct. 28, 2016).................28

*Tatung Co., Ltd. v. Shu Tze Hsu,*

217 F. Supp. 3d 1138 (C.D. Cal. 2016) ...................................................................25

*Television Events & Mktg., Inc. v. AMCON Distrib., Co.,*

484 F. Supp. 2d 1124 (D. Haw. 2006) ...............................................................16, 28

*Thompson v. Hous. Auth. of the City of Los Angeles,*

782 F.2d 829 (9th Cir. 1986)....................................................................................19

*Toho-Towa Co. v. Morgan Creek Prods., Inc.,*

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

217 Cal. App. 4th 1096 (2013) ................................................................................ 24

*United States v. Lonich*,

No. 14-CR-00139-SI-1, 2018 WL 10127107 (N.D. Cal. Aug. 1, 2018) ...................... 26

*WeRide Corp. v. Kun Huang*,

No. 5:18-CV-07233-EJD, 2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) ................... 15

*Williams v. Yamaha Motor Co. Ltd.*,

851 F.3d 1015 (9th Cir. 2017) ................................................................................. 20

*Zoran Corp. v. Chen*,

185 Cal. App. 4th 799 (2010) ...................................................................... 20, 27, 28


Statutes & Rules

Cal. Code Civ. Proc. §187 ....................................................................................... 25

Fed. R. Civ. P. 37 .............................................................................................*passim*

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1    Defendant Xiamen 35.com Technology Co., Ltd. ("35.CN" or "Defendant") opposes

2 the Rule 37 Motion by Plaintiffs Facebook, Inc. and Instagram, LLC ("Meta" or "Plaintiffs").

3                                    **INTRODUCTION**

4        Meta is once again seeking to avoid litigating on the merits by claiming discovery

5 issues warrant the extreme remedy of terminating sanctions. Meta is wrong. In fact,

6 Meta's motion for Rule 37 discovery sanctions seeks to overstep Magistrate Judge Tse's

7 oversight of discovery issues, omits key points in the Discovery Order [D.E. 286], and

8 discounts 35.CN's good faith discovery responses. Crucially, Meta's argument that 35.CN

9 would use other Defendants as alter egos does not make sense; unlike the common

10 "sham" company that funnels money up to the parent entity, which avoids liability,

11 OnlineNIC was not generating much revenue for 35.CN. Instead, Meta cherry-picks

12 supposed "connections" over two decades, but it ignores fundamental evidence

13 demonstrating that 35.CN and other Defendants had years of separate, legitimate

14 business serving different categories of customers. Thus, they are not alter egos.

15        Relating to discovery issues, Meta's strategy has been to serve hundreds of

16 oppressive requests and then find fault with nearly every response. However, Magistrate

17 Judge Tse confirmed that 35.CN's discovery responses were already sufficient or

18 resolved disputes with 35.CN complying with his orders. For example, Meta complained

19 that 35.CN did not identify its specific employees that, ███████████████████

20 ███████████████████ participated in so-called "destruction of evidence," which

21 was disputed but led to OnlineNIC and ID Shield's default through Meta's requested

22 discovery sanctions. Recognizing that 35.CN maintains that its employees did not

23 participate in destroying evidence, Magistrate Judge Tse confirmed that 35.CN "need not

24 embrace Facebook's litigation position by responding" to discovery requests identifying

25 employees involved in the claimed "destruction of evidence." [D.E. 286 at 3.]  Yet, in

26 efforts to circumvent the discovery rules and Discovery Order, Meta now asks the Court

27 to prematurely adopt Meta's litigation position by holding 35.CN liable for OnlineNIC and

28 ID Shield's "destruction of evidence" as an alter ego subject to the same terminating

sanctions. However, Meta's perplexing attempt at an early motion for summary judgment is not only premature but ignores important evidence that refutes alter ego liability. In particular, Meta ignores OnlineNIC's years of providing valuable services as an ICANN-accredited registrar and omits mention of the comprehensive legal and corporate analysis—which was publicized when 35.CN went public in China—confirming that 35.CN is not a "related entity" of OnlineNIC. This analysis not only involved a close examination of the two companies' businesses but also a detailed review of the interests of Shaohui Gong ("Gong"), a former major owner of 35.CN who owned OnlineNIC over a decade ago. In particular, voluminous public disclosures show that Gong divested himself of ownership in OnlineNIC prior to 35.CN's initial public offering ("IPO") in 2007.

The timing of Meta's motion is also suspect as it was filed shortly after 35.CN outlined its intent to file a motion for partial summary judgment (which it still intends to do) to dispense with Meta's main arguments in this case.[1] Specifically, Meta claims ID Shield agreed to "accept liability" for third-party customer/registrant conduct under a "Registration Agreement." However, the agreement simply does not exist. Thus, as a matter of law, Meta cannot obtain damages as a third-party beneficiary of an imaginary contract. Nonetheless, eager to obtain statutory damages and recompense for its mounting attorney's fees, Meta has filed this motion despite its lack of merit on the underlying claims. Thus, Meta's motion for discovery sanctions should be denied.

## STATEMENT OF FACTS

### A.    Meta's Attempts to Amass Private Data Through Example Cases

For context, in May 2018, the EU's General Data Protection Regulation ("GDPR"), a comprehensive privacy law, became effective, resulting in limitations on the availability of registrant contact information through public WHOIS searches.[2] Eager to amass private

---

[1] 35.CN will also seek leave to file a second, more in-depth, motion for summary judgment to dispense with any remaining claims, including due to Meta's misrepresentations to the Court about providing "notices of harm" to Defendants, among other reasons.

[2] Effective solutions still include UDRP or "rem" complaints or complaints to ICANN.

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

contact information considering the onset of GDPR restrictions, Meta[3] engaged a third-party robo-faxer/spammer, Focus IP, Inc. dba AppDetex ("AppDetex"), to send mass "notices" to various domain name registrars demanding registrant contact details, based on Meta's incorrect argument that it can enforce provisions of ICANN's agreements with registrars. Most registrars did not respond or confirmed that a subpoena or court order was required before turning over private customer information.[4] Still impatient for a process to obtain this data,[5] Meta sued registrars using its novel third-party beneficiary legal theory, seeking default judgments or settlements through relentless litigation tactics including disproportionate discovery demands.[6] Meta targeted OnlineNIC in particular because its counsel had obtained a default judgment against OnlineNIC in a prior case 15 years ago.[7]

Now, in this case, Meta alleges that it sent "notices" (5 fax messages for the 35 Domain Names at issue) to ID Shield, which was providing privacy services for underlying domain name registrants. Meta claims that ID Shield failed to respond to the notices as purportedly required by a "Registration Agreement" with OnlineNIC (to which ID Shield never agreed) that incorporated ¶3.7.7.3 of ICANN's Registrar Accreditation Agreement ("RAA"), requiring "proxy" services to disclose registrant contact information upon reasonable notice of actionable harm. However, Ninth Circuit precedent precludes any claims that Meta was a third-party beneficiary of the RAA. *See Balsam v. Tucows Inc.*, 627 F.3d 1158, 1159–60 (9th Cir. 2010). Further, Meta cannot argue that ID Shield (or its alleged alter egos OnlineNIC or 35.CN) violated a "Registration Agreement" because ID Shield was not a party to any such agreement. When 35.CN sought to file a motion for partial summary judgment on this issue, Meta quickly filed the present motion to strike, seeking terminating sanctions against 35.CN before the case gets to the merits.[8]

