**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Liana W. Chen (Bar No. 296965)
Leah Rosa Vulić (Bar No. 343520)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@kr.law
jeff@kr.law
liana@kr.law
leah@kr.law

Defendant Xiamen 35.com Technology Co., Ltd.
(erroneously sued as Xiamen 35.com Internet Technology Co., Ltd.)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **FACEBOOK, INC.**, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>**ONLINENIC INC.**, et al.,<br><br>    Defendants. | Case No. 3:19-cv-07071-SI<br><br>**[REDACTED] DECLARATION OF KARL S. KRONENBERGER IN SUPPORT OF DEFENDANT XIAMEN 35.COM TECHNOLOGY CO., LTD.'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE DEFENDANT'S ANSWER AND FOR ENTRY OF DEFAULT AGAINST DEFENDANT XIAMEN 35.COM TECHNOLOGY CO., LTD. PURSUANT TO FED. R. CIV. P. 37 [D.E. 299]**<br><br>Date:     June 16, 2023<br>Time:     10:00 a.m.<br>Ctrm:    1, 17th Floor<br>Judge:   Hon. Susan Illston |

I, Karl S. Kronenberger, do hereby declare:

1.      I am an attorney admitted to practice law before this Court. I am a partner at the law firm of Kronenberger Rosenfeld, LLP, counsel of record for Defendant Xiamen 35.com Technology Co., Ltd., ("35.CN" or "Defendant"). Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration, and if called as a witness I would testify to the facts contained in this declaration.

***Opposition to Plaintiffs' Kroll Declaration***

2.      Attached as **Exhibit A** is a chart that summarizes 35.CN's opposition to the points raised in Plaintiffs' attorney declaration of Howard Kroll ("Kroll Decl.").  As outlined in Exhibit A, Plaintiffs have cherry-picked supposed "connections" between 35.CN and OnlineNIC over about two decades, but these "connections" are either refuted by evidence or do not establish alter ego liability.

***35.CN's Discovery and Corporate Records***

3.      Plaintiffs and 35.CN have engaged in substantial written discovery. In response to Plaintiffs' hundreds of discovery requests, 35.CN has provided written responses and produced documents, such as years of (a) financial records, (b) data on officers, directors, and largest shareholders, (c) ICANN records, and (d) contracts, ███████████████████████████████████████████████████████████ Since 35.CN provided supplemental discovery responses to comply with the Discovery Order [D.E. 286], Plaintiffs have not filed any dispute with Magistrate Judge Tse.

4.      Attached as **Exhibit B** is a true and correct copy of 35.CN's further amended and supplemental responses to Meta's interrogatories. The appendix to the responses outlines, for example, 35.CN's owners, officers, directors, and major shareholders since 2007. As outlined in the Exhibit, 35.CN has responded to the items outlined in Magistrate Judge Tse's Discovery Order [D.E. 286], including for the following discovery requests:

    a.  **Interrogatory Nos. 2, 15, 16:** 35.CN has identified the ██████████████████
███████████████████████████████████████████████ Plaintiffs take issue with the description of the relationship and services (*see* Kroll Decl. ¶3), but

1

1   those issues are not addressed in the Discovery Order.

2   b.  **Interrogatory 8:** 35.CN has identified ███████████████████

3   ███████████████████████████████████████████ Plaintiffs want

4   35.CN to concede employees participated in the "destruction of evidence"

5   (Kroll Decl. ¶4.), but that is not required by the Discovery Order. *See also*

6   Discovery Order re. RFPs 58, 59 (stating 35.CN "need not embrace

7   Facebook's litigation position" that employees were involved in or

8   participated in the "destruction of evidence in this case.")

9   c.  **Interrogatory 13:** 35.CN has confirmed that after a reasonable search, ██

10  ███████████████████████████████████████████████

11  ███████████████████ This is a compliant response; 35.CN cannot

12  provide information it does not have. *See also* Discovery Order re. Rog 6

13  (stating 35.CN must only identify the information "to the extent it knows").

14  **d.  Interrogatory 14:** 35.CN has confirmed that after a reasonable search, ██

15  ███████████████████████████████████████████████

16  ███████████████████ This is a compliant response; 35.CN cannot

17  provide information it does not have. *See also* Discovery Order re. Rog 6

18  (stating 35.CN must only identify the information "to the extent it knows").

19  *Sale of OnlineNIC in 2007*

20  5.  Documents about the sale of OnlineNIC in 2007 were produced and/or

21  publicized in connection with 35.CN's initial public offering ("IPO"). Attached as **Exhibit C**

22  is a true and correct copy of the ████████████████████████████

23  ███████████████████████████████████████████████████

24  ███████████████████████████████████████

25  6.  Attached as **Exhibit D** are true and correct copies of legal opinions (in

26  Chinese) prepared by the Zhong Lun law firm in connection with 35.CN's IPO, including

27  details about the sale of OnlineNIC in 2007, and which are public documents pulled from

28  cninfo.com.cn. Attached as **Exhibit E** are true and correct copies of Exhibit D translated

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    into English pursuant to the attached certification.

2        7.    Additional public disclosures in connection with 35.CN's IPO were attached

3    as Exhibit C (Chinese) and Exhibit D (English) to a prior Declaration of Perry J. Narancic

4    [D.E. 174-2]. For example, these records outline how OnlineNIC had paid Verizon pursuant

5    to the settlement in the *Verizon California Inc. v. OnlineNIC Inc.,* Case No. CV-08-2832-JF

6    (N.D. Cal. 2008) case (in which Plaintiffs had the same counsel as in this lawsuit).

7    ***OnlineNIC Discovery and Corporate Records***

8        8.    Defendants OnlineNIC and ID Shield have responded to hundreds of written

9    discovery requests by Plaintiffs in this case, which were reproduced to my firm. Attached

10    as **Exhibit F** are true and correct copies of excerpts of these responses by OnlineNIC,

11    some of which are designated as Confidential under the Protective Order.

12        9.    OnlineNIC has filed corporate formation records and related filings with the

13    California Secretary of State. Attached as **Exhibit G** are true and correct copies of example

14    corporate filings my office pulled from the California Secretary of State website. As Exhibit

15    G shows, OnlineNIC's articles of incorporation are dated in 1999.

16        10.    Regarding the domain names at issue in this case, I am informed that

17    ███████████████████████████████████████████████

18    ███████████████████████████████████████████████

19    ███████████████████████████████████████████████

20    ███████████████████████████████████████████████

21                                Attached as

22    **Exhibit H** are true and correct copies of ████████████████ that were

23    reproduced to my firm.

24        11.    I am informed that Defendants dispute receiving Plaintiffs' "notices" of

25    infringement, as reflected in denials by OnlineNIC to requests for admission served by

26    Plaintiffs (*see* Exhibit F, pp. 20-24, Interrogatory Responses Nos. 316-330). Further,

27    ███████████████████████████████████████████████

28    ███████████████████████████████████████████████

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

███████████████████████████████████████████████████████ (*See*

Plaintiffs' 13th Document Production, served on March 10, 2023, *e.g.,* FB0032464.)

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 12th day of April, 2023 in San Francisco, CA.


By:    s/ Karl S. Kronenberger
Karl S. Kronenberger

Exhibit A

**Rebuttal to Kroll Declaration**

| Row No. | Column A:<br>Kroll Decl. Allegation | Column B:<br>35.CN's Response |
|---|---|---|
| 1. | To date, more than one year after the interrogatories were served and even after Judge Tse's order, 35.CN has yet to adequately respond to these discovery requests, as detailed below. Kroll Decl. ¶2. | 35.CN has responded to all discovery, including in response to the Discovery Order by Magistrate Judge Tse. After this Order and supplemental responses, Meta has not filed any dispute with Judge Tse regarding any alleged discovery deficiency, despite Mr. Kroll's allegation. *See* Kronenberger Decl. and Exhibits. |
| 2. | Kroll Decl. ¶3. | 35.CN has responded to all discovery, including in response to the Discovery Order by Judge Tse. *See* Kronenberger Decl. and Exhibits.<br><br>In an apparent non-sequitur, Mr. Kroll identifies do not amount to one company being the alter ego of the other. actually reflect an arm's length business transaction as opposed to the commingling of funds. |
| 3. | 35.CN is deficient in its discovery response for Interrogatory No. 8 as Kroll Decl. ¶4. | 35.CN has responded to all discovery, including in response to the Discovery Order by Judge Tse. Judge Tse specifically rejected Meta's objection to 35.CN's response, commenting that 35.CN need not accept Plaintiff's theory of the case. D.E. 286. |
| 4. | 35.CN is deficient in its discovery responses for Interrogatory Nos. 13-14 regarding Kroll Decl. ¶¶5-6. | 35.CN has responded to all discovery, including in response to the Discovery Order by Judge Tse. *See* Kronenberger Decl. and Exhibits. |

| | | |
|---|---|---|
| **5.** | ██████████████████ ██████ Kroll Decl. ¶7. | ██████████████████ not establish alter ego liability. |
| **6.** | ██████████████████ ██████████████████, in response to Interrogatory No. 16. Kroll Decl. ¶8. | 35.CN has responded to all discovery, including for ██████████ ██████████████████ ████████ does not establish alter ego liability. |
| **7.** | Gong is listed as among the largest shareholders of 35.CN from 2009 to 2022 and as an officer and director of 35.CN from 2009 to 2008. Kroll Decl. ¶9. | Gong's involvement with 35.CN, among other large shareholders, officers, and directors, does not establish alter ego liability over OnlineNIC/ID Shield, especially considering how Gong divested himself of all ownership in OnlineNIC in 2007, which was disclosed publicly by 35.CN. |
| **8.** | ██████████████████ ██████ Kroll Decl. ¶¶10-11. | does not establish alter ego liability over OnlineNIC/ID Shield, especially considering how Gong divested himself of all ownership in OnlineNIC in 2007, which was disclosed publicly by 35.CN. |
| **9.** | ██████████████████Kroll Decl. ¶¶12-13, 19. ██████ ██████████████████ Kroll Decl. ¶¶40-41, 54. | ██████████████████ other unrelated business tenants. *See* Yu Decl. |
| **10.** | Carrie Yu aka Hongxia Yu was deposed for OnlineNIC. Kroll Decl. ¶¶14-16. ██████ Kroll Decl. ¶¶17-18. ██████Kroll Decl. ¶20. | ██████████████████ *See* Yu Decl. and Kronenberger Decl. Exhibits. |

| 11. | ████████████████ Kroll Decl. ¶¶21, 71. | ████████████████ ██████ does not establish bad faith. *See* Weiwei Decl. |
|-----|------------------------------------------|------------------------------------------|
| 12. | OnlineNIC produced limited corporate formation documents. Kroll Decl. ¶¶32-33. | OnlineNIC has corporate formation documents and has followed corporate formalities. *See* Kronenberger Decl. Exhibits |
| 13. | Gong was an incorporator and president of OnlineNIC in 1999 and 2000. Kroll Decl. ¶¶34-35. | Gong's involvement with OnlineNIC over two decades ago does not establish alter ego liability; Gong divested himself of OnlineNIC when he sold it in 2007. *See* Kronenberger Decl. and Exhibits. |
| 14. | OnlineNIC's secretary of state filings identify Zhipo Chen, Rex Liu, Sily Chen, and Carrie Yu. Kroll Decl. ¶¶36-37. | OnlineNIC has been owned and managed by individuals who had no connections to 35.CN. ████████ ████████████ *See* Yu Decl. |
| 15. | OnlineNIC's discovery responses identify Zhipo Chen and Gong as former shareholders and owners of OnlineNIC since 2009. Kroll Decl. ¶39. | ████████████████ and Gong has divested himself of his interest in OnlineNIC. *See* Yu Decl. |
| 16. | ████████████████ Kroll Decl. ¶¶40-41 and ████████ | ████████ not legal formation documents. ████████ *See* Yu Decl. ████████ ████████ *See* Kronenberger Decl. Exhibits & Kroll Exhibits. |



| 17. | ██████████████████ ████ ██████ Kroll Decl. ¶¶42-52. | Meta cherry picks from two decades of ████████████ ████████████████ which is not the case. ████████████ ████████████████ ████████████ showing legitimate business and corporate formalities. *See* Kronenberger Decl and Weiwei Decl. & Kroll Exhibits. |
|---|---|---|
| 18. | OnlineNIC was suspended in 2002 and 2017. Kroll Decl. ¶53. | Meta points to two administrative errors leading to temporary suspensions, over a period of twenty-one years, while ignoring how OnlineNIC provided daily, valuable services for customers during those years, including as an ICANN-accredited registrar, for decades. *See* Yu Decl. & Kronenberger Decl. Exhibits. |
| 19. | ████████████████████ ████████████████████ ████████ Kroll Decl. ¶55. | ████████████████████ do not establish alter ego liability. |
| 20. | ████████████████████ ████████████████████ ████████████ Kroll Decl. ¶¶56-58. | ████████████████████ ████████████████████ ████████ despite Meta guessing as to the meaning of certain line items over many years. *See* Kronenberger Decl. Exhibits. |
| 21. | An employee emailed Ms. Yu at her 35.CN email address to deal with an ICANN whois complaint in February 2017. Kroll Decl. ¶59. | This one example of an employee mistakenly emailing Ms. Yu at her 35.CN email address, instead of her OnlineNIC email address, shows how Meta is cherry-picking a single errant email over a number of years of emails. This example does not establish alter ego liability. |



| 22. | ▮▮▮▮▮▮▮▮▮ Kroll Decl. ¶¶60-62. | ▮▮▮▮▮▮▮ OnlineNIC has complied with the discovery requests and, importantly, 35.CN did not control OnlineNIC's discovery responses or decisions. *See* Weiwei Decl. |
| 23. | ▮▮▮▮▮▮▮▮▮ Kroll Decl. ¶¶63-65. | ▮▮▮▮▮▮▮ does not establish bad faith. *See* Weiwei Decl. ▮▮▮▮ and is a red herring. *See* Yu Decl. |
| 24. | There are no service agreements for ID Shield, and, ▮▮▮▮▮▮▮ Kroll Decl. ¶¶66-67. | ID Shield contracted directly with OnlineNIC customers; ID Shield did not contract directly with OnlineNIC or 35.CN. *See* Kronenberger Decl. Exhibits. ▮▮▮▮▮ year of a global pandemic are normal. |
| 25. | ▮▮▮▮▮▮▮ Kroll Decl. ¶69. | ▮▮▮▮▮▮▮ does not establish alter ego liability. |
| 26. | ▮▮▮▮▮▮▮ Kroll Decl. ¶70. | OnlineNIC complied with any discovery production requirements (despite Meta wanting essentially every business record), and 35.CN did not control OnlineNIC's discovery decisions. *See* Weiwei Decl. Meta has been repeatedly informed that, as outlined in numerous public filings, Gong sold OnlineNIC to Liu in 2007. *See* Kronenberger Decl. Meta's assertions do not show ▮▮▮▮ alter ego liability. |

# Exhibit B

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Liana W. Chen (Bar No. 296965)
Leah Rosa Vulić (Bar No. 343520)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@kr.law
liana@kr.law
leah@kr.law

Attorneys for Defendant Xiamen 35.com Technology Co., Ltd.
(erroneously sued as Xiamen 35.com Internet Technology Co., Ltd.)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **META PLATFORMS INC.**, et al., | Case No. 3:19-cv-07071-SI |
| Plaintiffs, | |
| v. | **DEFENDANT XIAMEN 35.COM TECHNOLOGY CO., LTD.'S FURTHER AMENDED AND SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES PER DISCOVERY ORDER D.E. 286; AND UPDATED APPENDIX A** |
| **ONLINENICINC.**, et al., | |
| Defendants. | |
| | **CONTAINS CONFIDENTIAL MATERIAL DESIGNATED UNDER THE PROTECTIVE ORDER** |

**DEF'S FURTHER AMENDED RESPS TO**
**PLAINTIFFS' FIRST SET OF ROGS**

1 PROPOUNDING PARTY:          PLAINTIFFS META PLATFORMS, INC. F/K/A

2                             FACEBOOK, INC. AND INSTAGRAM, LLC

3 RESPONDING PARTY:           DEFENDANT XIAMEN 35.COM TECHNOLOGY CO.,

4                             LTD.

5 SET:                        ONE

6                          **PRELIMINARY STATEMENT**

7      Defendant Xiamen 35.com Technology Co., Ltd. ("Defendant" or "35.CN") is

8 presently pursuing its investigation and analysis of the facts and law relating to this case

9 and has not completed its discovery or preparation for trial. Therefore, the responses set

10 forth herein are given without prejudice to Defendant's right to produce evidence of any

11 subsequently discovered facts, writings, or interpretations thereof, or to modify, change,

12 or otherwise amend these responses. The information hereinafter set forth is true and

13 correct to the best knowledge of Defendant as of this date and is subject to correction for

14 errors or omissions. These responses are based upon records and information presently

15 available to Defendant. Defendant undertakes no affirmative duty to supplement these

16 responses based upon further discovery and investigation other than as mandated by the

17 Federal Rules of Civil Procedure. References in a response to a preceding or subsequent

18 response incorporate the information and objections state in the referenced response.

19      Defendant is making a diligent inquiry and reasonable search for these responses.

20      Defendant reserves the right to introduce at trial or in support of or in opposition to

21 any motion in this case any and all documents, information, and admissions heretofore or

22 hereafter produced by the parties in this action or by any third person. To the extent that

23 Defendant identifies certain writings or delineates facts contained within any writing or

24 otherwise, it does so without prejudice to establish at a later date any additional facts that

25 may be contained within or discovered as a result of any additional investigation and

26 discovery.

27      Inadvertent identification of privileged information or writings by Defendant does not

28 constitute a waiver of any applicable privilege. The information hereafter set forth does not

1      **DEF'S FURTHER AMENDED RESPS TO
                                                                 PLAINTIFFS' FIRST SET OF ROGS**

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  waive any objection, including relevance, to the admission of such information in evidence.

2      This preliminary statement is incorporated into each and every response set forth

3  herein.

4      Subject to the foregoing conditions, Defendant objects and responds to Plaintiffs'

5  First Set of Interrogatories (the "Interrogatories") as follows:

6                                **GENERAL OBJECTIONS**

7      1.    Defendant objects to the Interrogatories to the extent Chinese law requires

8  application of the Convention on the Taking of Evidence Abroad in Civil or Commercial

9  Matters ("Hague Convention"), including to have translated discovery documents, and

10  authorization from the Chinese government, including pursuant to Chinese data security

11  and privacy laws; nothing herein shall be deemed as a waiver of Defendant's rights, claims,

12  or contentions, including as related to these issues. Defendant refers to the meet-and-

13  confer letter sent to Plaintiffs' counsel on March 30, 2022 and Chinese counsel letter dated

14  June 16, 2022 and follow up communications. At this time, Defendant is not withholding

15  information based on this objection unless specifically provided below in individual

16  responses. Defendant is continuing to review documents and conduct investigations and

17  reserves its rights to withhold information in the future based on this objection.

18      2.    Defendant objects to the Interrogatories to the extent that they purport to

19  require Defendant to provide information that is not reasonably available to Defendant

20  through a reasonable and good faith inquiry into its records and the knowledge of its

21  employees.

22      3.    Defendant objects to the Interrogatories to the extent any of them seek

23  information that is protected by the attorney-client privilege, the attorney work product

24  doctrine, the deliberative process privilege, the joint defense privilege, the privilege for

25  negotiations leading to settlement, or any other applicable privilege. Information protected

26  by any such privilege will not be produced. All such information will be withheld. Any

27  inadvertent production of such information shall not be deemed to waive any privilege or

28  protection with respect to such information.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

4.      Defendant objects to the Interrogatories to the extent that they seek information in the possession, custody, or control of individuals or entities other than Defendant on the grounds that each such Interrogatory is unduly burdensome and oppressive, and such information is equally available to Plaintiffs.

5.      Defendant objects to these Interrogatories as largely compound.

6.      Each of the foregoing General Objections is a continuing objection, which Defendant incorporates by reference into each specific response to each of the Interrogatories below as if fully set forth herein.

**AMENDED AND SUPPLEMENTAL RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 2:**

Describe the business, corporate, working or other relationship between 35.CN and ONLINENIC, including the services which 35.CN performs for or on behalf of ONLINENIC, and any monetary payment which 35.CN receives for those services.

**FURTHER RESPONSE TO INTERROGATORY NO. 2:**

**THIS RESPONSE IS CONFIDENTIAL.**

**INTERROGATORY NO. 6:**

IDENTIFY all employees of 35.CN for each year since 2009 that performed work for ONLINENIC and describe the work each of these employees performed.

**FURTHER RESPONSE TO INTERROGATORY NO. 6:**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

5

**DEF'S FURTHER AMENDED RESPS TO
PLAINTIFFS' FIRST SET OF ROGS**



**DEF'S FURTHER AMENDED RESPS TO PLAINTIFFS' FIRST SET OF ROGS**

**THIS RESPONSE IS CONFIDENTIAL.**

//

7

**DEF'S FURTHER AMENDED RESPS TO
PLAINTIFFS' FIRST SET OF ROGS**

1   **INTERROGATORY NO. 8:**

2       IDENTIFY all employees of 35.CN who were involved in, or participated in, the

3   production of discovery or the destruction of evidence in this case as described by the

4   Special Discovery Master's Data Destroyed or Withheld Report.

5   **FURTHER RESPONSE TO INTERROGATORY NO. 8:**



21       **THIS RESPONSE IS CONFIDENTIAL.**

22

23  **INTERROGATORY NO. 13:**

24      Describe the reasons why the individuals identified as lenders of money to

25  ONLINENIC in Exhibits 5.1 and 5.2 to the Responses Of OnlineNIC, Inc. and Domain ID

26  Shield To Plaintiff Facebook, Inc.'s Special Court Ordered Interrogatories, attached as

27  Exhibit 1 to these Interrogatories, loaned money to ONLINENIC, and their business or

28  personal relationship, if any, with 35.CN and/or GONG.

**FURTHER RESPONSE TO INTERROGATORY NO. 13:**

**THIS RESPONSE IS CONFIDENTIAL.**

**INTERROGATORY NO. 14:**

Describe the reasons why the individuals identified as payees for loans made to ONLINENIC in Exhibit 6 to the Responses Of OnlineNIC, Inc. and Domain ID Shield To Plaintiff Facebook, Inc.'s Special Court Ordered Interrogatories, attached as Exhibit 2 to these Interrogatories, were repaid on loans made by others, and their business or personal relationship, if any, with 35.CN and GONG.

