**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Liana W. Chen (Bar No. 296965)
Leah Rosa Vulić (Bar No. 343520)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@kr.law
jeff@kr.law
liana@kr.law
leah@kr.law

Defendant Xiamen 35.com Technology Co., Ltd.
(erroneously sued as Xiamen 35.com Internet Technology Co., Ltd.)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **FACEBOOK, INC.**, et al., <br><br> Plaintiffs, <br><br> v. <br><br> **ONLINENIC INC.**, et al., <br><br> Defendants. | Case No. 3:19-cv-07071-SI <br><br> **DEFENDANT XIAMEN 35.COM TECHNOLOGY CO., LTD.'S SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE DEFENDANT'S ANSWER AND FOR ENTRY OF DEFAULT AGAINST DEFENDANT XIAMEN 35.COM TECHNOLOGY CO., LTD. PURSUANT TO FED. R. CIV. P. 37 (AKA PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT) [D.E. 299]** <br><br> Date: July 14, 2023 <br> Time: 10:00 a.m. <br> Ctrm: 1, 17th Floor <br> Judge: Hon. Susan Illston |

# TABLE OF CONTENTS

SUMMARY ........................................................................................................................ 1

EVIDENCE AT ISSUE ..................................................................................................... 1

    A. Contrary to the Reply, OnlineNIC and 35.CN Were Not a Unified Business ........ 1

    B. Contrary to the Reply, OnlineNIC was Independently Managed ......................... 3

    C. Contrary to the Reply, 35.CN's Evidence Disputes Plaintiffs' Other Arguments... 5

ARGUMENT ...................................................................................................................... 7

    A. Legal Standard ...................................................................................................... 7

    B. Portions of Plaintiffs' Reply Brief and Evidence Should Be Stricken ................... 8

    C. Plaintiffs' Citations are Inapposite, and Plaintiffs' Motion Should Be Denied ........ 8

CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

Cases

*21st Century Fin. Servs., LLC v. Manchester Fin. Bank*,
   255 F. Supp. 3d 1012 (S.D. Cal. 2017) .................................................................................. 8

*Claremont Press Pub. Co. v. Barksdale*,
   187 Cal. App. 2d 813 (Ct. App. 1960) ................................................................................... 9

*Clark v. California*,
   739 F. Supp. 2d 1168 (N.D. Cal. 2010) ................................................................................. 8

*Digby Adler Grp. LLC v. Image Rent a Car, Inc.*,
   79 F. Supp. 3d 1095 (N.D. Cal. 2015) ................................................................................... 7

*Min Prods. PTE. Ltd. v. FireForge, Inc.*,
   No. CV 14-941 DSF (SSX), 2017 WL 11635012 (C.D. Cal. Feb. 6, 2017) ......................... 7

*Oceans II, Inc. v. Skinnervision, Inc.*,
   No. 212CV06867CASEX, 2015 WL 4484208 (C.D. Cal. July 20, 2015) ............................ 9

*QC Labs v. Green Leaf Lab, LLC*,
   No. 8:18-cv-01451-JVS (JDEx), 2019 WL 6797250 (C.D. Cal. July 19, 2019) ......... 9, 10

*Tatung Co., Ltd. v. Shu Tze Hsu*,
   217 F. Supp. 3d 1138 (C.D. Cal. 2016) ................................................................................. 7

*Television Events & Mktg., Inc. v. AMCON Distrib., Co.*,
   484 F. Supp. 2d 1124 (D. Haw. 2006) .................................................................................. 7

*Wells Fargo Bank, N.A. v. Weinberg*,
   227 Cal. App. 4th 1 (2014) ................................................................................................ 8, 9

Rules

Fed. R. Civ. P. 56 ............................................................................................................. 7, 8

Fed. R. of Evid. 106 ............................................................................................................ 8

Fed. R. of Evid. 602 ............................................................................................................ 8

Fed. R. of Evid. 701 ............................................................................................................... 8

Fed. R. of Evid. 801 ............................................................................................................... 8

Civil L. R. 7-5(b) .................................................................................................................... 8

Pursuant to the Court's June 6, 2023 Order [D.E. 329], Defendant Xiamen 35.com Technology Co., Ltd. ("35.CN" or "Defendant") submits its Sur-Reply to Plaintiffs' Motion.

