1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

7 FACEBOOK, INC., et al.,                          Case No. 19-cv-07071-SI

8                          Plaintiffs,

9           v.                                     **ORDER GRANTING PLAINTIFFS'
                                                   MOTION FOR SUMMARY
10 ONLINENIC INC, et al.,                          JUDGMENT ON ALTER EGO;
                                                   STRIKING 35.CN'S ANSWER**
11                          Defendants.
                                                   RE: Dkt. No. 299
12

13          Now before the Court is whether defendant Xiamen 35.com Technology Co., Ltd. ("35.CN")

14 should be found an alter ego of the "OnlineNIC defendants."[1]  The Court held a hearing on the

15 matter on July 11, 2023.

16          Based on the voluminous records submitted by plaintiffs along with 35.CN's failure to

17 designate facts showing a genuine issue for trial, the Court hereby finds that 35.CN and the

18 OnlineNIC defendants are alter egos of each other.  Accordingly, the terminating sanctions that have

19 issued in this case against the OnlineNIC defendants are extended to 35.CN as well.[2]

20

21

22

23          [1] The OnlineNIC defendants are comprised of defendants OnlineNIC Inc. ("OnelineNIC")

24 and Domain ID Shield Service Co. ("ID Shield").

25          [2] The Court has filed this Order under seal because it contains material subject to sealing

26 orders.  The Court will rule separately on the various sealing motions.  **Within seven days of the
   filing date of this Order, the Parties shall provide the Court a stipulated redacted version of**

27 **the Order,** redacting only those portions of the order containing or referring to material subject to

28 a sealing order and for which the Parties still request the material be sealed.  The Court will then
   issue a redacted version of this Order.

United States District Court
Northern District of California

**BACKGROUND**

Plaintiffs Facebook, Inc. and Instagram, LLC filed their original complaint in 2019 against ID Shield and OnlineNIC. Dkt. No. 1. The case was assigned to Magistrate Judge van Keulen.

On March 3, 2021, following numerous discovery disputes, Judge van Keulen appointed Thomas Howe as Special Discovery Master ("Special Master") to determine: (1) whether defendants OnlineNIC and ID Shield's past productions were adequate and (2) and whether defendants destroyed or withheld data. Dkt. No. 72.

On March 24, 2021, Judge van Keulen granted plaintiffs' motion for leave to file a first amended complaint to add 35.CN as a defendant. Dkt. No. 81. On March 31, 2021, plaintiffs filed the first amended complaint ("FAC"), adding 35.CN. Dkt. No. 84.

On June 1, 2021, plaintiffs filed their second amended complaint ("SAC"), which is now the operative complaint. Dkt. No. 109. The SAC alleges four causes of action against all three defendants for: (1) Cybersquatting Plaintiffs' Trademarks, 15 U.S.C. § 1125(d) (the Anticybersquatting Consumer Protection Act ("ACPA")); (2) Trademark and Service Mark Infringement, 15 U.S.C. §1114; (3) Trademark and Service Mark Infringement and False Designation of Origin, 15 U.S.C. § 1125(a); and (4) Dilution of Trademarks, 15 U.S.C. § 1125(c). *Id.* ¶¶ 76-137. Both the FAC and SAC alleged that 35.CN and the OnlineNIC defendants were alter egos of each other. *See, e.g.,* FAC ¶ 12; SAC ¶ 12. Further detail on the factual allegations can be found in Judge van Keulen's Report and Recommendation, Dkt. No. 225.

On July 12, 2021, the Special Master filed his report. Dkt. No. 115 ("Special Master's Report" or "SMR"). On July 20, 2021, plaintiffs and the OnlineNIC defendants filed statements of non-opposition to the SMR. Dkt. Nos. 125, 126.

To briefly summarize, the Special Master found "ample evidence that Defendants [OnlineNIC and ID Shield] failed to preserve responsive ESI, deleted ESI, and withheld ESI." SMR at 2. The Special Master found the OnlineNIC defendants did this on a massive scale, and that they failed to preserve ESI "pre-litigation, post complaint filing, during discovery, and even after the appointment of Special Master." *Id.* at 17. The Special Master also determined that the OnlineNIC defendants engaged in underhanded tactics to avoid producing responsive documents, such as data

dumping, using inconsistent date ranges and search terms, and misleading the Special Master or failing to respond to his requests. Dkt. No. 276 at 6 (citing SMR at 19, 30-31, 35). The Special Master concluded: "Briefly put, Defendants did not do what they should have done (preserve and produce responsive ESI) yet did do what they should not have done (delete and obfuscate). Based on the sum of the evidence, Special Master concludes Defendants' behavior was intentional." SMR at 39. The Special Master also concluded that the OnlineNIC defendants "caused irreparable harm to Plaintiffs through permanently deleted responsive database records and attachment files, that they will never see or know the contents." *Id.* at 40.

On July 13, 2021, plaintiffs filed a motion to strike the OnlineNIC defendants' answer and for default judgment. Dkt. No. 117. On or around August 17, 2021, plaintiffs served the SAC on 35.CN. Dkt. No. 165 at 1.

On September 28, 2021, the action was reassigned to the undersigned. Dkt. No. 173. Plaintiffs re-noticed their motion to strike, and this Court referred the motion to Judge van Keulen. Dkt. Nos. 176, 193. 35.CN filed a motion to dismiss, which this Court denied in an order dated January 18, 2022. *See* Dkt. Nos. 174, 207. Among other things, the Court found that the SAC raised "serious questions about how the defendants are related for purposes of surviving a motion to dismiss and the Court [found] plaintiffs [had] made a prima facie showing of alter ego . . . ." Dkt. No. 207 at 7-8.

On March 28, 2022, Judge van Keulen issued her Report and Recommendation, recommending the undersigned grant the motion for terminating sanctions against the OnlineNIC defendants. Dkt. No. 225. Judge van Keulen set out, and adopted as her own, the key findings of the SMR in her Report and Recommendation. *Id.* at 4-9. All three defendants filed objections to the Report and Recommendation and requested de novo review of plaintiffs' motion for sanctions/default judgment. Dkt. Nos. 228, 229.

