TUCKER ELLIS LLP
David J. Steele SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone: 213.430.3400
Facsimile: 213.430.3409

Attorneys for Plaintiffs,
FACEBOOK, INC. and INSTAGRAM, LLC

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

FACEBOOK, INC. and INSTAGRAM, LLC,

Plaintiffs,

v.

ONLINENIC INC.; DOMAIN ID SHIELD SERVICE CO., LIMITED; and XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD.,

Defendants.

Case No. 3:19-cv-07071-SI

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE DEFENDANT'S ANSWER AND FOR ENTRY OF DEFAULT AGAINST DEFENDANT XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD. PURSUANT TO FED. R. CIV. P. 37**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

DATE: April 7, 2023
TIME: 10:00 a.m.
CTRM: 1 – 17th Floor

Hon. Susan Illston

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 7, 2023 at 10:00 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Susan Illston of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, Courtroom 1 - 17th Floor, San Francisco, CA 94102, Plaintiffs Facebook, Inc. and Instagram LLC (collectively, "Plaintiffs") will and hereby do move for an order striking Defendant Xiamen 35.com Internet Technology Co., Ltd.'s ("35.CN") Answer and entering default against 35.CN.

This motion is made pursuant to Rule 37 of the Federal Rules of Civil Procedure on the ground that 35.CN is the alter ego of Defendants OnlineNIC Inc. ("OnlineNIC") and Domain ID Shield Service Co., Ltd. ("ID Shield") (together with OnlineNIC, the "OnlineNIC Defendants") and therefore subject to the Court's order entering default against the OnlineNIC Defendants for their discovery violations. ECF Nos. 276 and 291. This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, the report by the Special Master (ECF No. 115), Judge van Keulen's Report and Recommendation (ECF No. 225), this Court's Sanctions Orders (ECF Nos. 276, 291), the Declaration of Howard A. Kroll, the (Proposed) Order, any oral argument heard by the Court, such additional evidence as may be submitted to the Court, matters as to which the Court may take judicial notice, and such other matters as the Court deems proper.

DATED: November 16, 2023

Tucker Ellis LLP

By: /s/David J. Steele
David J. Steele
Howard A. Kroll
Steven E. Lauridsen

Attorneys for Plaintiffs,
FACEBOOK, INC. and INSTAGRAM, LLC

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

## TABLE OF CONTENTS

Page

I. INTRODUCTION ... 1

II. STATEMENT OF ISSUE TO BE DECIDED ... 2

III. STATEMENT OF FACTS ... 2

A. Procedural History ... 2

B. 35.CN ... 2

C. OnlineNIC ... 3

1. OnlineNIC's corporate formation and maintenance ... 4

2. OnlineNIC's operations ... 4

3. Loans OnlineNIC received from individuals and entities associated with 35.CN ... 6

4. OnlineNIC's loans to 35.CN and others ... 7

D. ID Shield ... 8

E. 35.CN Directly Participated in the Spoliation that Resulted in Terminating Sanctions Against the OnlineNIC Defendants ... 8

IV. TERMINATING SANCTIONS SHOULD BE IMPOSED AGAINST 35.CN AS THE ALTER EGO OF THE ONLINENIC DEFENDANTS ... 9

A. OnlineNIC disregards corporate formalities ... 10

B. OnlineNIC disregards legal formalities ... 11

C. 35.CN, OnlineNIC, and ID Shield use the same offices and employees ... 12

D. 35.CN and OnlineNIC commingle funds and assets ... 13

E. OnlineNIC diverted its assets for non-corporate uses ... 14

F. OnlineNIC is inadequately capitalized ... 15

G. OnlineNIC conceals and misrepresents the identity of its owner ... 16

H. 35.CN and the OnlineNIC Defendants hindered discovery relating to alter ego liability ... 16

I. Adherence to the fiction of OnlineNIC's separate corporate existence would promote injustice or bring about inequitable result ........................... 18

V. CONCLUSION ........................................................................................................ 19

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

ii

MOTION TO STRIKE AND FOR ENTRY OF DEFAULT
Case No. 3:19-cv-07071-SI

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of Montreal v. Salyer*
599 F. App'x 706 (9th Cir. 2015) ........ 15

*Bank of Montreal v. SK Foods, LLC*
476 B.R. 588, 599 (N.D. Cal. 2012) ........ 15

*Blizzard Energy, Inc. v. Schaefers*
71 Cal.App.5th 832, 849-50 (2021) ........ 2,15

*Claremont Press Publishing Co., Inc. v. Barksdale*
187 Cal.App.2d 813, 817 (1960) ........ 2, 12, 17, 20

*Cummings v. Worktap, Inc.*
No. C 17-6246 SBA, 2019 WL 4221652 (N.D. Cal. Sept. 4, 2019) ........ 10

*DEPCOM Power, Inc. v. CSUN Solar, Inc.*
No. 18-cv-00729-JST, 2020 WL 5176193 at *4 (N.D. Cal. July 30, 2020) ........ 1, 11

*Doe v. Unocal*
248 F.3d 915, 927-28 (9th Cir. 2001) ........ 12

*Fed. Reserve Bank of San Francisco v. HK Sys.*
No. C-95-1190 MHP, 1997 WL 227955 at *6 n.7 (N.D. Cal. Apr. 24, 1997) ........ 11

*In re Schwarzkopf*
626 F.3d 1032, 1038 (9th Cir. 2010) ........ 13

*In re Towe*
173 B.R. 217, 223 (Bankr. D. Mont. 1994) ........ 16

*Laborers Clean-Up Contract Admin. Trust Fund v. Uriarte Clean-Up Service, Inc.*
736 F.2d 516, 524 (9th Cir. 1984) ........ 12

*Las Palmas Associates v. Las Palmas Center Associates*
235 Cal.App.3d 1220, 1249 (1991) ........ 10

*Mesler v. Bragg Mgmt. Co.*
39 Cal.3d 290, 301 (1985) ........ 20

*Minton v. Cavaney*
56 Cal.2d 576, 580 (1961) ........ 14

*Oceans II, Inc. v. Skinnervision, Inc.*
No. 2:12–cv–06867–CAS, 2015 WL 4484208, at *4 (C.D. Cal. July 20, 2015) ........ 17

*Platt v. Billingsley*
234 Cal.App.2d 577, 583 (1965) ........ 17

*RRX Industries, Inc. v. Lab-Con, Inc.*
772 F.2d 543, 546 (9th Cir. 1985) ........ 12

*Shafford v. Otto Sales Co.*
149 Cal.App.2d 428, 433 (1957) ........ 17

*Shanghai Automation Instrument Co. v. Kuei*
194 F. Supp. 2d 995, 1001 (N.D. Cal. 2001) .......... 13

*Shenyang Ying Yun Bus. Grp. v. Quan Kun Int'l, Inc.*
No. C-92-3703 MHP, 1993 WL 165310, at *9 (N.D. Cal. May 7, 1993) .......... 10

*Toho-Towa Co. v. Morgan Creek Prods., Inc.*
217 Cal.App.4th 1096, 1108-1109 (2013) .......... 1, 10, 11, 13, 14, 20

