**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Liana W. Chen (Bar No. 296965)
Leah Rosa Vulić (Bar No. 343520)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@kr.law
jeff@kr.law
liana@kr.law
leah@kr.law

Defendant Xiamen 35.com Technology Co., Ltd.
(erroneously sued as Xiamen 35.com Internet Technology Co., Ltd.)

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

**FACEBOOK, INC.**, et al.,

Plaintiffs,

v.

**ONLINENIC INC.**, et al.,

Defendants.

Case No. 3:19-cv-07071-SI

**DECLARATION OF YU HONGXIA IN SUPPORT OF DEFENDANT XIAMEN 35.COM TECHNOLOGY CO., LTD.'S SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE DEFENDANT'S ANSWER AND FOR ENTRY OF DEFAULT AGAINST DEFENDANT XIAMEN 35.COM TECHNOLOGY CO., LTD. PURSUANT TO FED. R. CIV. P. 37 (AKA PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT) [D.E. 299]**

Date: July 14, 2023
Time: 10:00 a.m.
Ctrm: 1, 17th Floor
Judge: Hon. Susan Illston

I, Yu Hongxia, do hereby declare:

1. I am over the age of 18, and I am an employee of Defendant Xiamen 35.com Technology Co., Ltd. ("35.CN"). Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration, and if called as a witness I would testify to the facts contained in this declaration.

2. I am informed that the total revenue for 35.CN for the years 2009 through 2019 is about [REDACTED], and, based on documents OnlineNIC produced in discovery to Facebook, the total revenue for OnlineNIC for this same period was approximately [REDACTED], and the total dollar value of money paid for services or for loans/loan payments between 35.CN and OnlineNIC over this same period of time is [REDACTED]. These numbers are expressed in the nearest million dollars.

3. I have reviewed the Exhibits attached to the Kroll Declaration in support of Plaintiffs' Reply for their Motion to Strike.

4. To my knowledge, Exhibits 1-3 to the Reply ("Statement of Work," "Performance Appraisal Form," and "Employee Training Plan") were not used by 35.CN before the purpose of taking responsibility for the hiring or training of OnlineNIC workers, including because individuals working under the staffing agreement (such as myself) reported to separate OnlineNIC ownership/management (such as Zhipo Chen, Minghe Wang, Rex Liu, and Sily Chen).

5. To my knowledge, Exhibit 4 to the Reply ("Organization Chart") does not show that Minghe Wang was the Director of 35.CN's Software Outsourcing Center, but rather shows that Minghe Wang (an OnlineNIC employee) oversaw the 35.CN employees working under the staffing agreement. I am informed that OnlineNIC produced Minghe Wang's W-2 from OnlineNIC, showing that Minghe Wang was an OnlineNIC employee. A true and correct copy of the W-2 is attached as **Exhibit A**. When I reported to Minghe Wang, also known as Steve Wang, he lived in the United States and spoke English, and he did not have any known relationship with 35.CN.

6. I was deposed as a representative for OnlineNIC on certain topics in July

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

2021. I testified about the separate OnlineNIC management during my deposition. For example, during some time, I reported to Minghe Wang, and then I reported to Zhipo Chen. (64:21-65:14; 67:8-9.) I stated that Zhipo Chen was the CEO of OnlineNIC and did not have any relationship with, or payment by, 35.CN. (38:23-25; vol. II 26:22-24, 46:7-10.) In other words, for work related to OnlineNIC, I reported to the CEO of OnlineNIC. (68:23-69:2.) I also testified that the CEO of OnlineNIC would have negotiated the outsourcing agreement (vol. II 78:17-22) and authorized my signing of OnlineNIC discovery verifications in this case, including in face-to-face meetings. (43:2-3; 49:10-23.) Further, I said that OnlineNIC and 35.CN had separate offices on different floors. (51:1-5.) A true and correct copy of excerpts of my deposition transcript are attached as **Exhibit B**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 21 day of June, 2023 in Xiamen, China.

By: Yu Hongxia
Yu Hongxia

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

# Exhibit A

a Employee's social security number
1 Wages, tips, other compensation
2 Federal income tax withheld
3 Social security wages
4 Social security tax withheld
5 Medicare wages and tips
6 Medicare tax withheld
7 Social security tips
8 Allocated tips
c Employer's name, address, and ZIP code
ONLINENIC, INC.
3027 TEAGARDEN ST
SAN LEANDRO CA 94577-5720
d Control number
2
b Employer identification number (EIN)
95-4780566
e Employee's first name and initial
Last name
WANG MINGHE
11544 EVENING SPRING COURT
CUPERTINO CA 95014
f Employee's address and ZIP code
9
10 Dependent care benefits
11 Nonqualified plans
12a
13 Statutory employee Retirement plan Third-party sick pay
12b
14 Other
12c
12d
15 State Employer's state ID number
CA 467-8812-1
16 State wages, tips, etc.
17 State income tax
18 Local wages, tips, etc.
19 Local income tax
20 Locality name
CA SDI

Form **W-2 Wage and Tax Statement** **2015**
**Copy B-To Be Filed With Employee's FEDERAL Tax Return.**

a Employee's social security number
1 Wages, tips, other compensation
2 Federal income tax withheld
3 Social security wages
4 Social security tax withheld
5 Medicare wages and tips
6 Medicare tax withheld
7 Social security tips
8 Allocated tips
c Employer's name, address, and ZIP code
ONLINENIC, INC.
3027 TEAGARDEN ST
SAN LEANDRO CA 94577-5720
d Control number
2
b Employer identification number (EIN)
95-4780566
e Employee's first name and initial
Last name
WANG MINGHE
11544 EVENING SPRING COURT
CUPERTINO CA 95014
f Employee's address and ZIP code
9
10 Dependent care benefits
11 Nonqualified plans
12a
13 Statutory employee Retirement plan Third-party sick pay
12b
14 Other
12c
12d
15 State Employer's state ID number
CA 467-8812-1
16 State wages, tips, etc.
17 State income tax
18 Local wages, tips, etc.
19 Local income tax
20 Locality name
CA SDI

Form **W-2 Wage and Tax Statement** **2015**
**Copy 2-To Be Filed With Employee's State, City, or Local Income Tax Return.**

a Employee's social security number
1 Wages, tips, other compensation
2 Federal income tax withheld
3 Social security wages
4 Social security tax withheld
5 Medicare wages and tips
6 Medicare tax withheld
7 Social security tips
8 Allocated tips
c Employer's name, address, and ZIP code
ONLINENIC, INC.
3027 TEAGARDEN ST
SAN LEANDRO CA 94577-5720
d Control number
2
b Employer identification number (EIN)
95-4780566
e Employee's first name and initial
Last name
WANG MINGHE
11544 EVENING SPRING COURT
CUPERTINO CA 95014
f Employee's address and ZIP code
9
10 Dependent care benefits
11 Nonqualified plans
12a
13 Statutory employee Retirement plan Third-party sick pay
12b
14 Other
12c
12d
15 State Employer's state ID number
CA 467-8812-1
16 State wages, tips, etc.
17 State income tax
18 Local wages, tips, etc.
19 Local income tax
20 Locality name
CA SDI

