TUCKER ELLIS LLP
David J. Steele - SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll - SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen - SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone: 213.430.3400

Attorneys for Plaintiffs, META PLATFORMS, INC. f/k/a
FACEBOOK, INC. and INSTAGRAM, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ONLINENIC INC., DOMAIN ID SHIELD SERVICE CO., LIMITED, and XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD.,<br><br>Defendants. | Case No. 3:19-cv-07071-SI<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST ALL DEFENDANTS;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>Date:          April 19, 2024<br>Time:          10:00 a.m.<br>Courtroom:   1 – 17th Floor<br><br>Hon. Susan Illston |

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St.Louis

TUCKER ELLIS LLP

**NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT**

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 19, 2024 at 10:00 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Susan Illston of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, Courtroom 1 – 17th Floor, San Francisco, CA 94102, Plaintiffs Meta Platforms, Inc. and Instagram, LLC  ("Plaintiffs") will and hereby do move for entry of default judgment jointly and severally against Defendants OnlineNIC, Inc., Domain ID Shield Service Co., Ltd., and Leascend Technology Co., Ltd. f/k/a Xiamen 35.com Internet Technology Co., Ltd. ("Defendants") pursuant to Fed. R. Civ. P. 55(b)(2), including statutory damages, attorneys' fees and costs, and a permanent injunction.

Specifically, Plaintiffs request default judgment as follows:

1.     Defendants registered, trafficked in, or used 35 domain names that are identical or confusingly similar to Plaintiffs' trademarks with a bad faith intent to profit in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). Plaintiffs are awarded $3,135,000 in statutory damages against Defendants for cybersquatting on Plaintiffs' trademarks;

2.     Defendants are liable for their licensees' trademark infringement of Plaintiffs' trademarks, false designation of origin, and dilution under 15 U.S.C. §§ 1114, 1125(a) and 1125(c);

3.     This is an exceptional case entitling Plaintiffs to an award of all their reasonable attorneys' fees under 15 U.S.C. § 1117, in an amount to be determined;

4.     Defendants shall transfer to Plaintiffs the Infringing Domain Names;

5.     Defendants shall reimburse Plaintiffs $88,937 for costs related to the Special Master; and

6.     Defendants and their agents, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, are permanently enjoined and restrained from cybersquatting on Plaintiffs' trademarks, and Defendants must provide relevant information to Plaintiffs to ensure compliance with the permanent injunction.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, the Declaration of Helena M. Guye, the [Proposed] Default Judgment, any oral argument heard by the Court, such additional evidence as may be submitted to the

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

1  Court, matters as to which the Court may take judicial notice, and such other matters as the Court deems

2  proper.

3

4  DATED: January 31, 2024                    Tucker Ellis LLP

5

6

7                                            By: /s/David J. Steele
                                                 David J. Steele
8                                                Howard A. Kroll
                                                 Steven E. Lauridsen
9                                                Attorneys for Plaintiffs,
                                                 META PLATFORMS, INC. f/k/a
10                                               FACEBOOK, INC. and INSTAGRAM, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TUCKER ELLIS LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

1
2

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 1

II.   STATEMENT OF FACTS .................................................................................... 2

    A.    Plaintiffs' Trademarks ............................................................................... 2

    B.    Defendants' Cybersquatting Activities ..................................................... 3

III.  DEFAULT JUDGMENT IS WARRANTED ....................................................... 4

    A.    Plaintiffs Will Suffer Prejudice Absent Default Judgment ...................... 5

    B.    Plaintiffs' Claims are Meritorious and Well-Founded ............................. 5

        1.    Plaintiffs' Cybersquatting Claim is Meritorious and Well-Founded ........ 6

            a)    Plaintiffs' Marks are distinctive and famous. ............................... 6

            b)    The Infringing Domain Names are identical or confusingly similar to and/or dilutive of Plaintiffs' Marks. ..................................... 6

            c)    Defendants registered each Infringing Domain Name ................... 7

            d)    Defendants trafficked in the Infringing Domain Names ................ 8

            e)    Defendants acted with bad faith intent to profit from Plaintiffs' Marks. ...... 9

        2.    Plaintiffs' Lanham Act Claims are Meritorious and Well-Founded ........ 9

            a)    The Licensees' trademark infringement, false designation of origin, and dilution of Plaintiffs' Marks ................................ 9

            b)    Defendants accepted liability for harm caused by the Infringing Domain Names under RAA § 3.7.7.3 ......................... 11

    C.    The Amount of Money at Stake is Tailored to Defendants' Misconduct ................................ 12

    D.    The Possibility of a Dispute Concerning Material Facts ......................... 12

    E.    Whether the Default was Due to Excusable Neglect ............................... 12

    F.    There is No Likelihood of a Decision on the Merits Under These Circumstances ................ 13

IV.   PLAINTIFFS ARE ENTITLED TO STATUTORY DAMAGES ................................. 13

i

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

A.    Defendants' Conduct was Egregious............................................................. 14

B.    Defendants Engaged in a Pattern of Unlawful Cybersquatting Against Famous Marks......... 15

C.    Defendants Demonstrated Contempt for the Court and Judicial Proceedings........................ 15

D.    Defendants and Other Cybersquatters Must Be Deterred from Future Cybersquatting.......... 16

E.    The Court Should Adopt the R&R's Determination of Statutory Damages ........................... 17

V.    PLAINTIFFS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS.................................... 17

A.    Defendants' Lanham Act Violations were Willful ................................................................. 19

B.    Defendants Litigated in an Unreasonable Manner.................................................................. 20

C.    Defendants Failed to Support Their Defenses ........................................................................ 23

D.    Compensation and Deterrence ................................................................................................ 23

VI.    PLAINTIFFS ARE ENTITLED TO A PERMANENT INJUNCTION ........................................ 24

VII.    CONCLUSION ......................................................................................................................... 25

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

**TABLE OF AUTHORITIES**

**Cases**

*Acad. of Motion Pictures Arts & Scis. v. GoDaddy.com, Inc.*
   2013 WL 12122689 (C.D. Cal. June 21, 2013) .................................................. 8

*ADG Concerns, Inc. v. Tsalevich LLC*
   2018 WL 4241967 (N.D. Cal. Aug. 31, 2018) .................................................. 20

*Am. Career Coll., Inc. v. Medina*
   2023 WL 8000273 (C.D. Cal. Oct. 6, 2023) .................................................... 5

*Baskin-Robbins Franchising LLC v. Pena*
   2020 WL 2616576 (N.D. Cal. May 7, 2020) ................................................... 12

*Bellagio v. Denhammer*
   2001 WL 34036599 (D. Nev. Jul. 10, 2001) .................................................. 24

*Bosley Med. Inst., Inc. v. Kremer*
   403 F.3d 672 (9th Cir. 2005) ..................................................................... 6

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*
   174 F.3d 1036 (9th Cir. 1999) ............................................................ 10, 11

*Century 21 Real Estate Corp. v. Sandlin*
   846 F.2d 1175 (9th Cir. 1988) .................................................................. 24

*Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*
   2020 WL 5199434 (N.D. Cal. Aug. 17, 2020) ................................................ 25

*Coca-Cola Co. v. Purdy*
   382 F.3d 774 (8th Cir. 2004) ................................................................... 7

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*
   259 F.3d 1186 (9th Cir. 2001) ................................................................. 14

*Craigslist, Inc. v. RealWorks Group LLC,*
   2009 WL 10692489 (N.D. Cal. Oct. 29, 2009) .............................................. 24

*Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*
   448 F.3d 1118 (9th Cir. 2006) ................................................................. 10

*Derek Andrew, Inc. v. Poof Apparel Corp.*
   528 F.3d 696 (9th Cir. 2008) .................................................................. 20

*Digby Adler Grp. LLC v. Image Rent a Car, Inc.*
   79 F. Supp. 3d 1095 (N.D. Cal. 2015) ....................................................... 14

*Diller v. Barry Driller, Inc.,*
   2012 WL 4044732 (C.D. Cal. Sept. 10, 2012) ............................................... 25

*Dr. JKL Ltd. v. HPC IT Educ. Ctr.*
   749 F. Supp. 2d 1038 (N.D. Cal. 2010) ...................................................... 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Dreamwerks Prod. Grp., Inc. v. SKG Studio*
    142 F.3d 1127 (9th Cir. 1998) .................................................................. 10

*Dreith v. Nu Image, Inc.*
    2007 WL 9658786 (C.D. Cal. Mar. 2, 2007) ............................................... 5

*DSPT Int'l, Inc. v. Nahum*
    624 F.3d 1213 (9th Cir. 2010) ..................................................................... 7

*E. & J. Gallo Winery v. Spider Webs, Ltd.*
    286 F.3d 270 (5th Cir. 2002) ............................................................... 14, 16

*eBay Inc. v. MercExchange, LLC*
    547 U.S. 388 (2006) ................................................................................... 25

*Eitel v. McCool*
    782 F.2d 1470 (9th Cir. 1986) ........................................................ 5, 12, 13

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*
    344 U.S. 228 (1952) ................................................................................... 17

*Facebook Inc. v. Namecheap Inc.*
    2020 WL 6585534 (D. Ariz. Nov. 10, 2020) ............................................... 8

*Facebook, Inc. v. Banana Ads LLC*
    2013 WL 1873289 (N.D. Cal. Apr. 30, 2013) ............................................ 14

*Forsythe v. Clark USA, Inc.*
    864 N.E.2d 227 (Ill. 2007) ........................................................................... 6

*Geddes v. United Financial Group*
    559 F.2d 557 (9th Cir. 1977) ....................................................................... 6

*Glob. Licensing, Inc. v. Namefind LLC*
    582 F. Supp. 3d 467 (E.D. Mich. 2022) ..................................................... 11

*Goes Int'l, AB v. Dodur Ltd.*
    2018 WL 2298631 (N.D. Cal. May 20, 2018) ....................................... 5, 13

