**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Liana W. Chen (Bar No. 296965)
Leah Rosa Vulić (Bar No. 343520)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@kr.law
jeff@kr.law
liana@kr.law
leah@kr.law

Attorneys for Defendant 35.CN[1]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **FACEBOOK, INC.**, et al., | Case No. 3:19-cv-07071-SI |
| Plaintiffs, | |
| v. | **DEFENDANT 35.CN'S OPPOSITION TO PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST ALL DEFENDANTS [D.E. 379]** |
| **ONLINENIC INC.**, et al., | |
| Defendants. | Date:    May 3, 2024 |
| | Time:    10:00 a.m. |
| | Ctrm:    1, 17th Floor |
| | Before:  Hon. Susan Illston |

---

[1] Counsel have been informed, and have provided notice, of a name change from Xiamen 35.com Technology Co., Ltd. to Leascend Technology Co. Ltd. (no change in corporate form). Defendant will be referred to as 35.CN or Defendant for ease of reference.

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 3

A.    The Parties ...................................................................................................... 3

B.    Procedural History ......................................................................................... 4

　　1.    The SMR and R&R Were Limited to ESI/Spoliation Issues Against OnlineNIC and ID Shield; and the Court Extended Discovery Sanctions. ................... 4

　　2.    Plaintiffs Did Not Prevail in All Aspects of the Case and Incurred Attorney's Fees for Issues There Were Not Meritorious or Not Decided. ................... 5

C.    Plaintiffs' Current Requests for an Injunction, Fees, and Statutory Damages ...... 8

　　1.    Plaintiffs' Present Proposal With Overbroad and Unworkable Terms ........ 8

　　2.    Plaintiffs' Present Proposal With Unwarranted Fees for the Entire Case ... 8

　　3.    The R&R Limited Statutory Damages, Citing Various Factors .................. 9

ARGUMENT ............................................................................................................ 9

A.    The proposed judgment should be rejected due to lack of well-pleaded allegations of certain issues and lack of personal jurisdiction over 35.CN ............................ 10

　　1.    The allegations and facts are insufficient to issue a default judgment, or at least related judgment findings, as to vicarious liability claims. ............... 10

　　2.    Default judgment is not supported by personal jurisdiction over 35.CN ... 11

B.    Plaintiffs' proposed terms for the default judgment with injunction should be rejected as certain elements are not narrowly tailored or reasonable. ............................ 12

C.    Plaintiffs' attorney's fees should be limited to spoliation issues; and Plaintiffs' request for fees for the entire case is unreasonable and should be denied ........ 15

　　1.    Plaintiffs are not entitled to fees for the entire case because fees as a civil sanction must be compensatory, rather than punitive .............................. 17

　　2.    Plaintiffs are not entitled to attorney's fees for the entire case as 35.CN's defense of the litigation was not frivolous or unreasonable. .................... 18

　　3.    Plaintiffs' attorney's fees should be limited given the dispute that underlying

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

conduct, especially by 35.CN, was willful or egregious............................ 20

    4.    The Court should use discretion and tailor fees to spoliation issues, rather than awarding Plaintiffs fees for the entire complex case. ........................ 21

    5.    Plaintiffs have failed to support any amount of reasonable attorney's fees as they have not provided adequate documentation for fees. ...................... 23

D.    The request for per-domain-name statutory damages should be reconsidered with new factors to ensure that the amount of damages is "just." .............................. 23

    1.    Facts discovered after the R&R impact what damages are "just" where Defendants did not knowingly use false information for concealment. .... 24

    2.    The amount of "just" damages should consider fair use and defenses.... 25

CONCLUSION ........................................................................................................... 25

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

**TABLE OF AUTHORITIES**

Page(s)

Cases

*Allen Organ Co. v. Kawai Musical Instruments Mfg. Co.,*
    593 F. Supp. 107 (E.D. Pa. 1984)..............................................................................11

*ANT v. McPartlin,*
    No. CV 09-7672 PSG RZX, 2010 WL 4572690 (C.D. Cal. Nov. 2, 2010)..................18

*Apple Inc. v. Allan & Assocs. Ltd.,*
    445 F. Supp. 3d 42 (N.D. Cal. 2020) ..........................................................................12

*Asia Res. Mins. PCV v. Roeslani,*
    No. CV 15-747-R, 2016 WL 11755110 (C.D. Cal. June 14, 2016)............................23

*Balsam v. Tucows Inc.,*
    627 F.3d 1158 (9th Cir. 2010)....................................................................................11

*Blumenthal Distrib., Inc. v. Comoch Inc.,*
    652 F. Supp. 3d 1117 (C.D. Cal. 2023) ................................................................18, 23

*Cali v. E. Coast Aviation Servs.,*
    178 F. Supp. 2d 276 (E.D.N.Y. 2001) ........................................................................11

*Cave Consulting Group, Inc. v. Truven Health Analytics Inc.,*
    293 F. Supp. 3d 1038 (N.D. Cal. 2018) ......................................................................17

*City of Burlington v. Dague,*
    505 U.S. 557 (1992) ....................................................................................................18

*Delta Forensic Eng'g, Inc. v. Delta V Biomechanics, Inc.,*
    No. 18CV2780DDPAFMX, 2021 WL 243323 (C.D. Cal. Jan. 22, 2021).............15, 17

*DIRECTV, Inc. v. Hoa Huynh,*
    503 F.3d 847 (9th Cir. 2007)......................................................................................10

*Dreith v.Nu Image, Inc.,*
    No. CV 05–4146 SVW (MANx), 2007 WL 9658786 (C.D. Cal. Mar. 2, 2007)...........10

//

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

*Eitel v. McCool*,

    782 F.2d 1470 (9th Cir. 1986) .................................................................................. 10

*Facebook Inc. v. Namecheap Inc.*,

    No. CV-20-00470-PHX-GMS, 2020 WL 6585534 (D. Ariz. Nov. 10, 2020) .............. 24

*Fox v. Vice,*

    563 U.S. 826 (2011) ...................................................................................... 16, 17

*Goodyear Tire & Rubber Co. v. Haeger*,

    137 S. Ct. 1178 (2017) ................................................................................... 16, 17

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,

    655 F. Supp. 3d 899 (N.D. Cal. 2023) ......................................................................... 4

*In re Latex Gloves Prods. Liab. Lit.*,

    No. MLD1148, 2001 WL 964105 (E.D. Pa. 2001) ...................................................... 11

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC*,

    68 F.4th 1203 (9th Cir. 2023) .................................................................................. 15

*Kilopass Tech., Inc. v. Sidense Corp.*,

    82 F. Supp. 3d 1154 (N.D. Cal. 2015) ...................................................................... 19

*Meta Platforms, Inc. v. New Ventures Servs. Corp.*,

    No. 3:21-cv-697-MEM, 2023 WL 5651994 (M.D. Pa. Aug. 31, 2023) ....................... 24

*My Health, Inc. v. ALR Technologies, Inc.*,

    No. 2:16-cv-00535-RWS-RSP, 2017 WL 6512221 (E.D. Tex. Dec. 19. 2017) .......... 17

*Pac. Coast Bldg. Prod., Inc. v. CertainTeed Gypsum, Inc.*,

    No. 18-CV-00346-LHK, 2021 WL 75755 (N.D. Cal. Jan. 7, 2021) ....................... 16, 19

*Price v. City of Stockton*,

    390 F.3d 1105 (9th Cir. 2004) .................................................................................. 13

*Ranza v. Nike, Inc.*,

    793 F.3d 1059 (9th Cir. 2015) .................................................................................. 12

*San Diego Comic Convention v. Dan Farr, Prods.,*

    807 F. App'x 674 (9th Cir. 2020) ............................................................................... 19

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,

    839 F.3d 1179 (9th Cir. 2016).........................................................................15

*Teetex LLC v. Zeetex, LLC*,

    No. 20-CV-07092-JSW, 2022 WL 2439176 (N.D. Cal. July 5, 2022).........................18

*United States v. Yermian*,

    No. SACV150820DOCRAOX, 2016 WL 1399519 (C.D. Cal. Mar. 18, 2016) ............10

*Verizon California Inc. v. Onlinenic, Inc.*,

    No. C 08-2832 JF (RS), 2009 WL 2706393 (N.D. Cal. Aug. 25, 2009).......................25

