**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Liana W. Chen (Bar No. 296965)
Leah Rosa Vulić (Bar No. 343520)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@kr.law
jeff@kr.law
liana@kr.law
leah@kr.law

Attorneys for Defendant 35.CN[1]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **FACEBOOK, INC.**, et al.,<br><br>       Plaintiffs,<br><br>    v.<br><br>**ONLINENIC INC.**, et al.,<br><br>       Defendants. | Case No. 3:19-cv-07071-SI<br><br>**DECLARATION OF KARL S. KRONENBERGER IN SUPPORT OF DEFENDANT 35.CN'S OPPOSITION TO PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST ALL DEFENDANTS [D.E. 379]**<br><br>Date:     May 3, 2024<br>Time:    10:00 a.m.<br>Ctrm:    1, 17th Floor<br>Before:  Hon. Susan Illston |

---

[1] Defendant will be referred to as 35.CN or Defendant for ease of reference.

I, Karl S. Kronenberger, do hereby declare:

1. I am an attorney admitted to practice law before this Court. I am a partner at the law firm of Kronenberger Rosenfeld, LLP, counsel of record for Defendant Leascend Technology Co. Ltd. f/k/a Xiamen 35.com Technology Co., Ltd. ("35.CN" or "Defendant"). Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration, and if called as a witness I would testify to the facts contained in this declaration.

2. As background, my law firm Kronenberger Rosenfeld, LLP ("Kronenberger Rosenfeld") is AV-rated and has a national practice with multiple attorneys and paralegals. I dedicate my entire practice to legal issues relating to technology, digital media, and the internet, including litigation in federal court regarding cybersquatting and infringement claims. I am considered to be a leading voice regarding internet-related legal issues, and I have spoken as an internet law expert on national television news programs and on industry panels throughout the United States. I am also a co-founder of the Internet Law Leadership Summit ("ILLS"), a group of 95+ attorneys who practice in the area of internet, intellectual property, and technology law, and I manage the educational agendas for all ILLS conferences. I am a former prosecutor and Army JAG Corps officer.

3. This case has involved complex and novel legal issues. In particular, Plaintiffs raised a unique theory that a domain name registrar and privacy service can use a mark in commerce or otherwise traffic in the mark, even though the domain names were registered and owned by third-party customers; these claims rested in large part on allegations of vicarious liability for customer use of OnlineNIC and ID Shield's services.

4. In early 2023, in a meeting of counsel prior to a status conference with the Court on March 3, 2023, I informed Plaintiffs' counsel of 35.CN's intention to seek partial summary judgment on the issue of lack of vicarious liability for customer conduct, which was restated in a case management statement filed on February 24, 2023 [D.E. 298]. Shortly thereafter, Plaintiffs filed their motion on alter ego issues on the eve of the parties' March 3, 2023 status conference when 35.CN planned to seek leave to file its motion; and the Court instructed 35.CN to file its motion after Plaintiffs' motion was resolved. *See* 3/3/23

Tr. at 18:17-18.

5. At the status conference on March 3, 2023, I raised that a key contract that is a prerequisite for secondary liability did not exist. *See* 3/3/23 Tr. at 13:19-21 ("That agreement does not exist. It's not there. This is the 'Emperor Has No Clothes' moment.") OnlineNIC and/or ID Shield discovery responses also indicated that there was no written contract between them. Furthermore, the Second Amended Complaint ("SAC") does not allege or attach any "Registration Agreement" between OnlineNIC and ID Shield. To this day, Plaintiffs have been unable to produce this key document.

6. In my experience, 35.CN did not defend this entire case in a frivolous, unreasonable, egregious, or bad faith manner; and 35.CN had legitimate defenses of complicated legal and factual issues. 35.CN's assertion of defenses, including based on Chinese records for a public company, Chinese data privacy and security laws, and Chinese counsel's legal opinions, does not equate to lack of respect for the judicial system.

7. 35.CN disputes Plaintiffs' proposed default judgment [D.E. 379-4] because certain requested injunctive relief is not workable, reasonable, or narrowly tailored.

8. For example, Plaintiffs have proposed terms requiring access to private domain registration records of customers (*i.e.,* WHOIS records) and termination of customers within 24 hours of notices of harm. However, 35.CN's Chinese counsel has advised that Chinese law prohibits Chinese companies from disclosing a wide variety of data and personal information about Chinese residents to entities outside of China. *See also e.g.,* Article 283 (formerly Article 277) of the Chinese Civil Procedure Law, the Chinese Data Security Law ("DSL"), the Cybersecurity Law, and the Personal Information Protection Law ("PIPL"). Other privacy laws have likewise emerged in the United States and other regions where customers could reside that would prevent unrestricted access of data to Plaintiffs, especially within 24 hours, given the time needed to review Plaintiffs' notices.

