1   TUCKER ELLIS LLP
    David J. Steele SBN 209797
2   david.steele@tuckerellis.com
    Howard A. Kroll SBN 100981
3   howard.kroll@tuckerellis.com
    Steven E. Lauridsen SBN 246364
4   steven.lauridsen@tuckerellis.com
    515 South Flower Street, Forty-Second Floor
5   Los Angeles, CA 90071
    Telephone:      213.430.3400
6   Facsimile:      213.430.3409

7   Attorneys for Plaintiffs,
    META PLATFORMS, INC. f/k/a FACEBOOK, INC. and
8   INSTAGRAM, LLC

9                       **UNITED STATES DISTRICT COURT**

10                     **NORTHERN DISTRICT OF CALIFORNIA**

11  FACEBOOK, INC. and INSTAGRAM, LLC          Case No. 3:19-cv-07071-SI

12                          Plaintiffs,         **PLAINTIFFS' REPLY MEMORANDUM OF**
                                                **POINTS AND AUTHORITIES IN SUPPORT**
13            v.                                **OF MOTION FOR DEFAULT JUDGMENT**
                                                **AGAINST ALL DEFENDANTS**
14  ONLINENIC, INC., DOMAIN ID SHIELD
    SERVICE CO., LIMITED, and XIAMEN           Date:        May 3, 2024
15  35.COM INTERNET TECHNOLOGY CO.,            Time:        10:00 a.m.
    LTD.                                       Courtroom:   1 – 17th Floor
16
                            Defendants.
17                                             Hon. Susan Illston

18

19

20

21

22

23

24

25

26

27

28

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     THE COURT HAS PERSONAL JURISDICTION OVER 35.CN. ............................. 3

III.    PLAINTIFFS' CLAIMS IN THE SAC ARE MERITORIOUS AND WELL FOUNDED ....... 4

        A.    Plaintiffs' cybersquatting claims in the SAC are well pleaded. .................... 4

        B.    Plaintiffs' Lanham Act claims in the SAC are well pleaded. ......................... 5

IV.     PLAINTIFFS ARE ENTITLED TO THE RECOMMENDED STATUTORY DAMAGES. .... 6

V.      PLAINTIFFS ARE ENTITLED TO THEIR REASONABLE ATTORNEYS' FEES. ............. 8

        A.    This is an exceptional case because Defendants' cybersquatting was egregious. ......... 8

        B.    This is an exceptional case because Defendants litigated in an unreasonable manner. 10

        C.    The "but-for test" may not apply and, even if applied, a full fee award is warranted. . 12

        D.    Plaintiffs need not submit billing records at this time. ................................. 14

VI.     THE PROPOSED PERMANENT INJUNCTION IS REASONABLE AND JUST. ............. 14

VII.    CONCLUSION ................................................................................................. 15

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

# TABLE OF AUTHORITIES

**Cases**

*Am. Career Coll., Inc. v. Medina*, No. CV 21-00698-PSG (Skx)
2023 WL 8000273 (C.D. Cal. October 6, 2023)......................................................................... 8

*Apple Inc. v. Allan & Assocs. Ltd.*
445 F. Supp. 3d 42 (N.D. Cal. 2020) ................................................................................. 3, 4

*Apple Inc. v. Samsung Elecs. Co.*
888 F. Supp. 2d 976 (N.D. Cal. 2012) ................................................................................. 10

*Autodesk, Inc. v. Castillo*, No. CV 13-00214 EJD (PSG)
2014 WL 12712236 (N.D. Cal. Mar. 5, 2014)........................................................................ 14

*Balsam v. Tucows Inc.*
627 F.3d 1158 (9th Cir. 2010) ........................................................................................... 6

*Cali v. E Coast Aviation*
178 F. Supp. 2d 276 (E.D.N.Y. 2001) .................................................................................. 4

*Chambers v. NASCO*
501 U.S. 32 (1991)........................................................................................................... 13

*Delta Forensic Eng'g, Inc. v. Delta V Biomechanics, Inc.*, No. 18-cv-2780 DDP (AFMx)
2021 WL 243323 (C.D. Cal. Jan. 22, 2021) ......................................................................... 13

*Derek Andrew, Inc. v. Poof Apparel Corp.*
528 F.3d 696 (9th Cir. 2008) ............................................................................................. 9

*Dr. JKL Ltd. v. HPC IT Educ. Ctr.*
749 F. Supp. 2d 1038 (N.D. Cal. 2010) ................................................................................ 8

*Eitel v. McCool*
782 F.2d 1470 (9th Cir. 1986) ....................................................................................... 4, 6, 8

*Facebook, Inc. v. Namecheap, Inc.*, No. CV-20-00470-PHX-GMS
2020 WL 6585534 (D. Ariz. Nov. 10, 2020)........................................................................ 5

*Geddes v. United Financial Group*
559 F.2d 557 (9th Cir. 1977) ...................................................................................... 1, 4, 6

*Goodyear Tire & Rubber Co. v. Haeger*
581 U.S. 101 (2017).................................................................................................. 2, 12, 13

*Hashimoto v. Dalton*
118 F.3d 671 (9th Cir. 1997) ............................................................................................. 12

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

*In re Latex Gloves Product Liability Litigation*, No. MDL 1148
    2001 WL 964105 (E.D. Pa. Aug. 22, 2001) ........................................................................... 4

*In re PersonalWeb Techs., LLC et al., Pat. Litig.*, No. 18-MD-02834-BLF
    2020 WL 5910080 (N.D. Cal. Oct. 6, 2020)........................................................................ 12

*Indep. Elec. Supply Inc. v. Solar Installs, Inc.*, No. 4:18-CV-01435-KAW
    2018 WL 6092800 (N.D. Cal. Nov. 21, 2018) ....................................................................... 4

*Intell. Ventures I LLC v. Trend Micro Inc.*
    944 F.3d 1380 (Fed. Cir. 2019).......................................................................................... 10

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC*
    68 F.4th 1203 (9th Cir. 2023) ........................................................................................... 13

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*
    235 Cal.App.3d 1220 (1991) ............................................................................................... 3

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*
    726 F.3d 1359 (Fed. Cir. 2013).......................................................................................... 14

