UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC., et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>ONLINENIC INC, et al.,<br><br>    Defendants. | Case No. 19-cv-07071-SI<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 379 |

Now before the Court is plaintiffs' motion for default judgment against all defendants. Dkt. No. 379. At the parties' request, the Court held an in-person hearing on May 3, 2024.

**BACKGROUND**

Many of the issues presented in the current motion have already been litigated and/or decided in some form during the lengthy history of this case. To recap, plaintiffs Facebook, Inc. and Instagram, LLC (collectively, "plaintiffs") filed their original complaint in 2019 against the OnlineNIC defendants.[1] Dkt. No. 1. The case was assigned to Magistrate Judge van Keulen.

On March 3, 2021, following numerous discovery disputes, Judge van Keulen appointed Thomas Howe as Special Discovery Master ("Special Master") to determine: (1) whether the OnlineNIC defendants' past productions were adequate and (2) whether the OnlineNIC defendants destroyed or withheld data. Dkt. No. 72.

On March 24, 2021, Judge van Keulen granted plaintiffs' motion for leave to file a first

---

[1] The OnlineNIC defendants are comprised of defendants OnlineNIC, Inc. ("OnelineNIC") and Domain ID Shield Service Co., Ltd. ("ID Shield").

amended complaint to add Xiamen 35.com Technology Co., Ltd. ("35.CN") as a defendant.[2] Dkt. No. 81. On March 31, 2021, plaintiffs filed the first amended complaint ("FAC"), adding 35.CN. Dkt. No. 84. On June 1, 2021, plaintiffs filed their second amended complaint ("SAC"), which is now the operative complaint. Dkt. No. 109.

The SAC alleges four causes of action against all three defendants for: (1) Cybersquatting Plaintiffs' Trademarks, 15 U.S.C. § 1125(d) (the Anticybersquatting Consumer Protection Act ("ACPA")); (2) Trademark and Service Mark Infringement, 15 U.S.C. §1114; (3) Trademark and Service Mark Infringement and False Designation of Origin, 15 U.S.C. § 1125(a); and (4) Dilution of Trademarks, 15 U.S.C. § 1125(c). *Id.* ¶¶ 76-137. Both the FAC and SAC alleged that 35.CN and the OnlineNIC defendants were alter egos of each other. *See, e.g.,* FAC ¶ 12; SAC ¶ 12. Further detail on the factual allegations can be found in Judge van Keulen's Report and Recommendation, Dkt. No. 225.

On July 12, 2021, the Special Master filed his report. Dkt. No. 115 ("Special Master's Report" or "SMR"). On July 20, 2021, plaintiffs and the OnlineNIC defendants filed statements of non-opposition to the SMR. Dkt. Nos. 125, 126.

To summarize, the Special Master found "ample evidence that Defendants [OnlineNIC and ID Shield] failed to preserve responsive ESI, deleted ESI, and withheld ESI." SMR at 2. The Special Master found the OnlineNIC defendants did this on a massive scale, and that they failed to preserve ESI "pre-litigation, post complaint filing, during discovery, and even after the appointment of Special Master." *Id.* at 17. The Special Master also determined that the OnlineNIC defendants engaged in underhanded tactics to avoid producing responsive documents, such as data dumping, using inconsistent date ranges and search terms, and misleading the Special Master or failing to respond to his requests. Dkt. No. 276 at 6 (citing SMR at 19, 30-31, 35). The Special Master concluded: "Briefly put, Defendants did not do what they should have done (preserve and produce responsive ESI) yet did do what they should not have done (delete and obfuscate). Based on the sum of the evidence, Special Master concludes Defendants' behavior was intentional." SMR at 39.

---

[2] 35.CN has since formally changed its name to Leascend Technology Co., Ltd. Dkt. No. 392.

1    The Special Master also concluded that the OnlineNIC defendants "caused irreparable harm to
2    Plaintiffs through permanently deleted responsive database records and attachment files, that they
3    will never see or know the contents." *Id.* at 40.

4    On July 13, 2021, plaintiffs filed a motion to strike the OnlineNIC defendants' answer and
5    for default judgment. Dkt. No. 117. On or around August 17, 2021, plaintiffs served the SAC on
6    35.CN. Dkt. No. 165 at 1. 35.CN first appeared in this case in September 2021. Dkt. No. 384
7    (citing Dkt. No. 169).

