TUCKER ELLIS LLP
David J. Steele SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:      213.430.3400
Facsimile:      213.430.3409

Attorneys for Plaintiffs,
META PLATFORMS, INC. (fka FACEBOOK, INC.)
and INSTAGRAM, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC,<br><br>              Plaintiffs,<br><br>    v.<br><br>ONLINENIC INC.; DOMAIN ID SHIELD SERVICE CO., LIMITED; and XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD.,<br><br>              Defendants. | Case No. 3:19-cv-07071-SI<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>DATE: None (pursuant to Court order)<br>TIME: None (pursuant to Court order)<br><br>Hon. Susan Illston |

# NOTICE OF MOTION AND MOTION

## TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that Plaintiffs Meta Platforms, Inc. (fka Facebook, Inc.) and Instagram LLC (collectively, "Plaintiffs") hereby move for an order awarding Plaintiffs their attorneys' fees and costs against all of the Defendants. Pursuant to this Court's May 3, 2024 Order Granting Plaintiffs' Motion for Default Judgment, this motion will be resolved on the papers unless otherwise ordered by the Court. ECF No. 393 at 12:4.

This motion is made in accordance with Federal Rule of Civil Procedure 54(d), Local Rule 54, and pursuant to this Court's May 3, 2024 Order on the grounds that this is an exceptional case warranting attorneys' fees under the Lanham Act, 15 U.S.C. § 1117(a). ECF No. 393 at 8:12-16, 12:1-4. Plaintiffs seek to recover their reasonable attorneys' fees "related to the proceedings before the Special Master, the Motion for Sanctions, and the Motion for Default/Summary Judgment against 35.CN on the alter ego question" (ECF No. 393 at 9:2-4) in the amount of $2,201,992.25, as well as costs in the amount of $51,045.16.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, the declarations filed herewith in support, the existing record in this case, and any matter of which this Court takes judicial notice.

This motion is made following the conference of counsel pursuant to Civil L.R. 54-5(b)(1), which took place on May 15, 2024.

DATED: May 17, 2024                                Tucker Ellis LLP

By: /s/David J. Steele
    David J. Steele
    Attorneys for Plaintiffs
    META PLATFORMS, INC. (fka
    FACEBOOK, INC.)
    and INSTAGRAM, LLC

# MEMORANDUM OF POINTS AND AUTHORITIES

On May 3, 2024, the Court issued an order directing Plaintiffs Meta Platforms, Inc. (fka Facebook, Inc.) and Instagram, LLC (collectively, "Plaintiffs") to submit a request for costs and attorneys' fees. ECF No. 393. Plaintiffs hereby submit this memorandum and the Declarations of David J. Steele ("Steele Decl.") and Howard A. Kroll ("Kroll Decl.") in support of their request for fees and costs.

## I.    INTRODUCTION

Defendants attempted to hide their liability for violating the Anti-cybersquatting Consumer Protection Act and infringing the Lanham Act by their wholesale destruction of evidence and other discovery malfeasance, including data dumping and failing to produce relevant and responsive documents. Defendants also attempted to hide their liability by claiming that they were independent companies and not alter egos. Defendants' litigation misconduct unnecessarily prolonged this case resulting in Plaintiffs incurring significant fees.

On May 3, 2024, the Court granted Plaintiffs' Motion for Default Judgment against all Defendants. ECF No. 393. In addition, the Court provisionally awarded to Plaintiffs "their reasonable attorneys' fees—related to the proceedings before the Special Master, the Motion for Sanctions, and the Motion for Default/Summary Judgment against 35.CN on the alter ego question–as well as costs." *Id* at 9:2-4. Plaintiffs seek by this motion their reasonable attorneys' fees in the amount of $2,201,992.25 as well as their costs in the amount of $51,045.16.

