TUCKER ELLIS LLP
David J. Steele SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street, Forty-Second Floor
Los Angeles, CA 90071
Telephone:   213.430.3400
Facsimile:   213.430.3409

Attorneys for Plaintiffs
META PLATFORMS, INC. (fka FACEBOOK, INC.)
and INSTAGRAM, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC<br><br>          Plaintiffs,<br><br>     v.<br><br>ONLINENIC INC.; DOMAIN ID SHIELD SERVICE CO., LIMITED; and XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD.<br><br>          Defendants. | Case No. 3:19-cv-07071-SI<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES**<br><br>DATE: None (pursuant to Court order)<br>TIME: None (pursuant to Court order)<br>Hon. Susan Illston |

# I. INTRODUCTION

Plaintiffs' Motion for Attorneys' Fees (ECF No. 395 ("Motion")) adequately documented the requested attorneys' fees, and the hourly rates and hours expended by Tucker Ellis LLP ("Tucker Ellis") are reasonable. In support of the Motion, Plaintiffs filed the Declaration of David J. Steele (ECF No. 395-1 ("Steele Decl.")), detailing categories of the work performed by Plaintiffs' attorneys, providing multiple tables summarizing the numbers of hours spent by each attorney in each category, and attaching redacted versions of the attorneys' contemporaneous time record entries. *See* ECF Nos. 395-3 to 395-24.

In their Opposition to Plaintiffs' Motion For Attorneys' Fees (ECF No. 403 ("Opposition")),[1] Defendants do not dispute that the categories of work Plaintiffs described properly relate to the proceedings before the Special Master, the Motion for Sanctions, and the Motion for Default/Summary Judgment against 35.CN on the alter ego question (the "Relevant Proceedings"), or that the hourly rates charged by Plaintiffs' attorneys are reasonable. Instead, Defendants merely claim—without identifying specific defects or objections—that the fees requested are "globally unreasonable." Opp. at 12:16. Defendants' lack of specificity pervades and dooms the Opposition. *See, e.g., Cotton v. City of Eureka*, 889 F. Supp. 2d 1154, 1176 (N.D. Cal. 2012) ("The party opposing fees must specifically identify defects or deficiencies in the hours requested. Conclusory and unsubstantiated objections are insufficient to warrant a reduction in fees."). Defendants also claim that Plaintiffs' redactions for attorney-client and work product privilege prevent the Court from determining the reasonableness of Plaintiffs' fee requests. Opp. at 14:12-17. Not only are redactions of attorney-client and work product privilege proper, but the Court has the discretion to inspect Plaintiffs' unredacted billing records *in camera* in order to make such a reasonableness determination. *See* L.R. 54-5(b).

Ultimately, "[t]he district court's inquiry must be limited to determining whether the fees requested by this particular legal team are justified for the particular work performed and the results achieved in this particular case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008). Given the success

---

[1] Although Defendant Leascend Technology Co., Ltd. fka Xiamen 35.Com Internet Technology Co., Ltd. ("35.CN") filed the Opposition, its alter egos and co-defendants OnlineNIC Inc. ("OnlineNIC") and Domain ID Shield Service Co., Limited ("ID Shield") joined in the Opposition. ECF No. 404.

Plaintiffs' have achieved in obtaining terminating sanctions, summary judgment on alter ego, and default judgment against all Defendants resulting in a statutory damages award of $3,135,000, the Court should reject Defendants' Opposition and award Plaintiffs the full amount of their requested fees totaling $2,201,992.25 and their costs totaling $51,045.16.

## II. ARGUMENT

### A. Plaintiffs' attorneys' fees are adequately documented.

Defendants argue that Plaintiffs failed to provide adequate documentation to support their request for attorneys' fees because Plaintiffs partially redacted their attorneys' descriptions of work performed. Opp. at 14:12-13. While parties seeking fees bear the initial burden of establishing the hours expended litigating the case and must provide detailed time records documenting the tasks completed and the amount of time spent (*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007)), they "need not provide comprehensive documentation to prevail" (*Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1169 (N.D. Cal. 2015)). Instead, "[t]hey need only 'keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed.'" *United Steelworkers of Am. v. Ret. Income Plan For Hourly-Rated Emps. of ASARCO, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008) (quoting *Hensley*, 461 U.S. at 441 (Burger, C.J., concurring)).

