TUCKER ELLIS LLP
David J. Steele SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:        213.430.3400
Facsimile:        213.430.3409

Attorneys for Plaintiffs,
META PLATFORMS, INC. (fka FACEBOOK, INC.)
and INSTAGRAM, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ONLINENIC INC.; DOMAIN ID SHIELD SERVICE CO., LIMITED; and XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD., <br><br> Defendants. | Case No. 3:19-cv-07071-SI <br><br> **PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER FREEZING ASSETS OF DEFENDANT LEASCEND TECHNOLOGY CO., LTD. F/K/A XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD.** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Hon. Susan Illston |

NOTICE OF EX PARTE APPLICATION

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that, pursuant to Civil Local Rule 7-10 and Rule 65 of the Federal Rules of Civil Procedure, this Court's inherent authority, and the All Writs Act, Plaintiffs Meta Platforms, Inc. and Instagram, LLC hereby move ex parte for a temporary restraining order freezing the assets of Defendant Leascend Technology Co., Ltd. fka Xiamen 35.Com Internet Technology Co., Ltd. ("35.CN") in order to prevent 35.CN from dissipating its assets and to ensure satisfaction of any judgment that may be entered based on the Court's Order Granting Plaintiffs' Motion For Default Judgment (ECF No. 393).

This ex parte application is based on 35.CN's publicly filed documents in China showing that on December 10, 2024, 35.CN's Board of Directors approved the sale of 35.CN's registrar business and accreditation to Chengdu Yuyuling Internet Technology Co., Ltd. for RMB 48.2389 million Yuan (or approximately $6,600,000). **Shareholder approval of this sale is scheduled to be held on Sunday, December 22, 2024 (December 23 in China)**. 35.CN's alter ego, Defendant OnlineNIC Inc., has a history of violating court orders and attempting to dissipate its assets to avoid financial responsibilities in this and other actions, raising concerns that 35.CN will likewise dissipate its assets to avoid its liabilities in this matter.

This ex parte application is based on this Notice, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Helena M. Guye, any oral argument heard by the Court, such additional evidence as may be submitted to the Court, matters as to which the Court may take judicial notice, and such other matters as the Court deems proper.

Plaintiffs' counsel met and conferred with 35.CN's counsel and gave notice to all Defendants' counsel prior to this application's filing with further notice being delivered via CM/ECF upon the filing of this application. Declaration of Helena M. Guye ¶ 9.

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED: December 18, 2024 | Tucker Ellis LLP |
| 3 | | By:  /s/David J. Steele |
| 4 | | David J. Steele |
| 5 | | Howard A. Kroll<br>Steven E. Lauridsen |
| 6 | | |
| 7 | | |
| 8 | | Attorneys for Plaintiffs,<br>META PLATFORMS, INC. (fka FACEBOOK, INC.) |
| 9 | | and INSTAGRAM, LLC |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Emergency relief from the Court is essential because Defendant Leascend Technology Co., Ltd. fka Xiamen 35.Com Internet Technology Co., Ltd. ("35.CN") is attempting to dissipate its assets by selling off its registrar business and accreditation. Specifically, 35.CN filed public documents showing that on December 10, 2024, 35.CN's Board of Directors approved the sale of 35.CN's registrar business and accreditation to Chengdu Yuyuling Internet Technology Co., Ltd. ("Yuyuling") for RMB 48.2389 million Yuan (or approximately $6,600,000). ***Shareholder approval of this sale is scheduled to be held on Sunday, December 22, 2024 (December 23 in China)***.

On May 3, 2024, the Court granted Plaintiffs' motion for default judgment finding that "[t]he Court will award plaintiffs $3,135,000 in statutory damages under the ACPA." ECF No. 393 at 10:9-10. Pending before the Court is Plaintiffs' Motion for Attorneys' Fees seeking fees of $2,201,992.25 and costs of $51,045.16. ECF No. 395 at 12:25-26. It appears that 35.CN is selling off its assets, potentially to avoid satisfaction of the eventual default judgment and award of attorneys' fees and costs.

Given that 35.CN is attempting to sell its valuable registrar business and accreditation, Plaintiffs fear that 35.CN is frustrating Plaintiffs' ability to recover any judgment that the Court may enter. Consequently, Plaintiffs request that the Court enter a temporary restraining order freezing 35.CN's assets to ensure that, among other things, 35.CN is prohibited from selling off its registrar business and accreditation.

