# Exhibit 1

证券代码：300051      证券简称：琏升科技      公告编号：2024-137

# 琏升科技股份有限公司
## 关于公司拟公开挂牌转让
## 全资子公司 100%股权及部分商标的进展公告

本公司及董事会全体成员保证信息披露的内容真实、准确、完整，没有虚假记载、误导性陈述或重大遗漏。

一、交易概述

（一）交易的基本情况

1、为进一步聚焦主业，根据公司战略发展的需要，琏升科技股份有限公司（简称"公司"）于 2024 年 8 月 29 日召开了第六届董事会第三十二次会议，审议通过了《关于公司拟公开挂牌转让厦门三五互联信息有限公司 100%股权及部分商标的议案》，同意公司在厦门产权交易中心（简称"交易中心"）公开挂牌转让公司全资子公司厦门三五互联信息有限公司（简称"三五信息"）100%股权及部分商标，上述资产打包出售挂牌底价以资产评估机构出具的评估价格为基准，即挂牌底价为人民币 4,111.31 万元。此次挂牌合计三轮公示期结束后，未征集到符合受让条件的意向受让方，公司已终止前次挂牌。

2、公司于 2024 年 11 月 18 日召开第六届董事会第三十五次会议决议，审议通过了《关于公司拟公开挂牌转让厦门三五互联信息有限公司 100%股权及部分商标的进展的议案》，同意公司在交易中心再次公开挂牌转让公司全资子公司三五信息 100%股权及部分商标，上述资产打包出售挂牌价格以三五信息 2024 年 5 月 31 日（经审计）归属于母公司净资产、商标评估价格为基准，即挂牌价格合计为人民币 1,683.89万元。

3、2024 年 12 月 5 日，公司收到交易中心出具的《成交通知书》，在本轮挂牌交易公开竞价中，成都瑜与聆互联网科技有限公司（简称"瑜与聆科技"）以最高应价竞得，整体成交价格为人民币 4,823.89 万元。

具体内容见公司于 2024 年 8 月 30 日、2024 年 9 月 3 日、2024 年 9 月 24 日、2024 年 10 月 14 日、2024 年 10 月 15 日、2024 年 10 月 29 日、2024 年 11 月 1 日、2024 年 11 月 15 日、2024 年 11 月 19 日、2024 年 11 月 21 日、2024 年 12 月 5 日在巨潮资讯网(www.cninfo.com.cn)披露的相关公告。

### （二）本次交易的审批程序

2024 年 12 月 10 日，公司召开的第六届董事会第三十八次会议审议通过了《关于公司拟公开挂牌转让厦门三五互联信息有限公司 100%股权及部分商标的进展的议案》，本次交易尚需提交公司股东大会审议。提请股东大会授权公司管理层全权办理本次交易后续相关事宜，包括但不限于签署交易协议、办理产权过户手续等相关事项。

本次交易不构成关联交易。本次交易亦未构成《上市公司重大资产重组管理办法》规定的重大资产重组。

### 二、交易对方基本情况

1、企业名称：成都瑜与聆互联网科技有限公司

2、统一社会信用代码：91510106MAE4KL82X6

3、企业类型：有限责任公司（自然人投资或控股的法人独资）

4、注册地址：四川省成都市金牛区一环路北一段 99 号 1 栋 24 层 6 号

5、设立时间：2024 年 11 月 25 日

6、法定代表人：韩保川

7、注册资本：10 万元人民币

8、经营范围：许可项目：互联网信息服务。（依法须经批准的项目，经相关部门批准后方可开展经营活动，具体经营项目以相关部门批准文件或许可证件为准）

9、主要股东：瑜与聆科技由成都瑜香互联网科技有限公司 100%控股，实际控制人为何聆香。

10、瑜与聆科技与公司及公司前十名股东在产权、业务、资产、债权债务、人员等方面不存在关联关系以及其他可能或已经造成公司对其利益倾斜的其他关系。

11、瑜与聆科技成立于 2024 年 11 月 25 日，控股股东成都瑜香互联网科技有限公司成立于 2024 年 11 月 22 日，均暂无财务数据。

12、经查询，瑜与聆科技不属于失信被执行人。

## 三、交易标的基本情况

交易标的具体情况详见公司于 2024 年 8 月 30 日在巨潮资讯网披露的《关于公司拟公开挂牌转让全资子公司 100%股权及部分商标的公告》（公告编号：2024-094）中"三、交易标的基本情况"。

