**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Liana W. Chen (Bar No. 296965)
Leah Rosa Vulić (Bar No. 343520)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@kr.law
jeff@kr.law
liana@kr.law
leah@kr.law

Attorneys for Defendant Leascend Technology Co., Ltd.
f/k/a Xiamen 35.com Technology Co., Ltd.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **FACEBOOK, INC.**, et al.,<br><br>      Plaintiffs,<br><br>   v.<br><br>**ONLINENIC INC.**, et al.,<br><br>      Defendants. | Case No. 3:19-cv-07071-SI<br><br>**DEFENDANT LEASCEND TECHNOLOGY CO., LTD. F/K/A XIAMEN 35.COM TECHNOLOGY CO., LTD.'S OPPOSITION TO PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER FREEZING ASSETS OF DEFENDANT AND PROP. AMENDED JUDGMENT [D.E. 408-410]**<br><br>**Date:**     December 20, 2024<br>**Time:**     12:00 p.m.<br>**Location:** Zoom<br>**Judge:**    Hon. Susan Illston |

## INTRODUCTION

Defendant Leascend Technology Co., Ltd. f/k/a Xiamen 35.com Technology Co., Ltd. ("Defendant" or "Leascend") opposes Plaintiffs' Emergency *Ex Parte* Application for a Temporary Restraining Order to Freeze Assets and Proposed Amended Judgment. [D.E. 408-410.] Under Federal Rule of Civil Procedure ("Rule") 65 and past proceedings in this case, Plaintiffs have not established they are likely to suffer irreparable harm or that the Proposed Amended Judgment with injunction is in the public interest or narrowly tailored.

Defendant does not intend to relitigate the Court's prior Order that granted Plaintiffs' Motion for Default Judgment (but preserves any appeal rights). [D.E. 393.] However, Plaintiffs' claim that they "will suffer irreparable harm unless Defendants' assets are frozen" (to prevent a sale of Leascend's registrar business) [D.E. 408 at 5:14-15] is unsupported and demonstrably incorrect. Leascend is a multi-million-dollar public company in China with more than enough assets to satisfy any judgment in this case (e.g., over $118 million in equity, as described below); and Plaintiffs even assert that the supposed sale is going to provide Leascend with an additional $6.6 million. [D.E. 408 at 1:5-17.] In other words, far from dissipating assets, Leascend has—and will have—millions of additional dollars.

Moreover, the balance of equities is not in Plaintiffs' favor. In fact, Plaintiffs' *Ex Parte* Application is gamesmanship. Plaintiffs seek to (1) obtain overbroad and unreasonable injunction terms (in their subsequently filed Proposed Amended Judgment, D.E. 409-1]), which were previously questioned by the Court [*see* D.E. 393 & 406] and negotiated down by the parties [D.E. 390-1], and (2) uncover far-reaching financial information and freezing of assets to satisfy their potential judgment (which has not yet been entered by the Court, *see* D.E. 390-1), instead of going through the prescribed channels of judgment enforcement. Plaintiffs seek to circumvent these procedures with a temporary restraining order that is neither narrowly tailored nor in line with this Court's prior orders.

## BACKGROUND

**A.      Leascend's Adequate Finances**

As outlined by substantial public reports, Leascend is a multi-million-dollar public

Case No. 3:19-cv-07071-SI                                    1                              **OPP TO EX PARTE APP FOR TRO**

company in China. (Declaration of Karl S. Kronenberger ("Kronenberger Decl.") ¶¶2-3 & Exhibit A.)[1] For example, public records show that Leascend has tens of millions of dollars in revenue each year, e.g., $42 million for three quarters in 2024,[2] bolstered by over $47 million in net financing cash flow for the same period of time, which is consistent with prior filings (and documents produced during discovery) showing the company had $431 million in revenue over the time period between 2009 to 2019. (*See* Kronenberger Decl. ¶¶2-3 & Exhibit A.)[3] Importantly, Leascend has various aspects of profitable business, including solar energy, with domain name registrations (which are primarily .CN domain names registered to Chinese customers) comprising only a small part of its business (see below, in contrast to OnlineNIC, whose primary business was U.S. domain name registrations).

