TUCKER ELLIS LLP
David J. Steele SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:      213.430.3400
Facsimile:      213.430.3409

Attorneys for Plaintiffs,
META PLATFORMS, INC. (fka FACEBOOK, INC.)
and INSTAGRAM, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC,<br><br>          Plaintiffs,<br><br>     v.<br><br>ONLINENIC INC.; DOMAIN ID SHIELD SERVICE CO., LIMITED; and XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD.,<br><br>          Defendants. | Case No. 3:19-cv-07071-SI<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN ORDER HOLDING DEFENDANT LEASCEND TECHNOLOGY CO., LTD. F/K/A XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD. IN CIVIL CONTEMPT AND IMPOSING CONTEMPT SANCTIONS**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**DATE:          March 14, 2025**<br>**TIME:          10:00 a.m.**<br>**CTRM:          1 – 17th Floor**<br><br>Hon. Susan Illston |

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on March 14, 2025 at 10:00 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Susan Illston of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, Courtroom 1 – 17th Floor, San Francisco, CA 94102, Plaintiffs Facebook, Inc. and Instagram LLC (collectively, "Plaintiffs") will and hereby do move for an order holding Defendant Leascend Technology Co., Ltd. fka Xiamen 35.Com Internet Technology Co., Ltd. ("35.CN") in civil contempt of court due to 35.CN's failure to deposit $5.5 million (USD) into a U.S. escrow account by no later than January 31, 2025 to satisfy any forthcoming judgment from this Court, as required by the Court's December 20, 2024 order. ECF No. 420 at 2 ¶ 1.

Plaintiffs respectfully request that, in crafting a contempt citation, the Court (1)  seize the 35.com domain name asset from 35.CN—while allowing 35.CN to continue to use the domain name to operate its business—by ordering Verisign, Inc. (the registry for the domain name) to lock the 35.com domain name and to deposit with the Court documents sufficient to establish the Court's control and authority regarding the disposition of the registration and use of the domain name; (2)  enter the asset freeze requested in Plaintiffs' prior ex parte application for a temporary restraining order freezing assets (ECF Nos. 408, 413, 414) as restated in the proposed order accompanying this motion, with the addition of (a) an accounting requirement for 35.CN's possible sale of its registrar business, and (b) an order to the Internet Corporation for Assigned Names and Numbers to withhold its consent and object to any request for assignment of the related registrar accreditation; and (3)  award Plaintiffs' their reasonable attorneys' fees both in bringing this motion and bringing the underlying ex parte application for a TRO.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, the Court's December 20, 2024 order at ECF No. 420, the Declaration of Howard A. Kroll ("Kroll Decl."), the [Proposed] Order, any oral argument heard by the Court, such additional evidence as may be submitted to the Court, matters as to which the Court may take judicial notice, and such other matters as the Court deems proper.

1

2   DATED: February 7, 2025             Tucker Ellis LLP

3                              By:  /s/David J. Steele

4                                David J. Steele

5                                Howard A. Kroll
                                     Steven E. Lauridsen

6

7                                Attorneys for Plaintiffs,
                                  META PLATFORMS, INC. (fka

8                                FACEBOOK, INC.)
                                  and INSTAGRAM, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     INTRODUCTION**

3

The Court entered a direct and specific order on December 20, 2024, requiring Defendant Leascend

4

Technology Co., Ltd. fka Xiamen 35.Com Internet Technology Co., Ltd. ("35.CN") to deposit

5

$5.5. million (USD) into a U.S. escrow account by no later than January 31, 2025 to satisfy any

6

forthcoming judgment from this Court. ECF No. 420 ("Escrow Order") at 2 ¶¶ 1-2. The Court also made

7

it expressly clear what consequences 35.CN would face if it failed to deposit the money as ordered—

8

namely, "the defendants will be in contempt of court." ECF No. 423 ("TRO Hr'g Tr.") at 16:7-11 (Kroll

9

Decl. Ex. 1). Unfortunately, because 35.CN violated the Escrow Order, it is time for 35.CN to bear those

10

consequences.

