UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ONLINENIC INC, et al.,<br><br>Defendants. | Case No. 19-cv-07071-SI<br><br>**ORDER RE: MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. No. 395 |

Following this Court's order granting default judgment against all defendants, Dkt. No. 393, plaintiffs Meta Platforms, Inc. (f/k/a Facebook, Inc.) and Instagram LLC (collectively, "plaintiffs") moved for an award of attorneys' fees and costs. Dkt. Nos. 395, 396. Defendant Leascend Technology Co., Ltd. (f/k/a Xiamen 35.com Technology Co., Ltd. ("35.CN")) has filed an opposition brief, in which defendants OnlineNIC, Inc. and Domain ID Shield Service Co., Ltd. join.[1] Dkt. Nos. 403, 404. On December 20, 2024, the Court ordered plaintiffs to submit their unredacted fee records for the Court's *in camera* review. Dkt. No. 417.

As the Court previously indicated, this matter is appropriate for resolution on the papers without oral argument. *See* Civ. L.R. 7-1(b). Having reviewed the papers, including the unredacted fee records, and considering the arguments presented by the parties, the Court GRANTS the motion for attorneys' fees and AWARDS fees in the amount of $2,185,869.14.

## BACKGROUND

The lengthy factual and procedural background of this case is recited in numerous prior orders. *See* Dkt. Nos. 225, 276, 357, 393. The Court will not re-state the facts in full here. On May

---

[1] The Court's order at Dkt. No. 357 found these three defendants are alter egos of each other.

3, 2024, the Court granted plaintiffs' motion for default judgment against all parties. Dkt. No. 393. That order indicated, *inter alia*,

> The Court will award plaintiffs their attorneys' fees and costs, in an amount to be determined, for the reasons stated in the Report and Recommendation at 31-32. The Court agrees with Judge van Keulen that this is an exceptional case warranting attorneys' fees under the Lanham Act, 15 U.S.C. § 1117(a), because of defendants' intentional misconduct in discovery. *See Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002).

*Id.* at 8.

Previously, Magistrate Judge van Keulen, who oversaw this case for nearly two years before it was reassigned, recommended that plaintiffs receive a partial recovery of fees, related to the discovery proceedings before the Special Master and the motion for sanctions. Dkt. No. 225 at 32. This Court's May 3, 2024 order recognized, however, that Judge van Keulen's recommendation "issued in March 2022, and there have been several more years of litigation, largely to resolve the question of whether 35.CN was the alter ego of the OnlineNIC defendants." Dkt. No. 393 at 8.

The Court therefore instructed as follows:

> The Court will award plaintiffs fees for the Motion for Default/Summary Judgment against 35.CN on the alter ego question, in addition to fees for the proceedings that Judge van Keulen identified. Plaintiffs are hereby provisionally awarded their reasonable attorneys' fees—related to the proceedings before the Special Master, the Motion for Sanctions, and the Motion for Default/Summary Judgment against 35.CN on the alter ego question—as well as costs.

*Id.* at 8-9.

Plaintiffs now move for their attorneys' fees and costs under 15 U.S.C. § 1117(a). Dkt. Nos. 395, 396. Plaintiffs seek fees in the amount of $2,201,992.25 and costs in the amount of $51,045.16. Defendants oppose, to the extent that the fee request exceeds the scope of the Court's prior orders and to the extent that the hours billed may be duplicative or excessively high. Dkt. Nos. 403, 404.

## LEGAL STANDARD

The Lanham Act provides, "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). When setting a fee under the Lanham Act, "the

2

district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Under the lodestar method, counsel for the party seeking such fees must endeavor to exclude from its request "excessive, redundant, or otherwise unnecessary" billed hours. *Hensley*, 461 U.S. at 434. If counsel has not done so, district courts may exclude hours from a fee request through an hour-by-hour analysis or, when faced with a large fee application, an across-the-board percentage cut to either the hours claimed or the final lodestar sum. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) (citation omitted). As the Ninth Circuit has stated:

> The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services. . . . If the applicant satisfies its burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee. . . .

*Intel Corp.*, 6 F.3d at 622-23 (quoting *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987)).

**DISCUSSION**

Plaintiffs state that they have narrowly interpreted the Court's guidance regarding what fees are allowable in this case. Dkt. No. 395 at 1. For instance, plaintiffs have not included "fees related to the discovery efforts to obtain the alter ego evidence" that led to plaintiffs' successful motion for default/summary judgment. *Id.* at 2.

