**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Liana W. Chen (Bar No. 296965)
Leah Rosa Vulić (Bar No. 343520)
548 Market Street #85399
San Francisco, CA 94104-5401
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@kr.law
jeff@kr.law
liana@kr.law
leah@kr.law

Defendant Leascend Technology Co., Ltd.
f/k/a Xiamen 35.com Technology Co., Ltd.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **FACEBOOK, INC.**, et al., <br><br> Plaintiffs, <br><br> v. <br><br> **ONLINENIC INC.**, et al., <br><br> Defendants. | Case No. 3:19-cv-07071-SI <br><br> **DEFENDANT LEASCEND TECHNOLOGY CO., LTD. F/K/A XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD.'S OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER HOLDING DEFENDANT IN CIVIL CONTEMPT AND IMPOSING CONTEMPT SANCTIONS** <br><br> Date:    March 14, 2025 <br> Time:    10:00 a.m. <br> Ctrm:    1 – 17th Floor <br> Before:  Hon. Susan Illston |

Defendant Leascend Technology Co., Ltd. f/k/a Xiamen 35.com Internet Technology Co., Ltd. ("Defendant" or "Leascend") opposes the motion by Plaintiffs Facebook, Inc. and Instagram, LLC (collectively "Plaintiffs") for contempt and sanctions for claimed non-compliance with the Court's December 20, 2024 Order (the "Order") as follows:

## INTRODUCTION

Contempt and sanctions are not warranted where compliance was factually and legally impossible, and where there is no personal jurisdiction over Leascend's conduct in China. Specifically, Plaintiffs assert Leascend violated the Order by failing to deposit $5.5 million (USD) into a United States escrow account by January 31st. However, Leascend attempted to transfer funds—from China where it is a public company and has its financial accounts—and the transfer was denied as not being compliant with Chinese law, as outlined below.

Further, Plaintiffs seek specific sanctions that are either not possible or warranted, especially given that the Court recently issued the final judgment, which resolves most of Plaintiffs' requests. This is not an action by the government or an action that is criminal in nature, yet Plaintiffs are seeking to bypass ordinary collection procedures and Chinese laws that apply to Leascend as a public company in China. For all these reasons, Plaintiffs' motion should be denied.

## STATEMENT OF THE ISSUES

Whether Plaintiffs have shown convincing evidence that Leascend violated a specific and definite part of the Order; and if so, whether Leascend has demonstrated that it was unable to comply with that portion of the Order; and any appropriate remedies.

## BACKGROUND

Plaintiffs (Facebook/Meta and Instagram) first obtained terminating sanctions against OnlineNIC/ID Shield for discovery (not merits based) issues and then sought summary judgment against Leascend, a Chinese company, as the alleged alter ego.

On December 18, 2024, Plaintiffs filed an emergency ex parte application to freeze

1  Leascend's assets in anticipation of a final judgment. Leascend was given less than 24
2  hours' notice to file an opposition brief and then appear at a hearing without adequate time
3  to consult with its representative in China. On December 20, 2024, the Court granted the
4  Order, requiring Leascend to, among other things, deposit $5.5 million (USD) into an
5  escrow account in the United States by January 31, 2025. At the hearing, Leascend's
6  counsel raised concerns about Leascend's ability to comply with the Order given regulatory
7  issues in China. Moreover, when the Court ordered the parties to submit a proposed order
8  after the hearing, Leascend's counsel confirmed to the Court via email that there were
9  "serious concerns about the ability to comply" with the Order.

10  Leascend has acted with due diligence in trying to transfer the funds and obtain
11  evidence in support of this opposition. In particular, on January 10, 2025, Leascend
12  submitted an application for outward remittance to transfer $5.5 million overseas to a US
13  account. (Declaration of Yanrong Li ("Li Decl.") ¶2 & Exhibit A.) On or around January 13,
14  2025, the bank's audit department informed Leascend that its application for remittance
15  was denied under China's foreign exchange control policies because the bank did not
16  consider the December 20, 2024 Order to be legally sufficient grounds under Chinese law
17  to authorize this transfer. (Li Decl. ¶3.) This was not a surprise, as this case has been
18  dogged by conflicts between US and Chinese law throughout the discovery process. [*e.g.*,
19  D.E. 286 (Discovery Order noting issues under Chinese law).] However, the bank indicated
20  that a party (Leascend or Plaintiffs) could apply to the competent Intermediate People's
21  Court for recognition and enforcement of a final judgment or formally recorded settlement
22  agreement. (Li Decl. ¶4.) On February 14, 2025, the Court issued the final judgment. [D.E.
23  431.]

