# Exhibit 1

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ONLINENIC INC.; DOMAIN ID SHIELD SERVICE CO., LIMITED; and XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD.,<br><br>Defendants. | Case No. 3:19-cv-07071-SI<br><br>**[REVISED PROPOSED] ORDER RE: PLAINTIFFS' MOTION FOR AN ORDER HOLDING DEFENDANT LEASCEND TECHNOLOGY CO., LTD. F/K/A XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD. IN CIVIL CONTEMPT AND IMPOSING CONTEMPT SANCTIONS**<br><br>**DATE:** March 14, 2025<br>**TIME:** 10:00 a.m.<br>**CTRM:** 1 – 17th Floor<br><br>Hon. Susan Illston |

1

The Court, having read and considered Plaintiffs' Motion for an Order Holding Defendant Leascend Technology Co., Ltd. f/k/a Xiamen 35.Com Internet Technology Co., Ltd. ("35.CN") in Civil Contempt and Imposing Contempt Sanctions, the papers in opposition and reply, and the arguments presented at the March 14, 2025, hearing on that motion, **ORDERS** as follows:

It is **ORDERED** that the hearing on the motion is adjourned to April 4, 2025, at 10:00 a.m.

It is further **ORDERED** that the Court freezes the registrar business assets, including the domain names attached to this Order as Exhibit A[1] (the "Subject Domain Names") and the Internet Corporation for Assigned Names and Numbers ("ICANN") registrar accreditation (IANA 4163) of Xiamen 35.com Information Co., Ltd., until the hearing in this matter currently set for April 4, 2025, at 10:00 a.m. To facilitate the asset freeze:

1. Verisign, Inc. ("Verisign") is hereby **ORDERED** to lock the Subject Domain Names, while allowing use of the Subject Domain Names. To comply with this Order, for each of the Subject Domain Names, Verisign shall set the following Extensible Provisioning Protocol domain status codes: serverDeleteProhibited (to prevent deletion) and serverTransferProhibited (to prevent the transfer to another registrar);

2. Verisign is hereby **ORDERED** to deposit with the Court documents sufficient to establish the Court's control and authority regarding the disposition of the registration and use of the Subject Domain Names; and

3. ICANN is **ORDERED** to withhold its consent and affirmatively object to any request to assign to another party the registrar business and accreditation (IANA 4163), including as authorized under the 2013 Registrar Accreditation Agreement Sections 7.3.1 and 7.3.2 (relevant portions are attached to this Order as Exhibit B).

**IT IS SO ORDERED.**

DATED: _____    _____

Susan Illston
United States District Judge

---

[1] As ordered by the Court (ECF No. 443), the domain names listed in Exhibit A were selected from 35.CN's Asset Valuation Report, a certified translation of which is available at ECF No. 442-1 Ex. A.

# Exhibit A

| | |
|---|---|
| 1TH.NET | 35WST.COM |
| 35.COM | 35WST.NET |
| 35CAIFU.COM | ABSOLUTEE.COM |
| 35CENTER.COM | CHINA-CHANNEL.COM |
| 35CENTER.NET | CHINA-CHANNEL.NET |
| 35CHAIN.COM | CHINACHANNEL.COM |
| 35EQ.COM | CN4E.COM |
| 35EQ.NET | CN4E.NET |
| 35EYOU.COM | COOLICE.COM |
| 35EYOU.NET | DNS-DIY.COM |
| 35EZWEB.COM | DOMAINPRICING.COM |
| 35FORTUNE.COM | FENGYUN.NET |
| 35FORTUNE.NET | FM1234567.COM |
| 35LIVECHAT.COM | GONGQ.NET |
| 35MAIL.COM | GONGSHAOHUI.COM |
| 35MARKET.COM | LM35.COM |
| 35MARKET.NET | JINGTONG.COM |
| 35OFFICE.COM | JYLIANGGU.COM |
| 35PAD.NET | MASTEK.NET |
| 35PASS.COM | NAVLIVE.COM |
| 35PHONE.COM | NAVLIVE.NET |
| 35PHONE.NET | NETALLS.COM |
| 35VHOST.COM | TOUCHREADAPP.COM |
| 35VIP.NET | UU35.COM |
| 35VV.COM | XMTANGCHEN.COM |

