UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ONLINENIC INC, et al.,<br><br>    Defendants. | Case No. 19-cv-07071-SI<br><br>**ORDER HOLDING LEASCEND TECHNOLOGY CO., LTD. IN CIVIL CONTEMPT OF COURT**<br><br>Re: Dkt. No. 426 |

Plaintiff Meta Platforms, Inc. (f/k/a Facebook, Inc.) and Instagram, LLC move for an order holding defendant Leascend Technology Co., Ltd. ("Leascend"), f/k/a Xiamen 35.com Internet Technology Co., Ltd. ("35.CN"), in civil contempt and imposing civil sanctions, for Leascend's failure to comply with the Court's December 20, 2024 Order that Leascend shall not sell or transfer its domain name registrar business or accreditation until it has deposited $5.5 million (USD) into an escrow account in the United States.[1] The Court held hearings on the motion on March 14 and April 4, 2025.

**BACKGROUND**

In this case for trademark infringement/cybersquatting, the Court has entered default judgment against all defendants. On December 20, 2024, the Court held a hearing on plaintiffs' emergency motion for a temporary restraining order ("TRO") freezing Leascend's assets. Dkt. No. 419. Plaintiffs requested the asset freeze after learning from public filings in China that on December 22, 2024 (December 23 in China), the shareholders of Leascend were expected to approve

---

[1] At the request of defense counsel, the Court now refers to defendant as "Leascend" rather than its former name, "35.CN."

the sale of Leascend's wholly-owned subsidiary, 35.com Info, which plaintiffs said held most if not all of the company's assets. Dkt. No. 408. In opposing the motion, Leascend stated it would have plenty of equity left after the sale ($118 million or more) to pay an anticipated judgment in this case, that the sale was arranged in order to comply with plaintiffs' demands that Leascend exit the domain registrar business, and that plaintiffs had been informed of the pending sale multiple times. Dkt. No. 415. At the TRO hearing, Leascend's counsel represented that it would be difficult to comply with an order that Leascend place $5.5 million USD (the estimated final judgment amount) into escrow, especially before the sale closed. There was much back and forth with counsel about the pending sale, and defense counsel expressed concern that an asset freeze would cause the sale to fail, which would harm Leascend's business and make it harder to pay any ultimate judgment.

On December 20, 2024, following the TRO hearing, the Court signed an order calling for 35.CN to place $5.5 million into escrow no later than January 31, 2025.[2] *See* Dkt. No. 420. Specifically, the Court ordered:

> 1.      35.CN shall deposit, on or before January 31, 2025, $5.5 million (USD) into an escrow account in the United States held by an escrow agent to be security to satisfy any judgment issued by the Court.
>
> 2.      35.CN shall provide Plaintiffs proof of the deposit into escrow, including the account information and name of the escrowing agent.
>
> 3.      35.CN shall not sell or transfer the registrar business or accreditation (IANA No. 4163), currently held by 35.CN's wholly-owned subsidiary Xiamen 35.com Information Co., Ltd. ("35.com Info"), including any assets of that registrar business, or sell, transfer, or dispose of the shares or ownership interests in 35.com Info, until 35.CN has deposited the $5.5 million into an escrow account pursuant to paragraph 1, and 35.CN has provided Plaintiffs notice pursuant to paragraph 2.

*Id.* at 2.

On February 7, 2025, plaintiffs filed the present motion for sanctions, stating defendant never complied with the December 20 Order. Dkt. No. 426. On February 14, 2025, after resolving plaintiffs' motion for attorneys' fees and costs, the Court entered default judgment and a permanent injunction against defendants. *See* Dkt. No. 431. The judgment awarded, among other things: $3,135,000.00 in statutory damages; $2,185,869.14 in attorneys' fees; and $88,937.00 to reimburse

---

[2] Defense counsel reviewed the proposed order in advance of its submission to the Court but expressed "serious concerns about the ability to comply." *See* Dkt. No. 426-1, Kroll Decl., Ex. 2.

