TUCKER ELLIS LLP
David J. Steele SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street, Forty-Second Floor
Los Angeles, CA 90071
Telephone:      213.430.3400
Facsimile:      213.430.3409

Attorneys for Plaintiffs,
META PLATFORMS, INC. (fka FACEBOOK, INC.) and
INSTAGRAM, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC,<br><br>          Plaintiffs,<br><br>     v.<br><br>ONLINENIC INC.; DOMAIN ID SHIELD SERVICE CO., LIMITED; and XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD.,<br><br>          Defendants. | Case No. 3:19-cv-07071-SI<br><br>**[REDACTED VERSION OF DOCUMENT FILED UNDER SEAL]**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONTEMPT REMEDIES AGAINST DEFENDANT LEASCEND TECHNOLOGY CO., LTD. FKA XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>DATE:       May 30, 2025<br>TIME:       10:00 a.m.<br>CTRM:      1 – 17th Floor<br><br>Hon. Susan Illston |

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071   213.430.3400

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on May 30, 2025, at 10:00 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Susan Illston of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, Courtroom 1 – 17th Floor, San Francisco, CA 94102, Plaintiffs Facebook, Inc. and Instagram LLC (collectively, "Plaintiffs") will and hereby do move for an order for civil contempt remedies against Defendant Leascend Technology Co., Ltd. fka Xiamen 35.Com Internet Technology Co., Ltd. ("Leascend") based on the Court's prior order holding Leascend in civil contempt of court. *See* ECF No. 460.

Plaintiffs respectfully request the Court collectively impose the following coercive and compensatory civil contempt sanctions against Leascend by:

1.      levying a $1,000 daily fine until Leascend purges its contempt;

2.      ordering VeriSign, Inc. to deactivate Leascend's .com domain names until Leascend purges its contempt; and,

3.      ordering Leascend and its attorney, Karl Kronenberger, to jointly and severally pay Plaintiffs' reasonable attorneys' fees and costs expended in connection with Leascend's contempt.

Plaintiffs respectfully request the Court allow Leascend fourteen days from entry of an order granting this motion to purge its contempt before the first two sanctions go into effect.

Moreover, given that the transfer of assets of Leascend's formerly wholly owned subsidiary, Xiamen 35.Com Information Co., Ltd. ("35 Info"), was for the fraudulent purpose of escaping liability for Leascend's debts, Plaintiffs further request the Court (1) issue an Order to Show Cause ("OSC") to 35 Info as to why the Court should not amend the judgment to add 35 Info as a judgment debtor and (2) order Leascend's counsel to provide a copy of that OSC to 35 Info and promptly file a proof of service. Finally, in connection with the OSC, Plaintiffs request the Court issue a briefing schedule allowing Plaintiffs to file their opening brief on June 27, 2025; Leascend and 35 Info to file their opposition on July 25, 2025; Plaintiffs to file their reply brief on August 15, 2025; with the hearing on the OSC scheduled for August 29, 2025.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and

Authorities in Support of the Motion, the Court's April 4, 2025 order holding Leascend in civil contempt of court at ECF No. 460, all prior contempt proceedings this Court has held in this action concerning Leascend, the Declaration of Helena Guye, the [Proposed] Order, any oral argument heard by the Court, such additional evidence as may be submitted to the Court, matters as to which the Court may take judicial notice, the record in this action, and such other matters as the Court deems proper.

DATED: April 22, 2025                    Tucker Ellis LLP


By: /s/David J. Steele
    David J. Steele
    Howard A. Kroll
    Steven E. Lauridsen

    Attorneys for Plaintiffs,
    META PLATFORMS, INC. (fka
    FACEBOOK, INC.) and INSTAGRAM, LLC

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** ........................................................ **1**

**I.      INTRODUCTION** ................................................................................................... **1**

**II.     STATEMENT OF ISSUES TO BE DECIDED** ................................................. **3**

**III.    STATEMENT OF FACTS** ..................................................................................... **3**

      **A.**   Defendant Xiamen 35.Com Internet Technology Co., Ltd. changes its name to Leascend. ........................................................................................ 3

      **B.**   Leascend spins off 35 Info. ....................................................................... 4

      **C.**   Leascend is found to be in civil contempt for its violations of the Escrow Order. ................................................................................................... 5

      **D.**   Mr. Kronenberger made misrepresentations regarding the sale of 35 Info. .... 7

      **E.**   Mr. Kronenberger misrepresented the facts concerning Leascend's failure to comply with the Escrow Order. ........................................................... 9

      **F.**   Mr. Kronenberger misrepresented whether Leascend and 35 Info possess assets in the United States. .......................................................... 10

**IV.    COERCIVE AND COMPENSATORY CONTEMPT REMEDIES AGAINST LEASCEND ARE WARRANTED HERE** .......................................... **10**

      **A.**   Sanctions are necessary to coerce Leascend's compliance with the Escrow Order. ............................................................................................ 11

            1.   Leascend should be fined $1,000 per day until it complies with the Escrow Order. ........................................................................ 12

            2.   The Court should order Verisign to deactivate the U.S.-based domain names of Leascend. ................................................... 13

      **B.**   Sanctions are necessary to compensate Plaintiffs for actual losses resulting from Leascend's contemptuous behavior. ....................................... 16

**V.     THE COURT SHOULD ISSUE AN ORDER TO SHOW CAUSE TO 35 INFO AS TO WHY THE COURT SHOULD NOT AMEND THE JUDGMENT TO ADD 35 INFO AS A JUDGMENT DEBTOR** ......................... **20**

**VI.    CONCLUSION** ..................................................................................................... **25**

i

# TABLE OF AUTHORITIES

**Cases**

*Agit Glob., Inc. v. Wham-O, Inc.*, No. 2:09-CV-08133-CAS JC
2014 WL 1365200 (C.D. Cal. Apr. 7, 2014) ................................................................... 21

*Annod Corp. v. Hamilton & Samuels*
100 Cal. App. 4th 1286 (2002) ...................................................................................... 22

*Arabian Gas & Oil Dev. Co. v. Wisdom Marines Lines, S.A.*, No. 16-CV-03801-DMR
2017 WL 4390184, at *6 (N.D. Cal. Oct. 3, 2017) ......................................................... 12

*Blixeth v. Yellowstone Mountain Club, LLC*
796 F.3d 1004 (9th Cir. 2015) ....................................................................................... 17

*Caputo v. Tungsten Heavy Powder, Inc.*
96 F.4th 1111 (9th Cir. 2024) .................................................................................. 17, 19

*CenterPoint Energy, Inc. v. Super. Ct.*
157 Cal. App. 4th 1101 (2007) ...................................................................................... 21

*Cleveland v. Johnson*
209 Cal. App. 4th 1315 (2012) ................................................................................ 21, 24

*Cook v. Ochsner Found. Hosp.*
559 F.2d 270 (5th Cir. 1997) ......................................................................................... 17

*DEPCOM Power, Inc. v. CSUN Solar, Inc.*, No. 18-CV-00729-JST
2020 WL 5176193 (N.D. Cal. July 30, 2020) ................................................................. 21

*Elvis Presley Enters. v. Passport Video*
334 Fed. Appx. 810 (9th Cir. May 29, 2009) ................................................................. 21

*F.T.C. v. EDebitPay, LLC*
695 F.3d 938 (9th Cir. 2012) ........................................................................................... 1

*Facebook, Inc. v. Power Ventures, Inc.*
2017 U.S. Dist. LEXIS 125541, 2017 WL 3394754, at *15 (N.D. Cal. Aug. 8, 2017) ...................... 13

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

ii

*Falstaff Brewing Corp. v. Miller Brewing Co.*

 702 F.2d 770 (9th Cir. 1983) ............................................................................ 12

*Filip v. Bucurenciu*

 129 Cal. App. 4th 825 (2005) .......................................................................... 22

*Fink v. Gomez*

 239 F.3d 989 (9th Cir. 2001) ..................................................................... 17, 19

*Gompers v. Buck's Stove & Range Co.*

 221 U.S. 418 (1911) ........................................................................................ 12

*Hook v. Ariz. Dep't of Corr.*

 107 F.3d 1397 (9th Cir. 1997) .......................................................................... 12

*Hyde & Drath v. Baker*

 24 F.3d 1162 (9th Cir. 1994) ............................................................................ 16

*In re Acequia, Inc.*

 34 F.3d 800 (9th Cir. 1994) .............................................................................. 24

*In re Beverly*

 374 B.R. 221 (B.A.P. 9th Cir. 2007) ................................................................ 22

*In re Girardi*

 611 F.3d 1027 (9th Cir. 2010) .......................................................................... 17

*In re Medina*

 619 B.R. 236 (B.A.P. 9th Cir. 2020) ................................................................ 22

*In re Search of Content Stored at Premises Controlled by Google Inc.*, No. 16-mc-80263-RS

 2017 WL 4700056, at *3 (N.D. Cal. Oct. 19, 2017) ........................................ 12

*Int'l Union, United Mine Workers of America v. Bagwell*

 512 U.S. 821 (1994) .............................................................................. 12, 13, 16

*j2 Cloud Servs., Inc. v. Fax87*, No. 13-05353 DDP (AJWX)

 2017 WL 11682159 (C.D. Cal. Apr. 7, 2017) .................................................. 20

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*

 394 F.3d 1143 (9th Cir. 2004) .......................................................................... 20

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071 213.430.3400

iii

*Kelly v. Wengler*

  822 F.3d 1085 (9th Cir. 2016). ................................................................................................ 20

