TUCKER ELLIS LLP
David J. Steele SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street, Forty-Second Floor
Los Angeles, CA 90071
Telephone:      213.430.3400
Facsimile:      213.430.3409

Attorneys for Plaintiffs,
META PLATFORMS, INC. (fka FACEBOOK, INC.) and
INSTAGRAM, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC, | Case No. 3:19-cv-07071-SI |
| Plaintiffs, | **PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CONTEMPT REMEDIES AGAINST DEFENDANT LEASCEND TECHNOLOGY CO., LTD. FKA XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD.** |
| v. | |
| ONLINENIC INC.; DOMAIN ID SHIELD SERVICE CO., LIMITED; and XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD., | |
| Defendants. | DATE:          May 30, 2025 TIME:          10:00 a.m. CTRM:        1 – 17th Floor |
| | Hon. Susan Illston |

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071   213.430.3400

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

I.      INTRODUCTION. .................................................................................................. 1

II.     LEASCEND'S OPPOSITION IS AN IMPROPER MOTION FOR
        RECONSIDERATION. .......................................................................................... 2

III.    THE REQUESTED COERCIVE REMEDIES REMAIN APPROPRIATE. ....... 4

        A.    Compliance with the Escrow Order is not impossible. ................................... 4

        B.    A $1,000 daily fine is proper and not punitive. ............................................. 6

        C.    Deactivating Leascend's corporate domain names is appropriate. ................. 7

              1.    Leascend.com is controlled by Leascend. ........................................... 7

              2.    The Court has the power to deactivate the domain names. ................. 8

IV.     THE REQUESTED COMPENSATORY SANCTIONS ARE
        APPROPRIATE. ................................................................................................... 10

        A.    Leascend fails to rebut Plaintiffs' showing that it must pay their fees. ........ 10

        B.    Leascend fails to rebut Plaintiffs' showing that Mr. Kronenberger should
              be sanctioned. ............................................................................................... 10

V.      THE ORDER TO SHOW CAUSE TO ADD 35 INFO AS A JUDGMENT
        DEBTOR IS APPROPRIATE. ............................................................................. 12

        A.    An OSC served on 35 Info would not violate due process. .......................... 12

        B.    Plaintiffs have made a prima facie showing of 35 Info's successor
              liability. ......................................................................................................... 14

VI.     CONCLUSION ..................................................................................................... 15

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**Cases**

*Agit Glob., Inc. v. Wham-O, Inc.*
No. 2:09-CV-08133-CAS JC, 2014 WL 1365200 (C.D. Cal. Apr. 7, 2014)......................................... 14

*Arabian Gas & Oil Dev. Co. v. Wisdom Marines Lines, S.A.*
No. 16-CV-03801-DMR, 2017 WL 4390184 (N.D. Cal. Oct. 3, 2017) ................................................ 6

*Bank of New York v. Fremont General Corp.*
523 F.3d 902 (9th Cir. 2008) .................................................................................................................. 13

*Bingham McCutchen LLP v. Shanghai ELE Mfg. Corp.*
No. CV 09-04728 GAF (SSx), 2011 WL 13318955 (C.D. Cal. July 6, 2011) ................................... 15

*Cisco Sys., Inc. v. Wuhan Wolon Commc'n Tech. Co.*
No. 5:21-CV-04272-EJD, 2021 WL 4962661 (N.D. Cal. July 23, 2021) ...................................... 8, 9

*City & Cnty. of San Francisco v. Purdue Pharma L.P.*
491 F. Supp. 3d 610 (N.D. Cal. 2020) ............................................................................................. 12, 13

*Coleman v. Newsom*
131 F.4th 948 (9th Cir. 2025) ................................................................................................................... 7

*Crown Paper Liquidating Tr. v. PricewaterhouseCoopers LLP*
198 F. App'x 597 (9th Cir. 2006) .......................................................................................................... 13

*Epic Games, Inc. v. Apple Inc.*
No. 4:20-CV-05640-YGR, 2025 WL 1260190 (N.D. Cal. Apr. 30, 2025) ...................................... 2, 4

*Farhang v. Indian Inst. of Tech., Kharagpur*
No. C-08-02658 RMW, 2010 WL 2228936 (N.D. Cal. June 1, 2010) ................................................ 12

*In re Acequia, Inc.*
34 F.3d 800 (9th Cir. 1994) ..................................................................................................................... 15

*In re Crown Vantage, Inc.*
No. 02-3836MMC, 2004 WL 1635543 (N.D. Cal. July 12, 2004) ....................................................... 13

*Institute of Cetacean Research v. Sea Shepherd Conservation Society*
714 F.3d 935 (9th Cir. 2014) ..................................................................................................................... 4

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

*Int'l Union, United Mine Workers of Am. v. Bagwell*

  512 U.S. 821 (1994) .................................................................................................. 5, 7

*Mercedes-Benz Grp. AG v. A-Z Wheels LLC*

  No. 16-CV-875 JLS (MDD), 2022 WL 2276907 (S.D. Cal. June 23, 2022) ........................ 9

*Nemetona Trading Ltd. v. Kurt Orban Partners, L.L.C.*

  No. 14-cv-03284-SI, 2015 WL 1967401 (N.D. Cal. May 1, 2015) .................................... 8

*Off. Depot Inc. v. Zuccarini,*

  596 F.3d 696 (9th Cir. 2010) ...................................................................................... 11

*Perry v. O'Donnell*

  759 F.2d 702 (9th Cir. 1985) ...................................................................................... 10

*Rio Props., Inc. v. Rio Int'l Interlink*

  284 F.3d 1007 (9th Cir. 2002) .................................................................................... 14

*S.E.C. v. Hickey*

  322 F.3d 1123 (9th Cir. 2003) ...................................................................................... 8

*Shell Offshore Inc. v. Greenspeace, Inc.*

  815 F.3d 623 (9th Cir. 2016) ........................................................................................ 5

*Shuffler v. Heritage Bank*

  720 F.2d 1141 (9th Cir. 1983) ................................................................................... 5, 6

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*

  No. C 10-3724 CW, 2013 WL 1701737 (N.D. Cal. Apr. 18, 2013) ................................. 12

