**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Liana W. Chen (Bar No. 296965)
Leah Rosa Vulić (Bar No. 343520)
548 Market Street #85399
San Francisco, CA 94101
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@kr.law
jeff@kr.law
liana@kr.law
leah@kr.law

Defendant Leascend Technology Co., Ltd.
f/k/a Xiamen 35.com Technology Co., Ltd.
(erroneously sued as Xiamen 35.com Internet Technology Co., Ltd.)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **FACEBOOK, INC.**, et al., <br><br> Plaintiffs, <br><br> v. <br><br> **ONLINENIC INC.**, et al., <br><br> Defendants. | Case No. 3:19-cv-07071-SI <br><br> **DEFENDANT LEASCEND TECHNOLOGY CO., LTD.'S OPPOSITION TO PLAINTIFFS' MOTION FOR APPEAL BOND PURSUANT TO FED. R. APP. P. 7** <br><br> Date: June 13, 2025 <br> Time: 10:00 a.m. <br> Ctrm: 1 – 17th Floor <br> Before: Hon. Susan Illston |

Defendant Leascend Technology Co., Ltd. f/k/a Xiamen 35.com Internet Technology Co., Ltd. ("Defendant" or "Leascend") opposes the motion by Plaintiffs Facebook, Inc. and Instagram, LLC (collectively "Plaintiffs" or "Meta") for an appeal bond pursuant to Federal Rule of Appellate Procedure ("Rule(s)") 7.

## INTRODUCTION

Meta's motion for an appeal bond should be denied. This is one of several simultaneous attempts to collect on the same judgment, even though Meta has already been informed about the difficulty of transferring money from China while the judgment is on appeal (with an acknowledged de novo standard of review for the order granting Meta's motion for summary judgment). Furthermore, Meta requests a bond amount ($210,000) that is unwarranted. First, Meta seeks $10,000 for costs, which it concedes to be a high amount. In addition, Meta seeks $200,000 for fees, despite confirming the lack of Ninth Circuit precedent for requiring a bond to cover fees in a Lanham Act case. Meta also desires a $1,000 per hour rate for these (unrecoverable) fees, even though its recent motion for attorney's fees outlined lower rates for attorneys at its counsel's law firm.

Therefore, Meta's motion for high relief in this area should be denied.

## STATEMENT OF THE ISSUES

Whether the Court should require Leascend to pay a bond, and if so, whether Meta's request for a bond of $210,000 is an appropriate amount to cover potential fees and costs.

## BACKGROUND

Facebook (now "Meta") filed this case back in 2019 and is a *trillion-dollar* company (i.e., there is no damage if this motion is denied). Meta has not proven liability on the merits. Instead, Meta obtained discovery sanctions against OnlineNIC and ID Shield (for claimed document spoliation prior to Leascend and its counsel entering this case), and then Meta obtained summary judgment against Leascend on claims of alter ego. Attempting to bypass judgment collection procedures, on December 18, 2024, Meta filed an "emergency" ex parte application for a pre-judgment asset freeze to try to require Leascend to deposit $5.5 million into a U.S. trust account. [D.E. 408.] As previously outlined, Leascend

1   attempted to comply with the Court's asset freeze order. [*See* D.E. 432 & 432-1.] For
2   example, on January 10, 2025, Leascend submitted an application for outward remittance
3   to transfer $5.5 million overseas to a U.S. account, but the application was denied under
4   China's foreign exchange control policies. [*See* D.E. 432-1 Ex. A.] On February 14, 2025,
5   the Court entered the Amended Default Judgment. [D.E. 431.] Leascend has filed an
6   appeal of the final judgment and relevant contained orders. [*See* D.E. 439; D.E. 468.][1]

7         Relevant to Meta's current request for fees, after its prior request for attorney's fees
8   and costs under the Lanham Act, the Court limited Meta's fee recovery to only limited
9   issues (i.e., the proceedings before the Special Master, the Motion for Sanctions, and the
10  Motion for Default/Summary Judgment). [D.E. 393 at 9:2-4; *see also* D.E. 430 (denying
11  Meta's request to supplement the fee motion to include hours spent on discovery on the
12  alter ego issue).] (*See also* Mtn at 12:14-16.) Moreover, the Court found Meta's requested
13  attorney rates supported where they sought $591 to $727 per hour for partners from 2021
14  to 2024 as well as rates ranging from $177 to $289 for other attorneys. [D.E. 430 at 6:21-
15  7:2; *see also* D.E. 395.] However, Meta now seeks $1,000 per hour for 200 hours of fees.

