TUCKER ELLIS LLP
515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071  213.430.3400

1  TUCKER ELLIS LLP
   David J. Steele SBN 209797
2  david.steele@tuckerellis.com
   Howard A. Kroll SBN 100981
3  howard.kroll@tuckerellis.com
   Steven E. Lauridsen SBN 246364
4  steven.lauridsen@tuckerellis.com
   Helena M. Guye SBN 350417
5  helena.guye@tuckerellis.com
   515 South Flower Street, Forty-Second Floor
6  Los Angeles, CA 90071
   Telephone:      213.430.3400
7  Facsimile:      213.430.3409

8  Attorneys for Plaintiffs,
   META PLATFORMS, INC. (fka FACEBOOK, INC.) and
9  INSTAGRAM, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FACEBOOK, INC. and INSTAGRAM, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ONLINENIC INC.; DOMAIN ID SHIELD SERVICE CO., LIMITED; and XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD.,<br><br>Defendants. | Case No. 3:19-cv-07071-SI<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT LEASCEND TECHNOLOGY CO., LTD. FKA XIAMEN 35.COM INTERNET TECHNOLOGY CO., LTD.'S MOTION TO STAY**<br><br>DATE:    May 30, 2025<br>TIME:    10:00 a.m.<br>CTRM:    1 – 17th Floor<br><br>Hon. Susan Illston |

## I. INTRODUCTION

Defendant Leascend Technology Co., Ltd. fka Xiamen 35.Com Internet Technology Co., Ltd. ("Leascend") moves to stay "all further proceedings in this Court pending resolution of Leascend's appeal . . . ." ECF No. 473 ("Mot.") at 1:3-5. The Court should deny Leascend's motion, for it constitutes nothing more than a last-ditch attempt to evade the consequences for its contemptuous behavior. Leascend chose not to comply with the Escrow Order (ECF No. 420), chose not to promptly inform the Court or Plaintiffs of the purported "impossibility" of complying with the Escrow Order, chose not to seek reconsideration of the Escrow Order, and chose not to immediately appeal the Escrow Order under 28 U.S.C. § 1292(a)(1) and seek a stay. Instead, Leascend chose to wait until *five months* after the Court issued the Escrow Order to seek relief from it. Leascend now seeks this stay only *after* being found in contempt with only the question of remedies left to be decided. In doing so, Leascend consumed this Court's resources by gambling on whether the Court would accept Leascend's excuses for non-compliance. Once Leascend lost its gamble, it waited for *over six more weeks* until the issue of contempt remedies had been fully briefed to request a stay. In other words, Leascend finally seeks relief only after knowing the full scope of sanctions it may face for its contemptuous behavior. Plaintiffs respectfully submit that the Court should not countenance this behavior and reward Leascend for its purposeful delay.

Indeed, Leascend fails to meet the standard for issuing a stay. Leascend advances nothing more than conclusory assertions and speculative arguments concerning each of the factors courts weigh when deciding whether to enter a stay pending appeal. Because Leascend has failed to carry its burden, its motion for a stay should be denied.

## II. LEASCEND HAS NOT MET ITS BURDEN TO SHOW A STAY IS JUSTIFIED.

A stay pending appeal "is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). Rather, such relief is "'an exercise of judicial discretion,' and '[t]he propriety of its issue is dependent upon the circumstances of the particular case.'" *Id.* (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672-73 (1952)). The moving party "bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34.

The court considers four factors in weighing whether to stay its orders pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

1

(2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 426 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).[1] "The first two factors ... are the most critical." *Id.* at 434. The court reaches the third and fourth factors "only '[o]nce an applicant satisfies the first two factors.'" *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020) (quoting *Nken*, 556 U.S. at 434-35).

Here, the first and second factors weigh heavily against Leascend's requested stay. And although the Court need not reach them, the third and fourth factors also weigh against the stay.

### A.   Leascend has not made a strong showing it is likely to succeed on the merits of its appeal or that the appeal raises serious legal questions.

Under the first *Nken* factor, Leascend must make "a strong showing" that it is likely to succeed on the merits of its appeal. *Mohamed v. Uber Techs. Inc.*, 115 F. Supp. 3d 1024, 1028 (N.D. Cal. 2015).[2] In the alternative, Leascend "may make a lesser showing that its appeal presents 'serious legal issues' or 'substantial questions' that warrant a stay." *Id.* at 1028. "A party meeting this lower threshold is not required to show that it is more likely than not to win on the merits"; however, it "must then demonstrate that the balance of hardships under the second and third factors tilts *sharply* in its favor." *Morse v. Servicemaster Global Holdings, Inc.*, No. C10-628-SI, 2013 WL 123610, at *2 (N.D. Cal. Jan. 8, 2013) (Illston, J.) (citing *Leiva-Perez v. Holder*, 640 F.3d 962, 966, 970 (9th Cir. 2011) (per curium)) (emphasis in original).

