**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Liana W. Chen (Bar No. 296965)
Leah Rosa Vulić (Bar No. 343520)
548 Market St. #85399
San Francisco, CA 94104
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@kr.law
jeff@kr.law
liana@kr.law
leah@kr.law

Defendant Leascend Technology Co., Ltd.
f/k/a Xiamen 35.com Technology Co., Ltd.
(erroneously sued as Xiamen 35.com Internet Technology Co., Ltd.)

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **FACEBOOK, INC.**, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>**ONLINENIC INC.**, et al.,<br><br>  Defendants. | Case No. 3:19-cv-07071-SI<br><br>**DEFENDANT LEASCEND TECHNOLOGY CO., LTD. F/K/A XIAMEN 35.COM TECHNOLOGY CO., LTD.'S REPLY IN SUPPORT OF MOTION TO STAY DISTRICT COURT PROCEEDINGS PENDING APPEAL**<br><br>Date:  May 30, 2025<br>Time:  10:00 a.m.<br>Ctrm:  1, 17th Floor<br>Judge: Hon. Susan Ilston |

## INTRODUCTION

The Court may be feeling all too familiar with this case and the many machinations that have brought the parties to this point. Finally, however, judgment has been entered, enabling Defendant Leascend Technology Co., Ltd. ("Leascend") to pursue a consolidated appeal of the underlying orders all tied to the "alter ego" finding against Leascend—including the Order re: Plaintiffs' Emergency Ex Parte Application for a Temporary Restraining Order Freezing Assets of Defendant Leascend Technology Co., Ltd. f/k/a Xiamen 35.com Technology Co., Ltd. (D.E. 420 ("TRO").) Defendant Leascend requests a stay of the remaining proceedings in this Court to allow Ninth Circuit review of that finding and its ramifications across the associated orders and to avoid further appeals of orders from this Court until the foundational questions in the current appeal are settled.

## ARGUMENT

As Plaintiffs acknowledge, ultimately, a stay may be granted on a showing "that the case's circumstances justify favorable exercise of [the Court's] discretion." *Morse v. Servicemaster Glob. Holdings, Inc.*, No. C 08-03894, 2013 WL 123610, at *1 (N.D. Cal. Jan. 8, 2013) (citing *Nken v. Holder*, 556 U.S. 418, 433-34 (2009)). "In weighing [the stay] factors, courts apply a 'sliding scale,' whereby the elements of the test are balanced 'so that a stronger showing of one element may offset a weaker showing of another.'" *Morse*, 2013 WL 123610, at *2 (quoting *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011)).[1]

Here, the elements collectively slide and tip sharply in favor of a stay.

**A.   Defendant has a substantial case for relief on the merits.**

As explained in Defendant's motion, the appeal in this case raises "serious legal questions" that amply weigh towards grant of a stay. *See Leiva-Perez*, 640 F.3d at 968. In

---

[1] By footnote, Plaintiffs' opposition suggests the three-factor test from *Landis v. North American Co.*, 299 U.S. 248 (1936) may be more appropriate here than the *Nken* sliding scale. (D.E. 477 at n.1:20-27.) However, as described in *Kuang v. United States Dep't of Def.*, No. 18-CV-03698-JST, 2019 WL 1597495, at *1 (N.D. Cal. Apr. 15, 2019), the *Landis* test has been used to assess motions to stay proceedings pending their interlocutory appeals, 2019 WL 1597495, at *2, which is not the case here.

| Case No. 3:19-cv-07071-SI | 1 | DEF LEASCEND'S REPLY ISO MTN TO STAY PROCEEDINGS PENDING APPEAL |

response, Plaintiffs imply that courts in this district have defined a limited scope of legal questions that qualify as "serious" for purposes of a stay. (*See* D.E. 477 at 3:5-10, citing *Mohamed v. Uber Techs.*, 115 F. Supp. 3d 1024, 1028–29 (N.D. Cal. 2015).) But that is not what the cases say. As explained in *Mohamed*:

> ***While the Ninth Circuit has not exhaustively explained or defined what makes a question "serious,"*** *see Morse,* 2013 WL 123610, at *3, ***a number of the judges on this district have shed light on the issue***. For instance, Judge Koh has suggested that "[f]or a legal question to be 'serious,' it must be a 'question going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." *Guifu Li,* 2011 WL 2293221, at *3 (quoting *Walmer v. United States DOD,* 52 F.3d 851, 854 (10th Cir.1995)). ***Judge Koh further suggested that in "the Ninth Circuit, serious legal questions often concern constitutionality."*** *Id.* (citations omitted). Judge Illston has further noted that a serious legal issue or "substantial case" is "one that raises genuine matters of first impression within the Ninth Circuit," or which may "otherwise address a pressing legal issue which urges that the Ninth Circuit hear the case." *Morse,* 2013 WL 123610, at *3.

*Mohamed*, 115 F. Supp. 3d at 1028–29 (emphasis added).

