UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ONLINENIC INC, et al.,<br><br>Defendants. | Case No. 19-cv-07071-SI<br><br>**ORDER:**<br>**--GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CONTEMPT SANCTIONS;**<br>**--DENYING DEFENDANT'S MOTION TO STAY;**<br>**--GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR APPEAL BOND;**<br>**--DENYING MOTION TO SEAL**<br><br>Re: Dkt. Nos. 466, 467, 470, 473 |

Plaintiff Meta Platforms, Inc. (f/k/a Facebook, Inc.) and Instagram, LLC move for an order imposing certain sanctions following the Court's order holding defendant Leascend Technology Co., Ltd.[1] in civil contempt. Leascend has failed to comply with the Court's December 20, 2024 Order that Leascend shall not sell or transfer its domain name registrar business or accreditation until it has deposited $5.5 million into an escrow account in the United States. Plaintiffs also seek an order requiring Leascend to post an appeal bond of $210,000 pursuant to Federal Rule of Appellate Procedure 7. Leascend has moved for a stay of any further proceedings in this case pending resolution of its appeal to the Ninth Circuit. The Court held a hearing on the motions on May 30, 2025.[2]

---

[1] Leascend Technology Co., Ltd. is formerly known as Xiamen 35.com Internet Technology Co., Ltd. ("35.CN"). At the request of defense counsel, the Court now refers to defendant as "Leascend" rather than as "35.CN."

[2] Plaintiffs' motion for an appeal bond was set for a hearing on June 13, 2025, but the Court informed the parties at the May 30 hearing that it would entertain argument on the motion at the

## BACKGROUND

Given the lengthy history of this case involving trademark infringement/cybersquatting, the Court will not recite the full background here. On December 20, 2024, following entry of default judgment against all defendants but before entry of the final judgment and permanent injunction, the Court held a hearing on plaintiffs' emergency motion for a temporary restraining order ("TRO") freezing Leascend's assets. *See* Dkt. No. 419. Plaintiffs had requested the asset freeze after learning from public filings in China that on December 22, 2024 (December 23 in China), the shareholders of Leascend were expected to approve the sale of Leascend's wholly-owned subsidiary, Xiamen 35.com Information Co., Ltd. ("35.com Info"), which plaintiffs said held most if not all of the company's assets. Dkt. No. 408. In opposing the motion, Leascend represented that it would have plenty of equity left after the sale ($118 million or more) to pay an anticipated judgment in this case, that the sale was arranged in order to comply with plaintiffs' demands that Leascend exit the domain registrar business, and that plaintiffs had been informed of the pending sale multiple times. Dkt. No. 415. At the December 20 TRO hearing, there was much back and forth with counsel about the pending sale, and defense counsel expressed concern that an asset freeze would cause the sale to fail, which would harm Leascend's business and make it harder for it to pay any eventual judgment.

On December 20, 2024, following the hearing, the Court signed an order calling for 35.CN (Leascend) to place $5.5 million into escrow no later than January 31, 2025.[3] *See* Dkt. No. 420. Specifically, the Court ordered:

> 1. 35.CN shall deposit, on or before January 31, 2025, $5.5 million (USD) into an escrow account in the United States held by an escrow agent to be security to satisfy any judgment issued by the Court.
>
> 2. 35.CN shall provide Plaintiffs proof of the deposit into escrow, including the account information and name of the escrowing agent.
>
> 3. 35.CN shall not sell or transfer the registrar business or accreditation (IANA No. 4163), currently held by 35.CN's wholly-owned subsidiary Xiamen 35.com

---

May 30 hearing. Accordingly, the June 13 hearing on the appeal bond was subsequently vacated.

[3] Defense counsel reviewed the proposed order in advance of its submission to the Court but expressed "serious concerns about the ability to comply." *See* Dkt. No. 426-1, Kroll Decl., Ex. 2.

2

Information Co., Ltd. ("35.com Info"), including any assets of that registrar business, or sell, transfer, or dispose of the shares or ownership interests in 35.com Info, until 35.CN has deposited the $5.5 million into an escrow account pursuant to paragraph 1, and 35.CN has provided Plaintiffs notice pursuant to paragraph 2.

*Id.* at 2.

