UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC., et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ONLINENIC INC, et al.,<br><br>　　　　　Defendants. | Case No. 19-cv-07071-SI<br><br>**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. No. 497 |

Plaintiff Meta Platforms, Inc. (f/k/a Facebook, Inc.) and Instagram, LLC move for an award of attorneys' fees, following the Court's orders holding defendant Leascend Technology Co., Ltd. in civil contempt.[1]

**BACKGROUND**

Given the lengthy procedural history of this case, the Court only summarizes the recent history relevant to the present motion. Leascend has failed to comply with the Court's December 20, 2024 Order (Dkt. No. 420) that Leascend shall not sell or transfer its domain name registrar business or accreditation until it has deposited $5.5 million into an escrow account in the United States. *See* Dkt. No. 487 at 2-3 (describing history of December 2024 escrow order). On February 7, 2025, plaintiffs filed a motion to hold Leascend in civil contempt because Leascend did not comply with the December 2024 escrow order by the deadline. Dkt. No. 426. On February 14, 2025, the Court awarded plaintiffs attorneys' fees and costs and entered default judgment and a

---

[1] Leascend Technology Co., Ltd. is formerly known as Xiamen 35.com Internet Technology Co., Ltd. ("35.CN"). At the request of defense counsel, the Court now refers to defendant as "Leascend" rather than as "35.CN."

1  permanent injunction against defendants.  *See* Dkt. Nos. 430, 431.

2          On March 14, 2025, the Court held a hearing on the civil contempt motion.  In its opposition papers and at the March 14 hearing, Leascend asserted for the first time that the pending sale that triggered the escrow order had in fact been legally effectuated as of December 5, 2024, and so Leascend argued that the escrow order was based on a mistaken assumption (and its counsel's mistaken representation) that the sale had not yet gone through.  The Court ordered Leascend's counsel to provide plaintiffs with copies of the purchase agreement showing when the sale occurred and then adjourned the motion hearing to April 4.  Dkt. No. 441.  On March 14, 2025, the Court issued an asset freeze during the pendency of the litigation on the contempt motion.  Dkt. No. 445.

        Prior to the next hearing, plaintiffs filed documentation from Leascend showing that the sale was effectuated on December 23, 2024, not on December 5, as Leascend's counsel had recently claimed.  *See* Dkt. No. 458.  The documentation further showed Leascend had represented to the buyer that, despite the Court's December 20 escrow order, Leascend had the legal right to transfer the assets and that the assets it was selling were "free from any mortgages, guarantees, liens, security interests, or other encumbrances."  *See* Dkt. No. 458-2, Lauridsen Decl., Ex. 1 § 9.1.1.

        On April 4, 2025, the Court issued an order finding Leascend in civil contempt for having violated the December 20, 2024 escrow order.  Dkt. No. 460.  The Court issued a briefing schedule on contempt remedies and ordered that the asset freeze described at Dkt. No. 445 remain in place.  *Id.* at 8-9.

        Plaintiffs moved for certain civil contempt remedies.  Dkt. No. 470.  On July 1, 2025, the court issued an order granting in part and denying in part plaintiffs' motion.  Dkt. No. 487.  Among the remedies the Court ordered, the Court stated that "Leascend shall pay Plaintiffs their reasonable attorneys' fees and costs expended in connection with the contempt (i.e., not for the December 2024 TRO but for the enforcement and contempt efforts that followed)."  *Id.* at 14.  The Court declined plaintiffs' request that Leascend's counsel Karl Kronenberger be made jointly and severally liable for the attorneys' fees.  *Id.* at 7, 10.  The parties stipulated to a briefing schedule for the fee motion,

Dkt. No. 495, and the matter is now fully briefed and ripe for review.[2]

In their motion, plaintiffs seek a fee award of $530,626.22 for their work related to the litigation stemming from Leascend's noncompliance with the December 2024 escrow order. Dkt. No. 497 at 1. Plaintiffs do not seek any costs. *Id.* at 1 n.2. Leascend opposes the motion, arguing that a reduction in fees is warranted on several grounds, particularly given that plaintiffs' motion summarizes the various categories of work and the hours expended per biller but does not contain logs detailing the specific activities performed. Dkt. No. 499.

## DISCUSSION

The Ninth Circuit has recognized "the need for a flexible approach to awarding fees and expenses in civil contempt." *Perry v. O'Donnell*, 759 F.2d 702, 706 (9th Cir. 1985). An express finding of willfulness is not required in civil contempt cases: "the trial court should have discretion to analyze each contempt case individually and decide whether an award of fees and expenses is appropriate as a remedial measure." *Id.* at 705. Here, the Court's prior orders explained the reasons for awarding plaintiffs their attorneys' fees expended in connection with Leascend's contempt. Dkt. Nos. 460, 487 at 5-10. Among other things, the Court found that "defendant and defense counsel's actions have unquestionably multiplied the proceedings in the last six months" and that both coercive and compensatory remedies were needed "in light of Leascend's recalcitrance, evasiveness, and delay, and given the size of the judgment[.]" Dkt. No. 487 at 9-10.