---

[3] Plaintiffs, banned in China, rebranded to "Meta" during this lawsuit amidst public outcry.
[4] *See e.g.,* www.appdetex.com pages and related web archives at archive.org.
[5] *See e.g.,* https://www.youtube.com/watch?v=zAQB22d36aY.
[6] *E.g., Facebook Inc. v. Namecheap Inc.*, No. CV-20-00470-PHX-GMS (D. Ariz. 2020); *Facebook Inc. v. Facebook-verify-inc.com*, No. 1:20-cv-00639-RDA-IDD (E.D. Va. 2020).
[7] *Verizon California Inc. v. OnlineNIC Inc.,* No. CV-08-2832-JF (N.D. Cal. 2008).
[8] Meta's bad faith set up of OnlineNIC and ID Shield involved AppDetex sending a handful

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1

**B.**    **Separate Defendants**

2    **1.**    **Background of OnlineNIC and ID Shield and Corporate Formalities**

3    Defendant OnlineNIC was established in 1999 prior to the formation of 35.CN five

4    years later. [D.E. 174-2, Exs. C-D]; (Kronenberger Decl. ¶9 & Ex. G.) Far from existing as

5    a mere "shell," OnlineNIC provides valuable independent services to its customers and

6    receives customer payments to pay for expected expenses, including for years prior to the

7    formation of 35.CN. *See e.g.,* OnlineNIC.com; (*see* Kronenberger Decl. Exs. F & G.) In

8    fact, OnlineNIC is an ICANN-accredited registrar; it was adequately formed as a

9    corporation in California, ████████████████████████████████ (Kroll

10    Decl. ¶¶32, 42-52, 56, 70; *see also* Kronenberger Decl. Ex. G; Yu Decl. ¶7.) Moreover, ██

11    ████████████████████████████████████████████████████████

12    ████████████████████████████████████████████████████████

13    ████████████████████████████████████████████████████████

14    ███████████. (Yu Decl. ¶12.) OnlineNIC has been sued in the past, but that is common

15    in the US, including for registrars and for Meta itself, which has faced numerous lawsuits

16    resulting in billions in recoveries by plaintiffs. OnlineNIC was previously sued by Verizon

17    through Meta's same attorneys, but it does not have any outstanding monetary payment

18    obligations in that case. (*See* Kronenberger Decl. ¶7.)

19    Defendant ID Shield provides domain name privacy services to OnlineNIC

20    customers. (*See* https://www.onlinenic.com/en/Domains/domainprivacy; SAC ¶¶27-28 &

21    Exs. 5-6.) In doing so, ID Shield contracts separately with OnlineNIC's customers; as

22    confirmed in discovery responses to Meta, there are no written contracts between

23    OnlineNIC or ID Shield, i.e., no "Registration Agreement" between OnlineNIC and ID

24    Shield, despite Meta seeking to enforce third-party beneficiary rights based on this

25    imaginary, nonexistent agreement. (Kronenberger Decl. Ex. F (RFP 14).)[9]

26    ────────────────────────
of ***fax*** "notices" of customer "infringement," but ████████████████████████ as

27    ████████████ (and the receipt of faxes is disputed). (Kronenberger Decl. ¶11.)
[9] While Meta claims ID Shield "registered" the Domain Names, SAC ¶¶10, 27, this is false;

28    Defendants produced ████████████████████████████████████████████

**DEF 35.CN'S OPP TO PLTFS' MTN TO**
**STRIKE AND FOR DEFAULT**

**2.    Background of 35.CN and Corporate Formalities**

Defendant 35.CN is a public company lawfully formed in Xiamen, Fujian Province in China in 2004 (i.e., 5 years after OnlineNIC was created) and is registered in China and organized under the laws of China. [D.E. 174-1, ¶2.] 35.CN provides customers in China with cloud computing, application software, email hosting, and CRM services; and it is also an ICANN-accredited domain name registrar. [D.E. 174-1, ¶¶2-3; SAC ¶¶3, 26 & Ex. 4.)

As Meta is aware, 35.CN has filed many public documents detailing financial and company information, as required of all public companies in China. In particular, public and/or produced documents of 35.CN have included: (a) financial records; (b) data on company officers, directors, and its largest shareholders; (c) ICANN records; and (d) contracts. As these records and discovery show, 35.CN has had independent owners, ███████████████████████████████████████████████ ████████████████ at all relevant times. (Kronenberger Decl. ¶3 & Ex. B; Yu Decl. ¶¶7-11.)

**3.    Arm's Length Business Transactions Between 35.CN and OnlineNIC**

Prior to 35.CN going public in 2009, Gong, a major shareholder of 35.CN, also owned OnlineNIC; however, Gong sold OnlineNIC to a longtime US employee of OnlineNIC, Rex Liu ("Liu") in 2007, prior to 35.CN's IPO (i.e., more than a decade before the claims in this case arose). [D.E. 174-2, Exs. C-D.] Gong and Liu otherwise had no other connections, i.e., Liu was never connected to 35.CN or to Gong personally. [D.E. 174-2, Exs. C-D.] Due to 35.CN's IPO, there were detailed disclosures and certifications involving a variety of issues relating to the two companies as well as the sale by Gong to Liu, which was formalized in a written agreement and analyzed by US and Chinese law firms. (Kronenberger Decl. Exs. C-E.) In particular, the sale was determined to be for a reasonable price under the circumstances due to (a) the differences between the US and Chinese markets as well as the companies' business models, which Liu understood as a longtime OnlineNIC employee; (b) the projected future value and limited profitability of OnlineNIC; and (c) Liu's history of working for OnlineNIC with a low salary yet with great

████████████████████████████████ (Kronenberger Decl. Ex. H.)



1  knowledge about OnlineNIC and its business. (Kronenberger Decl. Exs. C-E.) Liu also

2  made certifications about the sale, disclosed in IPO records. [*See* D.E. 174-2, Exs. C-D.]

3       After the sale, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

4  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Weiwei Decl. ¶2; Kronenberger Decl. ¶3 & Ex. B.)

5  Importantly, however, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

6  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Yu

7  Decl. ¶3; Weiwei Decl. ¶2; Kronenberger Decl. Ex. B.) As outlined by 35.CN's General

8  Manager, 35.CN does not control, manage, or run the operations or decisions of

9  OnlineNIC/ID Shield, and 35.CN did not participate in the actions of OnlineNIC/ID Shield

10  as alleged in this case. [D.E. 174-1, ¶¶4-5]; (*see also* Weiwei Decl. ¶5.) ▓▓▓▓▓▓

11  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Yu Decl. ¶¶4, 9; *see* Kronenberger

12  Decl. Ex. B.) However, Meta continues to emphasize purported connections with Gong,

13  despite his divestiture over a decade ago. (Mtn at 2-3.)