**FURTHER RESPONSE TO INTERROGATORY NO. 14:**

**THIS RESPONSE IS CONFIDENTIAL.**

**INTERROGATORY NO. 15:**

Explain in detail all payments made by ONLINENIC to 35.CN since 2007, including the date, amount and reason for the payment.

**FURTHER RESPONSE TO INTERROGATORY NO. 15:**

10



**THIS RESPONSE IS CONFIDENTIAL.**

**INTERROGATORY NO. 16:**

Explain in detail all payments made by 35.CN to or on behalf of ONLINENIC since 2007, including the date, amount and reason for the payment.

**FURTHER RESPONSE TO INTERROGATORY NO. 16:**



Case No. 3:19-cv-07071-SI

11

**DEF'S FURTHER AMENDED RESPS TO PLAINTIFFS' FIRST SET OF ROGS**

███████████████████████████████████████████████████████████

**THIS RESPONSE IS CONFIDENTIAL.**

Respectfully Submitted,

Dated: December 22, 2022                    **KRONENBERGER ROSENFELD, LLP**

By: _Karl S. Kronenberger_
          Karl S. Kronenberger

Attorneys for Defendant Xiamen 35.com
Technology Co., Ltd.

**DEF'S FURTHER AMENDED RESPS TO
PLAINTIFFS' FIRST SET OF ROGS**

**Appendix A to 35.CN's Further Amended and Supplemental Written Discovery Responses**

Information in Response to Interrogatories[1]

| Year Prod# | Corporate structure, including "parent entities, subsidiaries, affiliates and affiliated registrars" (ROG 1)[2] | Largest Shareholders (ROG 5) | Officers (ROG 4) | Directors (ROG 4) | Financial and Corporate Records Provided? |
|---|---|---|---|---|---|
| **2007** **1st Prod** | Company was set up with the relevant provisions of the "Company Law," "Securities Law," and improved with e.g., the "Articles of Association," operating in compliance with current laws and regulations and its formed structure. | | | | Public offering records provided; otherwise under review and will be provided subject to relevance, proportionality, and burden objections. |
| **2008** **1st Prod** | Same as above | | | | Public offering records provided; otherwise under review and will be provided subject to relevance, proportionality, and burden objections. |
| **2009** | Same as above<br><br>Wholly owned subsidiaries: | | | | Yes |

[1] The information in this chart is provided and translated from Chinese company records, including public offering documents and annual/periodic corporate records, which have been produced to Plaintiffs and which may refer to certain terms differently. To the extent there is any discrepancy between the information in this chart and the Chinese records, the Chinese records (in the Chinese language) shall control. Further, certain information is requested but does not exist. For example, there are no "affiliated registrars" or "parent entities" unless otherwise expressly stated. In addition, certain individuals may have been elected, resigned, or passed away etc. mid-year in the year in which they are listed.

[2] Interrogatory 1 only requests this corporate information for the present time period, but 35.CN has agreed to provide additional information by year.

**Appendix A to 35.CN's Further Amended and Supplemental Written Discovery Responses**

| Year Prod# | Corporate structure, including "parent entities, subsidiaries, affiliates and affiliated registrars" (ROG 1)[2] | Largest Shareholders (ROG 5) | Officers (ROG 4) | Directors (ROG 4) | Financial and Corporate Records Provided? |
|---|---|---|---|---|---|
| 3rd & 5th Prod | Xiamen Jingtong Technology Industrial Co., Ltd.<br>Tianjin 35.com Technology Co., Ltd.<br>Suzhou 35.com Information Technology Co., Ltd.<br>Qingdao 35.con Technology Co. Ltd.<br>35.com International Technology Co., Ltd. | | | | |
| 2010<br>5th Prod | Public company in China<br><br>Wholly owned subsidiaries:<br>Xiamen Jingtong Technology Industrial Co., Ltd.<br>Tianjin 35.com Technology Co., Ltd.<br>Suzhou 35.com Information Technology Co., Ltd.<br>Qingdao 35.com Technology Co. Ltd.<br>35.com International Technology Co., Ltd. | | | | Yes |
| 2011 | Public company in China | | | | Yes |

**Appendix A to 35.CN's Further Amended and Supplemental Written Discovery Responses**

| Year<br><br>Prod# | Corporate structure, including "parent entities, subsidiaries, affiliates and affiliated registrars" (ROG 1)[2] | Largest Shareholders (ROG 5) | Officers (ROG 4) | Directors (ROG 4) | Financial and Corporate Records Provided? |
|---|---|---|---|---|---|
| 5th Prod | Wholly owned subsidiaries:<br>Xiamen Jingtong Technology Industrial Co., Ltd.<br>Tianjin 35.com Technology Co., Ltd.<br>Suzhou 35.com Information Technology Co., Ltd.<br>Qingdao 35.com Technology Co. Ltd.<br>35.com International Technology Co., Ltd.<br>Tianjin 35.com Telecom Co., Ltd. | | | | |
| **2012**<br><br>6th Prod | Public company in China<br><br>Wholly owned subsidiaries:<br>Xiamen Jingtong Technology Industrial Co., Ltd.<br>Tianjin 35.com Technology Co., Ltd.<br>Suzhou 35.com Information Technology Co., Ltd.<br>Qingdao 35.com Technology Co. Ltd.<br>35.com International Technology Co., Ltd.<br>Tianjin 35.com Telecom Co., Ltd. | | | | Yes |
| **2013** | Public company in China | | | | Yes |

3

**Appendix A to 35.CN's Further Amended and Supplemental Written Discovery Responses**

| Year Prod# | Corporate structure, including "parent entities, subsidiaries, affiliates and affiliated registrars" (ROG 1)[2] | Largest Shareholders (ROG 5) | Officers (ROG 4) | Directors (ROG 4) | Financial and Corporate Records Provided? |
|---|---|---|---|---|---|
| 6th Prod | Wholly owned subsidiaries: Tianjin 35.com Technology Co., Ltd. Suzhou 35.com Information Technology Co., Ltd. Qingdao 35.com Technology Co. Ltd. 35.com International Technology Co., Ltd. Tianjin 35.com Telecom Co., Ltd. Xiamen Jingtong Technology Industrial Co., Ltd. Beijing Zhongya Hulian Technology Development Co., Ltd. | | | | |
| 2014 6th Prod | Public company in China Wholly owned subsidiaries: Tianjin 35.com Technology Co., Ltd. Suzhou 35.com Information Technology Co., Ltd. Qingdao 35.com Technology Co. Ltd. 35.com International Technology Co., Ltd. Beijing Zhongya Hulian Technology Development Co., Ltd. | | | | Yes |
| 2015 6th Prod | Public company in China Wholly owned subsidiaries: Tianjin 35.com Technology Co., Ltd. Suzhou 35.com Information Technology Co., Ltd. Qingdao 35.com Technology Co. Ltd. Beijing 35.com Technology Development Co., Ltd. Beijing Zhongya Hulian Technology Development Co., Ltd. Shenzhen Daoxi Technology Co., Ltd. | | | | Yes |

**Appendix A to 35.CN's Further Amended and Supplemental Written Discovery Responses**

| Year<br>Prod# | Corporate structure, including "parent entities, subsidiaries, affiliates and affiliated registrars" (ROG 1)[2] | Largest Shareholders (ROG 5) | Officers (ROG 4) | Directors (ROG 4) | Financial and Corporate Records Provided? |
|---|---|---|---|---|---|
| | | | | | |
| 2016<br><br>6th Prod | Public company in China<br><br>Wholly owned subsidiaries:<br>Beijing Zhongya Hulian Technology Development Co., Ltd.<br>Shenzhen Daoxi Technology Co., Ltd.<br>Beijing 35.com Technology Co., Ltd. | | | | Yes |
| 2017<br><br>6th Prod | Public company in China<br><br>Wholly owned subsidiaries:<br>Shenzhen Daoxi Technology Co., Ltd.<br>Beijing 35.com Technology Co., Ltd. | | | | Yes |
| 2018<br><br>6th Prod | Public company in China<br><br>Wholly owned subsidiaries:<br>Information Technology Co., Ltd.<br>Shenzhen Daoxi Technology Co., Ltd.<br>Tianjin 35.com Telecom Co., Ltd.<br>Qingdao 35.com Technology Co. Ltd.<br>Tianjin 35.com Technology Co. Ltd.<br>Beijing 35.com Technology Co. Ltd.<br>Jinan 35.com Technology Co. Ltd.<br>Fuzhou 35.com Technology Co. Ltd. | | | | Yes |
| 2019<br><br>6th Prod | Public company in China<br><br>Wholly owned subsidiaries:<br>Shenzhen Daoxi Technology Co., Ltd.<br>Tianjin 35.com Telecom Co., Ltd. | | | | Yes |

**Appendix A to 35.CN's Further Amended and Supplemental Written Discovery Responses**

| Year Prod# | Corporate structure, including "parent entities, subsidiaries, affiliates and affiliated registrars" (ROG 1)[2] | Largest Shareholders (ROG 5) | Officers (ROG 4) | Directors (ROG 4) | Financial and Corporate Records Provided? |
|---|---|---|---|---|---|
| | Qingdao 35.com Technology Co. Ltd. Tianjin 35.com Technology Co. Ltd. Jinan 35.com Technology Co. Ltd. Suzhou 35.com Information Technology Co., Ltd Changsha 35.com Technology Co., Ltd. | | | | |
| 2020<br><br>6th Prod | Public company in China<br><br>Wholly owned subsidiaries:<br>Shenzhen Daoxi Technology Co., Ltd.<br>Tianjin 35.com Telecom Co., Ltd.<br>Qingdao 35.com Technology Co., Ltd.<br>Tianjin 35.com Technology Co., Ltd.<br>Jinan 35.com Technology Co. Ltd.<br>Changsha 35.com Technology Co., Ltd. | | | | Yes |
| 2021<br><br>6th Prod | Public company in China<br><br>Wholly owned subsidiaries:<br>Shenzhen Daoxi Technology Co., Ltd.<br>Tianjin 35.com Telecom Co., Ltd.<br>Qingdao 35.com Technology Co., Ltd.<br>Tianjin 35.com Technology Co., Ltd.<br>Jinan 35.com Technology Co. Ltd.<br>Changsha 35.com Technology Co., Ltd. | | | | Yes |
| 2022<br><br>6th Prod | Public company in China | | Believe listed in 1st Quarterly Report of 2022. | Believe listed in 1st Quarterly Report of 2022. | Yes – but year is still in progress, i.e., not all records are available. |

# Exhibit C
# Entire Document Filed
# Under Seal

Exhibit D

北京市中伦律师事务所

关于厦门三五互联科技股份有限公司

首次公开发行股票并在创业板上市的

# 法律意见书



中伦律师事务所
ZHONG LUN LAW FIRM

中国北京市建国门外大街甲6号SK大厦36-37层　邮政编码:100022

36 37/F, SK Tower, 6A Jianguomenwai Avenue, Beijing 100022, People's Republic of China

电话/Tel: (8610) 5957-2288 传真/Fax: (8610) 6568-1022/1838

网址 http://www.zhonglun.com

# 目  录

一、本次发行上市的批准和授权 ........................................................................ 4

二、发行人本次发行上市的主体资格 ................................................................ 5

三、本次发行上市的实质条件 ............................................................................ 6

四、发行人的历史沿革及设立 .......................................................................... 11

五、发行人的独立性 .......................................................................................... 11

六、股东（实际控制人） .................................................................................. 11

七、发行人的股本及演变 .................................................................................. 12

八、发行人的附属公司和分支机构 .................................................................. 13

九、发行人的业务 .............................................................................................. 13

十、关联交易及同业竞争 .................................................................................. 14

十一、发行人的主要财产 .................................................................................. 16

十二、发行人的重大债权债务 .......................................................................... 16

十三、发行人重大资产变化及收购兼并 .......................................................... 17

十四、发行人章程的制定与修改 ...................................................................... 17

十五、发行人股东大会、董事会、监事会议事规则及规范运作 .................. 18

十六、发行人董事、监事和高级管理人员及其变化 ...................................... 18

十七、发行人的税务 .......................................................................................... 19

十八、发行人的环境保护和产品质量、技术等标准 ...................................... 19

十九、发行人募股资金的运用 .......................................................................... 19

二十、发行人的业务发展目标 .......................................................................... 20

二十一、诉讼、仲裁或行政处罚 ...................................................................... 20

二十二、发行人招股说明书法律风险的评价 .................................................. 20

二十三、其他需要说明的问题 .......................................................................... 20

二十四、结论意见 .............................................................................................. 21

# 北京市中伦律师事务所

## 关于厦门三五互联科技股份有限公司

## 首次公开发行股票并在创业板上市的法律意见书

**致：厦门三五互联科技股份有限公司**

根据《中华人民共和国公司法》（以下简称"《公司法》"）、《中华人民共和国证券法》（以下简称"《证券法》"）以及中国证券监督管理委员会（以下简称"中国证监会"）发布的《首次公开发行股票并在创业板上市管理暂行办法》（以下简称"《创业板首发办法》"）等有关法律、法规和规范性文件的规定，北京市中伦律师事务所（以下简称"本所"）作为厦门三五互联科技股份有限公司（以下简称"发行人"或"公司"）聘请的专项法律顾问，现为发行人申请首次公开发行不超过 1,350 万股人民币普通股（A 股）及在深圳证券交易所创业板上市事宜（以下简称"本次发行"或"本次发行上市"），出具本法律意见书。

根据本所与发行人签订的《法律服务协议》，本所律师对发行人本次发行上市的有关文件资料进行了审查，并获授权出具法律意见书和律师工作报告。

本所已经得到发行人的保证：即发行人已向本所提供了本所认为出具本法律意见书所必需的真实的原始书面材料、副本材料或口头证言；发行人在向本所提供文件时并无遗漏，所有文件上的签名、印章均是真实的，所有副本材料或复印件均与原件一致。

对出具本法律意见书至关重要而又无法得到独立的证据支持的事实，本所依赖政府有关部门或其他有关单位出具的证明文件以出具本法律意见书。

本所依据本法律意见书出具之日以前已经发生或存在的事实，并依据我国现行法律、法规和规范性文件发表法律意见。

本所仅就与本次发行上市有关的中国法律问题发表法律意见，并不对有关境外法律问题、会计审计、投资决策等专业事项发表评论。本法律意见书和律师工作报告中涉及会计审计等内容时，均严格按照有关中介机构出具的报告引述。

本所承诺，本所律师已严格履行法定职责，遵循了勤勉尽责和诚实信用原则，对发行人的行为以及本次申请的合法、合规、真实、有效进行了充分的核查验证，保证本法律意见书和律师工作报告中不存在虚假记载、误导性陈述及重大遗漏。

本所同意将本法律意见书和律师工作报告作为发行人本次发行上市所必备的法定文件，随其他材料一同上报，并依法对所出具的法律意见承担责任。

本所同意发行人部分或全部在招股说明书中自行引用或按中国证监会的审核要求引用法律意见书或律师工作报告的内容，但发行人作上述引用时，不得因引用而导致法律上的歧义或曲解。

本法律意见书仅供发行人本次发行上市之目的使用，不得用作任何其他目的。

本所律师根据《证券法》第二十条、第一百七十三条的要求，按照律师行业公认的业务标准、道德规范和勤勉尽责精神，在对发行人提供的有关文件和事实进行了充分核查验证的基础上，现出具法律意见如下：

**一、本次发行上市的批准和授权**

（一）发行人于 2009 年 7 月 1 日召开第一届董事会第十二次会议，依法就本次发行上市的具体方案、本次发行募集资金使用的可行性及其他必须明确的事项作出决议，并提请股东大会批准。

（二）本次发行上市已经依照法定程序获得于 2009 年 7 月 16 日召开的 2009 年第二次临时股东大会的有效批准。本次临时股东大会在召集、召开方式、议事

程序及表决方式等方面均符合《公司法》和公司章程的有关规定。

（三）　本次临时股东大会就本次发行的股票种类和数量、面值、发行对象、定价方式、募集资金用途、发行前滚存利润的分配方案、上市证券交易所、决议的有效期以及授权董事会办理本次发行上市具体事宜等事项进行了审议，会议决议的内容合法有效。

（四）　本次临时股东大会授权发行人董事会全权处理在本次发行申报过程中必须处理的与本次发行有关的一切事务，其授权范围和表决程序未违反法律、法规和公司章程的规定，有关授权合法有效。

（五）　发行人本次发行尚待中国证监会核准，有关股票的上市交易尚需经深圳证券交易所同意。

**二、发行人本次发行上市的主体资格**

（一）发行人由厦门三五互联科技有限公司（以下简称"三五科技"）整体变更而设立，三五科技于 2004 年 4 月 1 日成立，至今持续经营时间已经超过三年。

（二）三五科技于 2007 年 8 月 29 日依法整体变更设立股份公司，符合法律、法规和规范性文件的规定。

（三）　发行人目前持有有效的《企业法人营业执照》。

（四）发行人已通过厦门市工商行政管理局 2008 年的企业年度检验。

本所认为，发行人的设立及历次变更（包括整体变更为股份公司）已获得有关批准，并经公司登记机关核准登记，履行了必要的法律程序，符合法律、法规和规范性文件的规定。发行人通过历年年检，至今已合法存续三年以上，不存在依据法律、法规等规定需要终止的情形，由此，发行人已经具备本次发行上市的

主体资格。

### 三、本次发行上市的实质条件

发行人本次发行上市为非上市的股份有限公司首次公开发行 A 股并在深圳证券交易所创业板上市。经对照《公司法》、《证券法》、《创业板首发办法》等法律、法规和规范性文件，本所认为，发行人本次发行上市符合有关法律、法规和规范性文件规定的各项实质条件：

**（一）发行人本次发行上市符合《创业板首发办法》第十条之规定。**

公司依法设立且持续经营三年以上。以扣除非经常性损益前后归属于母公司的净利润孰低者为计算依据，公司 2007 年度盈利 25,302,506.46 元、2008 年度盈利 27,588,531.70 元，两年连续盈利，净利润累计 52,891,038.16 元，不少于 1000 万元，且持续增长；发行人最近一期末净资产为 83,772,866.18 元，不少于 2000 万元，且不存在未弥补亏损；发行人目前的股本总额为 4,000 万元，不少于 3,000 万元。

**（二）发行人本次发行上市符合《创业板首发办法》第十一条之规定。**

公司设立的股本、历次增资的股本、以有限公司的净资产折合股份公司的股本已经足额缴纳，发起人用作股份公司出资的资产的权属转移手续已办理完毕。公司的主要资产不存在重大权属纠纷。

**（三）发行人本次发行上市符合《创业板首发办法》第十二条之规定。**

发行人的主营业务为：通过软件运营服务（SaaS）模式，依靠自主研发的应用软件系统，重点面向中国中小企业客户，提供企业邮箱、电子商务网站建设、网络域名、办公自动化系统（OA）、客户关系管理系统（CRM）等软件产品及服务；发行人 2006 年、2007 年、2008 年以及 2009 年上半年的主营业务收入占发行人全部收入的比例分别为 98.76%、99%、98.43%和 98.47%，主营业务突出；

发行人的生产经营活动符合法律、行政法规和公司章程的规定，符合国家产业政策。发行人的生产经营活动符合环境保护政策。

**（四）发行人本次发行上市符合《创业板首发办法》第十三条之规定。**

发行人最近两年内主营业务没有发生重大变化；发行人最近两年内董事、高级管理人员没有发生重大变化；发行人最近两年内实际控制人没有发生变更。

**（五）发行人本次发行上市符合《创业板首发办法》第十四条之规定。**

发行人不存在以下影响其持续盈利能力的情形：

1. 发行人的经营模式、产品或服务的品种结构已经或者将发生重大变化，并对发行人的持续盈利能力构成重大不利影响。

2. 发行人的行业地位或发行人所处行业的经营环境已经或者将发生重大变化，并对发行人的持续盈利能力构成重大不利影响。

3. 发行人在用的房产、商标、专利、著作权、软件、域名等重要资产或者技术的取得或者使用存在重大不利变化的风险。

4. 发行人最近一年的营业收入或净利润对关联方或者有重大不确定性的客户存在重大依赖。

5. 发行人最近一年的净利润主要来自合并财务报表范围以外的投资收益。

6. 其他可能对发行人持续盈利能力构成重大不利影响的情形。

**（六）发行人本次发行上市符合《创业板首发办法》第十五条之规定。**

发行人依法纳税，无任何欠缴、偷漏税行为；发行人享受的各项税收优惠符合相关法律法规的规定；发行人享受的各项财政补贴、奖励符合相关法律法规的规定；发行人的经营成果对税收优惠不存在严重依赖。

**（七）发行人本次发行上市符合《创业板首发办法》第十六条之规定。**

发行人不存在重大偿债风险，不存在影响发行人持续经营的担保、诉讼以及

仲裁等重大或有事项。

**（八）发行人本次发行上市符合《创业板首发办法》第十七条之规定。**

发行人股东持有的发行人股权均清晰，且不存在被质押或其他有争议的情形；发行人控股股东和受控股股东、实际控制人支配的股东所持发行人的股份不存在重大权属纠纷。

**（九）发行人本次发行上市符合《创业板首发办法》第十八条之规定。**

发行人资产完整；发行人合法拥有从事业务经营所必需的房产、商标、专利、著作权、软件、域名的所有权或者使用权，且上述资产不存在权利障碍；发行人业务及人员、财务、机构独立，具有完整的业务体系和直接面向市场独立经营的能力；发行人与控股股东、实际控制人及其控制的其他企业间不存在同业竞争以及严重影响发行人独立性或者显失公允的关联交易。

**（十）发行人本次发行上市符合《创业板首发办法》第十九条之规定。**

发行人具有完善的公司治理结构，依法建立了健全的股东大会、董事会、监事会以及独立董事、董事会秘书、审计委员会制度，相关机构和人员能够依法履行职责。

**（十一）发行人本次发行上市符合《创业板首发办法》第二十条之规定。**

发行人会计基础工作规范，财务报表的编制符合企业会计准则和相关会计制度的规定，在进行会计确认、计量和报告时保持了应有的谨慎，对相同或者相似的经济业务选用了一致的会计政策，无随意变更的情形，在所有重大方面公允地反映了发行人的财务状况、经营成果和现金流量。