## SUMMARY

Plaintiffs' Motion and Reply cherry-pick so-called facts over decades but fail to overcome disputed material facts. [D.E. 324.] In particular, Plaintiffs' Reply raises new, unsupported "evidence" that OnlineNIC was controlled by a 35.CN employee/director, which is false and should be stricken. As outlined in the Opposition, discovery responses, and multiple declarations, OnlineNIC was not a unified business with 35.CN; rather, OnlineNIC was independently owned and managed, including by OnlineNIC's employee ▓▓▓▓▓▓ who was never an employee or director of 35.CN and instead ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓ Further, Plaintiffs' Reply misleadingly emphasizes that 35.CN "does not dispute" numerous issues, which is far from the truth or the record.

Plaintiffs' aggressive litigation tactics cannot conceal the facts disputing alter ego liability, including 35.CN's and OnlineNIC's separate ownership, management, finances, and ▓▓▓▓ in legitimate independent revenue through decades of providing distinct customers with valuable, separate services in different countries. At the very least, there are material facts in dispute that preclude the granting of Plaintiffs' Motion at this stage.

Accordingly, portions of Plaintiffs' Reply should be stricken, and Plaintiffs' Motion to find alter ego liability, i.e., motion for summary judgment, should be denied.

## EVIDENCE AT ISSUE

**A.    Contrary to the Reply, OnlineNIC and 35.CN Were Not a Unified Business**

As with their initial filings, Plaintiffs attempt to show that OnlineNIC/ID Shield were a unified business with 35.CN, largely through identification of claimed business transactions and loans that are cherry-picked over twenty years. However, Plaintiffs' self-serving conclusions lack foundation, and Plaintiffs' assumptions are not grounded in facts.

For example, Plaintiffs reiterate that OnlineNIC ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (e.g., Reply at 3, 5, 10.) However, this is not an undisputed fact but simply Plaintiffs' wild speculation. Looking closer, Plaintiffs' Reply misleadingly cites to their

1  Motion, which in turn cites to OnlineNIC's discovery responses about ▮▮▮ generally (an
2  ordinary part of typical business) over twenty years since 2009. (*See* Pls' Mot. Ex. 39.)
3  Thus, it is disputed that OnlineNIC needed this amount or did not generate that amount.
4      Similarly, Plaintiffs harp on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6  ▮▮▮▮▮ (e.g., Reply at 6, 9.). However, 35.CN produced ▮▮▮▮▮▮▮▮▮▮▮
7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ before the Reply
8  was filed. (Kronenberger Supp. Decl., citing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Further,
9  Plaintiffs' emphasis on this issue (payments to OnlineNIC) does not make sense as typical
10 alter ego claims would involve OnlineNIC funneling money to 35.CN to avoid paying a
11 potential judgment against OnlineNIC in the US (with 35.CN retaining the profits).
12     Importantly, as outlined in 35.CN's Opposition, public and discovery records for the
13 years 2009 to 2019 confirm that there was actually ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ relating to
14 OnlineNIC/ID Shield business with 35.CN, i.e., ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ with one company selling services to the
16 other (to clarify, the below diagram was not created to reflect "commingled" funds, as there
17 were no commingled funds, despite Plaintiffs' baseless assertion in their Reply fn. 15); in
18 fact, records show that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See also* Supp. Yu Decl. ¶2.)



25 In Plaintiffs' Motion and Reply, they identified about ▮▮▮▮▮▮ as the amount of money
26 exchanged between 35.CN and OnlineNIC through service contracts or loans/repayments
27 (Supp. Kronenberger Decl. ¶4 & Ex. B), which is powerful evidence that the two companies

---

[1] *See* summary of public 35.CN records and OnlineNIC's produced documents.

1  were running independent businesses. In other words, even if there was not pristine
2  documentation for certain transactions over this twenty-year time period (which is disputed,
3  given the documents produced to Plaintiffs), that would only account for a mere fraction of
4  the companies' independent businesses during that timeframe. Therefore, Plaintiffs'
5  magnifying of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
6  ▓▓▓▓▓▓▓▓ which were not unified. At most, there are material facts in dispute.

**B.  Contrary to the Reply, OnlineNIC Was Independently Managed**

Despite arguing in its Reply (fn. 1) that declarations must be based on personal knowledge, large portions of Plaintiffs' Reply and supporting attorney declaration and exhibits (primarily OnlineNIC records, attached and translated without foundation and taken out of context) are not based on personal knowledge and should be stricken. Further, Plaintiffs' fanciful, false narratives from these exhibits, as outlined in 35.CN's objections to the Reply [D.E. 327], do not prove that OnlineNIC was managed by 35.CN.