In orders issued October 17 and December 16, 2022, the undersigned adopted Judge van Keulen's Report and Recommendation (Dkt. No. 225), with the exception of Section IV ("Relief"). Dkt. Nos. 276, 291. On December 16, 2022, the Court entered default against OnlineNIC and ID Shield. Dkt. No. 291.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

On March 3, 2023, plaintiffs filed the present "Motion to Strike Defendant's Answer and for Entry of Default Against Defendant Xiamen 35.Com Internet Technology Co., Ltd. Pursuant to Fed. R. Civ. P. 37." Dkt. No. 299 ("Mot."). Plaintiffs move for an order striking 35.CN's answer and entering default against 35.CN. Plaintiffs argue that 35.CN is the alter ego of the OnlineNIC defendants under a "single-business-enterprise" theory, and that 35.CN is therefore subject to the Court's prior orders entering default against the OnlineNIC defendants for their discovery violations. 35.CN filed an opposition brief arguing, *inter alia*, that plaintiffs' motion to strike was "an attempt at a streamlined motion for partial summary judgment with an arguably easier burden of proof." Dkt. No. 318 ("Opp'n") at 11. Plaintiffs filed a reply, and 35.CN filed an objection, in which it requested leave to file a sur-reply. Dkt. Nos. 324 ("Reply"), 327.

On June 6, 2023, the Court issued an order notifying the parties of its intent to treat plaintiffs' motion to strike as one for summary judgment and granting 35.CN leave to file a sur-reply. Dkt. No. 329. 35.CN has filed its sur-reply, and plaintiff have filed objections to the sur-reply. Dkt. Nos. 335, 341. At the parties' request, the Court held an in-person hearing on July 11, 2023.

## LEGAL STANDARDS

### I.    Summary Judgment

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show

4

that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c).

## II.    Alter Ego

"In determining whether alter ego liability applies, we apply the law of the forum state." *In re Schwarzkopf*, 626 F.3d 1032, 1037 (9th Cir. 2010) (citing *Towe Antique Ford Found. v. I.R.S.*, 999 F.2d 1387, 1391 (9th Cir. 1993)). Here, both parties agree that the law of California applies.

In California, "[t]he law as to whether courts will pierce the corporate veil is easy to state but difficult to apply." *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1248 (1991) (quoting *Talbot v. Fresno-Pacific Corp.*, 181 Cal. App. 2d 425, 432 (1960)). "Whether the evidence has established that the corporate veil should be ignored is primarily a question of fact which should not be disturbed when supported by substantial evidence." *Id.* (citation omitted).

The California Court of Appeal has explained the single-enterprise theory as follows:

> Generally, alter ego liability is reserved for the parent-subsidiary relationship. However, under the single-enterprise rule, liability can be found between sister companies. The theory has been described as follows: "In effect what happens is that the court, for sufficient reason, has determined that though there are two or more personalities, there is but one enterprise; and that this enterprise has been so handled that it should respond, as a whole, for the debts of certain component elements of it. The court thus has constructed for

> purposes of imposing liability an entity unknown to any secretary of state comprising assets and liabilities of two or more legal personalities; endowed that entity with the assets of both, and charged it with the liabilities of one or both."

*Id.* at 1249-50 (citations omitted).

"In California, common principles apply regardless of whether the alleged alter ego is based on piercing the corporate veil to attach liability to a shareholder or to hold a corporation liable as part of a single enterprise." *Toho-Towa Co., Ltd. v. Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096, 1108 (2013). The list of factors the trial court may consider include:

> the commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one as a mere shell or conduit for the affairs of the other. No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied.

*Id.* at 1108-09 (citations and internal quotation marks omitted). The party asserting alter ego liability has the burden of proof. *UA Loc. 343 United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, AFL-CIO v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994). Thus, plaintiffs here have the burden of establishing a prima facie case on their motion for summary judgment. *See id* (citations omitted).

## DISCUSSION

Both sides have come forward with numerous exhibits and declarations. Upon examination, the Court finds: much of 35.CN's "evidence" is actually inadmissible; 35.CN does not rebut much of the evidence that plaintiffs have presented; and 35.CN's briefs make sweeping assertions that are unsupported by any evidence. 35.CN's inability to be forthcoming on basic questions, such as who purchased OnlineNIC from the companies' shared founder, have created a maze for the Court to navigate. The confusion is compounded by 35.CN's practice of citing to entire groups of exhibits, without page cites, to support its positions.[3] Having reviewed the briefs and the evidence on which

---

[3] For instance, 35.CN submits a laundry list of all the ways it contends OnlineNIC and 35.CN are separate companies. *See* Opp'n at 7-8. The individual items in the list contain no citations.

United States District Court
Northern District of California

the briefs rely, the Court is satisfied that plaintiffs have carried their burden and shown that no genuine dispute of material fact exists, and that the alter ego factors weigh in favor of finding that 35.CN is the alter ego of the OnlineNIC defendants, under a single-enterprise theory.

The Court will review the relevant factors in turn.

## I.    Alter Ego Liability

### A.    Corporate Ownership and Management

In California, one of the factors courts may consider in weighing alter ego liability is "the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest . . . ."  *Bank of Montreal v. SK Foods, LLC*, 476 B.R. 588, 598 (N.D. Cal. 2012) (citing *Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 811-12 (2010)), *aff'd sub nom. Bank of Montreal v. Salyer*, 599 F. App'x 706 (9th Cir. 2015).  Here, despite several years of litigation and voluminous briefing, it remains unclear who owns OnlineNIC and whether OnlineNIC and 35.CN's founder remains involved in OnlineNIC.  The Court thus finds there is no genuine dispute of material fact that 35.CN and OnlineNIC have concealed and misrepresented the identity of the responsible ownership and management.

It is undisputed that OnlineNIC and 35.CN were founded by the same person, Shaohui Gong, approximately five years apart.  Both companies are domain name registrars, accredited by the Internet Corporation for Assigned Names and Numbers ("ICANN").  In 1999, Mr. Gong established OnlineNIC, which is incorporated in California.  Dkt. No. 299-2 ("Kroll Decl."), Ex. 15 (Articles of Incorporation, listing Shaohui Gong as Incorporator).  In 2004, Mr. Gong formed 35.CN in China.  Opp'n at 4 (citing Dkt. No. 174-2, Narancic Decl., Ex. C-D).  In 2007 or 2009,[4] 35.CN became a publicly traded company in China.