*Towe v. Martinson*
195 B.R. 137 (D. Mont. 1996) .......... 16

*U.S. v. Healthwin-Midtown Convalescent Hospital and Rehabilitation Center, Inc.*
511 F. Supp. 416, 420 (C.D. Cal. 1981) .......... 11

*United States v. 101 Houseco, LLC*
22 F.4th 843 (9th Cir. 2022) .......... 21

*United States v. Lonich*
No. 14-cr-00139-SI-1, 2018 WL 10127107 at * 4 (N.D. Cal. Aug. 8, 2018) .......... 20

*Wells Fargo Bank, N.A. v. Weinberg*
227 Cal.App.4th 1, 8 (2014) .......... 1, 11

**Other Authorities**

Anti-cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(1) .......... 2

**Federal Rules of Civil Procedure**

Rule 37 .......... 1, 2

Rule 37(b)(2)(A)(vi) .......... 1, 2

Rule 37(c)(1)(C) .......... 1, 2

Rule 37(e) .......... 1, 2

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On October 17, 2022, the Court issued an order striking the OnlineNIC Defendants' Answer for discovery violations pursuant to Rule 37 of the Federal Rules of Civil Procedure. ECF No. 276 ("Sanctions Order"). On December 16, 2022, the Court ordered the clerk to enter default against the OnlineNIC Defendants. ECF No. 291. The Court previously noted that, "if 35.CN is the alter ego of the other defendants then it is also responsible for evidence spoliation." Sanctions Order at 13. Because 35.CN is the alter ego of the OnlineNIC Defendants, the Court should strike 35.CN's Answer (ECF No. 210) and enter default against 35.CN under Rules 37(b)(2)(A)(vi), 37(c)(1)(C), and 37(e) of the Federal Rules of Civil Procedure because "justice requires 35.CN be held accountable for flouting discovery rules" (Sanctions Order at 13) as the alter ego of the OnlineNIC Defendants.

The OnlineNIC Defendants are mere shell companies for and alter egos of 35.CN, collectively acting as a single business enterprise. The OnlineNIC Defendants (1) failed to observe corporate formalities, (2) failed to observe legal formalities, (3) used the same employees and offices as 35.CN, (4) commingled funds with 35.CN, (5) diverted their assets to non-corporate uses, (6) were inadequately capitalized, (7) concealed and misrepresented the identity of their owner, and (8) along with 35.CN, hindered discovery of facts relating to alter ego liability. *See Toho-Towa Co. v. Morgan Creek Prods., Inc.*, 217 Cal.App.4th 1096, 1108-1109 (2013) (listing factors to determine whether a single enterprise exists); *DEPCOM Power, Inc. v. CSUN Solar, Inc.*, No. 18-cv-00729-JST, 2020 WL 5176193 at *4 (N.D. Cal. July 30, 2020) (listing factors); *Wells Fargo Bank, N.A. v. Weinberg*, 227 Cal.App.4th 1, 8 (2014) (hindering discovery of alter ego facts another factor to consider).

To otherwise recognize 35.CN and the OnlineNIC Defendants as separate entities would unjustly shield 35.CN from liability where 35.CN's employees directly participated—under purported service contracts—in the spoliation of evidence at issue. *See Claremont Press Publishing Co., Inc. v. Barksdale*, 187 Cal.App.2d 813, 817 (1960) ("All that is required is a showing that it would be unjust to persist in recognition of the separate entity of the corporation."). 35.CN must not be permitted to benefit from the spoliation that Judge van Keulen found irreparably harmed Plaintiffs' cybersquatting claims against 35.CN and the OnlineNIC Defendants under the Anti-cybersquatting Consumer Protection Act

("ACPA"), 15 U.S.C. § 1125(d)(1). *See* ECF No. 225 at 18-19.

Accordingly, as the alter ego of the OnlineNIC Defendants, 35.CN is responsible for the evidence spoliation and should likewise have its Answer stricken and default entered against it under Rule 37.

## II. STATEMENT OF ISSUE TO BE DECIDED

Whether 35.CN is the alter ego of the OnlineNIC Defendants and thus responsible for the evidence spoliation in this case, requiring that 35.CN's Answer be stricken and default entered against it under Rule 37 of the Federal Rules of Civil Procedure.

## III. STATEMENT OF FACTS

### A. Procedural History

On March 28, 2022, Judge van Keulen issued a Report and Recommendation ("R&R") recommending that the Court grant Plaintiffs' re-noticed motion for terminating sanctions against the OnlineNIC Defendants (ECF No. 176) for their willful spoliation of evidence under Rules 37(b)(2)(A)(vi), 37(c)(1)(C), and 37(e) of the Federal Rules of Civil Procedure. ECF No. 225. All three Defendants then filed objections to the R&R and requested de novo review of Plaintiffs' re-noticed motion. ECF Nos. 228, 229. This Court overruled the objections and adopted the R&R in its entirety on October 17, 2022 and struck the OnlineNIC Defendants' Answer. ECF No. 276 at 15. On December 16, 2022, the Court clarified that the R&R is adopted, with the exception of Section IV ("Relief"), and ordered the Clerk to enter default against the OnlineNIC Defendants. ECF No. 291 at 2.

### B. 35.CN

35.CN is an ICANN-accredited[1] domain name registrar founded by Shaohui Gong ("Mr. Gong"). Mr. Gong was the Chief Executive Officer of 35.CN through [REDACTED][2] and remained the largest shareholder

---

[1] The Internet Corporation for Assigned Names and Numbers ("ICANN") accredits domain name registrars to register internet domain names.

[2] In Appendix A to its Amended Interrogatory Responses, 35.CN claims that Mr. Gong was no longer an officer of 35.CN in 2019 and 2020. Declaration of Howard A. Kroll ("Kroll Decl.") ¶¶ 2, 9, Ex. 1. [REDACTED] *Id.* ¶¶ 10-11, Exs. 2, 3.

through 2022. Kroll Decl. ¶ 2, 9-11, Exs. 1-3. According to the Registrar Information Specification Sheets ("RIS") 35.CN submitted to ICANN, [REDACTED] [REDACTED]. *Id.* ¶¶ 12-13, Exs. 4-5. [REDACTED] [REDACTED] *Id.*[3]

Carrie Yu aka "Hongxia Yu" aka "Carrie Arden" ("Ms. Yu") (Kroll Decl. ¶ 14, Ex. 6) is a 35.CN employee and, in 2017, became a director of 35.CN's Software Outsourcing Center. *Id.* ¶ 15, Ex. 7 (30(b)(6) Deposition Transcript of OnlineNIC on July 13, 2021 ("Yu Depo I") at 57:19-24; 66:14-67:6). [REDACTED] *Id.* ¶¶ 17-18, Exs. 9-10. ICANN's Notice of Breach letters to 35.CN were mailed to Ms. Yu at 8th Guanri Road Software Park, Xiamen Fujian 361008, China, and faxed to her at +86.592.539.1808. *Id.* ¶ 19, Ex. 11. [REDACTED] [REDACTED] (Kroll Decl. ¶ 20, Ex. 12) but she was not a director of 35.CN at that time. *Id.* ¶ 15, Ex. 7 (Yu Depo I at 70:25-71:3; 74:4-6). Chen Yihong ("Mr. Yihong") and Xie Rongqin ("Mr. Rongqin") were, at one time, legal specialists for 35.CN. *Id.* ¶¶ 21-23, Ex. 13.