Form **W-2 Wage and Tax Statement** **2015**
**Copy C-For EMPLOYEE'S RECORDS.**

a Employee's social security number
1 Wages, tips, other compensation
2 Federal income tax withheld
3 Social security wages
4 Social security tax withheld
5 Medicare wages and tips
6 Medicare tax withheld
7 Social security tips
8 Allocated tips
c Employer's name, address, and ZIP code
ONLINENIC, INC.
3027 TEAGARDEN ST
SAN LEANDRO CA 94577-5720
d Control number
2
b Employer identification number (EIN)
95-4780566
e Employee's first name and initial
Last name
WANG MINGHE
11544 EVENING SPRING COURT
CUPERTINO CA 95014
f Employee's address and ZIP code
9
10 Dependent care benefits
11 Nonqualified plans
12a
13 Statutory employee Retirement plan Third-party sick pay
12b
14 Other
12c
12d
15 State Employer's state ID number
CA 467-8812-1
16 State wages, tips, etc.
17 State income tax
18 Local wages, tips, etc.
19 Local income tax
20 Locality name
CA SDI

Form **W-2 Wage and Tax Statement** **2015**
**Copy 2-To Be Filed With Employee's State, City, or Local Income Tax Return.**

# Exhibit B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

FACEBOOK, INC. AND INSTAGRAM, LLC, )
)
PLAINTIFFS, )
) CASE NO.
V. ) 5:19-CV-07071-SVK
)
ONLINENIC, INC.; DOMAIN ID SHIELD SERVICES CO., LIMITED; AND DOES 1-20, )
)
DEFENDANTS. )
________________________________)

VIDEOTAPED DEPOSITION OF THE PERSON

MOST QUALIFIED OF ONLINENIC, INC.,

CARRIE YU

TUESDAY, JULY 13, 2021
CHINA STANDARD TIME

VOLUME I

JOB NO. CA 4690900
REPORTED BY MARK McCLURE, CRR
CAL CSR 12203
PAGES 1 - 83

VIDEOTAPED DEPOSITION OF CARRIE YU, PMQ, VOLUME I, TAKEN AT 7:09 A.M., TUESDAY, JULY 13, 2021, CHINA STANDARD TIME, VIA VERITEXT REMOTE TECHNOLOGY, BEFORE MARK McCLURE, C.S.R. #12203, CERTIFIED SHORTHAND REPORTER IN AND FOR THE STATE OF CALIFORNIA.

APPEARANCES OF COUNSEL:

FOR THE PLAINTIFFS FACEBOOK, INC. AND INSTAGRAM:

(APPEARING BY VIDEOCONFERENCE)
TUCKER ELLIS LLP
BY: HOWARD A. KROLL, ESQ.
515 SOUTH FLOWER STREET
FORTY-SECOND FLOOR
LOS ANGELES, CALIFORNIA 90071
213.430.3400
HOWARD.KROLL@TUCKERELLIS.COM

FOR THE DEFENDANTS ONLINENIC, INC. AND DOMAIN ID SHIELD SERVICES CO., LIMITED:

(APPEARING BY VIDEOCONFERENCE)
LEXANALYTICA, PC
BY: PERRY J. NARANCIC, ESQ.
2225 E. BAYSHORE ROAD, SUITE 200
PALO ALTO, CALIFORNIA 94303
650.655.2800
PJN@LEXANALYTICA.COM

ALSO PRESENT:
DAVID STEELE, TUCKER ELLIS
HELENA GUYE, TUCKER ELLIS
BART KESSEL, TUCKER ELLIS
STACY CHEN, ATTORNEY, FACEBOOK
OLIVIA GONZALEZ, ATTORNEY, FACEBOOK

Page 2

ALSO PRESENT: - CONTINUED
AMANDA LIN, CHINESE INTERPRETER
DREW DORSEY, VIDEOGRAPHER
CRAIG JONES, VERITEXT CONCIERGE

Page 3

I N D E X

| WITNESS | EXAMINATION | PAGE |
|---|---|---|
| CARRIE YU | | |
| | BY MR. KROLL | 7 |

E X H I B I T S

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| EXHIBIT 1 | PLAINTIFFS' SPECIAL COURT ORDERED NOTICE OF DEPOSITION OF ONLINENIC, INC. PURSUANT TO FED. R. CIV. P. 30(B)(6) - 7 PAGES | 25 |
| EXHIBIT 2 | ONLINENIC, INC.'S RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION - 28 PAGES | 42 |
| EXHIBIT 3 | ONLINENIC, INC.'S FIRST AMENDED RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION - 26 PAGES | 45 |
| EXHIBIT 4 | ONLINENIC, INC.'S FIRST AMENDED RESPONSES TO PLAINTIFF FACEBOOK, INC.'S FIRST SET OF INTERROGATORIES - 12 PAGES | 46 |
| EXHIBIT 5 | RESPONSES OF ONLINENIC, INC. AND DOMAIN ID SHIELD TO PLAINTIFF FACEBOOK, INC.'S SPECIAL COURT ORDERED INTERROGATORIES - 25 PAGES | 48 |
| EXHIBIT 6 | 2013 REGISTRAR ACCREDITATION AGREEMENT - ICANNFB-000052 - ICANNFB-000117 - 66 PAGES | 71 |

Page 4

TUESDAY, JULY 13, 2021, 7:09 A.M.
CHINA STANDARD TIME

VIDEOGRAPHER: Good morning.

We are going on the record at 7:09 a.m. on July 13, 2021.

Please note that the microphones are sensitive, may pick up whispering, private conversations and cellular interference.

Please turn off all cell phones, place them away from the microphones as they can interfere with the deposition audio.

Audio and video recording will continue to take place unless all parties agree to go off the record.

This is Media Unit 1 of the videorecorded deposition of Carrie Yu taken by counsel for plaintiff in the matter of Facebook, Inc., et al. versus OnlineNIC, Inc., et al., filed in the United States District Court, Northern District of California, case No. 519-cv-07071-SVK.

This deposition is being held remotely using Veritext Virtual technology and the witness is located in Xiamen, China.

My name is Drew Dorsey, from the firm Veritext

Page 5

BY MR. KROLL:
Q. What month and day were you born in 1974?
A. April 28.
Q. Ms. Yu, what languages do you speak?
A. Mandarin Chinese and English.
Q. Are there any other languages that you speak?
A. No.
Q. Do you read and understand English?
A. Basically, I do.
Q. Do you speak and understand English?
A. Basically, yes.
Q. When you speak with Mr. Narancic, do you have an interpreter?
A. No.
Q. Do you understand each other when you communicate in English?
MR. NARANCIC: Objection. Speculation.
BY MR. KROLL:
Q. You may answer the question.
A. Most of the time, yes.
Q. Do you need a translator for this deposition?
A. Yes.
Q. Why is that?
A. So that I can understand the questions you are asking completely and fully and correctly.

Q. Ms. Yu, can you briefly describe your educational history?
A. The entire educational background?
Q. Let me make it simpler.
Did you attend a college?
A. Yes.
Q. What college did you go to?
A. Xiamen University.
Q. Did you obtain a degree at Xiamen University?
A. It's a junior college degree.
Q. What did you study at Xiamen University?
A. Finance.
Q. What year did you graduate from Xiamen University?
A. 1998.
Q. Did you attend another university after Xiamen University?
A. No.
Q. Do you have any legal training?
A. No.
Q. What year did you begin Xiamen University?
A. 1995.
Q. Where did you go to school before Xiamen University?
A. I was studying in Jiangsu province.