*GoPets Ltd. v. Hise*
    657 F.3d 1024 (9th Cir. 2011) ................................................................... 10

*Harrods Ltd. v. Sixty Internet Domain Names*
    157 F. Supp. 2d 658 (E.D. Va. 2001) ........................................................... 7

*Internet Specialties W., Inc. v. Milon-Digiorgio Enters.*
    559 F.3d 985 (9th Cir. 2009) ..................................................................... 25

*IO Grp., Inc. v. Jordon*
    708 F. Supp. 2d 989 (N.D. Cal. 2010) ......................................................... 5

*Jackson v. Sturkie*
    255 F. Supp. 2d 1096 (N.D. Cal. 2003) ..................................................... 24

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

iv

*Jada Toys, Inc. v. Mattel, Inc.*
    518 F.3d 628 (9th Cir. 2008) ............................................................................... 6

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC*
    68 F.4th 1203 (9th Cir. 2023) ............................................................................. 19

*Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery*
    150 F.3d 1042 (9th Cir. 1998) ............................................................................ 10

*Kilopass Tech., Inc. v. Sidense Corp.*
    82 F. Supp. 3d 1154 (N.D. Cal. 2015) ............................................................... 19

*Kiva Kitchen & Bath*
    319 F. App'x 316 (5th Cir. 2009) ....................................................................... 16

*Lahoti v. Vericheck, Inc.*
    708 F. Supp. 2d 1150 (W.D. Wash. 2010) ................................................... 15, 16

*Lifted Research Group, Inc. v. Salem*
    2009 WL 1371416 (N.D. Cal. May 15, 2009) ................................................... 24

*Location Based Servs., LLC v. Niantic, Inc.*
    2018 WL 7569160 (N.D. Cal. Feb. 16, 2018) ................................................... 23

*Meta Platforms, Inc. v. New Ventures Servs. Corp.*
    2023 WL 5651994 (M.D. Pa. Aug. 31, 2023) ..................................................... 8

*Mountz, Inc. v. Ne. Indus. Bolting & Torque, LLC*
    2017 WL 780585 (N.D. Cal. Jan. 27, 2017) ................................................ 18, 20

*New West Corp. v. NYM Co. of California, Inc.*
    595 F.2d 1194 (9th Cir. 1979) ............................................................................ 10

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*
    572 U.S. 545 (2014) ..................................................................................... 18, 24

*Opticians Ass'n of Am. v. Independent Opticians of Am.*
    920 F.2d 187 (3d Cir. 1990) ............................................................................... 25

*Pac. Coast Bldg. Prod., Inc. v. CertainTeed Cypsum, Inc.*
    2021 WL 75755 (N.D. Cal. Jan. 7, 2021) .......................................................... 20

*Panavision v. Toeppen*
    141 F.3d 1316 (9th Cir. 1998) ............................................................................ 11

*PepsiCo., Inc. v. California Security Cans*
    238 F. Supp. 2d 1172 (C.D. Cal. 2002) ............................................................. 24

*Pinehurst, Inc. v. Wick*
    256 F. Supp. 2d 424 (M.D.N.C. 2003) .............................................................. 16

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

v

*Pop Top Corp. v. Rakuten Kobo Inc.*
 2022 WL 267407 (N.D. Cal. Jan. 28, 2022) ........................................................ 23

*Ranza v. Nike, Inc.*
 793 F.3d 1059 (9th Cir. 2015) ............................................................................. 3

*Restoration Hardware, Inc. v. Sichuan Wei Li Tian Xia Network Tech. Co.*
 2023 WL 2815358 (N.D. Cal. Apr. 5, 2023) ........................................................ 5

*San Diego Comic Convention v. Dan Farr Prods.*
 336 F. Supp. 3d 1191 (S.D. Cal. 2018) ............................................................... 10

*San Diego Comic Convention v. Dan Farr Prods.*
 807 F. App'x 674 (9th Cir. 2020) ........................................................ 19, 22, 23

*Shields v. Zuccarini*
 254 F.3d 476 (3rd Cir. 2001) ............................................................................... 7

*Starbuzz Tobacco, Inc. v. Gold Star Tobacco, Inc.*
 2020 WL 3051359 (C.D. Cal. Apr. 16, 2020) ..................................................... 18

*SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*
 839 F.3d 1179 (9th Cir. 2016) ...................................................................... 18, 19

*Teetex LLC v. Zeetex, LLC*
 2022 WL 2439176 (N.D. Cal. July 5, 2022) ....................................................... 20

*Verizon California Inc. v. Lead Networks Domains Private Limited*
 2009 WL 10700112 (C.D. Cal. Feb. 17, 2009) .................................................... 17

*Verizon California Inc., et al. v. Navigation Catalyst Systems, Inc.*
 568 F. Supp. 2d 1088 (C.D. Cal. 2008) .............................................................. 15

*Verizon California Inc. v. Onlinenic, Inc.*
 2009 WL 2706393 (N.D. Cal. Aug. 25, 2009) ...................................... 4, 14, 16

*Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*
 2021 WL 254448 (N.D. Cal. Jan. 26, 2021) ........................................................ 25

*Yuga Labs, Inc. v. Ripps*
 2023 WL 7089922 (C.D. Cal. Oct. 25, 2023) ...................................................... 16

**Statutes**
15 U.S.C. §1114............................................................................................... 2, 11

15 U.S.C. §1116(a)......................................................................................... 24, 25

15 U.S.C. §1117.................................................. 2, 11, 14, 17, 18, 19, 21

15 U.S.C. §1125.................................................................. 1, 2, 6, 8, 9, 11

**Other Authorities**
Fed. R. Civ. P. 55(b)(2),................................................................................ 1, 5

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

On October 17, 2022, the Court adopted Judge van Keulen's report and recommendation (ECF No. 225) ("R&R") recommending terminating sanctions against Defendants OnlineNIC, Inc. ("OnlineNIC") and Domain ID Shield Service Co., Ltd. ("ID Shield") (together, the "OnlineNIC Defendants"). *See* ECF No. 276 ("Order Adopting R&R") at 14-15. The Court deferred entry of default judgment pending resolution of this case against Defendant Leascend Technology Co., Ltd. f/k/a Xiamen 35.com Internet Technology Co., Ltd.[1] ("35.CN" and, collectively with the OnlineNIC Defendants, "Defendants"). ECF No. 291 at 1:19-21. The clerk entered default against the OnlineNIC Defendants on December 19, 2022. ECF No. 292. On November 6, 2023, the Court entered summary judgment that the OnlineNIC Defendants and 35.CN were the alter ego of each other at all relevant times, and issued the same terminating sanctions against 35.CN for the reasons stated in the R&R. ECF No. 357 ("SJ Order"). The clerk entered default against 35.CN on November 8, 2023. ECF No. 352.

Based on the well-pleaded factual allegations of the Second Amended Complaint (ECF No. 109) ("SAC"), the findings in the R&R, and the finding that the OnlineNIC Defendants and 35.CN were alter egos of each other, Plaintiffs Meta Platforms, Inc. ("Meta") and Instagram, LLC ("Instagram" and, collectively with Meta, "Plaintiffs") respectfully request entry of default judgment jointly and severally against the Defendants pursuant to Fed. R. Civ. P. 55(b)(2), including statutory damages, attorneys' fees and costs, and a permanent injunction.[2] Specifically, Plaintiffs request default judgment as follows:

1.    Defendants registered, trafficked in, or used 35 domain names that are identical or confusingly similar to Plaintiffs' trademarks with a bad faith intent to profit in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). Plaintiffs are awarded $3,135,000 in statutory damages against Defendants for cybersquatting on Plaintiffs' trademarks;

2.    Defendants are liable for their licensees' trademark infringement of Plaintiffs' trademarks,

---

[1] Xiamen 35.com Internet Technology Co., Ltd. formally changed its name to Leascend Technology Co., Ltd. on September 8, 2023. Declaration of Helena M. Guye ("Guye Decl."), ¶¶ 2, 5 & Ex. 1.

[2] The Court ordered the parties to submit briefing on statutory damages, attorneys' fees, and the scope of the permanent injunction. *See* ECF No. 373. Each is addressed in turn below at Sections IV-VI.

false designation of origin, and dilution under 15 U.S.C. §§ 1114, 1125(a), and 1125(c);

      3.     This is an exceptional case entitling Plaintiffs to an award of all their reasonable attorneys' fees under 15 U.S.C. § 1117, in an amount to be determined;

      4.     Defendants shall transfer to Plaintiffs the Infringing Domain Names;

      5.     Defendants shall reimburse Plaintiffs $88,937 for costs related to the Special Master; and

      6.     Defendants and their agents, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, are permanently enjoined and restrained from cybersquatting on Plaintiffs' trademarks, and Defendants must provide relevant information to Plaintiffs to ensure compliance with the permanent injunction.

## II.    STATEMENT OF FACTS

### A.    Plaintiffs' Trademarks

Meta, formerly known as Facebook, Inc., operates Facebook, which offers a social networking website and mobile application that enables its users to create their own personal profiles and connect with each other on their personal computers and mobile devices. SAC ¶ 18. Meta owns the exclusive rights to several trademarks and service marks to provide its online services, including the distinctive FACEBOOK word mark and stylized mark, and has used the marks in connection with its services since 2004. *Id.* ¶ 19. In addition to its extensive common law rights, Meta owns numerous United States registrations for its FACEBOOK marks, including U.S. Reg. No. 3,122,052 and U.S. Reg. No. 3,881,770.[3] *Id.* ¶ 20. Meta's use of the Facebook Trademarks in interstate commerce has been extensive, continuous, and substantially exclusive. *Id.* ¶ 21. Meta has made, and continues to make, a substantial investment of time, effort, and expense in the promotion of Facebook and the Facebook Trademarks. *Id.* As a result of Meta's efforts and use, the Facebook Trademarks are famous (and have been famous since at least as early as 2011) as they are recognized within the United States and around the world as signifying high-quality, authentic services provided by Meta. *Id.*

Instagram offers a photo and video sharing service, mobile application, and social network. SAC ¶ 22. Instagram users can choose to share their photos and videos with their followers online. *Id.*

---

[3] Meta's common law and registered trademarks are referred to herein as the "Facebook Trademarks."