*Walden v. Fiore*,

    571 U.S. 277 (2014) .........................................................................................11

*Young v. Daimler AG,*

    228 Cal. App. 4th 855 (2014)...........................................................................12


Statutes

15 U.S.C. §1117...........................................................................................*passim*

35 U.S.C. §285...........................................................................................17

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1

**INTRODUCTION**

2        Defendant 35.CN is a public Chinese company that has only been subject to default

3    as an alter ego of U.S. companies. 35.CN opposes the Motion for Default Judgment filed

4    by Plaintiffs Facebook, Inc. and Instagram, LLC [D.E. 379 ("Mtn")] for these main reasons:

5        1.      Plaintiffs' proposed judgment [379-4] is not warranted due to lack of certain

6    well-pleaded allegations and lack of personal jurisdiction over 35.CN;

7        2.      Certain elements of Plaintiffs' proposed injunction [379-4] are not reasonable

8    because they still contain unworkable and not narrowly tailored injunctive relief, and

9    portions do not have adequate privacy protections for third parties;

10       3.      Plaintiffs seek excessive fees, with no billing records whatsoever, going far

11   beyond federal precedent and the Magistrate Judge's recommendation for

12   reasonable fees for only two proceedings, relating to spoliation of electronically

13   stored information ("ESI") by OnlineNIC and ID Shield, which led to the discovery

14   sanctions prior to 35.CN's appearance in this case;

15       4.      Plaintiffs seek statutory damages that are unreasonably high, especially

16   when considering new factors that make the damages amounts unjust.

17       Given that the Court adopted the Magistrate Judge's Report and Recommendation

18   ("R&R") [D.E. 225], except as to relief [D.E. 276, 291, 351], 35.CN does not intend to re-

19   litigate various issues here. Nonetheless, relevant to attorney's fees and statutory

20   damages, this has been a complex case involving novel legal issues, discussed further

21   below; and importantly, while the Court extended terminating discovery/ESI sanctions

22   against OnlineNIC/ID Shield to 35.CN, 35.CN prevailed in significant aspects of this case.

23       In particular, the R&R outlined why certain portions of Plaintiffs' previously proposed

24   judgment were unwarranted; and Plaintiffs' present proposal remedies only some of these

25   unacceptable issues, leaving others in place. For example, Plaintiffs suggest an injunction

26   [D.E. 379-4] requiring nearly unrestricted access to private domain registration records of

27   customers (*i.e.*, WHOIS records), and termination of customers within 24 hours of any

28   vague "notice" of "harm" (compared with ICANN's provisions for certain action within 7

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    days of "reasonable" notice of "actionable" harm); this is not reasonable or well-tailored.

2    Moreover, Plaintiffs' request for attorney's fees for the entire case is not warranted

3    under the Supreme Court's "but for" standard for attorney's fees, which requires that fee

4    awards be compensatory rather than punitive in nature (*i.e.*, to obtain fees for an

5    exceptional case, Plaintiffs must prove they would not have incurred the fees sought "but

6    for" the conduct that served as the basis for the exceptional case; in this case, the ESI

7    spoliation by OnlineNIC and ID Shield). The R&R's limitation of fees to only the Special

8    Master and Motion for Sanction issues (*i.e.*, fees incurred due to OnlineNIC/ID Shield's

9    ESI spoliation as related to the two identified proceedings prior to the R&R) is consistent

10    with the "but for" standard, but Plaintiffs' present proposal goes far beyond it, seeking fees

11    for issues completely unrelated to spoliation (*e.g.*, fees for preparing the complaint,

12    responding to discovery, producing documents, and engaging in settlement

13    communications and certain motion practice) or even cybersquatting (*e.g.*, fees for

14    pursuing direct participant claims and for Lanham Act claims, which were based on weak

15    vicarious liability claims). Full fees are also not warranted for "exceptional" litigation as the

16    entire defense was not frivolous or egregious, especially given the difficult issues that

17    35.CN litigated (*e.g.,* a registrar's liability related to a privacy service for domain name

18    registrations by third-party customers ("Customers"); whether conduct as a registrar and

19    privacy service constitutes use in commerce or trafficking under the Lanham Act; fact-

20    intensive alter ego claims against a Chinese public company with decades-old records

21    reflecting independence; and uncovering facts for tenuous vicarious liability claims, *i.e.,*

22    claims were based on a contract that does not exist and on faulty "notices" of harm).

23    Finally, Plaintiffs' request for statutory damages of over $3 million is unreasonably

24    high when considering new factors discovered after the Magistrate Judge's findings,

25    including that Plaintiffs did not provide "notice" of Customer infringement for 9 of the 35

26    domain names ("Domain Names") until after filing the initial Complaint, despite contrary

27    allegations therein that notice had been provided prior to the filing thereof. Because the

28    Court considered various factors of "egregious" cybersquatting on a domain-by-domain-

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  name basis, including discussing Plaintiffs' allegations of timely "notices" of harm [R&R at

2  3:8-14], these new factors should be considered in assessing damages.

3      For all of these reasons, Plaintiffs' proposed default judgment terms should be

4  denied; and any judgment should only include reasonable and tailored injunctive relief,

5  attorney's fees incurred directly as a result of spoliation (as limited by the Magistrate

6  Judge), and statutory damages that are reasonable and "just" under the circumstances.

**BACKGROUND**

8  **A.    The Parties**

9      35.CN is a publicly traded company in China that, as a limited part of its business,

10  is an ICANN-accredited domain name registrar. [D.E. 360 at 11; 174-1 ¶¶2-3.] OnlineNIC

11  is a California corporation and also an ICANN-accredited domain name registrar that has

12  done substantial independent business; while OnlineNIC leased employees from 35.CN,

13  OnlineNIC had independent management. [*See* D.E. 360 at 14 & 174-2 & Exs.] In fact,

14  public Chinese records confirmed 35.CN was separate from OnlineNIC (*e.g.*, IPO

15  certifications showed divested interests as of 2007). [D.E. 360 at 20; D.E. 174-2 Exs; D.E.

16  360-2 Exs.] There has not been any finding that 35.CN violated its registrar or other duties

17  as a company in China; rather, the default against 35.CN stems from alter ego claims.

18      Plaintiffs are a "BigTech" platform with an "infinite" budget whose apps are banned

19  in 35.CN's home country of China. [*See* D.E.189-1 ¶26.] Plaintiffs have mentioned seeking

20  over $10 million in this case. (Declaration of Karl Kronenberger ("Kronenberger Decl.") ¶9.)

21      With this action, Plaintiffs sought identifying information on OnlineNIC and ID

22  Shield's third-party Customers, which information was shielded by ID Shield's privacy

23  services. Now, in the proposed judgment, Plaintiffs seek nearly unrestricted access to

24  these private Customer WHOIS records [D.E. 379-4], yet Facebook (now rebranded as

25  "Meta"), which owns Instagram, has a history of record-breaking privacy violations,

26  including related to transferring personal data from other countries to the United States.[2]

27  _____

28  [2] For example, in the same year that Plaintiffs filed this case attacking privacy services
    provided to Customers, Facebook faced "the largest ever imposed [penalty] on any

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

**B.    Procedural History**

This case, which Plaintiffs filed in 2019, has involved complex and novel issues. While the Magistrate Judge recommended terminating sanctions for ESI and discovery issues against OnlineNIC and ID Shield, and the Court has held 35.CN liable for those sanctions, Plaintiffs have not prevailed in every aspect of the case. Moreover, there has been no direct finding of personal jurisdiction as to 35.CN, and there have been complicated merits issues that were discussed but never fully decided.

**1.    The SMR and R&R Were Limited to ESI/Spoliation Issues Against OnlineNIC and ID Shield; and the Court Extended Discovery Sanctions.**

The Special Master's Report ("SMR"), in July 2021, determined the adequacy of OnlineNIC/ID Shield's past productions to Plaintiffs and whether OnlineNIC/ID Shield destroyed or withheld data from their Kayako Ticket Database; the SMR found evidence that OnlineNIC/ID Shield failed to preserve responsive ESI, deleted ESI, and withheld ESI; and "ticket-related records" were lost. [D.E. 115 at 1, 4.][3]

The R&R was filed in March 2022, finding terminating sanctions warranted against

---

company for violating consumers' privacy and almost 20 times greater than the largest privacy or data security penalty ever imposed worldwide." *See* Press Release at https://www.ftc.gov/news-events/news/press-releases/2019/07/ftc-imposes-5-billion-penalty-sweeping-new-privacy-restrictions-facebook.