9. Plaintiffs presently seek recovery for attorney's fees for the entire case but have not provided any billing records with their motion. Plaintiffs' counsel mentioned to me

in the past seeking over $10 million in this case for attorney's fees and damages.

10. 35.CN disputes an award of fees for the entire case, including as Plaintiffs would have incurred attorney's fees that were not related to spoliation issues. As just limited examples, Plaintiffs would have incurred fees in responding to 35.CN's discovery requests and producing documents and engaging in settlement discussions.

11. Plaintiffs also seek statutory damages on a per-domain-name basis for the 35 domain names outlined in the SAC. However, for 26 of the 35 domain names, 35.CN suggests a 20% reduction from what Magistrate Van Keulen listed in her Report and Recommendation ("R&R") due to the fact that third-party customers of OnlineNIC and ID Shield registered the domain names as evidenced by the list of customers produced to Plaintiffs. Specifically, 35.CN suggests the following damages per domain name, using the domain name numbering from the SAC, and the pre- and post-reduction amounts:

| # | Domain | Pre | Post |
|---|---|---|---|
| 1 | 1. buyinstagramfans.com | $95,000 | $76,000 |
| 2 | 3. facebook-alkalmazasok.net | $85,000 | $68,000 |
| 3 | 5. facebook-fans-buy.com | $95,000 | $76,000 |
| 4 | 6. facebook-login-signup.com | $95,000 | $76,000 |
| 5 | 7. facebook-mails.com | $95,000 | $76,000 |
| 6 | 8. facebook-pass.com | $95,000 | $76,000 |
| 7 | 9. facebookphysician.com | $95,000 | $76,000 |
| 8 | 10. facebook-pw.com | $85,000 | $68,000 |
| 9 | 11. facebookvideodownload.net | $95,000 | $76,000 |
| 10 | 17. findfacebookid.com | $95,000 | $76,000 |
| 11 | 18. hackfacebook-now.com | $95,000 | $76,000 |
| 12 | 19. hackingfacebook.net | $95,000 | $76,000 |
| 13 | 20. hacksomeonesfacebook.com | $95,000 | $76,000 |
| 14 | 21. iiinstagram.com | $85,000 | $68,000 |
| 15 | 22. instaface.org | $80,000 | $64,000 |
| 16 | 23. instagram01.com | $95,000 | $76,000 |
| 17 | 25. Iamsocialfacebook.net | $95,000 | $76,000 |
| 18 | 26. learntohackfacebook.com | $95,000 | $76,000 |
| 19 | 27. login-Instargram.com | $80,000 | $64,000 |
| 20 | 28. m-facebook-login.com | $95,000 | $76,000 |
| 21 | 29. ofacebooklogin.com | $95,000 | $76,000 |
| 22 | 30. singin-Instargram.com | $80,000 | $64,000 |
| 23 | 31. trollfacebook.com | $95,000 | $76,000 |
| 24 | 32. watch-facebook.com | $95,000 | $76,000 |
| 25 | 33. www-facebook-login.com | $95,000 | $76,000 |
| 26 | 34. www-facebook-pages.com | $95,000 | $76,000 |
| 27 | | $2,395,000 | $1,916,000 |

12. Furthermore, in a June 16, 2022 email to me, Plaintiffs' counsel outlined that a significant number of their "notices" of harm (*i.e.*, notice to provide information

identifying third-party customers to avoid liability for customer domain name registrations and which forms the basis for Plaintiffs' vicarious liability arguments) were actually sent to OnlineNIC and ID Shield's counsel after the Complaint was filed. Specifically, Plaintiffs' counsel stated 9 notices were provided through a mediation brief and a discovery request to counsel (request for production of documents), despite Plaintiffs' allegations that "notices" were sent prior to the Complaint [*see* SAC ¶¶97, 111, 123, 135, Prayer 5(e)]. Regarding these 9 domain names, 35.CN submits that there should be no statutory damages at all because there was never a request for OnlineNIC to disclose customer contact information. These domain names are as follows, using the numbering from the SAC:

| # | Domain |
|---|---|
| 1 | 2. face2bouk.com |
| 2 | 4. facebook-chat-emoticons.com |
| 3 | 12. facebux2.com |
| 4 | 13. facekhook.com |
| 5 | 14. facessbook.com |
| 6 | 15. faecb00k-page.com |
| 7 | 16. faecbook-page.com |
| 8 | 17. findfacebookid.com |
| 9 | 24. instakram.com |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 13th day of March 2024 in San Francisco, CA.

By: s/ Karl S. Kronenberger
Karl S. Kronenberger

Case No. 3:19-cv-07071-SI                4                DECL. OF K. KRONENBERGER ISO 35.CN'S OPP TO PLTFS' MTN FOR DEFAULT