*Mossimo Holdings LLC v. Haralambus*, No. CV 14-05912 DDP JEMX
    2015 WL 476298 (C.D. Cal. Feb. 3, 2015)........................................................................... 3

*OCM Grp. USA Inc. v. Lin s Waha Int'l Corp*, No. 2:19-CV-08917-SB-KS
    2021 WL 3941414 (C.D. Cal. Aug. 2, 2021) ...................................................................... 11

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*
    572 U.S. 545 (2014) ................................................................................................... 2, 8, 13

*Oplus Techs., Ltd. v. Vizio, Inc.*
    782 F.3d 1371 (Fed. Cir. 2015).......................................................................................... 12

*Philip Morris USA Inc. v. Liu*
    489 F. Supp. 2d 1119 (C.D. Cal. 2007) ............................................................................. 14

*Ranza v. Nike, Inc.*
    793 F.3d 1059 (9th Cir. 2015) ........................................................................................ 1, 3

*San Diego Comic Convention v. Dan Farr Productions*
    807 Fed. Appx. 674 (9th Cir. 2020).................................................................... 2, 11, 12, 13

*Solar Installs, Inc.*
    2018 WL 6092800 (N.D. Cal. Nov. 21, 2018) ..................................................................... 3

*Twitch Interactive, Inc. v. Johnston*, No. 16-CV-03404-BLF
    2019 WL 3387977 (N.D. Cal. July 26, 2019)...................................................................... 9

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

*Yuga Labs, Inc. v. Ripps*, No. CV 22-4355-JFW(JEMX)
  2023 WL 7089922 (C.D. Cal. Oct. 25, 2023) .............................................................. 9, 10, 11

**Statutes**

15 U.S.C. § 1114(1)(a) .................................................................................................... 6

15 U.S.C. § 1117(a) .............................................................................................. passim

15 U.S.C. § 1117(d) ............................................................................................. 3, 8, 15

15 U.S.C. § 1125(a)(1) .................................................................................................... 6

15 U.S.C. § 1125(c) ......................................................................................................... 6

15 U.S.C. § 1125(d) .............................................................................................. 4, 5, 6

**Other Authorities**

Civil L.R. 7-5(b) ............................................................................................................. 7

Fed. R. Civ. P. 56(e) ...................................................................................................... 7

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Leascend Technology Co. Ltd. f/k/a Xiamen 35.com Internet Technology Co., Ltd.'s ("35.CN") opposition (ECF No. 384 ("Opp."))[1] is replete with improper attempts to re-litigate issues previously decided by the Court and foreclosed by 35.CN's default. For example, 35.CN ignores the Court's alter ego finding by claiming 35.CN is "a Chinese public company with decades-old records reflecting independence" (Opp. at 8:20-21),[2] OnlineNIC "has done substantial independent business" and "had independent management" (*id.* at 9:10-13), "public Chinese records confirmed 35.CN was separate from OnlineNIC" (*id.* at 9:14), and "OnlineNIC had a separate employee not employed by 35.CN" (*id.* at 25 n.11). Despite the Court's ruling that 35.CN is the alter ego of the OnlineNIC Defendants "under a single business enterprise theory" (ECF No. 357 ("SJ Order") at 22:28), 35.CN now contests whether the Court has personal jurisdiction over it. Opp. at 17:20-18:24. Yet, it is well established that personal jurisdiction can extend from a domestic entity to a foreign entity upon an alter ego finding. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015).

Similarly, 35.CN seeks to relitigate whether ID Shield is the registrant of the Infringing Domain Names (Opp. 17:16-18), thus challenging the allegations of the Second Amended Complaint (ECF No. 109 ("SAC") ¶¶ 56-57). 35.CN's contention is contrary to the prior findings of the Court and must be rejected again. ECF No. 207 ("Order Denying Motion to Dismiss") at 9:21-26; ECF No. 276 ("Order Adopting R&R") at 11:12-26. 35.CN's argument must also be rejected because the well-pleaded allegations in the SAC are taken as true. *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). Furthermore, 35.CN's argument contradicts the admission by the OnlineNIC Defendants (35.CN's alter ego) that ID Shield is listed as the registrant in the WHOIS directory. *See* SAC ¶ 27; ECF No. 88 ¶ 27 ("Answer").

35.CN's challenge to Judge van Keulen's recommended statutory damages award of $3,135,000 is equally unavailing because it is also based on the previously litigated and rejected claim that "third party

---

[1] OnlineNIC, Inc. ("OnlineNIC") and Domain ID Shield Service Co. Ltd. ("ID Shield") (collectively, the "OnlineNIC Defendants") have joined in 35.CN's Opposition. ECF No. 385.

[2] Where applicable, Plaintiffs' pin cites refer to the Clerk's blue ECF header page number.

customers," and not ID Shield, registered the Infringing Domain Names. Opp. at 31:2-5. 35.CN further suggests "there should be no (or lower) statutory damages" for nine of the Infringing Domain Names because "Defendants did not knowingly use false information for concealment." *Id.* at 30:6-28. However, Judge van Keulen based the recommended statutory damages award on other factors, expressly declining to consider concealment as a factor. *See generally* R&R at 24:1-28:23.

The remaining objections to Plaintiffs' Motion for Default Judgment ("Motion") fare no better. 35.CN argues that Plaintiffs' request for all of their reasonable attorneys' fees is improper because the "but-for test" described in *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109-110 (2017) limits any attorneys' fees award to those causally resulting from Defendants' spoliation of evidence. Opp. at 24:5-18. However, *Goodyear*'s "but-for test" is not applicable to the Lanham Act, which requires a different standard for awarding attorneys' fees than under the court's inherent authority. *See* 15 U.S.C. § 1117(a); *San Diego Comic Convention v. Dan Farr Productions,* 807 Fed. Appx. 674, 676 (9th Cir. 2020) (holding district court need not articulate a causal connection in awarding fees). And even if the "but-for test" were applicable, the Supreme Court in *Goodyear* recognized that "in exceptional cases, the but-for standard permits a trial court to shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop." *Goodyear*, 581 U.S. at 110-11. This is an exceptional case because Defendants are egregious cybersquatters who registered the Infringing Domain Names with a bad faith intent to profit in violation of the ACPA. ECF No. 225 ("R&R") at 32:5-8. This is also an exceptional case because Defendants spoliated evidence and persistently engaged in litigation misconduct which unnecessarily prolonged this case, increased Plaintiffs' fees, and burdened the Court. *Id.; see also id.* at 17:1-10. Under the "totality of circumstances" analysis required by *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014), Plaintiffs are entitled to their reasonable attorneys' fees for the entire exceptional case.