8    On September 28, 2021, the action was reassigned to the undersigned. Dkt. No. 173.
9    Plaintiffs re-noticed their motion to strike, and this Court referred the motion to Judge van Keulen.
10   Dkt. Nos. 176, 193. 35.CN filed a motion to dismiss, which this Court denied in an order dated
11   January 18, 2022. *See* Dkt. Nos. 174, 207. Among other things, the Court found that the SAC raised
12   "serious questions about how the defendants are related for purposes of surviving a motion to
13   dismiss and the Court [found] plaintiffs [had] made a prima facie showing of alter ego and general
14   jurisdiction." Dkt. No. 207 at 7-8. The Court also found the cybersquatting and trademark claims
15   were adequately pled. *Id.* at 9-11.

16   On March 28, 2022, Judge van Keulen issued her Report and Recommendation,
17   recommending the undersigned grant the motion for terminating sanctions against the OnlineNIC
18   defendants. Dkt. No. 225 ("Report and Recommendation"). Judge van Keulen set out, and adopted
19   as her own, the key findings of the SMR in her Report and Recommendation. *Id.* at 4-9. All three
20   defendants filed objections to the Report and Recommendation and requested de novo review of
21   plaintiffs' motion for sanctions/default judgment. Dkt. Nos. 228, 229.

22   In orders issued October 17 and December 16, 2022, the undersigned adopted the Report
23   and Recommendation, with the exception of Section IV ("Relief"). Dkt. Nos. 276, 291. The Court
24   concurred with Judge van Keulen's finding of prejudice to plaintiffs: "OnlineNIC and ID Shield
25   claim they have mountains of exculpatory evidence, yet for all Plaintiffs or the Court may ever
26   know, those 'mountains' may be dwarfed by the mountains of damning evidence Defendants
27   deleted." Dkt. No. 276 at 11 (quoting Report and Recommendation at 19). The Court directed the
28   Clerk to enter default against OnlineNIC and ID Shield but deferred entry of default judgment

3

1    pending resolution of the case against 35.CN. Dkt. No. 291.

2    On March 3, 2023, plaintiffs filed a motion to strike 35.CN's answer and for entry of default against 35.CN, arguing that 35.CN was the alter ego of the OnlineNIC defendants. Dkt. No. 299. At 35.CN's request, the Court converted the motion to one for summary judgment. Dkt. No. 329. On November 7, 2023, the Court issued an order granting plaintiffs' motion and striking 35.CN's answer. Dkt. Nos. 351, 357. The Court found 35.CN to be the alter ego of the OnlineNIC defendants, under a single-enterprise theory. *Id.* at 20-21. Accordingly, the terminating sanctions that issued against the OnlineNIC defendants were extended to 35.CN. *Id.* at 21-22. The Court directed the Clerk to enter default against 35.CN.

Plaintiffs now move for default judgment against all defendants. Dkt. No. 379. 35.CN has filed an opposition brief, in which the OnlineNIC defendants join. Dkt. Nos. 384, 385. The Court held a hearing on May 3, 2024.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 55(b)(2) provides that a court may enter default judgment and, if necessary to effectuate judgment, conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Default judgment does not flow automatically from the Clerk's entry of default but is a matter reserved to the district court's sound discretion. *Draper v. Coombs*, 792 F.2d 915, 925 (9th Cir. 1986). In the Ninth Circuit, courts are guided by the eponymously named *Eitel* factors in determining whether entry of default judgment is appropriate. "Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Upon entry of default, the well-pleaded allegations pertaining to liability are taken as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

# DISCUSSION

## I. Findings

### A. Federal Question Jurisdiction

This Court has federal question jurisdiction over the subject matter of this case under 28 U.S.C. § 1331.

### B. Personal Jurisdiction and Venue

The Court has personal jurisdiction over defendant OnlineNIC, and alter egos ID Shield and 35.CN, because OnlineNIC maintains and operates its business in California. SAC ¶ 9. In *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1065 (9th Cir. 2015), the Ninth Circuit held that "a court may attribute a parent company's contacts with the forum state to its foreign subsidiary for the purpose of exercising general personal jurisdiction over the subsidiary . . . upon a showing that the subsidiary is an alter ego of its parent[.]" *See also id.* at 1073 (explaining "the alter ego test may be used to extend personal jurisdiction to a foreign parent or subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate"). This Court previously found "that 35.CN is and at all times relevant to this action has been the alter ego of the OnlineNIC defendants under a single business enterprise theory," making it appropriate to exercise general personal jurisdiction over 35.CN as well. *See* Dkt. No. 357 at 22.