Plaintiffs interpret the Court's order on attorneys' fees narrowly, reading "related to . . . the Motion for Default/Summary Judgment against 35.CN on the alter ego question" (ECF No. 393 at 9:2-4) to include only the fees associated with their analysis of alter ego facts; drafting the Motion for Default/Summary Judgment, Motion for Default Judgment, and related motions to seal portions of these motions; analyzing Defendants' oppositions to these motions; preparing for and attending hearings on these motions; and analyzing and responding to the Court's orders regarding these motions. However, as the Court noted in the same order, "there have been several more years of litigation, largely to resolve the question of whether 35.CN was the alter ego of the OnlineNIC defendants" (*id.* at 8:20-21), an issue on which Plaintiffs prevailed despite Defendants' efforts to obscure and thwart discovery. *See* ECF No. 357 at 9:28-10:1

("35.CN has also come forward with several declarations from Ms. Yu, recanting her prior deposition testimony."); *id.* at 11:23-25 ("The Court has noted numerous inconsistencies among 35.CN and OnlineNIC's discovery responses, deposition testimony, declarations, [REDACTED], and tax filings regarding who owns and manages the two companies."). Plaintiffs have not included, at this time, fees related to the discovery efforts to obtain the alter ego evidence, such as the Court ordered "special interrogatories regarding the financials" of the OnlineNIC Defendants and the "special 30(b)(6) deposition on topics arising out of the financials and the relationship between 35.CN and the other defendants" (ECF No. 104 at 1:17-20) and other related discovery efforts directed at 35.CN.

Thus, Plaintiffs respectfully ask the Court to clarify whether the "related to" language in the attorneys' fees order is intended to encompass all work associated with the discovery efforts to obtain the evidence for the Motion for Default/Summary Judgment, as such work is "inextricably intertwined" with Plaintiffs' Motion for Default/Summary Judgment. *See Jones v. County of Sacramento*, No. 09–1025, 2011 WL 3584332, at *13 (E.D. Cal. Aug. 12, 2011) (awarding attorney fees even for unsuccessful discovery motions that were "inextricably intertwined" with the underlying claims); *Sunnyside Dev. Co., LLC v. Opsys Ltd.*, No. C-05-0553-MHP, 2007 WL 2462141, at *4 (N.D. Cal. Aug. 29, 2007) ("Recovery of attorneys' fees for work related to multiple claims is appropriate where claims are 'inextricably intertwined'"); *Gracie v. Gracie*, 217 F.3d 1060, 1069 (9th Cir. 2000) (work that is "inextricably intertwined" with attorneys' fees award under the Lanham Act is compensable); *Fallay v. San Francisco City & Cnty.*, No. C-08-2261 CRB, 2016 WL 879632, at *3 (N.D. Cal. Mar. 8, 2016) (work that is "inextricably intertwined" with an anti-SLAPP motion is compensable); *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, No. 12-CV-04634-SI, 2015 WL 4932248, at *4 (N.D. Cal. Aug. 18, 2015) (same). If such discovery efforts are encompassed by the Court's Order, Plaintiffs request fourteen days to supplement this fee request.

## II. PLAINTIFFS' ATTORNEYS' FEES AND HOURS EXPENDED ARE REASONABLE.

Under federal law, courts use the lodestar method to calculate reasonable attorneys' fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). While other considerations may warrant an adjustment, there is "a 'strong presumption' that the lodestar represents the 'reasonable fee.'" *City of Burlington v.*

*Dague*, 505 U.S. 557, 562 (1992). The appropriate lodestar in this case is $2,201,992.25 reflecting the reasonable attorneys' fees incurred by Plaintiffs relating to the proceedings before the Special Master, the Motion for Sanctions, and the Motion for Default/Summary Judgment against 35.CN on the alter ego question (the "Relevant Proceedings").

### A.   The hourly rates of Plaintiffs' attorneys are reasonable.

The hourly rates charged by Plaintiffs' attorneys for this case are reasonable in light of each individual's experience level and qualification. *See* Steele Decl. ¶¶ 6-11.[1] "In determining whether an hourly rate is reasonable, courts consider the 'prevailing market rates in the relevant community,' and 'the experience, skill, and reputation' of the attorney." *Vargas v. Berkeley Unified Sch. Dist.*, No. 16-CV-06634-WHO, 2017 WL 5991857, at *1 (N.D. Cal. Dec. 4, 2017) (quoting *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205-06 (9th Cir. 2013)). The "relevant community" for the purposes of determining the reasonable hourly rate is the district in which the lawsuit proceeds—here, the San Francisco Bay Area. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). "To determine the prevailing market rate, courts may rely on attorney affidavits as well as decisions by other courts awarding similar rates for work in the same geographical region by attorneys with comparable levels of experience." *Baskin-Robbins Franchising LLC v. Chun*, 2019 WL 5268883, at *2 (N.D. Cal. Oct. 17, 2019).