Plaintiffs have met this initial burden. Specifically, Plaintiffs submitted a detailed declaration with descriptions of the work performed by Tucker Ellis attorneys for the fees incurred by Plaintiffs related to the Relevant Proceedings.[2] Additionally, Plaintiffs submitted various tables summarizing the numbers of hours spent by each attorney, divided into categories related to the Relevant Proceedings. Steele Decl. ¶ 14. These submissions alone satisfy Plaintiffs' burden. *See Kilopass,* 82 F. Supp. 3d at 1170 (finding fee application sufficient despite not including billing records)*; Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (finding fee application sufficient even though it merely provided a summary of the time spent on a broad category of tasks); *Piping Rock Partners, Inc. v. David Lerner*

---

[2] As explained in the Steele Decl., Tucker Ellis attorneys' time record entries in this case were reviewed and organized into categories of work related to the Relevant Proceedings. Steele Decl. ¶ 13.

*Assocs., Inc.*, No. 12-CV-04634-SI, 2015 WL 4932248, at *4 (N.D. Cal. Aug. 18, 2015) ("In fact, a party may prevail on a motion for attorneys' fees without submitting any billing records whatsoever."). Nevertheless, because courts in this district "have expressed a 'preference' for contemporaneous records" (*Fischer*, 214 F.3d at 1121), Plaintiffs also submitted their attorneys' time record entries, organized by category of work performed and redacted where necessary to protect descriptions reflecting attorney client communications and/or attorney work product (Steele Decl. ¶ 12). This documentation further demonstrates the hours were "reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter." *Hensley*, 461 U.S. at 431 (quotation omitted).

Defendants do not dispute that the categories of work described in the Steele Decl. are properly related to the Relevant Proceedings. Rather, Defendants object generally that redactions to the time record entries prevent the Court from determining whether the fees sought are reasonable. Opp. at 6:1-4; 14:12-17. But the partial redactions here were necessary to protect descriptions reflecting attorney client communications and/or attorney work product (Steele Decl. ¶ 12), and such redactions are permissible as long as they "do not impair the ability of the court to judge whether the work was an appropriate basis for fees." *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004). While Defendants cherry pick sixteen rows from Plaintiffs' billing records of over 1,200 rows (Opp. at 8:2-21), the vast majority of Plaintiffs' redacted entries (indeed, eleven of Defendants' sixteen "limited examples") are only partially redacted, leaving descriptions such as "Research" and "Analyze" unredacted. Moreover, all of the time record entries otherwise disclose the name of the attorney performing each task, the date upon which the work was performed, and the number of hours spent on that particular task. Coupled with the detailed description of each category of work performed provided in the Steele Decl. ¶ 13, Tucker Ellis' contemporaneous time records properly "disclose[] the time spent, the nature of the work [], and thus the appropriateness of the fee request" and are therefore "sufficiently detailed." *Parkridge Ltd. v. Indyzen, Inc.*, No. 16-CV-07387-JSW(LB), 2020 WL 9422351, at *5 (N.D. Cal. May 8, 2020) (approving time entry of "research relevant authorities re [REDACTED]"), *report and recommendation adopted*, No. 16-CV-07387-JSW, 2020 WL 9422399 (N.D. Cal. June 4, 2020).