## II. STATEMENT OF FACTS WARRANTING EMERGENCY RELIEF

This Court found that Defendants OnlineNIC Inc. ("OnlineNIC") and Domain ID Shield Service Co., Limited ("ID Shield") are mere shell companies for and alter egos of 35.CN, collectively acting as a single business enterprise. ECF No. 357. Defendants (1) concealed and misrepresented the identity of the responsible ownership and management, (2) used the same employees and offices, (3) disregarded corporate formalities, and (4) commingled funds. *Id*. at 7-20. This Court further found that Defendants registered, used, or trafficked in thirty-five domain names that are identical or confusingly similar to Plaintiffs' trademarks. This Court has stated that it will award Plaintiffs $3,135,000 in statutory damages, along with attorneys' fees and costs. ECF No. 393 at 8-10. The parties are awaiting the Court's decision

on Plaintiffs' Motion for Attorneys' Fees and entry of final judgment. ECF No. 395.

35.CN owns a domain name registrar accredited by the Internet Corporation for Assigned Names and Numbers ("ICANN") and subject to ICANN's Registrar Accreditation Agreement that sells, registers, and transfers domain names for third parties. ECF No. 109 (Second Amended Complaint, ¶¶ 9, 11, 26). 35.CN's registrar accreditation (IANA No. 4163) is currently held by 35.CN's wholly-owned subsidiary Xiamen 35.com Information Co., Ltd. ("35.com Info"). Declaration of Helena M. Guye ("Guye Decl.") ¶ 8, Ex. 6. 35.com Info was established on June 1, 2023, (*id.* ¶ 4) and, since that date, 35.CN appears to have transferred most if not all its assets relating to its domain name registration business to 35.com Info (*id.* ¶¶ 4-5).

Plaintiffs recently discovered that 35.CN intends to dissipate assets by selling off its domain name registration business and accreditation. Guye Decl. ¶¶ 2-3, 8; Exs. 1, 6. 35.CN announced[1] that on December 11, 2024, its Board of Directors approved the sale of 35.com Info to Yuyuling for RMB 48.2389 million Yuan. *Id.* ¶ 3; Ex. 1.

Yuyuling was established on November 25, 2024, and its controlling shareholder was established on November 22, 2024, "both of which have no financial data at present." Guye Decl. ¶ 3; Ex. 1. According to the announcement, "[t]his transaction still needs to be submitted to [35.CN's] shareholders' meeting for consideration. The shareholders' meeting is requested to authorize the company's management to handle all subsequent matters related to the transaction including but not limited to signing the transaction agreement and handling the property rights transfer procedures." *Id*. **Based on 35.CN's public announcement in China on December 18, 2024, shareholder approval of this sale is scheduled to be held on December 22, 2024 (December 23 in China).** *Id.* ¶ 7; Ex. 5.

In other public announcements, 35.CN identified the domain names and trademarks held by 35.com Info which are part of the assets being sold. Guye Decl. ¶¶ 4-5; Exs. 2-3. And in another public announcement, 35.CN misrepresented that "[t]he equity interests of [35.com Info] to be sold are clear and there is no mortgage, pledge or any other restrictions on transfer. **There is no litigation**, arbitration or judicial measures such as seizure and freezing, and **there are no other circumstances that hinder the**

---

[1] 35.CN's public announcement on December 12, 2024, along with a certified translation, is attached to the Guye Decl. as Exhibit 1.

*transfer of ownership.*" *Id.* ¶ 6, Ex. 4 (emphasis added).

## III. PRIOR ORDERS RELATING TO DISSIPATION OF ASSETS

This is not the first time that Defendants have sought to dissipate their assets.[2] In July 2021, Plaintiffs discovered that OnlineNIC initiated the transfer of its domain name portfolio to 35.CN. On July 23, 2021, Judge van Keulen granted in part Plaintiffs' motion for a temporary restraining order due to "a likelihood of immediate and irreparable injury by dissipation of assets" by OnlineNIC and ID Shield if a TRO does not issue. ECF No. 132 at 1. Specifically, "except to pay costs directly necessary to maintain the day-to-day operations of their business (e.g., renewing customer domain names, paying for servers, paying any employees)" OnlineNIC and ID Shield were ordered not to transfer or dissipate their assets by, among other things, "[s]elling, assigning, or otherwise transferring any equity Defendants own in any other companies" *Id.* at 1-2, ¶¶ I, I.8.