## 四、股权及商标转让协议的主要内容

### （一）协议相关方

转让方（甲方）：琏升科技股份有限公司

受让方（乙方）：成都瑜与聆互联网科技有限公司

标的公司：厦门三五互联信息有限公司

### （二）产权交易合同

**1、产权转让标的**

1.1 甲方将所持有的厦门三五互联信息有限公司 100%的股权（对应认缴注册资本为人民币 2000 万元，实缴注册资本为人民币 2000 万元）

1.2 和 SAAS 业务相关的部分商标所有权

1.3 甲方就其持有的标的股权所认缴的出资 2000 万元人民币已经全额缴清。

**2、资产评估**

2.1 根据北方亚事资产评估有限责任公司出具的《资产评估报告书》（编号：北方亚事评报字（2024）第 01-748 号），截止评估基准日 2024 年 5 月 31 日，标的公

司的股权评估价值为 4081 万元人民币（大写：人民币肆仟零捌拾壹万元整）。根据北方亚事资产评估有限责任公司出具的《资产评估报告书》（编号：北方亚事评报字（2024）第 01-747 号），截止评估基准日 2024 年 5 月 31 日，部分商标的资产评估价值为人民币 30.31 万元人民币（大写：人民币叁拾万叁仟壹佰元整）。

2.2 本次转让的标的资产具体以北方亚事资产评估有限责任公司出具的《资产评估报告》（编号：北方亚事评报字（2024）第 01-747 号）载明的资产清单为准。

### 3、产权转让价款及支付

3.1 转让价款

根据北方亚事资产评估有限责任公司出具的《资产评估报告书》（编号：北方亚事评报字（2024）第 01-748 号、北方亚事评报字（2024）第 01-747 号）的评估结果和厦门产权交易中心公开挂牌结果，各方确认，厦门三五互联信息有限公司 100%股权及部分商标资产包合计成交价格 4,823.89 万元。

3.2 转让价款支付方式

乙方原缴厦门产权交易中心的保证金在扣除乙方应缴交易佣金和交易鉴证费后余额作为部分转让价款，其余转让价款乙方须于本协议签订后五个工作日内支付给厦门产权交易中心，厦门产权交易中心在收齐全部转让价款后【五】日内将该转让价款转至甲方指定账户。

### 4、产权转让的审批及交割

4.1 在本合同项下产权交易获得厦门产权交易中心出具的产权交易凭证后 15 个工作日内，标的公司应及时召开内部会议作出决议/决定、修改章程、签订相关协议（包括但不限于知识产权转让合同），向登记机关递交办理标的产权变更登记手续之申请，甲乙双方应给予必要的协助和配合。

4.2 由于转让的部分商标办理变更登记需要一定的周期、能否转让受限于行政主管部门判断且转让的部分商标可能存在被撤销、无效的情形，双方亦不因无法完成标的资产变更登记手续或行政主管部门拒绝办理转让向对方追索，无法办理变更手续的商标由各方另行协商处理。本协议生效后，商标办理完毕变更登记前，甲方授权乙方或标的公司无偿使用本协议所涉商标，具体以各方另行签署的许可协议内容为准。