Plaintiffs acknowledge that the supposed sale is going to provide Leascend with roughly $6.6 million dollars. [D.E. 408 at 1:5-17.] This contrasts with Plaintiffs' prior motion for an *Ex Parte* asset freeze against OnlineNIC/ID Shield where Plaintiffs argued OnlineNIC was transferring their domain name portfolio since 2021 where the domain names had tremendous value, but where there was no corresponding claim that OnlineNIC would recover millions of dollars from that sale. [D.E. 129 at 14:26-15:11 (also noting OnlineNIC could not pay the Special Master and intended to cease doing business in five days).] Plaintiffs' comparison of Leascend's well-capitalized finances to OnlineNIC is misguided. In fact, Plaintiffs added Leascend as an alleged alter ego Defendant to have "deep pockets" for potential recovery after initially litigating against OnlineNIC and ID Shield.

//

---

[1] This summary is being provided on a 24-hour turnaround, from client representatives in China. Leascend can provide further documentation and translations with more time.
[2] All Leascend financial figures are provided in U.S. dollars in this brief.
[3] Leascend had $57,551,136.37 in current assets at the end of Q3 2024, which are assets that company expects to convert into cash or use within one year or less (i.e. for the company's day-to-day operations and immediate financial needs). Leascend's non-current assets are $326,012,839.63, which are fixed assets, intangible assets, construction in progress, and deferred tax assets. Leascend's liabilities are $127,048,051.05. This results in equity on Leascend's balance sheet of $118,020,438.29. *Id*.

**B. Procedural History**

This case concerns 35 allegedly infringing domain names registered by third-party customers of Defendants OnlineNIC and ID Shield, with alter ego allegations against Leascend. After years of litigation, the Court held a hearing on Plaintiffs' Motion for Default Judgment on May 3, 2024 [D.E. 406 (transcript)], after which the Court entered its Order granting the motion. [D.E. 393.] Relevant here, Leascend's counsel confirmed that as of at least May 2024, Leascend "pivoted their business model to a solar energy business model. They're slowly exiting the business model regarding domain registrations"; and while Leascend changed its name, "[i]t's not an effort to wiggle out of a judgment." [D.E. 406 at pp. 4-5.] Plaintiffs took no issue with those statements.

Although the Court granted Plaintiffs' Motion for Summary Judgment, with respect to Plaintiffs' specific requests for a permanent injunction, the Court noted (1) prior findings (by Judge van Keulen) that Plaintiffs' previous injunction requests were not "narrowly tailored" and in fact "unquestionably overbroad", and (2) that Leascend took issue with the scope of certain paragraphs of the proposed injunction; however, the parties subsequently met and conferred and submitted new language that the Court indicated that it intended to use due to the parties' agreement. [*See* D.E. 393 at 11:10-23.]

Since May 3, 2024, the Court has not yet issued a final judgment. Nonetheless, the parties have continued to negotiate a potential resolution at great length relating to the specific payment and non-monetary terms (and would be able to provide the Court with detailed settlement communications if requested).[4] Therefore, Leascend was surprised that Plaintiffs filed this *Ex Parte* Application to seek not only a draconian asset freeze and accounting (which would violate Chinese laws) but also to try to sneak in their Amended Proposed Judgment [D.E. 409-1] with terms that were previously unacceptable to

---

[4] The Court may properly consider the parties' settlement discussions because they are not offered as evidence of liability or for impeachment purposes. *See NBCUniversal Media, LLC v. Jay Kennette Media Grp. LLC*, 653 F. Supp. 3d 732, 739 n.4 (C.D. Cal. 2023) (Television show producer that brought trademark infringement claims against alleged trademark squatter did not seek to use squatter's statements regarding an alleged consent agreement as evidence of liability or for impeachment purposes).

Case No. 3:19-cv-07071-SI  3  **OPP TO EX PARTE APP FOR TRO**

Leascend (e.g., demanding certain actions within 24 hours, which is unreasonable, and requiring nearly unrestricted access to private customer WHOIS records) and which were negotiated down by the parties and submitted to the Court on May 3, 2024. [*Compare* D.E. 379-4, D.E. 390-1, 409-1; *see also* Leascend's prior opposition, D.E. 384.]