11

As of the filing of this motion on February 7, 2025, 35.CN has neither deposited the court-ordered

12

funds nor provided any explanation for its non-compliance. Accordingly, the Court should hold 35.CN in

13

civil contempt of court for 35.CN's failure to comply with the Escrow Order. Because civil contempt

14

citations should be crafted to (a) coerce compliance with the Court's order and (b) compensate Plaintiffs

15

for their injury from the contemptuous conduct, Plaintiffs respectfully request that the Court enter the

16

concurrently lodged proposed order that seeks the following relief: (1) that the Court seize the 35.com

17

domain name asset from 35.CN—while allowing 35.CN to continue to use the domain name to operate

18

its business—by ordering Verisign, Inc. (the registry for the domain name) to lock the 35.com domain

19

name and to deposit with the Court documents sufficient to establish the Court's control and authority

20

regarding the disposition of the registration and use of the domain name; (2) that the Court enter the asset

21

freeze requested in Plaintiffs' prior ex parte application for a temporary restraining order freezing assets

22

(ECF Nos. 408, 413, 414), with the addition of (a) an accounting requirement for 35.CN's possible sale

23

of its registrar business, and (b) an order to the Internet Corporation for Assigned Names and Numbers

24

("ICANN") to withhold its consent and object to any request for assignment of the related registrar

25

accreditation; and (3) that Plaintiffs be awarded their reasonable attorneys' fees both in bringing this

26

motion and bringing the underlying ex parte application for a TRO.

27

28

**II.    A CIVIL CONTEMPT CITATION IS APPROPRIATE.**

**A.    35.CN violated a specific and definite order and should thus be held in contempt.**

Failure to obey the terms of a court order constitutes contempt of court. *See generally Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831-32 (1994). Federal courts have both inherent and statutory authority to punish such contempt and to coerce compliance with their orders. *Id.* at 831-32; 18 U.S.C. §§ 401-402. "The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002). This requires showing "only that the defendant has failed to comply with a valid court order." *United States v. Rylander*, 656 F.2d 1313, 1318 (9th Cir. 1981), *rev'd on other grounds*, 460 U.S. 752 (1983). The moving party "need not prove that the defendant is able to comply." *Id.* Further, "[t]he contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (quoting *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987)). Thus, "intent is not an issue." *Donavan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983). Once the movant has established by clear and convincing evidence that a specific and definite order has been violated, "[t]he burden then shifts to the contemnors to demonstrate why they were unable to comply." *Fed. Trade Comm'n v. Enforma Nat. Prods., Inc.*, 362 F.3d 1204, 1211 (9th Cir. 2004) (citation and internal quotation marks omitted).

Here, 35.CN violated a specific and definite court order—the Escrow Order—by not depositing $5.5 million into a U.S. escrow account by January 31, 2025. A civil contempt citation is therefore appropriate.

**1.    The Court entered a specific and definite order.**

The Court entered a "specific and definite" order. *In re Bennett*, 298 F.3d at 1069. Such an order "clearly describe[s] prohibited or required conduct." *See Gates v. Shinn*, 98 F.3d 463, 468 (9th Cir. 1996) ("If an injunction does not clearly describe prohibited or required conduct, it is not enforceable by contempt."); *see also Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019) ("civil contempt usually is not appropriate unless 'those who must obey' an order 'will know what the court intends to require and what it means to forbid'") (quoting *Int'l Longshoremen's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n*, 389

U.S. 64, 76 (1967)). This is an objective standard such that a party's subjective belief concerning the requirements of the order will not insulate that party from civil contempt if that belief was objectively unreasonable. *See Taggart*, 587 U.S. at 561.

Here, the Court ordered that:

1. 35.CN shall deposit, on or before January 31, 2025, $5.5 million (USD) into an escrow account in the United States held by an escrow agent to be security to satisfy any judgment issued by the Court.

2. 35.CN shall provide Plaintiffs proof of the deposit into escrow, including the account information and name of the escrowing agent.

3. 35.CN shall not sell or transfer the registrar business or accreditation (IANA No. 4163) currently held by 35.CN's wholly-owned subsidiary Xiamen 35.com Information Co., Ltd. ("35.com"), including any assets of that registrar business, or sell, transfer, or dispose of the shares or ownership interests in 35.com Info, until 35.CN has deposited the $5.5 million into an escrow account pursuant to paragraph 1, and 35.CN has provided Plaintiffs notice pursuant to paragraph 2.