In their opposition, defendants object first and foremost that redactions in the fee logs prevent defendants and the Court from ascertaining whether the fees sought fall under the three allowable categories of work that the Court approved. After briefing on the fee motion was complete, the Court agreed with defendants that "many of the redactions preclude the Court from reviewing whether the records fall into the approved categories" and accordingly ordered plaintiffs to submit their unredacted fee records for *in camera* review. Dkt. No. 417. Plaintiffs have done so, and the Court has reviewed the unredacted fee logs to ensure compliance with the prior order.

3

Defendants further object that plaintiffs improperly used "block and duplicative billing among multiple attorneys." Dkt. No. 403 at 4. "Block billing" typically refers to the practice "by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109, 1128 n.2 (9th Cir. 2008) (citation omitted), *overruled on other grounds by Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014). Upon review of the fee logs, the Court finds that plaintiffs' counsel did not engage in improper block billing. Rather, defendants' objection appears to be that the hours worked was simply excessive: that too many lawyers spent too much time on various tasks, including the same tasks.

Having reviewed the unredacted fee logs, the Court finds that, on the whole, the fees sought are properly claimed under the three compensable categories the Court indicated it will allow. The Court further finds that the hours spent—while high—are reasonable given the factual complexity of this case and given defendants' litigation conduct.

As an example, defendants argue that it was excessive for plaintiffs to bill 125 hours for "enforcing payment of the Special Master." Dkt. No. 403 at 9. The Court might have agreed, were it not for the fact that, in this case, enforcing payment of the Special Master involved plaintiffs filing for a temporary restraining order freezing OnlineNIC's assets. Dkt. No. 129. Plaintiffs prevailed on their request for an asset freeze, after Judge van Keulen found that plaintiffs had "shown a likelihood of immediate and irreparable injury by dissipation of assets if a temporary restraining order . . . does not issue . . . ." Dkt. No. 132 at 1. In light of this litigation history, the Court will not find it excessive that plaintiffs billed 125 hours to ensure payment of the Special Master.

Likewise, defendants take issue with 134 hours billed for "analyzing/responding to an administrative motion for a hearing." Dkt. No. 403 at 9. But this was not simply an administrative motion requesting a hearing. Rather, after receiving an adverse ruling recommending terminating sanctions for discovery misconduct, defendants moved for an evidentiary hearing and to augment the record "to determine whether there is a factual basis for Plaintiffs' key allegation that they sent Defendants sufficient notice under the RAA [Registrar Accreditation Agreement] for each of the thirty-five domain names, prior to approving terminating sanctions." Dkt. No. 238 at 1. Defendants'

characterization of this motion as a mere "administrative motion" is disingenuous. Moreover, defendants summarily lost that motion. *See* Dkt. No. 276 at 15 n.8.

As a further example, defendants object that it was excessive for plaintiffs to spend 213.6 hours on sealing motions associated with the alter ego litigation. But plaintiffs' work on the accompanying sealing motions was necessitated by defendants' over-designating the material as confidential. It is worth noting that, when given the opportunity to withdraw their confidentiality designations, defendants stood by their position, and the Court ultimately denied the sealing requests almost entirely. *See* Dkt. No. 353 at 17. The Court will not disallow the hours plaintiffs spent on the accompanying sealing motions.

These examples reveal what has become a pattern in this case: that defendants' litigation conduct has caused plaintiffs to have to work harder than they otherwise might have. While it may appear at first blush that plaintiffs billed an excessive number of hours, a closer look shows that the billing is justified when considered in the broader context of this litigation and the complexity of facts at play.

Defendants also take issue on the work performed on the motion for default judgment (alter ego), which comprises the largest category of billing in plaintiffs' motion. Defendants state that "plaintiffs had already spent time reviewing alter ego issues for the amended complaint and through discovery, which fees are not recoverable." Dkt. No. 403 at 8. But the factual detail provided in the summary judgment motion was on another level altogether. Where the amended complaint alleged that defendants were alter egos, the summary judgment motion actually connected the dots, sometimes in painstaking detail. For instance, plaintiffs' motion tracked monetary transactions into and out of defendants' bank accounts to show that "more than a decade after a company affiliated with [35.CN and OnlineNIC's founder] loaned OnlineNIC money to fund OnlineNIC's operations, nearly $[redacted] of the loan remained outstanding." *See* Dkt. No. 357 at 17. The detailed evidentiary support plaintiffs provided in the motion ultimately led to their prevailing. One of the partners who worked on the motion has declared, "[T]he Motion for Default Judgment/Summary Judgment was the most fact-intensive and complicated motion I have worked on in my career." Dkt. No. 395-27, Kroll Decl. ¶ 4. The Court will allow plaintiffs to claim their full fees for the work

5

performed on this motion.