24  Furthermore, while Plaintiffs' motion does not claim that Leascend violated the
25  Order by selling its domain name business, it should be clarified that that business was
26  sold on December 5, 2024, through an auction process. (Li Decl. ¶5.) Under the applicable
27  Xiamen Property Rights Exchange Network Auction Rules (the "Rules") that governed the
28

auction process, the sale was actually effective with a binding contract under Chinese law at the time the Xiamen Property Rights Exchange Center gave notice of the winning bidder in the auction, styled as the "Confirmation Notice of Transaction" on December 5, 2024, *i.e.*, prior to the Court's Order, even though ministerial acknowledgements by the parties had not taken place. (Li Decl. ¶5 & Exhibit B.) Notably, Section 8 of the Rules states (in Chinese and as translated into English): "The contract between the transferee and the transferor is deemed to be formed upon the issuance of the notice of transaction. . . . The transferee should sign the contract with the transferor at the time and location specified in these rules. However, whether the signing procedures are completed does not affect the formation of the subject contract . . . If the transferee fails to fulfill the contract signing obligations within the time frame specified in these rules, it will not affect the formation of the contract between the transferee and the transferor." This demonstrates that the Order, which was granted on shortened notice, was premised on a mistake of fact; that is, that the sale of the domain registrar business had not happened, when in fact it had indeed occurred fifteen days prior to the Order.

## ARGUMENT

Contempt is not warranted due to lack of personal jurisdiction over Leascend for conduct in China and prohibited by Chinese law, which was allegedly in violation of the Order; contempt is also not warranted because compliance with the Order was impossible, despite Leascend's reasonable efforts to transfer money to a US bank account. Moreover, Plaintiffs seek remedies that are not supported or rational given the circumstances, including the Court's recent signing of the final judgment.

**A.   Civil contempt is not warranted.**

In a civil contempt proceeding, the moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply. *See FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999). Plaintiffs'

motion does not meet the burden of showing clear and convincing evidence of contempt. Regardless, Leascend has demonstrated why it was unable to fully comply with the provisions raised in the motion. Therefore, contempt is not warranted in this case.

### 1. The Court lacks personal jurisdiction for the alleged contempt conduct.

Lack of personal jurisdiction over a party sought to be enjoined is a defense to a contempt proceeding. *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1394 (9th Cir. 1995). For example, the court lacks jurisdiction over a foreign national following the law of its own country when doing acts within that country, rather than following an order from the United States that has no legal effect in the foreign country; there is no purposeful direction in that situation, nor would jurisdiction comport with fair play and substantial justice. *See id.* (finding there was no personal jurisdiction for a contempt claim against a business for not following a temporary restraining order with an asset freeze). This is true even though a US court no doubt desires to have its injunctive order respected; in fact, a court's limits "became palpable when the court sought to extend its arm into the territory of another nation and to impose discordant duties upon the subjects of that nation whose actions were solely within its own borders." *Id.* at 1394–95 ("[W]e cannot arrogate to the federal courts the power to control the banking systems of other countries within their own territory. Again, we understand the district court's frustration and its reaction in the heat of the fray. But from our more remote coign of vantage it is clear that the contempt order cannot stand.").

Here, the Court has ruled (over Leascend's opposition) that Leascend was the alter ego of California-based Defendant OnlineNIC, which was the basis for imposing liability on Leascend. [D.E. 351 at 1.] However, while alter ego is a basis for personal jurisdiction [D.E. 207 at 7] at the time of the alter ego relationship, there has not been any finding of alter ego, or general or specific jurisdiction, at the present time relevant to the claims for contempt, *i.e.*, when Leascend attempted to transfer money in China from a Chinese bank. This case has always involved a public Chinese company subject to regulations in China for its conduct in China. Moreover, as related to this motion, Leascend is subject to Chinese

laws and regulations, including for transferring millions of dollars outside of China based on an expedited Order that was not a final judgment. (Li Decl. ¶3.) Like *Reebok*, there is no jurisdiction over Leascend in this situation.

### 2. Contempt is not warranted because compliance was impossible, despite Leascend's due diligence and reasonable efforts to comply.