# Exhibit B

## 2013 Registrar Accreditation Agreement

1. **Registrar Accreditation Agreement**

2. **Whois Accuracy Program Specification**

3. **Registration Data Directory Service (Whois) Specification**

4. **Consensus and Temporary Policy Specification**

5. **Specification on Privacy and Proxy Registrations**

6. **Data Retention Specification**

7. **Registrar Information Specification**

8. **Additional Registrar Operation Specification**

9. **Registrants' Benefits and Responsibilities**

10. **Logo License Specification**

11. **Compliance Certificate**

12. **Transition Addendum**

Approved by the ICANN Board on 27 June 2013



# Registrar Accreditation Agreement

This REGISTRAR ACCREDITATION AGREEMENT (this "Agreement") is by and between the Internet Corporation for Assigned Names and Numbers, a California non-profit, public benefit corporation ("ICANN"), and [Registrar Name], a [Organization type and jurisdiction] ("Registrar"), and shall be deemed made on _____, at Los Angeles, California, USA.

**1.    DEFINITIONS.** For purposes of this Agreement, the following definitions shall apply:

1.1    "Account Holder" means the person or entity that is paying for the Registered Name or otherwise controls the management of the registered name, when that person or entity is not the Registered Name Holder.

1.2    "Accredited" or "Accreditation" means to identify and set minimum standards for the performance of registration functions, to recognize persons or entities meeting those standards, and to enter into an accreditation agreement that sets forth the rules and procedures applicable to the provision of Registrar Services.

1.3    "Affiliate" means a person or entity that, directly or indirectly, through one or more intermediaries, Controls, is controlled by, or is under common control with, the person or entity specified.

1.4    "Affiliated Registrar" is another Accredited registrar that is an Affiliate of Registrar.

1.5    "Applicable Registrar Family" means, with respect to Affiliated Registrars, such Affiliated Registrar as a group.

1.6    "Consensus Policy" has the meaning set forth in the Consensus Policies and Temporary Policies Specification attached hereto.

1.7    "Control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a person or entity, whether through the ownership of securities, as trustee or executor, by serving as an employee or a

**Approved by the ICANN Board on 27 June 2013**

**2. ICANN OBLIGATIONS.**

2.1     Accreditation. During the Term of this Agreement and subject to the terms and conditions of this Agreement, Registrar is hereby Accredited by ICANN to act as a registrar (including to insert and renew registration of Registered Names in the Registry Database) for gTLDs.

2.2     Registrar Use of ICANN Name, Website and Trademarks.  ICANN hereby grants to Registrar a non-exclusive, worldwide, royalty-free license during the Term of this Agreement (a) to state that it is Accredited by ICANN as a registrar for gTLDs, and (b) to link to pages and documents within the ICANN website. Subject to the terms and conditions set forth in the Logo License Specification attached hereto, ICANN hereby grants to Registrar a non-exclusive, worldwide right and license to use the Trademarks (as defined in the Logo License Specification). No other use of ICANN's name, website or Trademarks is licensed hereby. This license may not be assigned or sublicensed by Registrar to any other party, including, without limitation, any Affiliate of Registrar or any Reseller.

2.3     General Obligations of ICANN. With respect to all matters that impact the rights, obligations, or role of Registrar, ICANN shall during the Term of this Agreement:

>    2.3.1    exercise its responsibilities in an open and transparent manner;
>
>    2.3.2    not unreasonably restrain competition and, to the extent feasible, promote and encourage robust competition;
>
>    2.3.3    not apply standards, policies, procedures or practices arbitrarily, unjustifiably, or inequitably and not single out Registrar for disparate treatment unless justified by substantial and reasonable cause; and
>
>    2.3.4    ensure, through its reconsideration and independent review policies, adequate appeal procedures for Registrar, to the extent it is adversely affected by ICANN standards, policies, procedures or practices.

2.4    Use of ICANN Accredited Registrars. In order to promote competition in the registration of domain names, and in recognition of the value that ICANN-Accredited registrars bring to the Internet community, ICANN has ordinarily required gTLD registries under contract with ICANN to use ICANN-Accredited registrars, and ICANN will during the course of this agreement abide by any ICANN adopted Specifications or Policies requiring the use of ICANN-Accredited registrars by gTLD registries.

enforce any of the provisions hereof shall be deemed or shall constitute a waiver of any other provision hereof, nor shall any such waiver constitute a continuing waiver unless otherwise expressly provided. For the avoidance of doubt, nothing in this Section 6 or Section 7.4 shall be deemed to limit Registrar's obligation to comply with Section 4.

6.10   Notwithstanding anything in this Section 6 to the contrary, (a) if Registrar provides evidence to ICANN's reasonable satisfaction that the Approved Amendment would materially increase the cost of providing Registrar Services, then ICANN will allow up to one-hundred eighty (180) calendar days for the Approved Amendment to become effective with respect to Registrar, and (b) no Approved Amendment adopted pursuant to Section 6 shall become effective with respect to Registrar if Registrar provides ICANN with an irrevocable notice of termination pursuant to Section 5.4.