1  plaintiffs their portion of the Special Master fees.  On March 3, 2025, the Clerk taxed costs against
2  defendants in the amount of $51,045.16.  Dkt. No. 434.  On March 11, 2025, in accordance with the
3  final judgment, Leascend provided an accounting of its assets.  Dkt. No. 436.
4        In their sanctions motion, plaintiffs ask that the Court:

> (1) seize the 35.com domain name asset from 35.CN—while allowing 35.CN to continue to use the domain name to operate its business—by ordering Verisign, Inc. (the registry for the domain name) to lock the 35.com domain name and to deposit with the Court documents sufficient to establish the Court's control and authority regarding the disposition of the registration and use of the domain name;
>
> (2) enter the asset freeze requested in Plaintiffs' prior ex parte application for a temporary restraining order freezing assets (ECF Nos. 408, 413, 414) as restated in the proposed order accompanying this motion, with the addition of (a) an accounting requirement for 35.CN's possible sale of its registrar business, and (b) an order to the Internet Corporation for Assigned Names and Numbers to withhold its consent and object to any request for assignment of the related registrar accreditation; and
>
> (3) award Plaintiffs[] their reasonable attorneys' fees both in bringing this motion and bringing the underlying ex parte application for a TRO.

Dkt. No. 426, Not. of Mot. at 1.

      Leascend opposes the sanctions motion.  Although it is undisputed that Leascend did not deposit the $5.5 million into a U.S. escrow account by the deadline (and still has not done so), Leascend argues that it attempted to transfer the funds from China to the U.S. on January 10 but that the attempt was blocked as not in compliance with Chinese law/procedures.  Leascend argues, therefore, that it should not be held in contempt for non-compliance because compliance was impossible. Leascend further argues that this Court lacks personal jurisdiction over Leascend, which is a publicly traded Chinese company.  In its opposition papers and at the March 14 hearing, Leascend also asserted for the first time that the pending sale that triggered the TRO in late December was in fact legally effectuated as of December 5, and so Leascend argues that the entire TRO was based on a mistaken assumption (and its counsel's mistaken representation) that the sale had not yet gone through.  At the April 4 hearing, counsel for Leascend again backtracked on this statement, after Leascend provided documentation to plaintiffs that purports to show the sale was effectuated on December 23, 2024.  *See* Dkt. No. 458.  This documentation shows Leascend

3

represented to the buyer that it had the legal right to transfer the assets and that the assets it was selling were "free from any mortgages, guarantees, liens, security interests, or other encumbrances." Dkt. No. 458-2, Lauridsen Decl., Ex. 1 § 9.1.1.

## LEGAL STANDARD

"A district court has the power to adjudge in civil contempt any person who willfully disobeys a specific and definite order of the court." *Gifford v. Heckler*, 741 F.2d 263, 265 (9th Cir. 1984). Civil contempt consists of a party's disobedience to "a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006). The disobeyed order that serves as the basis for a finding of civil contempt must be clear in its commands. *See Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989). To succeed on a motion for civil contempt, the moving party must "show by clear and convincing evidence that [the nonmoving party] violated the [court order] beyond substantial compliance, and that the violation was not based on a good faith and reasonable interpretation of the [order]." *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322 (9th Cir. 1997).

To find a prima facie case of contempt, a court must find that (1) the nonmoving party violated a specific and definite court order; (2) beyond substantial compliance; (3) not based upon a reasonable and good faith interpretation of the order; and (4) the foregoing has been shown by clear and convincing evidence. *See In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). Willfulness is not an element of civil contempt. *Verizon Cal. Inc. v. Online NIC, Inc.*, 647 F. Supp. 2d 1110, 1115 (N.D. Cal. 2009). If the moving party establishes a prima facie case of contempt, the nonmoving party must show that it took every reasonable step within its power to comply with the Court's order. *Sekaquaptewa v. MacDonald*, 544 F.2d 396, 404 (9th Cir. 1976). "District courts have broad equitable power to order appropriate relief in civil contempt proceedings." *F.T.C. v. EDebitPay, LLC*, 695 F.3d 938, 945 (9th Cir. 2012) (quoting *S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003)).