*Kremen v. Cohen*, No. 5:11-cv-05411-LHK

  2012 WL 44999 (N.D. Cal. Jan. 7, 2012) ................................................................................ 20

*Lefkowtiz v. Scytl USA*, No. 15-CV-05005-JSC

  2016 WL 537952 (N.D. Cal. Feb. 11, 2016) ............................................................................ 21

*McClellan v. Northridge Park Townhome Owners Ass'n, Inc.*

  89 Cal. App. 4th 746 (2001) ..................................................................................................... 21

*Mercedes-Benz Grp. AG v. A-Z Wheels LLC*, No. 16-CV-875 JLS (MDD)

  2022 WL 2276907, at *2 (S.D. Cal. June 23, 2022) .................................................................. 1

*NEC Elecs. Inc. v. Hurt*

  208 Cal. App. 3d 772 (1989) ..................................................................................................... 21

*Nemetona Trading Ltd. v. Kurt Orban Partners, L.L.C.*

  No. 14-cv-03284-SI, 2015 WL 1967401, at *2 (N.D. Cal. May 1, 2015) ................................. 1

*Off. Depot Inc. v. Zuccarini*

  596 F.3d 696 (9th Cir. 2010) .................................................................................................... 10

*Ohr ex rel. NLRB v. Latino Express, Inc.*

  776 F.3d 469 (7th Cir. 2015) .................................................................................................... 16

*Oracle USA, Inc. v. Rimini St., Inc.*

  81 F.4th 843 (9th Cir. 2023) ..................................................................................................... 10

*Perry v. O'Donnell*

  759 F.2d 702 (9th Cir. 1985) .................................................................................................... 16

*Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc.*

  877 F.2d 787 (9th Cir. 1989) .................................................................................................... 16

*Ray v. Alad Corp.*

  19 Cal.3d 22 (1977) ................................................................................................................... 21

*Sanders v. CEG Corp.*

  95 Cal. App. 3d 779 (1979) ....................................................................................................... 20

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

iv

*Suntech Power Holdings Co., Ltd. v. Shenzhen Xintian Solar Tech. Co., Ltd.*

No. 08-cv-01582-H, 2008 WL 11337380, at *1 (S.D. Cal. 2008) ........................................ 11

*U.S. Philips Corp. v. KXD Tech., Inc.*, Case No. CV 05-08953 DMG (PLAx)

2014 WL 12567518 (C.D. Cal. Aug. 26, 2014) ................................................................... 16

*United States v. Anderson*, No. 14-cv-01932-JST

2016 WL 1169309, at *4 (N.D. Cal. Mar. 25, 2016) ........................................................... 12

*United States v. Associated Convalescent Enters., Inc.*

766 F.2d 1342 (9th Cir. 1985) .......................................................................................... 17

*United States v. Bright*

596 F.3d 683 (9th Cir. 2010) ............................................................................................ 13

*United States v. State of Tenn.*

925 F. Supp. 1292, 1303 (W.D. Tenn. 1995) ....................................................................... 1

*United States v. United Mine Workers*

330 U.S. 258 (1947) ............................................................................................... 11, 12

*Valle v. Berryhill*, No. 16-CV-02358-JSC

2019 WL 1517103 (N.D. Cal. Apr. 8, 2019) ...................................................................... 16

*Virtue Glob. Holdings Ltd. v. Rearden LLC*, No. 15-CV-00797-JST

2016 WL 9045855 (N.D. Cal. June 17, 2016) ..................................................................... 22

*Whittaker Corp. v. Execuair Corp.*

953 F.2d 510 (9th Cir. 1992) ....................................................................................... 11, 13

**Statutes**
28 U.S.C. § 1927 .......................................................................................................... 17, 19
Cal. Civ. Code §§ 3439.04(b)(1)-(11) ........................................................................ 21, 22, 23
Cal. Civ. Code § 187 ............................................................................................................ 20
Federal Rule of Civil Procedure 69(a) ................................................................................ 20

Tucker Ellis LLP

515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

TUCKER ELLIS LLP

515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On April 4, 2025, the Court found Defendant Leascend Technology Co., Ltd. fka Xiamen 35.Com Internet Technology Co., Ltd. ("Leascend") in contempt for violating this Court's order to (1) deposit $5.5 million into a United States escrow account, and (2) refrain from transferring the assets of Xiamen 35.Com Information Co., Ltd. ("35 Info"), its wholly owned subsidiary, until such a deposit was made. ECF No. 460 ("Contempt Order") at 8. Pursuant to the Contempt Order, Plaintiffs file this motion to answer the only remaining question concerning Leascend's contempt: what remedies are appropriate? *Id.* at 8-9. This is an especially challenging question when, as here, the contemptuous party has made public statements suggesting this Court lacks authority over it. *See* ECF No. 464 ("Apr. 4 Contempt Hr'g Tr.") at 24:25-25:6. Fortunately, this Court has wide latitude to fashion appropriate civil contempt sanctions, including "a broader category of creative, non-traditional sanctions." *Mercedes-Benz Grp. AG v. A-Z Wheels LLC*, No. 16-CV-875 JLS (MDD), 2022 WL 2276907, at *2 (S.D. Cal. June 23, 2022) (quoting *United States v. State of Tenn.*, 925 F. Supp. 1292, 1303 (W.D. Tenn. 1995)); *see also Nemetona Trading Ltd. v. Kurt Orban Partners, L.L.C.*, No. 14-cv-03284-SI, 2015 WL 1967401, at *2 (N.D. Cal. May 1, 2015) ("District courts have broad equitable power to order appropriate relief in civil contempt proceedings.") (quoting *F.T.C. v. EDebitPay, LLC*, 695 F.3d 938, 945 (9th Cir. 2012)).

Both traditional and more creative sanctions are necessary here due to the unique circumstances of Leascend's contemptuous conduct. At the heart of Leascend's civil contempt lies the fact that Leascend transferred its registrar business to 35 Info as part of a plan to dissipate its United States-based assets, including its .com and .net domain names,[1] and avoid compliance with this Court's judgment. Leascend then fraudulently sold 35 Info to a third party, warranting to that buyer on December 23, 2024, that 35 Info and all of its assets were free from any liens and encumbrances. ECF No. No. 458-2, Lauridsen Decl.,

---

[1] The California-based entity known as the Internet Corporation for Assigned Names and Numbers ("ICANN") holds 35 Info's registrar accreditation, which allows 35 Info to operate as a domain name registrar for .com and .net domain names. The Virginia-based entity, VeriSign, Inc. ("Verisign"), is the domain name registry for all .com and .net domain names worldwide and thus has the ability to control whether .com and .net domain names can be used or transferred.

1

Ex. 1 § 9.1.1. Leascend made this warranty notwithstanding this Court's December 20, 2024, order that the sale could not go through until Leascend had escrowed $5.5 million dollars. ECF No. 420 ("Escrow Order") at 2 ¶ 3. Significantly, ██████████████████████████████████ ██████████████ (Declaration of Helena Guye ("Guye Decl.") ¶ 2, Ex. 1), ████████████████████ █████████████████████████████████████████████████ (ECF No. 431 ¶ 91). On February 21, 2025, ███████████████████████████████████, Leascend filed its Opposition to Plaintiffs' Motion for Contempt and falsely claimed that 35 Info was sold on December 5, 2024. ECF No. 432 ("Contempt Mot. Opp.") at 2:25-26.

Further complicating matters are the repeated misrepresentations from Leascend's counsel, Karl Kronenberger, concerning this transaction and Leascend's purported excuses for violating the Escrow Order. Mr. Kronenberger's misrepresentations have left Plaintiffs and this Court "stumbling in the dark" concerning Leascend's conduct and the status of its attempted dissipation of assets. ECF No. 447 ("Mar. 14 Contempt Hr'g Tr.") at 13:6-12. The purpose of the Escrow Order was a pre-judgment remedy to prevent Leascend's dissipation of assets and to secure Plaintiffs' ability to enforce and collect the judgment. *See* ECF No. 423 (Dec. 20, 2024, TRO Hearing Transcript ("TRO Hr'g Tr.")) at 10:9-14 ("[T]he Court has found that Meta is entitled to somewhere south of $5.5 million, and it's my plan to make it as possible for that to be realized as I can. And so I am inclined to disallow anything that's going to make that impossible . . . ."). Leascend's actions and Mr. Kronenberger's misrepresentations continue to undermine this Court's authority and ultimately threaten Plaintiffs' ability to enforce the judgment.

Therefore, Plaintiffs request the Court collectively impose the following coercive and compensatory civil contempt sanctions against Leascend by:

1.    levying a $1,000 daily fine until Leascend purges its contempt;

2.    ordering Verisign to deactivate Leascend's .com domain names until Leascend purges its contempt; and,

3.    ordering Leascend and its attorney, Karl Kronenberger, to jointly and severally pay Plaintiffs' reasonable attorneys' fees and costs expended in connection with Leascend's contempt.

Since the transfer of assets to 35 Info was for the fraudulent purpose of escaping liability for

TUCKER ELLIS LLP

515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

Leascend's debts, Plaintiffs further request the Court issue an Order to Show Cause to 35 Info as to why the Court should not amend the judgment to add 35 Info as a judgment debtor.[2]

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether the Court, to coerce Leascend to comply with the Escrow Order, should order:

a.    Leascend to pay a daily fine of $1,000 until Leascend complies with the Escrow Order; and,

b.    Verisign to deactivate Leascend's .com domain names—leascend.com and leasdgrp.com—until Leascend complies with the Escrow Order.