*UMG Recordings, Inc. v. BCD Music Grp., Inc.*

  No. CV07-05808 SJO FFMX, 2009 WL 2213678 (C.D. Cal. July 9, 2009) ........................ 9

*Valle v. Berryhill*

  No. 16-CV-02358-JSC, 2019 WL 1517103 (N.D. Cal. Apr. 8, 2019) ............................... 10

*Williams-Sonoma, Inc. v. Friendfinder, Inc.*

  No. C06-6572JSW (MEJ), 2007 WL 4973848 (N.D. Cal. Dec. 6, 2007) ........................... 9

*Windsor v. Boushie*

  677 F. App'x 311 (9th Cir. 2017) ................................................................................. 14

TUCKER ELLIS LLP

515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

*Woodhouse v. United States Gov't*

    No. 2:21-CV-06372-SB, 2021 WL 6333468 (C.D. Cal. Nov. 24, 2021) ................................ 14

**Statutes**

Cal. Civ. Code §§ 3439.04(b)(1)-(11) ....................................................................... 14, 15

Cal. Evid. Code § 622 .............................................................................................. 12

Civil Local Rule 7-9(b)(1)-(3) ..................................................................................... 4

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CONTEMPT REMEDIES
Case No. 3:19-cv-07071-SI

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION.**

On April 4, 2025, the Court found Defendant Leascend Technology Co., Ltd. fka Xiamen 35.Com Internet Technology Co., Ltd. ("Leascend") in contempt of court and ordered Plaintiffs to file a motion for contempt remedies. ECF No. 460 ("Contempt Order") at 8:25-27. Accordingly, Plaintiffs moved for coercive and compensatory sanctions in the form of daily fines, the temporary deactivation of certain domain names, reimbursement of Plaintiffs' attorneys' fees related to the contempt proceedings,[1] and the issuance of an order to show cause as to why Xiamen 35.Com Information Co., Ltd. ("35 Info") should not be added as a judgment debtor. ECF Nos. 466, 467-4 ("Remedies Mot.").

Continuing to improperly multiply these proceedings (see Remedies Mot. at 17-20), Leascend and its counsel spend much of their opposition brief (ECF No. 471 ("Opp.")) retreading old ground. Leascend once again challenges the propriety of the Court's Contempt Order, raising arguments previously considered and rejected by this Court: (1) 35 Info was sold on December 5, 2024[2] (Opp. at 6:23-25), making compliance with the December 20, 2024, Order (ECF No. 420 ("Escrow Order")) impossible; (2) Leascend and its counsel made "good faith efforts . . . to comply with the [Escrow] Order and applicable laws in both China and the U.S." (Opp. at 3:12-13); (3) Leascend sold 35 Info because it relied on a term in a settlement proposal (id. at 1:13-14); and (4) contempt is an improper method to collect on a judgment (id. at 1:6-7).[3] Leascend concludes that Meta's motion should be denied because "[c]ontempt is improper to punish Leascend in this situation, and compliance would be impossible." Id. at 3:9-10. Since these issues have already been decided by this Court, Leascend's opposition is essentially a motion

---

[1] As part of the request for attorneys' fees, Plaintiffs argued that Leascend's counsel, Karl Kronenberger, should be jointly and severally liable for any fee award. Mr. Kronenberger has acted in bad faith and unreasonably multiplied these proceedings by making reckless misrepresentations to this Court and frivolous arguments without conducting even the most basic due diligence.

[2] The Court found that "Leascend provided documentation to plaintiffs that purports to show the sale was effectuated on December 23, 2024." Contempt Order at 3:27-28. Leascend's opposition ignores the relevance of that date, when the Property Transfer Agreement was signed. ECF No. 458-2 ("PA") at 11.

[3] The Escrow Order was a prejudgment remedy designed to ensure that the impending judgment would be satisfied by Leascend. The Contempt Order seeks to enforce that prejudgment remedy. The contempt remedies proposed by Meta do not compel Leascend to pay the judgment, only to comply with the Escrow Order.

for reconsideration of the Escrow Order and Contempt Order and should be rejected by the Court.

Leascend's new arguments do not fare better. Leascend now additionally argues that compliance with the Escrow Order is impossible because Leascend cannot go back in time to deposit $5.5 million into escrow by January 31, 2025. Opp. at 1:16-23, 13:11-12, 15:27-16:12. This hypertechnical interpretation runs contrary to the spirit and purpose of the Escrow Order and should be rejected. *See Epic Games, Inc. v. Apple Inc.*, No. 4:20-CV-05640-YGR, 2025 WL 1260190, at *34 (N.D. Cal. Apr. 30, 2025) (rejecting a "dubiously literal interpretation of the injunction, particularly where that interpretation is designed to evade the injunction's goals").

Despite having been held in civil contempt, Leascend further argues that no contempt remedies are appropriate. The Court should not countenance this inequitable result. Daily fines and the deactivation of Leascend's corporate domain names[4] are appropriate coercive contempt sanctions in light of Leascend's flagrant disregard for this Court's authority. Moreover, Leascend fails to rebut Plaintiffs' showing that compensatory sanctions in the form of attorneys' fees are appropriate. Additionally, because 35 Info appears to be the successor in interest to Leascend's registrar business, it is appropriate to issue an order to show cause why 35 Info should not be added as a judgment debtor.

Finally, in its opposition, Leascend requests a stay of contempt proceedings pending appeal. Opp. at 11:25-12:2. In addition to the failure to file a properly noticed motion, Leascend's request for a stay pending appeal neither articulates the standard nor makes any effort to meet it. As such, the Court should reject Leascend's procedurally improper and unsupported request for a stay and grant Meta's motion for coercive and compensatory sanctions.