## ARGUMENT

17      Rule 7 allows for a discretionary bond in an amount only as necessary to ensure
18  payment of "costs" on appeal. Under *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950,
19  961 (9th Cir. 2007), attorney's fees are not automatically included in the definition of
20  "costs." Here, Meta's motion should be denied because the relevant factors weigh in
21  Leascend's favor, and the amount of requested fees and costs is not supported.

22  **A.     The Court should deny Meta's request for a bond in its entirety.**

23      Rule 7 does not provide explicit guidance in enumerating the factors a court should
24  consider in determining whether to require a bond; however, in applying relevant Ninth
25  Circuit precedent, district courts have articulated three relevant elements of the inquiry: (1)
26  appellant's financial ability to post bond, (2) the risk that appellant would not pay the costs

---

[1] While the second appeal was based on the asset freeze sanctions, Leascend is attempting to consolidate the related appeals from the judgment and contempt orders.

Case No. 3:19-cv-07071-SI                2               **DEFENDANT'S OPP. TO PLAINTIFFS' MTN FOR APPEAL BOND**

1  if the appeal loses, and (3) an assessment of the likelihood that appellant will lose the
2  appeal and be subject to costs. *See Schulken v. Washington Mut. Bank*, No. 09–CV–
3  02708–LHK, 2013 WL 1345716, at *4 (N.D. Cal. Apr. 2, 2013). In this case, the factors are
4  not met; and the Court should deny Meta's motion for a bond.

### 1. Leascend lacks the ability to pay for the bond under the circumstances.

Regarding the first factor, requiring a bond under Rule 7 may be improper where factors, such as financial hardship, indicate that the bond would unduly burden a party's right to appeal. *See Azizian*, 499 F.3d at 961; *see also Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 WL 4680033, at *6 (N.D. Cal. Oct. 21, 2008) (noting the Ninth Circuit has indicated that because of due process concerns, the appellant's financial ability to post a bond is an appropriate consideration). This factor may weigh in favor of a bond if the objector does not submit any evidence or contention that posting a bond will post a substantial hardship. See *Embry v. ACER Am. Corp.,* No. C 09-01808 JW, 2012 WL 2055030, at *1 (N.D. Cal. June 5, 2012), *on reconsideration,* No. C 09-01808 JW, 2012 WL 13059929 (N.D. Cal. July 31, 2012); *Zakikhani v. Hyundai Motor Co.*, No. 8:20-CV-01584-SB-JDE, 2023 WL 9420118, at *1 (C.D. Cal. Dec. 14, 2023) ("When an appellant is unable to pay the bond amount, the bond requirement risks becoming a barrier to the appellant's right to appeal, potentially implicating due process rights, and thus weighs against granting the bond."). Importantly, the purpose of a Rule 7 bond is designed to protect the amount the appellee stands to have reimbursed, not to impose an independent penalty on the appellant. *See Fleury v. Richemont N. Am., Inc.,* No. C-05-4525 EMC, 2008 WL 4680033, at *6 (N.D. Cal. Oct. 21, 2008) (internal quotation omitted).