---

[1] While Leascend focuses on the factors outlined in *Nken*, the three-factor test derived from *Landis v. N. Am. Co.*, 299 U.S. 248 (1936) may be more appropriate. *See Kuang v. United States Dep't of Def.*, No. 18-CV-03698-JST, 2019 WL 1597495, at *3 (N.D. Cal. Apr. 15, 2019) ("[T]he *Nken* test is applicable when there is a request to stay a district court's *judgment or order* pending an appeal of the same case, while *Landis* applies to the decision to stay *proceedings*, regardless whether the stay is based on a direct appeal or an independent case.") (internal quotation marks omitted). Leascend does not address the *Landis* factors in its motion; however, both tests weigh the hardships that may result from the grant or denial of a stay (*id.* at *4-5), a factor upon which Leascend has not carried its burden, as discussed in Sections II.B and II.C, *infra*. The remaining *Landis* factor, "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay" (*id.* at *2, 5-6), also favors Plaintiffs for the same reasons the first and fourth *Nken* factors do, as explained in Sections II.A. and II.D, *infra*.

[2] "The likelihood of success on the merits is not an independent factor under *Landis* and therefore does not carry the same weight in this context." *Kuang*, 2019 WL 1597495, at *6.

Leascend asserts only the alternative "lesser showing" and argues that its appeal of the Court's Order Granting Plaintiffs' Motion for Summary Judgment on Alter Ego raises "serious legal questions" supporting entry of a stay. Mot. at 2:21-3:21. In particular, Leascend argues the Court "acknowledged[] the alter ego determination and its repercussions in this case raise very serious and difficult legal questions." *Id.* at 3:3-4. Contrary to Leascend's contentions, these do not pose "serious legal questions." Courts in this district have interpreted "serious legal questions" to include constitutional issues, matters of first impression in the Ninth Circuit, substantial questions that "may address a pressing legal issue which urges that the Ninth Circuit hear a case," or legal questions "going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." *Mohamed*, 115 F. Supp. 3d at 1028-29 (surveying cases). By contrast, as Leascend acknowledges, the alter ego determination was not a "legal" question at all, but "primarily a question of fact." *See* Mot. at 3:3-3:12 (quoting ECF No. 357 ("MSJ Order") at 5:18-22).

Further, while the Court acknowledged "some concerns over potential unfairness," (MSJ Order at 19:19-21), the Court went on to state it was "satisfied that these concerns are mitigated" (*id.* at 19:21-25). In granting summary judgment, the Court held that "much of [Leascend's] 'evidence' is actually inadmissible; [Leascend] does not rebut much of the evidence that plaintiffs have presented; and [Leascend's] briefs make sweeping assertions that are unsupported by any evidence." *Id.* at 6:20-23. By comparison, the Court found that "the factual detail provided in the summary judgment motion was on another level altogether. Where the amended complaint alleged that defendants were alter egos, the summary judgment motion actually connected the dots, sometimes in painstaking detail. . . . The detailed evidentiary support plaintiffs provided in the motion ultimately led to their prevailing." ECF No. 430 (Order Awarding Attorneys' Fees) at 5:18-25. Because Leascend failed to provide *any* evidence establishing a dispute of material fact, the Court held that this was not a close call, and it did so based on a thorough analysis of the law and admissible facts. Accordingly, Leascend has not carried its burden to show that the Court's alter ego determination raises "serious legal questions." This factor therefore strongly disfavors a stay.

**B.      Leascend has not shown irreparable injury is likely to occur absent a stay or that the balance of hardships tips sharply in its favor.**

Leascend must show that "irreparable injury is likely to occur during the period before the appeal is decided." *Doe #1 v. Trump*, 957 F.3d 1050, 1059 (9th Cir. 2020). Otherwise, "a stay may not issue, regardless of [Leascend]'s proof regarding the other stay factors." *Id.* at 1058. Moreover, because Leascend only attempts to make a lesser showing on the first factor by simply arguing that its appeal presents "serious legal questions," it must make a heightened showing that this second factor tips *sharply* in its favor. *Morse*, 2013 WL 123610, at *2.

Leascend argues it will suffer irreparable injury absent a stay because (1) Leascend "faces the potential of losing the business continuity associated with [leasdgrp.com]," (Mot. at 3:25-28) and (2) the imposition of sanctions will harm Leascend's "business reputation" (*id.* at 4:2-8). Neither of these bases rises to the level of "injury" that would warrant a stay, nor are they supported by sufficient evidence.