Here, the Amended Default Judgment, the TRO, and all the other orders on appeal, as well as the remaining proceedings in this court, rest on the summary judgment conclusion that Defendant, a Chinese entity with no business in this country, is an "alter ego" of the co-defendant OnlineNic Inc. This question is one of serious *constitutional* import. The "alter ego" finding is the premise for personal jurisdiction over Leascend. The bounds of personal jurisdiction are established by the due process clause of the Fourteenth Amendment. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (holding the Due Process Clause of the Fourteenth Amendment precluded the defendant—a German company—from being subject to suit in a California court for injuries allegedly caused by conduct of a subsidiary that took place outside the United States).

This Court has acknowledged concerns regarding the difficulty of applying laws to pierce the corporate veil and particularly the fairness of doing so in this case. (*See* Order Granting Plaintiffs' Mot. Summ. J. on Alter Ego; Striking Leascend's Answer (D.E. 351 at

5, 19.)) And while the Court also felt its concerns were sufficiently mitigated, *id*., that conclusion by the Court does not mitigate the fundamental seriousness of the questions.

**B.  Defendant will suffer irreparable harm absent a stay and the balance of hardships tips sharply in its favor.**

Plaintiffs' primary argument that Defendant will not suffer sufficient harm or hardship to warrant a stay is all about timing. Specifically, Plaintiffs seem to contend that Defendant needed to seek an immediate interlocutory appeal and stay of the TRO to show a valid risk of irreparable harm or hardship. (D.E. 477 at 1:5-16, 4:13-28.) This is nonsensical. As set forth in Defendant's oppositions to Plaintiffs' motions for civil contempt and remedies, Leascend endeavored to comply with the TRO.[2] (*See* D.E. 432 at 1:25-3:15; D.E. 471 at 7:20-9:26.) There was no need or purpose to seek a stay of proceedings at that time.

Rather, once the Amended Default Judgment issued, Defendant filed a timely appeal of the judgment and the subsumed orders, *including* the TRO. (D.E. 439.) The danger and hardship to Defendant was not apparent until Plaintiffs filed their motion for civil contempt remedies requesting draconian sanctions, including domain seizures and daily penalties. (*See* D.E. 466.) Thereafter, counsel for Defendant initiated discussions with Plaintiffs' counsel about a stay to ward off the injury that imposition of such sanctions would likely inflict. (*See* D.E. 473-1, Ex. A.) When Plaintiffs' counsel would not agree, Defendant promptly brought this motion to the Court. Nothing in the timing of Defendant's motion to stay undermines the threat of irreparable harm to its business.

Further, Plaintiffs split hairs over words in Defendant's initial motion papers regarding harm and hardship, like "potential." In their opposition, Plaintiffs lean heavily on *Cisco Sys., Inc. v. Dexon Computer, Inc.*, No. 20-CV-04926-CRB, 2023 WL 8703259, at *5 (N.D. Cal. Dec. 15, 2023), *appeal dismissed*, No. 24-265, 2024 WL 1644224 (9th Cir.

---

[2] Contrary to Plaintiffs' assertion, the injuries to Defendant absent the stay are not self-inflicted because Defendant endeavored to comply with the TRO. (*See* D.E. 432 at 1:25-3:15; D.E. 471 at 7:20-9:26.) The impossibility of compliance was not contemplated, and the demand for extreme sanctions for alleged inadequate communications regarding the compliance problems was unforeseeable.

Mar. 18, 2024), to suggest some demonstration of actual loss is required under *Nken*'s second factor.[3] (D.E. 477 at 5:5-6:12.) But the standard is not *actual* irreparable harm, it is a *probability* or *likelihood* of irreparable harm. *Leiva-Perez*, 640 F.3d at 968. Harm that has not occurred yet is "potential," not actual. That potential may be *probable* or *likely*; however, if the stay is granted, it will *not* occur. However, if the stay is not granted and the Court imposes Plaintiffs' requested remedies, Defendant *will* lose use of the leasdgrp.com domain currently employed for its new solar cell business because that is what "deactivation" means. (*See generally* D.E. 471 at 17:14-19:13.) And Defendant *will* suffer augmenting business losses if it pays $1,000 per day in penalties, although the full amount and full impact to its business and business relationships from these losses is unqualifiable at this time because the duration of the appeal process is unknown. (*See generally* D.E. 471 at 16:13-17:12.)[4]

**C.    A stay will not prejudice Plaintiffs.**

In their argument as to alleged prejudice, Plaintiffs tip their hand regarding the genuine intent behind their refusal to agree to a stay and continued pursuit of contempt for

---

[3] The facts of *Dexon Computer* are also inapposite. There, the court addressed a request to stay an injunction that prohibited the defendant from continuing to sell counterfeit goods. 2023 WL 8703259, at *1. The defendant alleged that suppliers may stop doing business with him because of the injunction, but showed no actual loss of suppliers during the one month the injunction had been in place. *Id.* at *5. Among the losses Leascend seeks to stem are the outpouring of new business capital to pay daily penalties and the impact of that very public outflow on the development of its new business endeavor, including its reputation with investor relations.