On February 7, 2025, plaintiffs filed a motion to hold Leascend in civil contempt because Leascend never complied with the December 20 escrow order. Dkt. No. 426. On February 14, 2025, after resolving plaintiffs' motion for attorneys' fees and costs, the Court entered default judgment and a permanent injunction against defendants. *See* Dkt. No. 431. The judgment awarded plaintiffs, among other things: $3,135,000.00 in statutory damages; $2,185,869.14 in attorneys' fees; and $88,937.00 to reimburse plaintiffs their portion of the Special Master fees. On March 3, 2025, the Clerk taxed costs against defendants in the amount of $51,045.16. Dkt. No. 434.

On March 14, 2025, the Court held a hearing on the civil contempt motion. In its opposition papers and at the March 14 hearing, Leascend asserted for the first time that the pending sale of 35.com Info that triggered the TRO request in late December had in fact been legally effectuated as of December 5, 2024, and so Leascend argued that the entire TRO was based on a mistaken assumption (and its counsel's mistaken representation) that the sale had not yet gone through. The Court ordered Leascend's counsel to provide plaintiffs with copies of the purchase agreement showing when the sale of 35.com Info occurred and then adjourned the motion hearing to April 4. Dkt. No. 441.

On March 14, 2025, the Court issued an asset freeze, modified somewhat from what plaintiffs had requested, during the pendency of the litigation on the contempt motion. Dkt. No. 445. Specifically, the Court ordered as follows:

> It is further **ORDERED** that the Court freezes the registrar business assets, including the domain names attached to this Order as Exhibit A[] (the "Subject Domain Names") and the Internet Corporation for Assigned Names and Numbers ("ICANN") registrar accreditation (IANA 4163) of Xiamen 35.com Information Co., Ltd., until the hearing in this matter currently set for April 4, 2025, at 10:00 a.m. To facilitate the asset freeze:
>
> 1. Verisign, Inc. ("Verisign") is hereby **ORDERED** to lock the Subject Domain Names, while allowing use of the Subject Domain Names. To comply with this Order, for each of the Subject Domain Names, Verisign shall set the following Extensible Provisioning Protocol domain status codes: serverDeleteProhibited

3

>> (to prevent deletion) and serverTransferProhibited (to prevent the transfer to another registrar);
>
> 2. Verisign is hereby **ORDERED** to deposit with the Court documents sufficient to establish the Court's control and authority regarding the disposition of the registration and use of the Subject Domain Names[.]

*Id.* at 2. On March 19, 2025, Verisign informed the Court that it had complied with the Order. *See* Dkt. No. 466-16, Guye Decl., Ex. 15.

Prior to the next hearing, plaintiffs filed documentation from Leascend showing that the sale of 35.com Info was to have been effectuated on December 23, 2024, not on December 5, as Leascend's counsel had recently claimed. *See* Dkt. No. 458. The documentation further showed Leascend had represented to the buyer that, despite the Court's December 20 escrow order, Leascend had the legal right to transfer the assets and that the assets it was selling were "free from any mortgages, guarantees, liens, security interests, or other encumbrances." *See* Dkt. No. 458-2, Lauridsen Decl., Ex. 1 § 9.1.1.[4]

On April 4, 2025, the Court issued an order finding Leascend in civil contempt for having violated the December 20, 2024 escrow order. Dkt. No. 460. The Court issued a briefing schedule on contempt remedies and ordered that the asset freeze described at Dkt. No. 445 should remain in place. *Id.* at 8-9.

Plaintiffs have now filed a motion for certain civil contempt remedies. Dkt. No. 470. In the meantime, Leascend has filed an appeal and now moves for a stay pending appeal. Dkt. No. 473. At Leascend's request, the Court agreed to shorten the briefing schedule on the stay motion. Dkt. No. 475. Plaintiffs have also moved for an appeal bond of $210,000. Dkt. No. 470.

**LEGAL STANDARD**

"A district court has the power to adjudge in civil contempt any person who willfully disobeys a specific and definite order of the court." *Gifford v. Heckler*, 741 F.2d 263, 265 (9th Cir. 1984). Civil contempt consists of a party's disobedience to "a specific and definite court order by

---

[4] In their current filings, plaintiffs state that the purchase of 35.com Info was completed as of February 20, 2025. Defendant disputes this. *See* n.7, *infra*.