Turning to the fee motion itself, the Court finds the motion is not defective due to lack of documentation, as defendant contends. First, as defendant acknowledges, the law in this circuit does not require that contemporaneous time records be filed with a fee motion in order for fees to be awarded. *See* Dkt. No. 499; Civ. L.R. 54-5(b)(2) (providing that "[d]epending on the circumstances, the Court may require production of an abstract of or the contemporary time records for inspection, including *in camera* inspection, as the Judge deems appropriate"). The Court finds the level of detail provided in the motion to be sufficient. The motion describes the work performed in various

---

[2] The parties requested that the fee motion be decided on the papers without oral argument, Dkt. No. 495 ¶ 5, and the Court agrees that oral argument is not needed. *See* Civ. L.R. 7-1(b).

categories and at the various procedural stages since the December 2024 escrow order and states the hours worked in each category by biller. Additionally, the Court is intimately familiar with the work that plaintiffs performed over the relatively short time period at issue, given that the enforcement and contempt proceedings were heavily litigated and the Court conducted three hearings on the matter in less than a three-month period. *See* Dkt. Nos. 441, 461, 482.

Having reviewed the fee request and the supporting declarations, the Court finds plaintiffs' request to be reasonable overall, with some discrete exceptions. As a threshold matter, the Court finds, as it did in a prior fee order, Dkt. No. 430 at 6-7, that "plaintiffs have presented adequate evidence supporting the rates charged in this case, and that the rates are at or even below the market rate for intellectual property litigators in the San Francisco Bay Area." *See id.* at 6; Dkt. No. 497-1, Steele Decl. ¶¶ 7 (rates ranging from $255/hour for an attorney with three years of intellectual property litigation experience to $726.75/hour for an attorney with 44 years' experience), 9 & Ex. 1 (American Intellectual Property Law Association 2023 report listing rates for intellectual property trial attorneys). Defendant does not challenge the hourly rates plaintiffs charge here. Dkt. No. 499 at 2 n.1.

However, defendant takes issue with the hours billed for "time spent preparing for, attending, and evaluating the results of the March 14 hearing[.]" *See* Steele Decl. ¶ 12(a)(3). The Court agrees the hours billed in this category are excessive. Plaintiffs billed a total of 85.7 hours in this category, spread across five attorneys, for a sum of $48,199.30. *Id.* The Court will reduce the award in this category to $30,000.00. In recognition that this was the first hearing to address Leascend's contempt, the $30,000 figure is still far higher than what plaintiffs claimed for preparation and attendance at the subsequent hearings but is not so high as to be excessive. *See id.* ¶¶ 12(b)(3), (c)(4) (billing $11,559.68 for work in connection with the continued hearing on civil contempt and $17,087.82 for the hearing on contempt remedies).[3]

The Court also finds it appropriate to reduce slightly the billing for preparation of the Court-

---

[3] Plaintiffs' motion mistakenly refers to both of the subsequent hearings as the "April 4 hearing," but from the context of the motion the Court understands them to be referring to the hearings on April 4 and May 30. *See* Steele Decl. ¶¶ 12(b)(3), (c)(4).

ordered asset freeze. *See* Steele Decl. ¶ 12(a)(4) (claiming $12,510.07 for this category). As defendant correctly notes, the Court ordered plaintiffs to redo the proposed order on the asset freeze because the first version lacked clarity. *See* Dkt. No. 443. The Court will reduce the award in this category to $10,000.00 rather than the $12,510.07 plaintiffs requested.

In all other respects, the Court finds plaintiffs' lodestar to be reasonable. In addition to the reasons noted in this order and in the Court's prior orders, Dkt. Nos. 460, 487, the Court emphasizes that "Leascend and its counsel's inconsistent positions on the date of the sale of 35.com Info [the subject of the December 2024 escrow order] have created confusion for plaintiffs and for this Court that needlessly prolonged the proceedings." Dkt. No. 487 at 9. Even such seemingly minor points such as who actually owns and controls the domain name "leascend.com" were disputed and litigated and required further investigation from plaintiffs. *See id.* at 9 n.8. Nothing about this case has been straightforward or typical, and plaintiffs' counsel have capably litigated this case to a successful conclusion for their clients.

The Court therefore awards plaintiffs a total of $509,916.85 for their work expended in connection with Leascend's civil contempt.

## CONCLUSION

For the above reasons, the Court GRANTS IN PART plaintiffs' motion for attorneys' fees. The Court AWARDS plaintiffs attorneys' fees in the amount of **$509,916.85.**

With final judgment having been entered and the outstanding attorneys' fees question now resolved, the Clerk shall administratively close the file.

**IT IS SO ORDERED**.

Dated: September 24, 2025

_____
SUSAN ILLSTON
United States District Judge