14       Meta also argues 35.CN and OnlineNIC are "alter egos" due to ▓▓▓▓▓▓

15  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

16  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

17  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*See* Weiwei Decl. ¶3.) In particular, ▓▓▓

18  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

19  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

20  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

21  ▓▓▓▓▓▓▓▓▓▓▓▓ (*See* Weiwei Decl. ¶3.) There is nothing suspect about these

22  business transactions, ▓▓▓▓▓▓▓▓▓▓▓▓▓ (*See* Weiwei Decl. ¶4.)

23       Moreover, although Meta argues that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

24  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

25  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

26  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

27  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*See* Meta's Ex. 13.) These

28  allegations are extremely difficult for 35.CN to verify, and regardless, ▓▓▓▓▓▓▓



1    ████████████████████████████████████████ (Weiwei

2  Decl. ¶4.) ████████████████████████████████████████

3    █████████████████████████████████ (*See* Weiwei Decl.

4  ¶4.) Further, the evidence shows that ███████████████████

5    ████████████████████████████████████████

6    ██████████████████████████ (*See* Weiwei Decl. ¶4.)

7       Finally, Meta raises ███████████████████████

8  ██████████████████████ (Yu Decl. ¶13.) Meta's claims

9  ████████ like its other points, lack relevance to the current motion as they are simply a

10  red herring intended to create prejudice despite no connection to the case.

### 4.    35.CN's Separation From and Lack of Control Over OnlineNIC

#### a.    *Separate Businesses Generally*

Meta cherry-picks supposed "connections" between 35.CN and OnlineNIC over a period of nearly two decades, but Meta ignores troves of counterevidence, including years of profitable revenue for 35.CN and OnlineNIC from other sources. (*See* Kronenberger Decl. ¶2 & Ex. A.) For example, the separation between the companies is shown by:

- Were formed as separate companies in different countries, 5 years apart;
- Had adequate formation documents and officers;
- Had separate corporate records and financial filings;



- ████████████████████████████
- Had separate owners and management;
- ██████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████ [D.E. 115];
- Had arm's length services contracts, including in writing;
- ████████████████████████████
- Were not mere "shells" for each other, including as Defendants had legitimate

**DEF 35.CN'S OPP TO PLTFS' MTN TO STRIKE AND FOR DEFAULT**

separate businesses, including as accredited domain name registrars;

- Had corporate assets and adequate capitalization for expected liabilities;
- ████████████████████████████ and
- Did not conceal one another's activities (note that having different Chinese and English names is commonplace and not necessarily to conceal an identity).

(Weiwei Decl. ¶¶2-5; Yu Decl. ¶¶3-11; Kronenberger Decl. Exs. A-H); [D.E. 174-1, ¶¶5-9.]

In fact, based on public and discovery records, for the years 2009 to 2019, there was very little overlap in revenue relating to the companies, i.e., ████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████



### b.    Independent Discovery Decisions in this Case

In line with 35.CN's lack of control over OnlineNIC generally, 35.CN did not control OnlineNIC's decisions in this case, including its discovery responses, document productions, or document preservation (or any lack thereof). There is no evidence that the locus of decision making for OnlineNIC's and ID Shield's so-called "destruction of evidence" was with 35.CN. Meta argues that the Special Master identified ██████████ ████████████████████████████████████████████████[1] and states, incorrectly, that OnlineNIC did not have its own employees to participate in discovery. (Mtn at 9, 15.) However, as repeated to Meta, ██████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

---

[10] *See* summary of public 35.CN records and OnlineNIC's produced documents.
[11] This was part of an outdated ticketing system; there was no intentional destruction.

1  including for discovery responses and document preservation, rested with OnlineNIC's

2  separate owner and management; and 35.CN did not, as a company, control OnlineNIC's

3  discovery or case decisions on ESI, nor did 35.CN have any owner or executive controlling

4  or directing the same. [D.E. 174-1, ¶¶4-5]; (Weiwei Decl. ¶2; Yu Decl. ¶3.)

5  ## C.    Procedural History

6      Meta filed this case in October 2019 against OnlineNIC and ID Shield. [D.E. 1.] Trial

7  was set but postponed multiple times. The SAC includes 35.CN as a Defendant under both

8  "alter ego" and "direct participant" allegations. (SAC at 7.) In particular, the SAC alleges

9  four counts against all Defendants collectively: (1) cybersquatting, (2) trademark

10 infringement, (3) trademark infringement and false designation, and (4) dilution. Each of

11 the four claims relies upon a "secondary" liability theory where Meta asserts all Defendants

12 are liable to Meta for harm caused by the third-party registrants' registration, use, and/or

13 trafficking of the Domain Names because they did not "timely and accurately disclose the

14 current contact information" for the registrants in response to "Meta Notices [of harm] prior

15 to the filing of the original Complaint." (SAC ¶¶97, 111, 123, 135.)[12] The first cause of

16 action for cybersquatting also includes a "direct" liability theory. (SAC ¶81.) Meta has been

17 clear that it asserts 35.CN "directly participated" in the conduct. [*See e.g.,* D.E. 298 at 3.]

18     Despite meritorious defenses—and after engaging in extensive written discovery,

19 document productions, and depositions—the high costs of Meta's lawsuit and other issues

20 forced OnlineNIC and ID Shield to stop defending this case. [D.E. 118 ¶1; D.E. 131-1 ¶¶4–

21 5]; (*see also* Yu Decl. ¶6.) In July 2021, the Special Master filed a report indicating that

22 OnlineNIC and ID Shield failed to retain responsive records (primarily ticket database

23 records in other Defendants' antiquated archival "Kayako" system). [D.E. 115.] Magistrate

24 Judge Van Keulen adopted the Special Master's report and made a report and

25 recommendation granting Meta's request for terminating sanctions against OnlineNIC and

26

27 ---

[12] Meta's claims also fail as it did not provide reasonable notice of harm with the "notices" (i.e., a handful of robo-faxes from AppDetex, which were not received), nor did Meta send *any* notices for at least 9 of the 35 Domain Names prior to the original Complaint, drastically reducing statutory damages per domain name and related attorney's fees.

28

1   ID Shield ("R&R") [D.E. 151, 225.] Judge Illston adopted the R&R [D.E. 276] but, after

2   additional briefing, found good cause to defer entry of default judgment pending resolution

3   of the case against 35.CN. [D.E. 291.] In particular, the Court found delay of judgment

4   appropriate to avoid "piecemeal appeals of the same issues" given Meta's alter ego claims.

5   [D.E. 291 at 2.] Notably, while there was purported "destruction of evidence" by OnlineNIC

6   and ID Shield, leading to their default through discovery sanctions, as indicated, 35.CN did

7   not control or participate in that activity. (Weiwei Decl. ¶5); (Yu Decl. ¶6.)