**（十二）发行人本次发行上市符合《创业板首发办法》第二十一条之规定。**

发行人制订了《内部控制制度》并且予以实施，能够合理保证发行人财务报告的可靠性、生产经营的合法性、营运的效率与效果。

**（十三）发行人本次发行上市符合《创业板首发办法》第二十二条之规定。**

发行人制订了《财务管理内部控制制度》，严格管理资金的使用。截止本法律意见书出具之日，不存在发行人的资金被控股股东、实际控制人及其控制的其他企业以借款、代偿债务、代垫款项或者其他方式占用的情形。

**（十四）发行人本次发行上市符合《创业板首发办法》第二十三条之规定。**

发行人于 2009 年 7 月 16 日召开的 2009 年第二次临时股东大会通过本次发行后适用的《章程（草案）》，以及《对外担保管理制度》，均已经明确规定发行人对外担保的审批权限和审批程序。截止本法律意见书出具之日，不存在发行人为控股股东、实际控制人及其控制的其他企业提供担保的情形。

**（十五）发行人本次发行上市符合《创业板首发办法》第二十四条之规定。**

发行人的董事、监事和高级管理人员已经了解股票发行上市相关法律法规，知悉上市公司及其董事、监事和高级管理人员的法定义务和责任。

**（十六）发行人本次发行上市符合《创业板首发办法》第二十五条之规定。**

发行人的董事、监事和高级管理人员具备法律、行政法规和规章规定的任职资格。发行人的董事、监事和高级管理人员不存在下列情形：

1. 被中国证监会采取证券市场禁入措施尚在禁入期的。

2. 最近三年内受到中国证监会行政处罚，或者最近一年内受到证券交易所公开谴责的。

3. 因涉嫌犯罪被司法机关立案侦查或者涉嫌违法违规被中国证监会立案调查，尚未有明确结论意见的。

**（十七）发行人本次发行上市符合《创业板首发办法》第二十六条之规定。**

发行人最近三年内不存在违反工商、税收、环保、海关、质量技术监督、劳动、外汇、城管、土地房产、信息产业、通信等行政管理而受到行政处罚且情节严重的情形，不存在损害投资者合法权益和社会公共利益的重大违法行为；控股股东、实际控制人龚少晖不存在损害投资者合法权益和社会公共利益的重大违法行为，且无违法犯罪记录；发行人及其控股股东、实际控制人最近三年内不存在未经法定机关核准，擅自公开或者变相公开发行证券，或者有关违法行为虽然发生在三年前，但目前仍处于持续状态的情形。

**（十八）发行人本次发行上市符合《创业板首发办法》第二十七条之规定。**

发行人募集资金用于主营业务，并有明确的用途；募集资金数额和投资项目与发行人现有生产经营规模、财务状况、技术水平和管理能力等相适应。

**（十九）发行人本次发行上市符合《创业板首发办法》第二十八条之规定。**

发行人制订的《募集资金管理制度》规定发行人募集资金应当存放于董事会决定的专项账户集中管理。

**（二十）发行人本次发行上市符合《证券法》第五十条之规定。**

发行人目前的股份总额为 4,000 万股，假定本次发行 1,350 万股，则占本次发行后股份总额（5,350 万股）的 25.23%，超过 25%。

**（二十一）发行人的发行申请文件不存在虚假记载、误导性陈述或者重大遗漏。**

发行人本次报送中国证监会的首次公开发行股票并在创业板上市的申请文件不存在虚假记载、误导性陈述或者重大遗漏。

**四、发行人的历史沿革**

（一）三五科技依法成立，历次变更均获得有效的批准并在政府部门履行了必要的手续，为合法有效；三五科技在整体变更为股份公司之前有效存续。

（二）三五科技成立时的注册资本分期缴付，不符合当时《公司法》的规定，但鉴于这是厦门市政府给予企业的一种普遍的扶持政策，且三五科技的注册资本已先于规定的时间缴付完毕，故此三五科技成立注册资本分期缴付的行为不会对本次发行上市构成重大阻碍。

（三）三五科技整体变更设立股份公司，符合法律法规规定的设立条件、设立方式和设立程序；《发起人协议》符合有关法律、法规和规范性文件的规定，为合法有效的法律文件，不可能引致股份公司的发起设立行为存在潜在纠纷。

（四）发起人由三五科技整体变更发起设立，其经营期限可以自三五科技成立之日起（2004年4月1日）连续计算。

（五）股份公司成立后发生的股票转让行为均合法有效；有关股票转让行为均在股份公司成立一年后发生，符合《公司法》第142条的规定；有关转让方为法人单位的，均履行了相应的决策程序取得相关批准；有关股票转让的合同和协议合法有效；有关股票转让行为不存在导致代持关系或信托关系的情形。

**五、发行人的独立性**

发行人具有完整的业务体系和直接面向市场独立经营的能力，发行人的资产、人员、财务、机构、业务独立，在其他方面亦不存在影响其独立性的严重缺陷。

**六、发行人的股东（实际控制人）**

（一）发行人目前的股东共20名，包括16名自然人股东和4名法人股东。

公司的法人股东均为依法设立、合法存续、独立享有民事权利并承担民事义务的企业法人；公司的自然人股东除龚含远外均具有完全民事行为能力；龚含远未成年，是限制民事行为能力人，可以进行与他的年龄、智力相适应的民事活动；其他民事活动由喻建红（其母，监护人）代理，或者征得喻建红同意。

（二）公司股东均具有法律、法规和规范性文件规定的、担任股东并向公司出资的资格。

（三）三五科技整体变更为股份公司的发起人投入股份公司的资产的产权关系清晰，将上述资产投入股份公司不存在法律障碍。

（四）股东对发行人历次投资的资金均由其以合法方式取得，不存在向发行人借款、也不存在由发行人为其提供担保的情形；各股东所持有的发行人股份不存在信托、代持的情况，亦未与他人就持有发行人股份签署过任何信托、代持等协议。

（五）发行人的股东符合《公司法》规定的法定股东人数，其住所均在中国境内。

（六）不存在股东所持发行人股票被质押或其他有争议的情形。

（七）不存在股东将其全资附属企业或其他企业先注销再以其资产折价入股发行人的情况。不存在股东以其在其他企业中的权益折价入股发行人的情况。

（八）龚少晖先生为发行人的实际控制人，其对发行人的控制权近两年未发生变更。

**七、发行人的股本及演变**

（一）发行人设立的股本、历次增资的股本、以有限公司的净资产折合股份公司的股本已经足额缴纳。

（二）发行人历次股权变动合法、合规、真实、有效。

（三）发行人的股权设置、股本结构符合《公司法》等有关法律、法规、规范性文件的有关规定，产权界定和确认清晰，不存在纠纷。

（四）发行人股票不存在质押、冻结或设定其他第三者权益的情况，亦未涉及任何纠纷、争议或诉讼。

## 八、发行人的附属公司、分支机构

（一）截止本法律意见书出具之日，发行人现有 13 家附属公司、分支机构，包括 6 家全资子公司和 7 家分公司。

（二）发行人取得附属公司的股权、设立子公司和分公司，均取得发行人股东大会的有效批准，并已在相关政府部门获得了必要的批准文件，履行了必要的登记注册法律程序。

（三）发行人的子公司、分公司均合法成立。

（四）发行人的子公司和分公司均合法存续，不存在依据法律、法规等规定需要终止的情形。

## 九、发行人的业务

（一）发行人的经营范围已经厦门市工商行政管理局核准登记，符合法律、法规和规范性文件的规定；发行人实际从事的业务没有超出其《企业法人营业执照》上核准的经营范围和经营方式。

（二）发行人在中国香港特别行政区设立的全资子公司三五香港成立至今尚未开展业务。除此之外，发行人没有在中国大陆以外设立其他分支机构或者从事

经营活动。

（三）发行人最近三年又一期持续经营主营业务，未发生过重大变更。

（四）发行人的收入主要来自于主营业务，主营业务突出。

（五）发行人从事业务经营活动，已取得必要的资质证书或履行了相关法律手续。

（六）不存在影响发行人持续经营的法律障碍。

**十、关联交易及同业竞争**

（一）关联方

发行人的主要关联方有：

1. 持发行人股份超过 5%的主要股东。

2. 厦门精通科技实业有限公司（"精通科技"）。龚少晖曾持有精通科技的股权。2006 年 12 月 29 日，发行人受让精通科技 99%的股权，精通科技成为发行人的控股子公司，不再为发行人的关联方。

3. 厦门三五互联信息技术有限公司（"三五信息"）。截止本律师意见书之日，发行人控股股东龚少晖持有三五信息 83.48%的股权。

4. 厦门市二进制数码科技有限公司（"二进制"）。截止本律师意见书之日，关联方三五信息持有二进制 60%的股权。

5. OnlineNIC, Inc. （"美国公司"）。发行人控股股东龚少晖曾持有美国公司100%的股权，2007 年 11 月 28 日将全部股权转让予无关联关系的三方，美国公

司不再为发行人的关联方。

6. 福建中金在线网络股份有限公司（"中金在线"）。发行人的股东（持股比例5.765%）、监事会主席沈文策是中金在线的控股股东。

（二）经核查，发行人与关联方近三年来主要存在接受担保、受让商标申请权和商标、向三五信息出售资产、出租办公场所、向美国公司提供技术服务、向龚少晖、二进制提供资金等关联交易事项（具体参见本所律师工作报告正文第十部分"关联交易和同业竞争"）。

本所认为，发行人近三年的关联交易及关联往来中：（1）接受担保、受让商标申请权和商标，为发行人单方受益，不存在损害发行人及其他股东利益的情况；（2）向三五信息出售资产按账面净值转让，价格公允合理；有关资产与发行人的业务经营无关，转让该资产不影响发行人的业务经营；（3）出租办公场所的价格与市场公允价格一致；（4）向美国公司提供技术服务的收费定价合理公允，该收入占发行人营业收入的比例较低，对发行人的营业收入、利润不构成重大影响；（5）向龚少晖、二进制提供资金已于2007年收回且参照同期银行贷款利率收取利息。截止本律师意见书之日，不存在关联方违规占用发行人资金的情形。

截止本法律意见书出具之日，发行人与控股股东、实际控制人及其控制的其他企业间不存在严重影响发行人独立性或者显失公允的关联交易。

（三）发行人目前使用的和上市后适用的章程、《关联交易决策制度》皆对关联交易决策权力与程序作出规定。有关规定合法有效，并可以有效地规范发行人的关联交易。

（四）发行人与其主要股东及控股股东、实际控制人控制的其他企业不存在同业竞争。

（五）发行人涉及的关联交易，以及避免同业竞争的承诺，已经在本次发

行上市的招股说明书（申报稿）及其他相关文件中进行了充分披露，不存在重大遗漏和重大隐瞒的情况。

**十一、发行人的主要财产**

（一）发行人拥有的主要财产：

1. 精通科技拥有厦门市思明区软件园二期观日路 8 号的一栋六层房产的其中五层（不包地下车库），并取得相关的《厦门市土地房屋权证》。

2. 发行人现持有 7 个注册商标（9 个类别），正在申请 12 个商标（44 个类别）的注册。

3. 发行人已申请 6 项专利并获受理。

4. 发行人拥有 8 项著作权，精通科技拥有 2 项著作权。

5. 发行人 4 个软件产品取得《软件产品登记证书》。

6. 发行人持有 25 个主要域名。

（二）发行人、精通科技的主要财产不存在被查封、抵押、质押或权利受到限制的其他情形。发行人、精通科技对其主要财产的所有权或使用权的行使没有受到任何限制。

**十二、发行人的重大债权债务**

（一）发行人正在履行的重大合同均合法有效，目前不存在任何纠纷或争议，合同的履行不存在潜在的法律风险。

（二）2008 年发行人采购金额、销售金额排名前十的相关合同当事人，除中金在线外，与发行人、发行人控股股东皆无关联关系。发行人与中金在线的关联交易额占发行人 2008 年业务总额的 0.21%，不构成重大关联交易。

（三）发行人已履行完毕的重大合同不存在产生潜在纠纷的可能。

（四）截止本法律意见书出具之日，发行人不存在因环境保护、知识产权、

产品质量、劳动安全、人身权等原因产生的侵权之债。

（五）　截止本法律意见书出具之日，发行人与关联方之间不存在重大债权债务关系；发行人与关联方之间不存在相互提供担保的情况。

（六）　截止 2009 年 6 月 30 日列入发行人合并后其他应收、其他应付账目项下金额较大的款项系因发行人正常的经营活动而发生，债权债务关系清楚，不存在违反法律、法规限制性规定的情况。

**十三、发行人重大资产变化及收购兼并**

（一）　本所律师工作报告第四项"发行人的历史沿革"所述之增资、公司类型变更，第 8.1.2.11 条所述之收购精通科技股权、第 8.1.2.12 条所述之精通科技增资以及第 10.2.3 条所述之发行人向三五信息出售资产等情形外，发行人最近三年又一期不存在其他重大资产重组、合并、分立、增资扩股、减少注册资本、收购或出售资产等行为。

（二）　发行人目前不存在其他拟进行的资产置换、资产剥离、资产出售或收购等行为。

**十四、发行人章程的制定与修改**

（一）　发行人章程及其历次修改（包括三五科技的章程及其历次修改）均获得有关批准，并在厦门市工商局登记，符合《公司法》及其他法律、法规、规范性文件的规定。

（二）　发行人现行章程并无违反《公司法》及国家现行有关法律、法规、规范性文件规定的内容。

（三）　为本次发行上市，发行人依照中国证监会发布的《上市公司章程指引》（2006 年修订）、《上市公司股东大会规则》及其他有关规定，结合发行人的

实际情况拟定了公司章程（草案），该公司章程（草案）不存在与《上市公司章程指引》（2006年修订）重大不一致的条款，亦不存在违反现行法律、法规和规范性文件规定的内容。

**十五、发行人股东大会、董事会、监事会议事规则及规范运作**

（一）　发行人建立了健全的组织机构。

（二）　发行人制订了股东大会、董事会及监事会议事规则及其他相关工作制度，符合法律、法规、规范性文件及公司章程的规定。

（三）　发行人历次股东大会、董事会、监事会在召集、召开方式、提案、议事程序、表决方式、决议内容及签署等方面均合法、合规、真实、有效。

（四）　发行人股东大会、董事会的历次授权或重大决策行为均符合有关法律、法规和公司章程的规定，均合法、合规、真实、有效。

**十六、发行人董事、监事和高级管理人员及其变化**

（一）发行人董事、监事及高级管理人员的任职情况符合法律、法规和规范性文件和公司章程的有关规定。

（二）发行人近三年董事、监事及高级管理人员的变化符合《公司法》及公司章程的规定，已履行了必要的法律手续。

（三）发行人最近两年内董事、高级管理人员均没有发生重大变化。

（四）发行人目前聘请三名独立董事，占董事人数的三分之一以上，符合《关于在上市公司建立独立董事制度的指导意见》及其他法律法规的相关规定。其任职资格符合《公司法》、《关于在上市公司建立独立董事制度的指导意见》及其他法律、法规、规范性文件以及公司章程的相关规定。发行人现行章程、发行上市

后适用的《章程（草案）》及《独立董事工作制度》均已对独立董事的职权范围作出了相应的规定,该职权范围的规定符合法律、法规和规范性文件的有关规定。

### 十七、发行人的税务和财政补贴

（一）发行人所执行的税种、税率符合现行法律、法规和规范性文件的规定。

（二）发行人及其控股子公司近三年依法纳税,不存在被税务部门处罚的情形。

（三）发行人、精通公司所享受的财政补贴不违反法律、法规的规定,发行人、精通公司享受该等财政补贴合法有效。

（四）发行人的经营成果对税收优惠不存在重大依赖。

### 十八、发行人的环境保护和产品质量、技术等标准

（一）发行人从事业务经营不会对环境造成影响。

（二）  发行人最近三年又一期（自 2006 年 1 月至 2009 年 6 月）能够遵守国家和地方环境保护法律法规,未因环境违法行为而遭受行政处罚。

（三）  发行人本次发行募集资金投资项目已取得厦门市环境保护局、厦门市环境保护局思明分局的批复文件。

（四）  发行人已通过 ISO9001：2000 和 CMMI3（软件成熟度阶段性三级评估）认证。近三年来不存在因违反有关产品质量和技术监督方面的法律、法规受到行政处罚且情节严重的情形。

### 十九、发行人募股资金的运用

（一）　发行人本次发行募集资金拟投资项目已在厦门市发展和改革委员会办理了备案手续。

（二）　发行人拟投资项目未涉及与他人合作投资的情况，亦不会引致与发行人股东产生同业竞争的情形。

## 二十、发行人的业务发展目标

发行人的业务发展目标与其主营业务一致，符合国家法律、法规和规范性文件的规定，不存在潜在的法律风险。

## 二十一、诉讼、仲裁或行政处罚

（一）截止本法律意见书出具之日，发行人不存在尚未了结的或可以合理预见的、针对其重要资产、权益和业务的、可能对本次发行上市有实质性影响的重大诉讼、仲裁案件或行政处罚事项。

（二）截止本法律意见书出具之日，持有发行人 5%以上（含）股份的股东不存在尚未了结的或可以合理预见的重大诉讼、仲裁案件或行政处罚事项。

（三）截止本法律意见书出具之日，发行人董事、监事、高级管理人员均不存在尚未了结的或可以合理预见的重大诉讼、仲裁或行政处罚案件。

## 二十二、发行人招股说明书法律风险的评价

发行人招股说明书（申报稿）与本所出具的法律意见书和律师工作报告无矛盾之处，招股说明书（申报稿）不致因引用本法律意见书和律师工作报告的内容而出现虚假记载、误导性陈述或重大遗漏。

## 二十三、需要说明的其他问题

（一）发行人已采取措施以保护公司的知识产权且有关保护措施是合法、合规、充分、有效的。

（二）公司、各分支机构已根据有关法律、法规和规范性文件的规定和要求，为员工缴纳养老保险、基本医疗保险、失业保险、工伤保险、生育医疗保险以及住房公积金。

**二十四、结论意见**

综上所述，本所对发行人本次发行上市发表总体结论性意见如下：

（一） 发行人符合《公司法》、《证券法》、《创业板首发办法》等法律、法规和规范性文件所规定的公开发行股票并在创业板上市的条件。

（二）发行人及发行人的控股股东、实际控制人的行为不存在违法、违规的情况。

（三）发行人在招股说明书（申报稿）中引用的法律意见书和律师工作报告的内容适当，招股说明书（申报稿）不致因引用法律意见书和律师工作报告的内容而出现虚假记载、误导性陈述或重大遗漏。

本律师工作报告正本六份。

法律意见书

（此页无正文，为《北京市中伦律师事务所关于厦门三五互联科技股份有限公司首次公开发行股票并在创业板上市的法律意见书》之签字盖章页）



北京市中伦律师事务所　　　负 责 人：　张学兵

经办律师：　赖继红

邹云坚

2009 年 7 月 24 日

北京市中伦律师事务所

关于厦门三五互联科技股份有限公司

首次公开发行股票并在创业板上市的

补充法律意见书（二）



中 伦 律 师 事 务 所
ZHONG LUN LAW FIRM

中国北京市建国门外大街甲 6 号 SK 大厦 36-37 层　　邮政编码:100022
36-37/F, SK Tower, 6A Jianguomenwai Avenue, Beijing 100022, People's Republic of China
电话/Tel: (8610) 5957-2288 传真/Fax: (8610) 6568-1022/1838
网址 http://www.zhonglun.com

北京市中伦律师事务所

关于厦门三五互联科技股份有限公司

首次公开发行股票并在创业板上市的

补充法律意见书（二）

**致：厦门三五互联科技股份有限公司**

北京市中伦律师事务所（以下简称"本所"）作为厦门三五互联科技股份有限公司（以下简称"公司"、"三五互联"或"发行人"）申请首次公开发行人民币普通股并在深圳证券交易所创业板上市（以下简称"本次发行上市"）聘请的法律顾问，就发行人本次发行上市出具了《北京市中伦律师事务所关于厦门三五互联科技股份有限公司首次公开发行股票并在创业板上市的法律意见书》（以下简称"原法律意见书"）、《北京市中伦律师事务所关于为厦门三五互联科技股份有限公司首次公开发行股票并在创业板上市出具法律意见书的律师工作报告》（以下简称"律师工作报告"）、《北京市中伦律师事务所关于厦门三五互联科技股份有限公司首次公开发行股票并在创业板上市的补充法律意见书》（以下简称"补充法律意见书"）。

2009 年 9 月 17 日，中国证券监督管理委员会(以下简称"中国证监会")就发行人本次发行上市的申请发出了《关于对厦门三五互联科技股份有限公司举报有关问题进行核查的函》(创业板信访核查函〔2009〕6 号)(以下简称"《信访核查函》")。为此，本所就《信访核查函》涉及的有关事宜出具本补充法律意见书〔 以下简称"补充法律意见书（二）" 〕，对原法律意见书、补充法律意见书和律师工作报告作出补充；对于原法律意见书、补充法律意见书和律师工作报告中未发生变化的内容，补充法律意见书（二）不再重复发表意见。

为出具补充法律意见书（二），本所根据《中华人民共和国公司法》、《中华人民共和国证券法》(以下简称"《证券法》")以及中国证监会发布的《首次公开发行股票并在创业板上市管理暂行办法》(以下简称"《创业板首发办法》")

等有关法律、法规和规范性文件的规定，在原法律意见书、补充法律意见书和律师工作报告所依据的事实的基础上，就出具补充法律意见书（二）所涉事实进行了补充调查，就有关事项向发行人作出了查询和询问，并与保荐人及发行人进行了讨论，并取得了相关的证明及文件。

补充法律意见书（二）中所使用的术语、名称、缩略语，除特别说明之外，与其在本所原法律意见书、补充法律意见书和律师工作报告中的含义相同。

本所承诺，本所已严格履行法定职责，遵循了勤勉尽责和诚实信用原则，对补充法律意见书（二）涉及的有关事宜进行了核查与验证，保证补充法律意见书（二）中不存在虚假记载、误导性陈述及重大遗漏。

本所根据《证券法》第二十条、第一百七十三条的要求，按照律师行业公认的业务标准、道德规范和勤勉尽责精神，在对公司提供的有关文件和事实进行了充分核查验证的基础上，现出具补充法律意见如下：