In particular, Plaintiffs attached **Reply Exhibit 4** ("Organization Chart" produced by OnlineNIC in Chinese) to argue Minghe Wang (an OnlineNIC employee) instead worked for 35.CN as the "director" of 35.CN's "Software Outsourcing Center." (Reply at 8.) However, Plaintiffs are aware—contrary to the Reply conclusions—that Minghe Wang ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Supp. Yu Decl. ¶5 & Ex. A.) Moreover, Minghe Wang not only lacks any connection to 35.CN in China, he ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Supp. Yu Decl. ¶5.) Plaintiffs withheld this key information from the Court while they falsely argued that Minghe Wang was working for 35.CN as a "director." (Reply at 8; Supp. Kroll Decl. ¶8.) In fact, despite Plaintiffs' allegations, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Supp. Yu Decl. ¶5.)

Likewise, Plaintiffs attached **Reply Exhibits 1-3** (translated "Statement of Work,"

1  "Performance Appraisal Form," and "Employee Training Plan") produced by OnlineNIC in
2  Chinese) to argue "undisputed facts show that 35.CN" was "responsible for hiring, training,
3  reviewing, paying and providing office space" for OnlineNIC. (Reply at 8.) However,
4  Plaintiffs' conclusions from translations, without any foundation or personal knowledge, are
5  false. In truth, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7  (Supp. Yu Decl. ¶4; Supp. Weiwei Decl. ¶2.)[2]

8       Similarly, Plaintiffs assert in the Reply that 35.CN does not "dispute that all of
9  OnlineNIC's managers (who are employees of 35.CN) report to Ms. Yu (a 35.CN
10 employee) . . . and not to Zhipo Chen, the purported owner and CEO of OnlineNIC." [D.E.
11 324 at 7:14-17.] In fact, both Yu Hongxia and Zhang Weiwei provided declarations
12 confirming that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13 ▮▮▮▮ [D.E. 318-2 ¶3 & 318-3 ¶2]; and this is consistent with OnlineNIC's discovery
14 responses and deposition testimony. [D.E. 318-1 Ex. F, Rogs 4, 7]; (Supp. Yu Decl. ¶4.)

15      In addition, Plaintiffs' **Reply Exhibit 5** ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16 ▮▮▮▮▮▮▮ and **Exhibits 6-7** (excerpts of deposition transcript of OnlineNIC's 30(b)(6))
17 are used to frame Plaintiffs' conclusory assumptions without knowledge or foundation. For
18 example, Plaintiffs claim OnlineNIC's deposition shows that OnlineNIC's managers were
19 35.CN employees who reported to 35.CN (Reply at 7), but the deposition actually
20 confirmed that there was a separate ▮▮▮▮▮▮▮▮▮▮▮ overseeing the work and business
21 contracts (and that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). (Supp. Yu Decl.
22 ¶6 & Ex. B.) Plaintiffs also assert that Zhipo Chen (OnlineNIC CEO) lacks ▮▮▮▮
23 ▮▮▮▮▮ (Reply at 8), but Plaintiffs are speculating without foundation as to what
24 qualifications were needed. Finally, Plaintiffs attack purported lack of written instructions
25 from OnlineNIC, but fail to identify proportional discovery requests or consider ▮▮▮
26 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* Supp. Yu Decl. ¶6 & Ex. B.)

---

[2] Given Plaintiffs' overbroad discovery requests, the fact that documents were produced does not equate to laying foundation or knowledge, or even relevance or admissibility.

Based on discovery, deposition transcripts, and multiple declarations, OnlineNIC was independently managed and not simply an arm or sham for 35.CN. Plaintiffs' Reply exhibits and arguments are merely attorney rhetoric and not undisputed facts.

**C.    Contrary to the Reply, 35.CN's Evidence Disputes Plaintiffs' Other Arguments**

Plaintiffs misleadingly argue in their Reply that "35.CN does not dispute" key factual and legal issues over 25 times. Yet, 35.CN clearly disputes these issues, or the implication of these issues, in its Opposition. In fact, 35.CN provided a summary chart to demonstrate that each of Plaintiffs' points are disputed. [D.E. 318-1, Prior Declaration of Karl Kronenberger, Ex. A.] To further clarify these disputes, 35.CN is providing a supplemental summary exhibit to specify the evidence relied upon. (Supp. Kronenberger Decl., Ex. A.)