---

Rather, at the end of the list, 35.CN cites to Weiwei Decl. ¶¶ 2-5, Yu Decl. ¶¶ 3-11, and Kronenberger Decl. Ex. A-H (which total roughly 300 pages).  In other words, 35.CN cites to <u>everything</u> it submitted in support of its opposition brief, save a handful of paragraphs from two declarations.  *See also* Opp'n at 19-20 (citing same).

[4] 35.CN's opposition brief refers to two different years for when 35.CN went public: 2007 and 2009.  *See* Opp'n at 2, 5.  For the purposes of this motion, the Court will accept as true 35.CN's representation that Mr. Gong sold OnlineNIC *before* 35.CN went public.

United States District Court
Northern District of California

United States District Court
Northern District of California

**OnlineNIC Ownership:**

Earlier in the litigation of this case, before 35.CN became a party, OnlineNIC took the position that Mr. Gong sold OnlineNIC to Zhipo Chen in 2009.  OnlineNIC took this position in its written discovery responses and through its designated Rule 30(b)(6) deponent, Carrie Yu.[5]  In its discovery responses, OnlineNIC listed Shaohui Gong and Zhipo Chen as the only shareholders and owners of OnlineNIC since 2009.[6]  Kroll Decl. ¶ 39, Ex. 20 at 5-6 (Interrogatory No. 5).  In July 2021, Ms. Yu testified on behalf of OnlineNIC that Mr. Gong sold his shares in OnlineNIC to Zhipo Chen at the end of 2009 for $50,000 pursuant to an oral contract.  Kroll Decl., Ex. 7 ("Yu Dep. I") at 29:24-30:1, 32:1-3; Kroll Decl., Ex. 8 ("Yu Dep. II") at 12:6-13:6, 39:10-18.

Specifically, on the first day of her deposition, Ms. Yu testified as follows:

> Q.    Who purchased OnlineNIC in 2009?
>
> A.    In the end of 2009, Zhipo Chen purchased OnlineNIC from Shaohui Gong.
>
> . . .
>
> Q.    And Mr. Shaohui Gong is the individual who sold OnlineNIC to Zhipo Chen in 2009, correct?
>
> A.    Yes.
>
> Q.    How many times did you speak with Shaohui Gong in preparation for this deposition?
>
> A.    One time.
>
> . . .
>
> Q.    What did you discuss?
>
> A.    One thing was to confirm that he did sell OnlineNIC in 2009. I would like to verify that for the record again.

Yu Dep. I at 29:24-30:1, 32:1-17.

---

[5] Carrie Yu also goes by Hongxia Yu and Carrie Arden.  Kroll Decl., Ex. 6 at 6 (Requests for Admissions Nos. 18-20).  For simplicity, the Court will refer to her as "Ms. Yu."

[6] Different documents refer to her as Zhipo Chen or Zhippo Chen.  The Court understands these to be the same person.

On the second day of her deposition, Ms. Yu confirmed the prior day's testimony:

[Question omitted.]

A.    Let me explain my responses yesterday.    It might have involved misunderstanding on my part and also misunderstanding on your part, or some unclear expressions.

Yesterday, after the deposition, I talked to Zhipo Chen and Shaohui Gong regarding the agreement pertaining to the sales of OnlineNIC, and I thought there was a paper form of agreement or a kind of written or paper form of contract.  I thought there would be a contract of this sort.

But yesterday, when I was clarifying with them, they told me that no written agreement or contract existed, it was just an oral agreement between them.  Nothing was put down on paper. So, yesterday, when I gave that response saying that there was a contract or an agreement, I thought there was something written down on paper.

In Chinese, the word for "agreement" or the phonetic spelling "xie yi," could be understood or interpreted as an oral agreement or a written agreement or a written contract, so I think that's a deviation or difference in between the Chinese and the English languages.

So, yesterday, when I talked to Shaohui Gong and Zhipo Chen after my deposition about this agreement or contract, they told me that it was just an oral agreement, nothing was written down or put into a contract form or a written agreement or contract. So that was, maybe, a misrepresentation on my part yesterday.

. . .

Q.    How much money was paid by her to Shaohui Gong for the purchase of OnlineNIC?

A.    Based on the information I got from Zhipo Chen, it was a small amount of money.

Q.    How much is a small amount of money?

A.    It seems like it was around 50,000 USD.

Q.    And Ms. Chen paid Shaohui Gong $50,000 in 2009 or 2010, is that correct?

A.    Based on what I know, yes.

Yu Dep. II at 12:6-13:6, 39:10-18.

35.CN's position, by contrast, is that Mr. Gong sold OnlineNIC to Rex Liu in 2007.  In discovery, 35.CN produced a "Securities Purchase Agreement" that it says shows Mr. Gong sold OnlineNIC to Rex Liu for $████ in November 2007.  Kroll Decl. ¶ 38 & Ex. 19.  35.CN has also

9

1    come forward with several declarations from Ms. Yu, recanting her prior deposition testimony.  Ms.

2    Yu explains that she is an employee of 35.CN, serving as "a 'director' of the 35.CN software

3    outsourcing department[.]"  Dkt. No. 318-2 ("Yu Decl.") ¶¶ 1, 4.  She explains that she has "worked

4    in customer service and sales for Defendant OnlineNIC Inc. pursuant to a staffing agreement

5    between 35.CN and OnlineNIC."  *Id.* ¶ 3.

6        In the filings in support of 35.CN's opposition brief, Ms. Yu now declares that she misspoke

7    when she testified on behalf of OnlineNIC:

> I was deposed for OnlineNIC on certain issues in this case in July
> 2021 using a Chinese translator/interpreter.  I spoke to several
> individuals and reviewed multiple documents in preparation for my
> deposition.  During my deposition, I mistakenly said that Zhipo Chen
> purchased OnlineNIC from Shaohui Gong in 2009.  I later came to
> understand that Rex Liu actually purchased OnlineNIC from Shaohui
> Gong in 2007.  To my knowledge, Rex Liu does not have any other
> relationship with 35.CN.  In 2009, Zhipo Chen became the
> shareholder of OnlineNIC.  I was not involved in the sale of
> OnlineNIC. I started working for 35.CN in roughly 2007 to 2008, and
> during that time, I was a salesperson for OnlineNIC.