**C. OnlineNIC**

OnlineNIC is also an ICANN-accredited domain name registrar founded by Mr. Gong in 1999. Kroll Decl. ¶ 34, Ex. 15. According to a Securities Purchase Agreement 35.CN produced in discovery, Mr. Gong sold OnlineNIC to Rex Liu ("Mr. Liu") in 2007 for $[REDACTED]. Kroll Decl. ¶ 38, Ex. 19. OnlineNIC's discovery responses and deposition testimony, however, state that Mr. Gong sold his shares to Zhipo Chen ("Ms. Z. Chen) in 2009 for $50,000 pursuant to an oral contract. Kroll Decl. ¶ 39, Exs. 7 (Yu Depo I at 29:24-30:1; 32:1-2); 8 (30(b)(6) Deposition Transcript of OnlineNIC on July 14, 2021 ("Yu Depo II") at 12:6-13:6; 39:10-18), 20. [REDACTED] [REDACTED] *Id.* ¶ 40, Ex. 21. Despite these alleged transfers of ownership, OnlineNIC's California tax filings in 2013 and 2014, filed under penalty of perjury and signed by Mr. Liu, identify Mr. Gong (not Mr. Liu or Ms. Z. Chen) as the 100%

---

[3] [REDACTED] Kroll Decl. ¶¶ 12-13, Exs. 4-5.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

owner of OnlineNIC's stock. *Id.* ¶¶ 46-47, Exs. 27-28. [redacted] *Id.* ¶ 41, Ex. 22.

### 1. OnlineNIC's corporate formation and maintenance

OnlineNIC was incorporated in California in 1999 by Mr. Gong. Kroll Decl. ¶ 34, Ex. 15. According to OnlineNIC's response to Plaintiffs' discovery request for documents relating to the corporate formation and maintenance of OnlineNIC, OnlineNIC did not have any corporate resolutions, minutes of meetings of its directors, minutes of shareholder meetings, or bylaws. *Id.* ¶¶ 32-33, Ex. 14. OnlineNIC only produced the following four documents: Articles of Incorporation in 1999, Certificate of Amendment of Articles of Incorporation in 2000, and the 2017 and 2019 Statement of Information filed with the California Secretary of State. *Id.* ¶ 32. OnlineNIC's Articles of Incorporation in 1999 state that it is authorized to issue 60,000,000 shares, and its Certificate of Amendment of Articles of Incorporation in 2000 states that "The corporation has issued no shares." *Id.* ¶¶ 34-35, Exs. 15-16. OnlineNIC has not produced any documents reflecting issuance of stock at any time, or any documents reflecting maintenance of stock or membership ledgers. *Id.* ¶ 33.

OnlineNIC's 2017 and 2019 Statement of Information filed with the California Secretary of State lists Ms. Yu as a Director, Mr. Liu as the Secretary, and Sily Chen as the Chief Financial Officer. Kroll Decl. ¶¶ 36-37, Exs. 17-18. During the 30(b)(6) deposition of OnlineNIC in July 2021, however, Ms. Yu testified that no one at OnlineNIC held any of these positions—she is not a Director at OnlineNIC, Mr. Liu is not the Secretary, and Sily Chen is not the Chief Financial Officer.[4] *Id.* Ex. 8 (Yu Depo II at 25:16-24; 26:12-16; 35:7-10). In 2002 and 2017, OnlineNIC was suspended by the California Secretary of State. *Id.* ¶ 53, Ex. 34.

### 2. OnlineNIC's operations

[redacted]

---

4 [redacted] while the 2017 and 2019 Statement of Information lists Ms. Z. Chen as the CEO. [redacted] *Compare* Kroll Decl. Ex. 21 *with* Exs. 17-18.

[redacted][5] *Compare* Kroll Decl. ¶¶ 40-41, Exs. 21-22 *with* Exs. 4-5. ICANN's Notice of Breach letters to OnlineNIC were sent to Ms. Yu at the same address and fax number as for 35.CN. *Compare* Kroll Decl. ¶ 54, Ex. 35 *with* Ex. 11. And both Mr. Yihong and Mr. Rongqin were also the legal specialists at OnlineNIC at the time they served in the same role for 35.CN. *Id.* ¶¶ 22-23, Ex. 13.

OnlineNIC has none of its own employees to carry out the day-to-day registrar operations for OnlineNIC. Its day-to-day operations, including all technical and customer support operations, are carried out by 35.CN employees pursuant to "Service Outsourcing Contracts" between 35.CN and OnlineNIC.[6] ECF No. 109 (Second Amended Complaint ("SAC")) ¶¶ 45, 50; ECF No. 88 (OnlineNIC Defendants' Answer to First Amended Complaint ("Answer"))[7] ¶¶ 45, 50 (admitting). OnlineNIC's entire management team is comprised of 35.CN employees who are paid by 35.CN, with the exception of Ms. Z. Chen who is the purported CEO of OnlineNIC and yet receives no salary. Kroll Decl. Ex. 8 (Yu Depo II at 45:22-25; 46:7-17). OnlineNIC's management team is overseen by OnlineNIC's Vice President, Ms. Yu, who is also an employee and a director at 35.CN's Software Outsourcing Center. *Id.* Ex. 8, 7 (Yu Depo II at 30:19-31:2; 51:1-5; Yu Depo I at 66:14-67:6). Ms. Yu signed the Service Outsourcing Contracts on behalf of OnlineNIC at the same time she was also an employee of 35.CN and paid solely by 35.CN. *Id.* ¶ 55, Ex. 36; Ex. 7 (Yu Depo I at 69:23-25).

The Service Outsourcing Contracts between OnlineNIC and 35.CN from 2014 to 2021 required 35.CN to provide technical services for which OnlineNIC would pay 35.CN a monthly fee. Kroll Decl. ¶ 55, Ex. 36. Between 2009 and 2013, however, OnlineNIC paid 35.CN over $[redacted] for

---

5 [redacted] *Compare* Kroll Decl. Ex. 21 *with* Ex. 4.

6 For example, in February 2017, OnlineNIC received an email from ICANN regarding a Whois Inaccuracy Complaint. 35.CN, and not OnlineNIC, resolved this issue in March 2017 when a 35.CN employee emailed Ms. Yu at her 35.CN email address. Kroll Decl. ¶ 59, Ex. 38.

7 Plaintiffs and the OnlineNIC Defendants stipulated, and the Court ordered, that the OnlineNIC Defendants' Answer to the First Amended Complaint would be the operative responsive pleading to the SAC. ECF No. 108.

TUCKER ELLIS LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

purported "outsourcing services" even though there are no Service Outsourcing Contracts for those years.[8] *Id*. ¶¶ 2, 7, Ex. 1 (Response to Interrogatory No. 15). In addition, OnlineNIC paid $260,000 in 2019 to 35.CN that were not related to the Service Outsourcing Contracts and were not identified by 35.CN or the OnlineNIC Defendants in their discovery responses. *Id.* ¶ 57, Ex. 37.