Q. What were you studying?
A. Senior high school.
Q. When did you graduate from senior high school?
A. 1992.
Q. Were you employed between 1992 and 1995 when you started college at Xiamen University?
A. Yes.
Q. What work did you do?
A. I worked in an electronics factory.
Q. What was the name of the electronics factory?
A. Hua Feng Electronics factory.
INTERPRETER: H-u-a F-e-n-g, phonetic spelling provided by the interpreter.
BY MR. KROLL:
Q. After you worked at Hua Feng Electronics, what was your next job?
A. That was the only one.
Q. What did you do at Hua Feng Electronics?
A. A worker.
Q. What job did you have?
A. The manufacturing of microphones.
Q. When did you stop working at Hua Feng Electronics?
A. 1994.
Q. What was your next job after Hua Feng

Electronics?
A. Later, I went to Xiamen University to begin my studies.
Q. In 1998, when you graduated from Xiamen University, did you get a job?
A. No.
Q. What was the first job that you got after 1998?
A. A salesperson.
Q. For what company were you a salesperson?
A. The salesperson of a food ingredient company.
THE WITNESS: (Speaking in Chinese.)
INTERPRETER: Interpreter rerendition.
"The salesperson of a stone company, stone materials."
BY MR. KROLL:
Q. Ms. Yu, you corrected the interpreter on the English that she was translating, is that correct?
A. Yes.
Q. So you understand the English that she is translating, as well as the questions that I'm asking in English?
MR. NARANCIC: Objection. Argumentative.
BY MR. KROLL:
Q. You may answer the question.

Q. In your conversation with Zhipo Chen, did you discuss Category 29, which is Mr. Chen's relationship with defendants and 35.CN?
A. No.
Q. Do you consider yourself the most knowledgeable person at OnlineNIC to testify as to Mr. Chen's relationship with defendants and 35.CN?
A. Yes.
Q. You don't believe Mr. Chen would have a greater knowledge than you regarding his relationship with defendants and 35.CN?
MR. NARANCIC: Objection. Argumentative.
BY MR. KROLL:
Q. You may answer.
A. It's not that I don't think he would be more qualified than me to answer that question, it's because this question does not need discussing. The reason is that the answer is clear and obvious.
Q. What is the answer that is clear and obvious?
A. Are we talking about Topic 29?
Q. Yes.
A. The answer to Topic 29 is clear. Mr. Chen knows about it and I know about it, too. Zhipo Chen is the CEO of OnlineNIC and Zhipo Chen does not have any relationship with 35.CN.

Q. We'll get into that in a little more detail later.
Have you ever been convicted of a felony?
A. No.
Q. Have you ever filed or been a party to a lawsuit?
A. I have filed lawsuits, but I have never been a defendant.
Q. Were the lawsuits filed in the United States?
MR. NARANCIC: Howard, can you please repeat the question.
BY MR. KROLL:
Q. Were the lawsuits filed in the United States?
A. No, no.
Q. You have filed -- strike that.
You have signed verifications in this case.
Are you aware of that?
A. I'm aware of that.
Q. Other than the verifications that you signed in this case, have you ever signed a declaration, affidavit or any other document under penalty of perjury?
MR. NARANCIC: I'll just interject. I want to make sure the client understands the question.
Howard, can you ask her if she understands the

question?
MR. KROLL: I'm assuming that Ms. Yu understands the question unless she asks me that she doesn't -- or tells me that she doesn't.
THE WITNESS: I'm sorry, I don't understand the question.
What are you asking?
BY MR. KROLL:
Q. Do you understand what penalty of perjury is?
A. I know it.
Q. Have you signed any document under penalty of perjury, other than the verifications in this case?
A. Yes.
Q. Did you file any of those documents in the United States?
A. No. Those were my personal cases; they had nothing to do with this lawsuit.
Q. Thank you.
MR. KROLL: I think it's time for a short break.
Perry, I would suggest, not that I want to give you legal advice, but that you talk to your client about the documents that have not been produced.
So let's go off the record for ten minutes.
VIDEOGRAPHER: This marks the end of Media

No. 3. The time is 9:26 a.m. We are off the record.
(A short recess was taken.)
VIDEOGRAPHER: This marks the beginning of Media No. 4. The time is 9:47. We are on the record.
BY MR. KROLL:
Q. Ms. Yu, do you understand that you are still under oath?
A. Yes.
Q. Are you familiar with an individual by the name of Junru Chen, J-u-n-r-u Chen?
A. I'm not very familiar with this person.
Q. You are aware that he is involved with Domain ID Shield?
MR. NARANCIC: I will interpose an objection here to the extent the question deals with Domain ID Shield, and today we're talking about OnlineNIC.
BY MR. KROLL:
Q. You may answer.
A. Could you please repeat the question?
Q. Well, let me tell you where -- what the true question is, to make this simpler.
Is Zhipo Chen related to Junru Chen?
A. No.
Q. Is Sily Chen related to Junru Chen?
A. No.

Q. All right.
MR. KROLL: I'd like to mark as Exhibit 2, the OnlineNIC's Responses to Plaintiffs' First Set of Requests for Admission.
(Exhibit 2 marked for identification.)
MR. KROLL: If everyone clicks on the Marked Exhibits in Veritext Exhibit Share, you will see Exhibit 2.
Q. Do you have that document, Ms. Yu?
A. 0002, right?
Q. Yes.
Have you seen this document before?
A. Yes.
Q. Please go to the last page of Exhibit 2, which is page 28 of 28.
A. Okay.
Q. Are you there?
A. Yes.
Q. This is a verification signed by you on October 15, 2020.
Do you see that?
A. Yes.
Q. And it says that you are an officer of OnlineNIC and authorized to sign this verification.
Do you see that?

A. Yes.
Q. Who authorized you to sign this verification?
A. The CEO of OnlineNIC.
Q. Did you read the responses by OnlineNIC to this first set of Requests for Admissions?
MR. NARANCIC: I'm going to object on the grounds that the line of questioning is not specified with particularity in the notice of deposition because those are not included in the definition of discovery responses in Definition Section I. And accordingly, the line of questioning is overbroad and unduly burdensome and not proportionate.
THE WITNESS: Yes.
BY MR. KROLL:
Q. Were the answers translated for you in Chinese?
MR. NARANCIC: Objection. Same objection.
THE WITNESS: Do I need to answer?
MR. NARANCIC: Yes.
THE WITNESS: Did you just ask me if those documents were translated into Chinese for me?
BY MR. KROLL:
Q. Yes.
A. No.
Q. Did you understand the responses as being true

and correct?
MR. NARANCIC: Howard, I'm not sure what to do here. I have a standing objection to any line of questioning involving this particular set of discovery because it's not set forth at all in paragraph I of discovery responses.
Should I just object to every question?
Because it doesn't seem fair or right.
MR. KROLL: Objections are fine. There are only a couple of questions here. It's really focusing on the verification.
MR. NARANCIC: Okay. As long as there's no substantive inquiry.
MR. KROLL: There's no -- this is really focused on the verification.
MR. NARANCIC: All right.
BY MR. KROLL:
Q. My question is: Did you understand that the responses were true and correct when you signed the verification?
MR. NARANCIC: Same objection.
THE WITNESS: Do I need to answer?
MR. NARANCIC: Yes.
THE WITNESS: My answer is yes.
BY MR. KROLL:

Q. And on October 15, 2020, when you signed this verification, you were an officer of OnlineNIC at that time, is that correct?
A. Yes.
MR. KROLL: I'd like to mark as Exhibit 3, OnlineNIC's First Amended Responses to Plaintiffs' First Set of Requests for Admission, which I understand is also not part of the designation, but it's going to be a very quick question.
(Exhibit 3 marked for identification.)
BY MR. KROLL:
Q. Ms. Yu, do you see Exhibit 3?
A. Yes.
Q. If you were to click on Exhibit 3, it is 26 pages long and there's no verification.
Do you recall whether you signed a verification of this first amended response to plaintiff's first set of requests for admission?
A. Right now, I am not sure. I need to look into and check relevant records.
Q. That's fine.
MR. KROLL: Perry, again, let me suggest, when we're all offline, you could look and get that verified, because we don't have a verification for Exhibit 3.
Perry, are you going to respond?