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Instagram owns the exclusive rights to the distinctive INSTAGRAM word mark and stylized mark, having used the marks in connection with its services as early as 2010. *Id.* ¶ 23. In addition to its extensive common law rights, Instagram owns numerous United States registrations for the INSTAGRAM marks.[4] *Id.* ¶ 24. Instagram's use of the Instagram Trademarks in interstate commerce has been extensive, continuous, and substantially exclusive. *Id.* ¶ 25. Instagram has made, and continues to make, a substantial investment of time, effort, and expense in the promotion of Instagram and the Instagram Trademarks. *Id.* As a result of Instagram's efforts and use, the Instagram Trademarks are famous (and have been famous since at least as early as 2014) as they are recognized within the United States and around the world as signifying high-quality, authentic services provided by Instagram. *Id.*

## B. Defendants' Cybersquatting Activities

OnlineNIC, a California corporation, and 35.CN, a Chinese corporation, are domain name registrars accredited by the Internet Corporation for Assigned Names and Numbers ("ICANN") and subject to ICANN's Registrar Accreditation Agreement ("RAA"). SAC ¶¶ 9, 11, 26. ID Shield, a Hong Kong, China limited liability company, provides a proxy service for OnlineNIC's customers by registering domain names, as the registrant, and licensing these domain names to OnlineNIC's customers (the "Licensees") for their use.[5] *Id.* ¶¶ 10, 27, 28.

Defendants registered, used, or trafficked in at least the following 35 domain names that are identical or confusingly similar to Plaintiffs' Marks (the "Infringing Domain Names"):

| | | |
|---|---|---|
| 1.  buyinstagramfans.com | 6.  facebook-login-signup.com | 11. facebookvideodownload.net |
| 2.  face2bouk.com | 7.  facebook-mails.com | 12. facebux2.com |
| 3.  facebook-alkalmazasok.net | 8.  facebook-pass.com | 13. facekhook.com |
| 4.  facebook-chat-emoticons.com | 9.  facebookphysician.com | 14. facessbook.com |
| 5.  facebook-fans-buy.com | 10. facebook-pw.com | 15. faecb00k-page.com |

---

[4] These federal registrations include U.S. Reg. Nos. 4,795,634; 4,146,057; 4,756,754; 5,566,030; 4,170,675; 4,856,047; 4,822,600; 4,827,509; 4,863,595; and 5,019,151. SAC ¶ 24. Instagram's common law and registered trademarks are referred to herein as the "Instagram Trademarks," and, collectively with the Facebook Trademarks, "Plaintiffs' Marks."

[5] 35.CN and ID Shield are subject to general personal jurisdiction as an alter ego of OnlineNIC. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (explaining "the alter ego test may be used to extend personal jurisdiction to a foreign parent *or* subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate").

MOTION FOR DEFAULT JUDGMENT AND MEMORANDUM IN SUPPORT OF MOTION
Case No. 3:19-cv-07071-SI

TUCKER ELLIS LLP

Chicago ● Cleveland ● Columbus ● Los Angeles ● San Francisco ● St. Louis

16. faecbook-page.com

17. findfacebookid.com

18. hackfacebook-now.com

19. hackingfacebook.net

20. hacksomeonesfacebook.com

21. iiinstagram.com

22. instaface.org

23. instagram01.com

24. instakram.com

25. Iamsocialfacebook.net

26. learntohackfacebook.com

27. login-Instagram.com

28. m-facebook-login.com

29. ofacebooklogin.com

30. singin-Instagram.com

31. trollfacebook.com

32. watch-facebook.com

33. www-facebook-login.com

34. www-facebook-pages.com

35. www-instagram.net

SAC ¶ 56. ID Shield is the registrant for each of the Infringing Domain Names and is listed as the registrant in the WHOIS directory. *Id.* ¶¶ 56-57. ID Shield also trafficked in the Infringing Domain Names by licensing these domain names to the Licensees for their use. *Id.* ¶ 59.

OnlineNIC has a history of cybersquatting on famous and distinctive trademarks. *See Verizon California Inc. v. Onlinenic, Inc.*, No. C 08-2832 JF (RS), 2009 WL 2706393, at *5 (N.D. Cal. Aug. 25, 2009) ("Verizon discovered that OnlineNIC had registered an extraordinary 14,700 domain names that infringed the mere twenty-six representative marks selected. While OnlineNIC denies that it operates a massive cybersquatting operation, it has offered no evidence to contradict the factual record presented by Verizon."); *see also* SAC ¶¶ 61-64. Defendants profit from (1) the sale of the ID Shield proxy service, including providing the service to the Licensees of the Infringing Domain Names and to OnlineNIC, and (2) collecting fees from the sale of that service. *Id.* ¶ 66.

The Licensees of the Infringing Domain Names intended to divert consumers to websites using domain names that were confusingly similar to Plaintiffs' Marks. The Infringing Domain Names have been used for malicious activity, including hosting websites directing visitors to other commercial sites, phishing, and selling purported tools for hacking. SAC ¶ 67 & Ex. 8. The Licensees also used some of the Infringing Domain Names in connection with email services, which indicates that the domain names were used for phishing or other scams. *Id.* ¶ 68.

## III.   DEFAULT JUDGMENT IS WARRANTED

Pursuant to Fed. R. Civ. P. 55(b)(2), the court, in its discretion, may enter a default judgment against a party against whom default has been entered. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). In determining whether default judgment is appropriate, the court may consider the following

Tucker Ellis LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

factors[6]: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Id.* at 1471-72. These factors weigh in favor of granting default judgment.

### A.   Plaintiffs Will Suffer Prejudice Absent Default Judgment

The first *Eitel* factor considers "whether Plaintiff will be prejudiced if the Court denies its request for entry of default judgment." *IO Grp., Inc. v. Jordon*, 708 F. Supp. 2d 989, 997 (N.D. Cal. 2010). This factor weighs in favor of default judgment because the Court has already found that Plaintiffs have been prejudiced due to Defendants' mass spoliation of evidence. R&R at 18-19; SJ Order at 20. *See also, e.g., Am. Career Coll., Inc. v. Medina*, No. CV 21-00698-PSG (SKx), 2023 WL 8000273, at *4 (C.D. Cal. Oct. 6, 2023) (weighing factor in favor of default judgment because the Court had already found plaintiffs "suffered sufficient prejudice to warrant the imposition of terminating sanctions"); *Goes Int'l, AB v. Dodur Ltd.*, No. 14-CV-05666-LB, 2018 WL 2298631, at *7 (N.D. Cal. May 20, 2018) (weighing factor in favor of default judgment where, after terminating sanctions, plaintiff "has no recourse against [Defendant] except for default judgment"). Accordingly, this factor favors granting default judgment.

### B.   Plaintiffs' Claims are Meritorious and Well-Founded

The second and third *Eitel* factors, "often analyzed together," require the plaintiff "to plead facts sufficient to establish and succeed upon its claims." *Restoration Hardware, Inc. v. Sichuan Wei Li Tian Xia Network Tech. Co.*, No. 22-CV-03054-JSC, 2023 WL 2815358, at *4 (N.D. Cal. Apr. 5, 2023) "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). Based on the well-pleaded factual allegations of the SAC,[7] Plaintiffs' cybersquatting

---

[6] Where default is imposed as a sanction, consideration of the *Eitel* factors may be "redundant or inconsistent." *Dreith v. Nu Image, Inc.*, No. CV 05–4146 SVW (MANx), 2007 WL 9658786, at *6 (C.D. Cal. Mar. 2, 2007) (declining to consider *Eitel* factors when entering default judgment as a sanction). "If the *Eitel* factors could somehow compel this Court to deny default judgment despite having already concluded that the entry of default was proper, the result would defy common sense. The Court's discovery sanction for willful and deliberate misconduct would amount to a nullity, and would only have had the effect of delaying the case's resolution on the merits." *Id.*

[7] In denying 35.CN's motion to dismiss, this Court previously determined that Plaintiffs adequately

TUCKER ELLIS LLP

Chicago ● Cleveland ● Columbus ● Los Angeles ● San Francisco ● St. Louis

claim (First Cause of Action) and Lanham Act claims (Second, Third, and Fourth Causes of Action) are meritorious and well-founded.

### 1. Plaintiffs' Cybersquatting Claim is Meritorious and Well-Founded

To succeed on a claim of cybersquatting under the ACPA, a plaintiff must show (1) ownership of a valid mark; (2) that the mark is distinctive or famous; (3) the existence of a domain name that is identical or confusingly similar to, or in the case of a famous mark, dilutive of, the owner's mark; and (4) that a defendant registered, trafficked in, or used the domain name, (5) with bad faith intent to profit from the mark. *See* 15 U.S.C. § 1125(d)(1); *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 681 (9th Cir. 2005). ID Shield registered (as the registrant), trafficked in, or used the Infringing Domain Names with bad faith intent to profit from Plaintiffs' famous or distinctive marks in violation of the ACPA. Since 35.CN and OnlineNIC are alter egos of ID Shield (SJ Order at 1), each of the Defendants is liable under the ACPA.[8]

#### a) Plaintiffs' Marks are distinctive and famous.

Plaintiffs own the exclusive rights to numerous trademarks and service marks, including Plaintiffs' Marks. Here, there can be no dispute that each of Plaintiffs' Marks is distinctive, or that FACEBOOK and INSTAGRAM are famous. SAC ¶¶ 21, 25. This fame is based on, among other things, the inherent distinctiveness and federal registration of Plaintiffs' Marks, as well as the extensive and exclusive worldwide use, advertising, promotion, and recognition of them. *Id.* ¶ 127. *See Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 635 (9th Cir. 2008) (citing 15 U.S.C. § 1125(c)(2)(A)).