Meta was likewise fined $1.3 billion for violating E.U. data privacy rules for transferring personal data to the United States without adequate safeguards. *See Meta Fined $1.3 Billion for Violating E.U. Data Privacy Rules* (May 22, 2023) at *https*://www.nytimes.com/2023/05/22/business/meta-facebook-eu-privacy-fine.html.

Meta has also faced class action and discovery penalties, *see e.g., In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 903 (N.D. Cal. 2023) ("This case is an example of a wealthy client (Facebook) and its high-powered law firm (Gibson Dunn) using delay, misdirection, and frivolous arguments to make litigation unfairly difficult and expensive for their opponents . . . it was unusually egregious and persistent here.").

Further, Meta has even recently sued the Federal Trade Commission ("FTC") (during the pendency of this action), challenging the FTC's authority to impose privacy obligations after Facebook's violation of a prior FTC order regarding Facebook's privacy-related violations. *See Meta Platforms, Inc. v. FTC*, No. 1:23-cv-03562 (D.D.C. Nov. 29, 2023).

[3] Even assuming spoliation, the records were part of an outdated ticketing database, and any evidence, such as third-party attorney demand letters, would be superfluous. Further, there are merits issues separate from that database that could result in a defense finding, such as no secondary liability for Customers' conduct, as discussed *infra*.

1    OnlineNIC and ID Shield for discovery spoliation, discussing Rule 37 (ESI and discovery

2    sanctions). [D.E. 225 at 11, 15, 21.] Defendants objected and outlined why lesser sanctions

3    were appropriate. [*See e.g.*, D.E. 228 at 1:8-9; D.E. 238.] In October 2022, the Court

4    adopted the R&R but deferred entering judgment. [D.E. 276 (indicating the Court would

5    have required *e.g.*, Plaintiffs to supplement their request for fees with more documentation

6    to cure defects, as per the R&R, and to file a joint proposed permanent injunction after

7    meeting and conferring with Defendants); D.E. 291 (adopting R&R except as to "Relief").]

8            On November 6, 2023, the Court granted Plaintiffs' (converted) motion for summary

9    judgment ("MSJ") on the alter ego issue in a 23-page order, extending terminating

10   discovery sanctions to 35.CN. [D.E. 351; 357.] The Court ordered the parties to meet and

11   confer on the issues raised in the R&R [D.E. 351 at 23] and set this briefing schedule on

12   damages, injunctive relief, and attorney's fees. [*See* D.E. 373.] 35.CN requested a

13   potential mediation and/or a settlement conference, which did not occur. [D.E. 377.]

14           **2.      Plaintiffs Did Not Prevail in All Aspects of the Case and Incurred**

15           **Attorney's Fees for Issues That Were Not Meritorious or Not Decided.**

16           After the Second Amended Complaint ("SAC"), 35.CN appeared in this case in

17   September 2021. [D.E. 169.] Plaintiffs alleged one claim of cybersquatting and three claims

18   under the Lanham Act for secondary liability for Customer use of 35 Domain Names. *See*

19   SAC, *passim*. There has not been any final ruling upon the merits of Plaintiffs' substantive

20   claims, which raise complex issues of first impression, or relevant affirmative defenses.

21   Notably, even absent spoliation, Plaintiffs claimed, and incurred fees related to the claim

22   that, 35.CN was liable as a direct participant. (*See* SAC ¶43.C; 3/3/23 Tr. at 11:1-14.)

23           Importantly, while Plaintiffs prevailed on various issues, Defendants had meritorious

24   positions, as evidenced by the Court denying in part certain requests by Plaintiffs. For

25   example, as related to Defendants OnlineNIC and ID Shield, Plaintiffs did not prevail in the

26   following issues (despite Plaintiffs' present request for all fees against 35.CN):

27           a.      Plaintiffs' initial requests for specific injunction, fees, and damages terms,

28           which the Magistrate Judge determined went too far [*See* R&R at 33];

Case No. 3:19-cv-07071-SI                    5                    **DEF 35.CN'S OPP TO MTN FOR JUDGMENT**

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

b.    Plaintiffs' requests to compel certain documents where Plaintiffs' discovery was "overbroad and vague" [D.E. 81 at 2:1-6];

c.    Plaintiffs' requests to compel access to internal financial systems or permit deposition of a tax preparer [D.E. 104 at 1];

d.    Plaintiffs' request for an independent domain name broker and liquidator [D.E. 132:4-6; *see also* D.E. 330 at 3 (ordering Plaintiffs to re-file)].

Furthermore, and especially as related to Defendant 35.CN, this case has involved novel and complex issues. For example, Plaintiffs did not completely prevail in the following issues against 35.CN (despite Plaintiffs' seeking all fees against 35.CN):

a.    Despite extensive discovery, there were still insufficient facts to determine personal jurisdiction over 35.CN upon a motion to dismiss (meaning the parties continued to jurisdictional discovery) [D.E. 207 at 8:26-9:5];

b.    The Court also initially delayed entry of default judgment, "persuaded by the cases that 35.CN cited" [D.E. 291 at 2];

c.    Motions to seal, including as filed by 35.CN or pursuant to defense designations, were granted prior to the MSJ [*e.g.*, D.E. 207 n.4, 261].

In addition, 35.CN prevailed in portions of the parties' discovery disputes (despite Plaintiffs seeking fees for all of the discovery and other issues). For example:

a.    Magistrate Judge Tse stated 35.CN "needn't respond" or "adequately answered" certain discovery when Plaintiffs moved to compel, and that "Facebook hasn't persuaded the Court that [ICANN] communications dating back to 2002 are relevant" [D.E. 286 at 4];

b.    Likewise, Judge Tse required 35.CN to produce certain financial information only if "35.CN can produce those documents without violating Chinese law" [D.E. 286 at 2-3], which 35.CN maintained it could not do, after consulting Chinese counsel's opinion [D.E. 239-1 ¶5].

Moreover, there were important issues that were never decided, despite 35.CN's arguments that key merits issues could be resolved regardless of any terminating

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1    sanctions (including that certain merits issues did not relate to records that were subject to

2    the ESI spoliation decision and to the extent certain issues related to damages).

3         For example, in early 2023, 35.CN informed Plaintiffs of its intent to seek summary

4    judgment on the issue of lack of secondary liability for Customer conduct (*i.e.*, the basis for

5    most of the claims); Plaintiffs then quickly filed their motion on alter ego issues on the eve

6    of the parties' status conference when 35.CN planned to seek leave to file its summary

7    judgment motion; and the Court instructed 35.CN to file its motion after Plaintiffs' motion

8    was resolved. (Kronenberger Decl. ¶4); [*see also* D.E. 298; 3/3/23 Tr. at 18:17-18.] Yet, at

9    the status conference, 35.CN raised that a key contract that is an absolute prerequisite for

10   secondary liability did not exist. (Kronenberger Decl. ¶5 (3/3/23 Tr. at 13:19-21 ("That

11   agreement does not exist. It's not there. This is the 'Emperor Has No Clothes' moment.")))

12        To this day, Plaintiffs have been unable to produce this key document.

13   (Kronenberger Decl. ¶5.) The SAC essentially acknowledges that this contract does not

14   exist by alleging and relying on a *different* contract, *i.e.*, the SAC alleges secondary liability

15   stemming from OnlineNIC's "RAA" with ICANN (the Internet Corporation for Assigned

16   Names and Numbers' Registrar Accreditation Agreement) (*see* SAC ¶71 Ex. 4), despite

17   clear Ninth Circuit authority that the RAA does not permit third-party beneficiaries such as

18   Plaintiffs to bring vicarious liability claims as a matter of law. Plaintiffs have therefore

19   changed their argument to assert vicarious liability claims based on a separate OnlineNIC

20   "Registration Agreement" with ID Shield that was supposedly required by ICANN's RAA.[4]

21   However, this Registration Agreement with ID Shield does not exist because OnlineNIC

22   and ID Shield did not contract with each other; rather, OnlineNIC contracted with

23   Customers, and then ID Shield separately contracted with the Customers to provide

24   privacy services for the Customers' registrations of the Domain Names (which is reflected

25   in OnlineNIC and ID Shield's discovery responses and by the SAC Ex. 5, which provides

26   that Customers retain ownership of their Domain Names). (*See* Kronenberger Decl. ¶3.)