Finally, 35.CN claims that Plaintiffs' proposed permanent injunction (ECF No. 379-4 ("PI")) does not address concerns raised by Judge van Keulen that Plaintiffs' previous proposed permanent injunction was overbroad and unworkable. Opp. at 14:22-23. 35.CN fails to inform the Court, however, that all of the terms rejected by Judge van Keulen are not included in the current PI.

The Court should thus grant Plaintiffs' Motion, adopt Judge van Keulen's recommendation and

award statutory damages of $3,135,000 under 15 U.S.C. § 1117(d) (R&R at 28:19-23), find that this is an exceptional case under 15 U.S.C. § 1117(a) entitling Plaintiffs to an award of all their reasonable attorneys' fees, and enter the PI against all Defendants.

## II.    THE COURT HAS PERSONAL JURISDICTION OVER 35.CN.

35.CN claims that the Court has not yet decided the issue of personal jurisdiction over 35.CN. Opp. at 18:8-17. But this argument ignores the Court's alter ego findings and controlling case law. *See Ranza*, 793 F.3d at 1073. The Court found "that 35.CN is and at all times relevant to this action has been the alter ego of the OnlineNIC defendants under a single business enterprise theory." SJ Order at 22:27-28. As such, the Defendants act as a single entity in which "there is really only one corporation." *See Mossimo Holdings LLC v. Haralambus*, No. CV 14-05912 DDP JEMX, 2015 WL 476298, at *3 (C.D. Cal. Feb. 3, 2015); *see also Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal.App.3d 1220, 1249-50 (1991) ("though there are two or more personalities, there is but one enterprise"). Because 35.CN is a single business enterprise with OnlineNIC, a California corporation, OnlineNIC's contacts with California are properly imputed to 35.CN. *See Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 51-52 (N.D. Cal. 2020) ("[U]nder the federal law governing the exercise of personal jurisdiction, if a corporation is the alter ego of another, 'the Court may "pierce the corporate veil" jurisdictionally and attribute "contacts" accordingly.'") (citations omitted).

35.CN attempts to distinguish *Ranza*, arguing that the Court did not find NEON, a Dutch subsidiary of Nike, to be the alter ego of Nike. Opp. at 18:18-23. But that finding does not obviate the rule laid down in *Ranza* that upon an alter ego finding, "the parent's contacts do become relevant to the subsidiary, and vice versa." *Ranza*, 793 F.3d at 1073 n.7. Since the Court found that 35.CN is the alter ego of OnlineNIC, a California corporation, it is reasonable for the Court to exercise personal jurisdiction over 35.CN. *See Solar Installs, Inc.*, 2018 WL 6092800, at *4-9 (N.D. Cal. Nov. 21, 2018) (applying *Ranza*, exercising personal jurisdiction over alleged alter ego based on imputed contacts).

Next, 35.CN asserts that personal jurisdiction must comport with due process (Opp. at 17:24) but does not explain how exercising personal jurisdiction over 35.CN under the single business enterprise theory would fail to meet due process standards or cite any case law to support its position. The Court found 35.CN is the alter ego of the OnlineNIC Defendants for purposes of liability and, therefore, the

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Court's exercise of personal jurisdiction over 35.CN on this same basis is appropriate. *See Indep. Elec. Supply Inc. v. Solar Installs, Inc.*, No. 4:18-CV-01435-KAW, 2018 WL 6092800, at \*4 (N.D. Cal. Nov. 21, 2018) ("[T]he standard for personal jurisdiction under an alter ego theory is lower than the standard for liability under an alter ego theory . . . .").[3]

## III. PLAINTIFFS' CLAIMS IN THE SAC ARE MERITORIOUS AND WELL FOUNDED.

35.CN urges the Court to consider several merit-based arguments challenging the allegations of the SAC and, significantly, "disputes that default was not excusable neglect or that spoliated ESI prevented a resolution on the merits." Opp. at 17:11-12; *see also id.* at 10 n.3 ("the records were part of an outdated ticketing database . . . Further, there are merits issues separate from that database that could result in a defense finding"). 35.CN's arguments contradict the Court's findings that Plaintiffs were prejudiced by Defendants' spoliation and should once again be rejected by the Court. *See* R&R at 18:2-15, 19:13-15 (finding Defendants' spoliation caused prejudice and irreparable harm to Plaintiffs by impairing Plaintiffs' ability to go to trial); Order Adopting R&R at 11:8-26; *see also* SJ Order at 19:1-14 (finding 35.CN's "position directly contravenes the special master's findings, as adopted by both Judge van Keulen and this Court").[4] Instead, and in light of Defendants' default, the Court should accept as true Plaintiffs' well-pleaded allegations. *Geddes*, 559 F.2d at 560.

### A. Plaintiffs' cybersquatting claims in the SAC are well pleaded.

The only basis upon which 35.CN argues Defendants are not liable under the ACPA[5] is that

---

[3] Indeed, the cases 35.CN cites (Opp. at 17:25-18:5) largely support a holding that due process has been satisfied based on the Court's alter ego finding. *See Cali v. E Coast Aviation*, 178 F. Supp. 2d 276, 286 (E.D.N.Y. 2001) (to prevail on an alter ego theory for jurisdictional purposes, a party must demonstrate that the corporation acts as "a single functional or organic identity"); *In re Latex Gloves Product Liability Litigation*, No. MDL 1148, 2001 WL 964105, at \*6 (E.D. Pa. Aug. 22, 2001) (due process satisfied because of the virtual "total interrelationship of the corporate family"); *Apple*, 445 F. Supp. 3d at 51-52 (allowing personal jurisdiction to be exercised if alter ego is found).