Despite the holding in *Ranza*, 35.CN continues to argue that its contacts with California are insufficient to subject it to personal jurisdiction. Dkt. No. 384 at 11-12. 35.CN argues, without support, that the alter ego finding on discovery sanctions does not necessarily equate to an alter ego finding for personal jurisdiction purposes. 35.CN also argues that notions of due process prevent the Court from exercising jurisdiction over it. The Court is unpersuaded by 35.CN's arguments, which seem not to appreciate that, "under the federal law governing the exercise of personal jurisdiction, if a corporation is the alter ego of an individual defendant, or one corporation the alter ego of another, the Court may 'pierce the corporate veil' jurisdictionally and attribute 'contacts' accordingly." *See Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 51-52 (N.D. Cal. 2020) (citations and internal quotation marks omitted). Moreover, 35.CN disputes factual findings that

were already laid to rest at summary judgment, *see* Dkt. No. 384 at 12 (pointing out that 35.CN has a new CEO, and arguing that "35.CN has provided data on independent officers and directors over multiple years"). The Court finds general personal jurisdiction proper as to all defendants, based on the prior alter ego findings.

Venue is proper with respect to each of the defendants pursuant to 28 U.S.C. § 1391(b)(2).

### C. Cybersquatting and Trademark

The SAC adequately alleges claims for cybersquatting and trademark violation. Dkt. No. 207 at 9-11. 35.CN previously challenged the sufficiency of the allegations in its motion to dismiss. *See id.* With default now entered against all defendants, the Court takes as true the well-pleaded allegations of the SAC. *See Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).

### D. *Eitel* Factors[3]

Upon reviewing the *Eitel* factors, the Court finds that default judgment is appropriate. As to the first factor, the possible prejudice to plaintiffs is high, as they would be without a remedy absent a default judgment. The Special Master, Judge van Keulen, and the undersigned have all found that plaintiffs' ability to prosecute this case on the merits has been significantly hampered by defendants' mass spoliation of relevant evidence and other discovery misconduct. *See* Report and Recommendation at 18-19. As to the second and third factors, as already noted, the Court has found the allegations of the SAC sufficient. *See* Dkt. No. 207; *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996) ("The Ninth Circuit has suggested that [these two factors] require that [the] plaintiffs' allegations state a claim on which the plaintiff may recover.") (internal quotations omitted). This is not a case where the Court is evaluating the

---

[3] The Court notes that many of the *Eitel* factors are duplicative of the analysis Judge van Keulen conducted on review of the original motion for terminating sanctions. *See Dreith v. Nu Image, Inc.*, No. CV 05-4146 SVW (MANx), 2007 WL 9658786, at *6 (C.D. Cal. Mar. 2, 2007) (explaining "it would either be redundant or inconsistent to apply Eitel's discretionary factors where default is imposed as a sanction; Eitel is ordinarily invoked when a defendant fails to file a timely pleading"). To the extent there is overlap, the Court incorporates Judge van Keulen's findings from the Report and Recommendation, which this Court has already adopted (with the exception of Section IV, "Relief").

6

sufficiency of the allegations in the absence of argument from the opposing side. Rather, this Court found the SAC sufficient after full briefing on 35.CN's motion to dismiss. As to the fourth factor, the sum of money at stake (which may include $3.135 million in statutory damages and potentially a multi-million dollar attorney fee award) weighs against plaintiffs' motion but does not preclude entry of default judgment, particularly when compared to the seriousness of defendants' conduct. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir. 1987) (district court did not abuse its discretion by striking the answer and entering $11.1 million default judgment against defendant as a sanction for committing perjury and filing false pleadings). As to the fifth factor, there is no possibility of a dispute concerning material facts because upon entry of default all well-pleaded facts relating to defendants' liability are taken as true. *Id.* at 917-18. The Court acknowledges that defendants continue to dispute many of the facts alleged in the SAC and argue that the merits would resolve in their favor. However, they have forfeited their ability to litigate the factual disputes on the merits by their own conduct in discovery, which led to the terminating sanctions entered against them. The sixth factor weighs in favor of granting plaintiffs' motion: defendants' default is not due to excusable neglect but was entered as a sanction for defendants' misconduct.