The hourly rates of the four partners at Tucker Ellis LLP ("Tucker Ellis") who worked on this matter from 2021 to 2024 (Howard A. Kroll, David J. Steele, Steven E. Lauridsen and Bart L. Kessel), which ranged from $591 to $727 (and included at least a 15% discount to their standard rates), are well below the range of rates charged by partners in San Francisco. Steele Decl. ¶¶ 6(a)-(d), 7, 10. According to the American Intellectual Property Law Association *2023 Report of the Economic Survey* ("AIPLA Report"), the median hourly rate for intellectual property trial attorneys at the partner level in San Francisco was $810 in 2022. *See id.* ¶ 10 and Ex. 1. Furthermore, the hourly rates of the six partner-track attorneys who worked on this matter between 2021 and 2024 were also below the median hourly rate identified in the AIPLA Report. *Id.* ¶¶ 6(e)-(j), 11. According to the AIPLA Report, the hourly

---

[1] Pursuant to Civil L.R. 54-5(b)(3), the Steele Decl. describes in detail the experience and qualifications of the relevant timekeepers and the work performed on the Relevant Proceedings while also confirming that the hourly rates are reasonable and appropriately documented and, with the Kroll Decl., that the number of hours expended are reasonable and appropriately documented.

3

rate for partner-track attorneys with greater than ten years of intellectual property experience was $515 in 2022. *Id.* ¶ 11 and Ex. 1. The hourly rates of the two attorneys at Tucker Ellis with more than ten years of experience who worked on this matter from 2022 to 2024 (Jeffrey C. Sindelar and Dina Roumiantseva) ranged from $365 to $467.50 (and also included at least a 15% discount to their standard rates). *Id.* ¶¶ 6(e)-(f), 7. Further, according to the AIPLA Report, the median hourly rate for partner-track attorneys with fewer than five years of intellectual property law experience was $313 in 2022. *Id.* ¶ 11 and Ex. 1. The four attorneys at Tucker Ellis with less than five years of experience who worked on this matter from 2021 to 2024 (Helena M. Guye, Carter S. Ostrowski, Jacqueline D. Relatores, and Kathryn R. Pacheco) ranged from $177 to $289 (and also included at least a 15% discount to their standard rates). *Id.* ¶¶ 6(g)-(j), 7. Finally, although Tucker Ellis' attorneys' rates have increased yearly since 2022, the hourly rates charged to Plaintiffs, with one exception, have not changed since 2022. *Id.* ¶ 8.

The hourly rates of Plaintiffs' attorneys are also within the range that other courts in this district have deemed reasonable for attorneys with experience comparable to Plaintiffs' attorneys. *See*, *e.g.*, *Juno Therapeutics, Inc. v. Juno Biomedical, Inc.*, No. 17-CV-04196-JSC, 2018 WL 2021483, at *9 (N.D. Cal. Mar. 26, 2018) (approving hourly rates of $500 for fifth-year associate and $700 for partner with 18 years of experience), *report and recommendation adopted*, 17-CV-04196-HSG, 2018 WL 1993407 (N.D. Cal. Apr. 27, 2018); *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (awarding $300 to $490 an hour for associates and $475 to $975 an hour for partners); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (awarding $425 an hour for fifth-year associate and $875 an hour for a partner).

In short, the hourly rates charged by Plaintiffs' attorneys are at or below the prevailing market rates in the area. Additionally, given Plaintiffs' attorneys' reputation, the primary partners' substantial and focused trademark expertise,[2] and the outstanding results obtained in this case, the hourly rates charged to

---

[2] Plaintiffs' attorneys, with two exceptions, focus their practice on intellectual property matters. Messrs. Steele and Kroll are the partners at Tucker Ellis responsible for the management of this matter and the supervision of the other attorneys. Mr. Steele, who has over twenty-three years of intellectual property litigation experience and has taught Trademark Law and Internet Law as a Professor at Loyola Law School since 2001, is gold-band ranked in World Trademark Review's WTR 1000: The World's Leading Trademark Professionals ("WTR 1000"). Mr. Kroll, who has approximately forty-three years of litigation experience and over twenty-eight years of intellectual property litigation experience, is silver-

Plaintiffs are reasonable.