Defendants also suggest Plaintiffs could or should have avoided the need for redactions by filing

3

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES
CASE NO. 3:19-cv-07071-SI

Plaintiffs' attorneys' billing records under seal and supplying unredacted versions to Defendants with an "attorneys' eyes only" designation pursuant to the operative protective order. Opp. at 7:24-8:1. But doing so would waive privilege, and requiring Plaintiffs to do so to recover fees is contrary to law and should be rejected. *See Democratic Party of Washington State*, 388 F.3d at 1286 (litigants are "entitled for good reason to considerable secrecy about what went on between client and counsel, and among counsel"). Importantly, "it is the Court, not [Defendant], that must determine whether the fees requested are reasonable." *O'Bannon v. Nat'l Collegiate Athletic Ass'n,* No. C 09-3329 CW, 2016 WL 1255454, at *7 (N.D. Cal. Mar. 31, 2016), *aff'd*, 739 F. App'x 890 (9th Cir. 2018). Indeed, it is well within the Court's discretion to require an *in camera* inspection of Plaintiffs' unredacted contemporary time records, "as the Judge deems appropriate." *See* L.R. 54-5(b).

Defendants also argue that Plaintiffs failed to provide adequate documentation of their fees because "it is clear that [Plaintiffs] are using block and duplicative billing among multiple attorneys." Opp. at 8:22-23; *see also id.* at 12:24-25 ("including duplicative block billing entries by multiple attorneys"), 14:27-15:3. Yet, the billing records attached to the Steele Decl. (ECF Nos. 395-3 to 395-24) show that Plaintiffs did not engage in block billing because each time entry reflects one specific task. *See Mendez v. Cty. of San Bernardino*, 540 F.3d 1109, 1129 n.2 (9th Cir. 2008) (defining "block billing" as "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks."), *overruled on other grounds by Arizona v. ASARCO LLC,* 773 F.3d 1050 (9th Cir. 2014); *see also Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 988–89 (N.D. Cal. 2017) ("The Court has reviewed the time entries at issue, in which counsel include multiple tasks within a single time entry").[3] For example, Defendants argue that the description of work "Draft objections to sur-reply evidence" constitutes block billing (Opp. at 8:22-27), but that description encompasses a single task and is "detailed enough for the Court to assess the reasonableness of the hours billed." *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093,

---

[3] Defendants define "block billing" as "where attorneys bill numerous hours in one time entry slip." Opp. at 14:27-15:1. To the extent Defendants are claiming that billing a number of hours for one specific task is "block billing," Defendants' definition is inconsistent with Ninth Circuit law and should be ignored.

1103 (N.D. Cal. 2010). As such, Defendants' objection that Plaintiffs engaged in "block billing" should also be rejected by the Court.

**B.   Plaintiffs' attorneys' hourly rates are reasonable.**

Defendants "[do] not dispute the attorney rates per se." Opp. at 14:17. Indeed, Defendants do not contest the reputation and experience of the Tucker Ellis attorneys or that the hourly rates charged were below the median hourly rate for intellectual property trial attorneys in San Francisco, or within the range that other courts in this district have deemed reasonable for attorneys with experience comparable to Plaintiffs' attorneys.

Rather, Defendants argue, without specificity or legal authority, that "a rate or amount may be unreasonable if the task is not performed at the appropriate attorney/skill level (e.g. a partner billing excessive time for a clerical task)." *Id.* at 14:17-19. Because Defendants do not identify any specific task allegedly not performed at the appropriate attorney/skill level, the Court should reject Defendants' argument for failing to "provide specific objections to specific billing entries." *Parkridge*, 2020 WL 9422351, at *4. Regardless, given the significant discount applied to Plaintiffs' attorneys' hourly rates for work performed in this case (Mot. at 5:19, 6:4, 6:9-10; Steele Decl. ¶¶ 7-8), any concerns about "top-heavy" billing should be minimal. *See CliniComp Int'l, Inc. v. Cerner Corp.*, No. 17-cv-02479-GPC (DEB), 2023 WL 2604816, at *5 (S.D. Cal. Mar. 22, 2023) ("In light of those discounts, Cerner was essentially paying reasonable senior associate-level hourly rates for the work of two of three partners in this case.").