On July 27, 2021, Plaintiffs, OnlineNIC, and ID Shield entered into a Stipulation to convert the Temporary Restraining Order Freezing Assets "into a preliminary injunction that contains identical terms as stated in the TRO" that "shall remain in effect until entry of Defendants' default judgment." ECF No. 141 ¶ 7. OnlineNIC and ID Shield further agreed that they "shall not challenge or seek to dissolve the TRO or Preliminary Injunction (or any permanent injunction later issued in this action), or any portions thereof, for any reason, except upon stipulation of the parties." *Id.* ¶ 7.b. Judge van Keulen approved and entered the Stipulation on July 28, 2021. ECF No. 143.

## IV. EMERGENCY RELIEF IS APPROPRIATE TO PREVENT 35.CN FROM DISSIPATING ITS ASSETS.

### A. The Court has the equitable power and inherent authority to freeze 35.CN's assets.

The Court has the authority, once personal jurisdiction of a party is obtained, to freeze property to preserve the status quo and prevent dissipation of assets. *United States v. First Nat'l City Bank*, 379 U.S.

---

[2] In another cybersquatting lawsuit in 2009, OnlineNIC was previously sanctioned by this Court for dissipating its assets in violation of a Court order. *Verizon Cal. Inc. v. OnlineNIC, Inc.*, 647 F. Supp. 2d 1110, 1117-19 (N.D. Cal. 2009). Judge Fogel found by clear and convincing evidence that OnlineNIC violated the Modified Injunction entered in the case to prevent OnlineNIC from dissipating its assets, "form[ing] part of a much larger pattern of noncompliance." *Id.* at 1118. OnlineNIC was sanctioned $30,600 in addition to having default judgment of $33.15 million entered against it. *Id.* at 1121, 1128.

378, 384 (1965). Rule 64(a) of the Federal Rules of Civil Procedure makes available to district courts "all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action." Where this Court has stated that it will award Plaintiffs $3,135,000 in statutory damages, along with attorneys' fees and costs (ECF No. 393 at 8-10), the Court may take swift action to protect Plaintiff's interest in satisfaction of any judgment ultimately entered.

Rule 64(b) specifically lists attachment as one such available remedy, along with "other corresponding or equivalent remedies, however designated." *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters Local 70*, 415 U.S. 423, 436 n.10 (1974) ("[L]ong-settled federal law provide[s] that in all cases in federal court, . . . state law is incorporated to determine the availability of prejudgment remedies for the seizure of person or property to secure satisfaction of the judgment ultimately entered."). Defendants' obligation to pay any judgment that may be entered is a claim subject to attachment under California law. *See* Cal. Civ. P. § 483.010. "The primary purpose of the remedy of attachment is to allow unsecured creditors a procedure ancillary to their action by which to ensure that the alleged debtor's assets are not dissipated prior to the time the creditor can obtain and enforce the anticipated judgment on his claim." *N. Hollywood Marble Co. v. Superior Court*, 157 Cal. App. 3d 683, 690 (Cal. App. 2d Dist. 1984) In a trademark case, an asset freeze order is essentially a writ of attachment under California state law. *Microsoft Corp. v. A-Tech Corp.*, 855 F. Supp. 308, 312 (C.D. Cal. 1994) ("There can be little disagreement that an asset freeze order in a trademark case has the same force and effect of an attachment pursuant to state law, and for all intents and purposes they are the same procedural device even though each derives its existence from separate legal sources.").

The Lanham Act authorizes the Court to grant injunctions "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a). The Ninth Circuit has specifically recognized the Court's power in trademark cases to issue an order to prevent a defendant from dissipating assets and to protect a plaintiffs' right to recovery. *Reebok Int'l Ltd. v. Marnatech Enters.,* 970 F.2d 552, 559 (9th Cir. 1992) (en banc) ("[b]ecause the Lanham Act authorizes the district court to grant Reebok an accounting of Betech's profits as a form of final equitable relief, the district court had the inherent power to freeze Betech's assets in order to ensure the availability of that

final relief."), *cert denied*, 490 U.S. 1035 (1989).

Finally, the United States Supreme Court has "repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977).