双方同意，本合同生效后、标的资产办理完毕变更登记前，任一标的资产涉及的任何侵权，无论是发生在本合同生效日之前、之时或之后，有权起诉、实施任何程序、进行反对、辩护、上诉、索赔或采取任何行动和获得救济（和保留获得任何损害赔偿）的权利由乙方享有。但甲方有权为甲方自身利益及标的资产持续有效存续之目的，与相关方达成和解、调解。如甲方因乙方或标的公司使用标的资产而涉及任何司法程序、承担任何费用，均由乙方予以全额补偿。

4.3 双方同意，交割日为在行政管理部门完成股权变更登记手续之日（以下统称"交割日"）。

4.4 自评估基准日至交割日期间为过渡期，双方不以标的企业过渡期间损益为由对本协议中已达成的交易条件和交易价格进行调整。

**5、产权交易涉及的债权、债务及税收和费用**

5.1 双方同意，标的公司原有的债权、债务，在交割日后全部由标的公司享有、承担。对于转让的商标，各方确认不涉及既往商标字号使用等原因导致在转让价款之外仍需由甲方向标的公司支付费用或分配利益的任何情形。

5.2 本合同项下产权交易涉及的有关税收，按照有关法律、法规由双方各自承担缴纳。交割手续费、过渡期间产生的费用、其他的费用（包括但不限于标的产权办理转让登记费用、委托第三方服务机构办理标的产权转让的服务费）由乙方承担。

5.3 除本合同另有约定外，本合同项下产权交易过程中所产生的费用，依照有关法律、法规由双方各自承担。

5.4 本次产权转让应缴厦门产权交易中心的产权交易佣金由受让方承担；本次产权转让应缴厦门产权交易中心的交易鉴证费由受让方承担。

**6、违约责任**

6.1 本合同生效后，任何一方无故提出终止合同，均应按照转让价款的 20％向另一方支付违约金。给另一方造成损失的，还应承担赔偿责任。

6.2 乙方未按本合同约定支付转让价款的，应向甲方支付逾期付款违约金。违约金按照延迟支付期间应付转让价款的每日万分之五计算。逾期付款超过 30 日，甲方有权解除本合同，要求乙方按照转让价款的 20%承担违约责任，并要求乙方赔偿甲方及标的公司因此遭受的损失。

6.3 除本合同另有约定外，本合同签署后，任何一方（违约方）未能按本合同的规定遵守或履行其在本合同项下的全部或部分义务，或做出任何虚假的声明、保证或承诺，则被视为违约，其应向守约方承担违约责任，负责赔偿守约方因此遭受的经济损失。由于一方的过错造成本合同不能履行或不能完全履行时，由有过错的一方承担违约责任。如属双方的过错，则双方承担各自相应的责任。

**7、协议生效**

7.1 本合同在双方法定代表人或其授权代表签字并加盖公章后生效。

### （三）《产权交易合同》之补充协议

1、转让价款支付方式：乙方原缴厦门产权交易中心的保证金在扣除乙方应缴交易佣金和交易鉴证费后余额作为部分转让价款，其余转让价款乙方须于本协议签订后十个工作日内支付给厦门产权交易中心，厦门产权交易中心在收齐交易鉴证材料和转让交易款项后，在 10 个工作日内出具产权交易鉴证书，并且将交易价款转至转让方指定账户。

2、因甲方为上市公司，股权完成交割后，若应监管、审计机构等机构要求需要调取、查看、提供标的公司相关资料/数据或需要对乙方和标的公司相关人员进行访谈时，乙方和标的公司均同意根据甲方通知及时予以配合。

3、甲方在全额收到产权转让款后应在【5】个工作日内与乙方和标的公司进行标的公司所涉印章、银行 U 盾及其他相关资料的交接，具体交接事项以各方另行盖章确认的交接清单为准。