**C.   Leascend's Actions in Reliance of Plaintiffs' Demands**

The parties have been discussing settlement for months, including multiple rounds of back-and-forth on a detailed terms sheet. (Kronenberger Decl. ¶5.) Relevant here to demonstrate Plaintiffs' obstruction, waiver, and estoppel, (1) for many months Plaintiffs demanded verbally and in writing that Leascend "exit the domain name business,"[5] (2) the parties agreed to this provision as part of a settlement agreement with terms that have been substantially approved by the Court [*see* D.E. 393, 406], (3) Plaintiffs set a deadline of January 1, 2025 as the deadline for Leascend to get out of that business, (4) Leascend's counsel informed Plaintiffs multiple times about the impending sale, including providing Plaintiffs with an announcement of the sale, and (5) Leascend relied on Plaintiffs' promises and demands and moved forward with the sale by listing the business, accepting bids, and receiving a top bid. (Kronenberger Decl. ¶5.) Specifically, Plaintiffs drafted the following provision on May 15, 2024, demanding that Leascend "exit the domain business," using the phrase "independently decided" apparently due to potential antitrust concerns:

> e) The 35.CN Entities[6] represent and warrant that they have independently decide to exit the domain business and shall not own or operate or establish any registrar, registry, privacy, or proxy service provider, or reseller (collectively, a "Domain Name Business") on or after January 1, 2025.
>
>   (1) Failure to timely cease owning or operating all Domain Name Businesses, or establishing any Domain Name Business, will trigger the Liquidated Damages [clause].

---

[5] For clarification, Leascend owns a subsidiary that owns a domain name registrar business. Leascend's domain name registrar business was not at issue in the Complaint or in other aspects of the current litigation, as Leascend's domain name registrar business focuses mostly on Chinese domain names. Plaintiffs have not made any allegations of wrongdoing against Leascend's domain name registrar business. In contrast, the Complaint and the general focus of this litigation has been on the domain name registrar business owned by OnlineNIC.

[6] 35.CN Entities in this document refers to Leascend and relevant affiliated companies.

(Kronenberger Decl. ¶¶5-6.)

Not only has Leascend acted in reliance on Plaintiffs' demands, to reverse the movement towards the sale (i.e., granting Plaintiffs' requests) would cause Leascend to act in conflict with Chinese laws and with previous statements to the public and investors about how the company is getting out of the domain name business in order to focus on its solar panel business. In particular, Plaintiffs' proposed relief would put Leascend in conflict with promises previously made to Chinese regulators about exiting the domain name business and would frustrate Leascend's duties to the buyer of the domain name business. (Kronenberger Decl. ¶7 & Exhibit B.) Furthermore, asset freeze orders issued by U.S. courts would require review and approval by Chinese courts and regulatory authorities; nonetheless, if Plaintiffs obtain an asset freeze order before the sale transaction closes, it could potentially impact the transaction to Leascend's detriment. (Kronenberger Decl. ¶7 & Exhibit B.)

To clarify, the present sale does not concern transfer of the 35 domain names that were at issue in this case; and a sale of unrelated domain names will only benefit Plaintiffs by providing Leascend with more funds to pay a potential judgment.

## ARGUMENT

Under Rule 65, plaintiffs seeking a temporary restraining order or preliminary injunction must establish they are likely to suffer irreparable harm; and (as Plaintiffs concede) courts will review the balance of equities. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Specifically, to obtain an order freezing a defendant's assets, the plaintiff must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted. *JBF Interlude 2009 Ltd, v. Quibi Holdings LLC*, No. 220CV02250CASSKX, 2020 WL 9311954, at *24 (C.D. Cal. Dec. 30, 2020). Moreover, any asset freezing must be tied to specific equitable relief authorized in a claim for relief in the complaint, like a demand for profits from counterfeiting. *See Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). Without such a showing, before a judgment, an unsecured creditor has no rights at law or in equity in

1 the property of his debtor (absent certain cases for bankruptcy or fraudulent conveyances
2 and where equitable relief is sought). *JBF Interlude 2009 Ltd, v. Quibi Holdings LLC*, No.
3 220CV02250CASSKX, 2020 WL 9311954, at *24 (C.D. Cal. Dec. 30, 2020).

4 Here, Plaintiffs can show neither a likelihood of dissipation of assets or how an
5 asset freeze can be tied to specific relief requested in the complaint that focused on co-
6 defendant liability and Leascend's liability through alter ego arguments. Therefore,
7 Plaintiffs have not shown irreparable harm or that the balance of equities weighs in their
8 favor. Plaintiffs are not seeking to preserve the "status quo" by simply blocking a sale but,
9 rather, to impose unduly harsh permanent injunctive relief and financial terms that are not
10 tied to the facts but a misguided attempt to inflict pain on a defendant and collect money
11 quicker. And further, it is impossible that Plaintiffs could suffer irreparable harm due to the
12 sale of Leascend's domain registrar business because Plaintiffs, many times in writing and
13 in verbal communications, have demanded the Leascend "get out of the domain name
14 business" by January 1, 2025. These prior demands by Plaintiffs, with which Leascend is
15 complying, reflect how there can be no irreparable harm to Plaintiffs.