Escrow Order, ECF No. 420, at 2.

Relevant here, Paragraph 1 of the Escrow Order clearly describes required conduct, *i.e.*, requiring 35.CN to deposit $5.5 million (USD) into a United States escrow account by no later than January 31, 2025.[1] *Id.* Accordingly, the Court entered a "specific and definite" order requiring such deposit.

### 2.    35.CN violated the Escrow Order by not depositing funds by January 31.

Clear and convincing evidence demonstrates that 35.CN violated the Escrow Order because 35.CN has not deposited $5.5 million into escrow on or by January 31, 2025. The clear and convincing evidence standard requires the moving party to "place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are [sic] 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984). Factual contentions are highly probable if the evidence offered in support of them "instantly tilt[s] the

---

[1] Prior to entering the order, the Court confirmed that 35.CN's counsel had approved its contents. Kroll Decl. Ex. 2.

evidentiary scales in the affirmative when weighed against the evidence [the non-moving party] offered in opposition." *Id.*

As of the filing of this motion, 35.CN has not substantively responded to Plaintiffs' repeated emails to obtain an update from 35.CN's attorney and proof of the ordered deposit. Kroll Decl. ¶¶ 4-14, Exs. 3-13. In particular, Plaintiffs' counsel requested an update concerning 35.CN's compliance with the Escrow Order on January 21 but received no response. *Id.* ¶¶ 4-5, Ex. 3. Plaintiffs' counsel again followed up on January 27, 28, and 29 and again received no substantive response. *Id.* ¶¶ 5-8, Exs. 4-9. After the January 31 deadline to comply with the Escrow Order passed without 35.CN providing any update, Plaintiffs' counsel reached out again, at which point 35.CN's attorney finally replied on the evening of February 3, 2025 that he is "not getting any updates from [his] client." *Id.* ¶¶ 9-11, Exs. 10-11. While 35.CN's attorney speculated that the lack of updates may be due to Chinese New Year celebrations, he acknowledged that the seven-day holiday in China ended on February 4, 2025. *Id.* Ex. 11. Plaintiffs then informed 35.CN that they intended to file this motion, yet 35.CN and its counsel have still failed to provide any update. *Id.* ¶¶ 12-14, Exs. 12-13.

Regardless of the suggestion that the holiday in China may be delaying "updates" from 35.CN, it is highly unlikely that 35.CN deposited the requisite $5.5 million into a U.S. escrow account without informing its counsel. Indeed, 35.CN represented during the hearing on Plaintiffs' TRO application that the settlement funds 35.CN had been contemplating transferring to the United States "were going to come through [35.CN's counsel's] firm." Hr'g Tr. at 17:16-23. Moreover, the Escrow Order requires 35.CN to provide Plaintiffs proof of the deposit once the funds were in escrow.[2] Escrow Order at 2 ¶ 2. While Plaintiffs recognize that the Escrow Order did not set forth a firm deadline by which to provide proof of the deposit, it is highly unlikely that 35.CN complied with the Court's order to deposit funds but then delayed complying with the notice provision.

Accordingly, it is highly probable that 35. CN has not deposited $5.5 million into escrow and therefore should be held in contempt for violating the Escrow Order.

---

[2] Given the lack of a firm deadline to provide proof of the escrow deposit, Plaintiffs do not move for contempt based on 35.CN's violation of that portion of the Escrow Order at this time.

**B.    The Court should exercise its broad discretion in crafting appropriate remedies for 35.CN's civil contempt.**

Courts have broad discretion to fashion a remedy for civil contempt. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 307 (1947). "Sanctions for civil contempt can be imposed for one or both of two distinct purposes: (1) to compel or coerce obedience to a court order; and (2) to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance." *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1147 (9th Cir. 1983) (citations omitted). Where the purpose is to coerce compliance, the district court exercises its discretion in crafting the remedy such that it "consider[s] the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United Mine Workers of Am.*, 330 U.S. at 304. This discretion is broad, and the Court may craft other appropriate remedies, such as a seizure order, when traditional remedies like "incarceration and fines would not adequately address the harm to Plaintiff[s]." *See Suntech Power Holdings Co., Ltd. v. Shenzhen Xintian Solar Tech. Co., Ltd.*, No. 08-cv-01582-H, 2008 WL 11337380, at *1 (S.D. Cal. 2008). The Court may do so in reliance "on its inherent power under traditional rights and any power under the [substantive law]." *Id.* at *3.