The Court will, however, exclude from plaintiffs' award the time spent working up the fee request in connection with the 2022 terminating sanctions motion. *See* Dkt. No. 395-14, Steele Decl. Ex. 13. The records indicate that this work was performed between March 26 and November 11, 2022, as part of "revising the proposed default judgment after issuance of the R&R." *Id.* In the R&R, Judge van Keulen determined that a *partial* award of fees was warranted under the circumstances but found that the fee logs were insufficiently detailed for her to formulate a recommendation. *See* Dkt. No. 225 at 31-32. This Court did not order that plaintiffs supplement their fee request until May 2024, and even at that time the Court did not indicate it would award fees for time spent preparing the fee request. *See* Dkt. No. 393 at 8-9, 12. Because preparation of the fee logs in 2022 was not necessary to the sanctions motion and was not requested under the Court's prior orders, the Court finds it proper to exclude time preparing these fee logs from the current award. Excluding the time spent on the attorneys' fees request in Exhibit 13 results in a deduction of $16,123.11 off plaintiffs' requested fee award. *See* Steele Decl. Ex. 13 (listing 44.3 hours totaling $16,123.11 for work spent in support of the attorneys' fee request).

In its discretion, the Court also denies plaintiffs' request to supplement their fee motion to include hours spent on discovery on the alter ego issue. As already indicated, the Court will leave the vast majority of plaintiffs' claim intact, and the resulting fee award is already high. Adding hours spent on discovery efforts would push the fee award out of the "reasonable" range and into the "excessive" range.

The Court finds that plaintiffs have presented adequate evidence supporting the rates charged in this case, and that the rates are at or even below the market rate for intellectual property litigators in the San Francisco Bay Area. Plaintiffs have applied a 15% discount to their standard rates and, with one exception, they have not increased the rates they charged in working on this case since 2022. Dkt. No. 395 at 3-4. For the four partners who worked on this matter from 2021 to 2024, plaintiffs seek rates ranging from $591 to $727. Dkt. No. 395 at 3; Steele Decl. ¶ 6(a)-(d). For two attorneys with more than 10 years of experience, plaintiffs seek rates ranging from $365 to $467.50. Steele Decl. ¶ 6(e)-(f). And for four attorneys with fewer than five years' experience, plaintiffs seek

1    rates ranging from $177 to $289. *Id.* ¶ 6(g)-(j). Other Judges in this district have approved rates in
2    line with or exceeding what plaintiffs' counsel have billed here. *See, e.g., HP Inc. v. Wiseta*, No.
3    23-cv-344-RFL (AGT), 2024 WL 1699564, at *4 (N.D. Cal. Mar. 15, 2024) (in Lanham Act case,
4    approving rate of $1075/hour for senior partner with 15 years' experience), *report and*
5    *recommendation adopted*, 2024 WL 2242439 (N.D. Cal. May 13, 2024); *Juno Therapeutics, Inc. v.*
6    *Juno Biomedical, Inc.*, No. 17-cv-4196-JCS, 2018 WL 2021483, at *8-9 (N.D. Cal. Mar. 26, 2018)
7    (in Lanham Act case, approving rates of $700 and $500 for attorneys with 18 years and 5 years of
8    IP experience, respectively), *report and recommendation adopted*, 2024 WL 1993407 (Apr. 27,
9    2018). Plaintiffs also attach a report from the American Intellectual Property Law Association
10   showing that the 2022 median hourly rate for intellectual property attorneys in San Francisco was:
11   $810 at the partner level; $515 for partner-track attorneys with more than 10 years of IP experience;
12   and $313 for partner-track attorneys with fewer than five years of IP experience. Steele Decl., Ex.
13   1. The Court finds the hourly rates charged here are reasonable and in line with the rates charged
14   in the community for similar services.

15   Finally, defendants object that plaintiffs have not provided unredacted invoices of their costs.
16   The Clerk has issued a notice regarding the deficiency in the Bill of Costs. Dkt. No. 425. Plaintiffs
17   have amended their submission, and the Clerk shall resolve that question separately. *See* Dkt. Nos.
18   428, 429.

**CONCLUSION**

21   For the reasons set forth above, the Court GRANTS plaintiffs' motion for an award of
22   attorneys' fees and costs. The Court AWARDS plaintiffs $2,185,869.14 in fees. The Clerk shall
23   tax costs separately.

24   The Court hereby notifies the parties of its intent to approve the substance of the most recent
25   amended proposed default judgment and permanent injunction, at Dkt. No. 416-1. A separate
26   default judgment and permanent injunction shall issue forthwith.

27   ///
28   ///

1      The Clerk shall <u>not</u> administratively close the case at this time, until after resolution of
2 plaintiffs' recently filed motion for sanctions.  *See* Dkt. No. 426.

4      **IT IS SO ORDERED**.

5 Dated: February 14, 2025

_____
SUSAN ILLSTON
United States District Judge