A party's inability to comply with a judicial order constitutes a defense to a charge of civil contempt; where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action. *See United States v. Rylander*, 460 U.S. 752, 757 (1983) (finding party could defend the contempt charge on the ground that he was then unable to comply because he lacked possession or control); *see also Shapiro v. Henson*, 739 F.3d 1198, 1202 (9th Cir. 2014) (noting a party cannot be held in contempt for failing to do the impossible, such as turning over property it no longer possesses). *C.f. In re Icenhower*, 755 F.3d 1130, 1140 (9th Cir. 2014) (finding to avoid contempt, the Diazes needed to show that, although they had taken all reasonable steps to comply, compliance was impossible).

Here, due to Chinese banking restrictions regarding large money transfers outside of China, Leascend was unable to transfer the relevant funds to the US without providing its bank with a final judgment from the Court and acquiring the requisite permissions from the Chinese government. Leascend made reasonable and good-faith efforts to comply, including by submitting an application for outward remittance to transfer the $5.5 million overseas to a US account but was denied the transfer. (Li Decl. ¶¶2-3.) This inability to comply is not due to any fault of Leascend, which maintains its bank account funds in China, *i.e.*, the country where it is organized and does business. Thus, there is no basis for contempt against Leascend, which undertook reasonable efforts to comply.

### B. The requested sanctions are not warranted or practicable.

"Sanctions for civil contempt can be imposed for one or both of two distinct purposes: (1) to compel or coerce obedience to a court order; and (2) to compensate the

contemnor's adversary for injuries resulting from the contemnor's noncompliance." *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1147 (9th Cir. 1983). Before compulsory sanctions may be imposed, a contemnor must have an "opportunity to reduce or avoid the fine through compliance." *Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 829 (1994). Thus, at the least, a contemnor must be given notice that it will face compulsory sanctions if it fails to take a particular action. *In re Icenhower*, 755 F.3d at 1141.

Contempt sanctions are not warranted here to compel compliance where compliance is not possible and where Plaintiffs have not suffered any injuries. While Plaintiffs requested an Order to have funds preserved for a future judgment, now that the Court issued a judgment, Leascend (or Plaintiffs) can apply to a local court in China and then a financial institution for payment of the judgment directly (because a party in China can typically apply to the local court in China for recognition of a final foreign judgment, as opposed to an interim order, which is not recognized by the local court or therefore financial institution), pending appeal rights. This additional time to comply (*i.e.*, for a party to apply for recognition of the final judgment in the foreign court) prior to imposing contempt sanctions is supported by case law, as the alleged contemnor should be given notice and time to remedy the issues to avoid sanctions. Thus, Plaintiffs' requests, discussed below, are not warranted and/or do not make sense now that the Court has entered a final judgment. [D.E. 431.]

To address Plaintiffs' first specific request, seizure of the 35.com domain name asset from 35.CN does not make sense where the domain name registration business, including the domain name 35.com, was sold prior to the Court's Order under the Chinese bidding rules, *i.e.*, Leascend does not own or control that domain name. (Li Decl. ¶5.) Although Plaintiffs try to compare a trademark asset freeze with a writ of attachment under California state law [D.E. 426 at 9], this case does not involve infringement through the 35.com domain name. Further, before a writ of attachment may issue, the plaintiff is generally required to give a sufficient undertaking, usually accomplished by payment of the

premium, for a corporate surety bond. See *N. Hollywood Marble Co. v. Superior Ct.,* 157 Cal. App. 3d 683, 690 (1984). In other words, seizure of the 35.com domain name is not supported, including because Leascend does not own or control the domain name; and the Court would lack personal jurisdiction to freeze that domain name from a third party overseas (again, there is no allegation that the domain name itself is infringing on Plaintiffs' trademarks).

Moreover, Plaintiffs' request for an asset freeze, accounting, and order to restrict ICANN transfer, are not only draconian but already covered by the final judgment. Therefore, it would be duplicative and unnecessarily punitive to require an additional asset freeze, accounting, and transfer restriction based on the pre-judgment Order.

Finally, there is no basis for any further award of attorney's fees. Plaintiffs already have a judgment awarding millions in fees for underlying claims involving 35 domain names. Additional fees, given the above arguments, would be excessive.

## CONCLUSION

For the foregoing reasons, Leascend requests that the Court deny Plaintiffs' Motion for an Order Holding Defendant in Civil Contempt and Imposing Contempt Sanctions.

Respectfully Submitted,

Dated: February 21, 2025         **KRONENBERGER ROSENFELD, LLP**

By:  /s/ Karl S. Kronenberger
       Karl S. Kronenberger

Attorneys for Leascend Technology Co., Ltd. f/k/a Xiamen 35.com Internet Technology Co., Ltd.