**7.   MISCELLANEOUS PROVISIONS.**

7.1   <u>Specific Performance</u>. While this Agreement is in effect, either party may seek specific performance of any provision of this Agreement in the manner provided in Section 5.8, provided the party seeking such performance is not in material breach of its obligations.

7.2   <u>Handling by ICANN of Registrar-Supplied Data</u>. Before receiving any Personal Data from Registrar, ICANN shall specify to Registrar in writing the purposes for and conditions under which ICANN intends to use the Personal Data. ICANN may from time to time provide Registrar with a revised specification of such purposes and conditions, which specification shall become effective no fewer than thirty (30) days after it is provided to Registrar. ICANN shall not use Personal Data provided by Registrar for a purpose or under conditions inconsistent with the specification in effect when the Personal Data was provided. ICANN shall take reasonable steps to avoid uses of the Personal Data by third parties inconsistent with the specification.

7.3   <u>Assignment; Change of Ownership or Management</u>.

>   7.3.1   Except as set forth in this Section 7.3.1, either party may assign or transfer this Agreement only with the prior written consent of the other party, which shall not be unreasonably withheld. If ICANN fails to expressly provide or withhold its consent to any requested assignment (an "Assignment Request") of this Agreement by Registrar within thirty (30) calendar days of ICANN's receipt of notice of such Assignment Request (or, if ICANN has requested additional information from Registrar in connection with its review of such request, sixty (60) calendar days of the receipt of all requested written information regarding such request) from Registrar, ICANN shall be deemed to have consented to such requested assignment. Notwithstanding the foregoing, (i) ICANN may assign this Agreement without the consent of Registrar upon approval of the ICANN Board of Directors in conjunction with

**Approved by the ICANN Board on 27 June 2013**

a reorganization, reconstitution or re-incorporation of ICANN upon such assignee's express assumption of the terms and conditions of this Agreement, (ii) Registrar may assign this Agreement without the consent of ICANN to a wholly-owned subsidiary of Registrar upon such subsidiary's express assumption of the terms and conditions of this Agreement, and (iii) ICANN shall be deemed to have consented to an Assignment Request in which the assignee associated with such Assignment Request is a party to a Registrar Accreditation Agreement with ICANN on the terms set forth in this Agreement (provided that such assignee is then in compliance with the terms and conditions of such Registrar Accreditation Agreement in all material respects), unless ICANN provides to Registrar a written objection to such Assignment Request within ten (10) calendar days of ICANN's receipt of notice of such Assignment Request pursuant to this Section 7.3.1.

7.3.2    To the extent that an entity acquires a Controlling interest in Registrar's stock, assets or business, Registrar shall provide ICANN notice within seven (7) days of such an acquisition. Such notification shall include a statement that affirms that Registrar meets the Specification or Policy on Accreditation criteria then in effect, and is in compliance with its obligations under this Agreement. Within thirty (30) days of such notification, ICANN may request additional information from the Registrar establishing compliance with this Agreement, in which case Registrar must supply the requested information within fifteen (15) days. Any disputes concerning Registrar's continued Accreditation shall be resolved pursuant to Section 5.8.

7.4    Negotiation Process.

7.4.1    If either the Chief Executive Officer of ICANN ("CEO") or the Chairperson of the Registrar Stakeholder Group ("Chair") desires to discuss any revision(s) to this Agreement, the CEO or Chair, as applicable, shall provide written notice to the other person, which shall set forth in reasonable detail the proposed revisions to this Agreement (a "Negotiation Notice"). Notwithstanding the foregoing, neither the CEO nor the Chair may (i) propose revisions to this Agreement that modify any Consensus Policy then existing, (ii) propose revisions to this Agreement pursuant to this Section 7.4 on or before June 30, 2014, or (iii) propose revisions or submit a Negotiation Notice more than once during any twelve month period beginning on July 1, 2014.

7.4.2    Following receipt of the Negotiation Notice by either the CEO or the Chair, ICANN and the Working Group shall consult in good faith negotiations regarding the form and substance of the proposed revisions to this Agreement, which shall be in the form of a proposed amendment to this Agreement (the "Proposed Revisions"), for a period of at least ninety (90) calendar days (unless a resolution is earlier reached) and attempt to reach a mutually acceptable agreement relating to the Proposed Revisions (the "Discussion Period").