**DISCUSSION**

**I.   Jurisdiction**

In opposing the motion, Leascend first argues this Court lacks personal jurisdiction to hold it in contempt. Dkt. No. 432, Opp'n at 4-5. Leascend relies entirely on *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387 (9th Cir. 1995). There, the Ninth Circuit found that the district court lacked personal jurisdiction to hold a bank in Luxembourg in contempt for violating a TRO freezing the defendant's assets. The district court had entered a TRO enjoining banks from transferring funds of the defendants. But the bank in question "was also compelled by Luxembourg law to release funds upon proper requests from depositors." *Id.* at 1389. Moreover, the bank's in-house counsel advised the bank that the defendant's wife had a right to withdraw the funds because the TRO had not been properly registered under Luxembourg law. *Id.* Litigation in Luxembourg then resulted in an order from a Luxembourg court for the bank to release the funds, which it did. The district court held the bank in contempt and assessed sanctions against it of nearly $2.7 million. *Id.* at 1388. In reversing, the Ninth Circuit found that the district court lacked personal jurisdiction over the Luxembourg bank.

As plaintiffs point out, this case is distinguishable from *Reebok* because the foreign bank that the district court held in contempt was not a party to the litigation. Here, plaintiffs ask the Court to hold a defendant in contempt. More importantly, in this case, following extensive evidence presented at summary judgment, the Court has held that 35.CN (now Leascend) is the alter ego of OnlineNIC, which is a California-based company. Dkt. Nos. 351, 357. And in its Order Granting Plaintiffs' Motion for Default Judgment, the Court already examined and rejected defendant's arguments against application of personal jurisdiction, finding "general personal jurisdiction proper as to all defendants, based on the prior alter ego findings." *See* Dkt. No. 393 at 5-6. For the reasons stated in that Order, the Court again rejects Leascend's argument that personal jurisdiction is lacking.

**II.   Contempt**

There is no dispute that Leascend failed to deposit the $5.5 million into an escrow account

in the United States, as ordered by the Court. And at the April 4 hearing, Leascend took the position that the sale of the domain registrar business was formalized as of December 23, 2024, which would appear to be a direct violation of the Court's December 20, 2024 Order prohibiting the sale or transfer or the registrar business until Leascend deposited the $5.5 million in escrow. *See also* Dkt. No. 458. Leascend argues in its papers that it should not be found in contempt because it was "factually and legally impossible" for it to comply with the Court's Order, given restrictions in China about large-sum transfers outside of China. Opp'n at 1, 5.

Leascend has attached a declaration from Yirong Li, Legal Manager of Leascend, who declares that "[o]n January 10, 2025, Leascend submitted an application for outward remittance to transfer $5,500,000 (USD) overseas to a United States account." Dkt. No. 432-1, Li Decl. ¶ 2. Li further declares that "[o]n or around January 13, 2025, the bank's audit department informed Leascend that its application for remittance was denied under China's foreign exchange control policies because the bank did not consider the December 20, 2024 Order to be legally sufficient grounds under Chinese law to authorize this transfer." *Id.* ¶ 3. Li continues: "However, the bank indicated that a party to the litigation (Leascend or Plaintiffs) could apply to the competent Intermediate People's Court for recognition and enforcement of a final judgment or formally recorded settlement agreement. Leascend arranged to consult with the Xiamen Intermediate People's Court to confirm if an application for recognition of [the] December 20, 2024 Order could be made and was informed that a final judgment or formally recorded settlement agreement was needed." *Id.* ¶ 4. Leascend also states that "now that the Court issued a judgment, Leascend (or Plaintiffs) can apply to a local court in China and then a financial institution for payment of the judgment directly (because a party in China can typically apply to the local court in China for recognition of a final foreign judgment, as opposed to an interim order, which is not recognized by the local court or therefore financial institution), pending appeal rights."[3] Opp'n at 6.

While plaintiffs do not dispute that impossibility may be a defense to non-compliance with a court order, they argue that defendant has failed to show that it took every reasonable step within

---

[3] Leascend filed a notice of appeal on March 12, 2025. Dkt. No. 438.

its power to comply, as required under Ninth Circuit precedent. *See Sekaquaptewa*, 544 F.2d at 404. The Court agrees with plaintiffs. Leascend's declarant does not claim to have personal knowledge of the attempted money transfer. Attached to the declaration is an exhibit that purports to show Leascend's January 10 application for an outward remittance. The exhibit, in Chinese and without a formal or sworn translation, is largely inscrutable. As plaintiffs point out, the exhibit "appears to contain only the application that 35.CN filled out" and does not constitute proof that the application was actually submitted to a bank. Dkt. No. 433, Reply at 4.