2.    Whether the Court, to compensate Plaintiffs for the injuries suffered by Leascend's contemptuous conduct, should order Leascend and its attorney, Karl Kronenberger, to jointly and severally pay Plaintiffs' attorneys' fees and costs.

3.    Whether the Court, to compensate Plaintiffs for the injuries suffered by Leascend's contemptuous conduct, and to coerce Leascend to comply with the Escrow Order, should issue an Order to Show Cause to 35 Info as to why the Court should not amend the judgment to add 35 Info as a judgment debtor.

## III.    STATEMENT OF FACTS

### A.    Defendant Xiamen 35.Com Internet Technology Co., Ltd. changes its name to Leascend.

Plaintiffs originally brought their claim for violations of the Anticybersquatting Consumer Protection Act ("ACPA") and the Lanham Act in 2019 against OnlineNIC Inc. ("OnlineNIC"), a domain name registrar accredited by ICANN, and Domain ID Shield Service Co., Ltd. ("ID Shield"), a Hong Kong, China limited liability company that provides a proxy service for OnlineNIC's customers.[3] Xiamen 35.Com Internet Technology Co., Ltd ("35.CN"), a Chinese corporation and another domain

---

[2] The Court previously froze 35 Info's domain names and has maintained that freeze until it determines what contempt sanctions are appropriate. Contempt Order at 8. Plaintiffs request that the Court continue to maintain control over 35 Info's domain names until the Court determines whether 35 Info should be added as a judgment debtor.

[3] OnlineNIC and ID Shield are referred to collectively as the "OnlineNIC Defendants."

3

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

name registrar accredited by ICANN, was added as a party defendant when discovery uncovered that Leascend's employees managed the registrar business of OnlineNIC. Plaintiffs moved for summary judgment that Leascend and the OnlineNIC Defendants are alter egos of each other,[4] and that terminating sanctions should therefore be extended to Leascend for the spoliation of evidence that resulted in terminating sanctions against the OnlineNIC Defendants. ECF No. 299.

At the hearing on Plaintiffs' Motion for Summary Judgment on July 11, 2023, the Court issued its oral tentative ruling to grant the Motion. ECF No. 369 at 9:19-2. One month later, in August 2023, Leascend announced a proposed change of its company name from "Xiamen 35.Com Technology Co., Ltd." to "Leascend Technology Co., Ltd." *See* ECF No. 379-2 at 7. That name change became effective in September 2023. *Id*. at 9. Mr. Kronenberger confirmed at the May 3, 2024, hearing on Plaintiffs' Motion for Default Judgment that Leascend "pivoted their business model to a solar energy business model. They're slowly exiting the business model regarding domain registrations." ECF No. 406 at 4:24-5:2. Currently, Leascend uses the domain name leasdgrp.com to operate its company website. Guye Decl. ¶ 3, Ex. 2. Leascend also operates a website at the domain name leascend.com in connection with its solar energy business, with versions in both Chinese and English. Guye Decl. ¶¶ 4-5, Exs. 3-4.

**B.    Leascend spins off 35 Info.**

On May 3, 2024, the Court granted in part Plaintiffs' Motion for Default Judgment against all Defendants. ECF No. 393. One month later, on June 6, 2024, Leascend made a public announcement of the change of its domain name registration business by transferring that business from Leascend to Leascend's wholly owned subsidiary 35 Info: "***Due to the need for the adjustment of the company's business strategy***, it is now decided to put the domain name registration business of [Leascend] to its subsidiary, [35 Info]. From the date of the announcement, *[35 Info] will officially undertake the company's original domain name registration business and assume the corresponding operation and service responsibilities*." Guye Decl. ¶ 6, Ex. 5 (emphasis added). Between late May and June 2024, Leascend terminated its separate registrar accreditation (IANA 1316) with ICANN.[5] Guye Decl. ¶ 7,

---

[4] Plaintiffs' motion for terminating sanctions against Leascend was converted to a motion for summary judgment by the Court. ECF No. 329.

[5] 35 Info was accredited by ICANN and assigned IANA No. 4163 in October 2023, when 35 Info was the

TUCKER ELLIS LLP

515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071   213.430.3400

Ex. 6.

As Mr. Kronenberger confirmed, when 35 Info was spun off, the registrar business assets of Leascend were transferred to 35 Info. At the March 14, 2025, hearing on Plaintiffs' motion for contempt, Mr. Kronenberger confirmed that the registrar business assets "are all in a subsidiary, and they have been for many months, all the assets, the domain name of registrar certification, the domain names. Everything that's being suggested to be frozen – it's been in a subsidiary." Mar. 14 Contempt Hr'g Tr. at 13:13-17.

When 35 Info was a wholly owned subsidiary, key managers and employees involved in Leascend's registrar business also worked at 35 Info. For example, Zhang Weiwei was and is a member of Leascend's Senior Management and holds the title "Deputy General Manager." Guye Decl. ¶ 8, Ex. 7. Mr. Weiwei has submitted several declarations in connection with these proceedings on Leascend's behalf. *See, e.g.*, ECF No. 319-07 (Declaration of Zhang Weiwei) at ¶ 1. Mr. Weiwei was also the General Manager and Legal Representative of 35 Info when it was the wholly owned subsidiary of Leascend. Guye Decl. ¶ 9; ECF No. 458-2 (Property Transfer Agreement (the "Purchase Agreement" or "PA")) at 2. Indeed, in his capacity as 35 Info's Legal Representative, Mr. Weiwei signed the Purchase Agreement to sell 35 Info on December 23, 2024. PA at 20. Similarly, Carrie Yu aka Hongxia Yu was the Digital Center Director for 35 Info when it was the wholly owned subsidiary of Leascend. Guye Decl. ¶ 9. Before the spin-off of 35 Info, Ms. Yu was the director of Leascend's Software Outsourcing Center, the Vice President of OnlineNIC, and the owner of ID Shield for the benefit of OnlineNIC. ECF No. 357 ("Summary Judgment Order") at 12:19-13:1; 21:7-8. Thus, the very employees that the OnlineNIC Defendants shared with Leascend, which supported this Court's alter ego finding, are part of the registrar business that was transferred to 35 Info when Leascend spun off that company. *See, e.g., id.* at 12:19-14:6, 16:28-17:13.

**C.    Leascend is found to be in civil contempt for its violations of the Escrow Order.**

On December 12, 2024, Leascend issued a public announcement ("Announcement") stating that, following an unsuccessful attempt to auction off 35 Info through the Xiamen Property Rights Exchange

---

wholly owned subsidiary of Leascend. Guye Decl. ¶ 10, Ex. 9. 35 Info's registration accreditation is still active (Guye Decl. ¶ 11, Ex. 10) and was the subject of the Escrow Order (Escrow Order ¶ 3).

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

Center, Leascend had relisted the company for auction and subsequently received a notice from that Exchange Center on December 5, 2024, that Chengdu Yuyuling Internet Technology Co., Ltd. ("Yuyuling") made the winning bid for 35 Info. ECF No. 408-2 at 10-11 §§ I(i)1-3.

The Announcement further explains that, after receiving notification of the winning bid, Leascend's Board of Directors met on December 11, 2024, where it reviewed and approved the transaction. *Id.* at 11 § I(ii). The Announcement made clear that the "transaction still needs to be submitted to the Company's shareholders' meeting for consideration" where the shareholders would be requested to provide company management authorization for "signing the transaction agreement and handling the property rights transfer procedures." *Id.* Shareholder approval of this sale was scheduled to be held on December 23, 2024. ECF No. 408-6 at 11.

Based on these public statements, Plaintiffs were concerned that Leascend was attempting to dissipate its U.S.-based assets by selling the assets of 35 Info. On December 18, 2024, Plaintiffs filed their Emergency Ex Parte Application for a Temporary Restraining Order Freezing the Assets of Leascend. ECF No. 408. On Friday, December 20, 2024, the Court issued an order requiring Leascend to deposit $5.5 million into an escrow account by January 31, 2025. Escrow Order at 2 ¶ 1. The Escrow Order further prohibited Leascend from selling or transferring 35 Info, including any assets of 35 Info, until Leascend deposited the $5.5 million into an escrow account. *Id.* at 2 ¶ 3.

Despite the Court's Escrow Order, the shareholders of Leascend approved the sale of 35 Info on December 23, 2024, and Leascend signed the Purchase Agreement for the sale of 35 Info that same day. ECF Nos. 433-5 (announcement concerning shareholders' meeting results), 458-2 (copy of PA). The Purchase Agreement explains that the sale would close only after satisfaction of multiple contingencies, such as payment; execution of relevant agreements (including IP assignments); the submission of an application to the appropriate registration authority in China for the registration transfer of 35 Info's stock, intellectual property, and other assets; and the "equity transfer registration [being] completed with the relevant administrative authority." *See, e.g.*, PA, arts. 1.1, 6.1, 6.2, 7.1, 7.3.

Leascend provided a "Registration Notice" dated December 27, 2024, that purportedly confirms

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

the transfer of 35 Info to Yuyuling on that date. ECF No. 458-3.[6] ████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████ Guye Decl. ¶ 2, Ex. 1 (emphasis added).[7]

Even after 35 Info was sold to Yuyuling, there appears to be continuity of key managers and employees. Prior to the sale of 35 Info to Yuyuling, ██████████████████████████

█████████████████████ Guye Decl. ¶ 13, Ex. 12 (ICANN-METAONLINENIC-0000103-104).