## II. LEASCEND'S OPPOSITION IS AN IMPROPER MOTION FOR RECONSIDERATION.

Throughout its opposition, Leascend repeatedly reargues the propriety of the Escrow Order and the Contempt Order, including whether compliance was impossible and whether Leascend took all reasonable steps to comply. These issues have already been considered and rejected by this Court.

---

[4] Leascend misleads the court again by claiming that it does not "own or use" the domain name leascend.com. This domain name, however, incorporates Leascend's identical trademark and is currently used to advertise Leascend's solar energy products. Despite Leascend's claims, it appears that leascend.com is operated by a subsidiary of Leascend. Declaration of Mai Ming Hui ("Hui Decl.") ¶¶ 4-6.

2

TUCKER ELLIS LLP

515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

Leascend continues to argue that compliance with the Escrow Order is impossible because 35 Info was sold prior to entry of the Escrow Order: "[T]he Order prohibited the sale of the registrar business . . . which is impossible as the sale had already occurred." Opp. at 1:20-22; *see also id.* at 9:7-17, 16:1-12. The Court did not accept this argument, noting Leascend's "backtrack[ing]" and finding Leascend in civil contempt. Contempt Order at 3:22-28; 9:2-4.

Leascend also argues at length that Chinese law makes it impossible to comply with the Court's Escrow Order: "Leascend submitted an application for outward remittance to transfer $5.5 million overseas to a U.S. account, but the application was denied under China's foreign exchange control policies." Opp. at 8:24-9:1. Again, the Court already considered and rejected this argument. C*ompare* Opp. at 2:24-27, 8:24-9:20, 113:6-12, 16:25-17:2, 19:24-20:2 *with* Contempt Order at 6:8-8:16.

Attempting to justify the sale of 35 Info in violation of the Escrow Order, Leascend argues again that Plaintiffs "demanded" Leascend exit the domain name business pursuant to settlement negotiations: "Meta previously demanded, as a term of potential settlement, that Leascend sell that business by January 2025." Opp. at 1:13-14. Leascend's excuse for selling 35 Info in violation of the Escrow Order is nothing new and misrepresents the settlement negotiations between the parties.[5] Leascend already raised this false argument in opposing the Escrow Order, even going so far as to quote the same provision from the draft settlement proposal. *Compare* Opp. at 5:3-13 *with* ECF No. 415 ("TRO Opp.") at 4:16-5:1; *see also* Opp. at 1:13-15, 2:19-22, 4:15-12:21, 7:10-12, 8:5-13, 24:18-23 (repeated arguments concerning propriety of sale based on prior settlement discussions). The Court rejected this argument at the hearing. TRO Hr'g Tr. at 3:17-6:15, 15:2-19, 19:8-24.

Finally, Leascend argues that Meta's motion for contempt remedies is "trying to bypass collection

---

[5] There is no dispute that the parties never executed a settlement agreement. Plaintiffs are mindful of the Court's prior admonition regarding the disclosure of settlement communications. *See* ECF No. 423 ("TRO Hr'g Tr.") at 15:4-5 ("I ought not be privy to who says what about what the settlement terms are or are not."). However, the record must now be corrected. Leascend and Mr. Kronenberger misleadingly assert that Plaintiffs "demanded" Leascend sell 35 Info. Declaration of Howard A. Kroll ("Kroll Decl.") ¶ 4. In fact, Leascend "independently" decided to exit the domain name registration business, as it represented and warranted in the draft settlement agreement. *Id.* Moreover, Mr. Kronenberger omits that Plaintiffs' counsel specifically explained, "We have always told you that the sale of [35 Info] cannot happen until there is a settlement." *Id.* ¶ 8.

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

procedures" Opp. at 1:6-7. *See also* Opp. at 2:2-4, 2:23-24, 14:8-19, 25:16-18. But Leascend previously argued in its opposition to the motion for contempt that Plaintiffs were trying to bypass ordinary judgment collection procedures. ECF No. 432 ("Contempt Mot. Opp.") at 1:17-18; ECF No. 464 ("Apr. 4 Contempt Hr'g Tr.") at 17:6-18:10. Despite Leascend's argument, the Court found Leascend in contempt.

The Court should reject Leascend's thinly disguised attempts to convince this Court to reconsider its prior orders. In this district, a party cannot seek leave to move for reconsideration of an order absent (1) a material difference in fact or law from what was before the Court that could not have been known earlier despite the exercise of reasonable diligence; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments previously presented to the Court. Civil Local Rule 7-9(b)(1)-(3). And any motion for leave to seek reconsideration that repeats any previously made arguments subjects the filing attorney to sanctions. *Id.* at 7-9(c). Here, the law and facts were not only previously available to Leascend but were already rejected by this Court. These portions of Leascend's opposition should either be disregarded or stricken.

## III.   THE REQUESTED COERCIVE REMEDIES REMAIN APPROPRIATE.

### A.    Compliance with the Escrow Order is not impossible.

There is no dispute that "Leascend did not deposit the $5.5 million into a U.S. escrow account by the [January 31, 2025] deadline *(and still has not done so)*." Contempt Order at 3:16-17 (emphasis added). In its present opposition to contempt remedies, Leascend argues the January 31, 2025 deposit deadline has passed and is therefore impossible to comply with. This hypertechnical interpretation of the Escrow Order is contrary to the spirit of the order and should be rejected.

The Ninth Circuit has held "it is proper to observe the objects for which the relief was granted and to find a breach of the decree in a violation of the spirit of the injunction, even though its strict letter may not have been disregarded." *Institute of Cetacean Research v. Sea Shepherd Conservation Society*, 714 F.3d 935, 949 (9th Cir. 2014). Thus, "other courts within this and other circuits will look to the spirit of the injunction when a litigant applies a dubiously literal interpretation of the injunction, particularly where that interpretation is designed to evade the injunction's goals." *Epic Games,* 2025 WL 1260190, at *34. Here, the goal of the Escrow Order is clear: Leascend was to deposit $5.5 million into a United States escrow account "to be security to satisfy any judgment issued by the Court."