Here, there is substantial hardship as Chinese law places severe restrictions on how much money a public company can transfer out of China and for what purposes. Specifically, Article 19 of China's *Regulations on Foreign Exchange Administration* states:

> Entities providing external guarantees must apply to the foreign exchange authority. The foreign exchange authority shall decide whether to approve or deny the application based on the applicant's asset-liability position. If national regulations require approval of the entity's business scope by relevant authorities, such approval must be obtained prior to applying to the

Case No. 3:19-cv-07071-SI     3     **DEFENDANT'S OPP. TO PLAINTIFFS' MTN FOR APPEAL BOND**

foreign exchange authority. After signing an external guarantee contract, the applicant must register the guarantee with the foreign exchange authority.[2]

In other words, according to Article 19 of China's *Regulations on Foreign Exchange Administration* and the *Provisions on Foreign Exchange Administration of Cross-border Guarantees*, Chinese enterprises are required to obtain prior approval from the State Administration of Foreign Exchange (SAFE) and complete foreign debt registration procedures when providing external guarantees (including financial guarantees such as litigation-related bonds); any cross-border guarantee contracts without such approval are invalid. One basis for approval would require the existence of a final and effective court judgment, and that judgment must be recognized by a Chinese court. *See* Civil Procedure Law of the People's Republic of China ("CPL"), Article 299. In the Chinese legal context, a "final and effective judgment" is understood to mean a second-instance (appellate) decision. *See* CPL, Article 158; CPL, Article 182. In other words, a district court judgment is not yet "final" for these purposes. (While these requirements may seem strict for cross-border transfers of money, regulations for foreign currency remittances for capital account payments such as outbound investments, deposits, bonds, and indemnities do not necessarily apply to general account payments for ordinary services and goods).

Recognizing the cross-border tension between the U.S. and China (which remains high), Meta cites to case law stating it will be difficult to enforce a U.S. judgment in China. (Mtn at 6:11-14 (citing *Cisco Sys., Inc. v. Wuhan Wolon Commc'n Tech. Co.*, No. 5:21-CV-04272-EJD, 2021 WL 4962661, at *9 (N.D. Cal. July 23, 2021))). *Cisco*, in turn, cites to multiple cases and the State Department website for this proposition. *Id.*

These restrictions were also demonstrated in this litigation when Leascend's bank in China confirmed that Leascend could apply to the competent Intermediate People's Court for recognition and enforcement of a final judgment (i.e., after appeal) or formally recorded settlement agreement. [*See* D.E. 432-1, ¶4.] Leascend arranged to consult with the Xiamen Intermediate People's Court to confirm if an application for recognition of the

---

[2] References to Chinese legal authorities are based on citations and translations provided by Leascend's separate counsel in China.

1  December 20, 2024 Order could be made and was informed that a final judgment or
2  formally recorded settlement agreement was needed. *Id.* Leascend anticipates that it will
3  face a similar outcome were the Court to order Leascend to post a bond for $210,000 as
4  Meta's proposed bond is neither a final judgment nor a formally recorded settlement. Thus,
5  there is a significant impediment to Leascend's ability to pay the bond, which will unduly
6  prejudice Leascend on appeal with further anticipated contempt proceedings.

**2. Meta fails to show sufficient risk that Leascend will not pay costs if it loses the appeal, including as an appeal may be recognized by a court in China.**

California district courts have held that the second factor is neutral where there is no evidence that the appellant will not pay the appellee's costs were the appellant to lose the appeal. *See Tait v. BSH Home Appliances Corp.*, No. SACV100711DOCANX, 2015 WL 12748268, at *1 (C.D. Cal. Oct. 19, 2015).

Here, despite Leascend's inability to transfer money from China to pay a lower court judgment that is on appeal, due to the competing CPL requirements, Leascend has demonstrated that it has sufficient assets in China, and it has been fully defending this litigation; therefore, there is no basis for arguing that Leascend will not pay a final judgment if it is unsuccessful on appeal (as the "final" judgment could then be applied to a court in China). Meta refers to cases considering whether the appellant has failed to pay prior awards against it (Mtn at 5:20-28), and Meta points to Leascend's lack of payment of the judgment in this case. However, Meta cannot argue that Leascend has failed to pay other court judgments/awards or that it failed to pay business debts in China; rather, Meta relies on the one judgment in this case, merely describing the amount owed in different ways (e.g., the underlying judgment and the order requiring transfer of assets for the same judgment, which is on appeal). Meta also asserts that Leascend has millions of dollars and recently obtained approximately $6.6 million from the sale of its subsidiary. (Mtn at 5:6-10.)[3] Therefore, Leascend has resources to pay a judgment that is considered final in

---

[3] Meta also cites to statements at the emergency TRO hearing regarding transfer of $3 million to the U.S. (Mtn at 5:8), but Meta's statements misrepresent the hearing discussion

Case No. 3:19-cv-07071-SI                 5                 **DEFENDANT'S OPP. TO PLAINTIFFS' MTN FOR APPEAL BOND**

China after full appellate review. In short, the second factor weighs in favor of Leascend or is at most neutral regarding whether to require a bond from Leascend.