In fact, the injuries Leascend alleges it will suffer absent a stay would be of Leascend's own making. But "[s]elf-inflicted wounds are not irreparable injury." *Al Otro Lado*, 952 F.3d at 1008. The Court ordered Plaintiffs to file a motion for contempt remedies ***after finding Leascend in civil contempt***. ECF No. 460 ("Contempt Order") at 8:25-27. Leascend now argues that a stay is warranted because the imposition of sanctions would cause Leascend irreparable harm. However, the contempt proceeding could have been avoided had Leascend complied with the Court's order to escrow $5.5 million to a United States bank account. Or, if Leascend was purportedly unable to comply, the proper course would have been to "inform[] plaintiffs and the Court of the difficulties with compliance *before* the compliance deadline passed." Contempt Order at 8:3-4 (emphasis in original). Or, if Leascend disagreed with the Escrow Order on the merits, the proper course would have been to seek leave to file a motion for reconsideration or to appeal the order while requesting a stay. *See* Civil L.R. 7-9(b)(1) (movant must show "a material difference in fact or law exists from that which was present to the Court before entry of the interlocutory order"); *see also In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987) ("If the appellants believed that the district court incorrectly issued an order, their remedy was to appeal and request a stay pending the appeal."). Despite numerous options that may have avoided the contempt proceeding, Leascend chose not to do any of these and its delay in seeking a stay undermines its irreparable

harm arguments. Even now, if the Court imposes Plaintiffs' requested sanctions, Leascend may avoid the coercive contempt remedies by complying with the Court's Escrow Order. Any harm that may befall Leascend absent a stay will be the result of its continuing contravention of this Court's Escrow Order and cannot qualify as "irreparable injury."

Even assuming Leascend's claimed injuries could constitute "irreparable injury," Leascend fails to support its allegations with anything beyond conclusory assertions and speculative arguments. *See Doe #1*, 957 F.3d at 1059-60 (holding moving party "cannot meet this burden by submitting conclusory factual assertions and speculative arguments that are unsupported in the record"). Indeed, Leascend only alleges "*potential* loss of business continuity" and "*possibly* irreparable" harm. ECF No. 473-1 (Kronenberger Decl.) ¶¶ 4-5 (emphasis added). These purely speculative allegations of harm are insufficient to establish irreparable injury under *Nken*. *See Doe #1,* 957 F.3d at 1059 (irreparable harm must be "probable, not merely possible"); *Cisco Sys., Inc. v. Dexon Computer, Inc*., No. 20-CV-04926-CRB, 2023 WL 8703259, at *5 (N.D. Cal. Dec. 15, 2023) (rejecting allegations of irreparable injury made "in purely speculative terms ('potential to be' 'extremely damaging')"), *appeal dismissed*, No. 24-265, 2024 WL 1644224 (9th Cir. Mar. 18, 2024).

Further, there is no evidence in the record to support Leascend's speculative claims of irreparable injury. Rather, Leascend relies on mere conclusory statements from its counsel's declaration—which cannot be based on his personal knowledge since it concerns Leascend's business and reputation—to establish irreparable harm. But just as with the insufficient claim of injury in *Dexon Computer*, Leascend "cites no <u>actual</u> loss of business or <u>actual</u> refusals of suppliers to do business with it" despite the judgment having been in place for three months and the Contempt Order having been issued over six weeks ago. *Id.* (emphasis in original). In fact, the court in *Dexon Computer* found the lack of evidence after only one month was sufficient to defeat any claim of reputational harm. *Id.*

Leascend also seems to suggest that the Court's orders have already harmed Leascend's business reputation, and that *any* sanctions based on Leascend's contempt would compound such harm. *See* Mot. at 4:2-6. This argument strains logic and has been rejected by other courts in this district. For example, in *Dexon Computer*, the court explained:

> As to the purported reputation harm, Dexon claims that the Court's

> language in the Order implies unidentified nefarious conduct on Dexon's part, which has the potential to be extremely damaging to Dexon's reputation. . . . And while Dexon may be right that some customers will find its conduct distasteful, Dexon does not cite any caselaw supporting why this would constitute irreparable harm. Moreover, the Court's conclusions were based on evidence of Dexon's conduct, which the Court accurately quoted and represented in the Order. It belies reason that Dexon should get out of an injunction just because the Court accurately informed the public of its actions.