[4] Plaintiffs also compare a quotation from *Sweet v. Cardona*, 657 F. Supp. 3d 1260, 1272-73 (N.D. Cal. 2023), with a statement from Defendant's motion in a mistaken attempt to refute Defendant's reputational harm. (D.E. 477 at 6:7-12.) The *Sweet* quote addresses a scenario where the injury has already risen to the level of irreparable: "If the reputational injury experienced by movants **is already irreparable**, it is unclear why a stay would be necessary to avoid irreparable injury pending appeal." 657 F. Supp. 3d at 1272-73 (emphasis added). However, Defendant clearly states that, while reputational injury has already occurred, it is the additional harm posed by the potential sanctions that threatens to make the harm irreparable: "[T]he entry of default judgment and finding of civil contempt *have already harmed* Leascend's business reputation; however, the additional imposition of … *sanctions* against Leascend is **likely to compound** the harm to a possibly **irreparable level**") (emphases added). (D.E. 473 at 4:2-5.)

| Case No. 3:19-cv-07071-SI | 4 | DEF LEASCEND'S REPLY ISO MTN TO STAY PROCEEDINGS PENDING APPEAL |

a pre-judgment asset freeze when judgment has already been entered: "A stay would frustrate Plaintiffs' ability to collect on the judgment even when Leasend inevitably loses on appeal."[5] (D.E. 477 at 7:5-6.) However, as explained in Defendant's opposition to Plaintiffs' motion for civil contempt remedies, while courts may entertain asset freezes as a potential remedy pending final judgment, contempt is not appropriate to collect on a money judgment; in particular, a coercive civil contempt order is mooted when the proceeding out of which it arises terminates. (D.E. 471 at 13:14-14:7.)

Plaintiffs' reference to *Oracle USA, Inc. v. Rimini St., Inc.*, 81 F.4th 843 (9th Cir. 2023) to suggest that the requested civil sanctions against Defendant are not penalties or punitive is misplaced. Plaintiffs interpret the opinion to mean, if you seek civil contempt sanctions, your purposes are compliance and compensation. (*See* D.E. 477 at 7:12-15 (quoting *Oracle,* 81 F.4th at 858 ("collecting cases and describing two separate and independent purposes for civil contempt sanctions: (1) 'to "coerce" compliance with a court order' and (2) 'to "compensate" the aggrieved party for sustained losses'")).) However, the court was observing the opposite, *i.e.*, that the purpose and character of the sanctions sought (not the name assigned by the party seeking the sanctions) determines whether the sanctions are civil or criminal. 81 F.4th at 858-59.

Here, Plaintiffs resist a stay in pursuit of, *inter alia*, deactivation of Defendant's active domain and a fine of $1,000 per day. These remedies are entirely punitive. As Plaintiffs recount in their motion for contempt remedies, "[a]ccording to an accounting recently filed with the Court, Leascend possesses about $440 million in total assets, including about $12.8 million in cash and cash equivalents. ECF No. 436 at 4-5; *see also* TRO Opp. at 3 (detailing extensive assets in similar amounts, including $57 million in current assets expected to be converted into cash or use within one year or less)." (D.E. 466 at 13:3-6.) Defendants have demonstrated ample assets to satisfy the judgment if upheld on appeal and, if so ordered, to

---

[5] *Cf.* Pl.'s Motion for Civil Contempt Remedies (D.E. 466 at 13, n. 11:24-25) ("Plaintiffs do not seek to enforce their money judgment against Leascend through contempt sanctions.").

pay attorney's fees as requested in Plaintiffs' motion for an appeal bond.

There is no prejudice to Plaintiffs from the requested stay.

### D. Public interest and the interests of justice compel a stay.

Finally, on the fourth factor to consider for a stay, Plaintiffs return to the theme that Defendants should be punished because they attempted, albeit unsuccessfully, to comply with the TRO rather than immediately seeking an interlocutory appeal and stay of all proceedings (further delaying a final judgment in the case). (D.E. 477 at 8:9-9:13.) There is no more logic to this argument here than above.

Plaintiffs know Defendants' assets are adequate to pay the judgment and attorney's fees if upheld. Their continued demand for sanctions with the final judgment and TRO already on appeal serves little purpose beyond vindication. The public interest is not served by use of judicial resources for such ends. Rather, the public interest in justice compels appellate review of the serious questions regarding "alter ago" personal jurisdiction over a Chinese corporation and the imposition of default judgment against that foreign corporation as a sanction for discovery violations by the domestic "alter ego" before further sanctions are enacted.

### CONCLUSION

For all the reasons outlined in its moving and reply papers, Leascend respectfully requests that the Court stay the district court proceedings pending resolution of Appeal No. 25-1773.

Respectfully Submitted,

Dated: May 29, 2025

**KRONENBERGER ROSENFELD, LLP**

By:   s/ Karl S. Kronenberger
      Karl S. Kronenberger

Attorneys for Defendant Leascend Technology Co., Ltd. f/k/a Xiamen 35.com Technology Co., Ltd.