4

1    failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n,*
2    *Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006). The disobeyed order that serves as the basis
3    for a finding of civil contempt must be clear in its commands. *See Balla v. Idaho State Bd. of Corr.*,
4    869 F.2d 461, 465 (9th Cir. 1989). To succeed on a motion for civil contempt, the moving party
5    must "show by clear and convincing evidence that [the nonmoving party] violated the [court order]
6    beyond substantial compliance, and that the violation was not based on a good faith and reasonable
7    interpretation of the [order]." *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322 (9th
8    Cir. 1997).

9    To find a prima facie case of contempt, a court must find that (1) the nonmoving party
10   violated a specific and definite court order; (2) beyond substantial compliance; (3) not based upon
11   a reasonable and good faith interpretation of the order; and (4) the foregoing has been shown by
12   clear and convincing evidence. *See In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10
13   F.3d 693, 695 (9th Cir. 1993). Willfulness is not an element of civil contempt. *Verizon Cal. Inc. v.*
14   *Online NIC, Inc.*, 647 F. Supp. 2d 1110, 1115 (N.D. Cal. 2009). If the moving party establishes a
15   prima facie case of contempt, the nonmoving party must show that it took every reasonable step
16   within its power to comply with the Court's order. *Sekaquaptewa v. MacDonald*, 544 F.2d 396, 404
17   (9th Cir. 1976). "District courts have broad equitable power to order appropriate relief in civil
18   contempt proceedings." *F.T.C. v. EDebitPay, LLC*, 695 F.3d 938, 945 (9th Cir. 2012) (quoting
19   *S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003)).

**DISCUSSION**

**I.    Civil Contempt Remedies**

23   As noted above, the Court has found Leascend in civil contempt for having violated the
24   December 20, 2024 escrow order. *See* Dkt. No. 460. The present question then is one of remedy.
25   Plaintiffs seek what they frame as both "coercive" and "compensatory" remedies for Leascend's
26   contempt. "Civil contempt is characterized by the court's desire to compel obedience to a court
27   order or to compensate the contemnor's adversary for the injuries which result from the
28   noncompliance." *United States v. Bright*, 596 F.3d 683, 695-96 (9th Cir. 2010) (quoting *Falstaff*

5

*Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983)). "[A]lthough the district court generally must impose the minimum sanction necessary to secure compliance, . . . the district court retains discretion to establish appropriate sanctions[.]" *Id.* at 696 (citations omitted).

### A.  Purging of Contempt

In the Ninth Circuit, a finding of civil contempt "must be accompanied by conditions by which the contempt may be purged, spelled out in either the original order or the contempt order." *Bright*, 596 F.3d at 696. Here, the December 20, 2024 escrow order was clear as to what Leascend (f/k/a 35.CN) needed to do and by when. *See* Dkt. No. 420 at 2. Leascend has never argued that it did not know what it was ordered to do; rather, it has maintained that it tried to comply but that compliance was impossible. Although the Court's subsequent contempt order did not expressly spell out how the contempt could be purged, the argument at multiple contempt hearings and the discussion in the Court's order at Dkt. No. 460 make clear that the contempt finding centered on Leascend's failure to place the $5.5 million into escrow, either by the deadline or thereafter. *See* Dkt. No. 460 at 3 (". . . it is undisputed that Leascend did not deposit the $5.5 million into a U.S. escrow account by the deadline (and still has not done so) . . .").

To the extent there is any shred of doubt, the Court now clarifies: **Leascend may purge its contempt: (1) by paying the final judgment ordered at Dkt. No. 431 ¶¶ 67, 78, 80 and the costs awarded at Dkt. No. 434 <u>OR</u> (2) by depositing $5.5 million (USD) into an escrow account in the United States held by an escrow agent to be security to satisfy the judgment issued by the Court on February 14, 2025.**

### B.  Contempt Remedies

Plaintiffs' motion for civil contempt remedies asks:
- that Leascend be ordered to pay a daily fine of $1,000 until it complies with the Escrow Order;
- that U.S.-based, third-party Verisign be ordered to deactivate Leascend's ".com" domain names (Leascend.com and leasdgrp.com) until Leascend complies with the Escrow Order;

- that Leascend and attorney Karl Kronenberger be ordered to pay, jointly and severally, plaintiffs' reasonable attorneys' fees and costs expended in connection with the contempt; and

- that the Court issue an Order to Show Cause to 35.com Info as to why the Court should not amend the judgment to add 35.com Info as a judgment debtor.[5]