8          On February 24, 2023, the parties filed a joint case management conference

9   statement in which, among other things, 35.CN outlined its intent to file a motion for partial

10  summary judgment to dispense with Meta's secondary liability claim, which is Meta's

11  primary argument for liability in this case. [D.E. 298.] On March 2, 2023, the night before

12  the case management conference, and facing a potential case-ending decision on the

13  merits, Meta filed the present motion to strike and for sanctions. [D.E. 299.]

14  **D.    Discovery Issues Between Meta and 35.CN**

15         Meta and 35.CN have engaged in substantial written discovery, including hundreds

16  of discovery requests by Meta. [*See e.g.,* D.E. 280 at 5-6]; (Kronenberger Decl. ¶3.) Given

17  that 35.CN is a public company in China, it raised a potential issue with disclosing certain

18  private records to Meta due to new Chinese data privacy and security laws and the fact

19  that Meta is banned in China. In May 2022, Meta sought leave to file a motion to compel

20  "given [the] dispute concerning application of Chinese law to discovery." [D.E. 236-37.]

21         The discovery issues were referred to Magistrate Judge Tse, and the parties filed a

22  joint discovery letter "concerning whether Chinese law prohibits 35.CN from responding to

23  Plaintiffs' discovery requests." [D.E. 247.] Judge Tse issued an order for further meet and

24  confer [D.E. 254] and then another order [D.E. 261] stating the "parties' dispute concerning

25  Chinese law prohibitions . . . is terminated as moot."  After further conferences, Judge Tse

26  issued a Discovery Order on December 6, 2022 [D.E. 286], which essentially granted in

27  part and denied in part Meta's subsequent requests to compel further discovery responses

28  and productions. 35.CN has complied with that Discovery Order. Far from a case where

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

the defendant completely ignores discovery obligations, Judge Tse recognized 35.CN's efforts and effectively denied Meta's motion to compel certain requests in whole or in part. [D.E. 286 at 1-4.]  [D.E. 286 at 4.] Notably, Judge Tse said Meta requested 35.CN:

> "produce **documents sufficient to identify the 35.CN employees who were involved in, or participated in, "the destruction of evidence in this case."** Dkt. 269-4 at 34–35. 35.CN maintains that its employees didn't participate in destroying evidence. Facebook may seek to prove otherwise, but **35.CN need not embrace Facebook's litigation position by responding to these RFPs**" [D.E. 286 at 3 (emphasis added).]

Meta now claims in its motion that 35.CN "directly participated in the spoliation that resulted in terminating sanctions against the OnlineNIC Defendants," citing to four OnlineNIC email addresses, but claiming that 35.CN "refused to identify any employees involved in the destruction of evidence"; however, Meta notes that 35.CN *did* identify ████████████████████████████████████ and that 35.CN considers the issue of destruction of evidence as a disputed fact, and Judge Tse agrees. (Mtn at 9.) In its arguments about alter ego, Meta also alleges that 35.CN did not adequately respond to discovery requests relating to "alter ego claims and Defendants' [i.e., the OnlineNIC Defendants'] destruction of evidence." (Mtn at 17.) However, Meta's brief only references Judge Tse's Discovery Order in a footnote (Mtn at 6 n.10), outlining claimed deficiencies in 35.CN's explanations, rather than failure to respond to discovery or largely comply with the Discovery Order. In fact, 35.CN has supplemented responses multiple times, not because initial responses were inadequate but in efforts to compromise with Meta, where Meta is always unsatisfied.

Further, as background, 35.CN has been actively trying to get Meta to fully respond to 35.CN's discovery requests and complete its production and privilege log, nearly a year later (which follows Meta's delay and stonewalling of discovery responses to OnlineNIC).

## **ARGUMENT**

Meta's Rule 37 motion is an attempt at a streamlined motion for partial summary judgment with arguably an easier burden of proof. It should be denied. Meta is trying to avoid litigation on the merits by obtaining default sanctions for discovery issues. However, as indicated, Magistrate Judge Tse has been overseeing discovery in this case, including

**DEF 35.CN'S OPP TO PLTFS' MTN TO STRIKE AND FOR DEFAULT**

1    the parties' joint letters, hearings, and the primary Discovery Order. Meta's present motion

2    is wasting Court and party resources and time where discovery issues should be brought

3    before Magistrate Judge Tse, and the ultimate alter ego and liability claims should be

4    raised through a formal summary judgment motion or, if factual issues exist, at trial.

5    Nonetheless, under Rule 37, Meta cannot satisfy its burden to prove that discovery

6    sanctions are warranted; sanctions are improper as there was no violation of the Discovery

7    Order (or any Court order), and a drastic default is not justified. Meta boldly argues that

8    35.CN is an alter ego that should be sanctioned due to OnlineNIC's and ID Shield's

9    purported discovery misconduct (the supposed "destruction of evidence"). However,

10   35.CN and other Defendants are not alter egos because they are separate companies,

11   formed in different countries, which have followed corporate formalities, and that have

12   separate ownership, ███████████████████████████ customers, and

13   business structures; and 35.CN did not control or direct other Defendants' discovery or ESI

14   decisions. Meta unconvincingly targets decades' old connections or ongoing business

15   transactions lack merit, but at most, Meta's claims highlight the factual issues necessitating

16   trial (if Meta's claims survive 35.CN's intended motion(s) for summary judgment).

17   **A.    Legal Standard**

18   In a footnote, Meta claims that terminating sanctions are determined by the

19   preponderance of the evidence standard (Mtn n.13), citing to only one unpublished case,

20   which recognizes that other courts in this Circuit have required meeting the clear and

21   convincing standard. *WeRide Corp. v. Kun Huang*, No. 5:18-CV-07233-EJD, 2020 WL

22   1967209, at *9 (N.D. Cal. Apr. 24, 2020). Furthermore, a published case in this Court has

23   stated: "To justify dismissal as a sanction, bad faith must be shown by clear and convincing

24   evidence." *Hynix Semiconductor Inc. v. Rambus Inc.*, 897 F. Supp. 2d 939, 978 (N.D. Cal.

25   2012), *amended in part sub nom. SK hynix Inc. v. Rambus Inc.*, No. C-00-20905 RMW,

26   2013 WL 1915865, at *22 (N.D. Cal. May 8, 2013) ("This court does not believe that

27   Rambus's conduct was so egregious as to call for dismissal."). Additionally, this case is

28   different from *WeRide*, and generally distinguishable from other cases, in that Meta seeks

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

a sanction not for the misconduct or bad faith of 35.CN, but instead due to the bad faith of other Defendants, which are alleged alter egos of 35.CN, for conduct occurring prior to 35.CN being named as a Defendant in the case. Any attempt to issue a final litigation sanction against a defendant due to the actions of other defendants should receive the highest level of scrutiny, which should be the clear and convincing standard, especially because 35.CN was not a party to the case at the time of the discovery misconduct.