**一、报告期内实际控制人龚少晖转让所持 OnlineNic, Inc.（以下简称"OnlineNic 公司"）股权的具体情况，包括转让时间、转让价格、定价依据、受让方基本情况及其与发行人和实际控制人的关系、报告期内及目前 OnlineNic 公司与发行人的业务往来和关联关系。**

<u>核查过程：</u>

**1、OnlineNic 公司的基本情况**

OnlineNic 公司成立于 1999 年 10 月 6 日，注册地为美国加利福尼亚州。2007 年 11 月 28 日前，OnlineNic 公司由龚少晖 100％持有。

**2、OnlineNic 公司股权转让的情况**

2007 年 11 月 28 日，龚少晖与 Rex W. Liu 签署《股票购买协议》，约定龚少晖将 OnlineNic 公司的全部股权以 1 万美元的价格转让予 Rex W. Liu。美国律师事务所 Crone Rozynko LLP 出具意见，证明上述股权转让手续已于 2007 年 11 月 28 日完成。

2009 年 9 月 19 日，Rex W. Liu 出具书面声明如下：

（1）上述股权转让是真实的。Rex W. Liu 已向龚少晖支付股权转让款 1 万美元。该价款为 Rex W. Liu 自筹资金，来源合法。

（2）Rex W. Liu 与龚少晖或其亲属或主要社会关系不存在任何关联关系。

（3）Rex W. Liu 持有的 OnlineNic 公司的股权为 Rex W. Liu 依法拥有，不存在为任何人代持、或接受任何人信托的行为。

（4）Rex W. Liu 成为 OnlineNic 公司的股东后，已依法承担有关的股东责任。

**3、本次股权转让的背景**

根据原上市计划，三五互联曾计划于 2008 年年初向中国证监会递交首次公开发行股票并上市申请文件（深圳中小板），为此于 2007 年年底，三五互联需审慎考虑及厘清与关联方的关系。由于其时三五互联与 OnlineNic 公司均受龚少晖控制，且均从事域名注册业务，为避免潜在的同业竞争，三五互联需收购 OnlineNic 公司或龚少晖将其持有的 OnlineNic 公司股权全部转让予无关联的第三方。尽管 OnlineNic 公司的净利润不高，但营业收入较大，而当时《<首次公开发行股票并上市管理办法>第十二条 "发行人最近 3 年内主营业务没有发生重大变化" 的适用意见———证券期货法律适用意见[2008]第 3 号》尚未颁布，三五互联担心收购 OnlineNic 公司会延误上市计划，因此龚少晖决定将其持有的 OnlineNic 公司股权全部转让予无关联的第三方。

**4、作价依据**

上述股权转让作价 1 万美元，是综合考虑了以下因素：

（1）鉴于三五互联已于 2007 年 2 月取得 ICANN 认证的域名注册商资质，龚少晖考虑到 OnlineNic 公司的未来商业价值降低，且其在 OnlineNic 公司投入时间和精力所带来的收益会远低于其在国内业务上投入所获得的收益，因此龚少晖愿以 1 万美元转让 OnlineNic 公司的股权。

（2）在股权转让前，OnlineNic 公司未体现出较强的盈利能力，基于对未来预期的不明确，OnlineNic 公司股权的转让价格定价较低。

（3）股权转让时，龚少晖与 OnlineNic 公司约定三五互联将持续为 OnlineNic 公司提供域名技术服务，三五互联将持续获得服务收益。

（4）Rex W. Liu 自 2000 年起担任 OnlineNic 公司首席运营官，对 OnlineNic 公司的发展作出了贡献，因此在转让定价时，龚少晖酌情考虑了此因素，在转让价格上给予了 Rex W. Liu 一定优惠。

**5、受让方基本情况**

受让方 Rex W. Liu 为美国人，曾于日本东京明治大学主持研究项目、于美国 Job Corps 政府规划项目中任销售经理和区域协调员，并成功运营该项目中的互联网络。2000 年起任 OnlineNic 公司首席运行官。除在 OnlineNic 公司任职外，龚少晖与 Rex W. Liu 两人不存在任何关联关系。

**6、OnlineNic 公司与发行人的业务往来和关联关系**

报告期内及目前 OnlineNic 公司与发行人的业务往来及关联关系分为以下几个阶段：

| 时间段 | 业务往来内容 | 关联关系 |
|---|---|---|

| | | |
|---|---|---|
| 2006 年 1 月至 2007 年 2 月 | 1、精通科技代理 OnlineNic 公司在中国大陆市场的国际域名业务；<br><br>2、三五互联为 OnlineNic 公司提供域名技术服务。 | 同一实际控制人 |
| 2007 年 2 月至 2007 年 12 月 | 三五互联为 OnlineNic 公司提供域名技术服务。 | 同一实际控制人 |
| 2008 年 1 月迄今 | 三五互联为 OnlineNic 公司提供域名技术服务。 | 无关联关系 |

**经核查，本所认为：**

1、龚少晖、Rex W. Liu 有关 OnlineNic 公司的股权转让真实、合法、有效；

2、股权转让定价未损害任何第三方的利益；

3、龚少晖与 Rex W. Liu 不存在关联关系或者影响发行人本次发行上市的其他关系；

4、发行人与 OnlineNic 公司之间相互业务独立，发行人与 OnlineNic 公司之间的交易金额较小，对发行人财务状况及经营成果不构成重大影响。

**二、OnlineNic 公司的域名业务与发行人主要业务的关系，报告期内及目前发行人代理 OnlineNic 公司域名业务与客户之间是否存在争议或纠纷情况，如存在，对发行人经营运行及本次发行上市的具体影响。**

**核查过程：**

OnlineNic 公司的域名业务与发行人主要业务的关系如下表：

| | 发行人 | **OnlineNic 公司** | 关系 |
|---|---|---|---|
| **资质** | 1、国际域名注册商资质<br>2、国内域名注册商资质 | 国际域名注册商资质 | OnlineNic 公司先于发行人取得国际域名注册商资质 |

| 客户群体 | 国内客户 | 国外客户 | 无 |
|---|---|---|---|
| 域名种类 | 国际域名和国内域名 | 仅国际域名 | 国际域名种类基本相同 |

注：国际域名主要是指.com、.net、.org 等国际通用域名；国内域名主要是指中国的.cn 域名。

1999 年，OnlineNic 获得 ICANN 认证的顶级域名注册商资质，并开始从事针对境外客户的国际域名注册业务。随后精通科技成为 OnlineNic 的境内代理商，从事针对境内客户的国际域名注册业务。

2007 年 2 月，发行人取得 ICANN 认证的顶级域名注册商后，精通科技转为发行人的国际域名代理商，继续从事针对境内客户的国际域名注册业务。目前，OnlineNic 从事针对于境外客户的国际域名注册业务。

<u>经核查，本所认为：</u> 精通科技在代理 OnlineNic 公司域名业务时与客户之间不存在争议或纠纷情况。

**三、OnlineNic 公司被美国地方法庭判决赔偿 3320 万美元对实际控制人、对发行人经营运作及本次公开发行上市的具体影响，实际控制人直接或间接持有发行人的股份是否因此存在纠纷或潜在纠纷等风险隐患。**

<u>核查</u>过程：

2008 年 6 月 6 日，Verizon 公司认为 OnlineNic 公司代理客户注册了至少 663 个与"Verizon"域名相类似的域名，遂在美国地方法庭起诉 OnlineNic 公司。由于 OnlineNic 公司股东、负责人 Rex W. Liu 的联系地址变更未及时更新，未收到有关开庭传票。美国地方法庭缺席审讯并于 2008 年 12 月 19 日作出判决：（1）按每个域名造成 50,000 美元损失计算，判令 OnlineNic 公司赔偿 Verizon 公司 3,315 万美元；（2）OnlineNic 公司将与"Verizon"域名相类似的域名转给 Verizon 公司；（3）禁止 OnlineNic 公司注册与"Verizon"域名相类似的域名。

目前 OnlineNic 公司已提起进一步诉讼。

经核查，无精通科技代理的域名注册客户牵涉到上述诉讼事件。

**经核查，本所认为：**

OnlineNic 公司为有限责任公司，其股东应承担有限责任。2007 年 11 月 28 日，龚少晖将其持有的 OnlineNic 公司全部股权转让予 Rex W. Liu 后，龚少晖、发行人与 OnlineNic 公司均无关联关系。发行人及其子公司目前业务均独立于 OnlineNic 公司。因此 OnlineNic 公司于 2008 年 6 月遭受诉讼的事项不会对发行人实际控制人、发行人经营运作及本次公开发行上市构成影响，龚少晖直接或间接持有发行人的股份不会因此存在纠纷或潜在纠纷等风险隐患。上述诉讼事项与龚少晖、发行人均无任何直接或间接关系，龚少晖、发行人均不会因此承担任何赔偿责任。

补充法律意见书（二）正本五份。

补充法律意见书（二）

（此页无正文，为《北京市中伦律师事务所关于厦门三五互联科技股份有限公司首次公开发行股票并在创业板上市的补充法律意见书（二）》之签字盖章页）



负责人：　张学兵

经办律师：
　　　　　赖继红

　　　　　邹云坚

2009 年 9 月 20 日

补充法律意见书

北京市中伦律师事务所

关于厦门三五互联科技股份有限公司

首次公开发行股票并在创业板上市的

补充法律意见书（三）



中国北京市建国门外大街甲 6 号 SK 大厦 36-37 层　　邮政编码:100022

36-37/F, SK Tower, 6A Jianguomenwai Avenue, Beijing 100022, People's Republic of China

电话/Tel: (8610) 5957-2288　传真/Fax: (8610) 6568-1022/1838

网址 http://www.zhonglun.com

<br>

北京市中伦律师事务所

关于厦门三五互联科技股份有限公司

首次公开发行股票并在创业板上市的

补充法律意见书（三）

**致：厦门三五互联科技股份有限公司**

北京市中伦律师事务所（以下简称"本所"）作为厦门三五互联科技股份有限公司（以下简称"公司"、"三五互联"或"发行人"）申请首次公开发行人民币普通股并在深圳证券交易所创业板上市（以下简称"本次发行上市"）聘请的法律顾问，就发行人本次发行上市出具了《北京市中伦律师事务所关于厦门三五互联科技股份有限公司首次公开发行股票并在创业板上市的法律意见书》（以下简称"原法律意见书"）、《北京市中伦律师事务所关于为厦门三五互联科技股份有限公司首次公开发行股票并在创业板上市出具法律意见书的律师工作报告》（以下简称"律师工作报告"）、《北京市中伦律师事务所关于厦门三五互联科技股份有限公司首次公开发行股票并在创业板上市的补充法律意见书》（以下简称"补充法律意见书"）以及《北京市中伦律师事务所关于厦门三五互联科技股份有限公司首次公开发行股票并在创业板上市的补充法律意见书（二）》〔以下简称"补充法律意见书（二）"〕。

本所现就美国 OnlineNIC, Inc.（以下简称"OnlineNIC"）有关事宜出具本补充法律意见书〔以下简称"补充法律意见书（三）"〕，对原法律意见书、补充法律意见书、补充法律意见书（二）和律师工作报告作出补充；对于原法律意见书、补充法律意见书、补充法律意见书（二）和律师工作报告中未发生变化的内容，补充法律意见书（三）不再重复发表意见。

为出具补充法律意见书（三），本所根据《中华人民共和国公司法》、《中华人民共和国证券法》（以下简称"《证券法》"）以及中国证监会发布的《首次公开发行股票并在创业板上市管理暂行办法》（以下简称"《创业板首发办法》"）等有关法律、法规和规范性文件的规定，在原法律意见书、补充法律意见书、补充法律

意见书（二）和律师工作报告所依据的事实的基础上，就出具补充法律意见书（三）所涉事实进行了补充调查，就有关事项向发行人作出了查询和询问，并与保荐人及发行人进行了讨论，并取得了相关的证明及文件。

补充法律意见书（三）中所使用的术语、名称、缩略语，除特别说明之外，与其在本所原法律意见书、补充法律意见书、补充法律意见书（二）和律师工作报告中的含义相同。

本所承诺，本所已严格履行法定职责，遵循了勤勉尽责和诚实信用原则，对补充法律意见书（三）涉及的有关事宜进行了核查与验证，保证补充法律意见书（三）中不存在虚假记载、误导性陈述及重大遗漏。

本所根据《证券法》第二十条、第一百七十三条的要求，按照律师行业公认的业务标准、道德规范和勤勉尽责精神，在对公司提供的有关文件和事实进行了充分核查验证的基础上，现出具补充法律意见如下：

**一、OnlineNIC 的基本情况，股权转让的情况、股权转让的背景、作价依据、受让方基本情况、OnlineNIC 与发行人的业务往来和关联关系。**

**核查过程：**

**（一）OnlineNIC 的基本情况**

OnlineNIC 成立于 1999 年 10 月 6 日，注册地为美国加利福尼亚州。2007 年 11 月 28 日前，OnlineNIC 由龚少晖 100％持有。

OnlineNIC 为经 ICCAN 授权的国际域名顶级注册商，从事国际域名注册业务，主要是通过代理商销售。其代理商及市场主要在中国大陆境外。2005 年至 2007 年，OnlineNIC 的主要财务数据如下：

单位：万美元

| 项目 | 2005 年末/<br>2005 年度 | 2006 年/<br>2006 年度 | 2007 年/<br>2007 年度 |
|---|---|---|---|
| 总资产 | 20.02 | 76.83 | 98.30 |
| 净资产 | -5.47 | 7.68 | 10.72 |

| 营业收入 | 496.81 | 584.89 | 659.98 |
|---|---|---|---|
| 毛利额 | 32.77 | 28.51 | 28.12 |
| 净利润 | 2.43 | 12.58 | 2.57 |

## （二）OnlineNIC 股权转让的情况

2007 年 11 月 28 日，龚少晖与 Rex W. Liu 签署《股票购买协议》，约定龚少晖将 OnlineNIC 的全部股权以 1 万美元的价格转让予 Rex W. Liu。根据美国律师事务所 Crone Rozynko LLP 的核验，上述股权转让手续已于 2007 年 11 月 28 日完成。

## （三）本次股权转让的背景

根据原上市计划，发行人曾计划于 2008 年年初向中国证监会递交首次公开发行股票并在深圳中小板上市申请文件，由于其时发行人与 OnlineNIC 均受龚少晖控制，且均从事域名注册业务，为避免潜在的同业竞争，发行人需在 2007 年底前厘清与 OnlineNIC 的关系。

基于下述原因，龚少晖先生选择向无关联第三方转让 OnlineNIC 的全部股权：（1）美国市场与国内市场是完全不同的市场， OnlineNIC 复制发行人业务模式可能性较小，未来的发展空间有限；（2）OnlineNIC 的业务为域名注册业务，客户主要为国外客户，与发行人目前以企业邮箱等高附加值业务为主的经营模式不存在协同效应，如果由发行人收购 OnlineNIC，发行人的收入结构、盈利模式、盈利水平都将产生重大变化；（3）《<首次公开发行股票并上市管理办法>第十二条"发行人最近 3 年内主营业务没有发生重大变化"的适用意见———证券期货法律适用意见[2008]第 3 号》在 2007 年底时尚未颁布，OnlineNIC 的营业收入金额较高，收购可能会导致发行人业绩连续计算存在一定的风险。

由于龚少晖长期在国内生活，不了解美国市场情况，难以在美国履行公开询价等程序，在 OnlineNIC 股权转让时间要求较高的情况下，龚少晖选择了有收购意愿同时又了解公司情况的 Rex W. Liu 作为收购方。

（四）作价依据

截止 2007 年底，OnlineNIC 的净资产为 10.72 万美元，上述股权转让作价 1 万美元，综合考虑了以下因素：

1、鉴于发行人已于 2007 年 2 月取得 ICANN 认证的域名注册商资质，OnlineNIC 的未来商业价值降低；

2、OnlineNIC 仅从事域名注册业务，盈利能力不强；

3、股权转让时，Rex W. Liu 由于刚购置了物业，短期支付能力有限，考虑到 Rex W. Liu 自 2000 年起担任 OnlineNIC 首席运营官，对 OnlineNIC 的发展作出了贡献，且一直收入不高，因此在转让定价时，龚少晖酌情考虑了此因素，在转让价格上给予了 Rex W. Liu 一定优惠；

4、Rex W. Liu 长期管理 OnlineNIC，了解公司情况。转让 OnlineNIC 股权予 Rex W. Liu，省却了股权转让过程中可能涉及的中介机构费用；

5、股权转让时，龚少晖与 OnlineNIC 约定发行人将持续为 OnlineNIC 提供域名技术服务，发行人将持续获得服务收益。

（五）受让方基本情况

受让方 Rex W. Liu 为美国人，2000 年起任 OnlineNIC 首席运行官。Rex W. Liu 曾于日本东京明治大学主持研究项目、于美国 Job Corps 政府规划项目中任销售经理和区域协调员，并成功运营该项目中的互联网络。

据本所核查，除在 OnlineNIC 任职外，龚少晖与 Rex W. Liu 及其主要亲属之间均不存在任何关联关系。

2009 年 9 月 19 日，Rex W. Liu 亦出具书面声明如下：

1、上述股权转让是真实的。Rex W. Liu 已向龚少晖支付股权转让款 1 万美元。该价款为 Rex W. Liu 自筹资金，来源合法。

2、Rex W. Liu 与龚少晖或其亲属或其主要社会关系不存在任何关联关系。

3、Rex W. Liu 持有的 OnlineNIC 的股权为 Rex W. Liu 依法拥有，不存在为任何人代持、或接受任何人信托的行为。

4、Rex W. Liu 成为 OnlineNIC 的股东后，已依法承担有关的股东责任。

**（六）OnlineNIC 与发行人的业务往来和关联关系**

报告期内及目前 OnlineNIC 与发行人的业务往来及关联关系分为以下几个阶段：

| 时间段 | 业务往来内容 | 关联关系 |
|---|---|---|
| 2006 年 1 月至 2007 年 2 月 | 1、精通科技代理 OnlineNIC 在中国大陆市场的国际域名业务；<br>2、发行人为 OnlineNIC 提供域名技术服务。 | 同一实际控制人 |
| 2007 年 3 月至 2007 年 12 月 | 发行人为 OnlineNIC 提供域名技术服务。 | 同一实际控制人 |
| 2008 年 1 月迄今 | 发行人为 OnlineNIC 提供域名技术服务。 | 无关联关系 |

报告期内及目前，OnlineNIC 与发行人的交易情况如下：

| | 2006 年 | 2007 年 | 2008 年 | 2009 年上半年 | 2009 年 7－8 月 |
|---|---|---|---|---|---|
| 涉交交易金额 | 64.8 万元 | 93.6 万元 | 172.32 万元 | 82.2 万元 | 27.4 万元 |
| 占发行人当期营业收入的比例 | 0.81% | 0.96% | 1.49% | 1.42% | 1.3% |

**经核查，本所认为：**

1、龚少晖、Rex W. Liu 有关 OnlineNIC 的股权转让真实、合法、有效；

2、龚少晖与 Rex W. Liu 不存在关联关系或者影响发行人本次发行上市的其他关系；

3、发行人与 OnlineNIC 之间业务相互独立，发行人与 OnlineNIC 之间相关服务的交易金额较小，对发行人财务状况及经营成果不构成重大影响。

**二、OnlineNIC 的域名业务与发行人主要业务的关系，报告期内及目前发行人代理 OnlineNIC 域名业务与客户之间不存在争议或纠纷。**

**核查过程：**

OnlineNIC 的域名业务与发行人主要业务的关系如下表：

|  | 发行人 | OnlineNIC | 关系 |
|---|---|---|---|
| 资质 | 1、国际域名注册商资质<br>2、国内域名注册商资质 | 国际域名注册商资质 | OnlineNIC 先于发行人取得国际域名注册商资质 |
| 客户群体 | 国内客户 | 国外客户 | 无 |
| 域名种类 | 国际域名和国内域名 | 仅国际域名 | 国际域名种类基本相同 |

注：国际域名主要是指.com、.net、.org 等国际通用域名；国内域名主要是指中国的.cn 域名。

1999 年，OnlineNIC 获得 ICANN 认证的顶级域名注册商资质，并开始从事针对境外客户的国际域名注册业务。随后精通科技成为 OnlineNIC 的境内代理商，从事针对境内客户的国际域名注册业务。

2007 年 2 月，发行人取得 ICANN 认证的顶级域名注册商后，精通科技转为发行人的国际域名代理商，继续从事针对境内客户的国际域名注册业务。目前，OnlineNIC 仅从事针对于境外客户的国际域名注册业务。

<u>经核查，本所认为：</u> 精通科技在代理 OnlineNIC 域名业务时与客户之间不存在争议或纠纷情况。

### 三、OnlineNIC 的有关诉讼情况

#### （一）Verizon 起诉 OnlineNIC 有关情况

<u>核查过程：</u>

1、诉讼起因

2008 年 6 月 6 日，原告 Verizon California Inc.（"Verizon"）认为被告 OnlineNIC 代理客户注册了至少 663 个与"Verizon"域名相类似的域名，遂在美国地方法院加利福尼亚州北区法庭（以下称"美国法院"）起诉 OnlineNIC。

2、判决情况

由于 OnlineNIC 股东、负责人 Rex W. Liu 的联系地址变更未及时更新，未收到有关开庭传票。美国法院缺席审判并于 2008 年 12 月 19 日作出判决：（1）按每个域名造成 50,000 美元损失计算，判令 OnlineNIC 赔偿 Verizon3,315 万美元；（2）OnlineNIC 将与"Verizon"域名相类似的域名转给 Verizon；（3）禁止 OnlineNIC 注册与"Verizon"域名相类似的域名。

### 3、判决履行情况

根据美国律师的声明，该侵权行为是代理商所为，根据美国域名管理有关规定及以往案例，注册商只要能证明侵权为代理商所为，通常无需承担赔偿责任。Verizon 是美国第一大本土电话公司和第二大电信服务商，2006 年营业额达 900 亿美元（引自"MBA 智库百科"），OnlineNIC 经营规模较小，Verizon 起诉 OnlineNIC 的主要目的是为了及时阻止域名侵权行为并收回有关域名而非获得相应数额的经济赔偿。由此，2009 年 10 月 4 日，OnlineNIC 和 Verizon 就该案签署了《和解协议》，同时，Verizon 要求对赔偿数额等严格保密。

根据《和解协议》的规定，OnlineNIC 将向 Verizon 支付一笔款项作为该案判决的履行，而 Verizon 将免除 OnlineNIC、其雇员、股东以及关联公司（"被免责方"）与该案有关的 2009 年 10 月 4 日之前产生的所有被索赔项。