Specifically, the Reply (at 1-2) falsely claims 35.CN does not dispute eight issues.

**First**, contrary to Plaintiffs' Reply, 35.CN contests that ID Shield is an alter ego, consistent with its position throughout this litigation. (*See e.g.,* Opp. at 4, 6.).

**Second**, contrary to Plaintiffs' claims about OnlineNIC's lack of corporate formalities, 35.CN confirmed OnlineNIC had filed corporate documents. [D.E. 318-1, Kronenberger Decl. ¶9, Ex. G; OnlineNIC response to RFP 25, citing ONLINENIC71-74.][3]

**Third**, despite Plaintiffs' claims about lack of arms' length transactions, Defendants produced evidence of legal formalities, including for the sale of OnlineNIC to an unrelated third party, the outsourcing agreement, and transactions. [*See* D.E. 318-1 ¶3 & Exs. C-F.]

**Fourth**, despite claims that all employees reported to 35.CN, OnlineNIC ownership and management were not affiliated with 35.CN, and there were separate offices. [*See* D.E. 318-1 Ex. F, Rog 9; 318-2 ¶¶7-9]; (Supp. Yu Decl. ¶6.) Plaintiffs' sloppy conclusions from translations are not based on personal knowledge or admissible evidence.

**Fifth**, 35.CN expressly disputes that it commingled money with OnlineNIC (and that OnlineNIC used money for non-corporate uses), which rebuttal was to a generalized

---

[3] Although Plaintiffs broadly requested nearly every corporate and business record throughout discovery, OnlineNIC/ID Shield understandably objected to numerous requests and may have only produced records that were responsive to relevant requests.

1  allegation not based on facts. (*See* Opp. at 7-8.) For example, the companies had ▮

2  ▮

3  ▮ (*Id.*) While Plaintiffs claim to need additional declarations from OnlineNIC, they

4  overlook the multiple declarations and records provided by 35.CN (including on ▮

5  ▮ as well as 35.CN's lack of control over OnlineNIC individuals. In

6  other words, Plaintiffs have not proven commingling to support alter ego on a dispositive

7  motion, especially as they rope in payments under an arm's length contractual relationship.

8  **Sixth**, the evidence shows OnlineNIC was adequately capitalized and generated

9  ▮ in legitimate separate business, as outlined above, which was reasonable

10 capitalization (and Plaintiffs' drawn-out discovery sanctions and fees were not anticipated).

11 Plaintiffs' misguided assertions ignore the robust ▮ tax records produced by

12 OnlineNIC, showing ▮ [*See e.g.,* D.E. 299-2 Exs. 23-33; 318-

13 1 Ex. F; (Supp. Yu Decl. ¶2.) Thus, this case is not akin to Plaintiffs' alter ego examples.

14 **Seventh**, the evidence, including detailed Chinese public offering records, shows

15 that OnlineNIC and 35.CN had ▮

16 [*E.g.,* D.E. 318-1 Exs. C-F; 318-2 ¶¶7-11.] Plaintiffs raise testimony from a prior translated

17 deposition years ago to question whether ▮

18 ▮ at most, this

19 demonstrates a disputed material fact that cannot be resolved at this stage.

20 **Eighth**, 35.CN disputes Plaintiffs' assertion that discovery and terminating

21 sanctions are warranted, a position recognized by the Discovery Order [D.E. 286].

22 Although Plaintiffs imply a connection with Ms. Yu testifying for OnlineNIC (when she was

23 a 35.CN employee), Plaintiffs were informed that ▮

24 ▮

25 ▮ (Supp. Yu Decl. ¶6.)

26 35.CN's Deputy General Manager further confirmed that 35.CN did not control or

27 participate in the purported "destruction of evidence" as alleged against OnlineNIC/ID

28 Shield; and in fact, ▮

Case No. 3:19-cv-07071-SI     6     **DEF 35.CN'S SUR-REPLY IN OPP TO PLTFS' MTN TO STRIKE/MSJ**

1   ██████████████████████████████████████████). [D.E. 318-3 ¶5.][4]

## ARGUMENT

### A. Legal Standard

The Court is treating Plaintiffs' "Motion to Strike" as a dispositive motion for summary judgment. [D.E. 329.] Thus, pursuant to Federal Rule of Civil Procedure 56, it is Plaintiffs' burden (which is undisputed) to show, with admissible evidence and based on the record, that there is no genuine dispute as to any material fact and that Plaintiffs are entitled to judgment as a matter of law. Plaintiffs' Reply (at 2) supports this summary judgment treatment as Plaintiffs ask the Court to rule on its "dispositive motion" through its power to weigh evidence, hold evidentiary hearings, and make credibility determinations.