14    Yu Decl. ¶ 5.

15        "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an

16    affidavit contradicting his prior deposition testimony."  *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th

17    Cir. 2012) (citations omitted).  The Court therefore views with skepticism the above statement

18    contained in Ms. Yu's declaration, filed in support of 35.CN's opposition brief.  In addition to the

19    inconsistency with the testimony Ms. Yu provided *over the course of two days* of deposition, which

20    included her confirming the information with Shaohui Gong and Zhipo Chen, the declaration

21    contains numerous statements that are outside of Ms. Yu's personal knowledge—such as whether

22    Rex Liu or Zhipo Chen have any relationship with 35.CN.  *See* Yu Decl. ¶¶ 3, 5.

23        More importantly, whether Mr. Gong sold OnlineNIC to Rex Liu in 2007 or to Zhipo Chen

24    in 2009 does not explain why OnlineNIC's 2013 and 2014 tax filings list Mr. Gong as the 100%

25    shareholder of OnlineNIC.[7]  *See* Kroll Decl., Ex. 27 at ONLINENIC 283554; Ex. 28 at ONLINENIC

26

27    ———————————
     [7] Rex Liu, as "Officer" of OnlineNIC, signed the 2013 and 2014 California tax returns under
     penalty of perjury.  Kroll Decl. ¶¶ 46-47 (citing Ex. 27 at ONLINENIC 283542; Ex. 28 at
28    ONLINENIC 283581).

283594.   At the hearing on this motion, 35.CN explained these tax filings away as simple "sloppiness" and provided verbal assurances that Mr. Gong is no longer an owner of OnlineNIC. 35.CN also relied heavily at the hearing on legal documents that it says were prepared when 35.CN went public, allegedly showing that Mr. Gong divested himself of OnlineNIC and that the two entities are completely separate.  At no time has 35.CN come forward with a declaration from Mr. Gong (who remains one of the largest shareholders of 35.CN),[8] Zhipo Chen (OnlineNIC's CEO, who may or may not have purchased OnlineNIC from Mr. Gong in 2009), Rex Liu (purchaser of OnlineNIC in 2007, according to 35.CN), or Minghe Wang (OnlineNIC "management," according to 35.CN).

**35.CN's Management:**

35.CN's discovery responses show that Mr. Gong was no longer an officer or director of 35.CN beginning in 2019.  Kroll Decl., Ex. 1, App'x A at 5-6. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ None of the papers filed in connection with 35.CN's opposition explain who is the CEO of 35.CN.  At the hearing, counsel for 35.CN was unable to respond when the Court asked who is the current CEO.[9]

**Summary of Findings**

Even taking as true 35.CN's position regarding the sale of OnlineNIC, the evidence shows that both OnlineNIC and 35.CN have—in the past and in the litigation in this case—obfuscated and misled others about OnlineNIC's ownership.  The Court has noted numerous inconsistencies among 35.CN and OnlineNIC's discovery responses, deposition testimony, declarations, ████████ ███████, and tax filings regarding who owns and manages the two companies.  Although not

---

[8] Kroll Decl., Ex. 1, App'x A at 5-6.

[9] Later in the proceedings, counsel provided a name for the CEO after having looked it up on the internet.

United States District Court
Northern District of California

dispositive, the conflicting information about who owns and manages the two companies weighs in favor of an alter ego finding based on "the concealment and misrepresentation of the identity of the responsible ownership. . . ." *See Bank of Montreal*, 476 B.R. at 598.

### B.    OnlineNIC's Use of 35.CN Employees

Neither party disputes that OnlineNIC runs its business using 35.CN employees, whom 35.CN has loaned out to OnlineNIC pursuant to "Service Outsource Contracts."  In its Answer, the OnlineNIC defendants admitted to the following allegations of the Second Amended Complaint:

> 45.    The day-to-day operations of OnlineNIC, including all technical support and customer support, are carried out by employees of 35.CN. . . .

> 50.    Plaintiffs are informed and believe, and on that basis allege, that OnlineNIC has no employees who carry out the day-to-day registrar operations of OnlineNIC.

SAC ¶¶ 45, 50; Dkt. No. 88 ¶¶ 45, 50 (Answer to First Amended Complaint).[10]

The service outsource contracts have apparently been in place since 2009, though the Court has copies of the contracts only for the years 2014 through 2021.[11]  *See* Kroll Decl. ¶¶ 2, 55; Kroll Decl., Ex. 10, Ex. 36.  Ms. Yu signed the contracts on behalf of OnlineNIC.[12]  Kroll Decl. ¶ 55; Kroll Decl., Ex. 36.

Ms. Yu is an employee of 35.CN and a director of 35.CN's software outsourcing center since 2017 or 2018.  Yu Decl. ¶ 1; Yu Dep. I at 66:14-67:2.  She is paid by 35.CN.  Yu Dep. I at 69:23-25.  As a 35.CN employee outsourced to OnlineNIC, she serves in the role of vice president of

---

[10] Plaintiffs and the OnlineNIC defendants stipulated that the OnlineNIC defendants' Answer to the First Amended Complaint would be deemed the operative responsive pleading to the Second Amended Complaint.  Dkt. Nos. 107, 108.

[11] For the years 2009 through 2013, 35.CN states in its interrogatory responses that OnlineNIC paid 35.CN over $█████ for outsourcing services.  *See* Kroll Decl. ¶¶ 2, 7; Kroll Decl., Ex. 1 at 10 (Interrogatory No. 15).

[12] Because no English translation has been provided, it is unclear who signed the contracts on behalf of 35.CN.  *See* Kroll Decl., Ex. 36.

United States District Court
Northern District of California

OnlineNIC, in charge of OnlineNIC's daily operations.  *Id.* at 69:23-25; Yu Dep. II at 30:19-31:2.