35.CN claims that the "outsourcing services" it provides to OnlineNIC is the only business, corporate, working, or other relationship between them. Kroll Decl. ¶¶ 2, 3, Ex. 1 (Response to Interrogatory No. 2). Yet, 35.CN itemizes over $[REDACTED] to OnlineNIC between 2015 and 2021 in payments for "U.S. Based Services." *Id.* ¶¶ 2, 8, Ex. 1 (Response to Interrogatory No. 16).[9] Neither OnlineNIC nor 35.CN have produced any contracts for these purported services. *Id.* ¶ 8.

Since 2009, OnlineNIC received almost $[REDACTED] in loans from individuals and companies to "fund business operations." Kroll Decl. ¶ 63, Ex. 39. Regardless, OnlineNIC has had negative retained earnings since 2009. *Id*. ¶¶ 42-52, Exs. 23-33.

**3. Loans OnlineNIC received from individuals and entities associated with 35.CN**

Since 2009, OnlineNIC received multiple purported loans from individuals or entities with a connection to 35.CN or Mr. Gong. Many of the payments OnlineNIC made for these purported "loans" were to individuals other than the original lender, and sometimes in amounts far different from the original loan. Kroll Decl. ¶¶ 63-64, Ex. 39.[10] For example, Mr. Gong and his spouse, Guanrui Yun

---

[8] OnlineNIC paid 35.CN $[REDACTED] in 2009, $[REDACTED] in 2010, $[REDACTED] in 2011, $[REDACTED] in 2012 and $[REDACTED] in 2013 for these services. Kroll Decl. ¶¶ 2, 7, Ex. 1.

[9] In response to Special Court Ordered Interrogatories, which were verified by Ms. Yu, OnlineNIC affirmed that the only payment it received from 35.CN was $219,985 as repayment for a loan. Kroll Decl. 60, Ex. 39 (Response to Interrogatory No. 2, Ex. 2).

[10] Despite Judge Tse's order to compel (ECF No. 286 at 2), 35.CN has failed to provide any explanation why these loans were provided by individuals or entities with a connection to 35.CN or Mr. Gong, or why individuals associated with 35.CN who did not loan any money to OnlineNIC received repayments from OnlineNIC. Kroll Decl. ¶¶ 2, 5-6, Ex. 1 (Response to Interrogatory Nos. 13-14). Ms. Yu testified that "China has very strict limitations on receiving payments and money made in foreign currencies by individuals, so it is common to ask other people to receive foreign currencies on behalf of other people in China." *Id*. Ex. 8 (Yu Depo II at 65:8-12).

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

(Kroll Decl. ¶ 38, Ex. 19), loaned $[REDACTED] and $[REDACTED], respectively, to OnlineNIC in 2009. *Id.* ¶ 63, Ex. 39. INTRA, a company owned by Mr. Gong,[11] loaned $[REDACTED] to OnlineNIC in 2009. *Id.* OnlineNIC has repaid INTRA only $[REDACTED]. *Id.* ¶ 64, Ex. 39. Person 1 (35.CN's Legal Specialist) loaned $[REDACTED] to OnlineNIC in 2009 and has not yet been repaid. *Id.* ¶¶ 63, 64, Ex. 39. [REDACTED] Person 2, a current 35.CN employee,[12] loaned $[REDACTED] to OnlineNIC; yet, OnlineNIC has repaid Person 2 $[REDACTED] through 2018. *Id.* Other 35.CN employees loaned money to OnlineNIC totaling over $[REDACTED], including Person 3 (35.CN's Invoicing specialist), Person 4 (35.CN's Manager), Person 5 (35.CN's Warehouse Specialist), Person 6 (35.CN's Expense Reimbursement specialist), and Person 7 (35.CN's Accounting Supervisor and Deputy Manager of Financial Department, Manager of Auditing Department, and member of Supervisory Board). *Id.* ¶¶ 26-30, 63, Exs. 13, 39 Finally, Person 8 (35.CN's Backend Review specialist) loaned $[REDACTED] to OnlineNIC in 2009. *Id.* ¶¶ 31, 63, Exs. 13, 39. This loan was not repaid to him. Rather, OnlineNIC repaid this loan to Mr. Liu ($[REDACTED] in 2018) and his wife, Linda Liu ($[REDACTED] in 2017). *Id.* ¶ 64, Ex. 39. Mr. Gong also received $[REDACTED] from OnlineNIC in 2018 as repayment for a loan made by someone else to OnlineNIC in 2009. *Id.*

**4. OnlineNIC's loans to 35.CN and others**

Despite OnlineNIC's recorded operational losses, OnlineNIC claims to have loaned $[REDACTED] to 35.CN in 2017 ($[REDACTED] and $[REDACTED]) and 2018 ($[REDACTED]) by paying 35.CN's registry account at VeriSign. Kroll Decl. ¶¶ 61-62, Ex. 39. OnlineNIC's bank statements do not reveal any such payment to VeriSign. Rather, these statements show that OnlineNIC transferred only $[REDACTED] directly to 35.CN. *Id.* ¶ 58, Ex. 37. The bank statements also reveal that 35.CN transferred $[REDACTED] to OnlineNIC in 2018.

---

[11] In 2006, Mr. Gong was listed as the CEO and a Director of USA Intra Corp., while another officer and shareholder of 35.CN, Hongbing Xue, was listed as the Secretary, Chief Financial Officer, and a Director of INTRA. In 2013, Ms. Yu was listed as the CFO of INTRA. And at one time, all employees of INTRA were also employees of 35.CN. Kroll Decl. ¶¶ 21, 65, Exs. 13, 40.

[12] Mr. Freeman also filed a declaration with this Court on behalf of the OnlineNIC Defendants. ECF No. 202.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

*Id.* Thus, OnlineNIC received $[redacted] more than it purportedly loaned to 35.CN. No promissory notes for these loans between OnlineNIC and 35.CN have been produced. *Id.* ¶¶ 56, 58, Ex. 37.

OnlineNIC also loaned, pursuant to an oral agreement, and without any security, $[redacted] to L&L Oil LLC, a company owned by Mr. Liu. Kroll Decl. ¶ 47, Exs. 8 (Yu Depo II at 62:21-64:25, Ex. 14) and 28. Mr. Liu personally repaid $[redacted] of this loan by paying three individuals not involved in OnlineNIC's registrar business $[redacted] each. *Id.* Mr. Liu also personally repaid $[redacted] of this loan directly to OnlineNIC. *Id.* OnlineNIC considers the $[redacted] loan fully repaid even though it was repaid only $[redacted]. *Id.* Ex. 8 (Yu Depo II at 62:21-63:19; 67:6-21).

Further, OnlineNIC provided loans to its purported shareholders in 2016-2019 totaling $[redacted]. Kroll Decl. ¶¶ 49-52, Exs. 30-33. These loans remain unpaid. *Id.* OnlineNIC's discovery responses do not identify who the shareholder(s) are, whether the loans were memorialized, or the terms and reasons for the loan. *Id.* ¶ 42. In addition, OnlineNIC has unpaid loans to an unidentified party from 2015-2019 for $[redacted]. *Id.* ¶¶ 48-52, Exs. 29-33. Again, OnlineNIC did not provide any explanation why OnlineNIC's corporate assets were used to loan this money to an unidentified party. *Id.* ¶ 52.