MR. NARANCIC: Yes, yes.
MR. KROLL: I'd like to mark as Exhibit 4, OnlineNIC's First Amended Responses to Plaintiff Facebook, Inc.'s First Set of Interrogatories.
(Exhibit 4 marked for identification.)
BY MR. KROLL:
Q. Ms. Yu, do you have this document in front of you?
A. Yes.
Q. If you go to page -- the last page of Exhibit 4, which is page 12 of 12, do you see the verification?
A. Yes. Yes, I see it.
Q. And the verification says that you are an officer of OnlineNIC, Inc. and authorized to sign this verification.
Do you see that?
A. Yes.
Q. And on February 1, 2021, were you an officer of OnlineNIC?
A. Yes.
Q. When you verified Exhibit 4, did you read OnlineNIC's amended responses in English?
A. Yes.
Q. Was it translated for you into Chinese?
A. No.

Q. What did you do to verify that the responses were true and correct?
A. I verified that all of the responses were true and correct based on my discussions with attorneys.
Q. Other than your discussion with attorneys, what reasonable inquiry did you undertake to determine that the answers were accurate?
A. I'm not sure what your question is asking about.
Q. Who determined what the answers should be to these interrogatories?
A. The determination was made after our discussion with attorneys.
Q. Did anyone at OnlineNIC by themselves obtain answers to these questions?
A. I'm not sure what your question is.
Q. Did you have discussions with anyone at OnlineNIC other than your attorney to determine the answers to these questions?
A. I believe I did.
Q. Who did you speak to?
A. Other members of the company.
Q. Who were they?
A. Those people in charge of OnlineNIC support, in charge of OnlineNIC sales, and other people.

Q. Did you look at Exhibit 4 to prepare for this deposition?
A. I did not see this before the deposition today, but I believe I have seen it before. It's just that I forgot about it.
Q. Is there any response in Exhibit 4 that is inaccurate?
MR. NARANCIC: Objection.
The line of questions is not specified with particularity in the notice, the question is overbroad, unduly burdensome and harassing.
BY MR. KROLL:
Q. You may answer.
A. I confirm that there is nothing that's inaccurate here.
MR. KROLL: All right, I'd like to mark as Exhibit 5 to this deposition the responses of OnlineNIC, Inc. and Domain ID Shield to plaintiff Facebook, Inc.'s Special Court Ordered Interrogatories.
(Exhibit 5 marked for identification.)
BY MR. KROLL:
Q. Ms. Yu, do you see this document?
A. Yes, I see it.
Q. If you go to page 9 of Exhibit 5, I believe that is where your verification is.

Do you see that?
A. I see it.
Q. And that is your signature, correct?
A. Yes.
Q. And you signed it on June 9, 2021?
A. Yes.
Q. Were you an officer of Domain ID Shield and OnlineNIC, Inc., on June 9, 2021?
A. Yes.
Q. Who authorized you to sign this verification on behalf of OnlineNIC?
A. The CEO of OnlineNIC.
Q. Did Mr. Chen authorize this in writing?
A. No.
Q. Did you have a conversation with Mr. Chen where he authorized you to sign this verification?
A. Yes.
Q. Was that conversation in person or on the phone?
A. Face-to-face.
Q. At what location was this meeting face-to-face?
A. His office.
Q. Where is his office located?
A. In Xiamen.

Q. What is the address of his office in Xiamen?
A. So, it was located in the same software park as we are in.
Q. Who is the "we" that you are referring to?
A. The office address of OnlineNIC in China.
Q. And it's -- the address of OnlineNIC is in the same software park as what other company?
A. I'm not sure what your question is because there are many companies within the software park.
Q. What is the address of OnlineNIC's company in China?
A. No. 8, Guanri Road, Software Park Phase 2, Xiamen, China.
INTERPRETER: The phonetic spelling is -- of the road is Guanri Road, G-u-a-n-r-i Road.
BY MR. KROLL:
Q. Are there other companies located at 8 Guanri Road, Software Park Phase 2, Xiamen, China?
A. Yes.
Q. Is one of those companies 35 Technology Company Limited?
A. Yes.
Q. Are there other companies located at 8 Guanri Road, Software Park Phase 2, Xiamen, China?
A. Yes.

Q. Where is OnlineNIC's office located, as compared to 35 Technology Company Limited?
A. The location of the address of OnlineNIC is on the third floor of this building, whereas 35.CN is on the fourth and fifth floors.
Q. How many floors does this building have?
A. Five.
Q. Are there any other companies located on the third floor?
A. Yes.
Q. What are the names of the other companies on the third floor?
A. Right now, I do not have those names. If you want those names, I can go and have a look at them and write them down and provide them to you next time. I do not have those names right now because they are not related to our company.
Q. Where are you located now?
A. Are you talking about where I am for this deposition?
Q. Yes.
A. Yes.
Q. I don't know if I understood your answer so let me ask you again.
Right now, where are you located for this

deposition?
A. In the office -- in my office.
Q. What floor is your office located?
A. The third floor.
Q. What companies are located on the first floor?
A. The first floor?
Q. Yes.
A. According to what I know, there is no company located on the first floor. What's on the first floor is a restaurant and a kindergarten.
Q. What companies are located on the second floor?
A. I do not remember their names. If you need them, I can go have a look and write them down and give them to you next time.
Q. Yes, I would appreciate if you were to write down the other companies located on the second floor and third floor.
Where's Sily Chen's office located?
A. She's in another location, not in this building.
Q. What location is she in?
A. It's in one of the buildings, also in this software park, because she's also responsible for other work as well.

Q. What other work is she responsible for?
A. According to what I know, she's an independent financial expert and professional. She can provide financial services to many other companies at the same time.
Q. Does she provide independent financial expert and professional advice to 35 Technology Company Limited?
A. No, no.
Q. Where is Mr. Shaohui Gong's office?
A. At No. 8 Guanri Road.
Q. What floor is Mr. Shaohui Gong on?
A. The fifth floor.
Q. Earlier, in this deposition, you indicated that the loan contract between Rex Liu and OnlineNIC was attached to Exhibit 5.
Can you show me what you were referring to?
A. Give me a minute.
It's in the response to Special Interrogatory No. 3.
Q. Response to Interrogatory No. 3 is located on page 3 and it says: "Responsive information is located at Exhibit 3."
Do you see that?
A. Where are you pointing to? You're referring

A. I do not think it was produced because to what I remember, you have never asked that question.
Q. Well --
MR. NARANCIC: I'm confused by the question, I'm confused by the answer.
Let me look at the document and I'll let you know what it is. If it was specially prepared, obviously, you're not going to get it. If it's a corporate document, if it's responsive, you'll get it. So let me look at the document and I'll let you know.
THE WITNESS: Okay.
MR. KROLL: You did produce a list of personnel, so I don't know if that is the same document that Ms. Yu was looking at, but I'll let you two look at it when we are finished with the deposition. You can let us know. But you do realize that we're entitled to see any document that she looks at during her deposition.
MR. NARANCIC: As long as it's not privileged, yeah.
THE WITNESS: According to my understanding, earlier, you were asking me who I reported to, and the name list we provided was the list of OnlineNIC's officers. According to my understanding, these two are two different questions.