#### b) The Infringing Domain Names are identical or confusingly similar to and/or dilutive of Plaintiffs' Marks.

Each of the Infringing Domain Names is identical or confusingly similar to Plaintiffs' Marks. SAC ¶ 56. Courts hold the ACPA only requires a facial comparison of the domain names to the mark at issue rather than the more involved comparison in a traditional trademark likelihood of confusion analysis.

---

pleaded claims for cybersquatting, trademark infringement, false designation of origin, and dilution. ECF No. 207 at 9-11.

[8] The operations of ID Shield and OnlineNIC, including all technical support and customer support, are carried out by employees of 35.CN. SAC ¶¶ 45-46. And the operations of ID Shield are controlled by OnlineNIC. *Id.* ¶ 33. Thus, in addition to their liability as alter egos, 35.CN and OnlineNIC are also liable under the ACPA as a direct participant in the registration and trafficking by ID Shield in the Infringing Domain Names. *Id.* ¶ 12. *See, e.g., Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227, 233-34 (Ill. 2007) (collecting state and federal cases supporting the direct participant theory of liability).

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

See Coca-Cola Co. v. Purdy, 382 F.3d 774, 783 (8th Cir. 2004) ("The inquiry under the ACPA is thus narrower than the traditional multifactor likelihood of confusion test for trademark infringement."); see also DSPT Int'l, Inc. v. Nahum, 624 F.3d 1213, 1222 n.28 (9th Cir. 2010). Further, domain names that merely append a generic word to a mark, or that merely add or delete characters to a mark, are confusingly similar to the mark upon which they prey. See, e.g., id. at 1222 (upholding jury verdict that "eq-Italy.com" is confusingly similar to EQ mark); Harrods Ltd. v. Sixty Internet Domain Names, 157 F. Supp. 2d 658, 667-78 (E.D. Va. 2001), aff'd in part, rev'd in part, 302 F.3d 214 (4th Cir. 2002) (domain names adding descriptive or generic terms like "bank," "financial," and "shopping" to the HARRODS mark held confusingly similar). See also 145 Cong. Rec. S10513-02 (daily ed. Aug. 5, 1999) (citing "attphonecard.com" and "attcallingcard.com" as examples of confusingly similar domain names during passage of the ACPA).

Here, there are 21 Infringing Domain Names that include correct spellings of Plaintiffs' Marks and correct spellings of other commonly-spelled words; 4 Infringing Domain Names that incorporate identical spellings of Plaintiffs' Marks but do not include other commonly spelled words; and 10 Infringing Domain Names involving typosquatting.[9] See R&R at 27:19-28:16. In short, the 35 Infringing Domain Names are identical or confusingly similar to Plaintiffs' Marks.

c)   <u>Defendants registered each Infringing Domain Name.</u>

ID Shield is liable under the ACPA for registering each of the Infringing Domain Names because ID Shield is listed as the registrant[10] in the WHOIS directory for the Infringing Domain Names. In finding that Plaintiffs adequately pleaded registration, this Court stated, "OnlineNIC and ID Shield admit that ID Shield is listed as the registrant for the allegedly Infringing Domain Names listed in the complaint." ECF No. 207 at 9:21-24 (citing SAC ¶ 27 and ECF No. 88 ¶ 27 (Answer)); see also Facebook Inc. v. Namecheap Inc., No. CV-20-00470-PHX-GMS, 2020 WL 6585534, at *3 (D. Ariz. Nov. 10, 2020) (holding plaintiffs plausibly alleged proxy service provider was domain name registrant because it was

---

[9] "A reasonable interpretation of conduct covered by the phrase 'confusingly similar' is the intentional registration of domain names that are misspellings of distinctive or famous names, causing an Internet user who makes a slight spelling or typing error to reach an unintended site." Shields v. Zuccarini, 254 F.3d 476, 484 (3rd Cir. 2001).

[10] The ACPA uses the term "registrant," and ICANN use the terms "registrant" and "registered name holder" interchangeably, to refer to an individual or entity who registers a domain name.

MOTION FOR DEFAULT JUDGMENT AND MEMORANDUM IN SUPPORT OF MOTION<br>Case No. 3:19-cv-07071-SI

TUCKER ELLIS LLP<br>Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

listed as the registrant in the WHOIS directory); *Meta Platforms, Inc. v. New Ventures Servs. Corp.*, No. 3:21-cv-697-MEM, 2023 WL 5651994, at *6-7 (M.D. Pa. Aug. 31, 2023) (same).

Indeed, the ID Shield Service Agreement states that "each domain name registration which you control and which you designate **will thereafter be registered in the name of [ID Shield] as registrant.**" SAC Ex. 6 at 1 (emphasis added). And later, the ID Shield Service Agreement confirms that the customer "will not be listed as the registrant for the" domain names. *Id.* at 2. Finally, ID Shield's webpage confirms that it is the registrant for the domain names by stating: "We replace your registrant, technical, admin and billing information." SAC Ex. 5.

d)   <u>Defendants trafficked in the Infringing Domain Names.</u>

As a proxy service, ID Shield is also liable under the ACPA for trafficking in the Infringing Domain Names because ID Shield licensed use of the Infringing Domain Names to its Licensees.[11] ICANN defines a proxy service as "a service through which a Registered Name Holder licenses use of a Registered Name to the . . . Customer in order to provide the . . . Customer use of the domain name, ***and the Registered Name Holder's contact information is displayed in the Registration Data Service (Whois) or equivalent services rather than the . . . Customer's contact information***." SAC Ex. 4 at 59 (RAA, "Specification On Privacy And Proxy Registrations" § 1.3) (emphasis added). *See also* ICANN, Information for Privacy and Proxy Service Providers, Customers and Third-Party Requesters, available at: https://www.icann.org/resources/pages/pp-services-2017-08-31-en (last accessed January 31, 2024) ("***The proxy service provider is the registrant of record (the registered domain name holder)*** and provides alternative, reliable contact information. . . . The proxy service provider licenses use of the domain name to the customer via its agreement with the customer.") (emphasis added) (Guye Decl. Ex. 2). Here, ID Shield is a proxy service because it registers domain names in its own name and not in the name of its Licensees. SAC ¶¶ 10, 27. ID Shield provides this proxy service to OnlineNIC's customers. *Id.* ¶¶ 10, 28.

---

[11] "Trafficking in" is a separate and distinct act giving rise to liability under the ACPA. *See Acad. of Motion Pictures Arts & Scis. v. GoDaddy.com, Inc.*, No. CV 10-3738 ABC (CWX), 2013 WL 12122689, at *6 (C.D. Cal. June 21, 2013). Section 1125(d)(1)(E) defines "traffics in" as engaging in "transactions that include but are not limited to, sales, purchases, loans, pledges, ***licenses***, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration" (emphasis added).

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

e)   Defendants acted with bad faith intent to profit from Plaintiffs' Marks.

The SAC contains extensive allegations of Defendants' bad faith intent to profit. With respect to the bad faith factors listed in the ACPA, Plaintiffs allege, and Defendants cannot dispute, that (a) Defendants have no trademark or intellectual property rights in the Infringing Domain Names, (b) the Infringing Domain Names do not consist of Defendants' legal name or a name commonly used to identify them, (c) Defendants have not made any prior use of any Infringing Domain Name in connection with the *bona fide* offering of any goods or services, and (d) Defendants have not made any *bona fide* noncommercial or fair use of Plaintiffs' Marks on a website accessible at any of the Infringing Domain Names. 15 U.S.C § 1125(d)(1)(b)(i)(I)–(IV); SAC ¶ 82–85. Next, the screen captures of parking pages attached to the SAC demonstrate that the Infringing Domain Names diverted consumers from Plaintiffs' legitimate websites to different commercial websites accessible under the Infringing Domain Names. *See* 15 U.S.C § 1125(d)(1)(b)(i)(V); SAC ¶ 67 & Ex. 8. Furthermore, OnlineNIC has registered multiple domain names that were identical or confusingly similar to marks of others that were distinctive at the time of registration. 15 U.S.C § 1125(d)(1)(b)(i)(VIII); SAC ¶¶ 61-63, 69. Finally, Plaintiffs' Marks are distinctive and famous. 15 U.S.C § 1125(d)(1)(b)(i)(IX); SAC ¶¶ 19, 21, 23, 25. As such, Defendants acted with a bad faith intent to profit from Plaintiffs' Marks.

## 2.   Plaintiffs' Lanham Act Claims are Meritorious and Well-Founded

The Licensees' use of the Infringing Domains Names caused harm by trademark infringement, false designation of origin, and dilution of Plaintiffs' Marks, and Defendants accepted liability for this harm under the RAA.

a)   The Licensees' trademark infringement, false designation of origin, and dilution of Plaintiffs' Marks

The Licensees' wrongful use of the Infringing Domain Names caused harm by trademark infringement, false designation of origin, and dilution of Plaintiffs' Marks. To establish a claim of trademark infringement or false designation of origin, a plaintiff must prove it holds a protectable mark and that the alleged infringer's use is likely to cause consumer confusion. *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006); *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979) ("Whether we call the violation infringement, unfair competition

9

1   or false designation of origin, the test is identical–is there a 'likelihood of confusion?'"); *see also* 15 U.S.C.

2   §§ 1114, 1125.[12] "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the

3   marketplace is likely to be confused as to the origin of the good or service . . . ." *Dreamwerks Prod. Grp.,*

4   *Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).