27   _____

28   [4] The Court glossed over this sleight of hand by Plaintiffs and allowed an allegation that
     "the agreement must exist" to suffice. [D.E. 207 at p. 10.]

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

35.CN also cast doubt on Plaintiffs' questionable theory that a domain name registrar and privacy service can use a mark in commerce or otherwise traffic in the mark, even though the Domain Names were registered and owned by third-party Customers, *i.e.*, novel questions of law involving registrar immunity issues. (Kronenberger Decl. ¶3); [*see also* D.E. 174.] In fact, in their SAC, Plaintiffs made up a definition ("Licensee"), despite the term being inconsistent with the SAC (*e.g.*, Exhibit 5 to the SAC shows that the respective Customer, and not OnlineNIC or ID Shield, owns the respective registered Domain Name, which is inconsistent with being an alleged "Licensee"). (SAC Ex. 5.)

Furthermore, Plaintiffs have incurred fees responding to discovery and producing documents, as well as engaging in settlement discussions. (Kronenberger Decl. ¶10.)

## C.    Plaintiffs' Current Requests for an Injunction, Fees, and Statutory Damages

The R&R considered and rejected Plaintiffs' prior requests for an overbroad injunction, their attorney's fees for the entire case (even at that early time), and the maximum amount of statutory damages. Plaintiffs' present proposal seeks similar relief.

### 1.    Plaintiffs' Present Proposal With Overbroad and Unworkable Terms

The R&R rejected Plaintiffs' initial requests, noting injunctions should be "narrowly tailored" and that Plaintiffs were improperly seeking to enjoin Defendants from business activities; the R&R also found proposed injunction terms "unworkable" and "unquestionably overbroad" in seeking "to enjoin Defendants not only from infringing Plaintiffs' Marks, but also from Defendants' business activities altogether." [R&R at 30:10-28.] The R&R further noted comments that relief may run afoul of privacy laws. [R&R at 31:1-4.]

Plaintiffs' present proposal does not address many of the concerns outlined in the R&R; and certain proposals essentially preclude Defendants from offering lawful privacy (or proxy) services and are overbroad, unreasonable, and unworkable, *see infra* at A.2.B.

### 2.    Plaintiffs' Present Proposal With Unwarranted Fees for the Entire Case

In discussing fees, the R&R first referenced Rule 37(b)(2), which relates to discovery sanctions. [R&R at 31:7-15.] The R&R then authorized discretionary fees under 15 U.S.C. §1117(a), which allows fees in "exceptional" cases. [R&R at 31:13-18.]

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   However, the Magistrate Judge refused recovery of Plaintiffs' attorney's fees for the

2   whole case, instead finding Plaintiffs are only entitled to a **_partial recovery_** of fees for work

3   related to "**_the proceedings before the Special Master and the Motion for Sanctions_**"

4   (*i.e.*, the spoliation issues). [R&R 32:8-14 (emphasis added).] Further, while Plaintiffs

5   sought over $2 million in fees at that time (which was for all fees, *i.e.*, broader than the

6   R&R would have awarded), it was impossible to ascertain whether the fees were for the

7   tasks covered by the Order or whether they were reasonable. [R&R at 32:14-16.]

8   However, Plaintiffs now claim they are entitled to all fees for the entire case, which

9   was already rejected in the R&R and would allow a windfall recovery for issues such as,

10  *inter alia*, filing the complaint, responding to discovery and producing documents, motions

11  practice where Plaintiffs did not prevail in all aspects, and settlement discussions.

12  Moreover, Plaintiffs have not identified any specific or even approximate amount for

13  their fees in their brief and did not provide documentation supporting any amount of fees.

14  **3.      The R&R Limited Statutory Damages, Citing Various Factors.**

15  The R&R rejected Plaintiffs' request for the maximum statutory damages under 15

16  U.S.C. §1117(d) and instead ordered a lesser amount of $3,135,000. [R&R 26:22.] While

17  the R&R found "egregious misconduct" related to the incorporation of Plaintiffs' marks or

18  similar misspellings, the Court "decline[d] Plaintiffs' invitation to find Defendants' business

19  model automatically results in a finding of willfulness." [R&R at 24:22, 25:25.] Specifically,

20  the R&R recommended $80,000 for each of 10 Domain Names incorporating confusingly

21  similar misspellings of Plaintiffs' marks; $95,000 for each of 21 Domain Names with an

22  exact spelling of marks and another commonly spelled words; and $85,000 for each of 4

23  Domain Names with an exact spelling of marks. [R&R at 27:19-28:23.] Plaintiffs now

24  propose the same damages, but new factors make those amounts unjust. (*Infra* at 23-25.)

25                          **ARGUMENT**

26  Plaintiffs' motion is too extreme in its requests. As an initial matter, the proposed

27  judgment is not supported by well-pleaded allegations for certain claims (including claims

28  based on vicarious liability) or personal jurisdiction over 35.CN. Further, (1) multiple

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

elements of Plaintiffs' proposed judgment [379-4] contain unworkable and unreasonable injunctive relief, (2) the scope of attorney's fees (with no billing records whatsoever) is unwarranted, and (3) Plaintiffs' requested statutory damages are unreasonably high.

**A.    The proposed judgment should be rejected due to lack of well-pleaded allegations of certain issues and lack of personal jurisdiction over 35.CN.**

**1.    The allegations and facts are insufficient to issue a default judgment, or at least related judgment findings, as to vicarious liability claims.**

In determining whether default judgment is appropriate, courts consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).[5] Courts take the ***well-pleaded*** factual allegations as true for liability, but "a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). Allegations are not taken as true as to damages. *See United States v. Yermian*, No. SACV150820DOCRAOX, 2016 WL 1399519, at *1 (C.D. Cal. Mar. 18, 2016); [*see also* R&R 23:22-24].

As an initial matter, Plaintiffs' proposed factual and legal findings [Mtn at 1:24; 379-4] contain inaccurate and conclusory statements that are not supported by the well-pleaded allegations or the record; and the bulk of the proposed judgment is unwarranted given the adopted R&R (on discovery, not merits, issues) and MSJ (on alter ego only).

Regarding factors (2) (merits) and (3) (complaint sufficiency), Plaintiffs' factual allegations do not support certain proposed findings. In particular, Plaintiffs' three Lanham Act claims are solely based on vicarious liability for Customers' conduct (SAC ¶¶111, 123, 135), and the cybersquatting claim is based on vicarious liability in part, claiming the "RAA" (ICANN Registrar Accreditation Agreement with OnlineNIC) provides for liability unless ID

---

[5] *But see Dreith v.Nu Image, Inc.*, No. CV 05–4146 SVW (MANx), 2007 WL 9658786, at *6 (C.D. Cal. Mar. 2, 2007) (noting *Eitel* factors may be redundant if default is a sanction).

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1   Shield disclosed the current contact information of a "licensee" (Customer) within 7 days

2   of "reasonable evidence of actionable harm." (SAC ¶71, citing Ex. 4 [RAA with ICANN]).

3   However, the Ninth Circuit has held that **the RAA does not provide for third-party**

4   **beneficiaries** as a matter of law, *i.e.*, Plaintiffs cannot enforce an RAA requirement to

5   disclose Customers' contact information. *Balsam v. Tucows Inc.*, 627 F.3d 1158, 1160-62

6   (9th Cir. 2010). Plaintiffs now try to argue that a separate OnlineNIC "Registration

7   Agreement" with ID Shield incorporated §3.7.7.3 of the RAA. (Mtn at 11.) However, the

8   SAC does not allege or attach any such contract, which does not exist because Customers

9   separately contracted with OnlineNIC and ID Shield. (*See* Kronenberger Decl. ¶5.)

10   35.CN also disputes other *Eitel* factors and issues that it will not re-litigate here but

11   raises to preserve all rights. In particular, 35.CN disputes that default was not excusable

12   neglect or that spoliated ESI prevented a resolution on the merits.[6] The amount of money

13   at stake, in relation to the seriousness of the conduct, is also significant as related to

14   statutory damages and attorney's fees; here, Plaintiffs seek over $3 million in statutory

15   damages for Customer use of 35 Domain Names and likely more than double that in fees.