[4] Given Defendants' intentional spoliation of evidence which prejudiced Plaintiffs, the first, sixth, and seventh *Eitel* factors (whether Plaintiff will be prejudiced absent a default judgment, whether the default was due to excusable neglect, and the likelihood of a decision on the merits) have been satisfied. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

[5] In its Opposition, 35.CN does not address (and thus does not dispute) that Plaintiffs' Marks are distinctive and famous, that the Infringing Domain Names are identical or confusingly similar to and/or dilutive of Plaintiffs' Marks, or that Defendants acted with a bad faith intent to profit from Plaintiffs' Marks under the ACPA. 15 U.S.C. § 1125(d)(1)(A)(i), (ii)(I), (ii)(II).

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

ID Shield was neither the "registered name holder" nor legal "registrant" of the Infringing Domain Names. Opp. at 17:16-18. 35.CN is wrong. Indeed, this is an argument that 35.CN repeatedly has made to this Court and lost. *See, e.g.*, ECF No. 174 (35.CN's "Motion to Dismiss SAC") at 21:5-14; Order Denying Motion to Dismiss at 9:21-26; ECF No. 213 (35.CN's Motion to Bifurcate) at 8:3-10; ECF No. 226 (Order Denying Motion to Bifurcate) at 5:7-6:12; ECF No. 238 ("35.CN's Motion for Evidentiary Hearing") at 3 n.1; ECF No. 252 ("Tr. of Hearing on Motions for De Novo Review") at  4:1.[6]

Contrary to 35.CN's contentions, the Court has found that the SAC adequately pleads all of the elements for a cybersquatting claim under the ACPA. Order Denying Motion to Dismiss at 9:9-10:6. The SAC pleads that ID Shield is listed as the registrant in the WHOIS directory for each of the Infringing Domain Names (SAC ¶¶ 56-57) and attaches as Exhibit 7 the WHOIS directory for the Infringing Domain Names to support this allegation. And the OnlineNIC Defendants admit that ID Shield is listed as the registrant in the WHOIS directory. *See* SAC ¶ 27; Answer ¶ 27. Finally, case law and ICANN documentation confirm that the registrant in the WHOIS directory is the registrant under the ACPA.[7] *See, e.g., Facebook, Inc. v. Namecheap, Inc.*, No. CV-20-00470-PHX-GMS, 2020 WL 6585534, at *3 (D. Ariz. Nov. 10, 2020) (finding plausible Plaintiffs' allegations that defendant was the registrant of the domain names because it was listed as registrant in the WHOIS directory); ICANN's Registration Accreditation Agreement ("RAA"), "Specification on Privacy and Proxy Registrations" § 1.3 (SAC Ex. 4 at 59) ("the Registered Name Holder's contact information is displayed in the Registration Data Service (Whois) or equivalent services"). 35.CN's claim that the SAC did not properly plead Defendants' violations of the ACPA should be rejected by the Court.

**B.    Plaintiffs' Lanham Act claims in the SAC are well pleaded.**

35.CN argues Defendants are not liable under the Lanham Act[8] because Plaintiffs have not

---

[6] 35.CN also argues that "novel questions of law involving registrar immunity issues" arise because "the Domain Names were registered and owned by third-party Customers." Opp. at 14:3-4. Since the Infringing Domain Names were registered by ID Shield and not third parties, this purported "novel" issue is moot.

[7] Liability under the ACPA is appropriate "only if that person is the domain name registrant or that registrant's authorized licensee." 15 U.S.C. § 1125(d)(1)(D).

[8] 35.CN does not address (and thus does not dispute) that Plaintiffs' marks are protectable, that the Infringing Domain Names created a likelihood of confusion and were dilutive of Plaintiffs' marks

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

introduced into evidence the registration agreement between ID Shield and OnlineNIC. Opp. at 13:8-26, 17:6-9. Since ID Shield is the registrant of the Infringing Domain Names, however, it necessarily entered into a registration agreement with OnlineNIC that contained the language found in § 3.7.7.3 because the RAA requires as much. *See* RAA § 3.7.7 (SAC Ex. 4 at 16); Order Denying Motion to Dismiss at 10:24-11:5.[9]

35.CN also attacks a straw man not advanced in the SAC, pointing to *Balsam v. Tucows Inc.*, 627 F.3d 1158 (9th Cir. 2010) and arguing again that Plaintiffs' claims fail because the RAA does not create any third-party rights. Opp. 16:25-17:9; *see also* Motion to Dismiss at 9:4-7. In *Tucows*, however, Balsam sought to enforce § 3.7.7.3 under the RAA, and not under the registrar's registration agreement. 627 F.3d at 1160-61 ("Balsam acknowledges that all of his claims are dependent on his status as a third party beneficiary to the RAA."). Therefore, *Tucows* is inapplicable here where Plaintiffs seek to enforce the ICANN-required provision in OnlineNIC's registration agreement, and not the RAA. *Id.* at 1162 n.2 (noting that Balsam did "not allege that Tucows failed to enter into a separate agreement with the registered name holder, in violation of ¶ 3.7.7 of the RAA" and implying plaintiff's proper recourse was to enforce the mandated language in the registration agreement, not the RAA itself).

Thus, 35.CN's claim that the SAC did not properly plead Defendants' violations of the Lanham Act is contrary to the Court's holding that "the trademark claims are adequately pled" (Order Denying Motion to Dismiss at 11:6) and should again be rejected by the Court.[10]

## IV.   PLAINTIFFS ARE ENTITLED TO THE RECOMMENDED STATUTORY DAMAGES.

35.CN challenges Judge van Keulen's recommended statutory damages award of $3,135,000 for Defendants' violations of the ACPA (R&R at 28:19-20), claiming that "new factors" or "facts discovered

---

(15 U.S.C. §§ 1114(1)(a), 1125(a)(1), 1125(c)), or that ID Shield failed to timely respond to reasonable evidence of actionable harm (RAA § 3.7.7.3 (SAC Ex. 4 at 16-17)).

[9] 35.CN implies it is Plaintiffs' fault that Plaintiffs did not provide to the Court a document Defendants were required to have but did not produce in discovery. Opp. at 13:12, 17:8-9. The fault, however, lies with Defendants for failing to produce a document that Defendants are obligated to have under the RAA.

[10] The second, third, and fifth factors under *Eitel* ("the merits of plaintiff's substantive claim," "the sufficiency of the complaint," and "the possibility of a dispute concerning material facts" (782 F.2d at 1471-72)) have also been satisfied because the Defendants are in default and the well-pleaded allegations in SAC are taken as true (*Geddes*, 559 F. 2d at 560).