The final factor weighs against entering default judgment. "[T]he general rule [is] that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, "this preference, standing alone, is not dispositive." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (internal quotations omitted). Here, the Court cannot find that this final factor outweighs the other factors, the majority of which militate in favor of entry of default judgment. Again, the Court emphasizes that defendants have all appeared in this case and had the opportunity to litigate (and in some instances, did litigate) the issues that brought the parties to this point. The time for litigating this case on the merits has passed; indeed, the case cannot be decided on the merits *because of* defendants' intentional misconduct. *See* Report and Recommendation at 13-14, 16.

The Court finds it proper to enter default judgment against all defendants.

## II. Relief

Plaintiffs seek: (1) reimbursement of Special Master costs, in the amount of $88,937; (2) attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a); (3) statutory damages of $3,135,000 under the ACPA; (4) transfer of the infringing domain names; and (5) a permanent injunction.

### A. Special Master Costs

The Court will order that defendants reimburse plaintiffs $88,937, which represents plaintiffs' payments to the Special Master, for the reasons stated in the Report and Recommendation at 32-33.

### B. Attorneys' Fees and Costs

The Court will award plaintiffs their attorneys' fees and costs, in an amount to be determined, for the reasons stated in the Report and Recommendation at 31-32. The Court agrees with Judge van Keulen that this is an exceptional case warranting attorneys' fees under the Lanham Act, 15 U.S.C. § 1117(a), because of defendants' intentional misconduct in discovery. *See Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002).

Judge van Keulen recommended that plaintiffs receive a partial recovery of fees, related to the proceedings before the Special Master and the Motion for Sanctions. Report and Recommendation at 32. However, the Report and Recommendation issued in March 2022, and there have been several more years of litigation, largely to resolve the question of whether 35.CN was the alter ego of the OnlineNIC defendants.[4] The Court will award plaintiffs fees for the Motion for Default/Summary Judgment against 35.CN on the alter ego question, in addition to fees for the

---

[4] The alter ego question resolved in plaintiffs' favor. Dkt. No. 357. Among other things, the Court found:

> much of 35.CN's "evidence" is actually inadmissible; 35.CN does not rebut much of the evidence that plaintiffs have presented; and 35.CN's briefs make sweeping assertions that are unsupported by any evidence. 35.CN's inability to be forthcoming on basic questions, such as who purchased OnlineNIC from the companies' shared founder, have created a maze for the Court to navigate.

*Id.* at 6.

proceedings that Judge van Keulen identified.

Plaintiffs are hereby provisionally awarded their reasonable attorneys' fees—related to the proceedings before the Special Master, the Motion for Sanctions, and the Motion for Default/Summary Judgment against 35.CN on the alter ego question—as well as costs.

C.  **Statutory Damages**

In assessing remedies, the Court takes the well-pleaded allegations of the SAC as true, except those relating to the amount of damages. *TeleVideo*, 826 F.2d at 917-18; *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Judge van Keulen engaged in a detailed analysis of plaintiffs' statutory damages request (originally for $3.5 million) and recommended awarding plaintiffs a total of $3,135,000 in damages, "constituting $80,000 for each of 10 domain names that incorporate confusingly similar misspellings of Plaintiffs' Marks, $95,000 for each of 21 domain names that incorporate an exact spelling of Plaintiffs' Marks and another commonly spelled word, and $85,000 for each of four domain names that incorporate an exact spelling of Plaintiffs' Marks." Report and Recommendation at 28.

35.CN argues that new facts discovered after the Report and Recommendation warrant revisiting Judge van Keulen's analysis.[5] For instance, 35.CN argues that the statutory damages award should take into account "fair use" and that the fair use allegations of the SAC are conclusory. Dkt. No. 384 at 25. These are not "new facts" that 35.CN recently discovered. In any event, the Court is not persuaded that 35.CN's citation to one page of an exhibit attached to the SAC (Exhibit 8) that "shows a seemingly legitimate website in Russian" as to one of the thirty-five infringing domain names defeats the SAC's allegations that there is no fair use of plaintiffs' trademarks. *See id.* The remainder of 35.CN's arguments either appear to misapprehend the Report and Recommendation's analysis or else go to the merits of this case. For instance, 35.CN has maintained

---

[5] The Court notes that many of 35.CN's objections are ones that 35.CN could have raised over two years ago, when filing its objection to the Report and Recommendation. 35.CN filed an objection to the report but did not object to Section IV ("Relief") generally nor to the statutory damages recommendation in particular. *See* Dkt. No. 228.