**B.     The number of hours expended by Plaintiffs' counsel is reasonable.**

Plaintiffs' attorneys spent 3,903.6 hours on the Relevant Proceedings from 2021 to 2024. Steele Decl. ¶¶ 13-14. These hours were reasonable given the scope and complexity of this litigation as well as given Plaintiffs' ultimate success in the Relevant Proceedings. *Id.* ¶¶ 16-19; Kroll Decl. ¶¶ 3-4. As this Court is well aware, Plaintiffs have succeeded in having a Special Master appointed, obtaining terminating sanctions against the OnlineNIC Defendants, and obtaining summary judgment against 35.CN on an alter ego theory, all of which resulted in a default judgment against all Defendants including an award of statutory damages of $3,135,000 and partial attorneys' fees. Hours expended are presumptively reasonable where, as here, the plaintiff obtained an "excellent result." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation."). The Ninth Circuit has recognized that, while the court necessarily has discretion in determining reasonableness, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

As detailed in the Steele Declaration, Plaintiffs seek reimbursement for the following attorney work related to the Relevant Proceedings:

| a. Fees related to the proceedings before the Special Master. | Sum of Hours | Sum of Bill Amount |
|---|---|---|
| Appointment of the Special Master | 105.3 | $66,584.33 |
| Hearings related to the Special Master | 48.1 | $29,350.93 |
| Assist Special Master with review of Defendants' data | 41.5 | $27,907.20 |
| Analyzing the Special Master's Reports | 75.1 | $49,835.50 |
| Enforcing payment of the Special Master | 125 | $68,753.95 |
| **Total** | **395** | **$242,431.91** |

---

band ranked in the WTR 1000. Additionally, Mr. Lauridsen, who has over seventeen years of intellectual property litigation experience, is bronze-band ranked in the WTR 1000. Steele Decl. ¶¶ 6(a)-(c).

| b. Fees related to the Motion for Sanctions. | Sum of Hours | Sum of Bill Amount |
|---|---|---|
| Drafting Motion for Terminating Sanctions | 233.9 | $119,060.78 |
| Analyzing/responding to Defendants' filings in response to the Motion for Terminating Sanctions | 158.7 | $96,375.97 |
| Hearings related to the Motion for Terminating Sanctions | 158.6 | $94,628.38 |
| Analyzing Court Orders related to the Motion for Terminating Sanctions | 123.9 | $65,669.98 |
| Analyzing/responding to Defendants' Motions for De Novo Review | 177.2 | $92,882.14 |
| Analyzing/responding to Defendants' Motion for an Evidentiary Hearing | 134 | $72,659.53 |
| Revising the Proposed Default Judgment after issuance of the R&R | 51.6 | $21,020.67 |
| Supplemental Briefing regarding Entry of Default Judgment | 98.1 | $49,738.51 |
| **Total** | **1,136** | **$612,035.96** |

| c. Fees related to the Motion for Default/Summary Judgment against 35.CN on the alter ego question. | Sum of Hours | Sum of Bill Amount |
|---|---|---|
| Drafting Motion for Default/Summary Judgment against 35.CN | 752.2 | $447,564.78 |
| Analyzing/responding to Defendants' filings in response to the Motion for Default/Summary Judgment | 438.8 | $256,790.10 |
| Hearing related to the Motion for Default/Summary Judgment against 35.CN | 192.5 | $106,137.22 |
| Analyzing Court Orders related to the Motion for Default/Summary Judgment | 42.7 | $24,430.90 |
| Joint Status Statement regarding Section IV of the R&R ("Relief") | 52 | $33,766.89 |
| Sealing of filings and records | 213.6 | $107,755.36 |
| Drafting Motion for Default Judgment | 257.5 | $130,989.80 |

| | | |
|---|---|---|
| Analyzing/responding to Defendants' filings in response to the Motion for Default Judgment | 299.7 | $166,456.04 |
| Prepare for and attend hearings on Motion for Default Judgment | 123.6 | $73,633.31 |
| **Total** | **2,372.6** | **$1,347,524.40** |
| | | |
| **Grand Total** | **3,903.6** | **$2,201,992.25** |

The hours spent by Plaintiffs' attorneys on the Relevant Proceedings were reasonable based on Defendants' litigation misconduct and the scope and complexities of implementing a strategy to (1) determine whether Defendants spoliated evidence, (2) seek terminating sanctions against the OnlineNIC Defendants, and (3) extend liability to 35.CN as the alter ego of the OnlineNIC Defendants.