**C.   The hours expended by Plaintiffs' attorneys were reasonable.**

Defendants argue, without any specificity, that the number of hours spent by Tucker Ellis are "globally unreasonable" (Opp. at 12:16), "shocking" (*id*. at 14:2), "eye-popping" (*id*. at 14:4), and "appear unreasonable on their face" (*id*. at 13:7). These general and unsupported statements fail to justify any reduction of Plaintiffs' fee request. "After the party seeking fees has come forward with its evidence supporting the time billed, '[t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits.'" *Cotton,* 889 F. Supp. 2d at 1176 (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992)). Further, "[t]he party

5

opposing fees must specifically identify defects or deficiencies in the hours requested. Conclusory and unsubstantiated objections are insufficient to warrant a reduction in fees." *Id.* Defendants' bald assertions fall short of meeting their burden in this regard. *See McGrath v. Cty. of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995) ("[Defendant] may not rely on conclusory challenges to plaintiffs' evidence"); *Franchek v. Workrite Ergonomics, LLC*, No. 16-cv-02789-JSW (DMR), 2022 WL 3137928, at *9 (N.D. Cal. May 9, 2022) ("Defendants do not object to any particular timeslips to support their bald assertion that these hours were unreasonable; their argument can be rejected on that basis alone.").

Instead of specifically identifying defects or deficiencies, Defendants make sweeping assertions that the hours expended by Plaintiffs' attorneys are "excessive, redundant, or otherwise unnecessary." Opp. at 12:24. These conclusory objections ignore the magnitude and complexity of the litigation. *Cotton*, 889 F. Supp. 2d at 1176 (district court "is obligated to review the time billed and assess whether it is reasonable in light of the work performed and the context of the case"). Indeed, Defendants repeatedly emphasized in the Opposition to Plaintiffs' Motion for Default Judgment (ECF No. 384) that "[t]his has been a complex case involving novel legal issues." *See, e.g., id.* at 7:19-21; ECF No. 403-1 (Declaration of Karl Kronenberger) ¶ 3 ("This case has involved disputed litigation and novel legal issues."). And, as the Court is well aware, this litigation was unnecessarily drawn out over many years due in no small part to 35.CN's persistent efforts to re-litigate numerous issues. *See* ECF No. 393 (Order Granting Plaintiffs' Motion for Default Judgment) at 1:17-18 ("Many of the issues presented in the current motion have already been litigated and/or decided in some form during the lengthy history of this case."). Given the length of the case, the necessary motion practice, the complexity of the issues presented, the manner in which Defendants litigated, and the excellent results achieved by Plaintiffs, the hours expended by Plaintiffs' attorneys were necessary and reasonable. *See Cataphora Inc. v. Parker*, 848 F. Supp. 2d 1064, 1070 (N.D. Cal. 2012) ("[A]bsent a challenge to specific hours, I cannot fault Plaintiff for incurring fees related to the prosecution of its lawsuit given Defendants' litigation strategy."); *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) ("[Defendant] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.").

Even Defendants' two "examples" of selected entries purportedly demonstrating duplicative fees lack any level of specificity. *See* Opp. at 8:22-9-28. Defendants first object to certain entries related to

Plaintiffs' attorneys' work performed between June 25, 2023 and June 30, 2024 in connection with Plaintiffs' objections to 35.CN's Sur-Reply evidence as demonstrating "duplicative billing among multiple attorneys." Opp. at 8:22-9:6. Defendants fail to explain, however, why the twelve entries it highlights are excessive or duplicative. *See Citizens for Free Speech, LLC v. Cnty. of Alameda*, No. C 18-00834 SBA, 2019 WL 11005503, at *11 (N.D. Cal. Jan. 14, 2019), *aff'd*, 953 F.3d 655 (9th Cir. 2020) ("[I]n the absence of any specific examples of the allegedly redundant billing, Plaintiffs' objections are unavailing."); *Moreno,* 534 F.3d at 1116 (where it is difficult for the court to determine "the precise spot where a fee request is excessive," "the burden of producing a sufficiently cogent explanation can mostly be placed on the shoulders of the losing parties").