### B. Emergency relief freezing 35.CN's assets is warranted and necessary.

In general, the showing required for a temporary restraining order and a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure are the same. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). A plaintiff seeking either "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Emergency relief from this Court is both warranted and necessary. First, Plaintiffs have succeeded on the merits because the Court granted Plaintiffs' Motion for Default Judgment. ECF No. 393. Second, Plaintiffs will suffer irreparable harm unless Defendants' assets are frozen. If the sale of 35.CN's registrar business and accreditation goes through, 35.CN's assets (including assets that may be seized in the United States) will be dissipated, severely impeding Plaintiffs' ability to collect a judgment. *See Reebok,* 970 F.2d at 559 (finding asset freeze "necessary in order to protect a plaintiff's right to recovery of § 1117 profits and damages and to ensure that a defendant may not benefit by willfully engaging in illegal trademark activity").

Finally, the balance of equities and the public interest in preventing such a dissipation of assets tip in favor of Plaintiffs. Defendants have a history of circumventing court orders, spoliating evidence, and dissipating their assets to avoid paying cybersquatting judgments. *See* ECF Nos. 132, 143, 225, 276, 357 and 393. 35.CN's attempt to sell its registrar business and accreditation confirms Plaintiffs' concerns that 35.CN intends to walk away from its liabilities in this case. Any harm to 35.CN in preventing the sale of its registrar business and accreditation at this time is greatly outweighed by the harm to Plaintiffs if 35.CN, or any other Defendant, has insufficient assets to satisfy a judgment.

Plaintiffs therefore request that the Court enter a temporary restraining order freezing 35.CN's

assets and preventing 35.CN from selling its registrar business and accreditation, as follows:[3]

1. 35.CN shall immediately provide to the Court an accounting of all of its assets, including but not limited to (a) all of 35.CN's bank account numbers and those accounts' respective balances as of the date the order is entered; (b) 35.CN's ownership interest in any companies, including in 35.com Info; and (c) any other tangible or intangible assets, including 35.CN's registrar business and accreditation (IANA 4163) currently held by 35.com Info, cash balances, accounts receivable, income, real estate, physical property, domain names, or intellectual property.

2. 35.CN, as well as its officers, agents, servants, employees, or attorneys, or any other person who is in active concert or participation with them, **shall not** transfer, sell, dissipate, abscond, hide, secret away, borrow against, or pledge any of their assets, including 35.CN's registrar business and accreditation (IANA 4163) currently held by 35.com Info.

3. Except to pay costs directly necessary to maintain and continue the day-to-day operations of 35.CN's business, 35.CN, as well as its officers, agents, servants, employees, or attorneys, or any other person who is in active concert or participation with them, **shall not**:

    a) Transfer, release, delete, or assign any tangible and intangible assets, including any domain names or intellectual property owned or controlled by 35.CN, including but not limited to the list of domain names and intellectual property listed in Exhibit 2 and Exhibit 3 to the Guye Declaration;

    b) Transfer or withdraw any funds from any bank account;

    c) Transfer or use any funds from PayPal accounts and any other third-party payment processor, except that those funds may be deposited into one of the bank accounts identified in response to (1) above;

    d) Transfer or use any funds from Visa, MasterCard, American Express, or any other credit card company as well as any credit card processing company, except that those funds may be deposited into one of the bank accounts identified in response

---

[3] Given the temporary nature of a TRO and Preliminary Injunction, any permanent injunction issued by the Court against Defendants should also include an injunction preventing Defendants' dissipation of assets. To that end, Plaintiffs will file with the Court a Revised Proposed Order re Default Judgment (revising ECF No. 379.04) that includes these prohibitions.

      e) Transfer or use any funds held in any attorney-client trust account;

      f) Sell, lease, loan, pledge, or otherwise encumber any physical assets or infrastructure, including any computer server or equipment of value;

      g) Assign any employee compensation or benefit plan or requesting any return of such funds from the plan coordinator;

      h) Sell, assign, or otherwise transfer any equity 35.CN owns in any other companies identified by 35.CN in response to (1) above; and

      i) Assist, aid, or abet any other person or business entity in engaging in or performing any of these activities.

## V. CONCLUSION

  To ensure that Defendants immediately cease their dissipation of assets, Plaintiffs respectfully request that the Court grant this application and enter a temporary restraining order freezing 35.CN's assets.

DATED: December 18, 2024       Tucker Ellis LLP

                By: /s/David J. Steele
                   David J. Steele
                   Howard A. Kroll
                   Steven E. Lauridsen

                   Attorneys for Plaintiffs,
                   META PLATFORMS, INC. (fka
                   FACEBOOK, INC.)
                   and INSTAGRAM, LLC