4、转让商标变更：

（1）本次转让的商标若在转让过程中被撤销、无效导致无法转让，将该商标从评估报告的转让清单中剔除，交易金额按照商标部分成交价比例相应扣除。

（2）本次转让的部分商标若因与甲方现有商标存在相同、近似情形导致无法转让的，将该商标从评估报告的转让清单中剔除，交易金额按照商标部分成交价比例相应扣除。

5、协议生效：本补充协议一式三份，甲方、乙方、标的公司各持一份，自各方盖章之日起生效，本协议作为原合同不可分割的组成部分，与原合同具有同等法律效力。

## 五、其他说明

1、本次交易完成后，公司不存在为三五信息提供担保、财务资助、委托理财的情况，三五信息不存在其他占用上市公司资金的情况，截至本公告披露日，三五信息与上市公司及其子公司的资金往来情况为：三五信息存在对上市公司及其子公司的应收款项金额合计人民币 239.78 万元，应付款项金额合计人民币 17.97 万元，系日常经营产生，属于经营性往来。公司将根据有关交易约定，按照公平、公允的商业原则回笼相关应收款项。公司不存在以经营性资金往来的形式变相为他人提供财务资助情形。

2、本次交易不涉及人员安置、土地租赁、债权债务重组等情况；本次交易不涉及公司股权转让或高层人事变动计划等其他安排；本次出售资产所得款项主要用于补充公司流动资金。

## 六、本次交易的目的和对公司的影响

公司本次转让部分非主营资产符合公司战略发展规划和长远利益，有利于优化公司资产结构。未来公司将围绕发展战略，做大做强光伏电池领域，进一步夯实主业，增强公司整体盈利能力。本次股权转让事项对公司损益产生的影响，最终以审计数据为准；公司企业邮箱、网站建设、网络域名（ICANN 注册商认证）等相关产品及服务已由三五信息承接和运营，本次交易后，三五信息将不再纳入公司合并报表范围，公司不再持有三五信息股权，不再拥有三五信息控制权，公司不再从事前述业务，本次交易不会对公司持续经营能力造成较大影响。

## 七、备查文件

1、第六届董事会第三十八次会议决议；

2、厦门三五互联信息有限公司审计报告（2024 年 1 月-5 月）；

3、公司拟转让股权事宜涉及的厦门三五互联信息有限公司股东全部权益价值资产评估报告；

4、公司拟转让商标事宜所涉及的该部份商标资产评估报告。

特此公告！

琏升科技股份有限公司

董事会

二〇二四年十二月十二日

Stock code: 300051    Stock abbreviation: Leascend Technology    Announcement number: 2024-137

# Leascend Technology Co., Ltd.

## Announcement on progress of the Company's proposed public listing to transfer 100% equity and some trademarks of the wholly-owned subsidiary

> The Company and all members of the Board of Directors guarantee that the contents of the information disclosed are true, accurate and complete, without false records, misleading statements or major omissions.

### I. Transaction overview

**(i) Basic information about the transaction**

1、 In order to further focus on the main business and according to the needs of the Company's strategic development, the sixth Board of Directors of Leascend Technology Co., Ltd. (referred to as the "Company") held the 32nd meeting on August 29, 2024, and reviewed and passed the "Proposal on the Company's proposed public listing to transfer 100% equity and some trademarks of Xiamen 35.com Co., Ltd.". It is agreed that the Company will publicly list to transfer 100% equity and some trademarks of Xiamen 35.com Co., Ltd. (hereinafter referred to as "35 Information"), a wholly-owned subsidiary of the Company, in Xiamen Property Rights Transaction Center (hereinafter referred to as "Transaction Center"). The above-mentioned assets are sold at a package and the listed base price will be based on the assessment price issued by the assets assessment agency, that is, the listed base price is RMB 41.1131 million Yuan. After a total of three rounds of publicity period during this listing, no interested transferees meeting the acceptance criteria have been solicited, and the Company has terminated the previous listing.