16 **A.  Plaintiffs will not suffer irreparable harm, and the requested relief (emergency**
17 **freezing of assets and new judgment terms) is not warranted or necessary.**

18 Importantly, Plaintiffs have not demonstrated that the potential sale of the domain
19 name business (even assuming Plaintiffs' stated facts are accurate, which they are not)
20 will prevent them from recovering money under a judgment (which has not yet been
21 entered). Leascend is a well-funded public company in China with over $100 million of
22 equity on its balance sheet; and public financial records confirm its significant revenue over
23 many years (from more than just domain name registrations), reflecting its ability to pay
24 any judgment in this matter. (Kronenberger Decl. ¶¶2-4 & Exhibit A; *see also* prior financial
25 filings.) In other words, the prior arguments against OnlineNIC are not applicable.

26 Plaintiffs argue that the Ninth Circuit has recognized the Court's power in trademark
27 cases to order a defendant "from dissipating assets and to protect a plaintiff's right to
28 recovery." [D.E. 408 (Motion) at 4, citing to *Reebok*, 970 F.2d at 559]. However, the Reebok

case, and other cases cited by the Reebok court, are about courts, due to equitable claims like an accounting for profits, freezing the revenues *derived from the sale of counterfeit products* (for example, in the Reebok case, it was sales of Reebok shoes). This is because the Ninth Circuit holds that when a plaintiff seeks equitable remedies under the Lanham Act, including recovery of a defendant's profits under 15 U.S.C. §1117, a district court has "inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief." *Reebok*, 970 F.2d at 559; *see also Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*, No. 5:20-CV-04773-EJD, 2020 WL 5199434, at *10 (N.D. Cal. Aug. 17, 2020). Here, by contrast, Plaintiffs are not seeking an accounting of profits obtained through the alleged infringement but an oppressive general "accounting" and freezing of all assets, without any limitation to the claims at issue. Thus, the relief is unwarranted.

**B.     The balance of equities and public interest weighs in Leascend's favor.**

The balance of equities weighs in Leascend's favor because (1) Plaintiffs' demands are overbroad and not narrowly tailored, (2) Leascend will have more money after the sale i.e., the sale is not an attempt to "walk away" from liabilities in this case as Plaintiffs try to claim [D.E. 408 at 8:21-27], (3) Plaintiffs are estopped from preventing a sale of the domain registration business when they demanded that Leascend exit the business, and (4) the requested relief will conflict with Chinese regulatory and other requirements.

First, the proposed relief is far overbroad and not narrowly tailored. In particular, the terms proposed at D.E. 408 at 9-10 and 409-1 both seek to require, without justification, an accounting of all assets, including detailed bank account numbers, balances, ownership interests, etc., regardless of any limitation to the assets derived from the claimed infringement; prohibition of any transfers (other than for day-to-day payments), including transfer or use of funds, credit, or attorney-trust accounts, or payment of employee compensation or benefit plans. These and the other proposed terms are outrageous, circumvent existing judgment collection procedures, and ignore a potential appeal. Perplexingly, Plaintiffs are attempting to put *ex parte* asset freeze and accounting terms into their Proposed Amended Judgment [D.E. 409-1], with those terms lasting "Until the

judgment is satisfied" i.e., converting this into a preliminary/permanent injunction.

Second, because the sale will increase Leascend's funds, which are notably not profits from or relating to goods used for any infringement in this case, Plaintiffs have no basis to request an asset freeze or accounting. Put differently, this is not a situation of "dissipation of assets" or having "insufficient assets to satisfy a judgment," but the sale of the registrar business is ordinary business, which will increase liquid assets. The situation is distinguishable from the prior orders involving OnlineNIC, including due to the claim that OnlineNIC was inadequately capitalized to pay a judgment in this case (and given that OnlineNIC was the alleged "shell" that was a California, and not public Chinese, company).