**1.    The Court should issue an order seizing the 35.com domain name asset.**

As discussed above, courts have crafted seizure and similar orders by looking to the equitable remedies available in the underlying action. *See, e.g.*, *id.*; *Title Tyrrell Promotions Ltd. v. Exoto Inc.*, No. 2:05-cv-06539-SVW, 2013 WL 12575619, at *1 (C.D. Cal. Apr. 13, 2013); *Jerry's Famous Deli, Inc. v. Papanicolaou*, 383 F.3d 998, 1001, 1004-05 (9th Cir. 2004). Further, the United States Supreme Court has "repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977).

Accordingly, the Court has the authority to freeze property to preserve the *status quo* and to prevent the dissipation of assets, a substantial risk here given 35.CN's failure to comply with the Court's order to escrow $5.5 million to satisfy any judgment of this Court. *See United States v. First Nat'l City Bank*, 379 U.S. 378, 384 (1965). In fact, Rule 64(a) of the Federal Rules of Civil Procedure makes available to district

1  courts "all remedies providing for seizure of person or property for the purpose of securing satisfaction of

2  the judgment ultimately to be entered in the action." In addition, Rule 64(b) lists attachment as one such

3  available remedy, along with "other corresponding or equivalent remedies, however designated." *See*

4  *Granny Goose Foods, Inc. v. Brotherhood of Teamsters Local* 70, 415 U.S. 423, 436 n.10 (1974) ("[L]ong-

5  settled federal law provide[s] that in all cases in federal court, . . . state law is incorporated to determine

6  the availability of prejudgment remedies for the seizure of person or property to secure satisfaction of the

7  judgment ultimately entered."). In a trademark case, an asset freeze order is essentially a writ of attachment

8  under California state law. *Microsoft Corp. v. A-Tech Corp.*, 855 F. Supp. 308, 312 (C.D. Cal. 1994).

9  35.CN's obligation to pay any judgment in this action is therefore a claim subject to attachment under

10  California law. *See* Cal. Civ. Proc. Code § 483.010; *see also id.* § 492.010 (attachment involving a foreign

11  corporation not qualified to do business in California); *id.* at § 492.040 ("a writ of attachment issued under

12  this chapter may be levied upon any property of a defendant for which a method of levy is provided" by

13  the relevant California statutes); *see also N. Hollywood Marble Co. v. Superior Court*, 157 Cal. App. 3d

14  683, 690 (Cal. App. 2d Dist. 1984) (explaining that attachment is used to ensure that the alleged debtor's

15  assets are not dissipated prior to the enforcement of a judgment).

16        35.CN's failure to escrow $5.5 million as ordered shows that it has no intention of satisfying this

17  Court's Escrow Order or any eventual judgment. Plaintiffs therefore respectfully request that the Court

18  seize the 35.com domain name asset from 35.CN—while allowing 35.CN to continue to use the domain

19  name to operate its business—by ordering Verisign, Inc. (the U.S. based registry for the domain name) to

20  lock the 35.com domain name to prevent its transfer. Plaintiffs further request that the Court order

21  Verisign, Inc. to deposit with the Court documents sufficient to establish the Court's control and authority

22  regarding the disposition of the registration and use of the domain name.