Furthermore, even accepting Leascend's version of events as true, the Court finds that a single attempt made on January 10, and rejected on January 13, does not constitute "every reasonable step" at compliance. Leascend still had more than two weeks before the deadline to inform the Court of the impossibility of performance or to work with opposing counsel on a solution. Instead, the record reflects that Leascend's counsel ignored repeated requests for a status update from plaintiffs' counsel on January 21, January 27, January 28 and January 29. Kroll Decl., Ex. 12. A further email on February 3—several days after the escrow deadline passed—finally elicited the response that Leascend's counsel was not getting any updates from his client and that "I don't have any updates for you at all." *Id.*

Finally, and as plaintiffs note, the attempt to transfer the funds from a Chinese bank to the U.S. escrow account differed from the process Leascend described at the TRO hearing. At the hearing, Leascend's counsel stated that complying with the Court's order would be "complicated because funds were going to come through our firm for the settlement. And it's complicated. It has to go from a Chinese bank to a Hong Kong bank, and then -- and there are fees and there's regulatory approvals if it's over a certain amount." Kroll Decl., Ex. 1, Hearing Tr. at 17:18-22. Despite this representation, it appears that Leascend then attempted to transfer the funds directly from China, rather than route them through a Hong Kong bank, as counsel had indicated it would need to do. At the April 4 hearing, Leascend's counsel stated that the Hong Kong process only works if the company has a bank account in Hong Kong and that Leascend does not in fact have such an account.

The underlying message of Leascend's opposition is that the company never promised it was going to be able to comply with the December 20, 2024 Order and that it was unsurprising when the

7

complications of navigating Chinese law prevented compliance. Maybe so. But Leascend —and its attorneys—were still obligated to take every reasonable step to comply. Under these circumstances, that would have included informing plaintiffs and the Court of the difficulties with compliance *before* the compliance deadline passed. The Court again emphasizes that Leascend had more than two weeks to do this but instead took no further action.

In sum, the (scant) evidence Leascend provided shows only one failed attempt to transfer the funds, not using the method indicated at the December 20 hearing, and then no further attempts at compliance or even attempts to notify opposing counsel and the Court of the problem. The Court finds plaintiffs have proven, by clear and convincing evidence, that Leascend violated a specific and definite court order, beyond substantial compliance, and not based upon a reasonable and good faith interpretation of the order. *See In re Dual-Deck*, 10 F.3d at 695; *see also Verizon Cal.*, 647 F. Supp. 2d at 1116 (". . . while the Court would be well inclined to forgive OnlineNIC's failure to comply with an apparently pointless requirement if there were clear evidence that OnlineNIC instead diligently attempted to achieve meaningful compliance, the record does not indicate clearly that OnlineNIC acted with such diligence."). The Court finds Leascend is in civil contempt of the December 20, 2024 Order (Dkt. No. 420).

### III. Remedy

In their motion, plaintiffs request three types of sanctions: (1) seizure of the 35.com domain name; (2) an asset freeze; and (3) attorneys' fees and costs. Following the March 14 hearing, the Court issued an order that Verisign, Inc. lock various domain names of Leascend's wholly owned subsidiary, Xiamen 35.com Information Co., Ltd. Dkt. No. 445.

As discussed at the April 4 hearing, the Court ORDERS that the asset freeze described at Dkt. No. 445 shall remain in place until the hearing on contempt remedies, to be held May 16, 2025. Unless the parties stipulate to a different schedule, plaintiffs shall file their motion regarding contempt remedies on April 11, 2025; Leascend shall file its opposition brief on April 25; plaintiffs shall file their reply on May 2; and the hearing shall be set for May 16, 2025, at 10:00 a.m.

**CONCLUSION**

For the reasons stated above, the Court GRANTS plaintiffs' motion for an order holding Leascend in civil contempt and FINDS Leascend is in civil contempt of this Court's December 20, 2024 Order at Dkt. No. 420.

The Court ORDERS that the asset freeze described at Dkt. No. 445 shall remain in place until the hearing on contempt remedies, to be held May 16, 2025.

**IT IS SO ORDERED**.

Dated: April 4, 2025

SUSAN ILLSTON
United States District Judge