████████████████████████████████████████████████████████████████████████

*Id.* ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████. Guye Decl. ¶ 14, Ex. 13; ECF No. 300-10. The same address and fax number added "to the context in which the Court makes its finding that 35.CN and OnlineNIC are part of a single business enterprise." Summary Judgment Order at 18:15-21.

Leascend never escrowed the $5.5 million as required by the Escrow Order, resulting in Plaintiffs filing a motion for civil contempt. ECF No. 426. On April 4, 2025, the Court granted Plaintiffs' Motion, holding Leascend in civil contempt of court. *See* Contempt Order.

**D.    Mr. Kronenberger made misrepresentations regarding the sale of 35 Info.**

Prior to February 21, 2025, Mr. Kronenberger repeatedly and affirmatively represented that the sale of 35 Info had not yet been finalized. For example, on December 19, 2024, Mr. Kronenberger submitted that "if Plaintiffs obtain an asset freeze order ***before the sale transaction closes***, it could potentially impact the transaction to Leascend's detriment." ECF No. 415 ("TRO Opp.") at 6:11-13 (citing

---

[6] ████████████████████████████████████████████████████████████████

██████████████████████████████ Guye Decl. ¶ 12, Ex. 11.

[7] The Amended Default Judgment was entered on February 14, 2025, and contained a Permanent Injunction. ECF No. 431. The Permanent Injunction prohibited Leascend from selling or dissipating its assets "including 35.CN's registrar business and accreditation (IANA 4163) currently held by [35 Info]." *Id.* ¶ 93. ██████████████████████████████████████

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

ECF No. 415-1 ("Kronenberger Decl.") ¶ 7 & Ex. B) (emphasis added). And at the December 20, 2024, TRO hearing, in response to the Court's question, "So what happens if the Court just orders: 'All right. Put it off for two weeks, put off the sale'?", Mr. Kronenberger asserted, "Then we lose the sale. This is important. It's a year-end thing, I believe." TRO Hr'g Tr., at 10:2-4. Mr. Kronenberger also continually implied the sale had not yet been finalized by referring to the transaction as the "supposed" and "impending sale." TRO Opp. at 2:14, 5:13. In fact, many of the arguments in Leascend's TRO opposition were premised entirely on the fact that the sale had not yet occurred. For example, Leascend indicated that it intended to use the proceeds from the sale to pay a potential settlement or judgment amount. *See, e.g.*, TRO Opp. at 5:14-16 ("[A] sale of unrelated domain names will only benefit Plaintiffs by providing Leascend with more funds to pay a potential judgment.").

Notwithstanding these representations, in Leascend's opposition to Plaintiffs' motion for contempt and at the March 14 hearing on that motion, Mr. Kronenberger represented that 35 Info was actually sold on December 5. Contempt Order at 3:22-28; *see also* Contempt Mot. Opp. at 3:12-15 ("This demonstrates that the Order, which was granted on shortened notice, was premised on a mistake of fact; that is, that the sale of the domain registrar business had not happened, when in fact it had indeed occurred fifteen days prior to the [Escrow] Order."). Mr. Kronenberger relied on the Declaration of Yanrong Li (ECF No. 432-1 ("Li Decl.")) describing a set of auction rules provided to him by his client. Contempt Mot. Opp. at 2:24-3:12 (citing Li Decl. ¶ 5, Ex. B). Mr. Kronenberger admitted making his representations to the Court on December 20, 2024, without reviewing or even asking for the terms of the auction rules. *See* Mar. 14 Contempt Hr'g Tr. at 5:21-22 ("I didn't provide the Court all the information the Court needed because I didn't know. I didn't have it."), and at 6:3-9 ("when we were at the hearing on December 20th, I said that the business was going to be transferred later in the month, which I thought was true. I didn't -- I didn't have the auction documents."). Despite claiming at the March 14 contempt hearing that the sale of 35 Info occurred on December 5, 2024, Mr. Kronenberger admitted that he neither possessed nor had reviewed the Purchase Agreement, which controlled the sale of 35 Info, or any closing documents. *Id*. at 9:14-15 ("I do not have those. I can ask for those, and I would assume I can get all of those documents.").[8]

---

[8] Mr. Kronenberger's "excuse" for his misrepresentations to the Court is that no one at Leascend speaks

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

After the Court ordered Mr. Kronenberger to obtain and produce the Purchase Agreement and all closing documents for the sale, Mr. Kronenberger again backtracked on his prior representations and admitted the sale was effectuated on December 23, 2024. Contempt Order at 3:22-28; *see also* Apr. 4 Contempt Hr'g Tr. at 4:4-13, 5:9-12. ██████████████████████████████████ ███████████████████████████████████ Guye Decl. ¶ 2, Ex. 1. ███████ ██████████████████████████████████████████████ ████████████████████████████

### E.    Mr. Kronenberger misrepresented the facts concerning Leascend's failure to comply with the Escrow Order.

As the Court recently noted: "At the [TRO] hearing, Leascend's counsel stated that complying with the Court's order would be 'complicated because funds were going to come through our firm for the settlement. And it's complicated. It has to go from a Chinese bank to a Hong Kong bank, and then -- and there are fees and there's regulatory approvals if it's over a certain amount.'" Contempt Order at 7:18-22 (quoting Kroll Decl., Ex. 1, TRO Hr'g Tr. at 17:18-22). Leascend's one purported attempt to transfer funds, however, came "directly from China, rather than route them through a Hong Kong bank, as [Mr. Kronenberger] had indicated it would need to do. At the April 4 hearing, [Mr. Kronenberger] stated that the Hong Kong process only works if the company has a bank account in Hong Kong and that Leascend does not in fact have such an account." Contempt Order at 7:22-26.[9] Accordingly, Mr. Kronenberger either misrepresented his client's ability to transfer funds through Hong Kong at the December 20, 2024, TRO Hearing, or he misrepresented his client's purported inability to do so at the April 4, 2025, Contempt Hearing.

---

English. March 14 Tr. At 5:8-9. Yet this is also a misrepresentation since Mr. Li, the Legal Manager of Leascend, submitted a declaration on February 21, 2025, stating that he is "proficient in both English and Chinese." Li Decl. ¶ 5.

[9] Mr. Kronenberger informed the Court at the April 4 contempt hearing that "you have to have a connection to Hong Kong and legitimate business in Hong Kong to open up an account." Apr. 4 Contempt Hr'g Tr. at 7:12-14. Mr. Kronenberger failed to note, however, that the day-to-day operations of ID Shield, a Hong Kong limited liability company, including all technical and customer support, were carried out by Leascend's employees. *See* Summary Judgment Order at 20:21-21:16 (finding 35.CN and ID Shield to be alter egos as part of a single enterprise).

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

**F.**    **Mr. Kronenberger misrepresented whether Leascend and 35 Info possess assets in the United States.**

At the hearing on April 4, 2025, Mr. Kronenberger stated that neither Leascend nor 35 Info have any assets based in the United States. "[T]here are no U.S.-based assets here. These are all – this is a Chinese company. It was a Chinese subsidiary. And there are no U.S.-based assets." Contempt Hr'g Tr. at 21:17-20. Mr. Kronenberger continued that "they run a registration business . . . mostly .CN Chinese domain names. And, you know, the non-profit, ICANN, happens to be in the United States. I don't know if Mr. Kroll is saying that makes it a U.S.-based asset. I disagree. These are Chinese companies, Chinese business, really Chinese customers for the most part." *Id.* at 22:1-7.

Contrary to Mr. Kronenberger's prior assertions, Leascend and 35 Info own .com and .net domain names, which are U.S.-based assets. The Ninth Circuit held that, under California law, a domain name is intangible personal property located "wherever the registry or the registrar are located." *Off. Depot Inc. v. Zuccarini*, 596 F.3d 696, 699 (9th Cir. 2010). Verisign, located in Virginia, is the registry for .com and .net domain names. And Mr. Kronenberger should have known that the .com and .net domain names owned by Leascend and 35 Info are U.S.-based assets for one simple reason: Mr. Kronenberger represented the appellees before the Ninth Circuit in *Off. Depot Inc. v. Zuccarini*. Moreover, Mr. Kronenberger represented the judgment-assignee in the district court case (*Off. Depot Inc. v. Zuccarini*, 621 F. Supp. 2d 773, 777 (N.D. Cal. 2007) (Illston, J.)) before this very Court.

## IV.    COERCIVE AND COMPENSATORY CONTEMPT REMEDIES AGAINST LEASCEND ARE WARRANTED HERE.

The Court found Leascend to be in civil contempt for its violations of the Escrow Order by failing to deposit $5.5 million into an escrow account and, separately, by transferring the assets of 35 Info to a third party. Contempt Order at 5:28-6:7, 8:6-16. To remedy Leascend's contempt, Plaintiffs respectfully request the Court impose sanctions designed to (1) coerce Leascend's compliance with the Escrow Order and (2) compensate Plaintiffs for their actual losses resulting from Leascend's contemptuous behavior. *See, e.g., Oracle USA, Inc. v. Rimini St., Inc.*, 81 F.4th 843, 859 (9th Cir. 2023) (collecting cases and describing two separate and independent purposes for civil contempt sanctions: (1) "to coerce the defendant into compliance with the court's order" and (2) "to compensate the complainant for losses

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

sustained").