4

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

Escrow Order ¶ 1; *see also* TRO Hr'g Tr. at 10:9-14 ("[T]he Court has found that Meta is entitled to somewhere south of $5.5 million, and it's my plan to make it as possible for that to be realized as I can. And so I am inclined to disallow anything that's going to make that impossible . . . ."). While the Court did set a compliance deadline, nothing in the record supports the conclusion that the Escrow Order would extinguish once that deadline passed. Quite the opposite: the Court continues to conduct contempt proceedings based on Leascend's failure to deposit the funds. Under Leascend's logic, the Court could never order contempt sanctions for a litigant's failure to meet a deadline, and a litigant need only outwait deadlines to evade the Court's authority. This is an untenable result that would undermine countless court orders.

Leascend provides no on-point authority in support of its frivolous argument. Instead, the cases Leascend cites merely stand for the generic proposition that coercive sanctions are mooted when there is nothing left to coerce. Opp. at 13:28-20:7 (citing *Shell Offshore Inc. v. Greenspeace, Inc.*, 815 F.3d 623, 630-31 (9th Cir. 2016); *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983)). In *Shell Offshore*, the district court entered an injunction prohibiting specific conduct during a specific period of time, i.e., preventing Greenpeace activists from interfering with Shell's offshore drilling operations for the Summer 2015 drilling season. 815 F.3d at 627-28. The injunction expired by its own terms on November 1, 2015. *Id.* at 628. Shell did not seek to renew the injunction because, as of September 2015, it planned to cease offshore drilling in the area for the foreseeable future. *Id.* Although Greenpeace violated the injunction while it was in effect, the Ninth Circuit determined that, once the preliminary injunction expired, there was no conduct to coerce. *Id.* at 630. Thus, sanctions in the form of fines would become retrospective punitive sanctions if levied after November 1, 2015. *Id.* at 630-31 (citing *Bagwell*, 512 U.S. at 829 ("When a contempt involves the prior conduct of an isolated, prohibited act, the resulting sanction has no coercive effect.")). Here, unlike in *Shell Offshore*, there is no isolated act prohibited only during a specific timeframe. Leascend is not being sanctioned for past violations of an expired order but instead to secure compliance with a continuing obligation to deposit funds into escrow.

Similarly, in *Shuffler*, the Court ordered the Shufflers to allow Heritage Bank to foreclose on two properties and subsequently imposed coercive fines until the Shufflers complied. 720 F.2d at 1148. The Ninth Circuit determined that the "sole coercive purpose of the civil contempt order was satisfied" when

5

TUCKER ELLIS LLP

515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

the Shufflers negotiated the release of a bankruptcy stay. *Id.* Since Heritage could begin foreclosure proceedings, it would not be proper to continue to fine the Shufflers until the foreclosure was completed given the sole purpose of the sanctions "was intended to compel the Shufflers *to let* Heritage foreclose." *Id.* (emphasis added). Unlike in *Shuffler*, Leascend does not contend that the objective of the Escrow Order has been satisfied. Rather, Leascend asserts that even though it ignored the Court's Escrow Order, once the compliance deadline passed, any coercive sanctions are now moot.

The spirit of the Escrow Order is the same as it has always been—namely, for Leascend to deposit $5.5 million into escrow as security to satisfy any judgment. It is therefore appropriate to impose coercive sanctions until Leascend deposits the funds as ordered, regardless of the date by which it does so.

## B. A $1,000 daily fine is proper and not punitive.

Plaintiffs request the Court impose a $1,000 daily fine to coerce Leascend to comply with the Escrow Order. In its opposition, Leascend fails to show that it lacks the financial resources to pay a daily fine of $1,000 or that such a fine would be ineffective to coerce compliance. *See, e.g., Arabian Gas & Oil Dev. Co. v. Wisdom Marines Lines, S.A.*, No. 16-CV-03801-DMR, 2017 WL 4390184, at *6 (N.D. Cal. Oct. 3, 2017). Instead, Leascend seems to suggest that daily fines would be punitive because Leascend cannot (or will not) ever comply with the Court's order.

Leascend asserts that a fourteen-day stay before fines are imposed "does not remedy the complex issues of international money transfers and Chinese regulations, where the total fines will be severe and excessive given that there is no end date for the sanctions (as Leascend cannot unsell the subsidiary)." Opp. at 16:27-17:2. Leascend seems to conflate the two separate components of the Court's Escrow Order. Leascend need not "unsell" 35 Info in order to purge its contempt. Rather, Leascend must escrow $5.5 million as previously ordered.[6]

Significantly, the Court already considered and rejected Leascend's arguments that a transfer of funds from China to the United States is impossible. Contempt Order at 5:28-8:11. Leascend has been on

---

[6] It is worth noting that the Court afforded Leascend the opportunity to escrow $5.5 million *specifically* to avoid interfering with the sale of 35 Info. TRO Hr'g Tr. at 15:13-23. Leascend was given over a month to escrow these funds but made only one purported attempt to do so. Plaintiffs moved for an order holding Leascend in contempt based on Leascend's failure to escrow any funds and not based on its sale of 35 Info.

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

notice since December 20, 2024, that it must escrow these funds. Over 145 days have since passed without any reasonable attempt by Leascend to comply with the Escrow Order. Because Leascend would be able to purge—or even avoid—daily fines, the imposition of such fines is an appropriate coercive contempt remedy. *See Coleman v. Newsom*, 131 F.4th 948, 962–63 (9th Cir. 2025) ("[A daily fine] is fundamentally coercive and civil because, so long as 'the jural command is obeyed, the future, indefinite, daily fines are purged.'" (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994))).

## C.    Deactivating Leascend's corporate domain names is appropriate.

### 1.    Leascend.com is controlled by Leascend.

In its opposition, Leascend refers to leascend.com as one of "Leascend's corporate .com domain names." Opp. at 15:2-3. Despite this admission, Leascend makes the incredible claim that it "does not even own or use" the domain name leascend.com. Opp. at 17:19. Leascend misleadingly fails to inform the Court that leascend.com (1) is used to promote Leascend's solar energy products, and (2) appears to be operated by a subsidiary of Leascend.