### 3. Leascend has strong arguments to support an appeal, including the de novo review of the summary judgment order.

The third factor considers whether the appellant is likely to lose on appeal and thus incur the appellee's costs. Meta recognizes that the standard of review is a significant consideration and that the summary judgment order is subject to a deferential de novo standard of review. (*See* Mtn at 7:22-8:2.) *See also Edwards v. 360 Commc'ns*, 19 F. App'x 541, 541–42 (9th Cir. 2001) ("We review summary judgment de novo.").

By contrast to this case, California courts generally weigh this third factor in favor of imposing a bond in situations where the appeal is obviously frivolous. Such examples (different from the present facts) include *Forcellati v. Hyland's, Inc.*, in which the appellee's appeal was deemed frivolous because her core arguments either had no evidentiary support or were entirely counter to existing law. *Forcellati v. Hyland's, Inc.,* 2018 WL 11374915, at *3 (C.D. Cal. Feb. 5, 2018). Another illustrative example is *In re Blackhawk Network Data Breach Litig*, in which this court held a bond was appropriate where the appellants had objected to a class action settlement despite lacking standing to object as non-members of the settlement class. *In re Blackhawk Network Data Breach Litig.*, 2024 WL 4700634, at *2 (N.D. Cal. Nov. 5, 2024).

The judgment in this case, which was based on years of litigation (first discovery sanctions against other Defendants, and then years later an order on a dispositive motion on alter ego issues), has involved novel and complex issues. Leascend respects this Court's authority and also desires to pursue de novo (and other) review of these difficult arguments on appeal, and its position is well founded in the law and supported by ample facts. Leascend also asserts that the related orders relating to the judgment, which was based on the order on summary judgment, are subject to appeal. [*See e.g.,* D.E. 351, 393,

---

and, importantly, clarifications made after the TRO hearing. [*See e.g.,* D.E. 471-1.]

420.] Although the Court ruled against Leascend on summary judgment, Leascend provided multiple declarations and exhibits; furthermore, Meta failed to adequately dispute Leascend's public filings in China supporting its position (and Meta's motion omitted typical evidence, such as deposition testimony from anyone at Leascend). Therefore, Leascend has strong appellate arguments, which support denial of Meta's request for a bond.

**B.    The Court should deny the amount of Meta's requested bond.**

The Court should decline to require the full amount of the requested bond for $10,000 in costs and $200,000 in fees, especially given lack of Ninth Circuit precedent authorizing a bond for fees in a Lanham Act case and given the circumstances of this case.

**1. Meta's request for high costs is not supported.**

Meta requests $10,000 in costs, recognizing case law indicating this is on the "high side." (Mtn at 10:1-3 (citing *Senne v. Kansas City Royals Baseball Corp.*, No. 14-CV-00608-JCS, 2023 WL 4238509, at *2 (N.D. Cal. June 27, 2023)).) In fact, *Senne* cites to other cases, including the following: *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2020 WL 1972501, at *4 (N.D. Cal. Apr. 13, 2020) ("[C]ourts have routinely estimated that $1,000 is all that is necessary to ensure payment of costs on appeal associated with Rule 39(e)"); *Long v. Authentic Athletix LLC*, No. 16-CV-03129-JSC, 2018 WL 6168531, at *2 (N.D. Cal. Nov. 26, 2018) (reviewing cases setting bond amounts in the range of $500 to $2,500); *Schulken v. Washington Mut. Bank*, No. 09-CV-02708-LHK, 2013 WL 1345716, at *6 (N.D. Cal. Apr. 2, 2013) (setting bond at $5,000 based on Rule 39(e) costs in litigation that spanned three years and included appeals of four of the court's orders). *Id. C.f. Fleury v. Richemont N. Am., Inc.,* No. C-05-4525 EMC, 2008 WL 4680033, at *8 (N.D. Cal. Oct. 21, 2008) (identifying typical Rule 7 costs, i.e., the preparation of the record; the reporter's transcript, if needed; premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and the fee for filing the notice of appeal).