2023 WL 8703259, at *5 (cleaned up); *compare also Sweet v. Cardona*, 657 F. Supp. 3d 1260, 1272-73 (N.D. Cal. 2023) ("If the reputational injury experienced by movants is already irreparable, it is unclear why a stay would be necessary to avoid irreparable injury pending appeal.") *with* Mot. at 4:2-5 ("the entry of default judgment and finding of civil contempt ***have already harmed*** Leascend's business reputation; however, the additional imposition of … sanctions against Leascend is ***likely*** to compound the harm to a ***possibly*** irreparable level") (emphases added).

In sum, Leascend fails to meet its burden to establish probable irreparable harm absent a stay and its motion should be denied on that basis alone.

### C. A stay will substantially injure Plaintiffs.

As with irreparable harm, Leascend must make a heightened showing that this third factor—whether a stay will substantially injure Plaintiffs—tips *sharply* in its favor. *Morse*, 2013 WL 123610, at *2. Leascend cannot meet this burden. To the contrary, Plaintiffs would be substantially injured if the Court were to stay all proceedings, which would prevent enforcement of the Escrow Order and judgment. There is no dispute that "Leascend did not deposit the $5.5 million into a U.S. escrow account by the [January 31, 2025] deadline ***(and still has not done so)***." Contempt Order at 3:16-17 (emphasis added). And Leascend has already improperly dissipated assets by selling its wholly owned subsidiary in violation of the Escrow Order. Granting a stay would allow Leascend free reign to further dissipate its assets and frustrate Plaintiffs' ability to collect the judgment. *Cf. Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) (defendant's prior conduct demonstrated he was "more than capable of placing assets in his personal possession beyond the reach of a judgment" and established a likelihood that plaintiffs would be irreparably harmed absent court intervention).

The Court issued its Escrow Order "to be security to satisfy any judgment issued by the Court."

Escrow Order ¶ 1; *see also* ECF No. 423 (TRO Hr'g Tr.) at 10:9-14 ("[T]he Court has found that Meta is entitled to somewhere south of $5.5 million, and it's my plan to make it as possible for that to be realized as I can. And so I am inclined to disallow anything that's going to make that impossible . . . ."). As a prejudgment remedy, the Escrow Order protected Plaintiffs from Leascend's dissipation of assets by requiring Leascend to deposit $5.5 million into an escrow account in the United States. A stay would frustrate Plaintiffs' ability to collect on the judgment even when Leascend inevitably loses on appeal. This is especially true because Leascend seeks to stay ***all*** proceedings before this Court despite having not posted a supersedeas bond pursuant to Rule 62(d) or argued why the posting of a bond should be waived.[3]

Leascend claims that "[t]he Remedies Motion for example seeks to penalize Defendant, not provide relief to Plaintiffs." Mot. at 4:14-17. Leascend is mistaken. Plaintiffs seek contempt remedies against Leascend to coerce Leascend to comply with the Escrow Order and to compensate Plaintiffs for Leascend's contempt. This is proper. *See, e.g., Oracle USA, Inc. v. Rimini St., Inc.*, 81 F.4th 843, 858-59 (9th Cir. 2023) (collecting cases and describing two separate and independent purposes for civil contempt sanctions: (1) "to 'coerce' compliance with a court order" and (2) "to 'compensate' the aggrieved party for sustained losses"). Without these remedies, Plaintiffs would be prejudiced because Leascend is unlikely to comply with the Escrow Order or to pay Plaintiffs' attorneys' fees caused by Leascend's contempt. Moreover, if all proceedings were stayed, Leascend could continue violating the Escrow Order, and other orders of the Court, with no consequences.

Moreover, other than to acknowledge in passing that Plaintiffs' motion for an appeal bond is pending (Mot. at 2:11), Leascend's brief does not address the issue at all. The purpose of an appeal bond

---

[3] "[C]ourts grant partially secured or unsecured stays only in 'unusual circumstances … if they do not unduly endanger the judgment creditor's interest in ultimate recovery.'" *Zoellner v. City of Arcata*, No. 3:18-cv-04471-JSC, 2024 WL 4700633, at *2 (N.D. Cal. Nov. 5, 2024) (quoting *Fed. Prescription Serv. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760-61 (D.C. Cir. 1980)) (alteration in original). Despite "bear[ing] the burden of demonstrating the reasons for a departure from the full security supersedeas bond," Leascend does not address the factors district courts consider, which include: (1) whether "defendant's ability to pay is so plain that the cost of the bond would be a waste of money"; (2) "whether requiring a bond would put the defendant's other creditors in undue jeopardy"; (3) the "complexity of the collection process"; (4) "the amount of time required to obtain a judgment after it is affirmed on appeal"; and (5) "the degree of confidence that the district court has in the availability of funds to pay the judgment." *Id.* at *2-3 (internal quotation marks omitted).