Leascend argues: that the requested sanctions are more akin to punitive, criminal contempt sanctions, as the contempt can no longer be "purged" (given that the compliance deadline has now passed and the domain registrar business has now been sold); that there was no bad faith to support a recovery of attorneys' fees, in that defense counsel's advocacy was for a client on complex issues, with translation and time zone challenges, and the TRO hearing occurred on short notice; and that there is no basis to add a judgment debtor, especially when plaintiffs do not argue that Leascend has insufficient assets to cover the judgment. Leascend also argues that the December 20 escrow order was essentially an order to pay on the judgment, and now that the final judgment has issued, plaintiffs should follow procedures to collect on the judgment rather than use the contempt process to try to collect.

First, the Court rejects Leascend's argument that contempt remedies are not warranted because compliance with the December 20 escrow order is now impossible. Compliance was not impossible at the time the Court's December 20 order issued. The arguments Leascend now raises were largely litigated and decided in the last round of briefing. *See* Dkt. No. 460. The record also reflects that, in the ten days leading up to the escrow deadline, plaintiffs' counsel made numerous attempts to elicit information from Mr. Kronenberger about the status of compliance, which defense counsel ignored until after the deadline had passed. *See* Dkt. No. 460 at 7 (detailing history).

The purpose of the escrow order was to prevent Leascend from dissipating any assets before final judgment had been entered. The Court selected the $5.5 million figure as an estimate of what the final judgment would be. Now, what plaintiffs feared has come to pass: judgment just under $5.5 million has been entered and, several months later, Leascend has yet to pay a dime. If Leascend's view of the "impossibility" of compliance were to be credited, then any party could flout

---

[5] Plaintiffs propose a two-week waiting period on the daily fine and the website deactivation to allow Leascend time to purge the contempt.

7

a court order and evade contempt remedies by later claiming that it was now too late to comply because the deadline had passed.

Not only has Leascend failed to comply with the escrow order and failed to pay on the judgment, there is no indication that it ever intends to pay. Days after this Court entered final judgment, Leascend issued a statement to its shareholders on the progress of this litigation, reporting, "Given that the Company is legally registered and existing in China and has never directly conducted domain name registration business in the United States, the Company believes that the U.S. district court has no jurisdiction over the Company. . . . At present, since there is no bilateral mutual legal assistance treaty signed between the US and China, the judgment has not been reviewed and recognized by the Chinese court, therefore, the possibility of direct enforcement in China is low." Dkt. No. 433-4 at 6. If anything, Leascend's current position only reinforces that the December 20 escrow order was needed to protect plaintiffs' ability to collect on the judgment. As plaintiffs make clear in their reply brief, plaintiffs "moved for an order holding Leascend in contempt based on Leascend's failure to escrow any funds and not based on its sale of 35 Info." Dkt. No. 472 at 6 n.6. It is undisputed that Leascend has now sold 35.com Info without having placed the funds in escrow.[6] Even if undoing the sale is impracticable, ordering Leascend to deposit the $5.5 million into an escrow account in the U.S., to protect plaintiffs' ability to collect on the judgment, is not.[7]

With regard to attorneys' fees, Leascend states that an award of fees is unnecessary because

---

[6] In the current briefing, the parties dispute whether the sale was finalized on February 20, 2025. Plaintiffs have presented new documentation subpoenaed from ICANN stating that 35.com Info was sold to Chengdu Yu & Ling Internet Technology Co. Ltd. ("Yuyuling") "[a]s of the date of the issuance of" a certificate submitted to ICANN and signed on February 20, 2025. *See* Dkt. No. 467-6, Guye Decl., Ex. 1. Leascend states in opposition that the "as of" reference in the certificate "only demonstrates that the sale was completed as of (i.e., before) February 20 (not exactly on February 20)." Dkt. No. 471 at 7. What matters for today's order is that the sale has now been completed and no one disputes that the assets of 35.com Info now belong to Yuyuling and not to Leascend.

[7] A declaration from plaintiffs indicates 35.com Info was sold for approximately $6.6 million. Dkt. No. 472-6 ¶ 7. This is consistent with documentation Leascend submitted in opposition to the TRO request. *See* Dkt. No. 415-1 at 26 (stating that Yu Yu Ling Internet Technology Co., Ltd. won the bid for the sale of 35.com Info "during the public auction with a final transaction price of RMB 48.2389 million").