Regarding the separate issue of alter ego liability, Meta concedes that the party asserting alter ego "bears the burden of establishing it." (Mtn n.13.) Meta curiously argues that "justice requires 35.CN be held accountable for flouting discovery rules" (Mtn at 1, 9), but Meta then cites this Court's prior order [D.E. 276 at 13], which indicates 35.CN may be responsible for spoliation only "if 35.CN is the alter ego of the other defendants." In other words, a finding on a violation of discovery rules must be second in time to an alter ego analysis, and justice does not require finding 35.CN as the alter ego in the first instance.

Importantly—while Meta has injected summary judgment-style arguments into a Rule 37 discovery sanctions motion—an alter ego allegation "ordinarily should not [even] be disposed of by summary judgment, in view of the complex economic questions often involved." *Television Events & Mktg., Inc. v. AMCON Distrib., Co.,* 484 F. Supp. 2d 1124, 1142 (D. Haw. 2006); *see also Min Prods. PTE. Ltd. v. FireForge, Inc.,* No. CV 14-941 DSF (SSX), 2017 WL 11635012, at *2 (C.D. Cal. Feb. 6, 2017) (ordering bench trial on alter ego liability to assess credibility and weigh conflicting testimony and documentary evidence on the various factors). *C.f. G.P.P., Inc. v. Guardian Prot. Prod., Inc.*, No. 1:15-CV-00321-SKO, 2018 WL 385372, at *4 (E.D. Cal. Jan. 9, 2018) (noting a court's "ultimate determination" of alter ego could be "ultimately informed by the jury's factual findings" such as on contested issues of fact). Moreover, in similar cases involving adding an alter ego defendant to a default judgment, there is a clear due process concern where the first defendant was subject to default judgment and the alleged alter ego cannot defend the claims. *See Steelman Partners v. Sanya Gaosheng Inv. Co. Ltd*, No. 209CV01016GMNGWF, 2016 WL 3450802, at *2 (D. Nev. June 20, 2016), *objections*

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1   *overruled sub nom. Steelman Partners v. Sanya Gaosheng Inv. Co., Ltd.,* No.

2   209CV01016GMNGWF, 2016 WL 8711691 (D. Nev. Oct. 28, 2016). Here, the terminating

3   sanction against OnlineNIC was tantamount to a default judgment, as OnlineNIC virtually

4   gave up on litigating the case due to financial constraints; thus, a ruling that 35.CN is the

5   alter ego of OnlineNIC would deprive 35.CN of due process, as 35.CN would not be able

6   to litigate the merits of the case, which, at this point, look favorable for 35.CN.

7   **B.    Meta's Rule 37 arguments lack merit as there are no discovery violations.**

8          As the basis for liability, Meta cites to Rules 37(b)(2)(A)(vi), 37(c)(1)(C), and 37(e).

9   For context, Rule 37 in general relates to sanctions for "failure to make disclosures or to

10  cooperate in discovery." However, 35.CN has in fact complied with Judge Tse's Discovery

11  Order (and related orders). There is no basis for relief under Rule 37 as there was no

12  violation of any Court order, and the drastic sanctions sought are not warranted. Moreover,

13  for Meta's alter ego arguments, which it uses to try to support a Rule 37 motion, there is

14  insufficient unity of interest between 35.CN and OnlineNIC/ID Shield, especially at the time

15  of the purported discovery misconduct; and alter ego liability is not necessary to prevent a

16  fraud or injustice, which is a requirement for an alter ego finding. If anything, there are still

17  questions of fact warranting a trial, including as Defendants have shown evidence of the

18  separate OnlineNIC ownership and management, ██████████    corporate records,

19  ████████████████████████████████ Meta is cherry-picking decades-old

20  "connections" and "loans" to find a larger pocket to pay for its high attorney's fees; however,

21  inability to recover fees does not justify alter ego liability. Thus, Meta's motion must fail.

22         **1.    35.CN did not violate Rule 37 as referenced by Meta.**

23              ***a.    There was no violation of Rule 37(b)(2)(A)(vi).***

24  Rule 37(b)(2)(A)(vi) outlines potential sanctions for failure to comply with a Court

25  order; if a party does not obey a discovery order, the Court may issue further "just orders."

26  Here, Meta's brief simply refers to Judge Tse's Discovery Order in a footnote to

27  assert that 35.CN failed to provide explanations for ███████████████████████

28  ████████████████████████████████ (Mtn at n.10, citing ROG

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

Nos. 13-14.) However, as clarified in the Discovery Order at 2, the requests were limited to "any listed individual who is or was a 35.CN employee." 35.CN has complied with that request (Kronenberger Decl. ¶4 & Ex. B; *see also* Kroll Decl. ¶¶2, 5-6, Ex. 1 (ROG 13-14 responses), and Meta's attempts to obtain additional information are without merit.

Meta also vaguely argues that "35.CN and the OnlineNIC Defendants have hindered Plaintiffs' ability to discover facts relating to the alter ego relationship," alluding that 35.CN did not respond with ██████████████████████████████ ████████████████████████████████████████████" (Mtn at 16-17.) Yet, a review of the Discovery Order clarifies that 35.CN must only identify "to the extent it knows" the "categories of work," [D.E. 286 at 3], which 35.CN has done. (Kronenberger Decl. ¶4 & Ex. B.) Meta references the claimed OnlineNIC Defendants' "destruction of evidence," but the Discovery Order confirmed 35.CN "need not embrace Facebook's litigation position by responding to these RFPs." [D.E. 286 at 3.] Further, Meta emphasizes that the Court ordered the parties to proceed with discovery on the alter ego issues; however, this discovery has been completed. Finally, 35.CN has complied with the Discovery Order though Meta wanted different answers (e.g., Meta wanted 35.CN to concede participating in the "destruction of evidence" when it did not). (Kronenberger Decl. ¶4 & Ex. B.)

### b.    There was no violation of Rule 37(c)(1)(C).

Under Rule 37(c)(1)(C), if a party fails to disclose or supplement an earlier response or to admit a fact, the party may not use that evidence later on, unless the failure was substantially justified or harmless; in addition, the Court, on motion and after an opportunity to be heard, may impose "other appropriate sanctions." Rule 37(c)(1)'s sanctions are not mandatory. *Rago v. Select Comfort Retail Corp.*, No. 519CV02291FMOSPX, 2021 WL 3621890, at *6 (C.D. Cal. June 11, 2021). Although Meta does not specify the basis for relief under this Rule subpart, the reasoning is similar to above; 35.CN has complied with the Discovery Order, which limited and clarified Meta's oppressive discovery requests.

### c.    There was no violation of Rule 37(e).

Rule 37(e) deals with the failure to preserve ESI. If there is prejudice to another

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  party from the loss of information, the Court "may order measures no greater than

2  necessary to cure the prejudice"; or "only upon finding that the party acted with the intent

3  to deprive another party of the information's use," the Court may presume the information

4  was unfavorable or enter a default judgment.

5       Here, Meta does not argue that 35.CN failed to preserve ESI (other than the

6  tangential claim based on alter ego, which is addressed below). 35.CN has been complying

7  with its ESI obligations, and as the Discovery Order noted, "the Court can't order 35.CN to

8  produce documents it doesn't have." [D.E. 286 at 1-4.] Meta is simply upset because it

9  wants documents that show "alter ego" and "destruction of evidence" that do not exist.