2009 年 10 月 19 日，OnlineNIC 根据《和解协议》的约定向 Verizon 支付了相关款项并履行相关义务，《和解协议》得到执行。由于《和解协议》中存在保密条款，本所未获知具体的赔偿金额及相关义务。

2009 年 11 月 2 日，原告 Verizon 的代理律师 David J. Steele 和 Howard A. Kroll 向美国法院提交《判决的履行情况》，声明"Verizon 已接受 OnlineNIC 的款项或履行，并放弃上述判决给予的权利，上述判决已完全履行"。

### 4、本所核查了以下文件／进行了以下核查工作

#### （1）美国律师 Perry J. Narancic 出具的声明

2009 年 11 月 23 日，美国律师 Perry J. Narancic 出具《Perry J. Narancic 的声明》，主要内容如下：

（i）其在 Verizon 诉 OnlineNIC 一案为法庭记录在案的 OnlineNIC 的律师；

（ii）OnlineNIC 和 Verizon 已就本案签署了《和解协议》。根据《和解协议》

的约定，OnlineNIC 将向 Verizon 支付一笔款项作为本案判决的履行，而 Verizon 将免除 OnlineNIC、其雇员、股东以及关联公司（"被免责方"）与本案有关的 2009 年 10 月 4 日之前产生的所有被索赔项；

（iii）《和解协议》约定了保密条款，其表述为"双方应对本协议的条款严格保密。如果需要出具本《和解协议》，需要出具本《和解协议》的一方，应在收到《强制出具通知》后 3 天内将该通知提交给另一方，另外，进行披露一方应尽量让该《和解协议》不被披露或者限制其披露予相关的法庭或审判庭。双方可陈述该案已和解，亦可使用已公布的记录"。根据美国法律的规定，只有美国法庭出具的命令方可强制《和解协议》的出具；

（iv）OnlineNIC 已根据《和解协议》的约定履行其义务，包括支付了约定的款项；

（v）根据《和解协议》的约定，Verizon 向法院提交了《判决的履行情况》，在该《判决的履行情况》中，Verizon 声明：①Verizon 已接受 OnlineNIC 支付的款项和履行义务；②Verizon 诉 OnlineNIC 一案判决已全部得到履行。由此，Verizon 免除了 OnlineNIC 及被免责方 2009 年 10 月 4 日之前产生的所有被索赔项，包括与本案有关的诉求；

（vi）其确认 OnlineNIC 于 2009 年 10 月 19 日自行支付和解款项完毕；

（vii）其仔细地审查了有关本案的证据，包括 OnlineNIC 的运营数据库。在此审查基础上，其得出结论：本案所宣称的侵权行为由 OnlineNIC 的代理商所为。

上述美国律师 Perry J. Narancic 的声明及其附件，即美国地方法庭存档的《判决的履行情况》，均已在美国履行了相应的公证、认证手续。

**（2）对 Perry J. Narancic 身份的核查**

2009 年 10 月 21 日，加利福尼亚州律师协会出具《身份证明》，证明 Perry J. Narancic 为加利福尼亚州律师。该证明已在美国履行了相应的公证、认证手续。

本所已登录美国加利福尼亚州律师协会的官方网站进行核查，其上记载 Perry J. Narancic 是加利福尼亚州律师协会会员律师，会员编号 206820。

**（3）对美国地方法院网站有关内容核查**

本所律师登录美国地方法院的官方网站（https://ecf.cand.uscourts.gov）对本案进行核查并确认：（i）上述《判决的履行情况》为本案原告向美国法院提交的、经美国法院认可并存档的有效法律文件；（ii）原告 Verizon 的律师为 David J.

Steele 和 Howard A. Kroll；（iii）被告 OnlineNIC 的律师为 Perry J. Narancic；（iv）OnlineNIC 已根据《和解协议》的约定支付了款项，本案判决经已履行完毕。

**（4）无关联关系的美国律师的独立核查文件**

本所聘请了美国律师 Anne-Marie Dinius 对本案进行独立的核查。根据其核查，Anne-Marie Dinius 出具声明确认：（i）《和解协议》约定了保密条款，其表述为"双方应对本协议的条款严格保密。如果需要出具本《和解协议》，需要出具本《和解协议》的一方，应在收到《强制出具通知》后 3 天内将该通知提交给另一方，另外，进行披露一方应尽量让该《和解协议》不被披露或者限制其披露予相关的法庭或审判庭。双方可陈述该案已和解，亦可使用已公布的记录"。（ii）根据美国法律的规定，只有美国法庭出具的命令方可强制《和解协议》的出具。

美国律师 Anne-Marie Dinius 上述声明已在美国履行了相应的公证、认证手续。

**（5）和解款项的支付**

根据 OnlineNIC 律师的上述陈述，上述和解款项由 OnlineNIC 于 2009 年 10 月 19 日自行支付完毕。

根据发行人、发行人控股股东龚少晖先生的陈述，并经本所核查，发行人和龚少晖均没有海外账户，亦未支付或协助 OnlineNIC 支付上述和解款项。

本所核查了发行人、精通科技 2009 年 1 月 1 日至 2009 年 11 月 30 日的银行海外付款记录共 72 笔，均为发行人、精通科技因正常业务经营而付给名供应商的款项，未发现有其他不明汇款或支出。

**<u>基于上述对 Verizon 诉 OnlineNIC 一案核查，本所确认：</u>**

1、发行人向中国证监会提交的英文文件在美国所作的公证和认证手续完备，符合在外国形成的法律文件在中国使用所必需的公证和认证程序要求，相关文件真实、有效；

2、发行人向中国证监会提交的英文文件的中文翻译件内容与英文原件内容一致；

3、Perry J. Narancic 身份为本案中 OnlineNIC 方的美国代理律师；

4、本案双方签署了《和解协议》，OnlineNIC 已按照协议约定于 2009 年 10 月 19 日自行向 Verizon 足额支付和解款项完毕，不存在发行人、精通科技或龚少

晖支付或协助支付和解款项的情形；

5、Verizon 已向法院提交《判决的履行情况》，声明判决已完全履行，该案已得到彻底解决，不会对 OnlineNIC 及其股东、关联方产生后续影响及潜在风险。

## （二）Yahoo! Inc 公司起诉 OnlineNIC 有关情况

### 核查过程：

### 1、诉讼起因

2008 年 12 月 19 日，原告 Yahoo! Inc 公司（"Yahoo"）认为被告 OnlineNIC 代理客户注册了至少 544 个与"yahoo"域名相类似的域名，遂在美国法院起诉 OnlineNIC，要求 OnlineNIC 转让所有涉嫌侵权的域名给 Yahoo，并给予赔偿。

### 2、诉讼解决情况

美国法院收到起诉书后通知 OnlineNIC 答辩。OnlineNIC 与 Yahoo 及时进行了沟通并向 Yahoo 提交有关文件，证明侵权行为主要由其代理商所为，该证明文件得到 Yahoo 的认可。由此，2009 年 10 月 4 日，Yahoo 和 OnlineNIC 签署了《和解协议》，OnlineNIC 向 Yahoo 履行了相关义务后，美国法院于 2009 年 10 月 22 日出具《撤回判决》，判令 Yahoo 诉 OnlineNIC 一案"撤回原告本案之诉求，且不得另行起诉。"

### 3、本所核查了以下文件／进行了以下核查工作

### （1）美国律师 Perry J. Narancic 出具的声明

美国律师 Perry J. Narancic 在本案中代理 OnlineNIC，其于 2009 年 11 月 23 日出具声明，主要内容如下：

（i）其在本案中担任 OnlineNIC 的代理律师。

（ii）Yahoo 和 OnlineNIC 已于 2009 年 10 月 4 日就本案签署了《和解协议》。根据和解协议的约定，OnlineNIC 将向 Yahoo 履行某些义务，而 Yahoo 将撤回起诉且不再以同一事宜重新起诉，并免除 OnlineNIC、其雇员、股东以及关联公司（"被免责方"）所有可能于 2009 年 10 月 4 日之前产生的、与域名注册有关的所有被索赔项，包括本案的索赔项。

（iii）《和解协议》约定了保密条款，其表述为"双方应对本协议及其条款严格保密。双方仅可陈述该案已和解。但是，如果被强制要求需要出具本《和解协议》，需要出具本《和解协议》的一方，应在披露前通知另一方，以便让另一方有机会向有关法庭或审判庭提出反对或异议。需披露一方应尽量让该《和解协议》不受披露或者限制其披露予相关的法庭或审判庭"。根据美国法律的规定，只有美国法庭出具的命令方可强制《和解协议》的出具。

（iv）OnlineNIC 已履行其义务以符合 Yahoo 的撤诉要求。

（v）OnlineNIC 已根据《和解协议》的约定履行其义务，由此，Yahoo 向法庭提交撤诉的动议，撤回其有关本案的全部索赔项。2009 年 10 月 22 日，法庭颁发判令，撤回 Yahoo 的起诉且不得另行起诉。根据美国法律的规定，一旦起诉撤回且不得另行起诉，Yahoo 不得就同一事实再起诉 OnlineNIC。Yahoo 亦免除 OnlineNIC 以及被免责方所有可能于 2009 年 10 月 4 日之前产生的、与域名注册有关的所有被索赔项，包括本案的索赔项。

美国律师 Perry J. Narancic 的上述声明已在美国履行了相应的公证、认证手续。

**（2）对美国地方法院网站有关内容核查**

本所律师登录美国法院官方网站（https://ecf.cand.uscourts.gov）对本案进行核查并确认：（i）上述《撤回判决》为美国法院存档的、由美国法院签署的有效法律文件；（ii）Perry J. Narancic 在本案中代理 OnlineNIC；以及（iii）美国法院已撤回本案原告之诉求，且原告不得另行起诉。

**（3）无关联关系的美国律师的独立核查文件**

本所聘请了美国律师 Anne-Marie Dinius 对 Yahoo 诉 OnlineNIC 一案进行独立的核查。根据其核查，Anne-Marie Dinius 确认：（i）《和解协议》约定了保密条款，其表述为"双方应对本协议的条款严格保密。如果需要出具本《和解协议》，需要出具本《和解协议》的一方，应在收到《强制出具通知》后 3 天内将该通知提交给另一方，另外，本《和解协议》的一方应尽量让该《和解协议》不受披露或者限制其披露予相关的法庭或审判庭。双方可陈述该案已和解，亦可使用已公布的记录"。（ii）根据美国法律的规定，只有美国法院出具的命令方可强制《和解协议》的出具。

美国律师 Anne-Marie Dinius 的上述声明已在美国履行了相应的公证、认证手

续。

**基于上述对 Yahoo 诉 OnlineNIC 一案核查，本所确认：**

1、发行人向中国证监会提交的英文文件在美国所作的公证和认证手续完备，符合在外国形成的法律文件在中国使用所必需的公证和认证程序要求，相关文件真实、有效；

2、发行人向中国证监会提交的英文文件的中文翻译件内容与英文原件内容一致；

3、在本案中，Perry J. Narancic 是 OnlineNIC 的代理律师；

4、本案双方签署了《和解协议》，OnlineNIC 已按照《和解协议》的约定履行了义务，Yahoo 的起诉已撤回且不得另行起诉，该案已得到彻底解决，不会对 OnlineNIC 及其股东、关联方产生后续影响及潜在风险。

**（三）经全面地、审慎地核查 OnlineNIC 在美国的上述两宗诉讼，本所认为：**

1、Verizon 诉 OnlineNIC 一案：（1）OnlineNic 公司为有限责任公司，其股东 Rex 承担有限责任；（2）OnlineNIC 已自行支付所有和解款项并履行了有关义务，不存在发行人、精通科技或龚少晖支付或协助支付和解款项的情形；（3）Verizon 已明确放弃美国法院 2008 年 12 月 19 日判决所规定的其对 OnlineNIC 的权利，本案的判决已履行完毕，该案已得到彻底解决，不会对 OnlineNIC 及其股东、关联方产生后续影响及潜在风险。

2、Yahoo 诉 OnlineNIC 一案：（1）OnlineNIC 已履行了有关义务；（2）本案已撤回且不得另行起诉，该案已得到彻底解决，不会对 OnlineNIC 及其股东、关联方产生后续影响及潜在风险。

3、发行人及其控股股东龚少晖与上述诉讼均无任何关系，不会因此承担任何赔偿责任，龚少晖直接或间接持有发行人的股份不会因此存在纠纷或潜在纠纷等风险隐患，发行人业务经营及本次发行上市不会因此受到任何影响。

本补充法律意见书（三）正本五份。

（此页无正文，为《北京市中伦律师事务所关于厦门三五互联科技股份有限公司首次公开发行股票并在创业板上市的补充法律意见书（三）》之签字盖章页）

北京市中伦律师事务所　　　　　　负责人：　　张学兵

经办律师：　　――――――――――

赖继红

――――――――――

邹云坚

――――――――――

2009 年 12 月 3 日

Exhibit E

Exhibit F

Perry J. Narancic, SBN 206820
LEXANALYTICA, PC
2225 E. Bayshore Road, Suite 200
Palo Alto, CA  94303
www.lexanalytica.com
pjn@lexanalytica.com
Tel: 650-655-2800

Attorneys for Defendants
ONLINENIC, INC. and DOMAIN ID SHIELD SERVICE
CO., LIMITED

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC<br><br>        Plaintiffs,<br><br>    v.<br><br>ONLINENIC, INC. and DOMAIN ID SHIELD SERVICE CO., LIMITED.<br><br>       Defendants. | Case No. 19-CV-07071-SVK<br><br>**FIRST SUPPLEMENTAL RESPONSE OF ONLINENIC, INC. TO REQUESTS FOR PRODUCTION OF DOCUMENTS PROPUNDED BY FACEBOOK, INC. AND INSTAGRAM, LLC.** |

PROPOUNDING PARTY:      Facebook, Inc. and Instagram, LLC

RESPONDING PARTY:      OnlineNIC, Inc.

SET NO.:      One (1)


    Defendant OnlineNIC, Inc. ("OnlineNIC") hereby responds to the Request for Production of Documents propounded by Facebook, Inc. and Instagram, LLC (together, the "Plaintiffs") as follows:

PRELIMINARY STATEMENT

    A.    The specific responses as set forth below are for the purposes of discovery only and OnlineNIC does not intend to waive, but expressly reserves, any and all objections and may have

Defendant objects to this Request as overbroad and unduly burdensome, as it is not limited in time or scope, and thus it is not proportional to the needs of the case.  Specifically, Defendant has been in business for over 20 years, and as such, has collected millions of records over the years, including a database with millions of records, and tens of thousands of emails and support tickets.   The burden and expense of having to review every record to ensure that "All Documents" have been produced outweighs any potential relevancy of such records.  Subject to these objections, Defendant has conducted a search in the Database Records, and in emails and support tickets, and at Bates OnlineNIC252186-OnlineNIC258330,  OnlineNIC000001-70, OnlineNIC266918-266947, OnlineNIC268299 – 268773, OnlineNIC267164-OnlineNIC267167. Additional responsive documents exist in the Keyword Dataset, which has been produced in searchable format OnlineNIC is not aware of other responsive records within its possession, custody or control being withheld on the basis of any objection herein.

**REQUEST FOR PRODUCTION NO. 14:**

All contracts, agreements, and/or any other written understanding between ONLINENIC and DOMAIN ID SHIELD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14**

No responsive documents.

**REQUEST FOR PRODUCTION NO. 15:**

All contracts, agreements, and/or any other written understanding between DOMAIN ID SHIELD and any United States entity.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15**

Responsive documents are located in the Database Records, and at OnlineNic266948 – 266955.

**REQUEST FOR PRODUCTION NO. 16:**

All DOCUMENTS relating to the relationship between DOMAIN ID SHIELD and any California entity.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16**

Responsive documents are located in the Database Records, and at ONLINENIC266948 –

produced.

**REQUEST FOR PRODUCTION NO. 151:**

All DOCUMENTS that IDENTIFY internal or external policies, procedures, or best practices to deter cybersquatting by ONLINENIC since 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 151**

*See* Bates numbers OnlineNIC267195 – OnlineNIC267201, as well as the policies and procedures that are evidenced in the business operations set forth in the Keyword Dataset.

**REQUEST FOR PRODUCTION NO. 152:**

All DOCUMENTS that IDENTIFY internal or external policies, procedures, or best practices to deter cybersquatting by DOMAIN ID SHIELD since 2010.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 152**

No responsive documents.

As to Objections.

Respectfully Submitted,

DATED:  July 23, 2020

LEXANALYTICA, PC

By:  _____

Attorneys for Defendants
ONLINENIC, INC. and DOMAIN ID SHEILD
SERVICE CO., LIMITED

- 57 -

Perry J. Narancic, SBN 206820
LEXANALYTICA, PC
2225 E. Bayshore Road, Suite 200
Palo Alto, CA 94303
www.lexanalytica.com
pjn@lexanalytica.com
Tel: 650-655-2800

Attorneys for Defendants
ONLINENIC, INC. and DOMAIN ID SHIELD SERVICE
CO., LIMITED

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC<br><br>        Plaintiffs,<br><br>v.<br><br>ONLINENIC, INC. and DOMAIN ID SHIELD SERVICE CO., LIMITED.<br><br>        Defendants. | Case No. 19-CV-07071-SVK<br><br>**ONLINENIC, INC.'S FIRST AMEDNED RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION** |

PROPOUNDING PARTY:      Facebook, Inc. and Instagram, LLC

RESPONDING PARTY:      OnlineNIC, Inc.

SET NO.:      One (1)

    Defendant OnlineNIC, Inc. ("OnlineNIC") hereby responds to the Requests for Admission, Set One propounded by Facebook, Inc. and Instagram, LLC (together, the "Plaintiffs") as follows:

PRELIMINARY STATEMENT

    A.    The specific responses as set forth below are for the purposes of discovery only and OnlineNIC does not intend to waive, but expressly reserves, any and all objections and may have to the relevance, competence, materiality, admissibility or use at trial of any information,

- 1 -

Facebook, Inc. v. OnlineNIC, Inc.               Case No. 19-cv-7071-SVK
OnlineNIC, Inc.'s First Amended Responses to Plaintiffs' Requests for Admission – Set 1

Admitted.

**REQUEST FOR ADMISSION NO. 25:**

Admit that 35.CN has a controlling interest in ONLINENIC.

**RESPONSE TO REQUEST NO. 25**

Denied.

**REQUEST FOR ADMISSION NO. 26:**

Admit that 35.CN has a controlling interest in DOMAIN ID SHIELD.

**RESPONSE TO REQUEST NO. 26**

Denied.

**REQUEST FOR ADMISSION NO. 27:**

Admit that at least one officer of 35.CN is an officer of ONLINENIC.

**RESPONSE TO REQUEST NO. 27**

Denied.

**REQUEST FOR ADMISSION NO. 28:**

Admit that at least one officer of 35.CN is an officer of DOMAIN ID SHIELD.

**RESPONSE TO REQUEST NO. 28**

Denied.

**REQUEST FOR ADMISSION NO. 29:**

Admit that at least one employee of 35.CN is an officer of ONLINENIC.

**RESPONSE TO REQUEST NO. 29**

Admitted.

**REQUEST FOR ADMISSION NO. 30:**

Admit that at least one employee of 35.CN is an officer of DOMAIN ID SHIELD.

**RESPONSE TO REQUEST NO. 30**

Denied.

**REQUEST FOR ADMISSION NO. 31:**

Admit that at least on employee of 35.CN is an employee of ONLINENIC.

**RESPONSE TO REQUEST NO. 31**

**RESPONSE TO REQUEST NO. 122**

Denied.

**REQUEST FOR ADMISSION NO. 123:**

Admit that ONLINENIC USES the domain name m-facebook-login.com.

**RESPONSE TO REQUEST NO. 123**

Denied.

**REQUEST FOR ADMISSION NO. 124:**

Admit that ONLINENIC USES the domain name singin-lnstargram.com.

**RESPONSE TO REQUEST NO. 124**

Denied.

**REQUEST FOR ADMISSION NO. 125:**

Admit that DOMAIN ID SHIELD is the REGISTRANT of the domain name hackingfacebook.net.

**RESPONSE TO REQUEST NO. 125**

Denied.

**REQUEST FOR ADMISSION NO. 126:**

Admit that DOMAIN ID SHIELD is the REGISTRANT of the domain name facebook-fans-buy.com.

**RESPONSE TO REQUEST NO. 126**

Denied.

**REQUEST FOR ADMISSION NO. 127:**

Admit that DOMAIN ID SHIELD is the REGISTRANT of the domain name facebook-mails.com.

**RESPONSE TO REQUEST NO. 127**

Denied.

**REQUEST FOR ADMISSION NO. 128:**

Admit that DOMAIN ID SHIELD is the REGISTRANT of the domain name facebook-pass.com.

**RESPONSE TO REQUEST NO. 128**

Denied.

**REQUEST FOR ADMISSION NO. 129:**

Admit that DOMAIN ID SHIELD is the REGISTRANT of the domain name facebook-pw.com.

**RESPONSE TO REQUEST NO. 129**

Denied.

**REQUEST FOR ADMISSION NO. 130:**

Admit that DOMAIN ID SHIELD is the REGISTRANT of the domain name facebookphysician.com.

**RESPONSE TO REQUEST NO. 130**

Denied.

**REQUEST FOR ADMISSION NO. 131:**

Admit that DOMAIN ID SHIELD is the REGISTRANT of the domain name facebookvideodownload.net.

**RESPONSE TO REQUEST NO. 131**

Denied.

**REQUEST FOR ADMISSION NO. 132:**

Admit that DOMAIN ID SHIELD is the REGISTRANT of the domain name findfacebookid.com.

**RESPONSE TO REQUEST NO. 132**

Denied.

**REQUEST FOR ADMISSION NO. 133:**

Admit that DOMAIN ID SHIELD is the REGISTRANT of the domain name hackingfacebook.com.

**RESPONSE TO REQUEST NO. 133**

Denied.

**REQUEST FOR ADMISSION NO. 134:**

Admit that DOMAIN ID SHIELD is the REGISTRANT of the domain name hacksomeonesfacebook.com.

**RESPONSE TO REQUEST NO. 134**

Denied.

**REQUEST FOR ADMISSION NO. 135:**

Admit that DOMAIN ID SHIELD is the REGISTRANT of the domain name lamsocialfacebook.net.