Plaintiffs have failed to meet their burden, including due to the number of disputed material facts relating to alter ego (and the fact that there was no judgment on the merits against OnlineNIC/ID Shield). *See e.g., Digby Adler Grp. LLC v. Image Rent a Car, Inc.,* 79 F. Supp. 3d 1095, 1107-08 (N.D. Cal. 2015) (finding it inappropriate to grant summary judgment on issue of alter ego, after drawing inferences in favor of the non-moving party, and finding it inappropriate to determine credibility of evidence and witnesses at the summary judgment stage); *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1178 (C.D. Cal. 2016) (finding triable issue of material fact on alter ego claim, despite defendants owning no shares, which was not dispositive); *Television Events & Mktg., Inc. v. AMCON Distrib., Co.,* 484 F. Supp. 2d 1124, 1142 (D. Haw. 2006) (noting alter ego issue should ordinarily not be disposed of by summary judgment given complex questions often involved); *Min Prods. PTE. Ltd. v. FireForge, Inc.,* No. CV 14-941 DSF (SSX), 2017 WL 11635012, at *2 (C.D. Cal. Feb. 6, 2017) (ordering bench trial on alter ego liability to assess credibility and weigh conflicting testimony and evidence); *21st Century Fin. Servs., LLC v. Manchester Fin. Bank*, 255 F. Supp. 3d 1012, 1021-22 (S.D. Cal. 2017) (recognizing alter

---

[4] 35.CN, a public company in China, also still disputes personal jurisdiction over it, despite Plaintiffs' claim that personal jurisdiction exists due to an alter ego relationship with OnlineNIC/ID Shield. There are only minimal (unrelated) US contacts, and there is no alter ego relationship for personal jurisdiction or discovery sanctions.

ego liability is an extreme remedy that should be approached with caution).

Plaintiffs have not, and cannot, meet their legal burden on summary judgment.

### B. Portions of Plaintiffs' Reply Brief and Evidence Should Be Stricken

As outlined in 35.CN's prior objections [D.E. 327], Plaintiffs' Reply and related evidence should be stricken as improper new evidence that is conclusory and without personal knowledge or foundation. *See also Clark v. California*, 739 F. Supp. 2d 1168, 1223 n.14 (N.D. Cal. 2010) (declining to consider new evidence); Civil Local Rule 7-5(b) (declarations should contain facts and avoid conclusions); Fed. R. Civ. P. 56(e).

Specifically, Plaintiffs used their Reply memorandum to introduce new evidence and proffer speculative conclusions about other Defendants' documents in Chinese (in particular, Exhibits 1-4 to the Reply Kroll Declaration). This "evidence" should be stricken under Federal Rule of Evidence 106 (incomplete evidence), 602 (lack of knowledge), 701 (speculation), 801 (hearsay), and 901 (lack of foundation), as well as Federal Rule of Civil Procedure 56 (lack of competency, admissibility, and personal knowledge). Likewise, Plaintiffs' Reply brief, which draws aggressive conclusions based on these exhibits, is not based on any admissible evidence and should be stricken (in part, as outlined).

### C. Plaintiffs' Citations are Inapposite, and Plaintiffs' Motion Should Be Denied

Contrary to Plaintiffs' Reply, 35.CN and the evidence in the record dispute Plaintiffs' key factual and legal arguments and implications, as outlined above and in the Opposition.

Following their pattern of pulling pieces of the record out of context, Plaintiffs' Reply misconstrues several alter ego cases. For example, Plaintiffs cite to caselaw on the issue of lack of corporate minutes and shares but fail to mention that those are just one factor. For example (and without waiving OnlineNIC/ID Shield's objections to Plaintiffs' overbroad discovery on these issues), the *Wells Fargo Bank, N.A. v. Weinberg*, 227 Cal. App. 4th 1 (2014) case (relied on by Plaintiffs) actually involved a motion to add an individual as a judgment debtor where, after close court questioning of the individual, the court found that the personal and business expenses were not separate. *Id.* at 4-9. Likewise, in *Claremont Press Pub. Co. v. Barksdale*, 187 Cal. App. 2d 813 (Ct. App. 1960), the court noted that

1  while it may have reached a different conclusion, it would defer to the trial court where only
2  $500 of capital was contributed to a venture that incurred much higher costs per week. *Id.*
3  at 816-817. These examples are clearly distinguishable from this case.