At the deposition of OnlineNIC, Ms. Yu testified that all members of the OnlineNIC management team are employees of 35.CN, and are paid by 35.CN, except for Zhipo Chen.  Yu Dep. II at 45:22-25, 46:7-17.  It is undisputed that Zhipo Chen holds the position of OnlineNIC CEO.  Zhipo Chen receives no salary or other money from OnlineNIC for serving as OnlineNIC CEO.  *Id.* at 46:7-17.  Ms. Yu also testified that she (Ms. Yu) oversees OnlineNIC's entire management team.  *Id.* at 30:19-31:2.

35.CN states in its briefs that OnlineNIC is and has been run by people with no connection to 35.CN, that OnlineNIC "maintained a separate owner (e.g., [Rex] Liu), management (e.g., Minghe Wang), and officers (e.g., Zhipo Chen), who were not 35.CN employees."  *See* Opp'n at 6 (citing Yu Decl. ¶ 3; Weiwei Decl. ¶ 2; Kronenberger Decl., Ex. B).[13]  35.CN's papers do not explain who Mr. Wang is with any level of detail.  In her declaration filed in support of 35.CN's opposition brief, Ms. Yu now states that she reported to Zhipo Chen and Minghe Wang at OnlineNIC.  *See* Yu Decl. ¶ 3.  At the hearing, 35.CN stated that Mr. Wang was one of OnlineNIC's three decisionmakers—in addition to Rex Liu and Zhipo Chen—during the time period in question.[14]

Setting aside the disputes regarding Mr. Wang's role in managing OnlineNIC, the Court finds relevant the undisputed facts that: Ms. Yu is a 35.CN employee/director, paid entirely by 35.CN, but who serves as vice president of OnlineNIC and runs the daily operations of OnlineNIC; everyone who works for OnlineNIC is actually a 35.CN employee paid by 35.CN (with the possible exception of Mr. Liu; Ms. Chen; and Mr. Wang); Zhipo Chen receives no salary as OnlineNIC CEO;

---

[13] The Court will not consider the portions of the Yu and Weiwei declarations on which 35.CN relies, as neither is based on personal knowledge.  35.CN may not rely on statements from Ms. Yu and Zhang Weiwei as evidence that Rex Liu, Minghe Wang, and Zhipo Chen had no relationship with 35.CN.  35.CN has not filed a declaration from Mr. Liu, Mr. Wang, or Ms. Chen.

[14] With its sur-reply, 35.CN filed a W-2 for Mr. Wang, attached to Ms. Yu's declaration, to show that he is an employee of OnlineNIC who is paid by OnlineNIC.  *See* Yu Sur-Reply Decl., ¶ 5, Ex. A.  The Court will not consider the W-2 as evidence relevant to today's motion.  No one with the requisite knowledge has come forward to attest that the document is what Ms. Yu says it is.  Rather, Ms. Yu simply states in her declaration, "I am informed that OnlineNIC produced Minghe Wang's W-2 from OnlineNIC, showing that Minghe Wang was an OnlineNIC employee.  A true and correct copy of the W-2 is attached as **Exhibit A**."  *See id.*

and each year between 2014 and 2021, Ms. Yu—a 35.CN employee and director who was outsourced to OnlineNIC pursuant to a Service Outsource Contract—signed the very contracts that provided for her own outsourcing, *on behalf of OnlineNIC*.

In short, OnlineNIC's exclusive reliance on 35.CN employees to run the daily operations of its company, including in the execution of the outsourcing contracts between two companies, weighs in favor of an alter ego finding.

## C.    OnlineNIC's Disregard of Corporate Formalities

Courts may consider disregard of corporate formalities as a factor in determining whether an alter ego relationship exists. *Toho-Towa,* 217 Cal. App. 4th at 1108-09. Taken collectively, the various ways in which OnlineNIC disregards corporate formalities weigh in favor of an alter ego finding. The Court has considered the following.

### 1.    No Corporate Resolutions, Minutes, or Bylaws

In response to discovery requests, OnlineNIC did not produce any corporate resolutions, minutes, or bylaws. Kroll Decl. ¶¶ 32-33. 35.CN does not dispute that these documents do not exist.

### 2.    No Stock or Membership Ledgers

Plaintiffs argue that although OnlineNIC was authorized to issue 60,000,000 shares of stock, "OnlineNIC has not produced any documents reflecting issuance of stock at any time, or any documents reflecting maintenance of stock or membership ledgers." Mot. at 4 (citing Kroll Decl. ¶ 33); *see also* Kroll Decl. ¶ 34 & Ex. 15. Plaintiffs also point to OnlineNIC's Articles of Incorporation, filed with the California Secretary of State in January 2000, which states that "[t]he corporation has issued no shares." Kroll Decl. ¶ 35 & Ex. 16.

35.CN has failed to come forward with admissible evidence to rebut plaintiffs' position. In its papers, 35.CN did not address the stock question at all. At the hearing, 35.CN cited to the Kroll

United States District Court
Northern District of California

Declaration, Exhibit 19, which is a letter from a law firm[15] that 35.CN produced in discovery. 35.CN represented that this letter was created when 35.CN went public and argues that it shows that OnlineNIC did in fact issue stock.

The letter, dated February 20, 2008, states, in part:

Dear Mr. Gong,

Pursuant to the Securities Purchase Agreement (the "Agreement") dated November 28, 2007 by and between Shaohui Gong ("Seller") and Rex W. Liu ("Buyer"), Seller sold 43,557 shares of common stock of Onlinenic Inc. which accounts for all of the issued and outstanding shares of common stock of Onlinenic Inc. to Buyer.

. . .

Sincerely,

Crone Rozynko LLP

[signature]

Matthew Z. Chang

Kroll Decl., Ex. 19 at 35CN017290.

If 35.CN intended to rely on this document to refute plaintiffs' assertion that OnlineNIC issued no stock, then 35.CN should have designated specific, admissible facts on this point. As discussed at the hearing, the law firm letter on which 35.CN relies will not suffice. Among other reasons, 35.CN has not laid the foundation for its admissibility. 35.CN produced the letter in discovery, and no one has come forward at this stage to verify its contents. 35.CN has not produced a declaration from the person who signed the letter, from whomever provided the underlying information that went into the letter, or from anyone else who might have personal knowledge of the letter's contents. The Court agrees with plaintiffs that the admissible evidence before it shows that OnlineNIC did not issue stock and did not maintain stock or membership ledgers.