**D. ID Shield**

ID Shield provides a proxy service to OnlineNIC customers and is the registrant of the 35 Infringing Domain Names at issue in this case. SAC ¶¶ 56, 57. ID Shield has no employees, does not control its own operations (which are entirely controlled by OnlineNIC), does not conduct shareholder meetings, and has its expenses paid by OnlineNIC. Like OnlineNIC, the day-to-day operations of ID Shield, including all technical and customer support, are carried out by 35.CN's employees. SAC ¶¶ 31-41, 46; Answer ¶¶ 31-41, 46 (admitting). However, no service agreements regarding the operations of the ID Shield business have been produced by any of the parties. Kroll Decl. ¶ 66.

[redacted] Kroll Decl. ¶ 67, Ex. 41. [redacted] *Id.*

Ms. Yu owns ID Shield for the benefit of OnlineNIC. SAC ¶ 39; Answer ¶ 39 (admitting). Starting in 2015, Ms. Yu signed the audited financial statements as the Director of ID Shield. Kroll Decl. ¶ 67,

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Ex. 41. Nevertheless, Ms. Yu refused to appear at a court ordered deposition as the 30(b)(6) witness for ID Shield scheduled for July 15, 2021. *Id.* ¶ 68, Ex. 42.

### E. 35.CN Directly Participated in the Spoliation that Resulted in Terminating Sanctions Against the OnlineNIC Defendants

The Special Master's Report (ECF No. 115) identified four of "Defendants' staff members with permissions to delete ticket-related information", namely, Le**@onlinenic.com, Ra****@onlinenic.com, Lu**@onlinenic.com, and Wa****@onlinenic.com. Special Master's Report at 8:10-16. OnlineNIC did not have its own employees to carry out technical operations or participate in producing discovery in this case. Rather, 35.CN employees carry out all of OnlineNIC's technical operations under Service Outsourcing Contracts that also required OnlineNIC to provide 35.CN access to all documents and files necessary for 35.CN to perform its duties. SAC ¶¶ 45, 50; Answer ¶¶ 45, 50 (admitting); Kroll Decl. ¶ 55. 35.CN refused to identify any employees involved in the destruction of evidence because 35.CN "disputes any 'destruction of evidence'" and considers it a "disputed fact" that evidence was destroyed, despite the findings in the Special Master's Report, the R&R, and the Sanctions Order. *Id.* ¶¶ 2, 4, Ex. 1 (Response to Interrogatory No. 8). 35.CN, however, identified the following current 35.CN employees who participated in discovery on behalf of OnlineNIC, and who have email addresses that match the above addresses with permission to delete records Leon Freeman (who uses the email leon@onlinenic.com), Luke Wayne (who uses the email luke@onlinenic.com) and Ivan Wang (who uses the email wanghd@onlinenic.com). Kroll Decl. ¶¶ 2, 69, Exs. 1, 43. It appears that the fourth email matches another current employee of 35.CN, Rachel Chan, who uses the email rachel@onlinenic.com. *Id.*

## IV. TERMINATING SANCTIONS SHOULD BE IMPOSED AGAINST 35.CN AS THE ALTER EGO OF THE ONLINENIC DEFENDANTS

The Court should strike 35.CN's Answer (ECF No. 210) and enter default against 35.CN under Rules 37(b)(2)(A)(vi), 37(c)(1)(C), and 37(e) of the Federal Rules of Civil Procedure because "justice requires 35.CN be held accountable for flouting discovery rules" as the alter ego of the OnlineNIC Defendants. Sanctions Order at 13; *see Shenyang Ying Yun Bus. Grp. v. Quan Kun Int'l, Inc.*, No. C-92-3703 MHP, 1993 WL 165310, at *9 (N.D. Cal. May 7, 1993) ("The alter ego doctrine is based

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

in equity and is within the clear province of the trial court . . . ."); *Cummings v. Worktap, Inc.*, No. C 17-6246 SBA, 2019 WL 4221652 (N.D. Cal. Sept. 4, 2019) ("There is no right to a jury trial for alter ego claims because they are equitable in nature.").

Alter ego liability may be found where affiliated entities act as a single business enterprise. *See, e.g.*, *Toho-Towa Co.*, 217 Cal.App.4th at 1108 ("The 'single-business-enterprise' theory is an equitable doctrine applied to reflect partnership-type liability principles when corporations integrate their resources and operations to achieve a common business purpose."). Under this theory, "the corporate entity is disregarded . . . wherein it is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of another corporation." *Las Palmas Associates v. Las Palmas Center Associates,* 235 Cal.App.3d 1220, 1249 (1991). "No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied." *Toho-Towa,* 217 Cal.App.4th at 1109 (collecting cases); *see also Fed. Reserve Bank of San Francisco v. HK Sys.*, No. C-95-1190 MHP, 1997 WL 227955 at *6 n.7 (N.D. Cal. Apr. 24, 1997) (collecting relevant factors and noting that "[n]ot all of the enumerated factors must be found"). Application of the alter ego doctrine does not depend upon pleading or proof of fraud; it is enough that adherence to the fiction of the separate existence of the corporation would promote injustice or bring about inequitable results. *Toho-Towa*, 217 Cal.App.4th at 1109 n.5.[13]

Here, numerous factors support a finding that the OnlineNIC Defendants are mere instrumentalities and alter egos of 35.CN, including the (1) disregard of corporate formalities, (2) disregard of legal formalities, (3) use of the same offices and employees, (4) commingling of funds and assets, (5) diversion of assets to non-corporate uses, (6) inadequate capitalization, and (7) concealment of the identity of the owner. *See Toho-Towa,* 217 Cal.App.4th at 1108-09; *DEPCOM Power, Inc.,* 2020 WL 5176193 at *4. In addition, (8) 35.CN has hindered discovery of facts relating to alter ego liability, which further weighs in favor of finding alter ego liability. *Wells Fargo Bank,* 227 Cal.App.4th at 8.

[13] The party asserting alter ego liability bears the burden of establishing it. *See UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994). The preponderance of evidence standard applies to motions for terminating sanctions. *WeRide v. Kun Huang,* No. 5:18-CV-07233-EJD, 2020 WL 1967209 at *9 (N.D. Cal. Apr. 24, 2020).

Finally, (9) adherence to the fiction of the separate existence of the OnlineNIC Defendants would promote injustice or bring about inequitable results, warranting application of the alter ego doctrine. *Toho-Towa*, 217 Cal.App.4th at 1106-07.

**A. OnlineNIC disregards corporate formalities**

OnlineNIC disregards corporate formalities in multiple ways. First, OnlineNIC disregards corporate formalities by failing to maintain corporate resolutions, minutes, and bylaws. Kroll Decl. ¶¶ 32-33, Ex. 14. *See Wells Fargo Bank*, 227 Cal.App.4th at 8 (finding alter ego where defendant did not produce corporate minutes, resolutions, or authorizations); *U.S. v. Healthwin-Midtown Convalescent Hospital and Rehabilitation Center, Inc.*, 511 F. Supp. 416, 420 (C.D. Cal. 1981) (finding alter ego where entity disregarded corporate formalities and did not hold regular board meetings). OnlineNIC also has not complied with the California Corporate Code's requirement that a corporation have a director, secretary, and chief financial officer. *Compare* Kroll Decl. ¶¶ 36-37, Exs. 17-18 *with* Ex. 8 (Yu Depo II at 25:16-24; 26:12-16; 35:7-10); Cal. Corp. C. §§ 212(a), 312(a); *see also RRX Industries, Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 546 (9th Cir. 1985) (finding alter ego where no stockholder meetings were ever held and the corporate entity had no board of directors and no employees).