BY MR. KROLL:
Q. I'm not quite sure I understand your response, but let me ask it this way.
From 2007 to 2010, when you were a salesperson for OnlineNIC, who was your supervisor?
A. My supervisor at that time was a manager.
Q. And what was the name of the manager?
A. Joe Li.
INTERPRETER: L-i, family name.
BY MR. KROLL:
Q. Are there other names -- is there a Chinese name for Joe Li?
A. Yes.
Q. What is that?
A. It's Mr. Li -- Mr. Li Xian.
INTERPRETER: L-i, as the family name; first name is spelled as X-i-a-n.
BY MR. KROLL:
Q. After you were a salesperson for OnlineNIC at 35.CN, what was your next job?
A. Sales manager.
Q. Were you a sales manager for OnlineNIC?
A. Yes.
Q. Going back to being a salesperson for OnlineNIC, did you have any job other than working for

OnlineNIC?
A. No.
Q. For what years were you a sales manager for OnlineNIC?
A. I don't remember the exact time frame because it has been a very, very long time, and also, it's not related to the topics we are here today to talk about for this deposition, so I did not prepare this information. If you want this information, I can go back and look and provide it to you next time.
Q. Well, I actually do think it's important for this deposition and it's part of what we were seeking, so can you -- generally, how many years did you work as sales manager for OnlineNIC?
A. Seven or eight. I would like to emphasize again, I'm not sure about exactly how many years. It's just about that number of years.
Q. So approximately from 2010 to 2017, is that fair?
A. Yes, right.
Q. Who did you report to as sales manager for OnlineNIC?
A. During some time in that period of time that position above me, which I referred to as my supervisor and we actually call it the director in the company,

that position was vacant; nobody was on that position. And later, a director joined us.
Q. What was the name of the director that you eventually reported to?
A. Mr. Wang Minghe.
INTERPRETER: W-a-n-g, family name; M-i-n-g-h-e, first name. Phonetic spelling provided by the interpreter.
BY MR. KROLL:
Q. When there was no director, who did you report to?
A. The CEO of OnlineNIC.
Q. Who was that?
A. Zhipo Chen.
Q. When you were sales manager for OnlineNIC, who paid you?
A. 35.CN.
Q. After you were sales manager for OnlineNIC, what did you do next?
A. Director.
Q. What were your duties and responsibilities as director?
A. I was in charge of the daily operations of OnlineNIC.
Q. And that was in approximately 2017?

A. More or less, yes.
Q. You earlier testified that you have a four-year-old child.
Did you take any time off from work when you had your child?
A. Yes.
Q. Approximately what months did you take off?
A. From July to December.
Q. In 2017?
A. Yes.
Q. For how many years were you a director in charge of the daily operations of OnlineNIC?
A. About four years.
Q. What is your current job at 35.CN?
A. Director.
Q. As a director for 35.CN from 2017 to present day?
A. For that time frame you were just asking me about, I was the director of a department under 35.CN.
Q. Which department is that?
A. Software outsourcing center.
Q. As a director of the software outsourcing center, did you work on companies other than OnlineNIC?
A. No.
Q. When did you start acting as a director for

the software outsourcing center of 35.CN?
A. Roughly, in 2017 or 2018.
Q. As the director for software outsourcing center, were you involved in the daily operations of OnlineNIC?
A. Yes.
Q. Who did you report to as a director?
A. With regards to the part related to OnlineNIC, I reported to the CEO of OnlineNIC.
Q. Was there a part not related to OnlineNIC?
A. This center was a department under 35.CN, so regarding all of the work of that department, I need to report to the CEO of 35.CN.
Q. And who is the CEO of 35.CN?
A. There have been several.
Are you asking about the one right now?
Q. I would like you to tell me all of the CEOs of 35.CN that you have reported to as a director.
A. The first one was Shaohui Gong.
The second one was Mr. Ding Jianshen.
INTERPRETER: D-i-n-g, family name; J-i-a-n-s-h-e-n-g, first name.
BY MR. KROLL:
Q. I'm sorry?
INTERPRETER: Counsel, I need to correct the

spelling. The second one was Mr. Ding Jianshen. D-i-n-g, family name; J-i-a-n-s-h-e-n, first name.
THE WITNESS: The third one, which is the current one, is Mr. Hang Weiwei.
INTERPRETER: That's H-a-n-g, family name; W-e-i-w-e-i, first name.
BY MR. KROLL:
Q. What years did you report to Shaohui Gong?
A. From the perspective of the work process and the workflow, I did not need to report to Mr. Gong directly. Since my job level was a director, I reported to the deputy general manager. I did not need to report to the general manager.
Q. Who was the deputy general manager that you reported to?
A. I need to check documents because there were many. This job position had many people.
Q. All right. Let me see if I understand this correctly.
When you were a director for 35.CN, you reported to the CEO of 35.CN, as well as the CEO of OnlineNIC, is that correct?
A. With regard to work related to OnlineNIC, I reported to the CEO of OnlineNIC; with regard to the work related to the software outsourcing center, I

reported to the deputy general manager, who was in charge at 35.CN.
Q. I thought you earlier testified that you reported to the CEO of 35.CN?
A. That was because I had some misunderstanding about what you were asking me earlier. I thought you were asking me who was the CEO of 35.CN. These are two different questions. I thought you were asking me about the CEO.
Q. I was asking you about the CEO because I thought you said that you reported to the CEO.
A. I did not need to report directly to the CEO from the work process flow.
Q. You may not have needed to report to the CEO, but did you report to the CEO?
A. Based on what I remember, I did not.
Q. What about currently?
A. Currently, like what I said earlier, in order to confirm the deposition topics, I confirmed with Shaohui Gong, and regarding the current CEO, I do not need to do that because it is not related to the lawsuit.
Q. As a director for 35.CN in charge of the daily operations of OnlineNIC, what company paid you?
A. 35.CN.

Q. Currently, are you a director of 35.CN in charge of the daily operations of OnlineNIC?
MR. NARANCIC: Objection. Vague as to form. Vague and ambiguous.
THE WITNESS: Yes.
BY MR. KROLL:
Q. Currently, as a director of 35.CN, you also are involved in the software outsourcing center for 35.CN, correct?
MR. NARANCIC: Objection. Form of question. Vague and ambiguous.
You may answer.
THE WITNESS: I'm not sure what counsel is trying to ask exactly.
BY MR. KROLL:
Q. It appears, by your answers, that you are involved not only with the daily operations of OnlineNIC but currently also in charge of the software outsourcing center, is that correct?
A. Yes.
Q. And the software outsourcing center that you're in charge of is the software outsourcing center of 35.CN, correct?
A. Yes.
Q. Were you a director of 35.CN in 2013?

A. No.
Q. Were you a director of 35.CN in 2014?
A. No.
Q. As a director in charge of the daily operations of OnlineNIC, have you been to OnlineNIC's offices in California?
A. Let me try to remember. I went there in 2019. I've been there once, in 2019, and that was the first time I went there.
MR. KROLL: I'd like to mark as Exhibit 6 the 2013 registrar accreditation agreement between 35 Technology Company Limited and ICANN. That's I-C-A-N-N.
(Exhibit 6 marked for identification.)
THE WITNESS: Where is that document? I don't see it.
BY MR. KROLL:
Q. I don't know.
MR. NARANCIC: If I can interrupt for a second. It's 8:45.
How long would you like to go tonight?
MR. KROLL: 15 minutes or so.
THE WITNESS: It's gone beyond the time you agreed to. It will affect my next meeting.
MR. NARANCIC: It was agreed to 9:00 o'clock, Carrie. Fifteen more minutes.