5         Here, Plaintiffs hold protectable marks—*i.e.*, Plaintiffs' Marks—and Plaintiffs have adequately

6   pleaded likelihood of confusion by alleging that the Infringing Domain Names are confusingly similar to

7   Plaintiffs' Marks and used by the Licensees to divert consumers away from Plaintiffs' legitimate websites

8   to websites used for malicious activity. SAC ¶¶ 67, 68. For example, the Licensees used some of the

9   Infringing Domain Names to host websites directing visitors to other commercial sites. Others hosted

10  websites selling purported tools for hacking. And some of the Infringing Domain Names were configured

11  to send and receive email, strongly suggesting use for phishing attacks. *Id*. ¶¶ 67, 68, 104, 116, 128. The

12  Licensees' use of Plaintiffs' Marks in connection with the Infringing Domain Names constitutes a use in

13  commerce causing a likelihood of confusion prohibited by the Lanham Act. *See San Diego Comic*

14  *Convention v. Dan Farr Prods.*, 336 F. Supp. 3d 1191, 1201 (S.D. Cal. 2018) (finding the unauthorized

15  use of an infringing mark in a domain name may give rise to a claim for trademark infringement, so long

16  as the defendant "acts beyond" merely registering the domain name) (citing *GoPets Ltd. v. Hise*, 657 F.3d

17  1024, 1035 (9th Cir. 2011)); *see also, e.g., Glob. Licensing, Inc. v. Namefind LLC*, 582 F. Supp. 3d 467,

18  482-83 (E.D. Mich. 2022) (collecting cases) (finding pay-per-click parking pages sufficient to allege "use

19  in commerce" under Lanham Act).

20        To establish dilution, Plaintiffs must show (1) they own a famous mark that is distinctive and

21  (2) the defendant has engaged in either "dilution by blurring" or "dilution by tarnishment" after the mark

22  has become famous. 15 U.S.C. §§ 1125(c)(1)-(2). Cybersquatting dilution is the diminishment of "'the

23  capacity of the [plaintiff's] marks to identify and distinguish the [plaintiff's] goods and services on the

24  Internet.'" *Panavision v. Toeppen,* 141 F.3d 1316, 1326 (9th Cir. 1998); *see also Brookfield,* 174 F.3d at

25

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

26  _____

    [12] While 15 U.S.C. § 1114(1) provides protection only to registered marks, 15 U.S.C. § 1125(a) protects
27  unregistered marks as well as registered marks. *See, e.g., Kendall–Jackson Winery, Ltd. v. E. & J. Gallo
    Winery*, 150 F.3d 1042, 1047 n.7 (9th Cir. 1998). "Despite these differences, the analysis under the two
28  provisions is oftentimes identical." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036,
    1046 n.8 (9th Cir. 1999).

10

1045 ("The Web surfer who assumes that "'X'.com" will always correspond to the web site of company X or trademark X will, however, sometimes be misled."). Dilution occurs because "'[p]rospective users of plaintiff's services . . . may fail to continue to search for plaintiff's own home page, due to anger, frustration or the belief that plaintiff's home page does not exist.'" *Panavision*, 141 F.3d at 1327 (citation omitted). Here, Plaintiffs alleged that the Licensees diluted Plaintiffs' Marks because the Infringing Domain Names were used to divert consumers away from Plaintiffs' legitimate websites to websites used for unsavory commercial activity as noted above, including phishing, hacking, and other domain name abuse. SAC ¶¶ 67, 68.

> b)   Defendants accepted liability for harm caused by the Infringing Domain Names under RAA § 3.7.7.3.

Under OnlineNIC's Registration Agreement, Defendants accepted liability for harm caused by their Licensees' wrongful use of the Infringing Domain Names. OnlineNIC is an ICANN-accredited domain name registrar subject to ICANN's RAA, and is required to include certain material terms in its Registration Agreement, including the language from RAA § 3.7.7.3. SAC ¶¶ 3, 26 and Ex. 4 at 16-17. Defendants therefore cannot dispute that OnlineNIC's Registration Agreement contains all the terms required by ICANN, including RAA § 3.7.7.3, which provides:

> A Registered Name Holder licensing use of a Registered Name according to this provision **shall accept liability for harm caused by wrongful use of the Registered Name, unless it discloses the current contact information provided by the licensee** and the identity of the licensee within seven (7) days to a party providing the Registered Name Holder reasonable evidence of actionable harm.

SAC Ex. 4 at 16–17 (RAA § 3.7.7.3) (emphasis added).

In turn, ICANN requires every registrant of a domain name to enter into a Registration Agreement with an ICANN-accredited domain name registrar. SAC ¶ 26 & Ex. 4. As the registrant of the Infringing Domain Names, ID Shield was thus required to enter into OnlineNIC's Registration Agreement and be bound by its terms. Accordingly, ID Shield, as a proxy service provider, contractually agreed under the OnlineNIC Registration Agreement to accept liability if it failed to disclose Licensees' contact information within seven days of being provided reasonable evidence of trademark infringement. Here, Plaintiffs' authorized representatives sent at least five notices to ID Shield with evidence that the

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

11

Infringing Domain Names caused Plaintiffs actionable harm and requesting that ID Shield disclose the identities of the registrant(s). *Id.* ¶ 74. Because ID Shield did not timely disclose its Licensees' contact information in response to Plaintiffs having provided "reasonable evidence of actual harm" to ID Shield (*id.* ¶ 75), Defendants are collectively liable for the cybersquatting, infringement, false designation of origin, and dilution caused by the Licensees' use of the Infringing Domain Names.

### C.    The Amount of Money at Stake is Tailored to Defendants' Misconduct

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1050 (N.D. Cal. 2010). The sum of money does not weigh against entry of default judgment where the requested amounts are "tailored to the specific misconduct of the Defendants" and "have evidentiary support." *Medina*, 2023 WL 8000273, at *5; *see also Baskin-Robbins Franchising LLC v. Pena*, No. 19-CV-06657-JSC, 2020 WL 2616576, at *9 (N.D. Cal. May 7, 2020), *report and recommendation adopted*, No. 19-CV-06657-LHK, 2020 WL 2614851 (N.D. Cal. May 22, 2020). This factor weighs in favor of default judgment because, as detailed in Sections IV and V below, Plaintiffs request statutory damages and attorneys' fees tailored to the specific misconduct of the Defendants and with evidentiary support.

### D.    The Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor considers the possibility of a dispute concerning material facts. *See Eitel*, 782 F.2d at 1471–72. "Here, there is no possibility of a dispute that should preclude granting Plaintiffs' motion because the Court struck Defendants' answer and instructed the clerk to enter default." *Medina*, 2023 WL 8000273, at *5; *see also Baskin-Robbins*, 2020 WL 2616576 at 9. Accordingly, this factor favors entry of default judgment.

### E.    Whether the Default was Due to Excusable Neglect

Under the sixth *Eitel* factor, the court considers whether a defendant's default was due to excusable neglect. *See Eitel*, 782 F.2d at 1472. Here, the Special Master summarized that "based on Defendants' widespread activities involving ESI deletion, information withholding, and data dumping there is no other conclusion than Defendants acted intentionally to avoid producing responsive ESI to Plaintiffs." ECF Nos. 115 at 41:3-5 (Special Master's Report); 151 (adopting Special Master's Report). In addition, Judge van Keulen found that "[t]he intentional and systematic deletion of potentially discoverable

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

12

evidence over the years that this case has been pending in this Court, and particularly during the Special Master's review, clearly demonstrates willfulness." R&R at 16:21-23. Finally, this Court found that Defendants' "behavior during discovery, as detailed in the [Special Master's Report], renders terminating sanctions reasonable and justified." Order Adopting R&R at 10:1-3. As such, the default "resulted from Defendants' culpable conduct, not excusable neglect." *See Medina*, 2023 WL 8000273, at *5. Accordingly, this factor favors entry of default judgment.

### F.    There is No Likelihood of a Decision on the Merits Under These Circumstances

The seventh *Eitel* factor considers whether the strong policy favoring decisions on the merits overrides the reasons in favor of granting default judgment. *See Eitel*, 782 F.2d at 1472. This Court found that Defendants' disputes as to the merits of Plaintiffs' claims "completely misses the point that ID Shield and OnlineNIC actively destroyed and concealed mass amounts of evidence after the litigation commenced and, in some instances, after the Special Master was appointed." Order Adopting R&R at 13:17-19. This Court further stated that a decision on the merits was "made impossible" due to the spoliation of evidence. *See* ECF No. 317 (Tr. of March 3, 2023 Case Management Conference) at 19:2. Accordingly, this factor weighs in favor of default judgment. *See, e.g., Medina*, 2023 WL 8000273, at *5 (weighing factor in favor of default judgment because "[r]esolution of this case on the merits would be impossible" given defendants' discovery misconduct); *Goes Int'l*, 2018 WL 2298631, at *7 (weighing factor in favor of default judgment because "[l]itigation on the merits is not possible").

## IV.    PLAINTIFFS ARE ENTITLED TO STATUTORY DAMAGES

Under the ACPA, a "plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d). Congress expressly provided for these statutory damages "both to deter wrongful conduct and to provide adequate remedies for trademark owners who seek to enforce their rights in court." *See* S. Rep. No. 106-140, at 8 (Aug. 5, 1999); *see also* H.R. Conf. Rep. No. 106-464, at 39 (Nov. 9, 1999).

The Court is granted wide discretion in determining the amount of statutory damages. *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc*., 259 F.3d 1186, 1194-95 (9th Cir. 2001) (citations omitted) (discussing analogous statutory damages provisions of the Copyright Act). The

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

13

following considerations are among the most important in determining the amount of statutory damages: the egregiousness of the defendant's conduct, whether the defendant engaged in a pattern of registering and using large numbers of domain names that infringe the rights of others, and the defendant's behavior showing an attitude of contempt for the court and the proceeding. *See, e.g., Facebook, Inc. v. Banana Ads LLC*, No. CV 11-03619-YGR KAW, 2013 WL 1873289, at \*14-24 (N.D. Cal. Apr. 30, 2013), *report and recommendation adopted*, No. 11-CV-03619 YGR, 2013 WL 12308477 (N.D. Cal. June 24, 2013). Moreover, the deterrence goals of the ACPA should be considered. *E. & J. Gallo Winery v. Spider Webs, Ltd*., 286 F.3d 270, 278-279 (5th Cir. 2002).