16   Additionally, while the Court has found that this issue is not dispositive, 35.CN

17   disputes that ID Shield was the "registered name holder" or legal "registrant" of the Domain

18   Names or that it provided a "proxy" (versus "privacy") service.

19   Therefore, certain proposed judgment terms are not supported by the claims.

20   **2.    Default judgment is not supported by personal jurisdiction over 35.CN.**

21   "The Due Process Clause of the Fourteenth Amendment constrains a State's

22   authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571

23   U.S. 277, 283 (2014). Therefore, even if based on an alter ego relationship (which itself is

24   fact intensive), personal jurisdiction must still comport with notions of due process. *See*

25   *c.f., Cali v. E. Coast Aviation Servs.*, 178 F. Supp. 2d 276, 286 (E.D.N.Y. 2001); *In re Latex*

26   *Gloves Prods. Liab. Lit.*, No. MLD1148, 2001 WL 964105, at *6 (E.D. Pa. 2001); *c.f., Allen*

27   *Organ Co. v. Kawai Musical Instruments Mfg. Co.,* 593 F. Supp. 107, 110 (E.D. Pa. 1984)

28   ───────────
[6] Any spoliation was limited to an outdated ticketing database. [*See* D.E. 317 at 19:2].

1    (finding minimum contacts analysis of *International Shoe* rendered alter-ego principles

2    irrelevant to personal jurisdiction determination); *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F.

3    Supp. 3d 42, 51-53 (N.D. Cal. 2020) (discussing personal jurisdiction over a claimed alter

4    ego and noting jurisdiction must be reasonable). *But see Ranza v. Nike, Inc.*, 793 F.3d

5    1059, 1065 (9th Cir. 2015). Additionally, personal jurisdiction can be a time-specific inquiry.

6    *See e.g., Young v. Daimler AG,* 228 Cal. App. 4th 855, 864 n.6 (2014) ("[G]eneral

7    jurisdiction is determined . . . at the time a suit is filed.").

8        While personal jurisdiction was briefed with 35.CN's motion to dismiss, the issue

9    was not decided. [*See* D.E. 207 at 8:26-9:5.] Further, although the Court found that 35.CN

10   was an alter ego at all times relevant to the action [D.E. 351 at 22:1], finding alter ego to

11   support the extension of discovery sanctions (or decades ago prior to 2007 when there

12   was similar ownership by an individual, Mr. Gong) does not necessarily equate to contacts

13   necessary to support personal jurisdiction. For example, the MSJ Order addressed

14   connections to Mr. Gong (including 2013 and 2014 OnlineNIC tax filings and ICANN filings

15   as the CEO), but the Court also recognized that 35.CN had a new CEO. [*See* D.E. 351 at

16   10:24, 11:12-18, n.9.] Furthermore, 35.CN has provided data on independent officers and

17   directors over multiple years. [D.E.318-1 at 26-31; *see also* D.E. 351 at 11:12.]

18       Plaintiffs cite to *Ranza* (Mtn at 3 n.5) to support jurisdiction; however, that case

19   found the party was not an alter ego (despite the movant staffing a domestic co-defendant

20   with employees) and that the Netherlands provided an alternative and more convenient

21   forum. *Id.* at 1075, 1079. Like in *Ranza*, and although there was a finding of alter ego for

22   discovery sanctions, there is an insufficient basis for finding personal jurisdiction against

23   35.CN, as outlined in detail in 35.CN's motion to dismiss. [*See* D.E. 174; *see also* D.E.

24   199.] Absent jurisdiction, there is no basis for a default judgment against 35.CN.

25   **B.    Plaintiffs' proposed terms for the default judgment with injunction should be**

26   **rejected as certain elements are not narrowly tailored or reasonable.**

27       If the Court finds jurisdiction and enters a judgment, it should still reject certain

28   elements of Plaintiffs' proposal that are not supported by the claims or workable.

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

As stated in the R&R at 30:9-17: Injunctive relief should be "narrowly tailored" to remedy the specific harm "rather than 'to enjoin all possible breaches of the law.'" *See also Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004). [R&R at 30:19-31:2.] In fact, the R&R rejected Plaintiffs' initial requests for injunctive relief, noting that certain proposed injunction terms were "unworkable" and "unquestionably overbroad" in seeking "to enjoin Defendants not only from infringing Plaintiffs' Marks, but also from Defendants' business activities altogether." [R&R at 30:10-28 ("Injunctions are not vehicles for putting the other party out of business.").] The R&R further noted that relief may run afoul of privacy laws and ordered the parties to submit a joint proposal. [R&R at 31:1-4.]

Plaintiffs' present proposal does not address many of the concerns outlined in the R&R. In particular, certain proposals essentially preclude Defendants from offering lawful privacy (or proxy) services. For instance, these non-exhaustive examples of Plaintiffs' proposed judgment order [D.E. 379-4] are overbroad, unreasonable, and unworkable:

- Requiring the disclosures of third-party customer information for a domain name (*i.e.*, even if 35.CN did not own and license the domain name) "within 24 hours of a submission by Plaintiffs of notice of harm" (*i.e.,* whether notice is reasonable or harm is actionable or not, *e.g.*, even if a "notice" is sent by fax to an unworking fax machine over a holiday weekend or to counsel in a mediation brief) [*see* D.E. 379-4, Proposed Order at ¶91, subsection d] (this is in contrast to §3.7.7.3 of the RAA, which relates to disclosure of only "licensee" *i.e.*, owner contact information within 7 days to a party providing "reasonable evidence of actionable harm," and only in cases where a registrar serves as a "proxy" service for the "licensee");

- Requiring the suspension of a domain name "within 24 hours" of infringement as well as suspension of other customer domain names that are identical or confusingly similar to Plaintiffs' trademarks or used for phishing, malware, fraud, or other domain name abuse [*see id.*, subsection e] (*i.e.*, regardless of any weekend or holiday and despite the fact-specific analysis for "similar" use and "abuse" foreseeably taking additional time, including to consult with Plaintiffs and their

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

counsel, and which essentially seeks to render privacy services unlawful);

• Requiring "unrestricted WHOIS contact information (including non-public names and contact information of Defendants' customers)" to Plaintiffs or agents "as allowed by applicable privacy laws" [*see id.*, subsection f] (*i.e.*, unrestricted access to personal data, including of customers in China and other countries, with only vague privacy limits, despite probable violation of Chinese (and other) data privacy and security laws and in contravention of ICANN resources highlighting the importance of privacy laws and individual privacy rights).[7]

These are not workable or narrowly tailored proposals, especially considering the likely time needed to effectuate the actions, and Plaintiffs' past conduct of providing unreasonable "notices" of harm; for example, Plaintiffs could send fax notices to an outdated fax machine or send "notice" to 35.CN by identifying a domain name in a mediation brief or in a request for production to ID Shield's counsel, as done in this case, and then expect 35.CN to take action within 24 hours. (*See* Kronenberger Decl. ¶8.) In other words, these proposals are unworkable and would unduly restrict lawful business.

Certain proposals also run afoul of data privacy laws; and adopting Plaintiffs' terms would not only contravene current ICANN obligations but would require 35.CN to potentially violate privacy and security laws. (*See* Kronenberger Decl. ¶8.) Plaintiffs' requests for near-immediate and essentially unrestricted contact information for third-party customers is a particular concern where Plaintiffs have a history of record-breaking privacy violations, including as found by U.S. and E.U. regulators and for inadequate safeguards for personal data,[8] and as evidenced by Plaintiffs' concession that their apps are banned in China. [*See* D.E.189-1 ¶26.] Although Plaintiffs' proposal mentions being subject to privacy laws, there are no workable protections under applicable laws, including in China and other countries where customers could be based. For example, Chinese law prohibits Chinese companies (such as 35.CN) from disclosing a wide variety of data and personal

---

[7] *See e.g.,* https://www.icann.org/dataprotectionprivacy.
[8] *See supra* at 4 n.2.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

information about Chinese residents (such as potential customers) to entities outside of China (including to Plaintiffs, whose platforms are banned in China). *See e.g.*, Article 283 (formerly Article 277) of the Chinese Civil Procedure Law, the Chinese Data Security Law ("DSL"), the Cybersecurity Law, and the Personal Information Protection Law ("PIPL"), which all restrict the disclosure outside of China of the information requested by Plaintiffs in their proposed judgment. (Kronenberger Decl. ¶8.) Other privacy laws have likewise emerged in the United States and other regions where customers could reside that would limit transfer of customer data to Plaintiffs in the United States, especially in 24 hours. (*See* Kronenberger Decl. ¶8.) Even ICANN has recognized the legitimacy of privacy and proxy services to safeguard individual information[9] and has noted that it desires to strike a balance between safety and security of the internet with securing individual privacy rights.[10]

Thus, certain proposals for injunctive relief are not reasonable or workable; and 35.CN asks the Court to deny requests for injunctive relief that go beyond prohibiting infringement of Plaintiffs' registered marks (or requests a settlement conference).