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

1    after the R&R" require a 20% reduction to ensure that the amount of damages is "just." Opp. at 29:22-31:6.

2    35.CN is wrong.[11]

3    First, 35.CN claims that a 20% reduction is warranted by arguing once again that "third party

4    customers" registered the Infringing Domain Names and not the Defendants. *Id*. at 31:2-6. This is not a

5    "new factor" and has already been considered and rejected by this Court. Order Adopting R&R

6    at 11:12-26. Rather, it is yet another example of 35.CN's recalcitrant disregard of the Court's rulings.

7    Second, 35.CN asserts that, for nine Infringing Domain Names, Plaintiffs failed to provide

8    reasonable evidence of actionable harm as required under § 3.7.7.3 and, thus, there could be no attempt

9    by Defendants to conceal the registrant's identity. Kronenberger Decl. ¶ 12 ("35.CN submits that there

10   should be no statutory damages at all because there was never a request for OnlineNIC to disclose

11   customer contact information."); Opp. at 30:16-31:2. Again, this is not a "new factor." Judge van Keulen

12   expressly declined to consider concealment as a basis for the Court's recommended statutory damages

13   award, and instead based the recommendation on other factors. R&R at 25:14-26:1 (declining to find

14   concealment as evidence of willfulness and stating that, "[n]evertheless, for the reasons set forth above,

15   the Court concludes that Defendants' conduct was egregious"); *see generally* R&R at 24:1-28:23

16   (recommending statutory damages award based on factors other than concealment). Moreover, this is not

17   a "new factor" because Defendants previously claimed that reasonable evidence of actionable harm was

18   not provided, and the Court was not persuaded. 35.CN's Motion for Evidentiary Hearing at 4:13-15; Tr.

19   of Hearing on Motions for De Novo Review at 4:1 ("I see no need for an evidentiary hearing").

20   Finally, 35.CN contends that one of the Infringing Domain Names does not infringe because of

21   the fair use doctrine. Opp. at 31:15-23. Yet, Defendants provide no admissible evidence demonstrating

22   that the registration or use of instaface.org was fair use. The Court should thus reject this claim, as well

23

24   _____

[11] Many of 35.CN's arguments in support of its request to reduce the statutory damages award are actually

25   contained in Mr. Kronenberger's declaration (ECF No. 384-1 ("Kronenberger Decl.") ¶¶ 11-12). This is

26   improper. The Kronenberger Decl. should be stricken because it is not based on personal knowledge, has

no evidentiary support, includes legal conclusions, improperly provides expert opinion, and extends the

27   twenty-five-page limit by adding substantive arguments. Civil L.R. 7-5(b) ("An affidavit or declaration

may contain only facts, must conform as much as possible to the requirements of Fed. R. Civ. P. 56(e),

28   and must avoid conclusions and argument. . . . An affidavit or declaration not in compliance with this rule

may be stricken in whole or in part.").

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

as all of 35.CN's attempts to reduce the statutory damages award.[12] The Court should thus adopt Judge van Keulen's recommendation to award statutory damages of $3,135,000 under 15 U.S.C. § 1117(d).

## V.    PLAINTIFFS ARE ENTITLED TO THEIR REASONABLE ATTORNEYS' FEES.

35.CN claims that "to obtain fees for an exceptional case, Plaintiffs must prove they would not have incurred the fees sought 'but for' the conduct that served as the basis for the exceptional case; in this case, the ESI spoliation by OnlineNIC and ID Shield."[13] Opp. at 8:4-7. 35.CN further contends that full fees are not warranted in this case because "the entire defense was not frivolous or egregious." *Id.* at 8:15-16. 35.CN maintains that this "limited scope is consistent with Rule 37." Opp. at 27:25. Such a limit, however, is not consistent with fee-shifting under 15 U.S.C. § 1117(a). *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) ("District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."). Nor is it consistent with Judge van Keulen's finding that Defendants' cybersquatting was egregious and that Defendants engaged in significant litigation misconduct. R&R at 32:5-8.

### A.    This is an exceptional case because Defendants' cybersquatting was egregious.

35.CN concedes that Judge van Keulen found Defendants' cybersquatting conduct egregious. Opp. at 26:10-11. Nonetheless, 35.CN contends that Plaintiffs' attorneys' fees should be limited based on "a variety of factors [that] cut against a finding that all conduct was egregious." *Id.* at 26:11-12. 35.CN's proffered mitigating factors, however, should all be rejected by the Court.

First, 35.CN claims once again that "the Domain Names were registered on behalf of third-party

---

[12] 35.CN has not provided any legal or factual basis to support its claim that the recommended statutory damages are unreasonable or not tailored to the specific misconduct of the Defendants. *See Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1050 (N.D. Cal. 2010) (fourth *Eitel* factor requires the Court to consider whether the money at stake is reasonable in relation to the seriousness of defendants' conduct); *Am. Career Coll., Inc. v. Medina*, No. CV 21-00698-PSG (Skx), 2023 WL 8000273, at *5 (C.D. Cal. October 6, 2023) (fourth *Eitel* factor met if the requested amounts are tailored to the specific misconduct of the Defendants and have evidentiary support).

[13] 35.CN's attempt to distinguish its conduct as separate and independent of the OnlineNIC Defendants controverts the Court's prior findings that Defendants "are part of a single business enterprise." SJ Order at 18:21. 35.CN wrongly maintains that "35.CN was never found to be a direct 'bad actor,' but rather the alter ego of other Defendants; 35.CN was not found to have directly participated in cybersquatting or infringement. . ." Opp. at 26:24-26. 35.CN's bald assertions fly in the face of the Court's alter ego finding and that 35.CN's employees "apparently carried out" the evidence spoliation. SJ Order at 20:8-9.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Customers." Opp. 26:12-13. Yet, Defendants previously raised arguments based on third parties (and not Defendants) registering the Infringing Domain Names and the Court rejected them. Order Adopting R&R at 11:6-26. Thus, this argument fails.