1 for years that plaintiffs failed to provide adequate notice of actionable harm as to nine or ten of the
2 domain names prior to filing the complaint. The Court considered and rejected 35.CN's request for
3 an evidentiary hearing on this issue when conducting the de novo review of the Report and
4 Recommendation. *See* Dkt. Nos. 238 (35.CN's Admin. Mot. for Evidentiary Hearing and To
5 Augment the Record), 252 (June 17, 2022 Hearing Tr.), 276 (Order) at 15 n.8. Thus, it is not
6 accurate for 35.CN to state that new information has now come to light that this Court did not have
7 the chance to consider when reviewing the Report and Recommendation.

8 In sum, the Court agrees with the reasoning and analysis in the Report and Recommendation
9 at 24-28 and ADOPTS IN FULL the report at Section IV(A). The Court will award plaintiffs
10 $3,135,000 in statutory damages under the ACPA.

### D. Transfer of Defendants' Domain Names

The ACPA permits the Court to transfer offending domain names to the mark owner. 15 U.S.C. § 1125(d)(1)(C); *see also* Report and Recommendation at 29 n.11. Defendants do not dispute this. Accordingly, the Court will order that the thirty-five Infringing Domain Names identified in ¶ 56 of the SAC be transferred to plaintiffs. These are:

1. buyinstagramfans.com
2. face2bouk.com
3. facebook-alkalmazasok.net
4. facebook-chat-emoticons.com
5. facebook-fans-buy.com
6. facebook-login-signup.com
7. facebook-mails.com
8. facebook-pass.com
9. facebookphysician.com
10. facebook-pw.com
11. facebookvideodownload.net
12. facebux2.com
13. facekhook.com
14. facessbook.com
15. faecb00k-page.com
16. faecbook-page.com
17. findfacebookid.com
18. hackfacebook-now.com
19. hackingfacebook.net
20. hacksomeonesfacebook.com
21. iiinstagram.com
22. instaface.org
23. instagram01.com
24. instakram.com
25. lamsocialfacebook.net
26. learntohackfacebook.com
27. login-lnstargram.com
28. m-facebook-login.com
29. ofacebooklogin.com
30. singin-lnstargram.com
31. trollfacebook.com
32. watch-facebook.com
33. www-facebook-login.com
34. www-facebook-pages.com
35. www-instagram.net

SAC ¶ 56.

### E. Permanent Injunction

Finally, plaintiffs seek a permanent injunction to enjoin defendants and those working with them from cybersquatting on plaintiffs' trademarks and ordering that defendants provide relevant information to plaintiffs to ensure compliance with the injunction. Judge van Keulen previously found that plaintiffs were entitled to injunctive relief under 15 U.S.C. § 1116(a). The Court agrees with and adopts the analysis regarding plaintiffs' entitlement to permanent injunctive relief in the Report and Recommendation at 29-30.

Judge van Keulen also found, however, that the relief plaintiffs requested in their motion for terminating sanctions against the OnlineNIC defendants was not "narrowly tailored" and was in fact "unquestionably overbroad in that it seeks to enjoin Defendants not only from infringing Plaintiffs' Marks, but also from Defendants' business activities altogether." *Id.* at 30. Judge van Keulen recommended the Court order the parties to meet and confer regarding the terms of the permanent injunction and to submit a joint proposal. *Id.* at 31, 33. Following the ruling on alter ego, the Court ordered the parties to meet and confer regarding the relief issues raised in the Report and Recommendation, Dkt. No. 357 at 23, but the parties were unable to reach agreement.

In its opposition brief, 35.CN takes issue with the scope of three paragraphs of the proposed injunction that plaintiffs filed. *See* Dkt. No. 379-4 ¶ 91(d), (e), (f); Dkt. No. 384 at 12-15. The morning of the hearing, the parties informed the Court that they successfully met and conferred to reach agreement on edits to the proposed injunction. *See* Dkt. No. 390. The Court therefore intends to grant the permanent injunction, substituting the language at ¶ 91(d), (e), (f) with the new language to which the parties have agreed.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiffs' motion for default judgment against all defendants. A separate judgment, including permanent injunction, shall issue.

1    Plaintiffs are directed to submit within 14 days of the filing date of this Order a request for
2 costs and attorneys' fees in accordance with the procedures and deadlines set forth in Federal Rule
3 of Civil Procedure 54(d) and Local Rule 54.  Unless the Court orders otherwise, the attorneys' fees
4 motion will be resolved on the papers.

**IT IS SO ORDERED**.

Dated:  May 3, 2024

SUSAN ILLSTON
United States District Judge