**1. The time expended related to proceedings before the Special Master was reasonable.**

Plaintiffs' initial request for appointment of the Special Master in 2021 was necessitated by severe deficiencies associated with Defendants' production of ESI, "with a cumulative data size of 184 GB, a total of 545,013 files, and 442,680,623 database records." ECF No. 115 (Special Discovery Master's Data Destroyed or Withheld Report) at 2:7-8. Plaintiffs' attorneys spent hours examining and analyzing these problems, meeting and conferring with Defendants regarding the Special Master's appointment, attending hearings related to the Special Master, working with the Special Master on his analysis, analyzing the status reports of the Special Master, and enforcing the payment of the Special Master after the OnlineNIC Defendants failed to pay their share of the Special Master's fee. The hours spent were reasonable based on the size of the data being examined, the complexities involved with determining whether data was spoliated or withheld, and the skills necessary to properly evaluate this data. Steele Decl. ¶¶ 16-18.

**2. The time expended related to the Motion for Sanctions was reasonable.**

After the issuance of the Special Master's Report, Plaintiffs' attorneys spent hours researching, analyzing, and drafting their Motion for Terminating Sanctions (ECF Nos. 117 and 176) based on the OnlineNIC Defendants' egregious discovery misconduct in violation of Fed. R. Civ. P. 37(e)(2)(C), (b)(2)(A)(vi) and (c)(1)(C). In addition, hours were spent reviewing Defendants' various documents filed in relation to Plaintiffs' Motion for Terminating Sanctions as to the OnlineNIC Defendants, such as

35.CN's Opposition (ECF No. 183), the OnlineNIC Defendants' Motion to Withdraw their Non-Opposition (ECF Nos. 185-186), the OnlineNIC Defendants' Opposition (ECF No. 201), the OnlineNIC Defendants' Motion for De Novo Review of the R&R (ECF No. 229), 35.CN's Motion for De Novo Review of the R&R (ECF No. 228), Defendants' replies in support of these motions (ECF Nos. 232-233), and 35.CN's Motion for an Evidentiary Hearing and to Augment the Record for the R&R (ECF No. 238). Hours were also spent researching, analyzing, and drafting Plaintiffs' Opposition to the OnlineNIC Defendants' Motion to Withdraw their Non-Opposition (ECF No. 194), Plaintiffs' Replies in Support of the Motion for Terminating Sanctions (ECF Nos. 188, 206), Plaintiffs' Opposition to Defendants' Motions for De Novo Review (ECF No. 231), and Plaintiffs' Opposition to 35.CN's Motion for an Evidentiary Hearing (ECF No. 241). Hours were also spent preparing for and attending hearings related to these motions. Additionally, hours were spent analyzing and responding to the Court's orders regarding these motions, including in relation to supplemental briefing on the issue of entry of default judgment (ECF Nos. 277-279).

Defendants' destruction of evidence at such a massive scale, and the legal ramifications resulting from this destruction, raised uncommon and complicated issues requiring attorneys with requisite levels of experience and familiarity with the facts of this case to expend significant numbers of hours to ultimately resolve Plaintiffs' Motion for Sanctions in Plaintiffs' favor. Kroll Decl. ¶ 3. Given the volume of motions, oppositions, replies, and briefings necessary to resolve Plaintiffs' Motion for Sanctions, the hours spent were reasonable. *Id*.

### 3. The time expended related to the Motion for Default/Summary Judgment was reasonable.

In addition to the hours spent researching and analyzing the application of alter ego to the facts of this case, Plaintiffs' attorneys spent hours drafting and filing under seal the Motion for Default/Summary Judgment. ECF No. 299. Hours were also spent reviewing Defendants' various documents filed in relation to Plaintiffs' Motion for Default/Summary Judgment, including 35.CN's Opposition (ECF No. 318), 35.CN's Objections to Reply Evidence (ECF No. 327), and 35.CN's Sur-reply (ECF No. 335). Further, hours were spent in researching, analyzing, drafting, and filing under seal Plaintiffs' Reply in Support of the Motion for Default/Summary Judgment (ECF No. 324) and Objections to Sur-reply Evidence

(ECF No. 340). Hours were also spent preparing for and attending the hearing on Plaintiffs' Motion for Default/Summary Judgment and analyzing and responding to the Court's orders regarding this Motion, including (1) drafting a joint status statement regarding Section IV of the R&R ("Relief") (ECF No. 365) and (2) meeting and conferring with Defendants regarding the sealing of records in this case and re-filing redacted versions of records as ordered by the Court. *See* ECF No. 353.