The time entries at issue are not duplicative and, in context, plainly reflect Plaintiffs' attorneys' "legitimate efforts at advancing the litigation and advocating for their client." *ADG Concerns, Inc. v. Tsalevich LLC*, No. 18-CV-00818-NC, 2018 WL 4241967, at *14 (N.D. Cal. Aug. 31, 2018). Plaintiffs maintain that 35.CN's Sur-Reply, filed on June 23, 2023, introduced new evidence and improper arguments unrelated to the topics for which the Court granted leave. *See generally* ECF No. 341. Pursuant to Local Rule 7-3(d)(1), Plaintiffs were required to file and serve their objection to this new evidence within 7 days, by June 30, 2023. Given this short timeline, and given the factual complexities presented, it should come as no surprise that Plaintiffs' attorneys divided the necessary labor amongst multiple (five) members of the Tucker Ellis team with varying levels of experience and familiarity with this case. *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989) ("Here, the participation of more than one attorney constituted a reasonable necessity, given the complexity of legal issues and the breadth of factual evidence involved in this case."). Indeed, "[s]uch division of labor reflects typical law firm practice and represents a reasonable effort to maximize the attorneys' comparative efficiencies." *Mardirossian v. Guardian Life Ins. Co. of Am.*, 457 F. Supp. 2d 1038, 1050 (C.D. Cal. 2006) (collecting cases). *See also Mitchell v. Metro. Life Ins. Co.*, No. CV 05-00810 DDP (RNBx), 2008 WL 1749473, at *3 (C.D. Cal. Apr. 7, 2008) ("It is not unusual for one attorney to draft a brief, for another attorney to review and revise the brief, and then for the drafting attorney to make final edits and changes."). Defendants' vague suggestion that this level of effort was unnecessary for a five-page submission is equally unavailing since the "[l]ength of a brief is not a reliable indicator of how much time reasonably was incurred in preparing it." *Bobol v. HP*

*Pavilion Mgmt.*, No. 04-CV-00082-JW, 2006 WL 927332, at *4 n.5 (N.D. Cal. Apr. 10, 2006).

Similarly, Defendants provide a second "limited example" of purportedly duplicative entries where "multiple partners and attorneys spent numerous hours analyzing a court order (and related tasks) for repeated days." Opp. at 9:7-8. Again, this generalized objection does not bear out when examining the entries, especially in light of the surrounding context. As an initial matter, Defendants' insinuation that the entries reflect work performed in relation to a single court order is demonstrably false. The entries span across multiple months and the narratives clearly reflect work in relation to different Court orders. *Id.* at 9:9-28. For example, Defendants highlight entries from March 2022 where the narrative clearly described work related to Judge van Keulen's Report and Recommendation (ECF No. 225 ("R&R")). Defendants also highlight entries from October 2022 reflecting work related to this Court's Order adopting the R&R and requesting further briefing on the issue of default judgment (ECF No. 276). Finally, Defendants highlight entries from December 2022 describing analysis of the Court's Order delaying entry of default judgment (ECF No. 291). Critically, Defendants again fail to provide a "sufficiently cogent explanation" as to why any attorneys' work in relation to these Court orders—all of which concerned case-dispositive issues—was unnecessary or duplicative. *Moreno,* 534 F.3d at 1116. Given the significance of these orders to the case, it is plainly reasonable for multiple attorneys to spend some amount of time reviewing and analyzing each. *See Kim*, 871 F.2d at 1435 n.9.

Ultimately, Defendants' "examples" are not duplicative fee entries. Instead, they reflect "legitimate efforts at advancing the litigation." *ADG Concerns, Inc.*, 2018 WL 4241967, at *14. Plaintiffs properly staffed this case in light of the factual and legal complexities. The Ninth Circuit cautions that "The court . . . may not attempt to impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests." *Moreno*, 534 F.3d at 1115. The Court should decline to "second-guess the staffing decisions of Plaintiff's counsel, given that the approach taken by counsel was successful." *Cruz v. Starbucks Corp.*, No. C-10-01868 JCS, 2013 WL 2447862, at *8 (N.D. Cal. June 5, 2013). Finally, any concern about "high number of hours is also offset by the relatively modest hourly rates" Plaintiffs' attorneys charged in this matter. *ADG Concerns, Inc.*, 2018 WL 4241967, at *14. Therefore, Defendants' conclusory objections to Plaintiffs' fee request should be rejected.