2、 The sixth Board of Directors of the Company held the 35th meeting on November 18, 2024 and has resolution. They reviewed and passed the "Progress about the proposal on the Company's proposed public listing to transfer 100% equity and some trademarks of Xiamen 35.com Co., Ltd.", and agreed that the Company will publicly list to transfer 100% equity and some trademarks of 35 Information, a wholly-owned subsidiary of the Company, in Transaction Center again. The above-mentioned assets are sold at a package and the listed price is based on the (audited) assessment price of net assets and trademarks attributable to the parent company on May 31, 2024 of 35 Information, that is, the total listed price is RMB 16.8389 million Yuan.

3、 The Company received a Notice of Closing the Deal issued by the Transaction Center on December 5, 2024. In the public bidding for listed transactions of this round, Chengdu Yuyuling Internet Technology Co., Ltd. (hereinafter referred to as "Yuyu Technology") won the bid at the highest responding price, and the overall transaction price was RMB 48.2389 million Yuan.

For the specific content, please refer to the relevant announcements disclosed by the Company on CNINFO (www.cninfo.com.cn) on August 30, 2024, September 3, 2024, September 24, 2024, October 14, 2024, October 15, 2024, October 29, 2024, November 1, 2024, November 15, 2024, November 19, 2024, November 21, 2024 and December 5, 2024.

**(ii) Approval procedures for this transaction**

The sixth Board of Directors of the Company held the 38th meeting on December 10, 2024, reviewed and approved the "Progress about the proposal on the Company's proposed public listing to transfer 100% equity and some trademarks of Xiamen 35.com Co., Ltd.". This transaction still needs to be submitted to the Company's shareholders' meeting for consideration. The shareholders' meeting is requested to authorize the company's management to handle all subsequent matters related to the transaction, including but not limited to signing the transaction agreement and handling the property rights transfer procedures.

This transaction does not constitute a related party transaction. This transaction also does not constitute a major asset restructuring as stipulated in the Law on the Management of Major Asset Restructuring of Listed Companies.

**II. Basic information of the counterparty**

1、 Company name: Chengdu Yuyuling Internet Technology Co., Ltd.

2、 Unified Social Credit Code: 91510106MAE4KL82X6

3、 Type of corporation: Limited liability company (sole proprietorship of legal person invested or controlled by a natural person)

4、 Registered address: No. 6, 24/F, Building 1, No. 99 Section I, North First Ring Road, Jinniu District, Chengdu City, Sichuan Province

5、 Establishment time: November 25, 2024

6、 Legal representative: Han Baochuan

7、 Registered capital: RMB 100,000 Yuan

8、 Business scope: Licensed items: Internet information services. (For items that require approval according to law, business activities can only be carried out after approval from the relevant departments, and the specific business items shall be subject to the approval documents or licenses of the relevant departments)

9、 Major shareholders: Yuyuling Technology is 100% controlled by Chengdu Yuxiang Internet Technology Co., Ltd., and the actual controller is He Lingxiang.

10、 Yuyuling Technology has no affiliation with the Company and the top ten shareholders of the Company in terms of property rights, business, assets, credit and debt, personnel, and other relationships that may or have caused the Company to tilt in favor of its interests.

11、 Yuyuling Technology was established on November 25, 2024, and the controlling shareholder, Chengdu Yuxiang Internet Technology Co., Ltd., was established on November 22, 2024, both of which have no financial data at present.

12、 After inquiry, Yuyuling Technology does not belong to the person subject to enforcement for breach of trust.

### III. Basic information about the subject matter to be transacted

For specific details about the subject matter to be transacted, please refer to "III. Basic information about the subject matter to be transacted" in the "Announcement on progress of the Company's proposed public listing to transfer 100% equity and some trademarks of the wholly-owned subsidiary" (Announcement No.: 2024-094) disclosed by the Company on August 30, 2024 at CNINFO.com.

### IV. Main contents in the equity and trademark transfer agreement

**(i) Parties to the agreement**

Transferor (Party A): Leascend Technology Co., Ltd.

Transferee (Party B): Chengdu Yuyuling Internet Technology Co., Ltd.

Subject company: Xiamen 35.com Co., Ltd.