Third, Plaintiffs should be estopped from trying to prevent a sale that they demanded. *See c.f., Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.,* 568 F. Supp. 2d 1152, 1164 (C.D. Cal. 2008), *aff'd sub nom. Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983 (9th Cir. 2012) (noting judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase). Since May 2024, Plaintiffs have demanded, many times verbally and in writing, that Leascend "exit the domain name business" as part of a settlement.[7] (Kronenberger Decl. ¶¶5-6.) Leascend agreed. Thus, Plaintiffs have known that Leascend was exiting the domain name registration business for many months, and Plaintiffs supported that exit, as they had demanded it. Plaintiffs should therefore be estopped from arguing that such a sale should not proceed, that they will be irreparably harmed by a sale, or that they are somehow now entitled to a new draconian judgment with unsupported asset freeze and accounting terms, as well as previous injunction terms (e.g., actions in 24 hours) that the parties worked hard to negotiate back in May 2024. Given this, it is also unfair for Plaintiffs to backtrack on their promise and now demand that a sale be blocked. Yet, apparently unhappy with the timing and order of the signing of the settlement documents, Plaintiffs filed the present *Ex Parte*

---

[7] *See supra* for the exact wording of Plaintiffs' demands to "exit the domain name business" by January 2025.

1 Application. However, Leascend already started the process of selling its domain name
2 business months ago, in reliance on Plaintiffs' demands for it to exit the business.

3       Fourth, Plaintiffs' proposed relief would put Leascend in conflict with Chinese laws,
4 impede Chinese regulators, and frustrate duties to the buyer of the domain name business.
5 (Kronenberger Decl. ¶7 & Exhibit B.) An asset freeze would have significant international
6 and comity issues if it blocked an ordinary business transaction by a public company in
7 China, which has a significant amount of business that is unrelated to the issues in this
8 case (as previously discussed before this Court, [D.E. 360 & 360-2 & 370]). In fact, the
9 company had hundreds of millions in revenue over time periods 2009-2019 and documents
10 produced in discovery and publicly available (as it is a public company in China) show tens
11 of millions of dollars in cash flow each year, over $57 million in current/liquid assets, e.g.,
12 nearly $47 million in net financing cash flow for the period of January to September 2024
13 (Kronenberger Decl. ¶¶2-4), which contrasts with OnlineNIC, which was a California
14 company that was purportedly struggling to pay about $70,000 in fees to the Special
15 Master [D.E. 129 at 1].

16       In sum, Plaintiffs' "emergency" *Ex Parte* Application for an Asset Freeze right before
17 the holidays simply has no legal basis. The application is also apparently an attempt for
18 Plaintiffs to obtain an earlier form of an injunction with more favorable terms to Plaintiffs,
19 prior to the form of judgment reached after the Court ordered briefing on that exact issue.
20 Lastly, the Application is an unsupported attempt to circumvent the established judgment
21 collection process by inserting asset freeze and accounting language into Plaintiffs' new
22 proposed judgment, while misconstruing trademark case law.

23 **C.**    **Alternative Requests for Bond and to Accommodate Scheduling**

24      *Request for Bond*

25       Any asset freeze would have significant adverse financial consequences for
26 Leascend, as it has worked for months on the sale of its domain registrar business (which
27 Plaintiffs demanded starting in May 2024). For this reason, if the Court issues any
28 injunction, Leascend requests that the Court require a bond of $8.5 million be paid by

Plaintiffs, to cover the value of the sale and any potential sale termination penalties and attorney's fees. Leascend further requests certification for appeal of any such injunction.

*Unavailability of Counsel*

Karl Kronenberger, lead counsel for Leascend, will be traveling internationally from the early evening on December 20, 2024 through January 5, 2025. He has been the lead and often only attorney on conferences with opposing counsel and the client on these issues and thus requests that any future hearings and briefing schedules take into consideration this absence, i.e., postpone any future hearings until after January 6, 2025. (Kronenberger Decl. ¶8.)

## CONCLUSION

Plaintiffs' Application and separately filed Proposed Amended Judgment should be denied in their entirety. Alternatively, Leascend requests that the Court set a briefing schedule and hearing to begin after January 6, 2025 (due to upcoming travel and holiday closures, and Mr. Kronenberger's unavailability detailed above). If there is any temporary restraining order granted, Leascend requests that the Court require a bond and certify the order for immediate appeal.

Respectfully Submitted,

Dated: December 19, 2024

**KRONENBERGER ROSENFELD, LLP**

By: s/ Karl S. Kronenberger
    Karl S. Kronenberger

Attorneys for Defendant Leascend Technology Co., Ltd.