23              **2.      The Court should issue the asset freeze Plaintiffs previously requested, with**

24                   **the addition of (a) an accounting requirement for 35.CN's possible sale of its**

25                   **registrar business, and (b) an order to ICANN to withhold its consent and**

26                   **object to any request for assignment of the related registrar accreditation.**

27        Plaintiffs previously filed an ex parte application for a temporary restraining order to freeze

28  35.CN's assets due to the impending sale of its registrar business, a clear attempt by 35.CN to dissipate

6

its assets prior to entry of judgment. *See generally* App. for TRO, ECF No. 408. During the hearing on that application, the Court specifically ordered 35.CN to deposit money into escrow to avoid having to interfere with 35.CN's pending sale or otherwise freeze its assets. Hr'g Tr. at 6:10-7:12, 15:13-16:6. But 35.CN has defied the Court's Escrow Order and has not deposited any funds, thus rendering the risk that 35.CN will dissipate its assets all the more real. Accordingly, for the reasons stated in Plaintiffs' prior application for a TRO, the court should enter the asset freeze previously requested—and as restated in the proposed order for this motion—to ensure that 35.CN can satisfy any judgment. In connection with the asset freeze originally requested, 35.CN should also be ordered to provide an accounting for the sale of its subsidiary 35.com Info and the related registrar business—if the sale transpired—including all documents concerning the sale and the source and disposition of the funds related to that sale.[3] In light of the possible sale of 35.CN's registrar business, Plaintiffs also request as part of the asset freeze that the Court order ICANN to withhold its consent and object to any request for assignment of the related registrar accreditation. Plaintiffs respectfully request that the Court maintain this freeze until 35.CN complies with the Escrow Order or satisfies any judgment of this Court.

### 3. Plaintiffs should be awarded their fees in bringing this motion and for their underlying application for a TRO.

A Court may award a party its costs and fees expended in bringing a motion for civil contempt. *Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc.*, 877 F.2d 787, 790 (9th Cir. 1989). Unlike for criminal contempt, the contemnor need not have acted willfully for the district court to award attorneys' fees to the moving party. *Perry v. O'Donnell*, 759 F.2d 702, 705-06 (9th Cir. 1985) ("It matters not whether the disobedience is willful, the cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party and those costs would reduce any benefits gained by the prevailing party from the court's violated order.") (quoting *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1997)).

Plaintiffs respectfully request an award of their reasonable attorneys' fees and costs not only for

---

[3] In crafting contempt orders, district courts may order an accounting. *See, e.g.*, *Exoto Inc.*, 2013 WL 12575619, at *1, *6-*7 (ordering audited accounting of profits for sales of allegedly infringing products after preliminary injunction issued) (citing *Papanicolaou*, 383 F.3d at 1001, 1005-06).

bringing this motion but for also having to bring the underlying application for a temporary restraining order. Neither motion should have been necessary to ensure that 35.CN satisfy any forthcoming judgment from this Court. Plaintiffs should therefore be made whole for having to bring these issues to the Court's attention.[4]

## III.    CONCLUSION

This Court ordered 35.CN to deposit $5.5 million into a U.S. escrow account by January 31, 2025, and the deadline has come and gone without a word of explanation—let alone the required deposit—from 35.CN or its counsel. Plaintiffs therefore respectfully request that the Court hold 35.CN in civil contempt and order: (1) that the Court seize the 35.com domain name asset from 35.CN—while allowing 35.CN to continue to use the domain name—by ordering Verisign, Inc. (the registry for the domain name) to lock the 35.com domain name and to deposit with the Court documents sufficient to establish the Court's control and authority regarding the disposition of the registration and use of the domain name; (2) that the Court enter the asset freeze requested in Plaintiffs' prior ex parte application for a temporary restraining order freezing assets (ECF Nos. 408, 413, 414), with the addition of (a) an accounting requirement for 35.CN's possible sale of its registrar business, and (b) an order to the Internet Corporation for Assigned Names and Numbers to withhold its consent and object to any request for assignment of the related registrar accreditation; and (3) that Plaintiffs be awarded their reasonable attorneys' fees both in bringing this motion and bringing the underlying ex parte application for a TRO.

DATED: February 7, 2025                    Tucker Ellis LLP

By: /s/David J. Steele
David J. Steele
Howard A. Kroll
Steven E. Lauridsen

Attorneys for Plaintiffs,
META PLATFORMS, INC. (fka
FACEBOOK, INC.)
and INSTAGRAM, LLC

---

[4] Plaintiffs will submit briefing concerning their fees and the reasonableness of those fees at the appropriate juncture.