### A.    Sanctions are necessary to coerce Leascend's compliance with the Escrow Order.

When exercising its broad discretion in crafting a civil contempt sanction to coerce compliance, a court "consider[s] the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947). The Court may craft appropriate remedies, such as a seizure order, when traditional remedies like "incarceration and fines would not adequately address the harm to Plaintiff[s]." *See Suntech Power Holdings Co., Ltd. v. Shenzhen Xintian Solar Tech. Co., Ltd.*, No. 08-cv-01582-H, 2008 WL 11337380, at *1 (S.D. Cal. 2008). The Court may do so in reliance "on its inherent power under traditional rights and any power under the [substantive law]." *Id*. at *3.

"Generally, the minimum sanction necessary to obtain compliance is to be imposed." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992). Multiple sanctions are necessary here where Leascend has repeatedly suggested that, as a publicly traded company in China, it is beyond the power of this Court. Indeed, after this Court issued its Amended Default Judgment (ECF No. 431), Leascend issued a public statement claiming, "the possibility of direct enforcement in China is low." ECF No. 433-04 at 6. Because Leascend continues to flout this Court's orders, traditional sanctions against Leascend—while undoubtedly warranted—may ultimately prove ineffective unless paired with additional coercive sanctions.

Accordingly, by this motion, Plaintiffs request at least two sanctions against Leascend to coerce Leascend to comply with the Court's Escrow Order. Taken together, the cumulative impact of these two sanctions is warranted given the magnitude of harm caused by Leascend's continued contemptuous behavior and the probable effectiveness of these sanctions' cumulative ability to coerce compliance with the Escrow Order. *See United Mine Workers*, 330 U.S. at 304. Specifically, Plaintiffs request the Court impose coercive sanctions against Leascend by at least:

1.    ordering Leascend to pay to the Court a daily fine of $1,000 until compliance; and

2.    ordering Verisign to deactivate Leascend's .com domain names until compliance.

Plaintiffs request that these sanctions take effect fourteen days from entry of an order levying the sanctions to afford Leascend an opportunity to purge the sanctions even before the sanctions have

TUCKER ELLIS LLP

515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

11

impacted Leascend in any manner.

> **1.     Leascend should be fined $1,000 per day until it complies with the Escrow Order.**

The Court should levy a daily fine of $1,000 to coerce Leascend to comply with the Escrow Order. "[C]oercive civil sanctions, intended to deter, generally take the form of conditional fines." *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) (citing *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 780 (9th Cir. 1983), in turn citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 444 (1911)). "[A] per diem fine imposed for each day a contemnor fails to comply with an affirmative court order . . . exert[s] a constant coercive pressure, and once the jural command is obeyed, the future, indefinite, daily fines are purged." *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 829 (1994). In setting a daily fine "as a ... means of securing future compliance, [a court shall] consider the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant." *Arabian Gas & Oil Dev. Co. v. Wisdom Marines Lines, S.A.*, No. 16-CV-03801-DMR, 2017 WL 4390184, at *6 (N.D. Cal. Oct. 3, 2017) (quoting *United Mine Workers*, 330 U.S. at 304) (alterations in original); *see also United States v. Anderson*, No. 14-cv-01932-JST, 2016 WL 1169309, at *4 (N.D. Cal. Mar. 25, 2016) (in order to determine the amount of the appropriate sanction, the court ordered the parties to provide information about the defendant's financial resources).

Courts have imposed daily fines as high as $10,000 when the contemnor's resources and history of noncompliance indicate that such a fine would have the appropriate coercive effect. *See, e.g.*, *In re Search of Content Stored at Premises Controlled by Google Inc.*, No. 16-mc-80263-RS, 2017 WL 4700056, at *3 (N.D. Cal. Oct. 19, 2017) ("$10,000 per day may seem like a small amount to a company of Google's resources. It is not, however, a meaningless amount . . . . The cost to Google will quickly add up" such that "the $10,000 per day sanction  . . . should prove sufficiently coercive."); *Hook v. Ariz. Dep't of Corr.*, 107 F.3d 1397, 1400, 1404 (9th Cir. 1997) (approving $10,000 daily fine against Department of Corrections given its "extensive history of noncompliance with the injunctions and decree" at issue and finding "[t]he record reflects that the district court could not be assured the defendants would comply with

TUCKER ELLIS LLP

515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

the orders in the absence of a coercive sanction").[10]

Here, a daily fine of $1,000 beginning fourteen days from entry of such an order is warranted. According to an accounting recently filed with the Court, Leascend possesses about $440 million in total assets, including about $12.8 million in cash and cash equivalents. ECF No. 436 at 4-5; *see also* TRO Opp. at 3 (detailing extensive assets in similar amounts, including $57 million in current assets expected to be converted into cash or use within one year or less). As of March 28, 2025, Leascend has accrued over $25,000 in post-judgment interest owed to Plaintiffs (at $628.37 per day), yet that figure has provided Leascend no incentive to attempt to satisfy the judgment.[11] *See* ECF No. 453 (Writ of Execution) § 16. A more severe fine is therefore necessary to coerce Leascend to comply with this Court's Escrow Order. The requested daily fine is just under 0.02% of the $5.5 million the Court ordered to be escrowed and thus is not punitive or disproportionate to the amount at issue. *See* Escrow Order at 2; *cf. Whittaker*, 953 F.2d at 516-17 ($1 million bond has sufficient relationship considering $600,000 attorneys' fees award). The requested fine of $1,000 per day strikes a balance between a reasonable, non-punitive amount[12] and an effective deterrence against continued violation of this Court's order. Plaintiffs further request that the Court allow Leascend fourteen days from entry of an order levying this sanction to comply with the Escrow Order before assessment of the daily fine begins.

> **2.** **The Court should order Verisign to deactivate the U.S.-based domain names of Leascend.**

In addition to imposing a daily fine on Leascend, deactivating the U.S.-based domain names of

---

[10] *But see, e.g., Facebook, Inc. v. Power Ventures, Inc.*, No. 08-CV-05780-LHK, 2017 WL 3394754, at *15 (N.D. Cal. Aug. 8, 2017) ("Although higher awards are sometimes appropriate, the Ninth Circuit and other courts have found that a fine in the amount of $100-$200 per day is proper and proportional in coercing compliance.").

[11] Plaintiffs do not seek to enforce their money judgment against Leascend through contempt sanctions but instead merely offer the post-judgment interest amount as a guidepost.

[12] Unlike criminal contempt sanctions, generally "civil contempt sanctions are viewed as nonpunitive and avoidable, [and] fewer procedural protections for such sanctions have been required." *Bagwell*, 512 U.S. at 831. Thus, coercive civil contempt sanctions must be a non-punitive amount (*id.*) and the "minimum sanction necessary to secure compliance." *United States v. Bright*, 596 F.3d 683, 696 (9th Cir. 2010) (citing *Whittaker Corp.*, 953 F.2d at 517).

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

Leascend[13] is warranted in light of Leascend's continuing contempt. This Court has "broad equitable power to order appropriate relief in civil contempt proceedings" (*Nemetona*, 2015 WL 1967401, at *2), including "creative, non-traditional sanctions" (*Mercedes-Benz Grp. AG*, 2022 WL 2276907, at *2).

For example, the Ninth Circuit in *Whittaker Corp.* found that an order prohibiting the defendants from engaging in the business of selling aircraft parts was an appropriate civil contempt remedy for the defendants' repeated violations of a prior order governing how the defendants could participate in the aircraft parts business. *Whittaker Corp.*, 953 F.2d at 517-18 (citing *Lance v. Plummer,* 353 F.2d 585, 591-92 (5th Cir. 1965) (approving order that deputy sheriff resign—until contempt purged—as sanction for violating injunction preventing deputy sheriff from interfering with actions designed to carry out the public accommodation provision of the Civil Rights Act)).

Similarly, in *Williams-Sonoma*, the district court explained that, pursuant to its inherent equitable authority, courts could prohibit the sale or transfer of a trademark infringement defendant's domain names to ensure that the assets would be available to satisfy a judgment. *See Williams-Sonoma, Inc. v. Friendfinder, Inc.*, No. C06-6572JSW (MEJ), 2007 WL 4973848, at *10 (N.D. Cal. Dec. 6, 2007), *report and recommendation adopted as modified sub nom. Williams-Sonoma, Inc. v. Online Mktg. Servs., Ltd.*, No. C 06-06572 JSW, 2008 WL 596251 (N.D. Cal. Mar. 4, 2008) (citing *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992)). Because the defendants in that case used the domain names to accomplish their infringement, it was unclear whether any other assets remained available to satisfy a judgment. *Id.* The court therefore found that, "[a]s Defendants could easily sell or transfer these online properties to avoid a judgment, the District Court should provisionally prohibit their sale pending final relief." *Id.*

As an additional example, in *Cisco Sys., Inc.*, the district court noted that, in cases involving online

---

[13] The Court has jurisdiction over Leascend's .com domain names—leascend.com and leasdgrp.com—which are based in the United States. *See Off. Depot Inc. v. Zuccarini*, 596 F.3d 696, 699 (9th Cir. 2010) (under California law, a domain name is intangible personal property located "wherever the registry or the registrar are located"). Since Verisign is the registry operator for all .com domain names and is based in Virginia, Leascend's .com domain names are based in the United States. *See id.* at 702. And, Verisign has previously informed the Court with respect to other .com and .net domain names in this case "that Verisign will comply with any other order issued by the Court that directs Verisign to take actions against the Subject Domain Names that are within its technical capabilities." Guye Decl. ¶ 15, Ex. 14.