Historic WHOIS records for leascend.com show that it was acquired on January 13, 2023, by a registrant in Meishan, Sichuan, China with Xiamen 35.com Technology Co., Ltd. (nka Leascend) as the registrar. Kroll Decl., ¶ 10, Ex. 1. The current WHOIS record shows 35 Info as the registrar, but does not identify the registrant's name, address, or contact information.[7] *Id*. ¶ 11, Ex. 2. Nevertheless, sufficient evidence exists to demonstrate leascend.com is ultimately under Leascend's control. For example, Leascend's corporate website available at www.leasdgrp.com describes Leascend's "solar photovoltaic heterojunction cell production line" and provides a link to leascend.com. ECF No. 466-2 (Guye Decl. ¶¶ 4-5, Exs. 3-4). And according to the "About Us" webpage available at leascend.com, "Liansheng Photovoltaic Technology Co., Ltd. is controlled by Liansheng Technology (300051)." *Id*. ¶ 5, Ex. 4. "Liansheng Technology" is the Chinese name of Leascend—when Leascend changed its name, it selected

---

[7] 35 Info's failure to input registrant data violates its obligations pursuant to ICANN's rules. *See* ICANN, Temporary Specification for gTLD Registration Data, Interim Registration Data Policy, and Registration Data Policy, available at https://www.icann.org/resources/pages/gtld-registration-data-specs-en/#temp-spec; https://www.icann.org/en/contracted-parties/accredited-registrars/interim-registration-data-policy-for-gtlds-15-05-2019-en; and, https://www.icann.org/en/contracted-parties/consensus-policies/registration-data-policy (respectively establishing minimal collection and publication requirements for registrant data).

the English name "Leascend." *See* ECF No. 379-2 at 7. As further proof that they are one and the same company, Leascend's stock code, 300051, is the same as Liansheng Technology's. *Id.* at 6.

In a further effort to distance itself from leascend.com, Leascend claims that the website "publicly shows a third-party logo" (Opp. at 4:12-13), which is "LPV HJT" (Li Decl. ¶ 7). Leascend fails to disclose, however, that the LPV HJT trademark is registered in the name of Meishan Liansheng Photovoltaic Technology Co., Ltd. ("LPV"). Hui Decl. ¶ 4, Ex. 2. LPV is owned by Tianjin Liansheng Technology Co., Ltd. ("TLT"), which in turn is owned by Leascend. *Id.* ¶ 5. Exs. 3, 4. Based on "publicly available records and the website at leascend.com, it appears likely that Leascend has an interest in the company operating the website available at leascend.com." *Id.* ¶ 6. Moreover, Leascend owns several trademarks in China for LEASCEND and its stylized logo, including one trademark for use in connection with "solar power." *Id.* ¶ 3, Ex. 1. Rather than explain in detail why a purported "third party" owns and uses a domain name identical to Leascend's trademark to sell Leascend's solar energy products, Leascend misleadingly states that it does not "own or use" the domain name.

Even if a third party holds leascend.com in name, an asset freeze may still extend to non-parties. *See, e.g., S.E.C. v. Hickey*, 322 F.3d 1123, 1133 (9th Cir. 2003) ("[T]he inherent equitable power of a district court allows it to freeze the assets of a nonparty when that nonparty is dominated and controlled by a defendant against whom relief has been obtained in a securities fraud"); *Cisco Sys., Inc. v. Wuhan Wolon Commc'n Tech. Co.*, No. 5:21-CV-04272-EJD, 2021 WL 4962661, at *9 (N.D. Cal. July 23, 2021) ("The Court's authority is not limited to freezing specific identified assets, nor to assets within this District or the U.S., and can extend to banks and other non-parties that have custody of Wolon's assets or provide payment services to Wolon."). Leascend's bare and deceptive assertion that it does not own leascend.com is thus insufficient to disempower the Court.

### 2. The Court has the power to deactivate the domain names.

Leascend argues that the deactivation of its corporate domain names (leascend.com and leasdgrp.com) is an inappropriate contempt sanction because the domain names "do not relate to the issues." Opp. at 17:18. However, this Court has "broad equitable power to order appropriate relief in civil contempt proceedings." *Nemetona Trading Ltd. v. Kurt Orban Partners, L.L.C.*, No. 14-cv-03284-SI, 2015 WL 1967401, at *2 (N.D. Cal. May 1, 2015). Leascend cannot dispute that this Court is empowered

TUCKER ELLIS LLP

515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

to freeze assets, including domain names, to ensure an eventual judgment may be satisfied. *See Williams-Sonoma, Inc. v. Friendfinder, Inc.*, No. C06-6572JSW (MEJ), 2007 WL 4973848, at *10 (N.D. Cal. Dec. 6, 2007). Nor can Leascend dispute that this Court is empowered to deactivate websites to stop continuing unlawful conduct. *Cisco*, 2021 WL 4962661, at *11 (collecting cases).

Instead, Leascend argues these cases are distinguishable because Leascend is not operating its corporate domain names to "accomplish infringement." Opp. 17:21-18:19. In truth, Leascend's conduct is much more serious. Leascend flouted the Court's Escrow Order and has been held in civil contempt. Moreover, by dissipating its U.S.-based assets, Leascend hopes to deprive Plaintiffs of any remedy for either the underlying claims at issue or the substantial attorneys' fees incurred in litigating this case. And while Leascend further argues this case is distinguishable because Leascend has sufficient remaining assets to satisfy the judgment (Opp. at 18:20-26), it has become clear that Leascend does not intend to comply with the Escrow Order. This leaves limited options to exert the necessary pressure to coerce Leascend's compliance. The cases Plaintiffs cited, taken together, support the deactivation of Leascend's corporate domain names as a coercive sanction.