Given the above, the full amount requested for costs is not warranted in this case.

**2. Meta's request for attorney's fees is not supported.**

While Rule 7 expressly references "costs," Meta seeks a bond to cover attorney's

1  fees; however, Meta concedes lack of Ninth Circuit precedent addressing whether a bond
2  may cover fees in Lanham Act cases. (*See* Mtn at 11:27-28.)

3  As an initial matter, attorney fees are generally not recoverable "costs" on appeal
4  and thus are not includible in a cost bond. *See United States for Use of Terry Investment*
5  *Co. v. United Funding & Investors, Inc.*, 800 F. Supp. 879, 882 (E.D. Cal. 1992). Moreover,
6  a district court need not order that appellate attorney's fees be secured in a Rule 7 bond
7  merely because an applicable fee-shifting provision includes them as part of its definition
8  of costs. Interpreting language in *Azizian*, 499 F.3d 950, some courts have allowed an
9  appeal bond for costs to cover attorney's fees where the underlying statute explicitly
10 defines attorney's fees as part of "costs." *See Embry,* No. C 09-01808 JW, 2012 WL
11 2055030, at *1 (noting that costs may only include attorney's fees if the claim is brought
12 under a fee-shifting statute that would allow recovery from an objecting class member, as
13 opposed to a defendant, citing *Azizian,* 499 F.3d at 953–54; and approving bond only for
14 the limited amount for actual costs, rather than the full amount sought). Nonetheless, a
15 district court is not required to include anticipated attorney's fees in calculating the amount
16 of an appeal bond. *See e.g., Miller v. 4Internet, LLC*, No. 2:18-CV-02097-JAD-VCF, 2022
17 WL 17823560, at *6 (D. Nev. Dec. 20, 2022), *aff'd,* No. 22-16195, 2024 WL 3219716 (9th
18 Cir. June 28, 2024). In fact, "a survey of recent cases in the Ninth Circuit suggests that . .
19 . a bond of about $1,000–$7,500 is typical to cover just costs, and about $7,000–$22,000
20 is typical for bonds that include attorneys' fees." *See id.* (finding an appeal bond of $7,500
21 appropriate, in contrast to the requested bloated amount).

22 Furthermore, the Lanham Act does not define "costs" to expressly include "fees" but
23 rather has separate provisions in 15 U.S.C. §1117(a) for "the costs of the action" and then
24 "in exceptional cases . . . reasonable attorney fees." Therefore, the request for inclusion of
25 speculative attorney's fees on appeal is not supported and would create undue precedent.

26 Here, Meta has not provided sufficient authority to support its request for a bond to
27 cover attorney's fees. Further, the amount of requested fees ($200,000) is overbroad,
28 including considering it is seeking amounts to cover 200 hours at a rate of $1,000, whereas

it recently sought fees for rates of $177 to $727. [D.E. 430 at 6:21-7:2; *see also* D.E. 395.] Given the complex issues, including Leascend's dispute that Meta is entitled to fees under the Lanham Act, and the de novo review of the summary judgment determination, the request for a bond, especially concerning $200,000 in fees, is not warranted.

## CONCLUSION

For all these reasons, Leascend respectfully requests that the Court deny Meta's motion for an appeal bond, and alternatively, deny the amount requested.

Respectfully Submitted,

Dated: May 22, 2025

**KRONENBERGER ROSENFELD, LLP**

By:   s/ Karl S. Kronenberger
         Karl S. Kronenberger

Attorneys for Defendant Leascend Technology Co., Ltd. f/k/a Xiamen 35.com Technology Co., Ltd.