under Rule 7 of the Federal Rules of Appellate Procedure is to "protect an appellee against the risk of nonpayment by an unsuccessful appellant." *Embry v. ACER Am. Corp.*, No. C 09-01808 JW, 2012 WL 2055030, at *1 (N.D. Cal. June 5, 2012). Leascend, however, seeks to evade the protections provided by Rule 7 by asking the Court to defer the question of a bond until after the appeal has been decided, thus leaving Plaintiffs with zero protection when Leascend's appeal ultimately fails. As a result, entering a stay before ruling on Plaintiffs motion for an appeal bond would completely frustrate the purpose behind this rule, and Leascend's motion should be denied for this additional reason.

This factor therefore weighs against a stay.

### D. The public interest weighs against a stay.

There "is a strong public interest in favor of timely compliance with orders of the court." *Chevron Corp v. Donziger*, No. 12-mc-80237 CRB (NC), 2013 WL 5718532 at *2 (N.D. Cal. Oct. 21, 2013); *see also In re Swartout*, 554 B.R. 474 (Bankr. E.D. Cal. 2016) (*citing United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1370 (9th Cir. 1980)) ("In short, the public interest favors compliance – not disobedience – with court orders."). Having been found in contempt of court for violating the Escrow Order, Leascend now seeks a stay to prevent the Court from determining the appropriate contempt sanctions, which defies the public interest because it attempts to avoid any consequences for its contemptuous behavior.

In its motion, Leascend argues that a stay is in the public interest because "[j]udicial economy favors conserving resources otherwise spent on remedies that may become moot." Mot. at 5:4-5. But, as discussed above, Leascend delayed seeking relief for months until Plaintiffs and this Court have expended substantial resources concerning Leascend's contempt. Leascend's appeal of the judgment in this action does not change the fact that Leascend is in contempt for having violated this Court's order to deposit $5.5 million into a United States escrow account.[4] It was incumbent upon Leascend to appeal and seek a

---

[4] Although Leascend has filed a notice of appeal of the Court's April 4, 2025, Contempt Order, "[a] civil contempt order is ordinarily not appealable until the district court has adjudicated the contempt motion ***and applied sanctions***." *Plata v. Schwarzenegger*, 560 F.3d 976, 980 (9th Cir. 2009) (citing *SEC v. Hickey*, 322 F.3d 1123, 1127 (9th Cir. 2003)) (emphasis added). Accordingly, the Ninth Circuit has issued an order to show cause as to why Leascend's appeal of the contempt order should not be dismissed. *See Facebook, Inc. v. Xiamen 35.Com Internet Tech. Co., Ltd.*, No. 25-2886, ECF No. 9.1 (9th Cir. May 15, 2025).

stay **before** Leascend violated that order. *In re Crystal Palace*, 817 F.2d at 1365 ("If the appellants believed that the district court incorrectly issued an order, their remedy was to appeal and request a stay pending the appeal. Absent a stay, all orders and judgments of courts must be complied with promptly.") (cleaned up); *Kraft v. Oldcastle Precast, Inc.*, No. 18-cv-03036-LB, 2018 WL 3777563, at *3 (N.D. Cal. Aug. 9, 2018) ("Unless a stay or reversal is obtained, a party must comply with a court order, even if he believes that the order is erroneous or contrary to law.") (cleaned up). But Leascend apparently believes compliance is not necessary because it disagrees with the Court's decision. *See* Mot. at 4:18-20 ("Defendant disputes the Contempt Order as erroneous and therefore believes any imposition of sanctions or other remedies by the Court pursuant to that order would be misplaced."). Granting a stay now would reward Leascend for violating this Court's order until Leascend ran out the clock and was able to appeal the judgment before any contempt remedies issued. It would also reward Leascend for consuming this Court's resources arguing against contempt and contempt remedies until the stakes got too high for Leascend. A stay is improper for this reason. Accordingly, this factor further weighs against a stay.

### III.  CONCLUSION

Leascend's eleventh-hour attempt to avoid the consequences of its contemptuous behavior should be rejected. Leascend has not met its burden to show a stay is justified. On the contrary, the factors weigh against entry of a stay. For these reasons, the Court should deny Leascend's motion.

DATED: May 27, 2025                                      Tucker Ellis LLP


By:  /s/David J. Steele
David J. Steele
Howard A. Kroll
Steven E. Lauridsen
Helena M. Guye

Attorneys for Plaintiffs,
META PLATFORMS, INC. (fka FACEBOOK, INC.) and INSTAGRAM, LLC