8

this case did not involve misconduct but rather "has involved key compliance efforts and complex international laws." Dkt. No. 471 at 19. As already found by this Court, compliance efforts in this case were insufficient. *See* Dkt. No. 460 at 7-8. Moreover, the Court gave defendants ample time—more than one month—to navigate the complexities of transferring the funds from China into a U.S.-based escrow account. Again, as previously noted, Leascend elected not to use the fund transfer process that its counsel had outlined at the TRO hearing. *See id.* at 7.

Moreover, defendant and defense counsel's actions have unquestionably multiplied the proceedings in the last six months. There were two hearings on the civil contempt motion because in the contempt opposition brief and at the March 14 hearing, Leascend presented a new timeline for when 35.com Info had been sold. Leascend's counsel never answered the Court's question posed at the March 14 hearing regarding *when* counsel learned that the representations he had made at the TRO hearing were erroneous. The Court continued the civil contempt hearing for several weeks so that Leascend could provide proof of the purchase agreement to support its position. *See* Dkt. No. 441. To date, Leascend's position on precisely when the sale was finalized remains unclear. And as noted above, defense counsel ignored multiple requests from plaintiffs for a status update in the ten days leading up to the escrow deadline. Leascend and its counsel's inconsistent positions on the date of the sale of 35.com Info have created confusion for plaintiffs and for this Court that needlessly prolonged the proceedings.

In light of all the above, the Court finds sanctions warranted. The Court orders civil contempt remedies as follows:

(1) Leascend is ordered to pay a daily fine of $1,000 until it purges the contempt;

(2) Verisign, Inc. is ordered to <u>deactivate</u> Leascend's website leasdgrp.com until Leascend purges the contempt.[8] Verisign will be notified that the contempt has been purged

---

[8] Leascend agrees that it controls and uses the domain name leasdgrp.com. The Court finds it appropriate to deactivate Leascend's U.S.-based website leasdrgp.com in light of Leascend's representations in China that this Court lacks jurisdiction over the company. *See* Dkt. No. 433-4 at 6. Part of the concern regarding the sale of 35.com Info was that this dissipated Leascend's U.S.-based assets and that, without these assets, plaintiffs would be unable to collect on the judgment.
As to Leascend.com, Leascend has asserted that it does not own or use that domain name. Dkt. No. 471 at 10. For purposes of today's Order, the Court accepts this assertion as true but may revisit this determination in the future.

either by notification from plaintiffs or by further order of this Court; and

(3) Leascend (but not Mr. Kronenberger) is ordered to pay Plaintiffs their reasonable attorneys' fees and costs expended in connection with the contempt (i.e., not for the December 2024 TRO but for the enforcement and contempt efforts that followed).

To allow Leascend time to purge the contempt, the daily fine and website deactivation shall not begin until fourteen days from the date of this Order.

In the interest of bringing a close to these proceedings, the Court declines to order the remaining remedies plaintiffs seek in their motion. At this stage, with judgment entered and the case on appeal, no one's resources are well spent by continuing to litigate every aspect of Leascend's ongoing noncompliance. Of course, that does not mean plaintiffs should not collect on what they are owed. But at this point the parties (and the Court) are entering the territory of diminishing returns.[9]

In sum, in light of Leascend's recalcitrance, evasiveness, and delay, and given the size of the judgment, the Court finds the above coercive and compensatory remedies to be "the minimum sanction necessary to secure compliance." *See Bright*, 596 F.3d at 696.

## II.     Leascend's Motion to Stay Pending Appeal

While the sanctions motion was pending, Leascend filed a motion to stay further proceedings pending appeal and asked for the motion to be heard on shortened time. Dkt. Nos. 473, 474. The Court set a shortened briefing schedule and agreed to hear the matter on the same date as plaintiffs' pending motion. Dkt. No. 475. Plaintiffs oppose the stay request. Dkt. No. 477. In opposition, plaintiffs note that Leascend waited to move for a stay until after it was found in civil contempt and the only issue to be resolved was the remedy, suggesting the stay motion is a last-ditch effort to

---

[9] Plaintiffs filed an administrative motion to seal certain material associated with the contempt remedies motion, Dkt. No. 467, stating that the material had been designated as confidential by third-party ICANN. Some of this material refers to the timing of the sale of 35.Info and who now owns 35.Info, which goes to the heart of the entire motion. ICANN did not file a declaration in support of sealing. *See* Civ. L.R. 79-5(f). The administrative motion to seal is therefore **DENIED**.