10       **2.    Meta requests drastic remedies where lesser, if any, relief suffices.**

11       A terminating sanction, such as default or default judgment, is a "drastic" sanction

12  that may only be invoked if the party's noncompliance is due to "willfulness, fault, or bad

13  faith." *Guifu Li v. A Perfect Day Franchise, Inc*, 281 F.R.D. 373, 391–92 (N.D. Cal. 2012)

14  (declining to impose the "most severe penalty," which is reserved for "extreme

15  circumstances," despite numerous discovery transgressions; and noting such an order

16  could allow a potential windfall to plaintiffs without ever reaching the merits of the claims).

17       Before granting terminating sanctions under Rule 37, courts weigh the following

18  factors: (1) the public's interest in expeditious resolution of the litigation; (2) the court's

19  need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy

20  favoring disposition of cases on their merits and affording litigants their fair day in court;

21  and (5) the availability of less drastic actions. *See Thompson v. Hous. Auth. of the City of*

22  *Los Angeles*, 782 F.2d 8[29], 831 (9th Cir. 1986). Relevant is "whether the court has

23  considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant

24  party about the possibility of case-dispositive sanctions." *Smith v. Hoffman*, No. 14-CV-

25  01741-LB, 2017 WL 5957740, at *3 (N.D. Cal. Nov. 30, 2017); *see also Curtis v.*

26  *Illumination Arts, Inc.,* 957 F. Supp. 2d 1252, 1261-63 (W.D. Wash. 2013) (noting court

27  would provide second warning after defendants failed to produce discovery subject to order

28  prior to considering piercing the corporate veil); *Payne v. Exxon Corp.,* 121 F.3d 503, 507

Case No. 3:19-cv-07071-SI                    16          **DEF 35.CN'S OPP TO PLTFS' MTN TO**
                                                         **STRIKE AND FOR DEFAULT**

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1 (9th Cir. 1997); *Johnson v. Goldsmith*, 42 F. App'x 607 (9th Cir. 2013) (finding the district

2 court abused its discretion where it did not consider any less drastic sanction and gave no

3 warning to the non-compliant party before granting a case-dispositive sanction); *see also,*

4 *Goes Int'l, AB v. Dodur Ltd.*, No. 3:14-CV-05666-LB, 2017 WL 2473029, at *3 (N.D. Cal.

5 June 8, 2017) (citing cases supporting that failure to warn a party has frequently been a

6 contributing factor in Ninth Circuit decisions to reverse orders of dismissal).

7        Here, while 35.CN disputes there have been any discovery violations, if anything, a

8 less drastic sanction is warranted, such as a warning and continued meet and confer efforts

9 before Magistrate Judge Tse, staying proceedings until any discovery order is obeyed,

10 presuming any lost information is unfavorable, or ordering costs. Further, there will be

11 extreme prejudice to 35.CN in having its answer stricken and default entered, and Meta

12 will avoid having to litigate this "house of cards" case on the merits. In addition, even if

13 35.CN is found to be the alter ego of other Defendants for the underlying claims, despite

14 arguments to the contrary, the Court must still find that 35.CN (as opposed to other

15 Defendants) acted with "willfulness, fault, or bad faith" to justify terminating sanctions

16 against it. Thus, no sanctions (or at most lesser sanctions) are warranted.

17 **C.**    **Meta's alter ego claims lack merit and, if anything, present an issue of fact.**

18        Alter ego liability requires (1) that there is such unity of interest and ownership that

19 the separate personalities or the two entities no longer exist, and (2) that failure to

20 disregard their separate identities would result in fraud or injustice. *See, Williams v.*

21 *Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1021 (9th Cir. 2017). Imposition

22 of alter ego liability is "an extreme remedy" that is to be "sparingly used" and "approached

23 with caution." *21st Century Fin. Servs., LLC v. Manchester Fin. Bank*, 255 F. Supp. 3d

24 1012, 1021-22 (S.D. Cal. 2017) (noting "the corporate form will be disregarded only in

25 narrowly defined circumstances" and that alter ego liability is "usually" "reserved for parents

26 and their subsidiaries, or corporations and their shareholders"); *Zoran Corp. v. Chen*, 185

27 Cal. App. 4th 799, 810–11 (2010) ("Alter ego is a limited doctrine.").

28        In this case, there is insufficient unity of interest between 35.CN and OnlineNIC/ID

1    Shield, especially at the time of the purported discovery misconduct; and a finding of alter

2    ego liability is not necessary to prevent a fraud or injustice. If anything, there are still

3    questions of fact that need to be considered prior to any finding on alter ego liability. 35.CN

4    briefed these legal issues with its motion to dismiss [D.E. 174, 199] and further

5    supplements the factual evidence with the declarations to this opposition.

        **1.    Meta has not shown sufficient unity of interest between Defendants.**

                *a.    There was no unity of interest or control for underlying claims.*

8          The "unity of interest" prong requires a showing that the "parent" controls the

9    "subsidiary" to such a degree as to render the latter the mere instrumentality of the former.

10    *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015). The test is not whether there are

11    similar owners or offices but pervasive control over the subsidiary, such as when a parent

12    corporation dictates every facet of the subsidiary's business from broad policy decisions to

13    routine matters of day-to-day operation, i.e., total ownership and shared management

14    personnel are alone insufficient. *Id.* (finding overlapping director, employees, and

15    management as well as substantial involvement did not undermine entities' formal

16    separation as there was not functionally one single enterprise).

17          Courts may consider various factors in assessing a unity of interest: (1) the

18    commingling of funds and other assets of the entities, (2) the holding out by one entity that

19    it is liable for the debts of the other, (3) identical equitable ownership of the entities, (4) use

20    of the same offices and employees, (5) use of one as a mere shell or conduit for the affairs

21    of the other, (6) inadequate capitalization, (7) disregard of corporate formalities, (8) lack of

22    segregation of corporate records, and (9) identical directors and officers. *See e.g.,*

23    *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014); *see also, Ranza*, 793 F.3d at

24    1074 (noting lack of evidence company was undercapitalized, failed to keep records, or

25    freely transferred assets, which would indicate signs of a "sham" company).