**RESPONSE TO REQUEST NO. 135**

Denied.

**REQUEST FOR ADMISSION NO. 136:**

Admit that DOMAIN ID SHIELD is the REGISTRANT of the domain name trollfacebook.com.

**RESPONSE TO REQUEST NO. 136**

Denied.

**REQUEST FOR ADMISSION NO. 137:**

Admit that DOMAIN ID SHIELD is the REGISTRANT of the domain name www-facebook-login.com.

**RESPONSE TO REQUEST NO. 137**

Denied.

**REQUEST FOR ADMISSION NO. 138:**

Admit that DOMAIN ID SHIELD is the REGISTRANT of the domain name www-facebook-pages.com.

**RESPONSE TO REQUEST NO. 138**

Denied.

**REQUEST FOR ADMISSION NO. 139:**

Admit that DOMAIN ID SHIELD is the REGISTRANT of the domain name buyinstagramfans.com.

**RESPONSE TO REQUEST NO. 139**

Denied.

**REQUEST FOR ADMISSION NO. 140:**

Admit that DOMAIN ID SHIELD is the REGISTRANT of the domain name instaface.com.

**RESPONSE TO REQUEST NO. 140**

Denied.

**REQUEST FOR ADMISSION NO. 141:**

Admit that DOMAIN ID SHIELD is the REGISTRANT of the domain name instagram01.com.

**RESPONSE TO REQUEST NO. 141**

Denied.

**REQUEST FOR ADMISSION NO. 142:**

Admit that DOMAIN ID SHIELD is the REGISTRANT of the domain name iiinstagram.com.

**RESPONSE TO REQUEST NO. 142**

Denied.


**REQUEST FOR ADMISSION NO. 143:**

Admit that DOMAIN ID SHIELD is the REGISTRANT of the domain name login-Instargram.com.

**RESPONSE TO REQUEST NO. 143**

Denied.

- 25-

**REQUEST FOR ADMISSION NO. 144:**

Admit that DOMAIN ID SHIELD is the REGISTRANT of the domain name m-facebook-login.com.

**RESPONSE TO REQUEST NO. 144**

Denied.

**REQUEST FOR ADMISSION NO. 145:**

Admit that DOMAIN ID SHIELD is the REGISTRANT of the domain name singin-Instargram.com.

**RESPONSE TO REQUEST NO. 145**

Denied.

As to Objections.

Respectfully Submitted,

DATED:  January 29, 2021          LEXANALYTICA, PC

By:  _____

Attorneys for Defendants
ONLINENIC, INC. and DOMAIN ID SHEILD
SERVICE CO., LIMITED

Perry J. Narancic, SBN 206820
LEXANALYTICA, PC
2225 E. Bayshore Road, Suite 200
Palo Alto, CA 94303
www.lexanalytica.com
pjn@lexanalytica.com
Tel: 650-655-2800

Attorneys for Defendants
ONLINENIC, INC. and DOMAIN ID SHIELD SERVICE
CO., LIMITED

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ONLINENIC, INC. and DOMAIN ID SHIELD SERVICE CO., LIMITED.<br><br>　　　　　Defendants. | Case No. 19-CV-07071-SVK<br><br>**ONLINENIC, INC.'S FIRST AMENDED RESPONSES TO PLAINTIFF FACEBOOK, INC.'S FIRST SET OF INTERROGATORIES.** |

PROPOUNDING PARTY:　　　　Facebook, Inc.

RESPONDING PARTY:　　　　OnlineNIC, Inc.

SET NO.:　　　　　　　　One (1)


　　　　Defendant OnlineNIC, Inc. ("Defendant") hereby responds to the Request for Production of Documents propounded by Facebook, Inc. ( "Plaintiff") as follows:

PRELIMINARY STATEMENT

　　　　A.　　　　The specific responses as set forth below are for the purposes of discovery only and OnlineNIC does not intend to waive, but expressly reserves, any and all objections and may have to the relevance, competence, materiality, admissibility or use at trial of any information,

- 1 -

Facebook, Inc. v. OnlineNIC, Inc.　　　　　　　　　　　　　　　　Case No. 19-cv-7071-SVK
OnlineNIC, Inc.'s First Amended Responses to Facebook, Inc.'s Interrogatories – Set 1

documents or writings produced, identified or referred to herein. All such objections may be made at any time up to and including the time of trial.

B.     The following responses are based on information reasonably available to OnlineNIC as of the date of these responses, and upon documents that are in the possession, custody or control of OnlineNIC. OnlineNIC's investigation and search for documents and things responsive to these requests are ongoing. Pursuant to Federal Rule of Civil Procedure 26, OnlineNIC specifically reserves the right to revise, supplement and/or amend these responses and, if necessary, to assert additional objections arising from further investigation.

C.     By agreement of the parties, the parties do not seek privilege logs for materials covered by the attorney-client privilege or the attorney work product doctrine where such materials arose after the original complaint was filed in this action.

D.     OnlineNIC expressly reserves its right to rely, at any time during trial, upon subsequently discovered information or information omitted from the specific responses set forth below as a result of mistake, oversight, or inadvertence.

E.     Capitalized terms, unless otherwise defined herein, have the same meaning as set forth in Plaintiff's Interrogatories.

1

**RESPONSES**

2

3

**INTERROGATORY NO. 1:**

4

Explain in detail all facts supporting YOUR contention that ONLINENIC did not directly

5

participate in the REGISTRATION, USE or TRAFFICKING IN of the ACCUSED DOMAIN

6

NAMES as alleged in the complaint and as described in Facebook's discovery responses.

7

**RESPONSE TO INTERROGATORY NO. 1**

8

The identity of the person or entity whose name and contact information is/was listed in the

9

WHOIS directory as registrant for the Accused Domain Names during the relevant periods is set

10

forth in Tables 5 and 18 of OnlineNIC's registration database, which has been produced. Table

11

ol_10 and ol_11 and Table15 set forth the "on/off" dates for the privacy service, which will

12

correspond to when DOMAIN ID SHEILD'S name was listed in the public WHOIS registrant

13

field. During those periods that DOMAIN ID SHIELD was listed, it was solely acting as a privacy

14

service (as described in Response to Interrogatory No. 12).

15

DOMAIN ID SHIELD was never a "registered name holder" as defined in the Registration

16

Accreditation Agreement. According to ICANN:  "The registrant, also known as the "Registered

17

Name Holder" is the person or entity that holds the rights to a domain name."

18

https://www.icann.org/resources/pages/faqs-84-2012-02-25-en#4.  Nowhere in the ID Shield

19

Service Agreement does it state that DOMAIN ID SHIELD owns or registers any domain; on the

20

contrary, the agreement specifically vests all ownership, rights and control in the customer.

21

Even if a "registrant" is blindly just deemed to be the person or entity that is merely listed

22

as "registrant" in a public search, what is in the publicly available WHOIS is not the proper place

23

to look to determine the identity of the "registrant" according to ICANN.  As a registrar,

24

OnlineNIC maintains the WHOIS database that contains the name of the person or entity that

25

"owns the rights" to the domain. All that DOMAIN ID SHIELD does is that it allows its name to

26

be used in a public search query  under which the "registrant" name is replaced – but this does not

27

change the fact that the WHOIS record (which is internal to OnlineNIC, and also sent to escrow

28

- 3-

with Iron Mountain) still records the name of the person or entity that "owns the rights" to the domain.

The fact that a person or entity listed in the public WHOIS is not necessarily the party that "holds the rights" to the domain (i.e. the registrant) is obvious from ICANN's own view:

The registrant, also known as the "Registered Name Holder" is the person or entity that holds the rights to a domain name. Check with your registrar to see who the Registrant of record is for your domain name. If you have outsourced a third-party, such as a developer, to help manage your domain name, they may have registered the domain name using their own contact details (even if you have paid them to register and manage the domain name). Therefore, they may be listed as the official Registrant of record for the domain name. You may need to provide proof of your payment to the third-party/developer to prove to your registrar that you are the rightful holder and should be the registrant of the domain name.

https://www.icann.org/resources/pages/faqs-84-2012-02-25-en#4

For all the foregoing reasons, it is also clear that neither Defendant "registered" any of the Accused Domain Names. A party "registers" a domain by submitting an application to a registrar, who then processes the application information and sends it to the correct registry: "The registrar will then keep records of the contact information and submit the technical information to a central directory known as the "registry." https://www.icann.org/resources/pages/faqs-84-2012-02-25-en. Again, based on ICANN's own statements, neither Defendant "registers" anything – that is done by the applicant.  If neither Defendant was the registrant of the Accused Domain Names, and if they did not "register" the domain,  it is obvious that they did not REGISTER the domain as defined by Plaintiffs.  Defendants obtained no monetization revenue from the Accused Domain Names, and they did not TRAFFICK in them. Nor did Defendants USE any of the Accused Domain Names.

**INTERROGATORY NO. 2:**

IDENTIFY all individuals with knowledge concerning the REGISTRATION, TRAFFICKING IN, or USE of the ACCUSED DOMAIN NAMES as alleged in the complaint.

**RESPONSE TO INTERROGATORY NO. 2**

No specific person performing services for Defendant has direct, personal knowledge concerning alleged REGISTARTION, TRAFFICKING or USE of the ACCUSED DOMAINS.

- 4-

Facebook, Inc. v. OnlineNIC, Inc.                                                    Case No. 19-cv-7071-SVK
OnlineNIC, Inc.'s First Amended Responses to Facebook, Inc.'s Interrogatories  – Set 1

From Defendants previous responses, in any event, Defendants do not engage in REGISTRATION, TRAFFICKING OR USE. Notwithstanding the foregoing, Defendants have prepared two witnesses to address Plaintffs' allegations concerning these matters. Carrie Yu and Leon Freeman will be designated as 30(b)(6) witnesses for Defendant and she will be familiar with Defendants involvement with the ACCUSED DOMAIN NAMES. Their identifying information, to the extent available, is separately attached and designated as CONFIDENTIAL.

**INTERROGATORY NO. 3:**

Explain in detail all facts supporting YOUR contention that ONLINENIC and DOMAIN ID SHIELD are not *alter egos* of one another.

**RESPONSE TO INTERROGATORY NO. 3**

As discussed above, no Defendant REGISTERED, TRAFFICKED IN, or USED the Accused Domain Names. Accordingly, based on the order in *Facebook, Inc v. Namecheap, Inc*., 2020 U.S. Dist. LEIS 210068, there are no facts that support the "fraud" prong of establishing an *alter ego*.

**INTERROGATORY NO. 4:**

IDENTIFY all officers of ONLINENIC since 2009, and their business relationship, if any, with 35.CN and DOMAIN ID SHIELD.

**RESPONSE TO INTERROGATORY NO. 4**

Based on records available to Defendant, Carrie Yu, Rex Liu, Zhippo Chen, Shaohui Gong. Their identifying information, to the extent available, is provided separately and is designated as CONFIDENTIAL. Carrie Yu is an officer of OnlineNIC and an employee of 35.CN. Liu is a local representative and employee of OnlineNIC, and has no business relationship with 35. Chen has no business relationship with 35.CN, and is a shareholder of OnlineNIC. Gong is a former officer of 35.CN, and he has no business relationship with OnlineNIC.

**INTERROGATORY NO. 5:**

IDENTIFY all shareholders and owners of ONLINENIC since 2009, and their business relationship, if any, with 35.CN and DOMAIN ID SHIELD.

**RESPONSE TO INTERROGATORY NO. 5**

Zhippo Chen and Shaohui Gong. Chen has no business relationship with 35.CN or DOMAIN ID SHIELD. Shaohui Gong is a shareholder in 35 and has no business relationship with DOMAIN ID SHIELD. Their identifying information, to the extent available, is provided separately and is designated as CONFIDENTIAL.

**INTERROGATORY NO. 6:**

IDENTIFY all directors of ONLINENIC since 2009, and their business relationship, if any, with 35.CN and DOMAIN ID SHIELD.

**RESPONSE TO INTERROGATORY NO. 6**

Based on records available to OnlineNIC, Carrie Yu.  Defendant will seek to obtain records from the Secretary of State to determine additional information. Her identifying information, to the extent available, is provided separately and is designated as CONFIDENTIAL.

**INTERROGATORY NO. 7:**

IDENTIFY all employees of ONLINENIC since 2009, and their business relationship, if any, with 35.CN and DOMAIN ID SHIELD.

**RESPONSE TO INTERROGATORY NO. 7**

Rex Liu and Minghe Wang. In addition, Carrie Yu acts as VP, Business Development, and Zhippo Chen is the President. Their identifying information, to the extent available, is provided separately and is designated as CONFIDENTIAL.

**INTERROGATORY NO. 8:**

IDENTIFY all independent contractors, including technical support staff, of ONLINENIC since 2009, and their business relationship, if any, with 35.CN and DOMAIN ID SHIELD.

**RESPONSE TO INTERROGATORY NO. 8**

35.CN.

**INTERROGATORY NO. 9:**

Describe the business, corporate, working or other relationship between ONLINENIC and 35.CN, including the services which 35.CN performs for or on behalf of ONLINENIC, and any monetary payment which 35.CN receives for those services.

**RESPONSE TO INTERROGATORY NO. 9**

35.CN provides facilities and services to OnlineNIC pursuant to the Outsourcing Agreement dated Jan. 1, 2014 (ONLINENIC 266918). In addition to the services listed therein, as part of the Outsourcing Agreement, 35.CN provides an office for OnlineNIC in a building where 35.CN has separate offices.

**INTERROGATORY NO. 10:**

Describe the business, corporate, working or other relationship between ONLINENIC and DOMAIN ID SHIELD, including the services which ONLINENIC performs for or on behalf of DOMAIN ID SHIELD, and any monetary payment which ONLINENIC receives for those services.

**RESPONSE TO INTERROGATORY NO. 10**

DOMAIN ID SHIELD provides privacy services for persons who use the registration services of OnlineNIC. OnlineNIC controls Domain ID Shield and runs its operations and pays its expenses. OnlineNIC runs the Domain ID Shield website and pays administrative expenses such as corporate fees and virtual office fees and provides technical support. Domain ID Shield charges $1 per year for each privacy subscription, which fees are paid to Defendant and which are used to defray costs.

**INTERROGATORY NO. 11:**

Explain in detail all facts supporting your denial of Request For Admission No. 83 that "ONLINENIC profits from services provided by DOMAIN ID SHIELD."

**RESPONSE TO INTERROGATORY NO. 11**

The fees obtained by OnlineNIC through Domain ID Shield are not sufficient to cover expenses of Domain ID Shield.

**INTERROGATORY NO. 12:**

Explain in detail how YOU ensure that YOU and YOUR resellers comply with YOUR obligations under 3.12 of the RAA, including IDENTIFYING the individuals responsible for that compliance, and describing any standard operating procedures, training, documentation or other information used by ONLINENIC to comply with YOUR obligations under the RAA.

**RESPONSE TO INTERROGATORY NO. 12**

**INTERROGATORY NO. 15:**

Explain in detail any investigation, analysis, findings, and conclusion by ONLINENIC as to whether the registration and use of the ACCUSED DOMAIN NAMES constituted DOMAIN NAME ABUSE.

**RESPONSE TO INTERROGATORY NO. 15**

OnlineNIC worked with its counsel to investigate the DOMAIN NAME ABUSE after it received notice of this lawsuit. This information is protected by the attorney-client and work product privileges.  The parties have agreed that they do not seek such materials in discovery.

**INTERROGATORY NO. 16:**

Explain in detail what services other than registering domain names YOU perform, including but not limited to hosting services, pay-per-click pages and cloud services.

**RESPONSE TO INTERROGATORY NO. 16**

OnlineNIC provides: (a) shared hosting i.e. hosting of third party websites on a common server; (b) cloud services, similar to AWS cloud computing, (c) SSL Certificates i.e. resale of SSL certificates, (d) building websites based on templates; (e) enterprise email solutions, including installing and configuring email systems for enterprises and email services for hosted domains, (f) domain monetization i.e. OnlineNIC will identify monetization services and share revenue with a registrant.

**INTERROGATORY NO. 17:**

Describe in detail YOUR corporate structure, including but not limited to parent entities, subsidiaries, affiliates and affiliated registrars.

**RESPONSE TO INTERROGATORY NO. 17**

OnlineNIC is a California corporation.  It controls one entity, Domain ID Shield. OnlineNIC has no parent.

**INTERROGATORY NO. 18:**

Explain in detail what records have been put in escrow as to YOUR customers, resellers, and licensees who were involved in the REGISTRATION or USE of the ACCUSED DOMAIN NAMES.

1    As to Objections.

2
                                        Respectfully Submitted,
3
     DATED:  February 1, 2021             LEXANALYTICA, PC
4

5                                       By:

6
                                        Attorneys for Defendants
7                                       ONLINENIC, INC. and DOMAIN ID SHEILD
                                        SERVICE CO., LIMITED
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Perry J. Narancic, SBN 206820
   LEXANALYTICA, PC
2  2225 E. Bayshore Road, Suite 200
   Palo Alto, CA  94303
3  www.lexanalytica.com
   pjn@lexanalytica.com
4  Tel: 650-655-2800

5  Attorneys for Defendants
   ONLINENIC, INC. and DOMAIN ID SHIELD SERVICE
6  CO., LIMITED

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10

11 FACEBOOK, INC. and INSTAGRAM,           Case No. 19-CV-07071-SVK
   LLC
12                                         **ONLINENIC, INC.'S RESPONSES**
                 Plaintiffs,               **TO PLAINTIFFS' THIRD SET OF**
13       v.                                **REQUESTS FOR ADMISSION**

14 ONLINENIC, INC. and DOMAIN ID
15 SHIELD SERVICE CO., LIMITED.

16           Defendants.

17

18
   PROPOUNDING PARTY:          Facebook, Inc. and Instagram, LLC
19
   RESPONDING PARTY:           OnlineNIC, Inc.
20
   SET NO.:                    Three (3)
21

22

23       Defendant OnlineNIC, Inc. ("OnlineNIC") hereby responds to the Requests for Admission,

24 Set Three propounded by Facebook, Inc. and Instagram, LLC (together, the "Plaintiffs") as

25 follows:

26                          PRELIMINARY STATEMENT

27       A.      The specific responses as set forth below are for the purposes of discovery only and

28 OnlineNIC does not intend to waive, but expressly reserves, any and all objections and may have

                                          - 1-

to the relevance, competence, materiality, admissibility or use at trial of any information, documents or writings produced, identified or referred to herein. All such objections may be made at any time up to and including the time of trial.

B.    The following responses are based on information reasonably available to OnlineNIC as of the date of these responses, and upon documents that are in the possession, custody or control of OnlineNIC. OnlineNIC has conducted a diligent search and believes that the document production is substantially complete, except where expressly noted herein. However, due to its limited resources and current pandemic conditions, OnlineNIC's investigation and search for documents and things responsive to these requests are ongoing. Pursuant to Federal Rule of Civil Procedure 26, OnlineNIC specifically reserves the right to revise, supplement and/or amend these responses and, if necessary, to assert additional objections arising from further investigation.

C.    OnlineNIC expressly reserves its right to rely, at any time during trial, upon subsequently discovered information or information omitted from the specific responses set forth below as a result of mistake, oversight, or inadvertence.

D.    OnlineNIC objects to each and every request to the extent that it seeks information that may be prohibited from disclosure under the General Data Protection Regulation, and OnlineNIC reserves the right to "claw-back" such information if it determines that such "claw-back" is required by applicable law.

**REQUESTS FOR ADMISSION**

**REQUEST FOR ADMISSION NO. 316:**

Admit that FACEBOOK sent ONLINENIC a notice containing reasonable evidence of actionable harm related to the domain name face2bouk.com.

**RESPONSE TO REQUEST NO. 316**

Denied.  Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 317:**

Admit that FACEBOOK sent ONLINENIC a notice containing reasonable evidence of actionable harm related to the domain name facebook-alkalmazasok.net.

**RESPONSE TO REQUEST NO. 317**

Denied. Denied.  Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 318:**

Admit that FACEBOOK sent ONLINENIC a notice containing reasonable evidence of actionable harm related to the domain name facebook-chat-emoticons.com.

**RESPONSE TO REQUEST NO. 318**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 319:**

Admit that FACEBOOK sent ONLINENIC a notice containing reasonable evidence of actionable harm related to the domain name facebook-login-signup.com.

**RESPONSE TO REQUEST NO. 319**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 320:**

Admit that FACEBOOK sent ONLINENIC a notice containing reasonable evidence of actionable harm related to the domain name facebux2.com.

**RESPONSE TO REQUEST NO. 320**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from

- 3 -

ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 321:**

Admit that FACEBOOK sent ONLINENIC a notice containing reasonable evidence of actionable harm related to the domain name facekhook.com.

**RESPONSE TO REQUEST NO. 321**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 322:**

Admit that FACEBOOK sent ONLINENIC a notice containing reasonable evidence of actionable harm related to the domain name facessbook.com.

**RESPONSE TO REQUEST NO. 322**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 323:**

Admit that FACEBOOK sent ONLINENIC a notice containing reasonable evidence of actionable harm related to the domain name faecb00k-page.com.

**RESPONSE TO REQUEST NO. 323**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 324:**

Admit that FACEBOOK sent ONLINENIC a notice containing reasonable evidence of actionable harm related to the domain name faecbook-page.com.

**RESPONSE TO REQUEST NO. 324**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from

ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 325:**

Admit that FACEBOOK sent ONLINENIC a notice containing reasonable evidence of actionable harm related to the domain name hackfacebook-now.com.

**RESPONSE TO REQUEST NO. 325**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 326:**

Admit that INSTAGRAM sent ONLINENIC a notice containing reasonable evidence of actionable harm related to the domain name instakram.com.

**RESPONSE TO REQUEST NO. 326**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 327:**

Admit that FACEBOOK sent ONLINENIC a notice containing reasonable evidence of actionable harm related to the domain name learntohackfacebook.com.

**RESPONSE TO REQUEST NO. 327**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 328:**

Admit that FACEBOOK sent ONLINENIC a notice containing reasonable evidence of actionable harm related to the domain name ofacebooklogin.com.

**RESPONSE TO REQUEST NO. 328**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from

1    ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

2    **REQUEST FOR ADMISSION NO. 329:**

3        Admit that FACEBOOK sent ONLINENIC a notice containing reasonable evidence of

4    actionable harm related to the domain name watch-facebook.com.