4  Similarly, Plaintiffs misconstrue the case *Oceans II, Inc. v. Skinnervision, Inc.,* No.
5  212CV06867CASEX, 2015 WL 4484208 (C.D. Cal. July 20, 2015) to argue that lack of
6  issuing stock certificates indicates undercapitalization and warrants a finding of alter ego.
7  In fact, that case confirmed that alter ego is a question of fact that depends on the
8  circumstances and that injustice is required even if there is sufficient unity of interest (and
9  that difficulty enforcing or collecting a debt does not satisfy this standard). *Id.* at *4.
10 Furthermore, *Oceans II* involved a "near-complete disregard for corporate formalities"
11 where most of the corporation's board members were the individual's own children, two of
12 whom were minors; the individual falsely represented he could fund a project for $12 million
13 when capitalization was only $15,000 to $20,000; and the company "never" did any of the
14 following: made money, filed tax returns, filed annual reports, paid annual corporate fees,
15 or had formal employees. *Id.* at *4-5. That is far from the case here where OnlineNIC had
16 its own separate ownership/management (including Minghe Wang ████████████████
17 ████████████████████████████████████████████████████████████████ separate
18 from ████████████████) and produced corporate filings and tax returns. *Supra.*

19 Further, Plaintiffs cite to *QC Labs v. Green Leaf Lab, LLC*, No.
20 818CV01451JVSJDEX, 2019 WL 6797250, at *8-10 (C.D. Cal. July 19, 2019) to argue that
21 courts routinely make alter ego findings to resolve discovery disputes and sanctions.
22 (Reply at 15.) However, that case dealt with compelling a non-party to produce documents
23 where the defendant pointed to "no evidence" in support of its claim of separateness, and
24 there was evidence that the CEO was the same person as the other company's sole
25 member/owner, both entities shared the same "Green Leaf" name in the same field, the
26 entities shared a website and social media accounts, the claims related to use of the same
27 mark, and the entities had filed a separate lawsuit alleging they were affiliated; and still,
28 the court was careful to note that the discovery finding did not constitute a general finding

of "alter ego." *Id.* at *8–10 (citing another case in which the third-party "sham" entity had no employees, revenue, costs, financials, or tax returns). This is clearly distinguishable.

Moreover, taking a step back from the cherry-picked facts that Plaintiffs pulled from decades of records, this is not the typical case of alter ego; most cases, including those cited by Plaintiffs, involve individual owners of companies, or sometimes parents/subsidiaries, where there is essentially no separation of the "shell" company and the alter ego. By contrast, here, unlike the common "sham" company that funnels money up to the individual owner or parent entity to avoid liability, OnlineNIC and 35.CN were generating independent revenue from distinct and established businesses; additionally, OnlineNIC was not generating much revenue for 35.CN, as outlined above.

Plaintiffs have had years of extensive discovery, including hundreds of written discovery responses by OnlineNIC, ID Shield, and 35.CN, and two days of OnlineNIC's deposition. Plaintiffs also proactively filed their "dispositive" motion at this stage (after learning that 35.CN intended to file its own motion for summary judgment), despite clear material facts on alter ego that are disputed by the record. Clearly, Plaintiffs' goal has been to attach OnlineNIC/ID Shield's discovery sanctions onto 35.CN in a streamlined "discovery" motion without litigating the merits of this case, including the alter ego issues. However, considering all of the evidence and factors relevant to alter ego liability, Plaintiffs have failed to meet their burden of showing that summary judgment is appropriate on this issue (which is separate from 35.CN's anticipated motion for summary judgment on the issue of secondary liability, which will resolve nearly all of Plaintiffs' claims and will be filed once Plaintiffs finish their document productions and discovery responses on that issue).

Accordingly, Plaintiffs' "dispositive" Motion on alter ego should be denied with prejudice and without the ability for Plaintiffs to re-file another dispositive motion.

## CONCLUSION

For all the foregoing reasons, including triable issues of fact on alter ego claims (and lack of merit on underlying claims), 35.CN requests that Plaintiffs' Motion be denied.

//

Respectfully Submitted,

Dated: June 23, 2023

**KRONENBERGER ROSENFELD, LLP**

By:   s/ Karl S. Kronenberger
         Karl S. Kronenberger

Attorneys for Defendant Xiamen 35.com Technology Co., Ltd.