### 3.     Chief Financial Officer

California state statute provides that corporations shall have a chief financial officer. Cal. Corp. Code § 312(a). On July 14, 2021, Ms. Yu testified on behalf of OnlineNIC that Sily Chen

---

[15] 35.CN's counsel stated that the law firm has since gone out of business.

a/k/a Lili Chen did <u>not</u> hold the position of OnlineNIC Chief Financial Officer.  Yu Dep. II at 26:4-16).  However, documentation submitted by 35.CN in support of its opposition brief shows that in July 2021 OnlineNIC named Sily Chen as the company's CFO in a filing with the California Secretary of State.  Kronenberger Decl., Ex. G (Corporation – Statement of Information, filed July 18, 2021).  OnlineNIC also listed Sily Chen as its CFO in filings with the California Secretary of State in 2017.  *See* Kroll Decl., Ex. 17.  35.CN does not address this discrepancy further.

### D.    Unexplained Loans/Transfers Between 35.CN and OnlineNIC

In determining whether a single business enterprise exists, courts may also consider "the commingling of funds and assets of the two entities[.]"  *Toho-Towa*, 217 Cal. App. 4th at 1108-09.  Here, plaintiffs argue that 35.CN and OnlineNIC commingle funds and assets and that OnlineNIC diverted its assets for non-corporate uses.  Mot. at 13-15.  During the course of discovery, OnlineNIC produced bank statements and charts of loans/payments it had made over the years, and plaintiffs have flagged numerous transactions as irregular.  Some of the transactions plaintiffs highlight are not amenable to analysis, given the lack of evidence before the Court.  Nevertheless, the Court is persuaded that the undisputed evidence shows that there have been some unexplained transfers of funds among OnlineNIC, 35.CN, and companies affiliated with Mr. Gong (35.CN's founder and shareholder), and that the transfers have not been formally documented.

For instance, OnlineNIC produced several years of bank statements during discovery.  These statements show OnlineNIC made several bank transfers to 35.CN: $▮▮▮▮▮ in March 2019 and $▮▮▮▮▮ in April 2019.   Kroll Decl., Ex. 37 at ONLINENIC 285137, ONLINENIC 285142.  Counsel for plaintiffs has filed a declaration stating that neither company accounted for these transfers in their interrogatory responses and that these payments are not among the itemized payments OnlineNIC made pursuant to the staff outsourcing contracts.  Kroll Decl. ¶ 57.

35.CN has not come forward with any documentation regarding the transfers or loans to/from OnlineNIC that plaintiffs highlight.  35.CN disputes plaintiffs' characterization of the loans, asserting that "[t]here is nothing suspect about these business transactions, as any debts have been paid."  *See* Opp'n at 6.  But the only evidence 35.CN cites to contradict plaintiffs' evidence are

paragraphs 3 and 4 of the declaration of Zhang Weiwei. *See id.* at 6-7. Zhang is "Deputy General

Manager" of 35.CN, and—with regards to the loan allegations—declares as follows:

> 3.    The business transactions and any loans and payments between 35.CN and OnlineNIC are pursuant to formal written contracts and/or payment records, including for US-based services, such as SSL services, and marketing in connection with Verisign.
>
> 4.    Plaintiffs claim that certain 35.CN employees loaned money to OnlineNIC. These are not transactions involving 35.CN. Plaintiffs also identified individual names using Hanyu Pinyin spelling, rather than in Chinese characters, which makes it difficult to confirm the individuals or loan information. We did not locate any evidence that 35.CN has involved [sic] in outstanding OnlineNIC/ID Shield loans, 35.CN has no knowledge of those individuals that involved [sic] in outstanding OnlineNIC/ID Shield loans or that there were any loans that were suspicious or contrary to normal Chinese business practices.

Zhang Decl. ¶¶ 3-4. Yet 35.CN does not produce any of the underlying documentation for the loans

plaintiffs identify, such as the formal written contracts or payment records that Zhang says exist.

*See id.* ¶ 3.[16]

As another example, plaintiffs cite a chart that OnlineNIC created in discovery, listing,

among other transactions, several loans from "INTRA" to OnlineNIC in 2009 (i.e., several years

after Mr. Gong sold OnlineNIC, according to 35.CN). Kroll Decl. ¶ 63 & Ex. 39 at Ex. 5.1. These

loans include $▮▮▮▮ and $▮▮▮▮ to "fund business operations[.]" Kroll Decl., Ex. 39 at Ex.

5.1. Plaintiffs note that in its 2006 filings with the California Secretary of State, Mr. Gong was

listed as CEO and director of INTRA. *See* Kroll Decl. ¶ 65 & Ex. 40. OnlineNIC appears to have

repaid only a small portion of the INTRA loan. OnlineNIC's records produced in discovery show

that the company repaid only $▮▮▮▮ of the $▮▮▮▮ that INTRA loaned it in 2009. *See*

Kroll Decl. ¶ 64 & Ex. 39 at Ex. 6 (showing entries of $▮▮▮; $▮▮▮; $▮▮▮▮; $▮▮▮; $▮▮▮ and

$▮▮ to INTRA as "Pay back to Intra for the money borrowed"). In other words, more than a decade

after a company affiliated with Mr. Gong loaned OnlineNIC money to fund OnlineNIC's operations,

nearly $▮▮▮▮ of the loan remained outstanding.

---

[16] Regarding 35.CN's statement that it could not identify the loans because plaintiffs did not provide the names using the original Chinese characters, plaintiffs respond that they produced the underlying Bates-stamped number for the document, which contains the actual Chinese names along with contact information. Reply at 8-9. 35.CN is silent on this point in its sur-reply.

35.CN's only response to the INTRA transaction that plaintiffs raise is through the declaration of Carrie Yu. *See* Opp'n at 7 (citing Yu Decl. ¶ 13). Ms. Yu declares, "I am informed that INTRA was set up to be a domain name registrar but has not been in operation." Yu Decl. ¶ 13. This statement is inadmissible as outside of Ms. Yu's personal knowledge.