Second, OnlineNIC disregards corporate formalities by not issuing any shares or maintaining stock ledgers, and by failing to document the transfers of ownership in 2009. Kroll Decl. ¶¶ 32-33, Ex. 14. *See Claremont Press,* 187 Cal.App.2d at 816-817 (affirming finding of alter ego where no stock of the corporation ever issued, noting that "[t]he fact that defendant ultimately sold his interest in the business without ever having secured a permit to issue its stock is a factor indicating his own disregard of the corporate existence").

Finally, OnlineNIC also disregards corporate formalities by having no corporate documents authorizing numerous loans to and from various third parties related to 35.CN, including purported shareholders of OnlineNIC. Kroll Decl. ¶¶ 47-52, 60-64, Exs. 28-33, 39; *see Doe v. Unocal*, 248 F.3d 915, 927-28 (9th Cir. 2001) ("Evidence that a parent provides interest free loans without observing corporate formalities by documenting those loans with promissory notes supports a finding that the parent is the subsidiary's alter ego." (citing *Laborers Clean-Up Contract Admin. Trust Fund v. Uriarte Clean-Up*

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

*Service, Inc.*, 736 F.2d 516, 524 (9th Cir. 1984))). OnlineNIC's disregard of corporate formalities demonstrates that OnlineNIC and 35.CN are alter egos.

**B. OnlineNIC disregards legal formalities**

OnlineNIC disregards legal formalities, further evidencing it is an alter ego of 35.CN. *See In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) (the disregard of legal formalities and the failure to maintain arm's length relationships among related entities is evidence of alter ego); *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1001 (N.D. Cal. 2001) (finding two individuals were alter egos of three companies where legal formalities were not followed).

First, OnlineNIC disregards legal formalities by not having any contracts or other documentation for its numerous purported loans and payments from 35.CN and individuals related to 35.CN. It also failed to provide documentation for its loans to shareholders and an unidentified party. Kroll Decl. ¶¶ 47-52, 60-64, Exs. 28-33, 39. Second, OnlineNIC disregards legal formalities in failing to document the purported "US-Based Services" it provides to 35.CN. *Id.* ¶¶ 2, 8, Ex. 1 (Response to Interrogatory No. 16). Third, there is no documentation reflecting the purported sale of OnlineNIC in 2009 by Mr. Gong to Ms. Z. Chen. *Id*. Exs. 7 (Yu Depo I at 29:24-30:1; 32:1-2); 8 (Yu Depo II at 12:10-13:6). OnlineNIC also failed to provide contractually required notice to ICANN reflecting the purported sale of OnlineNIC from Mr. Gong to either Mr. Liu or Ms. Z. Chen. *Id.* ¶ 70. This repeated disregard of legal formalities for significant corporate transactions further supports an alter ego finding.

**C. 35.CN, OnlineNIC, and ID Shield use the same offices and employees**

OnlineNIC's use of 35.CN's employees and offices to conduct its registrar operations and ID Shield's operations demonstrates that OnlineNIC and ID Shield are the alter egos of 35.CN. *See Toho-Towa*, 217 Cal.App.4th at 1109 (finding alter ego under the single enterprise theory where the work of two entities was performed by employees of the third entity). The OnlineNIC Defendants do not have their own employees who carry out their day-to-day registrar functions, including all technical and customer support. Instead, these are carried out exclusively by 35.CN employees. SAC ¶¶ 45, 50; Answer ¶¶ 45, 50 (admitting). Indeed, ICANN's Notice of Breach letters to both OnlineNIC and 35.CN at one time were sent to Ms. Yu at the same fax number and address. *Compare* Kroll Decl. Ex. 35 *with* Ex. 11.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

In-house legal work for both 35.CN and OnlineNIC was performed by the same legal specialists. Kroll Decl. ¶ 21, Ex. 13; *see also Toho-Towa*, 217 Cal.App.4th at 1109 (finding alter ego where individual provided legal services to both entities).

Moreover, OnlineNIC's and ID Shield's entire management team is comprised of 35.CN employees. This management team, and the other 35.CN employees working for the OnlineNIC Defendants, all work out of a building owned by 35.CN. Kroll Decl. Exs. 7 (Yu Depo I at 50:10-22), 8 (Yu Depo II at 10:6-8; 45:22-25; 46:7-17); *see Wells Fargo*, 227 Cal.App.4th at 8 (finding alter ego where company operated out of a building owned by sole proprietor and corporate formalities were disregarded).

The Service Outsourcing Contracts between OnlineNIC and 35.CN also demonstrate 35.CN's active participation in OnlineNIC's business because they required OnlineNIC to provide 35.CN access to all documents and files necessary for 35.CN to perform its duties under the contracts. Kroll Decl. ¶ 55, Ex. 36; *see Minton v. Cavaney*, 56 Cal.2d 576, 580 (1961) (records of corporation kept in alter ego's office support inference that alter ego actively participated in the conduct of the business). These shared employees, offices and resources reveal that 35.CN, OnlineNIC and ID Shield integrate their operations and operate as a single enterprise.

**D.    35.CN and OnlineNIC commingle funds and assets**

OnlineNIC's and 35.CN's numerous unexplained transfers between the two companies demonstrate commingling of funds, thereby satisfying another factor in finding alter ego under the single enterprise theory. *See Toho-Towa,* 217 Cal.App.4th at 1107 (stating that the single enterprise theory applies "when corporations integrate their resources and operations to achieve a common business purpose"). First, 35.CN employees and shareholders, as well as Mr. Gong and affiliated entities and individuals, have loaned hundreds of thousands of dollars to OnlineNIC; yet, there are no written loan documents reflecting the terms of these loans and whether interest was charged. Kroll Decl. ¶¶ 21, 60-64, Exs. 13, 39. *See Blizzard Energy, Inc. v. Schaefers*, 71 Cal.App.5th 832, 849-50 (2021) (finding alter ego where, among other things, individual received loans from company with no documentation, interest rate, or payment schedule). Notably, OnlineNIC has either overpaid or failed to repay many of these loans;

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

and, sometimes repaid Mr. Gong or Mr. Liu for loans neither made to OnlineNIC. Kroll Decl. ¶¶ 60-64, Ex. 39. Further, 35.CN refuses in discovery to provide any explanation for these transfers of funds. Kroll Decl. ¶¶ 2, 5-6, Ex. 1 (Response to Interrogatory Nos. 13-14).

Second, 35.CN paid over $[REDACTED] to OnlineNIC during 2015-2021 for "Purchase Payments for US-Based Services." Yet, neither 35.CN nor OnlineNIC has produced any contract for such services purportedly performed by OnlineNIC. Since OnlineNIC has identified no employees in the United States performing any such work, it appears that either no work was ever performed or, inexplicably, 35.CN was merely paying OnlineNIC for the work that 35.CN's own employees were performing. Kroll Decl. ¶¶ 2, 8, Ex. 1 (Response to Interrogatory No. 16). OnlineNIC also paid $[REDACTED] to 35.CN in March 2019 and $[REDACTED] to 35.CN in April 2019; yet, no explanation has been given why these payments were made. *Id.* ¶ 57, Ex. 37; *see Bank of Montreal v. SK Foods, LLC*, 476 B.R. 588, 599 (N.D. Cal. 2012), *aff'd sub nom. Bank of Montreal v. Salyer*, 599 F. App'x 706 (9th Cir. 2015) (finding alter ego where affiliated companies "frequently transferred assets among themselves for no ascertainable reasons.").