Can you -- Carrie, do you feel okay doing another 15 minutes?
THE WITNESS: Okay.
BY MR. KROLL:
Q. Exhibit 6 is the 2013 registrar accreditation agreement that is 66 pages in length, and with the Bates stamp numbers ICANN_FB-52 to 117.
Q. Ms. Yu, have you seen this document before?
A. I have.
Q. If you can turn to page 39 of the document, which is Bates-stamped ICANN_FB-000090.
MR. NARANCIC: Howard, do you intend to ask the witness questions on this document?
MR. KROLL: Yes.
MR. NARANCIC: Can you point me to where this is in the topics?
MR. KROLL: No. 21, Hongxia Yu, also known as Carrie Yu, relationship with 35.CN.
MR. NARANCIC: My question was, are you going to ask substantive questions about this document?
MR. KROLL: No.
MR. NARANCIC: Not who signed it and so forth.
MR. KROLL: Well, she signed it.
MR. NARANCIC: That's what I'm asking.
So your questions are not about analysis or

understanding of this agreement, it's more about who signed it?
MR. KROLL: Correct.
MR. NARANCIC: Okay.
BY MR. KROLL:
Q. Are you on page 39 of this document, Ms. Yu?
A. Please give me a minute. Okay.
Q. Do you see that the agreement is signed by Hongxia Yu for 35 Technology Company Limited?
MR. NARANCIC: I object to counsel's pronunciation.
BY MR KROLL:
Q. I apologize, Ms. Yu, if I'm mispronouncing your first name.
A. I see it.
Q. And you're the individual who signed this agreement on behalf of 35 Technology Company Limited?
A. Yes.
Q. And the title is director.
Do you see that?
A. I see it.
Q. Do you recall when this document was signed?
A. If we can look at the effective date of this document, the date on which this document was signed should be close to the effective date of the document.

are asking.

MR. KROLL: That's fine. It's past 9:00 o'clock, so we should end the deposition, although it will continue tomorrow at the same time as we started today.

With respect to the court reporter and the videographer, do we need anything else?

Or, Perry, do we need anything else?

MR. NARANCIC: No, not for me, thank you.

MR. KROLL: Rough draft.

MR. NARANCIC: Yes.

VIDEOGRAPHER: We are off the record at 12:05 p.m. This concludes today's testimony given by Carrie Yu. The total number of media units was five, and will be retained by Veritext Legal Solutions.

(The deposition concluded at 12:05 p.m. CST)

--oOo--

STATE OF CALIFORNIA )
COUNTY OF LOS ANGELES) ss.

Certificate of Person Reading
Deposition to Deponent

I, ______________________, whose address is ____________________________________________________,
a person who speaks the language of the deponent, namely, ____________________, do hereby certify that on the _______________ day of _______________________, 2021, I did translate the within deposition from English into the ____________________ language, reading same to the deponent in his/her native tongue to the best of my ability; that all corrections and changes requested by the deponent were made and initialed by the deponent;

That upon completion of said reading the deponent did confirm to me that he/she had understood the reading.

__________________________
Reader/Interpreter

DEPONENT'S DECLARATION

I, CARRIE YU, PMQ, hereby declare:

I have read the foregoing deposition transcript and identify it as my own and approve same.

I declare under penalty of perjury under the laws of the State of California that the foregoing testimony is true and correct.

Dated this _________ day of ___________, 2021, at ______________________________, California.

______________________________
CARRIE YU, PMQ

STATE OF CALIFORNIA )
COUNTY OF SANTA BARBARA ) ss.

I, Mark McClure, C.S.R. No. 12203, in and for the State of California, do hereby certify:

That prior to being examined, the witness named in the foregoing deposition was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth;

That said deposition was taken down by me in shorthand at the time and place therein named and thereafter reduced to typewriting under my direction, and the same is a true, correct, and complete transcript of said proceedings;

That if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript { } was { } was not required.

I further certify that I am not interested in the event of the action.

Witness my hand this 20th day of July, 2021

[signature]

Certified Shorthand Reporter
State of California
CSR No. 12203

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

FACEBOOK, INC. AND INSTAGRAM, LLC, )
PLAINTIFFS, )
v. ) CASE NO. 5:19-CV-07071-SVK
ONLINENIC, INC.; DOMAIN ID SHIELD SERVICES CO., LIMITED; AND DOES 1-20, )
DEFENDANTS. )
________________________________)

VIDEOTAPED DEPOSITION OF THE PERSON

MOST QUALIFIED OF ONLINENIC, INC.,
CARRIE YU
WEDNESDAY, JULY 14, 2021
CHINA STANDARD TIME

VOLUME II

JOB NO. CA 4690907
REPORTED BY: MARK McCLURE, CRR
CAL CSR 12203
PAGES 84 - 168

VIDEOTAPED DEPOSITION OF CARRIE YU, VOLUME II, TAKEN AT 7:08 A.M., WEDNESDAY, JULY 14, 2021, VERITEXT REMOTE TECHNOLOGY, BEFORE MARK McCLURE, C.S.R. #12203, CERTIFIED SHORTHAND REPORTER IN AND FOR THE STATE OF CALIFORNIA

APPEARANCES OF COUNSEL:

FOR THE PLAINTIFFS FACEBOOK, INC. AND INSTAGRAM:

(APPEARING BY VIDEOCONFERENCE)
TUCKER ELLIS LLP
BY: HOWARD A. KROLL, ESQ.
515 SOUTH FLOWER STREET
FORTY-SECOND FLOOR
LOS ANGELES, CALIFORNIA 90071
213.430.3400
HOWARD.KROLL@TUCKERELLIS.COM

FOR THE DEFENDANTS ONLINENIC, INC. AND DOMAIN ID SHIELD SERVICES CO., LIMITED:

(APPEARING BY VIDEOCONFERENCE)
LEXANALYTICA, PC
BY: PERRY J. NARANCIC, ESQ.
2225 E. BAYSHORE ROAD, SUITE 200
PALO ALTO, CALIFORNIA 94303
650.655.2800
PJN@LEXANALYTICA.COM

ALSO PRESENT:

DAVID STEELE, TUCKER ELLIS
HELENA GUYE, TUCKER ELLIS
BART KESSEL, TUCKER ELLIS
OLIVIA GONZALEZ, ATTORNEY, FACEBOOK

ALSO PRESENT: - CONTINUED

AMANDA LIN, INTERPRETER
DREW DORSEY, VIDEOGRAPHER
CRAIG JONES, VERITEXT CONCIERGE

I N D E X

| WITNESS | EXAMINATION | PAGE |
|---|---|---|
| CARRIE YU | | |
| | BY MR. KROLL | 91 |

E X H I B I T S

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| EXHIBIT 7 | FAX TO ICANN RE: REGISTRAR PRIMARY CONTACT UPDATE FORM - HONGXIA YU - ICANN_FB-000023 - 1 PAGE | 102 |
| EXHIBIT 8 | 35.CN - STATEMENT FROM SHAOHUI GONG RE HONGXIA YU - ICANN_FB-000025 - 1 PAGE | 104 |
| EXHIBIT 9 | ONLINENIC, INC. - STATE OF CALIFORNIA SECRETARY OF STATE - STATEMENT OF INFORMATION - 1 PAGE | 114 |
| EXHIBIT 10 | CLEMENT TAX SERVICE - LETTER TO ONLINENIC - ONLINENIC 284195 - ONLINENIC 284232 - 38 PAGES | 123 |
| EXHIBIT 11 | CLEMENT TAX SERVICE - LETTER TO ONLINENIC - ONLINENIC 284233 - ONLINENIC 284273 - 41 PAGES | 126 |
| EXHIBIT 12 | CLEMENT TAX SERVICE - LETTER TO ONLINENIC - ONLINENIC 283758 - ONLINENIC 283795 - 38 PAGES | 132 |
| EXHIBIT 13 | CLEMENT TAX SERVICE - LETTER TO ONLINENIC - ONLINENIC 283598 - ONLINENIC 283635 - 38 PAGES | 138 |
| EXHIBIT 14 | CHECK COPY FROM WEI-XUN LIU TO ONLINENIC, INC. - $100,000 - BANK STATEMENT - 4 PAGES | 144 |