### A. Defendants' Conduct was Egregious

In determining the appropriate award of statutory damages under the ACPA, courts consider the "egregiousness or willfulness" of the defendant's cybersquatting. *Digby Adler Grp. LLC v. Image Rent a Car, Inc.*, 79 F. Supp. 3d 1095, 1108 (N.D. Cal. 2015) (quoting *Verizon California Inc. v. Onlinenic, Inc.*, 2009 WL 2706393). "The more Infringing Domain Names a defendant registered or acquired, the more malicious the conduct." *Banana Ads*, 2013 WL 1873289, at \*16

Judge van Keulen found Defendants' conduct to be egregious because Defendants "registered a significant number (35) of domain names (the Infringing Domain Names) incorporating both the correct spellings and misspellings of Plaintiffs' Marks." R&R at 24:23-25. In addition, Judge van Keulen found that some of the Infringing Domain Names were used for malicious activity, including phishing or other scams. R&R at 25:4-9. One example of an abusive Infringing Domain Name is m-facebook-login.com because the legitimate Facebook login page for mobile users is m.facebook.com/login and Internet users are more likely to be confused by the Infringing Domain Name. "Defendants clearly registered the Infringing Domain Names in an intent to profit from consumers' mistakes or confusion when trying to reach Plaintiffs' legitimate sites. The Court can conceive of no other use for registering a domain name like 'instakram.com.'" *Id*. at 25:9-13 (internal citations omitted). *See Verizon California Inc. v. Navigation Catalyst Systems, Inc.*, 568 F. Supp. 2d 1088, 1096 (C.D. Cal. 2008) ("It is clear that [Defendants'] intent was to profit from the poor typing abilities of consumers trying to reach Plaintiffs' sites: what other value could there be in a name like ve3rizon.com?").

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

**B.     Defendants Engaged in a Pattern of Unlawful Cybersquatting Against Famous Marks**

Courts also consider whether the defendant has engaged in a pattern of registering and using large numbers of domain names that infringe the rights of plaintiffs or third parties. "[I]t is clear that 'a recidivist may be punished more severely than a first offender[,] [since] . . . repeated misconduct is more reprehensible than an individual instance of malfeasance.'" *Verizon*, 2009 WL 2706393 at 9.

Judge van Keulen emphasized that the "Court is not writing on a blank slate with respect to OnlineNIC: OnlineNIC has appeared before this Court, represented by the same counsel, no less than three times on similar allegations of cybersquatting." R&R at 26:5-8; *see also Verizon*, 2009 WL 2706393 at *5 ("OnlineNIC's status as a serial cybersquatter further supports a per-violation award of $50,000."). To that end, Judge van Keulen took "judicial notice of this Court's prior cases involving OnlineNIC. The Court finds that in the context of this history, OnlineNIC is a serial cybersquatter, whose activities were not even deterred by a $33.15 million judgment against it." R&R at 26:14-17. *See, e.g.*, *Elecs. Boutique Holdings Corp. v. Zuccarini*, No. CIV. A. 00-4055, 2000 WL 1622760, at *7-9 (E.D. Pa. Oct. 30, 2000) at *7-9 (awarding $100,000 per infringing domain name, noting Mr. Zuccarini's pattern of registering names that "are misspellings of famous names and infringe on the marks of others," recognizing the significant number of cases brought by other trademark owners for the same type of infringement, and commenting on Mr. Zuccarini's new registrations of Infringing Domain Names after notice); *Lahoti v. Vericheck, Inc.*, 708 F. Supp. 2d 1150, 1170 (W.D. Wash. 2010) (awarding $100,000 per infringing domain name in part because of defendant's "pattern and practice of registering domain names that incorporate the trademarks of others"), *aff'd*, 636 F.3d 501 (9th Cir. 2011).

**C.     Defendants Demonstrated Contempt for the Court and Judicial Proceedings**

High statutory damages may be warranted where, as here, a defendant's behavior shows a lack of respect for the judicial system. *See, e.g., Yuga Labs, Inc. v. Ripps*, No. CV 22-4355-JFW(JEMX), 2023 WL 7089922, at *14 (C.D. Cal. Oct. 25, 2023) (". . . Defendants repeated and consistent contempt and disdain for the law and the legal process, this Court's rulings, and Yuga's intellectual property rights, fully justifies the maximum award of $200,000 in statutory damages."); *Lahoti*, 708 F. Supp. 2d at 1170 (relying in part on defendant's "disregard for the submission of inaccurate answers to interrogatories" as a basis

for awarding $100,000 per domain name). In this case, Judge van Keulen found that the OnlineNIC Defendants "demonstrated contempt of these proceedings" by their "willful spoliation of millions of database records and thousands of attachments." R&R at 26:18-21. Moreover, Defendants intentionally withheld evidence in discovery, made multiple misrepresentations to the Court and the Special Master, and violated the Court's Order to provide the Special Master all of their database files and backups in this case (*see* R&R at 5:22-9:8 (summarizing findings of Special Master)). And this is not the first action in which Defendants demonstrated such contempt. *See Verizon California Inc. v. OnlineNIC, Inc.*, 647 F. Supp. 2d 1110, 1114-21 (N.D. Cal 2009) (holding OnlineNIC in civil contempt for multiple violations of court orders that flowed from OnlineNIC's discovery abuses).

### D.    Defendants and Other Cybersquatters Must Be Deterred from Future Cybersquatting

In drafting the ACPA, Congress expressly provided for statutory damages to "provide clear deterrence" against bad faith and abusive conduct. *See* S. Rep. 106-140, at 7-8 (1999) (stating "legislation is needed to clarify the rights of trademark owners with respect to bad faith, abusive domain name registration practices, to provide clear deterrence to prevent bad faith and abusive conduct, and to provide adequate remedies for trademark owners in those cases where it does occur"). Courts also have recognized the deterrence goal in the ACPA's statutory damages provisions. *See, e.g., E. & J. Gallo Winery*, 286 F.3d at 278 (analogizing deterrent effect of the statutory damages provisions of the Copyright Act to the ACPA)*; Kiva Kitchen & Bath v. Capital Distributing, Inc.*, 319 F. App'x 316, 320 (5th Cir. 2009) (noting that one goal of the ACPA's statutory damages provision is "to discourage wrongful conduct"); *Pinehurst, Inc. v. Wick*, 256 F. Supp. 2d 424, 432 (M.D.N.C. 2003) (quoting discussion of the deterrent purpose within the congressional record). As the Supreme Court explained with respect to the analogous statutory damages provision in the Copyright Act, an award of statutory damages crafted to deter the infringing conduct will "vindicate the statutory policy." *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952).

The Court should send a clear signal to cybersquatters—including and especially to Defendants, who willfully and flagrantly disregard United States laws and court orders—that such action will not be tolerated. This signal should be even stronger when cybersquatting is being perpetrated by

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

16

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

ICANN-accredited registrars, like OnlineNIC and 35.CN, who are placed in a position of trust. *See Verizon California Inc. v. Lead Networks Domains Private Limited*, No. CV 09-613-ABC (CWx), 2009 WL 10700112 at *9 (C.D. Cal. Feb. 17, 2009) (noting "the Registrar Defendants are abusing this trust by registering and using domain names for their own benefit and pecuniary interest . . . [and] by hiding the identities of other registrants"). An award of statutory damages should be substantial to deter the conduct and vindicate the statutory policy.

### E.     The Court Should Adopt the R&R's Determination of Statutory Damages

Given the considerations above, the Court should adopt Judge van Keulen's R&R relating to statutory damages and award $3,135,000 under 15 U.S.C. § 1117(d), based on the following:

1.     $80,000 in statutory damages per infringing domain name for each of the following 10 Infringing Domain Names  involving  typosquatting: face2bouk.com; facebux2.com; facekhook.com; facessbook.com;  faecb00k-page.com;  faecbook-page.com;  instaface.org;  instakram.com;  login-1nstargram.com; and singin-1nstargram.com;

2.     $85,000 in statutory damages per infringing domain name for each of the following 4 Infringing Domain Names that incorporate identical spellings of Plaintiffs' Marks but do not include other commonly-spelled  words:  facebook-alkamazasok.net;  iiinstagram.com;  facebook-pw.com;  and www- instagram.net; and

3.     $95,000 in statutory damages per infringing domain name for each of the remaining 21 Infringing Domain Names that include correct spellings of Plaintiffs' Marks and correct spellings of other commonly-spelled words, including buyinstagramfans.com and www-facebook-pages.com.

Because 35.CN is the alter ego of the OnlineNIC Defendants (*see* SJ Order), the Court should adopt the R&R and award statutory damages of $3,135,000 jointly and severally against all the Defendants for their violations of the ACPA.

## V.     PLAINTIFFS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS

This is an exceptional case entitling Plaintiffs their reasonable fees for the entire case. Section 1117(a) permits a prevailing party[13] to recover attorneys' fees "in exceptional cases." 15 U.S.C. § 1117(a).

---

[13] There can be no reasonable dispute that Plaintiffs are the prevailing party in this action. *See Mountz, Inc. v. Ne. Indus. Bolting & Torque, LLC*, No. 15-CV-04538-JD (MEJ), 2017 WL 780585, at *1 (N.D. Cal.

An exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). District courts "should examine the 'totality of the circumstances' to determine if the case was exceptional . . . using a preponderance of the evidence standard." *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (*en banc*). In considering the "totality of the circumstances," courts can consider nonexclusive factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (quoting *Octane Fitness*, 572 U.S. at 554 n.6).