**C.    Plaintiffs' attorney's fees should be limited to spoliation issues; and Plaintiffs' request for fees for the entire case is unreasonable and should be denied.**

The R&R authorized a limited scope of fees under 15 U.S.C. §1117(a), which provides for discretionary fees for "exceptional" cases where courts consider the "totality of the circumstances," *e.g.*, in the strength of the position and any considering unreasonable manner in which the case was litigated. *See Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1223 (9th Cir. 2023); *see also SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016); *Delta Forensic Eng'g, Inc. v. Delta V Biomechanics, Inc.*, No. 18CV2780DDPAFMX, 2021 WL 243323, at *2 (C.D. Cal. Jan. 22, 2021) (noting courts may consider *e.g.*, frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence); *Pac. Coast Bldg. Prod., Inc. v. CertainTeed Gypsum, Inc.*,

---

[9] https://www.icann.org/resources/pages/privacy-proxy-registration-2013-03-22-en
[10] *See* https://www.icann.org/dataprotectionprivacy.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   No. 18-CV-00346-LHK, 2021 WL 75755, at *2 (N.D. Cal. Jan. 7, 2021) (outlining review of

2   factors such as subjective bad faith or exceptionally meritless claims).

3        In discussing fees, the R&R first referenced Rule 37(b)(2), which relates to

4   discovery sanctions. [R&R at 31:7-15.] The R&R then authorized discretionary fees under

5   15 U.S.C. §1117(a), which allows fees in "exceptional" cases. [R&R at 31:13-18.]

6   Specifically, the R&R found that spoliation and cybersquatting were egregious yet declined

7   to find that Defendants' business model (*e.g.*, privacy services) automatically results in a

8   finding of willfulness under §1117. [R&R at 25-26, 32.] Further, while Plaintiffs sought over

9   $2 million in fees at that time, it was impossible to ascertain whether the fees were for the

10  tasks covered by the Order or whether they were reasonable. [*See* R&R at 32:14-16.] Now,

11  Plaintiffs have indicated seeking $10 million in this case (for fees and damages) but have

12  not provided any billing records with their motion. (Kronenberger Decl. ¶9.)

13       While 35.CN disputes that this was an "exceptional" case, the R&R also

14  recommended only partial recovery of fees limited to the Special Master and Motion for

15  Sanctions proceedings (*i.e.*, ESI issues where the sanctioned conduct was spoliation up

16  until the Motion for Sanctions and R&R, not overall defense of the lawsuit such as when

17  35.CN entered this case). [R&R at 25-26; *see also* Mtn at 18:1-15.] Plaintiffs should not be

18  entitled to fees for the entire case, or any fees after the R&R was issued, as 35.CN had

19  legitimate defenses of complex issues, and arguments were supported by Chinese records

20  and privacy laws. (*See* Kronenberger Decl. ¶6.) A limitation on fees to spoliation issues,

21  as recommended by the Magistrate Judge, is also consistent with precedent requiring the

22  "but for" standard for fee awards. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct.

23  1178, 1186 (2017); *Fox v. Vice,* 563 U.S. 826, 838-39 (2011). Moreover, and importantly,

24  sanctions should not deter a general defense of a lawsuit (as opposed to deterring ESI

25  spoliation), especially where Plaintiffs' aggressive litigation positions (*e.g.*, as addressed

26  in the R&R and Magistrate Tse's discovery order) were not always approved, and Plaintiffs

27  did not prevail in many aspects of the case as outlined herein.

28       Therefore, Plaintiffs' request for fees for the entire case is not warranted.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

**1.    Plaintiffs are not entitled to fees for the entire case because fees as a civil sanction must be compensatory, rather than punitive.**

"This Court has made clear that such a sanction, when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature." *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1186 (discussing constraints on a civil court's inherent power to sanction "bad faith"); *Fox,* 563 U.S. at 838-39 (noting the question is whether the fees would have been incurred "but for" frivolous claims); *Delta Forensic Eng'g, Inc.*, No. 18CV2780DDPAFMX, 2021 WL 243323, at *2 (applying the "but for" test in Lanham Act case and declining fees; finding conduct did not abuse the judicial process).

Specifically, a fee award that goes beyond compensating the wronged party "for losses sustained" to punish the sanctioned party for its misbehavior requires "procedural guarantees applicable in criminal cases, such as a 'beyond a reasonable doubt' standard of proof." *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1186. In other words, in civil federal cases, a court can shift only those attorney's fees that would not have been incurred but for the misconduct at issue; if an award extends further than that—to fees that would have been incurred anyway, even without the misconduct—then it crosses the boundary from compensation to punishment. *See id.*

For example, in *Fox*, a prevailing defendant sought legal expenses incurred in defending against several frivolous claims, regardless of whether the same work would have been done to contest the non-frivolous claims in the suit; but the court declined the request for total fees. *See id.* at 1186-87 (discussing *Fox*). Likewise, district courts have recognized that the "but for" standard applies to other federal statutes with fee-shifting provisions. *See, e.g., Delta Forensic Eng'g, Inc.*, No. 18CV2780DDPAFMX, 2021 WL 243323, at *2 (involving Lanham Act claims); *My Health, Inc. v. ALR Technologies, Inc*., No. 2:16-cv-00535-RWS-RSP, 2017 WL 6512221 at *6-7 (E.D. Tex. Dec. 19. 2017) (involving award of fees under 35 U.S.C. §285); *Cave Consulting Group, Inc. v. Truven Health Analytics Inc.*, 293 F.Supp.3d 1038, 1048-49 (N.D. Cal. 2018) (involving patent claims where much of the time spent litigating was applicable to both patents but the court

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

found the case exceptional only with respect to one of the two patents); *see also City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (noting the Supreme Court has long held that its case law construing what is a "reasonable" fee applies uniformly to all federal fee shifting statutes that permit a court to award reasonable attorney fees to a prevailing party).

Here, Plaintiffs cannot satisfy the "but for" standard required by the Supreme Court to show entitlement to reasonable attorney's fees for the entire case. In particular, Plaintiffs cannot recover fees for work unrelated to spoliation or other egregious conduct. For example, Plaintiffs incurred substantial fees in filing the complaint and amended versions, including for Lanham Act claims that rested on novel (and shaky) vicarious liability for third-party Customers' registration of the 35 Domain Names. Moreover, Plaintiffs incurred fees for issues such as responding to discovery, producing documents, motions practice in which Plaintiffs were not always successful, and settlement discussions. *See* Background B.2. To award Plaintiffs their entire fees would be unduly punitive and not in line with Supreme Court precedent, or in line with the Magistrate Judge's R&R as already adopted by this Court (except as to relief). Given the comments in the R&R about Plaintiffs' previously overbroad fee entries (such as for overbroad tasks like "Pleadings"), it is doubtful that Plaintiffs could support a fee request under this "but for" standard. Regardless, Plaintiffs should not be entitled to a punitive award of fees for the entire case.

## 2. Plaintiffs are not entitled to attorney's fees for the entire case as 35.CN's defense of the litigation was not frivolous or unreasonable.