Second, 35.CN repeats its prior contentions that "established case law preclud[es] third-party liability under the RAA and that the [registration agreement] does not exist." Opp. at 26:16-17. Once again, these issues were previously rejected by the Court (Order Denying Motion to Dismiss at 10:23-11:5) and this argument also fails.

Third, 35.CN claims that "OnlineNIC provided Customer/registration information to ICANN prior to the litigation and to Plaintiffs during litigation." Opp. at 26:18-19. However, 35.CN's argument here, along with its previous arguments, are improperly merit based. Defendants' massive spoliation prevents Plaintiffs from rebutting any such evidence that would mitigate Defendants' bad faith. As this Court reasoned, "defendants cannot engage in improper discovery tactics, destroy documents on a mass scale, and then cherry pick convenient exculpatory evidence." Order Adopting R&R at 11:16-17.

Finally, 35.CN claims that Judge van Keulen "declined to resolve the factual dispute of whether Defendants' conduct was willful and egregious due to [sic] failure to identify Customers who registered the Domain Names." Opp. at 30:8-10. That issue is of no import because Judge van Keulen found Defendants' cybersquatting to be egregious for other reasons. R&R at 24:22-25:13, 25:26-26:1. Even assuming Judge van Keulen found Defendants' cybersquatting was not willful, "a finding of willfulness is not necessary for an exceptional case determination." *Yuga Labs, Inc. v. Ripps*, No. CV 22-4355-JFW(JEMX), 2023 WL 7089922, at *17 (C.D. Cal. Oct. 25, 2023). And significantly, Judge van Keulen concluded that Defendants are serial cybersquatters that registered each of the Infringing Domain Names with bad faith intent to profit, which supports a finding of exceptionality. *See* R&R at 24:22-26:17; *Twitch Interactive, Inc. v. Johnston*, No. 16-CV-03404-BLF, 2019 WL 3387977, at *13 (N.D. Cal. July 26, 2019) (a finding of bad faith "reinforces the Court's conclusion that . . . Defendants engaged in a scheme of deliberate, intentional, and willful trademark infringement aimed at causing customer confusion").

Moreover, Plaintiffs' allegations demonstrating willfulness and bad faith (SAC ¶¶ 56-66, 69, 71-75, 81-87, 136)—taken as true upon Defendants' default—further support a finding of exceptionality. *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008). In fact, Judge van Keulen

found that Defendants destroyed "critical" evidence that could have shown willfulness, including documents that "could have revealed the clients' purpose in registering the Infringing Domain Names or Defendants' knowledge of the purpose to which the Infringing Domain Names were being put." R&R at 18:14-15, 19:9-12. "In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012). Defendants' intentional destruction of evidence at a mass scale supports a finding of willfulness and a finding of exceptionality. *See Yuga Labs,* 2023 WL 7089922, at *18 ("[C]ourts that have considered willfulness as one of the factors for determining if a case is exceptional often examine the defendant's conduct during the infringement and during any trademark litigation to determine the defendant's state of mind.").

**B.     This is an exceptional case because Defendants litigated in an unreasonable manner.**

35.CN argues that it "did not defend the case in a frivolous, unreasonable, egregious, or bad faith manner, such as failing to show up to hearings, or continuing to prosecute a case without any evidence; and 35.CN's assertion of defenses, including based on Chinese records for a public company, does not equate to lack [sic] respect for the judicial system." Opp. at 25:6-9.[14] 35.CN is mistaken for several reasons. As an initial matter, the mass spoliation of evidence—for which ***all Defendants*** are culpable— on its own, makes this an exceptional case. *See Intell. Ventures I LLC v. Trend Micro Inc.*, 944 F.3d 1380, 1384 (Fed. Cir. 2019) ("[A] district court has discretion, in an appropriate case, to find a case exceptional based on a single, isolated act."). After the R&R was issued, Defendants continued their pattern of abusive misconduct. 35.CN attempts to justify its behavior due to the "complexity and merit to nuanced defenses." Opp. 25:19. This rationalization, however, is irrelevant to whether Defendants litigated in an unreasonable manner and cannot excuse Defendants' misrepresentations, obfuscations, and delay tactics.

For example, 35.CN has ***and continues to*** relitigate issues already decided, including whether (1) Defendants' spoliation harmed Plaintiffs, (2) Defendants registered the Infringing Domain Names, (3) ID Shield offers a proxy service, and (4) 35.CN and the OnlineNIC Defendants are separate entities

---

[14] Many of 35.CN's arguments relating to its request to limit an award of attorneys' fees are improperly supported by the Kronenberger Decl. ¶¶ 3, 6, 10. These paragraphs should be stricken. *See supra* note 11.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

and not alter egos. 35.CN's relentless and inappropriate re-litigation of these issues has unnecessarily dragged this case out, driving up Plaintiffs' expenses and burdening the Court. Limiting Plaintiffs' fee award as 35.CN suggests would improperly reward Defendants for their intransigence. *See Yuga Labs*, 2023 WL 7089922, at *19 ("repeated attempts to re-litigate issues already addressed and rejected by the Court unnecessarily complicated this litigation and supports the Court's conclusion that this [sic] an exceptional case"); *see also San Diego Comic Convention*, 807 Fed. Appx. at 676 (affirming fee award where defendant demonstrated a "persistent desire to re-litigate issues already decided").

Additionally, 35.CN failed to offer any evidence to show it is not the alter ego of the OnlineNIC Defendants. In granting summary judgment, this Court reasoned: "When the moving party on summary judgment has come forward with overwhelming evidence in support of its position, the nonmoving party may not simply put forth unsupported, conclusory assertions in order to generate a 'dispute' of material fact. That is essentially what 35.CN has done here." SJ Order at 20:10-13. Significantly, as this Court noted, 35.CN attempted to improperly support many of its arguments with the declarations submitted by its employee, Carrie Yu, in which she recanted her prior sworn testimony. SJ Order at 9:28-10:1. 35.CN's failure to adduce any admissible evidence supports a finding of exceptionality. *See OCM Grp. USA Inc. v. Lin s Waha Int'l Corp*, No. 2:19-CV-08917-SB-KS, 2021 WL 3941414, at *2 (C.D. Cal. Aug. 2, 2021) ("Courts may find that a case is 'exceptional' when a party pursues a claim where there is an 'utter failure of proof.'").