Finally, hours were spent researching, analyzing, and drafting Plaintiffs' Motion for Default Judgment Against All Defendants (ECF No. 379); analyzing Defendants' Opposition to the Motion for Default Judgment Against All Defendants (ECF Nos. 380, 382, 384-385); researching, analyzing, and drafting Plaintiffs' Reply in support of the Motion for Default Judgment Against All Defendants (ECF No. 388); meeting and conferring with Defendants over the terms of the Proposed Permanent Injunction pursuant to this Court's April 30, 2024 Order (ECF No. 389); and preparing for and attending the hearing on May 3, 2024.

As a result of expending significant hours to these tasks, Plaintiffs were able to present "overwhelming evidence" (ECF No. 357 at 20:10-13) successfully demonstrating 35.CN's use of the OnlineNIC Defendants as shell companies. Specifically, facts obtained through discovery and facts obtained from public records in the United States and China revealed that 35.CN is the alter ego of the OnlineNIC Defendants and that 35.CN's employees participated in the spoliation of evidence. Applying these "voluminous" (ECF No 357 at 1:16) and improperly designated "confidential" facts (*see* ECF No. 353 at 3:19-20) to an alter ego analysis took significant hours by experienced attorneys well-acquainted with the facts of this case. To succeed on Plaintiffs' Motion for Default/Summary Judgment, Plaintiffs' attorneys were required to thoroughly examine Defendants' discovery responses, deposition testimony, communications with ICANN, tax returns, bank statements, contracts, and financial statements. By way of illustration, to demonstrate Defendants' commingling of funds, Plaintiffs' attorneys were required to cross-check 35.CN's employee list (originally in Chinese) with the discovery responses of the OnlineNIC Defendants itemizing certain loans. All of the hours spent, including outlining why default judgment against all of the Defendants entitled Plaintiffs to statutory damages of $3,135,000, were reasonable due to the complexity of piecing together alter ego facts, drafting motions and responding to Defendants' oppositions. Kroll Decl. ¶ 4.

The time expended on these matters was also justified based on the excellent results obtained by Plaintiffs. *See Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."); *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("'the most critical factor' in determining the reasonableness of the fee award 'is the degree of success obtained'") (quoting *Hensley*, 461 U.S. at 436).

### C. Plaintiffs' costs were necessary and reasonable.

Plaintiffs' costs incurred in this action, $51,045.16, were also necessary and reasonable. As detailed in the table below, these costs entail filing fees (Civil L.R. 54-3(a)(1)), service of process, including costs occurred in effecting service through the Hague Convention (Civil L.R. 54-3(a)(2)), fees related to the 30(b)(6) depositions of Defendants OnlineNIC and ID Shield (Civil L.R. 54-3(c)(1) and (c)(5)), and the cost incurred by Plaintiffs of producing ESI by KPMG in this case (Civil L.R. 54-3(d)(2)).

| Category of Costs | Sum of Bill Amount |
|---|---|
| Filing fees | $400 |
| Service of process | $1,745 |
| Depositions | $21,550.50 |
| Document Production | $27,349.66 |
| **Total** | **$51,045.16** |

Steele Decl. ¶ 21, Exs. 24 and 25. Each of these costs was necessary to prosecute this action, and Plaintiffs should be awarded the full amount of their costs requested. Contemporaneously with the filing of this motion, and pursuant to 28 U.S.C. § 1920, Civil L.R. 54-1, and Fed. R. Civ. P. 54(d)(1), Plaintiffs are filing their Bill of Costs.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs should therefore be awarded the full amount of their fees totaling $2,201,992.25 as well as their costs totaling $51,045.16.

DATED: May 17, 2024                                Tucker Ellis LLP

By: /s/David J. Steele
David J. Steele
Attorneys for Plaintiffs
META PLATFORMS, INC. (fka FACEBOOK, INC.)
and INSTAGRAM, LLC