### D. Plaintiffs' costs are adequately documented and reasonable.

Finally, Defendants argue that "Plaintiffs' requested costs also appear excessive (in the dollar amounts) based on the documentation provided, i.e., $51,000 in costs, including for $1,700 for service, $21,000 for depositions, $27,000 for document productions." Opp. at 14:5-7. Defendants fail, however, to explain why these expenses are excessive.

The costs incurred by Tucker Ellis and KPMG, and billed to Plaintiffs, are specifically itemized in ECF Nos. 395-25 and 395-26.[4] These costs are reasonable expenses incurred to serve Defendants in Hong Kong and China, depose Defendants by Zoom, and process, store, and produce documents in discovery. Plaintiffs paid $695 to serve ID Shield in Hong Kong pursuant to the Hague Convention. Plaintiffs also paid $1,050 to serve 35.CN in China pursuant to the Hague Convention. Neither of these expenses for service appear excessive given the requirement to have the complaint translated into Cantonese for ID Shield and into Mandarin for 35.CN. Indeed, Plaintiffs needed to translate both the First Amended Complaint and the Second Amended Complaint into Mandarin because the Central Authority in China would have rejected the submissions otherwise. *See* ECF No. 107 at 2:14-17.

Furthermore, Plaintiffs took the court-ordered deposition of OnlineNIC over two days in July 2021. OnlineNIC designated Carrie Yu to testify on its behalf. Based on OnlineNIC's request that an interpreter be present at both depositions, Plaintiffs paid Amanda Lin $5,600 for her interpretation of the two days of deposition. In addition, Plaintiffs paid Veritext for its services to conduct the deposition by Zoom ($8,880.60), for videotaping the deposition ($1,208.90), for concierge technical support for the Zoom deposition ($150), and for transcripts of the deposition ($3,976). Finally, although Carrie Yu was also designated to testify on behalf of ID Shield, she failed to appear at the deposition, which caused a video cancellation expense ($945) and reporting services cancellation expense ($945). Since Defendants fail to explain why any of these incurred costs are excessive, the Court should reject Defendants'

---

[4] Defendants misleadingly argue that the only invoices Plaintiffs submitted were the fully redacted invoices from KPMG to Plaintiffs. *See* Opp. at 10:8-9 ("Plaintiffs have not provided other unredacted invoices."). Plaintiffs remaining costs are adequately documented with Tucker Ellis' record of costs billed to Plaintiffs for the expenses incurred for filing the Complaint, service on ID Shield and 35.CN and depositions of OnlineNIC and ID Shield. ECF No. 395-25.

objections to these necessary and reasonable costs.

Finally, KPMG was retained by Plaintiffs to produce responsive documents to Defendants' document requests. Since May 2021, Plaintiffs have incurred necessary and reasonable costs to process, store, and produce documents in discovery for which Plaintiffs paid KPMG $27,349.66. KPMG's invoices adequately itemize these expenses. ECF No. 400-3. Again, the Court should reject Defendants' nonspecific objections to these necessary and reasonable costs.

## III.   CONCLUSION

For the reasons set forth above, and in Plaintiffs' Motion, the Court should award Plaintiffs the full amount of their requested fees totaling $2,201,992.25 and costs totaling $51,045.16.

DATED: June 7, 2024                                     Tucker Ellis LLP


By: /s/David J. Steele
　　David J. Steele
　　david.steele@tuckerellis.com
　　Attorneys for Plaintiffs
　　META PLATFORMS, INC. (fka
　　FACEBOOK, INC.)
　　and INSTAGRAM, LLC