**(ii) Property rights transaction contract**

**1、 Subject matter in property rights transaction**

1.1 The 100% of the equity of Xiamen 35.com Co., Ltd. held by Party A (corresponding to subscribed registered capital of RMB 20 million Yuan and paid-up registered capital of RMB 20 million Yuan)

1.2 Part of the trademark ownership in connection with the SAAS business

1.3 Party A has paid in full the subscribed capital contribution of RMB 20 million Yuan for the subject equity held by Party A.

**2、 Assets assessment**

2.1. According to the "Assets Assessment Report" (No.: North Asian Assets Assessment Report Number (2024) No. 01-748) issued by North Asian Assets Assessment Co., Ltd., as of May 31, 2024, the base date of assessment, the assessed equity value of the subject company is RMB 40.81 million Yuan (in words: RMB forty million eight hundred and ten yuan only). According to the "Assets Assessment Report"

2.2. (No.: North Asian Assets Assessment Report Number (2024) No. 01-747) issued by North Asian Assets Assessment Co., Ltd., as of May 31, 2024, the base date of assessment, the assessed assets value of some trademarks is RMB 303.1 thousand Yuan (in words: RMB Three hundred and three thousand one hundred Yuan only).

2.3. The subject assets in this transfer are subject to the list of assets specified in the "Assets Assessment Report" (No.: North Asian Assets Assessment Report Number (2024) No. 01-747) issued by North Asian Assets Assessment Co., Ltd.

3、 **Property rights transfer price and payment**

3.1. Transfer price

According to assessment results from the "Assets Assessment Reports" (No.: North Asian Assets Assessment Report Number (2024) No. 01-748, North Asian Assets Assessment Report Number (2024) No. 01-747) issued by North Asian Assets Assessment Co., Ltd. and the public listing results from the Xiamen Property Rights Transaction Center, the parties confirm that the total transaction price of 100% equity of Xiamen 35.com Co., Ltd. and some trademark assets package is RMB 48,2389 million Yuan.

3.2. Payment method of transfer price

The security deposit originally paid by Party B to Xiamen Property Rights Transaction Center shall be used as part of the transfer price after deducting the transaction commission and transaction authentication fee payable by Party B. Party B shall pay the remaining transfer price to Xiamen Property Rights Transaction Center within five working days after signing this Agreement, and Xiamen Property Rights Transaction Center shall transfer such transfer price to the account designated by Party A within [five] days after receiving all the transfer price.

4、 **Property rights transfer approval and delivery**

4.1. Within 15 working days after the property rights transaction under this Contract obtains the property rights transaction certificate issued by Xiamen Property Rights Transaction Center, the subject company shall promptly convene an internal meeting to make resolutions and decisions, revise the articles of association, and sign relevant agreements (including but not limited to the intellectual property rights transfer contract), and submit an application to the registration authority for changing registration on property rights of the subject matter. Party A and Party B shall provide necessary assistance and cooperation.

4.2. As it takes a certain period for some of the trademarks transferred to be changed for registration, and the transferability is subject to judgment of the administrative authority and some of the trademarks transferred may be revoked or invalid. Neither party shall pursue recourse against the other party due to failure to complete the registration-changing procedures for the subject assets or refusal to handle the transfer from the competent administrative department. Any trademark that cannot go through the registration-changing procedures shall be dealt with separately through negotiation between the parties. After this Agreement takes effect and prior to completion of the registration-changing procedures for trademarks, Party A grants Party B or the Subject Company the right to use the trademarks referred to in this Agreement free of charge, subject to the content of the license agreement separately signed by the parties.

Both parties agree that after this Contract takes effect and prior to completion of the registration-changing procedures for the subject assets, any infringement involving any of the subject assets, whether occurring before, at or after the effective date of this Contract, the right to sue, institute any proceedings, object, defend, appeal, claim or take any action and to obtain remedies (and to reserve any damages) shall be vested in Party B. However, Party A has the right to settle and mediate with the relevant parties for Party A's own interests and continued validity of the subject assets. If Party A is involved in any judicial procedures and bears any expenses due to use of the subject assets by Party B or the Subject Company, Party B shall compensate Party A in full.