TUCKER ELLIS LLP

515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

counterfeiters, courts had issued orders to disable websites or to have them redirect to a website providing notice of and access to court filings in the action. *Cisco Sys., Inc. v. Wuhan Wolon Commc'n Tech. Co.*, No. 5:21-CV-04272-EJD, 2021 WL 4962661, at *11 (N.D. Cal. July 23, 2021) (collecting cases). The court in *Cisco* therefore issued a similar order to curtail the defendant's ability to sell counterfeit goods during the pendency of the litigation. *Id.*

Until Leascend complies with the Escrow Order, Leascend's .com domain names should be deactivated, preventing Leascend from operating any website using those domain names. As a coercive sanction, deactivating Leascend's .com domain names is warranted considering the serious "harm threatened by [Leascend's] continued contumacy." *United Mine Workers of Am.*, 330 U.S. at 304. First, Leascend's "repeated refusals to comply with a court order threatens the very foundation of the court's authority." *Reed v. Fed. Nat'l Mortg. Ass'n*, No. 5:13-cv-00940-VAP-SPx, 2019 WL 7166975, at *3 (C.D. Cal. Dec. 4, 2019), *aff'd*, No. 19-56512, 2021 WL 5985575 (9th Cir. Dec. 17, 2021). Moreover, if Leascend does not comply with the Court's Escrow Order, Plaintiffs would likely be deprived of any reasonable prospect of satisfying the Amended Default Judgment, which included an award of statutory damages under the ACPA, an award of attorneys' fees based on Defendants' relentless litigation misconduct, and injunctive relief preventing further cybersquatting and trademark infringement in violation of Plaintiffs' rights. *See generally* ECF No. 431. In light of the serious harm to this Court and Plaintiffs threatened by Leascend's continued contumacy, deactivating Leascend's U.S.-based domain names is appropriate.

Ordering Verisign to deactivate the U.S.-based domain names is also highly probable to coerce Leascend's compliance. By deactivating the .com domain names, Leascend would be prevented from operating the websites it currently uses in connection with its solar energy business. Given Leascend sold 35 Info, its business focus is now solely on its solar energy business, thus making this sanction even more effective. Thus, the "probable effectiveness" of seizing and deactivating Leascend's domain names weighs in favor of the imposition of these sanctions. *See Whittaker*, 953 F.2d at 518 (*citing Lance*, 353 F.2d at 591-92).

Again, in an attempt to allow Leascend the opportunity to comply with the Escrow Order and avoid this sanction, Plaintiffs request that the Court allow Leascend fourteen days from entry of an order

TUCKER ELLIS LLP

515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

15

imposing this sanction before Leascend's .com domain names are seized and deactivated. Such sanctions therefore would not be punitive given Leascend's ability to purge its contempt and prevent the imposition of this sanction—or to be relieved of this sanction if Leascend later purges its contempt.

**B.     Sanctions are necessary to compensate Plaintiffs for actual losses resulting from Leascend's contemptuous behavior.**

Courts also have the authority "to enter broad compensatory awards for all contempts through civil proceedings." *Bagwell*, 512 U.S. at 838. Compensatory sanctions may be used to "compensate a party who has suffered unnecessary injuries or costs because of contemptuous conduct" and "typically take the form of unconditional monetary sanctions." *Shell Offshore*, 815 F.3d at 629 (*quoting Ohr ex rel. NLRB v. Latino Express, Inc.*, 776 F.3d 469, 479-80 (7th Cir. 2015)).

Leascend and its attorneys should be ordered to compensate Plaintiffs for the harm caused by Leascend's contemptuous conduct, including Plaintiffs' attorneys' fees and costs expended as a result of the contempt.[14] *See, e.g., Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc.*, 877 F.2d 787, 790 (9th Cir. 1989) (a court may award a party its costs and fees expended in bringing a motion for civil contempt); *see also Hyde & Drath v. Baker*, 24 F.3d 1162, 1170-72 (9th Cir. 1994) (in appropriate circumstances, sanctions can be levied against a litigant and its counsel jointly and severally). "It is well-established that attorneys' fees are awarded as compensatory damage to the prevailing party in a civil contempt motion." *Valle v. Berryhill*, No. 16-CV-02358-JSC, 2019 WL 1517103, at *3 (N.D. Cal. Apr. 8, 2019) (quoting *U.S. Philips Corp. v. KXD Tech., Inc.*, Case No. CV 05-08953 DMG (PLAx), 2014 WL 12567518, at *1 (C.D. Cal. Aug. 26, 2014), in turn citing *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985)). "It matters not whether the disobedience is willful, the cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party and those costs would reduce any benefits gained by the prevailing party from the court's violated order." *Perry*, 759 F.2d at 705-06 (quoting

---

[14] Specifically, Plaintiffs seek their fees and costs incurred in connection with the underlying application for a temporary restraining order (ECF No. 408), which sought prejudgment relief to ensure that Leascend would not dissipate its assets. Plaintiffs further seek their fees and costs incurred in connection with the motion for contempt, including further contempt proceedings (ECF Nos. 426, 433, 458) and this motion for sanctions. Plaintiffs will submit briefing concerning the amount and reasonableness of their fees and costs at the appropriate juncture.

Tucker Ellis LLP

515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

16

*Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1997)). As such, assessing attorneys' fees and costs against Leascend would reimburse Plaintiffs for having brought these issues to the Court's attention and fits squarely within this Court's remedial toolkit.

In addition to Leascend, this sanction should also be jointly and severally assessed against Leascend's attorney, Mr. Kronenberger, because he has recklessly misrepresented the facts and law to this Court in furtherance of Leascend's contemptuous conduct in bad faith. "The district court has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992-93 (9th Cir. 2001) ("Where a court sanctions an attorney pursuant to its inherent powers, some showing of bad faith is required."). The bad-faith requirement "may be met by willful misconduct, or recklessness that is coupled with an improper purpose." *Id.* at 993-94.

A district court is also empowered by 28 U.S.C. § 1927 to sanction any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously [such that the attorney] may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "[A] finding that the attorney recklessly or intentionally misled the court is sufficient to impose sanctions under § 1927." *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010) (collecting cases). Similarly, an "omission [that] is an unreasonable and irresponsible breach of [the attorney's] 'duty of good faith and candor in dealing with the judiciary' . . . supports sanctions under section 1927." *Blixeth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1008 (9th Cir. 2015) (quoting and citing *United States v. Associated Convalescent Enters., Inc.*, 766 F.2d 1342, 1346-47 (9th Cir. 1985)). Finally, § 1927 sanctions are also appropriate if an attorney "recklessly raised a *frivolous* argument which resulted in the multiplication of proceedings." *Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1155 (9th Cir. 2024) (quoting *Girardi*, 611 F.3d at 1061) (emphasis in original)). Frivolous arguments include ones that are "baseless and made without reasonable and competent inquiry" or those made up of "legal or factual contentions so weak as to constitute objective evidence of improper purpose." *Id.* (quoting *Girardi*, 611 F.3d at 1062). Such conduct is also sufficient for a finding of bad faith. *Fink*, 239 F.3d at 993-94.

Mr. Kronenberger has unnecessarily multiplied these proceedings by—at the very least—recklessly misleading the Court and recklessly raising frivolous arguments. In fact, this Court stated that

Tucker Ellis LLP

515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

17

it has been forced to stumble in the dark since the December 20, 2024, hearing on Plaintiffs' application for a TRO freezing Leascend's assets because it cannot rely on Mr. Kronenberger's representations. Mar. 14 Contempt Hr'g Tr. at 13:6-12. ("It makes us all stumble in the dark when we can't rely on your representations and we don't know what's going on."). It is apparent from the record that Mr. Kronenberger has repeatedly taken factually and legally inconsistent positions with respect to Leascend and its conduct. At best, Mr. Kronenberger failed to exercise any reasonable amount of due diligence before advocating each of his ever-shifting positions, thus rendering them both reckless and frivolous. At worst, Mr. Kronenberger has intentionally misled the Court. Either way, sanctions in the form of an award of attorneys' fees and costs are appropriate.

For example, even a minimal amount of due diligence by reviewing the terms of the Purchase Agreement (as well as when the Purchase Agreement was signed) would have spared the Court from Mr. Kronenberger's ever-shifting representations and arguments about when 35 Info was sold. Indeed, Mr. Kronenberger has yet to inform the Court of ███████████████████████████████████ ███████████████████████████████████████████. Guye Decl. ¶ 2, Ex. 1 And yet, Mr. Kronenberger's briefs and oral arguments on February 21 and March 14 continued to take the position that 35 Info was sold on December 5, 2024.

Additionally, even minimal due diligence would have answered the question as to whether Leascend had the ability to transfer funds through Hong Kong. At the December 20 hearing, Mr. Kronenberger claimed that his client had been attempting to negotiate a settlement for over seven months that would involve a large transfer of funds through Hong Kong, which Mr. Kronenberger described as complicated and thus a process he and his client presumably had vetted. TRO Hr'g Tr. at 12:20-14:17, 17:18-23. In fact, Mr. Kronenberger attempted to compromise with the Court at the hearing by offering to escrow $3 million instead of the ordered $5.5 million (*id.* at 11:3-10) or by offering to transfer the funds after the sale (*id.* at 17:1-8). At no point before the April 4 contempt hearing did Mr. Kronenberger state that sending funds through Hong Kong was not possible. Moreover, Mr. Kronenberger's most recent representations that the funds could never have been sent through Hong Kong because "you have to have a connection to Hong Kong and legitimate business in Hong Kong to open up an account" (Apr. 4 Contempt Hr'g Tr. at 7:12-14) fail to pass muster due to Leascend's

Tucker Ellis LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

18

relationship with ID Shield, a Hong Kong company. There is no dispute that the day-to-day operations of ID Shield, including all technical and customer support, were carried out by Leascend's employees. *See* Summary Judgment Order at 20:21-21:16 (finding Leascend and ID Shield are part of a single enterprise). Mr. Kronenberger did not even attempt to explain how, despite this relationship with ID Shield, Leascend still could not transfer funds through Hong Kong as he represented Leascend originally intended to do. Once again, Mr. Kronenberger's ever-shifting positions have left the parties and the Court stumbling in the dark over the facts surrounding Leascend's contempt.