Finally, Leascend argues that Plaintiffs' request to deactivate Leascend's corporate domain names is an improper means of collecting the judgment. Opp. at 18:7-13, 18:27-19:13. According to Leascend, levying on its corporate domain names would raise "unique issues" relating to its trademark rights in LEASCEND and the appropriateness of this forum. *Id.* at 19:5-12. Leascend's concerns are exaggerated and irrelevant. Plaintiffs do not request a levy on Leascend's corporate domain names, but instead for this Court to order their temporary deactivation as a coercive contempt sanction. This Court is empowered to affect Leascend's property, even if located out-of-state. *See UMG Recordings, Inc. v. BCD Music Grp., Inc.*, No. CV07-05808 SJO FFMX, 2009 WL 2213678, at *4 (C.D. Cal. July 9, 2009) ("When a court has personal jurisdiction over an individual defendant, it also has jurisdiction over the defendant's property."). Leascend can purge or even avoid this sanction (and any resulting harm to the goodwill of its LEASCEND trademark) by complying with the Escrow Order.

While deactivating Leascend's domain names may be a "creative, non-traditional sanction" (*Mercedes-Benz Grp. AG v. A-Z Wheels LLC*, No. 16-CV-875 JLS (MDD), 2022 WL 2276907, at *2 (S.D. Cal. June 23, 2022), such a remedy is necessary in light of Leascend's determined efforts to flout

9

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

this Court's authority.

## IV.    THE REQUESTED COMPENSATORY SANCTIONS ARE APPROPRIATE.

### A.    Leascend fails to rebut Plaintiffs' showing that it must pay their fees.

Leascend does not dispute that "[i]t is well-established that attorneys' fees are awarded as compensatory damage to the prevailing party in a civil contempt motion." *Valle v. Berryhill*, No. 16-CV-02358-JSC, 2019 WL 1517103, at *3 (N.D. Cal. Apr. 8, 2019). Instead, Leascend asserts that a Court must first find willfulness before it can award attorneys' fees as a compensatory sanction. But Leascend does not cite any authority in support, and only attempts to distinguish *Perry v. O'Donnell* by asserting that the conduct in that case was far more egregious than Leascend's own conduct here. Opp. at 19:21-25. However, Leascend ignores that *Perry* expressly states: "We hold that civil contempt need not be willful to justify a discretionary award of fees and expenses as a remedial measure." *Perry v. O'Donnell*, 759 F.2d 702, 704 (9th Cir. 1985). Even if willfulness were a factor, the Court has already rejected Leascend's "non-willfulness" argument that its "conduct arose from legitimate disputes over the [Escrow] Order and cross-border banking complexities." Opp. at 19:26-20:2; *see also* Contempt Order at 3:16-21, 6:5-8:11.

 Leascend also argues that Plaintiffs' "fees and costs … were not reasonable where they knew that compliance was not possible." Opp. at 20:7-9. But again, the Court already rejected Leascend's impossibility defense. Contempt Order at 8:6-16. Leascend has offered nothing to rebut Plaintiffs' showing that they should be awarded their reasonable attorneys' fees and costs.

### B.    Leascend fails to rebut Plaintiffs' showing that Mr. Kronenberger should be sanctioned.

Leascend also fails to rebut Plaintiffs' showing that its counsel should be sanctioned. Leascend does not dispute that an attorney can be sanctioned for recklessly misleading the Court or for recklessly raising frivolous arguments that multiply the proceedings, the latter of which constitutes bad faith. *See* Remedies Mot. at 17:4-26. Nor does Leascend dispute that arguments made without a reasonable and competent inquiry are frivolous. *See id.*

Leascend's only attempted justification for its counsel's conduct is that the December 20, 2024, hearing involved "complex issues" and was held on shortened notice. Opp. at 21:2-10. While exigency may justify an attorney's greater reliance on client statements and information then available, it does not

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

afford a blanket excuse to neglect subsequent due diligence. Leascend has not explained how a shortened time to prepare for one hearing justifies failing to perform due diligence in the following months.

For instance, Mr. Kronenberger does not explain why he made repeated, inconsistent representations concerning the sale of 35 Info without reviewing any of the underlying documents relating to the sale. *Compare* Remedies Mot. at 7:18-9:7 (highlighting admissions that misrepresentations made **since December 20** were made without obtaining, let alone reviewing, pertinent documents) *with* Opp. at 10:1-11 (asserting exigency in preparing for December 20 hearing without justifying lack of due diligence in the months following December 20 hearing). In fact, Mr. Kronenberger did not even attempt to obtain these documents for almost three more months until the Court ordered him to do so. ECF No. 447 ("Mar. 14 Contempt Hr'g Tr.") at 9:8-17. Undeterred, Mr. Kronenberger continues to maintain that 35 Info was sold on December 5, 2024 (Opp. at 6:23-25, 9:2-20), despite the record evidence and this Court's express findings to the contrary. Contempt Order at 3:22-28; PA at 11.

Mr. Kronenberger also fails to explain his ever-shifting representations concerning Leascend's ability to transfer funds through Hong Kong. Mr. Kronenberger originally represented at the December 20, 2024, hearing that Leascend planned to transfer settlement funds via Hong Kong after the sale of 35 Info. TRO Hr'g Tr. at 17:18-18:4. When Leascend failed to transfer funds pursuant to the Escrow Order in this manner, Mr. Kronenberger explained that transferring money through Hong Kong was never possible because Leascend did not have any connection to Hong Kong. Contempt Order at 7:22-26. Mr. Kronenberger has again pivoted on this point, now asserting for the first time that Leascend planned to send the funds "from an account in Hong Kong owned by a financing partner of Leascend" but that those "efforts" inexplicably "failed." Opp. at 11:1-8.