10

1  avoid sanctions.

2      A stay pending appeal "is not a matter of right" but "is instead an exercise of judicial
3  discretion, and the propriety of its issue is dependent upon the circumstances of the particular case."
4  *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citations, internal quotation marks, and alteration
5  omitted). "The party requesting a stay bears the burden of showing that the circumstances justify
6  an exercise of that discretion." *Id.* at 433-34. In considering whether to grant a stay pending appeal,
7  courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is
8  likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay;
9  (3) whether issuance of the stay will substantially injure the other parties interested in the
10 proceeding; and (4) where the public interest lies." *Id.* at 434 (quoting *Hilton v. Braunskill*, 481
11 U.S. 770, 776 (1987)).

12     The Court denies Leascend's request for a stay pending appeal. Leascend has failed to make
13 a strong showing that it is likely to succeed on the merits of its appeal. As plaintiffs note in their
14 pending motion for an appeal bond, three of the four orders that Leascend challenges on appeal are
15 reviewed for abuse of discretion (the default judgment, the escrow order, and the amended final
16 judgment). *See* Dkt. No. 470 at 6. The fourth order, decided on summary judgment, rested on
17 significant factual evidence provided by plaintiffs and where Leascend raised no genuine disputes
18 of material fact supported by admissible evidence. Although this case was surely complicated,
19 Leascend is not likely to succeed on the merits at the end of the day, for all the reasons stated in the
20 orders now being appealed.

21     Nor has Leascend shown it will be irreparably injured absent a stay. The deadline for
22 compliance with the escrow order was January 31, 2025; therefore, Leascend has had five months
23 to come into compliance but has failed to do so, without providing satisfactory explanation and
24 while simultaneously telling its shareholders that this Court lacks jurisdiction and that the chance of
25 enforcement of a judgment is low. The Court is also allowing a two-week waiting period before the
26 daily fine and website deactivation go into effect, providing even further opportunity for Leascend
27 to purge its contempt and avoid any injury.

28     The last two *Nken* factors also weigh against a stay. Plaintiffs are owed just under $5.5

million from defendants in this case, and staying plaintiffs in their attempt to collect on that judgment while the appeal is pending constitutes an injury to plaintiffs. Finally, the public has an interest in the orderly disposition of legal proceedings, which includes having parties obey court orders and pay on judgments entered against them. That is particularly so in cases such as this, where defendants' pre- and post-judgment behavior raise questions of bad faith.

The Court DENIES Leascend's motion for a stay of proceedings pending appeal.

### III. Plaintiffs' Motion for Appeal Bond

By separate motion, plaintiffs move for an order requiring that Leascend post an appeal bond of $210,000, comprised of $10,000 in estimated costs and $200,000 in estimated attorneys' fees on appeal.[10] Leascend opposes. Plaintiffs' reply brief was filed later in the day following the hearing, and the Court has now reviewed and considered that brief as well. *See* Dkt. No. 481.

Federal Rule of Appellate Procedure 7 states, "In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." The parties agree that in determining whether an appeal bond is appropriate, courts consider: "(1) the appellants' financial ability to post bond; (2) the risk that appellants will not pay the costs if they lose the appeal; and (3) the likelihood that they will lose the appeal and be subject to costs." *See Senne v. Kansas City Royals Baseball Corp.*, No. 14-CV-00608-JCS, 2023 WL 4238509, at *1 (N.D. Cal. June 27, 2023) (citations omitted).

Based on the prior history in this case, the Court finds there is a substantial risk Leascend will not pay the costs if it loses on appeal. As noted, following the Court's escrow order and the entry of final judgment, Leascend made public statements that "the possibility of direct

---

[10] Plaintiffs requested a single appeal bond related to both notices of appeal that Leascend filed. *See* Dkt. No. 470 at 3 n.3. The second appeal—an appeal of this Court's order holding Leascend in civil contempt—has now been voluntarily dismissed following an order of the Ninth Circuit for Leascend to either voluntarily dismiss the appeal or file a statement explaining why it should not be dismissed. *See Facebook, Inc. v. Xiamen 35.Com Internet Tech. Co., Ltd.*, No. 25-2886, Dkt. No. 9.1 (9th Cir. May 15, 2025); *see also Plata v. Schwarzenegger*, 560 F.3d 976, 980 (9th Cir. 2009) ("A civil contempt order is ordinarily not appealable until the district court has adjudicated the contempt motion and applied sanctions.").