26          Here, 35.CN, which is not even a parent company of OnlineNIC, does not exercise

27    the pervasive control over OnlineNIC or ID Shield as is necessary to establish a "unity of

28    interest" and to pierce the veil of a supposed "sham" corporation. In particular, while Meta

18    **DEF 35.CN'S OPP TO PLTFS' MTN TO STRIKE AND FOR DEFAULT**

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

wants the Court to find that 35.CN controls OnlineNIC, OnlineNIC was actually created years before 35.CN and has been a registered corporation in California and ICANN-accredited registrar. (Kronenberger Decl. Ex. G; *e.g.,* Kroll Decl. ¶70.) Analysis of the specific factors also confirms there is no unity of interest as required for an alter ego:

- The legal and equitable ownership of the entities is not identical, and in fact there is no overlap whatsoever in the ownership of the two entities; 35.CN is a public company in China that is owned by various shareholders and managed by a board of directors and officers, as conveyed to Meta in discovery; and OnlineNIC is owned and ultimately managed by individuals that have no connection with 35.CN;



and in fact, it would not make sense for 35.CN to use OnlineNIC in this way where 35.CN has its own robust and profitable business as an ICANN-accredited registrar and provider of other services to customers, mainly in China; nor does OnlineNIC, which does notable business in the US, use 35.CN as a shell or conduit;

- Neither 35.CN nor OnlineNIC is inadequately capitalized; while Meta complains that OnlineNIC cannot pay millions of dollars from its available cash to resolve claims relating to 35 domain names, (a) Meta cannot argue the full value of OnlineNIC is less than a potential judgment, (b) the amount sought is disproportionate to any harm arising from the 35 domain names at issue (also, the amount Meta seeks is, in large part, inflated attorney's fees, which will be

challenged), (c) Meta does not show how OnlineNIC was inadequately capitalized at the time of the alleged infringement, prior to years of expensive litigation and a global pandemic, and (d) inability to pay a judgment in a case, even if true, is not a legitimate reason for finding alter ego liability [*see* D.E. 199 at 5-9[13]];

- 35.CN and OnlineNIC both followed corporate formalities, including through robust respective corporate filings; Meta's complaints about lack of certain specific records or actions do not demonstrate a "disregard" of corporate formalities;

- 35.CN and OnlineNIC segregated their corporate records, which they obviously would because they are separate companies with different ownership, as certified by two law firms and disclosed in 35.CN's public filing documents; and

- 35.CN and OnlineNIC do not have identical directors and officers; ████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ the two companies have completely separate owners, directors, and officers.

(*See* Weiwei Decl. ¶¶2-5; Yu Decl. ¶¶3-11; Kronenberger Decl. Exs. A-H; *see also e.g.,* Kroll Decl. ¶¶10, 32, 40-52, 56, 70.)

As outlined in extensive IPO certifications and records, Gong (a former major shareholder of 35.CN) divested himself of any interest in OnlineNIC in 2007 (over a decade before Meta's claims in this case arose), when the company was sold to Liu. [D.E. 174-2, Exs. C-D.] The sale was documented and found reasonable by US and Chinese law firms, as outlined in IPO records. (Kronenberger Decl. Exs. C-E.) Liu had no business relationship with 35.CN, nor personal relationship with Gong. (Yu Decl. ¶5; Kronenberger Decl. Exs. B-E.) Moreover, although Defendants had an ongoing business relationship through ██████████████████████████████████████████████████████

---

[13] *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1144 (C.D. Cal. 2015) (recognizing routine rejection of the position that difficulty collecting a judgment warrants alter ego application, and considering undercapitalized at the time of the contract).

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108



3    (Weiwei Decl. ¶2; Yu Decl. ¶3; Kronenberger Decl. Ex. B.) Meta

4    has been advised of this fact, yet conspicuously omitted mention of OnlineNIC's separate

5    management, instead falsely claiming there were no independent employees.

6        Meta also fishes for connections through purported

11    and (c) at minimum, questions of

12    fact that should be reserved for trial, not this summary motion. (*See* Weiwei Decl. ¶¶3-4.)

13    None of the connections rise to a level that would support alter ego liability.

14        Meta's reliance on *Toho-Towa Co. v. Morgan Creek Prods., Inc*., 217 Cal. App. 4th

15    1096 (2013) (Mtn at 10) is likewise misplaced. *Toho-Towa* deals with two companies,

16    where one company is the owner of the other. *Compare also Fed. Rsrv. Bank of San*

17    *Francisco v. HK Sys*., No. C-95-1190 MHP, 1997 WL 227955, at *6 n.7 (N.D. Cal. Apr. 24,

18    1997); *Las Palmas Assocs. v. Las Palmas Ctr. Assocs*., 235 Cal. App. 3d 1220, 1250

19    (1991). Meta's citations are distinguishable from this case. First, there is no allegation, like

20    in *Las Palmas Assocs.*, nor can there be, that 35.CN and OnlineNIC were formed for the

21    purpose of committing a continuing fraud, as OnlineNIC was formed years before

22    35.CN. Second, Meta admits that 35.CN does not own OnlineNIC. More importantly,

23    *Toho-Towa* at 1107 questions an alter ego that "is but a business conduit for its principal."

24    Here, however, 35.CN and OnlineNIC are two separate companies, with different lines of

25    business and different business focuses, with a business relationship that only related to

26    a small portion of their respective revenues, *see supra*. Thus, not only are the transactions

27    between the companies at arm's length, the substantial unrelated business of each of the

28    companies demonstrate how OnlineNIC is not a conduit for 35.CN and vice versa.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

**KRONENBERGER ROSENFELD**
150 Post Street, Suite 520 San Francisco, CA 94108

***b.*** ***There was no control over the alleged discovery misconduct.***

Under California law, to add a debtor to a judgment—which Meta is essentially seeking to do—the judgment may only be amended if the new party (1) is the alter ego and (2) "controlled" the litigation with the opportunity to litigate. Cal. Code Civ. Proc. §187; *see also Cadence Design Sys., Inc. v. Viera*, 836 F. App'x 493, 495 (9th Cir. 2020).

Not only is 35.CN not the alter ego for underlying claims, it did not control the litigation against other Defendants or participate in their discovery decisions, including any supposed "destruction of evidence." OnlineNIC was separately managed and had its own records databases, and the locus of decision-making regarding OnlineNIC's discovery action was with OnlineNIC, not 35.CN. (Yu Decl. ¶¶6-11; Weiwei Decl. ¶5.) Specifically, the Special Master's report [D.E. 115] reviewed whether data was destroyed from other Defendants' "Kayako Ticket Database," ███████████████████████████████████ ███████ (Weiwei Decl. ¶8.)  Thus, 35.CN did not, and could not, oversee or take part in any of the conduct leading to OnlineNIC/ID Shield's discovery sanctions relating to records in that database, and 35.CN should not be subject to sanctions now.

**2.** **Alter ego liability is not required to prevent a fraud or injustice.**

***a.*** ***There is no fraud or injustice relating to the underlying claims.***

The second element of the alter ego test requires a plaintiff to show that an inequitable result will follow if the court rejects the alter ego theory. *See Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1176 (C.D. Cal. 2016). Notably, "California courts have rejected the view that the potential difficulty a plaintiff faces collecting a judgment is an inequitable result that warrants application of the alter ego doctrine." *Id.* at 1177; *see also Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 331 (C.D. Cal. 2004) (noting difficulty in enforcing a judgment does not satisfy the standard); *NuCal Foods, Inc.*, 887 F. Supp. 2d at 992–95 (noting plaintiff failed to show that those who controlled the companies treated them as a single enterprise to commit fraud with impunity).