5    **RESPONSE TO REQUEST NO. 329**

6        Denied. Among other things, any notices that were sent were sent from email addresses and

7    parties which were not verified, and FACEBOOK failed to respond to numerous replies from

8    ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

9    **REQUEST FOR ADMISSION NO. 330:**

10       Admit that INSTAGRAM sent ONLINENIC a notice containing reasonable evidence of

11   actionable harm related to the domain name www-instagram.net.

12   **RESPONSE TO REQUEST NO. 330**

13       Denied. Among other things, any notices that were sent were sent from email addresses and

14   parties which were not verified, and FACEBOOK failed to respond to numerous replies from

15   ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

16   **REQUEST FOR ADMISSION NO. 331:**

17       Admit that ONLINENIC did not disclose the then-current contact information provided by

18   the licensee for the domain name buyinstagramfans.com within seven days after receiving notice

19   from INSTAGRAM containing reasonable evidence of actionable harm regarding that domain

20   name.

21   **RESPONSE TO REQUEST NO. 331**

22       Denied. Among other things, any notices that were sent were sent from email addresses and

23   parties which were not verified, and FACEBOOK failed to respond to numerous replies from

24   ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

25   **REQUEST FOR ADMISSION NO. 332:**

26       Admit that ONLINENIC did not disclose the then-current contact information provided by

27   the licensee for the domain name face2bouk.com within seven days after receiving notice from

28   FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 332**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 333:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name facebook-alkalmazasok.net within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 333**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 334:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name facebook-chat-emoticons.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 334**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 335:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name facebook-fans-buy.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 335**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 336:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name facebook-login-signup.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 336**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 337:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name facebook-mails.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 337**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 338:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name facebook-pass.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 338**

Denied. Among other things, any notices that were sent were sent from email addresses and

parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 339:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name facebookphysician.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 339**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 340:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name facebook-pw.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 340**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 341:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name facebookvideodownload.net within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 341**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 342:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name facebux2.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 342**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 343:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name facekhook.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 343**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 344:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name facessbook.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 344**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 345:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name faecb00k-page.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

1 | **RESPONSE TO REQUEST NO. 345**

2 | Denied. Among other things, any notices that were sent were sent from email addresses and

3 | parties which were not verified, and FACEBOOK failed to respond to numerous replies from

4 | ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

5 | **REQUEST FOR ADMISSION NO. 346:**

6 | Admit that ONLINENIC did not disclose the then-current contact information provided by

7 | the licensee for the domain name faecbook-page.com within seven days after receiving notice from

8 | FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

9 | **RESPONSE TO REQUEST NO. 346**

10 | Denied. Among other things, any notices that were sent were sent from email addresses and

11 | parties which were not verified, and FACEBOOK failed to respond to numerous replies from

12 | ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

13 | **REQUEST FOR ADMISSION NO. 347:**

14 | Admit that ONLINENIC did not disclose the then-current contact information provided by

15 | the licensee for the domain name findfacebookid.com within seven days after receiving notice

16 | from FACEBOOK containing reasonable evidence of actionable harm regarding that domain

17 | name.

18 | **RESPONSE TO REQUEST NO. 347**

19 | Denied. Among other things, any notices that were sent were sent from email addresses and

20 | parties which were not verified, and FACEBOOK failed to respond to numerous replies from

21 | ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

22 | **REQUEST FOR ADMISSION NO. 348:**

23 | Admit that ONLINENIC did not disclose the then-current contact information provided by

24 | the licensee for the domain name hackfacebook-now.com within seven days after receiving notice

25 | from FACEBOOK containing reasonable evidence of actionable harm regarding that domain

26 | name.

27 | **RESPONSE TO REQUEST NO. 348**

28 | Denied. Among other things, any notices that were sent were sent from email addresses and

parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 349:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name hackingfacebook.net within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 349:**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 350:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name hacksomeonesfacebook.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 350**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 11:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name iiinstagram.com within seven days after receiving notice from INSTAGRAM containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 351**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 352:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name instaface.org within seven days after receiving notice from INSTAGRAM containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 352**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 353:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name instagram01.com within seven days after receiving notice from INSTAGRAM containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 353**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 354:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name instakram.com within seven days after receiving notice from INSTAGRAM containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 354**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 355:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name lamsocialfacebook.net within seven days after receiving notice

from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 355**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 356:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name learntohackfacebook.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 356:**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 357:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name login-lnstargram.com within seven days after receiving notice from INSTAGRAM containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 357**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 358:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name m-facebook-login.com within seven days after receiving notice

from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 358**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 359:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name ofacebooklogin.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 359**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 360:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name singin-lnstargram.com within seven days after receiving notice from INSTAGRAM containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 360**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 361:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name trollfacebook.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 361**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 362:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name watch-facebook.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 362**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 363:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name www-facebook-login.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 363**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 364:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name www-facebook-pages.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 364**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 365:**

Admit that ONLINENIC did not disclose the then-current contact information provided by the licensee for the domain name www-instagram.net within seven days after receiving notice from INSTAGRAM containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 365**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 366:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name buyinstagramfans.com within seven days after receiving notice from INSTAGRAM containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 366**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 367:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name face2bouk.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 367**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from

1   ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

2   **REQUEST FOR ADMISSION NO. 368:**

3   Admit that ONLINENIC did not disclose the then-current identity of the licensee for the

4   domain name facebook-alkalmazasok.net within seven days after receiving notice from

5   FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

6   **RESPONSE TO REQUEST NO. 368**

7   Denied. Among other things, any notices that were sent were sent from email addresses and

8   parties which were not verified, and FACEBOOK failed to respond to numerous replies from

9   ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

10  **REQUEST FOR ADMISSION NO. 369:**

11  Admit that ONLINENIC did not disclose the then-current identity of the licensee for the

12  domain name facebook-chat-emoticons.com within seven days after receiving notice from

13  FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

14  **RESPONSE TO REQUEST NO. 369**

15  Denied. Among other things, any notices that were sent were sent from email addresses and

16  parties which were not verified, and FACEBOOK failed to respond to numerous replies from

17  ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

18  **REQUEST FOR ADMISSION NO. 370:**

19  Admit that ONLINENIC did not disclose the then-current identity of the licensee for the

20  domain name facebook-fans-buy.com within seven days after receiving notice from FACEBOOK

21  containing reasonable evidence of actionable harm regarding that domain name.

22  **RESPONSE TO REQUEST NO. 370**

23  Denied. Among other things, any notices that were sent were sent from email addresses and

24  parties which were not verified, and FACEBOOK failed to respond to numerous replies from

25  ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

26  **REQUEST FOR ADMISSION NO. 371:**

27  Admit that ONLINENIC did not disclose the then-current identity of the licensee for the

28  domain name facebook-login-signup.com within seven days after receiving notice from

- 18-

FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 371**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 372:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name facebook-mails.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 372**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 373:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name facebook-pass.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 373**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 374:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name facebookphysician.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 374**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from

ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 375:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name facebook-pw.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 375**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 376:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name facebookvideodownload.net within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 376**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 377:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name facebux2.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 377**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 378:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name facekhook.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 378**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 379:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name facessbook.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 379**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 380:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name faecb00k-page.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 380**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 381:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name faecbook-page.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 381**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 382:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name findfacebookid.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 382**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 383:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name hackfacebook-now.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 383**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 384:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name hackingfacebook.net within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 384**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 385:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name hacksomeonesfacebook.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 385**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 386:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name iiinstagram.com within seven days after receiving notice from INSTAGRAM containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 386**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 387:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name instaface.org within seven days after receiving notice from INSTAGRAM containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 387**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 388:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name instagram01.com within seven days after receiving notice from INSTAGRAM containing reasonable evidence of actionable harm regarding that domain name.

- 23-

**RESPONSE TO REQUEST NO. 388**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 389:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name instakram.com within seven days after receiving notice from INSTAGRAM containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 389**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 390:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name lamsocialfacebook.net within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 390**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 391:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name learntohackfacebook.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 391**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 392:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name login-lnstagram.com within seven days after receiving notice from INSTAGRAM containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 392**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 393:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name m-facebook-login.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 393**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 394:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name ofacebooklogin.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 394**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 395:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name singin-lnstargram.com within seven days after receiving notice from INSTAGRAM containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 395**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 396:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name trollfacebook.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 396**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 397:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name watch-facebook.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 397**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 398:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name www-facebook-login.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 398**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 399:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name www-facebook-pages.com within seven days after receiving notice from FACEBOOK containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 399**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 400:**

Admit that ONLINENIC did not disclose the then-current identity of the licensee for the domain name www-instagram.net within seven days after receiving notice from INSTAGRAM containing reasonable evidence of actionable harm regarding that domain name.

**RESPONSE TO REQUEST NO. 400**

Denied. Among other things, any notices that were sent were sent from email addresses and parties which were not verified, and FACEBOOK failed to respond to numerous replies from ONLINENIC – leading ONLINENIC to believe that the notices were spam or phishing emails.

**REQUEST FOR ADMISSION NO. 401:**

Admit that when face2bouk.com was registered using ONLINENIC as the Registrar, the contact information of DOMAIN ID SHIELD was displayed in the WHOIS directory rather than the contact information of the customer of ONLINENIC, the customer of DOMAIN ID SHIELD, or another party.

**RESPONSE TO REQUEST NO. 401**

Admitted.

**REQUEST FOR ADMISSION NO. 402:**

Admit that when facebook-alkalmazasok.net was registered using ONLINENIC as the Registrar, the contact information of DOMAIN ID SHIELD was displayed in the WHOIS directory rather than the contact information of the customer of ONLINENIC, the customer of DOMAIN ID SHIELD, or another party.

**REQUEST FOR ADMISSION NO. 496:**

Admit that the WHOIS information contained in Exhibit 32 (Bates Number FB0024991) is true and accurate.

**RESPONSE TO REQUEST NO. 496**

Denied on the grounds that "registrant" as used in WHOIS is vague and ambiguous.

**REQUEST FOR ADMISSION NO. 497:**

Admit that the WHOIS information contained in Exhibit 33 (Bates Number FB0000150) is true and accurate.

**RESPONSE TO REQUEST NO. 497**

Denied on the grounds that "registrant" as used in WHOIS is vague and ambiguous.

**REQUEST FOR ADMISSION NO. 498:**

Admit that the WHOIS information contained in Exhibit 34 (Bates Number FB0000151) is true and accurate.

**RESPONSE TO REQUEST NO. 498**

Denied on the grounds that "registrant" as used in WHOIS is vague and ambiguous.

**REQUEST FOR ADMISSION NO. 499:**

Admit that the WHOIS information contained in Exhibit 35 (Bates Number FB0024994) is true and accurate.

**RESPONSE TO REQUEST NO. 499**

Denied on the grounds that "registrant" as used in WHOIS is vague and ambiguous. As to Objections.

Respectfully Submitted,

DATED:  June 10, 2021          LEXANALYTICA, PC

By:

Attorneys for Defendants
ONLINENIC, INC. and DOMAIN ID SHEILD
SERVICE CO., LIMITED

1  Perry J. Narancic, SBN 206820
   LEXANALYTICA, PC
2  2225 E. Bayshore Road, Suite 200
   Palo Alto, CA  94303
3  www.lexanalytica.com
   pjn@lexanalytica.com
4  Tel: 650-655-2800

5  Attorneys for Defendants
   ONLINENIC, INC. and DOMAIN ID SHIELD SERVICE
6  CO., LIMITED

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10

11  FACEBOOK, INC. and INSTAGRAM,          Case No. 19-CV-07071-SVK
    LLC
12                                         **ONLINENIC, INC.'S RESPONSES**
                    Plaintiffs,            **TO PLAINTIFFS' FOURTH SET OF**
13                                         **REQUESTS FOR ADMISSION**
            v.
14
    ONLINENIC, INC. and DOMAIN ID
15  SHIELD SERVICE CO., LIMITED.
16                  Defendants.
17

18
    PROPOUNDING PARTY:          Facebook, Inc. and Instagram, LLC
19
    RESPONDING PARTY:           OnlineNIC, Inc.
20
    SET NO.:                    Four (4)
21

22

23       Defendant OnlineNIC, Inc. ("OnlineNIC") hereby responds to the Requests for Admission,

24  Set Three propounded by Facebook, Inc. and Instagram, LLC (together, the "Plaintiffs") as

25  follows:

26                         PRELIMINARY STATEMENT

27       A.      The specific responses as set forth below are for the purposes of discovery only and

28  OnlineNIC does not intend to waive, but expressly reserves, any and all objections and may have

                                      - 1-

**RESPONSE TO REQUEST NO. 534**

Admitted.


As to Objections.


Respectfully Submitted,

DATED:  June 10, 2021                    LEXANALYTICA, PC


By:

_____

Attorneys for Defendants
ONLINENIC, INC. and DOMAIN ID SHEILD
SERVICE CO., LIMITED

- 9-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Perry J. Narancic, SBN 206820
LEXANALYTICA, PC
2225 E. Bayshore Road, Suite 200
Palo Alto, CA  94303
www.lexanalytica.com
pjn@lexanalytica.com
Tel: 650-655-2800


Attorneys for Defendants
ONLINENIC, INC. and DOMAIN ID SHIELD SERVICE
CO., LIMITED

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC<br><br>    Plaintiffs,<br><br>  v.<br><br>ONLINENIC, INC. and DOMAIN ID SHIELD SERVICE CO., LIMITED.<br><br>    Defendants. | Case No. 19-CV-07071-SVK<br><br>**ONLINENIC, INC.'S RESPONSES TO PLAINTIFFS' FIFTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS.** |

PROPOUNDING PARTY:   Facebook, Inc. and Instagram, LLC

RESPONDING PARTY:    OnlineNIC, Inc.

SET NO.:        Five (5)


   Defendant OnlineNIC, Inc. ("OnlineNIC") hereby responds to the Requests for Production of Documents and Things, Set Five propounded by Facebook, Inc. and Instagram, LLC (together, the "Plaintiffs") as follows:

PRELIMINARY STATEMENT

   A.   The specific responses as set forth below are for the purposes of discovery only and OnlineNIC does not intend to waive, but expressly reserves, any and all objections and may have

- 1-

this Request to the extent that it calls for information protected by the attorney-client privilege or work product immunity – Defendant will not be producing such information. Defendant objects to this Request as vague, overbroad and unduly burdensome, as it seeks "all DOCUMENTS relating to any communications." Defendant objects to this Request as duplicative of other requests and thus served for the purpose of harassment and oppression.

Subject to the General and Specific Objections above, Defendant responds: Defendant will produce any responsive, relevant, non-privileged documents after conducting a reasonable search by June 18, 2021, to the extent not already produced.

**REQUEST FOR PRODUCTION NO. 286:**

All DOCUMENTS relating to any communications between YOU and any PERSON(S) acting on behalf of "customer ID 612745."

**RESPONSE TO REQUEST NO. 286:**

Defendant objects to this Request as not being limited in time or scope, and thus seeks information that is not relevant to any claim or issue in this litigation. Defendant further objects to this Request to the extent that it calls for information protected by the attorney-client privilege or work product immunity – Defendant will not be producing such information. Defendant objects to this Request as vague, overbroad and unduly burdensome, as it seeks "all DOCUMENTS relating to any communications." Defendant objects to this Request as duplicative of other requests and thus served for the purpose of harassment and oppression.

Subject to the General and Specific Objections above, Defendant responds: Defendant will produce any responsive, relevant, non-privileged documents after conducting a reasonable search by June 18, 2021, to the extent not already produced.

///
///
///
///
///
///

1    As to Objections.

2
                                            Respectfully Submitted,
3
     DATED:  June 10, 2021                   LEXANALYTICA, PC
4

5                                            By: _____

6
                                            Attorneys for Defendants
7                                            ONLINENIC, INC. and DOMAIN ID SHEILD
                                            SERVICE CO., LIMITED
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 46-

Facebook, Inc. v. OnlineNIC, Inc.                                    Case No. 19-cv-7071-SVK
OnlineNIC, Inc.'s Responses to Plaintiffs' Requests for Production – Set 5

Perry J. Narancic, SBN 206820
LEXANALYTICA, PC
2225 E. Bayshore Road, Suite 200
Palo Alto, CA  94303
www.lexanalytica.com
pjn@lexanalytica.com
Tel: 650-655-2800

Attorneys for Defendants
ONLINENIC, INC. and DOMAIN ID SHIELD SERVICE
CO., LIMITED

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

FACEBOOK, INC. and INSTAGRAM, LLC

           Plaintiffs,

    v.

ONLINENIC, INC. and DOMAIN ID
SHIELD SERVICE CO., LIMITED.

      Defendants.

Case No. 19-CV-07071-SVK

**RESPONSES OF ONLINENIC, INC.
TO PLAINTIFF INSTAGRAM,
LLC's  FIRST SET OF
INTERROGATORIES.**

PROPOUNDING PARTY:     Instagram, LLC.

RESPONDING PARTY:      OnlineNIC, Inc.

SET NO.:               One (1)

    Defendant OnlineNIC, Inc. ("Defendant") hereby responds to the Request for Production of Documents propounded by Instagram, LLC ("Plaintiff") as follows:

PRELIMINARY STATEMENT

    A.     The specific responses as set forth below are for the purposes of discovery only and OnlineNIC does not intend to waive, but expressly reserves, any and all objections and may have to the relevance, competence, materiality, admissibility or use at trial of any information,

- 1-

documents or writings produced, identified or referred to herein. All such objections may be made at any time up to and including the time of trial.

B.     The following responses are based on information reasonably available to OnlineNIC as of the date of these responses, and upon documents that are in the possession, custody or control of OnlineNIC. OnlineNIC's investigation and search for documents and things responsive to these requests are ongoing. Pursuant to Federal Rule of Civil Procedure 26, OnlineNIC specifically reserves the right to revise, supplement and/or amend these responses and, if necessary, to assert additional objections arising from further investigation.

C.     OnlineNIC expressly reserves its right to rely, at any time during trial, upon subsequently discovered information or information omitted from the specific responses set forth below as a result of mistake, oversight, or inadvertence.

E.     Capitalized terms, unless otherwise defined herein, have the same meaning as set forth in Plaintiff's Interrogatories.

1

**RESPONSES**

2

3

**INTERROGATORY NO. 1:**

4

Explain in detail all facts supporting YOUR Fifth Affirmative Defense that "Plaintiffs claims are barred by the doctrine of unclean hands."

5

**RESPONSE TO INTERROGATORY NO. 1**

6

7

OnlineNIC objects to this interrogatory on the grounds that discovery has not been completed, and Plaintiffs' discovery responses to date have been evasive and/or inadequate. Accordingly, Defendants do not have all the information that is required to fully respond to this interrogatory. OnlineNIC further objects to the instruction to provide responses "in detail" as that would require an unduly burdensome narrative. Subject to these objections, OnlineNIC responds as follows:

8

9

10

11

12

Plaintiffs purposefully sent disclosure requests to ID Shield, to an obscure fax number found online, instead of sending its notices through the ordinary electronic support system. At a minimum, both methods should have been used. The clear intent of this conduct was to prejudice Defendants and hope that the faxes were lost or not received. When Facebook sent infringement complaint emails to OnlineNIC through electronic means, it did so from obscure email addresses that looked like they were spam or automated. When OnlineNIC initially responded to these emails, Facebook failed to reply and thereby gave the impression that the emails indeed were spam. Plaintiffs induced OnlineNIC into thinking that Facebook's complaint emails were spam and could be ignored. In so doing, Plaintiffs are estopped from claiming that Defendants' failure or delay to respond to Plaintiff' complaints constitute a violation of any law. Moreover, since some of the domains at issue have been registered for years, Plaintiffs' claims are barred for their failure to police and enforce rights that with respect to domains that Plaintiffs knew or should have known of.

13

14

15

16

17

18

19

20

21

22

23

24

25

Plaintiffs have also brought and maintained this litigation in bad faith. Plaintiffs have produced no evidence that the Defendants somehow acted in concert with their customers (and/or so-called "Licensees") to commit cybersquatting. Nor have Plaintiffs provided any evidence that

26

27

28

- 3-

Defendants configured email for the allegedly infringing domains. Plaintiffs also acted in bad faith by publishing an unprivileged, defamatory press release accusing OnlineNIC of "fraud" – with the intent of destroying OnlineNIC's business reputation by extra-judicial means and poisoning the potential jury pool.  Plaintiffs' discovery responses have been made in bad faith since they are knowingly inadequate.  Despite massive legal departments, Facebook is still producing documents in response to discovery request propounded in 2020 and have not provided any firm date as to when their productions will be complete;  the last production date was May 4, 2021.

Plaintiffs' court filings have knowingly included inaccurate information intended to prejudice the Court against Defendants, including allegations that Defendants initially provided support tickets only in PDF format, and that Defendants never provided file attachments.  See e.g. Dkt. No. 65.  Plaintiffs have timed filings to cause maximum prejudice to Defendants (like filing in Chinese New Years), and have refused short extension requests of a few days. Plaintiffs have publicly filed Defendants' confidential information even though warned not to do so. Plaintiffs have improperly made filings in violation of local court rules with the intent and purpose of prejudicing Defendants.  See e.g. Dkt. No. 58, 64. Plaintiffs have failed to join necessary parties to this litigation, including the real "registrants" and resellers - all with the intent of prejudicing Defendants.

Plaintiffs have taken legal positions that are not supported by any good faith interpretation of the law or the facts.  For instance, there is no legal basis for alleging that Defendants' alleged breach of a private contract (the RAA) gives rise to liability under any United States statute.  There is no legal or factual basis for claiming that ID Shield "registered", or otherwise used any of the allegedly infringing domains, as those terms are defined under relevant law.  Nor is there any legal or factual basis for claiming that Defendants assumed all liability for the allegedly infringing domains as a result of an alleged breach of the RAA.

Plaintiffs have brought claims based on domains that cannot be reasonably be viewed as infringing or otherwise violative of Plaintiffs' rights, such as hackingfacebook.net.  Such conduct, and the attempt to enforce trademark rights through misuse of the federal courts, violates the First Amendment and fair use principles.

- 4-

Discovery is continuing and Defendants may supplement or amend this response.

**INTERROGATORY NO. 2:**

Explain in detail all facts supporting YOUR Sixth Affirmative Defense that "Plaintiffs' claims are barred by the doctrines of laches and/or estoppel."