In its opposition brief, 35.CN inserts a Venn diagram that it says shows "little overlap" in the revenue of 35.CN and OnlineNIC. *See* Opp'n at 8. 35.CN does not explain why there would be an overlap in revenue at all, does not put a dollar figure on the "overlap" that 35.CN asserts is "little," and does not provide any admissible evidence for how it arrived at the revenue figures provided. 35.CN simply cites to "summary of public 35.CN records and OnlineNIC's produced documents." *Id.* at n.10. To the extent that 35.CN has provided this diagram to rebut plaintiffs' assertions regarding the irregularity of various loans and payments between 35.CN and OnlineNIC, the Court finds the diagram to be essentially useless, as it is not based on any admissible evidence.[17]

### E.    Same Offices and Fax Number

35.CN does not dispute that OnlineNIC and 35.CN are located in the same office building, which 35.CN owns. *See* Yu Dep. II at 10:6-8. Nor does 35.CN dispute that the two companies use the same fax number for their businesses. *See* Mot. at 4-5, 12. 35.CN concedes the two companies are located in the same building but clarifies that they "have separate offices on different floors in a large office building that has various unrelated businesses." *See* Yu Decl. ¶ 9. Although the Court does not rely on this factor individually, this further adds to the context in which the Court makes its finding that 35.CN and OnlineNIC are part of a single business enterprise.

### F.    Defense of OnlineNIC's Discovery Misconduct

The list of factors that courts may consider in examining alter ego is not exhaustive. *See*

---

[17] With its sur-reply, 35.CN attaches a supplemental declaration from Ms. Yu, attesting to the same revenue figures used in the Venn diagram. *See* Yu Suppl. Decl. ¶ 2. The information Ms. Yu provides is not based on her personal knowledge and is thus inadmissible. Even assuming the accuracy of these revenue figures, 35.CN has not presented admissible evidence to explain *why* there was an overlap in revenue between the two companies or to address the $██████ that 35.CN transferred to OnlineNIC in 2019.

United States District Court
Northern District of California

*Bank of Montreal*, 476 B.R. at 598 (citing *Zoran Corp.*, 185 Cal. App. 4th at 811-12). Although not determinative, the Court finds it relevant that 35.CN mounts a vigorous defense of the discovery misconduct of the OnlineNIC defendants in this case. Incredibly, 35.CN takes the position that the OnlineNIC defendants did not destroy evidence and that any destruction was not intentional. *See* Opp'n at 1, 8 (referring to the OnlineNIC defendants' "so-called 'destruction of evidence'"); *see also id.* at 8 n.11 ("This was part of an outdated ticketing system; there was no intentional destruction"); *id.* at 24 ("Defendants dispute that any evidence was 'destroyed,' (rather, archived records, that are not needed for key issues in this case, in an old ticketing database, were lost)." This position directly contravenes the special master's findings, as adopted by both Judge van Keulen and this Court. Even the OnlineNIC defendants themselves conceded that they deleted records; they simply said they did so in order to free up storage space. By its stance, then, 35.CN takes an even more extreme position in defense of the OnlineNIC defendants than did the OnlineNIC defendants themselves. For a company that claims to be entirely separate from OnlineNIC, it is notable that 35.CN goes to great lengths to defend OnlineNIC's conduct in this case.

### G.    Conclusion Re: Alter Ego Findings

Considering all of the above, the Court finds that "it would be inequitable to uphold [35.CN's] separate existence under the circumstances of this case." *See Toho-Towa*, 217 Cal. App. 4th at 1109. The Court acknowledges some concerns over potential unfairness in making an alter ego finding against 35.CN, on the basis of evidence that OnlineNIC provided or failed to provide during discovery in the earlier part of this case, when 35.CN was not a party. However, the Court is satisfied that these concerns are mitigated: (1) by the conversion of plaintiffs' motion to a motion for summary judgment, at 35.CN's request; and (2) by the fact that one of the two primary witnesses for 35.CN in its opposition to the present motion is Carrie Yu, who was also a primary witness for OnlineNIC in the earlier phases of the litigation. Ms. Yu is an employee of 35.CN, who serves as "director" of 35.CN's software outsourcing center department, and it is undisputed that she is paid entirely by 35.CN. *See* Yu Decl. ¶¶ 1, 3; Yu Dep. I at 69:23-25. Ms. Yu also acted as OnlineNIC's designated Rule 30(b)(6) witness earlier in this case. Ms. Yu testified that she is in charge of

United States District Court
Northern District of California

1   OnlineNIC's daily operations. *See* Yu Dep. I at 69:23-25.

2       In this case, the OnlineNIC defendants engaged in egregious spoliation of evidence, which

3   the Special Master found has prevented plaintiffs from being able to prosecute the case on the merits.

4   The undisputed evidence shows that all of OnlineNIC's day-to-day operations were carried out by

5   35.CN employees.  Additionally, as plaintiffs note, and 35.CN does not dispute, under the Service

6   Outsourcing Contracts, OnlineNIC was required to provide 35.CN "access to all documents and

7   files necessary to the performance of [35.CN's] duties under this Contract."  Kroll Decl., Ex. 36

8   (Service Outsource Contracts, § 1(b)).[18]  It would therefore be inequitable to allow 35.CN to escape

9   the consequences of the evidence spoliation that its own employees apparently carried out.

10       When the moving party on summary judgment has come forward with overwhelming

11   evidence in support of its position, the nonmoving party may not simply put forth unsupported,

12   conclusory assertions in order to generate a "dispute" of material fact.  That is essentially what

13   35.CN has done here.  On summary judgment, the non-moving party's "burden of contradicting [the

14   moving party's] evidence is not negligible.  As the Supreme Court has explained, if the evidence is

15   merely colorable or is not significantly probative summary judgment may be granted.'"  *UA Loc.*

16   *343*, 48 F.3d at 1471 (quoting *Liberty Lobby*, 477 U.S. at 249-50 (internal alterations omitted)).

17   Because the factors enumerated above all weigh in favor of a finding of alter ego, the Court

18   GRANTS summary judgment in plaintiffs' favor, finding that 35.CN is the alter ego of OnlineNIC,

19   under a single-enterprise theory.