Finally, the Service Outsourcing Contracts were signed by Ms. Yu on behalf of OnlineNIC, while Ms. Yu was also a director of 35.CN's Software Outsourcing Center, which amounts to self-dealing. Kroll Decl. ¶¶ 7, 55, Exs. 7 (Yu Depo I at 57:19-24; 66:14-67:6), 36.[14] *See In re Towe*, 173 B.R. 217, 223 (Bankr. D. Mont. 1994), *aff'd sub nom. Towe v. Martinson*, 195 B.R. 137 (D. Mont. 1996) (finding alter ego where individual engaged in self-dealing by approving loans to himself in his capacity as manager of the investment fund, noting "[g]iven Edward Towe's egregious and flagrant pattern of self-dealing, his co-mingling of his personal affairs with those of Grant Investments Fund, [and other alter ego factors], this Court finds that Grant Investments Fund is the 'alter ego' of Edward Towe"); *Bank of Montreal*, 476 B.R. at 598 (identifying "failure to maintain arm's length relationships among related entities" as one of the alter ego factors). The frequent and unexplained transfers of funds and assets between 35.CN and its affiliated individuals and entities and OnlineNIC evidence commingling in support of alter ego.

[14] Ms. Yu also testified that as a director of 35.CN's Software Outsourcing Center, she only performed work for OnlineNIC. Ex. 7 at (Yu Depo I at 66:21-24). Ms. Yu was in charge of daily operations of OnlineNIC, yet was paid solely by 35.CN. *Id.* at (Yu Depo I at 69:23-25).

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

**E. OnlineNIC diverted its assets for non-corporate uses**

OnlineNIC diverted its corporate funds to non-corporate uses, further establishing alter ego under the single enterprise theory. *See Blizzard Energy, Inc.*, 71 Cal.App.5th at 849-50 (finding alter ego where, among other things, individual transferred funds to and from corporate account to third parties). OnlineNIC improperly diverted corporate assets by repaying purported "loans" to individuals other than the original lenders. Indeed, out of the $[REDACTED] in loans made to OnlineNIC, OnlineNIC has repaid approximately $[REDACTED] and over $[REDACTED] of these repayments were made to individuals who were not the original lenders. For example, Person 9 loaned OnlineNIC $[REDACTED] in 2009; yet, OnlineNIC has paid back several individuals other than Person 9 for this loan, including Mr. Gong who received $[REDACTED] in 2018. Kroll Decl. ¶ 63-64, Ex. 39 (Response to Interrogatory Nos. 5-6, Exs. 5.1, 6). Further, Person 8 loaned $[REDACTED] to OnlineNIC in 2009, but this loan was repaid to Mr. Liu and his wife, Linda Liu. Mr. Liu also received $[REDACTED] in 2018 and 2019 as repayment for loans made by other individuals to OnlineNIC in 2009 and 2011. *Id.*

OnlineNIC also improperly diverted money to third parties by loaning $[REDACTED] to L&L Oil LLC, $[REDACTED] to purported shareholders, and $[REDACTED] to an unidentified third party. Kroll Decl. ¶¶ 47-52, Exs. 28-33. Other than the partial payment of the loan to L&L Oil by Mr. Liu, none of the other loans has been repaid to OnlineNIC. *Id.* ¶¶ 48-52, Exs. 8 (Yu Depo II at 62:21-63:19; 67:6-21), 29-33. OnlineNIC's diversion of its assets to non-corporate uses, such as to circumvent China's currency controls, justifies a finding of alter ego liability.

**F. OnlineNIC is inadequately capitalized**

OnlineNIC was inadequately capitalized at its formation and remained so throughout its operation, further demonstrating that it is an alter ego of 35.CN. *See Platt v. Billingsley*, 234 Cal.App.2d 577, 583 (1965) ("One of the most significant facts supporting [finding of alter ego] is that the corporation was undercapitalized at all times pertinent to this action."); *Shafford v. Otto Sales Co.*, 149 Cal.App.2d 428, 433 (1957) ("[T]he proper rule is that inadequate financing, where such appears, is a factor, and an important factor, in determining whether to remove the insulation to stockholders normally created by the corporate method of operation."). For example, there is no evidence that OnlineNIC ever issued shares at

its formation. Kroll Decl. ¶¶ 32-35, Exs. 14, 16; *see Oceans II, Inc. v. Skinnervision, Inc.*, No. 2:12–cv–06867–CAS, 2015 WL 4484208, at *4 (C.D. Cal. July 20, 2015) (finding company was undercapitalized when it never issued stock certificates). And OnlineNIC continued to be inadequately capitalized since at least 2009 because it has had significant negative retained earnings. Kroll Decl. ¶¶ 42-52, Exs. 23-33; *see Healthwin-Midtown,* 511 F. Supp. at 419 (finding alter ego where liabilities of corporation continued substantially to exceed its assets). In addition, since 2009, OnlineNIC has needed to receive almost $[REDACTED] in loans to continue operating. *Id.* ¶ 63, Ex. 39 (Response to Interrogatory No. 5, Exs. 5.1-5.2); *see Claremont Press,* 187 Cal.App.2d at 816-17 (finding alter ego where loans were made to maintain business and balance sheet showed negative net worth). OnlineNIC's undercapitalization weighs strongly in favor of an alter ego finding.

**G. OnlineNIC conceals and misrepresents the identity of its owner**

OnlineNIC conceals and misrepresents the identity of its owner, thereby satisfying another alter ego factor. *See Bank of Montreal*, 476 B.R. at 598 (noting the "concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities" as a relevant factor for finding alter ego). Specifically, there is conflicting evidence about when, or if, Mr. Gong (the founder of both OnlineNIC and 35.CN) sold OnlineNIC. As described above, 35.CN and OnlineNIC have provided conflicting accounts of who owns OnlineNIC, including in (a) OnlineNIC's discovery responses and deposition testimony, (b) 35.CN's discovery responses, (c) OnlineNIC's tax filings, and (d) OnlineNIC's filings with ICANN. Kroll Decl. ¶¶ 38-41, 46-47, Exs. 7 (Yu Depo I at 29:24-30:1; 32:1-2); 8 (Yu Depo II at 12:6-13:6; 39:10-18), 19-22, and 27-28. This contradictory information regarding ownership of OnlineNIC provided by OnlineNIC and 35.CN further evidences an alter ego relationship.