I N D E X

E X H I B I T S

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| EXHIBIT 15 | INITIAL PUBLIC OFFERING - CHINESE VERSION - 247 PAGES | 157 |
| EXHIBIT 16 | INITIAL PUBLIC OFFERING - TRANSLATED VERSION - 629 PAGES | 157 |

charge of the financial matters of OnlineNIC. 08:24
Do you recall that? 08:24
A. Yes. 08:24
Q. Do you know Sily Chen's English name? 08:24
A. This is her English name. 08:24
Q. What is her Chinese name? 08:25
A. Lili Chen. 08:25
INTERPRETER: L-i-l-i C-h-e-n. 08:25
BY MR. KROLL: 08:25
Q. And how old is Ms. Chen? 08:25
A. In her 30s. 08:25
Q. You also testified that even though she is in charge of the financial matters of OnlineNIC, that she's not the chief financial officer, is that correct? 08:25 08:26 08:26
A. At least, she was not given such a title or a position among the management team of OnlineNIC. 08:26 08:26
Q. Who's the management team of OnlineNIC? 08:26
A. I'm not sure what you're asking about for this question. 08:26 08:27
Are you asking about the number of people on the team or the names of the people on the team? 08:27 08:27
Q. The names of the people on the management team of OnlineNIC. 08:27 08:27
A. First of all, the CEO is Zhipo Chen. The vice president is me. The support manager is Jack. The last 08:27 08:27

name of the sales manager is Lin. 08:28
INTERPRETER: L-i-n. 08:28
THE WITNESS: The marketing manager is Leon. The last name of the manager of the technical development department is Wang. 08:28 08:28 08:28
INTERPRETER: W-a-n-g. 08:28
BY MR. KROLL:
Q. Is there anyone else on the management team of OnlineNIC? 08:29 08:29
A. I don't think so. 08:29
Q. The support manager, whose name is Jack, do you know his last name? 08:29 08:29
A. Cheng. 08:29
INTERPRETER: C-h-e-n-g. 08:29
BY MR. KROLL: 08:29
Q. The marketing manager of OnlineNIC, whose first name is Leon, do you know his last name? 08:29 08:29
A. Huang. 08:29
INTERPRETER: H-u-a-n-g. 08:30
BY MR. KROLL: 08:30
Q. The sales manager, whose last name is Lin, do you know his or her first name? 08:30 08:30
A. I might have misspoken earlier. His last name is Lin. 08:30 08:30
INTERPRETER: L-i-n. 08:30

THE WITNESS: His first name is Chris. The Chinese name is Shaozhen Lin. 08:30 08:30
INTERPRETER: S-h-a-o-h-e L-i-n. 08:30
BY MR. KROLL: 08:30
Q. What is the Chinese name of Jack Cheng? 08:30
MR. NARANCIC: Let me -- 08:31
(Brief connection interruption.) 08:31
VIDEOGRAPHER: This marks the beginning of Media No. 3. The time is 8:35 a.m. We are on the record. 08:35 08:35 08:35
BY MR. KROLL: 08:35
Q. Ms. Yu, you understand you're still under oath? 08:35 08:35
A. Yes. 08:35
MR. KROLL: Perry, you were cut off inadvertently. 08:35 08:35
Do you want to raise your objection or do you want me to just respond to -- and explain what your objection was? 08:36 08:36 08:36
MR. NARANCIC: How about option 2. 08:36
MR. KROLL: The objection was interposed by Mr. Narancic as to, one, this is duplicative of other discovery, and, two, what was the subject under the deposition notice? 08:36 08:36 08:36 08:36
Well, it's not duplicative, but because I'm 08:36

following up on actual discovery responses that the defendants have provided, which is Topic 1. It also goes to employees of defendants, which is Topic 25. But we're just -- again, this is just preliminary stuff, so I can move forward. I'm responding, following up on an answer that Ms. Yu gave, about the management team and their view of Sily Chen. So, all I'm finding out is who the management team is. 08:36 08:36 08:36 08:36 08:36 08:37 08:37 08:37
MR. NARANCIC: It's fine, Howard. I just want you to understand that I'm a little concerned that there's only three -- less than three and a half hours left in the noticed period for this deposition and I'm concerned that we're not going to make enough progress. 08:38 08:38 08:38 08:38 08:38
But feel free to explore this area, but I'm just letting you know I'm concerned. 08:38 08:39
MR. KROLL: I feel your concern. 08:39
Q. Ms. Yu, can you please provide the English name of Jack Cheng? 08:39 08:39
INTERPRETER: Counsel, did you mean the Chinese name or the English name? 08:39 08:39
MR. KROLL: Chinese name. 08:39
THE WITNESS: Zheng Zhexiong. 08:39
INTERPRETER: Z-h-e-n-g family name; Z-h-e-x-i-o-n-g, first name.

MR. NARANCIC: Howard, whenever you feel comfortable -- 09:31

MR. KROLL: I have one more question and then we'll take a break. 09:31

MR. NARANCIC: No problem. 09:31

BY MR. KROLL:

Q. And are all members of the management team paid by 35.CN? 09:31

A. All the people are paid by 35.CN, for all those people I just named, except for Zhipo Chen. 09:31

Q. Does she receive any salary? 09:32

A. Not to my knowledge. 09:32

Q. Does she receive any money from OnlineNIC for acting as the CEO? 09:32

A. According to the financial information I have come into contact with during the past few days for my preparation for the deposition, the answer is no. 09:32

Q. And just to make sure, is Zhipo Chen an employee of 35.CN? 09:32

MR. NARANCIC: Objection to form. 09:33

THE WITNESS: She is not. 09:33

BY MR. KROLL:

Q. Has Zhipo Chen ever been an employee of 35.CN? 09:33

MR. NARANCIC: Same objection. 09:33

THE WITNESS: No. 09:33

MR. KROLL: All right, let's go off the record, take a ten-minute break. 09:33

VIDEOGRAPHER: This marks the end of Media No. 3. The time is 9:33 a.m. We are off the record. 09:33

(A short recess was taken.) 09:34

VIDEOGRAPHER: This marks the beginning of Media No. 4. The time is 9:51 a.m. We are on the record. 09:51

BY MR. KROLL: 09:51

Q. Ms. Yu, you understand that you are still under oath? 09:52

A. Yes. 09:52

MR. KROLL: And, Perry, just to let you know, and I don't know when she joined, but Olivia Gonzalez, from Facebook, is online. 09:52

MR. NARANCIC: She joined an hour and a half ago. But thank you for mentioning it. 09:52

MR. KROLL: I told you that I would and I just noticed it. 09:52

BY MR. KROLL:

Q. Ms. Yu, could you open up Exhibit 5, which is OnlineNIC responses to the Special Interrogatories. 09:52

Do you have it open? 09:53

A. Yes. 09:53

Q. I direct your attention to page 3, which deals 09:53

with Special Interrogatory No. 3, and OnlineNIC's response. 09:53

Special Interrogatory No. 3 says: "Explain in detail all loans made by OnlineNIC and Domain ID Shield to any person or persons between 2009 and the present day, including but not limited to the name of the person or persons, the amount of the loan, the terms of the loan, i.e. interest rate, payment length, any security provided for the loan and the reason for the loan." 09:54