Here, the Court should adopt the R&R's determination that this case is exceptional under 15 U.S.C. § 1117(a) because "(1) . . . OnlineNIC and ID Shield engaged in significant litigation misconduct, derailing discovery by spoliating evidence after this litigation began and after the Special Master was appointed, and (2) [the OnlineNIC] Defendants' cybersquatting was egregious." R&R at 32:5-8. Further, the Court should award Plaintiffs their reasonable fees for the *entire case*.

To be sure, Judge van Keulen recommended that Plaintiffs are "only entitled to a partial recovery of fees: Plaintiffs are awarded fees related to the proceedings before the Special Master and the Motion for Sanctions." R&R at 32:10-11. The R&R, however, concerned only the OnlineNIC Defendants (not 35.CN) and was issued nearly two years ago on March 28, 2022. Since then, the issuance of the R&R did not deter Defendants from continuing to litigate this case in an unreasonable manner. Indeed, as discussed below, Defendants persistently evaded and obstructed discovery, gave inaccurate responses to discovery requests, took positions for which they would not (or could not) adduce evidence, attempted to re-litigate issues already decided, and made misleading statements to the Court. Defendants' collective exceptional conduct occurred at every stage of this litigation, including prior to filing, and continues to this day.[14]

Jan. 27, 2017), *report and recommendation adopted*, No. 3:15-CV-04538-JD, 2017 WL 766598 (N.D. Cal. Feb. 28, 2017) (finding plaintiff the prevailing party where it obtained a default judgment and injunctive relief); *see also Starbuzz Tobacco, Inc. v. Gold Star Tobacco, Inc.*, No. SACV 19-408 JVS (DFMx), 2020 WL 3051359, at *2-3 (C.D. Cal. Apr. 16, 2020) (litigant was prevailing party where it obtained judgment based on case-terminating sanction).

[14] 35.CN's counsel failed to inform the Court of 35.CN's name change despite being notified of this issue

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

Defendants' relentless bad faith misconduct unnecessarily prolonged and complicated this litigation, draining both Plaintiffs' and the Court's resources.

When considering the totality of the circumstances, awarding Plaintiffs their reasonable attorneys' fees for the entire case is necessary and appropriate to compensate Plaintiff and deter Defendants. *See, e.g., San Diego Comic Convention v. Dan Farr Prods.*, 807 F. App'x 674, 676 (9th Cir. 2020) (holding district court did not abuse discretion in awarding fees for entire case where "Defendants' exceptional conduct occurred at every stage of this litigation, including prior to filing, and that such conduct caused [plaintiff] to expend unnecessary legal fees and the court to squander limited judicial resources throughout the duration of the case"); *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1166 (N.D. Cal. 2015) (analyzing analogous fee-shifting provision under Section 285 of the Patent Act) ("[T]here is nothing in the legislative history or applicable case law to suggest that—once a determination that a case is 'exceptional' has been made—courts should balk at awarding full fees."). Plaintiffs therefore respectfully request all their reasonable attorneys' fees incurred in this action be awarded under 15 U.S.C. § 1117(a).

### A.     Defendants' Lanham Act Violations were Willful

A case may be exceptional based on a finding of "willful" Lanham Act violations, warranting an award of attorneys' fees. *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1223 n.13 (9th Cir. 2023) ("Previously, the Ninth Circuit's test required a plaintiff to show that a defendant engaged in 'malicious, fraudulent, deliberate, or willful infringement' [to demonstrate an exceptional case.] . . . Because the *SunEarth* test is less stringent than the previous 'willful infringement' standard, it stands to reason that . . . willful infringement would satisfy the *SunEarth* test."). On default, allegations of willful infringement are deemed true and entitle a plaintiff to attorneys' fees. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (finding that because "[t]he district court entered default . . . [and] all factual allegations in the complaint are deemed true, including the allegation of Poof's willful infringement of Andrew's trademarks," the "default sufficiently establishes . . . entitlement to attorneys' fees under the Lanham Act").

Tucker Ellis LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

three times over the past 2 weeks. Guye Decl. ¶¶ 3-4, 6-7.

Defendants are in default. As such, Defendants cannot contest that they registered, used, or trafficked in 35 domain names that are identical or confusingly similar to Plaintiffs' Marks with a bad faith intent to profit in violation of the ACPA. SAC ¶¶ 56-57, 87. Moreover, Defendants' and their Licensees' cybersquatting was willful and deliberate. *Id.* ¶¶ 60-66, 69, 136. As significantly, Defendants intentionally hid the identity of their Licensees even after Plaintiffs sent notice of the cybersquatting. *Id.* ¶¶ 71-75. Accordingly, Judge van Keulen found Defendants' cybersquatting, as alleged in the complaint, to be "egregious." R&R at 24. The willful infringement of Plaintiffs' trademarks supports a finding that this case is exceptional. *See Mountz, Inc. v. Ne. Indus. Bolting & Torque, LLC*, No. 15-CV-04538-JD (MEJ), 2017 WL 780585, at *2 (N.D. Cal. Jan. 27, 2017), *report and recommendation adopted*, No. 3:15-CV-04538-JD, 2017 WL 766598 (N.D. Cal. Feb. 28, 2017) ("[T]he substantive strength of Plaintiff's litigating position (considering both the governing law and the facts of the case) and the weakness of Defendant's position was established on default judgment."); *ADG Concerns, Inc. v. Tsalevich LLC*, No. 18-CV-00818-NC, 2018 WL 4241967, at *13 (N.D. Cal. Aug. 31, 2018), *report and recommendation adopted*, No. 18-CV-00818-JSW, 2018 WL 6615139 (N.D. Cal. Nov. 1, 2018) ("Courts applying the *Octane Fitness* analysis commonly find that willful infringement, in conjunction with non-participation in litigation, makes a case 'exceptional.'") (collecting cases).

## B.   Defendants Litigated in an Unreasonable Manner

A case may qualify as exceptional based on the "unreasonable manner" in which a party has litigated. "Courts awarding attorneys' fees due to the losing party's unreasonable manner of litigation generally have pointed to egregious behavior." *Teetex LLC v. Zeetex, LLC*, No. 20-CV-07092-JSW, 2022 WL 2439176, at *2 (N.D. Cal. July 5, 2022). "'Egregious behavior' supporting an award for litigation misconduct 'generally involves unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings.'" *Id.* (quoting *Pac. Coast Bldg. Prod., Inc. v. CertainTeed Cypsum, Inc.*, No. 18-cv-000346-LHK, 2021 WL 75755, at *4 (N.D. Cal. Jan. 7, 2021)). By way of illustration, in *San Diego Comic Convention*, the Ninth Circuit held that the district court did not abuse its discretion in deeming a case "exceptional" and granting an award of attorneys' fees where the court focused on the "unreasonable manner" in which Defendants litigated the case and "highlight[ed] Defendants' failure to comply with court rules, persistent desire to re-litigate issues already decided, advocacy that veered into

TUCKER ELLIS LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

'gamesmanship,' and unreasonable responses to the litigation." 807 Fed. App'x at 676.

The egregious mass spoliation of evidence that occurred in this case is well-documented and need not be repeated here. ECF No. 115 at 39:11-41:5. Judge van Keulen concluded, "OnlineNIC and ID Shield have lied to Plaintiffs and the Special Master, destroyed evidence before and after this case began, and impeded resolution of this case by failing to make complete and timely productions to Plaintiffs and the Special Master." R&R at 20:16-19. Based on the spoliation of evidence, Judge van Keulen already found this case to be exceptional under 15 U.S.C. § 1117(a) and recommended that Plaintiffs be awarded their fees related to the OnlineNIC Defendants' misconduct. R&R at 32:8-11.[15]

Despite the serious implications of the Special Master's Report, Defendants continued to litigate this case in an unreasonable manner. Following the issuance of the Special Master's Report, the OnlineNIC Defendants failed to appear at the 30(b)(6) deposition of ID Shield on July 15, 2021 (*see* ECF No. 359 (Declaration of Howard A. Kroll) at ¶ 68, Ex. 42); represented that they "could no longer afford to defend the case and that they intend to cease business operations on July 25, 2021" (*see, e.g.,* ECF Nos. 118 at 3:23-25, 4:11-15; 121 at 2:21-23); did not object to the Special Master's Report (ECF No. 126); and began dissipating assets, which resulted in the issuance of a Temporary Restraining Order. ECF No. 132. All of this was done before 35.CN's entry to this case. After 35.CN was served, and despite their prior assertions to the contrary, the OnlineNIC Defendants continued participating in this litigation by withdrawing their non-opposition to the motion for terminating sanctions (ECF No. 185), seeking to join in 35.CN's motion to dismiss (ECF No. 184), and moving for de novo review of the R&R (ECF No. 229).

35.CN was also persistently evasive and obstructive in discovery,[16] prompting numerous discovery

---

[15] 35.CN is equally culpable for the OnlineNIC Defendants' spoliation. This Court concluded that "the OnlineNIC defendants engaged in egregious spoliation of evidence" and that it would "be inequitable to allow 35.CN to escape the consequences of the evidence spoliation that its own employees apparently carried out." SJ Order at 20:2-9.

[16] Plaintiffs' discovery requests, which focused on payments between 35.CN and OnlineNIC, loans to OnlineNIC by individuals connected with 35.CN, and a description of the work 35.CN employees performed for OnlineNIC, was in response to the Court having ordered the parties to proceed with discovery on alter ego. *See* ECF No. 207 at 8-9 (finding, *inter alia*, that Plaintiffs had raised "serious questions" regarding the alter ego relationship between 35.CN and the other defendants and ordered that "the parties shall proceed with discovery, including fact finding into issues regarding general and specific jurisdiction"); *see also* ECF No. 226 at 6 ("[T]here are serious allegations of spoliation of evidence against [the OnlineNIC Defendants] . . . . To understand whether these allegations extend to 35.CN and how, if at all, they impact 35.CN, additional non-bifurcated discovery is required including with respect to the issue of alter ego.")).