While a case is not "exceptional" solely on the basis of litigation tactics, *see ANT v. McPartlin*, No. CV 09-7672 PSG RZX, 2010 WL 4572690, at *5 (C.D. Cal. Nov. 2, 2010), a case may be "exceptional" if the defendant has acted in bad faith or with willful and deliberate conduct, or where the defendants disregard the proceedings and do not appear. *See Blumenthal Distrib., Inc. v. Comoch Inc.*, 652 F. Supp. 3d 1117, 1130 (C.D. Cal. 2023); s*ee also Teetex LLC v. Zeetex, LLC*, No. 20-CV-07092-JSW, 2022 WL 2439176, at *2-*3 (N.D. Cal. July 5, 2022) (involving fees against a plaintiff who offered almost no evidence to support its claim; and noting courts awarding fees for an unreasonable manner of

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

litigation have generally pointed to egregious behavior). However, representations that are overstatements, or a court's rejection of arguments, are insufficient to merit finding a case "exceptional." *See Pac. Coast Bldg. Prod., Inc. v. CertainTeed Gypsum, Inc.*, No. 18-CV-00346-LHK, 2021 WL 75755, at *3, *5 (N.D. Cal. Jan. 7, 2021) (in rejecting claim of bad faith litigation, noting the party's arguments required careful analysis).

Here, 35.CN did not defend the case in a frivolous, unreasonable, egregious, or bad faith manner, such as failing to show up to hearings, or continuing to prosecute a case without any evidence; and 35.CN's assertion of defenses,[11] including based on Chinese records for a public company, does not equate to lack respect for the judicial system. (Kronenberger Decl. ¶6.) The general assertion of defenses and ***defending a lawsuit is not equivalent to intentional destruction/spoliation of data.***[12]

In requesting fees for the entire case, Plaintiffs rely on *San Diego Comic Convention v. Dan Farr Prods.*, 807 F. App'x 674, 676 (9th Cir. 2020); however, that case involved "exceptional conduct occur[ing] at every stage of this litigation," including failure to comply with court rules, "unreasonable" responses to the litigation, and advocacy that veered into "gamesmanship." *See also Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1164-66 (N.D. Cal. 2015) (involving "baseless" and "exceptionally meritless" ***claims by a plaintiff***; and noting award must bear some relation to the extent of misconduct). Here, the case is distinguishable given the complexity and merit to nuanced defenses. Contrary to Plaintiffs' assertions (Mtn at 21-22), a motion to dismiss, de novo review of a complex R&R, and discovery disputes (in which Plaintiffs did not always prevail), and designations to seal

---

[11] 35.CN's defense was supported by Chinese records and declarations, even if the Court noted the absence of declarations from 35.CN's current minority shareholder and OnlineNIC representatives (who 35.CN maintains were separate from 35.CN); for example, 35.CN cited to Chinese records finding 35.CN and OnlineNIC were separate and provided a declaration from 35.CN's general manager [D.E. 174 & 174-1, 360-3] and a W-2 showing that OnlineNIC had a separate employee not employed by 35.CN. [D.E. 362-2.]
[12] Plaintiffs cite to a Court summary, not what 35.CN actually stated. [*See* Mtn. at 22.] Further, the Court agreed with Defendants in certain parts of the case, and it was dissuaded by Plaintiffs on certain issues (including the scope of Plaintiffs' initial requests before the R&R). And the R&R, in a section on "Contempt of These Proceedings," specifically focused on only "willful spoliation" of database records. [D.E. 225 at 26:18-21.]

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

confidential records (including under Chinese laws and as granted in part by the Court) were not frivolous or unreasonable, especially where Plaintiffs avoided reaching the merits of their claims (and 35.CN learned of evidence that made Plaintiffs' allegations about "notices" false). Likewise, although the Court ruled for Plaintiffs on the alter ego issue, that does not mean 35.CN had a "clearly untenable" defense as to the issues 35.CN litigated. *See* Background B.2. (*Compare* Mtn at 23, citing *Pop Top* case involving a ***plaintiff's*** unreasonable case). Thus, any fees should be limited to spoliation issues up to the R&R.[13]

**3.    Plaintiffs' attorney's fees should be limited given the dispute that underlying conduct, especially by 35.CN, was willful or egregious.**

The R&R found conduct "egregious" as related to only spoliation and cybersquatting. However, a variety of factors cut against a finding that all conduct was egregious under 15 U.S.C. §1117(a), including as: (1) the Domain Names were registered on behalf of third-party Customers; (2) if not for the default, this would be a case of first impression on the issue of vicarious liability for a domain name registrar arising from alleged violations of a provision in its agreement with ICANN and ICANN-required agreements (which argument is weak for Plaintiffs given established case law precluding third-party liability under the RAA and that the supposed other contract does not exist); and (3) OnlineNIC provided Customer/registrant information to ICANN prior to the litigation and to Plaintiffs during litigation. [*See* D.E. 146 & Exs. A-C (*e.g.*, Customer's confirmation); *see also* D.E. 318-1 at ¶10 & Ex. H.] Moreover, even the R&R declined to accept Plaintiffs' argument that Defendants' business model is automatically willful. [R&R at 25:25-26.]

Therefore, there are factors mitigating OnlineNIC and ID Shield's conduct and defense being egregious. Moreover, 35.CN's defense was not egregious, especially as related to defense of complex alter ego claims. In fact, 35.CN was never found to be a direct "bad actor" but rather the alter ego of other Defendants; 35.CN was not found to have directly participated in cybersquatting or infringement, nor was it found to have violated its registrar duties (which is a small part of its business) or ICANN agreement.

---

[13] As an additional factor, Plaintiffs uniquely do not "need" compensation in sanctions.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    In other words, factors support the R&R's limitation on the scope of attorney's fees.

2    **4.    The Court should use discretion and tailor fees to spoliation issues,**

3    **rather than awarding Plaintiffs fees for the entire complex case.**

4    As an initial matter, an award of fees under 15 U.S.C. §1117(a) is discretionary.

5    Noting this, and after considering legal fees incurred by Plaintiffs for other issues in this

6    case, the Magistrate Judge refused recovery of Plaintiffs' attorney's fees for the whole

7    case, instead finding Plaintiffs are only entitled to a ***partial recovery*** of fees for work

8    related to "***the proceedings before the Special Master and the Motion for Sanctions***"

9    (*i.e.*, the spoliation issues). [R&R 32:8-14 (emphasis added).] The R&R found that

10   spoliation and cybersquatting were egregious yet declined to find that Defendants'

11   business model (*e.g.*, privacy services) automatically results in a finding of willfulness

12   under §1117. [R&R at 25-26, 32.] Further, while Plaintiffs sought over $2 million in fees at

13   that time, it was impossible to ascertain whether the fees were for the tasks covered by the

14   Order or whether they were reasonable; "Plaintiffs list[ed] fees for broad categories such

15   as 'Pleadings' and 'Motions' without any further explanation." [R&R at 32:14-16.]

16   Plaintiffs fail to show why a different scope is warranted. Plaintiffs now claim they

17   are entitled to all fees for the entire case due to "significant litigation misconduct by

18   spoliating evidence," "deleting millions of records," and "egregious" and "serial"

19   cybersquatting. [D.E. 379-4 at ¶¶72-78.] However, these arguments for a broader fee

20   award were already considered and rejected in the R&R, and the conduct giving rise to the

21   discovery sanctions was all prior to 35.CN's appearance. Plaintiffs' requests for fees for

22   the entire case would also allow a windfall recovery for issues such as, *inter alia*, filing the

23   complaint, responding to discovery and producing documents, motions practice where

24   Plaintiffs did not prevail in all aspects, and settlement discussions.

25   In fact, the limited scope is consistent with Rule 37 (relating to discovery sanctions),

26   under which Plaintiffs filed their motion for terminating sanctions and the "but for" standard

27   discussed *supra*. Thus, even though 35.CN disputes the basis for fees, any award should

28   be limited to proceedings before the Special Master and Motion for Sanctions (as outlined

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

in the R&R). Any broader award of fees would be unduly punitive and deter litigation defenses. While Plaintiffs may argue that their MSJ was necessary to extend sanctions to 35.CN, the alter ego defenses were more nuanced and complex than spoliation issues (*e.g.*, alter ego analysis involved fact-intensive review of records) and were not meritless.