Further, the voluminous filings concerning 35.CN's discovery deficiencies (*see, e.g.*, ECF Nos. 237, 247, 258-4, 263, 269-3, 281-4) chronicle 35.CN's own abusive discovery misconduct, including, among other things, untimely assertions of frivolous objections (*see, e.g.,* ECF No. 258-4 at 1) and "eleventh hour" supplementations (ECF No. 275 at 2:1). With these and other abusive tactics, 35.CN resisted meaningfully engaging in discovery—including court-ordered discovery concerning alter ego— and, in fact, never adequately responded to such discovery. *See* ECF No. 359-1 ¶¶ 2-9, Ex. 1.

35.CN's bad faith litigation conduct is best exemplified by 35.CN's misrepresentations to the Court in its Opposition about the discovery disputes before Magistrate Judge Tse. For example, 35.CN states that it "maintained it could not" produce documents without violating Chinese law. *See* Opp. at 12:23-26 (citing ECF No. 239-1 ¶ 5). This statement directly contradicts 35.CN's repeated

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

representations to Judge Tse that 35.CN was **not** withholding documents due to Chinese law. *See* ECF Nos. 258-4 at 3 ("35.CN has withdrawn Chinese law objections [sic] almost all its responses (despite valid objections), and currently is not withholding any documents or information on the basis of Chinese law"); 263 at 15 ("<u>35.CN is not withholding documents or information due to Chinese law</u>") (emphasis in original); 281-4 at 7 ("However, as 35.CN has repeatedly impressed on Plaintiffs, it is now <u>not withholding documents or information due to Chinese laws</u>.") (emphasis in original). Next, 35.CN misleadingly states that it prevailed on this issue before Judge Tse. Opp. at 12:17-18, 12:23-26.[15] Given 35.CN's shifting positions, however, the issue with respect to Chinese law was never properly before the Court. ECF No. 261 ("In light of 35.CN's representation that 'there are currently no documents being withheld due to Chinese law,' the parties' dispute concerning Chinese law prohibitions, see Dkt. 247, is terminated as moot. To the extent 35.CN invokes Chinese law in connection with its forthcoming document productions, plaintiffs may renew their arguments in favor of compelled disclosure.").

35.CN has "frequently changed its [] positions to overcome the hurdle of the day" – an unreasonable litigation tactic that supports a finding of exceptionality. *In re PersonalWeb Techs., LLC et al., Pat. Litig.*, No. 18-MD-02834-BLF, 2020 WL 5910080, at *9-11 (N.D. Cal. Oct. 6, 2020); *see also Oplus Techs., Ltd. v. Vizio, Inc.*, 782 F.3d 1371, 1374-76 (Fed. Cir. 2015) (vacating district court's denial of fees where the plaintiff's "litigation positions, expert positions, and infringement contentions were a constantly moving target, a frustrating game of Whac–A–Mole throughout the litigation.").

### C. The "but-for test" may not apply and, even if applied, a full fee award is warranted.

35.CN argues that the "but-for test" outlined in *Goodyear*, 581 U.S. at 109-10, prohibits Plaintiffs from obtaining an award of their reasonable attorneys' fees for the entire litigation. Opp. at 24:5-18. The *Goodyear* "but-for test" advocated by 35.CN, however, has never been required in Lanham Act cases under 15 U.S.C. § 1117(a). In *San Diego Comic Convention*, for example, the Ninth Circuit refused to require "causal connections between the misconduct that rendered the case exceptional and the particulars of the fee award." 807 Fed. Appx. at 676. There, though Defendants-Appellants cited to *Goodyear*

---

[15] 35.CN argues that Plaintiffs did not prevail in a number of disputes. Opp. at 11:24-12:26. This is immaterial. "A litigant need not prevail on every issue, or even on the 'central issue' in the case, to be considered the prevailing party." *Hashimoto v. Dalton*, 118 F.3d 671, 677 (9th Cir. 1997).

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

(*see* Appellant's Opening Br. at 69-71, 9th Cir. No. 18-56221 (Dkt. 52), 2019 WL 2013124), the Ninth

Circuit stated, "Defendants cite no Ninth Circuit or Lanham Act case law in support of this argument."[16]

*San Diego Comic Convention*, 807 Fed. Appx. at 676. The Ninth Circuit concluded, "it was not an abuse

of discretion to award fees related to the entirety of the case." *Id.*

Indeed, the Supreme Court in *Goodyear* applied a "but-for test" to fee-shifting sanctions pursuant

to the court's inherent powers, not pursuant to statute. *Goodyear*, 581 U.S. at 108-109. The Supreme Court

explained that such fee-shifting must be "compensatory, rather than punitive," thus requiring a court,

"when using its inherent sanctioning authority (and civil procedures), to establish a causal link—between

the litigant's misbehavior and legal fees paid by the opposing party." *Id.* at 108. With respect to

Lanham Act cases, however, the controlling Supreme Court case is *Octane Fitness*, which eschewed any

"precise rule or formula for making these determinations" and rejected a formulation that "superimpose[d]

an inflexible framework onto statutory text that is inherently flexible." 572 U.S. at 554-55. The logic of

the "but-for test" does not aptly apply in exceptional cases where the plaintiff has ultimately prevailed in

its infringement claims.[17] *See, e.g., Jason Scott Collection, Inc. v. Trendily Furniture, LLC,* 68 F.4th 1203,

1223 (9th Cir. 2023), *cert. denied,* 144 S. Ct. 550 (2024) (affirming award of plaintiff's attorneys' fees,

stating "[t]he district court did not abuse its discretion in concluding that such willful and brazen

infringement, paired with the strength of JSC's trade dress claim, constitutes an exceptional case").

Finally, the Supreme Court in *Goodyear* recognized that "in exceptional cases, the but-for standard

even permits a trial court to shift all of a party's fees . . . in one fell swoop." *Goodyear*, 581 U.S. at 110.