4.3. Both parties agree that the delivery date shall be the date on which the registration procedures for equity change are completed in the administrative department (hereinafter collectively referred to as the "Delivery Date").

4.4. The period from the base date of assessment to the delivery date is a transitional period, and the parties shall not adjust the transaction conditions and transaction price reached in this Agreement on the basis of profit or loss of the subject company during the transitional period.

### 5、 Claims, debts, and taxes and fees associated with property rights transactions

5.1. Both parties agree that all the original claims and debts of the subject company shall be enjoyed and assumed by the subject company after the delivery date. For the trademarks transferred, the parties confirm that it does not involve any circumstances in which Party A is required to pay fees or distribute benefits to the subject company due to previous use of the trademarks & names and other reasons in addition to the transfer price.

5.2. Taxes related to the property rights transaction under this Contract shall be borne by both parties in accordance with relevant laws and regulations. Party B shall bear the service charges for delivery, the expenses incurred during the transitional period, and other expenses (including but not limited to the registration fee for transferring property rights of the subject matter and the service fee for entrusting a third-party service agency to transfer property rights of the subject matter).

5.3. Unless otherwise agreed in this Contract, the fees incurred during property rights transaction under this Contract shall be borne by both parties in accordance with relevant laws and regulations.

5.4. The property rights transaction commission payable to Xiamen Property Rights Transaction Center for this transfer of property rights shall be borne by the transferee; The transaction authentication fee payable to Xiamen Property Rights Transaction Center for this transfer of property rights shall be borne by the transferee.

### 6、 Default liability

6.1. After this Contract takes effect, if either party requests to terminate the Contract without cause, it shall pay liquidated damages equal to 20% of the transfer price to the other party. If losses are caused to the other party, it shall also be liable for compensation.

6.2. If Party B fails to pay the transfer price as agreed herein, it shall pay Party A liquidated damages for late payment. The liquidated damages shall be calculated at 0.05% each day of the transfer price payable during the period of late payment. If the payment is overdue for more than 30 days, Party A shall have the right to terminate this Contract, require Party B to bear the liability for breach of contract at 20% of the transfer price, and require Party B to compensate Party A and the subject company for losses suffered thereby.

6.3. Unless otherwise stipulated in this Contract, after signing this Contract, any party (breaching party) fails to observe or perform all or part of its obligations under this Contract, or makes any false statement, guarantee or promise, shall be deemed as a breach of contract, and it shall be liable to the non-breaching party for breach of contract and be responsible for compensating the non-breaching party for the economic losses suffered by the non-breaching party. If this Contract cannot be performed or cannot be fully performed due to the fault of one party, the party at fault shall be liable for breach of contract. If both parties are at fault, they shall bear their respective responsibilities.

**7、Effective of the agreement**

7.1.　　This Contract shall take effect after being signed and sealed by the legal representatives or authorized representatives of both parties.

**(iii) Supplementary agreement to the "Property Rights Transaction Contract"**

1、Payment method of transfer price: The security deposit originally paid by Party B to Xiamen Property Rights Transaction Center shall be used as part of the transfer price after deducting the transaction commission and transaction authentication fee payable by Party B. Party B shall pay the remaining transfer price to Xiamen Property Rights Transaction Center within ten working days after signing this Agreement; After receiving all the transaction authentication materials and payment for transfer transaction, Xiamen Property Rights Transaction Center shall issue the certificate for authenticating the property rights transaction within 10 working days and transfer the transaction price to the account designated by Party A within 10 working days.

2、Since Party A is a listed company, after completion of equity delivery, if it needs to obtain, view or provide documents/data related to the subject company or needs to interview relevant personnel of Party B and the subject company as required by regulatory and audit institutions and other institutions, Party B and the subject company both agree to cooperate in a timely manner according to Party A's notice.