Moreover, even Mr. Kronenberger's "excuse" for his misrepresentations, that no one at Leascend speaks English (Mar. 14 Contempt Hr'g Tr. At 5:8-9), is demonstrably false. *See* Li Decl. ¶ 5 ("I am proficient in both English and Chinese"). Finally, as described above in Section III.F, there is no excuse for Mr. Kronenberger to claim that Leascend's .com domain names are not U.S.-based assets. Mr. Kronenberger knows that Verisign, a U.S.-based company, is the registry charged with running .com domain names. And Mr. Kronenberger was the trial and appellate counsel in a case where this very Court and the Ninth Circuit held that domain names are assets located where the registry is located. *See, e.g.*, *Off. Depot Inc. v. Zuccarini*, 621 F. Supp. 2d at 777 (Illston, J.).

In short, sanctions against Mr. Kronenberger under § 1927 are appropriate because Mr. Kronenberger's arguments were frivolous and thus were made in bad faith. *See Caputo*, 96 F.4th at 1155 (frivolous arguments include ones that are "baseless and made without reasonable and competent inquiry"); *Fink*, 239 F.3d at 993-94. And these misrepresentations have had a serious impact on the course of this litigation since December 20, 2024. The Court crafted the Escrow Order specifically so that it would not have to interfere with Leascend's sale of 35 Info while ensuring that Leascend did not dissipate its assets to avoid paying the eventual judgment. TRO Hr'g Tr. at 7:5-12. Even assuming that Mr. Kronenberger's most recent story concerning his client's inability to transfer funds to the United States holds water, the Court may well have crafted a different remedy on December 20 if Mr. Kronenberger had originally been honest with the Court about this alleged impossibility. To paraphrase the Ninth Circuit, but for Mr. Kronenberger's misrepresentations and frivolous arguments, "we would not be here today." *Caputo*, 96 F.4th at 1154-55.

Accordingly, the imposition of sanctions against Leascend's counsel pursuant to the Court's

19

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

inherent authority and Section 1927 is appropriate. Leascend and Mr. Kronenberger should be ordered to be jointly and severally responsible for paying Plaintiffs' attorneys' fees and costs incurred in connection with Leascend's contemptuous behavior.

## V. THE COURT SHOULD ISSUE AN ORDER TO SHOW CAUSE TO 35 INFO AS TO WHY THE COURT SHOULD NOT AMEND THE JUDGMENT TO ADD 35 INFO AS A JUDGMENT DEBTOR

The Court should issue an Order To Show Cause ("OSC") as to whether the judgment should be amended to add 35 Info as a judgment debtor.[15] The unique facts of this case warrant such an amendment because Leascend transferred its registrar business to 35 Info for the fraudulent purpose of avoiding the reach of this Court's orders and eventual judgment, thus making 35 Info a successor corporation to Leascend's registrar business. Adding 35 Info as a judgment debtor would also serve as a sanction to compensate Plaintiffs for Leascend's violation of this Court's Escrow Order. While compensatory sanctions "typically take the form of unconditional monetary sanctions" (*id.*), non-monetary sanctions are permissible in civil contempt cases to "return Plaintiffs as nearly as possible to the position they would have occupied had [the non-moving party] not violated the [order]." *Kelly v. Wengler*, 822 F.3d 1085, 1097 (9th Cir. 2016).

Under California law, courts may amend a judgment to add a successor corporation of the original judgment debtor. *See Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1150 (9th Cir. 2004).[16] The moving party bears the burden of proof by a preponderance of the evidence. *DEPCOM*

---

[15] California law provides that courts have personal jurisdiction over a successor corporation where it would have had jurisdiction over the predecessor corporation. *j2 Cloud Servs., Inc. v. Fax87*, No. 13-05353 DDP (AJWX), 2017 WL 11682159, at *5 (C.D. Cal. Apr. 7, 2017) (citing *Sanders v. CEG Corp.* 95 Cal. App. 3d 779 (1979)). Additionally, this Court has personal jurisdiction over 35 Info because its conduct in aiding and abetting Leascend in attempting to dissipate assets satisfies the *Calder* effects test. *Kremen v. Cohen*, No. 5:11-cv-05411-LHK, 2012 WL 44999, at *7 (N.D. Cal. Jan. 7, 2012) (asserting jurisdiction over out-of-state transferee of fraudulently conveyed assets).

[16] "The Ninth Circuit 'has approved the use of the state procedure [to amend judgments to add judgment debtors] pursuant to Federal Rule of Civil Procedure 69(a).'" *Uni-Splendor Corp. v. Remington Designs, LLC*, No. CV 16-9316 PA (SSX), 2018 WL 6252444, at *3 (C.D. Cal. Oct. 23, 2018) (quoting *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1148 (9th Cir. 2004) (alteration in original)). California law authorizes courts to amend judgments to add additional judgment debtors. *Id.* "California Code of Civil Procedure section 187 authorizes courts to amend judgments to add additional judgment

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

*Power, Inc. v. CSUN Solar, Inc.*, No. 18-CV-00729-JST, 2020 WL 5176193, at *4 (N.D. Cal. July 30, 2020). "A successor company assumes liability for a predecessor's liabilities if: (1) the successor expressly or impliedly agrees to assume the subject liabilities; (2) the transaction amounts to a consolidation or merger of the successor and the predecessor (de facto merger); (3) the successor is a mere continuation of the predecessor; or (4) the transfer of assets to the successor is for the fraudulent purpose of escaping liability for the predecessor's debts." *Lefkowitz v. Scytl USA*, No. 15-CV-05005-JSC, 2016 WL 537952, at *4 (N.D. Cal. Feb. 11, 2016) (citing *Ray v. Alad Corp.*, 19 Cal.3d 22, 28 (1977)); *see also McClellan*, 89 Cal. App. 4th at 753-54 (stating same). "Successor liability issues are equitable issues to be examined 'on their own unique facts' and considerations of 'fairness and equity apply.'" *Uni-Splendor*, 2018 WL 6252444, at *6 (quoting *CenterPoint Energy, Inc. v. Super. Ct.*, 157 Cal. App. 4th 1101, 1122 (2007) and citing *Cleveland v. Johnson*, 209 Cal. App. 4th 1315, 1330 (2012)). Applying these principles, courts have found successor liability when assets are transferred using "a procedure that in some circumstances is perfectly legitimate" but that "was tainted" by facts indicating the transaction was designed to hide assets. *See id.*

In determining successor liability, courts may examine eleven nonexclusive factors—the "badges of fraud"—codified in California's Uniform Voidable Transactions Act (Cal. Civ. Code §§ 3439.04(b)(1)-(11)) that are probative of actual intent to hinder, delay, or defraud creditors. *See, e.g.*, *Agit Glob., Inc. v. Wham-O, Inc.*, No. 2:09-CV-08133-CAS JC, 2014 WL 1365200, at *6 n.8 (C.D. Cal. Apr. 7, 2014) (finding presence of badges of fraud persuasive on successor liability issue while noting Ninth Circuit's reliance on same to determine that a district court did not abuse its discretion in amending the judgment) (citing *Elvis Presley Enters. v. Passport Video*, 334 Fed. Appx. 810, 811–12 (9th Cir. May 29, 2009); *see also Virtue Glob. Holdings Ltd. v. Rearden LLC*, No. 15-CV-00797-JST, 2016 WL 9045855, at *6 (N.D.

---

debtors." *Id.* (citing *NEC Elecs. Inc. v. Hurt*, 208 Cal. App. 3d 772, 778 (1989)). Section 187 may thus be invoked to amend a judgment to add a successor corporation under certain circumstances. *See, e g.*, *McClellan v. Northridge Park Townhome Owners Ass'n, Inc.*, 89 Cal. App. 4th 746, 753-54 (2001); *see also Uni-Splendor*, 2018 WL 6252444, at *5 ("A successor corporation can be added as a judgment debtor if it is either a 'mere continuation' of the original defendant or the transaction that creates the successor corporation is entered into fraudulently to escape liability for debts.") (citing *McClellen*, 89 Cal. App. 4th at 753-54).

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

Cal. June 17, 2016) (citing *In re Beverly*, 374 B.R. 221, 235 (B.A.P. 9th Cir. 2007), *aff'd in part, dismissed in part*, 551 F.3d 1092 (9th Cir. 2008)).