Further, Mr. Kronenberger does not explain his previous inaccurate assertions that "there are no U.S.-based assets." Apr. 4 Contempt Hr'g Tr. at 21:17-20. Mr. Kronenberger instead backtracks on his misrepresentation by simply stating he "believed that to be true when he made the comment." Opp. at 10:15-16. The facts and law confirm that .com and .net domain names, registered using VeriSign, Inc. as the registry, constitute U.S.-based assets. *Off. Depot Inc. v. Zuccarini*, 596 F.3d 696, 699, 702 (9th Cir. 2010). Mr. Kronenberger's "belief" is questionable and falls far short of due diligence.

In fact, Mr. Kronenberger continues to make misrepresentations and raise frivolous arguments in

TUCKER ELLIS LLP

515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

11

Leascend's opposition. For example, Mr. Kronenberger inexplicably asserts that Leascend accepted service of the Second Amended Complaint. Opp. at 2:27-3:2. This is false. First, the Chinese Central Authority provided Plaintiffs proof of service documents showing that it served Leascend. Notably, the proof of service affirmatively states that the documents were personally served as opposed to having been voluntarily accepted. Kroll Decl. ¶ 12, Ex. 3 §§ 1(a), (c) (box checked indicating service and not voluntary acceptance of service). Moreover, Leascend made a binding factual admission that it was served. *See* ECF No. 165 at 1:6-7 ("WHEREAS, Plaintiffs served the SAC on 35.CN on or around August 17, 2021 with the exact date of service still unknown at this time."); Cal. Evid. Code § 622 (2024).

In sum, Leascend fails to rebut Plaintiffs' showing that Mr. Kronenberger should be jointly and severally liable for Plaintiffs' attorneys' fees related to these contempt proceedings.

# V.    THE ORDER TO SHOW CAUSE TO ADD 35 INFO AS A JUDGMENT DEBTOR IS APPROPRIATE.

Leascend claims that adding 35 Info as a judgment debtor violates due process because 35 Info has not had notice and an opportunity to be heard and the Court lacks jurisdiction over 35 Info. Opp. at 23:16-28. These objections are without merit.  The issuance of an OSC to be served by Leascend's counsel ensures that due process is satisfied. Moreover, Plaintiffs' prima facie showing of successor liability as to 35 Info is sufficient to establish personal jurisdiction at this time. *See City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 644 (N.D. Cal. 2020).

## A.    An OSC served on 35 Info would not violate due process.

Leascend asserts that adding 35 Info as a judgment debtor violates due process because this Court lacks jurisdiction over 35 Info and because 35 Info would not be provided notice and an opportunity to be heard. Opp. at 22:24-23:28. As an initial matter, Leascend may not object to the exercise of personal jurisdiction or the sufficiency of service of process on 35 Info's behalf. *See U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. C 10-3724 CW, 2013 WL 1701737, at *1 (N.D. Cal. Apr. 18, 2013) ("Even if [plaintiff] had not alleged facts sufficient to make a prima facie showing of personal jurisdiction, this defense can be raised only by [proposed defendant], which may instead choose to waive any such defect."); *Farhang v. Indian Inst. of Tech., Kharagpur*, No. C-08-02658 RMW, 2010 WL 2228936, at *5 (N.D. Cal. June 1, 2010) (rejecting defendant's attempt to raise insufficient service of process on behalf

TUCKER ELLIS LLP

515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

12

of unserved defendants based on lack of standing).  Regardless, if the Court ultimately finds that 35 Info is the successor of Leascend,[8] the Court will have personal jurisdiction over 35 Info. "Personal jurisdiction over a successor company exists where (i) the court would have had personal jurisdiction over the predecessor and (ii) the successor company effectively assumed the subject liabilities of the predecessor." *Purdue Pharma*, 491 F. Supp. 3d at 644. Both requirements are met here, where this Court has found (several times) that it has personal jurisdiction over Leascend, *see, e.g.,* Contempt Order at 5:2-25, and Plaintiffs have made a prima facie showing that 35 Info is Leascend's successor. *See* § V.B., *infra*; *see also* Remedies Mot. at 20:4-25:14.

As to notice, Leascend cannot dispute that 35 Info, when it was created as a wholly owned subsidiary of Leascend, had notice of these proceedings. Indeed, Zhang Weiwei, the legal representative of 35 Info when this Court issued its TRO, has participated in these proceedings since 2023 when Leascend first appeared. *See* ECF No. 174-1 (Motion to Dismiss Decl.); PA at 2 (signing as 35 Info's legal representative); *Bank of New York v. Fremont General Corp.*, 523 F.3d 902, 911 (9th Cir. 2008) ("Generally, the knowledge of a corporate officer within the scope of his employment is the knowledge of the corporation.") (citation omitted). 35 Info's knowledge of these proceedings remains imputed even after a change in ownership. *See In re Crown Vantage, Inc.*, No. 02-3836MMC, 2004 WL 1635543, at *5 (N.D. Cal. July 12, 2004), *aff'd sub nom. Crown Paper Liquidating Tr. v. PricewaterhouseCoopers LLP*, 198 F. App'x 597 (9th Cir. 2006) ("Where courts have considered this question, they have found that a corporation retains its imputed knowledge even after a change in ownership.").

Moreover, any concerns regarding adequate notice of the OSC are alleviated by requiring Mr. Kronenberger to serve 35 Info with a copy of the OSC. To satisfy due process, the method of service

---

[8]  In its opposition, Leascend seems to conflate the requirements for alter ego liability and successor liability. *See* Opp. at 23:9-17. Plaintiffs need not prove alter ego liability as to 35 Info to add it as a judgment debtor. "Regarding the alter ego prong [under Cal. Civ. Proc. Code § 187], courts can be flexible about the alter ego requirement if strict adherence to alter ego requirements would produce an inequitable result. The greatest liberality is to be encouraged in the allowance of such amendments in order to see that justice is done." *Moonbug Ent. Ltd. v. BabyBus (Fujian) Network Tech. Co.*, No. 21-CV-06536-EMC, 2025 WL 445801, at *2 (N.D. Cal. Feb. 10, 2025). 35 Info's status as a successor provides a viable basis for adding 35 Info as a judgment debtor. *Cf. Successor Agency to Former Emeryville Redevelopment Agency v. Swagelok Co.*, 364 F. Supp. 3d 1061, 1078 (N.D. Cal. 2019) (recognizing alter ego and successor liability theories as "alternative" bases for asserting personal jurisdiction).