12

enforcement" of this Court's judgment "in China is low." *See* Dkt. No. 433-4 at 6. As already stated above, the Court further finds it likely that Leascend will lose the appeal and be subject to costs. That leaves the question whether Leascend is financially able to post an appeal bond. Despite the filings Leascend submitted for the TRO hearing in support of its ability to pay any eventual judgment, *see* Dkt. No. 415 at 3 n.3, Leascend now argues that it is not financially able to post bond. Leascend argues that Chinese law prevents it from transferring money unless the Court's judgment is "final," which includes the judgment being affirmed on appeal. Leascend says that this law restricts how much money a public company can transfer out of China but does not indicate what the threshold triggering amount would be. *See* Dkt. No. 476 at 3. Additionally, at the December 20, 2024 TRO hearing, Leascend's counsel represented that the company could transfer funds via Hong Kong. *See* Dkt. No. 460 at 7. Leascend has yet to provide a satisfactory response as to why this option is no longer available.

The Court will order Leascend post an appeal bond to ensure the payment of costs on appeal in the amount of $7,500. Plaintiffs acknowledge that there is some different treatment among district courts in the Ninth Circuit regarding when attorneys' fees may properly be included as part of the bond under Federal Rule of Appellate Procedure 7. *See* Dkt. No. 470 at 11. Moreover, "the rule states that a district court 'may,' rather than 'shall,' impose a bond for costs on appeal." *Azizian v. Federated Dept. Stores, Inc.*, 499 F.3d 950, 961 (9th Cir. 2007) (citing Fed. R. App. P. 7). In its discretion, the Court declines to include attorneys' fees under the Lanham Act in the Rule 7 bond today. The Court will, however, order that Leascend post a bond in the amount of $7,500, given the declaration by plaintiffs' counsel and the bonds set by other courts in this district. *See* Dkt. No. 470-2, Block Decl. ¶ 6; *see also* Fed. R. App. P. 39(e) (costs on appeal taxable in the district court); *Senne*, 2023 WL 4238509, at *2 (collecting cases in this district setting bond amounts ranging from $500 to $15,000 and acknowledging that $10,000 "is on the high side").

At the end of the day, Leascend wants the benefit of being able to appeal this Court's orders without being beholden to the rules on appeal. It continues to dispute at every juncture that this Court has jurisdiction over it, yet it assures the Court that it will pay the judgment when the time comes. Given the lengthy history of this case, the Court finds an appeal bond in the amount of

$7,500 to cover Meta's costs is appropriate.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court **GRANTS IN PART and DENIES IN PART** plaintiffs' motion for contempt remedies (Dkt. No. 466) as follows:

(1) Leascend shall pay a daily fine of $1,000 USD until it purges the contempt;

(2) Verisign, Inc. is ordered to deactivate leasdgrp.com until Leascend purges the contempt. Verisign will be notified that the contempt has been purged either by notification from plaintiffs or by further order of this Court; and

(3) Leascend shall pay Plaintiffs their reasonable attorneys' fees and costs expended in connection with the contempt (i.e., not for the December 2024 TRO but for the enforcement and contempt efforts that followed). The parties shall meet and confer in an attempt to reach resolution on the attorneys' fees and costs. In the absence of an agreed resolution, the parties shall jointly propose a briefing schedule on the fee motion, and the Court encourages the parties to agree on an expedited schedule if possible.

To allow Leascend time to purge the contempt, the daily fine and website deactivation shall not begin until fourteen days from the date of this Order. The Court DENIES, without prejudice, the balance of plaintiffs' motion for contempt remedies.

The Court **DENIES** the administrative motion to seal (Dkt. No. 467). Plaintiffs shall re-file the unredacted materials on the public docket within seven days of the date of this Order.

The Court **DENIES** Leascend's motion for a stay pending appeal (Dkt. No. 473).

The Court **GRANTS IN PART and DENIES IN PART** plaintiffs' motion for an appeal bond (Dkt. No. 470). The Court ORDERS Leascend to post an appeal bond in the amount of $7,500 USD.

**IT IS SO ORDERED**.

Dated: July 1, 2025

_____
SUSAN ILLSTON
United States District Judge