Meta has not shown any fraud or manifest injustice that would result if the Court recognized 35.CN as the alter ego of other Defendants for the underlying claims. In fact,

as outlined above, Meta cannot win on its underlying claims (cybersquatting and infringement by OnlineNIC's *customers' registrations* of 35 Domain Names), including on the baseless theory that Meta is a third-party beneficiary to a contract (containing RAA provisions between ID Shield and customers) that does not exist (*see* section B.1, *supra*). Meta primarily indicates it would be "unjust" to not have an entity that is able to pay for any default judgment against OnlineNIC/ID Shield (Mtn at 18-19), but this argument is insufficient; the law *supra* is clear that inability to collect does not create the "fraud or manifest injustice" required for alter ego liability. Meta also claims there is an injustice to "the US public," and apparently ICANN and a Secretary of State, but it fails to clarify these theories. For example, there is no evidence that 35.CN created OnlineNIC as a "sham" to avoid 35.CN's liability. Instead, OnlineNIC was established years before 35.CN, and both companies are ICANN-accredited registrars that provide separate services.

Moreover, Meta's citation to the money laundering case of *United States v. Lonich*, No. 14-CR-00139-SI-1, 2018 WL 10127107, at *4 (N.D. Cal. Aug. 1, 2018) is inapposite as that case involved "overwhelming evidence presented at trial" establishing a party was created to perpetrate a fraud. Here, by contrast, OnlineNIC/ID Shield were separate and fully formed entities that carried out legitimate business for years; for example, OnlineNIC is an established and accredited domain name registrar that was created 5 years prior to 35.CN. (Kronenberger Decl. ¶9 & Ex. G.) In essence, Meta's theory is that it is owed millions through default sanctions—for liability arising from 35 Domain Names registered by third-party customers and for Meta's years of attorney's fees—but these massive fees by a social media conglomerate could not have been anticipated by other Defendants (or anyone) because the fees far exceed the value of the claims, which are baseless.

### b.    There is no fraud or injustice for the discovery sanctions.

Importantly, Meta cannot show there was control over the litigation or discovery decisions to warrant alter ego liability for OnlineNIC's discovery decisions, which occurred years after the claimed underlying infringement. Meta states, without any citation, that "allowing 35.CN—whose employees directly participated in the destruction of evidence at

23

**DEF 35.CN'S OPP TO PLTFS' MTN TO STRIKE AND FOR DEFAULT**

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    issue—to escape liability for their employees' actions would be unjust." (Mtn at 18.)

2    However, as outlined in the Discovery Order, "35.CN maintains that its employees didn't

3    participate in destroying evidence . . . [and] 35.CN need not embrace Facebook's litigation

4    position by responding" to Meta's requests on this issue. [D.E. 286 at 3.] Therefore, 35.CN

5    need not concede to "destroying evidence," and Meta has not shown the required fraud or

6    injustice needed for alter ego liability, especially for other Defendants' discovery choices.

7        There is no fraud or injustice from 35.CN disputing Meta's baseless allegation that

8    35.CN is responsible for "the destruction of evidence" by OnlineNIC (as targeted by an

9    initial Special Master's Report). In fact, Defendants dispute that any evidence was

10    "destroyed" (rather, archived records, that are not needed for key issues in this case, in an

11    old ticketing database, were lost); and regardless, OnlineNIC was under separate

12    management and not controlled by 35.CN, in general, or for discovery or record-keeping

13    decisions. [D.E. 174-1, ¶¶5-6]; (Weiwei Decl. ¶5; Yu Decl. ¶6, 8.) Meta argues that because

14    a handful of contractors had certain technical capabilities to delete evidence (a disputed

15    fact), the staffing company is responsible for their conduct, even though they were

16    ultimately reporting to and taking direction from OnlineNIC's separate owner and

17    management when performing the contract work. This is an untenable argument. Thus,

18    there is no basis for holding 35.CN responsible for OnlineNIC and ID Shield's purported

19    "destruction of evidence" because 35.CN did not control or participate in that activity; and

20    35.CN's position does not create any injustice. (Weiwei Decl. ¶5; Yu Decl. ¶¶6, 8.)

21        **3.    If anything, there is a triable issue of fact on alter ego liability.**

22        "Whether a party is liable under an alter-ego theory is normally a question of fact."

23    *Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 810–11 (2010) (outlining a "host of factors").

24    Similar to the non-exhaustive factors identified above, courts may consider, for example,

25    identical ownership or supervision; the total absence of corporate assets; use of a company

26    as a "mere shell" for a single venture; failure to segregate funds to other than corporate

27    uses; treatment of assets as one's own; failure to maintain corporate records; and

28    confusion of company records. *See id.* at 811-12; *see also Maddock v. KB Homes, Inc.,*

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  631 F. Supp. 2d 1226, 1242–43 (C.D. Cal. 2007) (finding alter ego is a question of fact that
2  necessarily varies with the circumstances, and that the plaintiff must show specific
3  manipulative conduct by the parent toward the subsidiary which relegates the latter to
4  merely an instrumentality or conduit of the former). Even where plaintiffs provide a
5  "plethora of evidence," defense evidence may create a "triable issue of fact." *See Clark v.*
6  *Dana Woody & Assocs., Inc.,* No. 09CV2931-CAB DHB, 2013 WL 544030, at *4 (S.D. Cal.
7  Feb. 12, 2013) (finding triable issues as to corporate structures, involvement of owners,
8  and capital contributions). *C.f. Steelman Partners v. Sanya Gaosheng Inv. Co., Ltd.,* No.
9  209CV01016GMNGWF, 2016 WL 8711691, at *1 (D. Nev. Oct. 28, 2016) (noting due
10  process concerns with motion to add defendants to a judgment). For this reason, as
11  indicated, summary judgment in favor of the plaintiff (or Meta's present "discovery" motion)
12  should be avoided where there is defense evidence that controverts plaintiff's assertions.
13  *See Television Events & Mktg., Inc., Co.,* 484 F. Supp. 2d at 1142.
14      Here, Defendants have shown evidence to dispute Meta's request for a summary
15  default against 35.CN. For example, 35.CN and other Defendants were separate
16  businesses, operating separate financial accounts, with separate loci of decision-making.
17  *See supra*, sections B & C.1, for full treatment. The evidence presented by 35.CN is
18  sufficient to prevail on a defense motion for summary judgment, and at minimum, it is
19  adequate to survive Meta's present motion for sanctions, as Meta cannot dispute that
20  35.CN has presented facts favoring its position. Thus, Meta's motion should be denied.

21  <u>**CONCLUSION**</u>
22      For all the foregoing reasons, including triable issues of fact on alter ego claims (and
23  lack of merit on Meta's underlying claims), 35.CN requests that Meta's motion be denied.
24  //
25  //
26  //
27  //
28  //

Respectfully Submitted,


Dated: April 12, 2023                    **KRONENBERGER ROSENFELD, LLP**

By:  s/ Karl S. Kronenberger
        Karl S. Kronenberger

Attorneys for Defendant Xiamen 35.com
Technology Co., Ltd.