**RESPONSE TO INTERROGATORY NO. 2**

OnlineNIC objects to this interrogatory on the grounds that discovery has not been completed, and Plaintiffs' discovery responses to date have been evasive and/or inadequate. Accordingly, Defendants do not have all the information that is required to fully respond to this interrogatory. OnlineNIC further objects to the instruction to provide responses "in detail" as that would require an unduly burdensome narrative. Subject to these objections, OnlineNIC responds as follows:

Plaintiffs purposefully sent disclosure requests to ID Shield, to an obscure fax number found online, instead of sending its request through the ordinary electronic support system. At a minimum, both methods should have been used. The clear intent of this conduct was to prejudice Defendants and hope that the faxes were lost or not received. When Facebook sent infringement complaint emails to OnlineNIC through electronic means, it did so from obscure email addresses that looked like they were spam or automated. When OnlineNIC initially responded to these emails, Facebook failed to reply and thereby gave the impression that the emails indeed were spam. Plaintiffs induced OnlineNIC into thinking that Facebook's complaint emails were spam and could be ignored. In so doing, Plaintiffs are estopped from claiming that Defendants' failure or delay to respond to Plaintiffs' complaints constitute a violation of any law. Moreover, since some of the domains at issue have been registered for years, Plaintiffs' claims are barred for their failure to police and enforce rights that with respect to domains that Plaintiffs knew or should have known of.

Discovery is continuing and Defendants may supplement or amend this response.

**INTERROGATORY NO. 3:**

Explain in detail all facts supporting YOUR contention that Defendants did not have a bad faith intent to profit from Plaintiffs' trademarks under 15 U.S.C., § 1125(d)(1).

- 5-

1

**RESPONSE TO INTERROGATORY NO. 3**

2

Defendants' did not "register", "use" or "traffic in" the domains in question, as these terms

3

are defined under relevant law. Accordingly, they had no bad faith intent to profit therefrom.

4

Moreover, the mere fact that the real registrants may have processed the registration of any

5

infringing domains through the OnlineNIC platform does not mean that OnlineNIC or ID Shield

6

made any profit *from that mark* .   Any profit gained through processing a registration for a mark

7

(or providing a privacy service) is not the same as profiting *from that mark*, such as profiting from

8

using an infringing domain to sell counterfeit goods or services.

9

**INTERROGATORY NO. 4:**

10

IDENTIFY, by year, each individual who signed, on behalf of 35.CN, each Service

11

Outsourcing Contract between ONLINENIC and 35.CN from 2014 to the present day, and their

12

business relationship, if any, with ONLINENIC and DOMAIN ID SHIELD.

13

**RESPONSE TO INTERROGATORY NO. 4**

14

From the year of 2014 to 2016, the person who signed for OnlineNIC Service Outsourcing

15

Contract on behalf of 35 was Chen Ying; her title was Deputy General Manager. From 2017 to

16

2020, it was Chen Yiqi who signed for the contract on behalf of 35, and his title was Deputy

17

General Manager.   Both individuals are no longer with 35 and no current contact information is

18

available for either. They do not have any business relationship with OnlineNIC or Domain ID

19

Shield.

20

**INTERROGATORY NO. 5:**

21

Explain in detail all facts supporting YOUR contention that the INSTAGRAM MARKS

22

are not valid and enforceable.

23

**RESPONSE TO INTERROGATORY NO. 4**

24

OnlineNIC objects to this interrogatory on the grounds that discovery has not been

25

completed, and Plaintiffs' discovery responses to date have been evasive and/or inadequate.

26

Accordingly, Defendants do not have all the information that is required to fully respond to this

27

interrogatory – including policing efforts.

28

1

2

3    As to Objections.

4
                                          Respectfully Submitted,
5
     Dated and served on:  May 7, 2021    LEXANALYTICA, PC
6

7                                         By: _____

8
                                          Attorneys for Defendants
9                                         ONLINENIC, INC. and DOMAIN ID SHEILD
                                          SERVICE CO., LIMITED
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit G

1939078

## ARTICLES OF INCORPORATION

**FILED**
In the office of the Secretary of State
of the State of California

OCT 0 6 1999

*Bill Jones*
BILL JONES, Secretary of State

### I

The name of this corporation is:  Online NIC Inc.

### II

The purpose of the corporation is to engage in any lawful act  or activity for which a corporation may be organized under the GENERAL CORPORATION LAW Of California other  than  the banking business, the trust company business  or the practice of a profession permitted to be incorporated by the California Corporation Code.

### III

The name and address in the State of California of this corporation's initial agent for the service of process  is: Shaohui Gong, 3435 Wilshire Blvd., Los Angeles, CA 90010.

### V

This  corporation is authorized to issue only one class of shares of  stock; and the total number of shares which this corporation is authorized to issue is 60,000,000.

Date: October 6, 1999

_____
Shaohui Gong, Incorporator

*1939078*

**CERTIFICATE OF AMENDMENT**
**OF**
**ARTICLES OF INCORPORATION**

FILED
In the office of the Secretary of State
of the State of California

**JAN 2 1 2000**

*Bill Jones*
BILL JONES, Secretary of State

The undersigned certifies that:

1.  He is the president and secretary, of <u>Online NIC Inc.</u>, a California corporation.

2.  Article <u>I</u> of the Articles of Incorporation of this corporation is amended to read as follows:

    <u>The name of this corporation is ONLINENIC INC.</u>

3.  The foregoing amendment of Articles of Incorporation has been duly approved by the board of directors.

4.  The corporation has issued no shares.

We further declare under penalty of perjury under the laws of the State of California that the matters set forth in this certificate are true and correct of our own knowledge.

DATE: _____1-19-00_____

_____
SHAO HUI GONG, President

**Statement of Information** - *7/18/2021*

| | | |
|---|---|---|
| *Amendment Type*<br>**Statement of Information** | **Field Name** | **Changed From** | **Changed To** |
| *Control ID*<br>**LBA561097** | Legacy Comment | Legacy number: GU99542 | |
| *Date*<br>**7/18/2021** | | | |
| *Image Download*<br>Download | | | |

### System Amendment - Penalty Certification - SI  - 2/25/2020

*Amendment Type*
System Amendment - Penalty Certification - SI

*Control ID*
LBA561095

*Date*
2/25/2020

| Field Name | Changed From | Changed To |
|---|---|---|
| Legacy Comment | SOS Certification | |

### System Amendment - SI Delinquency for the year of 0  - 11/26/2019

*Amendment Type*
System Amendment - SI Delinquency for the year of 0

*Control ID*
LBA561094

*Date*
11/26/2019

### System Amendment - Penalty Certification - SI  - 2/27/2019

*Amendment Type*
System Amendment - Penalty Certification - SI

*Control ID*
LBA561093

*Date*
2/27/2019

| Field Name | Changed From | Changed To |
|---|---|---|
| Legacy Comment | SOS Certification | |

### System Amendment - SI Delinquency for the year of 0  - 11/28/2018

*Amendment Type*
System Amendment - SI Delinquency for the year of 0

*Control ID*
LBA561092

*Date*
11/28/2018

### System Amendment - SOS Revivor  - 7/26/2017

*Amendment Type*
System Amendment - SOS Revivor

*Control ID*
LBA561091

*Date*
7/26/2017

### Legacy Amendment - 7/25/2017

*Amendment Type*
**Legacy Amendment**

*Control ID*
**LBA561090**

*Date*
**7/25/2017**

### Statement of Information - 7/24/2017

| *Amendment Type* | Field Name | Changed From | Changed To |
|---|---|---|---|
| **Statement of Information** | Legacy Comment | Legacy number: FN97826 | |

*Control ID*
**LBA561096**

*Date*
**7/24/2017**

*Image Download*
⊕ **Download**

### System Amendment - SOS Suspended - 4/27/2017

*Amendment Type*
**System Amendment - SOS Suspended**

*Control ID*
**LBA561089**

*Date*
**4/27/2017**

### System Amendment - Pending Suspension - 8/25/2016

*Amendment Type*
**System Amendment - Pending Suspension**

*Control ID*
**LBA561088**

*Date*
**8/25/2016**

### System Amendment - Penalty Certification - SI - 6/9/2015

| *Amendment Type* | Field Name | Changed From | Changed To |
|---|---|---|---|
| **System Amendment - Penalty Certification - SI** | Legacy Comment | SOS Certification | |

*Control ID*
**LBA561087**

*Date*
**6/9/2015**

### System Amendment - SI Delinquency for the year of 0  - 1/13/2015

*Amendment Type*
System Amendment - SI Delinquency for the year of 0

*Control ID*
LBA561086

*Date*
1/13/2015

### System Amendment - Pending Suspension  - 1/14/2014

*Amendment Type*
System Amendment - Pending Suspension

*Control ID*
LBA561085

*Date*
1/14/2014

### System Amendment - Penalty Certification - SI  - 10/25/2013

*Amendment Type*
System Amendment - Penalty Certification - SI

*Control ID*
LBA561084

*Date*
10/25/2013

| Field Name | Changed From | Changed To |
|---|---|---|
| Legacy Comment | SOS Certification | |

### System Amendment - SI Delinquency for the year of 0  - 4/19/2013

*Amendment Type*
System Amendment - SI Delinquency for the year of 0

*Control ID*
LBA561083

*Date*
4/19/2013

### System Amendment - Penalty Certification - SI  - 3/29/2007

*Amendment Type*
System Amendment - Penalty Certification - SI

*Control ID*
LBA561082

*Date*
3/29/2007

| Field Name | Changed From | Changed To |
|---|---|---|
| Legacy Comment | SOS Certification | |

## System Amendment - SI Delinquency for the year of 0  - 12/14/2006

*Amendment Type*
System Amendment - SI Delinquency for the year of 0

*Control ID*
LBA561081

*Date*
12/14/2006

## System Amendment - FTB Revivor  - 1/20/2004

*Amendment Type*
System Amendment - FTB Revivor

*Control ID*
LBA561080

*Date*
1/20/2004

## System Amendment - SOS Revivor  - 1/20/2004

*Amendment Type*
System Amendment - SOS Revivor

*Control ID*
LBA561079

*Date*
1/20/2004

## Legacy Amendment  - 1/9/2004

*Amendment Type*
Legacy Amendment

*Control ID*
LBA561078

*Date*
1/9/2004

## System Amendment - FTB Suspended  - 9/3/2002

*Amendment Type*
System Amendment - FTB Suspended

*Control ID*
LBA561077

*Date*
9/3/2002

# History

*Amendment Type*
System Amendment - SOS Suspended

*Control ID*
LBA561076

*Date*
5/15/2002

## System Amendment - Pending Suspension  - 3/5/2002

*Amendment Type*
System Amendment - Pending Suspension

*Control ID*
LBA561075

*Date*
3/5/2002

## System Amendment - Penalty Certification - SI  - 7/5/2001

| | Field Name | Changed From | Changed To |
|---|---|---|---|
| *Amendment Type* System Amendment - Penalty Certification - SI | Legacy Comment | SOS Certification | |
| *Control ID* LBA561074 | | | |
| *Date* 7/5/2001 | | | |

## Amendment  - 1/21/2000

| | Field Name | Changed From | Changed To |
|---|---|---|---|
| *Amendment Type* Amendment | Legacy Comment | Legacy number: A0538060 | |
| *Control ID* LBA561073 | Legacy Comment | NAME CHANGE FROM: ONLINE NIC INC. | |
| *Date* 1/21/2000 | | | |
| *Image Download* Download | | | |

## Initial Filing  - 10/6/1999

*Amendment Type*
Initial Filing

*Control ID*
1939078

*Date*
10/6/1999

*Image Download*
Download

© 2023 CA Secretary of State



# California Secretary of State
Electronic Filing



FILED

Secretary of State
State of California

# Corporation - Statement of Information

| | |
|---|---|
| Entity Name: | ONLINENIC INC. |

| | |
|---|---|
| Entity (File) Number: | C1939078 |
| File Date: | 07/18/2021 |
| Entity Type: | Corporation |
| Jurisdiction: | CALIFORNIA |
| Document ID: | GU99542 |

**Detailed Filing Information**

1. Entity Name:

   ONLINENIC INC.

2. Business Addresses:

   a. Street Address of Principal
      Office in California:

   b. Mailing Address:

      35.com Bldg, 8th Guanri Rd., Software Park
      Xiamen, Fujian 361008
      China

   c. Street Address of Principal
      Executive Office:

      35.com Bldg, 8th Guanri Rd., Software Park
      Xiamen, Fujian 361008
      China

3. Officers:

   a. Chief Executive Officer:

      Zhipo  Chen
      35.com Bldg, 8th Guanri Rd., Software Park
      Xiamen, Fujian 361008
      China

   b. Secretary:

      Carrie  Yu
      35.com Bldg, 8th Guanri Rd., Software Park
      Xiamen, Fujian 361008
      China

Document ID: GU99542



**California Secretary of State**
Electronic Filing

Officers (cont'd):

    c.   Chief Financial Officer:

Sily  Chen
35.com Bldg, 8th Guanri Rd., Software Park
Xiamen, Fujian 361008
China

4.   Director:

Carrie  Yu
35.com Bldg, 8th Guanri Rd., Software Park
Xiamen, Fujian 361008
China

      Number of Vacancies on the Board of
Directors:

0

5.   Agent for Service of Process:

Perry  Narancic
3000 El Camino Real, Bldg. 4, Suite 200, Palo
Alto, CA  94306
Palo Alto, California 94306
United States of America

6.   Type of Business:

domain name registrar

By signing this document, I certify that the information is true and correct and that I am authorized by California law to sign.

Electronic Signature:   Carrie Yu

*Use bizfile.sos.ca.gov for online filings, searches, business records, and resources.*

Document ID: GU99542

# State of California
## Secretary of State

**S**

### Statement of Information
**(Domestic Stock and Agricultural Cooperative Corporations)**
**FEES (Filing and Disclosure): $25.00.**
**If this is an amendment, see instructions.**
**IMPORTANT – READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

**FN97826**

# FILED

In the office of the Secretary of State
of the State of California

**JUL-24 2017**

1. **CORPORATE NAME**

ONLINENIC INC.

2. **CALIFORNIA CORPORATE NUMBER**

C1939078

This Space for Filing Use Only

**No Change Statement** (Not applicable if agent address of record is a P.O. Box address. See instructions.)

3. **If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no statement of information has been previously filed, this form must be completed in its entirety.**

☐ If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed **to Item 17.**

**Complete Addresses for the Following** (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

| | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE<br>3027 TEAGARDEN ST., SAN LEANDRO, CA 94577 | | | | |
| 5. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY<br>3027 TEAGARDEN ST., SAN LEANDRO, CA 94577 | | | | |
| 6. MAILING ADDRESS OF CORPORATION, IF DIFFERENT THAN ITEM 4 | | | | |

**Names and Complete Addresses of the Following Officers** (The corporation must list these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 7. CHIEF EXECUTIVE OFFICER/<br>ZHIPO CHEN | 3027 TEAGARDEN ST., SAN LEANDRO, CA 94577 | | | |
| 8. SECRETARY<br>REX W LIU | 3027 TEAGARDEN ST, SAN LEANDRO, CA 94577 | | | |
| 9. CHIEF FINANCIAL OFFICER/<br>SILY CHEN | 3027 TEAGARDEN ST., SAN LEANDRO, CA 94577 | | | |

**Names and Complete Addresses of All Directors, Including Directors Who are Also Officers** (The corporation must have at least one director. Attach additional pages, if necessary.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 10. NAME<br>CARRIE YU | 3027 TEAGARDEN ST, SAN LEANDRO, CA 94577 | | | |
| 11. NAME | | | | |
| 12. NAME | | | | |

13. NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY:

**Agent for Service of Process** If the agent is an individual, the agent must reside in California and Item 15 must be completed with a California street address, a P.O. Box address is not acceptable. If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 15 must be left blank.

14. NAME OF AGENT FOR SERVICE OF PROCESS  [Note: The person designated as the corporation's agent MUST have agreed to act in that capacity prior to the designation.]

REX WEIXUN LIU

15. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, **IF AN INDIVIDUAL**  CITY        STATE    ZIP CODE

3027 TEAGARDEN ST, SAN LEANDRO, CA 94577

**Type of Business**

16. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION

DOMAIN REGISTRATIONS

17. BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE CALIFORNIA SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| 07/24/2017 | REX W. LIU | SECRETARY | |
|---|---|---|---|
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |

SI-200 (REV 01/2013)                **Page 1 of 1**                APPROVED BY SECRETARY OF STATE

2151424

# ARTICLES OF INCORPORATION

**FILED**

in the Office of the Secretary of State
of the State of California

DEC 3   1999

*Bill Jones*

**BILL JONES, Secretary of State**

I

The name of this corporation is ONLINENIC .

II

The purpose of the corporation is to engage in any lawful act or activity for which a corporation may be organized under the **GENERAL CORPORATION LAW** of California other than the banking business, the trust company business or the practice of a profession permitted to be incorporated by the California Corporations Code.

III

The name and address in the State of California of this corporation's initial agent for service of process is:

Name ___MICHAEL YEE_____

Address___401 E. VALLEY SUITE 201_____

City SAN GABRIEL_____    State    CA_____    Zip _____91776_____

IV

This corporation is authorized to issue only one class of shares of stock; and the total number of shares which this corporation is authorized to issue is ___600,000,000___.

_____
/SHAOHUI GONG

*(Typed Name of Incorporator)*, Incorporator

*Secretary of State Sample*
*ARTS-GENERAL STOCK (1-99)*

**History**

Collapse All

---

**Statement of Information** - *4/4/2003*

| Amendment Type | Field Name | Changed From | Changed To |
|---|---|---|---|
| Statement of Information | Legacy Comment | Legacy number: 03667560 | |

Control ID
LBA8478861

Date
4/4/2003

Image Download
⊕ Download

---

**System Amendment - FTB Suspended** - *12/3/2001*

Amendment Type
System Amendment - FTB Suspended

Control ID
LBA8478860

Date
12/3/2001

---

**System Amendment - Penalty Certification - SI** - *12/4/2000*

| Amendment Type | Field Name | Changed From | Changed To |
|---|---|---|---|
| System Amendment - Penalty Certification - SI | Legacy Comment | SOS Certification | |

Control ID
LBA8478859

Date
12/4/2000

---

**System Amendment - SI Delinquency for the year of 0** - *8/10/2000*

Amendment Type
System Amendment - SI Delinquency for the year of 0

Control ID
LBA8478858

Date
8/10/2000

---

**Initial Filing** - *12/3/1999*

Amendment Type
Initial Filing

Control ID
2151424

Date
12/3/1999

Image Download
⊕ Download

03-667560



# State of California
## Kevin Shelley
## Secretary of State
### STATEMENT OF INFORMATION
#### (Domestic Stock Corporation)

**FILED**
in the office of the Secretary of State
of the State of California

APR  4 2003

KEVIN SHELLEY, SECRETARY OF STATE

This Space For Filing Use Only

**IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

1. CORPORATE NAME: (Please do not alter if name is preprinted.)

Online NIC, Inc.

C2151424

**CALIFORNIA CORPORATE DISCLOSURE ACT** (Corporations Code Section 1502)

2. ☐ CHECK HERE IF THE CORPORATION IS PUBLICLY TRADED.   IF PUBLICLY TRADED, COMPLETE THIS STATEMENT OF INFORMATION AND THE CORPORATE DISCLOSURE STATEMENT (FORM SI-PTSUPP). **SEE ITEM 2 OF INSTRUCTIONS.**

**NO CHANGE STATEMENT**

3. ☐ IF THERE HAS BEEN NO CHANGE IN ANY OF THE INFORMATION CONTAINED IN THE LAST STATEMENT OF INFORMATION FILED WITH THE SECRETARY OF STATE, CHECK THE BOX AND PROCEED TO ITEM 17.
IF THERE HAVE BEEN ANY CHANGES TO THE INFORMATION CONTAINED IN EITHER FORM, BOTH FORMS MUST BE COMPLETED IN THEIR ENTIRETY.

**COMPLETE ADDRESSES FOR THE FOLLOWING** (Do not abbreviate the name of the city. Items 4 and 5 cannot be PO Boxes.)

| | STREET ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| 4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | 2315   26th   Ave. | San Francisco, | CA 94116 |
| 5. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | 2315   26th   Ave. | San Francisco, CA | CA 94116 |
| 6. MAILING ADDRESS | 2315   26th   Ave. | San Francisco, | CA 94116 |

**NAMES AND COMPLETE ADDRESSES OF THE FOLLOWING OFFICERS** (The corporation must have these three officers. A comparable title for the specific officer may be added; however, please do not alter the preprinted title on this statement.)

| | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| 7. CHIEF EXECUTIVE OFFICER/ Shaohui Gong | 2315   26th   Ave. | SF, | CA 94116 |
| 8. SECRETARY/ Rex W. Liu | 2315   26th   Ave. | SF, | CA 94116 |
| 9. CHIEF FINANCIAL OFFICER/ Rex W. Liu | 2315   26th   Ave | SF, | CA 94116 |

**NAMES AND COMPLETE ADDRESSES OF ALL DIRECTORS, INCLUDING DIRECTORS WHO ARE ALSO OFFICERS** (The corporation must have at least one director. Attach additional pages, if necessary.)

| | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| 10. NAME Shaohui Gong | 7F   Int'l Trade Building, | Hubin Road, Xiamen, China | |
| 11. NAME Rex W. Liu | 2315   26th   Ave, | San Francisco, | CA 94116 |
| 12. NAME | ADDRESS | CITY AND STATE | ZIP CODE |

13. NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY:

**LIST THE AGENT FOR SERVICE OF PROCESS** (if an individual, the person named as agent must be a resident of California.)

14. CHECK THE APPROPRIATE PROVISION BELOW AND NAME THE AGENT FOR SERVICE OF PROCESS
[✓] AN INDIVIDUAL RESIDING IN CALIFORNIA.
[ ] A CORPORATION WHICH HAS FILED A CERTIFICATE PURSUANT TO CALIFORNIA CORPORATIONS CODE SECTION 1505.

AGENT'S NAME    Rex W. Liu

| 15. ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 2315   26th   Ave, | San Francisco, | CA | 94116 |

16. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION    Domain Registration Service

17. THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT    [✓] YES

| Rex W. Liu | | COO. | 4/3/03 |
|---|---|---|---|
| TYPE OR PRINT NAME OF OFFICER OR AGENT | SIGNATURE | TITLE | DATE |

SI-200 N/C (REV 01/2003)

Exhibit H
Entire Document Filed
Under Seal