20

21   **II.    ID Shield**

22       Both parties treat defendant ID Shield almost as an afterthought.  They dispute whether ID

23   Shield provides a "proxy service" (as plaintiffs contend) or a "privacy service" (as 35.CN contends),

24   but this argument goes to the merits and is not related to the alter ego question.  35.CN does not

25   otherwise address ID Shield separately in its briefs.

26       In its Answer to the SAC, the OnlineNIC defendants (which include ID Shield) admitted

27   _____

28       [18] An apparent error in the Bates stamping for these contracts prevents the Court from citing to individual page numbers.

United States District Court
Northern District of California

that ID Shield has no employees, does not conduct regular shareholder meetings, and does not maintain corporate records. *See* SAC ¶¶ 31-33; Answer ¶¶ 31-33. The OnlineNIC defendants further admitted: OnlineNIC controls the operations of ID Shield; OnlineNIC controls the policy decisions made by ID Shield; OnlineNIC controls which agreements ID Shield enters into; OnlineNIC pays all the expenses of ID Shield; OnlineNIC collects all revenue from ID Shield's domain name registration proxy service; OnlineNIC and ID Shield do not engage in arms-length transactions when they conduct transactions with each other; that Ms. Yu owns ID Shield for the benefit of OnlineNIC; that Ms. Yu is a director and officer for both OnlineNIC and ID Shield; that the domain names domainidshield.com and onlinenic.com are hosted at the same IP address, and their websites contain links to each other; and that the day-to-day operations of ID Shield, including all technical support and customer support, are carried out by employees of 35.CN. SAC ¶¶ 34-41, 46; Answer ¶¶ 34-41, 46. Ms. Yu was designated as the Rule 30(b)(6) witness for ID Shield but did not appear for that deposition as scheduled on July 14, 2021. Kroll Decl. ¶ 68 & Ex. 42.

The Court having found that 35.CN is the alter ego of OnlineNIC under the single-enterprise theory, *see* § I *supra*, it naturally follows based on the above admissions that the two are also alter egos of ID Shield.

### III.    Terminating Sanctions

Plaintiffs move for terminating sanctions against 35.CN, as the alter ego of the OnlineNIC defendants, under Federal Rules of Civil Procedure 37(b)(2)(A)(vi), 37(c)(1)(C), and 37(e)(2)(C). Mot. at 1. Plaintiffs ask that the Court strike 35.CN's answer and enter default against it, in response to the flagrant discovery misconduct in this case, as the Court has already done against the OnlineNIC defendants.

The undersigned has already adopted Judge van Keulen's Report and Recommendation on plaintiffs' motion for terminating sanctions against the OnlineNIC defendants. *See* Dkt. Nos. 225, 276, 291.[19] Having now found that 35.CN and the OnlineNIC defendants are alter egos of each

---

[19] As previously noted, the Court adopted Judge van Keulen's Report and Recommendation in full, with the exception of Section IV ("Relief"). Dkt. No. 276 at 14-16; Dkt. No. 291 at 2.

United States District Court
Northern District of California

other at all times relevant to this action, the Court finds it appropriate to issue the same terminating sanctions against 35.CN, for the reasons stated in Judge van Keulen's Report and Recommendation. *See generally* Dkt. No. 225.

The parties dispute whether the Court should decide the motion for terminating sanctions based on a preponderance of the evidence standard or based on clear and convincing evidence.  *See* Opp'n at 12-13.  Previously, the OnlineNIC defendants and plaintiffs did not dispute that the preponderance of the evidence standard applied, and that is the standard Judge van Keulen used.  *See* Dkt. No. 225 at 10-11.  35.CN now argues that a higher standard applies, citing a decision by Judge Whyte of this District, in which the Court stated, "To justify dismissal as a sanction, bad faith must be shown by clear and convincing evidence."  *See* Opp'n at 12 (citing *Hynix Semiconductor Inc. v. Rambus Inc.*, 897 F. Supp. 2d 939, 978 (N.D. Cal. 2012)).  The Court need not resolve this dispute today because, even applying the higher standard, clear and convincing evidence shows that defendants acted in bad faith in the spoliation of evidence in this case.  The Court will not recite the details in full here, but suffice to say that the Special Master, whose findings were adopted by Judge van Keulen and this Court, issued a detailed report finding that the OnlineNIC defendants "failed to preserve potentially relevant ESI for this matter pre-litigation, post complaint filing, during discovery, and even after the appointment of Special Master" and that the defendants' "behavior was intentional."  SMR at 17, 39; *see also* Dkt. No. 225 at 4-9 (summarizing Special Master's findings); Dkt. No. 276 at 4-7 (same).

Accordingly, pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(vi), 37(c)(1)(C), and 37(e)(2)(C), the Court hereby **STRIKES** 35.CN's answer from the docket (Dkt. No. 210) and directs the Clerk to **ENTER DEFAULT** against defendant Xiamen 35.com Technology Co., Ltd.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby **GRANTS** plaintiffs' motion for summary judgment/summary adjudication/terminating sanctions on the alter ego issue and finds that 35.CN is and at all times relevant to this action has been the alter ego of the OnlineNIC defendants under a single business enterprise theory.

The Court **STRIKES** 35.CN's answer from the docket (Dkt. No. 210) and directs the Clerk to **ENTER DEFAULT** against defendant Xiamen 35.com Technology Co., Ltd.

**Within seven days of the filing date of this Order, the Parties shall provide the Court a stipulated redacted version of the Order,** redacting only those portions of the order containing or referring to material subject to a sealing order and for which the Parties still request the material be sealed.

The parties are **ORDERED** to meet and confer <u>in person or by videoconference</u> regarding entry of default judgment and the issues raised in Judge van Keulen's Report and Recommendation, Section IV ("Relief). *See* Dkt. No. 225.

The Court sets a further case management conference for **December 8, 2023, at 3:00 p.m.,** to be held over Zoom videoconference. **The parties shall file a joint status statement no later than December 1, 2023.**

**IT IS SO ORDERED**.

Dated:  November 6, 2023

SUSAN ILLSTON
United States District Judge