**H. 35.CN and the OnlineNIC Defendants hindered discovery relating to alter ego liability**

35.CN and the OnlineNIC Defendants have hindered Plaintiffs' ability to discover facts relating to the alter ego relationship among them, weighing in favor of finding an alter ego relationship. *See Wells Fargo*, 227 Cal.App.4th at 8 (finding alter ego relationship between an individual and corporation where

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

individual hindered discovery of facts relating to his alter ego liability). Plaintiffs sought discovery from the OnlineNIC Defendants to learn the relationship between 35.CN and the OnlineNIC Defendants and the nature and extent of 35.CN's involvement in the cybersquatting activity at issue in this case. Rather than provide substantive responses to Plaintiffs' interrogatories regarding the relationship between 35.CN and the OnlineNIC Defendants, for example, the OnlineNIC Defendants responded that the term "alter ego" was ambiguous, as were terms central to their domain name registration business (e.g., "proxy service," "Registrant," and "Registration"). *See* ECF No. 68.2.

Plaintiffs served written discovery on 35.CN in February 2022 requesting, among other items, facts and documents relating to Plaintiffs' alter ego claims and Defendants' destruction of evidence. These discovery requests focused on payments between 35.CN and OnlineNIC, loans to OnlineNIC by individuals connected with 35.CN, and a description of the work 35.CN employees performed for OnlineNIC. Kroll Decl. ¶ 2. To date, one year later, 35.CN has yet to adequately respond to these discovery requests (*Id.* ¶¶ 2-8, Ex. 1)—despite the Court having ordered the parties to proceed with discovery on alter ego. *See* ECF No. 207 at 8-9 (finding, *inter alia,* that Plaintiffs had raised "serious questions" regarding the alter ego relationship between 35.CN and the other defendants and ordered that "the parties shall proceed with discovery, including fact finding into issues regarding general and specific jurisdiction"); *see also* ECF No. 226 at 6 ("There are serious allegations of spoliation of evidence against [the OnlineNIC Defendants] . . . . To understand whether these allegations extend to 35.CN and how, if at all, they impact 35.CN, additional non-bifurcated discovery is required including with respect to the issue of alter ego."). Indeed, 35.CN disputes that any evidence was destroyed. Kroll Decl. ¶¶ 2, 4, Ex. 1 (Response to Interrogatory No. 8).

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

35.CN's non-responsive discovery responses relating to alter ego and the destruction of evidence, similar in kind to the OnlineNIC Defendants' long history of discovery abuses in this case[15] and in a prior case,[16] evidence an alter ego relationship.

**I. Adherence to the fiction of OnlineNIC's separate corporate existence would promote injustice or bring about inequitable result**

Recognizing OnlineNIC as a corporate entity separate from 35.CN would promote injustice or bring about inequitable results, warranting application of the alter ego doctrine. "The law of this state is that the separate corporate entity will not be honored where to do so would be to defeat the rights and equities of third persons." *Mesler v. Bragg Mgmt. Co.*, 39 Cal.3d 290, 301 (1985) (internal citations omitted); *see also Claremont Press*, 187 Cal.App.2d at 817 (finding alter ego and concluding that "to recognize the separate entity of the corporation here would permit [defendant and alter ego] to secure for their venture the benefit of plaintiff's printing services without liability therefor").

Here, allowing 35.CN—whose employees directly participated in the destruction of evidence at issue—to escape liability for their employees' actions would be unjust. It would likewise be unjust to allow 35.CN, who controlled and operated the OnlineNIC Defendants, to benefit from the destruction of

---

[15] For example, in response to Plaintiffs' request for financial documents, the OnlineNIC Defendants made a representation to Judge van Keulen that "Domain ID Shield has no further documents." ECF No. 79, Ex. 5. Yet, in the face of a motion to compel, ID Shield produced financial statements. Judge van Keulen was concerned about "the early representations that there were no such records and then the production of these records." Hearing on May 11, 2021, Tr. at 8. The Court further expressed "some concerns about the reluctance and misrepresentations around getting these documents produced." *Id.*

[16] In 2009, OnlineNIC was found liable for cybersquatting resulting in a judgment of $33,150,000 in damages to Verizon. *Verizon California Inc. v. OnlineNIC, Inc.,* No. C 08-2832 JF (RS), 2009 WL 2706393 at *1 (N.D. Cal. Aug. 25, 2009) (Judge Fogel awarded $50,000 per domain name as statutory damages). Judge Fogel also held OnlineNIC in civil contempt for multiple violations of court orders, finding "by clear and convincing evidence" that OnlineNIC violated court orders by producing a selective subset of data and failing to produce required documents in discovery. *Verizon California Inc. v. OnlineNIC, Inc.*, 647 F. Supp. 2d 1110, 1114, 1120-21 (N.D. Cal. 2009). The Court also found that OnlineNIC violated the Modified Injunction entered in the case, "form[ing] part of a much larger pattern of noncompliance." *Id.* at 1118. OnlineNIC was sanctioned $30,600 in addition to default judgment of $33.15 million. *Id.* at 1121, 1128. Judge Fogel also noted that OnlineNIC made "repeated misrepresentations concerning the nature of its relationship with [35.CN]." *Verizon California Inc.,* 2009 WL 2706393 at *6.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

evidence relating to Plaintiffs' ACPA claims and to the defenses 35.CN intends to assert. And it would be unjust to allow 35.CN to engage in cybersquatting while avoiding any liability by setting up the OnlineNIC Defendants as judgment-proof shell companies to be held responsible. Indeed, OnlineNIC has been severely undercapitalized for over a decade because it never issued shares, instead incurring debt by relying on loans from 35.CN and third parties to purportedly operate its business. Kroll Decl. ¶¶ 32-35, 42-52, 60, Exs. 14-16, 23-33, 39; *see Toho-Towa Co.*, 217 Cal.App.4th at 1109 (upholding alter ego finding when defendant structured financial operations such that operating defendant did not receive adequate money from business operations and "thus would not have funds to meet its payment obligations"). Compounding the injustice, OnlineNIC dissipated its assets through undocumented loans and other undocumented transactions, ensuring it would have inadequate funds to pay its liabilities while, at the same time, circumventing Chinese law on receipt of foreign currencies. *See United States v. Lonich,* No. 14-cr-00139-SI-1, 2018 WL 10127107 at * 4 (N.D. Cal. Aug. 8, 2018) (Illston, J.) (finding alter ego where company was created in order to carry out money laundering and fraud) *aff'd sub nom. United States v. 101 Houseco*, *LLC*, 22 F.4th 843 (9th Cir. 2022).

Finally, it would be unjust to shield 35.CN from liability given 35.CN and OnlineNIC's continuous abuse of their position of trust as ICANN-accredited registrars. Defendants made misrepresentations to the California Secretary of State, federal and state tax authorities, ████, the Court, and the Special Master—and abused the discovery process and thwarted the administration of justice—in order to effectuate 35.CN and the OnlineNIC Defendants' cybersquatting scheme, all to the detriment of Plaintiffs, the public, and other trademark owners. Failing to pierce the corporate veil would allow 35.CN to continue to engage in and benefit from these tactics, while directing its cybersquatting activities at the U.S. public, without repercussion.

## V. CONCLUSION

Plaintiffs respectfully request the Court to strike 35.CN's Answer and enter default against 35.CN.

DATED: November 16, 2023

Tucker Ellis LLP

By: /s/David J. Steele
David J. Steele
Howard A. Kroll
Steven E. Lauridsen

Attorneys for Plaintiffs,
FACEBOOK, INC. and INSTAGRAM, LLC

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

20

MOTION TO STRIKE AND FOR DEFAULT JUDGMENT
Case No. 3:19-cv-07071-SI