Do you see that? 09:54

MR. NARANCIC: I'm very sorry, Howard. 09:54

Is this in the exhibit -- shared exhibit drive? 09:55

MR. KROLL: Yeah, it's Exhibit 5. 09:55

MR. NARANCIC: I have it. Thank you. 09:55

BY MR. KROLL:

Q. The question to you, Ms. Yu, is: Do you see Special Interrogatory 3? 09:55

A. Yes. 09:55

Q. OnlineNIC's response to Interrogatory No. 3 is: "Responsive information is located at Exhibit 3." 09:55

Do you see that? 09:55

A. Yes. 09:55

Q. Could you turn to Exhibit 3, which is on page 11 of 25. 09:56

A. I see it. 09:56

Q. Exhibit 3 identifies one loan, which was made in 2013. 09:56

Do you see that? 09:56

A. Yes. 09:56

Q. I want to make sure that there were no other loans that OnlineNIC made to anyone from 2009 to the present other than the loan to L&L Oil. 09:56

Is that true? 09:57

A. According to all of the information we were able to check and find when we were preparing for the financial information, the answer is yes. 09:57

Q. And you testified right before the break that Ms. Zhipo Chen does not receive any money from OnlineNIC or 35.CN for her role as CEO of OnlineNIC, is that correct? 09:58

A. That's correct. 09:58

Q. Did Ms. Chen receive a loan from OnlineNIC at any time? 09:58

A. Not to my knowledge. 09:58

MR. KROLL: I'd like to mark as Exhibit 12 the 2019 tax return. 09:58

(Exhibit 12 marked for identification.) 09:58

MR. KROLL: The 2019 tax return is Bates stamp numbers OnlineNIC 283762 to 283795. 09:59

more questions about Exhibit 15 or 16 since, Ms. Yu, you're not familiar with the document or the transaction. 12:04

Ms. Yu, you indicated that you are a director of software outsourcing center for 35.CN, correct? 12:05

A. Yes. 12:05

Q. And that software outsourcing center is a department under 35.CN? 12:05

A. Yes. 12:05

Q. Is OnlineNIC a department under 35.CN? 12:05

A. No. 12:05

Q. Does OnlineNIC pay rent to 35.CN for the office space at 8 Guanri Road? 12:06

A. Yes, but the rent is not paid separately. It's included in the outsourcing fee OnlineNIC pays to 35.CN every month. 12:06

Q. Who negotiates the outsourcing agreement between 35.CN and OnlineNIC? 12:06

A. Before I became responsible for this department and for matters related to OnlineNIC, I'm not sure, but I think it was the CEO of OnlineNIC who was responsible for that, and after I became responsible for those matters, the CEO of OnlineNIC appointed me to deal with these things with 35.CN. 12:08

Q. Who do you negotiate with at 35.CN? 12:08

A. I think that person was their deputy general manager. 12:08

Q. What is the name of that individual? 12:08

A. What year are you asking about? 12:08

The person serving on this position for them comes and goes, so you need to tell me what year so I can look into the information. 12:09

Q. Has an outsourcing agreement been reached between 35.CN and OnlineNIC for 2021? 12:09

A. Yes. 12:09

Q. Who did you negotiate that agreement with? 12:09

A. For 2021? 12:09

Q. Yes. 12:10

A. For 2021, I think I negotiated it with their CEO. If I remember it correctly, their position of the deputy general manager for 2021 did not have anyone -- they did not have anyone serving in that position, so I negotiated the agreement for 2021 with their CEO. 12:10

MR. JONES: Howard, it looks like Perry has lost his audio connection. 12:10

VIDEOGRAPHER: This marks the end of Media No. 6. Time is 12:10 p.m. We are off the record. 12:10

(Discussion off the record.) 12:11

VIDEOGRAPHER: This marks the beginning of Media No. 7. The time is 12:13 p.m. We are on the record. 12:13

MR. KROLL: Off record, we've had a discussion among counsel. The plaintiffs take the position that this deposition is not over. We believe that Ms. Yu needs to continue to testify on behalf of OnlineNIC because she did not know answers to a number of the questions I posed, and there were a number of issues that we have not yet addressed. For that reason, the deposition is not ending, but -- not terminating, but just ending for tonight, to be continued either tomorrow or at a later time to be determined by the parties or the Court. 12:14

Do you need anything else from us? 12:14

VIDEOGRAPHER: This marks the end of Media No. 7. The time is 12:15 p.m. We are off the record. 12:15

(The deposition concluded at 12:15 p.m. CST)

--oOo--

STATE OF CALIFORNIA )
COUNTY OF LOS ANGELES) ss.

Certificate of Person Reading
Deposition to Deponent

I, ______________________, whose address is ____________________________________________________, a person who speaks the language of the deponent, namely, ____________________, do hereby certify that on the _______________ day of _______________________, 2021, I did translate the within deposition from English into the _____________________ language, reading same to the deponent in his/her native tongue to the best of my ability; that all corrections and changes requested by the deponent were made and initialed by the deponent; That upon completion of said reading the deponent did confirm to me that he/she had understood the reading.

__________________________
Reader/Interpreter

DEPONENT'S DECLARATION

I, CARRIE YU, PMQ, hereby declare:

I have read the foregoing deposition transcript and identify it as my own and approve same.

I declare under penalty of perjury under the laws of the State of California that the foregoing testimony is true and correct.

Dated this _________ day of ___________, 2021, at ____________________________, California.

___________________________

CARRIE YU, PMQ

STATE OF CALIFORNIA )
COUNTY OF SANTA BARBARA ) ss.

I, Mark McClure, C.S.R. No. 12203, in and for the State of California, do hereby certify:

That prior to being examined, the witness named in the foregoing deposition was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth;

That said deposition was taken down by me in shorthand at the time and place therein named and thereafter reduced to typewriting under my direction, and the same is a true, correct, and complete transcript of said proceedings;

That if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript { } was { } was not required.

I further certify that I am not interested in the event of the action.

Witness my hand this 20th day of July, 2021.

Certified Shorthand Reporter
State of California
CSR No. 12203

MR. HOWARD A. KROLL, ESQ.
HOWARD.KROLL@TUCKERELLIS.COM

July 20, 2021

RE: FACEBOOK, INC. AND INSTAGRAM, LLC v. ONLINENIC, INC.
7/14/2021, PMQ, CARRIE YU, VOLUME II, JOB NO. 4690907

The above-referenced transcript has been completed by Veritext Legal Solutions and review of the transcript is being handled as follows:

__ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext to schedule a time to review the original transcript at a Veritext office.

__ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF Transcript - The witness should review the transcript and make any necessary corrections on the errata pages included below, notating the page and line number of the corrections. The witness should then sign and date the errata and penalty of perjury pages and return the completed pages to all appearing counsel within the period of time determined at the deposition or provided by the Code of Civil Procedure.

__ Waiving the CA Code of Civil Procedure per Stipulation of Counsel - Original transcript to be released for signature as determined at the deposition.

__ Signature Waived - Reading & Signature was waived at the time of the deposition.

__ Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF Transcript - The witness should review the transcript and make any necessary corrections on the errata pages included below, notating the page and line number of the corrections. The witness should then sign and date the errata and penalty of perjury pages and return the completed pages to all appearing counsel within the period of time determined at the deposition or provided by the Federal Rules.

_x_ Federal R&S Not Requested - Reading & Signature was not requested before the completion of the deposition.