21

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

disputes (*see, e.g.,* ECF Nos. 237, 247, 258, 263, 269, 281), which ultimately resulted in Judge Tse's partial grant of Plaintiffs' motion to compel. ECF No. 286. Additionally, 35.CN consistently overdesignated its discovery material—including even publicly available information—as CONFIDENTIAL or AEO, requiring Plaintiffs to unnecessarily expend additional time and resources to file numerous pleadings under seal. This Court ultimately found that 35.CN's motions to seal were "overbroad and unsupported." ECF No. 353 at 3:17.

35.CN also demonstrated a "persistent desire to re-litigate issues already decided." *San Diego Comic Convention*, 807 F. App'x. at 676. For example, 35.CN continued to dispute the spoliation of evidence in opposition to Meta's motion for summary judgment, arguing that the OnlineNIC Defendants "did not destroy evidence and that any destruction was not intentional." SJ Order at 19:4. The Court specifically found that "[t]his position directly contravenes the special master's findings, as adopted by both Judge van Keulen and this Court." *Id.* at 19:8-10.

35.CN also continued to re-litigate issues relating to the merits of Plaintiffs' claims that have previously been addressed by this Court. In its motion to dismiss, 35.CN argued that the issue of whether ID Shield offers a privacy or proxy service was dispositive of this case. *See* ECF No. 174. In the order denying 35.CN's motion to dismiss, the Court rejected this argument. ECF No. 207 at 9. Yet, 35.CN raised this issue again and again, in its motion to bifurcate and stay discovery (ECF No. 213 at 3) and in its motion for de novo review of the R&R. ECF No. 228 at 7:3-8:8. The Court noted: "Each time 35.CN has raised the issue the Court has rejected it because, as discussed in the Court's Order on the Motion to Dismiss and the Order on the Motion to Bifurcate, the Proxy Service Issue is not dispositive." Order Adopting R&R at 13:20-22.

Similarly, 35.CN continued to make merits-related arguments, including, for example, arguments related to the adequacy of Plaintiffs' "notices" to ID Shield containing "reasonable evidence of actionable harm" as described in Section 3.7.7.3 of the RAA. *See generally,* ECF No. 238 (35.CN's Motion for Evidentiary Hearing); *see also* ECF No. 365 (35.CN's portion of Case Management Conference) at 5:16-6:11. The Court denied 35.CN's motion for an evidentiary hearing on this issue. *See* ECF No. 252 at 4:1. Moreover, this merits-based argument "completely misses the point that ID Shield and OnlineNIC actively destroyed and concealed mass amounts of evidence. . . ." Order Adopting R&R at 13:17-18.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

22

Liability has been established as to OnlineNIC and ID Shield for their underlying cybersquatting because they are in default. Despite this, 35.CN continued to improperly advance merits-based arguments as to the OnlineNIC Defendants' liability.

Accordingly, Defendants' collective litigation misconduct—both before and after the issuance of the R&R—entitles Plaintiffs to their reasonable attorneys' fees for the entire case.

## C.   Defendants Failed to Support Their Defenses

A case may also be exceptional where a party "persists with a clearly untenable claim, or adduces no evidence in support of its position." *Location Based Servs., LLC v. Niantic, Inc.*, No. 17-cv-04413-NC, 2018 WL 7569160, at *1 (N.D. Cal. Feb. 16, 2018) (collecting cases); *see, e.g., Pop Top Corp. v. Rakuten Kobo Inc.*, No. 20-cv-04482-DMR, 2022 WL 267407, at *4 (N.D. Cal. Jan. 28, 2022) (concluding that plaintiff's case was objectively unreasonable and substantively weak, noting that "the record establishes that [plaintiff] never advanced factual support for its position that the Kobo App infringed claim 1 of the '623 patent," and "[a]t the end of the day, [plaintiff] never offered evidence supporting its claim").

Despite adamantly contesting alter ego liability for nearly two years, 35.CN ultimately failed to submit any admissible or credible evidence disputing its alter ego relationship with the OnlineNIC Defendants. Instead, in opposition to summary judgment, 35.CN relied on "a handful of paragraphs from two declarations" (one of which being a declaration from Ms. Carrie Yu recanting her prior deposition testimony) to oppose summary judgment. *See* SJ Order at 6-7, n.3. This Court found:

> [M]uch of 35.CN's "evidence" is actually inadmissible; 35.CN does not rebut much of the evidence that plaintiffs have presented; and 35.CN's briefs make sweeping assertions that are unsupported by any evidence. 35.CN's inability to be forthcoming on basic questions, such as who purchased OnlineNIC from the companies' shared founder, have created a maze for the Court to navigate.

SJ Order at 6:21-6:25. 35.CN's failure to adduce any evidence in support of its defenses justifies awarding Plaintiffs' reasonable attorneys' fees for the entire case.

## D.   Compensation and Deterrence

Attorneys' fees should also be granted to "advance [the] considerations of compensation and deterrence" espoused in *Octane Fitness*. *See San Diego Comic Convention*, 807 F. App'x at 676. Here, Defendants have engaged in gross misconduct and "demonstrated contempt of these proceedings." *See*

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

23

R&R at 26:18-21. Defendants' misconduct has continued unabated for more than four years. Defendants have unnecessarily prolonged and complicated these proceedings, draining Plaintiffs' and the Court's resources. Equally important, absent awarding fees, there will be no disincentive for Defendants or future litigants to engage in similar misconduct in the future. Thus, an award of Plaintiffs' reasonable attorneys' fees for the entire case, in an amount to be determined, is warranted.

## VI.   PLAINTIFFS ARE ENTITLED TO A PERMANENT INJUNCTION

"It is appropriate to grant an injunction on an application for default judgment" consistent with the demands of the Complaint. *Craigslist, Inc. v. RealWorks Group LLC*, No. C 08–05072 JW, 2009 WL 10692489, at *5 (N.D. Cal. Oct. 29, 2009); SAC ¶¶ 100, 110, 120, 134. Injunctive relief is specifically authorized under 15 U.S.C. §1116(a) to prevent violations under the ACPA. Moreover, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988); *Bellagio v. Denhammer*, No. CV-S-00-1475-RLH-PAL, 2001 WL 34036599 (D. Nev. Jul. 10, 2001) (granting plaintiff permanent injunction prohibiting Defendants from registering any other domain names that contain the Plaintiff's mark or variations thereof). Courts have granted injunctive relief even in situations of default. *See, e.g.*, *PepsiCo., Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *Lifted Research Group, Inc. v. Salem*, 2009 WL 1371416 at *1 (N.D. Cal. May 15, 2009); *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003). This "remedy of choice" is appropriate when (1) the plaintiff risks suffering irreparable harm; (2) monetary remedies are inadequate to compensate for plaintiff's injury; (3) the balance of hardships favors the plaintiff; and (4) the public interest would not be disserved by an injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Here each factor favors an injunction.

As to the first two factors, Plaintiffs are presumed as a matter of law to have suffered—and to continue to suffer—irreparable harm to their reputation and goodwill. 15 U.S.C. § 1116(a); *Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*, No. 4:19-cv-01424-YGR, 2021 WL 254448, at *14 n.16 (N.D. Cal. Jan. 26, 2021) (discussing December 27, 2020 amendment to 15 U.S.C. § 1116 to create a rebuttable presumption of irreparable harm); SAC ¶¶ 98, 108, 120, and 132. As to the next factor,

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

24

the balance of hardships tips sharply in Plaintiffs' favor. "It is no hardship to cease intentionally infringing someone else's trademark rights." *Diller v. Barry Driller, Inc.*, No. CV 12-7200 ABC EX, 2012 WL 4044732 at *10 (C.D. Cal. Sept. 10, 2012); *see also Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*, No. 5:20-cv-04773-EJD, 2020 WL 5199434 at *9 (N.D. Cal. Aug. 17, 2020) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration.") (quotation marks omitted). Finally, the public interest would be served by an injunction because there is strong public interest in preventing consumer confusion. "Public interest can be defined a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused." *Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990); *see also Internet Specialties W., Inc. v. Milon-Digiorgio Enters.*, 559 F.3d 985, 993-94 (9th Cir. 2009). A permanent injunction is thus warranted.

Therefore, Plaintiffs respectfully request that this Court enter a permanent injunction enjoining Defendants, and those working in concert with Defendants, from: (a) registering, trafficking in, or using, in any manner, any Internet domain name that incorporates, in whole or in part, Plaintiffs' Marks, or any name, mark, or designation confusingly similar thereto; (b) using Plaintiffs' Marks, or any other name, mark, designation, or depiction in a manner that is likely to cause confusion regarding whether Defendants are affiliated or associated with or sponsored by Plaintiff; or (c) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of these activities. Plaintiffs also request that this Court order Defendants, and those working in concert with them, to: (a) relinquish all rights, title, and interest in all domain names under their control that are identical or confusingly similar to Plaintiffs' Marks, including the Infringing Domain Names, and to transfer those domain names to Plaintiffs, and (b) provide relevant information to Plaintiffs to ensure compliance with the permanent injunction.

## VII.   CONCLUSION

For the reasons set forth above, and as expressed in the Proposed Default Judgment lodged concurrently with Plaintiffs' Motion, the Court should enter default judgment jointly and severally against the Defendants.

DATED: January 31, 2024                    Tucker Ellis LLP


                                    By:  /s/David J. Steele
                                         David J. Steele
                                         Howard A. Kroll
                                         Steven E. Lauridsen
                                         Attorneys for Plaintiffs,
                                         META PLATFORMS, INC. (fka
                                         FACEBOOK, INC.) and INSTAGRAM, LLC

TUCKER ELLIS LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

MOTION FOR DEFAULT JUDGMENT AND MEMORANDUM IN SUPPORT OF MOTION
Case No. 3:19-cv-07071-SI