As examples, although fees should be limited to the issues outlined in the R&R, the Court should at least use discretion to deny fees for matters such as:

a.    Plaintiffs' researching, drafting, and filing of the complaint and amendments;

b.    Plaintiffs' requests to compel certain documents where Plaintiffs' discovery was "overbroad and vague" [D.E. 81 at 2:1-6];

c.    Plaintiffs' requests to compel access to internal financial systems or permit deposition of a tax preparer [D.E. 104 at 1];

d.    Plaintiffs' request for a domain name broker and liquidator [D.E. 132:4-6];

e.    Plaintiffs' responses, productions, and lengthy meet-and-confer discussions relating to defensive discovery;

f.    Discovery disputes with 35.CN, including before Judge Tse and as the Court found that 35.CN adequately responded to certain requests and did not need to produce additional records for certain requests [*see e.g.*, D.E. 286];

g.    Motions to seal, especially ones that were granted [*e.g.*, D.E. 207 n.4, 261];

h.    Delay of default judgment, as agreed by the Court [*see* D.E. 291];

i.    Work spent on merits issues that were never decided, including as related to 35.CN's intended motion for partial summary judgment on the issue of lack of secondary/vicarious liability for Customer conduct (*i.e.*, the basis for most of Plaintiffs' claims), discovery relating to Plaintiffs' inadequate "notices" of harm for vicarious liability, questions about domain name registrar immunity and holding a registrar responsible for "use in commerce" and "trafficking" in Domain Names used by third parties, and liability under a "Registration Agreement" (and Plaintiffs' allegations that a different "RAA" provided vicarious liability, despite Ninth Circuit authority holding otherwise);

j.    Work related to Plaintiffs' direct participant claims;

k.    Work related to the motion to dismiss, personal jurisdiction, alter ego discovery, and the MSJ, including as those filings involved complex issues;

l.    Case management conferences and related filings; and

m.    Settlement discussions.

The Court should adopt the R&R's scope of fees (or otherwise limit fees).

**5.    Plaintiffs have failed to support any amount of reasonable attorney's fees as they have not provided adequate documentation for fees.**

A party seeking fees bears the burden of documenting the hours expended in litigation and must submit evidence supporting those hours and the rates claimed. *See Blumenthal Distrib., Inc. v. Comoch Inc.*, 652 F. Supp. 3d 1117, 1133 (C.D. Cal. 2023).

The R&R required Plaintiffs to submit additional supporting documentation for fees (as to the limited scope of awarded fees), including a description of the work, identification of attorneys performing which tasks, the number of hours, and billing rate. [R&R at 33; *see also* D.E. 276.] *See also Blumenthal Distrib., Inc. v. Comoch Inc.*, 652 F. Supp. 3d 1117, 1133 (C.D. Cal. 2023). Plaintiffs have failed to do so. This is problematic as the R&R noted that Plaintiffs' counsel's declaration was insufficiently detailed on fees. [R&R 32:14-16.] Plaintiffs have also had multiple attorneys and an "infinite" budget, and have indicated seeking $10 million in this case (involving 35 Domain Names) (Kronenberger Decl. ¶9), yet 35.CN is unable to assess the reasonableness of fees or even a rough estimate; and Plaintiffs may have waived these arguments by failing to submit documentation.

**D.    The request for per-domain-name statutory damages should be reconsidered with new factors to ensure that the amount of damages is "just."**

While Plaintiffs' well-pleaded claims are taken as true for liability purposes, that is not so for damages. *See Asia Res. Mins. PLC v. Roeslani*, No. CV 15-747-R, 2016 WL 11755110, at *1 (C.D. Cal. June 14, 2016). Therefore, even if ID Shield was determined to have "registered" the domain names for liability purposes (which Defendants disputed), the Court can consider that ID Shield was acting as a privacy (or even proxy) service for its

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  Customers, as acknowledged in the R&R, to lower the amount of statutory damages to

2  what is "just." This relates to the R&R's considerations of knowingly providing false contact

3  information to conceal infringing activities, being a "serial cybersquatter," and having an

4  attitude of contempt toward the Court or proceedings. [*See* R&R at 24.] Thus, these

5  additional factors for these considerations should be reviewed to make damages "just."

6       **1.    Facts discovered after the R&R impact what damages are "just" where**

7                **Defendants did not knowingly use false information for concealment.**

8       The R&R declined to resolve the factual dispute of whether Defendants' conduct

9  was willful and egregious due to failure to identify Customers who registered the Domain

10 Names (compared with conduct in registration of the Domain Names). [R&R at 25:14-18.]

11 Plaintiffs cite to motion to dismiss rulings. *See Facebook Inc. v. Namecheap Inc.*, No. CV-

12 20-00470-PHX-GMS, 2020 WL 6585534, at *1 (D. Ariz. Nov. 10, 2020) (WhoisGuard

13 provided "proxy service"); *Meta Platforms, Inc. v. New Ventures Servs. Corp.*, No. 3:21-cv-

14 697-MEM, 2023 WL 5651994, at *6 (M.D. Pa. Aug. 31, 2023) (website referred to "proxy

15 services"). However, defensive facts can still be considered in assessing damages.

16      The R&R relied on Plaintiffs' false allegations about sending "notices" and that ID

17 Shield failed to timely disclose Customers' contact information. [R&R at 3:8-14.] The R&R

18 also noted case law outlining various factors for awards of statutory damages, including

19 whether there was an attempt to conceal the registrant's identity. [R&R at 26:26-28.]

20      After the R&R, Plaintiffs confirmed that a significant number of their "notices" of

21 harm were not sent to Defendants until after the litigation, *see supra*, despite alleging the

22 notices were sent prior to the Complaint [SAC ¶¶97, 111, 123, 135, Prayer 5(e)] and that

23 Plaintiffs lacked any "Registration Agreement" they claimed imputed Customers' liability to

24 Defendants. [*See* D.E. 238-1 ¶6 & Ex. C; (Kronenberger Decl. ¶5).] Moreover, ID Shield's

25 legitimate privacy services weigh against intentional concealment.

26      For these reasons, there should be no (or lower) statutory damages for the 9

27 Domain Names where Plaintiffs did not provide reasonable notice of actionable harm prior

28 to the Complaint (which is the basis for Plaintiffs' main vicarious liability arguments, even

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    though there is no contract imposing liability or third-party beneficiary rights).

2    (Kronenberger Decl. ¶12.) Moreover, for 26 of the 35 Domain Names, a 20% (or other)

3    reduction is warranted from what the R&R outlined due to third-party Customers registering

4    the Domain Names, rather than Defendants being the lawful "registered domain holders"

5    or "registrants," and lack of comparison to prior "serial cybersquatter" case law. [*See* D.E.

6    318-1 at ¶10 & Ex. H; (Kronenberger Decl. ¶11).] On the last point, the R&R relied on a

7    2009 *Verizon* case cited by Plaintiffs; however, that case referred to evidence that

8    OnlineNIC "registered and used over 900,000 domain names" (compared to this case

9    involving 35 Domain Names registered and used by third-party Customers). *Verizon*

10   *California Inc. v. Onlinenic, Inc.*, No. C 08-2832 JF (RS), 2009 WL 2706393, at *1-*5 (N.D.

11   Cal. Aug. 25, 2009). That case also awarded default judgment over 15 years ago, with

12   OnlineNIC doing significant lawful business since that time, as has 35.CN in China. [See

13   D.E. 318 at 8 (outlining separate OnlineNIC and 35.CN revenue).]

14            **2.    The amount of "just" damages should consider fair use and defenses.**

15            Despite conclusory allegations of no fair use (SAC ¶¶85, 92), well-pleaded factual

16   allegations on this issue are lacking. As one example, the R&R found there was

17   "typosquatting" with the domain name "instaface.org" (R&R 27:24-27); however, the SAC

18   exhibit for that domain name shows a seemingly legitimate website in Russian that shows

19   an "IF" logo distinguishable from Instagram's logo and states "Creation of Sites,

20   OnlineStores," only using the term "Instagram" in a limited descriptive sense. (SAC Ex. 8.)

21   Because the damages are awarded on a per-domain-name basis, and the Court

22   considered various factors, including whether a Domain Name incorporated Plaintiffs'

23   marks or a misspelling, fair use should also be considered for a "just" amount of damages.

24            Finally, Defendants did not show contempt for the proceedings in this case; while

25   they disputed issues, these issues have been complex, as outlined *supra* at Background.

26                                         **CONCLUSION**

27            For these reasons, 35.CN respectfully requests that the Court deny Plaintiffs' Motion

28   for Default or alternatively order a settlement conference on these issues.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  Respectfully Submitted,

2  Dated: March 13, 2024                    **KRONENBERGER ROSENFELD, LLP**

3                                           By:   s/ Karl S. Kronenberger

4                                                 Karl S. Kronenberger

5                                           Attorneys for Defendant 35.CN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28