The Supreme Court offers *Chambers v. NASCO,* 501 U.S. 32 (1991) as "one illustration," where a fee

award for the entire litigation was approved "because literally everything the defendant did—'his entire

course of conduct' throughout, and indeed preceding, the litigation—was 'part of a sordid scheme' to

defeat a valid claim." *Goodyear*, 581 U.S. at 110 (quoting *Chambers*, 501 U.S. at 51, 57). *See also*

---

[16] Similarly, 35.CN has not cited any such authority. Although 35.CN offers *Delta Forensic Eng'g, Inc. v. Delta V Biomechanics, Inc.*, that decision cites to *Goodyear* only in relation to sanctions pursuant to the court's inherent powers. No. 18-cv-2780 DDP (AFMx), 2021 WL 243323, at *2 (C.D. Cal. Jan. 22, 2021).

[17] For instance, as applied here, "but for" Defendants' egregious cybersquatting (*see* R&R at 24:22-26:1), Plaintiffs would not have needed to file the instant lawsuit to enforce its rights and thus would not have incurred *any* fees.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.,* 726 F.3d 1359, 1369 (Fed. Cir. 2013) (affirming full fee award based on conduct "that was 'pervasive' enough to infect the entire litigation") (internal citation omitted). Such is the case here.

For these reasons, and as an exceptional case under Section 1117(a), Plaintiffs should be awarded their reasonable attorneys' fees for the entire case based on both the egregiousness of Defendants' cybersquatting as well as Defendants' litigation misconduct.

### D.    Plaintiffs need not submit billing records at this time.

35.CN argues that Plaintiffs have failed to support any amount of reasonable attorneys' fees because they have not provided adequate documentation for fees in their Motion. Opp. at 29:7-21. This argument is erroneous and ignores practical and procedural realities at this stage of the litigation. Courts within this Circuit regularly employ a two-step process when awarding attorneys' fees: first, determining whether the moving party is entitled to such fees, and then requiring submission of evidence detailing its request for fees. *See, e.g., Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1124 (C.D. Cal. 2007) (after deciding case was exceptional, plaintiffs allowed to submit declarations and supporting evidence concerning fees); *Autodesk, Inc. v. Castillo*, No. CV 13-00214 EJD (PSG), 2014 WL 12712236, at *2 (N.D. Cal. Mar. 5, 2014) (same). Such an approach is appropriate here. This Court set a briefing schedule on the parties' unresolved disputes with respect to Judge van Keulen's R&R, Section IV ("Relief), including with respect to attorneys' fees. ECF No. 373. Plaintiffs then submitted this Motion outlining their position with respect to statutory damages, injunctive relief, and attorneys' fees. Given the parties dispute over the scope of allowable fees, submitting documentation in support of Plaintiffs' fee request at this stage would be burdensome on both Plaintiffs and the Court.

## VI.    THE PROPOSED PERMANENT INJUNCTION IS REASONABLE AND JUST.

Judge van Keulen agreed that "permanent injunctive relief is appropriate" (R&R at 30:8), and 35.CN does not dispute Plaintiffs are entitled to a permanent injunction. Rather, 35.CN incorrectly asserts that certain terms in the PI (ECF No. 379-4) are overbroad and unworkable.[18] For example, 35.CN states

---

[18] These arguments are improperly supported by the Kronenberger Decl. ¶¶ 7-8. These paragraphs should be stricken. *See supra* note 11.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

that "Plaintiffs' present proposal does not address many of the concerns outlined in the R&R." Opp. at 14:22-23, 19:10-11. But 35.CN fails to inform the Court that *none* of the terms rejected by Judge van Keulen are in Plaintiffs' current PI.[19]

    In addition, 35.CN claims that ¶¶ 91(d) and (e) of the PI are unworkable because they require Defendants to disclose third-party customer information for a domain name "used for phishing, malware, fraud and other types of domain name abuse" and suspend that domain name within twenty-four hours of notice of harm. Opp. at 19:14-20:1. 35.CN does not explain how or why this is unworkable, especially given a registrar's requirement under the RAA to "establish and maintain a dedicated abuse point of contact, including a dedicated email address and telephone number that is *monitored 24 hours a day, seven days a week*, to receive reports of Illegal Activity . . ." RAA § 3.18.2 (SAC Ex. 4 at 23) (emphasis added). And although 35.CN claims that under the PI notice may be sent to an improper location (Opp. at 20:9-15), 35.CN has not provided any alternative location where notice would be proper.

    Finally, 35.CN claims that ¶ 91(f) of the PI may violate data privacy laws. Opp. at 20:16-21:11. Yet, ¶ 91(f) specifically applies only to actions "allowed by applicable privacy laws."

## VII.   CONCLUSION

    For the reasons stated above and in Plaintiffs' Motion, the Court should grant Plaintiffs' Motion, adopt Judge van Keulen's recommendation and award statutory damages of $3,135,000 under 15 U.S.C. § 1117(d) (R&R at 28:19-23), find that this is an exceptional case under 15 U.S.C. § 1117(a) entitling Plaintiffs to an award of all their reasonable attorneys' fees, and enter the PI against all Defendants.[20]

---

[19] For example, the provision enjoining Defendants from continuing to provide domain name registration services to the licensees (ECF No. 176-4 ¶ 101(f)) has been removed from the current PI. Similarly, the provision preventing Defendants from transferring or withdrawing any funds from any bank account (*id*. ¶ 103(b)) has also been removed. In addition, the provisions Judge van Keulen asserted had no bearing on the case (*id*. ¶¶ 102, 103) have been removed. And, based on the colloquy with Judge van Keulen at the hearing (ECF No. 219 at 42), Plaintiffs agreed to revise the provision suspending any domain name (ECF No. 176-4 ¶ 104(e)) by taking out the following offending language: "or based on automatic scan for Plaintiffs' marks at the time of domain name registration." *See* PI ¶ 91(e).

[20] 35.CN does not object to a judgment requiring Defendants to (1) transfer to Plaintiffs the Infringing Domain Names and (2) reimburse Plaintiffs $88,937 for costs related to the Special Master. PI ¶¶ 80-82.

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

DATED:  April 11, 2024                    Tucker Ellis LLP


                                          By:  /s/David J. Steele
                                               David J. Steele
                                               Howard A. Kroll
                                               Steven E. Lauridsen
                                               Attorneys for Plaintiffs,
                                               META PLATFORMS, INC. f/k/a
                                               FACEBOOK, INC. and INSTAGRAM, LLC

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST ALL DEFENDANTS
Case No. 3-19-cv-07071-SI