3、Party A shall, within [5] working days upon receipt of the payment for property rights transfer in full, carry out handover of the seals, bank U-shields and other relevant materials related to the Subject Company with Party B and the Subject Company. The specific handover matters shall be subject to the handover list separately sealed for confirmation by the parties.

4、Registration-changing of trademarks transferred:

(1) If the trademark transferred this time cannot be transferred due to revocation or invalidation during the transfer process, such trademark will be removed from the transfer list in the assessment report, and the transaction amount will be deducted according to proportion of the transaction price for the trademarks.

(2) If part of the trademarks transferred this time cannot be transferred due to same or similar with Party A's existing trademarks, such trademark will be removed from the transfer list in the assessment report, and the transaction amount will be deducted according to proportion of the transaction price for the trademarks.

5、Effective of the agreement; This Supplementary Agreement is made in triplicate, with Party A, Party B and the subject company holding one copy each. This Agreement shall come into force upon being sealed by each party. As an integral part of the original Contract, this Agreement shall have the same legal effect as the original Contract.

### V. Other notes

1、After completion of this transaction, the Company does not provide guarantees, financial assistance, or entrusted wealth management for 35 Information, and 35 Information does not otherwise occupy funds of the listed Company. As of the disclosure date of this announcement, the capital transactions between 35 Information and the listed Company and its subsidiaries are: The total amount of receivables of 35 Information to the listed Company and its subsidiaries is RMB 2.3978 million Yuan and the total amount of payables is RMB 0.1797 million Yuan, which were generated from daily operations and belong to business transactions. The Company will recover relevant receivables in accordance with relevant transaction agreements and in accordance with the fair and equitable business principles. The Company does not provide financial assistance to others in disguised form of operational fund transactions.

2、This transaction does not involve personnel resettlement, land leasing, claims and debts restructuring and other matters; This transaction does not involve other arrangements such as equity transfer or senior personnel change plan of the Company; The proceeds from this sale of assets are mainly used to supplement the Company's working capital.

### VI. The purpose of this transaction and its impact on the Company

This transfer of part of the company's non-main assets is in line with the company's strategic development planning and long-term interests, and is conducive to optimizing the company's asset structure. In the future, the company will focus on the development strategy, expand and strengthen the photovoltaic cell field, further consolidate the main business, and enhance overall profitability of the company. The impact of the equity transfer on profit and loss of the company is ultimately subject to the audit data; The company's enterprise mailbox, website construction, network domain name (ICANN registrar certification) and other related products and services have been undertaken and operated by 35 Information; After this transaction, 35 Information will no longer be included in the company's consolidated statement, the company will no longer hold the equity of 35 Information and no longer have control on 35 Information, the company will no longer engage in the aforementioned business; This transaction will not have significant impact on the company's ability to continue operations.

### VII. Reference documents

1、Resolution on the 38th meeting of the Sixth Board of Directors;

2、Audit Report of Xiamen 35.com Co., Ltd. (January - May 2024)

3、Assets assessment report on all equity value of shareholders of Xiamen 35.com Co., Ltd. involved in the Company's proposed equity transfer:

4、Assets assessment report on such trademark assets involved in the Company's proposed trademark transfer.

Hereby notified!

**Leascend Technology Co., Ltd.**

**Board of Directors**

December 12, 2024



City of New York, State of New York, County of New York

I, Jacqueline Yorke, hereby certify that the document "**琏升科技：关于公司拟公开挂牌转让全资子公司100%股权及部分商标的进展公告**" is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English.

_____
Jacqueline Yorke

Sworn to before me this
December 13, 2024

_____
Signature, Notary Public

> WENDY POON
> Notary Public - State of New York
> No. 01PO0000184
> Qualified in Queens County
> My Commission Expires February 02, 20 27

_____
Stamp, Notary Public