While the question of whether intent to hinder, delay, or defraud must be determined by a preponderance of evidence (*In re Beverly*, 374 B.R. at 235), the Ninth Circuit has found that "[t]he UFTA list of 'badges of fraud' provides neither a counting rule, nor a mathematical formula. No minimum number of factors tips the scales toward actual intent. A trier of fact is entitled to find actual intent based on the evidence in the case, even if no 'badges of fraud' are present. Conversely, specific evidence may negate an inference of fraud notwithstanding the presence of a number of 'badges of fraud.'" *Id.* at 236 (citing *Filip v. Bucurenciu,* 129 Cal. App. 4th 825, 834, 28 Cal. Rptr. 3d 884, 890 (2005); *Annod Corp. v. Hamilton & Samuels*, 100 Cal. App. 4th 1286, 1297, 123 Cal. Rptr. 2d 924, 932-33 (2002)).[17]

The circumstances surrounding Leascend's transfers of assets to 35 Info, including its subsequent sale of 35 Info to Yuyuling, implicate at least five badges of fraud that support amending the judgment to name 35 Info as a judgment debtor. First, after having transferred its registrar business into 35 Info, Leascend concealed the status of the transfer of 35 Info to Yuyuling in its briefs and through Mr. Kronenberger's representations to the Court. Leascend's misrepresentations satisfy the third badge of fraud: "[w]hether the transfer or obligation was disclosed or concealed." Cal. Civ. Code § 3439.04(b)(3).

Second, Leascend transferred its registrar business to 35 Info after Leascend had been sued, and transferred 35 Info to Yuyuling even after the Court entered its Order on May 3, 2024, granting in part Plaintiffs' motion for default judgment against Leascend. Indeed, just one month after default judgment was granted, Leascend publicly announced that 35 Info "will officially undertake the company's original domain name registration business and assume the corresponding operation and service responsibilities." Guye Decl. ¶ 6, Ex. 5. These actions implicate the fourth badge of fraud: "[w]hether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit." Cal. Civ. Code § 3439.04(b)(4).

---

[17] "The UVTA, adopted in California in 2015 and effective January 1, 2016, is a renamed and slightly revised version of the Uniform Fraudulent Transfers Act ('UFTA'), which California enacted in 1986." *In re Medina*, 619 B.R. 236, 241 (B.A.P. 9th Cir. 2020), *aff'd*, No. 20-60045, 2021 WL 3214757 (9th Cir. July 29, 2021).

TUCKER ELLIS LLP

515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

Third, Leascend transferred substantially all of its U.S.-based assets to 35 Info. As a wholly owned subsidiary of Leascend, Plaintiffs would have been able to seize the shares of 35 Info to satisfy any judgment against Leascend. However, Leascend's subsequent sale of 35 Info to Yuyuling affected Plaintiffs' ability to levy on these assets. These actions implicate the fifth badge of fraud "[w]hether the transfer was of substantially all the debtor's assets" because Leascend transferred away the bulk of its U.S.-based assets. Cal. Civ. Code § 3439.04(b)(5). In addition, Leascend's transfer of the U.S.-based assets to Yuyuling amounted to escaping enforcement of the judgment, and thus implicates the sixth badge of fraud: "[w]hether the debtor absconded." Cal. Civ. Code § 3439.04(b)(6). *See Rearden*, 2016 WL 9045855, at *7 (describing activities where party transferred away assets with which to pay debt but retained the liabilities as absconding).

Finally, Leascend's transfer of its registrar business to 35 Info occurred shortly after the Court granted default judgment against Leascend and the OnlineNIC Defendants, indicating an award to Plaintiffs of $3,135,000 in statutory damages and attorneys' fees to be calculated. ECF 393, at 9:2-4, 10:9-10. Further, the transfer of 35 Info to Yuyuling occurred shortly before a substantial judgment of almost $5.5 million was incurred and immediately after an obligation to escrow $5.5 million occurred. As such, Leascend's transfer of assets to 35 Info and subsequent sale of 35 Info implicate the tenth badge of fraud: "[w]hether the transfer occurred shortly before or shortly after a substantial debt was incurred." Cal. Civ. Code § 3439.04(b)(10). *See In re Beverly*, 374 B.R. at 229, 238 (assets transferred "shortly" after debt incurred where transfer was negotiated during trial and completed one month after entry of judgment).

Accordingly, the presence of at least five badges of fraud shows that the assets of Leascend's registrar business were fraudulently transferred to 35 Info so that 35 Info could be sold to Yuyuling to further dissipate those assets.[18] *See, e.g.*, *Valjakka v. Netflix Inc.*, No. 22-CV-01490-JST, 2023 WL 12037806, at *6 (N.D. Cal. Oct. 18, 2023) (finding five badges of fraud to "in the aggregate . . . constitute substantial evidence of Valjakka's intent to defraud"); *see also In re Acequia, Inc.*, 34 F.3d 800, 806 (9th

---

[18] Although the facts concerning Leascend's sale of 35 Info to Yuyuling constitute "badges of fraud" supporting Leascend's fraudulent intent to transfer assets, Plaintiffs by this motion seek to name 35 Info as an additional judgment debtor—and not Yuyuling—because Yuyuling simply owns 35 Info's stock. The fraudulently conveyed assets remain with 35 Info.

23

Cir. 1994) ("[T]he presence of a single badge of fraud may spur mere suspicion; the confluence of several can constitute conclusive evidence of actual intent to defraud, absent 'significantly clear' evidence of a legitimate supervening purpose.").

It would also be equitable and fair for the Court to amend the judgment to add 35 Info as a judgment debtor. The purpose of the Escrow Order was to secure Plaintiffs' ability to enforce and collect the Court's then-impending judgment. TRO Hr'g Tr. at 10:9-14. In open defiance of the Escrow Order, Leascend proceeded with the sale of 35 Info to evade the judgment. Leascend also falsely warranted that (1) 35 Info "is free from any mortgages, guarantees, liens, security interests, or other encumbrances" and (2) "the execution of the [Purchase Agreement] and the performance of its obligations hereunder will not violate any applicable laws or regulations." PA, arts. 9.1.1, 9.1.3. Leascend has taken no steps to pay the judgment issued in this case (Mar. 14 Contempt Hr'g Tr. at 4:5-14) or comply with the Escrow Order. Equally troubling, Leascend has openly suggested in public filings that "the possibility of direct enforcement in China is low." ECF No. 433-04 (public announcement). Leascend's fraudulent representations to Yuyuling concerning the impact of the Escrow Order on the sale, its announcement dismissing this Court's authority, and its repeated violations of this Court's orders designed to prevent dissipation of assets all demonstrate that Leascend's attempted sale of 35 Info's United States-based assets was simply designed "for the fraudulent purpose of escaping liability" to pay this Court's judgment. *Uni-Splendor*, 2018 WL 6252444, at *6 (quoting *Cleveland*, 209 Cal. App. 4th at 1334); *see also id.* (finding fraud where assets transferred in transaction seemingly structured to escape liability for debts).

Issuing an OSC as to whether the Court should amend the judgment to add 35 Info as a judgment debtor would also serve as an appropriate coercive sanction against Leascend. If the Court finds amending the judgment is appropriate, Leascend could be found in breach of the Purchase Agreement (PA art. 10.3) in a lawsuit brought by Yuyuling in China because (1) its representation that 35 Info "is free from any mortgages, guarantees, liens, security interests or other encumbrances" was false (PA art. 9.1) and (2) Yuyuling would not have the benefit of the bargain of operating 35 Info as it wishes if 35 Info were a judgment debtor, because that would subject its domain names to seizure and deactivation. If Leascend cannot perform its obligations under the Purchase Agreement, it will be required to either (1) file a lawsuit in China to seek to excuse performance under the Purchase Agreement's force majeure clause (PA,

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

24

art. 12); or (2) unilaterally terminate the Purchase Agreement and be required to pay 35 Info in China a 20% liquidated damages penalty of the 48,238,900 RMB purchase price—approximately $1.3 million (*id.* arts. 6, 10.1). Leascend has repeatedly suggested that, because it is located in China, it is beyond the power of this Court. The threat of these consequences in China if Leascend cannot perform its obligations under the Purchase Agreement is highly probable to prompt Leascend's compliance with this Court's orders even if Leascend falsely believes itself beyond the reach of this Court's authority.

In addition to requesting an OSC, Plaintiffs further request that Mr. Kronenberger be required to immediately serve a copy of the OSC on 35 Info and promptly file a proof of service. Finally, in connection with the OSC, Plaintiffs request the Court issue a briefing schedule allowing Plaintiffs to file their opening brief on June 27, 2025; Leascend and 35 Info to file their opposition on July 25, 2025; Plaintiffs to file their reply brief on August 15, 2025; with the hearing on the OSC scheduled for August 29, 2025. Leascend would thus have almost three months to purge its contempt before the Court acts on the OSC.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiffs request the Court collectively impose the following coercive and compensatory civil contempt sanctions against Leascend by:

1.    levying a $1,000 daily fine until Leascend purges its contempt;

2.    ordering Verisign to deactivate Leascend's .com domain names until Leascend purges its contempt; and,

3.    ordering Leascend and its attorney, Karl Kronenberger, to jointly and severally pay Plaintiffs' reasonable attorneys' fees and costs expended in connection with Leascend's contempt.

Since the transfer of assets to 35 Info was for the fraudulent purpose of escaping liability for Leascend's debts, Plaintiffs further request the Court issue an Order to Show Cause to 35 Info as to why the Court should not amend the judgment to add 35 Info as a judgment debtor

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

DATED: April 22, 2025                    Tucker Ellis LLP


                                         By: /s/David J. Steele
                                             David J. Steele
                                             Howard A. Kroll
                                             Steven E. Lauridsen

                                             Attorneys for Plaintiffs,
                                             META PLATFORMS, INC. (fka
                                             FACEBOOK, INC.) and INSTAGRAM, LLC