TUCKER ELLIS LLP

515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016-17 (9th Cir. 2002). Mr. Kronenberger's client, Leascend, a Chinese company, is the former parent and former sole shareholder of 35 Info, another Chinese company. While 35 Info may have been sold, it still maintains the same fax number and office address, which is located in a building owned by Leascend. ECF No. 467-5 ¶ 14; ECF Nos. 300-10, 300-11, 300-12. At least one key employee of 35 Info, Sun Yifang (General Manager and Legal Representative), has continued her employment even after the sale of 35 Info to Yuyuling. Remedies Mot. at 7:6-12. Finally, the Purchase Agreement governing the sale of 35 Info identifies "designated addresses" for service of documents "throughout the signing, performance, and any legal proceedings related to this Agreement." PA, art. 15.2. In light of his client's extensive connections with 35 Info, and the ease with which Mr. Kronenberger could utilize those connections, Mr. Kronenberger is best positioned to apprise 35 Info of the OSC.

Finally, with respect to 35 Info's opportunity to be heard, allowing 35 Info to separately oppose its successor liability through written submissions and at a hearing ensures due process will be satisfied. *See Woodhouse v. United States Gov't*, No. 2:21-CV-06372-SB, 2021 WL 6333468, at *3 (C.D. Cal. Nov. 24, 2021) ("A court may satisfy this due process requirement by allowing a party to be heard either through a 'written submission' or at 'an oral or evidentiary hearing.'") (citing *Windsor v. Boushie*, 677 F. App'x 311, 312 (9th Cir. 2017)).

**B.     Plaintiffs have made a prima facie showing of 35 Info's successor liability.**

Leascend disputes that the "badges of fraud" outlined in Cal. Civ. Code §§ 3439.04(b)(1)-(11) support successor liability as to 35 Info. These factors, however, need not be "satisfied" in order for a court to find successor liability. Where, as here, Plaintiffs assert that Leascend's assets were transferred to a successor for the fraudulent purpose of escaping liability, consideration of the badges of fraud have been found persuasive. *See, e.g., Agit Glob., Inc. v. Wham-O, Inc.*, No. 2:09-CV-08133-CAS JC, 2014 WL 1365200, at *6 n.8 (C.D. Cal. Apr. 7, 2014). Still, Leascend's arguments with respect to the badges of fraud are unpersuasive and, in some instances, plainly false.

First, Leascend asserts that the transfer was not concealed because the auction of 35 Info was disclosed in Leascend's public filings and discussed by the parties in settlement discussions. Opp. at

TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071   213.430.3400

24:19-24. While Plaintiffs knew Leascend *intended* to sell its subsidiary, Leascend did not disclose and in fact concealed the actual transfer from Plaintiffs and the Court. *See* Kroll Decl. ¶¶ 6-8.

Second, Leascend claims that it did not transfer substantially all of its assets, and, relatedly, that it still has "significant assets" (Opp. at 25:2) to "cover a judgment" (*id.* at 25:16). However, transferring substantially all *recoverable* assets is sufficient to demonstrate this factor. *See Bingham McCutchen LLP v. Shanghai ELE Mfg. Corp.*, No. CV 09-04728 GAF (SSx), 2011 WL 13318955, at *5 (C.D. Cal. July 6, 2011) ("[B]ecause Shanghai transferred the only property that Bingham could recover to satisfy its judgment, the Court finds that this factor also supports finding fraudulent intent.").

Third, Leascend argues that neither 35 Info nor Yuyuling agreed to accept liability "relating to this matter." Opp. at 25:10-13 (citing Li Decl. ¶ 5). However, the Purchase Agreement indicates "all existing debts and claims of [35 Info] shall remain with [35 Info] after the Closing Date." PA, art 8.1. If, as Leascend suggests, any liability relating to this matter was carved out upon the transfer of Leascend's registrar business assets, no document reflecting that fact has been provided by Leascend.

Fourth, Leascend argues that it began transferring assets to 35 Info in 2023 and thus "before the debt was incurred by the judgment." Opp. at 25:3-4. Even taken as true, the transfer of assets occurred after Leascend was served with the Second Amended Complaint. *See* Cal. Civ. Code § 3439.04(b)(4). Significantly, this argument ignores the fact that 35 Info was sold to Yuyuling when the judgment was imminent and thus "shortly before" the substantial debt was incurred. *See id.* § 3439.04(b)(10).

Leascend's remaining disputes relating to the badges of fraud are similarly unavailing and, for the most part, conclusory. Opp. at. 25:5-18. Leascend simply lists several badges and states they do not apply, relying on a single paragraph of the Li Declaration that repeats the same bare conclusions. *Id.* (citing Li Decl. ¶ 5). Regardless, Plaintiffs need not establish a certain number of badges (or any at all) to demonstrate Leascend's assets were transferred to 35 Info for the fraudulent purpose of escaping liability. *See In re Acequia, Inc.*, 34 F.3d 800, 806 (9th Cir. 1994) ("The presence of a single badge of fraud may spur mere suspicion; the confluence of several can constitute conclusive evidence of actual intent to defraud, absent 'significantly clear' evidence of a legitimate supervening purpose.").

## VI.    CONCLUSION

In sum, Plaintiffs' Motion for Contempt Remedies should be granted.

TUCKER ELLIS LLP

515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

DATED: May 16, 2025                    Tucker Ellis LLP


                                       By:  /s/David J. Steele
                                            David J. Steele
                                            Howard A. Kroll
                                            Steven E. Lauridsen

                                            Attorneys for Plaintiffs,
                                            META PLATFORMS, INC. (fka
                                            FACEBOOK, INC.) and INSTAGRAM, LLC